UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER      MDL NO. 07-1873
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION      SECTION "N" (5)
              JUDGE ENGELHARDT
              MAG. JUDGE CHASEZ

THIS DOCUMENT RELATES TO:
ALL CASES ("Louisiana Plaintiffs")

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION
TO DISMISS THE REMAINING FTCA CLAIMS OF ALL "LOUISIANA PLAINTIFFS,"
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

PAGE

INTRODUCTION. .................................................................................................. 1

PROCEDURAL BACKGROUND .......................................................................... 3

I.   Louisiana Plaintiffs' Remaining Claims Fall Outside the Court's
     Subject-Matter Jurisdiction Because the Claims Arise Out of an Alleged
     Government Misrepresentation.................................................................... 6

     A.   Summary............................................................................................... 6

     B.   Standard of Review............................................................................. 8

     C.   Argument ............................................................................................. 9

          1.   The FTCA Does Not Waive the United States' Sovereign Immunity
               for Claims That Arise Out of a Misrepresentation; This Bar Applies
               to Both Affirmative Statements and Failures to Communicate. .............. 9

          2.   Louisiana Plaintiffs' Remaining Claims Focus upon the
               Government's Alleged Failure to Obtain and Provide Full,
               Complete, and Accurate Information; Thus, Their Claims Are
               Barred by the Misrepresentation Exception. ........................................... 12

II.  Louisiana Plaintiffs Must Establish That the United States Committed Gross
     Negligence or Willful and Wanton Misconduct, and That This Conduct Was the
     Proximate Cause of Their Injuries; They Have Failed to State Plausible Claims that
     Satisfy this Standard and There Is No Remaining Genuine Issue of Material Fact
     Regarding Whether the United States Was Grossly Negligent or Engaged in Willful
     and Wanton Misconduct . ............................................................................. 19

     A.   Summary............................................................................................... 19

     B.   Gross Negligence or Willful and Wanton Misconduct Requires a Showing
          of Extreme and Severe Conduct That Is Substantially Higher in Magnitude
          Than Ordinary Negligence. ............................................................... 22

     C.   Louisiana Plaintiffs' Factual Allegations Do Not Adequately Reflect
          the Kind of Utter and Severe Disregard and Entire Absence of Care
          Required Under Louisiana Law to State a Gross Negligence Claim................. 27

          1.   Standard of Review...................................................................... 27

**PAGE**

**2.**   **Argument.** ...................................................................................... **29**

    **a.**   **Plaintiffs' Labels and Conclusions Are Insufficient to Demonstrate That Their Remaining Claims Plausibly Assert That the United States' Conduct Rose to the Extreme Level of Gross Negligence** . ............................................ **29**

    **b.**   **Stripped of Labels and Conclusions, Plaintiffs' Factual Allegations Are Explained by Simple Negligence** ....................... **30**

**D.**   **There Is No Genuine Issue of Fact as to Whether Louisiana Plaintiffs' Alleged Injuries Were Proximately Caused By the Gross Negligence or Willful and Wanton Misconduct of the United States.** ................ **37**

    **1.**   **Standard of Review** ...................................................................... **37**

    **2.**   **Argument.** ...................................................................................... **39**

**CONCLUSION.** ....................................................................................................... **49**

# TABLE OF AUTHORITIES

**PAGE**

## FEDERAL CASES

*Anderson* v. *Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................... 9, 39, 41

*Ashcroft* v. *Iqbal*,
   129 S. Ct. 1937 (2009)..................................................................... 28

*Bartie* v. *United States*,
   216 F. Supp. 10 (W.D. La. 1963),
   *aff'd*, 326 F.2d 754 (5th Cir. 1964). ........................................... 16

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007)........................................................................ 28

*Beneficial Consumer Disc. Co.* v. *Poltonowicz*,
   47 F.3d 91 (3d Cir. 1995).............................................................. 17

*Block* v. *Neal*,
   460 U.S. 289 (1983)........................................................................ 11

*Campbell* v. *Wells Fargo Bank, N.A.*,
   781 F.2d 440 (5th Cir. 1986). ....................................................... 28

*Celotex Corp.* v. *Catrett*,
   477 U.S. 317 (1986)..................................................................... 39, 41

*Cole* v. *United States*,
   651 F. Supp. 221 (N.D. Fla. 1986)................................................ 16

*Diaz Castro* v. *United States*,
   451 F. Supp. 959 (D. P.R. 1978).................................................... 16

*Dyer* v. *United States*,
   96 F. Supp. 2d 725 (E.D. Tenn. 2000). ......................................... 16

*FDIC* v. *Meyer*,
   510 U.S. 471 (1994)........................................................................ 10

*First Commonwealth Corp.* v. *Hibernia Nat. Bank of New Orleans*,
   891 F. Supp. 290 (E.D. La. 1995). ................................................ 38

**PAGE**

*Forsyth* v. *Barr*,
19 F.3d 1527 (5th Cir. 1994). ............................................. 40

*Garcia* v. *United States*,
776 F.2d 116 (5th Cir. 1985). ............................................. 12

*Gillis* v. *Louisiana*,
294 F.3d 755 (5th Cir. 2002). ............................................. 39

*Guile* v. *United States*,
422 F.3d 221 (5th Cir. 2005). ............................................. 10

*Hendry Corp.* v. *Aircraft Rescue Vessels*,
113 F. Supp. 198 (E.D. La. 1953) ............................... 24, 35, 46

*Houston Exploration Co.* v. *Halliburton Energy Services, Inc.*,
269 F.3d 528 (5th Cir. 2001). ....................... 24, 27, 34, *passim*

*In re Bausch & Lomb Inc.*,
MDL No. 1785, 2007 WL 3046682 (D. S.C. 2007). .......................... 28

*In re Guidant Corp., Implantable Defibrillators*,
MDL No. 05-1708, 2009 WL 1921902 (D. Minn. July 1, 2009) ............... 28

*In re Katrina Canal Breaches Litig.*,
309 Fed. Appx. 836 (5th Cir. 2009) .................................... 28

*In re Silver Bridge Disaster Litigation*,
381 F. Supp. 931 (S.D. W. Va. 1974). .................................. 16

*Int'l Ass'n of Machinists* v. *TX Steel Co.*,
538 F.2d 1116 (5th Cir. 1976). .......................................... 9

*JBP Acquisitions, LP* v. *United States*,
224 F.3d 1260 (11th Cir. 2000). ..................................... 11, 19

*Jimenez-Nieves* v. *United States*,
682 F.2d 1 (1st Cir. 1982). ............................................ 16

*Kokkonen* v. *Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ..................................................... 8

**PAGE**

*Land* v. *Dollar*,
  330 U.S. 731 (1947)........................................................................................... 9

*Little* v. *Liquid Air Corp.*,
  37 F.3d 1069 (5th Cir. 1994). .................................................................. 39, 40

*Lloyd* v. *Cessna Aircraft Co.*,
  429 F. Supp. 181 (E.D. Tenn. 1977)...................................................... 16

*Malacara* v. *Garber*,
  353 F.3d 393 (5th Cir. 2003). .................................................................. 40

*Matsushita Elec. Indus. Co., Ltd.* v. *Zenith Radio Corp.*,
  475 U.S. 574 (1986)............................................................................ 38, 39

*McNeily* v. *United States*,
  6 F.3d 343 (5th Cir. 1993). ............................................................ 10, 11, 12

*Mortensen* v. *First Fed. Sav. & Loan Assoc.*,
  549 F.2d 884 (3d Cir. 1977)............................................................................ 9

*Mullens* v. *United States*,
  976 F.2d 724, (1st Cir. Oct. 2, 1992),
  *aff'g Mullens v. United States*, 785 F. Supp. 216 (D. Me. 1992). ................... 18, 19

*Muniz Rivera* v. *United States*,
  204 F. Supp. 2d 305 (D. P.R. 2002)............................................................ 11

*National Mfg. Co.* v. *United States*,
  210 F.2d 263 (8th Cir. 1954). .................................................................. 16

*Orthopedic & Sports Injury Clinic* v. *Wang Laboratories, Inc.*,
  922 F.2d 220 (5th Cir. 1991). .................................................................. 26

*Ramming* v. *United States*,
  281 F.3d 158 (5th Cir. 2001). ............................................................... 8, 9

*Resolution Trust Corp.* v. *International Ins. Co.*,
  819 F. Supp. 554 (E.D. La. 1993)........................................................... 39

*Reynolds* v. *United States*,
  643 F.2d 707 (10th Cir. 1981). ..................................................... 11, 27, 50

v

**PAGE**

*Robbins* v. *Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008). ....................................................... 29

*Russ v. United States*,
    129 F. Supp. 2d 909 (M.D. N.C. 2001). .............................................. 17

*St. Germain* v. *Howard*,
    556 F.3d 261 (5th Cir. 2009). .......................................................... 32

*Schneider* v. *United States*,
    936 F.2d 956 (7th Cir. 1992). .................................................... 12, 17

*Skotak* v. *Tenneco Resins, Inc.*,
    953 F.2d 909 (5th Cir. 1992). .......................................................... 39

*Smith* v. *Amedisys*,
    298 F.3d 434 (5th Cir. 2002). .......................................................... 40

*Steel Co.* v. *Citizens for a Better Env't*,
    523 U.S. 83 (1998). ......................................................................... 8

*Sykes* v. *Bayer Pharm. Corp.*,
    548 F. Supp. 2d 208 (E.D. Va 2008). ............................................... 31

*Turner* v. *United States*,
    595 F. Supp. 708 (W.D. La. 1984)..................................................... 12

*United States ex rel. Reagan* v. *E. Tex. Med. Ctr. Reg'l Heathcare Sys.*,
    384 F.3d 168 (5th Cir. 2004). ........................................................... 9

*United States* v. *Mitchell*,
    463 U.S. 206 (1983)....................................................................... 10

*United States* v. *Mottaz*,
    476 U.S. 834 (1986)....................................................................... 10

*United States* v. *Neustadt*,
    366 U.S. 696 (1961).......................................... 11,12, 15, *passim*

*United States* v. *Nordic Village, Inc.*,
    503 U.S. 30 (1992)......................................................................... 10

vi

**PAGE**

*United States* v. *Orleans,*
    425 U.S. 807 (1976)............................................................................ 10

*United States* v. *S.A. Empresa de Viacao Aerea Rio Grandense (Varig  Airlines),*
    467 U.S. 797 (1984)....................................................................... 10, 11

*United States* v. *Testan,*
    424 U.S. 392 (1976)............................................................................ 10

*United States* v. *Williams,*
    514 U.S. 527 (1995)............................................................................ 10

*Vaughn* v. *United States,*
    259 F. Supp. 286, (N.D. Miss. 1966)................................................. 17

**STATE CASES**

*Ambrose* v. *New Orleans Police Dept. Ambulance Serv.,*
    639 So.2d 216 (La. 1994)............................................ 23, 24, 25, *passim*

*Ashmore* v. *Hilton,*
    834 So.2d 1131 (La. App. 3 Cir. 2002)............................................. 37

*Binkley* v. *Landry,*
    811 So.2d 18 (La. App. 1 Cir. 2001)................................................. 38

*Bourgeois* v. *State Farm Mut. Auto Ins. Co.,*
    562 So.2d 1177 (La. App. 4 Cir. 1990)................................. 24, 32, 33, *passim*

*Bridges* v. *City of Carencro,*
    982 So.2d 306 (La. App. 3 Cir. 2008) ..................... 26, 36, 43, *passim*

*Brown v. Lee,*
    929 So.2d 775 (La. App. 4 Cir. 2006)................................................ 49

*Caracci* v. *Cobblestone Village Condo. Assoc.,*
    927 So.2d 542 (La. App. 5 Cir.  2006)................................................ 35

*Cates* v. *Beauregard Elec. Coop., Inc.,*
    316 So.2d 907 (La. App. 3 Cir. 1975) ..................................... 25, 34, 38

*Falkowski* v. *Maurus,*
    637 So.2d 522 (La. App. 1 Cir. 1993)....................................... 25, 26, 34

**PAGE**

*Foshee v. Louisiana Farm Bureau Cas. Ins. Co.*,
948  So.2d 1171 (La. App. 2 Cir. 2009)........................................................................ 24, 26

*Harkins* v. *M.G. Mayer Yacht Services, Inc.*,
952 So.2d 709 (La. App. 4 Cir. 2006)............................................................................. 27

*Holt* v. *State*,
671 So.2d 1164 (La. App. 2 Cir. 1996)............................................................................ 37

*Mullins* v. *State Farm Fire and Cas. Co.*,
697 So.2d 750 (La. App. 1 Cir. 1997)................................................................. 26, 36, 50

*Nelson* v. *Nagin*,
No. 06-9901, 2007 WL 2122167 (E.D. La. July 19, 2007). .......................................... 31

*Rabalais* v. *Nash*,
952 So.2d 653 (La. 2007)................................................................................... 23, 25

*Reynolds v. Louisiana Plastic*,
26 So.3d 149, 153 (La. App. 2 Cir. 2009) ..................................................... 27, 50

*Roton* v. *Faulconer*,
966 So.2d 790 (La. App. 2 Cir. 2007)....................................... 23, 24, 33, *passim*

*Tauzier v. St. Patrick Parade Committee of Jefferson, Inc.*,
807 So.2d 1106 (La. App. 5 Cir. 2002)............................................................ 38, 40, 46

*State v. Vinzant*,
7 So.2d 917 (La. 1942). ..................................................................................... 23, 24

*Wallace* v. *United States*,
2004 WL 63503 (D. R.I. Jan. 8, 2004)................................................................ 17, 18, 19

**DOCKETED CASES**

*Alexander, et al.* v. *Gulf Stream Coach, Inc., et al.*,
No. 09-2892. ..................................................................................................... 15, 42

*Castanel* v. *Recreation by Design*,
No. 09-3251. ............................................................................................................ 43

## <u>STATUTES</u>

28 U.S.C. § 1346(b). ................................................................................................. 1, 3

28 U.S.C. § 1346(b)(1) . ............................................................... 6, 10, 19, *passim*

28 U.S.C. § 2401(b). ................................................................................................. 4

28 U.S.C. § 2671 ................................................................................................. 3, 10

28 U.S.C. §§ 2671-2680. ........................................................................................ 1

28 U.S.C. § 2680(a). ................................................................................................. 4

28 U.S.C. § 2680(h). ............................................................ 11, 12, 15, *passim*

## <u>RULES</u>

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 28

Fed. R. Civ. P. 12(b)(1)............................................................................... 1, 9, 18

Fed R. Civ. P. 12(b)(6)......................................................... 1, 21, 28, *passim*

Fed. R. Civ. P. 12(h)(3)....................................................................................... 8, 9

Fed. R. Civ. P. 54(b). ............................................................................................. 5

Fed. R. Civ. P. 56................................................................................. 2, 8, 9, *passim*

## INTRODUCTION

Defendant, the United States of America ("United States"), submits this memorandum in support of its motion to dismiss the remaining Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, claims of all "Louisiana Plaintiffs,"[1] or, in the alternative, for summary judgment. Because the protections of La. R.S. 29:733.1 would apply to a private person under similar circumstances, Plaintiffs must establish that their "death, injury, loss, or damage" was proximately caused by the "gross negligence or the willful and wanton misconduct" of the United States. Order and Reasons, May 18, 2010 (Rec. Doc. 14124); *see* La. R.S. 29:733.1. Plaintiffs' remaining claims, which can only survive if they meet this heightened standard for liability, fail for three separate, independent, reasons.

First, Plaintiffs' remaining claims must be dismissed for lack of subject-matter jurisdiction based upon the FTCA's "misrepresentation exception." *See* 28 U.S.C. § 2680(h); Fed. R. Civ. P. 12(b)(1). Although Plaintiffs plead that the United States insufficiently responded to the issue of formaldehyde in EHUs in a variety of ways, the factual core of their claims is that the government improperly withheld and obfuscated formaldehyde information. Consequently, because these claims arise from the alleged misrepresentations of government employees, they fall outside the FTCA's limited waiver of sovereign immunity and must be dismissed.

---

[1] "Louisiana Plaintiffs" are defined as "all plaintiffs in this MDL . . . who inhabited FEMA-provided . . . EHUs . . . and allegedly suffered injuries therefrom – while in the State of Louisiana." *See* Order and Reasons, May 18, 2010, at 3 (Rec. Doc. 14124); U.S. Mem. at 1 n.1 (Rec. Doc. 6970-2). Currently, this includes those plaintiffs named in the civil actions enumerated in Exhibit A to this motion. Ex. A (Inventory of Cases).

Second, Plaintiffs' remaining claims must be dismissed for failure to state a claim upon which relief can be granted.  *See* Fed R. Civ. P. 12(b)(6).  Even accepting Plaintiffs' allegations as true, Plaintiffs have failed to plead plausible factual allegations that the government acted in a way that would establish gross negligence or willful and wanton behavior under Louisiana tort law.  Stripped of accompanying legal conclusions, Plaintiffs have not alleged facts that show the United States acted in an outrageous manner or with an utter disregard for Plaintiffs' circumstances.  To the contrary, Plaintiffs' own factual allegations reflect that the government took a variety of actions, although allegedly flawed, in response to the issue of formaldehyde in EHUs.  These allegations do not reflect an entire absence of care, as required to establish gross negligence, or outrageous behavior, necessary for a finding of willful and wanton misconduct.  Even if Plaintiffs' factual allegations supported a claim that the United States should have responded to the formaldehyde issue in a quicker, better, and more proactive manner, these are not the kinds of acts and omissions that satisfy this  heightened standard under Louisiana law.

Third, the United States is entitled to summary judgment on Plaintiffs' remaining claims because Plaintiffs cannot articulate a genuine issue of material fact as to whether the United States proximately caused Plaintiffs' damages through gross negligence or willful and wanton misconduct.  *See* Fed. R. Civ. P. 56.  The current factual record is devoid of any admissible evidence that the United States treated any Plaintiff in this litigation with the requisite willingness that extreme harm would occur.  Even if the United States was slow to react and misguided in its approach to the formaldehyde issue, the factual record demonstrates that the government took steps towards the safety of emergency housing unit ("EHU") occupants.  There are no facts to support an argument that the government committed the kind of outrageous

2

conduct required to lose the immunity protections of La. R.S. 29:733.1.

## PROCEDURAL BACKGROUND

Plaintiffs in this MDL are "individuals who resided in emergency housing units ("EHUs") provided by . . . [FEMA] . . . after Hurricanes Katrina and Rita." *See* Order and Reasons, August 21, 2009 (Rec. Doc. 2789). "In general, Plaintiffs claim injuries resulting from alleged exposure to the release of formaldehyde and/or formaldehyde vapors in these EHUs." *Id.* (citing Rec. Doc. 109 ¶ 30). All actions currently pending before this MDL Court necessarily "share factual questions relating to allegations that trailers – provided by . . . [FEMA] in the wake of Hurricanes Rita and Katrina – contain materials which emit dangerous, excessive levels of formaldehyde." Transfer Order, October 24, 2007 (Rec. Doc. 1).

As enunciated in the "Fourth Supplemental and Amended Administrative Master Complaint" (Rec. Doc. 7688), Plaintiffs have filed suit against over one-hundred entities, including the United States. *See* Third Administrative Master Complaint ("AMC") (Rec. Doc. 4486) ¶¶ 10-115, 124 (as incorporated by reference through the Fourth AMC).[2] They purport that the United States is subject to the jurisdiction of this Court through the FTCA's limited waiver of sovereign immunity. *Id.* ¶ 116 (citing 28 U.S.C. §§ 1346, 2671, *et seq*.). On its face, Plaintiffs' Administrative Master Complaint "incorporates the factual and legal allegations being presented on behalf of Plaintiffs herein, in order to streamline motion practice and facilitate the

---

[2] Because the "Fourth Supplemental and Amended Administrative Master Complaint" (Rec. Doc. 7688) wholly incorporates by reference paragraphs presented in the "Third Supplemental and Amended Administrative Master Complaint" (Rec. Doc. 4486), without reproduction, citations in this memorandum to such incorporated paragraphs are stated as direct citations to the original "Third Supplemental and Amended Administrative Master Complaint."

3

disposition of common issues." Third AMC (Rec. Doc. 4486) ¶ 5. Through this procedural device, "those individuals and entities listed in each and every Complaint or action filed in, or transferred into, this MDL," have articulated the factual and legal allegations surrounding their claims against the United States through one common pleading. *Id.* ¶ 9.

Throughout this litigation, the United States has consistently secured the dismissal of various FTCA claims for lack of subject-matter jurisdiction.[3] Through its October 3, 2008, Order and Reasons, the Court ruled that any claims based upon the United States' initial selection and provision of travel trailers, park models, and mobile homes as EHUs for disaster victims were barred by the FTCA's discretionary function exception, 28 U.S.C. § 2680(a).[4] Order and Reasons, October 3, 2008, at 43-44 (Rec. Doc. 717); Order and Reasons, August 13, 2009, at 1 (Rec. Doc. 2621). Similarly, the Court barred Plaintiffs' claims based upon the United States' alleged negligence in providing and installing EHUs. *Id.* at 44. Finally, the Court found that FEMA's response to the issue of formaldehyde in EHUs was discretionary because it was not controlled or defined by any specific rules or regulations, *id.* at 44-55, but concluded that some claims arising from FEMA's alleged negligence in responding to complaints and concerns

---

[3] Many of these jurisdictional arguments substantially overlap with one another (*i.e.*, a Plaintiff's FTCA claims may be barred both by the FTCA's two-year statute of limitations and the FTCA's discretionary function exception). Throughout the course of this MDL, the Court has concluded that the FTCA actions of certain Plaintiffs are barred for lack of jurisdiction pursuant to the FTCA's two-year statute of limitations, 28 U.S.C. § 2401(b). *See, e.g.,* Order and Reasons, August 21, 2009 (Rec. Doc. 2789); Order and Reasons, January 21, 2010 (Rec. Doc. 10493); Order and Reasons, January 22, 2010 (Rec. Doc. 10626).

[4] Pursuant to the FTCA's discretionary function exception, the Court also wholly dismissed all claims against the government arising from alleged exposure to formaldehyde in manufactured housing units (mobile homes) that were provided as EHUs. Order and Reasons, October 3, 2008, at 21 n.9 (Rec. Doc. 717).

about formaldehyde in EHUs may not be barred by the FTCA's discretionary function exception because FEMA's conduct may not have been grounded in permissible policy considerations.[5]  *Id.* at 11; *see* Order and Reasons, August 13, 2009, at 1 (Rec. Doc. 2621).  The Court reasoned that there may have been some inaction, "albeit temporary" inaction, on the part of the government.[6] Order and Reasons, August 13, 2009, at 5 (Rec. Doc. 2621).

On November 12, 2009, the United States filed a motion (Rec. Doc. 6970) to dismiss the FTCA negligence claims of all Louisiana Plaintiffs for lack of jurisdiction based upon the FTCA's private analogous liability requirement.[7]  The motion argued that the United States is shielded from all FTCA negligence liability because Louisiana law, the law of the state where the alleged acts and omissions occurred, would immunize a private person under similar circumstances.  *See* La. R.S. 29:733.1.  The Court granted this motion through its May 18, 2010, Order and Reasons (Rec. Doc. 14124), and dismissed all of Louisiana Plaintiffs' FTCA claims sounding in simple negligence, yet, specifically noted that "Plaintiffs maintain the right to pursue

---

[5]  The Court found that June 2006 appears to be the general cutoff date for most, if not all, of Plaintiffs' claims against the government because the government was seemingly exercising its discretionary function in June 2006 by responding to complaints of formaldehyde in EHUs in a manner that complied with general policy pronouncements.  *See* Order and Reasons, August 13, 2009, at 2 (Rec. Doc. 2621).

[6]  Under Louisiana tort law, delay or temporary inaction is insufficient to establish gross negligence.  *See infra.*

[7]  The United States subsequently filed similar motions to dismiss the FTCA claims of all Mississippi Plaintiffs (Rec. Doc. 7690) and Alabama Plaintiffs (Rec. Doc. 10656) by referencing comparable state-specific statutory protections.  These motions were granted on June 24, 2010 (Mississippi), and August 9, 2010 (Alabama), respectively.  *See* Orders and Reasons (Rec. Docs. 14486, 15061).  Because these rulings disposed of these Plaintiffs' claims against government in their ***entirety***, judgment under Fed. R. Civ. P. 54(b) was appropriately entered on the Mississippi Plaintiffs' claims on August 5, 2010, *see* Order (Rec. Doc. 15058), and on the Alabama Plaintiffs' claims on August 24, 2010, *see* Order (Rec. Doc. 15827).

other causes of action against the Government as set forth in the supplemental and amended

master complaints."  Order and Reasons, May 18, 2010, at 2 (Rec. Doc. 14124).  This motion is

directed at the legal and factual bases underlying these remaining FTCA claims.

**I.      Louisiana Plaintiffs' Remaining Claims Fall Outside the Court's Subject-Matter Jurisdiction Because the Claims Arise Out of an Alleged Government Misrepresentation.**

**A.      Summary**

Given this Court's past rulings paring down Plaintiffs' FTCA claims, Plaintiffs now

center their remaining claims upon the allegation that the United States failed to take appropriate

action in response to concerns about formaldehyde in EHUs because it failed to promptly,

properly, and effectively collect, share, and communicate health/safety information about

formaldehyde exposure in EHUs.  The government's alleged omissions related to formaldehyde

information and alleged failure to provide occupants with information are essential to Plaintiffs'

remaining FTCA claims.  Although Plaintiffs have pleaded both specific failure to warn claims

and general claims that the United States should have responded to formaldehyde concerns in a

more timely and different manner, the government conduct at the factual heart of their remaining

claims is the government's use/misuse and provision/withholding of information.[8]

---

[8]  Specifically, Plaintiffs allege that the United States failed to warn them about formaldehyde in
EHUs.  Third AMC (Rec. Doc. 4486) ¶¶ 205, 209.  Generally, Plaintiffs allege that the United States
provided unreasonably dangerous EHUs and failed to address or remedy the dangerous nature of the
EHUs.  *Id.* ¶ 209.  According to Plaintiffs' own factual allegations, had the United States provided
Plaintiffs with a sufficient warning, the Plaintiffs could have avoided harm, or at least made an informed
choice as to whether they wanted to remain in the free government shelters, thus, breaking the causal
chain of their current claims.  Although Plaintiffs also allege that the United States had an affirmative
duty to remove Plaintiffs from their EHUs and relocate them into alternate housing assistance, *id.*, there is
no legal support for the proposition that a private person would owe such a heightened duty under
Louisiana state tort law.  *See* 28 U.S.C. §§ 1346(b)(1), 2674 (imposing the FTCA's private analogous
liability requirement).  Thus, the United States' alleged breach of duty in this case turns on its alleged

According to Plaintiffs, had the United States provided them with what they consider to be appropriate information regarding formaldehyde in EHUs, Plaintiffs would have reacted in a different manner, and would have either vacated their EHUs or taken some other form of remedial action.  Plaintiffs' claimed detrimental reliance on the alleged failure of the United States' to provide information is an inherent component of their claims and is part of the requisite causal chain.  In other words, had the United States responded to the issue of formaldehyde in EHUs in a different manner by issuing the desired warning to Plaintiffs in accord with their desired timetable, the alleged breach of duty at the factual core of Plaintiffs' remaining claims would cease to exist.

Where a plaintiff's FTCA claim arises out of an alleged detrimental reliance on government misinformation, or out of an alleged failure of the government to provide information, the court lacks subject-matter jurisdiction pursuant to 28 U.S.C. § 2680(h) (barring all FTCA claims "arising out of . . . misrepresentation [or] deceit").  This misrepresentation exception to the FTCA's waiver of sovereign immunity is jurisdictional in nature and must be broadly construed.  *See infra*.  Any and all claims that fall within the boundaries of the misrepresentation exception must be dismissed, regardless of how a plaintiff has labeled or described his or her claims.  *Id*.  Here, because the essence of Plaintiffs' remaining claims involves the government's alleged breach of duty in failing to respond to concerns about formaldehyde in EHUs by not using due care in the collection and communication of information, their remaining claims are barred by the misrepresentation exception.

---

failure to take appropriate remedial action by providing occupants with timely and sufficient information about potentially hidden hazards in EHUs.

B.      Standard of Review

The United States has moved to dismiss Louisiana Plaintiffs' remaining FTCA claims for

lack of subject-matter jurisdiction, pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules

of Civil Procedure.  In the alternative, the United States has moved for summary judgment under

Rule 56.  Because federal courts are inherently courts of limited jurisdiction, the law starts with

the presumption that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life*

*Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Moreover, jurisdiction is a threshold issue.  The

separation of powers doctrine requires a federal court to determine whether it has jurisdiction as

soon as possible, before reaching the merits of a case.  *Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83, 94-95 (1998).  As the party averring jurisdiction, Louisiana Plaintiffs bear the

burden of proof and must establish that the Court possesses subject-matter jurisdiction over their

remaining FTCA claims.  *See Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies

outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the

party asserting jurisdiction."); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (in

an FTCA case, stating that the "burden of proof . . . is on the party asserting jurisdiction").

"Lack of subject-matter jurisdiction may be found in any one of three instances: (1) the

complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or

(3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

*Ramming*, 281 F.3d at 161; *see Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) (in deciding a

motion to dismiss for lack of jurisdiction, a court "may inquire by affidavits or otherwise, into

the facts as they exist"); *Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir.

1977) ("[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its

8

power to hear the case."). Here, the jurisdictional question – whether as a matter of law Plaintiffs' remaining FTCA claims arise out of a government misrepresentation or withholding of information – is not intertwined with, and, in fact, bears no relation to a factual determination of whether the United States was grossly or willfully and wantonly negligent.[9] *See* Order and Reasons, January 22, 2010, at 3-4 (Rec. Doc. 10626); Order and Reasons, May 18, 2010, at 8 n.6 (Rec. Doc. 14124).

### C.   Argument

#### 1.   The FTCA Does Not Waive the United States' Sovereign Immunity for Claims That Arise Out of a Misrepresentation; This Bar Applies to Both Affirmative Statements and Failures to Communicate.

"Absent a waiver, sovereign immunity shields the Federal Government . . . from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also United States v. Testan*, 424 U.S. 392, 399 (1976) (stating the United States "is immune from suit save it consents to be sued"). The United States' consent to suit cannot be implied, but must be unequivocally expressed and strictly construed. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34-35 (1992); *United States v.*

---

[9] In some circumstances, courts have converted motions to dismiss under Rules 12(b)(1) and 12(h)(3) into motions for summary judgment under Rule 56 when resolution of the jurisdictional question would purportedly be intertwined with the merits of the case and materials outside the pleadings have been submitted. *See United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Heathcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004); *see, e.g.,* Order and Reasons, October 3, 2008, at 9 (Rec. Doc. 717). Here, the only issue for the Court to decide is whether the gravamen of Louisiana Plaintiffs' remaining FTCA claims is the United States' alleged withholding of information in light of Plaintiffs' allegations and the undisputed facts. No materials outside the record have been submitted for this determination regarding the applicability of the FTCA's misrepresentation exception. This purely legal inquiry affects all Louisiana Plaintiffs in the same manner.

Even if the Court were to apply the summary judgment standard to this portion of the United States' motion, summary judgment is appropriate because there is no genuine issue of material fact regarding whether Plaintiffs' claims are barred by the misrepresentation exception (28 U.S.C. § 2680(h)). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). "It is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate." *Int'l Ass'n of Machinists v. TX Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976).

*Williams*, 514 U.S. 527, 531 (1995); *Guile v. United States*, 422 F.3d 221, 229 (5th Cir. 2005).  It

is the existence of this consent that defines the scope of a court's jurisdiction.  *See United States*

*v. Mitchell*, 463 U.S. 206, 212 (1983); *United States v. Mottaz*, 476 U.S. 834, 841 (1986).

Through the FTCA, Congress has chosen to waive the United States' sovereign immunity

and, thus, authorize jurisdiction, for certain torts committed by federal employees while acting

within the scope of their employment.  28 U.S.C. §§ 1346(b)(1), 2671.  Importantly, this waiver

is limited by a number of specific exceptions.  *See United States v. Orleans*, 425 U.S. 807, 814

(1976) (because the United States "can be sued only to the extent that it has waived its immunity,

due regard must be given to the [FTCA's] exceptions").  These exceptions to the FTCA's limited

waiver of sovereign immunity must be strictly construed in favor of the government.  *McNeily v.*

*United States*, 6 F.3d 343, 347 (5th Cir. 1993) (holding that the FTCA's exceptions must be

"strictly construed in favor of the United States").  As the Supreme Court has stated, "Congress

was careful to except . . . several important classes of tort claims" from the FTCA's waiver of

sovereign immunity.  *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig*

*Airlines)*, 467 U.S. 797, 808 (1984).

At 28 U.S.C. § 2680(h), the FTCA expressly states that it does not waive sovereign

immunity for any "[a]ny claim arising out of . . . ***misrepresentation*** [or] ***deceit*** . . . ."  28 U.S.C.

§ 2680(h) (emphasis added).  This misrepresentation exception bars all claims which arise out of

alleged detrimental reliance on government misinformation, ***or*** out of an alleged failure of the

government to provide information.  *See United States v. Neustadt*, 366 U.S. 696, 705-06, 708-

09 (1961) (barring claim that the government negligently failed to inform plaintiff of defects in a

house).  The exception is broadly construed and deprives courts of jurisdiction over any claims

10

for intentional or negligent concealment, misrepresentation, or omission of material fact. *McNeily*, 6 F.3d at 347; *see Neustadt*, 366 U.S. at 702; *Block v. Neal*, 460 U.S. 289, 298 (1983) (stating that the exception "preserves sovereign immunity with respect to a broad range of government actions"); *Reynolds v. United States*, 643 F.2d 707, 712 (10th Cir. 1981) ("The 'misrepresentation' exception of 28 U.S.C. § 2680(h) has been broadly construed to include false representations of any type."). In other words, the exception applies equally in cases involving both misstatements and omissions, regardless of whether the conduct is alleged to have been negligent or intentional, and regardless of whether the misrepresentation was affirmative or implicit. *See JBP Acquisitions, LP v. United States*, 224 F.3d 1260, 1265-66 (11th Cir. 2000) (barring a claim based upon a failure to convey information about a property, explaining that "the failure to communicate, as well as direct communication, is encompassed by the misrepresentation exception"); *Muniz Rivera v. United States*, 204 F. Supp. 2d 305, 310-13 (D. P.R. 2002) (holding that the exception "applies to more than mere affirmative statements; a claim based on a failure to warn or to communicate will also be barred").

To determine whether a claim is barred by the misrepresentation exception, a court must examine the nature of the conduct upon which the tort claim is based. *See McNeily*, 6 F.3d at 347. This inquiry is shaped solely by federal law. *See Neustadt*, 366 U.S. at 705-06. Whether a plaintiff has specifically labeled his or her claim as a claim for misrepresentation is irrelevant to the analysis. *See Neustadt*, 366 U.S. at 705-06. Even if other specific acts of fault are alleged, the misrepresentation exception will bar all claims in the action if the essence of the claims and the alleged breach relates to a withholding of information or misrepresentation. *See Neustadt*, 366 U.S. at 705-06; *see also Turner v. United States*, 595 F. Supp. 708, 710 (W.D. La. 1984)

11

("One cannot escape [the misrepresentation exception] to the waiver of sovereign immunity under 28 U.S.C. § 2680(h) by merely labeling the cause of action something which it is not.").

The key question is not whether the government's withholding of information or misstatement is the sole element in a plaintiff's claim, but whether it is "an essential element." *See Schneider v. United States*, 936 F.2d 956, 961 (7th Cir. 1992) (barring property damage and personal injury claims based upon government statements regarding a home).  Where the gravamen of a claim or group of claims is the government's failure to use due care in obtaining and communicating information, the case is barred by the misrepresentation exception.  *See Neustadt*, 366 U.S. at 706, 710-11.  Even where the gravamen of a claim is that the government had a specific duty to provide information, but failed to do so, the exception still applies to bar the claim.  *See Neustadt*, 366 U.S. at 710-11.

> **2.      Louisiana Plaintiffs' Remaining Claims Focus upon the Government's Alleged Failure to Obtain and Provide Full, Complete, and Accurate Formaldehyde Information; Thus, Their Claims Are Barred by the Misrepresentation Exception.**

It is apparent from Plaintiffs' own allegations that the government's alleged failure to provide them with information is at the factual core of their remaining claims.  The essence of Plaintiffs' remaining claims is that the government did not appropriately respond to concerns about formaldehyde in EHUs because it breached its duty to adequately warn EHU residents about the hidden dangers of formaldehyde and to report formaldehyde testing results.  *See* Third AMC (Rec. Doc. 4486) ¶ 209.  Plaintiffs directly attribute their alleged damages to the purported lack of appropriate or effective formaldehyde warnings from the United States.  *Id.* ¶¶ 205-07.

Through Plaintiffs' Administrative Master Complaint, articulating the factual and legal

allegations of the underlying plaintiffs in this MDL through one common pleading, *see* Third

AMC (Rec. Doc. 4486) ¶¶ 5,9, Plaintiffs plead that: the United States negligently failed to

provide safe and habitable EHUs and respond to formaldehyde concerns based upon the facts

surrounding the government's purported knowledge regarding formaldehyde, *id.* ¶¶ 173-76; the

United States negligently failed to obtain information regarding formaldehyde in EHUs, *id.* ¶

181; and the United States negligently failed to timely transmit this information to the occupants

of EHUs, *id.* ¶ 209.  Additional allegations regarding the government conduct at issue in this

case include the following:

| ¶ 187 | "FEMA's activities . . . included hiding, manipulating and ignoring the extant science and scientific work and concerns of federal scientists in other agencies" |
|---|---|
| ¶ 188 | "FEMA . . . explicitly sought to ensure that no longer-term exposure considerations would be included in the health consultation" |
| ¶ 191 | "Dr. Mark Klein, of the ATSDR . . .sent a letter to FEMA's counsel advising . . . that the February Health Consultation was possibly misleading and a threat to public health for failure to disclose the carcinogenic status of formaldehyde and that there are no safe exposure levels" |
| ¶ 192 | "Despite this information, FEMA and the ATSDR did not revise the original Health Consultation until October 2007 to include the warning that the original Health Consultation did not sufficiently discuss the health implications of formaldehyde exposure" |
| ¶ 198 | FEMA engaged in "public obfuscation of testing results" |
| ¶ 205 | "The Federal Government was obligated to promptly warn the Named Plaintiffs of any defects in the housing units which could cause harm and of which the Federal Government was aware" |
| ¶ 209(b) | FEMA was negligent and at fault in "failing to adequately warn the each [sic] of the Named Plaintiffs of the unreasonably dangerous |

nature of the housing units which the Plaintiffs occupied"

¶ 209(e)    FEMA was negligent and at fault in "knowingly and intentionally suppressing and withholding information from the public that the temporary housing units contained elevated levels of formaldehyde"

*See* Third AMC (Rec. Doc. 4486) at pp. 47-60.

The fact that Plaintiffs' remaining claims directly stem from a failure to communicate information was recently underscored by Plaintiffs' own representations to the United States Court of Appeals for the Fifth Circuit.  In an appeal involving one of the constituent cases in this MDL, Plaintiffs summarized their overall case against the United States as involving thousands of lawsuits in which Plaintiffs allege that the United States "caused them harm by ***withholding information*** concerning the risks and carcinogenic nature of formaldehyde exposure inside emergency housing units provided to them by FEMA after Hurricanes Katrina and Rita."  Ex. B (Pls.' App. Brief, *Alexander, et al. v. Gulf Stream Coach, Inc., et al.*, Case No. 10-30451), at 1 (emphasis added); *see also id.* at 2 (summarizing Plaintiffs' Complaint as alleging that the United States failed "to disclose to them that they were being exposed to potentially dangerous and high levels of formaldehyde"); *id.* at 13 ("the fault of FEMA in this case is based not on product liability, but on its ***deliberate withholding of information*** about formaldehyde health risks after it became actually aware of these risks") (emphasis added).  These statements echo Plaintiffs' allegations.  Similarly, in describing Plaintiffs' claims that may fall outside the discretionary function exception, the Court has focused on FEMA's alleged conduct in allowing "some hurricane victims to remain in these trailers for some time thereafter [after learning about potential formaldehyde concerns] without any notification or warning."  Order and Reasons,

14

October 3, 2008, at 28 (Rec. Doc. 717).

Thus, according to Plaintiffs, the alleged facts reflecting government liability in this case relate to obtaining and disclosing information; this conduct, and the alleged detrimental effects therefrom, are the gravamen of their remaining claims. While Plaintiffs have articulated a variety of ways in which the government allegedly failed to respond to the formaldehyde issue, the government's alleged failure to inform Plaintiffs of the hazards known to the government about the hidden dangers of formaldehyde in EHUs is at the core of their remaining "formaldehyde response" claims in this litigation and is inextricable from the alleged chain of causation. Because these remaining FTCA claims arise out of the government's alleged withholding of information, their claims are foreclosed by the misrepresentation exception. *See* 28 U.S.C. § 2680(h); *see Neustadt*, 366 U.S. at 705-06, 708-09. Plaintiffs' alleged harm was directly caused by the government's transmission, or lack thereof, of information about formaldehyde; thus, Plaintiffs' remaining claims fall outside the jurisdiction of this Court. *Id.* at 710-11 ("While we do not condone carelessness by government employees in gathering and promulgating . . . information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability.").

Claims, such as those asserted by Plaintiffs, that are premised upon an alleged failure to provide full, complete, and accurate information are barred by 28 U.S.C. § 2680(h), regardless of the type of claim. "[T]he exception is just as applicable to actions involving personal injury and wrongful death as it is to those involving only financial or commercial loss."[10] *See Diaz Castro*

---

[10] The misrepresentation exception has been held to apply in a variety of contexts, including personal injury and wrongful death cases involving safety. *See, e.g., In re Silver Bridge Disaster Litigation*, 381 F. Supp. 931, 977 (S.D. W. Va. 1974) (barring wrongful death actions for

*v. United States*, 451 F. Supp. 959, 962-963(D. P.R. 1978) (barring claim stemming from the government's advice regarding whether a suspect could be escorted without restraints); *Schneider*, 936 F.2d 963 (affirming dismissal under the misrepresentation exception where plaintiff alleged personal injuries resulting from exposure to allergens); *Brewer v. HUD*, 508 F. Supp. 72, 75-76 (S.D. Ohio) (claim based upon failure to disclose structural defect that made house unfit for habitation barred by misrepresentation exception).[11]

Although not the case here, even if the United States' conduct were clearly negligent, or even grossly negligent, the misrepresentation exception would still serve to bar Plaintiffs' claims. This would be true even if the government's conduct amounted to fraudulent concealment. *See, e.g., Beneficial Consumer Disc. Co. v. Poltonowicz*, 47 F.3d 91, 96 (3d Cir.

---

misrepresentations surrounding the safety of a bridge that collapsed); *Dyer v. United States*, 96 F. Supp. 2d 725, 737 (E.D. Tenn. 2000) (barring claim that the United States withheld information about hazardous toxins at a nuclear facility and mis-characterized the nature of the dangers posed by the toxins); *Cole v. United States*, 651 F. Supp. 221, 225-26 (N.D. Fla. 1986) (claim arising from the federal government's allegedly negligent mis-classification of the hazard factor of a chemical compound barred); *National Mfg. Co. v. United States*, 210 F.2d 263, 275 (8th Cir. 1954) (barring claim based upon negligent assurances of safety with respect to course and action of flood waters that caused property damage)*; Bartie v. United States*, 216 F. Supp. 10, 21 (W.D. La. 1963) (barring claim based upon an alleged failure to give adequate, correct, and proper warnings regarding a hurricane that allegedly caused the deaths of the plaintiffs' decedents), *aff'd*, 326 F.2d 754 (5th Cir. 1964); *see also Jimenez-Nieves v. United States*, 682 F.2d 1, 4 (1st Cir. 1982) ("the tort of misrepresentation involves the dissemination of information generally"); *Lloyd v. Cessna Aircraft Co.*, 429 F. Supp. 181, 187 (E.D. Tenn. 1977) (stating that the misrepresentation exception is "applicable to actions involving personal injury [and] wrongful death").

[11] *See, e.g., Russ v. United States*, 129 F. Supp. 2d 905, 909-10 (M.D. N.C. 2001) (citing cases applying the misrepresentation exception in the context of personal injury claims), *aff'd*, 33 Fed. Appx. 666 (4th Cir. 2002); *Vaughn v. United States*, 259 F. Supp. 286, 289 (N.D. Miss. 1966) (holding that the misrepresentation exception barred recovery for a personal injury resulting from an explosion allegedly caused by government misstatements regarding pipeline placement); Prosser, Torts, Section 85 at 707, Section 87 at 726, 733 (1941 ed.) (stating that the tort liability for "misrepresentation" has traditionally concerned personal or other physical harm); Restatement (First) Torts § 311 (1934) (prior to the passage of the FTCA, discussing misrepresentation with respect to bodily harm).

1995) ("[C]ourts have consistently held that fraud claims against the government are not permitted under the FTCA.").  In this case, based upon Plaintiffs' own allegations, the connection between the government's alleged wrongdoing and Plaintiffs' alleged personal injuries is dependent upon the government's alleged withholding of information in connection with its response to formaldehyde in EHUs; therefore the bar applies.

      *Wallace v. United States*, No. Civ.A. 00-179S, 2004 WL 63503 (D. R.I. Jan. 8, 2004), is instructive.  In *Wallace*, the plaintiff home buyers alleged that the United States negligently failed to warn regarding the presence of lead-based paint in a home and concealed the condition of the property.  Plaintiffs alleged that the United States "knew or should have known about the presence of lead paint" at the property and that the government's failure to test the property and use due care in warning the plaintiffs about the presence of lead-based paint caused plaintiffs' personal injuries, including unusually high levels of lead in the blood.  *Id.* at *2.  The Court dismissed the action based upon the FTCA's misrepresentation exception, reasoning that, regardless of how the plaintiffs described their claims, the breach at issue stemmed from the government's duty to use due care in obtaining and communicating information.  *Id.* at *3.

      Similarly, in *Mullens v. United States*, No. 92-1300, 976 F.2d 724, 1992 WL 249989 (1st Cir. Oct. 2, 1992) (per curiam), *aff'g Mullens v. United States*, 785 F. Supp. 216 (D. Me. 1992), plaintiffs brought claims against the United States after their child was diagnosed with lead poisoning.  *See* 758 F. Supp. at 218.  Plaintiffs alleged that their child's poisoning was caused by exposure to lead paint in their home, which had been purchased from the government, and alleged that the United States had failed to fulfill its duty to inspect the premises and provide them with an adequate warning regarding the presence of lead paint.  *Id.* at 219-20.  After

17

exploring the case law from the Supreme Court and other federal courts, the district court in *Mullens* dismissed all of the plaintiffs' FTCA claims, pursuant to Fed. R. Civ. P. 12(b)(1), holding that the misrepresentation exception barred the court from exercising jurisdiction. *Id.* at 220. The court reasoned that the government's failure to notify the plaintiffs that the home contained lead-based paint was the crux of their negligence claims, and, thus the exception applied, despite the fact that the plaintiffs' had asserted the government had a specific duty to issue a warning about lead paint. *Id.* In both *Wallace* and *Mullens*, the plaintiffs alleged that the United States caused personal injuries by failing to provide information. Such is the case here.

"The test in applying the misrepresentation exception is whether the essence of the claim involves the government's failure to use due care in obtaining and communicating information." *See JBP*, 224 F.3d at 1264-66. Plaintiffs' remaining FTCA claims regarding the government's response to concerns about formaldehyde in EHUs satisfy this test. Because the alleged breach at the factual core of Plaintiffs' claims involves the government's alleged failure to obtain and provide information regarding formaldehyde in EHUs, all of Louisiana Plaintiffs' remaining claims lack jurisdiction pursuant to the FTCA's misrepresentation exception.[12]

---

[12] Plaintiffs may not circumvent the jurisdictional protections of § 2680(h) by arguing that some of their claims regarding the government's allegedly deficient formaldehyde response do not relate to a government misrepresentation or failure to provide information. *See Neustadt*, 366 U.S. at 703. Where the government's alleged withholding of information is at the factual core of a plaintiff's claim, as it is here, the action must be dismissed in its entirety. *Id.*; *see Wallace*, 2004 WL 63503, at *3 (dismissing entire action despite related claims based upon a theory of negligent failure to test/inspect); *Mullens*, 785 F. Supp. at 220 (same). In this case, Plaintiffs' remaining claims, including, but not limited to, their failure to warn claims, must be dismissed because they fall squarely within the exception. Nonetheless, even if the Court were to narrowly construe the protections of § 2680(h) in this case and not dismiss Plaintiffs' cases against the government in their entirety, all of Louisiana Plaintiffs' remaining FTCA claims are ***independently*** subject to dismissal and/or summary judgment, as set forth *infra*.

**II.    Louisiana Plaintiffs Must Establish That the United States Committed Gross Negligence or Willful and Wanton Misconduct, and That This Conduct Was the Proximate Cause of Their Injuries; They Have Failed to State Plausible Claims that Satisfy this Standard and There Is No Remaining Genuine Issue of Material Fact Regarding Whether the United States Was Grossly Negligent or Engaged in Willful and Wanton Misconduct.**

**A.    Summary**

To the extent any remaining claims are not barred by the FTCA's misrepresentation exception, Plaintiffs' claims are insufficient – both in law and fact – to establish gross negligence or willful and wanton misconduct.  Through its May 18, 2010, Order and Reasons (Rec. Doc. 14124), the Court dismissed Louisiana Plaintiffs' FTCA negligence claims for lack of subject-matter jurisdiction based upon a failure to satisfy the FTCA's private analogous liability requirement.  *Id.* at 19; *see* 28 U.S.C. §§ 1346(b)(1), 2674; *see also* La. R.S. 29:733.1 (abrogating the potential negligence liability of all private persons who, voluntarily and without compensation, allow their property or premises to be used as shelter in response to an emergency or disaster).  The Court found that, because La. R.S. 29:733.1 (the "Limitation of liability of owner or operator of facilities" provision of the "Louisiana Homeland Security and Emergency Assistance and Disaster Act") would benefit a private person under similar circumstances, the United States must be afforded the same protections announced in the provision.[13]  Order and Reasons, May 18, 2010, at 19 (Rec. Doc. 14124).  To assert FTCA claims that fall outside the protections of La. R.S. 29:733.1, Louisiana Plaintiffs must establish that the proximate cause of

---

[13] La. R.S. 29:733.1 provides for immunity " . . . ***unless the gross negligence or the willful and wanton misconduct*** of the person owning or operating the immovable property or premises or his successor in interest ***is the proximate cause of the death, injury, loss, or damage*** occurring during the sheltering period . . ."  *Id.* (emphasis added); *see* Order and Reasons, May 18, 2010, at 5 (Rec. Doc. 14124).

their death, injury, loss, or damage was the "gross negligence or the willful and wanton misconduct" of the United States.[14]  *See id.*  Although La. R.S. 29:733.1 does not specifically define gross negligence or willful and wanton misconduct,[15] the gross negligence or willful and wanton misconduct standard has a well-defined legal meaning under Louisiana tort law.  To satisfy this standard, a plaintiff must make an exceptional showing of extreme and reckless conduct that amounts to a total departure from ordinary care.  Louisiana Plaintiffs cannot satisfy this exacting standard through their factual allegations or the factual record; thus, their remaining FTCA claims cannot proceed.

First, Louisiana Plaintiffs' remaining FTCA claims must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Plaintiffs have not sufficiently pleaded factual allegations that plausibly establish that governmental gross negligence or willful and wanton misconduct proximately caused their damages.  *See* Order and Reasons, May 18, 2010 (Rec. Doc. 14124) (requiring Plaintiffs to show gross negligence or willful and wanton misconduct in order to meet the FTCA's jurisdictional requirement of private analogous liability); *see also* La. R.S. 29:733.1.  Plaintiffs' conclusory allegation that the United States was "grossly negligent, reckless, willful and/or wanton" is insufficient to survive a motion to dismiss.  *See* Third AMC (Rec. Doc. 4486) ¶ 206.  In addition, their factual allegations fail to state a plausible claim that the United States treated any Plaintiff with gross negligence or willful

---

[14]  To meet this standard, Louisiana Plaintiffs would have to show that the United States breached a Louisiana tort law duty through gross negligence or willful and wanton misconduct, and that this extreme breach of duty proximately caused Plaintiffs' damages.  *See* 28 U.S.C. §§ 1346(b)(1); 2674 (setting forth the FTCA's private analogous liability requirement).

[15]  Some Louisiana statutes explicitly define what constitutes gross negligence for their discrete purposes.  *See, e.g.*, La. R.S. 12:1314(C).  No such definition is set forth in La. R.S. 29:733.1.

and wanton misconduct.  Even accepting Plaintiffs' factual allegations as true, simple negligence is the obvious basis and explanation for the damages alleged in Plaintiffs' FTCA claims. Ignoring conclusory suppositions, the facts pleaded by Plaintiffs do not amount to a plausible claim for relief that falls outside the immunity protections of La. R.S. 29:733.1.

Alternatively, even if Plaintiffs had pleaded a plausible claim sounding in gross negligence or willful and wanton misconduct, the United States is entitled to summary judgment because Plaintiffs cannot create a genuine issue of material fact regarding whether their alleged damages were proximately caused by government acts or omissions that rose to the level of gross negligence or willful and wanton misconduct.  After nearly two years of merits discovery and the depositions of numerous government employees, the record is devoid of admissible evidence that would allow for the issue of whether the United States committed the type of misconduct that meets this heightened standard to proceed to trial on the merits.  Even viewing the facts in the light most favorable to the Plaintiffs, they have failed to collect a single fact that shows any Plaintiff suffered at the hands of outrageous and extreme government misconduct.  As set forth in the attached Statement of Facts ("SF"), FEMA's actions and inactions were in the context of the largest housing disaster in the nation's history; FEMA relied upon third parties to manufacture safe units fit for habitation; FEMA had a successful history of using these types of units in response to other disasters; FEMA did not initially receive any occupant complaints or concerns about formaldehyde in EHUs; FEMA faced a scientific and regulatory atmosphere barren of any clear consensus as to what level of formaldehyde is acceptable in housing, particularly during a time when other housing may not be available; after occupants voiced complaints and concerns regarding possible health effects, FEMA sought to address

21

formaldehyde in EHUs through localized and eventually comprehensive action as the extent of

the issue became clear; FEMA consistently encouraged occupants to vent their units to help

alleviate formaldehyde issues – the very same advice offered by numerous private entities and

government agencies.  *See* SF ¶¶ 3, 6, 7, 9, 11, 17, 20, 21.  With these key facts in mind, there is

no genuine issue of material fact as to whether the government conduct complained of by

Plaintiffs was the kind of extreme and outrageous conduct required to establish gross negligence

or willful and wanton misconduct under Louisiana law.

Even if it were arguable in hindsight that FEMA should have been better prepared for

this kind of novel crisis or should have responded in a much quicker or better fashion, such facts

would, at most, present a genuine issue of material fact as to whether the government was

negligent in this case.  In light of the well developed factual record, it is clear there is no genuine

issue of material fact as to whether Plaintiffs' remaining claims satisfy the heightened standard

required under La. R.S. 29:733.1.  Even if facts reflecting mistakes, delays, and instances of poor

judgment would constitute negligence or even serious negligence, there is no factual support

evincing the legal requirements, set forth below, of gross negligence or willful and wanton

misconduct.  Thus, the United States is entitled to judgment as a matter of law on Louisiana

Plaintiffs' remaining FTCA claims.

**B.     Gross Negligence or Willful and Wanton Misconduct Requires a Showing of Extreme and Severe Conduct That Is Substantially Higher in Magnitude Than Ordinary Negligence.**

In Louisiana, gross negligence has a well-defined legal meaning distinctly separate, and

different, from ordinary negligence.  *Rabalais v. Nash*, 952 So.2d 653, 658 (La. 2007); *Ambrose*

*v. New Orleans Police Dept. Ambulance Serv.*, 639 So.2d 216, 220 (La. 1994) ("Louisiana courts

have frequently addressed the concept of gross negligence."); *Roton v. Faulconer*, 966 So.2d 790, 795 (La. App. 2 Cir. 2007).  The Louisiana Supreme Court has defined gross negligence as "the want of even slight care and diligence," an "entire absence of care," and wanton or reckless behavior.  *Ambrose*, 639 So.2d at 219 (citing *State v. Vinzant*, 7 So.2d 917, 922 (La. 1942)). This heightened standard has also been termed the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others" and an "extreme departure from ordinary care or the want of even scant care."  *Roton*, 966 So.2d at 795; *see Vinzant*, 7 So.2d at 922 (defining gross negligence as "the want of that diligence which even careless men are accustomed to exercise"); *Hendry Corp. v. Aircraft Rescue Vessels*, 113 F. Supp. 198, 201 (E.D. La. 1953) (stating that gross negligence requires "very great negligence," or in other words, the "entire absence of care"); *see also* 18 H. Alston Johnson III, La. Civ. L. Treatise, Civil Jury Instructions § 3.13 (2d ed. 2009) (defining gross negligence as "the absence of even slight care and diligence").  Additionally, there is often no clear distinction between such willful, wanton, or reckless conduct and gross negligence, and the two have tended to merge and take on the same meaning.[16]  *Ambrose*, 639 So.2d at 219-20; *Houston Exploration Co. v. Halliburton Energy*

---

[16]  In *Bourgeois v. State Farm Mut. Auto Ins. Co.*, 562 So.2d 1177, 1180 (La. App. 4 Cir. 1990), the court recounted that the usual meaning assigned to "willful," "wanton," or "reckless" is that "the actor has intentionally done an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it ***highly probable that harm would follow*** . . . ."  *Id.* (emphasis added) (citing Prosser and Keeton on Torts, Ch. 5, Sec. 34 (1984)).  As the court stated:

> The result is that "willful," "wanton," or "reckless" conduct tends to take on the aspect of ***highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent*** . . . It is at least clear, however, that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement or confusion, and more than mere thoughtlessness or inadvertence, or simple inattention, even perhaps to the extent . . . of an intentional omission to perform a statutory duty, except in those cases where a reasonable person in the actor's place would have been aware of the great danger, and proceeding in the face of

*Services, Inc.*, 269 F.3d 528, 531 (5th Cir. 2001) ("Under Louisiana law, gross negligence is willful, wanton and reckless conduct that falls between intent to do wrong and ordinary negligence.").

Ordinary negligence and gross negligence are distinguished by the degree of the lack of care on the part of the offending party.  *See Foshee v. Louisiana Farm Bureau Cas. Ins. Co.*, 948 So.2d 1171, 1178 (La. App. 2 Cir. 2009).  An act can rise above and beyond the level of mere negligence, even constituting serious negligence, but still fall short of the extraordinary level of gross negligence.[17]  Thus, gross negligence must amount to "reckless negligence" and an "extreme departure from ordinary care."[18]  *See Falkowski v. Maurus*, 637 So.2d 522, 527 (La.

---

it is so entirely unreasonable as to amount to aggravated negligence.

*Id.* at 1180-81(emphasis added).

[17]  In *Cates v. Beauregard Elec., Inc.*, 316 So.2d 907, 916 (La. App. 3 Cir. 1975), the court described the higher conduct required to prove gross negligence:

> The terms 'willful', 'wanton', and 'reckless' have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence.  These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which ***is so far from a proper state of mind that it is treated in many respects as if harm was intended***.  The usual meaning assigned to do [sic] the terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.  It usually is accompanied by a conscious indifference to consequences, amounting to almost a ***willingness that harm should follow***.

*Id.* (citations omitted) (emphasis added).

[18]  "Traditionally, gross negligence has been defined as an extreme departure from ordinary care or the want of even scant care."  *Falkowski v. Maurus*, 637 So.2d 522, 528 (La. App. 1 Cir. 1993) (citing Prosser and Keeton on the Law of Torts, § 34, at 211 (5th ed. 1984), 65 C.J.S. Negligence § 8(4)(a), at 539-40 (1966 & Supp. 1993)).

> "[W]illful," "wanton," or "reckless" conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation

24

App. 1 Cir. 1993); *Solow v. Heard McElroy & Vestal, LLP*, 7 So.3d 1269, 1277 (La. App. 2 Cir.

2009) (requiring "reckless disregard"); *Rabalais*, 952 So.2d at 653.  The conduct of the offender

must not only show a lack of care, it must show an "entire," "utter," "complete," or "extreme"

lack of care.  *Foshee*, 948 S.2d at 1178; *Mullins v. State Farm Fire and Cas. Co.*, 697 So.2d 750,

754-56 (La. App. 1 Cir. 1997) (exercising very poor judgment may amount to negligence but not

gross negligence).  It also must be amidst the context of a high probability of severe danger.  *See*

*Falkowski*, 637 So. 2d at 527.  Even the tragic consequence of an act of simple negligence does

not magnify that act of simple negligence into an act of gross negligence.  There must be

misconduct that is "substantially and appreciably higher in magnitude than ordinary negligence"

for there to be gross negligence.  *Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.*,

922 F.2d 220, 224 (5th Cir. 1991) (describing gross negligence as "heedless and palpable

violation of legal duty respecting the rights of others"); *see Bridges v. City of Carenco*, 982

So.2d 306, 310 (La. App. 3 Cir. 2008) (granting summary judgment because there was no issue

of material fact regarding the defendants' alleged gross negligence).

      The oft referenced *Ambrose* case is instructive.  In this wrongful death and survival

action, the Louisiana Supreme Court considered whether the delay of two emergency medical

technicians ("EMTs") in transporting a victim to the hospital, allegedly resulting in a heart attack

victim's loss of a chance of survival, amounted to gross negligence.  *See Ambrose*, 639 So.2d at

---

      where a high degree of danger is apparent.  As a result there is often no clear distinction
      at all between such conduct and "gross" negligence, and the two have tended to merge
      and take on the same meaning, of an aggravated for of negligence, differing in quality
      rather than in degree from ordinary lack of care.

*Falkowski*, 637 So.2d at 528 (citing Prosser and Keeton, at 212, 214).

216.  The court in *Ambrose* ruled that the EMTs' decision to make the victim walk, assisted by two adults, to a stretcher (rather than taking the stretcher to the victim) was not gross negligence. The Louisiana Supreme Court reasoned that even if a decision may be wrong, some effort to make a reasoned judgment will not rise to the exceptional threshold of gross negligence.  *See Ambrose*, 639 So.2d at 221-22 (reasoning that the EMTs did not wholly ignore any specific internal requirements and did not take unauthorized action).  Similarly, in the face of an expert opinion that the EMT should have left the victim's home in nearly half the amount of time, the Court ruled that such a delay would not amount to gross negligence.  *See Ambrose*, 639 So.2d at 222-23; *see also Reynolds v. Louisiana Plastic*, 26 So.3d 149, 153 (La. App. 2 Cir. 2009) ("Even if a delay in calling medical assistance had occurred, it certainly did not rise to the degree of gross negligence . . .").  In considering whether the conduct amounted to gross negligence, the Louisiana Supreme Court found it compelling that even though there may have been a delay, action was eventually taken, and that no specific standard guidelines existed for the amount of time that EMTs should spend at a home.  *See Ambrose*, 639 So.2d at 218, 222-23 (having to make a determination in the face of incomplete information can serve as a mitigating factor in a gross negligence analysis).[19]  The Court found that the EMTs could not fairly be found guilty of

---

[19]  A number of courts have articulated key factors to consider when seeking to assess gross negligence versus simple negligence under Louisiana tort law.  For example, courts have found that where an actor relies upon the representations or warranties of others regarding safety, this will often – at most – only support a finding of negligence, not gross negligence.  *See, e.g., Houston Exploration*, 269 F.3d at 532-33.  An additional consideration is whether the harm alleged has ever occurred in the past, as well as whether the actor was able to anticipate the severity and extent of the potential harm.  *Id.* (noting that the record contained no evidence that the harm at issue (a gas well blowout) had ever before resulted from the kind of activity at issue (a mis-pinned valve)).  In assessing whether an actor's conduct amounted to gross negligence, courts also frequently consider whether the actor breached a tort duty by violating a specific rule or standard.  In these cases, the actor was aware of a specific provision governing his or her conduct and knew the extent of the potential harm that could result from not following the specific mandate, yet completely and fully failed to act with any care.  *See, e.g., Harkins v. M.G. Mayer Yacht Services, Inc.*, 952 So.2d 709, 717 (La. App. 4 Cir. 2006) (finding that failing to install four set

gross negligence on account of the alleged delay.  *Id.* at 223.

### C. Louisiana Plaintiffs' Factual Allegations Do Not Reflect the Kind of Utter and Severe Disregard and Entire Absence of Care Required Under Louisiana Law to State a Gross Negligence Claim.

#### 1. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where the plaintiff has "failed to state a claim upon which relief can be granted."  In evaluating a motion under Rule 12(b)(6), the Court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff."  *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986).  Dismissal is appropriate where the plaintiff has not pleaded "enough facts to state a claim to relief that is ***plausible*** on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added).  A claim is only plausible on its face if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  The requirement in Rule 8(a)(2) that a pleader provide a short and plain statement of the claim showing entitlement to relief does not allow a plaintiff to move forward with his or her claims "armed with nothing more than conclusions."  *Id.* (applying the plausibility standard to all complaints in civil actions).  This rule applies with equal force to complaints in MDL actions, *see, e.g., In re Guidant Corp., Implantable Defibrillators*, MDL No. 05-1708, 2009 WL 1921902 (D. Minn. July 1, 2009), *In re Bausch & Lomb Inc.*, MDL No. 1785, 2007 WL 3046682 (D. S.C. 2007), as well as to master

---

screws was grossly negligent/reckless and wanton misconduct because it was a clear failure to follow the manufacturer's specific instructions).  As set forth *infra*, Plaintiffs' factual allegations and the admissible record are devoid of the critical factors Louisiana courts have used to find gross negligence rather than ordinary negligence.

27

complaints, *see, e.g., In re Katrina Canal Breaches Litig.*, 309 Fed. Appx. 836, 838 (5th Cir.

2009) (per curiam).  A plaintiff must "give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests." *Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 8(a)(2).  Thus, the

required showing of an "entitlement to relief" necessitates "more than labels and conclusions"

and must raise a right to relief "above the speculative level." *Twombly*, 550 U.S. at 555; *Iqbal*,

129 S. Ct. at 1950 ("[L]egal conclusions . . . must be supported by factual allegations.").  "[A]

formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1950.

In addition, the degree of specificity required may depend upon the type of claim at issue.  *See*

Order and Reasons, December 12, 2008, at 4 (Rec. Doc. 984) (citing *Robbins v. Oklahoma*, 519

F.3d 1242, 1247(10th Cir. 2008)).  This is particularly relevant here, where any remaining claims

must satisfy the heightened standard of gross negligence.

Louisiana Plaintiffs must meet the specific requirements of gross negligence or willful

and wanton misconduct to escape the protections of La. R.S. 29:733.1, and, thus, must plead

facially plausible factual content sufficient for the Court to draw the reasonable inference that the

United States' conduct rose to the level of gross negligence or willful and wanton misconduct.

*See Iqbal*, 129 S. Ct. at 1949-50.  There must be more than a "sheer possibility" that Plaintiffs'

damages were caused by gross negligence or willful and wanton misconduct.  *Id.*  Even if

Plaintiffs' remaining allegations were  "consistent with" grossly negligent conduct on the part of

the government, which they are not, this would establish nothing more than a possibility of gross

negligence and would be insufficient to establish a plausible entitlement to relief.  *Id.*  Exercising

its required "gatekeeper" function, the Court should dismiss Louisiana Plaintiffs' remaining

FTCA claims for failure to sufficiently plead facts showing a plausible claim for relief on

account of gross negligence or willful and wanton misconduct.

        2.    **Argument**

            a.    **Plaintiffs' Labels and Conclusions Are Insufficient to Demonstrate That Their Remaining Claims Plausibly Assert That the United States' Conduct Rose to the Extreme Level of Gross Negligence.**

In assessing whether Plaintiffs' Complaint pleads enough facts to state a remaining claim that is plausible on its face, the Court must accept Plaintiffs' factual allegations – but not their legal conclusions – as true. *See Twombly*, 550 U.S. at 555. Plaintiffs' "labels and conclusions" as well as any formulaic recitations are immaterial to an assessment of whether they can survive a Rule 12(b)(6) motion. *Id.* The required plausibility determination hinges on Plaintiffs' factual allegations. *Iqbal*, 129 S. Ct. at 1949. Through their common pleading, Plaintiffs allege that the United States was:

> . . . obligated to promptly warn the Named Plaintiffs of any defects in the housing units which could cause harm . . . [and] . . . after becoming aware of the potential for such harm, [the United States] violated this duty to each Named Plaintiff, rendering the Federal Government negligent, grossly negligent, willful and/or wanton . . .

Third AMC (Rec. Doc. 4486) ¶¶ 205-206.[20] This kind of allegation is insufficient to survive a motion to dismiss. Stripped of its conclusory labels and conclusions, the allegation solely contains an ordinary failure to warn claim sounding in negligence. Although Plaintiffs must sufficiently plead gross negligence or willful and wanton misconduct claims for their remaining

---

[20] Plaintiffs' Administrative Master Complaint "incorporates the factual and legal allegations being presented on behalf of Plaintiffs herein," and, thus, must be read as incorporating and articulating the allegations of all Louisiana Plaintiffs who continue to assert claims against the government. Third AMC (Rec. Doc. 4486) ¶ 5. *See* Ex. A (compiling the civil action numbers for all current actions wherein the named plaintiffs constitute Louisiana Plaintiffs). The Complaints listed in Exhibit A contain similar, if not identical, allegations to the Administrative Master Complaint.

FTCA claims to fall outside La. R.S. 29:733.1, simply regurgitating buzzwords such as "grossly negligent" and "willful and/or wanton" is wholly insufficient. *See Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1950. Labels and conclusions are not enough to raise Plaintiffs' purported claims above the speculative level. *Id.* Allegations that offer no factual content cannot make Plaintiffs' remaining FTCA claims more or less likely to satisfy the required gross negligence or willful and wanton misconduct standard under Louisiana tort law. Aside from the naked conclusions devoid of factual content, which must be discounted, Plaintiffs' factual allegations show nothing more than a speculative possibility of gross negligence or willful and wanton misconduct that is insufficient establish a plausible claim for relief.

> **b.**     **Stripped of Labels and Conclusions, Plaintiffs' Factual Allegations Are Explained by Simple Negligence.**

Although parts of Plaintiffs' Complaint plead detailed facts, Plaintiffs have pleaded insufficient facts to establish a plausible inference that the United States proximately caused their alleged harm through gross negligence or willful and wanton misconduct. As a result, Plaintiffs have failed to state a claim upon which relief may be granted. A party claiming gross negligence is required to plead facts that, if true, show when, where, and how the defendant was grossly negligent. *See, e.g., Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 217 (E.D. Va 2008) (dismissing the plaintiff's gross negligence claim where none of the plaintiff's non-conclusory allegations supported a claim of gross negligence under applicable state law); *see also Nelson v. Nagin*, No. 06-9901, 2007 WL 2122167, *2 (E.D. La. July 19, 2007) (dismissing action where the court found that the plaintiff had failed to plead facts showing that the defendants' decisions and actions constituted willful misconduct sufficient to fall under an

exception to statutory immunity).  Accepting Plaintiffs' factual allegations as true, simple

negligence remains an equally deducible explanation for the alleged facts.  Having a "possible"

gross negligence claim is not enough, Plaintiffs must set forth facts that plausibly satisfy the

strict requirements of gross negligence or willful and wanton misconduct under Louisiana tort

law.  *See Twombly*, 550 U.S. at 555; *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir.

2009).  Stripped of accompanying labels and conclusions, a number of key factual allegations

regarding the conduct of the United States foreclose any reasonable inference that gross or

willful and wanton negligence is a plausible explanation for what allegedly happened.

Plaintiffs specifically plead that FEMA provided EHUs in the context of the disasters

caused by Hurricanes Katrina and Rita.  Third AMC (Rec. Doc. 4486) ¶ 124.  Amidst this

remarkable factual backdrop, it is important to consider the teachings of *Bourgeois v. State Farm*

*Mut. Auto Ins. Co.*, which stated that errors resulting from "inexperience, excitement, or

confusion" are insufficient to satisfy the kind of outrageous departure from all care that is

required to establish gross negligence.  562 So.2d 1177, 1180 (La. App. 4 Cir. 1990) (citation

omitted); *see Ambrose*, 218, 222-23 (acting in the face of incomplete information is a

consideration that weighs against gross negligence).  Plaintiffs also plead that the EHUs were

obtained by the United States when "FEMA contracted with the Manufacturing Defendants,"

and that the manufacturers expressly warranted the units' fitness and safety.  Third AMC (Rec.

Doc. 4486) ¶¶ 129, 216.  In *Houston Exploration*, the court stressed that where an actor (such as

FEMA) relies upon the representations or warranties of others regarding safety, this could only

support a finding of simple negligence, not gross negligence.  *See* 269 F.3d at 532-33.  Here,

Plaintiffs allege that the manufacturers provided FEMA with units that "deviated from

31

Government specifications pertaining to the safety of the unit[s]," and that "the Manufacturing

Defendants failed to warn the Federal Government about these dangers [levels of formaldehyde],

which initially were not known to the Federal Government."[21]  Third AMC (Rec. Doc. 4486) ¶¶

131,133.  Accepting these allegations as true, as is required, such facts undermine the plausibility

of any potential claim that the United States was grossly negligent.  Because the dangers were

allegedly not known to the government, the government had no reason to know that it was

"highly probable" that harm to EHU occupants would soon follow.  *See Bourgeois*, 562 So.2d at

1180 (stating that, for there to be willful and wanton misconduct, an actor must disregard an

obvious risk that is so great as to make it "highly probable" that harm will follow).  This requires

more than isolated concerns or suspicions.  Similarly, Plaintiffs plead that "the No-Bid

Defendants were tasked with the . . . installation . . . preparation, inspection, maintenance and

repair . . . of the temporary housing units," and that the "No-Bid Defendants" failed to properly

"advise and instruct FEMA."  Third AMC (Rec. Doc. 4486) ¶¶ 153, 149, 299.  Accepting these

allegations as true, the United States tasked others with the inspection and maintenance of the

EHUs and the United States subsequently labored under improper advice and instruction from

---

[21]  Plaintiffs simultaneously plead that the "Federal Government has been aware for years that formaldehyde is used in certain construction materials used in manufactured housing . . . and has known for over thirty years of the relationship between formaldehyde emissions in indoor health environments and health problems associated therewith."  Third AMC (Rec. Doc. 4486) ¶ 173.  Regardless of whether other government agencies such as HUD regulate wood products and manufactured housing, it is the conduct and knowledge of FEMA that is at issue in this litigation.  Plaintiffs have not and cannot sufficiently plead that FEMA was aware of a high probability of severe harm or a high degree of danger from the use of EHUs when FEMA had successfully used EHUs in the past without complaints and the first actual complaint from an EHU occupant following Hurricanes Katrina and Rita did not manifest for many months.  FEMA had no reason to believe that ready for occupancy EHUs inhabited by disaster victims were possibly causing problems for occupants until a number of occupants began voicing consistent concerns.

third parties.  *See id.*  These factual allegations weigh against the kind of extreme and outrageous culpability required to assert a plausible claim for gross negligence or willful and wanton misconduct.  *See Roton*, 966 So.2d at 795 (requiring an "extreme departure" for there to be gross negligence); *Cates*, 316 So.2d at 916 (stating that gross negligence requires conduct that is so far removed from being proper that it was as if the harm was intended).

Plaintiffs have similarly failed to plead sufficient facts that show that FEMA had a full appreciation of the extent and severity of the possible danger formaldehyde in EHUs could pose to the occupants inhabiting these units.  *See Houston Exploration*, 269 F.3d at 533 (requiring that the actor anticipate the full extent and severity of the harm).  It is implausible to conclude that a high degree of danger was apparent to FEMA when those who were inhabiting EHUs did not initially voice any concerns or complaints that they were experiencing health effects or irritation and FEMA had successfully used similar housing units in the past.  *See Bourgeois*, 562 So.2d at 1180 (discussing that a high degree of danger must be apparent for there to be willful, wanton, or reckless conduct); *Falkowski*, 637 So.2d at 527 (requiring a high probability of severe danger).  Even if Plaintiffs could successfully plead facts that suggest FEMA should have been on the lookout for other warning signs of this possible danger to occupants, "simple inattention" will not amount to willful, wanton, or reckless conduct.  *See Bourgeois*, 562 So.2d at 1180.

Plaintiffs also allege that, "FEMA participated in a meeting with the EPA and CDC . . . to discuss the issue," and that testing was "designed and implemented by FEMA through ATSDR." Third AMC (Rec. Doc. 4486) ¶¶ 184, 189.  FEMA and EPA "agreed to test ventilation methods on occupied trailers," and testing was conducted by FEMA and EPA."  *Id.* ¶ 185.  Even if Plaintiffs contend that there was a delay in testing EHUs for formaldehyde or that a different

33

type of testing method should have been selected, the facts alleged do not support a plausible

claim for gross negligence.  Plaintiffs concede that following one or more occupant complaints

or concerns, FEMA **did** take action.  *See id.*  This is not the complete absence of care required

for gross negligence or willful and wanton misconduct under Louisiana law.[22]  *See Hendry*, 113

F. Supp. at 201; *Ambrose*, 639 S.2d at 219 (requiring an entire absence of care).  Louisiana cases

show that delays will not reach the level of gross negligence or willful and wanton misconduct

unless there is an outrageous showing barren of all care.  *See Caracci v. Cobblestone Village*

*Condo. Assoc.*, 927 So.2d 542, 546 (La. App. 5 Cir. 2006) (granting summary judgment and

finding that a one year delay in responding to and handling a mold problem in a condominium

unit did not constitute willful and wanton misconduct).  Even if the government's alleged delay

or allegedly flawed testing protocol reflected very poor judgment and utter confusion about what

action to take, neither very poor judgment, nor confusion, will amount to the level of misconduct

required for gross negligence.  *See Mullins*, 697 So.2d at 754-56.

    For example, in *Bridges v. City of Carencro*, 982 So.2d 306 (La. App. 3 Cir. 2008), the

plaintiff, a participant in a softball tournament, sought to establish that the volunteer tournament

director was grossly negligent and, thus, not immune under La. R.S. 9:2798 (limiting the liability

of a volunteer athletic coach, manager, official, etc.), because he had been injured by a defective

---

[22]  Plaintiffs may seek to invoke this Court's language stating that the evidence before the Court in October 2008, showed that FEMA, "at least during some identifiable time period" was "sticking their heads in the sand" with respect to the formaldehyde issue.  *See* Order and Reasons, October 3, 2008, at 38 (Rec. Doc. 717); *see also* Order and Reasons, August 13, 2009, at 1 (Rec. Doc. 2621) (reasoning that there may have been some inaction, "albeit temporary" inaction).  Even accepting this characterization as true, such a delay or period of inaction was decidedly finite and, thus, cannot amount to a complete absence of care since action and care was eventually taken.  *See Ambrose*, 639 So.2d at 220.  Utter disregard and the total absence of care is required for there to be gross negligence or willful and wanton misconduct.  *Id.*

34

and dangerous softball field.  In affirming that the plaintiff's gross negligence claims were subject to summary judgment, the court found that the defendant had taken *some* remedial steps in an attempt to prepare the field, thus there was not an entire absence of care.  *Id*. at 307, 310. Here, Plaintiffs' own factual allegations similarly show that the United States did take *some* remedial action towards the issue of formaldehyde in EHUs.  Third AMC (Rec. Doc. 4486) ¶¶ 184, 185, 189 (alleging that FEMA consulted with the EPA and CDC and conducted formaldehyde testing within months after the first occupant complaint).

The facts pleaded by Plaintiffs do not present a plausible gross negligence claim; thus, they cannot state a claim upon which relief can be granted.  The government's alleged delay in responding to complaints and concerns about formaldehyde in EHUs is legally insufficient and, if negligent at all, is explained by simple negligence.  *See Ambrose*, 639 So.2d at 222-23 (finding an alleged delay in taking a dying victim to the hospital did not amount to gross negligence). Plaintiffs' own allegations show that FEMA eventually took action and did not treat the issue with complete disregard.  Third AMC (Rec. Doc. 4486) ¶¶ 184, 185, 189.  Plaintiffs also specifically plead that the United States conducted additional testing to "assess levels of formaldehyde in indoor air occupied [sic] FEMA-supplied housing units" and that the "Federal Government implemented a program which essentially entails removing the remaining residents from the subject housing units."  *Id*. ¶¶ 194, 197.  These alleged facts reflect care and action in response to purported formaldehyde concerns; and, because there was clearly some degree of care, Plaintiffs' facts do not support a plausible or even possible gross negligence claim.  *See Ambrose*, 639 So.2d at 219.

Finally, Plaintiffs plead facts that show various agencies and organizations have

35

published a number of different suggested acceptable formaldehyde exposure levels that vary widely.  Third AMC (Rec. Doc. 4486) ¶¶ 138-40.  Such an atmosphere of conflicting information further erodes the plausibility and viability of any claims sounding in gross negligence.  As stated above, a claim for gross negligence requires extreme and reckless conduct in the face of obvious danger – confusion and uncertainty are not enough.  *Bourgeois*, 562 So.2d at 1180; *see, e.g., Holt v. State*, 671 So.2d 1164, 1171 (La. App. 2 Cir. 1996) ("To stop and then proceed in the immediate path of oncoming vehicles constitutes gross negligence."); *Ashmore v. Hilton*, 834 So.2d 1131, 1139 (La. App. 3 Cir. 2002) (taking no care and allowing an in-mate trustee to work completely unsupervised in the presence of a young girl is grossly negligent).  The Louisiana Supreme Court has also stated that the lack of any specific standards or guidelines counsel against a finding of gross negligence.[23]  *See Ambrose*, 639 So.2d at 218.  Importantly, Plaintiffs have failed to plead any facts that would suggest that the United States' response to the issue of formaldehyde in EHUs was governed by any specific standard or guideline outlining a required course of action.[24]  None of the facts Plaintiffs have pleaded reflect that the United States acted with a conscious willingness that EHU occupants would suffer extreme injury and

---

[23] *See, e.g., Tauzier v. St. Patrick Parade Committee of Jefferson, Inc.*, 807 So.2d 1106, 1109 (La. App. 5 Cir. 2002) (considering whether the defendant acted in accord with a specific parish ordinance as an element of its gross negligence analysis); *First Commonwealth Corp. v. Hibernia Nat. Bank of New Orleans*, 891 F. Supp. 290, 294 (E.D. La. 1995) (in making a finding of gross negligence, focusing on the fact that Hibernia did not comply with certain specific conduct requirements of the Custodian Agreement); *but see Binkley v. Landry*, 811 So.2d 18, 25 (La. App. 1 Cir. 2001) (applying the *Ambrose* gross negligence definition and finding no gross negligence even though the float driver had been drinking prior to losing consciousness and driving his float into a parade crowd and hitting a seven year old girl, notwithstanding the fact that the parade's internal rules forbade float drivers from drinking).

[24] Similarly, this Court has already found that FEMA's response to the issue of formaldehyde in EHUs was discretionary because it was not controlled or defined by any specific rules or regulations. Order and Reasons, October 3, 2008, at 44-55 (Rec. Doc. 717).

harm.  *See Cates*, 316 So.2d at 916.  Accepting all of their factual allegations as true, Plaintiffs have failed to plead a plausible gross negligence claim and, thus, cannot show they are entitled to relief.  We show, next, that even if Plaintiffs had pleaded plausible claims of gross negligence, the United States is, nonetheless, entitled to summary judgment because Plaintiffs cannot establish the essential elements of their claims.

> **D.   There Is No Genuine Issue of Fact as to Whether Louisiana Plaintiffs' Alleged Injuries Were Proximately Caused By the Gross Negligence or Willful and Wanton Misconduct of the United States.**

> **1.   Standard of Review**

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims").  The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (describing a fact as material only if it "might affect the outcome of the suit under the governing law").  Here, the critical facts at issue are defined by the legal standard for gross negligence or willful and wanton misconduct under Louisiana tort law.  *See* Order and Reasons, May 18, 2010 (Rec. Doc. 14124).

If the dispositive issue is one where the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (holding that

37

the moving party need not produce evidence showing the absence of a genuine issue of material fact); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir. 1992); *Resolution Trust Corp. v. International Ins. Co.*, 819 F. Supp. 554, 556 (E.D. La. 1993).  Once the moving party carries its burden under Rule 56, the nonmoving party must go beyond the pleadings and, through affidavits, depositions, answers to interrogatories, and admissions on file, must designate specific facts showing there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324; *see Matsushita*, 475 U.S. at 587.

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party.  *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002).  Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  The Court cannot "in the absence of proof, assume that the nonmoving party could or would prove the necessary facts."  *See id.*

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  Thus, the nonmoving party must "identify specific evidence in the record, and articulate" precisely how that evidence supports his or her claims.  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).  The nonmovant's burden to demonstrate a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."  *Little*, 37 F.3d at 1075.  Rather, a factual dispute only precludes a grant of

38

summary judgment if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**2.      Argument**

Considering the definitions of gross negligence set forth above – "want of even slight care and diligence," "want of that diligence that even careless men are accustomed to exercise," "entire absence of care," "utter disregard of the dictates of prudence," "complete neglect of the rights of others," and "extreme departure from ordinary care or the want of even scant care" – it is plain that Plaintiffs cannot present factual support that will allow them to satisfy their evidentiary burden of proof at trial. *See Tauzier*, 807 So.2d at 1106, 1109-10 (La. App. 5 Cir. 2002) (reciting definitions) (citations omitted).  Because Plaintiffs bear the ultimate burden of proof as to whether the United States acted with gross negligence in its response to the issue of formaldehyde in EHUs, the United States may satisfy its summary judgment burden by pointing out that the record evidence contains insufficient proof of this kind of misconduct. *See Celotex*, 477 U.S. at 325.  It is Plaintiffs' burden to come forward and designate specific material and admissible facts that create a genuine issue as to whether the United States was grossly or willfully and wantonly negligent. *Id.* at 324.  Given the stringent requirements for gross negligence under Louisiana law, this is a hefty burden that Plaintiffs will not and cannot satisfy.

After nearly two years of open merits discovery, and well over a dozen depositions of government employees involved in FEMA's response to the formaldehyde issue, Plaintiffs have failed to marshal any evidence that the United States' conduct rose to the outrageous level required to establish gross negligence or willful and wanton misconduct.  There is nothing in the record that would allow a reasonable trier of fact to find by a preponderance of the evidence that

39

any Plaintiff is entitled to a finding of gross negligence or willful and wanton misconduct.  *See Anderson*, 477 U.S. at 249-50, 252.  Plaintiffs' counsel have essentially conceded as much during the bellwether trials in this MDL.  Although the United States was not a party to these trials, substantial evidence selected from the same factual record that is currently before the Court was presented and argued to the juries.  Hours of recorded testimony from numerous government witnesses were played.  Because of the possibility of comparative fault allocation, the defendants in these trials had at least some interest in attempting to show government fault.[25]  Nonetheless, no such evidence was ever presented.  Indeed, Plaintiffs' attorneys' own assessment of the United States' conduct directly contradicts their insistence on continuing to assert gross negligence or willful and wanton misconduct on the part of the government.  Although such statements were the argument of counsel, the reality that such arguments were based upon admissible evidence and the factual record in this case is an overwhelming indicator that there is no factual predicate for Plaintiffs to claim the government acted with an entire absence of care.

In the first bellwether trial, *Alexander, et al. v. Gulf Stream Coach, Inc., et al.*, No. 09-2892, Plaintiffs argued that the record evidence presented was insufficient to justify the allocation of **any** fault (even based upon simple negligence) to FEMA.  In characterizing the factual circumstances to be shown through the testimony of government witnesses, Plaintiffs' counsel stated:

---

[25]  This would include any government fault that would otherwise be immunized (per the FTCA's discretionary function exception) or insufficient (only amounting to simple negligence rather than gross negligence) in any consideration of Plaintiffs' remaining FTCA claims.

40

> FEMA was as busy as a one-armed paperhanger.  They had to provide more than 140,000 trailers to people who had lost their homes . . . people who were displaced all over the Gulf South and even far points north.

Ex. C (9/14/09 Transcript) at 13:12:1-5 (p. 146).[26]  Counsel also argued that FEMA relied on the

manufacturers:

> FEMA – Kevin Souza testified that FEMA was relying on vendors and manufacturers to provide units that were safe and habitable.

Ex. D (9/24/09 Transcript) at 8:58:3-5 (p. 25).[27]  Moreover, the Plaintiffs argued that the

submitted deposition testimony reflected that FEMA took action in response to the issue of

formaldehyde in EHUs:

> FEMA says, "Look, this needs to be fixed today."

Ex. C (9/14/09 Transcript) at 13:12:6-7 (p. 146).

> FEMA, I thought the day that we played all the FEMA depositions was very interesting, it, frankly, caused me to feel good about how FEMA responded to this in the following way: When they finally were told about the formaldehyde problem that they had no knowledge of . . . they said, "We wanted to provide the information that the travel trailers had formaldehyde in them."  That's what Mr. NcNeese, the program specialist, said . . . [another government witness] said, "Look, the distribution of the flyers was very necessary."  This is a very serious situation, yes.  And FEMA just didn't sit on its hands.  It created documents.

Ex. D (9/24/09 Transcript) at 9:10:21-9:11:9 (pp. 33-34).[28]

> [F]rankly, I think they were trying to clean up somebody else's mess and they should not be held responsible.  To their credit, they now say: "Since Katrina,

---

[26] *See Bourgeois*, 562 So.2d at 1180 (gross negligence requires much more than confusion, inexperience, or inattention).

[27] *See Houston Exploration*, 269 F.3d at 533 (where an actor relies upon the representations or warranties of others regarding safety, this will at most support negligence, not gross negligence).

[28] *See Bridges*, 982 So.2d at 310 (gross negligence requires an entire absence of care, a showing of some degree of care is enough to defeat allegations of gross negligence).

> FEMA will only [sic] trailers to be used if they meet out formaldehyde
> requirements" . . . I don't think that there should be any percentage on FEMA.

Ex. D (9/24/09 Transcript) at 9:12:1-8 (p. 35).[29]

In the most recent full bellwether trial, *Castanel v. Recreation by Design*, No. 09-3251,

Plaintiffs again characterized the testimony of numerous government witnesses – testimony that

is currently before this Court on this motion for summary judgment.  Plaintiffs' counsel stated:

> I think you will be relieved to know that FEMA went through herculean efforts to
> try to get people temporary housing, hundreds of thousands of people, and got
> them temporary housing . . . the way they learned about [formaldehyde] was from
> people complaining about it and reports and these kinds of things, and your
> government jumped into action after that.

Ex. E (5/17/10 Transcript) at 128:22-129:3 (pp. 128-29).[30]  Counsel's summary of the facts he

planned to show through the testimony of various government witnesses is particularly

instructive:

---

[29]  Plaintiffs eventually objected to the inclusion of a fault allocation percentage for FEMA on the
jury verdict form:

> We don't believe there's any – certainly not sufficient fault proven in this record on the
> part of FEMA.  It is the defendant's burden to present that evidence.  We don't think
> they've done it.  We don't think they've demonstrated any causal relationship between
> any conceivable fault on the part of FEMA and FEMA [sic] and the harm of these
> plaintiffs.

Ex. D (9/24/09 Transcript) at 11:53:25-11:54:11 (pp. 137-38).  In response, the manufacturing
defendant's counsel argued that the issue of FEMA fault should go to the jury, but conceded that the
factual record did not contain any evidence of gross fault:

> I will just say for the record, to me it's not a question of whether there is or isn't evidence
> of gross fault on the part of FEMA.  We don't think there's evidence of gross fault.

Ex. D (9/24/09 Transcript) at 12:01:1-4 (p. 143).

[30]  *Houston Exploration*, 269 F.3d at 533 (if the specific kind of harm alleged has never occurred
in the past and the actor did not fully anticipate the severity and extent of potential harm, this weighs
against a finding of gross negligence).

You're going to hear from eight or nine, maybe ten witnesses from FEMA about this. First, with respect to Kevin Souza, he's going to testify that FEMA didn't know anything about this. They had no specifications with respect to formaldehyde because they relied upon the manufacturer's expertise to provide safe and habitable housing. And, frankly, they wrote the checks; they were entitled to rely upon them.

Bryan McCreary was a FEMA contracting officer. He's going to testify that FEMA gave no specifications with respect to formaldehyde, but, that after the Katrina experience, they only order these travel trailers as a last resort.

Mark Polk is an industry expert. He'll testify . . . that FEMA came up with flyers to try to educate people to turn on your air conditioner to help with the circulation to bring the levels down.

Those flyers, you're going to hear from Martin McNeese, he was a FEMA Program Officer, he worked on testing some of those units that confirmed for FEMA that they had a problem, he advocated this flyer that instructed greater ventilation to lower the formaldehyde levels in trailers.

There's a gentleman by the name of Guy Bonomo. You'll hear from him . . . he's a very serious person, and he said, look, we learned that there was a very serious problem. He was involved with coordinating the release of 50,000 flyers advocating this greater ventilation.

You'll hear from Michael Lapinski . . . he prepared what's known as a formaldehyde fact sheet to send to their residents in 2007. Stanley Larson, you'll hear from, actually did some of the delivery in terms of distributing flyers . . . to warn residents about the dangers of formaldehyde that they were breathing in.

You'll hear from two other witnesses from FEMA, a David Garrett – this is after Katrina. You know, they had more long-term residents than ever before. They learned of the formaldehyde problem because not only did you have more people in a hotter climate than ever before, which is why this problem came to light.

They established a call center so that people could move out of these trailers. They sent a gentleman by the name of Travis Morris, who distributed thousands of flyers for FEMA.

Ex. E (5/17/10 Transcript) at 128:22-131:11 (pp. 129-31).

Following the presentation of the same deposition testimony and admissible evidence

that make up part of the current record on summary judgment, Plaintiffs were able to argue:

43

I told you that FEMA's response would be one that would be full of activity that
frankly, I think that they responded very well, and we brought you ten different
witnesses between the parties that showed how FEMA responded to this unknown
hazard to them that was known by these manufacturers . . .

Ex. F (5/24/10 Transcript) at 1352:25-1353:4 (pp. 1352-53).[31]

Plaintiffs' argument also underscores the fact that deposition testimony by FEMA

witnesses reflects that FEMA employees exercised at least some degree of care in considering

the issue of formaldehyde in EHUs.  Counsel had a factual basis to argue that:

FEMA relied upon manufacturers to provide units that were safe and
habitable and met industry standards.  They relied upon a promise that was
broken.

FEMA, later on, learns that formaldehyde in the trailer was causing
problems for sensitive individuals.  After learning about the problem, they kick it
into gear and distribute all sorts of brochures about the dangers of formaldehyde .
. . once FEMA learned about it, they took it very seriously, they got flyers out . . .
they put together safety notices . . .

But the bottom line is the FEMA people, they said these people expressing
the concerns had legitimate concerns.  It was a high priority mission . . . They
initiated a swapping program.

Ex. F (5/24/10 Transcript) at 1369:25-1371:6 (pp. 1369-71).[32]

That Plaintiffs were even able to make these arguments based upon admissible evidence

---

[31] *See Ambrose*, 639 So.2d at 219 (there can only be gross negligence or willful and wanton
misconduct where there is a complete lack or entire absence of care).

[32] After the close of evidence, including the testimony of numerous government employees via
deposition, Plaintiffs objected to the jury form with the following characterization of the factual record
presented:

FEMA should not have been included in the jury instructions or in the verdict form
because there was ***no evidence of gross neglect against FEMA whatsoever*** . . .

Ex. F (5/24/10 Transcript) at 1445:9-18 (p. 1445) (emphasis added).

and the factual record conclusively shows that there are enough facts before this Court on summary judgment to show there is no genuine issue of material fact as to whether the United States acted with the entire absence of care that is required to prove gross negligence or willful and wanton misconduct under Louisiana tort law.  *See Tauzier*, 807 So.2d at 1110; *Ambrose*, 639 So.2d at 219 (requiring a complete lack of care for a showing of gross negligence); *Bridges*, 982 So.2d at 310 (granting summary judgment because there was no issue of material fact regarding the defendants' alleged gross negligence).  As summarized correctly by Plaintiffs' counsel, numerous FEMA witnesses have testified to the various actions that FEMA took in response to the issue of formaldehyde in EHUs.  *Compare supra*, *with Hendry*, 1131 F. Supp. at 201 (requiring an entire absence of care to show gross negligence).  The government initially relied upon third party manufacturers, but upon noticing there was a potential problem for occupants in EHUs, the government took action to swap out units, provide information in the form of thousands of flyers and brochures, recommend ventilation, and establish a call center – all while dealing the with complications and confusions caused by one of history's worst natural disasters. *See supra*.  This same testimonial evidence that was presented and argued to the bellwether juries is currently before the Court on summary judgment and, even viewing this evidence in the light most favorable to Plaintiffs, there can be no dispute that the facts show the government did not act in such an outrageous fashion as to constitute the required extreme failure to act with any degree of care.  *See Roton*, 966 So.2d at 795.  As Plaintiffs argued, there are admissible facts that show the government "just didn't sit on its hands," was "full of activity," took the issue "very seriously," and "kick[ed] it into gear."  *See supra*.

The incontrovertible facts in this case show:

45

SF ¶¶ 6,7,12    FEMA purchased EHUs from a variety of vendors and relied upon vendors and manufacturers to provide FEMA with EHUs that met and complied with all applicable requirements and would provide disaster victims with safe and habitable shelter.  FEMA had successfully used these types of EHUs in the past.  Contractors commenced moving people into EHUs in mid-September 2005.

SF ¶¶ 13-15    Between October 2005 and February 2006, OSHA tested (among other things) a number of new, sealed, unoccupied trailers that had not yet been made ready for occupancy for formaldehyde.  OSHA determined that venting a new, sealed, unit for 15 to 20 minutes would reduce formaldehyde levels below the occupational level of concern.

SF ¶¶ 16-19    In mid-March 2006, FEMA learned through the news media of the first occupant complaint regarding formaldehyde.  FEMA addressed the concern by replacing the unit that same month.

SF ¶¶ 11,21    Commencing in March 2006, and continuing thereafter, FEMA, through the news media, encouraged all EHU occupants to air out and vent their EHUs.  Ventilation is recommended by a number of entities and agencies as an appropriate and effective way to lower formaldehyde levels.

SF ¶ 22    On March 20, 2006, FEMA contacted its installation contractors to see what actions, if any, were being taken to address formaldehyde in EHUs.  They learned that some contractors were ventilating units prior to issuing them to occupants and that contractors were instructing occupants to air out units as part of their monthly preventive maintenance inspections.

SF ¶ 23    In March 2006, FEMA also contacted its largest supplier of EHUs (50,000 units) and was told that their EHUs were only constructed with low formaldehyde emitting materials.

SF ¶ 24    In late March 2006, FEMA's occupational safety office tested sealed units at staging areas that had not yet been made ready for occupancy.  In April 2006, the office reported that formaldehyde levels were comparable to levels posted on the EPA website for trailers and mobile homes.  The office recommended that its employees dealing with sealed, not yet installed, units vent them for a short time before entering, and also recommended that residents be instructed to vent units.

46

SF ¶ 25      As early as May 2006, FEMA initiated actions in an attempt to contract for the formaldehyde testing of EHUs.

SF ¶ 18      As of June 18, 2006, FEMA had received less than 6 complaints from Louisiana occupants.  These complaints were resolved by recommending that the occupants vent their units and, where that did not resolve the an occupant's concern, swapping out the units.

SF ¶ 29      In June 2006, FEMA received a letter dated June 13, 2006, from the Sierra club advising FEMA that it should provide occupants with better notification about the need for ventilation and humidity control in EHUs.

SF ¶¶ 31-35  That same month, in June 2006, FEMA decided to prepare and issue a formaldehyde brochure notifying occupants about formaldehyde and encouraging them to vent their units and talk with their doctors if they had concerns.  FEMA also engaged the EPA and CDC/ATSDR to test EHUs and analyze results. Brochures were prepared and issued in July and August 2006; units were tested in September and October 2006.

SF ¶¶ 38-40  In May 2007, FEMA learned that some children in Mississippi were potentially presenting with illnesses that could be related to formaldehyde in EHUs.  Although FEMA had only received approximately 200 documented formaldehyde complaints between March 2006 and July 2007, FEMA initiated a second formaldehyde information campaign, attempting to deliver a flyer to all occupied units.

SF ¶¶ 39-41  In July 2007, FEMA set up a dedicated formaldehyde call center to answer occupant questions and help occupants move to alternate housing; offered to relocate all residents with concerns; and adopted a policy to require formaldehyde specifications in all future EHU contracts.

SF ¶¶ 42-45  In July 2007, FEMA re-engaged CDC to conduct additional testing of units, this time of occupied trailers, pending the approval of the selected occupants.  In February 2008, CDC reported the initial results of its testing and FEMA distributed a third brochure to occupants detailing the CDC's findings.  FEMA also offered to have its contractor test any occupied unit for formaldehyde upon an occupant's request.

47

These facts leave no genuine issue as to whether FEMA relied upon the representations of others regarding safety, *see Houston Exploration*, 269 F.3d at 533; was unable to fully appreciate the severity and extent of any potential harm to occupants, *see id.*; faced confusion and inexperience in how to respond, *see Bourgeois*, 562 So.2d at 1180; and did take action in response to concerns about formaldehyde in EHUs, *see Bridges*, 982 So.2d at 310.  In addition, this Court has already found that there existed no specific rule, instruction, or regulation that prescribed how FEMA should respond to concerns about formaldehyde.  Order and Reasons, October 3, 2008, at 25 (Rec. Doc. 717).  Under Louisiana law, this fact is compelling evidence of the lack of any gross negligence.  *See Brown v. Lee*, 929 So.2d 775, 779 (La. App. 4 Cir. 2006).

At best, Plaintiffs are left to attack the adequacy of the United States' response and contend that the government should have done more, and done more sooner.  Regardless, it is indisputable that the United States did take a number of actions in response to formaldehyde concerns, and, thus, cannot be guilty of exercising ***no care*** and committing gross negligence. FEMA had successfully used these types of EHUs in responding to past disasters.  Before complaints and concerns started to mount, FEMA did not perceive any obvious high degree of danger to occupants.  As complaints and concerns about the formaldehyde levels facing occupants during habitation were raised, FEMA faced a novel crisis and it is unclear whether they knew how to respond – various points of view were expressed and courses of conduct were considered.  There was no clear cut solution to what amounted to a potential multi-faceted problem, but as FEMA's awareness of the nature and scope of the potential problem increased, FEMA chose to ratchet up its response to address concerns.  In the face of uncertainty regarding the extent of risk that was present, FEMA's response could arguably be described as "better late

48

than never," but such a delay does not amount to gross negligence.  *See Reynolds*, 26 So.3d at

153.  Even an argument, in hindsight, that the United States' response should have been more

proactive than reactive is insufficient to satisfy the requirement of extreme and outrageous

conduct.  *See Mullins*, 697 So.2d at 754-56 (the exercise of very poor judgment may amount to

negligence but not gross negligence).  Despite conflicting information from a variety of sources

and the absence of bright line standards, it is indisputable that the government did exercise some

care regarding the alleged problem and did take actions in the interest of Plaintiffs' health and

safety.

Even if delays occurred and mistakes were made – even if the government should have

done a better job than it did and should have identified a potential problem earlier than it did –

the facts in this case show that the United States eventually took action and did not wholly

disregard concerns about formaldehyde in EHUs.  There is no genuine issue of material fact

regarding whether the United States treated any Plaintiff with gross negligence or willful and

wanton misconduct, and there are no facts in the record that constitute the outrageous and total

lack of care required for gross negligence or willful and wanton misconduct under Louisiana

law.  For these reasons, summary judgment is appropriate.

## CONCLUSION

For the foregoing reasons, the court should dismiss Plaintiffs' remaining FTCA claims,

or, in the alternative, enter summary judgment for the United States.

49

Dated:  October 4, 2010                          Respectfully Submitted,

TONY WEST                                        HENRY T. MILLER
Assistant Attorney General, Civil Division       ADAM BAIN
                                                 Senior Trial Counsel
J. PATRICK GLYNN
Director, Civil Division, Torts Branch            MICHELLE BOYLE
                                                 JONATHAN WALDRON
DAVID S. FISHBACK                                Trial Attorneys
Assistant Director

OF COUNSEL:                                      *s/ Adam M. Dinnell*
                                                 ADAM M. DINNELL (TX No. 24055405)
JORDAN FRIED                                     Trial Attorney
JANICE WILLIAMS-JONES                            United States Department of Justice
FEMA/DHS                                         Civil Division, Torts Branch
                                                 P.O. Box 340, Ben Franklin Station
                                                 Washington, DC 20004
                                                 Telephone:  (202) 616-4211
                                                 Email: Adam.Dinnell@usdoj.gov

                                                 Attorneys for Defendant United States

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2010, the foregoing document was filed via the U.S.

District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison

Counsel.

                              *s/ Adam M. Dinnell*
                              ADAM M. DINNELL (TX No. 24055405)

50