Case No. 10-30451

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY
LITIGATION

ALANA ALEXANDER, Individually and on behalf of Christopher Cooper and
Erika Alexander,
Plaintiff-Appellant

v.

GULF STREAM COACH, INC.; FLUOR ENTERPRISES, INC.; UNITED
STATES OF AMERICA, through the Federal Emergency Management Agency
Defendants-Appellees

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF LOUISIANA
MULTI-DISTRICT LITIGATION NO. 07-1873, DIVISION "N,"
THE HONORABLE KURT D. ENGELHARDT, PRESIDING

---

ORIGINAL BRIEF OF APPELLANT

---

Respectfully submitted,

**GERALD E. MEUNIER (BAR NO. 9471)**
**JUSTIN I. WOODS (BAR NO. 24713)**

**Gainsburgh, Benjamin, David,**
**Meunier & Warshauer, L.L.C.**
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Attorneys for Plaintiff/Appellant


EXHIBIT
B

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal.

The following may have a financial interest in the outcome of this litigation:

Alana Alexander, Individually and on behalf of Christopher Cooper and Erika Alexander

United States of America

The following attorneys and law firms have appeared of record in this case:

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**

Gerald E. Meunier
Justin I. Woods
GAINSBURGH, BENJAMIN, DAVID, MEUNIER & WARSHAUER, L.L.C.

Anthony Buzbee
BUZBEE LAW FIRM

Robert Becnel
LAW OFFICES OF ROBERT BECNEL

Raul Bencomo
BENCOMO AND ASSOCIATES

Matt Moreland
LAW OFFICES OF DANIEL E. BECNEL, JR.

Linda Nelson
LAMBERT AND NELSON

ii

Dennis Reich
REICH & BINSTOCK

Mikal Watts
WATTS GUERRA CRAFT, LLP

## ATTORNEYS APPEARING FOR THE UNITED STATES OF AMERICA

Tony West
J. Patrick Glynn
David S. Fishback
Jordan Fried
Adam Bain
Henry T. Miller
Adam Dinnell
Michelle Boyle
Michele Grief
Jonathon Walderon
Janice Williams-Jones

United States Department of Justice
Civil-Division – Torts Branch
P.O. Box 340 – Ben Franklin Station
Washington, D.C. 20004

/s/ Gerald E. Meunier
Attorney of Record for Plaintiff-Appellant

iii

## **REQUEST FOR ORAL ARGUMENT**

Appellant, Alana Alexander on behalf of Christopher Cooper, respectfully requests that this Honorable Court entertain oral argument on the issues presented herein. The Court might benefit from same based on counsel's familiarity with the relevant facts and procedural aspects of this Multi-District Litigation.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................................... ii

REQUEST FOR ORAL ARGUMENT ................................................................. iv

TABLE OF CONTENTS......................................................................................v

TABLE OF AUTHORITIES ............................................................................. vi

JURISDICTIONAL STATEMENT ................................................................... viii

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..................................... ix

STATEMENT OF THE CASE...........................................................................1

   I. Course of Proceedings and Disposition Below....................................................1

   II. Statement of Facts........................................................................................3

SUMMARY OF THE ARGUMENT .....................................................................7

ARGUMENT ....................................................................................................9

   I. STANDARD OF REVIEW ...........................................................................9

   II. THE DISTRICT COURT MISAPPLIED THE DISCOVERY RULE IN
   DETERMINING THE DATE COOPER'S CLAIM ACCRUED ........................9

      A. THE DISTRICT COURT FAILED TO CONSIDER THE
      GOVERNMENT'S ROLE IN CAUSING COOPER'S INJURY WHEN
      DETERMINING THE DATE OF HIS CLAIM ACCRUAL............................9

      B. THE DISTRICT COURT ERRONEOUSLY IMPUTED KNOWLEDGE
      OF COOPER'S INJURY AND CAUSE TO ALANA ALEXANDER ...........18

   III. THE CONTINUING TORT DOCTRINE TOLLED THE ACCRUAL OF
   COOPER'S FTCA CLAIM UNTIL JULY 2007 .................................................21

CONCLUSION...............................................................................................25

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................27

# TABLE OF AUTHORITIES

## Cases

*Barrett v. United States*, 689 F.2d 324 (2d Cir. 1982)..............................................11

*Bennett ex rel. Estate of Bennett v. United States*, 429 F.Supp.2d 270 (D. Mass.
  2006) .........................................................................................................9

*Cannon v. United States*, 338 F.3d 1183 (10th Cir. 2003) .........................................9

*Cascone v. United States*, 370 F.3d 95 (1st Cir. 2004)............................................20

*Cooper v. United States*, 442 F.2d 908 (7th Cir. 1971) ...........................................22

*Donaldson v. O'Connor*, 493 F.2d 507 (5th Cir. 1974) ..........................................22

*Drazan v. United States*, 762 F.2d 56 (7th Cir. 1985).................... 11, 13, 14, 15, 16

*Dubose v. Kansas City Southern Railway Co.*, 729 F.2d 1026 (5th Cir. 1984) ......18

*Fowkes v. Pennsylvania R.R.*, 264 F.2d 397 (3d Cir. 1959)....................................22

*Garza v. U.S. Bureau of Prisons*, 284 F.3d 930 (8th Cir. 2002) .............................11

*Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986) .........................................11

*Gross v. United States*, 676 F.2d 295 (8th Cir. 1982) .............................................22

*Harrison v. United States*, 708 F.2d 1023 (5th Cir. 1983) ......................................19

*Hoery v. United States*, 324 F.3d 1220 (10th Cir. 2003) .........................................22

*Hughes v. United States*, 263 F.3d 272 (3d Cir. 2001).............................................12

*Kling Realty Co., Inc., v. Chevron USA, Inc.*, 575 F.3d 510 (5th Cir. 2009) ..........22

*Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980)......................................................22

*Leonhard v. United States*, 633 F.2d 599 (2d Cir. 1980)..........................................22

*MacMillan v. United States*, 46 F.3d 377 (5th Cir. 1995) .......................................10

*McCullough v. United States,* 607 F.3d 1355 (11th Cir. 2010) .................................9

*McIntyre v. United States*, 367 F.3d 38 (1st Cir. 2004).......................................... 20

*Mittleman v. Department of Treasury*, 919 F.Supp. 461 (D.D.C. 1995).................22

*Page v. United States*, 729 F.2d 818 (D.C.Cir. 1984) .............................................22

*Ramming v. United States,* 281 F.3d 158 (5th Cir. 2001)....................................9, 12

*Rozar v. Mullis,* 85 F.3d 556 (11th Cir. 1996)...............................................................20

*Skwira v. United States,* 344 F.3d 64 (1st Cir. 2003) ...............................................19

*Smith v. United States,* 518 F.3d 139 (D.D.C. 2007).................................................11

*Thomas v. Nicholson,* 561 F.Supp.2d 1 (D.D.C. 2008) ...........................................22

*United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259

  (1979)........................................................................................................ passim

*Valdez ex rel Donely v. United States,* 518 F.3d 173 (2d Cir. 2008).......................11

*Waits v. United States,* 611 F.2d 550 (5th Cir. 1980) .................................. 13, 15, 16

**<u>Federal Statutes</u>**

28 U.S.C. §1291 ......................................................................................................... viii

22 U.S.C. §2671, *et seq.* ...............................................................................................1

## JURISDICTIONAL STATEMENT

This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1291 to hear the present appeal from a final judgment under Federal Rule of Civil Procedure 54(b) dismissing the claims of Christopher Cooper against the United States of America for lack of subject matter jurisdiction.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1. Whether the district court erred in dismissing Christopher Cooper's claims against the United States of America based upon a misapplication of the discovery rule to determine the date when his claim accrued under the Federal Tort Claims Act.

2. Whether the district court erred by failing to apply the continuous tort doctrine in the determination of the date when Christopher Cooper's claims against the United States of America accrued.

## STATEMENT OF THE CASE

### I.  Course of Proceedings and Disposition Below

The instant appeal arises out of one of thousands of lawsuits brought on behalf of individuals who have alleged that the federal government, through the Federal Emergency Management Agency ("FEMA"), caused them harm by withholding information concerning the risks and carcinogenic nature of formaldehyde exposure inside emergency housing units provided to them by FEMA after Hurricanes Katrina and Rita. Alana Alexander and her son, Christopher Cooper are two such individuals.

On July 10, 2008, Alana Alexander submitted an administrative claim against the United States on behalf of her son, Christopher Cooper, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§2671-2680 (hereinafter FTCA)[1]. More than six months after the filing, FEMA had not made a final disposition of the claim. Accordingly, on February 27, 2009, Alana Alexander, proceeding both individually and on behalf of Christopher Cooper, brought an action against Gulf Stream Coach, Inc., Fluor Enterprises, Inc., and the United States of America.[2] The Appellant's complaint alleges that the United States was careless, reckless, grossly negligent, and acted with deliberate indifference to the health of the Appellants, by

---

[1] USCA5 1535.
[2] *Age, et al., v., Gulf Stream Coach, Inc., et al.*, EDLA Case No. 09-2892, USCA5 15-49.

1

failing to disclose to them that they were being exposed to potentially dangerous and high levels of formaldehyde in the emergency housing unit provided to them after Hurricane Katrina.[3]

On July 27, 2009, FEMA filed its Motion to Dismiss the Claims of Christopher Cooper for Lack of Subject Matter Jurisdiction, on the ground that the action brought on his behalf in the district court was predicated on an administrative claim form filed more than two years after his claims against the United States accrued.[4] Specifically, the United States argued the administrative claim was filed in July 2008, and that Alana Alexander was aware prior to July 2006 that her minor son Christopher Cooper was experiencing symptoms related to the FEMA-provided EHU.[5] The Appellant filed a Memorandum in Opposition to this Motion.[6] A reply memorandum was filed by the United States on August 11, 2009.[7] On August 21, 2009, the district court issued its Order and Reasons granting the United States' Motion to Dismiss dismissing the Christopher Cooper's claims against the United States.[8]

---

[3] USCA5 38-39.

[4] USCA5 1516.

[5] *Id.*

[6] USCA5 1591.

[7] USCA5 1603.

[8] USCA5 1673.

On September 4, 2009, the Appellants filed a Motion for Entry of Judgment under Federal Rule of Civil Procedure 54(b) requesting a final, appealable judgment be entered.[9] Despite the United States' Memorandum in Opposition, the district court granted the Appellants' Motion for Entry of Judgment under FRCP 54(b).[10] It is from the district court's final judgment dismissing Christopher Cooper's claims against the United States that this appeal is taken.

## II. Statement of Facts

After the landfall of Hurricane Katrina in the fall of 2005, the residence of Alana Alexander and her children was rendered uninhabitable, leaving them homeless and in need of housing assistance.[11] As a result, FEMA provided Alana Alexander and her children a travel trailer as an emergency housing unit ("EHU").[12]

FEMA had been aware of the presence of formaldehyde in manufactured housing, including EHUs, for many years prior to Hurricane Katrina; but, even more pertinent to the case at issue, FEMA became aware of the occupant risks associated with EHUs after Hurricane Katrina when, in May of 2006, a family in Mississippi displaced by the storm reported the results of independent testing and

---

[9] USCA5 1676.
[10] USCA5 1695.
[11] USCA5 18.
[12] USCA5 17.

health complaints associated with high levels of off-gassed formaldehyde in a travel trailer provided by FEMA.[13]   Indeed, as early as October 11, 2005, and continuing until January 17, 2006, the Federal Government also had been conducting formaldehyde air testing of the EHUs at its staging areas in Mississippi,[14] which testing revealed that most levels of formaldehyde exposure found in the sampled EHUs exceeded both EPA-recognized levels at which acute health effects can manifest and OSHA workplace maximum levels.[15] Despite these prior developments, FEMA continued to supply arguably defective and dangerous travel trailers as housing units to storm-displaced residents of the Gulf Coast, including the Appellant and her son Christopher Cooper.

In May of 2006, Alana Alexander and her children returned to New Orleans and began residing in the subject EHU. On doing so, Ms. Alexander and her son Christopher noticed a "chemical smell" in the unit, and experienced eye and throat irritation.[16] Ms. Alexander asked a representative of the United States or one of its contractors about the chemical smell coming from her trailer.[17] The representative, whose full identity remains unknown, advised Alana that the smell was "nothing to

---

[13] USCA5 29.

[14] USCA5 29.

[15] USCA5 29.

[16]  USCA5 1747.

[17] USCA5 1586.

4

worry about."[18] Accordingly, Alana Alexander at that time did not associate either the smell or any of her/her son's symptoms with formaldehyde emissions in the EHU, much less with any act or omission of the federal government. Patently, she had no reason to do so.

In contrast, FEMA at this same point in time was continuing to receive information about formaldehyde-related problems with the units it was providing to Hurricane Katrina victims. The Agency was notified on a number of occasions in May and June of 2006 of EHU residents' concerns over formaldehyde emissions.[19] Still, FEMA persisted in not responding to these concerns, and the record indicates this was part of a deliberate effort to avoid liability for formaldehyde exposure claims.[20]

Moreover, even as (unbeknownst to them) the health of Alana Alexander and Christopher Cooper was being placed at risk by taking occupancy of their EHU, the federal government was actively conferring with one or more of the manufacturers of EHUs about how to best deal with fall-out from an emerging crisis.[21] FEMA likewise ignored, and manipulated, the concerns of federal

---

[18] USCA5 1586.
[19] USCA5 30.
[20] USCA5 31.
[21] USCA5 31.

scientists in other federal agencies as it proceeded to act solely with a view toward avoiding negative publicity and legal liability.[22]

During the entire duration of the Appellant's residency in their EHU, the federal government had an obligation to warn Alana Alexander of the harm and dangerousness of the EHU of which the government was aware.[23] Yet, it was not until July of 2007 that the Federal Government first attempted through a flyer distribution program to alert EHU residents to the presence of formaldehyde and its potential to cause cancer. Prior to this time, Alana Alexander and her son were allowed to live in ignorance of critical information (available to FEMA) about the danger and health risks of formaldehyde emissions. Indeed, notwithstanding the government's flyer program, it was not until December 2007 that Alana Alexander first obtained actual knowledge through news reports that formaldehyde emissions in the travel trailers might lead to respiratory and asthma problems as well as increase the risk of certain types of cancer.[24] It was then that Ms. Alexander realized she and her family needed to vacate the EHU.

---

[22] USCA5 37.

[23] USCA5 37.

[24] USCA5 1734.

6

## SUMMARY OF THE ARGUMENT

This Honorable Court should reverse the decision of the district court dismissing as time-barred Christopher Cooper's claims against the United States of America, because his administrative claim form was timely filed within two years of the date his claim accrued under the Federal Tort Claims Act, and his subsequent legal action was appropriately filed after the requisite period of the administrative claim pendency had passed. Pursuant to the "discovery test" recognized by the Supreme Court in *United States v. Kubrick*, Christopher's claim could not have accrued until July 2007, when a reasonable person in Alana Alexander's circumstances first could have had any knowledge of facts (through FEMA's flyer distribution program) to indicate a causal connection between the United States' actions and Christopher's injuries.[25] As such, the July 2008 filing of Christopher's administrative claim form was timely, and subject matter jurisdiction clearly existed over the district court action filed on his behalf after no action was taken on the administrative claim following more than six months' pendency. On the basis alone, the district court's dismissal should be reversed.

In addition, regardless of the knowledge which FEMA claims was imputed to Alana Alexander prior to July 2007, the two-year limitations period under the FTCA should be considered tolled during the duration of the United States'

---

[25] *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

tortious conduct in this case, pursuant to the "continuing tort" doctrine. The United States' failure to respond to the high levels of formaldehyde present in the Alexander/Cooper EHU, and to disclose the risks of same to Appellants, was misconduct that was continuing in nature.   The instant case against the United States alleges the breach of an ongoing duty to the Alana Alexander and her son. Hence, the limitations period applicable to Christopher's FTCA claim was tolled until July 2007, since the implementation of a flyer program at that time represents the earliest time when the United States' wrongful withholding of information from EHU occupants (including Appellants) ceased.   The July 2008 filing date of the administrative claim for Christopher Cooper therefore was timely on this basis.

## ARGUMENT

### I. STANDARD OF REVIEW

The district court's decision granting the United States of America's Rule 12(b)(1) Motion to Dismiss interpreting the Federal Tort Claims Act's statute of limitation provisions is to be reviewed *de novo*.[26]

### II. THE DISTRICT COURT MISAPPLIED THE DISCOVERY RULE IN DETERMINING THE DATE COOPER'S CLAIM ACCRUED

The Federal Tort Claims Act ("FTCA") provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."[27] As a general rule, FTCA claims follow the "injury occurrence rule," which defines the accrual date as the actual time of injury.[28] The Supreme Court in *United States v. Kubrick*, recognized an exception to the general rule, the discovery rule.[29] Under the discovery rule, accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause, including who caused it.[30]

### A. The District Court Failed to Consider the Government's Role in Causing Cooper's Injury When Determining the Date of His Claim Accrual

---

[26] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *McCullough v. United States*, 607 F.3d 1355, 1358 (11th Cir. 2010).

[27] 28 U.S.C. § 2401(b).

[28] *Cannon v. United States*, 338 F.3d 1183, 1190 (10th Cir. 2003); *Bennett ex rel. Estate of Bennett v. United States*, 429 F.Supp.2d 270, 276 (D. Mass. 2006).

[29] *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)

[30] *Id.*

The decisive issue presented in this appeal is determination of the date on which Christopher Cooper's cause of action against the United States accrued. The district court, in determining that accrual occurred in May of 2006, relied solely on the holding of *United States v. Kubrick*, wherein the Supreme Court held that the two-year statute of limitations period for federal tort claim cases begins to run when a person knows that he is injured <u>and knows what caused his injury</u>, even if he does not know, and has no reason to know, that the cause involved negligence.[31] Here, the district court determined that, when Alana Alexander first noticed that Christopher's symptoms began or worsened at the time they took up residence in the EHU, she acquired sufficient knowledge regarding Christopher's injury <u>and its causation</u> to trigger the accrual of his claims.[32] However, the district court's reasoning was based on a misinterpretation, and subsequent misapplication, of the Supreme Court's ruling in *Kubrick.*

In setting the accrual date in May of 2006, the district court focused on Alana Alexander's knowledge of her son's injury, and overlooked the important matter of her unawareness of the <u>cause of that injury</u>. However, the Supreme Court has recognized that the determination of an FTCA claim accrual date is also based

---

[31] *Id.* Appellants recognize that the limitations period under the Federal Tort Claims Act is not tolled during the minority of a putative plaintiff, and that it is his parent's knowledge that is imputed to him. *MacMillan v. United States*, 46 F.3d 377, 381 (5th Cir. 1995).

[32] USCA5 1671.

10

upon when Alana Alexander could have acquired knowledge of the critical facts regarding who inflicted his injury.[33] Specifically, the determination of the claim accrual date must include an investigation as to when Alana Alexander should have known that the <u>government</u> had caused injury to her son, and only then could Christopher's cause of action against the United States have accrued under the FTCA. The district court's failure to engage in this analysis or inquiry warrants reversal by this Court.

The Supreme Court's holding in *Kubrick* established that accrual of a claim occurs when a plaintiff discovers, or in the exercise of reasonable diligence should discover, the critical facts of his injury and its cause, including *who* has inflicted the injury.[34] Furthermore, numerous Courts of Appeal have applied *Kubrick*'s discovery rule as delaying the start of the two-year statute of limitations until the government cause is known or when a reasonably diligent person should have discovered the government cause of the injury.[35] In addition, the Fifth Circuit has

---

[33] *Kubrick,* 444 U.S. at 122.

[34] *Id.* ("The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted injury"); s*ee also Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir. 1986); *Smith v. United States*, 518 F.3d 139 (D.D.C. 2007).

[35] *Barrett v. United States*, 689 F.2d 324, 330 (2d Cir. 1982); *Valdez ex rel Donely v. United States*, 518 F.3d 173, 178 (2d Cir. 2008); *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir. 1985); *Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986); *Garza v. U.S. Bureau of Prisons*, 284 F.3d 930, 934 (8th Cir. 2002) (a claim accrues once the plaintiff has reason to believe he has been injured by an act or

11

found that "causation" for purposes of determining when a FTCA claim accrues refers to the connection between the injury and that defendant's actions.[36]

In *Kubrick*, the Supreme Court was not faced with the question of when the plaintiff knew of the government's role in the causation of his injury. Instead, the plaintiff, Kubrick, was given a drug in a Veterans Administration hospital and afterward had ear problems, which he was told might be due to the drug.[37] Kubrick knew he was injured, knew that the drug was the cause of the injury, and knew that the drug was administered by the federal government. As such, Kubrick knew the government was the 'who' that had inflicted the injury. These facts are clearly distinguishable from those present in the case at bar. Even if Alana Alexander knew that Christopher's symptoms began when they first moved into the EHU, there were no facts available to her to indicate that the government had or was continuing to place strategic litigation concerns over responding to the harmful effects of formaldehyde. Indeed, even Ms. Alexander's awareness that the EHU was a source of harm, would bring focus upon the fault of the unit's manufacturer, not FEMA. Gulf Stream, not FEMA, was the manufacturer of the EHU provided

---

omission by the government); *Hughes v. United States*, 263 F.3d 272, 277-278 (3d Cir. 2001) (holding in a medical malpractice case arising from a failure to diagnose and treat that the claim does not accrue until the plaintiff is aware of the government's role in causing the injury).

[36] *See Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001).

[37] *Kubrick*, 444 U.S. at 113-114.

12

to Appellants.  Therefore, under the *Kubrick* analysis, Christopher's FTCA claims could not have accrued in May of 2006 as the district court determined, because Alana Alexander had not discovered the government's role in injuring her son, and had no reason to do so.  This is particularly obvious since the fault of FEMA in this case is based not on product liability, but on its deliberate withholding of information about formaldehyde health risks after it became actually aware of these risks.

Instead, the case at bar is more factually similar to the facts of *Drazan v. United States*, 762 F.2d 56 (7th Cir. 1985), and *Waits v. United States*, 611 F.2d 550 (5th Cir. 1980).  In *Drazan* the plaintiff's husband underwent an x-ray at a Veterans Administration hospital.[38]  The x-ray revealed the possibility of a small tumor in one of the plaintiff's husband's lungs and suggested a follow-up examination.[39]  No such examination was ever conducted, nor was the plaintiff or her husband told of the results of the initial x-ray.[40]    When her husband next received his annual chest x-ray, the small tumor was large and cancerous, resulting in his death the next month.[41] The government argued, and the district court agreed, that the plaintiff's cause of action accrued when she had learned that her

---

[38] *Drazan*, 762 F.2d at 57.

[39] *Id.*

[40] *Id.*

[41] *Id.*

husband had died of lung cancer.[42] The district court, just as the district court here, reasoned that when the plaintiff was told that her husband had died of lung cancer, she knew of his death and its cause, thus, triggering her claim's accrual.[43] The Seventh Circuit, however, reversed the district court's decision, finding that the court had misapplied the Supreme Court's holding in *Kubrick*.[44] The Seventh Circuit held that until the plaintiff had received the results of her husband's first x-ray, she had no reason to suspect the government had been a cause his death by neglecting to follow up.[45] "The cause of which a federal tort claimant must have notice for the statute of limitations to begin to run is the cause that is in the government's control, not a concurrent but independent cause that would not lead anyone to suspect that the government had been responsible for the injury."[46]

Similarly, the district court here determined that the date Alana Alexander first associated Christopher's symptoms to the EHU was the date she knew the injury and the cause. However, just as the plaintiff in *Drazan*, Alana Alexander had no reason to think or even to suspect that the federal government was causing injury to Christopher by withholding information and failing to respond to the

---

[42] *Id.* at 58.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.* at 59 (emphasis added).

formaldehyde crisis. The Seventh Circuit further recognized in *Drazan,* and equally applicable here, that even if Alana Alexander had knowledge that Christopher's symptoms were caused by the EHU, it was not an either-or proposition.[47] Formaldehyde emissions in the EHU were "a" cause of Christopher's injuries, but the continuing nature of that injury was caused by the government's failure to respond. "When there are two causes of an injury, and only one is the government, the knowledge that is required to set the statute of limitations running is knowledge of the government cause, not just of the other cause."[48] Thus, it is not enough that Alana Alexander may have known "a" cause of Christopher's injury in May 2006, but she must have also known of the government cause of the injury in order to trigger Christopher's claim accrual against the government.

In addition, the Fifth Circuit also faced a similar case in *Waits v. United States*. In *Waits,* doctors with the Veterans Administration treated the plaintiff's infected leg with an antibiotic that proved to be ineffective.[49] The infection worsened and the plaintiff's leg had to be amputated.[50] The plaintiff later learned that his leg could have been saved if the doctors had monitored his condition and

---

[47] *Id.* at 58.

[48] *Id.* at 59.

[49] *Waits v. United States*, 611 F.2d 550, 551 (5th Cir. 1980).

[50] *Id.*

15

administered an alternative antibiotic.[51] There, the district court correctly rejected the Government's argument that the plaintiff's cause of action accrued when he learned that his leg had been amputated due to the infection.[52] Instead, the district court held that the plaintiff's claim did not accrue until he learned that the government's failure to properly treat the infection had played a role in causing his injury.[53] This Court affirmed the district court's holding, stating that "[i]t is not enough to trigger the statute of limitations that the claimant is aware of his injury if he is unaware of the act or omission which caused the injury."[54] The *Waits'* district court's decision, correctly upheld on appeal, signifies what the district court in the case at bar should have held. Just as in *Waits* and *Drazan,* Christopher Cooper's FTCA claims did not accrue until he or his mother learned of the government's role in causing his injury. At the earliest, this accrual would have occurred in July 2007, when FEMA began to issue flyers to EHU residents concerning the carcinogenic nature of formaldehyde emissions inside the EHUs.  Before this, the link between formaldehyde exposure in EHUs and FEMA's knowledge or handling of information regarding that risk, could not possibly have been discerned

---

[51] *Id.* at 553.

[52] *Id.*

[53] *Id.*

[54] *Id.* at 552.

by Alana Alexander, or for that matter by any reasonably prudent individual in her circumstances.

It thus is clear from *Kubrick* and its progeny that Christopher Cooper's claims under the FTCA could not have accrued until his mother knew or should have known of the government's role in the causation of her son's injury. Alana Alexander testified in her deposition that the first time she even heard of formaldehyde in the EHUs was December of 2007.[55] Even if we assume that Alana Alexander should have learned of the government's cause of Christopher's injuries from FEMA's flyer distribution, Christopher's claim still could not have accrued at any time prior to July of 2007. Accordingly, his claim did not accrue until July 2007, less than two years prior to the filing of his administrative claim in July of 2008.

The district court's conclusion that Christopher Cooper's FTCA claim accrued in May 2006 constituted reversible error because it stands in conflict with the *Kubrick* 'discovery' test. By ignoring the element of the claimant's possible knowledge of government fault in regard to the disclosure of formaldehyde risks in EHUs, the court below failed to conduct the proper, and legally-required, analysis. Had it done so, the conclusion would have been that this FTCA cause of action did

---

[55] USCA5 1734.

17

not accrue until July 2007 at the earliest, making the administrative claim timely
when it was filed in July 2008.

## B. The District Court Erroneously Imputed Knowledge of Cooper's Injury and Cause to Alana Alexander

In addition to its failure to consider Alana Alexander's unawareness of the
government cause of Christopher Cooper's injury in determining the accrual date
of his claims, the district court also misapplied the amount of knowledge sufficient
to trigger the accrual of an FTCA cause of action. Here, the district court held that
the first correlation between the plaintiff's symptoms and the EHU triggered the
statute of limitations. However, such a rule would seemingly start the running of
the statute of limitations as soon as a potential plaintiff merely suspected
something was wrong. The law is clear that more than mere apprehension
something might be wrong is needed in order to trigger accrual of a plaintiff's
claim.

Under the facts of *Kubrick*, the plaintiff had actual knowledge of his injury
and its causation. At issue in *Kubrick* was whether the statute of limitations would
run while Kubrick awaited actual knowledge that his injury was negligently
inflicted.[56] While the Supreme Court's holding in *Kubrick* appeared to answer the
question of whether the accrual of a claim depended on a victim's actual

---

[56] *See Dubose v. Kansas City Southern Railway Co.*, 729 F.2d 1026, 1031 (5th
1984).

18

knowledge of negligence in the negative, the Supreme Court left other questions unanswered, including what knowledge, short of actual knowledge, was a sufficient basis to trigger accrual under the discovery rule.[57]

In attempting to answer this question, the Fifth Circuit in *Harrison v. United States*, found that "in assessing the awareness required to trigger the statute of limitations, it is essential to distinguish between "knowledge and belief...conclusions based on dreams, intuitions, suspicion, conjecture, ESP, speculation, or faulty reasoning, even if true, are merely "belief"... [a]bsent a reasonable basis, these conclusions do not rise to the level of "knowledge.""[58] In the case at bar, Alana Alexander testified in her deposition that, prior to December 2007, she did not have any knowledge that her son's symptoms were being caused by formaldehyde emissions inside the EHU, much less that the government had played any role in causing those injuries.[59] Because Alana Alexander herself did not have knowledge sufficient to trigger claim accrual, the district court's responsibility in this case was to address the question of when a reasonable person would have known facts sufficient to prompt inquiry as to the cause of Christopher's injuries. The case law requires as much, i.e., a lower court finding must be made as to whether sufficient facts were available to provoke a reasonable

---

[57] *Skwira v. United States*, 344 F.3d 64, 76 (1st Cir. 2003).

[58] *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

[59] USCA5 1734.

person in the plaintiff's circumstances to investigate the existence of a legal claim.[60] It is only after such a duty to inquire is established, that the plaintiff can be charged with knowledge that he or she would have uncovered through a reasonably diligent investigation.[61] Furthermore, the "mere availability" of facts is not enough to trigger the imputation of their knowledge to a person in the plaintiff's position.[62] In considering the attribution of knowledge of such facts to a potential plaintiff, a court must consider "the depth of the information available and … the breadth of that information's circulation."[63]

This record makes it clear that in May of 2006, on taking initial occupany of her family's EHU, Alana Alexander did not have sufficient information that would prompt a reasonable person to inquire further into the facts to ascertain the cause of Christopher Cooper's symptoms.  Ms. Alexander did inquire about the smell in her EHU on first taking occupancy, and it is undisputed that she was told by a defendant representative that the smell was not a matter for concern. No reasonable person would not have suspected under these circumstances that any condition or aspect of the EHU was problematic, let alone a possible cause of Christopher

---

[60] *McIntyre v. United States*, 367 F.3d 38, 52 (1st Cir. 2004); *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996).

[61] *McIntyre*, 85 F.3d at 52.

[62] *Cascone v. United States*, 370 F.3d 95 (1st Cir. 2004).

[63] *McIntyre*, 367 F.3d at 60.

20

Cooper's symptoms. Nor could any reasonable person have discerned under these circumstances that FEMA had a role in contributing to these symptoms.

In this case, a factual representation was made by an agent of one of the alleged wrongdoers in the litigation that a chemical smell detected by plaintiff on taking occupancy of an EHU was of no concern. To suggest that a reasonable person should have made further inquiry as to the veracity of this representation is nothing short of remarkable. In the real world, a displaced mother with a family in need of shelter clearly should have been entitled to rely on such a representation, and thus be encouraged to disassociate any symptoms experienced in the EHU from the earlier-detected chemical smell.

It was not until December 2007 that Ms. Alexander specifically was informed (through media reports) about dangerous formaldehyde emissions in EHUs such as hers. Even discounting this date of her actual knowledge, it was not until July of 2007 (when FEMA issued flyers) that any person reasonably could have even suspected the government's role in relation to formaldehyde exposure in EHUs. Consequently, the July 2008 filing of Christopher Cooper's administrative claim was well within the two-year statute of limitations imposed by the FTCA.

### III.    THE CONTINUING TORT DOCTRINE TOLLED THE ACCRUAL OF COOPER'S FTCA CLAIM

Not only did the district court misapply the "discovery test" recognized in *Kubrick* by failing to consider the government cause of Christopher Cooper's injuries and

21

by erroneously imputing knowledge to Alana Alexander, but the district court also failed to recognize that Christopher Cooper's cause of action against the government constituted a continuing tort, so that accrual of the limitations period herein was tolled until the tortious activity ceased.

It is well-settled law that "[w]hen a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases."[64] The alleged negligent acts and omissions of the United States in the case at bar fall within this "continuous tort" doctrine. The doctrine applies where there are continuing wrongful acts, and where no single incident can fairly be identified as the cause of harm.[65] Here, the Appellant's complaint specifically alleges that the Federal Government was under a duty to warn Alana Alexander of any defects present in the EHU which could cause harm of which the government

---

[64] *Page v. United States*, 729 F.2d 818, 821 (D.C.Cir. 1984); *Hoery v. United States*, 324 F.3d 1220, 1222 (10th Cir. 2003); *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir. 1974), *vacated on other grounds*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir. 1980); *Fowkes v. Pennsylvania R.R.*, 264 F.2d 397, 399 (3d Cir. 1959); *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980); *Gross v. United States*, 676 F.2d 295, 300 (8th Cir. 1982) (where the tortious conduct is of a continuing nature, the *Kubrick* rule does not apply); *Cooper v. United States*, 442 F.2d 908, 912 (7th Cir. 1971); *Thomas v. Nicholson*, 561 F.Supp.2d 1, 5 (D.D.C. 2008).

[65] *See Mittleman v. Department of Treasury*, 919 F.Supp. 461, 466-67 (D.D.C. 1995); *see also Kling Realty Co., Inc., v. Chevron USA, Inc.*, 575 F.3d 510, 519 (5th Cir. 2009) (for there to be a continuing tort, there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant).

22

was aware, and that the government violated this duty.[66] FEMA's duty to the Appellant existed every day the government was aware of the dangerously high levels of formaldehyde in EHUs but nonetheless failed to inform the appellant about the risks of formaldehyde exposure. It would be utterly illogical to characterize the government's negligent failure to respond to the formaldehyde crisis in this litigation, as consisting of separate, daily acts of negligence, each giving rise to separate injuries or causes of action. It likewise is illogical to characterize separate limitations periods for claimants based on a specific day while this negligence continued. The "trigger date," rather, is the date when the negligent pattern of non-disclosure ended, i.e., upon the July 2007 implementation of a flyer distribution program designed to advise EHU occupants about formaldehyde concerns.

The government-caused harm to Christopher Cooper was gradual in nature, and resulted from the cumulative impact of months of his exposure to formaldehyde. He was injured on every day he occupied the unit, just as the negligence causing his injury occurred and continued on every day he occupied the unit. Alana Alexander did not move her family out of the unit until early 2008 (after hearing in December 2007 about formaldehyde-related risks in the FEMA EHU's). The July 2008 filing of Christopher Cooper's administrative claim thus occurred less than

---

[66] USCA5 38.

two years after the culmination of FEMA misconduct and harm in this matter,

making the filing timely based on the continuous tort doctrine.

## CONCLUSION

The district court's conclusion that Christopher Cooper's FTCA claim accrued when his mother first detected a chemical smell and/or observed certain physical symptoms he experienced during early residence in a FEMA-provided EHU, contradicts the Supreme Court's 'discovery test' in *United States v. Kubrick*, and further ignores the continuing tort doctrine which applies to the case at bar. Christopher Cooper's FTCA claim did not accrue in May 2006 (as determined by the district court), but rather accrued no earlier than, or was tolled until, July 2007. Hence, when Alana Alexander filed an administrative claim on behalf of Christopher Cooper in July 2008, she did so within the applicable two-year limitations period of the accrual of Christopher's FTCA cause of action. Since the administrative claim filed on behalf of Christopher Cooper is not time-barred, either as a matter of the facts of record or as a matter of the applicable law, the district court filing herein proceeded on the proper jurisdictional predicate.

Appellants respectfully request that this panel reverse the district court's dismissal of Christopher Cooper's FTCA claims, and remand same to be reinstated so that they may proceed on the merits.

Respectfully submitted,


/s/Gerald E. Meunier
GERALD E. MEUNIER

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2010, a true copy of the above and foregoing has been served upon counsel for the Defendant's Liaison Counsel, United States of America, and Liaison Counsel for the Contractor Defendants via U.S. Mail, properly address to:

> Henry T. Miller
> U.S. Dept of Justice
> 1331 Penn Ave., NW, Rm. 8220 – N
> Washington, D.C. 20004
>
> Andrew D. Weinstock
> Duplass Zwain Bourgeois Morton Pfister & Weinstock
> 29th Floor, Three Lakeway Center
> 3838 N. Causeway Boulevard
> Metairie, Louisiana 70002
>
> David Kurtz
> Baker, Donelson, Bearman, Caldwell & Berkowitz
> 201 St. Charles Avenue
> Suite 3600
> New Orleans, Louisiana 70170

Furthermore, an electronic copy of the above and foregoing has been served upon the above counsel, through their e-mail address at Henry.Miller@usdoj.gov, andreww@duplass.com, dkurtz@bakerdonelson.com.

/s/ Gerald E. Meunier
GERALD E. MEUNIER

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Pursuant to 5th Cir. Rule 32.2 and 32.3, undersigned certifies this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7).

1. EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5TH CIR. R. 32.2, THE BRIEF CONTAINS 6,000 WORDS.

2. THE BRIEF HAS BEEN PREPARED IN PROPORTIONALLY SPACED TYPEFACE USING MICROSOFT WORD 2003.

3. THE UNDERSIGNED UNDERSTANDS THAT A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN FED. R. APP. 32(a)(7), MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

/s/Gerald E. Meunier
GERALD E. MEUNIER