```
IN RE:  FEMA TRAILER FORMALDEHYDE  MAY 24,  2010           CATHY PEPPER, RMR, CRR
PRODUCTS LIABILITY LITIGATION                                    CASTANEL v RBD
```

                                                                    Page 1346

                        UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA


    ****************************************************************

    IN RE:  FEMA TRAILER
    FORMALDEHYDE PRODUCTS
    LIABILITY LITIGATION
                                    DOCKET MDL NO. 1873 "N"
                                    NEW ORLEANS, LOUISIANA
                                    MONDAY, MAY 24, 2010, 8:30 A.M.

    THIS DOCUMENT RELATES TO:

    DOCKET NO. 09-3251,
    EARLINE CASTANEL V
    RECREATION BY DESIGN, LLC

    ****************************************************************

                                  DAY 6
                    TRANSCRIPT OF JURY TRIAL PROCEEDINGS
               HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
                        UNITED STATES DISTRICT JUDGE

                                                    EXHIBIT
                                                       F

    APPEARANCES:


    FOR PLAINTIFF:            WATTS GUERRA CRAFT
                              BY:  MIKAL C. WATTS, ESQUIRE
                              FOUR DOMINION DRIVE
                              BUILDING THREE, SUITE 100
                              SAN ANTONIO TX 78257


                              CHRIS PINEDO
                              ATTORNEY AT LAW
                              802 N. CARANCAHUA, SUITE 2250
                              CORPUS CHRISTI TX  78470


                              REICH & BINSTOCK
                              BY:  DENNIS C. REICH, ESQUIRE
                              4265 SAN FELIPE, SUITE 1000
                              HOUSTON TX  77027

IN RE:  FEMA TRAILER FORMALDEHYDE   MAY 24, 2010                CATHY PEPPER, RMR, CRR
PRODUCTS LIABILITY LITIGATION                                   CASTANEL v RBD

Page 1352

1    WAS EXPOSED, AND SHE WAS INJURED.  AND I THINK THAT THE EVIDENCE
2    HAS BORNE THAT OUT.  I TOLD YOU THAT WE WOULD BRING YOU A LOT OF
3    EVIDENCE TO PROVE THAT, WHICH WE HAVE DONE, INCLUDING STUDIES
4    THAT WERE REVIEWED BY DR. MCGWIN SHOWING A CAUSAL RELATIONSHIP
5    BETWEEN FORMALDEHYDE AND THE VERY RESPIRATORY SYMPTOMS THAT
6    MS. CASTANEL HAS.
7              WE TALKED ABOUT ODOR THRESHOLD.  I PREDICTED FOR YOU
8    THAT THE SCIENCE WOULD BEAR OUT THAT IT WAS 500 PARTS PER BILLION
9    AND YOU HAVE SEEN THAT.  WE BROUGHT YOU MULTIPLE WITNESSES.  AND
10   THIS GREEN, YELLOW, RED, THE BEST WAY TO KNOW WHAT THE LEVEL WAS
11   AT THE TIME THAT SHE WAS IN THE TRAILER IS THESE ODOR AND
12   IRRITANT THRESHOLDS AS OPPOSED TO A TEST THAT WAS DONE FOUR YEARS
13   LATER AFTER ALL THE FORMALDEHYDE OFF-GASSING HAS OCCURRED, AND
14   WE'VE DONE THAT.
15             I TOLD YOU THAT WE WOULD SHOW YOU WHY EARLINE CASTANEL
16   WAS EXPOSED, AND IN LARGE PART, IT'S DUE TO A LACK OF POLICY AT
17   REC BY DESIGN TO REQUIRE LOW FORMALDEHYDE-EMITTING WOODS, AND
18   YOU'VE SEEN THAT.
19             I TOLD YOU THAT WE WOULD PROVE TO YOU THAT SHAW, IN THIS
20   CASE, THEIR INSTALLATION DID NOT PLAY A ROLE, THAT THEY DID
21   EVERYTHING CORRECTLY AND I THINK THAT YOU DON'T HAVE ANY EVIDENCE
22   THAT SHOWS OTHERWISE.  THERE WAS A SMALL AIR CONDITIONING LEAK.
23   IT WAS FIXED WITHIN 24 HOURS, NO MORE COMPLAINTS UNTIL JUNE 1ST
24   OF 2006, WHEN THEIR CONTRACT ENDED.
25             I TOLD YOU THAT FEMA'S RESPONSE WOULD BE ONE THAT WOULD

1   BE FULL OF ACTIVITY THAT FRANKLY, I THINK THAT THEY RESPONDED
2   VERY WELL, AND WE BROUGHT YOU TEN DIFFERENT WITNESSES BETWEEN THE
3   PARTIES THAT SHOWED HOW FEMA RESPONDED TO THIS UNKNOWN HAZARD TO
4   THEM THAT WAS KNOWN BY THESE MANUFACTURERS, THESE PEOPLE AT
5   REC BY DESIGN.
6            I TOLD YOU THAT I FELT THAT THE EVIDENCE WOULD BE THAT
7   REC BY DESIGN BEARS THE RESPONSIBILITY FOR MS. CASTANEL'S
8   INJURIES AND THAT SHAW AND FEMA DO NOT.
9            AND I TOLD YOU THAT AS A RESULT OF THEIR FAULT, THAT THE
10  DAMAGES THAT WERE CAUSED WERE PRIMARILY IN TWO CATEGORIES, ONE
11  WAS AN EXACERBATION OF PREEXISTING RHINOSINUSITIS CAUSING A
12  SURGERY THAT COST MORE THAN $27,000, AND YOU'VE HEARD THAT PROOF
13  FROM DR. MILLER AND DR. GAUTREAUX.
14           I ALSO TOLD YOU THAT WE WOULD PROVE THAT SHE HAD A FEAR
15  OF CANCER AND THAT THE RESPONSIBLE SCIENTIFIC COMMUNITY, THE
16  CONSENSUS IS THAT FORMALDEHYDE IS A CLASS 1 CARCINOGEN, AND I
17  THINK THAT THAT HAS BEEN BORNE OUT BY THE EVIDENCE.
18           I TOLD YOU THAT WE WOULD SHOW YOU THE HISTORY OF HOW ALL
19  THESE GOVERNMENTAL AGENCIES DETERMINED THAT FORMALDEHYDE WAS
20  CANCEROUS AND WE TOOK YOU THROUGH THAT WITH THE VARIOUS
21  WITNESSES.
22           I TOLD YOU THAT THE GOVERNMENT HAS CONCLUDED THAT
23  FORMALDEHYDE CAUSES CANCER AND I THINK THAT YOU HAVE SEEN THAT.
24           NOW, HERE WE ARE AT THE END OF THE CASE.  THE COURT,
25  AFTER I'M DONE, IS GOING TO GIVE YOU SOME JURY INSTRUCTIONS AND A

1  WOULD HAVE DONE IF THEY HAD WARNED HER A YEAR AND A HALF BEFORE
2  OR 17 MONTHS BEFORE. THIS ISN'T EARLINE CASTANEL'S FAULT. THIS
3  IS THEIR FAULT FOR PUTTING THE WRONG WOOD IN AND FOR FAILING TO
4  WARN ABOUT THE HAZARD.
5        NOW, THE ISSUE OF SHAW, THE ONLY EVIDENCE YOU HEARD ON
6  SHAW WAS GEOFFREY COMPEAU. I THINK THE EVIDENCE WAS IS THAT
7  UNDER THE CONTRACT, THEIR DUTIES STOPPED ON JUNE THE 1ST. AND SO
8  THE QUESTION IS, DID THEY DO SOMETHING WRONG BEFORE JUNE THE 1ST?
9  I'VE KIND OF GOT A CHRONOLOGY HERE. BUT THE BOTTOM LINE, SHE
10 MOVES IN ON MARCH 11TH, THEY DO THE TWO CONTRACTUALLY-OBLIGATED
11 MONTHLY INSPECTIONS, THEY CATCH THE AIR CONDITIONING LEAK. THEY
12 FIX IT WITHIN A DAY. THERE ARE NO PROBLEMS FOR TWO WEEKS AFTER
13 THAT, AND THEN THEIR CONTRACT ENDS ON JUNE 1ST. SO IN THIS CASE,
14 I DON'T THINK THAT SHAW HAD ANYTHING TO DO WITH WHY WE'RE HERE.
15       NOW, THESE ARE ALL RECORDS THAT WE OBTAINED IN THE
16 COURSE OF THIS LITIGATION. IT IS TRUE, WE FILED A LAWSUIT
17 AGAINST SHAW AND FEMA. WE GOT TO FIGURE OUT WITH RESPECT TO EACH
18 PARTICULAR TRAILER, WHAT ARE THE RECORDS? WITH THESE RECORDS
19 THAT YOU HAVE, THOUGH, IN ALL HONESTY, I DON'T SEE WHAT SHAW DID
20 HERE.
21       UNITED STATES, WHAT WE KNOW IN THIS CASE IS THAT FEMA
22 WAS NOT INVOLVED IN ANY OF THE DESIGN DECISIONS THAT WERE MADE
23 WITH RESPECT TO THIS TRAILER, THAT REC BY DESIGN NEVER TALKED
24 WITH FEMA. INSTEAD, THEY MADE THE DESIGN DECISIONS THEMSELVES.
25 IT WAS A UNIQUE PRODUCT. HE DESIGNED IT. THAT FEMA RELIED UPON

Page 1370

1  MANUFACTURERS TO PROVIDE UNITS THAT WERE SAFE AND HABITABLE AND
2  MET INDUSTRY STANDARDS.  THEY RELIED UPON A PROMISE THAT WAS
3  BROKEN.
4              FEMA, LATER ON, LEARNS THAT FORMALDEHYDE IN THE TRAILER
5  WAS CAUSING PROBLEMS FOR SENSITIVE INDIVIDUALS.  AFTER LEARNING
6  ABOUT THE PROBLEM, THEY KICK IT INTO GEAR AND DISTRIBUTE ALL
7  SORTS OF BROCHURES ABOUT THE DANGERS OF FORMALDEHYDE.  THE FEMA
8  DIRECTIVE NOW IS ONLY TO USE TRAVEL TRAILERS AS A LAST RESORT.
9  BUT MOST IMPORTANTLY, YOU HAVE AN EXHIBIT IN EVIDENCE THAT'S
10 EXHIBIT 498, THOSE ARE THE TRAILER SPECS BY FEMA, AND MR. RUSH
11 ADMITS, "WE DIDN'T MEET THEM."  EXHIBIT 498, THOSE SPECS WERE NOT
12 MET.
13             DESPITE THE FACT THAT REC BY DESIGN DIDN'T MEET FEMA'S
14 SPECS, ONCE FEMA LEARNED ABOUT IT, THEY TOOK IT VERY SERIOUSLY,
15 THEY GOT FLYERS OUT.  IN 2007, WHEN THE UPPER MANAGEMENT AT FEMA
16 LEARNS ABOUT THE FORMALDEHYDE ISSUE IN THE SUMMER OF 2007 FROM
17 THE MEDIA, THEY LEARN THAT THERE IS ELEVATED LEVELS OF
18 FORMALDEHYDE, THEY PUT TOGETHER SAFETY NOTICES DESIGNED TO ALLOW
19 PEOPLE TO MOVE OUT OF THE TRAILERS.  THOSE NOTICES GO OUT
20 JULY THE 21ST THROUGH 25TH.
21             AND, YOU KNOW, TO BE FAIR, WE'RE NOT EXACTLY SURE WHAT
22 DAY SHE MOVES OUT OF THE TRAILER.  MAYBE THE REASON SHE DIDN'T
23 GET IT IS SHE'S ALREADY BACK IN HER HOUSE BY THEN.  IT WAS LATE
24 JULY, EARLY AUGUST, IT WAS KIND OF HAZY FOR HER.  BUT THE BOTTOM
25 LINE IS, WITH RESPECT TO CAUSATION, SHE WAS MOVED OUT ANYWAY, SO

IN RE: FEMA TRAILER FORMALDEHYDE    MAY 24, 2010           CATHY PEPPER, RMR, CRR
PRODUCTS LIABILITY LITIGATION                                CASTANEL v RBD

Page 1371

1  SHE WAS DOING THE VERY THING THAT THOSE BROCHURES WOULD HAVE TOLD
2  HER TO DO, WHICH IS A GOOD THING.
3           BUT THE BOTTOM LINE IS THE FEMA PEOPLE, THEY SAID THESE
4  PEOPLE EXPRESSING THE CONCERNS HAD LEGITIMATE CONCERNS.  IT WAS A
5  HIGH-PRIORITY MISSION.  THAT'S HOW BIG THE PROBLEM WAS.  THEY
6  INITIATED A SWAPPING PROGRAM.  I MEAN, IMAGINE THIS:  IF THIS WAS
7  NOT A DEFECTIVE PRODUCT, WHY DID YOUR FEDERAL GOVERNMENT SAY,
8  "WE'LL TAKE THE NEW TRAILER AND GIVE YOU A BETTER OLD ONE"?  HOW
9  COULD THAT MAKE ANY SENSE UNLESS THE NEW ONES ARE DEFECTIVE?
10 THESE ARE THE PROPOSED ANSWERS WITH RESPECT TO QUESTION NUMBER 5.
11          QUESTION NUMBER 6 IS DAMAGES.  BREAKS UP INTO FOUR
12 PARTS, PHYSICAL PAIN AND SUFFERING.
13          DR. WEDNER AGREES THAT SINUSITIS IS PAINFUL.  YOU HAVE
14 TESTIMONY FROM SANDRA DAVIS AND MS. CASTANEL, HER CONDITION GOT
15 WORSE WHEN SHE MOVED IN THE TRAILER.  SHE FELT BAD.  YOU ALL HAVE
16 TO ASSESS THAT.  AND SHE TESTIFIES IT WAS WORSE WHILE IN THE
17 TRAILER, AND I THINK IT'S PRETTY OBVIOUS WHY NOW.  SO THAT'S ONE
18 ELEMENT.
19          THE SECOND ELEMENT IS MENTAL ANGUISH AND EMOTIONAL
20 DISTRESS.  THIS CASE IS THE ONLY OPPORTUNITY FOR THIS PLAINTIFF
21 TO RECOVER DAMAGES FOR MENTAL DISTRESS AND MENTAL ANGUISH
22 ASSOCIATED WITH THE FEAR OF CANCER.  IS IT A LEGITIMATE FEAR.  WE
23 KNOW THAT FORMALDEHYDE IS A RECOGNIZED CARCINOGEN.  WE KNOW THAT
24 THERE WERE PAPERS EARLY ON SUPPORTIVE OF THE CONCLUSION THAT
25 FORMALDEHYDE CAUSES CANCER.  WE KNOW THAT IARC, THE GENERAL

IN RE:   FEMA TRAILER FORMALDEHYDE  MAY 24, 2010           CATHY PEPPER, RMR, CRR
PRODUCTS LIABILITY LITIGATION                              CASTANEL v RBD

Page 1445

1  THIS TIME.
2          THE COURT:  RIGHT.  I UNDERSTAND THAT.  AND WE DID HAVE
3  SOME EXTENSIVE ARGUMENT WITH REGARD TO SHAW AND ITS POTENTIAL
4  RESPONSIBILITIES SUCH THAT THEY COULD BE INCLUDED ON THE JURY
5  VERDICT FORM AND BE INCLUDED IN THE INSTRUCTIONS.  WE COVERED
6  THAT ON FRIDAY.  I DO RECALL THE ARGUMENTS, AND I WILL OVERRULE
7  THE OBJECTION.
8          MR. WATTS:  THANK YOU, YOUR HONOR.
9              SECONDLY, WITH RESPECT TO THE INCLUSION OF FEMA ON
10 THE JURY VERDICT FORM, WE WOULD OBJECT TO ANY JURY INSTRUCTIONS
11 OR THE INCLUSION OF FEMA ON THE JURY VERDICT FORM AS A POTENTIAL
12 RESPONSIBLE PARTY FOR THE REASON THAT, I BELIEVE, ON WEDNESDAY OF
13 LAST WEEK, THE COURT RULED THAT FEMA SHOULD BE DISMISSED BECAUSE
14 OF THE ABSENCE OF GROSS NEGLIGENCE EVIDENCE.  WE THINK THAT IS
15 THE LAW OF THE CASE, AND THAT FEMA SHOULD NOT HAVE BEEN INCLUDED
16 IN THE JURY INSTRUCTIONS OR IN THE VERDICT FORM BECAUSE THERE WAS
17 NO EVIDENCE OF GROSS NEGLECT AGAINST FEMA WHATSOEVER, AND THAT,
18 IN ADDITION, NOBODY CAN RECOVER AGAINST FEMA FOR MERE NEGLIGENCE.
19              I MADE THESE ARGUMENTS IN A RULE 50 MOTION, AS
20 WELL.  WE WOULD INCORPORATE THOSE ARGUMENTS INTO THESE OBJECTIONS
21 AND REQUEST A RULING AT THIS TIME.
22         THE COURT:  LET ME MAKE CLEAR BECAUSE I THINK YOU -- I
23 UNDERSTAND WHAT YOU'RE TALKING ABOUT, BUT I THINK YOU SAID THE
24 COURT'S RULING WAS THE ABSENCE OF GROSS NEGLIGENCE.  THE COURT'S
25 RULING PERTAINED TO THE STANDARD OF CARE WHICH WOULD BE IMPOSED