UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER FORMALDEHYDE § | MDL No. 1873 | |
| PRODUCTS LIABILITY LITIGATION § | | |
| § | SECTION N(5) | |
| § | | |
| THIS DOCUMENT IS RELATED TO: § | JUDGE ENGELHARDT | |
| § | | |
| *All Cases* § | MAGISTRATE CHASEZ | |
| § | | |

**MEMORANDUM IN SUPPORT OF FLUOR ENTERPRISES, INC.'S MOTION
FOR JUDGMENT ON THE PLEADINGS TO DISMISS THE THIRD AND FOURTH
SUPPLEMENTAL AND AMENDED ADMINISTRATIVE MASTER COMPLAINTS
<u>BASED ON THE GOVERNMENT CONTRACTOR DEFENSE</u>**

In support of its Motion for Judgment on the Pleadings to Dismiss the Third and Fourth Supplemental and Amended Administrative Master Complaints Based on the Government Contractor Defense, Fluor Enterprises, Inc. ("FEI"), by this reference, adopts in its entirety, and incorporates as if set forth fully herein, the Joint Motion of the Government's Contractors to Dismiss the Third and Fourth Amended Administrative Complaints (Rec. Doc. 13421) [the "GCD Motion"] filed by Bechtel National, Inc., CH2M Hill Constructors, Inc. and Shaw Environmental, Inc. on April 19, 2010, together with the Memorandum of Law in Support of that Motion (Rec. Doc. No. 13421-2) and all related Exhibits (Rec. Doc. Nos. 13421-3 to 13421-23).

In doing so, however, FEI provides the Court with a statement of background facts and Exhibit "1" hereto, which include parallel citations to, and excerpts from, the relevant provisions

of FEI's Individual Assistance/Technical Assistance Contract ("IA/TAC") with FEMA that support application of the government contract defense to the claims asserted against FEI.

Additionally, while the GCD Motion is premised on Federal Rule of Civil Procedure 12(b)(6), this motion is premised on Rule 12(c), motion for judgment on the pleadings. The standard for reviewing a Rule 12(c) motion, however, is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007); *Stewart v. Irene Alonzo*, No. C-08-347, 2009 U.S. Dist. Lexis 5362, *5 (S.D. Tx 2009).

## BACKGROUND[1]

### A. THE GOVERNMENT DEFINED AND LIMITED ITS CONTRACTORS' SCOPE OF WORK IN THE UMRELLA CONTRACT'S TASK ORDERS.

The Government drafted the IA/TAC, which is a type of umbrella contract, with FEI to vest it with unambiguous control over FEI's work. FEI could not deviate from the specifications without the Government's deliberate "review and approval." *See, e.g.,* Ex. 1 at FL-FCA000186, ¶4 (specifying that "requests for technical variances. . .shall be submitted, in writing, to the COTR [contracting officer's technical representative] and CO [contracting officer] for review and approval"). The Government reserved all rights for "Final inspection and acceptance." *See, e.g., id.* at FL-FCA000009. Indeed, the contract let the Government exercise an unqualified "right to inspect and test all services." *Id.* (incorporating 48 C.F.R. § 52.246-5(c), (d)). If the Government determined that "the services performed d[id] not conform with contract requirements, the Government [could] require the Contractor to perform the services again. . .for no additional fee." *Id.* (incorporating 48 C.F.R. § 52.246-5(d)). If the contractor failed to do so,

---

[1] This section of this Memorandum is substantially similar to Section II, pages 4-9, of the GCD Motion, except that citations to the relevant contract language contain citations to FEI's IA/TAC with FEMA.

the Government could terminate the contract unilaterally.  *See id.* (incorporating 48 C.F.R. § 52.246-5); *id* at FL-FCA000030 (incorporating 48 C.F.R. § 52.243-2).

The Government issued "Task Orders" to identify the specific deliverable items or work that the Government required. *See, e.g., id.* at FL-FCA000038, ¶I.5 (48 C.F.R. § 52.216-18). The Government issued Task Orders for all of the work that Plaintiffs complain of.  *See id.* at FL-FCA00207-12.  The contractors could not perform any additional, unauthorized work. Specifically the contractor was "not authorized to make expenditures or incur obligations exceeding the amount obligated under individual task orders."  *See id* at FL-FCA000238 (quoting 48 C.F.R. § 52.216-24).  The Government retained flexibility in spite of this limitation because the Government could issue Task Orders "at any time," *see*, *e.g. id.* at FL-FCA000005 (¶B.4); FL-FCA000016-17 (¶G-8), "without negotiations," *see, e.g., id.* at FL-FCA000016 (¶G-8(B)).  If an agreement could not be reached, "the Government ha[d] the right to unilaterally issue the Task Order, and the Contractor [w]as required to perform.  *See*, *e.g., id.* at FL-FCA000016 (¶G-8 (B)).

### 1. **Installation Work Specified in the Task Orders:**

The Government issued its specifications for installing emergency housing in Task Orders that incorporated the Umbrella Contract's exhibits. *See*, *e.g., id.* at FL-FCA0000219-220, ¶3.2. The Government directed its contractors to meet aggressive disaster priorities for installing tens of thousands of units of temporary emergency housing as expeditiously as possible. *See, e.g., id.* at FL-FCA000395 (Task ID 3—44,800 units within "period of performance" for the Task Order set forth in ¶4, at FL-FCA000222).  The Government specified precisely how FEI had to elevate emergency housing onto blocks. *See, e.g., id.* at FL-FCA000113-14 at §2.1.2. Exhibit Seven instructed that:

> Travel trailers shall be set-up on concrete piers and after the weigh [sic] of the travel trailer is transferred to the piers, if the unit is not leveled properly the contractor will reinstall the unit at no additional cost to the government. The travel trailer set-up will also include a minimum of six piers (three on each side) evenly spaced. The end piers should not be directly on the end of the unit, but approximately six inches off the edge of the unit. The Contractor shall provide a base for each pier. The base will be ¾" x 24" x 24" exterior grade plywood. The piers will have at a minimum two solid cap blocks on the base and two solid cap blocks at the top of the piers.
>
> The space between the top of the pier's solid cap blocks and the bottom of the travel trailer I-beam frame shall not exceed seven inches (7"). Up to four inches (4") of this space may be filled with a solid concrete block laid parallel to the travel trailer steel I-beam frame. Up to three inches (3") of this space may be filled with blocking timber and wedges laid perpendicular to the travel trailer steel I-beam. No more than one inch (1") of this area shall be shimmed with wedges.
>
> After the weight of the travel trailer is transferred to the concrete piers, the piers must be vertically aligned and tightly shimmed with wooden wedges. If the piers are not vertical at the time of the final inspection, they shall be removed and reinstalled by the Contractor at no additional cost. The Contractor will be responsible for all necessary re-leveling and re-blocking of the travel trailer for a period of 90 days after final inspection.

### 2.     **Maintenance Work Specified in the Task Orders:**

The Government issued specifications for all maintenance work that Plaintiffs complain of, including periodic maintenance. *See, e.g., id.* at FL-FCA000221-22; 252, and 297-98. The Government controlled its contractors by, *inter alia*, requiring they make only COTR approved repairs, restricting contact with manufacturers, requiring COTR approval for "unusual" maintenance, and strictly controlling repairs over $250. *See, e.g., id.* at FL-FCA000138, ¶¶ 3.2-3.4.

### B. THE GOVERNMENT INSPECTED ITS CONTRACTORS' WORK BEFORE DECLARING THE HOUSING "READY FOR OCCUPANCY"

Plaintiffs allege that the Government tasked its contractors "with inspecting each unit to ensure that it was safe and habitable, prior to occupancy by the plaintiffs." Third Master Administrative Complaint (Rec. Doc. 4486) ¶162. In fact, the Government directed its

contractor to perform a different kind of inspection. The Government required that each contractor "[e]stablish procedures to ensure the quality of the work" and monitor "compliance with contract requirements." *See, e.g.,* Ex. "1" at FL-FCA000220, ¶¶3.2.4 and 3.2.5. The Government also made the contractors draft quality control plans. *See e.g., id.* at FL-FCA000064, ¶2.2.9.

## CONCLUSION

Based on the reasons and arguments expressed in the GCD Motion, all claims against FEI should be dismissed with prejudice.

Respectfully submitted,

**MIDDLEBERG, RIDDLE & GIANNA**

BY:     */s/ Charles R. Penot, Jr.*
            Charles R. Penot, Jr. (La. Bar No. 1530 &
            Tx. Bar No. 24062455)
            717 North Harwood, Suite 2400
            Dallas, Texas 75201
            Telephone: (214) 220-6334
            Facsimile: (214) 220-6807
            cpenot@midrid.com

            *-and-*

            Dominic J. Gianna, La. Bar No. 6063
            Sarah A. Lowman, La. Bar No. 18311
            201 St. Charles Avenue, Suite 3100
            New Orleans, Louisiana 70170
            Telephone: (504) 525-7200
            Facsimile: (504) 581-5983
            dgianna@midrid.com
            slowman@midrid.com

            *-and-*

> Richard A. Sherburne, Jr., La. Bar No. 2106
> 450 Laurel Street, Suite 1101
> Baton Rouge, Louisiana 70801
> Telephone: (225) 381-7700
> Facsimile: (225) 381-7730
> rsherburne@midrid.com
>
> **ATTORNEYS FOR FLUOR ENTERPRISES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2010, I electronically filed the foregoing pleading using the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record, including court-appointed liaison counsel, who are CM/ECF participants.

> */s/ Charles R. Penot, Jr.*

ND: 4821-4546-8167, v. 1