OCT-13-2005 18:05     FEMA AR-FA-GM                    202 646 4156     P.03

U.S. Department of Homeland Security
Washington, DC 20472



**CONFORMED COPY**

October 13, 2005

Bechtel National, Inc.
Attn: Brian Gifford
5275 Westview Drive
Frederick, MD 21703-8306

Dear Mr. Gifford:

Reference Contract HSFEHQ-05-D-0572/HSFEHQ-05-J-0018

The purpose of this letter is to correct the dollar amount and period of performance for the issuance of the pre-authorized notification letter dated October 12, 2005.

This office has determined that it is in the best interest of the Government to authorize pre-award costs not to exceed "$21,000,000 instead of "$20,000,000". The period of performance is changed from "October 12, 2005, through October 26, 2005", to "September 20, 2005, through October 18, 2005", for the required services.

Except as provided herein, all terms and conditions of the document referenced remains unchanged.

Should you have any questions or comments, please do not hesitate to contact me on (202)646-4686.

Sincerely,

Janice L. Uthe
Contracting Officer

www.fema.gov

TOTAL P.03

BNIF 00000279

U.S. Department of Homeland Security
Washington, DC 20472

 **FEMA**

September 21, 2005

**CONFORMED COPY**

Scott Williamson
Bechtel Corporation
1015 15th Street, N.W., Suite 700
Washington, D.C. 20005-2605

CONTRACTS
OCT 1 0 2005
RECEIVED

Dear Mr. Williamson:

Reference Contract HSFEHQ-05-D-0572, Task Order HSFEHQ-05-J-0019.

The purpose of this letter is to authorize the incurrence of pre-award costs so that your company may incur costs prior to the issuance of Task Order No. HSFEHQ-05-J-0019 under pending contract HSFEHQ-05-D-0572 for Individual Assistance.

This office has determined that it is in the best interests of the Government to authorize pre-award costs not to exceed $1,000,000 for the period September 21, 2005 through October 4, 2005, for Unit Deactivation and Removal of up to 4,000 Travel Trailers (DR-1604-MS). During this period, contract no. HSFEHQ-05-D-0572 will be awarded and Task Order No. HSFEHQ-05-J-0019 will be issued for your services.

Bechtel shall be entitled to reimbursement of costs incurred in an amount not-to-exceed $1,000,000; which if incurred after the task order had been issued would have been reimbursable under the provisions of the task order.

Should you have any questions or comments, please contact me on (202) 646-4373.

Sincerely,

Nancy A. Costello
Contracting Officer

www.fema.gov

BNIF 00000280

U.S. Department of Homeland Security
500 C Street, SW
Washington, D.C. 20472

 **FEMA**

## CONFORMED COPY

November 29, 2005

Brian Gifford
Bechtel National, Inc.
5275 Westview Drive
Frederick, MD 21703-8306

Dear Mr. Gifford:

Reference Contract HSFEHQ-05-D-0572, Task Order HSFEHQ-05-J-0019

In order to extend the time authorized, this letter superseded and replaces the pre-award incurrence of cost authorization date September 21, 2005.

The purpose of this letter is to authorize the incurrence of pre-award costs so that your company may incur costs prior to the issuance of Task Order No. HSFEHQ-05-J-0019 under contract HSFEHQ-05-D-0572 for Unit Deactivation and Removal (DR-1604-MS).

This office has determined that it is in the best interests of the Government to authorize pre-award costs not to exceed $1,000,000.00 for the period September 21, 2005 through December 15, 2005, for the required services. During this period Task Order No. HSFEHQ-05-J-0019 will be issued for your services.

Bechtel shall be entitled to reimbursement of costs incurred in an amount not-to-exceed $1,000,000.00; which if incurred after the task order had been issued would have been reimbursable under the provisions of the task order.

Should you have any questions or comments, please contact me at (202) 646-4686.

Sincerely,

Janice L. Uthe
Contracting Officer

www.fema.gov

U.S. Department of Homeland Security
Washington, DC 20472



December 19, 2005

Bechtel National, Inc.                **CONFORMED COPY**
Attn: Brian Gifford
5275 Westview Drive
Frederick, MD 21703-8306

Dear Mr. Gifford:

Reference Contract HSFEHQ-05-D-0572/HSFEHQ-05-J-0019

In order to extend the period of time authorized, this letter supersedes and
replaces the pre-award incurrence of cost authorization dated
November 29, 2005.

The purpose of this letter is to authorize the incurrence of pre-award costs so that
your company may incur costs prior to the issuance of the above numbered Task
Order for Unit Deactivation and Removal (DR 1604-MS).

This office has determined that it is in the best interest of the Government to
authorize pre-award costs not to exceed $1,000,000. The period of performance
is from September 21, 2005, through January 18, 2006, for the required services.
During this period Task Order no. HSFEHQ-05-J-0019 will be issued for your
services.

Bechtel shall be entitled to reimbursement of costs incurred in an amount not-to-
exceed $1,000,000; which if incurred after the task order had been issued would
have been reimbursable under the provisions of the task order.

Should you have any questions or comments, please do not hesitate to contact
me on (202)646-4686.

Sincerely,

Janice L. Uthe
Contracting Officer

www.fema.gov

BNIF 00000282

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472



**FEMA**

January 18, 2006                                        **CONFORMED COPY**

Bechtel National, Inc.
Attn: Brian Gifford
5275 Westview Drive
Frederick, MD 21703-8306

Dear Mr. Gifford:

Reference Contract HSFEHQ-05-D-0572/HSFEHQ-05-J-0019

In order to extend the period of time authorized, this letter supersedes and
replaces the pre-award incurrence of cost authorization dated
December 19, 2005.

The purpose of this letter is to authorize the incurrence of pre-award costs so that
your company may incur costs prior to the issuance of the above numbered Task
Order for Unit Deactivation and Removal (DR 1604-MS).

This office has determined that it is in the best interest of the Government to
authorize pre-award costs not to exceed $1,000,000. The period of performance
is from September 21, 2005, through January 31, 2006, for the required services.
During this period Task Order no. HSFEHQ-05-J-0019 will be issued for your
services.

Bechtel shall be entitled to reimbursement of costs incurred in an amount not-to-
exceed $1,000,000; which if incurred after the task order had been issued would
have been reimbursable under the provisions of the task order.

Should you have any questions or comments, please do not hesitate to contact
me on (202) 646-4686.

Sincerely,

*Janice L. Uthe*

Janice L. Uthe
Contracting Officer

www.fema.gov

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

 **FEMA**

January 31, 2006

**CONFORMED COPY**

Bechtel National, Inc.
Attn: Brian Gifford
5275 Westview Drive
Frederick, MD 21703-8306

Dear Mr. Gifford:

Reference Contract HSFEHQ-05-D-0572/HSFEHQ-05-J-0019

In order to extend the period of time authorized, this letter supersedes and replaces the pre-award incurrence of cost authorization dated January 18, 2006.

The purpose of this letter is to authorize the incurrence of pre-award costs so that your company may incur costs prior to the issuance of the above numbered Task Order for Unit Deactivation and Removal (DR 1604-MS).

This office has determined that it is in the best interest of the Government to authorize pre-award costs not to exceed $1,000,000. The period of performance is from September 21, 2005, through February 14, 2006, for the required services. During this period Task Order no. HSFEHQ-05-J-0019 will be issued for your services.

Bechtel shall be entitled to reimbursement of costs incurred in an amount not-to-exceed $1,000,000; which if incurred after the task order had been issued would have been reimbursable under the provisions of the task order.

Should you have any questions or comments, please do not hesitate to contact me on (202) 646-4686.

Sincerely,

*Janice L. Uthe*

Janice L. Uthe
Contracting Officer

www.fema.gov

BNIF 00000284

# CONFORMED COPY

**CONTRACT NUMBER:**

HSFEHQ-05-D-0572

**ISSUED BY:**

Department of Homeland Security
Federal Emergency Management Agency
Financial & Acquisition Management Division
Flood, Fire and Mitigation Branch
500 C Street, S.W., Room 350
Washington DC 20472

**NAME AND ADDRESS OF CONTRACTOR:**

Bechtel National, Inc.
5275 Westview Drive
Frederick, MD 21703-8306

**LETTER CONTRACT FOR:**

Pursuant to Federal Acquisition Regulation (FAR) 16.603, the following agreement is hereby entered into on behalf of the Government.

**TERM OF CONTRACT**

The contract term shall be for a period commencing upon effective date of this contract and ending January 15, 2006.

The following and attached clauses (Sections B-J) to this letter contract apply:

**52.216-23, EXECUTION AND COMMENCEMENT OF WORK (APR 1984)**

The Contractor shall indicate acceptance of this letter contract by signing three copies of the contract and returning them to the Contracting Officer not later than September 30, 2005. Upon acceptance by both parties, the Contractor shall proceed with performance of the work, including purchase of necessary materials.

BNIF 00000285

52.216-24, LIMITATION OF GOVERNMENT LIABILITY (APR 1984)

(a) In performing this contract, the Contractor is not authorized to make expenditures or incur obligations exceeding the amount obligated under individual task orders.

(b) The maximum amount for which the Government shall be liable if this contract is terminated is equal to the cumulative amount obligated under individual task orders.

52.216-25, CONTRACT DEFINITIZATION (OCT 1997)

(a) An Indefinite Delivery/Indefinite Quantity (IDIQ) type definitive contract with firm fixed price/cost/time and materials task orders is contemplated. The Contractor agrees to begin promptly negotiating with the Contracting Officer the terms of a definitive contract that will include (1) all clauses required by the Federal Acquisition Regulation (FAR) on the date of execution of the letter contract, (2) all clauses required by law on the date of execution of the definitive contract, and (3) any other mutually agreeable clauses, terms, and conditions. The Contractor agrees to submit a proposal and cost or pricing data supporting its proposal.

(b) The schedule for definitizing this contract is:

(1)     Proposal due September 30, 2005;
(2)     Negotiations on or before October 21, 2005;
(3)     Definitization within 5 days of agreement;

(c) If agreement on a definitive IDIQ contract to supersede this letter contract is not reached by the target date in paragraph (b) above, or within any extension of it granted by the Contracting Officer, the Contracting Officer may, with the approval of the head of the contracting activity, determine a reasonable price or fee in accordance with Subpart 15.8 and Part 31 of the FAR, subject to Contractor appeal as provided in the Disputes clause. In any event, the Contractor shall proceed with completion of the contract, subject only to the Limitation of Government Liability clause.

(1) After the Contracting Officer's determination of price or fee, the contract shall be governed by—

(i) All clauses required by the FAR on the date of execution of this letter contract for either fixed-price or cost-reimbursement contracts, as determined by the Contracting Officer under this paragraph (c);

(ii) All clauses required by law as of the date of the Contracting Officer's determination; and

(iii) Any other clauses, terms, and conditions mutually agreed upon.

(2) To the extent consistent with subparagraph (c)(1) above, all clauses, terms, and conditions included in this letter contract shall continue in effect, except those that by their nature apply only to a letter contract.

BNIF 00000286

52.216-25  PAYMENTS OF ALLOWABLE COSTS BEFORE DEFINITIZATION  (DEC 2002)

This clause applies to Cost Reimbursement Task Orders only.

(a) Reimbursement rate.  Pending the placing of the definitive contract referred to in this letter contract, the Government will promptly reimburse the Contractor for all allowable costs under this contract at the following rates:

(1) One hundred percent of approved costs representing financing payments to subcontractors under fixed-price subcontracts, provided that the Government's payments to the Contractor will not exceed 80 percent of the allowable costs of those subcontractors.

(2) One hundred percent of approved costs representing cost-reimbursement subcontracts; provided, that the Government's payments to the Contractor shall not exceed 85 percent of the allowable costs of those subcontractors.

(3) Eighty-five percent of all other approved costs.

(b) Limitation of reimbursement.  To determine the amounts payable to the Contractor under this letter contract, the Contracting Officer shall determine allowable costs in accordance with the applicable cost principles in Part 31 of the Federal Acquisition Regulation (FAR).  The total reimbursement made under this paragraph shall not exceed 85 percent of the maximum amount of the Government's liability, as stated in this contract.

(c) Invoicing.  Payments shall be made promptly to the Contractor when requested as work progresses, but (except for small business concerns) not more often than every 2 weeks, in amounts approved by the Contracting Officer.  The Contractor may submit to an authorized representative of the Contracting Officer, in such form and reasonable detail as the representative may require, an invoice or voucher supported by a statement of the claimed allowable cost incurred by the Contractor in the performance of this contract.

(d) Allowable costs.  For the purpose of determining allowable costs, the term "costs" includes--

(1) Those recorded costs that result, at the time of the request for reimbursement, from payment by cash, check, or other form of actual payment for items or services purchased directly for the contract;

(2) When the Contractor is not delinquent in payment of costs of contract performance in the ordinary course of business, costs incurred, but not necessarily paid, for-

(i) Supplies and services purchased directly for the contract and associated financing payments to subcontractors, provided payments determined due will be made-

(A) In accordance with the terms and conditions of a subcontract or invoice; and

(B) Ordinarily within 30 days of the submission of the Contractor's payment request to the Government;

BNIF 00000287

(ii) Materials issued from the Contractor's stores inventory and placed in the production process for use on the contract;

(iii) Direct labor;

(iv) Direct travel;

(v) Other direct in-house costs; and

(vi) Properly allocable and allowable indirect costs as shown on the records maintained by the Contractor for purposes of obtaining reimbursement under Government contracts; and

(3) The amount of financing payments that the Contractor has paid by cash, check, or other forms of payment to subcontractors.

(e) Small business concerns. A small business concern may receive more frequent payments than every 2 weeks.

(f) Audit. At any time before final payment, the Contracting Officer may have the Contractor's invoices or vouchers and statements of costs audited. Any payment may be (1) reduced by any amounts found by the Contracting Officer not to constitute allowable costs or (2) adjusted for overpayments or underpayments made on preceding invoices or vouchers.

1.  SCOPE OF WORK:

See attached, Section C.

2.  WAGE DECISION NO.:

See attached, Section H.10, Wage Determination (Various).

3.  Suspension of Davis-Bacon Act.  On September 8, 2005, the President signed a proclamation suspending the Davis-Bacon Act, 40 U.S.C. 3141, in those areas of the country seriously affected by Hurricane Katrina.  The suspension applies to various counties/parishes in the states of Louisiana, Mississippi, Alabama and Florida to contracts awarded on or after September 8, 2005.  The determination as to whether the Davis-Bacon Act applies to a particular Task Order under this contract will be determined upon the receipt of the contractor's Task Order proposal(s) and subsequent negotiations.  The appropriate clauses will, then, be included in the negotiated Task Order(s).

SIGNATURES:

_____      30 SEP 05
Contractor                           Date

_____      9/30/05
Nancy A. Costello                    Date
Contracting Officer

Page 4 of 4

BNIF 00000288

## Table of Contents

PART I - THE SCHEDULE ........................................................ ..................................................A-1

SECTION A - SOLICITATION/CONTRACT FORM ........................... ..................................................A-1

  SF 26   AWARD/CONTRACT ............................................... ..................................................A-1

PART I - THE SCHEDULE ....................................................... ..................................................B-1

SECTION B - SUPPLIES OR SERVICES AND PRICE COSTS............ ..................................................B-1

  B.1 ITEMS TO BE ACQUIRED ...................................... ..................................................B-1
  B.2 MAXIMUM AND MINIMUM FUNDING LIMITATION............ ..................................................B-1
  B.3 CONSIDERATION AND PAYMENT-FIXED PRICE/COST REIMBURSABLE/TIME-AND-MATERIAL
    OR LABOR-HOUR.................................................. ..................................................B-1
  B.4 TASK ORDER FUNDING ....................................... ..................................................B-1
  B.5 MANAGEMENT AND ADMINISTRATION COSTS................... ..................................................B-2
  B.6 NEGOTIATED INDIRECT COST RATES ...... ..................................................B-2
  B.7 LIMITATION OF INDIRECT COSTS............. ..................................................B-2
  B.8 DATE OF INCURRENCE OF COSTS............... ..................................................B-3

SECTION C - DESCRIPTION/SPECIFICATIONS/STATEMENT OF W ..................................................C-1

  C.1 STATEMENT OF WORK ......................................... ..................................................C-1

SECTION D - PACKAGING AND MARKING ............... ..................................................D-1

  D.1 PRESERVATION, PACKING AND PACKAGING — COMMERC ..................................................D-1

SECTION E - INSPECTION AND ACCEPTANCE ........ ..................................................E-1

  E.1 NOTICE LISTING CONTRACT CLAUSES INCORPORATED BY REFERENCE ......................E-1
  E.2 INSPECTION AND ACCEPTANCE.................... ..................................................E-1

SECTION F - DELIVERIES OR PERFORMANCE ........ ..................................................F-1

  F.1 NOTICE LISTING CONTRACT CLAUSES INCORPORATED BY REFERENCE ......................F-1
  F.2 TERM OF CONTRACT......................................... ..................................................F-1
  F.3 PRINCIPAL PLACE OF PERFORMANCE ........ ..................................................F-1
  F.4 NOTICE OF DELAY............................................ ..................................................F-1
  F.5 DELIVERY SCHEDULE....................................... ..................................................F-1
  F.6 REPORTS OF WORK........................................... ..................................................F-2

SECTION G - CONTRACT ADMINISTRATION DATA ..................................................G-1

  G.1 TRAVEL COSTS................................................. ..................................................G-1
  G.2 FIXED RATES FOR SERVICES ......................... ..................................................G-1
  G.3 INVOICES .......................................................... ..................................................G-1
  G.4 SUBMISSION OF INVOICES OR VOUCHERS FOR PAYMENT ..................................................G-3
  G.5 DESIGNATION OF CONTRACTING OFFICER'S TECHNICAL REPRESENTATIVE ............ G-3
  G.6 HSAR 3052.242-72 CONTRACTING OFFICER'S TECHNICAL
    REPRESENTATIVE (DEC 2003) ...................... ..................................................G-3
  G.7 PROJECT MONITOR........................................... ..................................................G-4
  G.8 TECHNICAL DIRECTION AND SURVEILLANCE ..................................................G-4
  G.9 TASK ORDER PROCEDURES ........................... ..................................................G-5

SECTION H - SPECIAL CONTRACT REQUIREMENT ..................................................H-1

  H.1 ACCESSIBILITY OF MEETINGS, CONFERENCES, AND SEMINAR PERSONS WITH
    DISABILITIES.................................................... ..................................................H-1

BNIF 00000289

H.2  REPRODUCTION OF REPORTS.................................................................H-3
H.3  COORDINATION OF FEDERAL REPORTING SERVICES ...........................H-3
H.4  PUBLICATION (APR 1984)........................................................................H-3
H.5  CONFIDENTIALITY OF INFORMATION .....................................................H-5
H.6  ELECTRONIC AND INFORMATION TECHNOLOGY (EIT)..........................H-5
H.7  SERVICES OF CONSULTANTS .................................................................H-6
H.8  NONPERSONAL SERVICES .....................................................................H-6
H.9  AWARD PRIOR TO AUDIT........................................................................H-6
H.10 WAGE DETERMINATION .........................................................................H-7
H.11 HSAR 3052.245-70  GOVERNMENT PROPERTY REPORTS (DEC 2003).............................H-9
H.12 GOVERNMENT-FURNISHED PROPERTY .................................................H-9
H.13 ACQUISITION OF GOVERNMENT PROPERTY ..........................................H-9

PART II - CONTRACT CLAUSES...........................................................................I-1

SECTION I – CONTRACT CLAUSES ......................................................................I-1

I.1  NOTICE OF HYBRID CONTRACT ...............................................................I-1
I.2  NOTICE LISTING CONTRACT CLAUSES INCORPORATED BY REFERENCE .......................I-1
I.3  52.215-19 NOTIFICATION OF OWNERSHIP CHANGES (OCT 1997)..........................I-4
I.4  52.216-18 ORDERING  (OCT 1995)...........................................................I-4
I.5  52.216-19 ORDER LIMITATIONS  (OCT 1995)...........................................I-5
I.6  52.216-22 INDEFINITE QUANTITY (OCT 1995).........................................I-5
I.7  52.217-8 OPTION TO EXTEND SERVICES  (NOV 1999) ...........................I-6
I.8  52.222-21 PROHIBITION OF SEGREGATED FACILITIES (FEB 1999)........................I-6
I.9  52.222-41  SERVICE CONTRACT ACT OF 1965, AS AMENDED
      (JUL 2005)..............................................................................................I-6
I.10 52.222-42 STATEMENT OF EQUIVALENT RATES FOR FEDERAL
      HIRES (MAY 1989).................................................................................I-11
I.11 52.222-49 SERVICE CONTRACT ACT - PLACE OF PERFORMANCE
      UNKNOWN  (MAY 1989).........................................................................I-12
I.12 52.225-9 BUY AMERICAN ACT—CONSTRUCTION MATERIALS
      (JAN 2005) .............................................................................................I-12
I.13 52.225-10 NOTICE OF BUY AMERICAN ACT REQUIREMENT
      —CONSTRUCTION MATERIALS (MAY 2002) .........................................I-15
I.14 52.232-25 PROMPT PAYMENT (FEB 2002)
      ALTERNATE I (FEB 2002) .....................................................................I-15
I.15 52.232-35 DESIGNATION OF OFFICE FOR GOVERNMENT RECEIPT OF
      ELECTRONIC FUNDS TRANSFER INFORMATION (MAY 1999).......................I-19
I.16 52.244-2 SUBCONTRACTS (AUG 1998)...................................................I-20
I.17 52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)........................I-22
I.18 HSAR 3052.204-70 SECURITY REQUIREMENTS FOR UNCLASSIFIED
      INFORMATION -- TECHNOLOGY RESOURCES (DEC 2003)........................I-22
I.19 HSAR 3052.209-70 PROHIBITION ON CONTRACTS WITH CORPORATE EXPATRIATES
      (DEC 2003)..............................................................................................I-23
I.20 HSAR 3052.215-70 KEY PERSONNEL OR FACILITIES (DEC 2003) .......................I-25
I.21 HSAR 3052.237-71 INFORMATION TECHNOLOGY SYSTEMS ACCESS FOR
      CONTRACTORS (DEC 2003) ..................................................................I-25
I.22 HSAR 3052.237-72 CONTRACTOR PERSONNEL SCREENING FOR UNCLASSIFIED
      INFORMATION TECHNOLOGY ACCESS (DEC 2003) ...............................I-26

PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS ...............................J-1

SECTION J - LIST OF ATTACHMENTS...................................................................J-1

BNIF 00000290

HSFEHQ-05-D-0573                    SECTION B

## PART I - THE SCHEDULE

## SECTION B - SUPPLIES OR SERVICES AND PRICE/COSTS

### B.1 ITEMS TO BE ACQUIRED

The Contractor shall furnish all personnel, facilities, equipment, material, supplies, and services (except as may be expressly set forth in this contract as furnished by the Government) and otherwise do all things necessary to, or incident to, performing and providing the following items of work:

STATEMENT OF WORK IS ATTACHED AND LISTED IN
PART III, SECTION J, ATTACHMENT A

### B.2 MAXIMUM AND MINIMUM FUNDING LIMITATION

The maximum funding limitation for this contract (inclusive of the aggregate price of all task orders issued) shall not exceed $500,000,000. The guaranteed minimum under this contract is $50,000.

### B.3 CONSIDERATION AND PAYMENT-FIXED PRICE/COST REIMBURSABLE/TIME-AND-MATERIAL OR LABOR-HOUR

(a) FIXED PRICE. Fixed price will be negotiated on a task order basis. Total payments shall be made in installments based on the percentage of completion of work.

(b) COST REIMBURSABLE. Estimated cost and fixed fee will be negotiated on a task order basis. The contractor shall be reimbursed for actual, incurred costs and fixed fee under each cost type task order.

(c) TIME-AND-MATERIAL OR LABOR-HOUR. Time-and-Material or Labor Hour price shall be based on rates specified in this contract. The government shall reimburse the contractor based on the actual number of hours incurred by labor category. The following Time-and-Material or Labor Hours rates shall apply to this contract:

SEE SECTION J, ATTACHMENT B, PRICING SHEETS (TO BE NEGOTIATED).

Additional labor categories and rates may be added by modification of the contract. These Time-and-Material Rates are established for full-time, bonafide company employees as well as employees of corporate affiliates and/or subsidiaries, temporary help, subcontractors and consultants, and include all applicable indirect rates, including G&A and overhead, as well as profit. Only the skills listed are to be used in the performance of this contract.

(d) Services may be ordered at any time during the effective period of performance. Task orders shall be issued in accordance with the Section G clause entitled "Task Order Procedures." The aggregate dollar amount of all task order funding obligations shall not exceed the ceiling price of this contract as specified in the Section B clause entitled "Maximum and Minimum Funding Limitation".

### B.4 TASK ORDER FUNDING

Fixed price/Cost Reimbursable/Time and Material or Labor Hour type Task Orders may be issued under this contract within the established contract ceiling limitation.

**B-1**

BNIF 00000291

HSFEHQ-05-D-0573        SECTION B

## B.5 MANAGEMENT AND ADMINISTRATION COSTS

The Contractor shall provide Management and Administration (M&A) of the overall contract. Responsibilities include but are not limited to: Readiness, Project Management, Training, Reports, and Project Briefings.

Management and Administration that is directly related to specific projects should be charged to individual task orders.

Management and Administration (M&A)will be awarded by Time and Material or Labor Hour Task Order. Any applicable M&A tasks (e.g., reporting, briefing, and quality control) that the Government requires past the contract expiration date will be directly charged to specific task orders that remain open after formal contract expiration.

## B.6 NEGOTIATED INDIRECT COST RATES

Notwithstanding the provisions of Clause 52.216-7 of this contract entitled, "Allowable Cost and Payment," the allowable indirect costs under this contract shall be obtained by applying negotiated indirect rates to bases agreed upon by the parties. The period(s) for which such rates will be established shall correspond to the contractor's fiscal year(s).

Negotiation of final indirect rates shall be in accordance with FAR 52.216-7 and Subpart 42.700 of the Federal Acquisition Regulation.

The results of each negotiation shall be set forth in a modification to this contract which shall specify (1) the agreed final rates, (2) the bases to which the rates apply, and (3) the periods for which the rates apply.

Pending establishment of final overhead rates for any period, the Contractor shall be reimbursed for allowable indirect costs, not claimed elsewhere, at the following billing rate(s). Such billing rate(s) may, at the request of either party, be revised by mutual consent to apply either retroactively or prospectively to prevent substantial over and under payment.

| Indirect Cost | Base of Application | Billing Rate | Contractor's Fiscal Year |
|---|---|---|---|

(TO BE NEGOTIATED.)

## B.7 LIMITATION OF INDIRECT COSTS

(a) Notwithstanding any other clause(s) of this contract, the Government shall not reimburse the Contractor for any indirect costs in excess of the indirect expense dollars derived for each of the Contractor's fiscal years by the application of the following individual indirect cost ceiling rates to the appropriate base outlines below. All indirect costs in excess of said amount(s) shall be borne by the Contractor. In the event that the final indirect cost rates are less than the negotiated ceiling rates, the negotiated rates will be reduced to conform with the lower rates.

(b) The indirect cost limitations set forth below include provisions for all known increases that will take place during the term of this contract resulting from statute, court decisions and/or written ruling or regulation by the Internal Revenue Service (IRS) or any other taxing authority. However, in the event that during the term of this contract, any other statute, court decision and/or written ruling or regulation affects the Contractor's indirect costs, the indirect cost limitations will be

B-2

BNIF 00000292

HSFEHQ-05-D-0573                    SECTION B

adjusted to the extent the Contracting Officer determines said statute, court decision and/or ruling or regulation impacts the Contractor's indirect costs.

| Indirect Application | Overhead Base | Indirect Cost Ceiling Rate(s) Contractor's Fiscal Year |
|---|---|---|

(TO BE NEGOTIATED)


## B.8 DATE OF INCURRENCE OF COSTS

The Contractor shall be entitled to reimbursement for costs incurred in an amount not to exceed $53,440,000 on or after August 28, 2005 which, if incurred after this contract had been entered into, would have been reimbursable under the provisions of this contract.

**B-3**

BNIF 00000293

HSFEHQ-05-D-0573                    SECTION C

SECTION C - DESCRIPTION/SPECIFICATIONS/STATEMENT OF WORK

## C.1  STATEMENT OF WORK

See Part III, Section J, Attachment A, Scope of Work.

BNIF 00000294

HSFEHQ-05-D-0573                    SECTION D

## SECTION D - PACKAGING AND MARKING

## D.1  PRESERVATION, PACKING AND PACKAGING -- COMMERCIAL

Preservation, packing, and packaging for shipment of all items ordered hereunder shall be in accordance with commercial practice and adequate to insure both acceptance by common carrier and safe transportation at the most economical rate(s).

D-1

BNIF 00000295

HSFEHQ-05-D-0573                    SECTION E

## SECTION E - INSPECTION AND ACCEPTANCE

### E.1 NOTICE LISTING CONTRACT CLAUSES INCORPORATED BY REFERENCE

The following contract clauses pertinent to this section are hereby incorporated by reference (by Citation Number, Title, and Date) in accordance with the clause at FAR "52.252-2 CLAUSES INCORPORATED BY REFERENCE" in Section I of this contract.  See FAR 52.252-2 for an internet address (if specified) for electronic access to the full text of a clause.

| | NUMBER | TITLE | DATE |
|---|---|---|---|
| | 52.246-4 | INSPECTION OF SERVICES--FIXED-PRICE | AUG 1996 |
| @ | 52.246-5 | INSPECTION OF SERVICES--COST-REIMBURSEMENT | APR 1984 |
| | 52.246-6 | INSPECTION--TIME-AND-MATERIALS AND LABOR-HOUR | MAY 2001 |

### E.2 INSPECTION AND ACCEPTANCE

Final inspection and acceptance shall be by the Contracting Officer or his/her duly authorized representative at the FEMA JFO to be specified in individual task orders.

For the purpose of this clause, the COTR named in the Designation of Contracting Officer's Technical Representative clause in this contract is the representative of the Contracting Officer.  The Contracting Officer reserves the right to unilaterally designate other Government agents as authorized representatives. Should such occur, the Contractor will be notified by a written notice.

E-1

BNIF 00000296

HSFEHQ-05-D-0573                         SECTION F

## SECTION F - DELIVERIES OR PERFORMANCE

## F.1 NOTICE LISTING CONTRACT CLAUSES INCORPORATED BY REFERENCE

The following contract clauses pertinent to this section are hereby incorporated by reference (by Citation Number, Title, and Date) in accordance with the clause at FAR "52.252-2 CLAUSES INCORPORATED BY REFERENCE" in Section I of this contract. See FAR 52.252-2 for an internet address (if specified) for electronic access to the full text of a clause.

| NUMBER | TITLE | DATE |
|---|---|---|
| 52.242-15 | STOP-WORK ORDER | AUG 1989 |
| 52.242-17 | GOVERNMENT DELAY OF WORK | APR 1984 |
| @ 52.242-15 | STOP-WORK ORDER ALTERNATE I (APR 1984) | AUG 1989 |
| 52.247-34 | F.O.B. DESTINATION | NOV 1991 |

## F.2 TERM OF CONTRACT

The contract shall be effective through January 15, 2006 except that delivery orders placed prior to the expiration date shall remain in full force and effect until deliveries have been completed and payments, therefore, have been made.

## F.3 PRINCIPAL PLACE OF PERFORMANCE

The effort required under this contract shall be performed at:

> Various disaster sites to be determined
> under individual task orders.

## F.4 NOTICE OF DELAY

If the Contractor becomes unable to complete the contract work at the time specified because of technical difficulties, notwithstanding the exercise of good faith and diligent efforts in the performance of the work called for hereunder, the Contractor shall give the Contracting Officer written notice of the anticipated delay and the reasons therefore. Such notice and reasons shall be delivered promptly after the condition creating the anticipated delay becomes known to the Contractor but in no event less than forty-five (45) days before the completion date specified in this contract, unless otherwise directed by the Contracting Officer. When notice is so required, the Contracting Officer may extend the time specified in the Schedule for such period as deemed advisable.

## F.5 DELIVERY SCHEDULE

F-1

BNIF 00000297

HSFEHQ-05-D-0573                      SECTION F

Delivery of items specified below shall be shipped F.O.B. destination in accordance with the following schedule:

To be determine on an individual task order basis.


## F.6  REPORTS OF WORK

The Contractor shall have the capability to develop and provide various databases, spreadsheets and reports. The Contractor shall have the capability and flexibility to tailor the reports to fit the needs of the declared disaster and FEMA requirements.

Reports not otherwise stated shall be provided in both soft and hard copies.

MONTHLY CONTRACT STATUS REPORT

The Contractor shall submit a Monthly Contract Status Report to the COTR and Contracting Officer by the 15th day after each month. This report shall reflect a summary of the overall contract status, including the current and cumulative hours worked by skill type. For each open Task Order Assignment, the report shall list the Task Order Assignment number, work location, a brief description of work and the number of personnel onsite. The report shall also provide the total number of personnel working on all Task Order Assignments; the start date(s) for the periods when personnel are deployed; the contract totals for dollars obligated and status; and estimated hours expended for the current month and overall contract to date by skill/skill levels usage. The Contractor will provide a summary of deliverables submitted, planned activities for the next month and problems and proposed corrective actions. The Contractor shall attach two graphs that depict: Personnel in Field vs. Time and Contract Totals vs. Time. The Contractor will include a summary of pending actions and actions expected in the next 30/60/90 days. Additionally, the Contractor will post a digital version of the report on the real-time Web reporting site.

FINAL REPORT

The Contractor shall submit a final report that documents and summarizes the results of the entire contractual effort, including recommendations and conclusions. The final report shall include tables, graphs, and other visual aids, as necessary to comprehensively explain the results achieved under the contract. The final report shall be submitted to the Government five (5) days prior to expiration of this contract. The Contractor shall submit copies of the report as follows: One copy to the COTR and one copy to the Contracting Officer.

SUBMISSION

One final copy of the report specified above shall be submitted to the COTR. In addition, one copy shall be submitted to the Contracting Officer at:

Federal Emergency Management Agency Financial and Acquisitions Management Div Flood, Fire and Mitigation Branch 500 C Street, S.W., Room 350 Washington DC  20472

F-2

HSFEHQ-05-D-0573          SECTION G

## SECTION G - CONTRACT ADMINISTRATION DATA

### G.1 TRAVEL COSTS

Costs for transportation, lodging, meals and incidental expenses incurred by contractor personnel on official company business are allowable subject to FAR 31.205-46, Travel Costs. These costs will be considered to be reasonable and allowable only to the extent that they do not exceed on a daily basis the maximum per diem rates in effect at the time of travel as set forth in the Federal Travel Regulations.

### G.2 FIXED RATES FOR SERVICES

The following fixed rates, inclusive of all indirect costs and profit, shall apply for all Time and Materials Task Orders for the duration of the contract:

See Attachment B in Section J of Part III of this Contract (TO BE NEGOTIATED)

### G.3 INVOICES

An invoice is a written request for payment under this contract for supplies delivered or for services rendered. Payment of invoices submitted under this contract shall be made in accordance with the terms and conditions of the Prompt Payment clause and in accordance with the provisions of other clauses in this contract. Failure or refusal to provide the following information on all invoices submitted under this contract may result in the invoice being considered improper for payment in accordance with the Prompt Payment clause. In order to be proper, an invoice must include, as applicable, the following:

a. GENERAL INFORMATION

1. Name of Contractor

2. Invoice date

3. Contract number (including order number, if any), contract line item number, contract description of supplies or services, quantity, contract unit of measure and unit price, and extended total.

4. Shipment number and date of shipment (bill-of-lading number and weight of shipment will be shown for shipments on Government bills of lading).

5. Name, title, phone number and complete mailing address of responsible Official who can be contacted in the event of an improper invoice, if there are questions, or additional information is needed by this agency to process payment.

6. Any other information or documentation required by other provisions of the Contract (such as evidence of shipment).

7. Invoices shall be prepared and submitted as follows:

G-1

HSFEHQ-05-D-0573

**SECTION G**

| | |
|---|---|
| Number | Distribution |
| Original and 2 copies | Payment Office |
| One copy | Contract Specialist |
| One copy | Project Officer |

b. ELECTRONIC FUNDS TRANSFER (EFT) INFORMATION

1. As mandated by the Debt Collection Improvement Act (DCIA) of 1996 and in accordance with FAR Clause 52.232-33-Payment By Electronic Funds Transfer--Central Contractor Registration of this contract, the contractor must submit the following written EFT information to the office designated in clause 52.232-35 of this award document by the date specified in clause 52.232-33:

(a) The contract number (or other procurement identification number).

(b) The contractor's name and remittance address, as stated in the contract(s).

(c) The signature (manual or electronic, as appropriate), title, and telephone number of the contractor official authorized to provide this information.

(d) The name, address, and 9-digit Routing Transit Number (RTN) of the contractor's financial agent.

(e) The contractor's account number and the type of account (checking, savings or lockbox).

(f) If applicable, the Fedwire Transfer System (FTS) telegraphic abbreviation of the contractor's financial agent.

(g) If applicable, the contractor shall also provide the name, address, telegraphic abbreviation, and 9-digit Routing Transit Number (RTN) of the correspondent financial institution receiving the wire transfer payment if the contractor's financial agent is not directly on-line to the FTS; and, therefore, not the receiver of the wire transfer payment.

2. The contractor should include the EFT information set forth below on all invoices submitted for payment under this contract. Failure to provide the information or failure to notify this agency of changes to this information may result in delays in payments and/or rejection of the invoice in accordance with the Prompt Payment clause of this contract. The following EFT information should be submitted on each invoice:

(a) Routing Transit Number (RTN) â€" The contractor shall provide the current 9-digit RTN of the payee's bank

(b) Payee's account number

(c) Contractor's Tax Identification Number (TIN)

(The EFT information submitted must be that of the contractor unless there is an official Assignment of Claims on file with the payment office.)

If at any time during the term of this contract, the contractor changes any EFT information, (i.e. financial agent, RTN, account number, etc.) the new EFT information must replace the old EFT information on subsequent invoices submitted under this contract.

To avoid delays in processing invoices, the contractor must also submit written notification of EFT information changes to the office designated in this award document as soon as the new information is known to the contractor. This notification must be in writing and signed by the individual authorized by the contractor to make such changes.

G-2

BNIF 00000300

HSFEHQ-05-D-0573                    SECTION G

## G.4 SUBMISSION OF INVOICES OR VOUCHERS FOR PAYMENT

(a) Payments of invoices or vouchers submitted under this contract shall be made in accordance with FAR clause 52.232-10 "Payments Under Fixed Price" (AUG 1987) for Firm Fixed Price Task Orders, or 52.232-7 "Payments Under Time-and-Materials and Labor-Hour Contracts" (DEC 2002) for Time and Materials Task Orders, and in accordance with provisions of other clauses in this contract. The Contractor shall submit vouchers once each month (or more frequent intervals, if approved by the Contracting Officer), to the offices designated below. The contractor shall substantiate vouchers by evidence of actual payment and by individual daily job timecards, or other substantiation approved by the Contracting Officer.

(b) Invoices or vouchers, and any required supporting documentation, must be properly identifiable with the Name of contractor, date of the invoice/voucher, contract number, task order number, name and address or EFT information that payment is to be sent to, and the name, title and phone number of the point of contact at the contractor's facility in case of a defective invoice/voucher. Invoices/vouchers shall be submitted as follows:

Original and 2 Copies:          Federal Emergency Management Agency
                                Disaster Finance Center
                                Mt Weather EAC/Accounts Payable/Bldg 708
                                PO Box 800
                                Berryville, VA 22611

One Copy:                       Contract Specialist
                                Federal Emergency Management Agency
                                Financial & Acquisition Management Division
                                Flood, Fire & Mitigation Branch
                                500 C Street SW, Room 350
                                Washington, D.C. 20472

One Copy:                       Contracting Officer's Technical Representative
                                Federal Emergency Management Agency
                                Recovery Division
                                500 C Street SW, Room 600
                                Washington, D.C. 20472

(c) Payments of invoices or vouchers shall be subject to the withholding provisions of FAR clause 52.232-10 "Payments Under Fixed Price" (AUG 1987) or 52.232-7 "Payments Under Time-and-Materials and Labor-Hour Contracts" (DEC 2002). In the event that the amounts are withheld from payment in accordance with provisions of this contract, a separate invoice for the amount withheld will be required before payment for that amount may be made.

## G.5 DESIGNATION OF CONTRACTING OFFICER'S TECHNICAL REPRESENTATIVE

For the purpose of this contract the Contracting Officer's technical representative shall be: David Porter

## G.6 HSAR 3052.242-72 CONTRACTING OFFICER'S TECHNICAL
## REPRESENTATIVE (DEC 2003)

G-3

BNIF 00000301

HSFEHQ-05-D-0573          **SECTION G**

(a) The Contracting Officer may designate Government personnel to act as the Contracting Officer's Technical Representative (COTR) to perform functions under the contract such as review or inspection and acceptance of supplies, services, including construction, and other functions of a technical nature. The Contracting Officer will provide a written notice of such designation to the Contractor within five working days after contract award or for construction, not less than five working days prior to giving the contractor the notice to proceed. The designation letter will set forth the authorities and limitations of the COTR under the contract.

(b) The Contracting Officer cannot authorize the COTR or any other representative to sign documents, such as contracts, contract modifications, etc., that require the signature of the Contracting Officer.

## G.7 PROJECT MONITOR

A Project Monitor (PM) will be designated under each task order. The PM is responsible for individual project management and task assignment administration in the field. This may involve daily oversight to ensure work is performed in accordance with the Task Order terms and conditions and the Statement of Objectives. The PM may provide any necessary techincal guidance to the contractor. A PM does not have authority to authorize work to be performed outside the scope of the Task Order. The PM may also be a COTR or works in conjunction with the COTR, however, if any discrepancies exist between the direction given to a contractor by a COTR and a PM, the COTR's direction shall take precedance. If the contractor is unclear as to the direction provided by a PM or believes the direction to be out of scope, the contractor shall contract either the COTR or the Contracting Officer, as appropriate.

## G.8 TECHNICAL DIRECTION AND SURVEILLANCE

(a) Performance of the work under this contract shall be subject to the Quality Assurance Surveillance Plan and the Technical Work Plan as submitted by the Contractor and the Contracting Officer's Technical Representative (COTR)who shall be specifically appointed by the Contracting Officer in writing. Technical direction is defined as a directive to the Contractor which approves approaches, solutions, designs, or refinements; fills in details or otherwise completes the general description of work of documentation items; shifts emphasis among work areas or tasks; or otherwise furnishes guidance to the Contractor. Technical direction includes the process of conducting inquiries, requesting studies, or transmitting information or advice by the COTR, regarding matters within the Task Orders and the requirements of the Statement of Objectives which will be incorporated into each Task Order.

(b) The COTR does not have the authority to, and shall not, issue any technical direction which:

(1) Constitutes an assignment of additional work outside the Statement of Objectives or the Technical Work Plan;

(2) Constitutes a change as defined in the contract clause entitled "Changes";

(3) In any manner causes an increase or decrease in the total estimated contract cost, the fixed fee (if any), or the time required for contract performance;

(4) Changes any of the expressed terms, conditions, or specifications of the contractor the Task Orders; or

(5) Interferes with the Contractor's right to perform the specifications of the contract.

(c) All technical directions shall be issued in writing by the COTR.

(d) The Contractor shall proceed promptly with the performance of technical directions duly issued by the COTR in the manner prescribed by this clause and within his/her authority under the provisions of this clause. Any instruction or

G-4

BNIF 00000302

HSFEHQ-05-D-0573          SECTION G

direction by the COTR which falls within one, or more, of the categories defined in (b)(1) through (5) above, shall cause the Contractor to notify the Contracting Officer in writing within five (5) working days after receipt of any such instruction or direction and shall request the Contracting Officer to modify the contract accordingly. Upon receiving the notification from the Contractor, the Contracting Officer shall either issue an appropriate contract modification or Task Order modification within a reasonable time or advise the Contractor in writing within thirty (30) days after receipt of the Contractor's Letter that:

(1) the technical direction is rescinded in its entirety

(2) the technical direction is within the scope of the contract, does not constitute a change under the "Changes" clause of the contract and that the Contractor should continue with the performance of the technical direction.

(e) A failure of the Contractor and Contracting Officer to agree that the technical direction is within scope of the contract or Task Order, or a failure to agree upon the contract action to be taken with respect thereto shall be subject to the provisions of the "Disputes" clause of this contract.

(f) Any action(s) taken by the Contractor in response to any direction given by any person other than the Contracting Officer or the COTR that the Contracting Officer appoints shall be at the Contractor's risk.

## G.9 TASK ORDER PROCEDURES

A. Issuing of Pre-Authorization Notice/Request for Task Proposal

A written or electronic Pre-authorization Notice may be issued by the Government prior to issuance of a formal written Task Order. The pre-authorization notice will specify the Government's requirement, authorize the Contractor to perform a preliminary assessment of the Government's requirement, and request a proposal for the required effort. The pre-authorization notice authorizes the Contractor to begin work based on urgency.

The pre-authorization notice will be limited to a specified timeframe and ceiling amount. The pre-authorization notice will authorized the contractor to incur costs (not-to-exceed the specified ceiling) within an expressly stated time period, prior to issuance of the formal Task Order. The Contractor will not be authorized to incur costs in excess of the ceiling amount specified or to perform work after expiration of the specified timeframe.

When a pre-authorization notice is issued, the Contractor and the Government will develop a definitive Statement of Work based on the Contractor's preliminary assessment and recommendations provided by the Government. Based on the definitive Statement of Work, the Contractor shall submit a Draft Work Plan (which reflects the definitive Statement of Work) with its Technical and Cost Proposals. The technical proposal shall specify the Contractor's approach to performing the specific task required within the time frame specified, and identify the names of key personnel who will be performing the work. The business proposal shall identify the labor categories and hours per category estimated necessary to perform the task, as well as the materials and other direct costs estimated to be required for successful task completion. A Technical and Cost Proposal and the Draft Work Plan shall be submitted electronically within fifteen (15) days of issuance of a pre-authorization notice.

In the event that it is determined to be impracticable to utilize electronic mail, the contractor may submit proposals on a 3.5" floppy disk, in MicroSoft Office format. Utilization of a floppy disk for proposal submission will be considered acceptable only with the prior consent of the Contracting Officer.

B. Issuing Task Orders

A Task Order may be issued without negotiations based on acceptability of the Task Order Proposal. If negotiations are required, the Contract Specialist will arrange a meeting or a conference call among the appropriate Government and Contractor personnel. The Government may request submission of a Revised Proposal and/or Final Work Plan, if

G-5

required. If an agreement cannot be reached on any aspect of the task, the Government has the right to unilaterally issue the Task Order, and the Contractor is required to perform; however, while performance is taking place, the Contractor has the right to pursue appropriate remedies under the Contract.

Upon signature by the Contracting Officer, each Task Order is considered fully executed, binding and ready for implementation. Each Task Order will be forwarded promptly to the Contractor and shall conform to all terms and conditions of the contract. Orders may be issued orally, electronically, or by facsimile methods. If issued orally, a hardcopy will follow. At a minimum, each Task Order shall include the following: contractor's name, contract number, task order number, contract task number and description of task, performance period, disaster number and location, maximum number of labor hours, cost of the Task Order and applicable accounting and appropriations data.

C. Completion of Task Orders.

Within 180 days of physical completion of work under each Task Order, the Contractor shall submit a Final Voucher. The final voucher shall include a payment history, cumulative itemized costs, and government property and classified materials certification. If additional time is needed, the Contractor shall submit a written request for a time extension that explains the extenuating circumstances. Quick closeout procedures (see FAR 42.708) should be used, when appropriate, to reduce administrative costs and to enable deobligation of excess funds.

For cost reimbursable task orders, it is understood that the final voucher will be based on current provisional rates in effect at the time. Once final rates are submitted to DCAA, the contractor shall submit an interim final voucher to be followed by a final voucher once final indirect rates are negotiated.

D. Payment for Task Orders

If the Contractor is performing more than one Task Order simultaneously, separate invoices are required for each Task Order.

E. Closeout of Task Orders

All task orders issued under this contract shall be closed out in accordance with FAR Subpart 4.805 and established FEMA policy. Upon completion of each Task Order and the receipt of the final voucher, the Government will begin closeout procedures.

BNIF 00000304

HSFEHQ-05-D-0573                    SECTION H

## SECTION H - SPECIAL CONTRACT REQUIREMENTS

### H.1 ACCESSIBILITY OF MEETINGS, CONFERENCES, AND SEMINARS TO PERSONS WITH DISABILITIES

The Contractor agrees as follows:

(a) Planning. The Contractor will develop a plan to assure that any meeting, conference, or seminar held pursuant to this contract will meet or exceed the minimum accessibility standards set forth below. This plan shall include a provision for ascertaining the number and types of disabled individuals planning to attend the meeting, conference, or seminar. The plan shall be submitted to the Contracting Officer for approval prior to initiating action. A consolidated or master plan for contracts requiring numerous meetings, conferences, or seminars may be submitted in lieu of separate plans.

(b) Facilities. Any facility to be utilized for meetings, conferences, or seminars in performance of this contract shall be accessible to persons with disabilities. The Contractor shall determine, by an on-site inspection if necessary, that the following minimum accessibility requirements are met, or suitable modifications are made to meet these requirements, before the meeting:

(1) Parking. (i) Where parking is available on or adjacent to the site one 12' wide space must be set aside for the car of each mobility impaired attendee. The space need not be permanently striped but may be temporarily marked by signs, ropes, or other means satisfactory to carry out this provision.

(ii) Where parking is not available on or adjacent to the site, valet parking or other alternative means must be available to assist disabled attendees. Alternate means must be satisfactory in the judgment of the Contracting Officer.

(2) Entrances. (i) ``Entrances'' shall include at least one accessible entrance from the street/sidewalk level, and at least one accessible entrance from any available parking facility.

(ii) The entrance shall be level or accessible by ramp with an incline that allows independent negotiation by a person in a wheelchair. In general, the slope of the incline shall be no more than 1" rise per foot of ramp length (1:12).

(iii) Entrance doorways shall be at least 30" in clear width and capable of operation by persons with disabilities. Revolving doors, regardless of foldback capability, will not meet this requirement.

(3) Meeting Rooms. (i) Meeting room access from the main entrance area must be level or at an independently negotiable incline (approximately 1:12) and/or served by elevators from the main entrance level. All elevators shall be capable of accommodating a wheelchair 29" wide by 45" long.

(ii) Meeting rooms shall be on one level or, if on different levels, capable of being reached by elevators or by ramps that can be independently negotiated by a person in a wheelchair. Doorways to all meeting rooms shall be at least 30" in clear width.

(iii) The interior of the meeting room shall be on one level or ramped so as to be independently negotiable for a person in a wheelchair.

(iv) Stages, speaker platforms, etc. which are to be used by persons in wheelchairs must be accessible by ramps or lifts. When used, the ramps may not necessarily be independently negotiable if space does not permit. However, any slope over 1:12 must be approved by the Contracting Officer. Each case is to be judged on its own merits.

BNIF 00000305

HSFEHQ-05-D-0573           **SECTION H**

(v) If a meeting room with fixed seating is utilized, seating arrangements for persons in wheelchairs shall be made so that these persons are incorporated into the group rather than isolated on the perimeter of the group.

(4) Restrooms. (i) Restrooms shall have level access, signs indicating accessibility, and doorways at least 30" in clear width.

(ii) Sufficient turning space within restrooms shall be provided for independent use by a person in a wheelchair 29" wide by 45" long. A space 60" by 60" or 63" by 56" of unobstructed floor space as measured 12" above the floor is acceptable by standard; other layout will be accepted if it can be demonstrated that they are usable as indicated.

(iii) There will be a restroom for each sex or a unisex restroom with at least one toilet stall capable of accommodating a wheelchair 29" wide by 45" long (by standard, the minimum is 3'-0" by 43'- 83"), with outswinging door or private curtains. Wall mounted grab bars are required.

(iv) When separate restrooms have been set up for mobility impaired persons, they shall be located adjacent to the regular restrooms and shall be fully accessible.

(5) Eating Facilities. (i) Eating facilities in the meeting facility must be accessible under the same general guidelines as are applied to meeting rooms.

(ii) If the eating facility is a cafeteria, the food service area (cafeteria line) must allow sufficient room for independent wheelchair movement and accessibility to food for persons in wheelchairs, and cafeteria staff shall be available to assist disabled persons.

(6) Overnight Facilities. If overnight accommodations are required:

(i) Sufficient accessible guest rooms to accommodate each attendee who is disabled shall be located in the facility where the meeting, conference, or seminar is held, or in a facility housing the attendees which is conveniently located hereby, whichever is satisfactory to the Contracting Officer.

(ii) Overnight facilities shall provide for the same minimum accessibility requirements as the facility utilized for guest room access from the main entrance area shall be level, ramped at an independently negotiable incline (1:12), and/or served by elevators capable of accommodating a wheelchair 29" wide by 45" long.

(iii) Doorways to guest rooms, including the doorway to the bathroom, shall be at least 30" in clear width.

(iv) Bathrooms shall have wall mounted grab bars at the tub and water closet.

(v) Guest rooms for persons with a disability shall be provided at the same rate as a guest room for other attendees.

(7) Water Fountains. Water fountains shall be accessible to disabled persons, or have cup dispensers for use by persons in wheelchairs.

(c) Provisions of Services for Sensory Impaired Attendees.

(1) The Contractor, in planning the meeting, conference, or seminar shall include in all announcements and other materials pertaining to the meeting, conference, or seminar a notice indicating that services will be made available to sensory impaired persons attending the meeting, if requested within five (5) days of the date of the meeting, conference, or seminar. The announcement(s) and other material(s) shall indicate that sensory impaired persons may contact a specific person(s), at a specific address and phone number(s), to make their service requirements known. The phone number(s) shall include a teletype number for the hearing impaired.

(2) The Contractor shall provide, at no cost to the individual, those services required by persons with sensory impairments to insure their complete participation in the meeting, conference, or seminar.

H-2

BNIF 00000306

HSFEHQ-05-D-0573                    SECTION H

(3) As a minimum, when requested in advance, the Contractor shall provide the following services:

(i) For hearing impaired persons, qualified interpreters. Provisions will also be made for volume controlled phone lines and, if necessary, transportation to local teletype equipment to enable hearing impaired individuals to receive and send meeting related calls. If local teletype equipment is not available, the Contractor shall provide on-site teletype equipment. Also, the meeting rooms will be adequately illuminated so signing by interpreters can be easily seen.

(ii) For vision impaired persons, readers and/or cassette materials, as necessary, to enable full participation. Also, meeting rooms will be adequately illuminated.

(iii) Agenda and other conference material(s) shall be translated into a usable form for the visually and hearing impaired. Readers, braille translations, and/or tape recordings are all acceptable. These materials shall be available to sensory impaired individuals upon their arrival.

(4) The Contractor is responsible for making every effort to ascertain the number of sensory impaired individuals who plan to attend the meeting, conference, or seminar. However, if it can be determined that there will be no sensory impaired person (deaf and/or blind) in attendance, the provision of those services under paragraph (c) for the non-represented group, or groups, is not required.

## H.2 REPRODUCTION OF REPORTS

Reproduction of reports, data, or other written material, if required herein, is authorized provided that the material produced does not exceed 5,000 production units of any page and that items consisting of multiple pages do not exceed 25,000 production units in aggregate. The aggregate number of production units is to be determined by multiplying pages times copies. A production unit is one sheet, size 8 1/2x11 inches or less, printed on one side only, and in one color. All copy preparation to produce camera-ready copy for reproduction must be set by methods other than hot metal typesetting. The reports should be produced by methods employing stencils, masters, and plates which are to be used on single-unit duplicating equipment no larger than 11 by 17 inches with a maximum image of 10 3/4 by 14 1/4 inches and are prepared by methods or devices that do not utilize reusable contact negatives and/or positives prepared with a camera requiring a darkroom. All reproducibles (camera-ready copies for reproduction by photo offset methods) shall become the property of the Government and shall be delivered to the Government with the report, data, or other written material.

## H.3 COORDINATION OF FEDERAL REPORTING SERVICES

In the event that it is a contractual requirement to collect information from 10 or more public respondents, the provisions of 44 U.S.C. chapter 35 (Coordination of Federal Reporting Requirements), shall apply to this contract. The contractor shall obtain through the Contracting Officer's Technical Representative the required office of Management and Budget clearance before making public contacts for the collection of data or expending any funds for such collection. The authority to proceed with the collection of data from public respondents and the expenditure of funds therefore shall be in writing signed by the Contracting Officer.

## H.4 PUBLICATION (APR 1984)

(a) Definition. For the purpose of this clause "publication" includes (1) any document containing information intended for public consumption or (2) the act of, or any act which may result in, disclosing information to the public.

(b) General. The results of the research and development and studies conducted under this contract are to be made available to the public through dedication, assignment to the Government, or other such means as the Director of the Federal Emergency Management Agency shall determine.

BNIF 00000307

(c) Reports furnished the Government. All intermediate and final reports of the research and development and studies conducted hereunder shall indicate on the cover or other initial page that the research and development and studies forming the basis for the report were conducted pursuant to a contract with the Federal Emergency Management Agency. Such reports are official Government property and may not be published or reproduced (in toto, in verbatim excerpt, or in a form approximating either of these) as an unofficial paper or article. The contractor or technical personnel (each employee or consultant working under the administrative direction of the contractor or any subcontractor hereunder) may publish such reports in whole or in part in a non-Government publication only in accordance with this paragraph (c) and paragraph (e)(1) of this clause.

(d) Publication by Government. The Government shall have full right to publish all information, data, and findings developed as a result of the research and development and studies conducted hereunder.

(e) Publication by contractor or technical personnel.

(1) Publication in whole or in part of contractor's reports furnished the Government. Unless such reports have been placed in the public domain by Government publication, the contractor or technical personnel (each employee or consultant working under the administrative direction of the contractor or any subcontractor hereunder) may publish a report furnished the Government, in toto or in verbatim excerpt, but consistent with paragraph (c) of this clause may not secure copyright therein, subject to the following conditions and the conditions in paragraph (e)(4) and paragraph (f).

(i) During the first six months after submission of the full final report, if written permission to publish is obtained from the contracting officer.

(ii) After six months following submission of the full report, and if paragraph (e)(3) is inapplicable, if a foreword or footnote in the non-Government publication indicates the source of the verbatim material.

(2) Publication, except verbatim excerpts, concerning or based in whole or in part on results of research and development and studies hereunder. The contractor or technical personnel may issue a publication concerning or based in whole or in part on the results of the research and development and studies conducted under this contract and may secure copyright therein, but in so publishing is not authorized thereby to inhibit the unrestricted right of the Director of the Federal Emergency Management Agency to disclose or publish, in such manner as he may deem to be in the public interest, the results of such research and development and studies to the following conditions and the requirement in paragraph (e)(4):

(i) During the first six months after submission of the full final report, and if paragraph (e)(3) is inapplicable, if written waiver of the waiting period is obtained from the contracting officer.

(ii) After six months following submission of the full final report, and if paragraph (e)(3) is inapplicable, subject to Government exercise of an option that the publication contain a foreword or initial footnote substantially as follows: The (research) (development) (studies) forming (part of) the basis for this publication were conducted pursuant to a contract with the Federal Emergency Management Agency. The substance of such (research) (development) (studies) is dedicated to the public. The author and publisher are solely responsible for the accuracy of statements or interpretations contained therein.

(3) General conditions if FEMA determines that contractor's final report contains patentable subject matter developed in contract performance. If the contracting officer determines that the contractor's full final report contains patentable subject matter developed in the performance of this contract and so notifies the contractor in writing prior to six months from date of submission of such report, no publication of verbatim excerpts from contractor's reports or publication concerning or based in whole or in part on the results of the research and development and studies hereunder shall be made without the written consent of the contracting officer.

H-4

BNIF 00000308

HSFEHQ-05-D-0573                    SECTION H

(4) Copies of contractor and technical personnel publications to be furnished the Government. The contractor or technical personnel will furnish the contracting officer six copies of any publications which are based in whole or in part on the results of the research and development and studies conducted under this contract.

(f) Administratively confidential information. The contractor shall not publish or otherwise disclose, except to the Government and except matters of public record any information or data obtained hereunder from private individuals, organizations, or public agencies in a publication whereby the information or data furnished by any particular person or establishment can be identified, except with the consent of such person or establishment.

(g) Inclusion of provisions in contractor's agreements. The contractor shall include provisions appropriate to effectuate the purposes of this clause in all contracts of employment with persons who perform any part of the research or development or study under this contract and in any consultant's agreements or subcontracts involving research or development or study thereunder.

## H.5 CONFIDENTIALITY OF INFORMATION

(a) To the extent that the work under this contract requires that the Contractor be given access to sensitive or proprietary business, technical, or financial information belonging to the Government or other companies, the Contractor shall, after receipt thereof, treat such information as confidential and not appropriate such information to its own use or disclose such information to third parties unless specifically authorized by the Contracting Officer in writing. The foregoing obligations however, shall not apply to information that—

(1) At the time of receipt by the Contractor, is in the public domain

(2) Is published by others after receipt thereof by the Contractor or otherwise becomes part of the public domain through no fault of the Contractor

(3) The Contractor can demonstrate was already in its possession at the time of receipt thereof and was not acquired directly or indirectly from the Government or other companies

(4) The Contractor can demonstrate was received by it from a third party that did not require the Contractor to hold it in confidence.

(b) The Contractor shall obtain from each employee permitted access a written agreement, in a form satisfactory to the Contracting Officer, that he/she will not discuss, divulge or disclose any such information or data to any person or entity except those persons within the Contractor's organization or the Government directly concerned with the performance of the contract.

## H.6 ELECTRONIC AND INFORMATION TECHNOLOGY (EIT)

The Federal Emergency Management Agency (FEMA) considers universal accessibility to information a priority for all its employees and external customers, including individuals with disabilities. Pursuant to the Workforce Investment Act of 1998, 29 U.S.C. A 794d, FEMA must ensure the accessibility of its programs and activities to all current and potential users, specifically its obligation to acquire and use accessible Electronic and Information Technology (EIT) including web pages, software, telecommunications, kiosks and other information transaction machines, and fax machines, copiers, printers, and other information technology office equipment. To comply with the provisions of this clause, the contractor shall provide EIT that meets the intent of the Workforce Investment Act of 1998 which requires, regardless of medium,—

(i) individuals with disabilities who are Federal employees to have access to and use of information and data that is comparable to the access to and use of the information and data by Federal employees who are not individuals iwth disabilities; and

H-5

HSFEHQ-05-D-0573          SECTION H

(ii) individuals with disabilities who are members of the public seeking information or services from FEMA to have access to and use of information and data that is comparable to the access to and use of the information and data by such members of the public who are not individuals with disabilities.

Furthermore, the contractor shall comply with the applicable accessibility standards issued by the Architectural and Transportation Barriers Compliance Board at 36 CFR 1194 and http://www.section508.gov.

## H.7 SERVICES OF CONSULTANTS

Notwithstanding the provisions of the clause entitled "Subcontract Consent", the prior written approval of the Contracting Officer shall be required:

(a) Whenever an employee of the contractor is to be reimbursed as a "Consultant" under this contract; and

(b) Whenever the services of any consultant are to be used under this contract, except when the consultant was proposed and accepted during negotiations of the contract.

Whenever the Contracting Officer approval is required, the Contractor shall obtain, and furnish to the Contracting Officer, information concerning the need for such consultant services and the reasonableness of the fees to be paid, including but not limited to, whether the fees to be paid to any consultant exceed the lowest fee charged by that consultant to others performing services of a similar nature.

## H.8 NONPERSONAL SERVICES

A nonpersonal services contract is defined as "a contract under which the personnel rendering the services are not subject, either by the contract's terms or by the manner of its administration, to the supervision and control usually prevailing in relationships between the Government and its employees."

This is not a personal services contract.

## H.9 AWARD PRIOR TO AUDIT

Award of this contract is made prior to completion of a pre-award audit to be conducted by the Defense Contract Audit Agency (DCAA). Therefore, the rights and obligations of the parties are contingent upon the findings/recommendations of the audit. Upon receipt of the audit report, the Government will negotiate and issue a modification to the contract and all previously issued task orders, as appropriate.

In accordance with the FAR, the contractor shall have an acceptable accounting system for adequate tracking of costs. Upon receipt of the DCAA audit report, the Contracting Officer will notify the Contractor as to the findings on the acceptability of the Contractor's pricing.

Should DCAA find that the contractor's accounting system is unacceptable, the contractor shall have sixty (60) days to implement an acceptable accounting system. Should the contractor fail to implement an acceptable accounting system with the allotted time frame, the contract will be suspended and/or terminated.

H-6

BNIF 00000310

HSFEHQ-05-D-0573                    SECTION H

## H.10  WAGE DETERMINATION

In the performance of this contract the Contractor shall comply with the requirements of the following U.S. Department of Labor Wage Determinations, which are contained as Attachment D to this contract.

| Number | Date |
|---|---|
| FL030102 | 6/13/2003 |
| FL030011, Mod 1 | 4/8/2005 |
| AL030017, Mod 4 | 2/4/2005 |
| AL030042 | 6/13/2003 |
| AL030049 | 6/13/2003 |
| AL030013 | 6/13/2003 |
| FL030019 | 6/13/2003 |
| 1994-2009, Rev 26 | 5/23/2005 |
| 1994-3033, Rev 4 | 5/23/2005 |
| 1994-2233, Rev 25 | 5/23/2005 |
| 1994-2505, Rev 25 | 5/23/2005 |
| 1994-2235, Rev 30 | 6/14/2005 |
| 1994-2231, Rev 25 | 5/23/2005 |
| 1994-2229, Rev 27 | 6/17/2005 |
| 1994-2301, Rev 28 | 6/21/2005 |
| 1994-2495, Rev 29 | 5/23/2005 |
| 1994-2295, Rev 25 | 5/23/2005 |
| 1994-2297, Rev 26 | 5/23/2005 |
| 1994-2299, Rev 26 | 5/23/2005 |
| 1994-2007, Rev 30 | 5/23/2005 |
| 1994-2137, Rev 26 | 5/23/2005 |
| 1994-2001, Rev 27 | 5/23/2005 |
| 1994-2003, Rev 27 | 5/23/2005 |
| 1994-2005, Rev 23 | 5/23/2005 |
| 1994-2009, Rev 26 | 5/23/2005 |
| 1994-2011, Rev 30 | 5/23/2005 |
| AL030001, Mod 1 | 3/5/2004 |
| AL030002 | 6/13/2003 |
| AL030003, Mod 2 | 8/19/2005 |
| AL030004, Mod 4 | 2/4/2005 |
| AL030005 | 6/13/2005 |
| AL030006, Mod 5 | 2/4/2005 |
| AL030007, Mod 1 | 2/25/2005 |
| AL030008, Mod 11 | 8/19/2005 |
| AL030017, Mod 4 | 2/4/2005 |
| AL030031 | 6/13/2003 |
| AL030033, Mod 6 | 3/4/2005 |
| AL030037 | 6/13/2003 |
| AL030039 | 6/13/2003 |
| AL030040 | 6/13/2003 |
| AL030041 | 6/13/2003 |
| AL030042, Mod 1 | 8/19/2005 |
| AL030043 | 6/13/2003 |
| AL030044, Mod 1 | 3/19/2004 |
| AL030045 | 6/13/2003 |

H-7

BNIF 00000311

HSFEHQ-05-D-0573                    SECTION H

| | |
|---|---|
| AL030046 | 6/13/2003 |
| AL030047 | 6/13/2003 |
| AL030048 | 6/13/2003 |
| AL030049 | 6/13/2003 |
| AL030050 | 6/13/2003 |
| AL030051 | 6/13/2003 |
| AL030052, Mod 1 | 2/25/2005 |
| AL030053 | 6/13/2003 |
| AL030054 | 6/13/2003 |
| AL030055 | 6/13/2003 |
| MS030001, Mod 4 | 2/4/2005 |
| MS030002 | 6/13/2003 |
| MS030003, Mod 10 | 4/8/2005 |
| MS030004 | 6/13/2003 |
| MS030005 | 6/13/2003 |
| MS030006 | 6/13/2003 |
| MS030007 | 6/13/2003 |
| MS030008 | 6/13/2003 |
| MS030009 | 6/13/2003 |
| MS030028 | 6/13/2003 |
| MS030029 | 6/13/2003 |
| MS030030 | 6/13/2003 |
| MS030031, Mod 4 | 2/4/2005 |
| MS030033 | 6/13/2003 |
| MS030035 | 6/13/2003 |
| MS030036 | 6/13/2003 |
| MS030037 | 6/13/2003 |
| MS030038 | 6/13/2003 |
| MS030039 | 6/13/2003 |
| MS030040 | 6/13/2003 |
| MS030041 | 6/13/2003 |
| MS030042 | 6/13/2003 |
| MS030043 | 6/13/2003 |
| MS030044 | 6/13/2003 |
| MS030045 | 6/13/2003 |
| MS030046 | 6/13/2003 |
| MS030047 | 6/13/2003 |
| MS030048 | 6/13/2003 |
| MS030049 | 6/13/2003 |
| MS030050, Mod 2 | 4/8/2005 |
| MS030051 | 6/13/2003 |
| MS030052 | 6/13/2003 |
| MS030055, Mod 4 | 7/22/2005 |
| MS030056, Mod 4 | 7/22/2005 |
| LA030005, Mod 9 | 4/8/2005 |
| LA030006, Mod 7 | 4/8/2005 |
| LA030014, Mod 12 | 8/12/2005 |
| LA030015, Mod 5 | 4/8/2005 |
| LA030014, Mod 12 | 8/12/2005 |
| AL030009 | 6/13/2003 |
| AL030010 | 6/13/2003 |
| AL030011 | 6/13/2003 |
| AL030012 | 6/13/2003 |
| AL030013 | 6/13/2003 |

H-8

HSFEHQ-05-D-0573                         SECTION H

AL030014                 6/13/2003
AL030015                 6/13/2003
AL030016                 6/13/2003
AL030030                 6/13/2003
MS030010                 6/13/2003
MS030011                 6/13/2003
MS030012                 6/13/2003
MS030013                 6/13/2003
MS030014                 6/13/2003
MS030015                 6/13/2003
MS030016                 6/13/2003
MS030017                 6/13/2003
MS030018                 6/13/2003
MS030019                 6/13/2003
LA030002, Mod 6          4/8/2005
LA030008, Mod 1          7/16/2004
94-2521, Rev 29          5/23/2005
TX030091                 6/13/2003
94-2515, Rev 32          5/23/2005
TX030097                 6/13/2003
TX030073                 6/13/2003

## H.11  HSAR 3052.245-70  GOVERNMENT PROPERTY REPORTS (DEC 2003)

(a) The Contractor shall prepare an annual report of Government property in its possession and the possession of its subcontractors.

(b) The report shall be submitted to the Contracting Officer not later than October 15, 2005 and September 15 of each following calendar year on Form DHS Form 0700-05, Contractor Report of Government Property (Section J, Attachment E).

## H.12  GOVERNMENT-FURNISHED PROPERTY

In accordance with the Government Property clause of this contract, the Government shall provide, for performance of the effort required, the following:

| Item No. | Item Description | Quantity | Availability Date |
|---|---|---|---|
| To be determined on an individual task order basis | | | |

## H.13  ACQUISITION OF GOVERNMENT PROPERTY

H-9

HSFEHQ-05-D-0573                    SECTION H

   The Contractor is authorized to acquire or fabricate the equipment listed below for use in the performance of this
contract.  This equipment shall become the property of the Government in accordance with the provisions of the clause of
this contract entitled, "Government Property."

| Item No. | Description | Quantity | Estimated Cost |
|---|---|---|---|

   To be determined.

H-10

BNIF 00000314

HSFEHQ-05-D-0573                    SECTION I

PART II - CONTRACT CLAUSES

SECTION I - CONTRACT CLAUSES


I.1 NOTICE OF HYBRID CONTRACT

This is a Fixed Price/Cost/Time and Material type contract.

See the listing below for applicable contract types:

FFP   = Firm Fixed Price
FP-E  = Fixed Price with Economic Price Adjustment
FP-I  = Fixed Price Incentive
FP-P  = Fixed Price Redetermination-Propspective
FP-R  = Fixed Price Redetermination-Retroactive
FFP-L = Firm Fixed Price, Level of Effort Term
LH    = Labor Hour
TM    = Time and Material CPAF   = Cost Plus Award Fee Completion;      CPAF-T = Term
CPIF  = Cost Plus Incentive Fee Completion;   CPIF-T = Term
CR    = Cost Reimbursement (No Fee) Completion; CR-T = Term
CS    = Cost Sharing Completion;              CS-T = Term
TM    = Time and Materials

When applicable, the following symbols will appear next to the applicable
clauses and provisions through out this document.

$ = applicable to FIXED-PRICE line items only.

@ = applicable to COST-REIMBURSEMENT line items only.

& = applicable to TIME-&-MATERIAL/LABOR-HOUR line items only .


I.2 NOTICE LISTING CONTRACT CLAUSES INCORPORATED BY REFERENCE

The following contract clauses pertinent to this section are hereby incorporated by reference (by Citation Number,
Title, and Date) in accordance with the clause at FAR "52.252-2 CLAUSES INCORPORATED BY REFERENCE" in
Section I of this contract. See FAR 52.252-2 for an internet address (if specified) for electronic access to the full text of a
clause.

| NUMBER | TITLE | DATE |
|---|---|---|
| 52.202-1 | DEFINITIONS | JUL 2004 |
| 52.203-3 | GRATUITIES | APR 1984 |
| 52.203-5 | COVENANT AGAINST CONTINGENT FEES | APR 1984 |
| 52.203-6 | RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT | JUL 1995 |

I-1

BNIF 00000315

HSFEHQ-05-D-0573                          SECTION I

| | | | |
|---|---|---|---|
| | 52.203-7 | ANTI-KICKBACK PROCEDURES | JUL 1995 |
| | 52.203-8 | CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY | JAN 1997 |
| | 52.203-10 | PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY | JAN 1997 |
| | 52.203-12 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS | JUN 2003 |
| | 52.204-4 | PRINTED OR COPIED DOUBLE-SIDED ON RECYCLED PAPER | AUG 2000 |
| | 52.204-7 | CENTRAL CONTRACTOR REGISTRATION (OCT 2003) | OCT 2003 |
| | 52.209-6 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT | JAN 2005 |
| $ | 52.215-2 | AUDIT AND RECORDS—NEGOTIATION | JUN 1999 |
| | 52.215-8 | ORDER OF PRECEDENCE—UNIFORM CONTRACT FORMAT | OCT 1997 |
| | 52.215-15 | PENSION ADJUSTMENTS AND ASSET REVERSIONS (JAN 2004) | OCT 2004 |
| | 52.215-18 | REVERSION OR ADJUSTMENT OF PLANS FOR POSTRETIREMENT BENEFITS OTHER THAN PENSIONS (PRB) | JUL 2005 |
| @ | 52.216-7 | ALLOWABLE COST AND PAYMENT | DEC 2002 |
| @ | 52.216-8 | FIXED-FEE | MAR 1997 |
| | 52.219-8 | UTILIZATION OF SMALL BUSINESS CONCERNS | MAY 2004 |
| | 52.219-9 | SMALL BUSINESS SUBCONTRACTING PLAN ALTERNATE II (OCT 2001) | JUL 2005 |
| | 52.219-16 | LIQUIDATED DAMAGES-SMALL BUSINESS SUBCONTRACTING PLAN | JAN 1999 |
| | 52.222-3 | CONVICT LABOR | JUN 2003 |
| | 52.222-4 | CONTRACT WORK HOURS AND SAFETY STANDARDS ACT-OVERTIME COMPENSATION | JUL 2005 |
| | 52.222-6 | DAVIS-BACON ACT | JUL 2005 |
| | 52.222-7 | WITHHOLDING OF FUNDS | FEB 1988 |
| | 52.222-8 | PAYROLLS AND BASIC RECORDS | FEB 1988 |
| | 52.222-9 | APPRENTICES AND TRAINEES | JUL 2005 |
| | 52.222-10 | COMPLIANCE WITH COPELAND ACT REQUIREMENTS | FEB 1988 |
| | 52.222-11 | SUBCONTRACTS (LABOR STANDARDS) | JUL 2005 |
| | 52.222-12 | CONTRACT TERMINATION - DEBARMENT | FEB 1988 |
| | 52.222-13 | COMPLIANCE WITH DAVIS-BACON AND RELATED ACT REGULATIONS | FEB 1988 |
| | 52.222-14 | DISPUTES CONCERNING LABOR STANDARDS | FEB 1988 |
| | 52.222-15 | CERTIFICATION OF ELIGIBILITY | FEB 1988 |
| | 52.222-16 | APPROVAL OF WAGE RATES | FEB 1988 |
| | 52.222-17 | LABOR STANDARDS FOR CONSTRUCTION WORK - FACILITIES CONTRACTS | FEB 1988 |
| | 52.222-26 | EQUAL OPPORTUNITY | APR 2002 |
| | 52.222-35 | EQUAL OPPORTUNITY FOR SPECIAL DISABLED VETERANS, OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS | DEC 2001 |
| | 52.222-36 | AFFIRMATIVE ACTION FOR WORKERS WITH | JUN 1998 |

I-2

HSFEHQ-05-D-0573                    SECTION I

|   |   |   |   |
|---|---|---|---|
|   |   | DISABILITIES |   |
|   | 52.222-37 | EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS | DEC 2001 |
|   | 52.223-6 | DRUG-FREE WORKPLACE | MAY 2001 |
|   | 52.225-13 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES | MAR 2005 |
|   | 52.227-1 | AUTHORIZATION AND CONSENT | JUL 1995 |
|   | 52.227-2 | NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT | AUG 1996 |
|   | 52.227-14 | RIGHTS IN DATA--GENERAL ALTERNATE IV (JUN 1987) | JUN 1987 |
| @ | 52.228-7 | INSURANCE--LIABILITY TO THIRD PERSONS | MAR 1996 |
|   | 52.228-15 | PERFORMANCE AND PAYMENT BONDS-- CONSTRUCTION | JUL 2000 |
|   | 52.230-2 | COST ACCOUNTING STANDARDS | APR 1998 |
|   | 52.230-6 | ADMINISTRATION OF COST ACCOUNTING STANDARDS | APR 2005 |
| & | 52.232-7 | PAYMENT UNDER TIME-AND-MATERIALS AND LABOR-HOUR CONTRACTS ALTERNATE II (JAN 1986) | AUG 2005 |
|   | 52.232-17 | INTEREST | JUN 1996 |
| @ | 52.232-20 | LIMITATION OF COST | APR 1984 |
|   | 52.232-23 | ASSIGNMENT OF CLAIMS | JAN 1986 |
|   | 52.232-33 | PAYMENT BY ELECTRONIC FUNDS--CENTRAL CONTRACTOR REGISTRATION | OCT 2003 |
|   | 52.233-3 | PROTEST AFTER AWARD | AUG 1996 |
| @ | 52.233-3 | PROTEST AFTER AWARD ALTERNATE I (JUN 1985) | AUG 1996 |
|   | 52.233-4 | Applicable Law for Breach of Contract Claim | OCT 2004 |
|   | 52.237-3 | CONTINUITY OF SERVICES | JAN 1991 |
|   | 52.242-1 | NOTICE OF INTENT TO DISALLOW COSTS | APR 1984 |
|   | 52.242-3 | PENALTIES FOR UNALLOWABLE COSTS | MAY 2001 |
|   | 52.242-13 | BANKRUPTCY | JUL 1995 |
| @ | 52.243-2 | CHANGES--COST REIMBURSEMENT ALTERNATE I (APR 1984) | AUG 1987 |
| & | 52.243-3 | CHANGES--TIME-AND-MATERIALS OR LABOR-HOURS | SEP 2000 |
| @ | 52.244-2 | SUBCONTRACTS ALTERNATE II (MAR 2005) | MAR 2005 |
|   | 52.244-5 | COMPETITION IN SUBCONTRACTING | DEC 1996 |
|   | 52.244-6 | SUBCONTRACTS FOR COMMERCIAL ITEMS AND COMMERCIAL COMPONENTS | DEC 2004 |
|   | 52.245-2 | GOVERNMENT PROPERTY (FIXED-PRICE CONTRACTS) | MAY 2004 |
|   | 52.245-5 | GOVERNMENT PROPERTY (COST-REIMBURSEMENT, TIME AND MATERIALS, OR LABOR HOUR CONTRACTS) | MAY 2004 |
|   | 52.246-23 | LIMITATION OF LIABILITY | FEB 1997 |
|   | 52.246-25 | LIMITATION OF LIABILITY--SERVICES | FEB 1997 |
|   | 52.247-67 | SUBMISSION OF COMMERCIAL TRANSPORTATION BILLS TO THE GENERAL SERVICES ADMINISTRATION FOR AUDIT | JUN 1997 |

I-3

| HSFEHQ-05-D-0573 | SECTION I | |
|---|---|---|
| 52.248-1 | VALUE ENGINEERING | FEB 2000 |
| & 52.249-6 | TERMINATION (COST-REIMBURSEMENT) ALTERNATE IV (SEP 1996) | SEP 1996 |
| @ 52.249-6 | TERMINATION (COST-REIMBURSEMENT) (MAY 2004) | MAY 2004 |
| 52.249-14 | EXCUSABLE DELAYS | APR 1984 |
| 52.251-1 | GOVERNMENT SUPPLY SOURCES | APR 1984 |
| 52.253-1 | COMPUTER GENERATED FORMS | JAN 1991 |
| 3052.219-70 | SMALL BUSINESS SUBCONTRACTING PROGRAM REPORTING | DEC 2003 |
| 3052.237-70 | QUALIFICATIONS OF CONTRACTOR EMPLOYEES | DEC 2003 |
| 3052.242-70 | DISSEMINATION OF INFORMATION – EDUCATIONAL INSTITUTIONS | DEC 2003 |
| 3052.242-71 | DISSEMINATION OF CONTRACT INFORMATION | DEC 2003 |
| 3052.219-71 | DHS MENTOR-PROTÉGÉ PROGRAM | DEC 2003 |

## I.3 52.215-19 NOTIFICATION OF OWNERSHIP CHANGES (OCT 1997)

(a) The Contractor shall make the following notifications in writing:

(1) When the Contractor becomes aware that a change in its ownership has occurred, or is certain to occur, that could result in changes in the valuation of its capitalized assets in the accounting records, the Contractor shall notify the Administrative Contracting Officer (ACO) within 30 days.

(2) The Contractor shall also notify the ACO within 30 days whenever changes to asset valuations or any other cost changes have occurred or are certain to occur as a result of a change in ownership.

(b) The Contractor shall—

(1) Maintain current, accurate, and complete inventory records of assets and their costs;

(2) Provide the ACO or designated representative ready access to the records upon request;

(3) Ensure that all individual and grouped assets, their capitalized values, accumulated depreciation or amortization, and remaining useful lives are identified accurately before and after each of the Contractor's ownership changes; and

(4) Retain and continue to maintain depreciation and amortization schedules based on the asset records maintained before each Contractor ownership change.

(c) The Contractor shall include the substance of this clause in all subcontracts under this contract that meet the applicability requirement of FAR 15.408(k).

## I.4 52.216-18 ORDERING (OCT 1995)

(a) Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued from the effective date of the contract through .

I-4

BNIF 00000318

HSFEHQ-05-D-0573                    SECTION I

(b) All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

(c) If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail. Orders may be issued orally, by facsimile, or by electronic commerce methods only if authorized in the Schedule.

## I.5 52.216-19  ORDER LIMITATIONS  (OCT 1995)

(a) Minimum order. When the Government requires supplies or services covered by this contract in an amount of less than , the Government is not obligated to purchase, nor is the Contractor obligated to furnish, those supplies or services under the contract.

(b) Maximum order. The Contractor is not obligated to honor--

(1) Any order for a single item in excess of  (TO BE NEGOTIATED);

(2) Any order for a combination of items in excess of (TO BE NEGOTIATED);

(3) A series of orders from the same ordering office within days that together call for quantities exceeding the limitation in subparagraph (b)(1) or (2) above.

(c) If this is a requirements contract (i.e., includes the Requirements clause at subsection 52.216-21 of the Federal Acquisition Regulation (FAR)), the Government is not required to order a part of any one requirement from the Contractor if that requirement exceeds the maximum-order limitations in paragraph (b) above.

(d) Notwithstanding paragraphs (b) and (c) above, the Contractor shall honor any order exceeding the maximum order limitations in paragraph (b), unless that order (or orders) is returned to the ordering office within  days after issuance, with written notice stating the Contractor's intent not to ship the item (or items) called for and the reasons. Upon receiving this notice, the Government may acquire the supplies or services from another source.

## I.6 52.216-22  INDEFINITE QUANTITY  (OCT 1995)

(a) This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the Schedule. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

(b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum."

(c) Except for any limitations on quantities in the Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

I-5

BNIF 00000319

HSFEHQ-05-D-0573                    SECTION I

(d) Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after .

## I.7 52.217-8 OPTION TO EXTEND SERVICES (NOV 1999)

The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within .

## I.8 52.222-21 PROHIBITION OF SEGREGATED FACILITIES (FEB 1999)

(a) Segregated facilities, as used in this clause, means any waiting rooms, work areas, rest rooms and wash rooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees, that are segregated by explicit directive or are in fact segregated on the basis of race, color, religion, sex, or national origin because of written or oral policies or employee custom. The term does not include separate or single-user rest rooms or necessary dressing or sleeping areas provided to assure privacy between the sexes.

(b) The Contractor agrees that it does not and will not maintain or provide for its employees any segregated facilities at any of its establishments, and that it does not and will not permit its employees to perform their services at any location under its control where segregated facilities are maintained. The Contractor agrees that a breach of this clause is a violation of the Equal Opportunity clause in this contract.

(c) The Contractor shall include this clause in every subcontract and purchase order that is subject to the Equal Opportunity clause of this contract.

## I.9 52.222-41 SERVICE CONTRACT ACT OF 1965, AS AMENDED (JUL 2005)

(a) Definitions. "Act," as used in this clause, means the Service Contract Act of 1965, as amended (41 U.S.C. 351, et seq.).

"Contractor," as used in this clause or in any subcontract, shall be deemed to refer to the subcontractor, except in the term "Government Prime Contractor."

"Service employee," as used in this clause, means any person engaged in the performance of this contract other than any person employed in a bona fide executive, administrative, or professional capacity, as these terms are defined in Part 541 of Title 29, Code of Federal Regulations, as revised. It includes all such persons regardless of any contractual relationship that may be alleged to exist between a Contractor or subcontractor and such persons.

(b) Applicability. This contract is subject to the following provisions and to all other applicable provisions of the Act and regulations of the Secretary of Labor (29 CFR Part 4). This clause does not apply to contracts or subcontracts

I-6

BNIF 00000320

HSFEHQ-05-D-0573         SECTION I

administratively exempted by the Secretary of Labor or exempted by 41 U.S.C. 356, as interpreted in Subpart C of 29 CFR Part 4.

(c) Compensation. (1) Each service employee employed in the performance of this contract by the Contractor or any subcontractor shall be paid not less than the minimum monetary wages and shall be furnished fringe benefits in accordance with the wages and fringe benefits determined by the Secretary of Labor, or authorized representative, as specified in any wage determination attached to this contract.

(2)(i) If a wage determination is attached to this contract, the Contractor shall classify any class of service employee which is not listed therein and which is to be employed under the contract (i.e., the work to be performed is not performed by any classification listed in the wage determination) so as to provide a reasonable relationship (i.e., appropriate level of skill comparison) between such unlisted classifications and the classifications listed in the wage determination. Such conformed class of employees shall be paid the monetary wages and furnished the fringe benefits as are determined pursuant to the procedures in this paragraph (c).

(ii) This conforming procedure shall be initiated by the Contractor prior to the performance of contract work by the unlisted class of employee. The Contractor shall submit Standard Form (SF) 1444, Request for Authorization of Additional Classification and Rate, to the Contracting Officer no later than 30 days after the unlisted class of employee performs any contract work. The Contracting Officer shall review the proposed classification and rate and promptly submit the completed SF 1444 (which must include information regarding the agreement or disagreement of the employees' authorized representatives or the employees themselves together with the agency recommendation), and all pertinent information to the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor. The Wage and Hour Division will approve, modify, or disapprove the action or render a final determination in the event of disagreement within 30 days of receipt or will notify the Contracting Officer within 30 days of receipt that additional time is necessary.

(iii) The final determination of the conformance action by the Wage and Hour Division shall be transmitted to the Contracting Officer who shall promptly notify the Contractor of the action taken. Each affected employee shall be furnished by the Contractor with a written copy of such determination or it shall be posted as a part of the wage determination.

(iv)(A) The process of establishing wage and fringe benefit rates that bear a reasonable relationship to those listed in a wage determination cannot be reduced to any single formula. The approach used may vary from wage determination to wage determination depending on the circumstances. Standard wage and salary administration practices which rank various job classifications by pay grade pursuant to point schemes or other job factors may, for example, be relied upon. Guidance may also be obtained from the way different jobs are rated under Federal pay systems (Federal Wage Board Pay System and the General Schedule) or from other wage determinations issued in the same locality. Basic to the establishment of any conformable wage rate(s) is the concept that a pay relationship should be maintained between job classifications based on the skill required and the duties performed.

(B) In the case of a contract modification, an exercise of an option, or extension of an existing contract, or in any other case where a Contractor succeeds a contract under which the classification in question was previously conformed pursuant to paragraph (c) of this clause, a new conformed wage rate and fringe benefits may be assigned to the conformed classification by indexing (i.e., adjusting) the previous conformed rate and fringe benefits by an amount equal to the average (mean) percentage increase (or decrease, where appropriate) between the wages and fringe benefits specified for all classifications to be used on the contract which are listed in the current wage determination, and those specified for the corresponding classifications in the previously applicable wage determination. Where conforming actions are accomplished in accordance with this paragraph prior to the performance of contract work by the unlisted class of employees, the Contractor shall advise the Contracting Officer of the action taken but the other procedures in subdivision (c)(2)(ii) of this clause need not be followed.

(C) No employee engaged in performing work on this contract shall in any event be paid less than the currently applicable minimum wage specified under section (6)(a)(1) of the Fair Labor Standards Act of 1938, as amended.

BNIF 00000321

HSFEHQ-05-D-0573              SECTION I

(v) The wage rate and fringe benefits finally determined under this subparagraph (c)(2) of this clause shall be paid to all employees performing in the classification from the first day on which contract work is performed by them in the classification. Failure to pay the unlisted employees the compensation agreed upon by the interested parties and/or finally determined by the Wage and Hour Division retroactive to the date such class of employees commenced contract work shall be a violation of the Act and this contract.

(vi) Upon discovery of failure to comply with subparagraph (c)(2) of this clause, the Wage and Hour Division shall make a final determination of conformed classification, wage rate, and/or fringe benefits which shall be retroactive to the date such class or classes of employees commenced contract work.

(3) Adjustment of Compensation. If the term of this contract is more than 1 year, the minimum monetary wages and fringe benefits required to be paid or furnished thereunder to service employees under this contract shall be subject to adjustment after 1 year and not less often than once every 2 years, under wage determinations issued by the Wage and Hour Division.

(d) Obligation to Furnish Fringe Benefits. The Contractor or subcontractor may discharge the obligation to furnish fringe benefits specified in the attachment or determined under subparagraph (c)(2) of this clause by furnishing equivalent combinations of bona fide fringe benefits, or by making equivalent or differential cash payments, only in accordance with Subpart D of 29 CFR Part 4.

(e) Minimum Wage. In the absence of a minimum wage attachment for this contract, neither the Contractor nor any subcontractor under this contract shall pay any person performing work under this contract (regardless of whether the person is a service employee) less than the minimum wage specified by section 6(a)(1) of the Fair Labor Standards Act of 1938. Nothing in this clause shall relieve the Contractor or any subcontractor of any other obligation under law or contract for payment of a higher wage to any employee.

(f) Successor Contracts. If this contract succeeds a contract subject to the Act under which substantially the same services were furnished in the same locality and service employees were paid wages and fringe benefits provided for in a collective bargaining agreement, in the absence of the minimum wage attachment for this contract setting forth such collectively bargained wage rates and fringe benefits, neither the Contractor nor any subcontractor under this contract shall pay any service employee performing any of the contract work (regardless of whether or not such employee was employed under the predecessor contract), less than the wages and fringe benefits provided for in such collective bargaining agreement, to which such employee would have been entitled if employed under the predecessor contract, including accrued wages and fringe benefits and any prospective increases in wages and fringe benefits provided for under such agreement. No Contractor or subcontractor under this contract may be relieved of the foregoing obligation unless the limitations of 29 CFR 4.1b(b) apply or unless the Secretary of Labor or the Secretary's authorized representative finds, after a hearing as provided in 29 CFR 4.10 that the wages and/or fringe benefits provided for in such agreement are substantially at variance with those which prevail for services of a character similar in the locality, or determines, as provided in 29 CFR 4.11, that the collective bargaining agreement applicable to service employees employed under the predecessor contract was not entered into as a result of arm's length negotiations. Where it is found in accordance with the review procedures provided in 29 CFR 4.10 and/or 4.11 and Parts 6 and 8 that some or all of the wages and/or fringe benefits contained in a predecessor Contractor's collective bargaining agreement are substantially at variance with those which prevail for services of a character similar in the locality, and/or that the collective bargaining agreement applicable to service employees employed under the predecessor contract was not entered into as a result of arm's length negotiations, the Department will issue a new or revised wage determination setting forth the applicable wage rates and fringe benefits. Such determination shall be made part of the contract or subcontract, in accordance with the decision of the Administrator, the Administrative Law Judge, or the Board of Service Contract Appeals, as the case may be, irrespective of whether such issuance occurs prior to or after the award of a contract or subcontract (53 Comp. Gen. 401 (1973)). In the case of a wage determination issued solely as a result of a finding of substantial variance, such determination shall be effective as of the date of the final administrative decision.

(g) Notification to Employees. The Contractor and any subcontractor under this contract shall notify each service employee commencing work on this contract of the minimum monetary wage and any fringe benefits required to be paid pursuant to this contract, or shall post the wage determination attached to this contract. The poster provided by the

                                                                                    I-8

HSFEHQ-05-D-0573          SECTION I

Department of Labor (Publication WH 1313) shall be posted in a prominent and accessible place at the worksite. Failure to comply with this requirement is a violation of section 2(a)(4) of the Act and of this contract.

(h) Safe and Sanitary Working Conditions. The Contractor or subcontractor shall not permit any part of the services called for by this contract to be performed in buildings or surroundings or under working conditions provided by or under the control or supervision of the Contractor or subcontractor which are unsanitary, hazardous, or dangerous to the health or safety of the service employees. The Contractor or subcontractor shall comply with the safety and health standards applied under 29 CFR Part 1925.

(i) Records. (1) The Contractor and each subcontractor performing work subject to the Act shall make and maintain for 3 years from the completion of the work, and make them available for inspection and transcription by authorized representatives of the Wage and Hour Division, Employment Standards Administration, a record of the following:

(i) For each employee subject to the Act –

(A) Name and address and social security number;

(B) Correct work classification or classifications, rate or rates of monetary wages paid and fringe benefits provided, rate or rates of payments in lieu of fringe benefits, and total daily and weekly compensation;

(C) Daily and weekly hours worked by each employee; and

(D) Any deductions, rebates, or refunds from the total daily or weekly compensation of each employee.

(ii) For those classes of service employees not included in any wage determination attached to this contract, wage rates or fringe benefits determined by the interested parties or by the Administrator or authorized representative under the terms of paragraph (c) of this clause. A copy of the report required by subdivision (c)(2)(ii) of this clause will fulfill this requirement.

(iii) Any list of the predecessor Contractor's employees which had been furnished to the Contractor as prescribed by paragraph (n) of this clause.

(2) The Contractor shall also make available a copy of this contract for inspection or transcription by authorized representatives of the Wage and Hour Division.

(3) Failure to make and maintain or to make available these records for inspection and transcription shall be a violation of the regulations and this contract, and in the case of failure to produce these records, the Contracting Officer, upon direction of the Department of Labor and notification to the Contractor, shall take action to cause suspension of any further payment or advance of funds until the violation ceases.

(4) The Contractor shall permit authorized representatives of the Wage and Hour Division to conduct interviews with employees at the worksite during normal working hours.

(j) Pay Periods. The Contractor shall unconditionally pay to each employee subject to the Act all wages due free and clear and without subsequent deduction (except as otherwise provided by law or Regulations, 29 CFR Part 4), rebate, or kickback on any account. These payments shall be made no later than one pay period following the end of the regular pay period in which the wages were earned or accrued. A pay period under this Act may not be of any duration longer than semi-monthly.

(k) Withholding of Payments and Termination of Contract. The Contracting Officer shall withhold or cause to be withheld from the Government Prime Contractor under this or any other Government contract with the Prime Contractor such sums as an appropriate official of the Department of Labor requests or such sums as the Contracting Officer decides may be necessary to pay underpaid employees employed by the Contractor or subcontractor. In the event of failure to pay any employees subject to the Act all or part of the wages or fringe benefits due under the Act, the Contracting Officer

I-9

BNIF 00000323

may, after authorization or by direction of the Department of Labor and written notification to the Contractor, take action to cause suspension of any further payment or advance of funds until such violations have ceased. Additionally, any failure to comply with the requirements of this clause may be grounds for termination of the right to proceed with the contract work. In such event, the Government may enter into other contracts or arrangements for completion of the work, charging the Contractor in default with any additional cost.

(l) Subcontracts. The Contractor agrees to insert this clause in all subcontracts subject to the Act.

(m) Collective Bargaining Agreements Applicable to Service Employees. If wages to be paid or fringe benefits to be furnished any service employees employed by the Government Prime Contractor or any subcontractor under the contract are provided for in a collective bargaining agreement which is or will be effective during any period in which the contract is being performed, the Government Prime Contractor shall report such fact to the Contracting Officer, together with full information as to the application and accrual of such wages and fringe benefits, including any prospective increases, to service employees engaged in work on the contract, and a copy of the collective bargaining agreement. Such report shall be made upon commencing performance of the contract, in the case of collective bargaining agreements effective at such time, and in the case of such agreements or provisions or amendments thereof effective at a later time during the period of contract performance such agreements shall be reported promptly after negotiation thereof.

(n) Seniority List. Not less than 10 days prior to completion of any contract being performed at a Federal facility where service employees may be retained in the performance of the succeeding contract and subject to a wage determination which contains vacation or other benefit provisions based upon length of service with a Contractor (predecessor) or successor (29 CFR 4.173), the incumbent Prime Contractor shall furnish the Contracting Officer a certified list of the names of all service employees on the Contractor's or subcontractor's payroll during the last month of contract performance. Such list shall also contain anniversary dates of employment on the contract either with the current or predecessor Contractors of each such service employee. The Contracting Officer shall turn over such list to the successor Contractor at the commencement of the succeeding contract.

(o) Rulings and Interpretations. Rulings and interpretations of the Act are contained in Regulations, 29 CFR Part 4.

(p) Contractor's Certification. (1) By entering into this contract, the Contractor (and officials thereof) certifies that neither it (nor he or she) nor any person or firm who has a substantial interest in the Contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of the sanctions imposed under section 5 of the Act.

(2) No part of this contract shall be subcontracted to any person or firm ineligible for award of a Government contract under section 5 of the Act.

(3) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

(q) Variations, Tolerances, and Exemptions Involving Employment. Notwithstanding any of the provisions in paragraphs (b) through (o) of this clause, the following employees may be employed in accordance with the following variations, tolerances, and exemptions, which the Secretary of Labor, pursuant to section 4(b) of the Act prior to its amendment by Pub. L. 92-473, found to be necessary and proper in the public interest or to avoid serious impairment of the conduct of Government business.

(1) Apprentices, student-learners, and workers whose earning capacity is impaired by age, physical or mental deficiency or injury may be employed at wages lower than the minimum wages otherwise required by section 2(a)(1) or 2(b)(1) of the Act without diminishing any fringe benefits or cash payments in lieu thereof required under section 2(a)(2) of the Act, in accordance with the conditions and procedures prescribed for the employment of apprentices, student-learners, handicapped persons, and handicapped clients of sheltered workshops under section 14 of the Fair Labor Standards Act of 1938, in the regulations issued by the Administrator (29 CFR Parts 520, 521, 524, and 525).

(2) The Administrator will issue certificates under the Act for the employment of apprentices, student-learners, handicapped persons, or handicapped clients of sheltered workshops not subject to the Fair Labor Standards Act of 1938, or subject to different minimum rates of pay under the two acts, authorizing appropriate rates of minimum wages (but

BNIF 00000324

HSFEHQ-05-D-0573 **SECTION I**

without changing requirements concerning fringe benefits or supplementary cash payments in lieu thereof), applying procedures prescribed by the applicable regulations issued under the Fair Labor Standards Act of 1938 (29 CFR Parts 520, 521, 524, and 525).

(3) The Administrator will also withdraw, annul, or cancel such certificates in accordance with the regulations in 29 CFR Parts 525 and 528.

(r) Apprentices. Apprentices will be permitted to work at less than the predetermined rate for the work they perform when they are employed and individually registered in a bona fide apprenticeship program registered with a State Apprenticeship Agency which is recognized by the U.S. Department of Labor, or if no such recognized agency exists in a State, under a program registered with the Office of Apprenticeship Training, Employer, and Labor Services (OATELS), U.S. Department of Labor. Any employee who is not registered as an apprentice in an approved program shall be paid the wage rate and fringe benefits contained in the applicable wage determination for the journeyman classification of work actually performed. The wage rates paid apprentices shall not be less than the wage rate for their level of progress set forth in the registered program, expressed as the appropriate percentage of the journeyman's rate contained in the applicable wage determination. The allowable ratio of apprentices to journeymen employed on the contract work in any craft classification shall not be greater than the ratio permitted to the Contractor as to his entire work force under the registered program.

(s) Tips. An employee engaged in an occupation in which the employee customarily and regularly receives more than $30 a month in tips may have the amount of these tips credited by the employer against the minimum wage required by section 2(a)(1) or section 2(b)(1) of the Act, in accordance with section 3(m) of the Fair Labor Standards Act and Regulations 29 CFR Part 531. However, the amount of credit shall not exceed $1.34 per hour beginning January 1, 1981. To use this provision -

(1) The employer must inform tipped employees about this tip credit allowance before the credit is utilized;

(2) The employees must be allowed to retain all tips (individually or through a pooling arrangement and regardless of whether the employer elects to take a credit for tips received);

(3) The employer must be able to show by records that the employee receives at least the applicable Service Contract Act minimum wage through the combination of direct wages and tip credit; and

(4) The use of such tip credit must have been permitted under any predecessor collective bargaining agreement applicable by virtue of section 4(c) of the Act.

(t) Disputes Concerning Labor Standards. The U.S. Department of Labor has set forth in 29 CFR Parts 4, 6, and 8 procedures for resolving disputes concerning labor standards requirements. Such disputes shall be resolved in accordance with those procedures and not the Disputes clause of this contract. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

## I.10 52.222-42 STATEMENT OF EQUIVALENT RATES FOR FEDERAL HIRES (MAY 1989)

In compliance with the Service Contract Act of 1965, as amended, and the regulations of the Secretary of Labor (29 CFR Part 4), this clause identifies the classes of service employees expected to be employed under the contract and states the wages and fringe benefits payable to each if they were employed by the contracting agency subject to the provisions of 5 U.S.C. 5341 or 5332.

I-11

BNIF 00000325

HSFEHQ-05-D-0573           SECTION I

This Statement is for Information Only: It is not a Wage Determination.

| Employee Class | Monetary Wage – Fringe Benefits |
|---|---|
| Plumber | $11.58 |
| Electrician | $11.81 |
| Laborer | $6.07 |
| Carpenter | $12.35 |

## I.11  52.222-49  SERVICE CONTRACT ACT – PLACE OF PERFORMANCE UNKNOWN  (MAY 1989)

(a) This contract is subject to the Service Contract Act, and the place of performance was unknown when the solicitation was issued. In addition to places or areas identified in wage determinations, if any, attached to the solicitation, wage determinations have also been requested for the following: NONE.  The Contracting Officer will request wage determinations for additional places or areas of performance if asked to do so in writing on or before the expiration date of the contract.

(b) Offerors who intend to perform in a place or area of performance for which a wage determination has not been attached or requested may nevertheless submit bids or proposals. However, a wage determination shall be requested and incorporated in the resultant contract retroactive to the date of contract award, and there shall be no adjustment in the contract price.

## I.12  52.225-9  BUY AMERICAN ACT--CONSTRUCTION MATERIALS  (JAN 2005)

(a) Definitions. As used in this clause—

Component means any article, material, or supply incorporated directly into construction materials.

Construction material means an article, material, or supply brought to the construction site by the Contractor or a subcontractor for incorporation into the building or work. The term also includes an item brought to the site preassembled from articles, materials, or supplies. However, emergency life safety systems, such as emergency lighting, fire alarm, and audio evacuation systems, that are discrete systems incorporated into a public building or work and that are produced as complete systems, are evaluated as a single and distinct construction material regardless of when or how the individual parts or components of those systems are delivered to the construction site. Materials purchased directly by the Government are supplies, not construction material.

Cost of components means—

I-12

BNIF 00000326

HSFEBQ-05-D-0573          **SECTION I**

(1) For components purchased by the Contractor, the acquisition cost, including transportation costs to the place of incorporation into the end product (whether or not such costs are paid to a domestic firm), and any applicable duty (whether or not a duty-free entry certificate is issued); or

(2) For components manufactured by the Contractor, all costs associated with the manufacture of the component, including transportation costs as described in paragraph (1) of this definition, plus allocable overhead costs, but excluding profit. Cost of components does not include any costs associated with the manufacture of the construction material.

Domestic construction material means—

(1) An unmanufactured construction material mined or produced in the United States; or

(2) A construction material manufactured in the United States, if the cost of its components mined, produced, or manufactured in the United States exceeds 50 percent of the cost of all its components. Components of foreign origin of the same class or kind for which nonavailability determinations have been made are treated as domestic.

Foreign construction material means a construction material other than a domestic construction material.

United States means the 50 States, the District of Columbia, and outlying areas.

(b) Domestic preference. (1) This clause implements the Buy American Act (41 U.S.C. 10a-10d) by providing a preference for domestic construction material. The Contractor shall use only domestic construction material in performing this contract, except as provided in paragraphs (b)(2) and (b)(3) of this clause.

(2) This requirement does not apply to the construction material or components listed by the Government as follows:

NONE

(3) The Contracting Officer may add other foreign construction material to the list in paragraph (b)(2) of this clause if the Government determines that

(i) The cost of domestic construction material would be unreasonable. The cost of a particular domestic construction material subject to the requirements of the Buy American Act is unreasonable when the cost of such material exceeds the cost of foreign material by more than 6 percent;

(ii) The application of the restriction of the Buy American Act to a particular construction material would be impracticable or inconsistent with the public interest; or

(iii) The construction material is not mined, produced, or manufactured in the United States in sufficient and reasonably available commercial quantities of a satisfactory quality.

(c) Request for determination of inapplicability of the Buy American Act.

(1)(i) Any Contractor request to use foreign construction material in accordance with paragraph (b)(3) of this clause shall include adequate information for Government evaluation of the request, including—

(A) A description of the foreign and domestic construction materials;

(B) Unit of measure;

(C) Quantity;

(D) Price;

I-13

BNIF 00000327