UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-5"<br><br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

**THIS DOCUMENT IS RELATED:**
*Lionel Simmons v. Keystone RV Company, et al.,* EDLA 09-5904
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### FIRST SUPPLEMENTAL AND AMENDED PETITION

Lionel Simmons, through undersigned counsel, respectfully supplements and amends his Original Petition, herein, by seeking to name the United States of America, through the Federal Emergency Management Agency, as a defendant in the above captioned matter through the following:

1. By supplementing and amending paragraph II to add an additional defendant to read as follows:

    E. The Defendant United States of America is sued herein as acting through the Federal Emergency Management Agency (FEMA), and both are referred to interchangeably herein as the "Federal Government," "Government" and/or "FEMA".

2. By adding the following additional paragraphs as paragraphs IIIa-b to read as follows:

IIIa.

This Court has subject matter jurisdiction over the United States of America and FEMA pursuant to 28 U.S.C. §§1346 and 2671, *et seq.*

IIIb.

Upon information and belief, each named plaintiff has filed a timely administrative claim pursuant to the Federal Tort Claims Act. Plaintiff has received final disposition of his claim within the past six months.

3. By adding the following additional paragraphs as paragraphs XXXa-gg to read as follows:

XXXa.

The Federal Government has been aware for years that formaldehyde is used in certain construction materials used in manufactured housing, has regulated emissions standards for HUD-regulated mobile homes, has, since the hurricanes, adopted the HUD emissions regulations for travel trailer purchase specifications, and has known for over thirty years of the relationship between formaldehyde emissions in indoor environments and health problems associated therewith.  *See* Statement of R. David Paulison, Administrator, Federal Emergency Management Agency, Department of Homeland Security, before the Committee on Oversight and Government Reform, U.S. House of Representatives, July 19, 2007, *available at* http://oversight.house.gov/documents/20070719131219.pdf.

XXXb.

Although, as alleged above, FEMA has long been aware of the presence of formaldehyde in certain construction materials used in manufactured housing, including these housing units, and specifically was aware of the published dangers associated with the "out" or "off-gassing" or the gradual release into the atmosphere of formaldehyde, upon information and belief, in March of 2006, a family in Mississippi reported the results of independent testing and health complaints which they related to high levels of formaldehyde.

XXXc.

In fact, the Federal Government was conducting initial formaldehyde air sampling of the subject housing units at FEMA staging facilities in Mississippi as early as October 11, 2005 and as late as Jan. 17, 2006. The sampling results showed that the levels detected in nearly every trailer exceeded the ATDSR minimum risk levels associated with exposures up to and exceeding 14 days, that most levels exceeded the EPA recognized level at which acute health effects can manifest, and that several exceeded the OSHA workplace maximum levels. *See* Response of the U.S. Department of Labor, Occupational Safety and Health Administration to Freedom of Information Act Request submitted by a plaintiff herein, November 16, 2007.

XXXd.

Nonetheless, even though the Government was actively testing for and aware of the dangerous levels of formaldehyde present in housing units scheduled for delivery to the victims of Hurricanes Katrina and/or Rita ("Hurricane Victims"), the Inspector General of the Department of Homeland Security, testifying before the Committee on Homeland Security and Governmental Affairs of the United States Senate, approximated that as of February 13, 2006, a little under six months post-Katrina, 75,000 travel trailers had been delivered to Hurricane Victims. *See* Statement of Richard L. Skinner, Inspector General, U.S. Department of Homeland Security Before the Committee on Homeland Security and Governmental Affairs, U.S. Senate, February 13, 2006, *available at* http://www.dhs.gov/xlibrary/assets/Skinner-021306.pdf.

XXXe.

The Federal Government also continued to supply the defective and dangerous housing units after March of 2006.

XXXf.

3

The Federal Government continued to supply the defective and dangerous housing units even though the Sierra Club publicly announced the initiation of its own testing of occupied housing units and, in April of 2006, reported the results which reflected formaldehyde levels above the threshold that the EPA warns can cause acute health effects in humans in 83% of the trailers tested. Union of Concerned Scientists, *supra*.

XXXg.

The Federal Government continued to supply the defective and dangerous housing units even though the Federal Government, through FEMA, in March of 2006, conducted formaldehyde testing of unoccupied housing units at the Purvis, Mississippi staging area, and tested and obtained the results of an occupied Mississippi trailer on April 6, 2006, which reflected the presence of formaldehyde at twelve times the EPA's value. Union of Concerned Scientists, *supra*, and Exhibits B (*available at* http://oversight.house.gov/documents/20070719113015.pdf) and D (*available at* http://oversight.house.gov/documents/20070719113219.pdf) attached thereto.

XXXh.

The Federal Government continued to supply the defective and dangerous housing units even though the Federal Government had been notified on a number of occasions in May and June 2006 regarding residents' concerns over formaldehyde emissions in their housing units. Union of Concerned Scientists, *supra*, and Exhibits E (*available at* http://oversight.house.gov/documents/20070719113322.pdf), I (*available at* http://oversight.house.gov/documents/20070719113515.pdf) and M (*available at* http://oversight.house.gov/documents/20070719113728.pdf) attached thereto.

XXXi.

While complaints of formaldehyde exposure continued to be reported to the Federal Government and evidence supporting the existence of dangerous levels of formaldehyde present in the housing units was uncovered, the Federal Government intentionally avoided undertaking any comprehensive testing of their own because it wanted to avoid liability for the problem, as stated in emails from the FEMA Office of General Counsel (OGC) in June of 2006, "Do not initiate any testing until we give the OK. While I agree that we should conduct testing, we should not do so until we are fully prepared to respond to the results. Once you get results and should they indicate some problem, the clock is ticking on our duty to respond to them." Another email repeats these concerns, reading "OGC has advised that we do not do testing, which would imply FEMA's ownership of the issue." Union of Concerned Scientists, *supra*, and Supplemental A (various emails *available at* http://oversight.house.gov/documents/20070809120917.pdf) and Supplemental B (various emails *available at* http://oversight.house.gov/documents/20070809120940.pdf) attached thereto.

XXXj.

The Named Plaintiff avers that, even as the Plaintiff was being placed at risk in unsafe temporary housing, the Federal Government had reviewed the results of all earlier testing and complaints of formaldehyde associated with the housing units and were actively conferring with one or more of the manufacturers concerning formaldehyde exposure in the housing units and how best to deal with the publicity fall-out as the media reports of same increased.

XXXk.

FEMA participated in an inter-agency meeting with the EPA and the Centers for Disease Control and Prevention (CDC) in July of 2006, during which senior EPA officials advised FEMA that the "health base level" for formaldehyde might be much lower than previously

5

expected, with anticipated levels being more than 100 times higher. The discussions during this conference were more "strategic" in nature, with the EPA warning against the "the advisability of testing at all" concerned that the data would have to be released to the public and that the media would characterize the findings in the worst possible light. Union of Concerned Scientists, *supra*, and Exhibit R (various emails *available at* http://oversight.house.gov/documents/20070719114058.pdf) attached thereto.

XXXl.

FEMA and EPA senior leadership instead agreed to test ventilation methods on unoccupied trailers. This testing methodology completely failed to simulate the living conditions of a trailer resident, so results, which would not be released for another seven to eight months, were useless for determining a policy to protect trailer residents. This testing was conducted by FEMA and EPA in September and October of 2006 at a trailer staging area located in Baton Rouge, Louisiana. Union of Concerned Scientists, and Exhibit R attached thereto, *supra*. *See also* Original Health Consultation: Formaldehyde Sampling at FEMA Temporary Housing Units, Agency for Toxic Substances and Disease Registry, Feb 1, 2007, *available at*http://www.atsdr.cdc.gov/HAC/pha/fema_housing_formaldehyde/formaldehyde_report_0507.pdf.

XXXm.

This testing methodology did not simulate the living conditions, temperatures, humidities, standard ventilation practices, or timescales at which residents lived in the trailers. It also did not take into account that the trailer building materials continue to emit formaldehyde for four to five years. Union of Concerned Scientists, *supra*.

XXXn.

FEMA and FEMA's lawyers purposefully interfered with the design and implementation of the earlier testing of the housing units supplied in the wake of the hurricanes in order to avoid legal liability for injuries to Plaintiff herein as a result of their exposure to formaldehyde. FEMA's activities, which included hiding, manipulating and ignoring the extant science and scientific work and concerns of federal scientists in other agencies, began immediately after FEMA began to receive complaints from trailer residents concerning formaldehyde fumes in 2006. *See* correspondence from U.S. House of Representatives, Committee on Science and Technology, to Michael Chertoff, Secretary, U.S. Department of Homeland Security, January 28, 2008.

XXXo.

FEMA further manipulated the governmental testing by involving a little-known office of the CDC, the ATSDR, to analyze the testing data, and explicitly sought to ensure that no long-term exposure considerations would be included in the health consultation by removing the consultation from the normal ATSDR review process so that scientists who had specifically recommended looking at long-term exposure effects were excluded from the review. FEMA did so in order to avoid negative publicity and legal liability in connection with the presence of formaldehyde in the housing units. *See* correspondence from U.S. House of Representatives, Committee on Science and Technology, to Michael Chertoff, January 28, 2008 and to Dr. Howard Frumkin, Director, National Center for Environmental Health/Agency for Toxic Substances and Disease Registry, January 28, 2008.

XXXp.

FEMA's manipulation of the data was evidenced in the testing designed and implemented by FEMA through the ATSDR in July of 2006. The testing results of the study showed high

7

levels of formaldehyde in nearly all of the trailers, yet the ATSDR, at FEMA's urging, did not use as its "level of concern" its own exposure limit of 0.008 ppm for 365 days or more, but arbitrarily chose a limit of 0.3 ppm as its "level of concern," a level nearly 400 times the ATSDR's annualized exposure limit. Yet even applying this "level of concern," the average sampling results still were higher. *See* THE SERIOUS PUBLIC HEALTH ISSUES RESULTING FROM FORMALDEHYDE EXPOSURES WITHIN FEMA TRAVEL TRAILERS ISSUED HURRICANE DISASTER VICTIMS, AND RECOMMENDED ACTION ITEMS, Testimony of Mary C. DeVany before the Committee on Oversight and Government Reform, U.S. House of Representatives, July 19, 2007, at 7, *available at* http://oversight.house.gov/documents/20070719102502.pdf.

XXXq.

Indeed, in testimony before Congress, independent industrial hygienist Mary DeVany described the FEMA testing and analysis process by stating "All I can say, in my professional opinion, is that they did this in order to minimize the actual extent of the problems in these trailers. I have no other conclusion I can draw… I think it was a complete violation of our professional code of ethics." Oral testimony of Mary C. DeVany before the House Committee on Oversight and Governmental Reform. July 19, 2007 at 107-108 of the full hearing transcript, *available at* http://oversight.house.gov/documents/20071114164004.pdf.

XXXr.

On March 17, 2007, Dr. Mark Klein, of the ATSDR, at the direction of Dr. Frumkin, sent a letter to FEMA's counsel advising, as had Dr. DeRosa, that the February Health Consultation was "possibly misleading and a threat to public health" for failure to disclose the carcinogenic status of formaldehyde and that there are no safe exposure levels.

XXXs.

Despite this information, FEMA and the ATSDR did not revise the original Health Consultation until October of 2007 to include the warning that the original Health Consultation "did not sufficiently discuss the health implications of formaldehyde exposure and included language that may have been unclear, leading to potentially incorrect or inappropriate conclusions." *See* An Update and Revision of ATSDR's February 2007 Health Consultation: Formaldehyde Sampling of FEMA Temporary-Housing Trailers; Baton Rouge, Louisiana, September-October, 2006, *available at* http://www.atsdr.cdc.gov/substances/formaldehyde/public_assessment.html.

XXXt.

The Federal Government, through FEMA, deliberately ignored and/or rejected objective, scientific standards in the design and implementation of its testing procedures, which resulted in the prolongation of the Plaintiff's exposure to dangerous levels of formaldehyde in the housing units, and causing them serious injuries.

XXXu.

It was not until December of 2007 that the Federal Government initiated testing of occupied housing units. Apparently, FEMA requested the CDC to conduct testing of a random sample of 519 housing units in Louisiana and Mississippi between December 21, 2007 and January 23, 2008, the stated purpose of which was to assess levels of formaldehyde in indoor air occupied FEMA-supplied housing units. *See* Statement of Howard Frumkin, M.D., DrPH, Director, National Center for Environmental Health/Agency for Toxic Substances and Disease Registry, Centers for Disease Control and Prevention, U. S. Department of Health and Human Services, CDC'S RESPONSE TO HEALTH CONCERNS RELATED TO FEMA-PROVIDED TRAVEL TRAILERS AND MOBIL HOMES IN THE GULF COAST REGION, March 4, 2008, at 1, 3-4.

XXXv.

The CDC testing revealed the following important findings: (1) the formaldehyde levels were higher than typical levels of U.S. indoor exposure in single-family homes and apartments; (2) levels ranged from 3 parts per billion (ppb) to 590 ppb, with the average levels in all units measuring 77 ppb, the latter being higher than U. S. background levels in single-family homes and apartments; (3) the levels recorded in many of the units could affect the occupants' health; (4) the contemporary measured levels are likely to under-represent long-term exposures because formaldehyde levels tend to be higher in newer housing units and during warmer weather; (5) higher indoor temperatures were associated with higher formaldehyde levels, independent of unit make or model; and, (6) formaldehyde levels varied by type of housing unit (mobile home, park model, and travel trailer), but all types tested had elevated levels compared to the data on single-family homes and apartments. *Id.* at 4.

XXXw.

The CDC's recommendations as a result of this testing included the following: (1) move quickly to relocate residents before the weather in the region warms up; (2) FEMA and the CDC to consider establishment of a registry to conduct long-term health monitoring of children and others who resided in FEMA- provided housing units in the Gulf Coast Region; (3) families still living in FEMA-provided housing units should spend as much time outdoors as possible and maintain the temperature inside the units at the lowest comfortable level as well as ventilate the unit; and, (4) establish available construction practices which could assure safe and healthy conditions. *Id.* at 5-6, 11.

XXXy.

As a result of this round of testing, the Federal Government implemented a program which essentially entails removing the remaining residents from the subject housing units and placing them into other, safe, forms of housing. The Federal Government's action in this regard was the result of pressure imposed on it to act through various Congressional investigations into the Government's implementation of the "direct assistance" program under the Stafford Act, this litigation, and media coverage.

XXXz.

The Federal Government's actions with regard to the response to the early reports of formaldehyde emissions, hiding, manipulating and ignoring the extant science and scientific work and concerns of federal scientists in other agencies regarding its testing protocols and its public obfuscation of testing results, are not the kind of actions which involve decisions grounded in social, economic, or political policy. Rather, the Federal Government's actions and decisions were all made with a view toward avoiding negative publicity and legal liability.

XXXaa.

Additionally and/or in the alternative the Federal Government ignored, avoided and simply failed to adhere to and apply accepted professional and scientific standards in addressing and/or removing the health hazards posed by formaldehyde emissions in the housing units it provided.

XXXbb.

At all times herein, the Federal Government was under a duty to use due care and caution for the safety of the foreseeable users and occupants of the subject housing units, which duty extended to Named Plaintiff herein.

XXXcc.

11

The Federal Government was obligated to promptly warn Named Plaintiff of any defects in the housing unit which could cause harm and of which the Federal Government was aware.

XXXdd.

The Federal Government, after becoming aware of the potential for such harm, violated this duty to Named Plaintiff, rendering the Federal Government negligent, grossly negligent, reckless, willful and/or wanton.

XXXee.

As a direct and proximate result of the acts and/or omissions of the Federal Government, as well as its violation(s) of state and federal laws, Named Plaintiff has suffered, and will continue to suffer harm and injuries, and is entitled to recover damages from the Federal Government.

XXXff.

Further, since Plaintiff is within the class and category of individuals meant to be protected by the state and federal statutory and regulatory laws which the Federal Government violated, Plaintiff specifically pleads the application of the doctrine of negligence *per se.*

XXXgg.

The Federal Government was negligent and at fault in the following non-exclusive particulars:

    (i)    In failing to warn Named Plaintiff of the unreasonably dangerous nature of the housing unit which Plaintiff occupied.

    (ii)    In failing to promptly remedy the dangerous nature of each such housing unit, on becoming aware of the formaldehyde dangers associated with the unit.

      (iii)    In failing to timely implement adequate safety measures and procedures to address the defects in the housing unit of Named Plaintiff, on becoming aware of the formaldehyde danger associated with the unit.

      (iv)    Such other actions of negligence and fault as will be shown at the trial of this matter.

4. By supplementing and amending paragraph XXXV to reflect the addition of the United States as a defendant to read as follows:

### XXXV.

Plaintiff asserts his claims against Keystone, the Contractors, and FEMA under the laws of the State of Louisiana and under any other state and federal statutes which may be applicable.

5. By supplementing and amending paragraph XXXVI to reflect the addition of the United States as a defendant to read as follows:

### XXXVI.

Plaintiff is entitled to a trial by jury.

    WHEREFORE, Plaintiff prays that Keystone RV Company, the Contractors, and FEMA be served with a copy of this Petition for Damages and that after due proceedings are had, Plaintiff prays for judgment in his favor and against Defendants, Keystone RV Company, the Contractors, and FEMA, in an amount reasonable under the premises, together with legal interest thereon from the date of judicial demand, and for all costs of these proceedings, and for all appropriate legal and equitable relief, and for trial by jury.

WHEREFORE, Named Plaintiff respectfully supplements their original Petition in the foregoing respects, and otherwise reiterates and re-avers all of the allegations, claims and prayers for relief contained therein.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:  s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:     504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:     504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**
ANTHONY BUZBEE, Texas # 24001820
ROBERT BECNEL, #14072
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL WATTS, Texas # 20981820

**PLEASE SERVE**

The United States of America, Department of Justice
Through the United States Attorney General
Honorable Eric Holder
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

United States of America
Through the Office of the U.S. Attorney for the Eastern District of Louisiana
Jim Letten, United States Attorney
Hale Boggs Federal Building
500 Poydras Street, Suite B-210
New Orleans, LA 70130

Federal Emergency Management Agency (FEMA)
Through the Office of the Director
Craig Fugate, Director
500 C Street SW
Washington, DC 20472