UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                             MDL NO. 07-1873
       FORMALDEHYDE PRODUCTS
       LIABILITY LITIGATION

SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES

## **ORDER AND REASONS**

Before the Court is the Joint Motion of the Government's Contractors to Dismiss Plaintiffs' Third and Fourth Amended Master Complaint (Rec. Doc. 13421).[1] After reviewing the memoranda of the parties and the applicable law, the Court rules as set forth herein.

**I.     BACKGROUND**

The facts relating to the housing crisis created by Hurricanes Katrina and Rita and the Government's election to use emergency house units ("EHUs") to house displaced citizens have been briefed *ad nauseam* in this matter and will not be repeated herein. Because this motion is brought by Defendants, Bechtel National Inc. ("Bechtel"), CH2M Hill Constructors, Inc. ("CH2M Hill"), and Shaw Environmental, Inc. ("Shaw") (collectively, "the contractor defendants"), this background will focus on facts relating to these Individual Assistance/Technical Assistance Contract

---

[1] It is worth noting that, as the contractor defendants themselves recognize, this Court has previously decided motions similar to this one in this MDL. (See n. 2 to Rec. Doc. 13421).

("IA/TAC") contractors who were hired by the Government to deliver, install, and provide maintenance on certain EHUs.

The Federal Emergency Management Agency ("FEMA") awarded contracts to the contractor defendants, requiring them to be prepared to provide general contractor services for disaster relief anywhere in the United States, pursuant to individual task orders to be issued later by FEMA. (See Exhibits C, D, and E of Rec. Doc. 13421).

Exhibit 7 to the contracts relates to "Travel Trailer Installation." (See Exhibit 7 to Exhibit C of Rec. Doc. 13421, pp. 56-57 of 80; Exhibit 7 to Exhibit D of Rec. Doc. 13421, pp. 42-43 of 95; Exhibit 7 to Exhibit E, Part 1 of Rec. Doc. 13421, pp. 39-40 of 82). Specific to Blocking and Leveling, Exhibit 7 provides as follows for all three contracts:

> The Contractor shall clean away all grass roots, loose dirt, rocks or debris where at the base of the piers. Travel trailers shall be set-up on concrete piers and after the weigh [sic] of the travel trailer is transferred to the piers, if the unit is not leveled properly the contractor will reinstall the unit at no additional cost to the government. The travel trailer set-up will also include a minimum of six piers (three on each side) evenly spaced. The end piers should not be directly on the end of the unit, but approximately six inches off the edge of the unit. The Contractor shall provide a base for each pier. The base will be 3/4" x 24" x 24" exterior grade plywood. The piers will have at a minimum two solid cap blocks on the base and two sold cap blocks at the top of the piers.
>
> The space between the top of the pier's solid cap blocks and the bottom of the travel trailer I-beam frame shall not exceed seven inches (7"). Up to four inches (4") of this space may be filled with a solid concrete block laid parallel to the travel trailer steel I-beam frame. Up to three inches (3") of this space may be filled with blocking timber and wedges laid perpendicular to the travel trailer steel I-beam. No more than one inch (1") of this area shall be shimmed with wedges.
>
> After the weight of the travel trailer is transferred to the concrete piers, the piers must be vertically aligned and tightly shimmed with wooden wedges. If the piers are not vertical at the time of final inspection, they shall be removed and reinstalled by the Contractor at no additional cost. The

> Contractor will be responsible for all necessary re-leveling and re-blocking of the travel trailer for a period of 90 days after final inspection.

(*Id.*).

In the instant motion to dismiss, the contractor defendants assert that Plaintiffs' own allegations establish the "government contractor defense." The movants argue that Plaintiffs' pleadings show the Government issued reasonably precise specifications, accepted its contractors' work, and elected to continue using its contractors' work even after the contractors warned the Government about the precise risk of which Plaintiffs now complain. Alternatively, the contractor defendants argue that the Court should dismiss Plaintiffs' claims under Rule 12(b)(6) of the Federal Rules of Civil procedure. In that respect, the contractor defendants urge that Plaintiffs' own facts provide far more likely explanations for the harms of which they complain. Thus, they assert that the Court should dismiss Plaintiffs' Third and Fourth Administrative Master Complaints ("AMCs") for failure to state a plausible claim for relief.

Plaintiffs, on the other hand, note that this Court has already ruled that the government's approval of "reasonably precise specifications" was not satisfied because the aspect of the jacking procedure was left to the discretion of the contractor. Plaintiffs have specifically pled that the means and methods of jacking up the EHUs was a major cause in increasing formaldehyde exposure. Plaintiffs assert that, for this reason alone, the instant motion must be denied. Plaintiffs also claim that there is ample evidence suggesting that FEMA's guidelines obligated and regularly repeated the requirement that the contractors perform their work in compliance with professional engineering standards and with state and local laws. Plaintiffs contend that there is no evidence to suggest otherwise (i.e., that the contractors were obliged to perform their work in a manner that necessitated disregard for Louisiana state law duty of due care).

3

## II. LAW AND ANALYSIS

### A. Legal Standard - Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1959 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996).

### B. ANALYSIS

In order for a contractor to claim the government contractor defense, "(1) the government must have approved 'reasonably precise' specifications; (2) the equipment must have conformed to those specifications; and (3) the supplier/contractor must have warned of those equipment dangers that were known to the supplier/contractor but not to the government." *Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000), citing *Boyle v. United Tech. Corp.*, 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). This shield is derived from the government's immunity from suit where the performance of a discretionary function is at issue. *Kerstetter*, 210 F.3d at 435.

For many of the same reasons the undersigned detailed in the September 10, 2009 Order and Reasons (Rec. Doc. 3205), the Court again concludes that the first element in the *Boyle* test, requiring the Government's approval of "reasonably precise specifications," is not satisfied. While the Government gave the contractor defendants detailed specifications on the EHU "blocking"

procedure, one critically important aspect of that procedure that was left to their discretion was the means and method for "jacking up" the EHUs (i.e., for lifting the EHU from the ground up onto concrete blocks). While the Court recognizes that the "reasonably precise specifications" requirement does not translate to "exactly" precise specifications, a crucial part of the blocking process here was left entirely to the discretion of the contractor defendants (i.e., how to raise the EHU off the ground onto the concrete blocks). Further, it is this specific process that Plaintiffs assert caused or substantially contributed to the increased release of formaldehyde emissions. (See Rec. Doc. 4486, ¶299). As noted in its September 10, 2009 Order and Reasons (Rec. Doc. 3205), there are likely many different ways and techniques to go about lifting the EHU from the ground to the concrete blocks and many different tools, materials, machines and mechanisms that can be utilized to accomplish this - some likely better than others.

Because the Government left this procedure entirely to the discretion of contractor defendants, the government contractor defense is unavailable to them with regard to Plaintiffs' claims of improper installation. Thus, this motion, which seeks dismissal of Plaintiffs' claims based on the application of this defense, is denied. This motion is also denied to the extent that it seeks dismissal of Plaintiff's claims pursuant to Rule 12(b)(6). The Court finds, for the reasons set forth herein, that the Third and Fourth AMCs state a plausible claim for relief against the contractor defendants - at least in terms of improper installation.[2] The Court does not subscribe to the contractor defendants' general argument that the lack of specifications relating to "jacking up" the

---

[2] To the extent that Plaintiffs' Third and Fourth AMCs allege damages arising from the contractor defendant's failure to properly maintain the EHUs, those claims are similarly dismissed for the reasons stated by the contractor defendants in Rec. Doc. 13421-2 as well as in prior pleadings by the Defendants (see Rec. Doc. 2796-2, pp. 7, 10, 17-23), and as previously ruled upon by this Court (see Exhibit N to Rec. Doc. 13421, n.2). Thus, this motion is granted to this limited extent.

EHU was itself a defect in the specifications themselves, for which the contractor defendant cannot be held liable. At this juncture, the motion is denied in this regard.

### III.   CONCLUSION

Considering the foregoing, **IT IS ORDERED** that **Joint Motion of the Government's Contractors to Dismiss Plaintiffs' Third and Fourth Amended Master Complaint (Rec. Doc. 13421)** is **GRANTED IN PART and DENIED IN PART.** As set forth in footnote 2, the motion is granted as to Plaintiffs' maintenance claims against the contractor defendants; those claims are dismissed with prejudice. The motion is denied in all other respects.

New Orleans, Louisiana, this 2nd day of December, 2010.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**