UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

> SOUTHERN DISTRICT OF MISSISSIPPI
> **F I L E D**
>
> AUG 2 5 2010
>
> J. T. NOBLIN, CLERK
> BY_____DEPUTY

MELISSA SOMMERVILLE, on Behalf
of Her Minor Child, CR                                    **PLAINTIFFS**

**VERSUS**                         CIVIL DOCKET NO. 1:10CV425 LG-RHW

GULF STREAM COACH, INC.,
CH2M HILL CONSTRUCTORS, INC.,
AND JOHN DOE 1-50                                         **DEFENDANTS**

<u>**NOTICE OF REMOVAL**</u>

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Gulf

Stream Coach, Inc. ("Gulf Stream"), and with a full reservation of rights, files this Notice of

Removal and avers that this matter is hereby removed to this Court on the following grounds:

1.

On June 1, 2010, Plaintiffs, through attorney Edward Gibson of the firm of Hawkins,

Stracener & Gibson, PLLC, filed the original Complaint for Damages in this action, entitled

*"Melissa Sommerville, on behalf of her minor child, CR v. Gulf Stream Coach, Inc., et al."* and

bearing Docket Number A2401-2010-175, (the "Complaint"), in the Circuit Court for the First

Judicial District of Harrison County, Mississippi.

2.

This Petition arises solely from operative facts that are the subject of multidistrict

litigation ongoing in the U.S. District Court for the Eastern District of Louisiana, entitled *In re:*

*FEMA Trailer Formaldehyde Products Liability Litigation* and bearing MDL docket number 07-

1873, which matter is pending before Judge Engelhardt, Section N(5) *[In re: FEMA Trailer*

*Formaldehyde Products Liability Litigation,* MDL No. 07-MD-01873- KDE-ALC (E.D. La.)].

Exhibit A

3.

Gulf Stream was served with the Summons on August 6, 2010. A copy of this Summons and the Complaint served upon Gulf Stream is attached hereto as Exhibit "A" in accordance with 28 U.S.C. § 1446(a).

4.

Co-defendant, CH2M Hill Constructors, Inc. ("CH2M Hill"), was served with process on its registered agent on August 19, 2010. CH2M Hill consents to this removal, and will file a joinder to the removal. No other defendants have been served in this matter at this time.

## DIVERSITY JURISDICTION

5.

Gulf Stream is removing this matter in part pursuant to 28 U.S.C. § 1332, diversity jurisdiction.

6.

The Complaint admits that Plaintiff is a citizen of Harrison County, Mississippi. *See* Complaint at ¶ 1 attached as Exhibit "A."

7.

Defendant, Gulf Stream, is a foreign corporation, incorporated in the State of Indiana with its principal place of business in Nappanee, Indiana. *Id.* at ¶ 2.

8.

Defendant, CH2M Hill Constructors, Inc. is a foreign corporation, incorporated in the State of Delaware, with its principle place of business in Colorado. *Id.* at ¶ 3.

9.

Plaintiffs also list as defendants, John Does 1-10. *Id.* at ¶ 4. However, Plaintiffs have failed to make any effort to specifically identify these John Does in the Complaint, and give no specificity as to their involvement in the allegations arising in the Complaint. Under federal law, these John Does cannot be used to destroy diversity. 28 U.S.C. §1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.")

10.

Therefore, complete diversity exists between the parties.

11.

The Petition does not allege that the amount in controversy falls below $75,000.00.

12.

Although Gulf Stream denies liability to the Plaintiffs, upon information and belief, the amount in controversy, exclusive of costs and interests, exceeds $75,000.00. Plaintiffs seek damages for past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairment and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during a period of displacement from a natural disaster. *See* Complaint at ¶ 89. In addition, Plaintiffs seek punitive and exemplary damages. *Id.* at ¶ 90.

13.

A defendant shows, by preponderance of the evidence, that the jurisdictional amount under 28 U.S.C. § 1332 is met when it is "facially apparent" from a reading of the complaint that

the plaintiffs' claims are likely to exceed $75,000.00. *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir. 1995). In *In re 1994 Exxon Chemical Fire,* the Fifth Circuit held that satisfaction of the jurisdictional amount is "facially apparent" in chemical exposure cases when plaintiffs seek the following category of damages:

> "individual and familial suffering; injuries to physical and mental health, including, but not limited to, emotional distress and mental anguish from the knowledge of exposure to a hazardous substance; expenses incurred by reason of illness caused by the nuisance; fear and apprehension of further exposure to, and impact from, hazardous chemicals; economic and financial harm; loss of enjoyment of life and peaceful use of property; and, other consequential, incidental, general, and special damages."[1]

The listed damages cited by the Fifth Circuit in *In re 1994 Exxon Chemical Fire* closely mirror the listed damages alleged by Plaintiffs here, justifying this removal under the "facially apparent" standard set forth in *Allen, supra.* Indeed, the Plaintiffs here assert one additional category of damages above and beyond those asserted in *In re 1994 Exxon Chemical Fire.* Plaintiffs here have alleged "past and future physical impairments and disability."[2] *See also Aisola v. Exxonmobil Corp.,* No. 08-1105, 2009 WL 1455788, at *1 (E.D. La. 05/22/09).

14.

Thus, it is readily apparent from the face of the Complaint that Plaintiffs' alleged damages, if proven as a matter of law and fact, would exceed the sum of $75,000 and Plaintiffs cannot show that they are legally certain not to be able to recover that amount. Furthermore, the above analysis does not take into account Plaintiffs' request for punitive/exemplary damages, which, if granted, would certainly increase the overall amount in controversy. Thus, both the

---

[1]  *In re 1994 Exxon Chemical Fire,* 558 F.3d 378 (5th Cir. 2009)
[2]  The Fifth Circuit has noted that emotional distress, functional impairment, and disability are the kinds of damages that if alleged, "support a substantially larger monetary basis for federal jurisdiction." *Simon v. Wal-Mart Stores, Inc.* 193 F.3d 848, 851 (5th Cir. 1999).

"complete diversity" and the "jurisdictional amount" requirements of 28 U.S.C. §1332 are satisfied and removal is proper in this matter.

15.

Gulf Stream alternatively shows that removal is proper under 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005 ("CAFA"), and this Court has alternative bases for jurisdiction in this matter, as follows:

a. Removal is proper under 28 U.S.C. §1442 and this Court has jurisdiction because while CAFA's primary aim is the removal of most class action lawsuits to federal court, *see* 28 U.S.C. § 1453 (2008), the act sanctions the removal of "mass actions," as well. 28 U.S.C. § 1332(d)(11)(A) (2008). CAFA defines a mass action as any civil action in which it is proposed to jointly try monetary relief claims of 100 or more persons on the grounds that the claims involve common questions of law or fact. *Id.* § 1332 (d)(11)(B)(i). CAFA deems any action fitting that description removable to federal court. *Id.* § 1332 (11)(A);

b. CAFA mass action removal requirements include minimal diversity, an aggregate $5 million amount in controversy, a significant interstate impact, and several others. *Id.* § 1332 (d)(2)-(10). When the normal class action requirements are added to the definition, four requirements emerge as necessary for an action to become a mass action: (1) an aggregate amount in controversy of $5 million, (2) minimal diversity, (3) at least 100 plaintiffs, and (3) a commonality requirement that the plaintiffs' claims involve common questions of law or fact. *See Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1202-03 (11 Cir. 2007); *see also* 28 U.S.C. §

5

1332(d). Civil actions that include these four elements are removable "mass actions" under CAFA;

c. The subject matter of this litigation is currently the subject of approximately 4,000 suits, involving over 10,000 plaintiffs consolidated in Multi-District Litigation pending in the United States District Court for the Eastern District of Louisiana, captioned "In Re FEMA Trailer Formaldehyde Products Liability Litigation," MDL Docket No. 1873, and assigned to the Honorable Kurt D. Engelhardt. It is estimated that the litigation will encompass over 50,000 individual plaintiffs, including the Plaintiffs herein, once the Panel issues a tag along Order; and

d. Accordingly, the four requirements for a mass action are met: there is minimal diversity between the Plaintiffs and Defendants, there are more than 100 Plaintiffs alleging claims with common issues of law and fact, and the aggregate amount in controversy easily exceeds $5,000,000.

## FEDERAL OFFICER REMOVAL STATUTE

### 16.

Removal is also proper under 28 U.S.C. § 1442. Three requirements must be met to invoke the federal officer removal statute: (1) the defendant must be a "person" within the meaning of §1442(a)(1); (2) the defendant must have acted under color of federal authority when committing the acts that allegedly caused plaintiffs' injuries; and (3) the defendant must have a colorable federal defense. *Williams v. Todd Shipyards Co.*, 154 F.3d 416, 1998 WL 526612, *2 (5th Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129, 131, 109 S.Ct. 959, 103

L.Ed.2d 99 (1989)).[3]  All three requirements exist in this instance. *See, e.g., Isaacson v. DOW Chemical Co.,* 517 F.3d 129 (2d Cir. 2008) (finding removal proper under Section 1442(a)(1) where the defendant was a government contractor and its colorable federal defense was based upon the government contractor defense); *Miller v. Diamond Shamrock Chemical Co.,* 275 F.3d 414 (5th Cir. 2001) (same); *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 397-401 (5th Cir. 1998) (same); *Williams v. Todd Shipyards Corp.,* 154 F.3d 416, 1998 WL 526612 (5th Cir. 1998) (same).

17.

Gulf Stream qualifies as a "person" under Section 1442(a)(1). *See Winters v. Diamond Shamrock Chemical Company,* 149 So. 2d 387, 398 (5th Cir. 1998) (examining the federal officer removal statute and explaining that "corporate entities qualify as 'persons' under § 1442(a)(1)") (citation omitted).

18.

Gulf Stream was acting under color of federal authority when it is alleged to have performed the work that resulted in Plaintiffs' alleged injuries. Indeed, Plaintiffs' allegations against Gulf Stream arise out of Gulf Stream's contractual engagement by FEMA to "sell temporary housing units for provision to the Plaintiffs as temporary housing following Hurricane Katrina." *See* Complaint at ¶ 11. The Plaintiffs further allege "those units which

---

[3]    It should be noted that the right of removal under 28 U.S.C. § 1442(a)(1) is absolute. *Willingham v. Morgan,* 89 S.Ct. 1813, 395 U.S. 402 (1969) *on remand* 424 F.2d 200. The thirty-day period in which removal must be filed does not begin to run until the defendant entitled to remove under 28 U.S.C. § 1442 has notice of sufficient facts presented by the plaintiff which entitles the defendant to federal officer removal. *Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1255 (9th Cir. 2006).  The earliest possible notice of its potential federal officer right of removal was the day of service of petition on Gulf Stream – August 6, 2010.  The fact that an earlier served defendant may have failed to timely remove the matter is immaterial under 28 U.S.C. § 1442. *Alsup v. 3-Day Blinds, Inc.,* 435 F. Supp. 2d. 838, 843 (S.D. Ill. 2006); *Plourde v. Ferguson,* 519 F.Supp. 14, 16 (D. Md. 1980).  28 U.S.C. § 1442 grants an exception to the general rule that all defendants must consent to removal. *Akin v. Ashland Chemical Company,* 156 F.3d 1030 (10th Cir. 1998) *certiorari denied* 119 S.Ct. 1756, 526 U.S. 1112; *Fowler v. Southern Bell Tel. & Tel. Co.,* 343 F. 2d 150, 152 (5th Cir. 1965) ("it is settled that the filing of a petition for removal by a single federal officer removes the entire case to the federal court."); *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.,* 644 F. 2d 1310, 1315 (9th Cir. 1981) ("Since the federal officer is the only one entitled to remove under § 1442, he alone can remove without other defendants joining in the petition, and the entire case is removed to the federal court.").

were manufactured prior to the hurricane and those later manufactured and purchased by FEMA, deviated from the Government specifications pertaining to the safety of the unit as a residence." *Id.* at ¶ 13. Additionally, Plaintiffs allege that the housing units manufactured by Gulf Stream "contained dangerous levels of formaldehyde ... and posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months ..." *Id.* at ¶ 15. If Gulf Stream performed the manufacture, sale, transportation, installation, inspection, maintenance and/or repair of the FEMA trailers involved in this litigation (the "Work"), then the Work, as alleged by Plaintiffs, was performed pursuant to a federal contract between FEMA and Gulf Stream (the "Contract"), and Gulf Stream was acting under color of federal authority when performing under the Contract.

19.

Specifically, as terms of the grant of the Contract, FEMA approved and provided reasonably precise specifications regarding the manufacture of travel trailers. *See* Document HFSE04-04-Q-8000 attached here as Exhibit "B." Further, Gulf Stream performed this government work under FEMA's supervision and FEMA inspectors monitored and inspected the Work performed under the Contract. Moreover, FEMA maintained enforcement authority and substantively reviewed the Work performed by Gulf Stream.

20.

As a government contractor involved in the Hurricane Katrina disaster assistance provided by FEMA, Gulf Stream has available to it the government contractor defense.[4] *See In*

---

[4] For purposes of removal, Gulf Stream Coach, Inc. is not required to prove success on its defense. *Mesa,* 489 U.S. at 133; *Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1427 (11th Cir. 1996) ("defense need only be plausible; its ultimate validity is not to be determined at the time of removal."); *Jamison v. Wiley,* 14 F.3d 222, 238 (4th Cir. 1994) ("defendant need not prove that he will actually prevail on his federal immunity defense in order

8

*re World Trade Center Disaster Site Litigation,* 521 F.3d 169, 197 (2d Cir. 2008) (applying the government contractor defense to "the disaster relief context due to the unique federal interest in coordinating federal disaster assistance and streamlining the management of large-scale disaster recovery projects, as evidenced by the Stafford Act.").

21.

In accordance with the requirements of 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal, Gulf Stream will give written notice of this Notice of Removal to all adverse parties and will file a copy of this Notice of Removal with the Clerk of the Circuit Court for the First Judicial District of Harrison County, Mississippi.

**WHEREFORE,** Defendant, Gulf Stream Coach, Inc. prays that this matter be removed to the United States District Court for the Southern District of Mississippi for further proceedings and disposition.

Respectfully submitted,

GULF STREAM COACH, INC.

By: _____
      One of Its Attorneys

OF COUNSEL:

BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
WILLIAM TREY JONES, III, MSB NO. 99185
P.O. Drawer 119
Jackson, MS 39205
Telephone: (601) 960-6857
Facsimile: (601) 960-6902
tjones@brunini.com

---

to obtain removal"). Rather, Gulf Stream is only required to show a causal connection between the plaintiffs' claims and Gulf Stream's performance as a federal contractor; Gulf Stream has done so. *See Williams v. Todd Shipyards Co.,* 154 F.3d 416, 1998 WL 526612, *6 (5th Cir. 1998).

TAYLOR B. MCNEEL, MSB NO. 102737
P.O. Box 127
Biloxi, MS 39533-0127
Telephone: (228) 435-1198
Facsimile: (228) 435-0639
tmcneel@brunini.com

DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK
ANDREW D. WEINSTOCK (#18495)
JOSEPH G. GLASS (#25397)
3838 N. Causeway Boulevard, Suite 2900
Metairie, LA 70002
Telephone: (504) 832-3700
andreww@duplass.com
jglass@duplass.com

SCANDURRO & LAYRISSON
TIMOTHY D. SCANDURRO(#18424)
DEWEY M. SCANDURRO (#23291)
607 St. Charles Avenue
New Orleans, LA 70130
Telephone: (504) 522-7100
tim@scanlayr.com
dewey@scanlayr.com

**COUNSEL FOR DEFENDANT, GULF STREAM COACH, INC.**

## CERTIFICATE OF SERVICE

I, Taylor B. McNeel, do hereby certify that I have this day mailed, by United States Mail,

postage prepaid, a true and correct copy of the foregoing to the following counsel of record:

John Hawkins, Esq.
Hawkins, Stracener & Gibson, PLLC
P.O. Box 24627
Jackson, MS 39202

Edward Gibson, Esq.
Rose M. Hurder, Esq.
Hawkins, Stracener & Gibson, PLLC
153 Main Street
Bay St. Louis, MS 39520

Gerardo R. Barrios, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
3 Sanctuary Blvd., Suite 201
Mandeville, LA 70471

This the _____25th_____ day of August, 2010.

_____
Taylor B. McNeel,
Attorney for Gulf Stream Coach, Inc.

RECEIVED AUG 0 6 2010

## IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI

**MELISSA SOMMERVILLE,**
**on Behalf of Her Minor Child, CR**

**PLAINTIFFS**

**V.**

DOCKET NO: A2401-2010-175

**GULF STREAM COACH, INC., CH2M HILL**
**CONSTRUCTORS, INC., and JOHN DOE 1-50**

**DEFENDANTS**

## SUMMONS

THE STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:    Gulf Stream Coach, Inc.
       Through it Agent for Service of Process
       Kenneth C. Brinker
       503 South Oakland
       Nappannee, IN 46550

       Or Wherever It May Be Found

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU
MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Complaint to
Edward Gibson, the attorney for the Plaintiff whose address is 153 Main Street, Bay Saint Louis,
Mississippi 39520.  Your response must be mailed or delivered within thirty (30) days from the date
of delivery of this Summons and Complaint or a judgment by default will be entered against you for
the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a
reasonable time afterward.

Issued under my hand and seal of said Court, this the 30th day of July, 2010.

(SEAL)                    **HARRISON COUNTY CIRCUIT CLERK**

BY: _April Hayes_

EXHIBIT
**A**

RECEIVED AUG 0 6 2010

IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI



MELISSA SOMMERVILLE,                                                                    **PLAINTIFF**
on Behalf of Her Minor Child CT

FILED
JUN - 1 2010
GAYLE PARKER
CIRCUIT CLERK

V.                                          BY_____ DOCKET NO: A2401-2010-175
                                                          DC

GULF STREAM COACH, INC., CH2M HILL
CONSTRUCTORS, INC., and JOHN DOE 1-50                                               **DEFENDANTS**

---

### COMPLAINT FOR DAMAGES
(jury trial requested)

---

This Complaint of certain persons of the full age of majority, on behalf of themselves and,

in some instances, on behalf of individuals who lack the capacity to sue individually (hereinafter,

"Plaintiffs"), who are all named in the annexed listing of the Plaintiffs, respectfully represents

through undersigned counsel that:

### I. PARTIES

1.     Plaintiff, MELISSA SOMMERVILLE, on behalf of her minor child, is a resident

citizen of Gulfport, Harrison County, Mississippi.

2.     GULF STREAM COACH, INC. (hereinafter Gulf Stream) is upon information and

belief, an entity incorporated in the state of Indiana, which conducts business in the State of

Mississippi, and which manufactured and supplied FEMA trailers or housing units as defined below

pursuant to contracts with FEMA for use in the State of Mississippi.

3.     CH2M HILL CONSTRUCTORS, INC. (hereinafter "CH2M"), a Delaware

corporation with its principal place of business in Colorado, licensed to do business in the State of

Mississippi and in good standing. received a No-Bid contract from FEMA and was tasked with,

among other things, performing significant functions in the transportation, delivery, installation,

maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of Hurricane Katrina, including Melissa Sommerville on behalf of her minor child CR.

4.      Defendants John Does 1-10 are those persons, agents, employees, and/or representatives of Defendants whose conduct as described herein caused or contributed to the damages of the Plaintiffs, all of whose names and legal identities are unknown to the Plaintiffs at this time, but will be substituted by amendment when ascertained, individually and jointly.

### III. JURISDICTION AND VENUE

5.      GULF STREAM COACH, INC., is subject to the *in personam* jurisdiction of this Court because it does sufficient business in the State of Mississippi and within this federal district to confer same, and at all relevant times hereto engaged in commerce both in this federal district and in the State of Mississippi with respect to the activities and claims which are the subject of this litigation.

6.      CH2M HILL CONSTRUCTORS, INC. is subject to the *in personam* jurisdiction of this Court because it does sufficient business in the State of Mississippi, has committed torts in whole or in part within the State of Mississippi and the Defendant has such contacts with the State that the exercise of personal jurisdiction comports with due process and traditional notions of fair play. CH2M HILL CONSTRUCTORS, INC. at all relevant times hereto engaged in commerce and committed torts in the State of Mississippi with respect to the activities and claims which are the subject of this litigation.

7.      Venue is proper in Harrison County because the acts and omission complained of

**COMPLAINT FOR DAMAGES**
Page 2 of 23

occurred there and the Plaintiffs reside there.

## IV. FACTS AND GENERAL ALLEGATIONS

8.  The plaintiffs resided in a FEMA travel trailer after the landfall of Hurricane Katrina in August of 2005.

9.  Of the housing units at issue, "travel trailers" are wheel-mounted and generally no larger than 8 feet wide and 40 feet long, for an average area of less than 320 square feet. They are designed to provide temporary living quarters and are generally considered vehicles, regulated by state transportation authorities rather than housing authorities. *Id. See* CENTER FOR DISEASE CONTROL AND PREVENTION, INTERIM FINDINGS ON FORMALDEHYDE LEVELS IN FEMA-SUPPLIED TRAVEL TRAILERS, PARK MODELS, AND MOBILE HOMES, Feb. 29, 2008, at 4, *available at* www.cdc.gov/Features/FEMAtrailersFindings/pdf/interim_findings.pdf.

10.  The Plaintiffs' residence was rendered unhabitable following Hurricanes Katrina, leaving them in need of housing assistance.

11.  FEMA contracted with Defendant Gulf Stream to purchase thousands of the housing units, primarily travel trailers, for provision to individuals, including plaintiffs, as temporary housing.

12.  On information and belief, Defendant Gulf Stream Homes expedited production of these housing units, and, on information and belief, resorted to using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing units occupied by Plaintiffs containing higher than normal levels of formaldehyde.

13.  On information and belief, the travel trailer in question was manufactured prior to the

**COMPLAINT FOR DAMAGES**
Page 3 of 23

hurricanes and those later manufactured and purchased by FEMA, deviated from Government specifications pertaining to the safety of the unit as a residence.

14.     Plaintiffs submit that the travel trailer at issue, whether manufactured prior to the hurricanes or later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to Defendant Gulf Stream's use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, but that Defendant Gulf Stream failed to warn the Federal Government about these dangers, which initially were not known to the Federal Government.

15.     Plaintiffs submit that Defendant Gulf Stream ignored, or concealed and/or condoned the concealment of, the fact that each and all of the housing units at issue contained dangerous levels of formaldehyde due to Defendant Gulf Stream's use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, all in order to sell Defendant Gulf Stream's products, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions.

16.     Plaintiffs spent significant time in the FEMA-provided trailers manufactured by Defendant Gulf Stream.  As a result, the Plaintiffs unwittingly were exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing units.

17.     Formaldehyde is found in construction materials such as particle board, fiberboard

**COMPLAINT FOR DAMAGES**
Page 4 of 23

and plywood, as well as glues and adhesives used in the manufacture of the housing units. Pursuant to federal law, the defendants are required to display a "Health Notice" about exposure to formaldehyde which reads:

### IMPORTANT HEALTH NOTICE

Some of the building materials used in this home emit formaldehyde. Eye, nose and throat irritation, headache, nausea, and a variety of asthma-like symptoms, including shortness of breath, have been reported as a result of formaldehyde exposure. Elderly persons and young children, as well as anyone with a history of asthma, allergies, or lung problems, may be at greater risk. Research is continuing on the possible long-term effects of exposure to formaldehyde.

Reduced ventilation resulting from energy efficiency standards may allow formaldehyde and other contaminants to accumulate in the indoor air. Additional ventilation to dilute the indoor air may be obtained from a passive or mechanical ventilation system offered by the manufacturer. Consult your dealer for information about the ventilation options offered with this home.

High indoor temperatures and humidity raise formaldehyde levels. When a home is to be located in areas subject to extreme summer temperatures, an air-conditioning system can be used to control indoor temperature levels. Check the comfort cooling certificate to determine if this home has been equipped or designed for the installation of an air-conditioning system.

If you have any questions regarding the health effects of formaldehyde, consult your doctor or local health department.

*See* 24 C.F.R. §3280.309.

18. According to the National Cancer Institute, formaldehyde has been classified as a human carcinogen (cancer-causing substance) by the International Agency for Research on Cancer and as a probable human carcinogen by the U.S. Environmental Protection Agency ("EPA"). Additionally, the Agency for Toxic Substances and Disease Registry ("ATSDR") has reported to

FEMA and members of Congress that not only is formaldehyde classified as "reasonably anticipated to be a human carcinogen," but also that there is no recognized safe level of exposure, and that any level of exposure to formaldehyde may pose a cancer risk, regardless of duration.

19.    Most published exposure standards for formaldehyde address protective levels for the adult working population in the workplace, based upon a 40-hour work week, and specifically do not address chronic exposure levels or protective levels for the more susceptible population, for instance, the very young, the elderly and those with respiratory, skin and other chronic diseases. Nonetheless, reference to the levels established by the Occupational Safety and Health Administration ("OSHA") evidences formaldehyde's harmful effects. In 1987, OSHA reduced the amount of formaldehyde to which workers can be exposed over an 8-hour day from 3 ppm to 1 ppm. In May, 1992, the formaldehyde exposure limit was further reduced to .75 ppm.

20.    HUD regulates formaldehyde levels in certain construction materials to include the pressed wood products used in manufactured housing (such as prefabricated mobile homes). HUD has far stricter exposure limits for residential formaldehyde emissions. By regulation, "All plywood and particle board materials bonded with a resin system or coated with a surface finish containing formaldehyde shall not exceed the following formaldehyde emission levels when installed in manufactured homes: (1) Plywood materials shall not emit formaldehyde in excess of 0.2 parts per million (ppm)...[and] (2) Particle board materials shall not emit formaldehyde in excess of 0.3 ppm...". See 24 C.F.R. §3280.308.

21.    Both the EPA and the ATSDR have suggested values for safe formaldehyde exposure, which are reproduced below, which values are applicable herein since the FEMA trailers/housing

units at issue were intended to be occupied for up to a year and a half by evacuees. *See* 44 C.F.R. §206.110(e).

| Agency | Standard |
|---|---|
| EPA recognized level at which acute health effects can manifest | 0.1 parts per million (ppm) |
| Agency for Toxic Substances and Disease Registry Minimum Risk Levels (MRL) | 0.04 ppm - short exposures up to 14 days |
| | 0.03 ppm – exposure durations between 15 and 364 days |
| | 0.008 ppm – exposures of 365 days or greater |

*See* Union of Concerned Scientists, Citizens and Scientists for Environmental Solutions, *FEMA Exposes Gulf Coast Residents to Formaldehyde*, Updated on Dec 19, 2007, *available at* http://www.ucsusa.org/scientific_integrity/interference/fema-trailers.html.

22.     Defendant Gulf Stream knew or should have known of the health hazards inherent in the products it constructed, by familiarity with industry standards, the material safety data sheets in its possession, and published medical studies.

23.     In order to implement and manage its disaster response obligation and temporary housing obligations, FEMA engaged Defendant CH2M with No-Bid contracts, eventually amounting to billions of dollars. The Federal Government also relied on the expertise and knowledge of Defendant CH2M to provide information and advice on, among other things, the conversion of mobile travel trailers into temporary housing units for periods up to, and potentially exceeding, eighteen months in duration.

24.     Defendant CH2M was tasked with the transportation, installation, site identification

**COMPLAINT FOR DAMAGES**
Page 7 of 23

and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units.

25.    Under the terms of their contracts, Defendant CH2M were obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and indicated by the manufacturers of same. Further, under their No-Bid contracts with FEMA, Defendant CH2M were obligated to advise and instruct FEMA regarding the implementation of those contracts. Defendant CH2M failed to properly fulfill either of these tasks.

26.    Defendant CH2M contracted with FEMA to pick-up and transport the temporary housing units from FEMA-controlled staging areas and deliver them to areas which Defendant CH2M were tasked with operating. These new areas included staging areas to be managed and maintained as assigned to Defendant CH2M or individual locations and addresses where Defendant CH2M assigned that temporary housing unit would have obligations to manage and maintain it.

27.    To accomplish their contractual obligations with FEMA, in addition to the use of subsidiary companies, Defendant CH2M entered into numerous sub-contracts, but at all times retained supervisory capacity and responsibility under its individual contracts with FEMA.

28.    Defendant CH2M was tasked under its contracts with FEMA to identify and prepare the infrastructure for the various group site locations. This included, among other things, ensuring there would be adequate water, sewage, electricity, etc. Defendant CH2M knew or should have known that these preparations were for long-term occupancy of the temporary housing units.

29.    Once the temporary housing unit(s) occupied by the Plaintiff(s) were transported and

delivered to a particular location, Defendant CH2M had the responsibility for installing that temporary housing unit. Defendant CH2M installed the temporary housing units by "blocking" the unit. This meant raising the Plaintiff's unit several feet into the air and off of its wheel base, and setting it on concrete blocks.

30.     By blocking the temporary housing unit(s) of Plaintiffs, Defendant CH2M created stress and flexing on the frames of the unit as it was not designed to be lifted off of the wheel base. In fact, the manufacturers of the temporary housing units warned in the various owners' manuals provided with the units, that units should not be jacked so that the vehicle's weight is no longer supported by the wheels.

31.     The stress and flexing of temporary housing units' frames caused by Defendant CH2M "blocking" them with weight off of the wheels created distortion in the travel trailer's shell allowing increased moisture intrusion which contributed to increased formaldehyde exposures.

32.     The temporary housing unit(s) occupied by the Plaintiff(s) which were provided by FEMA were for the most part travel trailers. The travel trailers are, by definition, mobile. They are designed for and intended for periodic, recreational use and not for long-term habitation. By installing the travel trailers on concrete blocks for extended occupancy, Defendant CH2M knowingly and intentionally modified the design and the actual use of these units occupied by the Plaintiff(s) by converting them into a temporary housing unit to be used as a residence for long term occupancy in some instances exceeding 18 months.

33.     Defendant CH2M failed to consult with the manufacturers of the temporary housing units, including Defendant Gulf Stream, with regard to the installation, warnings, warranty issues

**COMPLAINT FOR DAMAGES**
Page 9 of 23

or advisability of using travel trailers for long term residence and occupation. Defendant CH2M took actions which voided the warranties of the manufacturers and directly created or contributed to unsafe and hazardous living conditions in the temporary housing units.

34. Once Defendant CH2M had completed the transportation, delivery and installation of the temporary housing unit(s) occupied by the Plaintiff(s), Defendant CH2M was tasked with inspecting each unit to ensure that it was safe and habitable, prior to occupancy by the Plaintiff(s). Upon information and belief, Defendant CH2M failed to adequately inspect the temporary housing unit occupied by the Plaintiff(s) to ensure that the units were safe and suitable for their intended use – the long-term occupancy by individuals and families displaced by Hurricane Katrina. This failure to properly inspect the units for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by hurricane victims.

35. In addition to transportation, site identification, installation and inspection, the temporary housing units occupied by the Plaintiff(s) provided in response to Hurricane Katrina were also managed, maintained and repaired by Defendant CH2M, or its various subcontractors over whom they maintained direct oversight and responsibility. Upon information and belief, Defendant CH2M failed to adequately manage, maintain and repair the temporary housing units which enabled and contributed to the unsafe and hazardous conditions that led to adverse health effects amongst the Plaintiff(s).

36. Parallel to its duty to manage, maintain and repair each temporary housing unit, Defendant CH2M failed to undertake appropriate action, maintenance or repair in response to numerous complaints made by the Plaintiff-occupant(s) of the temporary housing units to various

adverse health effects caused by exposure to elevated levels of formaldehyde.

37.     Following the Plaintiffs' occupancy of each temporary housing unit, Defendant CH2M  was tasked with its de-installation.  Upon discovering the deteriorated condition of the temporary housing units at the time of de-installation and removal, Defendant CH2M  failed to identify the unsuitability of the temporary housing units for long-term occupancy.

38.     In addition to de-installation of the temporary housing units, Defendant CH2M were tasked with refurbishment and restoration of the temporary housing units for use, either in direct response to Hurricane Katrina or for use in the future.  By restoring and refurbishing these temporary housing units, Defendant CH2M warranted that the units were fit for their intended use, long term occupancy in response to disaster related displacement.  By restoring and refurbishing these temporary housing units, Defendant CH2M created and perpetuated existing hazardous conditions which would foreseeably lead to adverse health effects caused by the elevated levels of formaldehyde in the temporary housing units.  Further, in thousands of cases, following the restoration and refurbishment, these temporary housing units were immediately occupied by new individuals or families displaced by Hurricane Katrina, and who were then directly exposed to hazardous levels of formaldehyde.

39.     Defendant CH2M , at every stage of its involvement, failed to warn the Plaintiff-occupant(s) of each temporary housing unit of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde – a known human carcinogen – which led directly to adverse health effects, including but not limited to the advent of childhood asthma and the onset of adult asthma in some of the Plaintiffs.

**COMPLAINT FOR DAMAGES**
Page 11 of 23

40.     Through its actions and omissions, Defendant CH2M created and perpetuated a situation wherein occupants of the temporary housing units were exposed to elevated levels of formaldehyde and, as a result, suffered adverse health effects. Defendant CH2M negligently failed to adhere to the manufacturer instructions and warnings related to: (1) the manufacturers' intended (short-term) use of the temporary housing units; (2) the installation and set-up of the temporary housing units; and (3) the warning that the temporary housing units contained urea formaldehyde resin which would release formaldehyde gas directly into the intended living space.

41.     Defendant CH2M failed to warn the occupants of temporary housing unit(s) of the hazardous conditions created by the elevated levels of formaldehyde in the temporary housing units.

42.     By restoring and refurbishing the trailer for future habitation, Defendant CH2M improperly and negligently warranted that the units were fit for the intended use of long-term occupancy.

43.     Finally, despite these failures, Defendant CH2M received billions of dollars in contracts from FEMA and the United States government, at the expense of the health of the Plaintiff-occupant(s) of the temporary housing units who simply had nowhere else to go and who were relying on defendants to keep them safe in the aftermath of the greatest natural disaster in the history of the United States.

44.     CDC testing revealed the following important findings regarding FEMA trailers: (1) the formaldehyde levels were higher than typical levels of U.S. indoor exposure in single-family homes and apartments; (2) levels ranged from 3 parts per billion (ppb) to 590 ppb, with the average levels in all units measuring 77 ppb, the latter being higher than U. S. background levels in single-

family homes and apartments; (3) the levels recorded in many of the units could affect the occupants' health; (4) the contemporary measured levels are likely to under-represent long-term exposures because formaldehyde levels tend to be higher in newer housing units and during warmer weather; (5) higher indoor temperatures were associated with higher formaldehyde levels, independent of unit make or model; and, (6) formaldehyde levels varied by type of housing unit (mobile home, park model, and travel trailer), but all types tested had elevated levels compared to the data on single-family homes and apartments.

45.     The CDC's recommendations as a result of this testing included the following: (1) move quickly to relocate residents before the weather in the region warms up; (2) FEMA and the CDC to consider establishment of a registry to conduct long-term health monitoring of children and others who resided in FEMA- provided housing units in the Gulf Coast Region; (3) families still living in FEMA-provided housing units should spend as much time outdoors as possible and maintain the temperature inside the units at the lowest comfortable level as well as ventilate the unit; and, (4) establish available construction practices which could assure safe and healthy conditions.

46.     The conduct of defendants in violation of Mississippi law caused the minor Plaintiffs damages, medical bills incurred on behalf of CR as well as physical and emotional pain and suffering due chronic sinusitis, bronchitis, upper respiratory tract infections, croup, pharyngitis, shortness of breath, wheezing, abdominal pain, vomiting, nausea, rashes and headaches.

## COUNT I

## CAUSES OF ACTION AGAINST MANUFACTURING DEFENDANT GULF STREAM MISS. CODE ANN. §11-1-63

47.     Defendant Gulf Stream,, at the time that each subject housing unit left its control,

**COMPLAINT FOR DAMAGES**
Page 13 of 23

knew or should have known that each product was defective because it deviated in a material way from the manufacturers' specifications or from otherwise identical units manufactured to the same manufacturing specifications.

48. Defendant Gulf Stream knew or should have known that the defective condition rendered each subject housing unit unreasonably dangerous to the user or consumer or others; and

49. The defective and unreasonably dangerous condition of each product (the failure of the subject housing units to be safely habitable without exposure to formaldehyde) proximately caused the damages and injuries sustained by Plaintiffs.

50. At the time the subject housing units left the control of Defendant Gulf Stream, each subject housing unit did not contain properly selected prepared and installed components.

51. At all relative times, the Plaintiffs lacked actual or constructive knowledge of the defective condition of their respective housing units and that each defective product was inconsistent with their safety.

52. At all relevant times, the Plaintiffs did not appreciate the danger of their housing unit's defective condition.

53. At all relevant times, the Plaintiffs did not deliberately and voluntarily choose to expose themselves to this danger in such a manner to register assent to the continuance of the dangerous condition.

54. Each subject housing unit in question failed to function as expected as a result of their design characteristics.

55. An alternative design existed at the time that each housing unit left the control of

Defendant Gulf Stream, which would have not impaired the product's usefulness or desirability.

56.     The alternative design would have to a reasonable probability prevented the toxic exposure of Plaintiffs.

57.     The housing unit was defective because it failed to contain adequate warnings or instructions.

58.     The housing unit breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use this product.

**COUNT II**

**STRICT LIABILITY AND NEGLIGENCE OF
DEFENDANT GULF STREAM**

59.     Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

60.     Defendant Gulf Stream knew or should have known that the subject housing units were defective and unreasonably dangerous to the user or consumer or others because of the excessive formaldehyde present in the housing units, which condition was foreseeable. Notwithstanding, Defendant Gulf Stream allowed the defective and dangerous housing units to be placed into the stream of commerce and to reach Plaintiffs without substantial change.

61.     Defendant Gulf Stream failed to warn Plaintiffs of the excessive levels/emissions of formaldehyde and the hazards associated therewith. Defendant Gulf Stream owed Plaintiffs a non-delegable duty to warn of any dangerous and defective conditions under theories of negligence and strict liability.

62.     Defendant Gulf Stream was negligent in one or more of the following respects which proximately contributed to Plaintiffs' injuries:

**COMPLAINT FOR DAMAGES**
Page 15 of 23

a.  In manufacturing and distributing the subject housing units to Plaintiffs for use as temporary housing, which housing was defective and unreasonably dangerous for use due to the present of excessive formaldehyde levels/emissions;

b.  In failing to properly test/inspect the subject housing units to properly evaluate the presence and/or levels of formaldehyde under foreseeable conditions for extended periods of time;

c.  In manufacturing, advertising, marketing, distributing, and selling the subject housing units to third party users when they knew or should have known that the housing units were defective and not suitable for use under foreseeable conditions;

d.  In failing to provide proper and adequate warnings, after the sales of the subject housing units, of the hazards associated with excessive levels/emissions of formaldehyde; and,

e.  In failing to properly hire, train, and supervise individuals to inspect materials used in the manufacture of the subject housing units to ensure that such materials/component parts did not emit excessive levels of formaldehyde.

## COUNT III

### NEGLIGENCE OF DEFENDANT CH2M UNDER MISSISSIPPI LAW

63.  Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

64.  At all relevant times, Defendant CH2M were tasked with the transportation, installation, site identification, preparation, inspection, maintenance and repair, refurbishment and restoration, and removal of the temporary housing units, which caused the Plaintiffs' injuries.

**COMPLAINT FOR DAMAGES**
Page 16 of 23

65.     Defendant CH2M owed a duty to Plaintiffs to provide, transport, install, inspect, maintain, repair, refurbish, recondition and restore safe temporary housing units that did not emit hazardous levels of formaldehyde.

66.     Defendant CH2M knew or should have known when it provided, transported, installed, inspected, maintained, repaired, refurbished, reconditioned and restored the temporary housing units to the general public (thereby modifying and converting the mobile units into residential installations) the actual and intended use of the temporary housing units by each Plaintiff, and that the temporary housing units would be used in the manner that each Plaintiff herein used the temporary housing units.

67.     Defendant CH2M breached its duty to Plaintiffs in failing to act reasonably in the provision, installation, inspection. maintenance, repair, refurbishment, reconditioning and restoration of the temporary housing units; specifically by:

a.     Failing to sufficiently warn the Plaintiffs of the inherently dangerous properties or the foreseeable conditions of the temporary housing units when used for long term occupancy; and

b.     Failing to adhere to the manufacturers' warnings against jacking the temporary housing units off the wheel base by "blocking" the units;

68.     Defendant CH2M's actions were the proximate cause of the increased exposure of formaldehyde to Plaintiffs.

69.     Defendant CH2M contributed to and exacerbated the adverse health impacts upon the residents of the temporary housing units.

**COMPLAINT FOR DAMAGES**
Page 17 of 23

## COUNT IV

### STRICT PRODUCTS LIABILITY OF DEFENDANT NO-BID CONTRACTOR DEFENDANT CH2M UNDER MS CODE ANNOTATED §11-1-63

70.     Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

71.     Defendant CH2M , at the time that each subject housing unit left its control, knew or should have known that each product was defective because it deviated in a material way from the manufacturers' specifications or from otherwise identical units manufactured to the same manufacturing specifications and/or manufacturers' warnings.

72.     Defendant CH2M, by installing the housing units on concrete blocks for extended occupancy, knowingly and intentionally modified the design and the actual use of the housing units.

73.     Defendant CH2M knew or should have known that the defective condition rendered each subject housing unit unreasonably dangerous to the user or consumer or others.

74.     The defective and unreasonably dangerous condition of each product (the failure of the subject housing units to be safely habitable without exposure to formaldehyde) proximately caused the damages and injuries sustained by Plaintiffs.

75.     At all relative times, the Plaintiffs lacked actual or constructive knowledge of the defective condition of their respective housing units and that each defective product was inconsistent with their safety.

76.     At all relevant times, the Plaintiffs did not appreciate the danger of their housing unit's defective condition.

77.     At all relevant times, the Plaintiffs did not deliberately and voluntarily choose to expose themselves to this danger in such a manner to register assent to the continuance of the

dangerous condition.

78.     Each subject housing unit in question failed to function as expected as a result of its design characteristics.

79.     An alternative design existed at the time that each housing unit left the control of the Manufacturer which would have not impaired the product's usefulness or desirability.

80.     The alternative design would have to a reasonable probability prevented the toxic exposure of each Plaintiff.

81.     Each product (housing unit) was defective because it failed to contain adequate warnings or instructions.

82.     Defendant CH2M failed to warn the Plaintiffs of the inherently dangerous properties for the foreseeable conditions of the subject housing units when used for long term occupancy.

83.     Defendant CH2M failed to warn the Plaintiffs of the presence of excessive levels of formaldehyde present in the housing units they installed, maintained and supervised.

84.     Furthermore, Defendant CH2M breached the implied warranty of habitability due to the Plaintiffs.  The subject housing units were installed and maintained with an expectation of habitability and a clear implied warranty that such housing would be safe and free of any toxic dangers.

### COUNT V

### BREACH OF CONTRACT BY NO-BID CONTRACTOR DEFENDANTS BECHTEL AND CH2M

85.     All paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

### COMPLAINT FOR DAMAGES
Page 19 of 23

86.     Defendant CH2M entered into contracts with FEMA, contracting to provide the following service, among others: "The contractor will do maintenance necessary to maintain the temporary housing units in a safe, working, and livable, condition."

87.     The Plaintiffs constitute third party beneficiaries to the subject contracts.  The contracts were entered into for the Plaintiffs' benefit as residents of the temporary housing units, or alternatively, the benefit to the Plaintiffs as residents of the temporary housing units was the direct result of the performance within the contemplation of the parties to the contract as demonstrated by the terms of the contracts.

88.     The Defendants breached said contract by failing to maintain the Plaintiffs' temporary housing units in a safe, working, and livable condition.  Defendant's acts and omissions, which constitute its failure to honor its contractual obligation, has caused damage to the Plaintiffs for which Plaintiffs are entitled to recover money damages.

## COMPENSATORY DAMAGES

89.     In addition to and by way of summarizing the compensatory damages prayed for herein, Plaintiffs avers that the defendants, Gulf Stream and CH2M , individually and/or jointly are responsible for all damages which Plaintiffs herein has suffered and continues to suffer as a consequence of Defendants' acts and/or omissions as pled herein, which damages include, but are not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages and injuries, loss of consortium, and loss of use

and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven at the time of trial.

### PUNITIVE / EXEMPLARY DAMAGES

90.    Pursuant to Miss. Code Ann. §11-1-65, inasmuch as the conduct of Gulf Stream and CH2M and their servant/employees constitutes willful, wanton, egregious and reckless disregard for the rights and safety of the Plaintiffs, an award of punitive damages is appropriate and necessary under these facts.

### REQUEST FOR JURY TRIAL

Plaintiffs are entitled to and demand a trial by jury for all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that Gulf Stream and CH2M be served with a copy of this Complaint, and that, after due proceedings:

a.    There be a judgment herein in favor of Plaintiffs and against Defendants for all compensatory damages and punitive damages together will legal interest thereon from the date of judicial demand until paid, all costs and expenses of these proceedings, and attorneys' fees, declaring that the Defendants are liable for all applicable damages and thereafter;

b.    There be specially included in the judgment in Plaintiffs' favor, provisions for the following damages and relief as found applicable and supported by the evidence:

A.    Past and future physical injuries,

B.      Past and future mental and physical pain and suffering,

C.      Past and future physical impairments and disability,

D.      Past and future reasonable and necessary medical expenses,

E.      Past and future loss of earning capacity,

F.      Past and future loss of enjoyment and quality of life,

G.      Compensable out-of-pocket expenses related to Defendants' wrongdoing,

H.      Costs of court,

I.      Medical monitoring, and

J.      Punitive damages,

c.      All other general, equitable, and further relief as the Court may deem just and proper.

Respectfully submitted, this the 1st day of May, 2010.

**PLAINTIFF MELISSA SOMMERVILLE on
Behalf of her minor child, CR**


By:_____
        JOHN F. HAWKINS
        EDWARD GIBSON
        ROSE M. HURDER


**OF COUNSEL:**

John Hawkins, Esquire, (MS Bar No. 9556)
HAWKINS, STRACENER & GIBSON, PLLC
628 N. State Street
P.O. Box 24627
Jackson, Mississippi 39202
Ph. (601) 969-9692; Fx. (601) 914-3580


**COMPLAINT FOR DAMAGES**
Page 22 of 23

Edward Gibson, Esquire, (MS Bar No. 100640)
Rose M. Hurder, Esquire, (MS Bar No. 103040)
HAWKINS, STRACENER & GIBSON, PLLC
153 Main Street
Bay St. Louis, MS 39520
Ph.(228) 469-0785; Fx. (228) 467-4212

**COMPLAINT FOR DAMAGES**
Page 23 of 23



Hawkins, Stracener & Gibson, PLLC
153 Main Street
Bay St. Louis, MS 39520

RETURN RECEIPT
REQUESTED

BY

RECEIVED
AUG 0 6 2010

Gulf Stream Coach, Inc.
Through its Agent for Service of Process
Kenneth C. Brinker
503 South Oakland
Nappannee, IN 46550

RECEIVED AUG 0 6 2010

CERTIFIED MAIL

7010 0290 0002 2008 3651

HSFE04-04-Q-8000
## FEMA Model Travel Trailer Procurement Specifications
Dated: August 12, 2004

### General

Travel trailers being procured under this contract are for the purpose of providing temporary housing. The units are subjected to continuous road travel, multiple installations and deactivations, and various weather conditions. The standards shall not be considered restrictive in that the supplier may provide "equal or better" units considering that the competitive price and delivery requirements can be met.

The construction and outfitting standards identify minimum square footage of living space, floor plan configuration, finishes, furnishing and environmental living conditions necessary to provide emergency housing for disaster relief operations. All exterior openings such as windows, doors, drain pipes, etc... will be caulked with a clear, non-hardening weatherproof sealant to prevent air and moisture penetration.

The units shall meet industry standards except where identified. These units will not include awnings, stereos, holding tanks, and/or any optional accessories.

### Quality of Construction

The specifications establish the minimum standards for travel trailer construction and outfitting to meet FEMA contract requirements. This specification does not constitute any expressed or implied deviation or waiver of any requirement of the U.S. regulatory requirements from the governing agency. All units to include furnishings and appliances must be new. The manufacturer shall design and construct all units under this contract within a superior grade quality of workmanship.

| Size and Configuration | |
|---|---|
| Type | FEMA Model Travel Trailer |
| Exterior Length | 32-35 ft |
| Exterior Width | 8 ft (Not to exceed) (No Slide-out units) |
| Screwjack | Non-detachable (No fifth wheel units) |
| Electrical System – AMPS | 30 Amp power cord (50 ft long) |
| Furnishing | Fully |
| Bedrooms | Sleep 6. There must be two bedrooms of which one must be contain a double bunk |
| Bathroom | 1 (residential commode and no holding tank) |
| Refrigerator | Yes - (Residential) 14 cf. Frost-free electric refrigerator with freezer |
| Range and Oven | Yes - (Gas) The each unit must have a gas range and oven. NOTE: The gas appliances must have auto (electronic) ignition |
| Washer Capacity | No |
| Dryer Capacity | No |
| Air Conditioner | Yes (Roof top) |
| Furnace | Yes |
| Microwave | Yes |
| Water Heater | Yes, Gas, 10 Gal (auto electronic ignition) |
| Exterior Covering | Industry standard |
| Smoke Detector | Yes, in kitchen area, and each bedroom/sleeping area. |
| LP Gas Detector | Yes. |
| Fire Extinguisher | Yes |

TTPs\ScatementSpec\08-11-04\(Finn)\1\A1

165



Gulf0005675
ALX-DORRIS-000022

HSFE04-04-Q-8000
**FEMA Model Travel Trailer Procurement Specifications**
Dated: August 12, 2004

| Electrical Service | |
|---|---|
| Receptacles | |
| Interior Receptacles | Electrical receptacles will be installed at convenient locations throughout the unit. Receptacles located near or in wet areas must be protected with ground fault interrupter protection. |
| Exterior Receptacles | Each home will be provided with a heat tape receptacle located near the water inlet. Exterior receptacles must be protected with ground fault interrupter protection. |
| Phone and Cable | Television Jack: Each unit shall have a television jack and a telephone jack installed in the living room and master bedroom area. |

| Plumbing Service | |
|---|---|
| Plumbing System | Industry standard plumbing system will be installed. The holding tank will not be installed. |
| Winterization | All drain lines shall have antifreeze poured into all traps, including washer drain, after the flood test. |
| Faucet Assemblies | All faucet assemblies in the home shall be of the dual shutoff valve type. |
| Bathroom | The bathroom shall also have the manufacturer's standard vanity with lavatory, medicine cabinet with mirror and accessories (paper holder, towel bars/hooks). All interior plumbing must be assembled. All bathroom fixtures shall be of the same color. |
| Commode | The unit will have a residential commode. The water storage tank, seat and cover shall be the same color as the commode bowl. |
| Sewer Line | The sewer line will exit the home approximately two feet (2') and not more than three feet (3') behind the rear axle. The exit pipe shall protrude approximately six inches (6"), but not more than eight inches (8"), from the underlying, shall have a threaded end, and be capped with a removable plastic cap and chain. |

| Appliances | |
|---|---|
| Water Heater | A 10-gallon auto electric ignition water heater. |
| Range | A auto electric ignition cooking range having three (3) or four (4) burners (Note: four burners is preferred), thermostatically controlled oven, and a lighted, power-vented range hood. |
| Refrigerator | Residential 14 c. f. frost-free electric refrigerator with freezer. |
| Microwave Oven | Each unit will have a minimum 1.2 cu. ft microwave. |

| Furnishings | |
|---|---|

TT Procurement Specs (8-11-04) Final:1A1

Gulf0005676
ALX-DORRIS-000023

HSFE04-04-Q-8000
## FEMA Model Travel Trailer Procurement Specifications
Dated: August 12, 2004

| Furnishings | |
|---|---|
| | Furnishings shall be the manufacturer's standard for functional quality (provides usability, comfort and minimum maintenance). All furniture shall be assembled with all packing material removed. All furniture shall be appropriately secured to prevent damage during transport. |
| Bedrooms. | One bedroom shall have a full-size bed. The other bedroom shall have a double bunk w/ storage. |
| Living Room | Each living room area will be furnished with sleeper sofa, capable of sleeping adults. |
| Dining Room | The dining room areas will be furnished with dinette table and seating. |

| Interior | |
|---|---|
| Heating and Cooling System (NOTE: Furnace and A/C shall use the same thermostat) | |
| Furnace | The unit will be equipped with a furnace capable of operating on liquefied petroleum (LP) gas. The unit shall have a 34,000 BTU Furnace and In-Floor Ducted Heat with a wired thermostat connected and completely installed. Also if a battery is needed, then a battery and cover must be included. |
| Air Conditioner (A/C) | 15,000 BTU Ducted Roof A/C wired and connected with the furnace. Window units are not acceptable. |

| Safety Equipment | |
|---|---|
| Smoke Detectors | Each unit will include three battery-operated smoke detector (battery included). Smoke detectors shall be equipped with push-button testing devices. |
| Fire Extinguisher | Each home will be equipped with a five-pound A-B-C type fire extinguisher and a mounting bracket. |
| Gas Detector | LP gas detector. |
| LP Tanks | Double 30 LB LP bottles w/auto change-over gauge and bottle covers |
| Steps | Double entry steps-welded to frame |
| Jacks | Four corner stabilizer jacks with pads |

| Exterior Covering | |
|---|---|
| Siding | Industry standard with an entry assist handles at entrance/exit each door. |
| Roof | Industry standard covering. Rain gutter w/corner downspout along the roofline. |
| Exterior Door Lock | Flush mounted combo entry dead-bolt lock. |

TTProcurementSpec(08-11-04)(Final)1A1

Gulf0005677
ALX-DORRIS-000024

HSFE04-04-Q-8000
## FEMA Model Travel Trailer Procurement Specifications
Dated: August 12, 2004

| Interior Covering | |
|---|---|
| Floor Covering | Living room and bedrooms shall have carpet and pad. Duct openings shall be covered with a 4" x 10" metal, adjustable louvered covering (register). No carpet shall be installed in the bathrooms and/or kitchen. These areas shall be covered with continuous, roll non-foam resilient sheet vinyl tension flooring. |
| Window Covering | Mini Blinds for all windows except bedrooms with bunks, which shall be covered with flame retardant curtains. |

| Transport | |
|---|---|
| FEMA Acceptance | Units will not be accepted as FEMA property until an appropriate FEMA Rep inspects and signs for the unit. FEMA must have a copy of all shipping documents. FEMA reserves the right to reject any unit due to damages, non- road ready and/or transportable unit, and/or non-specifications compliance. The unit must be made transportable and road ready prior to acceptance. Units that are not in a transportable and road ready condition (such as flat tires, damaged axles, etc) will not be considered acceptable. |

| Miscellaneous | |
|---|---|
| Master Keys | The unit manufacturer or supplier shall furnish 3 sets of keys for homes procured. Master keys shall be provided and packaged separately. The master keys must be received with delivery of the first unit. |
| Warranty | The company the unit is purchased from will be FEMA's point-of-contact (POC) for all warranties, this includes the actual unit, A/C, furnace, water heater, and all furnishings and appliances. The company supplying the unit must identify a POC for handling warranty items and the company needs to provide FEMA the procedure for reporting warranty items. |
| Certificates of Origin | The certificate of origin must be provided. |

a

Gulf0005678
ALX-DORRIS-000025



CV-DH

Gulf0005679
ALX-DORRIS-000026

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Melissa Sommerville, on Behalf of Her Minor Child, CR | Gulf Stream Coach, Inc.; CH2M Hill Constructors, Inc.; and John Doe 1-50 |

**(b)** County of Residence of First Listed Plaintiff    Harrison
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

*SOUTHERN DISTRICT OF MISSISSIPPI*
*FILED*
*AUG 25 2010*
*J. T. NOBLIN, CLERK*
*BY_____DEPUTY*

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
John Hawkins, Esq.; Hawkins, Stracener & Gibson, PLLC, P. O. Box 24627, Jackson, MS 39202, Telephone (601) 969-9692, Fax (601) 914-3580 (See attached)

Attorneys (If Known)
William Trey Jones, III, Brunini, Grantham, Grower & Hewes, PLLC, P. O. Drawer 119, Jackson, MS 39205, Telephone (601) 960-6867, Fax: (601) 960-6902, tjones@brunini.com (See attached)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1   U.S. Government Plaintiff | ☐ 3   Federal Question (U.S. Government Not a Party) |
| ☐ 2   U.S. Government Defendant | ☒ 4   Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §1332
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $   in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   8-25-10

SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

FOR OFFICE USE ONLY

RECEIPT # HU4300\12\8   AMOUNT $350.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

*[handwritten top right: 1:10cv425LGRHW]*

**Additional Counsel for Plaintiffs Melissa Sommerville, on Behalf of Her Minor Child, CR:**

Edward Gibson, Esq.
Rose M. Hurder, Esq.
Hawkins, Stracener & Gibson, PLLC
153 Main Street
Bay St. Louis, MS 39520
Telephone: (228) 469-0785
Fax: (228) 467-4212

**Additional Counsel for Defendant, Gulf Stream Coach, Inc.:**

Taylor B. McNeel, Esq.
Brunini, Grantham, Grower & Hewes, PLLC
P. O. Box 127
Biloxi, MS 39533-0127
Telephone: (228) 435-1198
Fax: (228) 435-0693
tmcneel@brunini.com

Andrew D. Weinstock, Esq.
Joseph G. Glass, Esq.
Duplass, Zwain, Bourgeois, Pfister & Weinstock
3838 N. Causeway Blvd., Suite 2900
Metairie, LA 70002
Telephone: (504) 832-3700
Fax: (504) 837-3119
andreww@duplass.com
jglass@duplass.com

Timothy D. Scanduro, Esq.
Dewey M. Scanduro, Esq.
Scandurro & Layrisson
607 St. Charles Avenue
New Orleans, LA 70130
Telephone: (504) 522-7100
Fax: (504) 529-6199
tim@scanlayr.com
dewey@scanlayr.com