

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

BRIAN CARPENTER and
HOLLIE CARPENTER, Individually and
on Behalf of Their Minor Children,
JCH, JTC and JDC
                                                            **PLAINTIFFS**

VERSUS                              CIVIL DOCKET NO. 1:10cv 424 HSO-JMR

DOUG BOYD ENTERPRISES, LLC,
GULF STREAM COACH, INC.,
DUTCHMEN MANUFACTURING, INC.,
SUPERIOR HOMES, LLC, BECHTEL
NATIONAL, INC., CH2M HILL
CONSTRUCTORS, INC., AND JOHN
DOE 1-50                                                    **DEFENDANTS**

<u>**NOTICE OF REMOVAL**</u>

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Gulf
Stream Coach, Inc. ("Gulf Stream"), and with a full reservation of rights, files this Notice of
Removal and avers that this matter is hereby removed to this Court on the following grounds:

1.

On June 1, 2010, Plaintiffs, through attorney Edward Gibson of the firm of Hawkins,
Stracener & Gibson, PLLC, filed the original Complaint for Damages in this action, entitled
*"Brian Carpenter, et. al. v. Doug Boyd Enterprises, LLC, et al."* and bearing Docket Number 10-
0337, (the "Complaint"), in the Circuit Court of Hancock County, State of Mississippi. On June
29, 2010, Plaintiffs through attorney Edward Gibson of the firm of Hawkins, Stracener & Gibson,
PLLC, filed the First Amended Complaint for Damages (the "Amended Complaint").

Exhibit A

2.

This Petition arises solely from operative facts that are the subject of multidistrict litigation ongoing in the U.S. District Court for the Eastern District of Louisiana, entitled *In re: FEMA Trailer Formaldehyde Products Liability Litigation* and bearing MDL docket number 07-1873, which matter is pending before Judge Engelhardt, Section N(5) *[In re: FEMA Trailer Formaldehyde Products Liability Litigation,* MDL No. 07-MD-01873- KDE-ALC (E.D. La.)].

3.

Gulf Stream was served with the Summons on August 6, 2010. A copy of this Summons, the Complaint, and the Amended Complaint served upon Gulf Stream are attached hereto as Exhibit "A" in accordance with 28 U.S.C. § 1446(a).

4.

Co-defendant, Dutchmen Manufacturing, Inc. ("Dutchmen"), was served with process by registered mail on August 13, 2010. Co-defendant, CH2M Hill Constructors, Inc. ("CH2M Hill"), was served with process on its registered agent on August 19, 2010. Dutchmen and CH2M Hill consent to this removal, and will file joinders to the removal. No other defendants have been served in this matter at this time.

**DIVERSITY JURISDICTION**

5.

Gulf Stream is removing this matter in part pursuant to 28 U.S.C. § 1332, diversity jurisdiction.

6.

The Amended Complaint admits that all plaintiffs are citizens of Hancock County, Mississippi. *See* Amended Complaint at ¶ 1 attached as Exhibit "A."

7.

Defendant, Gulf Stream, is a foreign corporation, incorporated in the State of Indiana with its principal place of business in Nappanee, Indiana. *Id.* at ¶ 3.

8.

Defendant, Doug Boyd Enterprises, LLC, is a foreign corporation, incorporated in the State of North Carolina. *Id.* at ¶ 2.

9.

Defendant, Dutchmen, is a foreign corporation, incorporated in the State of Indiana. *Id.* at ¶ 4.

10.

Defendant, Superior Homes, LLC, is a foreign corporation, incorporated in the State of Alabama. *Id.* at ¶ 5.

11.

Defendant, Bechtel National, Inc., is a foreign corporation, incorporated in the State of Nevada, with its principal place of business in California. *Id.* at ¶ 6.

12.

Defendant, CH2M Hill Constructors, Inc., is a foreign corporation, incorporated in the State of Delaware, with its principal place of business in Colorado. *Id.* at ¶ 7.

13.

Plaintiffs also list as defendants, John Does 1-10. *Id.* at ¶ 8. However, Plaintiffs have failed to make any effort to specifically identify these John Does in the Amended Complaint, and give no specificity as to their involvement in the allegations arising in the Amended Complaint. Under federal law, these John Does cannot be used to destroy diversity. 28 U.S.C. §1441(a)

3

("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.")

14.

Therefore, complete diversity exists between the parties.

15.

The Petition does not allege that the amount in controversy falls below $75,000.00.

16.

Although Gulf Stream denies liability to the Plaintiffs, upon information and belief, the amount in controversy, exclusive of costs and interests, exceeds $75,000.00. Plaintiffs seek damages for past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairment and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during a period of displacement from a natural disaster. *See* Amended Complaint at ¶ 100. In addition, Plaintiffs seek punitive and exemplary damages. *Id.* at ¶ 101.

17.

A defendant shows, by preponderance of the evidence, that the jurisdictional amount under 28 U.S.C. § 1332 is met when it is "facially apparent" from a reading of the complaint that the plaintiffs' claims are likely to exceed $75,000.00. *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir. 1995). In *In re 1994 Exxon Chemical Fire,* the Fifth Circuit held that satisfaction of the jurisdictional amount is "facially apparent" in chemical exposure cases when plaintiffs seek the following category of damages:

> "individual and familial suffering; injuries to physical and mental health, including, but not limited to, emotional distress and mental anguish from the

knowledge of exposure to a hazardous substance; expenses incurred by reason of illness caused by the nuisance; fear and apprehension of further exposure to, and impact from, hazardous chemicals; economic and financial harm; loss of enjoyment of life and peaceful use of property; and, other consequential, incidental, general, and special damages."[1]

The listed damages cited by the Fifth Circuit in *In re 1994 Exxon Chemical Fire* closely mirror the listed damages alleged by Plaintiffs here, justifying this removal under the "facially apparent" standard set forth in *Allen, supra.* Indeed, the Plaintiffs here assert one additional category of damages above and beyond those asserted in *In re 1994 Exxon Chemical Fire.* Plaintiffs here have alleged "past and future physical impairments and disability."[2] *See also Aisola v. Exxonmobil Corp.,* No. 08-1105, 2009 WL 1455788, at *1 (E.D. La. 05/22/09).

18.

Thus, it is readily apparent from the face of the Amended Complaint that Plaintiff's alleged damages, if proven as a matter of law and fact, would exceed the sum of $75,000 and Plaintiffs cannot show that they are legally certain not to be able to recover that amount. Furthermore, the above analysis does not take into account Plaintiffs' request for punitive/exemplary damages, which, if granted, would certainly increase the overall amount in controversy. Thus, both the "complete diversity" and the "jurisdictional amount" requirements of 28 U.S.C. §1332 are satisfied and removal is proper in this matter.

19.

Gulf Stream alternatively shows that removal is proper under 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005 ("CAFA"), and this Court has alternative bases for jurisdiction in this matter, as follows:

---

[1]     *In re 1994 Exxon Chemical Fire,* 558 F.3d 378 (5th Cir. 2009)
[2]     The Fifth Circuit has noted that emotional distress, functional impairment, and disability are the kinds of damages that if alleged, "support a substantially larger monetary basis for federal jurisdiction." *Simon v. Wal-Mart Stores, Inc.* 193 F.3d 848, 851 (5th Cir. 1999).

a. Removal is proper under 28 U.S.C. §1442 and this Court has jurisdiction because while CAFA's primary aim is the removal of most class action lawsuits to federal court, *see* 28 U.S.C. § 1453 (2008), the act sanctions the removal of "mass actions," as well. 28 U.S.C. § 1332(d)(11)(A) (2008). CAFA defines a mass action as any civil action in which it is proposed to jointly try monetary relief claims of 100 or more persons on the grounds that the claims involve common questions of law or fact. *Id.* § 1332 (d)(11)(B)(i). CAFA deems any action fitting that description removable to federal court. *Id.* § 1332 (11)(A);

b. CAFA mass action removal requirements include minimal diversity, an aggregate $5 million amount in controversy, a significant interstate impact, and several others. *Id.* § 1332 (d)(2)-(10). When the normal class action requirements are added to the definition, four requirements emerge as necessary for an action to become a mass action: (1) an aggregate amount in controversy of $5 million, (2) minimal diversity, (3) at least 100 plaintiffs, and (3) a commonality requirement that the plaintiffs' claims involve common questions of law or fact. *See Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1202-03 (11 Cir. 2007); *see also* 28 U.S.C. § 1332(d). Civil actions that include these four elements are removable "mass actions" under CAFA;

c. The subject matter of this litigation is currently the subject of approximately 4,000 suits, involving over 10,000 plaintiffs consolidated in Multi-District Litigation pending in the United States District Court for the Eastern District of Louisiana, captioned "In Re FEMA Trailer Formaldehyde Products Liability Litigation," MDL Docket No. 1873, and assigned to the Honorable Kurt D.

Engelhardt. It is estimated that the litigation will encompass over 50,000

individual plaintiffs, including the Plaintiffs herein, once the Panel issues a tag

along Order; and

d. Accordingly, the four requirements for a mass action are met: there is minimal

diversity between the Plaintiffs and Defendants, there are more than 100 Plaintiffs

alleging claims with common issues of law and fact, and the aggregate amount in

controversy easily exceeds $5,000,000.

## FEDERAL OFFICER REMOVAL STATUTE

20.

Removal is also proper under 28 U.S.C. § 1442. Three requirements must be met to

invoke the federal officer removal statute: (1) the defendant must be a "person" within the

meaning of §1442(a)(1); (2) the defendant must have acted under color of federal authority

when committing the acts that allegedly caused plaintiffs' injuries; and (3) the defendant must

have a colorable federal defense. *Williams v. Todd Shipyards Co.,* 154 F.3d 416, 1998 WL

526612, *2 (5th Cir. 1998) (citing *Mesa v. California,* 489 U.S. 121, 129, 131, 109 S.Ct. 959, 103

L.Ed.2d 99 (1989)).[3] All three requirements exist in this instance. *See, e.g., Isaacson v. DOW*

*Chemical Co.,* 517 F.3d 129 (2d Cir. 2008) (finding removal proper under Section 1442(a)(1) where

---

[3]     It should be noted that the right of removal under 28 U.S.C. § 1442(a)(1) is absolute. *Willingham v. Morgan,*
89 S.Ct. 1813, 395 U.S. 402 (1969) *on remand* 424 F.2d 200. The thirty-day period in which removal must be filed
does not begin to run until the defendant entitled to remove under 28 U.S.C. § 1442 has notice of sufficient facts
presented by the plaintiff which entitles the defendant to federal officer removal. *Durham v. Lockheed Martin Corp.,*
445 F.3d 1247, 1255 (9th Cir. 2006). The earliest possible notice of its potential federal officer right of removal was
the day of service of petition on Gulf Stream – August 6, 2010. The fact that an earlier served defendant may have
failed to timely remove the matter is immaterial under 28 U.S.C. § 1442. *Alsup v. 3-Day Blinds, Inc.,* 435 F. Supp.
2d. 838, 843 (S.D. Ill. 2006); *Plourde v. Ferguson,* 519 F.Supp. 14, 16 (D. Md. 1980). 28 U.S.C. § 1442 grants an
exception to the general rule that all defendants must consent to removal. *Akin v. Ashland Chemical Company,*
156 F.3d 1030 (10th Cir. 1998) *certiorari denied* 119 S.Ct. 1756, 526 U.S. 1112; *Fowler v. Southern Bell Tel. &*
*Tel. Co.,* 343 F. 2d 150, 152 (5th Cir. 1965) ("it is settled that the filing of a petition for removal by a single federal
officer removes the entire case to the federal court."); *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.,* 644 F.
2d 1310, 1315 (9th Cir. 1981) ("Since the federal officer is the only one entitled to remove under § 1442, he alone
can remove without other defendants joining in the petition, and the entire case is removed to the federal court.").

the defendant was a government contractor and its colorable federal defense was based upon the government contractor defense); *Miller v. Diamond Shamrock Chemical Co.,* 275 F.3d 414 (5th Cir. 2001) (same); *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 397-401 (5th Cir. 1998) (same); *Williams v. Todd Shipyards Corp.,* 154 F.3d 416, 1998 WL 526612 (5th Cir. 1998) (same).

21.

Gulf Stream qualifies as a "person" under Section 1442(a)(1). *See Winters v. Diamond Shamrock Chemical Company,* 149 So. 2d 387, 398 (5th Cir. 1998) (examining the federal officer removal statute and explaining that "corporate entities qualify as 'persons' under § 1442(a)(1)") (citation omitted).

22.

Gulf Stream was acting under color of federal authority when it is alleged to have performed the work that resulted in Plaintiffs' alleged injuries. Indeed, Plaintiffs' allegations against Gulf Stream arise out of Gulf Stream's contractual engagement by FEMA to sell temporary housing units for provision to the Plaintiffs as temporary housing following Hurricane Katrina. *See* Amended Complaint at ¶ 18. The Plaintiffs further allege that those units which were manufactured prior to the hurricane and those later manufactured and purchased by FEMA, deviated from the Government specifications pertaining to the safety of the unit as a residence. *Id.* at ¶ 20. Additionally, Plaintiffs allege that the housing units manufactured by Gulf Stream "contained dangerous levels of formaldehyde ... and posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months ..." *Id.* at ¶ 21. If Gulf Stream performed the manufacture, sale, transportation, installation, inspection, maintenance and/or repair of the FEMA trailers involved in this litigation (the "Work"), then the Work, as alleged by Plaintiffs, was performed pursuant to a federal contract between

FEMA and Gulf Stream (the "Contract"), and Gulf Stream was acting under color of federal authority when performing under the Contract.

23.

Specifically, as terms of the grant of the Contract, FEMA approved and provided reasonably precise specifications regarding the manufacture of travel trailers. *See* Document HFSE04-04-Q-8000 attached here as Exhibit "B." Further, Gulf Stream performed this government work under FEMA's supervision and FEMA inspectors monitored and inspected the Work performed under the Contract. Moreover, FEMA maintained enforcement authority and substantively reviewed the Work performed by Gulf Stream.

24.

As a government contractor involved in the Hurricane Katrina disaster assistance provided by FEMA, Gulf Stream has available to it the government contractor defense.[4] *See In re World Trade Center Disaster Site Litigation,* 521 F.3d 169, 197 (2d Cir. 2008) (applying the government contractor defense to "the disaster relief context due to the unique federal interest in coordinating federal disaster assistance and streamlining the management of large-scale disaster recovery projects, as evidenced by the Stafford Act.").

25.

In accordance with the requirements of 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal, Gulf Stream will give written notice of this Notice of Removal to all

---

[4] For purposes of removal, Gulf Stream Coach, Inc. is not required to prove success on its defense. *Mesa,* 489 U.S. at 133; *Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1427 (11th Cir. 1996) ("defense need only be plausible; its ultimate validity is not to be determined at the time of removal."); *Jamison v. Wiley,* 14 F.3d 222, 238 (4th Cir. 1994) ("defendant need not prove that he will actually prevail on his federal immunity defense in order to obtain removal"). Rather, Gulf Stream is only required to show a causal connection between the plaintiffs' claims and Gulf Stream's performance as a federal contractor; Gulf Stream has done so. *See Williams v. Todd Shipyards Co.,* 154 F.3d 416, 1998 WL 526612, *6 (5th Cir. 1998).

adverse parties and will file a copy of this Notice of Removal with the Clerk for the Circuit

Court of Hancock County, Mississippi.

       **WHEREFORE,** Defendant, Gulf Stream Coach, Inc., prays that this matter be removed

to the United States District Court for the Southern District of Mississippi for further proceedings

and disposition.

       Respectfully submitted,

       GULF STREAM COACH, INC.


       By: _____

           One of Its Attorneys


OF COUNSEL:

BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
WILLIAM TREY JONES, III, MSB No. 99185
P.O. Drawer 119
Jackson, MS 39205
Telephone: (601) 960-6857
Facsimile: (601) 960-6902
tjones@brunini.com
TAYLOR B. MCNEEL, MSB No. 102737
P.O. Box 127
Biloxi, MS 39533-0127
Telephone: (228) 435-1198
Facsimile: (228) 435-0639
tmcneel@brunini.com

DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK
ANDREW D. WEINSTOCK (#18495)
JOSEPH G. GLASS (#25397)
3838 N. Causeway Boulevard, Suite 2900
Metairie, LA 70002
Telephone: (504) 832-3700
andreww@duplass.com
jglass@duplass.com

SCANDURRO & LAYRISSON
TIMOTHY D. SCANDURRO(#18424)
DEWEY M. SCANDURRO (#23291)
607 St. Charles Avenue
New Orleans, LA 70130
Telephone: (504) 522-7100
tim@scanlayr.com
dewey@scanlayr.com

**COUNSEL FOR DEFENDANT, GULF STREAM COACH, INC.**

## CERTIFICATE OF SERVICE

I, Taylor B. McNeel, do hereby certify that I have this day mailed, by United States Mail, postage prepaid, a true and correct copy of the foregoing to the following counsel of record:

>John Hawkins, Esq.
>Hawkins, Stracener & Gibson, PLLC
>P.O. Box 24627
>Jackson, MS 39202
>
>Edward Gibson, Esq.
>Rose M. Hurder, Esq.
>Hawkins, Stracener & Gibson, PLLC
>153 Main Street
>Bay St. Louis, MS 39520
>
>Ryan E. Johnson, Esq.
>Jones Walker
>Four United Plaza
>8555 United Plaza Boulevard
>Baton Rouge, LA 70809
>
>Gerardo R. Barrios, Esq.
>Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
>3 Sanctuary Blvd., Suite 201
>Mandeville, LA 70471

This the 25th day of August, 2010.

Taylor B. McNeel,
Attorney for Gulf Stream Coach, Inc.

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

**1:10cv424HSO-JMR**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Brian Carpenter and Hollie Carpenter, Individually and on Behalf of their Minor Children JCH, JTC and JDC | Doug Boyd Enterprises, LLC; Gulf Stream Coach, Inc.; Dutchmen Manufacturing, Inc.; Superior Homes, LLC; Bechtel National, Inc.; CH2M Hill Constructors, Inc.; and John Doe 1-50 |

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
AUG 2 5 2010
J. T. NOBLIN, CLERK
BY _____ DEPUTY

**(b)** County of Residence of First Listed Plaintiff    Hancock
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
John Hawkins, Esq. Hawkins, Stracener & Gibson, PLLC, P. O. Box 24627, Jackson, MS 39202, Telephone (601) 969-9692, Fax (601) 914-3580 (See attached)

Attorneys (If Known)
William Trey Jones, III, Brunini, Grantham, Grower & Hewes, PLLC, P. O. Drawer 119, Jackson, MS 39205, Telephone (601) 960-6857, Fax: (601) 960-6902, tjones@brunini.com (See attached)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product     Med. Malpractice | ☐ 625 Drug Related Seizure |    28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |    Liability    ☒ 365 Personal Injury - |    of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &     Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
|    & Enforcement of Judgment |    Slander    ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent |    Corrupt Organizations |
| ☐ 152 Recovery of Defaulted |    Liability     Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|    Student Loans | ☐ 340 Marine     |    Safety/Health | | ☐ 490 Cable/Sat TV |
|    (Excl. Veterans) | ☐ 345 Marine Product    **PERSONAL PROPERTY** | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment |    Liability    ☐ 370 Other Fraud | | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 371 Truth in Lending | **LABOR** | ☐ 862 Black Lung (923) |    Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract |    Product Liability     Property Damage |    Act | ☐ 864 SSID Title XVI |    12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |    Injury     Product Liability | ☐ 730 Labor/Mgmt.Reporting | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** |    & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting    ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment     Sentence | ☐ 790 Other Labor Litigation |    or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/    **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land |    Accommodations    ☐ 530 General |    Security Act |    26 USC 7609 |    Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare    ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | **IMMIGRATION** | |    Under Equal Access |
| |    Employment    ☐ 550 Civil Rights | ☐ 462 Naturalization Application | |    to Justice |
| | ☐ 446 Amer. w/Disabilities -    ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - | | ☐ 950 Constitutionality of |
| |    Other    |    Alien Detainee | |    State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 465 Other Immigration | | |
| | |    Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §1332

Brief description of cause:
_____

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
8-25-10

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 40430012.40 $350.00    APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**Additional Counsel for Plaintiffs Brian and Hollie Carpenter, Individually and on Behalf of Their Minor Children, JCH, JTC and JDC**

Edward Gibson, Esq.
Rose M. Hurder, Esq.
Hawkins, Stracener & Gibson, PLLC
153 Main Street
Bay St. Louis, MS 39520
Telephone: (228) 469-0785
Fax: (228) 467-4212

**Additional Counsel for Defendant, Gulf Stream Coach, Inc.:**

Taylor B. McNeel, Esq.
Brunini, Grantham, Grower & Hewes, PLLC
P. O. Box 127
Biloxi, MS 39533-0127
Telephone: (228) 435-1198
Fax: (228) 435-0693
tmcneel@brunini.com

Andrew D. Weinstock, Esq.
Joseph G. Glass, Esq.
Duplass, Zwain, Bourgeois, Pfister & Weinstock
3838 N. Causeway Blvd., Suite 2900
Metairie, LA 70002
Telephone: (504) 832-3700
Fax: (504) 837-3119
andreww@duplass.com
jglass@duplass.com

Timothy D. Scandurro, Esq.
Dewey M. Scandurro, Esq.
Scandurro & Layrisson
607 St. Charles Ave.
New Orleans, LA 70130
Telephone: (504) 522-7100
Fax: (504) 529-6199
tim@scanlayr.com
dewey@scanlayr.com

RECEIVED AUG 0 6 2010

## IN THE CIRCUIT COURT OF HANCOCK COUNTY, MISSISSIPPI

**BRIAN CARPENTER, et al**             **PLAINTIFFS**

**V.**             **DOCKET NO:** <u>10-0337</u>

**DOUG BOYD ENTERPRISES, LLC, GULF
STREAM COACH, INC., DUTCHMEN
MANUFACTURING, INC., SUPERIOR HOMES,
LLC, BECHTEL NATIONAL, INC., CH2M HILL
CONSTRUCTORS, INC., and JOHN DOE 1-50**       **DEFENDANTS**

## SUMMONS

THE STATE OF MISSISSIPPI
COUNTY OF HANCOCK

TO:    Gulf Stream Coach, Inc.
       Through its Agent for Service of Process
       Kenneth C. Brinker
       503 South Oakland
       Nappannee, IN 46550

       Or Wherever It May Be Found

THE COMPLAINT AND AMENDED COMPLAINT WHICH ARE ATTACHED TO THIS
SUMMONS ARE IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT
YOUR RIGHTS.

      You are required to mail or hand-deliver a copy of a written response to the Complaint to
Edward Gibson, the attorney for the Plaintiff whose address is 153 Main Street, Bay Saint Louis,
Mississippi 39520. Your response must be mailed or delivered within thirty (30) days from the date
of delivery of this Summons and Complaint or a judgment by default will be entered against you for
the money or other things demanded in the Complaint.

      You must also file the original of your response with the Clerk of this Court within a
reasonable time afterward.

      Issued under my hand and seal of said Court, this the 29 day of _____, 2010.

      (SEAL)            **HANCOCK COUNTY CIRCUIT CLERK**

BY: _____


EXHIBIT
A

RECEIVED AUG 0 6 2010

IN THE CIRCUIT COURT OF HANCOCK COUNTY, MISSISSIPPI

BRIAN CARPENTER and HOLLIE CARPENTER,
Individually and on Behalf of Their Minor Children
JCH, JTC and JDC

                                                       **PLAINTIFFS**

V.                               **DOCKET NO:** 10-0337

DOUG BOYD ENTERPRISES, LLC,
GULF STREAM COACH, INC., DUTCHMEN
MANUFACTURING, INC., SUPERIOR HOMES, LLC,
BECHTEL NATIONAL, INC., CH2M HILL
CONSTRUCTORS, INC., and JOHN DOE 1-50

FILED

JUN 01 2010

KAREN LADNER RUHR
CIRCUIT CLERK HANCOCK **DEFENDANTS**
BY _____ D.C.

---

**COMPLAINT FOR DAMAGES**
(jury trial requested)

---

This Complaint of certain persons of the full age of majority, on behalf of themselves and,

in some instances, on behalf of individuals who lack the capacity to sue individually (hereinafter,

"Plaintiffs"), who are all named in the annexed listing of the Plaintiffs, respectfully represents

through undersigned counsel that:

## I. PARTIES

1.     Plaintiffs, HOLLIE CARPENTER and BRIAN CARPENTER, along with their minor

children, are resident citizens of Bay St. Louis, Hancock County, Mississippi.

2.     Defendant DOUG BOYD ENTERPRISES, LLC, (hereinafter DBE) is a North

Carolina licensed to do business in Mississippi. Defendant DOUG BOYD ENTERPRISES, LLC

was the maintenance company required to perform maintenance for the trailer in question.

3.     GULF STREAM COACH, INC. (hereinafter Gulf Stream) is upon information and

belief, an entity incorporated in the state of Indiana, which conducts business in the State of

Mississippi, and which manufactured and supplied FEMA trailers or housing units as defined below

pursuant to contracts with FEMA for use in the State of Mississippi.

4.    DUTCHMEN MANUFACTURING, INC. (hereinafter Dutchmen) is upon information and belief, an entity incorporated in the state of Indiana, which conducts business in the State of Mississippi, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the State of Mississippi.

5.    SUPERIOR HOMES, LLC (hereinafter Superior) is upon information and belief, an entity incorporated in the state of Alabama, which conducts business in the State of Mississippi, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the State of Mississippi.

6.    BECHTEL NATIONAL INC, (hereinafter "Bechtel"), a Nevada corporation with its principal place of business in California, licensed to do business in the State of Mississippi and in good standing, received a No-Bid contract from FEMA and was tasked with, among other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of Hurricane Katrina, including Hollie Carpenter and Brian Carpenter, Individually and on behalf of their minor children JCH, JDC and JTC.

7.    CH2M HILL CONSTRUCTORS, INC. (hereinafter "CH2M"), a Delaware corporation with its principal place of business in Colorado, licensed to do business in the State of Mississippi and in good standing, received a No-Bid contract from FEMA and was tasked with, among other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided

**COMPLAINT FOR DAMAGES**
Page 2 of 26

by FEMA to the victims of Hurricane Katrina, including Hollie Carpenter and Brian Carpenter, Individually and on behalf of their minor children JCH, JTC, and JDC.

      8.    Defendants John Does 1-10 are those persons, agents, employees, and/or representatives of Defendants whose conduct as described herein caused or contributed to the damages of the Plaintiffs, all of whose names and legal identities are unknown to the Plaintiffs at this time, but will be substituted by amendment when ascertained, individually and jointly.

## III. JURISDICTION AND VENUE

      9.    GULF STREAM COACH, INC., is subject to the *in personam* jurisdiction of this Court because it does sufficient business in the State of Mississippi and within this federal district to confer same, and at all relevant times hereto engaged in commerce both in this federal district and in the State of Mississippi with respect to the activities and claims which are the subject of this litigation.

      10.    SUPERIOR HOMES, LLC, is subject to the *in personam* jurisdiction of this Court because it does sufficient business in the State of Mississippi and within this federal district to confer same, and at all relevant times hereto engaged in commerce both in this federal district and in the State of Mississippi with respect to the activities and claims which are the subject of this litigation.

      11.    DUTCHMEN MANUFACTURING, INC, is subject to the *in personam* jurisdiction of this Court because it does sufficient business in the State of Mississippi and within this federal district to confer same, and at all relevant times hereto engaged in commerce both in this federal district and in the State of Mississippi with respect to the activities and claims which are the subject of this litigation.

**COMPLAINT FOR DAMAGES**
Page 3 of 26

12.     BECHTEL NATIONAL, INC. is subject to the *in personam* jurisdiction of this Court because it does sufficient business in the State of Mississippi, has committed torts in whole or in part within the State of Mississippi and the Defendant has such contacts with the State that the exercise of personal jurisdiction comports with due process and traditional notions of fair play. BECHTEL NATIONAL, INC., at all relevant times hereto engaged in commerce and committed torts in the State of Mississippi with respect to the activities and claims which are the subject of this litigation.

13.     CH2M HILL CONSTRUCTORS, INC. is subject to the *in personam* jurisdiction of this Court because it does sufficient business in the State of Mississippi, has committed torts in whole or in part within the State of Mississippi and the Defendant has such contacts with the State that the exercise of personal jurisdiction comports with due process and traditional notions of fair play. CH2M HILL CONSTRUCTORS, INC. at all relevant times hereto engaged in commerce and committed torts in the State of Mississippi with respect to the activities and claims which are the subject of this litigation.

14.     Venue is proper in Hancock County because the acts and omission complained of occurred there and the Plaintiffs reside there.

## IV. FACTS AND GENERAL ALLEGATIONS

15.     The plaintiffs resided in a FEMA travel trailer after the landfall of Hurricane Katrina in August of 2005.

16.     Of the housing units at issue, "travel trailers" are wheel-mounted and generally no larger than 8 feet wide and 40 feet long, for an average area of less than 320 square feet. They are designed to provide temporary living quarters and are generally considered vehicles, regulated by

**COMPLAINT FOR DAMAGES**
Page 4 of 26

state transportation authorities rather than housing authorities. *Id. See* CENTER FOR DISEASE CONTROL AND PREVENTION, INTERIM FINDINGS ON FORMALDEHYDE LEVELS IN FEMA-SUPPLIED TRAVEL TRAILERS, PARK MODELS, AND MOBILE HOMES, Feb. 29, 2008, at 4, *available at* www.cdc.gov/Features/FEMAtrailersFindings/pdf/interim_findings.pdf.

17.     The Plaintiffs' residence was rendered unhabitable following Hurricanes Katrina, leaving them in need of housing assistance.

18.     FEMA contracted with Defendants Gulf Stream, Dutchmen and Superior Homes to purchase thousands of the housing units, primarily travel trailers, for provision to individuals, including plaintiffs, as temporary housing.

19.     On information and belief, Defendants Gulf Stream, Dutchmen and Superior Homes expedited production of these housing units, and, on information and belief, resorted to using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing units occupied by Plaintiffs containing higher than normal levels of formaldehyde.

20.     On information and belief, the travel trailer in question was manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, deviated from Government specifications pertaining to the safety of the unit as a residence.

21.     Plaintiffs submit that the travel trailer at issue, whether manufactured prior to the hurricanes or later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to Defendants Gulf Stream, Dutchmen and Superior Homes' use of certain materials in their construction, and/or posed the threat of producing dangerous levels of

formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, but that Defendants Gulf Stream, Dutchmen and Superior Homes failed to warn the Federal Government about these dangers, which initially were not known to the Federal Government.

22.     Plaintiffs submit that Defendants Gulf Stream, Dutchmen and Superior Homes ignored, or concealed and/or condoned the concealment of, the fact that each and all of the housing units at issue contained dangerous levels of formaldehyde due to Defendants Gulf Stream's, Dutchmen's and Superior Homes' use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, all in order to sell Defendants Gulf Stream's, Dutchmen's and Superior Homes' products, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions.

23.     Plaintiffs spent significant time in the FEMA-provided trailers manufactured by Defendants Gulf Stream, Dutchmen and Superior Homes. As a result, the Plaintiffs unwittingly were exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing units.

24.     Formaldehyde is found in construction materials such as particle board, fiberboard and plywood, as well as glues and adhesives used in the manufacture of the housing units. Pursuant to federal law, the defendants are required to display a "Health Notice" about exposure to formaldehyde which reads:

IMPORTANT HEALTH NOTICE

**COMPLAINT FOR DAMAGES**
Page 6 of 26

Some of the building materials used in this home emit formaldehyde. Eye, nose and throat irritation, headache, nausea, and a variety of asthma-like symptoms, including shortness of breath, have been reported as a result of formaldehyde exposure. Elderly persons and young children, as well as anyone with a history of asthma, allergies, or lung problems, may be at greater risk. Research is continuing on the possible long-term effects of exposure to formaldehyde.

Reduced ventilation resulting from energy efficiency standards may allow formaldehyde and other contaminants to accumulate in the indoor air. Additional ventilation to dilute the indoor air may be obtained from a passive or mechanical ventilation system offered by the manufacturer. Consult your dealer for information about the ventilation options offered with this home.

High indoor temperatures and humidity raise formaldehyde levels. When a home is to be located in areas subject to extreme summer temperatures, an air-conditioning system can be used to control indoor temperature levels. Check the comfort cooling certificate to determine if this home has been equipped or designed for the installation of an air-conditioning system.

If you have any questions regarding the health effects of formaldehyde, consult your doctor or local health department.

*See* 24 C.F.R. §3280.309.

25.     According to the National Cancer Institute, formaldehyde has been classified as a human carcinogen (cancer-causing substance) by the International Agency for Research on Cancer and as a probable human carcinogen by the U.S. Environmental Protection Agency ("EPA"). Additionally, the Agency for Toxic Substances and Disease Registry ("ATSDR") has reported to FEMA and members of Congress that not only is formaldehyde classified as "reasonably anticipated to be a human carcinogen," but also that there is no recognized safe level of exposure, and that any level of exposure to formaldehyde may pose a cancer risk, regardless of duration.

26.     Most published exposure standards for formaldehyde address protective levels for the

**COMPLAINT FOR DAMAGES**
Page 7 of 26

adult working population in the workplace, based upon a 40-hour work week, and specifically do not address chronic exposure levels or protective levels for the more susceptible population, for instance, the very young, the elderly and those with respiratory, skin and other chronic diseases. Nonetheless, reference to the levels established by the Occupational Safety and Health Administration ("OSHA") evidences formaldehyde's harmful effects. In 1987, OSHA reduced the amount of formaldehyde to which workers can be exposed over an 8-hour day from 3 ppm to 1 ppm. In May, 1992, the formaldehyde exposure limit was further reduced to .75 ppm.

27.     HUD regulates formaldehyde levels in certain construction materials to include the pressed wood products used in manufactured housing (such as prefabricated mobile homes). HUD has far stricter exposure limits for residential formaldehyde emissions. By regulation, "All plywood and particle board materials bonded with a resin system or coated with a surface finish containing formaldehyde shall not exceed the following formaldehyde emission levels when installed in manufactured homes: (1) Plywood materials shall not emit formaldehyde in excess of 0.2 parts per million (ppm)...[and] (2) Particle board materials shall not emit formaldehyde in excess of 0.3 ppm...". *See* 24 C.F.R. §3280.308.

28.     Both the EPA and the ATSDR have suggested values for safe formaldehyde exposure, which are reproduced below, which values are applicable herein since the FEMA trailers/housing units at issue were intended to be occupied for up to a year and a half by evacuees. *See* 44 C.F.R. §206.110(e).

| Agency | Standard |
|---|---|
| EPA recognized level at which acute health effects can manifest | 0.1 parts per million (ppm) |

**COMPLAINT FOR DAMAGES**
Page 8 of 26

| Agency for Toxic Substances and Disease Registry Minimum Risk Levels (MRL) | 0.04 ppm - short exposures up to 14 days |
|---|---|
| | 0.03 ppm – exposure durations between 15 and 364 days |
| | 0.008 ppm – exposures of 365 days or greater |

*See* Union of Concerned Scientists, Citizens and Scientists for Environmental Solutions, *FEMA Exposes Gulf Coast Residents to Formaldehyde*, Updated on Dec 19, 2007, *available at* http://www.ucsusa.org/scientific_integrity/interference/fema-trailers.html.

29.    Defendants Gulf Stream, Dutchmen and Superior Homes knew or should have known of the health hazards inherent in the products it constructed, by familiarity with industry standards, the material safety data sheets in its possession, and published medical studies.

30.    In order to implement and manage its disaster response obligation and temporary housing obligations, FEMA engaged Defendants Bechtel and CH2M with No-Bid contracts, eventually amounting to billions of dollars. The Federal Government also relied on the expertise and knowledge of Defendants Bechtel and CH2M to provide information and advice on, among other things, the conversion of mobile travel trailers into temporary housing units for periods up to, and potentially exceeding, eighteen months in duration.

31.    Defendants Bechtel and CH2M were tasked with the transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units.

32.    Under the terms of their contracts, Defendants Bechtel and CH2M were obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and

**COMPLAINT FOR DAMAGES**

indicated by the manufacturers of same. Further, under their No-Bid contracts with FEMA, Defendants Bechtel and CH2M were obligated to advise and instruct FEMA regarding the implementation of those contracts. Defendants Bechtel and CH2M failed to properly fulfill either of these tasks.

33.     Defendants Bechtel and CH2M contracted with FEMA to pick-up and transport the temporary housing units from FEMA-controlled staging areas and deliver them to areas which Defendants Bechtel and CH2M were tasked with operating. These new areas included staging areas to be managed and maintained as assigned to Defendants Bechtel and CH2M or individual locations and addresses where Defendants Bechtel and CH2M assigned that temporary housing unit would have obligations to manage and maintain it.

34.     To accomplish their contractual obligations with FEMA, in addition to the use of subsidiary companies, Defendants Bechtel and CH2M entered into numerous sub-contracts, but at all times retained supervisory capacity and responsibility under its individual contracts with FEMA.

35.     Defendants Bechtel and CH2M were tasked under its contracts with FEMA to identify and prepare the infrastructure for the various group site locations. This included, among other things, ensuring there would be adequate water, sewage, electricity, etc. Defendants Bechtel and CH2M knew or should have known that these preparations were for long-term occupancy of the temporary housing units.

36.     Once the temporary housing unit(s) occupied by the Plaintiff(s) were transported and delivered to a particular location, Defendants Bechtel and CH2M had the responsibility for installing that temporary housing unit. Defendants Bechtel and CH2M installed the temporary housing units

by "blocking" the unit. This meant raising the Plaintiff's unit several feet into the air and off of its wheel base, and setting it on concrete blocks.

37. By blocking the temporary housing unit(s) of Plaintiffs, Defendants Bechtel and CH2M created stress and flexing on the frames of the unit as it was not designed to be lifted off of the wheel base. In fact, the manufacturers of the temporary housing units warned in the various owners' manuals provided with the units, that units should not be jacked so that the vehicle's weight is no longer supported by the wheels.

38. The stress and flexing of temporary housing units' frames caused by Defendants Bechtel and CH2M "blocking" them with weight off of the wheels created distortion in the travel trailer's shell allowing increased moisture intrusion which contributed to increased formaldehyde exposures.

39. The temporary housing unit(s) occupied by the Plaintiff(s) which were provided by FEMA were for the most part travel trailers. The travel trailers are, by definition, mobile. They are designed for and intended for periodic, recreational use and not for long-term habitation. By installing the travel trailers on concrete blocks for extended occupancy, Defendants Bechtel and CH2M knowingly and intentionally modified the design and the actual use of these units occupied by the Plaintiff(s) by converting them into a temporary housing unit to be used as a residence for long term occupancy in some instances exceeding 18 months.

40. Defendants Bechtel and CH2M failed to consult with the manufacturers of the temporary housing units, including Defendants Gulf Stream, Dutchmen and Superior Homes , with regard to the installation, warnings, warranty issues or advisability of using travel trailers for long

term residence and occupation. Defendants Bechtel and CH2M took actions which voided the warranties of the manufacturers and directly created or contributed to unsafe and hazardous living conditions in the temporary housing units.

41. Once Defendants Bechtel and CH2M had completed the transportation, delivery and installation of the temporary housing unit(s) occupied by the Plaintiff(s), Defendants Bechtel and CH2M were tasked with inspecting each unit to ensure that it was safe and habitable, prior to occupancy by the Plaintiff(s). Upon information and belief, Defendants Bechtel and CH2M failed to adequately inspect the temporary housing unit occupied by the Plaintiff(s) to ensure that the units were safe and suitable for their intended use – the long-term occupancy by individuals and families displaced by Hurricane Katrina. This failure to properly inspect the units for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by hurricane victims.

42. In addition to transportation, site identification, installation and inspection, the temporary housing units occupied by the Plaintiff(s) provided in response to Hurricane Katrina were also managed, maintained and repaired by Defendants Bechtel and CH2M, or their various subcontractors over whom they maintained direct oversight and responsibility. Upon information and belief, Defendants Bechtel and CH2M failed to adequately manage, maintain and repair the temporary housing units which enabled and contributed to the unsafe and hazardous conditions that led to adverse health effects amongst the Plaintiff(s).

43. Parallel to its duty to manage, maintain and repair each temporary housing unit, Defendants Bechtel and CH2M failed to undertake appropriate action, maintenance or repair in response to numerous complaints made by the Plaintiff-occupant(s) of the temporary housing units

to various adverse health effects caused by exposure to elevated levels of formaldehyde.

44.     Following the Plaintiffs' occupancy of each temporary housing unit, Defendants Bechtel and CH2M were tasked with its de-installation. Upon discovering the deteriorated condition of the temporary housing units at the time of de-installation and removal, Defendants Bechtel and CH2M failed to identify the unsuitability of the temporary housing units for long-term occupancy.

45.     In addition to de-installation of the temporary housing units, Defendants Bechtel and CH2M were tasked with refurbishment and restoration of the temporary housing units for use, either in direct response to Hurricane Katrina or for use in the future. By restoring and refurbishing these temporary housing units, Defendants Bechtel and CH2M warranted that the units were fit for their intended use, long term occupancy in response to disaster related displacement. By restoring and refurbishing these temporary housing units, Defendants Bechtel and CH2M created and perpetuated existing hazardous conditions which would foreseeably lead to adverse health effects caused by the elevated levels of formaldehyde in the temporary housing units. Further, in thousands of cases, following the restoration and refurbishment, these temporary housing units were immediately occupied by new individuals or families displaced by Hurricane Katrina, and who were then directly exposed to hazardous levels of formaldehyde.

46.     Defendants Bechtel and CH2M , at every stage of their involvement, failed to warn the Plaintiff-occupant(s) of each temporary housing unit of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde – a known human carcinogen – which led directly to adverse health effects, including but not limited to the advent of

childhood asthma and the onset of adult asthma in some of the Plaintiffs.

47. Through its actions and omissions, Defendants Bechtel and CH2M created and perpetuated a situation wherein occupants of the temporary housing units were exposed to elevated levels of formaldehyde and, as a result, suffered adverse health effects. Defendants Bechtel and CH2M negligently failed to adhere to the manufacturer instructions and warnings related to: (1) the manufacturers' intended (short-term) use of the temporary housing units; (2) the installation and set-up of the temporary housing units; and (3) the warning that the temporary housing units contained urea formaldehyde resin which would release formaldehyde gas directly into the intended living space.

48. Defendants Bechtel and CH2M failed to warn the occupants of temporary housing unit(s) of the hazardous conditions created by the elevated levels of formaldehyde in the temporary housing units.

49. By restoring and refurbishing the trailer for future habitation, Defendants Bechtel and CH2M improperly and negligently warranted that the units were fit for the intended use of long-term occupancy.

50. Finally, despite these failures, Defendants Bechtel and CH2M received billions of dollars in contracts from FEMA and the United States government, at the expense of the health of the Plaintiff-occupant(s) of the temporary housing units who simply had nowhere else to go and who were relying on defendants to keep them safe in the aftermath of the greatest natural disaster in the history of the United States.

51. Defendant DBE was required to perform maintenance work on Plaintiff's unit.

Defendant DBE negligently failed or refused to provide adequate maintenance work and failed to take responsible, reasonable action that a reasonable maintenance company would do under the circumstances, including failing to perform routine work, address concerns of Plaintiffs or warn of dangerous conditions.

52.   CDC testing revealed the following important findings regarding FEMA trailers: (1) the formaldehyde levels were higher than typical levels of U.S. indoor exposure in single-family homes and apartments; (2) levels ranged from 3 parts per billion (ppb) to 590 ppb, with the average levels in all units measuring 77 ppb, the latter being higher than U. S. background levels in single-family homes and apartments; (3) the levels recorded in many of the units could affect the occupants' health; (4) the contemporary measured levels are likely to under-represent long-term exposures because formaldehyde levels tend to be higher in newer housing units and during warmer weather; (5) higher indoor temperatures were associated with higher formaldehyde levels, independent of unit make or model; and, (6) formaldehyde levels varied by type of housing unit (mobile home, park model, and travel trailer), but all types tested had elevated levels compared to the data on single-family homes and apartments.

53.   The CDC's recommendations as a result of this testing included the following: (1) move quickly to relocate residents before the weather in the region warms up; (2) FEMA and the CDC to consider establishment of a registry to conduct long-term health monitoring of children and others who resided in FEMA- provided housing units in the Gulf Coast Region; (3) families still living in FEMA-provided housing units should spend as much time outdoors as possible and maintain the temperature inside the units at the lowest comfortable level as well as ventilate the unit;

**COMPLAINT FOR DAMAGES**
Page 15 of 26

and, (4) establish available construction practices which could assure safe and healthy conditions.

54.     The conduct of defendants in violation of Mississippi law caused the minor Plaintiffs damages, medical bills incurred on behalf of JCH, JDC and JTC as well as physical and emotional pain and suffering due chronic sinusitis, bronchitis, upper respiratory tract infections, croup, pharyngitis, shortness of breath, wheezing, abdominal pain, vomiting, nausea, rashes and headaches.

### COUNT I

#### CAUSES OF ACTION AGAINST MANUFACTURING DEFENDANTS GULF STREAM, DUTCHMEN AND SUPERIOR HOMES MISS. CODE ANN. §11-1-63

55.     Defendants Gulf Stream, Dutchmen and Superior Homes, at the time that each subject housing unit left their control, knew or should have known that each product was defective because it deviated in a material way from the manufacturers' specifications or from otherwise identical units manufactured to the same manufacturing specifications.

56.     Defendants Gulf Stream, Dutchmen and Superior Homes knew or should have known that the defective condition rendered each subject housing unit unreasonably dangerous to the user or consumer or others; and

57.     The defective and unreasonably dangerous condition of each product (the failure of the subject housing units to be safely habitable without exposure to formaldehyde) proximately caused the damages and injuries sustained by Plaintiffs.

58.     At the time the subject housing units left the control of Defendants Gulf Stream, Dutchmen and/or Superior Homes, each subject housing unit did not contain properly selected prepared and installed components.

59.     At all relative times, the Plaintiffs lacked actual or constructive knowledge of the defective condition of their respective housing units and that each defective product was inconsistent with their safety.

60.     At all relevant times, the Plaintiffs did not appreciate the danger of their housing unit's defective condition.

61.     At all relevant times, the Plaintiffs did not deliberately and voluntarily choose to expose themselves to this danger in such a manner to register assent to the continuance of the dangerous condition.

62.     Each subject housing unit in question failed to function as expected as a result of their design characteristics.

63.     An alternative design existed at the time that each housing unit left the control of Defendants Gulf Stream, Dutchmen and/or Superior Homes which would have not impaired the product's usefulness or desirability.

64.     The alternative design would have to a reasonable probability prevented the toxic exposure of Plaintiffs.

65.     The housing unit was defective because it failed to contain adequate warnings or instructions.

66.     The housing unit breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use this product.

## COUNT II

### STRICT LIABILITY AND NEGLIGENCE OF
### DEFENDANTS GULF STREAM, DUTCHMEN AND SUPERIOR HOMES

**COMPLAINT FOR DAMAGES**
Page 17 of 26

67.     Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

68.     Defendants Gulf Stream, Dutchmen and Superior Homes knew or should have known that the subject housing units were defective and unreasonably dangerous to the user or consumer or others because of the excessive formaldehyde present in the housing units, which condition was foreseeable. Notwithstanding, Defendants Gulf Stream, Dutchmen and Superior Homes allowed the defective and dangerous housing units to be placed into the stream of commerce and to reach Plaintiffs without substantial change.

69.     Defendants Gulf Stream, Dutchmen and Superior Homes failed to warn Plaintiffs of the excessive levels/emissions of formaldehyde and the hazards associated therewith. Defendants Gulf Stream, Dutchmen and Superior Homes owed Plaintiffs a non-delegable duty to warn of any dangerous and defective conditions under theories of negligence and strict liability.

70.     Defendants Gulf Stream, Dutchmen and Superior Homes were negligent in one or more of the following respects which proximately contributed to Plaintiffs' injuries:

a.     In manufacturing and distributing the subject housing units to Plaintiffs for use as temporary housing. which housing was defective and unreasonably dangerous for use due to the present of excessive formaldehyde levels/emissions;

b.     In failing to properly test/inspect the subject housing units to properly evaluate the presence and/or levels of formaldehyde under foreseeable conditions for extended periods of time;

c.     In manufacturing, advertising, marketing, distributing, and selling the subject housing units to third party users when they knew or should have known that the housing

**COMPLAINT FOR DAMAGES**
Page 18 of 26

units were defective and not suitable for use under foreseeable conditions;

d.      In failing to provide proper and adequate warnings, after the sales of the subject housing units, of the hazards associated with excessive levels/emissions of formaldehyde; and,

e.      In failing to properly hire, train, and supervise individuals to inspect materials used in the manufacture of the subject housing units to ensure that such materials/component parts did not emit excessive levels of formaldehyde.

## COUNT III

### NEGLIGENCE OF DEFENDANTS BECHTEL AND CH2M UNDER MISSISSIPPI LAW

71.     Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

72.     At all relevant times, Defendants Bechtel and CH2M were tasked with the transportation, installation, site identification, preparation, inspection, maintenance and repair, refurbishment and restoration, and removal of the temporary housing units, which caused the Plaintiffs' injuries.

73.     Defendants Bechtel and CH2M owed a duty to Plaintiffs to provide, transport, install, inspect, maintain, repair, refurbish, recondition and restore safe temporary housing units that did not emit hazardous levels of formaldehyde.

74.     Defendants Bechtel and CH2M knew or should have known when they provided, transported, installed, inspected, maintained, repaired, refurbished, reconditioned and restored the temporary housing units to the general public (thereby modifying and converting the mobile units into residential installations) the actual and intended use of the temporary housing units by each

Plaintiff, and that the temporary housing units would be used in the manner that each Plaintiff herein used the temporary housing units.

75.    Defendants Bechtel and CH2M breached their duty to Plaintiffs in failing to act reasonably in the provision, installation, inspection, maintenance, repair, refurbishment, reconditioning and restoration of the temporary housing units; specifically by:

a.    Failing to sufficiently warn the Plaintiffs of the inherently dangerous properties or the foreseeable conditions of the temporary housing units when used for long term occupancy; and

b.    Failing to adhere to the manufacturers' warnings against jacking the temporary housing units off the wheel base by "blocking" the units;

76.    Defendants Bechtel's and CH2M's actions were the proximate cause of the increased exposure of formaldehyde to Plaintiffs.

77.    Defendants Bechtel and CH2M contributed to and exacerbated the adverse health impacts upon the residents of the temporary housing units.

## COUNT IV

### STRICT PRODUCTS LIABILITY OF DEFENDANT NO-BID CONTRACTOR DEFENDANTS BECHTEL AND CH2M UNDER MS CODE ANNOTATED §11-1-63

78.    Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

79.    Defendants Bechtel and CH2M , at the time that each subject housing unit left their control, knew or should have known that each product was defective because it deviated in a material way from the manufacturers' specifications or from otherwise identical units manufactured to the same manufacturing specifications and/or manufacturers' warnings.

**COMPLAINT FOR DAMAGES**
Page 20 of 26