80.     Defendants Bechtel and CH2M, by installing the housing units on concrete blocks for extended occupancy, knowingly and intentionally modified the design and the actual use of the housing units.

81.     Defendants Bechtel and CH2M knew or should have known that the defective condition rendered each subject housing unit unreasonably dangerous to the user or consumer or others.

82.     The defective and unreasonably dangerous condition of each product (the failure of the subject housing units to be safely habitable without exposure to formaldehyde) proximately caused the damages and injuries sustained by Plaintiffs.

83.     At all relative times, the Plaintiffs lacked actual or constructive knowledge of the defective condition of their respective housing units and that each defective product was inconsistent with their safety.

84.     At all relevant times, the Plaintiffs did not appreciate the danger of their housing unit's defective condition.

85.     At all relevant times, the Plaintiffs did not deliberately and voluntarily choose to expose themselves to this danger in such a manner to register assent to the continuance of the dangerous condition.

86.     Each subject housing unit in question failed to function as expected as a result of its design characteristics.

87.     An alternative design existed at the time that each housing unit left the control of the Manufacturer which would have not impaired the product's usefulness or desirability.

**COMPLAINT FOR DAMAGES**
Page 21 of 26

88.     The alternative design would have to a reasonable probability prevented the toxic exposure of each Plaintiff.

89.     Each product (housing unit) was defective because it failed to contain adequate warnings or instructions.

90.     Defendants Bechtel and CH2M failed to warn the Plaintiffs of the inherently dangerous properties for the foreseeable conditions of the subject housing units when used for long term occupancy.

91.     Defendants Bechtel and CH2M failed to warn the Plaintiffs of the presence of excessive levels of formaldehyde present in the housing units they installed, maintained and supervised.

92.     Furthermore, Defendants Bechtel and CH2M breached the implied warranty of habitability due to the Plaintiffs. The subject housing units were installed and maintained with an expectation of habitability and a clear implied warranty that such housing would be safe and free of any toxic dangers.

## COUNT V

## BREACH OF CONTRACT BY NO-BID CONTRACTOR DEFENDANTS BECHTEL AND CH2M

93.     All paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

94.     Defendants Bechtel and CH2M entered into contracts with FEMA, contracting to provide the following service, among others: "The contractor will do maintenance necessary to maintain the temporary housing units in a safe, working, and livable, condition."

95. The Plaintiffs constitute third party beneficiaries to the subject contracts. The contracts were entered into for the Plaintiffs' benefit as residents of the temporary housing units, or alternatively, the benefit to the Plaintiffs as residents of the temporary housing units was the direct result of the performance within the contemplation of the parties to the contract as demonstrated by the terms of the contracts.

96. The Defendants breached said contract by failing to maintain the Plaintiffs' temporary housing units in a safe, working, and livable condition. Defendant's acts and omissions, which constitute its failure to honor its contractual obligation, has caused damage to the Plaintiffs for which Plaintiffs are entitled to recover money damages.

## COUNT VI

### NEGLIGENCE CLAIMS AGAINST DEFENDANT DBE

97. All paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

98. Defendant DBE had a duty to provide maintenance services for the Plaintiffs' trailer.

99. Defendant DBE negligently breached its duties to Plaintiffs thereby causing damages as alleged herein.

### COMPENSATORY DAMAGES

100. In addition to and by way of summarizing the compensatory damages prayed for herein, Plaintiffs avers that the defendants, Gulf Stream, Dutchmen, Superior Homes, Bechtel,

COMPLAINT FOR DAMAGES
Page 23 of 26

CH2M and DBE, individually and/or jointly are responsible for all damages which Plaintiffs herein has suffered and continues to suffer as a consequence of Defendants' acts and/or omissions as pled herein, which damages include, but are not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages and injuries, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven at the time of trial.

## PUNITIVE / EXEMPLARY DAMAGES

101.    Pursuant to Miss. Code Ann. §11-1-65, inasmuch as the conduct of Gulf Stream, Dutchmen, Superior Homes, Bechtel, CH2M, DBE and their servant/employees constitutes willful, wanton, egregious and reckless disregard for the rights and safety of the Plaintiffs, an award of punitive damages is appropriate and necessary under these facts.

## REQUEST FOR JURY TRIAL

Plaintiffs are entitled to and demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that Gulf Stream, Dutchmen, Superior Homes, Bechtel, CH2M and DBE be served with a copy of this Complaint, and that, after due proceedings:

a.    There be a judgment herein in favor of Plaintiffs and against Defendants for all compensatory damages and punitive damages together will legal interest thereon

from the date of judicial demand until paid, all costs and expenses of these proceedings, and attorneys' fees, declaring that the Defendants are liable for all applicable damages and thereafter;

b.     There be specially included in the judgment in Plaintiffs' favor, provisions for the following damages and relief as found applicable and supported by the evidence:

A.     Past and future physical injuries,

B.     Past and future mental and physical pain and suffering,

C.     Past and future physical impairments and disability,

D.     Past and future reasonable and necessary medical expenses,

E.     Past and future loss of earning capacity,

F.     Past and future loss of enjoyment and quality of life,

G.     Compensable out-of-pocket expenses related to Defendants' wrongdoing,

H.     Costs of court,

I.     Medical monitoring, and

J.     Punitive damages,

c.     All other general, equitable, and further relief as the Court may deem just and proper.

Respectfully submitted, this the 1st day of May, 2010.
                                           June

                         **PLAINTIFFS HOLLIE CARPENTER and
                         BRIAN CARPENTER, Individually and on Behalf
                         of their minor children, JCH, JDC and JTC**


                         By: _____
                              JOHN F. HAWKINS
                                EDWARD GIBSON MSB 100520

                         **COMPLAINT FOR DAMAGES**
                         Page 25 of 26

EDWARD GIBSON
ROSE M. HURDER

**OF COUNSEL:**

John Hawkins, Esquire, (MS Bar No. 9556)
HAWKINS, STRACENER & GIBSON, PLLC
628 N. State Street
P.O. Box 24627
Jackson, Mississippi 39202
Ph. (601) 969-9692; Fx. (601) 914-3580

Edward Gibson, Esquire, (MS Bar No. 100640)
Rose M. Hurder, Esquire, (MS Bar No. 103040)
HAWKINS, STRACENER & GIBSON, PLLC
153 Main Street
Bay St. Louis, MS 39520
Ph.(228) 469-0785; Fx. (228) 467-4212



Hawkins, Stracener & Gibson, PLLC
153 Main Street
Bay St. Louis, MS 39520

CERTIFIED MAIL

RETURN RECEIPT
REQUESTED

RECEIVED
AUG 0 6 2010
By

7008 1300 0001 3974 7000

Gulf Stream Coach, Inc.
Through its Agent for Service of Process
Kenneth C. Brniker
503 South Oakland
Nappannee, IN 46550

RECEIVED AUG 0 6 2010

# IN THE CIRCUIT COURT OF HANCOCK COUNTY, MISSISSIPPI

**BRIAN CARPENTER, et al**                                              **PLAINTIFFS**

FILED

V.                                    JUN 2 9 2010

KAREN LADNER RUHR                    **DOCKET NO:** 10-0337
CIRCUIT CLERK, HANCOCK CO

**DOUG BOYD ENTERPRISES, LLC,**
**GULF STREAM COACH, INC., DUTCHMEN**
**MANUFACTURING, INC., SUPERIOR HOMES, LLC,**
**BECHTEL NATIONAL, INC., CH2M HILL**
**CONSTRUCTORS, INC., and JOHN DOE 1-50**                              **DEFENDANTS**

## FIRST AMENDED COMPLAINT FOR DAMAGES
(jury trial requested)

COME NOW Plaintiffs in the above captioned matter, on behalf of themselves and, in some instances, on behalf of individuals who lack the capacity to sue individually (hereinafter, "Plaintiffs"), who are all named in the annexed listing of the Plaintiffs, and amend their complaint as a matter of course pursuant to Miss. Rule Civ. Proc. 15(a), as no responsive pleading has been served to date.

## I. PARTIES

1.      Plaintiffs, HOLLIE CARPENTER and BRIAN CARPENTER, along with their minor children, are resident citizens of Bay St. Louis, Hancock County, Mississippi.

2.      Defendant DOUG BOYD ENTERPRISES, LLC, (hereinafter DBE) is a North Carolina company licensed to do business in Mississippi. Defendant DOUG BOYD ENTERPRISES, LLC was the maintenance company required to perform maintenance for the trailer in question.

3.      GULF STREAM COACH, INC. (hereinafter Gulf Stream) is upon information and belief, an entity incorporated in the state of Indiana, which conducts business in the State of

Mississippi, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the State of Mississippi.

4.  DUTCHMEN MANUFACTURING, INC. (hereinafter Dutchmen) is upon information and belief, an entity incorporated in the state of Indiana, which conducts business in the State of Mississippi, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the State of Mississippi.

5.  SUPERIOR HOMES, LLC (hereinafter Superior) is upon information and belief, an entity incorporated in the state of Alabama, which conducts business in the State of Mississippi, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the State of Mississippi.

6.  BECHTEL NATIONAL INC, (hereinafter "Bechtel"), a Nevada corporation with its principal place of business in California, licensed to do business in the State of Mississippi and in good standing, received a No-Bid contract from FEMA and was tasked with, among other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of Hurricane Katrina, including Hollie Carpenter and Brian Carpenter, Individually and on behalf of their minor children JCH, JDC and JTC.

7.  CH2M HILL CONSTRUCTORS, INC. (hereinafter "CH2M"), a Delaware corporation with its principal place of business in Colorado, licensed to do business in the State of Mississippi and in good standing, received a No-Bid contract from FEMA and was tasked with, among other things, performing significant functions in the transportation, delivery, installation,

**COMPLAINT FOR DAMAGES**
Page 2 of 27

maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of Hurricane Katrina, including Hollie Carpenter and Brian Carpenter, Individually and on behalf of their minor children JCH, JTC, and JDC.

8.    Defendants John Does 1-10 are those persons, agents, employees, and/or representatives of Defendants whose conduct as described herein caused or contributed to the damages of the Plaintiffs, all of whose names and legal identities are unknown to the Plaintiffs at this time, but will be substituted by amendment when ascertained, individually and jointly.

## II. JURISDICTION AND VENUE

9.    GULF STREAM COACH, INC., is subject to the *in personam* jurisdiction of this Court because it does sufficient business in the State of Mississippi and within this federal district to confer same, and at all relevant times hereto engaged in commerce both in this federal district and in the State of Mississippi with respect to the activities and claims which are the subject of this litigation.

10.    SUPERIOR HOMES, LLC, is subject to the *in personam* jurisdiction of this Court because it does sufficient business in the State of Mississippi and within this federal district to confer same, and at all relevant times hereto engaged in commerce both in this federal district and in the State of Mississippi with respect to the activities and claims which are the subject of this litigation.

11.    DUTCHMEN MANUFACTURING, INC, is subject to the *in personam* jurisdiction of this Court because it does sufficient business in the State of Mississippi and within this federal district to confer same, and at all relevant times hereto engaged in commerce both in this federal

COMPLAINT FOR DAMAGES
Page 3 of 27

district and in the State of Mississippi with respect to the activities and claims which are the subject of this litigation.

12.     BECHTEL NATIONAL, INC. is subject to the *in personam* jurisdiction of this Court because it does sufficient business in the State of Mississippi, has committed torts in whole or in part within the State of Mississippi and the Defendant has such contacts with the State that the exercise of personal jurisdiction comports with due process and traditional notions of fair play. BECHTEL NATIONAL, INC., at all relevant times hereto engaged in commerce and committed torts in the State of Mississippi with respect to the activities and claims which are the subject of this litigation.

13.     CH2M HILL CONSTRUCTORS, INC. is subject to the *in personam* jurisdiction of this Court because it does sufficient business in the State of Mississippi, has committed torts in whole or in part within the State of Mississippi and the Defendant has such contacts with the State that the exercise of personal jurisdiction comports with due process and traditional notions of fair play. CH2M HILL CONSTRUCTORS, INC. at all relevant times hereto engaged in commerce and committed torts in the State of Mississippi with respect to the activities and claims which are the subject of this litigation.

14.     Venue is proper in Hancock County because the acts and omission complained of occurred there and the Plaintiffs reside there.

15.     The Plaintiffs specifically limit the damages sought. The Plaintiffs individually do not seek more than $75,000.00 exclusive of interests and costs. Furthermore, the Plaintiffs' claims are brought under state law and the Plaintiffs herein specifically do not bring any claims under the federal laws of the United States of America.

**COMPLAINT FOR DAMAGES**
Page 4 of 27

## IV. FACTS AND GENERAL ALLEGATIONS

16.     The plaintiffs resided in a FEMA travel trailer after the landfall of Hurricane Katrina in August of 2005.

17.     Of the housing units at issue, "travel trailers" are wheel-mounted and generally no larger than 8 feet wide and 40 feet long, for an average area of less than 320 square feet. They are designed to provide temporary living quarters and are generally considered vehicles, regulated by state transportation authorities rather than housing authorities. *Id. See* CENTER FOR DISEASE CONTROL AND PREVENTION, INTERIM FINDINGS ON FORMALDEHYDE LEVELS IN FEMA-SUPPLIED TRAVEL TRAILERS, PARK MODELS, AND MOBILE HOMES, Feb. 29, 2008, at 4, *available at* www.cdc.gov/Features/FEMAtrailersFindings/pdf/interim_findings.pdf.

18.     The Plaintiffs' residence was rendered unhabitable following Hurricanes Katrina, leaving them in need of housing assistance.

19.     FEMA contracted with Defendants Gulf Stream, Dutchmen and Superior Homes to purchase thousands of the housing units, primarily travel trailers, for provision to individuals, including plaintiffs, as temporary housing.

20.     On information and belief, Defendants Gulf Stream, Dutchmen and Superior Homes expedited production of these housing units, and, on information and belief, resorted to using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing units occupied by Plaintiffs containing higher than normal levels of formaldehyde.

**COMPLAINT FOR DAMAGES**
Page 5 of 27

21.   On information and belief, the travel trailer in question was manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, deviated from Government specifications pertaining to the safety of the unit as a residence.

22.   Plaintiffs submit that the travel trailer at issue, whether manufactured prior to the hurricanes or later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to Defendants Gulf Stream, Dutchmen and Superior Homes' use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, but that Defendants Gulf Stream, Dutchmen and Superior Homes failed to warn the Federal Government about these dangers, which initially were not known to the Federal Government.

23.   Plaintiffs submit that Defendants Gulf Stream, Dutchmen and Superior Homes ignored, or concealed and/or condoned the concealment of, the fact that each and all of the housing units at issue contained dangerous levels of formaldehyde due to Defendants Gulf Stream's, Dutchmen's and Superior Homes' use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, all in order to sell Defendants Gulf Stream's, Dutchmen's and Superior Homes' products, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions.

24.   Plaintiffs spent significant time in the FEMA-provided trailers manufactured by Defendants Gulf Stream, Dutchmen and Superior Homes. As a result, the Plaintiffs unwittingly were

exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing units.

25.     Formaldehyde is found in construction materials such as particle board, fiberboard and plywood, as well as glues and adhesives used in the manufacture of the housing units. Pursuant to federal law, the defendants are required to display a "Health Notice" about exposure to formaldehyde which reads:

### IMPORTANT HEALTH NOTICE

Some of the building materials used in this home emit formaldehyde. Eye, nose and throat irritation, headache, nausea, and a variety of asthma-like symptoms, including shortness of breath, have been reported as a result of formaldehyde exposure. Elderly persons and young children, as well as anyone with a history of asthma, allergies, or lung problems, may be at greater risk. Research is continuing on the possible long-term effects of exposure to formaldehyde.

Reduced ventilation resulting from energy efficiency standards may allow formaldehyde and other contaminants to accumulate in the indoor air. Additional ventilation to dilute the indoor air may be obtained from a passive or mechanical ventilation system offered by the manufacturer. Consult your dealer for information about the ventilation options offered with this home.

High indoor temperatures and humidity raise formaldehyde levels. When a home is to be located in areas subject to extreme summer temperatures, an air-conditioning system can be used to control indoor temperature levels. Check the comfort cooling certificate to determine if this home has been equipped or designed for the installation of an air-conditioning system.

If you have any questions regarding the health effects of formaldehyde, consult your doctor or local health department.

*See* 24 C.F.R. §3280.309.

**COMPLAINT FOR DAMAGES**
Page 7 of 27

26.     According to the National Cancer Institute, formaldehyde has been classified as a human carcinogen (cancer-causing substance) by the International Agency for Research on Cancer and as a probable human carcinogen by the U.S. Environmental Protection Agency ("EPA"). Additionally, the Agency for Toxic Substances and Disease Registry ("ATSDR") has reported to FEMA and members of Congress that not only is formaldehyde classified as "reasonably anticipated to be a human carcinogen," but also that there is no recognized safe level of exposure, and that any level of exposure to formaldehyde may pose a cancer risk, regardless of duration.

27.     Most published exposure standards for formaldehyde address protective levels for the adult working population in the workplace, based upon a 40-hour work week, and specifically do not address chronic exposure levels or protective levels for the more susceptible population, for instance, the very young, the elderly and those with respiratory, skin and other chronic diseases. Nonetheless, reference to the levels established by the Occupational Safety and Health Administration ("OSHA") evidences formaldehyde's harmful effects. In 1987, OSHA reduced the amount of formaldehyde to which workers can be exposed over an 8-hour day from 3 ppm to 1 ppm. In May, 1992, the formaldehyde exposure limit was further reduced to .75 ppm.

28.     HUD regulates formaldehyde levels in certain construction materials to include the pressed wood products used in manufactured housing (such as prefabricated mobile homes). HUD has far stricter exposure limits for residential formaldehyde emissions. By regulation, "All plywood and particle board materials bonded with a resin system or coated with a surface finish containing formaldehyde shall not exceed the following formaldehyde emission levels when installed in manufactured homes: (1) Plywood materials shall not emit formaldehyde in excess of 0.2 parts per

**COMPLAINT FOR DAMAGES**
Page 8 of 27

million (ppm)...[and] (2) Particle board materials shall not emit formaldehyde in excess of 0.3 ppm...". *See* 24 C.F.R. §3280.308.

29.     Both the EPA and the ATSDR have suggested values for safe formaldehyde exposure, which are reproduced below, which values are applicable herein since the FEMA trailers/housing units at issue were intended to be occupied for up to a year and a half by evacuees. *See* 44 C.F.R. §206.110(e).

| Agency | Standard |
|---|---|
| EPA recognized level at which acute health effects can manifest | 0.1 parts per million (ppm) |
| Agency for Toxic Substances and Disease Registry Minimum Risk Levels (MRL) | 0.04 ppm - short exposures up to 14 days |
| | 0.03 ppm – exposure durations between 15 and 364 days |
| | 0.008 ppm – exposures of 365 days or greater |

*See* Union of Concerned Scientists, Citizens and Scientists for Environmental Solutions, *FEMA Exposes Gulf Coast Residents to Formaldehyde*, Updated on Dec 19, 2007, *available at* http://www.ucsusa.org/scientific_integrity/interference/fema-trailers.html.

30.     Defendants Gulf Stream, Dutchmen and Superior Homes knew or should have known of the health hazards inherent in the products it constructed, by familiarity with industry standards, the material safety data sheets in its possession, and published medical studies.

31.     In order to implement and manage its disaster response obligation and temporary housing obligations, FEMA engaged Defendants Bechtel and CH2M with No-Bid contracts, eventually amounting to billions of dollars. The Federal Government also relied on the expertise and

knowledge of Defendants Bechtel and CH2M to provide information and advice on, among other things, the conversion of mobile travel trailers into temporary housing units for periods up to, and potentially exceeding, eighteen months in duration.

32.     Defendants Bechtel and CH2M were tasked with the transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units.

33.     Under the terms of their contracts, Defendants Bechtel and CH2M were obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and indicated by the manufacturers of same. Further, under their No-Bid contracts with FEMA, Defendants Bechtel and CH2M were obligated to advise and instruct FEMA regarding the implementation of those contracts. Defendants Bechtel and CH2M failed to properly fulfill either of these tasks.

34.     Defendants Bechtel and CH2M contracted with FEMA to pick-up and transport the temporary housing units from FEMA-controlled staging areas and deliver them to areas which Defendants Bechtel and CH2M were tasked with operating. These new areas included staging areas to be managed and maintained as assigned to Defendants Bechtel and CH2M or individual locations and addresses where Defendants Bechtel and CH2M assigned that temporary housing unit would have obligations to manage and maintain it.

**COMPLAINT FOR DAMAGES**
Page 10 of 27

35.     To accomplish their contractual obligations with FEMA, in addition to the use of subsidiary companies, Defendants Bechtel and CH2M entered into numerous sub-contracts, but at all times retained supervisory capacity and responsibility under its individual contracts with FEMA.

36.     Defendants Bechtel and CH2M were tasked under its contracts with FEMA to identify and prepare the infrastructure for the various group site locations. This included, among other things, ensuring there would be adequate water, sewage, electricity, etc. Defendants Bechtel and CH2M knew or should have known that these preparations were for long-term occupancy of the temporary housing units.

37.     Once the temporary housing unit(s) occupied by the Plaintiff(s) were transported and delivered to a particular location, Defendants Bechtel and CH2M had the responsibility for installing that temporary housing unit. Defendants Bechtel and CH2M installed the temporary housing units by "blocking" the unit. This meant raising the Plaintiff's unit several feet into the air and off of its wheel base, and setting it on concrete blocks.

38.     By blocking the temporary housing unit(s) of Plaintiffs, Defendants Bechtel and CH2M created stress and flexing on the frames of the unit as it was not designed to be lifted off of the wheel base. In fact, the manufacturers of the temporary housing units warned in the various owners' manuals provided with the units, that units should not be jacked so that the vehicle's weight is no longer supported by the wheels.

39.     The stress and flexing of temporary housing units' frames caused by Defendants Bechtel and CH2M "blocking" them with weight off of the wheels created distortion in the travel

trailer's shell allowing increased moisture intrusion which contributed to increased formaldehyde exposures.

40. The temporary housing unit(s) occupied by the Plaintiff(s) which were provided by FEMA were for the most part travel trailers. The travel trailers are, by definition, mobile. They are designed for and intended for periodic, recreational use and not for long-term habitation. By installing the travel trailers on concrete blocks for extended occupancy, Defendants Bechtel and CH2M knowingly and intentionally modified the design and the actual use of these units occupied by the Plaintiff(s) by converting them into a temporary housing unit to be used as a residence for long term occupancy in some instances exceeding 18 months.

41. Defendants Bechtel and CH2M failed to consult with the manufacturers of the temporary housing units, including Defendants Gulf Stream, Dutchmen and Superior Homes, with regard to the installation, warnings, warranty issues or advisability of using travel trailers for long term residence and occupation. Defendants Bechtel and CH2M took actions which voided the warranties of the manufacturers and directly created or contributed to unsafe and hazardous living conditions in the temporary housing units.

42. Once Defendants Bechtel and CH2M had completed the transportation, delivery and installation of the temporary housing unit(s) occupied by the Plaintiff(s), Defendants Bechtel and CH2M were tasked with inspecting each unit to ensure that it was safe and habitable, prior to occupancy by the Plaintiff(s). Upon information and belief, Defendants Bechtel and CH2M failed to adequately inspect the temporary housing unit occupied by the Plaintiff(s) to ensure that the units were safe and suitable for their intended use – the long-term occupancy by individuals and families

displaced by Hurricane Katrina. This failure to properly inspect the units for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by hurricane victims.

43.     In addition to transportation, site identification, installation and inspection, the temporary housing units occupied by the Plaintiff(s) provided in response to Hurricane Katrina were also managed, maintained and repaired by Defendants Bechtel and CH2M, or their various subcontractors over whom they maintained direct oversight and responsibility. Upon information and belief, Defendants Bechtel and CH2M failed to adequately manage, maintain and repair the temporary housing units which enabled and contributed to the unsafe and hazardous conditions that led to adverse health effects amongst the Plaintiff(s).

44.     Parallel to its duty to manage, maintain and repair each temporary housing unit, Defendants Bechtel and CH2M failed to undertake appropriate action, maintenance or repair in response to numerous complaints made by the Plaintiff-occupant(s) of the temporary housing units to various adverse health effects caused by exposure to elevated levels of formaldehyde.

45.     Following the Plaintiffs' occupancy of each temporary housing unit, Defendants Bechtel and CH2M were tasked with its de-installation. Upon discovering the deteriorated condition of the temporary housing units at the time of de-installation and removal, Defendants Bechtel and CH2M failed to identify the unsuitability of the temporary housing units for long-term occupancy.

46.     In addition to de-installation of the temporary housing units, Defendants Bechtel and CH2M were tasked with refurbishment and restoration of the temporary housing units for use, either in direct response to Hurricane Katrina or for use in the future. By restoring and refurbishing these

temporary housing units, Defendants Bechtel and CH2M warranted that the units were fit for their intended use, long term occupancy in response to disaster related displacement. By restoring and refurbishing these temporary housing units, Defendants Bechtel and CH2M created and perpetuated existing hazardous conditions which would foreseeably lead to adverse health effects caused by the elevated levels of formaldehyde in the temporary housing units. Further, in thousands of cases, following the restoration and refurbishment, these temporary housing units were immediately occupied by new individuals or families displaced by Hurricane Katrina, and who were then directly exposed to hazardous levels of formaldehyde.

47.   Defendants Bechtel and CH2M , at every stage of their involvement, failed to warn the Plaintiff-occupant(s) of each temporary housing unit of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde – a known human carcinogen – which led directly to adverse health effects, including but not limited to the advent of childhood asthma and the onset of adult asthma in some of the Plaintiffs.

48.   Through its actions and omissions, Defendants Bechtel and CH2M created and perpetuated a situation wherein occupants of the temporary housing units were exposed to elevated levels of formaldehyde and, as a result, suffered adverse health effects. Defendants Bechtel and CH2M negligently failed to adhere to the manufacturer instructions and warnings related to: (1) the manufacturers' intended (short-term) use of the temporary housing units; (2) the installation and set-up of the temporary housing units; and (3) the warning that the temporary housing units contained urea formaldehyde resin which would release formaldehyde gas directly into the intended living space.

49.    Defendants Bechtel and CH2M failed to warn the occupants of temporary housing unit(s) of the hazardous conditions created by the elevated levels of formaldehyde in the temporary housing units.

50.    By restoring and refurbishing the trailer for future habitation, Defendants Bechtel and CH2M improperly and negligently warranted that the units were fit for the intended use of long-term occupancy.

51.    Finally, despite these failures, Defendants Bechtel and CH2M received billions of dollars in contracts from FEMA and the United States government, at the expense of the health of the Plaintiff-occupant(s) of the temporary housing units who simply had nowhere else to go and who were relying on defendants to keep them safe in the aftermath of the greatest natural disaster in the history of the United States.

52.    Defendant DBE was required to perform maintenance work on Plaintiff's unit. Defendant DBE negligently failed or refused to provide adequate maintenance work and failed to take responsible, reasonable action that a reasonable maintenance company would do under the circumstances, including failing to perform routine work, address concerns of Plaintiffs or warn of dangerous conditions.

53.    CDC testing revealed the following important findings regarding FEMA trailers: (1) the formaldehyde levels were higher than typical levels of U.S. indoor exposure in single-family homes and apartments; (2) levels ranged from 3 parts per billion (ppb) to 590 ppb, with the average levels in all units measuring 77 ppb, the latter being higher than U. S. background levels in single-family homes and apartments; (3) the levels recorded in many of the units could affect the occupants'

**COMPLAINT FOR DAMAGES**
Page 15 of 27

health; (4) the contemporary measured levels are likely to under-represent long-term exposures because formaldehyde levels tend to be higher in newer housing units and during warmer weather; (5) higher indoor temperatures were associated with higher formaldehyde levels, independent of unit make or model; and, (6) formaldehyde levels varied by type of housing unit (mobile home, park model, and travel trailer), but all types tested had elevated levels compared to the data on single-family homes and apartments.

54.     The CDC's recommendations as a result of this testing included the following: (1) move quickly to relocate residents before the weather in the region warms up; (2) FEMA and the CDC to consider establishment of a registry to conduct long-term health monitoring of children and others who resided in FEMA- provided housing units in the Gulf Coast Region; (3) families still living in FEMA-provided housing units should spend as much time outdoors as possible and maintain the temperature inside the units at the lowest comfortable level as well as ventilate the unit; and, (4) establish available construction practices which could assure safe and healthy conditions.

55.     The conduct of defendants in violation of Mississippi law caused the minor Plaintiffs damages, medical bills incurred on behalf of JCH, JDC and JTC as well as physical and emotional pain and suffering due chronic sinusitis, bronchitis, upper respiratory tract infections, croup, pharyngitis, shortness of breath, wheezing, abdominal pain, vomiting, nausea, rashes and headaches.

**COMPLAINT FOR DAMAGES**
Page 16 of 27

## COUNT I

### CAUSES OF ACTION AGAINST MANUFACTURING DEFENDANTS GULF STREAM, DUTCHMEN AND SUPERIOR HOMES MISS. CODE ANN. §11-1-63

56.     Defendants Gulf Stream, Dutchmen and Superior Homes, at the time that each subject housing unit left their control, knew or should have known that each product was defective because it deviated in a material way from the manufacturers' specifications or from otherwise identical units manufactured to the same manufacturing specifications.

57.     Defendants Gulf Stream, Dutchmen and Superior Homes knew or should have known that the defective condition rendered each subject housing unit unreasonably dangerous to the user or consumer or others; and

58.     The defective and unreasonably dangerous condition of each product (the failure of the subject housing units to be safely habitable without exposure to formaldehyde) proximately caused the damages and injuries sustained by Plaintiffs.

59.     At the time the subject housing units left the control of Defendants Gulf Stream, Dutchmen and/or Superior Homes, each subject housing unit did not contain properly selected prepared and installed components.

60.     At all relative times, the Plaintiffs lacked actual or constructive knowledge of the defective condition of their respective housing units and that each defective product was inconsistent with their safety.

61.     At all relevant times, the Plaintiffs did not appreciate the danger of their housing unit's defective condition.

**COMPLAINT FOR DAMAGES**
Page 17 of 27