62. At all relevant times, the Plaintiffs did not deliberately and voluntarily choose to expose themselves to this danger in such a manner to register assent to the continuance of the dangerous condition.

63. Each subject housing unit in question failed to function as expected as a result of their design characteristics.

64. An alternative design existed at the time that each housing unit left the control of Defendants Gulf Stream, Dutchmen and/or Superior Homes which would have not impaired the product's usefulness or desirability.

65. The alternative design would have to a reasonable probability prevented the toxic exposure of Plaintiffs.

66. The housing unit was defective because it failed to contain adequate warnings or instructions.

67. The housing unit breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use this product.

## COUNT II

### STRICT LIABILITY AND NEGLIGENCE OF DEFENDANTS GULF STREAM, DUTCHMEN AND SUPERIOR HOMES

68. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

69. Defendants Gulf Stream, Dutchmen and Superior Homes knew or should have known that the subject housing units were defective and unreasonably dangerous to the user or consumer or others because of the excessive formaldehyde present in the housing units, which condition was foreseeable. Notwithstanding, Defendants Gulf Stream, Dutchmen and Superior Homes allowed the

defective and dangerous housing units to be placed into the stream of commerce and to reach Plaintiffs without substantial change.

70. Defendants Gulf Stream, Dutchmen and Superior Homes failed to warn Plaintiffs of the excessive levels/emissions of formaldehyde and the hazards associated therewith. Defendants Gulf Stream, Dutchmen and Superior Homes owed Plaintiffs a non-delegable duty to warn of any dangerous and defective conditions under theories of negligence and strict liability.

71. Defendants Gulf Stream, Dutchmen and Superior Homes were negligent in one or more of the following respects which proximately contributed to Plaintiffs' injuries:

    a. In manufacturing and distributing the subject housing units to Plaintiffs for use as temporary housing, which housing was defective and unreasonably dangerous for use due to the present of excessive formaldehyde levels/emissions;

    b. In failing to properly test/inspect the subject housing units to properly evaluate the presence and/or levels of formaldehyde under foreseeable conditions for extended periods of time;

    c. In manufacturing, advertising, marketing, distributing, and selling the subject housing units to third party users when they knew or should have known that the housing units were defective and not suitable for use under foreseeable conditions;

    d. In failing to provide proper and adequate warnings, after the sales of the subject housing units, of the hazards associated with excessive levels/emissions of formaldehyde; and,

e.  In failing to properly hire, train, and supervise individuals to inspect materials used in the manufacture of the subject housing units to ensure that such materials/component parts did not emit excessive levels of formaldehyde.

## COUNT III

### NEGLIGENCE OF DEFENDANTS BECHTEL AND CH2M UNDER MISSISSIPPI LAW

72. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

73. At all relevant times, Defendants Bechtel and CH2M were tasked with the transportation, installation, site identification, preparation, inspection, maintenance and repair, refurbishment and restoration, and removal of the temporary housing units, which caused the Plaintiffs' injuries.

74. Defendants Bechtel and CH2M owed a duty to Plaintiffs to provide, transport, install, inspect, maintain, repair, refurbish, recondition and restore safe temporary housing units that did not emit hazardous levels of formaldehyde.

75. Defendants Bechtel and CH2M knew or should have known when they provided, transported, installed, inspected, maintained, repaired, refurbished, reconditioned and restored the temporary housing units to the general public (thereby modifying and converting the mobile units into residential installations) the actual and intended use of the temporary housing units by each Plaintiff, and that the temporary housing units would be used in the manner that each Plaintiff herein used the temporary housing units.

76. Defendants Bechtel and CH2M breached their duty to Plaintiffs in failing to act reasonably in the provision, installation, inspection, maintenance, repair, refurbishment, reconditioning and restoration of the temporary housing units; specifically by:

   a. Failing to sufficiently warn the Plaintiffs of the inherently dangerous properties or the foreseeable conditions of the temporary housing units when used for long term occupancy; and

   b. Failing to adhere to the manufacturers' warnings against jacking the temporary housing units off the wheel base by "blocking" the units;

78. Defendants Bechtel's and CH2M's actions were the proximate cause of the increased exposure of formaldehyde to Plaintiffs.

79. Defendants Bechtel and CH2M contributed to and exacerbated the adverse health impacts upon the residents of the temporary housing units.

## COUNT IV

### STRICT PRODUCTS LIABILITY OF DEFENDANT NO-BID CONTRACTOR DEFENDANTS BECHTEL AND CH2M UNDER MS CODE ANNOTATED §11-1-63

80. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

81. Defendants Bechtel and CH2M, at the time that each subject housing unit left their control, knew or should have known that each product was defective because it deviated in a material way from the manufacturers' specifications or from otherwise identical units manufactured to the same manufacturing specifications and/or manufacturers' warnings.

82. Defendants Bechtel and CH2M, by installing the housing units on concrete blocks for extended occupancy, knowingly and intentionally modified the design and the actual use of the housing units.

83. Defendants Bechtel and CH2M knew or should have known that the defective condition rendered each subject housing unit unreasonably dangerous to the user or consumer or others.

84. The defective and unreasonably dangerous condition of each product (the failure of the subject housing units to be safely habitable without exposure to formaldehyde) proximately caused the damages and injuries sustained by Plaintiffs.

85. At all relative times, the Plaintiffs lacked actual or constructive knowledge of the defective condition of their respective housing units and that each defective product was inconsistent with their safety.

86. At all relevant times, the Plaintiffs did not appreciate the danger of their housing unit's defective condition.

87. At all relevant times, the Plaintiffs did not deliberately and voluntarily choose to expose themselves to this danger in such a manner to register assent to the continuance of the dangerous condition.

88. Each subject housing unit in question failed to function as expected as a result of its design characteristics.

89. An alternative design existed at the time that each housing unit left the control of the Manufacturer which would have not impaired the product's usefulness or desirability.

90. The alternative design would have to a reasonable probability prevented the toxic exposure of each Plaintiff.

91. Each product (housing unit) was defective because it failed to contain adequate warnings or instructions.

92. Defendants Bechtel and CH2M failed to warn the Plaintiffs of the inherently dangerous properties for the foreseeable conditions of the subject housing units when used for long term occupancy.

93. Defendants Bechtel and CH2M failed to warn the Plaintiffs of the presence of excessive levels of formaldehyde present in the housing units they installed, maintained and supervised.

94. Furthermore, Defendants Bechtel and CH2M breached the implied warranty of habitability due to the Plaintiffs. The subject housing units were installed and maintained with an expectation of habitability and a clear implied warranty that such housing would be safe and free of any toxic dangers.

## COUNT V

### BREACH OF CONTRACT BY NO-BID CONTRACTOR DEFENDANTS BECHTEL AND CH2M

95. All paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

96. Defendants Bechtel and CH2M entered into contracts with FEMA, contracting to provide the following service, among others: "The contractor will do maintenance necessary to maintain the temporary housing units in a safe, working, and livable, condition."

97. The Plaintiffs constitute third party beneficiaries to the subject contracts. The contracts were entered into for the Plaintiffs' benefit as residents of the temporary housing units, or alternatively, the benefit to the Plaintiffs as residents of the temporary housing units was the direct result of the performance within the contemplation of the parties to the contract as demonstrated by the terms of the contracts.

98. The Defendants breached said contract by failing to maintain the Plaintiffs' temporary housing units in a safe, working, and livable condition. Defendant's acts and omissions, which constitute its failure to honor its contractual obligation, has caused damage to the Plaintiffs for which Plaintiffs are entitled to recover money damages.

## COUNT VI

### NEGLIGENCE CLAIMS AGAINST DEFENDANT DBE

99. All paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

100. Defendant DBE had a duty to provide maintenance services for the Plaintiffs' trailer.

101. Defendant DBE negligently breached its duties to Plaintiffs thereby causing damages as alleged herein.

### COMPENSATORY DAMAGES

102. In addition to and by way of summarizing the compensatory damages prayed for herein, Plaintiffs avers that the defendants, Gulf Stream, Dutchmen, Superior Homes, Bechtel, CH2M and DBE, individually and/or jointly are responsible for all damages which Plaintiffs herein has suffered and continues to suffer as a consequence of Defendants' acts and/or omissions as pled

COMPLAINT FOR DAMAGES
Page 24 of 27

herein, which damages include, but are not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages and injuries, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven at the time of trial.

## PUNITIVE / EXEMPLARY DAMAGES

103. Pursuant to Miss. Code Ann. §11-1-65, inasmuch as the conduct of Gulf Stream, Dutchmen, Superior Homes, Bechtel, CH2M, DBE and their servant/employees constitutes willful, wanton, egregious and reckless disregard for the rights and safety of the Plaintiffs, an award of punitive damages is appropriate and necessary under these facts.

## REQUEST FOR JURY TRIAL

Plaintiffs are entitled to and demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that Gulf Stream, Dutchmen, Superior Homes, Bechtel, CH2M and DBE be served with a copy of this Complaint, and that, after due proceedings:

    a.    There be a judgment herein in favor of Plaintiffs and against Defendants for all compensatory damages and punitive damages together will legal interest thereon from the date of judicial demand until paid, all costs and expenses of these

proceedings, and attorneys' fees, declaring that the Defendants are liable for all applicable damages and thereafter;

b. There be specially included in the judgment in Plaintiffs' favor, provisions for the following damages and relief as found applicable and supported by the evidence:

   A. Past and future physical injuries,

   B. Past and future mental and physical pain and suffering,

   C. Past and future physical impairments and disability,

   D. Past and future reasonable and necessary medical expenses,

   E. Past and future loss of earning capacity,

   F. Past and future loss of enjoyment and quality of life,

   G. Compensable out-of-pocket expenses related to Defendants' wrongdoing,

   H. Costs of court,

   I. Medical monitoring, and

   J. Punitive damages,

c. All other general, equitable, and further relief as the Court may deem just and proper.

Respectfully submitted, this the 29th day of June, 2010.

                                PLAINTIFFS HOLLIE CARPENTER and BRIAN CARPENTER, Individually and on Behalf of their minor children, JCH, JDC and JTC

                                By: _____
                                JOHN F. HAWKINS
                                EDWARD GIBSON
                                ROSE M. HURDER

OF COUNSEL:

John Hawkins, Esquire, (MS Bar No. 9556)
HAWKINS, STRACENER & GIBSON, PLLC
628 N. State Street
P.O. Box 24627
Jackson, Mississippi 39202
Ph. (601) 969-9692; Fx. (601) 914-3580

Edward Gibson, Esquire, (MS Bar No. 100640)
Rose M. Hurder, Esquire, (MS Bar No. 103040)
HAWKINS, STRACENER & GIBSON, PLLC
153 Main Street
Bay St. Louis, MS 39520
Ph.(228) 469-0785; Fx. (228) 467-4212



HSFE04-04-Q-8000
## FEMA Model Travel Trailer Procurement Specifications
Dated: August 12, 2004

### General

Travel trailers being procured under this contract are for the purpose of providing temporary housing. The units are subjected to continuous road travel, multiple installations and deactivations, and various weather conditions. The standards shall not be considered restrictive in that the supplier may provide "equal or better" units considering that the competitive price and delivery requirements can be met.

The construction and outfitting standards identify minimum square footage of living space, floor plan configuration, finishes, furnishing and environmental living conditions necessary to provide emergency housing for disaster relief operations. All exterior openings such as windows, doors, drain pipes; etc... will be caulked with a clear, non-hardening weatherproof sealant to prevent air and moisture penetration.

The units shall meet industry standards except where identified. These units will not include awnings, stereos, holding tanks, and/or any optional accessories.

### Quality of Construction

The specifications establish the minimum standards for travel trailer construction and outfitting to meet FEMA contract requirements. This specification does not constitute any expressed or implied deviation or waiver of any requirement of the U.S. regulatory requirements from the governing agency. All units to include furnishings and appliances must be new. The manufacturer shall design and construct all units under this contract within a superior grade quality of workmanship.

| Size and Configuration | |
|---|---|
| Type | FEMA Model Travel Trailer |
| Exterior Length | 32-35 ft |
| Exterior Width | 8 ft (Not to exceed) (No Slide-out units) |
| Screwjack | Non-detachable (No fifth wheel units) |
| Electrical System – AMPS | 30 Amp power cord (50 ft long) |
| Furnishing | Fully |
| Bedrooms | Sleep 6. There must be two bedrooms of which one must be contain a double bunk. |
| Bathroom | 1 (residential commode and no holding tank) |
| Refrigerator | Yes - (Residential) 14 cf. Frost-free electric refrigerator with freezer |
| Range and Oven | Yes - (Gas) The each unit must have a gas range and oven. NOTE: The gas appliances must have auto (electronic) ignition |
| Washer Capacity | No |
| Dryer Capacity | No |
| Air Conditioner | Yes (Roof top) |
| Furnace | Yes |
| Microwave | Yes |
| Water Heater | Yes, Gas, 10 Gal (auto electronic ignition) |
| Exterior Covering | Industry standard |
| Smoke Detector | Yes, in kitchen area, and each bedroom/sleeping area. |
| LP Gas Detector | Yes |
| Fire Extinguisher | Yes |

TTProcurementSpecs(08-11-04)(FinalA)

Page 1 of 4

165



Gulf0005675
ALX-DORRIS-000022

HSFE04-04-Q-8000
### FEMA Model Travel Trailer Procurement Specifications
Dated: August 12, 2004

| Electrical Service | |
|---|---|
| Receptacles | |
| Interior Receptacles | Electrical receptacles will be installed at convenient locations throughout the unit. Receptacles located near or in wet areas must be protected with ground fault interrupter protection. |
| Exterior Receptacles | Each home will be provided with a heat tape receptacle located near the water inlet. Exterior receptacles must be protected with ground fault interrupter protection. |
| Phone and Cable | Television Jack: Each unit shall have a television jack and a telephone jack installed in the living room and master bedroom area. |

| Plumbing Service | |
|---|---|
| Plumbing System | Industry standard plumbing system will be installed. The holding tank will not be installed. |
| Winterization | All drain lines shall have antifreeze poured into all traps, including washer drain, after the flood test. |
| Faucet Assemblies | All faucet assemblies in the home shall be of the dual shutoff valve type. |
| Bathroom | The bathroom shall also have the manufacturer's standard vanity with lavatory, medicine cabinet with mirror and accessories (paper holder, towel bars/hooks). All interior plumbing must be assembled. All bathroom fixtures shall be of the same color. |
| Commode | The unit will have a residential commode. The water storage tank, seat and cover shall be the same color as the commode bowl. |
| Sewer Line | The sewer line will exit the home approximately two feet (2') and not more than three feet (3') behind the rear axle. The exit pipe shall protrude approximately six inches (6"), but not more than eight inches (8"), from the underlying, shall have a threaded end, and be capped with a removable plastic cap and chain. |

| Appliances | |
|---|---|
| Water Heater | A 10-gallon auto electric ignition water heater. |
| Range | A auto electric ignition cooking range having three (3) or four (4) burners (Note: four burners is preferred), thermostatically controlled oven, and a lighted, power-vented range hood |
| Refrigerator | Residential 14 c. f. frost-free electric refrigerator with freezer. |
| Microwave Oven | Each unit will have a minimum 1.2 cu. ft microwave. |

| Furnishings | |
|---|---|

TTProcurementSpecs(8-11-04)Final;1A1

Gulf0005676
ALX-DORRIS-000023

HSFE04-04-Q-8000
### FEMA Model Travel Trailer Procurement Specifications
Dated: August 12, 2004

| Furnishings | |
|---|---|
| | Furnishings shall be the manufacturer's standard for functional quality (provides usability, comfort and minimum maintenance). All furniture shall be assembled with all packing material removed. All furniture shall be appropriately secured to prevent damage during transport. |
| Bedrooms | One bedroom shall have a full-size bed. The other bedroom shall have a double bunk w/ storage. |
| Living Room | Each living room area will be furnished with sleeper sofa, capable of sleeping adults. |
| Dining Room | The dining room area will be furnished with dinette table and seating. |

| Interior | |
|---|---|
| Heating and Cooling System (NOTE: Furnace and A/C shall use the same thermostat) | |
| Furnace | The unit will be equipped with a furnace capable of operating on liquefied petroleum (LP) gas. The unit shall have a 34,000 BTU Furnace and In-Floor Ducted Heat with a wired thermostat connected and completely installed. <u>Also if a battery is needed, then a battery and cover must be included.</u> |
| Air Conditioner (A/C) | 15,000 BTU Ducted Roof A/C wired and connected with the furnace. <u>Window units are not acceptable.</u> |

| Safety Equipment | |
|---|---|
| Smoke Detectors | Each unit will include three battery-operated smoke detector (battery included). Smoke detectors shall be equipped with push-button testing devices. |
| Fire Extinguisher | Each home will be equipped with a five-pound A-B-C type fire extinguisher and a mounting bracket. |
| Gas Detector | LP gas detector. |
| LP Tanks | Double 30 LB LP bottles w/auto change-over gauge and bottle covers |
| Steps | Double entry steps-welded to frame |
| Jacks | Four corner stabilizer jacks with pads |

| Exterior Covering | |
|---|---|
| Siding | Industry standard with an entry assist handles at entrance/exit each door. |
| Roof | Industry standard covering. Rain gutter w/corner downspout along the roofline. |
| Exterior Door Lock | Flush mounted combo entry dead-bolt lock. |

TTProcurementSpec(08-11-04)(Final)1A1

Page 3 of 4

Gulf0005677
ALX-DORRIS-000024

HSFE04-04-Q-8000
## FEMA Model Travel Trailer Procurement Specifications
Dated: August 12, 2004

| Interior Covering | |
|---|---|
| Floor Covering | Living room and bedrooms shall have carpet and pad. Duct openings shall be covered with a 4" x 10" metal, adjustable louvered covering (register). No carpet shall be installed in the bathrooms and/or kitchen. These areas shall be covered with continuous, roll non-foam resilient sheet vinyl tension flooring. |
| Window Covering | Mini Blinds for all windows except bedrooms with bunks, which shall be covered with flame retardant curtains. |

| Transport | |
|---|---|
| FEMA Acceptance | Units will not be accepted as FEMA property until an appropriate FEMA Rep inspects and signs for the unit. FEMA must have a copy of all shipping documents. FEMA reserves the right to reject any unit due to damages, non- road ready and/or transportable unit, and/or non-specifications compliance. The unit must be made transportable and road ready prior to acceptance. Units that are not in a transportable and road ready condition (such as flat tires, damaged axles, etc) will not be considered acceptable. |

| Miscellaneous | |
|---|---|
| Master Keys | The unit manufacturer or supplier <u>shall furnish 3 sets of keys for homes procured</u>. Master keys shall be provided and packaged separately. The master keys must be received with delivery of the first unit. |
| Warranty | The company the unit is purchased from will be FEMA's point-of-contact (POC) for all warranties, this includes the actual unit, A/C, furnace, water heater, and all furnishings and appliances. The company supplying the unit must identify a POC for handling warranty items and the company needs to provide FEMA the procedure for reporting warranty items. |
| Certificates of Origin | The certificate of origin must be provided. |

TTProcurementSpec(08-11-04)(Final)1A1

Page 4 of 4

Gulf0005678
ALX-DORRIS-000025



Gulf0005679
ALX-DORRIS-000026