Exhibit F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION N-5<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT UNITED STATES OF AMERICA'S STATEMENT
OF FACTS IN SUPPORT OF ITS MOTION FOR TO DISMISS
PLAINTIFFS' REMAINING FTCA CLAIMS FOR LACK OF
SUBJECT MATTER JURISDICTION**

I.   **Determination Of A Formaldehyde Residential Indoor Air Regulatory Action Requires Consideration and Weighing And Balancing Of Policy Considerations.**

1.   Dr. Patricia Williams was been proffered to the Court by the Plaintiffs' Steering Committee as an expert in toxicology, anatomy, epidemiology, hematology, neuroanatomy, medical surveillance using medical procedures, performance and interpretation of health assessments, and causation of diseases in communities individuals environmentally exposed to toxic chemicals.  Exhibit 1 ("Exh. __"), Dr. Williams, Class Cert. Transcript p. 21/lines 6-11. Dr. Williams explained at her deposition that the determination of an appropriate formaldehyde indoor air action level by a government agency requires that agency to consider, weigh and balance political, economic, social, and health and safety concerns.  Exh. 2, Deposition ("Depo.") Dr. Williams at pp. 220-21/lines, 5-23, pp. 222-26/lines 16-22.  At the Class Certification hearing in December 2008, Dr. Williams explained that:

   Q.   I am in the last paragraph, and it states, "The Department," meaning HUD,

1

> has concluded that there is insufficient medical and scientific evidence to substantiate more than minimal health benefits when formaldehyde levels are reduced below .4 ppm." Do you see that?

A. Yes.

Q. Now, when the government sets values like this, they have to take into consideration both health, safety, but also political factors and economic factors; is that right?

A. That is right.

Exh. 1, Dr. William, Class Cert. Transcript pp.102-03/23-21.

2. The United States Agency for Housing and Urban Development's ("HUD") has issued regulation of formaldehyde in manufactured housing – mobile homes, and set an in door air formaldehyde target level. Housing and Urban Development, 24 CFR Part 3280, Docket No. R-84-I068; FR 1637, Manufactured Home Construction and Safety Standards (August 9, 1984), 49 FR 31996 [Docket No. 196-13]. HUD required five years to finalize that regulation and issue an indoor air formaldehyde target level for mobile homes. *See* 49 FR 31996 at 2 [Docket 196-13 at HUD-00002]. HUD commenced that process in June 7, 1979, and final regulations were issued on August 9, 1984. *See* 49 FR 31996 at 2 [Docket 196-13 at HUD-00002]. That process involved considering comments and concerns from consumers and consumer organizations, manufactured home builders, wood product producers, trade associations, government agencies, universities, and the chemical industry, as well as completion of a Cost Impact Analysis. *See* 49 FR 31996 at 2 [Docket 196-13 at HUD-000002 to HUD-000003]. HUD in setting the indoor air formaldehyde target level of 0.4 parts per million, noted that some occupants would inevitably be exposed to formaldehyde in excess of the target level, and some occupants would be more sensitive then others and react to formaldehyde when exposed to less than 0.4 ppm. *See* 49 FR

2

31997 at 7-13 [Docket 196-13 at HUD-00007 to HUD-000013]. However, 0.4 ppm constituted a reasonable target level given the minimal health risks presented at that concentration versus economic costs associated with adoption of a lower target level. *See* 49 FR 31997 at 7-13 [Docket 196-13 at HUD-000007 to HUD-000013]; *see also New Mexico v. HUD*, 1987 WL 109007 *4 (10th Cir. 1987).

    3.    On or after July 2007, FEMA appointed and funded a panel of medical and scientific experts to determine a scientifically valid formaldehyde indoor air target level in temporary emergency housing units. Exh. 3, Declaration Michael Lapiniski ¶10. That panel was unable to reach a consensus and ultimately did not provide FEMA with a formaldehyde indoor air target level. Exh. 3, Declaration of Michael Lapiniski ¶10.

## II.    Formaldehyde Regulations.

    4.    OSHA has promulgated regulations for occupational exposure to formaldehyde. 29 CFR §1910.1048; Exh. 4, Declaration of Clyde Payne ¶3. The permissible exposure limit ("PEL") and a Short-Term Exposure Limit ("STEL") that govern occupational exposure to formaldehyde. 29 CFR 1910.1048; Exh. 4, Declaration of Clyde Payne ¶3 The OSHA PEL 8-hour time-weighted average ("TWA") for formaldehyde is 0.75 parts per million (750 parts per billion ("ppb")) and the 15-minute STEL is 2 ppm (2,000 ppb). 29 CFR 1910.1048; Exh. 4, Declaration of Clyde Payne ¶3. The TWA is the amount of a substance to which workers can be exposed over an 8-hour period and the STEL is the concentration to which workers can be exposed continuously for short periods of time. 29 CFR 1910.1048; Exh. 4, Declaration of Clyde Payne ¶3.

    5.    There exist no residential ambient indoor formaldehyde regulations and there is a

3

Case 2:07-md-01873-KDE-ALC   Document 1324-2   Filed 05/23/2009   Page 5 of 16

lack of consensus among various agencies regarding acceptable levels. Exh. 5, FEMA E-Mail at FEMA17-006702, 03.

6.      HUD has issued an indoor air formaldehyde target level for manufactured housing, i.e., mobile homes. The HUD indoor air formaldehyde target level is 0.4 ppm. 49 FR 31998 at pp. 7-13 [Docket No. 196-13].

**III.    Recommended Response To Formaldehyde Concerns In Residence – Ventilation.**

7.      If formaldehyde levels in indoor air is an issue of concern, venting and airing out the area is the response action recommended by travel trailer manufacturers, Centers for Disease Control/Agency for Toxic Substances and Disease Registry ("ATSDR"), the United States Environmental Protection Agency ("EPA"), the Consumer Product Safety Commission ("CPSC"), the Recreation Vehicle Industry Association ("RVIA"), and the Sierra Club. Exh. 6, Declaration Bronson Brown ¶9; Exh. 7, Important Notices, FEMA09-000363; Exh. 8, Fleetwood Rule 30(b)(6) Depo. at pp.110-11/lines 17-19, pp. 141-42/lines16-5; Exh. 9, Fleetwood Occupancy Manual at 03-2; Exh. 10, Fleetwood Formaldehyde Warning at FLE-00005672; Exh.11, ATSDR, Formaldehyde Toxicological Profile at ATSDR-00025, ATSDR-000329; Exh. 12, EPA Fact Sheet at EPA-000003; Exh. 13, Consumer Product Safety Commission, An Update on Formaldehyde (rev. 1997) at CPSC-000005; Exh. 14, July 22, 2009, FEMA E-Mail at FEMA17-005982, 05984; Exh. 15, June 13, 2006, Sierra Club Letter (Formaldehyde Flyer) at FEMA123-000006.

8.      Dr. Patricia Williams has been proffered to the Court by Plaintiffs' Steering Committee as an expert in toxicology, anatomy, epidemiology, hematology, neuroanatomy, medical surveillance using medical procedures, performance and interpretation of health

4

assessments, and causation of diseases in communities individuals environmentally exposed to toxic chemicals.  Exh. 1, Dr. Williams, Class Cert. Transcript p. 21/lines 6-11.  In Dr. Williams' opinion during the time that you are ventilating, ventilation is an effective way to reduce formaldehyde levels.  Exh. 1, Dr. William, Class Cert. Transcript at pp.112-13/lines 21-3.  *See also* Exh. 2, Deposition Dr. Williams at pp. 220-21/lines 5-23, pp. 222-26/lines 16-22.

### IV.    OSHA Testing Of New Unoccupied EHUs.

9.    On October 11, 2005, in response to a request from Bechtel, Inc., OSHA tested new, unoccupied EHUs at Bechtel's facility in Mississippi for formaldehyde and determined that venting units for a short time – 15 to 20 minutes – reduced formaldehyde below the regulatory level of concern.  Exh. 3, Declaration Clyde Payne ¶¶4-5; Exh. 16, OSHA E-Mail at OSH001-004338.

10.    The initial testing was reported in the Mississippi Joint Field Office Situation Report, SITREP 41/ FEMA-1604-DR-MS.  Exh. 17, SITREP 41 at FEMA09-000373; *see also* Exh. 3, Declaration Clyde Payne ¶8. The Mississippi Joint Field Office held regular meetings, and this issue was disclosed during those meetings.  Exh. 3, Declaration Clyde Payne Dec. ¶8.  It was agreed that OSHA would conduct periodic sampling of new travel trailers.  Exh. 3, Declaration Clyde Payne ¶8.  OSHA thereafter did further testing and confirmed that in units of potential concern, if aired out and vented for a short period of time, formaldehyde levels in the unit were at or below OSHA PELs.  Exh. 3, Declaration Clyde Payne ¶9.

11.    OSHA representatives at the Louisiana, Texas, and Alabama Joint Field Offices were told about October 11, 2006, testing results, however, they stated that formaldehyde had not been identified by any entities as an issue of concern in any emergency housing units.  Exh. 3,

5

Declaration Clyde Payne ¶8.

12.     OSHA's testing did not raise a significant concerns about occupied EHUs because the units being tested were new and had not been made ready for occupancy ("RFO"); OSHA associated the elevated formaldehyde levels with fact that units were unoccupied and as result windows and vents had been closed for an extended period of time, and the units had no electricity and thus the air conditioner or any internal vent fans were inoperable.  Exh. 3, Declaration Clyde Payne ¶9; Exh. 6, Declaration Bronson Brown ¶6; Exh. 20, March 22, 2005, FEMA E-Mail at FEMA09-000362; Exh. 21, March 17, 2006, FEMA E-Mail (Porter, David) at FEMA-Waxman 3623-24.

V.      **Response Actions March 2006 to July 2006.**

    A.      **Instructions To EHU Occupants Regarding Formaldehyde Concerns And Responses To Formaldehyde Complaints.**

13.     In mid-March 2006, FEMA learned through a news media report that an occupant in Mississippi had concerns about formaldehyde.  Exh. 22, March 16, 2006, News Media Report at FEMA17-003670.  In response, FEMA swapped out and replaced that unit with an older unit; FEMA believed that this older unit by virtue of its age and past use would have lower formaldehyde levels and resolve the occupant's concern.  Exh. 23, Declaration Stephen Miller ¶3. Between mid-March and end of June 2006, FEMA housing officials continued to respond to individual complaints on a case-by-case basis.  Exh. 23, Declaration of Stephen Miller ¶¶ 3, 8.  In mid-June 2006 FEMA the decision that if a occupant complaint FEMA would respond by encouraging the tenant to air out the unit, keep the air condition running, and if that did not resolve their concern swap out the unit for a used renovated unit which would not present the off-

6

Case 2:07-md-01873-KDE-ALC   Document 1324-2   Filed 05/23/2009   Page 7 of 16

gassing problems experienced in the new units. Exh. 45, Formaldehyde Issue at FEMA17-004817.

14.     In March 2006, the FEMA contractor responsible for the operating the Mississippi Maintenance Call line agreed to instruct any occupant who call and expressed concerns about air quality or formaldehyde to vent their units in accordance with manufacturers' occupancy instructions. Exh. 6, Declaration Bronson Brown ¶10; Exh. 24, FEMA E-Mail at FEMA09-000360; Exh. 25, Bechtel Rule 30(b)(6) Depo. at pp. 106-07/lines 12-8, pp.109-10/18-2, pp. 139-40/lines 5-14.

15.     In March 2006, a FEMA Disaster Assistant Expert inspected units at an EHU staging facility and reported that all the units he inspected all contained a formaldehyde warning from the manufacturer. Exh. 6, Declaration Bronson Brown ¶9; Exh. 7, Manufacturers' Important Notices at FEMA09-000363; Exh. 26, March 22, 2006, Incident Report at FEMA09-000088; *see* Exh. 15, June 13, 2006, Sierra Club Letter at FEMA123-000002; Exh. 21, March 17, 2006, FEMA E-Mail (Porter, David) at FEMA-Waxman 3623-24.

16.     Commencing in March 2006, the news media reported that FEMA encouraged all EHU occupants who had concerns about formaldehyde to air out and vent their units. FEMA E-Mail at FEMA17-003670; Exh. 15, June 13, 2006, Sierra Club Letter at FEMA123-000012, FEMA123-000014; Exh. 25, Bechtel Rule 30(b)(6) Depo. at pp. 139-40/lines 5-14.

17.     In June 2006, FEMA, Mr. David Garratt, FEMA Recovery Division, after being briefed by Mr. Kevin Souza (a senior member of the Disaster Assistance Directorate), made the decision that FEMA would prepare and issue a safety notice to all occupants. Exh. 27, Declaration David Garratt ¶¶4-6; Exh. 28, Declaration Kevin Souza ¶¶12,18; Exh. 29, June 27,

7

2006, FEMA E-Mail at FEMA17-007074.

18. A formaldehyde brochure was prepared and provided to FEMA's maintenance contractors with instructions to deliver them to EHU occupants. Exh. 23, Dec. Stephen Miller ¶11; Exh. 28, Dec. Kevin Souza ¶18; Exh. 30, July 26, 2006, M. McNeese, FEMA E-Mail at FEMA10-000183; July 2007 Formaldehyde Brochure, FEMA08-000013 to FEMA08-000014.

### B. Testing For Formaldehyde In EHUs.

#### 1. Testing By Gulf Stream Coach, Inc.

19. On March 21, 2006, FEMA asked Gulf Stream Coach, Inc., whether there is any additional information or assistance that it can provide and whether Gulf Stream Coach, Inc.'s field staff has the capability to put this formaldehyde issue to bed. Exh. 23, Dec. Stephen Miller ¶6; Exh. 32, July 9, 2009, Committee on Oversight and Government Reform, "Trailer Manufacturers and Elevated Formaldehyde Levels" ("Congressional Report") at 14-18. In response, Gulf Stream Coach, Inc., agreed to send a person to test. Exh. 23, Dec. Stephen Miller ¶6; Exh. 32, Congressional Report at 14-18; *see also* Exh. 33, Gulf Stream Coach Rule 30(b)(6) Depo. pp.44-45/lines 3-15, pp.78/lines 10-18, pp. 79-80/lines17-18; Exh. 43, Gulf Stream Coach E-Mail at FEMA17-022333. Gulf Stream Coach, Inc., thereafter tested EHUs for formaldehyde, concluded that the results did not raised any issues of concern, and never reported those results to FEMA. Exh. 23, Dec. Stephen Miller ¶7; Exh. 33, Gulf Stream Coach, Inc. Rule 30(b)(6) Depo. pp.19-20/lines 7-13, pp. 79-80/lines17-18; *see also* Exh., 32, Congressional Report at 17-18.

#### 2. Testing By FEMA IA/TAC.

20. In late March or early April 2006, FEMA tasked an Individual Assistance/Technical Assistance Contractors ("IA/TAC") to test an EHU for formaldehyde. Exh.

8

34, CH2M Hill Rule 30(b)(6) Depo. at 156-70/17-1. The IA/TAC sub-contracted with Bonner Analytical Testing Co. ("Bonner"). Exh. 35, Bonner Rept. at CH2M-FEMA(Sub 2)-006379. On April 6, 2006, Bonner tested the unit employing a testing protocol designed to replicate a worst-case scenario; thus, the air conditioner and all vents were turned off, all doors and windows were closed, and the testing devices were attached to wood surfaces. Exh. 36, Bonner Depo. pp. 48-51/lines 18-11; *see also* Exh. 35, Bonner Rept. at CH2M-FEMA(Sub 2)-006379 to 006381. For the first two hours no formaldehyde was detected in the unit, however, after eight-hours, formaldehyde levels exceeded OSHA PELs, with the highest level detected in a closed cabinet. Exh. 35, Bonner Report at CH2M-FEMA(Sub 2)-006380; Ex. 36, Bonner Depo. pp.62–66/lines 25-11.

21. FEMA officials had concerns that the Bonner test results did accurately reflect formaldehyde levels in an occupied trailer because the sample was collected when the trailer was closed and the vents and air conditioning were turned off. Exh. 37, June 15, 2006, FEMA-E-Mails at FEMA 17-022369 to 022370, 22662.

22. After testing that one unit, the IA/TAC refused to do any further testing asserting that such testing is was outside of the scope of their contract. Exh. 34, CH2M Hill Rule 30(b)(6) Depo. pp.156-61/lines17-22, pp, 170-71/lines 16-1.

### 3. Testing By FEMA's Office of Health and Safety.

23. In March 2006, FEMA's Section Chief of the Occupational Safety and Health and Security Branch ("OSHSB") learned that OSHA had been testing EHUs for formaldehyde because of concern that formaldehyde levels upon initial entry into new units that had not been made ready for occupancy may exceed OSHA PELs. Exh. 6, Dec. Bronson Brown ¶3. Upon

9

discovering this, FEMA OSHSB as a precautionary measure sent an e-mail directing that employees should vent unoccupied units for a short time before entering the units, and initiated testing to confirm the accuracy of OSHA's findings. Exh. 6, Dec. Bronson Brown ¶8.

24.  OSHSB's testing was conducted at the end of March 2006, and a Memorandum was issued reporting the results at the end of May 2006. Exh. 46, May 31, 2006, OSHSB Memo. at FEMA10-000163. All units that were tested, including units that simulated a "worst case scenario" – doors and windows closed – had formaldehyde levels that were below the time weighted average (TWA) for the permissible exposure level (PEL); and personal air monitoring results for workers required to enter trailers were below quantification levels. Exh. 46, May 31, OSHSB Memo. at 000164. The tests gave "no indications that FEMA employees [had] the potential to be exposed above OSHA's [PEL] while performing job activities involving trailer staging operations." Exh. 46, May 31, 2006, OSHSB Memo. at 000164.

25.  OSHSB also concluded that its the testing showed that the formaldehyde concentration in EHUs if ventilated for a several hours ranged from 0.03 ppm to 0.26 ppm. Exh. 46, May 31, OSHSB Memo. at 000164. OSHSB determined that this concentration is comparable to the levels posted on the EPA website for typical levels found in building materials off-gassing in trailer and/or manufactured homes. Exh. 47, Formaldehyde in Trailers at FEMA17-024461; Exh. 48, May 31, Memo. Formaldehyde Air Sampling at FEMA17-000111 - 000112; Exh. 12, EPA Fact Sheet at EPA-000003 ("homes with significant amounts of new pressed wood products, levels can be greater than 0.3 ppm"). FEMA OSHSB recommended that residents be instructed to follow the manufacturers recommendations to air out and vent the units. Exh. 46, May 31, OSHSB Memo. at 000164; Exh. 47, Formaldehyde in Trailers at

10

Case 2:07-md-01873-KDE-ALC Document 1424-82 Filed 05/12/2009 Page 23 of 16

FEMA17-024461; Exh. 48, May 31, Memo. Formaldehyde Air Sampling at FEMA17-000111 - 000112.

### 4. June 2006 FEMA Officials Made The Decision To Engage EPA To Test EHUs.

26. In early June 2006, FEMA officials were still working towards placement of a contract with a private firm to test for formaldehyde. Exh. 38, S. Miller, E-Mail at FEMA17-023196 (May 22, 2006, waiting to receive solicitation on contracts to test the units for formaldehyde); Ex. 44, S. Melton, E-Mail at FEMA17-022665 (June 1, 2006, "[w]e are still in pursuit of a contract to do testing."). At the same time, other FEMA officials believed that appropriate response was simply to instruct occupants to vent their units. Exhibit 44, M. Miller, E-Mail at FEMA17-022662 ("Botton line is VENTILATION. That is the ONLY fix.").

27. In mid-May 2006, the news media reported that the Sierra Club had tested EHUs and reported that the formaldehyde levels were within a range of .06 ppm to .34 ppm. Exh. 15, June 13, 2006, Sierra Club Letter at FEMA123-000004, 09-15. The news media further reported that FEMA stated that these results did not justify further testing because they were below the HUD 0.4 ppm target level. Exh. 15, June 13, 2006, Sierra Club Letter at FEMA123-000012.

28. On or about June 13, 2006, the Sierra Club sent to Mr. David Garratt, Acting Director, FEMA Recovery Division a letter. Exh. 15, June 13, 2006, Sierra Club Letter at FEMA123-000004, 09-15. The Sierra Club urged FEMA to issue a safety brochure to EHU occupants to supplement the manufacturers' formaldehyde occupancy instructions and test for formaldehyde. Exh. 15, June 13, 2006, Sierra Club Letter at FEMA123-000001 to FEMA123-000002.

29. In mid-June 2006, Kevin Souza was made aware of the ongoing discussion with

11

FEMA and internal disagreement regarding appropriate response action and he recommended that FEMA conduct its own testing rather then rely on non-federal testing. Exh. 28, Dec. Kevin Souza ¶12. In late June 2006, Mr. Souza's briefed David Garratt, Acting Deputy Administrator, FEMA, and Mr. Garratt agreed and made the decision that FEMA would engage EPA to test EHUs for formaldehyde. Exhibit 27, Dec. David Garratt ¶5; Exh. 28, Dec. Kevin Souza ¶¶12-13; *see also* Exh. 29, FEMA E-Mail at FEMA17-007074. His decision to test, primarily stemmed from the fact that FEMA lacked the ability to either validate or invalidate the Sierra Club's assertions, and testing by a qualified independent third party was necessary to establish whether elevated levels were present in EHUs. Exh. 27, Dec. David Garratt ¶5; Exh. 28, Dec. Kevin Souza ¶¶11-12.

30. EPA and ATSDR both expressed concerns about moving forward with testing and advised that the results may be more than 100 times higher than the base health levels. Exh. 5, FEMA E-Mail at FEMA17-006702 to FEMA17-006703; Exh. 38, Summary of EPA Conference Call at FEMA17-000520; Exh. 39, Summary of EPA/CDC/FEMA Testing Conference Calls at CDC104-001025; *see also* Exh. 40, Dec. Joseph Little Dec. ¶4. Notwithstanding these concerns, Mr. Souza made the decision that FEMA had to test, and if ATSDR determined that formaldehyde minimum risk levels constituted an appropriate action level and test data showed that the units exceeded such levels, FEMA would prepare and implement appropriate response actions. Exh. 28, Dec. Kevin Souza ¶16; *see also* Exh. 40, Dec. Joseph Little ¶4.

31. FEMA initially envisioned that testing would include both occupied and unoccupied units. Exh. 27, Dec. David Garratt ¶5; Exh. 40, Dec. Joseph Little ¶5; Exh. 41, Dec, Martin McNeese ¶3; Exh. 42, June 28, 2006, Travel Trailer/Formaldehyde Related Efforts at

12

FEMA17-002458. EPA instructed that the appropriate way to proceed would be to test new, unused units to establish a baseline formaldehyde level and determine whether ventilation was an effective solution. Exh. 27, Dec. David Garratt ¶7; Exh. 28, Dec. Kevin Souza ¶17; Exh. 40, Dec. Joseph Little ¶5; Exh. 41, Dec. Martin McNeese ¶3. The intent was to isolate the cause of any potential formaldehyde findings to the units themselves, versus other extraneous potential causes of occupancy, and to determine the effectiveness of ventilation in reducing formaldehyde levels. Exh. 27, Dec. David Garratt ¶7; Exh. 28, Dec. Kevin Souza ¶17; Exh. 40, Dec. Joseph Little ¶5; Exh. 41, Dec. Martin McNeese ¶3. FEMA and ATSDR agreed that this was the appropriate way to proceed. Exh. 27, Dec. David Garratt ¶7; Exh. 28, Dec. Kevin Souza ¶17; Exh. 40, Dec. Joseph Little ¶5; Exh. 41, Dec. Martin McNeese ¶3.

      32. In July/August 2006 a Testing Protocol was completed and a portion of the Baton Rouge Staging Area was set aside as a test area. Exh. 23, Dec. Stephen Miller ¶12; Exh. 40, Dec. Joseph Little ¶6; Exh. 41, Dec. Martin McNeese ¶¶4-5. Testing was initially scheduled to commence at the end of August, however, because of difficulties extending electrical power to the test area, testing commenced in mid-September 2006. Exh. 23, Dec. Stephen Miller ¶12; Exh. 41, Dec. Martin McNeese ¶¶4-5. EPA was responsible for conducting the testing, and FEMA was responsible for providing trailers and logistic support. Exh. 23, Dec. Stephen Miller ¶12; Exh. 41, Dec. Martin McNeese ¶¶4-5.

      33. After testing was completed the data was provided to ATSDR for analysis and ATSDR on February 1, 2007, issued a Health Consultation Report. Exh. 40, Dec. Joseph Little ¶8.

      34. ATSDR Emergency Responders were responsible for analysing and interpreting

the EPA test results and preparing the short turn-around Health Consultation Report. Exh. 40, Dec. Joseph Little ¶8. The draft was completed in December 2006, and over the month of January 2007, was reviewed and final document was released on February 1, 2007. Exh. 40, Dec. Joseph Little ¶8.

35. The Health Consultation Report identified 0.3 ppm of formaldehyde in air as a comparison point or "level of concern"; a level that had been associated with an allergic reaction and subsequent constriction of the bronchi in previously formaldehyde sensitized individuals. Exh. 40, Dec. Joseph Little ¶9. ATSDR Emergency Responders further found that EPA's testing showed that the ventilation method of opening windows reduced formaldehyde levels in the EHUs to below 0.3 ppm after four days of the windows being continuously open, while the ventilation method of running the air conditioning did not. Exh. 40, Dec. Joseph Little ¶9.

36. In selecting 0.3 ppm formaldehyde in air as a comparison point or level of concern, ATSDR Emergency Responders were aware that ATSDR had issued Minimal Risk Levels ("MRLs") for formaldehyde and that the formaldehyde MRLs were substantially lower than 0.3 ppm. Exh. 40, Dec. Joseph Little ¶10. The ATSDR Emergency Responders determined that the ATSDR Acute and Intermediate MRLs were not appropriate for use as a comparison point or level of concern because they were based upon actual effect levels that were higher than 0.3 ppm that were then adjusted downward by safety factors ranging from 9 to 30. Exh. 40, Dec. Joseph Little ¶10. The ATSDR Acute and Intermediate MRLs were not used because they were both below levels typically found in newer conventional homes and offices throughout the United States. Exh. 40, Dec. Joseph Little ¶10. The ATSDR Chronic MRL was not used because it was based on an average exposure time frame of approximately 10 years (range 1-36

14

years); and also because it was below background levels at the test site, and below background levels found in most urban areas throughout the United States. Exh. 40, Dec. Joseph Little ¶10. ATSDR advises that MRLs are not intended to be used as regulatory action levels. Exh. 40, Dec. Joseph Little ¶10.

37. The decision to use the 0.3 ppm formaldehyde in air as a comparison point was based on the fact that it was the lowest actual human effect level, not modified by safety factors, found in the peer reviewed literature from ATSDR and the National Library of Medicine's Hazardous Substances Data Bank, referenced during the approximate two-week time frame (December 6-22, 2006) to write the emergency consultation. Exh. 40, Dec. Joseph Little ¶11.

38. A representative from FEMA's Office of Chief Counsel ("OCC")was present during conference calls involving EPA, ATSDR, and FEMA representatives, however, OCC was not an active participant and did not issue instructions limiting or impose any restrictions on EPA's testing for formaldehyde or ATSDR's interpretation and analysis of the EPA test results. Exh. 27, Dec. David Garratt ¶4; Exh. 40, Dec. Joseph Little ¶12; Exh. 41, Martin McNeese ¶9; Exh 42, June 28, 2006, Travel Trailer/Formaldehyde Related Efforts at FEMA17-002458.

15

Dated:  May 15, 2009

TONY WEST
Assistant Attorney General, Civil Division

J. PATRICK GLYNN
Director, Torts Branch, Civil Division

DAVID S. FISHBACK
Assistant Director


OF COUNSEL:
JORDAN FRIED
Associate Chief Counsel

JANICE WILLIAM-JONES
Trial Attorney
FEMA/DHS
Department of Homeland Security
Washington, D.C. 20472

Respectfully Submitted,

ADAM BAIN
Senior Trial Counsel

ADAM DINNELL
MICHELLE BOYLE
JONATHAN WALDRON
Trial Attorneys

*//S// Henry T. Miller*
HENRY T. MILLER (D.C. Bar No. 411885)
Senior Trial Counsel
United States Department of Justice
Civil Division – Torts Branch
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20004
Telephone No:  (202) 616-4223
E-mail:  Henry.Miller@USDOJ.Gov

Attorneys for the United States of America

16