UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO.: 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION N(5) |
| | * | |
| | * | JUDGE: ENGELHARDT |
| | * | |
| **THIS DOCUMENT RELATES TO:** | * | MAGISTRATE: CHASEZ |
| *Jessica Hammons, et al. v. Vanguard,* | * | |
| *et al., Case No. 10-4130* | | |

## BECHTEL NATIONAL, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

NOW INTO COURT, comes Defendant, Bechtel National, Inc. ("Bechtel"), and, with a full reservation of rights, files this Opposition to Plaintiffs' Motion to Remand. Bechtel undertook the actions complained of by Plaintiffs subject to the specific and non-negotiable direction and supervision of the federal government. Consequently, Bechtel is entitled to invoke the Federal Officer Removal Statute and the jurisdiction of this Court.

**I.     BACKGROUND**

On May 28, 2010, Plaintiffs filed a Complaint for Damages in *Jessica Hammons, et. al. v. Vanguard, et. al.,* No. 10-0186 ("the Complaint"), in the Circuit Court of Madison County, Mississippi. The Complaint arises solely from operative facts that are the subject of the

1

multidistrict litigation currently ongoing in this Court, in that Plaintiffs seek damages for alleged injuries they suffered from exposure to formaldehyde in a travel trailer provided to them by the Federal Emergency Management Agency ("FEMA").

Bechtel was served with the Complaint on August 27, 2010. (Rec. Doc. 1-2, 2:10-cv-04130-KDE-ALC, at 24.) Plaintiffs' Complaint alleges multiple failures on Bechtel's part, including, but not limited to, faulty installation, maintenance, and inspection of Plaintiffs' temporary housing units. (Rec. Doc. 1-2, 2:10-cv-04130-KDE-ALC, at 1-23.) On September 24, 2010, Bechtel timely and properly removed this matter to this Court in accordance with 28 U.S.C. §§ 1441 and 1446 based on federal question jurisdiction (28 U.S.C. § 1332) under the federal officer removal statute, 28 U.S.C. § 1442 (a)(1), and the Class Action Fairness Act. (Rec. Doc. 1, 1:10-cv-00529-HSO-JMR.)

## II. LEGAL STANDARD

A defendant is entitled to remove a state court claim to federal court under 28 U.S.C. § 1442 if he "(1) acted under color of federal authority when committing the allegedly tortious conduct, (2) can demonstrate a causal nexus between the plaintiff's claims and defendant's actions performed under color of office, and lastly, (3) can assert a federal defense to the plaintiff's claims." *Cole v. Northrop Grumman Ship Systems, Inc,* No. 07-3049, 2008 WL 2651428 at *3 (E.D. La. 2008). Although removal should generally be construed strictly, federal officer removal jurisdiction should be construed liberally in favor of exercising federal jurisdiction. *See*, *State of La. v. Sparks*, 978 F.2d 226, 232 (5th Cir. 1992) ("the Supreme Court has for over two decades required a liberal interpretation of § 1442(a) in view of its chief purpose-to prevent federal officers who simply comply with a federal duty from being punished by a state court for doing so").

### III.   THIS ACTION IS SUBJECT TO FEDERAL OFFICER REMOVAL JURISDICTION

Plaintiffs have filed the instant Motion to Remand, alleging, *inter alia*, that no Defendant is qualified to remove this matter to federal court under the federal officer removal statute. Plaintiffs are incorrect.  This case was properly removed by Bechtel pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which states that "the right of removal under 28 U.S.C. § 1442(a)(1) is made absolute whenever a suit in state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in federal court. Federal jurisdiction rests on a 'federal interest in the matter' . . . ." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969).  This matter is subject to federal officer removal jurisdiction because Bechtel was a government contractor who undertook the actions complained of at the direction and under the strict supervision of the United States government.

#### a.   Federal Officer Removal Does Not Require the Consent of Co-Defendants

Plaintiffs claim that the Notice of Removal was defective because Defendants, Vanguard Industries and Madison Services, did not timely join in the removal.  Plaintiffs misconstrue the federal officer removal statute.  When a party removes an action under the federal officer statute, he does so as a matter of right, and is not required to obtain the consent of co-defendants.  *See*, *Akin v. Ashland Chemical*, 156 F.3d 1030, 1034 (10th Cir. 1998); *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965) ("it is settled that the filing of a petition for removal by a single federal officer removes the entire case to the federal court."); *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981) ("Since the federal officer is the only one entitled to remove under § 1442, he alone can remove without other defendants joining in the petition, and the entire case is removed to the federal court."). Plaintiffs' transparent attempt to circumvent the federal officer removal statute by applying 28

U.S.C. §1446(b) is unsupportable.  Although §1446(b) requires that all defendants join in removal within 30 days of service on the first defendant, Bechtel has established that §1446(b) and its requirement of joinder do not apply to cases removed under §1442.

Plaintiffs cite to two cases in support of their procedural defect argument.  Both *Getty Oil Corporation v. Insurance Company of North America*, and *Smith v. Union Nat. Life Ins. Co.*, analyze removals based on diversity jurisdiction that failed to comply with the timing requirements §1446(b)'s joinder procedure, which does not apply to this removal. 841 F.2d 1254, 1262-63 (5th Cir.1988); 187 F.Supp.2d 635 (S.D. Miss. 2001). Plaintiffs' argument that this removal was in any way procedurally defective is meritless and should be disregarded.

### b. Bechtel is Entitled to Invoke Federal Officer Jurisdiction Because It is a Qualified Government Contractor

Three requirements must be met to invoke the federal officer removal statute: (1) the defendant must be a "person" within the meaning of §1442(a)(1); (2) the defendant must have acted under color of federal authority when committing the acts that allegedly caused plaintiffs' injuries; and (3) the defendant must have a colorable federal defense.  *Williams v. Todd Shipyards Co.*, 154 F.3d 416 (5th Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129, 131 (1989)).  In this case, Bechtel's "colorable federal defense" is the government contractor defense.

### i. Bechtel Is A Person Within The Meaning Of 28 U.S.C. 1442(b)

It is uncontested that Bechtel qualifies as a "person" under §1442(a)(1).  Corporations are treated as "persons" under the federal officer removal statute. *See Winters v. Diamond Shamrock Chemical Company*, 149 So.2d 387, 398 (5th Cir. 1998) (examining the federal officer removal statute and explaining that "corporate entities qualify as 'persons' under §1442(a)(1)") (citation omitted).

### ii. Bechtel Was a Government Contractor Acting Under Color of Federal Authority

The second factor hinges on whether Bechtel acted under the color of federal authority when committing the acts that allegedly caused the plaintiffs to suffer damages. The color of federal authority requirement is "neither limited nor narrow, but should be afforded a broad reading so as not to frustrate the statute's underlying rationale." *Winters*, 149 F.3d at 398. In determining this prong, courts examine the level of official control, which is only sufficient when the control is direct and detailed. *Breaux v. Gulf Stream Coach, Inc.,* No. 08-893, 2009 WL 152109, *3 (E.D. La. Jan. 21, 2009).

Plaintiffs' allegations against Bechtel arise out of Bechtel's contract with FEMA to perform "transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units." *See* (Complaint ¶26.) Bechtel performed the transportation, installation, inspection, maintenance and repair of the FEMA trailer(s) involved in this litigation (the "Work") pursuant to a federal contract between FEMA and Bechtel (the "Contract"), and Bechtel was acting under color of federal authority when performing under the Contract. *See* "FEMA approved reasonably precise specifications" and "the Work conformed to government specifications." *infra*.

### iii. Bechtel Can Assert a Colorable Government Contractor Defense

The government contractor defense was established by *Boyle v. United Techs. Corp.*, 487 U.S. 500, 511-12 (1988). The Supreme Court created the defense to prevent "second-guessing" of judgments made by contractors subject to government approval and to prevent state lawsuits from driving up the cost of federal government contracts. *Id.* at 511. A contractor may assert the

5

defense where "the government has directed a contractor to do the very thing that is the subject of the claim." *Corr. Svcs. v. Malesko*, 534 U.S. 61, 74 n.6 (2001). Courts have consistently found when a Defendant establishes a plausible government contractor defense, removal is proper. *See, e.g., Isaacson v. DOW Chemical Co.*, 517 F.3d 129 (2nd Cir. 2008) (finding removal proper under Section 1442(a)(1) where the defendant was a government contractor and its colorable federal defense was based upon the government contractor defense); *Miller v. Diamond Shamrock Chemical Co.*, 275 F.3d at 414 (same); *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d at 397-401 (same); *Williams v. Todd Shipyards Corp.*, 154 F.3d 416 (5th Cir. 1998) (same).

Significantly, this Court has already found that the Contract gives rise to the government contractor defense. In Rec. Doc. 18426, this Court denied the Joint Defendants' 12(b)(6) Motion to Dismiss based on the government contractor defense with regard to FEMA's instructions on "jacking" but granted the motion based on the maintenance of FEMA trailers on the basis of the government contractor defense. It is noteworthy that although this Court did not <u>dismiss</u> in favor of Bechtel regarding the "jacking" claims, Bechtel is not required to prove that Plaintiffs have failed to state a claim upon which relief can be granted. Instead it need only prove that its defense is <u>plausible</u>. *See*, *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).

In order to prove plausibility, Bechtel need not prove that its claim to the government contractor defense will be successful. *Mesa*, 489 U.S. at 133; *Magnin v. Teledyne Continental Motors*, 91 F.3d at 1427 ("defense need only be plausible; its ultimate validity is not to be determined at the time of removal."); *Jamison v. Wiley*, 14 F.3d 222, 238 (4th Cir. 1994) ("defendant need not prove that he will actually prevail on his federal immunity defense in order

6

to obtain removal"). Rather, Bechtel is only required to show a causal connection between the Plaintiffs' claims and Bechtel's performance as a government contractor; Bechtel can do so. *See*, *Todd Shipyards Co.*, 154 F.3d at 416.

A causal connection between the plaintiffs' claims and the contractor's performance exists when a corporate entity is sued for work it undertook at the contractual direction of the federal government. In *Boyle v. United Tech. Corp.*, the U.S. Supreme Court established that in order to prevail on the government contractor defense, a party must demonstrate that 1) the federal government approved reasonably precise specifications, 2) the contractor's work conforms to those specifications; and 3) the contractor is not aware of reasons not known to the government why the work product required by the specification is unsafe or unreasonable. 487 U.S. 500, 512 (1988).

### 1. FEMA Approved Reasonably Precise Specifications

Contractors establish the first condition by showing one or more of the following: (1) the Government issued specifications that it developed its own, *Miller,* 275 F.3d at 420; (2) the Government substantively reviewed, evaluated, and approved specifications proposed by its contractor, *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 438, n.9 (5th Cir. 2000); or (3) the Government, in its discretion, either inspected, accepted, or made use of its contractors' work upon completion, *Miller*, 275 F.3d at 420; *Kerstetter*, 210 F.3d at 438 n.8; *In re Air Disaster*, 81 F.3d 570, 575 (5th Cir. 1996). All three qualifying criteria exist in this instance.

The Contract lays out specific, detailed instructions for the numerous tasks Bechtel was required to complete under the Contract, from inspection and preparation to removal and refurbishment. In response to Bechtel's notice that there were concerns about off-gasing of formaldehyde, the Government provided "venting" specifications designed to alleviate risks

7

linked to formaldehyde in new units. (U.S. Stat. of Facts, Rec. Doc. 2796-8 ¶9.) The Contract also specifies how Bechtel was required to install and position EHUs as temporary residential units. Bechtel was instructed to ensure that "travel trailers shall be set-up on concrete piers"; "the weigh [sic] of the travel trailer is transferred to the piers"; "after the weight of the travel trailer is transferred to the concrete piers, the piers must be vertically aligned." (Contract, Rec. Doc. 2796-7, 2:07-md-01873-KDE-ALC at 383-84.) All installation and maintenance work was subject to Bechtel's duty to "monitor and track progress and compliance with contract requirements." (Contract at 66, 68-69.) Government inspectors also possessed the right to impose further specifications. *See*, 48 C.F.R. §52.243-2.

In light of the above specifications, Plaintiffs' Complaint contests tasks that Bechtel undertook pursuant to specific terms in its contract with FEMA. For instance, Plaintiffs complain that:

> By installing the travel trailers on concrete blocks for extended occupancy, Defendant Bechtel knowingly and intentionally modified the design and the actual use of these units occupied by the Plaintiff(s) by converting them into a temporary housing unit to be used as a residence for long term occupancy in some instances exceeding 18 months.
>
> (Complaint ¶33.)

The requirement that EHUs be placed on concrete blocks is indisputably specified in the Contract. Moreover, this Court has recently ruled that the contractors were given "detailed specifications" regarding the blocking procedure. (Order, Rec. Doc. 18426 at 4.)

There is also no question that FEMA substantively reviewed specifications developed by its contractor. FEMA required Bechtel to "establish procedures to ensure the quality of the work" and monitor "compliance with contract requirements." (Contract at 66, 69.) This requirement included quality control plans and a mandate that the contractor engage in discussion with FEMA to "plan and coordinate" the Work itself. (Contract at 347.) Bechtel

followed the Contract in developing installation procedures that reflected its obligations under the Contract, including FEMA specifications, Mississippi law and the manufacturer's recommendations to complete the protocol. (Hume Depo, Exh. A at 41.) Bechtel cannot be sued in state court for complying with specifications pursuant to a contract with FEMA – the federal officer removal statute was created to prevent state court prosecution of federal officers and their contractors.

FEMA also made use of Bechtel's work upon completion. Bechtel's inspections of FEMA trailers were "checklist joint inspections" performed by Bechtel employees in concert with FEMA employees. *See*, (Hume Depo at 57-58.) Bechtel's inspections were performed according to a FEMA checklist and in compliance with FEMA specifications. FEMA continued to approve and make use of Bechtel's installation and maintenance of the travel trailers long after it was notified of possible formaldehyde off-gasing.

2. The Work Conformed to Government Specifications

The United States of America already established in its Motion to Dismiss that most of the actions about which Plaintiffs complain were undertaken under the supervision of FEMA and were necessarily approved by FEMA before mobile housing units were provided to the public. For instance, in their Complaint Plaintiffs allege that

> In addition to the de-installation of the temporary housing units, Defendant Bechtel were tasked with refurbishment and restoration of the temporary housing units for use, either in direct response to Hurricane Katrina or for use in the future. By restoring and refurbishing these temporary housing units Bechtel warranted that the units were fit for their intended use, long term occupancy in response to disaster related displacement. By restoring and refurbishing these temporary housing units, Defendant Bechtel created and perpetuated existing hazardous conditions which would foreseeably lead to adverse health effects caused by the elevated levels of formaldehyde in the temporary housing units. Further, in thousands of cases, following the restoration and refurbishment, these temporary housing units were immediately occupied by new individuals or

9

>families displaced by Hurricane Katrina, and who were then directly exposed to hazardous levels of formaldehyde.
>
>(Complaint ¶39.)

However, the actions complained of by Plaintiffs conformed to government specifications. Bechtel's inspection system had to be "*acceptable to the Government,*" and there is every indication that the inspection system was acceptable. 48 C.F.R. § 52.246-5(b) (emphasis added).

In its Motion to Dismiss, the United States of America attached the sworn declaration of Stephen C. Miller, who testified that "FEMA Standard Form 90-13 outlines and provides guidelines that FEMA representatives used to inspect EHUs to determine and ascertain . . . (ii) whether or not to accept or reject refurbished EHUs." (Miller Decl., Exh. B ¶3.) According to Miller, not only did Bechtel refurbish each temporary housing unit in accordance with government specifications, FEMA itself had the right to accept or reject the refurbished unit. FEMA was aware of the existence of formaldehyde in the units, and Plaintiffs cannot now hold Bechtel responsible for FEMA's decision to use correctly refurbished units containing formaldehyde.

Plaintiffs' allegations that Bechtel "failed to warn the Plaintiff-occupant(s) of each temporary housing unit of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde" are equally meritless. (Complaint ¶40.) Miller testified that FEMA had control over the warnings provided to occupants. (Miller Decl. ¶4.) ("To the extent the vendor or manufacture included any notice or documents with a unit, including any materials relating to formaldehyde, any such materials would have been provided to the installation contractor to when they took possession of the unit from FEMA.") Bechtel's disputed actions complied with FEMA specifications and passed FEMA inspection. The government made extensive use of Bechtel's work after accepting it and after learning of the

10

formaldehyde related risks. FEMA's decision to use Bechtel's work even after it learned of the formaldehyde issues is independent standalone evidence that the Work conformed to FEMA's specifications. *Miller*, 275 F.3d at 420.

FEMA was well aware of the dangers of formaldehyde and in a better position than Bechtel to determine the necessity to warn occupants. *See*, (Brown Decl., Rec. Doc. 2796-17.) Bechtel was unquestionably acting under color of federal authority when it engaged in the acts on which Plaintiffs base their Complaint and is therefore entitled to raise the government contractor defense.

### 3. Bechtel Warned FEMA About The Danger Of Formaldehyde Exposure and FEMA Had Knowledge Equal To Bechtel's

Bechtel can prove that it meets the third prong of the government contractor defense in two ways. First, Bechtel may show that it warned the government of dangers associated with Bechtel's work about which Bechtel had actual knowledge. *See, In re Katrina Canal Breaches Consol. Litig.,* Civ. A. No. 05-4182, 2008 WL 5234369, at *19 (E.D. La., Dec. 15, 2008). (holding that the test for the third prong "is not should [the contractor] have known of the alleged problem created by" performing the contract since the contractor "is **only responsible for warning the government of dangers about which it had actual knowledge**")(emphasis in original). Alternatively, Bechtel may meet the third prong by showing that FEMA's knowledge of the risks associated with Bechtel's work equaled or exceeded Bechtel's knowledge. *Kerstetter v. Pac. Sci. Co*., 210 F.3d at 438, n.9 (third prong met by actual knowledge); *In re Air Disaster*, 81 F.3d 570, 575 (5th Cir. 1996); *Stout v. Borg-Warner Corp.*, 933 F.2d 331, 336-337 (5th Cir. 1991) (same).

When Bechtel became aware that formaldehyde emissions might cause health issues for the families occupying the EHUs, it reported its concerns to FEMA and helped ensure that those

11

concerns were addressed.  (US MTD, Exh. C at 26.)  At least as early as October 5, 2005, Bechtel warned FEMA of "a concern about material off-gasing (possibly formaldehyde) in newly delivered travel trailers." (Smith Letter, Exh. D) Bechtel's warning, standing alone, fulfills the third prong of the *Boyle* analysis.  *In re Katrina Canal Breaches Litig.*, 2008 WL 5234369, at *19.

Additionally, Bechtel satisfies the third prong because, as Plaintiffs allege, FEMA knew of the claimed formaldehyde hazards at all times material to Plaintiffs' Complaint. (¶¶ 46-48.) FEMA admits it had knowledge of a "potential problem." *See* (U.S. MTD at 21, 26.)  Indeed, FEMA "took action to warn occupants." *Id*. at 21.  FEMA inspected pre-deployed emergency housing and found "a formaldehyde warning from the manufacturer." (U.S. Stat. of Facts, Exh. E ¶ 15.)  Bechtel had no duty to warn FEMA of dangers about which it already had knowledge. *Kerstetter,* 210 F.3d at 438, n.9; *In re Air Disaster*, 81 F.3d at 575; *In re Katrina Canal Breaches*, 2008 WL 5234369, at *19.

Bechtel is entitled to federal officer jurisdiction because it has established that it has a colorable claim to the government contractor defense.  Bechtel performed all of the disputed tasks pursuant to its contract with FEMA, which prescribed in detail the procedures Bechtel was required to implement.  Finally, this Court has already found not only that Bechtel has a plausible or colorable claim to the government contractor defense, but that Bechtel has proven its entitlement to full immunity under the defense with regard to Plaintiffs' claims alleging defective maintenance procedures.  (Order and Reasons, Rec. Doc. 18426)

## IV. CONCLUSION

For all of the foregoing reasons, this matter has properly been removed to the United States District Court for the Southern District of Mississippi, and Bechtel respectfully requests that Plaintiffs' Motion to Remand be DENIED.

Respectfully submitted,

**FRILOT, L.L.C.**

*/s/ John J. Hainkel, III*
**JOHN J. HAINKEL, III - 18246**
**PETER R. TAFARO – 28776**
**A. J. KROUSE - 14426**
**DAVID P. CURTIS – LA: 30880** (Ms. Bar - 102092)
3700 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163-3600
T: (504) 599-8000; F: (504) 599-8100
E-Mail: jhainkel@frilot.com

**Attorneys for Bechtel National, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court on this 7th day of December, 2010, using the ECF filing system which sent notification of such filing to all counsel of record who are ECF participants. I further certify that I have mailed by U.S. Mail, postage prepaid and properly addressed a copy of this filing to all non-ECF participants.

*/s/ John J. Hainkel, III*