```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
 2

 3      ************************************************************

 4  IN RE:  FEMA TRAILER
    FORMALDEHYDE PRODUCTS
 5  LIABILITY LITIGATION
                                DOCKET MDL NO. 1873 "N"
 6                              NEW ORLEANS, LOUISIANA
                                FRIDAY, DECEMBER 3, 2010
 7                              10:00  A.M.

 8
        ************************************************************
 9

10            TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
           HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT
11                  UNITED STATES DISTRICT JUDGE

12

13     APPEARANCES:

14

    FOR THE PLAINTIFFS:         GAINSBURGH BENJAMIN DAVID MEUNIER AND
15                                   WARSHAUER, LLC
                                BY:  GERALD E. MEUNIER, ESQUIRE
16                              JUSTIN I. WOODS, ESQUIRE
                                2800 ENERGY CENTRE
17                              1100 POYDRAS STREET, SUITE 2800
                                NEW ORLEANS LA  70163
18

19   FOR THE DEFENDANTS:        DUPLASS ZWAIN BOURGEOIS MORTON
                                     PFISTER & WEINSTOCK
20                              BY:  ANDREW D. WEINSTOCK, ESQUIRE
                                     JOSEPH G. GLASS, ESQUIRE
21                              THREE LAKEWAY CENTER
                                3838 N. CAUSEWAY BOULEVARD
22                              SUITE 2900
                                METAIRIE LA  70002
23

24

25
```

```
 1

 2        FOR THE UNITED STATES
          OF AMERICA:              UNITED STATES DEPARTMENT OF JUSTICE
 3                                 CIVIL DIVISION -- TORTS BRANCH
                                   BY:  HENRY T. MILLER, ESQUIRE
                                   P.O. BOX 340, BEN FRANKLIN STATION
 4                                 WASHINGTON DC  20004

 5                                 BAKER DONELSON BEARMAN
                                   CALDWELL & BERKOWITZ
 6                                 BY:  MICHAEL D. KURTZ,  ESQUIRE
                                   201 ST. CHARLES AVENUE, SUITE 3600
 7                                 NEW ORLEANS LA  70170

 8

 9

10

11

12        OFFICIAL COURT REPORTER:   SUSAN A. ZIELIE, RPR, FCRR
13                                   UNITED STATES DISTRICT COURT
                                     EASTERN DISTRICT OF LOUISIANA
14                                   500 POYDRAS STREET, ROOM B406
                                     NEW ORLEANS LA  70130
15                                   504.589.7781

16

17

18

19   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.
20

21

22

23

24

25
```

```
 1            NEW ORLEANS, LOUISIANA, FRIDAY, DECEMBER 3, 2010

 2                         10:00 A.M.

 3                    (COURT CALLED TO ORDER)

 4            THE COURT:  We are here for our status conference,

 5   general status conference in the multi-district litigation MDL

 6   No. 1873 in re:  FEMA Trailer Formaldehyde Product Liability

 7   litigation.

 8            I met earlier this morning with the committees and the

 9   liaison counsel for the parties.  They have prepared a joint

10   report No. 20, or a draft of joint report No. 20, which we will

11   try to cover today.  We'll discuss the issues that are in there.

12            At the end, we will open the floor for any further

13   discussion about anything that we have already spoken about by

14   way of presentation and also any other issues that are not

15   covered today.  If anyone present has any other issues to discuss

16   or questions of a general nature, we can certainly take those as

17   well.  And then we will pick a date for our next status

18   conference.

19            Having said that, if at any point in time we're on a

20   topic that you have a question about for either the Court or for

21   counsel, you can go ahead and raise your hand.  And, if you do

22   speak here today, make certain you identify yourself for the

23   court reporter.

24            But we'll go ahead and proceed.  Mr. Woods or Mr.

25   Meunier, do you want to go ahead and begin?
```

1        MR. WOODS:  Yes, Your Honor.

2        THE COURT:  If you want to take the podium so we can all

3   hear.

4        MR. WOODS:  Justin Woods for the PSE.  Good morning,

5   Your Honor.

6        THE COURT:  Good morning.

7        MR. WOODS:  As you said, we have joint report No. 20.

8   The first section in report No. 20 is the report of claims and

9   case inventory.

10       And the PLC and MDLC are reporting that there is an

11   estimated 5,000 actions that have been filed or transferred into

12   the MDL as of today.  However, there are a number of amending

13   complaints that were filed pursuant to pretrial orders No. 40, 53

14   and 68 by the Court-imposed deadline of October 15th.  A number

15   of those actions are not reflected on the appendix that will be

16   attached to the joint report because they are still being

17   processed by the clerk at this time.

18       Section 2, plaintiff fact sheets.  Again, I'd like to

19   remind all plaintiff counsel that the PSE no longer operates its

20   central claims office, but that counsel are still required and

21   obligated to comply with the provisions of pretrial orders No. 2,

22   which is filed at record document No. 87, and 32, which is found

23   at record document No. 11A, which sets forth the deadlines for

24   completing and serving verified plaintiff fact sheets.

25       To date, the plaintiffs have produced 21,002 plaintiff

1   fact sheets to defendants.

2          I'd also like to remind all plaintiff counsel present

3   that it is necessary to provide plaintiff liaison counsel, either

4   myself or Gerry Meunier, with a copy of each PFS so that we are

5   able to maintain a current and correct count of PFSs that are

6   being provided to defendants.

7          In section No. 3 is the motion practice section.  These

8   are the motions that are currently pending.

9          In this section, there are three motions or three

10  documents that need to be omitted.  The first is record document

11  No. 13421 which was the contractor defendant's joint motion to

12  dismiss plaintiff's third and fourth supplemental and amended the

13  master complaint.  The Court issued its order and reasons

14  yesterday, and that is found at record docket No. 18426.  So we

15  will omit that entry when we submit the final joint report.

16         On page 3, we will also omit record document No. 14197.

17  The Court has also ruled on that particular motion as well.

18         On page 4, we will omit record document No. 18393, which

19  was the PSE's ex parte or consent motion to substitute an order

20  to record document No. 16174.  That motion was granted.

21         A motion that is also critical, and all parties should

22  pay particular attention to, is found at record document No.

23  18283, and that is the manufacturing defendant's motion in limine

24  to exclude the expert testimony of Paul Hewitt.  There's PSE

25  opposition due to that motion that's currently set for January 7,

1   2011 and a reply that is due on January 17, 2011.  But I believe

2   that there has been some discussions about extending those dates.

3          THE COURT:  And that is also the motion that we refer to

4   as the statistical model motion.

5          MR. WOODS:  Yes, Your Honor.

6          MR. WEINSTOCK:  Yes, Your Honor.  The format we used for

7   this process was the docket that you issued a report.  The

8   defendants have prepared a *Daubert* challenge to that report, and

9   the report is based on a statistical model.  Because of the

10  holidays, it doesn't look like Dr. Mare, the defendant's

11  countervailing expert, will be deposed until the first or second

12  week of January.  So we anticipate those deadlines being pushed

13  back somewhat.

14          The only question I have, and I should have raised in the

15  committee meeting, does the Court anticipate an in-court hearing

16  with those experts?

17          THE COURT:  My feeling on it right now is I want to

18  reserve a hearing date for an actual hearing, an evidentiary

19  hearing.  Not having received all of the briefing on it, it's

20  hard for me to say that that's not going to be necessary.

21  Obviously, I will ask for input from counsel whether they believe

22  it is necessary.  But I think I have to operate on the assumption

23  that the hearing date will actually be an evidentiary hearing

24  date in order to calendar it on the Court's calender.  I'll

25  review the materials when they're complete and confer with you

 1   all; and, if you believe that it's something that is evident, or

 2   lack thereof, depends on your particular positions, then the

 3   Court can decide based upon the written submissions along with

 4   the relevant transcripts, then we'll dispense with the

 5   evidentiary hearing and either have oral argument or not.  If

 6   it's something that the parties believe can be submitted, that

 7   the submissions are complete, then I can go ahead and handle it

 8   that way as well.  So there are three options:  No oral argument,

 9   no evidentiary hearing, the matter's submitted; secondly, to have

10   oral argument but no need for a further evidentiary hearing; and,

11   third, having both oral argument and an evidentiary hearing.  I'm

12   assuming that it is the last of those three as we sit here today,

13   but that's based only on the idea that I don't have all the

14   information in front of me, not any proclivity or desire to have

15   oral argument and an evidentiary hearing for any other reason.

16        MR. WEINSTOCK:  In that case, if we can confer after

17   this and maybe create a new schedule, and then find out what a

18   good hearing date would be on your calender.

19        THE COURT:  Right.

20        MR. WEINSTOCK:  I think that makes the most sense.

21        THE COURT:  That's fine.  Although we did discuss with

22   the committees that that hearing is material to one of the

23   summary jury trials that also is on the near horizon.  So that

24   date will have to be -- those dates will have to be reset for

25   consideration for that as well, depending on what we do with the

1     summary jury trial date.

2          MR. WOODS:  Moving on section 4 entitled Manufactured

3     Housing Nonlitigation Track.  The parties have been working

4     diligently to present to the Court a joint motion to certify a

5     settlement class.  That deadline has been extended by record

6     document No. 17926 until January 11, 2011.  As I said, both sides

7     have been working diligently to make sure that we meet that

8     deadline.  And, also, that the motion to certify the class

9     settlement is scheduled for hearing on January 26, 2011 without

10    oral argument.

11         Section 5, Matching Plaintiff to Defendant Manufacturer

12    and FEMA Contractor.  Again, throughout this litigation, it's

13    been an overwhelming task of all plaintiff lawyers, counsel, to

14    match their individual clients to the proper manufacturer

15    defendant and contractor.  PTO 68 was entitled The Last Chance

16    Matching Process Order.  That order -- that deadline has come and

17    gone.  The Court intends, with the guidance of liaison counsel,

18    to begin dismissal orders for failure to comply with the

19    provisions of the Pretrial Order 68.  That deadline has gone.

20    That process could begin on November 15, 2010.

21         However, Your Honor, if you'd turn to section -- the

22    Miscellaneous section, section 11 of the joint report on page 11,

23    defendants have informed that they will prepare an omnibus motion

24    to dismiss all holding actions.  It's critically important for

25    all plaintiff lawyers to pay attention to that omnibus motion

1   when it is circulated by either Gerry Meunier or myself as

2   liaison counsel because that will be the motion within which

3   their respective client's claims may be dismissed.  And I know

4   that Andy has further information.

5           MR. WEINSTOCK:  Your Honor, as we discussed in chambers

6   today, we have taken the list of 5,000 claims, determined which

7   of those claims we believe are holding actions, actions filed

8   against multiple defendants, not matching plaintiffs with a

9   specific manufacturer.  By December 15th, we will file an omnibus

10  motion to dismiss the holding actions, which we believe will put

11  in play the plaintiff's obligation to try to preserve anybody

12  that has not been transferred pursuant to PTO 68 into a viable

13  action, a matched action.

14          THE COURT:  Yeah.  By December 15th, as Mr. Weinstock

15  just said, the defendants are going to file a motion to dismiss

16  the unmatched actions.  This is very important from the

17  plaintiff's point of view.  In fact, it may be the single most

18  important thing that we cover today.  But you really need to go

19  back and review PTO 68 and what you have done in response to PTO

20  68.

21          The defendants are going to file a motion to dismiss the

22  unmatched plaintiff actions, which the Court allowed to be filed.

23  And anyone, any plaintiff, who has not been matched, is very much

24  at risk of losing his or her place as a plaintiff in this case.

25  When I say losing their place, I mean having their claim

1    dismissed with prejudice.

2         So you should have already, on the plaintiff's side, you

3    should have already moved plaintiffs who have been matched to a

4    manufacturer into another docket number action that represents

5    that matching.

6         And you should also have transmitted, not on the record,

7    but you should have also transmitted either through liaison

8    counsel or other means to the defense counsel the information

9    regarding the old docket number and the new docket number.

10        We're trying to avoid -- we're trying to minimize the

11   confusion of which plaintiff matches which manufacturer and in

12   what docket number that match has occurred.

13        If a plaintiff has not been matched to any manufacturer

14   but is still, for the first and only time, a plaintiff in an

15   unmatched complaint, they are a great risk of having their claim

16   against whatever manufacturer was involved, which is still

17   unknown, dismissed with prejudice.  So it's critically important

18   that you understand that process.

19        If you don't understand it or if you have questions

20   about it today, ask today.  You can either ask here in open

21   court, or if you want to talk to Gerry or Justin or someone else

22   who is on the committee, please make sure you're clear about

23   that.  Because the ultimate goal of this exercise is to try to

24   finally determine, as best we can -- I realize it's a lot of

25   people and a lot of lawyers -- but, as best we can, who all is on

 1    the plaintiff's side; and then, more specifically, which

 2    plaintiffs that have filed relate to which manufacturing

 3    defendants.

 4          And we've been at this, as counsel said, we've been at

 5    this for quite some time.  It's been an enormous task, and a lot

 6    of people have put a lot of effort in to trying to do this.  But

 7    we are now to the bitter end, as they say, in terms of that

 8    effort, and it's going to be time to make some hard and fast

 9    decisions for plaintiffs who have not been matched to a

10    manufacturing defendant.  We're at that juncture in the road.

11          So make sure you fully understand what needs to be done

12    if you are representing plaintiffs and you have made a match.

13    Or, if you're representing plaintiffs that you have not yet

14    matched, you really need to focus on that very, very soon.  Quite

15    frankly, as Mr. Woods said, the date has come and gone.  So

16    you're kind of in a pickle if you have not made a match yet.

17    We'll see where we go with the motions to dismiss that are filed

18    on the 15th or before.  Okay.

19          MR. WOODS:  And, again, Your Honor, for all plaintiff

20    counsel present, as soon as we receive those motions, we will

21    make sure that they are circulated properly.

22          THE COURT:  Yes.  Please distribute them far and wide

23    amongst the bar on the plaintiff's side.

24          MR. WOODS:  Yes.

25          Section 6 is entitled Bellwether and Summary Jury

1    Trials.  Currently, there are five either bellwether or summary

2    jury trial matters scheduled to begin for 2011.  The first is a

3    summary jury trial against Dutchman Manufacturing, and that is

4    scheduled to begin on February 22, 2011.  It's a unique type of

5    summary jury trial as the parties are trying to tie to the claims

6    of a composite plaintiff.  There are certain differences in

7    matters that need to be discussed and worked out so that we're

8    able to meet that date, but the parties are also working

9    diligently to do that.

10        THE COURT:  I'm hoping by next week we can have

11   agreement as to what the composite plaintiff would be.  And keep

12   in mind that these are nonbinding summary jury trials that will

13   likely be tried by one of the magistrates.  But, by next week, we

14   should have an idea or I should say an agreement as to what the

15   composite plaintiff would look like.

16        This trial will involve the statistical model, pending

17   the motion practice, but the Hewitt statistical model, is my

18   understanding.  Simply because it's a composite plaintiff, it

19   will necessarily involve a statistical model relative to the

20   manufacturer.

21        MR. WOODS:  And, just to clarify, Your Honor, the

22   parties have agreed as to what the composite plaintiff looks

23   like.  We've agreed on what that plaintiff looks like.  It's a

24   family of three individuals.

25        The disagreement comes as to the procedure and the

1     process of how the summary jury trial will proceed.

2          THE COURT:   Okay.   I appreciate the clarification.

3          MR. WOODS:   The second trial that is scheduled is

4     against Sun Valley, and that is scheduled for March 28, 2011.

5     And that is scheduled to be a full-blown bellwether trial,

6     possibly taking as much as two weeks to try.

7          The footnote to the Sun Valley trial is that there is a

8     state court action pending in Indiana.   In Elkhart County,

9     Indiana, the declaratory judgment action on insurance coverage,

10    that is pending in that state court.

11         And there's also pending here in the MDL at record

12    docket No. 17661 plaintiff's motion to enjoin conflicting state

13    court proceedings in Elkhart County, Indiana that interferes with

14    this Court's continuing jurisdiction of this litigation.   So I

15    want to point that out as a footnote to that particular trial

16    that is currently scheduled for March 28, 2011.

17         The third bellwether trial that is scheduled is the

18    claims of Melvin Maky vs. KZRV and Flour Enterprises, and that is

19    also a full-blown bellwether trial that can possibly take up to

20    two weeks, and it's currently set for May 16, 2011.

21         The fourth trial -- and I'll skip the order in which it

22    appears in the report -- the fourth trial is a trial against

23    Coachman Recreational Vehicle Company, and that is currently set

24    for June 20, 2011.

25         On November 29, the Court selected Anthony Dixon as the

1   bellwether plaintiff.  And this also is currently scheduled to be

2   a full length trial as opposed to a summary jury trial.

3        The fifth trial that is currently scheduled is a trial

4   against Jayco, Incorporated, and that one is scheduled to begin

5   on August 1, 2011.  The parties are currently working to chose a

6   suitable trial plaintiff, and possibly under the rules of

7   procedures for a summary jury trial.

8        THE COURT:  So that's five bellwethers, and they will

9   appear in this report -- well, the pages should not change too

10  much based on our amendments already -- but they'll appear in

11  this report on pages 5 and 6 when the report is filed.  But those

12  are the five bellwethers that are set, and we will hopefully

13  maintain those dates as best we can, pending a few critical

14  factors such as the Hewitt motion, which we've already discussed,

15  and the coverage issue relative to Sun Valley.

16       MR. WOODS:  Section 7 is entitled Claims Against the

17  United States.  The only remaining claims against the United

18  States are those claims of Louisiana plaintiffs FTA claims for

19  gross negligence and willful and wanton misconduct.

20       On May 18, the Court issued an order and reasons which

21  dismissed all simple negligence claims brought by Louisiana

22  plaintiffs against the United States.  And, since entering that

23  order, the Court denied PSE's motion seeking an entry of a 54(b)

24  judgment in favor of the United States and granted PSE's motion

25  for certification of interlocutory appeal.

1          As a footnote, yesterday, the Fifth Circuit denied the

2     PSE's motion to appeal.

3          THE COURT:   Okay.   But you do have the other Mississippi

4     and Alabama issues?

5          MR. WOODS:   Correct.   Those matters are still pending in

6     the Fifth Circuit.   Because all of the claims against the federal

7     government were dismissed as it relates to Mississippi and

8     Alabama plaintiffs.

9          THE COURT:   And, although the statutes are different,

10    which I think I recognized on the written opinion, perhaps the

11    Fifth Circuit's ruling -- perhaps it might be illuminating

12    insofar as the issue that you would have otherwise presented on

13    the Louisiana issue.   Because the statutes are similar, although

14    the verbiage isn't the same, we did make a distinction, but I'm

15    hoping that in their treatment of those two issues there might be

16    some insight in as far as the argument relative to the Louisiana

17    statute.

18         MR. MEUNIER:   May it please the Court, Gerry Meunier,

19    liaison counsel.   That's correct, there is some overlapping in

20    the legal analysis.

21         I just want to clarify one thing, that we have on behalf

22    of plaintiffs asked the Fifth Circuit to certify to the

23    respective state supreme courts of Mississippi and Alabama those

24    two appeals.   So it may not be that we will get guidance from the

25    Fifth Circuit; it may be, if we're successful in that, we'll get

1    some guidance from the state supreme courts from those two

2    states.

3            THE COURT:  That's a good idea.  I appreciate you

4    pointing that out.

5            It's a very interesting issue.  For those of you who

6    have not looked at it and didn't participate in the briefing of

7    it, it's a very interesting issue, and I'll certainly be curious

8    myself to see how it's treated at the circuit level.

9            MR. WOODS:  And also, just as a footnote, as it relates

10   to the remaining claims for Louisiana plaintiffs, I believe that

11   the federal government issued denial letters to a number of

12   Louisiana plaintiffs in May, on or about May 25th of this year.

13   And that there was a six month period within which an individual

14   would have had to -- was required to file a complaint against the

15   federal government after dismissal of -- I'm sorry -- after

16   denial of their FTCA claims and after completing the Form 95.

17           THE COURT:  Okay.

18           MR. WOODS:  And I just want all plaintiff lawyers to be

19   aware that that date for a number of Louisiana plaintiffs was May

20   25th.  And that, if that was the date, that the deadline for

21   filing a complaint against the federal government would have been

22   on or about November 25th.

23           THE COURT:  Okay.

24           MR. MILLER:  Your Honor, if I can speak, just expand

25   upon what Mr. Woods just said.  The United States on May 25th

1   issued over 100,000 denial letters to all of Mississippi,

2   Alabama, Texas and Louisiana plaintiffs.  Those letters were all

3   issued out by certified mail on May 25th.

4          The deadline for filing suit against the United States

5   for any persons who had filed claims was November 26th under the

6   61 statute of limitations.  Obviously, plaintiffs may take issue

7   with that, but that's generally the reading of the law.

8          THE COURT:  Okay.  All right.  Thank you, Mr. Miller.

9          MR. WOODS:  Moving on, Your Honor, going to section 8,

10  and this would be just another reminder for plaintiff counsel,

11  that any defendants in all the bellwether cases request the Court

12  sever the initial plaintiffs' interest that claim where

13  necessary, and I think that that's what's been done across the

14  board for each bellwether trial.

15         THE COURT:  Right.

16         MR. WOODS:  Section 9 is Master Discovery.  We are --

17  the PSE is continuing to request that certain defendants respond

18  to discovery.  We are issuing discovery requests, and there was a

19  set of master discovery that was sent out on May 1, 2010, and

20  there are still some parties that may not have responded to that

21  discovery, manufacturing.

22         Section 10, settlement claims against Fleetwood

23  Enterprise, Inc.  The update for that particular section is that

24  the PSE, the parties did file their motion to dismiss pursuant to

25  the Fleetwood settlement agreement.  And that can be found at

1 record document 16174.  Dan Balhoff has been approved by the

2 Court as special master to oversee the allocation process for the

3 Fleetwood settlement, and I believe that special master has -- he

4 has already put out a call to all plaintiff counsel to identify

5 certain information so that their clients could participate in

6 the Fleetwood settlement.  And I believe that is moving along

7 quite expeditiously.

8     THE COURT:  Okay.

9     MR. WOODS:  Under section 11, Miscellaneous, again, John

10 Perry has been appointed as a mediator for purposes of exploring

11 potential proposed settlements as to any and all

12 defendants/manufacturers in the MDL.

13     And also under section 11A is that Palm Harbor has

14 recently filed Chapter 11 bankruptcy.  Palm Harbor is a defendant

15 in the inspector litigation track section of this litigation.  We

16 have just become aware of that, and we're in negotiations and

17 trying to figure out how that will affect any sort of -- the

18 non-lit settlement that has been obtained to this point.

19     MR. WEINSTOCK:  Your Honor, if I could just chime in on

20 section 11, subpart A.  John Perry is special master.  If there

21 is a defendant or group of defendants that's interested in having

22 settlement discussions with the plaintiff, they certainly don't

23 need to come through defense liaison.  They can go directly to

24 John Perry and get to touch with the PSE.

25     THE COURT:  In fact, since Mr. Weinstock and Mr. Glass

1   represent Gulf Stream in this case, there may be a need to deal

2   directly with Mr. Perry.  If you represent a manufacturer, there

3   may be a need to deal directly with Mr. Perry for confidentiality

4   purposes, and you're certainly free do that.  In fact, I

5   encourage you to do it.  Especially if you're in a circumstance

6   where resources are dictating that conversation to be held sooner

7   rather than later, you can deal directly with Mr. Perry who'll

8   deal with Mr. Meunier and Mr. Woods to see if there's a possible

9   resolution.  But please work towards that end.  And, as Mr.

10  Weinstock points out, you need not under those circumstance,

11  although we always advise you to try to work through the

12  committee framework and liaison counsel, that would be one

13  significant exception where I would encourage you to work

14  directly with Mr. Perry and plaintiff's counsel, as opposed to

15  through liaison counsel.

16          Anything else on the report that you all need to cover

17  for the group before we open the floor?

18          MR. WOODS:   There's nothing else on the report that the

19  PSE needs to cover.  However, there's just one matter that we'd

20  like to -- Gerry and I would like to have a personal privilege,

21  and that is to acknowledge one of the members of the PSE or

22  former member of the PSE, Linda Nelson, who for personal reasons

23  withdrew her application to be a member of the PSE.  We wanted to

24  just let the Court know and everybody else here know how much

25  we're going to miss Linda and her participation in this

1   litigation and how invaluable her experience, her expertise, her

2   staff, how valuable her participation was to this litigation.

3   And we just want to make sure that everyone in this courtroom is

4   aware that she played a critical role, and she will be sorely

5   missed by the PLS.

6          MR. WEINSTOCK:  The Manufacturing defendants would joint

7   in that, and I'd share those same comments with Linda.  She was

8   absolutely a pleasure to work with, did a tremendous amount of

9   work facilitating moving things along.  And, on a personal and

10  professional level, I can't say enough great things about her,

11  and she will be missed in this litigation.

12         THE COURT:  Well, at our last status conference here, I

13  had reopened the process of the committee appointments and asked

14  for those who wanted to continue to be on the committees to

15  resubmit applications and for any of you who would like to be on

16  the committee, either committee, that has not served previously,

17  to go ahead and submit an application.  And we completed that

18  process and issued an order earlier this week making the

19  appointments, or reappointments, as the case may be.  And I also

20  am disappointed, but I understand why Ms. Nelson would not be

21  able to continue to serve even, though she -- it was certainly

22  her desire to continue to do so.

23         I will tell you that what the Court is looking for in

24  serving on the committees is counsel who will take personal

25  responsibility in terms of attending events in the MDL hearings,

1    status conferences, who are willing to contribute work as needed

2    during the course of the MDL, to contribute to the efforts on the

3    side that they happen to be participating on and to be very

4    knowledgeable about what is happening in the MDL.  And, in every

5    respect, Ms. Nelson met what I personally was looking for in

6    terms of committee membership.  I know for a fact that she was

7    here for -- I can't think of a single time that she was not here

8    for a conference.  She was here I believe for almost every day of

9    the bellwether trials that I held.  So I can certainly

10   understand, even though I'm obviously not in a position of

11   working with her as you all are, I can certainly understand how

12   her presence and her very diligent hard work will be missed.  And

13   I've told her that, in the event that her circumstances dictate,

14   that she can rejoin the effort.  I certainly would welcome her

15   participation in the future to the extent that she might be able

16   to assist.  So we'll miss her.

17          I did add some people to the committees who quite

18   honestly were almost de facto members, and that was Joe Glass who

19   has been working with Andy Weinstock as co-liaison counsel,

20   although I had appointed Justin as co-liaison counsel to work

21   with Gerry.  Joe Glass was appearing as an assistant to Andy, and

22   so I went ahead and put him on the committee.  Although not

23   technically designated co-liaison committee in the record,  he is

24   now a committee member.

25          Karen Whitfield also with Mr. Kurtz, she is now on the

1    committee for the contractors.

2         And I think Mr. Hilliard on the plaintiff's side I added

3    to the committee, had not served on the committee before, was

4    involved in the first bellwether trial and several other -- he's

5    been participating quite a bit, and he filed for committee

6    membership.

7         There might have been one or two others.  I think that's

8    it, but there might have been one or two others.

9         But, largely, the committees are unchanged.  But I think

10   it's healthy to go through and periodically ask for

11   re-applications to the committees, because things change with you

12   all, things change with me.

13        My priority in appointing the committees is always the

14   same that I just outlined with regard to Ms. Nelson.  I'm looking

15   for people who are going to be personally involved in the MDL and

16   responsive to the Court and responsive to opposing counsel and

17   who are willing to contribute the substantial effort to making

18   the MDL work.

19        So we'll, depending on how long we're doing this, there

20   will be a time where we will again reopen the application

21   process.  It won't be on a regular basis, but sort of on an

22   as-needed basis.  So if any of you would like to serve on the

23   committee in the future, there will be a time where the process

24   is reopened, and we'll certainly welcome any other participation.

25   But we will get to that when we get to it.

1      All right.  Are there any questions from anybody about

2  anything we have covered in the report?  That is, anything that

3  Mr. Woods, Mr. Weinstock, Mr. Miller or Mr. Meunier has stated

4  here already?  Anybody have any questions about any of those

5  topics?

6      Anybody have any questions about PTO No. 68 and the

7  soon-to-be-filed motions to dismiss?

8      And, lastly, are there any questions at all, the floor

9  is now open for discussion, for anything that's not been covered

10  this morning?  If anybody has anything they need to say or ask,

11  they can certainly approach the podium, and we'll try to answer

12  them.

13      Okay.  The last piece of business, as always, is the

14  selection of the next date.  And, despite the fact that we will

15  have the holidays in between this meeting and the next one, there

16  will be some significant action I think along the lines of items

17  we've talked about here, the motions to dismiss, the state court

18  dec actions, we've got some decisions to make with regard to the

19  expert issue, the statistical model Hewitt motion, and we will

20  certainly update any changes in the bellwether status.  So the

21  next meeting is, even though we will not have a bellwether

22  between now and then, there will be some noteworthy events I

23  would think happening in between.

24      How would Friday -- seems to be the best day -- Friday,

25  February 4th, or Friday, February -- is it the 28th?

```
1              February 4th or January 28th?  Is there a preference

2      between those two?  January 28th or February 4th?  I suggested

3      the 4th

4              MR. KURTZ:  Your Honor, I have a conflict on the 28th.

5      I'm in Judge Zaney's court in a trial that day.

6              MR. MILLER:  Both Donnie and myself have a conflict on

7      the 28th, but the 4th would be fine.

8              THE COURT:  Sounds like the 4th would be best, unless

9      anybody wants to protest that now.

10             Why don't we set it the same schedule, 8:30 for the

11     committees and liaison counsel, 10 o'clock here for the general

12     status conference on Friday, February 4th.

13             We'll reiterate what I said earlier this morning about

14     the committee meeting, that the attendance at the committee

15     meetings will be for committee members only.  We will have a

16     sign-in list, and we will meet at 10 o'clock here.  And I'm sure

17     we will have, along the lines of the issues I just discussed and

18     other issues that I'm sure will pop up between now and then, we

19     will have a lot to report for you on the 4th, even though the

20     bellwether isn't until later that month, the currently scheduled

21     bellwether.

22             Thank you all very much for being here and being on

23     time.

24             (10:45 a.m., Proceedings Concluded.)

25
```

1

2                          CERTIFICATE

3

4

5

6          I, Susan A. Zielie, Official Court Reporter, do hereby
   certify that the foregoing transcript is correct.

7

8                          /S/ SUSAN A. ZIELIE, RPR, FCRR

9                          _____

10                              Susan A. Zielie, RPR, FCRR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25