## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCT LIABILITY LITIGATION | * | SECTION "N-5" |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAG. JUDGE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO: | * | |
| *ALL CASES (Louisiana Plaintiffs)* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS THE REMAINING FTCA CLAIMS OF ALL "LOUISIANA PLAINTIFFS," OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

### I.      INTRODUCTION AND BACKGROUND

Louisiana Plaintiffs, through undersigned counsel, hereby oppose both the United States of America's Motion to Dismiss the Remaining FTCA Claims of All Louisiana Plaintiffs' and the United States' Motion, in the alternative, for Summary Judgment.

First, the Louisiana Plaintiffs (hereinafter "Plaintiffs") submit that the basis of the claims which are the subject of these motions is a grossly negligent failure to perform a duty on the part of Federal Emergency Management Agency ("FEMA," used interchangeably with "United States," "Government" or "Federal Government"). After the selection of travel trailers and the initial provision thereof, actions which this Court has found to be within the ambit of the discretionary function exception to the Federal Tort Claims Act ("FTCA"), FEMA had a continuing mandate to provide emergency housing that was reasonably safe. FEMA breached

this duty, however, by placing concerns of litigation strategy above those for the health and safety of thousands of citizens.

The "misrepresentation exception" to FTCA liability under 28 U.S.C. § 2680(h) does not apply to these claims because the gravamen of Plaintiffs' case is not action so much as it is deliberate inaction, not so much overt falsification as strategic silence. The vast majority of the continuing allegations of FTCA fault sound in negligence and/or gross negligence (i.e., the knowing, willful exposure of Plaintiffs to human carcinogen[1], formaldehyde). FEMA's early awareness and knowledge of the dangers of formaldehyde, while probative of its gross negligence as pled by Plaintiffs, is not *per se* actionable. What is actionable is what FEMA chose to do once it acquired this knowledge; and what FEMA chose to do was not misrepresent, but rather delay a proper response to the crisis based purely on litigation strategy. It was this deliberate, and/or grossly negligent, decision to delay response to a public health crisis which allegedly caused or contributed to Plaintiffs' harm, not overt misrepresentation.[2]

Second, the Plaintiffs have pled plausible factual allegations in support of an FTCA recovery predicated on gross negligence. Plaintiffs' well-pleaded facts, when viewed as a whole and in a light most favorable to Plaintiffs, refer to delays in testing and resident notification which were provoked by FEMA, in violation of the agency's duty to ensure the safety of emergency housing units (EHUs) provided under the Stafford Act. Plaintiffs have pled a multitude of specific facts and allegations in this regard, including citations to evidence that FEMA received but ignored early formaldehyde test-results in trailers, disregarded years of

---

[1]    *See* Plaintiffs' Third Supplemental and Amended Administrative Master Complaint (Rec. Doc. 4486) (hereinafter "Third AMC") at 37.

[2]    Plaintiffs note that under the authority of *Whisnant*, 400 F.3d 1177 (9th Cir. 2005), such actions are rarely considered susceptible to policy judgment; *see* Order and Reasons of October 3, 2008 (Rec. Doc. 717) at 26-27.

formaldehyde science and regulations, manipulated testing, and continued to expose hurricane victims to a carcinogen at unreasonably dangerous levels.

This Court itself has already recognized that, under the facts both pled and discovered by Plaintiffs, a reasonable inference may be drawn that FEMA officials "stuck their heads in the sand" in response to this health crisis, and placed litigation concerns before the safety of roughly 80,000 Americans.[3] At a minimum, the pled facts, which are assumed to be true under the Fed. R. Civ. P. 12(b)(6) standard, support a plausible action for gross negligence. To the extent issues of fact remain unresolved, and these issues are central to both subject matter jurisdiction and the Plaintiffs' claims on the merits, Plaintiffs' gross negligence claims should survive the instant motions and be allowed to proceed to trial on the merits.

Third, because Plaintiffs can show, through affidavits and other discovery, that genuine and material facts are in dispute as to FEMA's alleged fault, summary judgment encompassing the entirety of Louisiana Plaintiffs' claims must be precluded at this time.  The motions at issue clearly purport to address any and all FTCA claims under Louisiana law, regardless of claim-specific facts.  Defendant's reliance on Plaintiffs' Counsel's statements in the bellwether trials, therefore, is misplaced, since such statements were informed by individualized facts and claims not applicable to all Louisiana Plaintiffs on a global basis. This Court already has recognized as much in its prior rulings on discretionary function immunity, noting that the facts concerning FEMA's alleged gross negligence will differ for each individual Plaintiff.[4] Indeed, the Court further suggested there might be a cut-off date for the viability of FTCA claims based on the

---

[3]      *Id.*

[4]      *See* Order and Reasons of October 3, 2008 (Rec. Doc. 717) at 42-43; *see also* Order and Reasons of August 13, 2009 (Rec. Doc. 2621) at 2-4.

remaining theory of fault, i.e., some point in the summer of 2006.[5] Genuine issues of material fact thus arise in any fair-minded analysis of FEMA's remaining liability:  When did FEMA first have knowledge of the unreasonably dangerous conditions in a given plaintiff's unit, given the information FEMA had pertinent to that unit or similar units?  Over what period of time did FEMA choose to prioritize legal strategy rather than safety, and how did this impact a given plaintiff's exposure?  Proceeding to a trial on the merits is the best, and, indeed, only, manner in which these fundamental questions of fact may be resolved.

In denying both the United States' second Motion to Dismiss Plaintiff's Remaining Claims for Lack of Subject Matter Jurisdiction (Rec. Doc. 1545), and, in part, the United States' original Motion to Dismiss Plaintiffs' FTCA and Contract Claims for Lack of Subject Matter Jurisdiction (Rec. Doc. 196), the Court has reasoned that Plaintiffs herein do assert colorable claims against FEMA under the FTCA, specifically in regard to FEMA's response (or failure to respond) to the known hazards presented by the off-gassing of formaldehyde in EHUs distributed after the 2005 hurricanes.  The Court indicated that the time period applicable to such claims of a delayed response would begin in March 2006 (or earlier[6]), and continue through some time thereafter when the evidence demonstrates that FEMA took definitive response action which might fall within the discretionary function exception.[7]

The Court's original decision addressing FEMA's liability was based upon an analysis of the discretionary function exception contained in both the Stafford Act and the FTCA.[8]  Applying

---

[5]     *Id.*

[6]     *See* the United States' MOTION TO DISMISS PLAINTIFFS' REMAINING FTCA CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION at Exhibit 4 (Rec. Doc. 1543-13); Exhibit 17 (Rec. Doc. 1543-26) at FEMA 09-000364, 09-000373; and, Exhibit 21 (Rec. Doc. 1342-30) at 5.

[7]     Order and Reasons of October 3, 2008 (Rec. Doc. 717) at 28 n.14; 42-43.

[8]     See 42 U.S.C. § 5148 and 28 U.S.C. §2680(a), respectively.

the jurisprudence applicable to the discretionary function exception, particularly regarding the second prong of the *Berkovitz* analysis, Your Honor found that the United States' response to the formaldehyde hazard and its continuing provision of similarly hazardous EHUs, may not have entailed the kind of conduct that the discretionary function exception was designed to shield, that is, may not have been grounded on legitimate social, economic, or political policy.[9] Your Honor's second decision on the applicability of the discretionary function doctrine, rejected essentially repeated arguments by the United States, and the Court concluded that FEMA's challenge to the FTCA claims against it in this MDL turns on both merits-related and individual-plaintiff factual issues underlying each plaintiff's cause of action, precluding a summary and global dismissal of such claims.

Thus, the Court has now <u>twice</u> considered evidence submitted by both plaintiffs and the United States and found that there are triable and material issues of fact concerning the nature of the United States' conduct and whether certain decisions by FEMA were grounded in policy or, rather, were based upon non-policy considerations like the avoidance of legal liability.[10] The evidence considered by the Court consisted, in part, of certain communications by and among members of FEMA's Office of General Counsel (OGC) and numerous persons, many of whom apparently were not even employed by FEMA.  From these communications, it appears that the OGC's concerns related solely to litigation or "potential litigation, liability exposure, and self-interest."[11] This proved highly meaningful in removing the protection of discretionary function immunity.[12]

---

[9]    *U.S. v. Gaubert*, 499 U.S. 315, 324-325, 111 S.Ct. 1267, 1274 - 1275 (1991);  *Commerce and Industry Ins. Co. v. Grinnell Corp*, 280 F.3d 566, 572 (5th Cir. 2002).

[10]    Order and Reasons of October 3, 2008 (Rec. Doc. 717) at 40-42.

[11]    Order and Reasons of October 3, 2008 (Rec. Doc. 717) at 39.

This Court now has addressed another aspect of FEMA's fault through motion practice, ruling in favor of the United States on motions to dismiss the FTCA negligence claims of Louisiana Plaintiffs, save as to claims of gross fault.[13]  This most recent clarification of FEMA's liability under Louisiana statutory law, while currently challenged by Plaintiffs on appeal, is in no way supportive of the instant motions, however, and may even be seen as supportive of Plaintiffs' position in opposition to the motions at hand.  Plaintiffs' remaining theory of FEMA's fault (i.e., a choice not to respond promptly to a known health crisis) arguably can only be characterized as a theory of deliberate wrongdoing, and, at the least, gross neglect.

## II.   THE MISREPRESENTATION EXCEPTION DOES NOT APPLY TO A CLAIM WHERE THE ALLEGED MISREPRESENTATION IS NEITHER THE GRAVAMEN OF, NOR ESSENTIAL TO, THE CLAIM

a.  Standard of Review

Because the United States presents yet another jurisdictional challenge to this Court's authority to preside over Plaintiffs' remaining FTCA claims, Plaintiffs bear the burden of establishing this Court's jurisdiction over the subject-matter of such claims. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The Fifth Circuit maintains that with respect to Rule 12(b)(1) motions:

> Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of

---

[12]     *See* Deposition of Little, p.88-90 (the issue was of such a sensitive nature that a lawyer became involved; Little recalled that a lawyer had never been involved at this level before in his 17-year career).

[13]     Rec. Doc. 14124. This Court also dismissed the entirety of Mississippi and Alabama Plaintiffs' FTCA claims under similar theories, but based on different state law (private liability). The appeals of both rulings are pending.

> disputed facts. *Barrera-Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996).
>
> . . . .
>
> In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998).

*Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).

b.  Argument

Because the misrepresentations alleged by Plaintiffs' are neither the gravamen of, nor essential to, their remaining gross negligence claims, the United States' motion to dismiss for lack of jurisdiction based on the misrepresentation exception must be denied. A federal court's jurisdiction over FTCA claims is limited by a number of sovereign immunity provisions, including the "misrepresentation exception" to the FTCA in 28 U.S.C. § 2680(h), under which the United States specifically alleges immunity from the remaining claims of Plaintiffs. In order for a claim to fall under the "misrepresentation exception" to the FTCA, "the underlying government conduct 'essential' to the plaintiff's claim [must] . . . 'arise out of' conduct that would establish an excepted cause of action." *Atorie Air, Inc. v. Federal Aviation Administration*, 942 F.2d 954 (5th Cir. 1991) (citing *Williamson v. United States Dep't of Agriculture*, 815 F.2d 368, 377 (5th Cir. 1987) (quoting *Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir. 1986), *cert. denied*, 479 U.S. 930 (1986))). "[A] distinct claim arising out of other aspects of the Government's conduct" does not fall within the misrepresentation exception. *See Block*, 460 U.S. 289, 297 (1983).

"[W]here recovery is sought on the basis of a breach of a governmental duty to perform certain acts, and not on the basis of misstatements or communications made or not made by the government, section 2680(h) may not be invoked to bar the action." *JM Mechanical Corp. v. United States ex rel U.S. Dep't of Hous. and Urban Dev.*, 716 F.2d 190, 194 (3rd Cir. 1983) (holding the misrepresentation exception inapplicable to a factual allegation, which would be consistent with proof at trial that the cause of the injury was negligence of the government, regardless of the possibility of bringing a non-essential action in misrepresentation). Thus, the "misrepresentation exception" to the FTCA applies to shield the Federal Government from liability for injuries that are wholly attributable to the Government's negligent misstatement, or omission. *JM Mechanical*, 716 F.2d at 194 (interpreting 28 U.S.C. § 2680(h)).

> [T]he fact that a misrepresentation claim could also have been brought on the basis of the transaction or occurrence giving rise to the negligence action is no bar to the bringing of the negligence claim. The partial overlap between the two tort actions cannot support the conclusion that if one is excepted under the FTCA, the other must be as well.

*Id.* at 194 (paraphrasing the Supreme Court's opinion in *Block v. Neal*, 460 U.S. 289 (1983)).

The United States now argues that the only claim remaining is a misrepresentation claim, and/or that, somehow, a misrepresentation concerning, or omission of, FEMA knowledge regarding formaldehyde is essential to the remaining claims of Plaintiffs.  But, Plaintiffs' remaining gross negligence claims, while partially overlapping with alleged misrepresentations, do not arise out of the alleged misrepresentations. Not surprisingly, defendant underscores that the "government conduct at the factual heart of their [Plaintiffs'] remaining claims is [both] the government's use/misuse and provision/withholding of information."[14] Defendant cites

---

[14]  United States' Memorandum in Support of its Motion to Dismiss (Rec. Doc. 16598-1) at p. 6.

paragraph 209 of Plaintiffs' Third Supplemental and Amended Master complaint for the proposition that claims arise entirely out of misrepresentation.[15] Paragraph 209 reads:

209. The Federal Government was negligent and at fault in the following non-exclusive particulars:

a. In continuing to provide unreasonably dangerous housing units to the Named Plaintiffs after FEMA became aware of elevated levels of formaldehyde;

b. In failing to adequately warn the each of the Named Plaintiffs of the unreasonably dangerous nature of the housing units which the Plaintiffs occupied;

c. In failing to remedy the dangerous nature of the housing units they provided to the Named Plaintiffs once FEMA became aware of the elevated levels of formaldehyde;

d. In failing to timely implement adequate safety measures and procedures to address/remove the defects in the housing units of the Named Plaintiffs, or to remove or protect the Named Plaintiffs from the defective housing units by providing them with alternative housing;

e. In knowingly and intentionally suppressing and withholding information from the public that the temporary housing units contained elevated levels of formaldehyde;

f. In knowingly and intentionally allowing litigation concerns to take priority over its safety mandate relating to the elevated levels of formaldehyde;

g. In continuing to house Named Plaintiffs in hazardous temporary housing units for extended periods of time after FEMA became aware of elevated levels of formaldehyde in the temporary housing units;

h. In continuing to house Named Plaintiffs in hazardous, unreasonably dangerous temporary housing units rather than warning Plaintiffs of the dangers and offering rental assistance that would allow Named Plaintiffs to leave the defective temporary housing units;

i. In failing to offer Named Plaintiffs rental assistance or other housing assistance when the Federal Government knew or should have known that the temporary housing units supplied to Named Plaintiffs were unsafe and uninhabitable; and,

j. Such other actions of negligence and fault as will be shown at the trial of this matter.

---

[15] *See Id.* at 12.

Third Supplemental and Amended Administrative Master Complaint (Rec. Doc. 4486) ¶ 209. In paragraph 209, only two (sub-paragraphs b and e) out of ten allegations deal with the failure to adequately communicate information. Defendant identifies seven (7) other paragraphs of factual allegations that it believes deal solely with misinforming Plaintiffs.[16]

In fact, FEMA's alleged failure to respond to the formaldehyde crisis only incidentally entitled the failure of a duty to warn. The crux of the matter was a duty to <u>respond</u>, and Plaintiffs' allegations make this clear: (1) FEMA had been aware for years of the dangers of formaldehyde; (2) as early as October 2005, FEMA knew or should have known of the imminent danger, and unsafe conditions in the EHUs; and, (3) FEMA failed to respond to an emerging health crisis, choosing instead to continue providing dangerous housing for a period of months, and thereby causing extensive formaldehyde exposure of certain Plaintiffs which could have been avoided. Where an operational mandate exists to ensure the safety of EHU inhabitants and the failure to perform that duty is the cause of the harm alleged, the fact that the challenged conduct consists partly of a failure of a duty to warn does not bar the action under the misrepresentation exception. *See United Air Lines, Inc. v. Weiner*, 335 F.2d 379, 398 (9th Cir. 1964). The distinct, grossly negligent <u>misuse</u> of information – the failure to respond – is what caused certain Plaintiffs to endure months of unnecessary, unsafe formaldehyde exposure. Such a failure is not simply a misrepresentation, it consists of a failure to investigate, a failure to test and communicate, and a choice to delay for the sake of litigation.[17]

---

[16]    Plaintiffs set forth a total of eighty-five (85) paragraphs of allegations that, *in globo*, support the gravamen of Plaintiffs claims: FEMA's grossly negligent failure to ensure safe (and to rectify unsafe) housing conditions, evidenced by neglect of the health and safety of thousands of individuals for a period of months, and aggravated by overarching concerns for litigation strategy.

[17]    *See* United States' Memorandum in Support of its Motion to Dismiss (Rec. Doc. 16598-1) at p.12. Under the United States' interpretation of when the misrepresentation exception applies, the gravamen of a claim must deal with the obtaining, provision, or communication of information.

Furthermore, Plaintiffs have specifically pled a failure on FEMA's behalf to perform a continuing duty to ensure that housing provided to disaster victims is safe. This Court's earlier decision highlighted several key policy pronouncements relevant to FEMA's *Indian Towing* duties:

1.    "The public statement of Harvey E. Johnson, FEMA's Acting Deputy Administrator and Chief Operating Officer that 'FEMA only provides temporary disaster housing units when all other housing resources, including rental units, are unavailable. The assistance is only used as a last resort to provide **safe, secure, and sanitary housing** for eligible disaster victims.'"[18]

2.    "Post-storm, FEMA officials made other general policy pronouncements. According to FEMA, it only provides temporary housing units when all other housing resources are unavailable, and the units are only used as a last resort to provide 'safe, secure, and sanitary' housing for eligible disaster victims. (Ex. 36 to Rec. Doc. 196, FEMA09-000337). Kevin Souza of FEMA stated that the agency relied on vendors and manufacturers to provide 'safe habitable housing units. . . .' and that FEMA believed that these EHUs 'would provide **safe and habitable**' housing. (Exhibit 8 to Rec. Doc. 196, ¶7). Further, Bryan McCreary of FEMA stated that the agency 'relied exclusively upon the vendors' and manufacturers' expertise and experience. . .to construct and provide FEMA with new units. . .that would provide disaster victims with a **safe, habitable place to live**. . . .' (Exhibit 10 to Rec. Doc. 196, ¶10). FEMA Administrator David Paulison has explained that 'FEMA [is] committed to ensuring that victims of disaster have a **safe and healthy place to live** during the recovery period.' (Ex. 18 to Rec. Doc 196 at 00008)."[19]

3.    "While FEMA claims to have decided to respond initially to the few complaints regarding formaldehyde on a case-by-case basis, even Administrator Paulison expressed being 'troubled' that some FEMA employees had not reacted 'with the speed and sensitivity I expect' to resident concerns. He then stated, '**FEMA's first priority is the health and welfare of disaster victims we serve**. Anything less is totally unacceptable . . .'  He pledged to 'hold

---

[18]    Order and Reasons of October 3, 2008 (Rec. Doc. 717) at 17, quoting Ex. 1 to Rec. Doc. 348, p. 5, emphasis added.

[19]    Order and Reasons of October 3, 2008 (Rec. Doc. 717) at 37-38, emphasis added.

> sacred this . . . commitment.' (Ex. 25 to Rec. Doc. 196, FEMA10-
> 000194)."[20]

Indeed, each of the policy pronouncements by FEMA confirmed that EHUs provided under the Stafford Act in response to an emergency were intended to be "safe," "habitable," and "healthy" places to live during the recovery period.[21]

Against this backdrop, and based upon the evidence in the record before it, the Court concluded that the acts and/or omissions of FEMA personnel in connection with the agency's response to this crisis were not protected by the discretionary function doctrine, specifically for that period of time during which FEMA failed to respond even though it knew the EHUs contained, and were off-gassing, unsafe levels of formaldehyde.[22]   FEMA had committed to provide EHUs as "safe and habitable" disaster housing, but reports made to FEMA that these same EHUs presented a potentially dangerous health hazard to those living in them, triggered the Agency's responsibility to respond to a health crisis promptly and effectively by taking steps to prevent or minimize Plaintiffs' formaldehyde exposure, rather than engage in delay tactics designed to avoid legal exposure.

Plaintiffs remaining claims against FEMA under Louisiana law, therefore, are not based on misrepresentation, but rather are predicated on a deliberate and grossly-negligent failure to perform a duty to respond.  The cause of Plaintiffs' injuries in the cases against FEMA is not a misrepresentation, as in the case of *McNeily v. United States*, 6 F.3d 343, 348-49 (5th Cir. 1993) (misrepresentations regarding failed savings and loan institutions causing an investment fund to

---

[20]     Order and Reasons of October 3, 2008 (Rec. Doc. 717) at 39, emphasis added.

[21]     Order and Reasons of October 3, 2008 (Rec. Doc. 717) at 37-38.

[22]     The Court dismissed plaintiffs' claims against the Government regarding its provision of mobile homes which, as opposed to travel trailers and park models, were manufactured in accordance with HUD regulations governing formaldehyde content in component parts and requiring warnings regarding the off-gassing of formaldehyde. Order and Reasons of October 3, 2008 (Rec. Doc. 717) at 21 n.9, 44.

incur damages) or *Atorie Air*, 942 F.2d at 956 (FAA misrepresentations causing an air cargo entity to lose its operation certificates). Rather, the cause was a failure to respond to a known health crisis, a response which could have taken any number of forms. The agency could have removed already-housed Plaintiffs from the toxic exposure, or, at the very least, suspended efforts to house new occupants, pending further testing and investigation. Instead, FEMA chose to allow ongoing exposure to unsafe, elevated levels of formaldehyde for a period of months, which likely caused, and which may continue to cause, health problems. To cast Plaintiffs' remaining FTCA case as a case of misrepresentation, is to disregard FEMA's much broader failure to act, and discount the Agency's deliberate <u>choice</u> to respond to this crisis in a way which placed a premium on litigation at the expense of public safety.

### III.   PLAINTIFFS' WELL-PLEADED FACTUAL ALLEGATIONS STATE PLAUSIBLE GROSS NEGLIGENCE CLAIMS AGAINST THE UNITED STATES

   a.  <u>Standard of Review</u>

In considering a Rule 12(b) motion to dismiss, the Court must take the well-pleaded factual allegations of the complaint as true. *See Jaufre v. Taylor*,  03-0028, 04 WL 1444945, at *1 (E.D.La. 2004) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In addition, "[a]ll questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.352, 257 (5th Cir. 2001); *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 310 (5th Cir. 2002). The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claim. *See Scheuer v. Rhodes*, 416 U.S. 232 (1974). Accordingly, the Court may dismiss a complaint "only if it appears certain that the plaintiff[s] cannot prove any set of facts in support of [their] claim that would entitle [them] to relief. *Jaufre*, *1.

b. <u>Argument</u>

Because Plaintiffs well-pleaded allegations state plausible claims that the gross negligence of the United States proximately caused Plaintiffs' injuries under Louisiana law, Plaintiffs' remaining claims may not be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[23] Plaintiffs submit that their allegations herein are anything but conclusory; conversely, pertinent allegations are concise, inclusive of citations and references to evidence of gross fault, and, when read as a whole and assumed to be true, plainly support a gross negligence cause of action as enumerated in paragraph 206 of the Third AMC.

Since this Court's finding of no analogous private liability for FEMA's negligence, Plaintiffs' remaining claims are limited to gross negligence or willful and wanton misconduct; that misconduct must be the proximate cause of Plaintiffs' injuries.[24]

> Under Louisiana law, gross negligence is willful, wanton and reckless conduct that falls between intent to do wrong and ordinary negligence. We [have] stated ... that gross negligence is substantially and appreciable (sic) higher in magnitude than ordinary negligence. Other courts have defined gross negligence as the entire absence of care, the want of even slight care and diligence, and the utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others. At least one Louisiana court stated that one is grossly negligent when he has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been made aware of it, and so great as to make it highly probable that harm would follow. Mere inadvertence or honest mistake does not amount to gross negligence.

---

[23]     *See* Third AMC at 36-39, 47 (prior knowledge of formaldehyde dangers, including specific knowledge with respect to travel trailer composition); *id.* at 47-48 (specific knowledge of formaldehyde concerns of Plaintiffs as early as October 2005); *id.* at 48-51 (continuing to supply and expose individuals to unsafe levels of formaldehyde for dangerous durations of exposure); *id.* at 50-52 (evidence of litigation concerns driving FEMA's complete lack of response); *id.* at 52-55 (delay of testing until December 2006 when formaldehyde off-gassing would be the least, and interference with the testing and reporting, which even after such activities still showed unsafe levels of formaldehyde); *id.* at 57-60 (Plaintiffs' specific allegations supporting a cause of action sounding in gross negligence).

[24]     *See* Order and Reasons of May 18, 2010 (Rec. Doc. 14124) at 5; *see also* La. R.S. 29:733.1.

14

*Roy Frischhertz Construction Co., Inc., et al*, 2007 WL 3253143 (Bankr. E.D.La. 2007) (citing

*Houston Exploration Co. v. Halliburton Energy Services, Inc.*, 269 F.3d 528, 531 (5th Cir. 2001)

(internal citations omitted)). Plaintiffs do not dispute the United States lengthy characterization

of gross negligence under Louisiana law. However, because the United States' attacks both the

sufficiency of the pleadings and the merits of Plaintiffs' gross negligence claims, Plaintiffs will

defer discussing the plethora of evidence supporting gross negligence to their opposition to

FEMA's motion for summary judgment on the remaining gross negligence claims in Section V,

*infra*.

The crux of Plaintiffs' gross negligence claims arises out of FEMA's deliberate decision

to allow, and create, the continued exposure of Plaintiffs to a known carcinogen, well after the

agency obtained knowledge of the dangerous levels of formaldehyde present in the EHUs. The

failure to remedy, or at least respond to, this health crisis over a period of months is alleged by

Plaintiffs to constitute gross negligence and a willful exposure of Plaintiffs to formaldehyde with

total disregard to their health and safety. Indeed, Plaintiffs' properly and fully alleged in their

Third Supplemental and Amended Administrative Master Complaint that FEMA failed to

respond for a period of months, while continuing to supply the EHUs, all of which occurred

while FEMA possessed knowledge of the harm being done.[25]

Plaintiffs respectfully represent that these alleged actions, or inactions, of FEMA meet

the standard for gross negligence. Even assuming that levels of formaldehyde were near the

OSHA level for a forty-hour workweek, based on the October 2005[26] and December 2007[27]

---

[25]     *See* n.24, *supra*.

[26]     *See* United States' Exhibit 24 (Rec. Doc. 16598-37).

[27]     *See* Third AMC at 38-39, 55.

testing, Plaintiffs were exposed for much longer durations than a worker.[28]   Furthermore, the EHU inhabitants included children and elderly individuals with higher sensitivity to the harms of formaldehyde exposure. Thus, FEMA's deliberate decision to place legal strategy concerns above public health concerns arguably constitutes a reckless, willful and wanton decision, one from which real and harm followed, although perhaps in disguised[29] fashion.

The character of FEMA's FTCA fault herein is actually not unlike that reported in certain jurisprudence cited in the United States' memorandum, cases in which gross negligence has been found. For example, the gross negligence case of a driver who failed to make a complete stop and proceeded into the immediate path of oncoming traffic, [*Holt v. State,* 671 So.2d 1164, 1171 (La. App. 2 Cir. 1996)], is not distinguishable in essence from the instant case of choosing to allow ongoing exposure to a carcinogen.

The U.S. also cites case law to analogize FEMA's conduct to that of a volunteer tournament director, where the safety precautions taken on the field caused a participant to be injured. *See Bridges v. City of Carencro*, 982 So.2d 306 (La. App. 3 Cir. 2008) (volunteer tournament director not grossly negligent when allowing game to take place on wet field and when steps were taken to delay and allow maintenance to clear the field to ensure safety). But FEMA is hardly a volunteer actor in this matter; it is the arm of a powerful branch of the government, with access to resources that could well have prevented months of unnecessary and unsafe formaldehyde exposure.

---

[28]     Plaintiffs allege in their Third AMC that FEMA EHUs were intended for eighteen (18) months of occupancy.

[29]     Plaintiffs use the word disguised because formaldehyde caused symptoms similar to those cold, allergy, and cough symptoms.  Until made aware of the dangers of formaldehyde, Plaintiffs therefore could not reasonably have been expected to make complaints for harm from formaldehyde exposure in the EHUs.  Moreover, a latent but measurably risk of cancer has been associated with this chemical.

The United States points to steps FEMA took that it believes rises to the level of slight care.[30] These steps, consultation with the EPA and CDC, did not in the slightest help to remove Plaintiffs from the toxic environment in which they were living.    During the period of time complained of by Plaintiffs, not a single remedial step can be reasonably associated with an attempt to remove Plaintiffs from the exposure to a carcinogen. This inaction was further aggravated by the fact that litigation concerns were made paramount, in abrogation of FEMA's mandate to provide safe housing. The following line of questioning from the deposition of David Garratt just brushes the surface of the overarching litigation strategy concerns of FEMA:

> Q:      They [lawyers] wanted to delay testing. True?
>
> A:       According to the e-mail records, yes.
> . . . .
>
> Q:      In fact, you have seen email from attorneys with FEMA talking about once you get the results, you have a duty to respond, and let's be careful, because this implies FEMA's ownership in the issue?
>
> A:      I have.

The United States has not shown, because it cannot show, that Plaintiffs are unable to state, and factually support, a viable claim of FTCA fault under the parameters of Louisiana law now established by the Court.   The instant request for dismissal under FRCP 12 is therefore without merit.

### IV.    GENUINE ISSUES OF MATERIAL FACT EXIST SUCH THAT A REASONABLE TRIER OF FACT COULD FIND THE GROSS NEGLIGENCE OF THE UNITED STATES PROXIMATELY CAUSED PLAINTIFFS' INJURIES

   a.   Standard of Review

---

[30]      United States' Memorandum in Support of its Motion to Dismiss (Rec. Doc. 16598-1) at 35.

The standard of review for summary judgment requires that the motion may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett, Texas,* 247 F.3d 206, 210 (5th Cir.), (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c))), *cert. denied,* 122 S.Ct. 210 (2001). Facts are material if they might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All facts and inferences must be viewed in the light most favorable to the nonmoving party. *Armstrong v. Am. Home Shield Corp.,* 333 F.3d 566, 568 (5th Cir. 2003). *United States v. Corpus,* 491 F.3d 205, 209 (5th Cir.2007). Finally, "'[t]he moving party bears the burden of showing ... that there is an absence of evidence to support the nonmoving party's case.' If the moving party meets this burden, 'the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.' 'A dispute over a material fact is genuine if the evidence is such that a jury reasonably could return a verdict for the nonmoving party.' 'The substantive law determines which facts are material.'" *Centanni v. U.S.,* 2004 WL 385057, 1 (E.D.La. 2004) (quoting *Kee v. City of Rowlett, Texas,* 247 F.3d 206).

Nonetheless,

> When deciding a motion for summary judgment, the Court must avoid a 'trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' are tasks for the trier-of-fact. *Anderson,* 477 U.S. at 255. To that end, the Court must resolve disputes over material facts in the non-movant's favor. 'The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed.' *Leonard v. Dixie Well Service & Supply, Inc.,* 828 F .2d 291, 294 (5th Cir.1987).

*In re Katrina Canal Breaches Consolidated Litigation*, 2008 WL 1989672, 12 (E.D.La. 2008).

      b.  <u>Argument</u>

Discovered evidence to date, including evidence in defendant's exhibits attached to its own Motion to Dismiss, create a record sufficient for a reasonable trier of fact to find that the United States willfully, knowingly, and with an utter disregard for Plaintiffs' health and safety, exposed certain Plaintiffs to a carcinogen at levels near or above that to which a worker can safely be exposed based on a forty-hour workweek, and did so for a period commencing on FEMA's first knowledge of concerns of formaldehyde in EHUs and ending when FEMA purportedly began exercising its discretion in a programmatic response to the crisis.  As this Court has previously recognized, the factual support for Plaintiffs' remaining claims will be highly individualized and limited by the window of time within which FEMA's response actions, or lack thereof, were non-discretionary as to the EHU and occupants at issue.

The deliberate decision to prioritize concerns for litigation strategy above concerns of public health and safety amounts to willful, wanton and reckless conduct, which satisfies the standard for gross negligence. The decision to continue to provide EHUs after receipt of numerous complaints regarding formaldehyde exposure was reckless and in utter disregard of the dictates of prudence. The deliberate decision to allow exposures to continue through the summers of 2006 and 2007, when off-gassing would be the most dangerous, in an attempt to "not generate a lot of calls," plainly fits the definition of willful action.[31]  While this Court has observed that FEMA may have re-availed itself of discretionary function immunity by issuing informational formaldehyde flyers and initiating testing activities, Plaintiffs maintain that

---

[31]      United States' Exhibit 55 (Rec. Doc. 16598-68) at 1; *see also* United States' Exhibit 49 (Rec. Doc. 16598-62) at 13 (In the deposition of Joseph Little, Mr. Little states that a lawyer had never been involved at this level in the seventeen (17) years of his employment with the Commission Corps of the United States Health Service).

FEMA's grossly negligent conduct continued until Plaintiffs were asked to vacate their trailers upon release of CDC recommendations to relocate EHU residents.[32] Litigation strategy concerns dictated the agency's response ongoingly, from the disregard of an ATSDR limit of 0.008 ppm formaldehyde for exposures of greater than one year,[33] to the deliberate omission of reference to the chronic effects of formaldehyde exposure in FEMA's 2006 formaldehyde flyer[34] (as well as in the ATSDR Health Consultation of February 2007, arguably influenced by FEMA).[35]

Such acts are deliberate in nature, and necessarily entailed the choice to disregard certain health risks of formaldehyde which were known to FEMA.  Such acts also resulted in the needless exposure of thousands of individuals to a carcinogen at unreasonably dangerous and harmful levels.[36] Even at levels observed in the December 2007 testing and assuming Plaintiffs had a forty-hour workweek outside their trailers, and spent an additional forty hours outside the trailer each week, Plaintiffs still would have been exposed to such formaldehyde levels for a duration of more than eighty (80) hours per week, or more than double the amount of time within which OSHA maximum exposure levels are designed to protect workers. With all of the Federal Government's knowledge of formaldehyde, travel trailer composition, and the Gulf Coast climate, FEMA's inaction and unwillingness to either remove occupants from the trailers or

---

[32]    Third AMC at 55-56 (citing CDC'S RESPONSE TO HEALTH CONCERNS RELATED TO FEMA-PROVIDED TRAVEL TRAILERS AND MOBILE HOMES IN THE GULF COAST REGION, March 4, 2008, at 5-6, 11).

[33]    *See* Third AMC at 53.

[34]    *See* United States' Exhibit 54 (Rec. Doc. 16598-67) (the United States believes this flyer is evidence of at least slight care; however, with no phone number to call or reference to cancer, Plaintiffs aver that the flyer is further evidence of a complete lack of care for the health and safety of EHU occupants.

[35]    *See* Order and Reasons of October 3, 2008 (Rec. Doc. 717) at 35 n. 17.

[36]    *See* United States' Exhibit 57 (Rec. Doc. 16598-70) at 6-8, ATSDR Health Consultation February 1, 2007 (toxicity of formaldehyde at or near actual levels measured ; note that in both methods of testing protocol static vents are open, time of year is late September to early October, and running the air conditioner did not reduce the level of formaldehyde below the level of concern); *see also* United States' Exhibit 34 (Rec. Doc. 16598-47) at 6 (CH2M Hill recommendation to close windows and doors during extremely high temperatures).

completely and adequately warn occupants of the dangers of protracted exposure to a carcinogen, can only be characterized as willful, wanton, and an utter disregard for the health and safety of certain Plaintiffs.[37]

As evidenced by FEMA's answer to Plaintiffs' First AMC (Rec. Doc. 13199), many disputed facts remain in this litigation, which Plaintiffs respectfully represent are material to the determination of whether FEMA's lack of care rose to the requisite level for gross negligence, including, but not limited to, the following: (1) FEMA's general knowledge of the dangers of formaldehyde prior to, during, and after Hurricanes Katrina and Rita; (2) FEMA's first notice of the formaldehyde issue in EHUs;[38] (3) whether FEMA had knowledge of OSHA testing in October 2005; (4) FEMA's first knowledge of formaldehyde complaints; (5) the length of time during which Plaintiffs were exposed to unsafe levels of formaldehyde, and average weekly duration of exposure; (6) the "safe" level of formaldehyde for a residence;[39] (7) the average level

---

[37]   Numerous declarations of FEMA employees reveal the fact that FEMA did remove some occupants from their EHUs, providing them with rental assistance, but only after individual occupant complaints, and in most cases after placing the individual in a second EHU.

[38]   Plaintiffs dispute Section IV of Defendant's Statement of Facts (Rec. Doc. 16598-2 at 6). It is beyond Plaintiffs cognition that OSHA could conduct stealth testing of EHUs between October 2005 and March 2006 without notifying FEMA and/or FEMA agents. *See* Defendant's Exhibit 28 (Rec. Doc. 16598-41) at 2 (referencing OSHA testing that had been conducted throughout the past five months); *see also* Deposition of Jack Hume, excerpt attached hereto Exhibit "A" at 59-60:

> Q.  Was Bechtel aware of environmental testing in -- sometime in October of 2005, testing for formaldehyde?
> A.  That was before my time, but I am aware of that occurrence when OSHA did take some readings.
> . . . .
> Q.  Okay.  Can you tell me about that?  How did -- how did that come up?
> A.  As I understand it, we had one of our employees living in a FEMA trailer --
> Q.  All right.
> A.  -- and he had comments about the smell and raised that out to our safety department who took it to FEMA, and FEMA enlisted OSHA --
> Q.  Okay.
> A.  -- to go do the readings.

[39]   Indeed, the United States concedes that there is considerable disagreement concerning safe formaldehyde levels. Rec. Doc. 16598-2 at 3. However, levels measured in the EHUs by the Sierra Club, government agencies,

of formaldehyde in the EHUs under average Gulf Coast climate conditions; (8) the duration of FEMA's placement of litigation strategy concerns ahead of public safety concerns;[40] and, (9) the level of FEMA and/or FEMA Counsel interference with the proper testing and reporting functions of other governmental agencies.

As noted *supra*, any reliance on Plaintiffs' Counsel's statements in the bellwether trials is misplaced in an attempt to support the motions at hand, since such statements regarding individualized factual situations are hardly apposite, across the board, to all Louisiana Plaintiffs. This Court has already recognized that because of its rulings on the applicability of the discretionary function exception, the facts concerning FEMA's alleged gross negligence will differ for each individual Plaintiff.[41]

## V.      CONCLUSION

Discovery has revealed the unfortunate fact that OGC influenced FEMA's decisions regarding how, and when, to respond to reports that dangerous levels of formaldehyde were present in EHUs being distributed by FEMA. Discovered facts also now support Plaintiffs' contention that the safety of trailer occupants was impermissibly ignored in abrogation of pronouncements and duties to provide safe housing. Scientists have declared that testing and science were manipulated in order to allay fears and to legitimize FEMA's inaction. These deliberate decisions to place litigation strategy ahead of concerns for public health and safety are not subject to policy judgment because they are precisely the type of reckless decisions that

---

and Plaintiffs exceed all reasonably safe levels for a residence (i.e., levels more protective that OSHA's occupational health standards).

[40]      *See* Order and Reasons of October 3, 2008 (Rec. Doc. 717) at 41 (recognizing OGC veto of Souza plan to conduct immediate testing.

[41]      *See* Order and Reasons of October 3, 2008 (Rec. Doc. 717) at 42-43; *see also* Order and Reasons of August 13, 2009 (Rec. Doc. 2621) at 2-4.

reflect utter disregard for the health and safety of Americans. Such decisions do not constitute merely misrepresentations made by FEMA; they encompass far more, namely, a decision to respond to crisis out of concern for bureaucratic security instead of concern for the health and safety of taxpayers who make bureaucracy possible, and whom bureaucracy is designed to serve.

As a result of these decisions, thousands of individuals were willfully, knowingly and recklessly exposed to high levels of formaldehyde.  When such allegations herein are necessarily viewed in a light most favorable to Plaintiffs', the record not only supports a plausible cause of action for gross negligence, but also suffices as the basis for a reasonable fact-finder to conclude that FEMA was grossly negligent in delaying its response to the formaldehyde crisis.[42]

Accordingly, for all of the above reasons, Louisiana Plaintiffs respectfully request that this court deny the United States' Motion to Dismiss as well as its Motion, in the alternative, for Summary Judgment.

Respectfully submitted:

**FORMALDEHYDE TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:      */s/Gerald E. Meunier*
         GERALD E. MEUNIER, #9471
         **PLAINTIFFS' CO-LIAISON COUNSEL**
         Gainsburgh, Benjamin, David, Meunier &
         Warshauer, L.L.C.
         2800 Energy Centre, 1100 Poydras Street
         New Orleans, Louisiana 70163
         Telephone:     504/522-2304
         Facsimile:      504/528-9973
         gmeunier@gainsben.com

---

[42]      Of course, this Court's prior rulings on the discretionary function exception place limitations on the window within which such alleged gross negligence is actionable.

*/s/Justin I. Woods*
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:      504/522-2304
Facsimile:      504/528-9973
jwoods@gainsben.com


**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
ROBERT M. BECNEL #14072
RAUL BENCOMO, #2932
ANTHONY BUZBEE, Texas #24001820
FRANK D'AMICO, JR., #17519
ROBERT C. HILLIARD, Texas #09677700
MATT MORELAND, #24567
DENNIS C. REICH Texas #16739600
MIKAL C. WATTS, Texas #20981820


## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I electronically mailed the foregoing document to all counsel of record who are non-CM/ECF participants.

*/s/Gerald E. Meunier*
GERALD E. MEUNIER, #9471