UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO. 1873 SECTION "N" (4) |
| This Document relates to: Paul Fountain, et al v. United States of America, et al No. 09-03622 | * * * * * | JUDGE ENGELHARDT MAG. JUDGE CHASEZ |

*******************************************************************

## PLAINTIFFS' SECOND SUPPLEMENTAL AND AMENDING COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel come plaintiffs, Paul Fountain, Charles Ray Fountain, Joan Fountain Captain and Jessica Landry who supplement and amend their original Complaint and the First Supplemental and Amending Complaint in the following respects:

I.

In the Amended Complaint, the Plaintiffs adopt, incorporate and restate all allegations, assertions of fact, causes of action, claims and requests for relief raised and set forth in the Original Complaint and the First Supplemental and Amending Complaint.

### I. PARTIES

2.

The Plaintiffs wish to supplement Section I (Parties) of the Original Petition and by naming and adding a new defendant and amending the Section to read as follows:

"The defendants are:

a)  The United States of America through the Federal Emergency Management Agency (hereinafter sometimes referred to as FEMA).

b) Forest River, Inc. which is alleged upon information and belief to be an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units pursuant to contracts with FEMA for use in the State of Louisiana.

c) Fluor Enterprises, Inc. ("Fluor"), a California corporation with its principal place of business in Irving, Texas, licensed to do business in the State of Louisiana, and which received a No-Bid contract from FEMA to transport, install, repair trailers or housing units pursuant to contracts with FEMA for use in the State of Louisiana and did perform these duties with regards to the temporary housing unit assigned to the Plaintiffs' mother."

## II. FACTS AND GENERAL ALLEGATIONS

"46 (a) Fluor Enterprises, Inc. ("Fluor"), a California corporation with its principal place of business in Irving, Texas, licensed to do business in the State of Louisiana and in good standing, received a No-Bid contract from FEMA and was tasked with, amongst other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, deinstallation and refurbishment of the temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita.

46 (b). Following the procurement of the temporary housing units, the Federal Government contracted with Fluor to implement the mandates of the Stafford Act in the areas affected by hurricanes Katrina and Rita.

46 (c). In order to implement and manage its disaster response obligation and temporary housing mandate under the Stafford Act, FEMA engaged Fluor with a No-Bid contract. The Federal Government also relied on the expertise and knowledge of Fluor to provide information and advice on, among other things, the conversion of mobile travel trailers into temporary housing units for periods up to, and potentially exceeding, eighteen months in duration.

46 (d). Upon information and belief, Fluor and three other No-Bid contractors are the only contractors engaged by FEMA to assist with the implementation of the Stafford Act in Louisiana, Mississippi, Alabama and Texas in the aftermath of hurricanes Katrina and Rita, from the pickup of a unit at a FEMA staging area through the decommissioning and de-installation of the units at the end of the contracts.

46 (e). Fluor was tasked with the transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units.

46 (f). Under the terms of its contract, Fluor was obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and indicated by the manufacturers of same. Further, under its No-Bid contract with FEMA, Fluor was obligated to advise and instruct FEMA regarding the implementation of those contracts. Fluor failed to properly fulfill either of these tasks.

46 (g). Fluor contracted with FEMA to pick-up and transport the temporary housing units from FEMA-controlled staging areas and deliver them to areas which it was tasked with operating, managing and maintaining.

46 (h). To accomplish its contractual obligations with FEMA, in addition to the use of subsidiary companies, Fluor entered into numerous sub-contracts, but at all times retained supervisory capacity and responsibility under it contract with FEMA.

46 (i). Fluor was tasked under its contract with FEMA to identify and prepare the infrastructure for the various site locations it would operate. This included, amongst other things,

ensuring there would be adequate water, sewage, electricity, etc. Fluor knew or should have known that these preparations were for long-term occupancy of the temporary housing units.

46 (j). Once the temporary housing units were transported and delivered to a particular location, Fluor had the responsibility for installing the temporary housing unit. Fluor installed the temporary housing units by "blocking" the unit. This meant raising the unit several feet into the air and off of its wheel base, and setting it on concrete blocks.

46 (k). By blocking the temporary housing units, Fluor created stress and flexing on the frames of the units as they were not designed to be lifted off of the wheel base. In fact, the manufacturers of the temporary housing units warned in the various owners' manuals provided with the units, that the units should not be jacked so that the vehicle's weight is no longer supported by the wheels.

46 (l). The stress and flexing of the temporary housing units' frames caused by Fluor "blocking" them with weight off of the wheels created distortion in the travel trailer's shell allowing increased moisture intrusion which contributed to increased formaldehyde exposures.

46 (m). The temporary housing units provided by FEMA were for the most part travel trailers. The travel trailers are, by definition, mobile. They are designed for and intended for periodic, recreational use and not for long-term habitation. By installing the travel trailers on concrete blocks for extended occupancy, Fluor knowingly and intentionally modified the design and the actual use of these units by converting them into temporary housing units to be used as a residence for long term occupancy in some instances exceeding 18 months.

46 (n). Fluor failed to consult with the manufacturer or any other manufacturers of the temporary housing units with regard to the installation, warnings, warranty issues or advisability of using travel trailers for long term residence and occupation. Fluor took actions which voided

the warranties of the manufacturers and directly created or contributed to unsafe and hazardous living conditions in the temporary housing units.

46 (o). Once Fluor had completed the transportation, delivery and installation of the temporary housing units, Fluor was tasked with inspecting the units to ensure that they were safe and habitable, prior to occupancy by hurricane disaster victims. Upon information and belief, Fluor failed to adequately inspect the temporary housing units to ensure that the units were safe and suitable for their intended use - the long-term occupancy by individuals and families displaced by hurricanes Katrina and Rita. This failure to properly inspect the units for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by hurricane victims.

46 (p). In addition to transportation, site identification, installation and inspection, all FEMA temporary housing units provided in response to hurricanes Katrina and Rita in Louisiana, Mississippi, Texas and Alabama were also managed, maintained and repaired by Fluor and the three other No-Bid contractors, or their various subcontractors over whom they maintained direct oversight and responsibility. Upon information and belief, Fluor failed to adequately manage, maintain and repair the temporary housing units which enabled and contributed to the unsafe and hazardous conditions that led to adverse health effects amongst many thousands of residents of the temporary housing units.

46 (q). Parallel to its duty to manage, maintain and repair the temporary housing units, Fluor failed to undertake appropriate action, maintenance or repair in response to numerous complaints made by occupants of the temporary housing units to various adverse health effects caused by exposure to elevated levels of formaldehyde.

46 (r). Following the occupancy of the temporary housing units, Fluor was tasked with their de-installation. Upon discovering the deteriorated condition of the temporary housing units at the time of de-installation and removal, Fluor failed to identify the unsuitability of the temporary housing units for long-term occupancy.

46 (s). In addition to de-installation of the temporary housing units, Fluor was tasked with refurbishment and restoration of the temporary housing units for use, either in direct response to hurricanes Katrina and Rita or for use in the future. By restoring and refurbishing these temporary housing units, Fluor warranted that the units were fit for their intended use, long term occupancy in response to disaster related displacement. By restoring and refurbishing these temporary housing units, Fluor created and perpetuated existing hazardous conditions which would foreseeably lead to adverse health effects caused by the elevated levels of formaldehyde in the temporary housing units. Further, in thousands of cases, following the restoration and refurbishment, these temporary housing units were immediately occupied by new individuals or families displaced by hurricanes Katrina and Rita, and who were then directly exposed to hazardous levels of formaldehyde.

46 (t). Fluor failed, at every stage of its involvement, to warn the residents of the temporary housing units of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde - a known human carcinogen - which led directly to adverse health effects, including but not limited to the advent of childhood asthma and the onset of adult asthma in some of the trailer residents.

46 (u). Through its actions and omissions, Fluor created and perpetuated a situation wherein occupants of the temporary housing units were exposed to elevated levels of formaldehyde and, as a result, suffered adverse health effects. Fluor negligently failed to

adhere to the manufacturer instructions and warnings related to: (1) the manufacturers' intended (short-term) use of the temporary housing units; (2) the installation and set-up of the temporary housing units; and (3) the warning that the temporary housing units contained urea formaldehyde resin which would release formaldehyde gas directly into the intended living space.

46 (v). Fluor failed to warn the occupants of the temporary housing units of the hazardous conditions created by the elevated levels of formaldehyde in the temporary housing units.

46 (w). By restoring and refurbishing the trailer for future habitation, Fluor improperly and negligently warranted that the units were fit for the intended use of long-term occupancy.

46 (x). Finally, despite these failures, Fluor received substantial sums in contracts from FEMA and the United States government, at the expense of the health, and in some cases lives, of thousands of occupants of these temporary housing units who simply had nowhere else to go and who were relying on FEMA and its contractors to keep them safe in the aftermath of the greatest natural disaster in the history of the United States.

## AMENDED AND SUPPLEMENTAL CAUSES OF ACTION

Plaintiffs amend and supplement the causes of action asserted and raised in the Original Complaint with the following:

## COUNT 3:
## CAUSE OF ACTION AGAINST: FLUOR
## UNDER THE LOUISIANA PRODUCTS LIABILITY ACT

Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

"58 (A). Fluor qualifies as manufacturers under the Louisiana Products Liability Act ("LPLA"), as it performed work pursuant to its contract with FEMA which altered the

character, design, construction, and/or quality of the product and the housing units constitute products under the LPLA.

58 (B). The increased exposure to formaldehyde fumes from the alteration of the temporary housing units by Fluor resulted from the normal, foreseeable, and intended use of the products and equipment.

58 (C). The installation and alteration of the temporary housing units, the modifications to the manufacturers' designs, and the "blocking" of units off their wheel base, altered the product which increased the effects of the product's defect and posed an unreasonable risk of harm to Plaintiffs.

58 (D). The Plaintiffs' mother was an intended and foreseeable users of the alleged defective products, and damages and losses to the Plaintiffs reasonably could have been anticipated by Fluor.

58 (E). Fluor, by installing the temporary housing units on concrete blocks for extended occupancy and, further, by installing residential appliances and heating and air conditioning units, knowingly and intentionally modified the design and the actual use of the units.

58 (F). The defects in the Fluor's product are the result of and/or include, but are not limited to the following:

a. In creating stress and flexing on the frames of the units by lifting significant weight from the wheel base, which distorted the travel trailers' shells allowing for increased moisture intrusion and formaldehyde exposure due to cracks and openings in the shell;

b. In providing temporary housing units to the Plaintiffs which, by virtue of their composition, refurbishment, reconditioning, and/or construction were unreasonably dangerous under reasonably anticipated use;

c. In providing temporary housing units to the Plaintiffs which, lacking adequate warnings, were unreasonably dangerous under reasonably anticipated use;

d. In failing to warn Plaintiffs of the unreasonably dangerous nature of the travel trailer(s) converted to temporary housing units for their intended use by FEMA or of the presence of excessive levels of emissions of formaldehyde;

e. In failure to ensure that the temporary housing units it installed, refurbished, and reconditioned were suitable for their intended use, as long term housing;

f. In failing to adhere to any and all of the warning against the jacking of the units with weight off their wheel base by the Manufacturing Defendant;

g. In failing to follow the manufacturers' instructions for the installation and intended use of the temporary housing units;

h. In providing housing units which were unduly dangerous due to their emissions of formaldehyde; and,

i. Such other indicia of fault under the LPLA as will be shown at the trial of this matter."

## COUNT 4:
## CAUSE OF ACTION AGAINST: NEGLIGENCE OF FLUOR UNDER LOUISIANA LAW

Named Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

"59 (A). At all relevant times Fluor was tasked with the transportation, installation, site identification, preparation, inspection, maintenance and repair, refurbishment and restoration, and removal of the temporary housing units, which caused the Plaintiffs' injuries. Fluor owed a

duty to Plaintiffs to provide, transport, install, inspect, maintain, repair, refurbish, recondition and restore safe temporary housing units that did not emit hazardous levels of formaldehyde.

59 (B). Fluor knew or should have known when it provided, transported, installed, inspected, maintained, repaired, refurbished, reconditioned and restored the temporary housing units to the general public (thereby modifying and converting the mobile units into residential installations) the actual and intended use of the temporary housing units by each plaintiff, and that the temporary housing units would be used in the manner that each plaintiff herein used the temporary housing units.

59 (C). Fluor breached its duty to Plaintiffs in failing to act reasonably in the provision, installation, inspection, maintenance, repair, refurbishment, reconditioning and restoration of the temporary housing units; specifically by:

    a. Failing to sufficiently warn the plaintiffs of the inherently dangerous properties or the foreseeable conditions of the temporary housing units when used for long term occupancy;

    b. Failing to adhere to the manufacturers' warnings against jacking the temporary housing units off the wheel base by "blocking" the units;

59 (D). Fluor's actions were the proximate cause of the increased exposure of formaldehyde to the Plaintiffs.

59 (E). Fluor contributed to and exacerbated the adverse health impacts upon the residents of the temporary housing units."

WHEREFORE, plaintiffs Paul Fountain, Charles Ray Fountain, Joan Fountain Captain and Jessica Landry pray that:

1) Plaintiffs' Second Supplemental and Amending Complaint For Damages be filed as prayed for according to law;

2) Except to the extent amended herein, all of the allegations and prayers for relief of plaintiffs' prior pleadings including the Complaint be repeated and reiterated as if recited herein in extenso;

3) That defendant, Fluor Enterprises, Inc., be served with a certified copy Plaintiffs' Second Supplemental and Amending Complaint For Damages and be cited to appear and answer same;

4) That after the lapse of all delays and due proceedings had, that there be a judgment rendered herein favor of the plaintiffs Paul Fountain, Charles Ray Fountain, Joan Fountain Captain and Jessica Landry, and against the defendant, Fluor Enterprises, Inc., jointly, individually and in solido in a sum of damages as reasonable under premises together with legal interest from the date of judicial demand until paid, and for all cost of these proceeding, and for the fees of expert witnesses; and

5) For all other orders and decrees necessary in the premises and for all cost of these proceedings and for full, general and equitable relief.

Respectfully submitted:

Simien & Simien, L.L.C.
Attorneys and Counselors at Law
7908 Wrenwood Blvd.
Baton Rouge, Louisiana 70809
Telephone: (225) 932-9221
Fax: (225) 932-9286

/s/ Eulis Simien, Jr.
_____
By: Eulis Simien, Jr., Bar # 12077