U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED   JAN - 7 2011
LORETTA G. WHYTE
CLERK

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
November 11, 2010
Lyle W. Cayce
Clerk

No. 09-31038
Summary Calendar

D.C. Docket No. 2:07-MD-1873  *N*
D.C. Docket No. 2:09-CV-2892

IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY

PLAINTIFF'S LIAISON COUNSEL; ET AL

      Plaintiffs

v.

DEFENDANT'S LIAISON COUNSEL; ET AL

      Defendants

MARY C. DEVANY,

      Movant - Appellant

------------------------------------------------------------

CHARLIE AGE; ET AL

      Plaintiffs

v.

GULF STREAM COACH, INC; ET AL

      Defendants

MARY C. DEVANY

      Movant - Appellant

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before KING, GARWOOD, and DAVIS, Circuit Judges.

## JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the order of the District Court is vacated.

IT IS FURTHER ORDERED that each party to bear its own costs on appeal.

ISSUED AS MANDATE: 04 JAN 2011

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
Deputy

04 JAN 2011

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
November 11, 2010

Lyle W. Cayce
Clerk

No. 09-31038

IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY

PLAINTIFF'S LIAISON COUNSEL; ET AL

    Plaintiffs

v.

DEFENDANT'S LIAISON COUNSEL; ET AL

    Defendants

MARY C. DEVANY,

    Movant - Appellant

----------------------------------------------------------------

CHARLIE AGE; ET AL

    Plaintiffs

v.

GULF STREAM COACH, INC; ET AL

    Defendants

MARY C. DEVANY

    Movant - Appellant

No. 09-31038

Appeal from the United States District Court for the
Eastern District of Louisiana
No. 2:07-MD-1873

Before KING, GARWOOD and DAVIS, Circuit Judges.

PER CURIAM:[*]

Mary C. DeVany was an expert witness in a multi-district products liability litigation before the United States District Court for the Eastern District of Louisiana. The district court imposed sanctions on DeVany relating to her testimony in an unrelated Washington State administrative court proceeding. DeVany appeals from the sanctions order. We vacate the order of the district court.

## I. BACKGROUND

This appeal comes to us from an order of the district court in *Age, et al v. Gulf Stream Coach, Inc., et al*, No. 2:09-CV-02892, a bellwether suit within the multi-district litigation *In Re: FEMA Trailer Formaldehyde Products Liability Litigation*, No. 2:07-MD-1873 ("*FEMA Trailer*"). Plaintiffs are individuals who resided in emergency housing units, or FEMA trailers, provided by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita. Plaintiffs in the instant action brought suit against Gulf Stream Coach, Inc. ("Gulf Stream"), Fluor Enterprises, Inc., and the United States, seeking damages for injuries resulting from exposure to dangerous levels of formaldehyde or formaldehyde vapors allegedly released from the FEMA trailers.

The *FEMA Trailer* Plaintiffs' Steering Committee retained appellant Mary C. DeVany ("DeVany") as an expert witness in the field of industrial hygiene. She was designated as a fact and expert witness for the class certification

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

hearing and, after class certification was denied, as one of many expert witnesses for the plaintiffs in the bellwether trial.

Gulf Stream filed a motion *in limine* to exclude DeVany's expert opinions from the trial. In support of its motion, Gulf Stream notified the district court that DeVany had inflated her educational credentials and exaggerated her role in the *FEMA Trailer* litigation in an unrelated matter before the Board of Industrial Insurance Appeals ("BIIA") in the State of Washington (the "*Vaughn* proceedings").[1] In her testimony before the BIIA, DeVany averred that she was chosen, at the district court's request, to be "the one" expert witness "to help [the district court] evaluate the science behind formaldehyde . . . and explain the chemistry, physiology and toxicology of formaldehyde."

The district court denied Gulf Stream's motion *in limine* in part, permitting DeVany to offer opinions relating to her expertise in industrial hygiene. However, the district court also urged plaintiffs' counsel to reconsider calling DeVany as a witness at trial. The district court expressed great concerns about DeVany's "completely false representation" to the BIIA that DeVany was chosen to assist the district court, at its request, in evaluating the science behind the plaintiffs' claims. The district court ordered Gulf Stream to produce the transcript of DeVany's testimony in the *Vaughn* proceedings, stating that if Gulf Stream's characterization of her testimony was accurate, "[c]ounsel will be allowed to voir dire DeVany and bring out such prior testimony at trial, which will, without a doubt, warrant the Court's correction of such testimony before the jury, and admonishment of this witness for making such self-aggrandizing statements."[2]

---

[1] *In Re: Steven R. Vaughn*, Docket No. 07-13382, Claim No. Y-965493.

[2] In her testimony in the *Vaughn* proceedings, which Gulf Stream provided for the district court, DeVany stated the following:
A.    I'm currently involved in, umm, a large federal case—series of federal

3

At trial on September 15, 2009, before plaintiffs' counsel called DeVany to testify, the district court informed counsel during a bench conference that it had read DeVany's testimony in the *Vaughn* proceedings and intended to admonish her in front of the jury. Consequently, plaintiffs chose not to call DeVany as a witness. On September 17, 2009, DeVany met with the district court in chambers, where she "apologized for what she considered an error and pledged her cooperation to rectify the situation." On September 24, 2009, the jury entered a verdict for the defendants, and that same day, the district court issued

---

        cases—actually, approximately thirty thousand federal cases, involving, umm, individual exposures to people that were given FEMA trailers and portable housing units in response to Katrina—hurricanes Katrina and Rita. And I'm the expert witness coordinating all the expert work for all the litigation in the entire gulf coast for the plaintiffs.

. . .

Q.    So, in terms of the multi-party litigation you just mentioned, did all the attorneys for the parties involved in that litigation have to agree upon you as an expert, did the Judge appoint you, how did that work?

A.    Judge [Engelhardt] had—he's the Federal Judge, umm, in that whole jurisdiction, umm—I don't want to say complained severely, but what—it was actually, he complained to all the—the, uhh, parties involved saying since it wasn't a—it's not a class action, all these different lawsuits are clogging up his Federal court system. There are truly an excess of thirty thousand of them.

        And—and so, he told these—all these law firms along the whole gulf coast to get together and to form one central committee, and to present to him, since the cases are so similar—present to him one Complaint, one Request for Interrogatories and Discoveries, you know, one Motion every time something comes up. And, to agree upon one expert witness that he could work with to help him evaluate the science behind formaldehyde, how formaldehyde's measured, its toxic effect, how it got into the trailers in the first place, and someone he could rely upon to produce Affidavits to, umm, evidentiary hearings before him and explain the chemistry, physiology and toxicology of formaldehyde.

        And these law firms along the gulf coast got together and decided I should be the one.

an Order and Rule to Show Cause reprimanding DeVany for her statements in the *Vaughn* proceedings. That order is the subject of this appeal.

In the order, the district court found that

> DeVany's statements in the *Vaughn* matter served to grossly overstate her importance in this litigation, and to incorrectly portray herself as the single expert exclusively advising this Court, and upon whom this Court would rely. Without a doubt, DeVany knew that she had not been granted such status, and that she did not work with the undersigned in any way regarding the science behind formaldehyde, etc. Moreover . . . it is clear that DeVany sought to exaggerate the role of the undersigned, and then attach herself to that exaggerated position. . . . In order to facilitate this image, DeVany created the fiction of an overwhelming court docket in order to further support a motivation for the Court to crown her as that handpicked expert in this case. She wrongly presented herself to have the imprimatur of this Court in asserting her credentials.

It concluded that DeVany was a sophisticated and experienced expert witness with extensive qualifications, "all of which discount the notion that her testimony was an unintentional departure from the reality of her role in this litigation."

The district court ordered DeVany to send a copy of the order, along with a written statement setting forth accurate facts, to the judge and attorneys involved in the *Vaughn* proceedings within fifteen days, and to provide to the district court sworn certification that she had complied. If she did not comply with the order, the district court would order her to show cause in writing, within fifteen days, why she should not be sanctioned in the amount of $5,000. DeVany filed a notice of appeal on October 2, 2009.

N/A

No. 09-31038

## II. DISCUSSION

### A. Jurisdiction

As a threshold matter, we must determine our jurisdiction over this appeal.[3] We have jurisdiction over "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. "[A] decision is not final, ordinarily, unless it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 204 (1999) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521–22 (1988)).

DeVany argues that the district court's order amounted to a criminal contempt order, and is therefore immediately appealable as a final order under § 1291. *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990) (noting that criminal contempt orders are appealable final orders). This order is not immediately appealable under this theory because, for the reasons discussed in the following section, we find that the district court's order is not a criminal contempt order.

In the alternative, DeVany contends that we have jurisdiction over this appeal pursuant to the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Under the collateral order doctrine, we have jurisdiction under § 1291 over a "small category of decisions that . . . do not end the litigation," which "includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action."

---

[3] We note at the outset that the district court's order presents a reviewable appellate issue. In *Walker v. City of Mesquite*, 129 F.3d 831, 832 (5th Cir. 1997), we recognized that a district court's finding of blatant misconduct by an attorney resulted in injury to the lawyer's reputation that was reviewable on appeal, "being persuaded beyond peradventure that one's professional reputation is a lawyer's most important and valuable asset." The district court's finding of misconduct in this case results in a similar harm to DeVany's professional reputation as an expert witness, and would likewise be appealable even if not accompanied by a monetary penalty. *Id.* at 832–33.

6

*Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) (quoting *Cohen*, 337 U.S. at 546). "The collateral order doctrine is best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a 'practical construction' of it." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (quoting *Cohen*, 337 U.S. at 546)).

Typically, sanctions orders are not themselves final orders and do not meet the criteria of the collateral order doctrine. *See Click v. Abilene Nat'l Bank*, 822 F.2d 544, 545 (5th Cir. 1987). A district court's finding of sanctionable conduct in the course of litigation will frequently be "inextricably intertwined with the merits of the action," *Cunningham*, 527 U.S. at 205, and therefore "can be and routinely [will be] appealed when merged in the district court's final judgment." *Click*, 822 F.2d at 545. Permitting an immediate appeal from such sanctions orders would undermine the district court's discretion in managing litigation before it, "forestall resolution of the case as each new sanction would give rise to a new appeal," and lead to "the very sorts of piecemeal appeals and concomitant delays that the final judgment rule was designed to prevent." *Cunningham*, 527 U.S. at 209.[4]

These concerns are not implicated here. First, although the district court's order is not final in the sense that it ends litigation on the merits, the order is

---

[4] *Cunningham* concerned a sanction for discovery violations imposed on an attorney under Federal Rule of Civil Procedure 37(a). We have since applied *Cunningham* to preclude collateral order review of other sanctions orders assessed against attorneys for conduct during the course of litigation. *See, e.g., Conerly v. Ordeneaux*, 143 F.App'x 575, 576–77 (5th Cir. 2005) (per curiam) (order imposing sanctions on an attorney under Rule 16(f) or the court's inherent power was not an appealable collateral order); *Williams v. Midwest Emp'rs Cas. Co.*, 243 F.3d 208, 210 (5th Cir. 2001) (per curiam) (Rule 11 sanction imposed on party's attorney was neither a final order nor an appealable collateral order). These cases are distinguishable because here the order concerns a sanction imposed on a witness, rather than an attorney, for conduct unrelated to the underlying litigation. *Cf. Cunningham*, 527 U.S. at 207 (in dicta, noting that unlike attorneys, "witnesses['] . . . interests may differ substantially from the parties'," and that "[t]he effective congruence of interests between clients and attorneys counsels against treating attorneys like other nonparties for purposes of appeal").

7

final as to DeVany, because the district court conclusively determined that she "wrongfully presented herself to have the imprimatur of [the district court] in asserting her credentials" in the *Vaughn* proceedings. Furthermore, the sanctions order has no bearing on the merits of the *FEMA Trailer* litigation, like a Rule 11 or discovery sanction would; rather, it addresses only DeVany's testimony in the *Vaughn* proceedings before the BIIA. Therefore, review of the appeal would not impede, and indeed has not impeded, final resolution of the underlying proceedings. Finally, because the sanctions order is unrelated to the underlying suit, DeVany has an interest in challenging the sanctions order that is not shared by the parties; as a non-party, it is unclear that she would be able to obtain review of the order from the final judgment.[5] Given these unique circumstances, we find that the order at issue fits within the collateral order doctrine, and accordingly, that we have jurisdiction over this appeal.

## B. The District Court's Authority to Sanction DeVany

We review the district court's imposition of sanctions for abuse of discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991); *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1410 (5th Cir. 1993).

DeVany contends that because the district court's sanctions were punitive, the order is best characterized as a criminal contempt order. However, nothing in the record or the district court's order suggests that the district court intended to punish DeVany for contempt. "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *SEC v. First Fin. Grp. of Tex.*, 659 F.2d 660, 669 (5th Cir. Oct. 1981). We can find no

---

[5] For this reason, the sanctions order at issue here is analogous to a civil contempt order imposed upon a non-party, which we likewise consider to be "final" for purposes of appeal under § 1291. *See Southern Ry. Co. v. Lanham*, 403 F.2d 119, 124 (5th Cir. 1968) ("an adjudication of civil contempt is final and appealable as to a non-party who would be unable to appeal from the final decision on the merits").

No. 09-31038

order of the district court that DeVany may have defied, and the district court references none. As DeVany herself points out, a sanction for contempt does not fit the conduct punished here. *See* 18 U.S.C. § 401(1)–(3).[6] Consequently, we find no reason to construe the district court's sanction as an exercise of its contempt powers.

In its order, the district court did not identify the Federal Rule of Civil Procedure or statutory authority upon which it relied in imposing sanctions on DeVany. As no rule or statute appears to apply to DeVany's conduct, we assume that the district court relied on its inherent power in reprimanding DeVany.[7]

"When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions." *Carroll v. The Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997) (citing *Chambers*, 501 U.S. at 50). The inherent sanctioning power is "based on the need to control court proceeding[s] and [the] necessity of protecting the exercise of judicial authority in connection with those proceedings." *Citizens Bank & trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1023 (5th Cir. 1991) (citation omitted). Therefore, the district court's inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need

---

[6] 18 U.S.C. § 401 states:
A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as--
   (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
   (2) Misbehavior of any of its officers in their official transactions;
   (3) Disobedience or resistance to its lawful writ, process, order, rule, decree or command.

[7] DeVany points to one possible contender, Rule 11. However, as Rule 11 sanctions may only be imposed upon an "attorney, law firm, or party" that violates the Rule, it does not apply to allow a district court to sanction a witness for testimony in an unrelated proceeding before another court. *See* FED. R. CIV. P. 11(c)(1).

9

to make the court function." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990), *aff'd sub nom Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). The district court's inherent power "must be exercised with restraint and discretion," *Chambers*, 501 U.S. at 44, and "may be exercised only if essential to preserve the authority of the court." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.* 86 F.3d 464, 467 (5th Cir. 1996).

"Inherent power must arise from the litigation before [the sanctioning] court," and a district court abuses its discretion for sanctioning conduct that cannot be construed as part of the proceedings before it. *Case*, 937 F.2d at 1024. In *Case*, we held that a bankruptcy court's inherent sanctioning power did not extend to a debtor's improper conduct in a state court proceeding that was "completely collateral to the proceedings in the bankruptcy court." *Id.* at 1023. Although the debtor employed the same bad-faith litigation tactics against the same creditor in the state court action as in the bankruptcy court, we found that the "conduct of the parties in the state action cannot be said to affect the exercise of the judicial authority of the bankruptcy court or limit the bankruptcy court's power to control the behavior of parties and attorneys in the litigation before it." We therefore held that the bankruptcy court abused its discretion in sanctioning conduct that occurred outside the litigation before it by awarding attorneys' fees incurred in the state court action. *Id.* at 1023–24.

We affirmed the limited reach of the district court's inherent sanctioning power in *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 593 (5th Cir. 2008). Vacating the district court's sanctions assessed against a party for its conduct relating to a collateral administrative court proceeding, we held that a court's "inherent power to police itself" does not "grant a district court the power to police the administrative courts . . . when those courts do not threaten the court's own judicial authority or proceedings." *Id.* (internal quotation omitted); *see also Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, –F.3d–, 2010 WL

3530013, at *5 (5th Cir. Sept 13, 2010) (holding that a district court lacked inherent authority to sanction an attorney for misconduct that took place during a related arbitration proceeding, because the misconduct was neither before the district court nor in direct defiance of its orders).

In accordance with this caselaw, it is clear that the district court abused its discretion in sanctioning DeVany for her testimony before the Washington State BIIA. Her testimony in the *Vaughn* proceedings was not a part of the proceedings before the sanctioning court. We have even less reason to affirm DeVany's sanctions than in *Case*, *Maxxam*, and *Positive Software Solutions* because, unlike the collateral proceedings in those cases, the *Vaughn* proceedings were wholly unrelated to the underlying litigation in the *FEMA Trailer* litigation. While the district court may consider conduct in collateral proceedings in determining whether the conduct before it was taken in bad faith or undertaken with an improper motive, *see Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1417–18 (5th Cir. 1994), the district court did not do so here. Rather, it reprimanded DeVany solely for testimony in the *Vaughn* proceedings and made no findings that she acted improperly in the instant action. DeVany's testimony in the *Vaughn* proceedings concerning her role in the *FEMA Trailer* litigation neither interfered with the *FEMA Trailer* proceedings nor threatened the district court's authority to manage those proceedings. Therefore, it cannot be said that the exercise of the district court's sanctioning power in the instant case was "essential to preserve the authority of the court." *Natural Gas Pipeline*, 86 F.3d at 467.

The district court was understandably troubled by the substance of DeVany's testimony in the *Vaughn* proceedings. Our vacation of the district court's sanctions order should not be construed as endorsing DeVany's testimony. We merely hold, as our caselaw compels, that the district court's inherent power to sanction bad-faith litigation conduct did not reach DeVany's

testimony before the BIIA.[8] Because we hold that the district court abused its discretion in sanctioning DeVany for her testimony in the *Vaughn* proceedings, we do not reach her argument that the district court failed to provide her due process prior to entering its sanctions order.

## III. CONCLUSION

For the foregoing reasons, we VACATE the order of the district court.

---

[8] We do not address whether it would have been proper for the district court to admonish DeVany during trial if opposing counsel brought out her prior testimony during examination; as plaintiffs' counsel chose not to call her as a trial witness, the issue is not before us.

# United States Court of Appeals
FIFTH CIRCUIT
OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

January 04, 2011

Ms. Loretta Whyte
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

    No. 09-31038, In Re: FEMA Trailer
        USDC No. 2:07-MD-1873
        USDC No. 2:09-CV-2892

Enclosed, for the Eastern District of Louisiana, New Orleans only, is a copy of the judgment issued as the mandate.

Enclosed, for the Eastern District of Louisiana, New Orleans only, is a copy of the court's opinion.

Record/original papers/exhibits to be returned.

Sincerely,

LYLE W. CAYCE, Clerk

By: /s/ Dawn D. Victoriano
Dawn D. Victoriano, Deputy Clerk
504-310-7717

cc: Honorable Kurt D. Engelhardt
cc: (letter only)
    Ms. Sara A. Johnson
    Mr. Herbert V Larson Jr.

P.S. to Judge Engelhardt: A copy of the opinion was sent to your office via email the day it was filed.

MDT-1