UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION N-5<br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

**This Document Relates to: All Cases**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**UNITED STATES' MEMORANDUM IN RESPONSE TO
JOINT MOTIONS TO DISMISS (Rec. Docs. 18684, 19080)**

## INTRODUCTION

The United States of America ("United States") submits this Memorandum in Response to the Manufacturing Defendants' "Joint Motion to Dismiss Claims for Failure to Comply with Order and Reasons Concerning Deadlines for Matching and Filing" (Rec. Doc. 18684) and the Contractor Defendants' "Joint Motion to Dismiss Claims for Failure to Comply with Order and Reasons Concerning Deadlines for Matching and Filing" (Rec. Doc. 19080). In opposition to these motions, Plaintiffs who allegedly occupied temporary emergency housing units ("EHUs") have made unsupported and specious allegations claiming that they have been unable to meet their burden to identify the manufacturer of their EHUs in compliance with the deadlines set by Pretrial Order No. ("PTO") 38, PTO 40, PTO 49, PTO 53, and PTO 68 because the United States has: (1) refused to cooperate, *see* Plaintiffs' Opp. at 5 (Rec. Doc. 19085), Plaintiffs' Opp. at 5 (Rec. Doc. 19572 ); (2) resisted discovery efforts and refused to produce responsive matching information, *see* Plaintiffs' Opp. at 5 (Rec. Doc. 19085), Plaintiffs' Opp. at 5 (Rec. Doc. 19572); (3) misplaced responsive matching information, *see* Plaintiffs' Opp. at 5 (Rec. Doc. 19085), Plaintiffs' Opp. at 6 (Rec. Doc. 19572 ); and (4) refused to respond to a request for production

seeking matching information submitted after June 15, 2010, *see* Plaintiffs' Opp. at 3 (Rec. Doc. 19167).

The Court should grant the Manufacturers' and Contractors' motions and reject Plaintiffs' arguments because they have failed to demonstrate that "good cause" exists (1) for their failure to comply with deadlines set forth in PTO 38, PTO 40, PTO 49, PTO and 53, and (2) for the Court to modify the agreed upon PTO 68 "last chance" matching process to allow for some remaining unmatched plaintiffs to now engage in a ***second*** "last chance" matching process.  As this Court is well aware, the government, for more than two years, has consistently worked with the Court, Plaintiffs' Liaison Counsel ("PLC"), Plaintiffs' Steering Committee ("PSC"), and Plaintiffs' counsel to instruct Plaintiffs as to the information that they must collect and submit with any request for production so that the United States can identify any potentially responsive matching information that may be contained in the FEMA database.  None of the Plaintiffs who oppose the Manufacturers' and Contractors' motions make any effort in their responsive memorandums to demonstrate how they acted with due diligence to comply with PTO 38, PTO 40, PTO 49, and PTO 53, and obtain the information required by the United States to search the FEMA Response and Recovery Applicant Tracking System ("FRRATS") database, nor did Plaintiffs raise any of these issues in a timely manner prior to the Court's entry of PTO 68 "last chance" matching process.

In addition, some Plaintiffs assert that the United States arbitrarily refused to respond to a request for production of matching information issued after June 15, 2010.  *See* Plaintiffs' Opp. at 3 (Rec. Doc. 19167).  This allegation is simply not true.  The United States has conferred with the Plaintiffs' counsel responsible for that statement and he has acknowledged to undersigned

counsel that this was a misstatement and that the purported request for production was never issued to the government.  *See also* Exh. 1, Declaration Jonathan Waldron ¶7; Exh. 2, at 4-5, 7.

For these reasons, the Court should deny Plaintiffs' request to conduct any further discovery or a second "last chance" discovery process for purposes of meeting their burden to comply with the deadlines set by PTO 38, PTO 40, PTO 49, PTO 53, and should grant the Manufacturers' and Government Contractors' motions to dismiss.[1]  *See* Plaintiffs' Opp. at 2-4 (Rec. Doc. 19195); Plaintiffs' Opp. at 2-4 (Rec. Doc. 19196).  Any information relevant to the process was required to be gathered long ago.  Under the Court's Pretrial Orders, the time for matching has passed.

## FACTS

1. From March 2008, to the present, the United States has processed and responded to all requests for production seeking matching information.  *See* Joint Report No. 7 at 13 (Rec. Doc. 851); Exh. 1, Declaration of Jonathan Waldron ¶¶2-3.

2. The United States, as reflected through its statements to the Court at Status Conferences, has diligently worked with the Court and Plaintiffs' counsel to inform them of the information that they must collect and submit to the United States to obtain matching information.

3. Liaison and Government counsel, through the Joint Reports (commencing with the November 8, 2008, Joint Report No. 7), have provided all Plaintiffs' counsel with notice of the information that they must collect and submit to the United States in any request for

---

[1] The lone exceptions to dismissal should be those actions where Plaintiffs can show they have matched in accord with this Court's Pretrial Orders.  Some matched actions may have been inadvertently named as unmatched actions in the motions to dismiss.

3

production seeking matching information.  *See* Joint Report No. 7 at 13 (Rec. Doc. 851); Joint Report 8 at 9 (Rec. Doc. 1075); Joint Report 9 at 8-9 (Rec. Doc. 1220); Joint Report 10 at 5 (Rec. Doc. 1458); Joint Report 11 at 12 (Rec. Doc. 2012); Joint Report 12 at 9-10 (Rec. Doc. 2604); Joint Report 13 at 3 (Rec. Doc. 5959); Joint Report 14 at 4-6 (Rec. Doc. 10417); Joint Report 15 at 4-7 (Rec. Doc. 13402); Joint Report 16 at 5-10 (Rec. Doc.14078).

4.  On January 26, 2010, the United States filed a "Notice of How An Applicant May Call FEMA to Obtain FEMA ID Number for Matching Purposes" (Rec. Doc. 10795).

5.  The United States has responded to each and every request for production seeking matching information in a prompt and timely manner.  *See* Exhibit 1, Declaration of Jonathan Waldron.  To date, this has involved responding to more than 170 requests for production seeking matching information on behalf of more than 85,000 Plaintiffs.  *Id*.  For some Plaintiffs, FEMA was unable to identify any responsive matching information in its database.  The reasons why responsive matching information was not located include: (1) the Plaintiff failed to provide FEMA with the information needed to search the database or the information the Plaintiff provided was inaccurate, (2) neither the Plaintiff nor any co-disaster aid applicant was issued an EHU; (3) the EHU that the Plaintiff occupied was issued to some other person and the Plaintiff failed to provide information relating to that person and request that FEMA to search its database for responsive information relating to that disaster aid applicant; or (4) the Plaintiff never occupied an EHU.  *Id*.

6.  On May 27, 2009, the Court entered PTO 38 allowing Plaintiffs to file unmatched complaints and further Ordering that each Plaintiff had the burden of filing suit against only the particular manufacturer of his or her trailer.  PTO 38 (Rec. Doc. 1596).

7.      On June 17, 2009, the Court entered PTO 40 and required the Hurricane Legal Center to identify the manufacturer of any unmatched Plaintiff's EHU within 45 days of the filing of the complaint.  The Court further instructed that this deadline is subject to extension for good cause shown.  PTO 40 (Rec. Doc. 1781).

8.      On December 8, 2009, the Court entered PTO 49 requiring all Plaintiffs to be matched to a manufacturer within 45 days of filing a complaint or within 20 days of entry of PTO 49 if a complaint had already been filed and the action transferred by the Judicial Panel on Multidistrict Litigation ("JPMDL") to the Eastern District of Louisiana.  The Court instructed that this deadline is subject to extension for good cause shown.  *See* PTO 49 (Rec. Doc. 8908).

9.      On December 14, 2009, the Court entered PTO 53 requiring that all Plaintiffs had the burden to file suit only against the particular government contractor involved with his or her unit and also required that the Plaintiff identify and amend its action to only name the government contractor responsible for installing the EHU within 45 days of filing a complaint or within 20 days of entry of PTO 53 if a complaint had already been filed and the action transferred by the MDL Panel to the Eastern District of Louisiana.  *See* PTO 53 (Rec. Doc. 9073).

10.     On January 15, 2010, the Court created a Matching Committee consisting of Plaintiffs' Liaison Counsel Justin Woods, Plaintiffs' Steering Committee member Mikal Watts, and undersigned Government Counsel.  This Committee provided the Court with the proposed agreed upon last chance matching process, with the intent to bring finality to the matching process and provide unmatched Plaintiffs with a final "last chance" mechanism to identify the manufacturer of the EHU that they occupied.  *See* PTO 68 at 1 (Rec. Doc. 14200, Rec. Doc. 14779).

11.     On May 26, 2010, the Court entered PTO 68 Concerning Deadlines for Matching and Filing (Rec. Doc. 14200), and on July 14, 2010, entered an Amended PTO 68 Concerning Deadlines for Matching and Filing (Rec. Doc. 14779) (hereinafter collectively referred to as PTO 68). The purpose of the Order was to provide claimants "a 'last chance" process . . . to obtain whatever other information is efficiently obtainable from others sources . . . [and] to provide a date certain by which the matching effort will end, and dismissals of unmatched claimants will occur." PTO 68 at 1 (Rec. Doc. 14200, Rec. Doc. 14779).

## STANDARD OF REVIEW

The relevant section of Fed. R. Civ. P. 16(b)(4) provides that a pretrial scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The purpose of a Scheduling Order deadline, is, in part, to assist in expediting disposition of an action, and Rule 16(b)(3) authorizes district courts to issue deadlines addressing matters that may help facilitate this goal. *See* Fed. R. Civ. P. 16(b)(3). Consistent with the authority vested in the trial court by Fed. R. Civ. P. 16, the Fifth Circuit gives the district court "'broad discretion to preserve the integrity and purpose of the pretrial order.'" *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208 (5th Cir.1992) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir.1990)). Rule 16(b) requires that a party demonstrate good cause to modify a scheduling order deadline. Fed. R.Civ. P. 16(b)(4); *see also Tunica-Biloxi Indians of Louisiana v. Pecot*, 227 F.R.D. 271, 276-77 (W.D. La. 2005). The "good cause" standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (quoting 6A Charles Alan Wright, et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).

"[T]he good cause showing unambiguously centers on [the mover's] diligence." *STMicroelectronics, Inc. v. Motorola*, Inc., 307 F.Supp.2d 845, 851 (E.D. Tex. 2004); *see also Verhoeven v. Balboa Ins. Co.*, No. 06-4891, 2007 WL 4374222, at *7 (E.D. La. 2007) (absence of prejudice to the non-moving party is irrelevant to whether there exists good cause); *Porter v. Milliken & Michaels, Inc*, 2001 WL 378687, at *1 (E.D. La. 2001) (same). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Smith v. United Parcel Svc., Inc.*, 902 F.Supp. 719, 721 (S.D. W.Va. 1995); *see also Porter*, 2001 WL 378687, at *1 (mere inadvertence by the movant does not satisfy the "good cause" requirement). In *Dilmar Oil Co, Inc. v. Federated Mut. Ins*. Co., 986 F. Supp. 959, 980 (D.S.C. 1997), the court explained:

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of a party seeking the extension." Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Id*. at 980 (citations omitted). *See also Ordemann v. Unidentified Party*, 2008 WL 695253, at *2 (E.D. La. 2008) (inexplicable delay and failure to timely move to alter scheduling deadline "is tantamount to no explanation at all").

## ARGUMENT

The Court should grant the Manufacturers' and Contractors' motions because plaintiffs have failed to meet their burden and demonstrate that they have exercised due diligence to comply with the deadlines set by PTO 38, PTO 40, PTO 49, and PTO 53. *See Southwestern Bell*,

7

346 F.3d at 546 (the "good cause" standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension"). Furthermore, to the extent certain remaining unmatched Plaintiffs' now request a further "last chance" opportunity to conduct discovery to obtain matching information, the Court should deny the request because these Plaintiffs have failed to make an individualized showing that (1) they participated in the last chance matching process, and (2) they exercised due diligence to obtain necessary information and submit timely matching requests for production to the United States. There simply cannot be good cause to escape dismissal where a Plaintiff has failed to timely find necessary matching information or they were not apprised by Plaintiffs' counsel of the important need to provide any and all relevant attainable information prior to the Court's deadlines.

I. **The Court Should Reject Plaintiffs' Arguments that Good Cause Exists to Modify and Extend PTO 38, PTO 40, PTO 49, and PTO 53 Deadlines for Matching and Allow a Second "Last Chance" Matching Process on the Alleged Basis that the United States Refused to Cooperate, Resisted Discovery Efforts, and Misplaced Responsive Matching Information.**

**Argument is Responsive to:** *Plaintiffs' Opp.* **(Rec. Doc. 19085) (Law Firm of Frank D'Amico)**; *Plaintiffs' Opp.* **(Rec. Doc. 19572 ) (Law Firm of Frank D'Amico)**.

Certain Plaintiffs assert, without offering any evidence or documentation in support of their allegations, that "good" cause exists to modify the Court's deadlines to match as set forth in PTO 38, PTO 40, PTO 49, and PTO 53 because the United States has (1) refused to cooperate, (2) resisted discovery efforts and refused to produce responsive matching information, and (3) misplaced responsive matching information, *see* Plaintiffs' Opp. at 5 (Rec. Doc. 19085); Plaintiffs' Opp. at 5-6 (Rec. Doc. 19572 ).

As an initial matter, the Court should reject these arguments because Plaintiffs have failed

8

to proffer any evidence in support of these spurious allegations.  Moreover, the United States received five (5) requests for production of matching information from Plaintiffs' counsel Mr. Frank D'Amico.  Those requests were received on: (1) February 6, 2009; (2) August 11, 2009; (3) August 11, 2009; (4) August 11, 2009; and (5) March 23, 2010.  *See* Exhibit 1, Declaration of Jonathan Waldron, Attachment A.  The United States processed the February 6, 2009, request, and all three August 11, 2009, requests for production and produced whatever responsive matching information was contained in the FEMA FRRATS database.  *Id*.  The United States also responded to the March 23, 2010, request.  However, the United States objected to that request because a request for production had previously been propounded for 420 of the 840 listed claimants and Plaintiffs' counsel had failed to proffer any additional information regarding these 420 duplicate claimants.  The United States urged counsel to resubmit the request and advised counsel that it should issue the second request for production on behalf of a claimant only after they obtain the information that FEMA needs to search the FRRATS database for matching information.

  From April 26, 2010, to the present, Mr. D'Amico has neither met and conferred with the United States regarding any potential concerns arising out of the United States' responses to the five requests for production of matching information, nor has he filed any motion to compel further responses to the requests for production.  Finally, the United States' records show that these plaintiffs apparently chose not to participate in the PTO 68 last chance matching process, and issued no further requests for production of matching information to the United States after March 23, 2010.  *See* Exhibit 1, Declaration Jonathan Waldron, Attachment A.

  The Court should reject these Plaintiffs' arguments because they have failed to

demonstrate that they acted with due diligence to comply with the discovery deadlines set forth in PTO 38, PTO 40, PTO 49, and PTO 53, and these unmatched Plaintiffs have failed to demonstrate that they participated in the PTO 68 "last chance" matching process.

II.     **Contrary to Plaintiffs' Assertions, No Requests for the Production of Matching Information Were Propounded on the United States After June 15, 2010.**

**Argument is Responsive to:** *Plaintiffs' Opp.* **(Rec. Doc. 19167) (Becnel Law Firm)**.

Plaintiffs' counsel erroneously claims that "good cause" exists to extend the matching deadline because a request for production seeking matching information on behalf of certain plaintiffs was issued to the United States on some unspecified date after June 15, 2010, and that the United States arbitrarily refused to respond to that request. *See* Plaintiffs' Opp. at 3 (Rec. Doc. 19167). Significantly, Plaintiffs failed to produce to the Court with the alleged request for production or the alleged refusal by the United States to respond to the alleged discovery request.

Undersigned counsel has conferred with Plaintiffs' counsel Mr. Matt Moreland. Mr. Moreland acknowledged that contrary to the statement in the memorandum filed with the Court, *see* Plaintiffs' Opp. at 3 (Rec. Doc. 19167), the Plaintiffs never issued a request for production of matching information to the United States after June 15, 2010, and, *a fortiori*, the United States has not refused to respond to any such request. *See* Exh. 1, Declaration of Jonathan Waldron ¶7, Attachment A; Exh. 2, E-mails at 4-5, 7. During the discussion, Mr. Moreland indicated that he did not issue the contemplated request for production because he believed that, under the PTO 68, June 15, 2010, deadline, the United States would refuse to respond any request for production issued after June 15, 2010. Exh. 2, E-mails at 4-5, 7.[2]

---

[2] In tandem with the filing of their memorandum in opposition to the Manufacturers' and Contractors' motions to dismiss, these Plaintiffs filed a January 4, 2010, motion to compel the United

Furthermore, these Plaintiffs have failed to demonstrate good cause for failing to complying with PTO 38, PTO 40, PTO 49, and PTO 53, matching deadlines and have failed to show good cause for failing to comply with the requirements of the PTO 68 "last chance" matching process. To accept these Plaintiffs' arguments would effectively mean that the matching process will never end – they concede that the Plaintiffs had access to the information needed to submit a timely request for production of matching information, but they simply failed to exercise due diligence to collect and provide that information to counsel in a timely manner. If the information *could* have been gathered prior to the deadlines (even if it may have required a significant effort on the part of a Plaintiff or Plaintiffs' counsel) there is no good cause for extension. Moreover, even if the Plaintiffs exercised due diligence to collect the information, the request should be denied, because of Plaintiffs' counsel's failure to either promptly present a discovery request to the United States and timely seek an extension of the PTO 68 "last chance" matching deadlines, as well as PTO 38, PTO 40, PTO 49, and PTO 53, deadlines. As the court noted in *Ordemann*, 2008 WL 695253, at *2, inexplicable delay and failure to timely move to alter a scheduling deadline "is tantamount to no explanation at all." *See also Dilmar Oil Co, Inc.*, 986 F. Supp. at 980. Accordingly, the Court should grant the Manufacturers' and Contractors' motions and dismiss these Plaintiffs' claims.

---

States to provide the name of the manufacturer and contactor for certain Plaintiffs. *See* Plaintiffs' Opp. at 2; Exparte/Consent Motion to Compel (Rec. Doc. 19163). The Clerk of Court determined that the motion to compel was deficient and it has not been refiled. *See* Exh. 3, Clerk, Notice of Deficiency. Moreover, any request to compel is without merit because the Plaintiffs have never actually servered the United States with a post June 15, 2010, request for production. *See* Exh. 2, E-mails at 4-5, 7.

**III.     The Court Should Reject Plaintiffs' Request that Unmatched Plaintiffs Who Apparently Complied With the Requirements of the PTO 68 "Last Chance" Matching Process Be Provided a *Second* "Last Chance" To Conduct Further Discovery to Satisfy their Burden and Comply With PTO 38, PTO 40, PTO 49, and PTO 53.**

**Argument is Responsive to:** *Plaintiffs' Opp.* **(Rec. Doc. 19195) (Gainsburgh, Benjamin, David, Meunier & Warshauer);** *Plaintiffs' Opp.* **(Rec. Doc. 19196) (Buzbee Law Firm).**

The Court should reject these Plaintiffs' request that they should be provided a second "last chance" to conduct further discovery of the United States, and grant the Manufacturers' and Contractors' motions to dismiss. Plaintiffs bear the burden of demonstrating that they acted with due diligence to comply with deadlines set forth in PTO 38, PTO 40, PTO 49, and PTO 53. Significantly, not a single one of these Plaintiffs has made a showing of what steps they took to collect the information that is required to search the FEMA FRRATS database for matching information, nor have Plaintiffs offered any explanation as to why they were unavailable to collect that information, or why their search was not completed in a prompt and timely manner on or before the Court's PTO 68 "last chance" matching deadlines. *See* Plaintiffs' Opp. (Rec. Doc. 19195); Plaintiffs' Opp. (Rec. Doc. 19196).

The Plaintiffs represented by Gainsburgh, Benjamin, David, Meunier & Warshauer have had more than two years to satisfy the matching deadlines. *See* Plaintiffs' Opp. (Rec. Doc. 19195). Between March 2009 and June 2010, Gainsburgh, Benjamin, David, Meunier & Warshauer issued five requests for production of matching information and the United States responded to each of those requests and produced any responsive matching information contained in the FRRATS database. *See* Exh. 1, Dec. Jonathan Waldron, Attachment A.

The plaintiffs represented by the Buzbee Law Firm also have had more than two years to

12

satisfy the matching deadlines. *See* Plaintiffs' Opp. (Rec. Doc. 19196). Between April 2009 and June 2010, the Buzbee Law Firm issued eleven requests for production of matching information. The United States produced whatever responsive matching information was contained in the FRRATS database for nine of the requests. *See* Exh. 1, Dec. Jonathan Waldron, Attachment A. The United States objected to the April 3, 2009, request for production, in part, because, for many of the plaintiffs, the request failed to provide a FEMA ID number and/or the State where the EHU was installed. The United States searched the FRRATS database for those Plaintiffs who had provided this information and requested that the other plaintiffs collect the required information and resubmit the request. The United States also objected to the May 7, 2010, request for production because a request for production had previously been propounded for approximately 49 percent of the claimants and Plaintiffs' counsel had failed to proffer any new or additional information regarding these claimants. The United States urged counsel to resubmit the request and advised Plaintiffs' counsel that it should only issue a second request for production on behalf of a claimant after they obtain the information that FEMA requires to search the FRRATS database for matching information.

  Neither a representative of Gainsburgh, Benjamin, David, Meunier & Warshauer, nor a representative of the Buzbee Law Firm ever met and conferred with the United States to raise concerns regarding a specific claimants inability to match arising out of the United States' responses to their requests for production of matching information, nor have they ever filed any motion to compel further responses to those requests for production.

  These plaintiffs have known for more than two years that they must identify the manufacturer of the EHU that they occupied and the government contractor that installed their

13

unit, and the United States has worked with and cooperated with Plaintiffs since March 2008, at the Government's expense, to respond to requests for production seeking matching information. *See* Joint Report No. 7 at 13 (Rec. Doc. 851). Moreover, these Plaintiffs' counsel were responsible for drafting and/or approved the Court's entry of the PTO 68 "last chance" matching process in their capacity as a member of the Court's Matching Committee or a member of the Plaintiffs' Steering Committee. *See* PTO 68 at 1(Rec. Doc. 14200, Rec. Doc. 14779). Nevertheless, these Plaintiffs now urge the Court to conclude, without proof that it is unfair to require them to comply with PTO 38, PTO 40, PTO 49, and PTO 53 deadlines, and that they never intended the PTO 68 "last chance" matching process to be a "last chance," but actually a second to "last chance."

      The Court should deny these Plaintiffs' request for a second "last chance" matching process because they have failed to demonstrate what steps and actions, if any, they and their counsel have taken during that last two years to collect information necessary to identify the EHU that they occupied and comply with PTO 38, PTO 40, PTO 49, and PTO 53 deadlines, and failed to promptly object or raise concerns during the promulgation of the PTO 68 "last chance" matching process. To allow these Plaintiffs a second "last chance" to conduct additional discovery is inappropriate because they have failed to individually demonstrate the: (1) step by step actions they took to collect the information necessary to search the FRRATS database to identify the EHU that they allegedly occupied, and (2) that these actions could not have been completed and that their requests could not have been made prior to the Court's entry of the PTO 68 "last chance" matching process. *See Smith*, 902 F.Supp. at 721; *Porter*, 2001 WL 378687, at *1 (mere inadvertence does not satisfy the "good cause" requirement); *Dilmar Oil Co, Inc.*, 986

14

F. Supp. at 980 ("[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief"); *Ordemann*, 2008 WL 695253, at *2. Accordingly, these plaintiffs have failed to demonstrate "good cause" and the Court should reject their arguments and grant the Manufacturers' and Contractors' motions to dismiss.

## CONCLUSION

The Court should grant the Manufacturers' and Contractors' motions to dismiss to the extent the Plaintiffs argue that the motions should be denied so that they may conduct a second "last chance" discovery from the United States. PTO 68 was agreed upon and entered to bring finality to a matching process that has gone on for more than two years. Plaintiffs have had a full opportunity to collect the necessary information for matching and the Government has responded to matching requests with whatever responsive information is contained in its database. With the exhaustion of Government sources of information, Plaintiffs also had an opportunity to seek last chance matching information from other sources. One need look no further than Rec. Doc. 19214-1 to see that the matching process has worked. Plaintiffs' counsel Mikal Watts represents in his filing that he has asserted claims on behalf of over 30,000 clients in this litigation. Of his 30,113 clients, he has successfully been able to match 29,917 claimants (99.7 percent). As Mr. Mikal Watts details, his efforts have involved substantial time and effort (meetings, call projects, and letter distributions), but he has been able to achieve a very high success rate under the Court's PTOs and the matching system that was to reach its conclusion through PTO 68. If other Plaintiffs or Plaintiffs counsel have not used the same diligence to achieve such results, that was their choice – it is not the fault of the matching process or the United States. The Court should reject Plaintiffs' arguments opposing dismissal because Plaintiffs have failed to meet their

burden and demonstrate that they exercised due diligence to comply with the Court's discovery deadlines set forth in PTO 38, PTO 40, PTO 49, and PTO 53.

| | |
|---|---|
| Dated: January 13, 2011. | Respectfully Submitted, |
| TONY WEST<br>Assistant Attorney General, Civil Division | ADAM BAIN<br>Senior Trial Counsel |
| J. PATRICK GLYNN<br>Director, Torts Branch, Civil Division | MICHELLE BOYLE<br>ADAM DINNELL<br>JONATHAN WALDRON |
| DAVID S. FISHBACK<br>Assistant Director | Trial Attorneys |
| | //S// *Henry T. Miller* |
| OF COUNSEL: | HENRY T. MILLER (D.C. Bar No. 411885)<br>Senior Trial Counsel |
| JANICE WILLIAMS-JONES<br>Senior Trial Attorney<br>Federal Emergency Management Agency<br>Department of Homeland Security<br>Washington, D.C. 20472 | United States Department of Justice<br>Civil Division – Torts Branch<br>P.O. Box 340, Ben Franklin Station<br>Washington, D.C. 20004<br>Telephone No: (202) 616-4223<br>E-mail: Henry.Miller@USDOJ.Gov |
| | Attorneys for the United States of America |

### CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2010, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

*//S// Henry T. Miller*
HENRY T. MILLER (D.C. Bar No. 411885)