UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER                             MDL NO. 07-1873
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION                            SECTION "N" (5)
                                                JUDGE ENGELHARDT
                                                MAG. JUDGE CHASEZ

THIS DOCUMENT RELATES TO:
ALL CASES ("Louisiana Plaintiffs")

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ** * * * *

DEFENDANT UNITED STATES' REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS THE REMAINING FTCA CLAIMS OF ALL
"LOUISIANA PLAINTIFFS," OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT (Rec. Doc. 16598)

**INTRODUCTION**

In their opposition to the United States' motion, Louisiana Plaintiffs advance stale legal theories, revisit unrelated rulings, and promise as yet undiscovered support for their position – all the while ignoring the actual facts gathered over the past two years of discovery in this litigation. Plaintiffs' argument that the government considered legal strategy in its deliberations regarding how to respond to the issue of formaldehyde in EHUs does not make an alleged government misrepresentation less essential to their claims, nor does it show that the government subjected any Plaintiff in this litigation to gross negligence or willful and wanton misconduct. The key facts are not in dispute. Following the hurricanes, FEMA acquired shelters from third parties, provided the shelters to hurricane victims, learned that the shelters might have problems with formaldehyde, and took some level of responsive action. Plaintiffs cannot change the fact that their own allegations and the factual record conclusively establish that FEMA employees did not act with a complete and total lack of care in responding to the issue of formaldehyde in EHUs. As a result, Plaintiffs' remaining FTCA claims sounding in gross negligence cannot be allowed to proceed. Their claims are grounded in an alleged government failure to communicate information, their allegations do not satisfy the extreme showing required to establish gross negligence under Louisiana law, and the factual record shows that government employees exercised some degree of care.

First, with respect to the FTCA's misrepresentation exception, Plaintiffs concede that some of their claims directly stem from alleged government misrepresentations.[1] Plaintiffs'

---

[1] Notwithstanding Plaintiffs' argument that the overall crux of their remaining claims is not an alleged government misrepresentation, they concede that two specific claims asserted in the Third Administrative Master Complaint (AMC) (Rec. Doc. 4486) (as incorporated into the most recent AMC), ¶ 209(b) and ¶ 209(e), specifically "deal with the [government's] failure to adequately communicate

1

allegations that the government failed to warn Plaintiffs about the EHUs and that the government suppressed and withheld information from the public that the EHUs contained formaldehyde are specifically and  inextricably linked with an alleged government misrepresentation.  Even in Plaintiffs' view, the government's failure to provide information is at the epicenter of these claims.  *See* Pls.' Mem. at 10 (Rec. Doc. 18714).  Thus, the Court must dismiss these claims for lack of subject-matter jurisdiction pursuant to the misrepresentation exception.  In an attempt to save the remainder of their claims, Plaintiffs argue that the government owed a variety of other independent duties to Plaintiffs (other than to communicate information), but these duties are not supported by Louisiana law.  The United States owed Plaintiffs the same duties that would be owed by a private person who allows their immovable property or premises to be used for free emergency shelter.  Nothing more, nothing less.  Because any breach of these duties relies on the government's alleged failure to provide information, the actions must be dismissed.

Second, Plaintiffs cannot establish any set of facts that could establish a case for gross negligence or willful and wanton misconduct by the United States.  Although Plaintiffs stress their theory that government lawyers drove the entirety of FEMA's response to the issue of formaldehyde in EHUs, the totality of the circumstances (both as pleaded by Plaintiffs and reflected in the factual record) demonstrates that FEMA employees exercised some degree of

---

information."  *See* Pls.' Mem. at 10 (Rec. Doc. 18714).  These paragraphs allege the government was negligent and at fault:

   b.  In failing to adequately warn the each of the Named Plaintiffs of the unreasonably dangerous nature of the housing units which the Plaintiffs occupied; . . . [and] . . .

   e.  In knowingly and intentionally suppressing and withholding information from the public that the temporary housing units contained elevated levels of formaldehyde.

Pls.' Mem. at 9 (quoting Third AMC ¶ 209).  Regardless of whether Plaintiffs' actions are dismissed in their entirety based on the FTCA's misrepresentation exception, these specific claims clearly must be dismissed pursuant to the provision's jurisdictional bar.

care and did not breach their applicable tort duty through gross negligence.  While Plaintiffs

stress that there are individualized Plaintiff-specific issues regarding whether FEMA employees

acted with gross negligence, they have wholly failed to (1) identify any Plaintiff who has pleaded

such individualized allegations, or (2) come forward with any evidence in response to the

government's motion to create a genuine issue regarding individualized gross negligence in any

particular Plaintiff's case.  The government's challenge has been met with silence.  Plaintiffs

have failed to offer a single fact in this litigation that suggests any individual Plaintiff or certain

groups of Plaintiffs may have been treated with gross negligence.

Instead, Plaintiffs have chosen to argue that there is a genuine issue of material fact as to

whether the government treated *all* Plaintiffs with gross negligence.  They rely on a purely legal

argument, conclusory statements devoid of record support, and their own allegations.[2]  Under

Plaintiffs' theory, no matter what the factual record shows in terms of FEMA response actions,

the actions must have been the result of improper motivations (*i.e.*, litigation concerns), and,

thus, FEMA employees had to have been grossly negligent.  Plaintiffs ignore the fact that, after

numerous depositions of FEMA employees (including the recipients of various e-mails from

agency counsel), they cannot produce any evidence that shows a factual nexus between litigation

concerns voiced by agency counsel (facing pending litigation) and a real impact on the

government's action/inaction in this case.  Plaintiffs incorrectly argue that where a claim may

fall outside the protections of the FTCA's discretionary function exception it is per se actionable.

---

[2]  Although Plaintiffs reference 80,000 EHU occupants throughout their opposition (presumably the total number of Plaintiffs in this litigation), *see* Pls. Mem. at 3, this number does not accurately reflect the number of Plaintiffs who have sued the United States.  At least 30,000 persons who filed administrative claims with FEMA have opted not to sue the United States under the FTCA (the six month period during which they could have filed suit following the denial of their administrative claims has now passed).

But, here, the question is no longer whether certain FEMA acts or omissions were susceptible to or grounded in policy considerations.  Rather, it is whether, assuming any of their remaining claims are not barred by the misrepresentation exception, the evidence can sustain an allegation of gross negligence or willful and wanton misconduct.

Plaintiffs fall into a familiar refrain throughout their opposition.  Although the United States seeks dismissal based upon the FTCA's misrepresentation exception and a failure to properly plead or establish a genuine issue of material fact as to individualized or generalized gross negligence claims, Plaintiffs stress that the Court has found certain FTCA claims in this case may fall outside the FTCA's discretionary function exception.  This has nothing to do with the government's arguments in support of dismissal and summary judgment.  Contrary to Plaintiffs' assertion, this Court did not cloak certain FTCA claims as "colorable" such that they are immune to all other jurisdictional or substantive arguments.  *See* Pls.' Mem. at 4.  Just because a claim may fall outside the FTCA's discretionary function exception does not mean that the claim is not subject to dismissal or summary judgment on other grounds.  Over two years ago, this Court stressed that its initial discretionary function exception ruling was addressing a "threshold inquiry" at an "early juncture."  *See* Order and Reasons, October 3, 2008 (Rec. Doc. 717).  At this point, after extensive discovery of the government and its employees, Plaintiffs offer nothing more than the same recycled, unrelated legal arguments relating to the discretionary function exception in an attempt to maintain their claims against the United States.  That Plaintiffs' opposition only repeats the arguments made during the two rounds of discretionary function briefing crystallizes the lack of factual support for their remaining FTCA claims.

Ultimately, the government must be judged on the acts it did or did not take towards the Plaintiffs, not what certain FEMA employees subjectively considered or debated. At best, Plaintiffs seek to create a genuine issue of material fact as to whether FEMA was proactive enough in responding to the issue of formaldehyde in EHUs and whether it took FEMA longer than it should have to respond – but these facts are insufficient to establish gross negligence under Louisiana law. Isolated e-mails reflecting the concerns of agency counsel cannot override the fact that responsive action was taken shortly after initial complaints and concerns were raised regarding formaldehyde in EHUs. Considering the totality of the circumstances, the factual record does not reflect that FEMA employees treated any Plaintiff with the complete and utter disregard required to meet the requisite threshold. At this advanced stage of the litigation, Louisiana Plaintiffs' unsupported remaining FTCA claims are ripe for disposition.

I.   **Plaintiffs' FTCA claims necessarily rely on an alleged government failure to provide information and, thus, are barred by the misrepresentation exception.**

The FTCA bars the Court from exercising subject-matter jurisdiction over claims based on the government's failure to communicate information. *See United States v. Neustadt*, 366 U.S. 369, 706 (1961). Here, Plaintiffs' arguments cannot change the fact that alleged government misrepresentations remain essential to their FTCA claims. In their opposition, Plaintiffs seek to create a false distinction between action and inaction under the FTCA's misrepresentation exception. They argue that the misrepresentation exception does not apply to bar their claims because their claims against the United States are about "strategic silence" and "deliberate inaction," not "action" or "overt falsification." Pls.' Mem. at 2. Well-settled FTCA case law does not support such a distinction. *See JBP Acquisitions, LP v. United States*, 224 F.3d 1260, 1265-66 (11th Cir. 2000) ("the failure to communicate, as well as direct

5

communication, is encompassed by the misrepresentation exception"). The exception applies to bar subject-matter jurisdiction wherever an alleged government misrepresentation is the gravamen of a particular claim, regardless of whether the misrepresentation was an act of commission (*i.e.*, provision of false information) or omission (*i.e.*, failure to provide information). *Id*.

Plaintiffs effectively concede that they bear the burden of establishing jurisdiction, that the misrepresentation exception is jurisdictional in nature, and that the government's jurisdictional challenge is not intertwined with the merits and should be decided under Fed. R. Civ. P. 12(b)(1). *See* Pls.' Mem. at 6-7 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They also admit that they have alleged government misrepresentations in this case. Pls.' Mem. at 7 (referencing the "misrepresentations alleged by Plaintiffs"). However, they argue that the alleged government misrepresentations are not essential to their remaining FTCA claims. *Id.* They do this by making the overall nature of their claims a moving target – the same claims that, prior to this motion, were characterized as being based on the "deliberate withholding of information about formaldehyde health risks," are now characterized as being based on the "choice not to respond promptly to a known health crisis." *Compare* U.S. Ex. B at 13, *with* Pls.' Mem. at 6.

Plaintiffs now argue that, although their overall claims "partially overlap[ ] with alleged misrepresentations," the gravamen of these claims a delayed response to the issue of formaldehyde in EHUs rather than a misrepresentation. Pls.' Mem. at 8. What they fail to grapple with, however, is whether the government actually had an independent state law tort duty to Plaintiffs beyond the duty to provide them with information. Their FTCA claims cannot

6

proceed unless they are based on the breach of independent state law tort duties that do not arise out of government misrepresentations.[3]

Whether Plaintiffs' actions are entirely based on the breach of a government duty to provide information or on the breach of an independent duty hinges on Louisiana law.  As discussed in the Court's May 18, 2010, Order and Reasons (Rec. Doc. 14124), the FTCA only allows for jurisdiction where a private person in like circumstances would be liable under state tort law.[4]  *See* Order and Reasons, May 18, 2010, at 4 n.5.  The Court has considered this private analogous liability requirement and found that, based on the allegations and clear facts of this case, the government was in like circumstances to a private person who owns or operates immovable property or other premises and grants the use of the immovable property or premises

---

[3] Louisiana Plaintiffs' remaining claims are based on Louisiana Civil Code Articles 2316, 2317, and 2317.1.  *See* Order and Reasons, October 3, 2008, at 47 (Rec. Doc. 717).  The duty of an owner or occupier of premises is the same under any of these theories of recovery.  Prior to 1996, a plaintiff seeking premises liability could seek to recover damages under either Article 2315/2316 (general negligence liability) or Article 2317 (strict liability).  The difference between the two theories was the proof required.  But through substantive changes made in 1996, namely, the enactment of Article 2317.1 (requiring proof of either actual or constructive knowledge of the unreasonable risk of harm), the legislature effectively eliminated strict liability under Article 2317.  *See Dupree v. City of New Orleans*, 765 So.2d 1002, 1007, n.5 (La. 2000).  A premises liability plaintiff must now prove both negligence and the defendant's scienter (that the defendant knew or should have known of the unreasonable risk) under either theory or recovery.  *Id.*  Even if this were not true under state law, the FTCA "d[oes] not authorize the imposition of strict liability of any sort upon the Government."  *Laird v. Nelms*, 406 U.S. 797, 802-03 (1972); *see Cupit v. United States*, 964 F. Supp. 1104, 1112 (W.D. La. 1997) ("[T]he FTCA requires a more focused approach that requires the courts to determine the relationship to the United States of the actor whose negligence might be imputed to the government under state law."); *Centanni v. United States*, No. 03-627, 2004 WL 385057, at *2 (E.D. La. Feb. 27, 2004) (Engelhardt, J.) (similar).

[4] This means that FTCA liability hinges on the existence and breach of state law tort duties.  *See Alexander v. United States*, 605 F.2d 828, 832 (5th Cir. 1979).  Because the FTCA treats the government like a private person, if a private person in like circumstances would not have a duty under state tort law, the FTCA claim cannot proceed.  *See Brown v. United States*, 653 F.2d 196, 201 (5th Cir. 1981).

for the purpose of sheltering persons during an emergency.[5]  *See id*. at 11-19.  The state law duty of such a private analogue under Louisiana law defines the scope of the government's duty in this FTCA action.[6]

A private person who owns or operates immovable property or other premises cannot be held responsible for all injuries resulting from any risk posed by his property or premises – only those presenting an unreasonable risk of harm to others.  *See David v. Reon*, 520 So.2d 820, 822-23 (La. App. 3 Cir. 1987).  Thus, whether such a private person owes a duty hinges on whether the property or premises presents an unreasonably dangerous condition (defect) that causes an unreasonable risk of harm.  Once an owner or operator knows (or should know) of an unreasonably dangerous risk of harm/injury to persons on the premises, the owner or operator has a duty to exercise reasonable care by either correcting the condition ***or*** warning persons on the premises of its existence within a reasonable amount of time.[7]  *See Dauzat v. Curnest Guillot Logging, Inc.*, 995 So.2d 1184, 1186 (La. 2008).[8]  This is true regardless of the cited theory of

---

[5]  *See* Order and Reasons, May 18, 2010, at 12 n.11 (concluding that the EHUs "could properly be considered as 'immovable property' given how they were installed").

[6]  Such a private analogue would not have a business relationship with an occupant, nor would the provider gain an economic benefit or mutuality of advantage.  The shelters provided by FEMA were offered at no cost for the sole purpose of housing homeless disaster victims.

[7]  An owner or operator does not have a duty to serve as the insurer of persons on the premises against all possibility of injury.  The owner or operator may only be held responsible where there is an unreasonable risk of harm to others – otherwise there is no duty.  When a dangerous condition is patently obvious and easily avoidable rather than a hidden or concealed peril, it cannot be considered to present a condition creating an unreasonable risk of harm.  *See Hutchison v. Knights of Columbus*, 866 So.2d 228, 234 (La. 2004).  Occupants have the duty of exercising reasonable care for their own safety and the safety of those under their care.  *See McCloud v. Housing Authority of New Orleans*, 987 So.2d 360, 363 (La. App. 4 Cir. 2008).

[8]  *See also Shelton v. Aetna Casualty & Surety Co.*, 334 So.2d 406, 410 (La. 1976); *Natal v. Phoenix Assur. Co. of New York*, 305 So.2d 438, 440 (La. 1975); *Monson v. Travelers Property & Case. Ins. Co.*, 955 So.2d 758, 761 (La. App. 5 Cir. 2007) (holding that owners and occupiers have a duty to

liability.  *See Haydel v. Hercules Transport, Inc.*, 654 So.2d 408, 415 (La. App. 1 Cir. 1995)

(stating that the duty under Articles 2315 and 2317 is the same – an owner or custodian of

immovable property or premises must "discover any unreasonably dangerous condition on his

premises and either correct the condition or warn potential victims of its existence"); *see also*

*Jones v. Hancock Holding Co.*, 707 F. Supp. 2d 670, 673 (M.D. La. 2010) ("It is well-settled

Louisiana law that a landowner owes a duty to a plaintiff to discover any unreasonably

dangerous conditions, and to either correct the condition or warn of its existence.").

Given that the duty presents a "correct or warn" alternative, if an owner or operator

adequately warns about a non-apparent unreasonable risk caused by the premises, there can be

no breach of duty.  *See id.*  At the point such a warning is communicated, a person occupying the

immovable property may make an informed choice as to whether they wish to stay and accept

the risk or leave and avoid the risk.  Thus, even assuming that Louisiana Plaintiffs were to prove

that the levels of formaldehyde in EHUs constituted an unreasonably dangerous condition that

would reasonably be expected to cause injury to one using ordinary care (thereby triggering a

duty on the part of the owner/operator of the EHUs),[9] Plaintiffs ***cannot*** establish a breach of duty

---

either correct unreasonably dangerous conditions or warn of their existence); *Blanchard v. State*, 702
So.2d 768, 773 (La. App. 3 Cir. 1997) (in a lightning strike case involving a shelter at a park, finding that
if the shelter was unreasonably dangerous, the owner's specific duty was "to afford either lightning
protection or warning signs"); *see also Wiggins v. United States*, No. 08-0008, 2009 WL 2176043, at *3
(July 22, 2009 E.D. La.) (discussing premises liability in the context of an FTCA action); *Lawson v.
Lockheed Martin Corp.*, No. 07-5421, 2008 WL 5110635, at *3 n.2 (E.D. La. Nov. 25, 2008) (describing
the duty of the defendant as a "duty to warn of the danger or correct the condition").

[9]  The reasonableness of the risk is determined by balancing a broad range of social and economic
factors, including the probability and magnitude of the risk, the utility of the thing, the feasibility of
repair, and the cost or burden of avoiding the harm.  *See Socorro v. City of New Orleans*, 579 So.2d 931,
939 (La. 1991).  Whether the alleged defect has caused harm in the past should also be considered.  *See,
e.g., Centanni v. United States*, No. 03-627, 2004 WL 385057, at *2 (Feb. 27, 2004 E.D. La.)
(Engelhardt, J.).  Although Plaintiffs stress that the EHUs were unreasonably dangerous because the
EHUs contained formaldehyde and formaldehyde is a carcinogen, formaldehyde is ubiquitous in the

without showing there was a failure to adequately warn (provide information) about the condition on the premises.  No one made Plaintiffs accept the government's offer of free emergency shelter.  At the foundation of their claims is the notion that had they been informed about formaldehyde in EHUs Plaintiffs would have declined the government's offer of free shelter and either found other housing or left the area.  Thus, a government failure to provide information is essential to any alleged breach of duty.  This is especially true here, where the premises at issue were acquired from third party vendors and had to meet prevailing industry standards.  If the premises turned out to be unreasonably dangerous, it is doubtful whether the United States or any other third party could have corrected the danger post-construction in a way other than through a communication with mitigation instructions.[10]

In Plaintiffs' view, if persons were injured while occupying government-provided emergency shelters, the government must be at fault.  As a result, they seek to impose a variety of duties (allegedly not involving misrepresentations) on the government simply because it is the government – this is not permissible under the FTCA.  The only claims that fall within the purview of the FTCA are those where a private person in like circumstances would be subject to

---

modern environment.  The relative risk of formaldehyde hinges on dose.

[10]  Plaintiffs' witness throughout this litigation, Dr. Stephen J. Smulski, Ph.D., has testified regarding what may be done to reduce levels of formaldehyde indoors.  Nearly all of these recommendations involve changes in design or construction that must be made before a space is built. U.S. Ex. AA (highlighted excerpts).  As for remedial measures that can be taken once a completed shelter is purchased (post-construction), Dr. Smulski suggests that the purchaser or end user may reduce levels by changing his or her practices to increase ventilation (one of the suggestions on FEMA-issued brochures): Q: "Because for the end user, ventilation is probably the best way to reduce levels of formaldehyde in a home or space, correct?"  A: "Yes."  U.S. Ex. AA at 323:19-23.  The Consumer Product Safety Commission echoes the sentiment that increasing ventilation (opening doors and windows) is the best corrective action to take regarding formaldehyde levels indoors.  U.S. Ex. 16. Rather than a mechanical fix, this requires the owner or operator of an indoor space to broadcast information to those using the space.

liability.  *See* 28 U.S.C. §§ 1346(b)(1), 2674.  A private person in like circumstances (who voluntarily allows his property or premises to be used as emergency shelter) would not have a duty under Louisiana tort law to continue to provide housing, to provide alternative housing, to relocate shelter occupants, to offer or provide rental assistance, to offer or provide other forms of housing assistance, or to generally respond to a purported public health crisis.  *See* Pls.' Mem. at 9 (citing Third AMC ¶ 209).  Nor would a private person in like circumstances have a general "safety mandate" or a duty to ensure the private person's lawyers do not pose legal considerations during internal deliberations.[11]  *Id*.  To the contrary, upon learning of a defective condition on a premises, a private person would ***only*** have a duty to reasonably respond by warning about the condition or correcting the condition.  If the person were to provide an adequate warning, he or she could not be found to have breached an applicable duty under Louisiana law.  Such a claim could not survive ***without*** the fact that the private person failed to communicate adequate information (the private person could not be held liable for injuries had it provided an adequate warning).  It follows that Plaintiffs' actions relying on this essential conduct are barred by the FTCA's misrepresentation exception.

---

[11]  The private analogous liability requirement exposes the problem with Plaintiffs' argument. Without coming forward with evidence that shows how litigation considerations specifically altered or delayed how FEMA responded to the issue formaldehyde in EHUs, Plaintiffs cite deliberative e-mails that reflect agency lawyers voicing concerns about how the agency's response could affect pending litigation. In other words, they argue that FEMA was grossly negligent because its lawyers were voicing their concerns about anticipated/pending litigation.  *See Hillard, et al. v. United States, et al.*, No. 2:06-cv-02576-MVL-KWR (E.D. La.) (a class action lawsuit filed on May 18, 2006, alleging dangerous formaldehyde levels in EHUs).  Although the Court considered this evidence relevant to assessing the policy prong of the discretionary function exception, it cannot be said that the evidence reflects a breach of any tort duty.  In fact, considering a private analogue under similar circumstances, it would be surprising to learn that a private party would not consider the viewpoints of counsel prior to making decisions or responding to requests for information while under the specter of anticipated/pending litigation, nor would it be surprising that counsel would want to continually stress their desire to be kept abreast of the situation.

Plaintiffs' additional argument that a governmental operational goal or mandate shapes the scope of the government's duty in an FTCA action is contrary to well-established law.  *See Richards v. United States*, 369 U.S. 1, 11 (1962) (holding that the FTCA cannot be read to create or enlarge substantive causes of action that do not already exist under state law).  Although government rules, regulations, and policy pronouncements may be relevant to analysis under the FTCA's discretionary function exception, federal directives cannot give rise to independent tort duties under state law – thus, they cannot give rise to independent tort duties in FTCA cases.[12]  As a result, Plaintiffs' attempt to impose what they describe as "*Indian Towing* duties" on the government based on the policy pronouncements of FEMA officials is without merit.  *See* Pls.' Mem. at 11; *Johnson v. Sawyer*, 47 F.3d 716, 728 (5th Cir. 1995) (discussing *Indian Towing* and holding that the duty owed in an FTCA action "is at bottom a question of state law").  Although the Court found these policy statements and goals relevant to its analysis as to whether FEMA's acts were susceptible to policy considerations, they do not shape the government's duty in this case.  Only Louisiana law can inform the tort duties in this FTCA action.

In sum, because a private person who knows (or should know) of an unreasonably dangerous condition on his immovable property or premises has a duty to correct the defect **or**

---

[12]  The FTCA's waiver does not apply "where the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own affairs."  *See Hornbeck Offshore Transp. v. United States*, 569 F.3d 506, 509 (D.C. Cir. 2009).  There is no analogous private liability unless a private person in like circumstances would have a corresponding duty under state tort law.  Thus, internal policies, goals, procedures, or rules discussing federal action – although potentially relevant to discretionary function analysis – cannot serve to create a substantive cause of action under the FTCA unless the conduct at issue is "independently tortious under applicable state law."  *See Johnson v. Sawyer*, 47 F.3d 716, 727-29 (5th Cir. 1995); *Tindall v. United States*, 901 F.2d 53, 56 (5th Cir. 1990) ("a federal regulation cannot establish a duty owed to the plaintiff under state law").  Contrary to Plaintiffs' arguments, the government's duty is not shaped by FEMA's alleged status as "a powerful branch of the government, with access to resources . . ."  *See* Pls. Mem. at 16.

warn about the defect, here the government had the same duty under similar circumstances. Considering Louisiana law, Plaintiffs' actions cannot proceed without the factual predicate that government employees failed to communicate information regarding the alleged unreasonably dangerous condition posed by the premises.[13]   The government did not have an absolute duty to cure all defects.  Therefore, the causal chain leading to potential government liability hinges on the government's alleged failure to notify Plaintiffs about formaldehyde in EHUs.  Without this alleged omission there could be no action – it is an inextricable element of Plaintiffs' remaining FTCA claims.[14]  Because the failure to provide information is a fact that must be proven to establish a breach of Louisiana tort duty in these actions, the actions must be dismissed in their entirety for lack of subject-matter jurisdiction under the FTCA's misrepresentation exception.[15]

## II.   Plaintiffs' gross negligence claims are subject to dismissal or summary judgment.

As noted in the government's brief (at 37-38), a plaintiff, in response to a well-founded motion for summary judgment after the opportunity for discovery, has the burden of

---

[13]  In discussing the nature of Plaintiffs' remaining claims against the United States, the Court has previously stressed that evidence may indicate, "FEMA allowed some hurricane victims to remain in these trailers for some time thereafter *without any notification or warning*."  Order and Reasons, October 3, 2008, at 28 (Rec. Doc. 717).

[14]  *Wells v. United States*, 655 F. Supp. 715, 724 (D. D.C. 1987) (barring claims based on the government's alleged failure to, after learning of lead pollution, take action to monitor, evaluate, regulate, and communicate knowledge of public health risks and  hazards); *Dyer v. United States*, 96 F. Supp.2d 725, 737-38 (E.D. Tenn. 2000) (barring claim that government deliberately withheld information about the health hazards from toxic chemicals at a government owned facility); *Brewer v. HUD*, 508 F. Supp. 72, 76 (S.D. Oh. 1980) (barring claims where the government failed to disclose defects that made a government-sold home unfit for habitation); *Mullens v. United States*, 785 F. Supp. 216 (D. Me. 1992).

[15]  To the extent Plaintiffs contend the United States intentionally and deliberately caused formaldehyde to come in contact with Plaintiffs (without their consent), such claims would also be barred by 28 U.S.C. § 2680(h), under the FTCA's assault and battery exception.  *See Miele by Miele v. United States*, 800 F.2d 50, 52 (2d Cir. 1986) (barring claim where alleged government employee exposed plaintiff to sulphuric acid).

demonstrating facts that would counsel against the grant of summary judgment.  But here, after

over two years of discovery, Louisiana Plaintiffs cannot show that any particular Plaintiff

suffered an injury caused by the gross negligence of the United States.  Although Plaintiffs cite

the importance of individualized considerations in connection with the government's motion,

they have wholly failed to plead individualized facts to support a plausible gross negligence

claim and have failed to come forward with any individualized facts to rebut the government's

motion for summary judgment.  Plaintiffs use the term "claim-specific facts," but in reality, they

simply attempt to seek safety in numbers.  In its opening brief, the government challenged

Plaintiffs by stating "[t]he current factual record is devoid of any admissible evidence that the

United States treated any Plaintiff in this litigation with the requisite willingness that extreme

harm would occur."  U.S. Mem. at 2.  The United States even identified the specific Louisiana

Plaintiff actions subject to the motion.  U.S. Ex. A.  Yet in response, Plaintiffs have done nothing

to show how a single Plaintiff's gross negligence claim may differ from the claim of another.

　　　　First, in response to the government's motion to dismiss under Rule 12(b)(6), Plaintiffs

have failed to show how any individual Plaintiff in this litigation has pleaded Plaintiff-specific

facts that differ from the allegations of the AMC that are applicable to Plaintiffs generally.  None

of the Plaintiffs has set forth an individualized factual basis to support a gross negligence claim –

there are no pleaded facts describing specific complaints regarding formaldehyde, interactions

with FEMA, or any other facts sufficient to show that their gross negligence claims should not

be summarily disposed of through motions practice against the AMC.  Although this is a mass

tort action, this kind of bald pleading devoid of individualized facts is insufficient given recent

Supreme Court precedent.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). This is

especially true given the Court's past suggestion that claims may differ between individuals. Although the Court has held that application of the FTCA's discretionary function exception and its jurisdictional bar may very well differ from Plaintiff to Plaintiff, Plaintiffs have failed to come forward with any basis for similar treatment here.  In response to this motion, it was Plaintiffs' burden to show they have adequately alleged facts sufficient to sustain any individualized gross negligence claims.

Second, even after having two months to respond to the government's motion for summary judgment, Plaintiffs have not come forward with a ***single individualized fact*** that distinguishes one Plaintiff's right to survive summary judgment ahead of another.  Although Plaintiffs contend they can come forward with affidavits and other discovery to establish such facts, this is not sufficient to survive a summary judgment challenge.  Their opposition was the time to present such evidence, but they have chosen not to do so.[16]

By last count, Plaintiffs have gathered over 21,000 Plaintiff Fact Sheets, the government has produced over 200 FEMA IA Files, and the parties had an opportunity to depose approximately fifty class representatives and nearly one dozen bellwether plaintiffs.  Yet, in response to the government's motion, Plaintiffs could not cite to a ***single*** individualized fact (through deposition testimony, affidavit, or otherwise) that reflects a legally significant difference among various Plaintiffs' gross negligence claims.  Plaintiffs may not argue that individualized differences will establish gross negligence without coming forward with whatever

---

[16]  Although Plaintiffs mention the fact that some Plaintiffs may have voiced complaints or concerns regarding formaldehyde to FEMA, the unrebutted evidence shows that, as of June 2006 (the time frame identified by the Court as when the government's acts likely fall within the discretionary function exception), FEMA had only received ***six*** complaints from Louisiana occupants regarding formaldehyde in EHUs.  *See* U.S. SOF ¶ 18.

evidence they have, if any, that the government breached an applicable Louisiana tort duty to

any Plaintiff through a grossly negligent act or omission.  *See Forsyth v. Barr*, 19 F.3d 1527,

1537 (5th Cir. 1994) (requiring that Plaintiffs "identify specific evidence in the record, and

articulate" precisely how that evidence supports their claims).  Here, the evidence is undisputed

that the government took action (including the disbursement of brochures and the initiation of

other programs) in response to the issue of formaldehyde in EHUs in an attempt to benefit ***all***

EHU occupants (including all Louisiana Plaintiffs).  Thus, as set forth below, any generalized

gross negligence claims are also ripe for disposition.

### A.  Plaintiffs have failed to sufficiently plead generalized gross negligence claims.

Even if the Court were to allow Plaintiffs to plead gross negligence generally, the United

States is entitled to dismissal.  Through the AMC, Plaintiffs have failed to plead factual

allegations that show how government gross negligence is plausibly the cause of their alleged

injuries.  First, accepting Plaintiffs' allegations as true, plaintiffs have not alleged facts that rise

above simple negligence.  It is unclear how gross negligence – rather than simple negligence – is

the likelier explanation for the alleged acts and omissions.  Plaintiffs argue that their conclusory

allegation that the government was "grossly negligent, reckless, willful and/or wanton" is

supported by a number of factual allegations, including the fact that FEMA received the first

occupant complaints regarding formaldehyde in EHUs in May and June 2006 (Third AMC ¶

180) and did not actually commence testing EHUs until September and October 2006 (Third

AMC ¶ 52).[17]  Even if such a delay were unreasonable, it cannot be considered an "entire

---

[17]  Although Plaintiffs argue that they have alleged FEMA had early knowledge of formaldehyde dangers and travel trailer composition (Pls.' Mem. at 14 n.23 (citing Third AMC at 36-39, 47)), these allegations deal with the knowledge of the manufactured housing industry and HUD.  It is the knowledge of FEMA and its employees that is relevant to this litigation.  *See Wyler v. Korean Air Lines, Inc.*, 928

absence of care" or "complete neglect." *See Houston Exploration Co. v. Halliburton Energy Services, Inc.*, 269 F.3d 528, 531 (5th Cir. 2001).

The insufficiency of Plaintiffs' gross negligence allegations is underscored by their own characterizations. According to Plaintiffs, their allegations "when viewed as a whole and in a light most favorable to Plaintiffs, refer to ***delays*** in testing and resident notification which were provoked by FEMA" and show that "FEMA failed to respond ***for a period of months***." Pls. Mem. at 2, 15 (emphasis added). Even accepting these allegations as true, a ***delayed response*** does not amount to a grossly negligent response under Louisiana law. *See Ambrose v. NOPD*, 639 So.2d 216, 222-23 (La. 1994); *Reynolds v. Louisiana Plastic*, 26 So.3d 149, 153 (La. Ap.. 2 Cir. 2009) (finding that even if there was a delay, it would not constitute gross negligence). Plaintiffs have not sufficiently pleaded that the government breached an applicable Louisiana tort duty (*see supra*) through grossly negligent acts or omissions. FEMA voluntarily chose to provide emergency shelter to disaster victims and soon was faced with a novel crisis. Although FEMA may have been deliberate or uncertain how to respond, the alleged facts do not make a plausible showing that FEMA intended to cause harm. *See Cates v. Beauregard Elec., Inc.*, 316 So.2d 907, 916 (La. App. 3 Cir. 1975). There is simply no reason to proceed through further

_____

F.2d 1167, 1172 (D.C. Cir. 1991) ("Indeed even within FAA imputation of knowledge between different FAA operations may not be justified"); *United States v. Schiffer*, 831 F. Supp. 1166, 1204 n.45 (E.D. Pa. 1993), *aff'd*, 31 F.3d 1135 (3rd Cir. 1994) ("knowledge by other federal agencies such as the Army . . . cannot be imputed to the INS"). Plaintiffs filed their administrative claims with FEMA and contend that FEMA employees committed grossly negligent acts and omissions within the scope of their employment. The entire knowledge of the federal government cannot be imputed to FEMA employees in judging whether these employees were aware of any unreasonably dangerous condition and whether their response was grossly negligent. *Id.* Also, although Plaintiffs contend that they have alleged FEMA had specific knowledge regarding the "formaldehyde concerns of Plaintiffs as early as October 2005" (citing Third AMC at 47-48), they have only alleged that OSHA tested unoccupied units at the request of a contractor – this does not reflect the complaint of an EHU occupant or Plaintiff.

discovery and trial where Plaintiffs' generalized allegations, even if true, cannot establish that FEMA employees breached an applicable tort duty through gross negligence.

**B.     Plaintiffs have failed to create a genuine issue of material fact to support their generalized gross negligence claims.**

In an attempt to create a genuine issue of material fact where there is none, Plaintiffs rely on unidentified yet "discovered evidence," out of context statements, their own allegations, and purely legal argument focused only on the generalized gross negligence claims of all Plaintiffs.[18] It was Plaintiffs' burden in responding to the government's motion to come forward with specific facts that establish a triable issue as to the United States' alleged gross negligence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). They have failed.[19] Although there may be a number of factual issues that remain disputed between the parties (*e.g.*, the "safe" level of formaldehyde in a residence or the average level of formaldehyde in EHUs), Plaintiffs have not created a genuine issue as to ***any material fact*** that would establish that the government acted with an extreme and utter absence of care. Thus, summary judgment on Plaintiffs' gross negligence claims is appropriate. At this juncture,

---

[18]   Conclusory allegations and unsubstantiated assertions are insufficient to defeat a summary judgment motion. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To avoid summary judgment, a non-movant must "come forward with competent evidence, such as affidavits or depositions, to buttress his claims." *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (holding that hearsay evidence and unsworn documents do not qualify as competent opposing evidence). "[L]egalistic argumentation [is] not an adequate substitute for specific facts showing that there is a genuine issue for trial." *S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

[19]   *See* Pls. Mem. at 21-22 (identifying disputed facts without coming forward with ***any*** evidence that contradicts the United States' factual showing). By contrast, there is no genuine issue of material fact as to whether the government exercised ***some*** care, as compared with complete and utter disregard, in responding to and warning about the alleged unreasonably dangerous condition in EHUs provided after Hurricanes Katrina and Rita. This vitiates any claims of gross negligence.

promises of discovery and legal argument will not suffice.  Plaintiffs have not come forward with enough facts to proceed.[20]

Plaintiffs argue that "[t]he deliberate decision to prioritize concerns for litigation strategy above concerns of public health and safety" amounts to gross negligence.  *See* Pls. Mem. at 19. According to Plaintiffs, if there was any delay on the part of FEMA in responding to an unexpected crisis involving products it did not manufacture, it must have been caused by FEMA's counsel, and, thus, it has to be gross negligence.  But, they have failed to come forward with ***any actual evidence*** that creates a factual nexus between FEMA counsel's concerns and comments regarding anticipated/pending litigation and real shortcomings in FEMA's response.

For instance, Plaintiffs have failed to come forward with any evidence that FEMA had ever had problems with formaldehyde in its past experiences with travel trailers and other forms of EHUs.[21]  Given its successful use of these types of EHUs in the past, FEMA could not have expected that units, presumably built to industry standards, could potentially contain unreasonably dangerous levels of formaldehyde.[22]  Plaintiffs argue that OSHA conducted a

---

[20]  In response to the government's motion for summary judgment, Plaintiffs have failed to respond with a separate and concise statement of material facts which they contend presents a genuine issue.  As a result, ***all material facts in the United States' must be deemed admitted***.  L.R. 56.2.

[21]  *See* U.S. SOF at 3 n.2 (citing U.S. Ex. 9 (describing how comprehensive research shows that during the three decades or more prior to Katrina that FEMA provided emergency housing, air quality problems had never been among the many concerns and complaints occupants had voiced about EHUs)). Plaintiffs have suggested no evidence to the contrary in their response.

[22]  Without factual support, Plaintiffs argue that "FEMA had been aware for years of the dangers of formaldehyde."  Pls.' Mem. at 10.  Although Plaintiffs seek to impute formaldehyde knowledge from other arms of the federal government to the FEMA emergency managers who were making decisions in the context of this growing crisis, this is not appropriate.  *See supra* at n. 19.  Similarly, Plaintiffs' argument that there is evidence suggesting EHU occupants were exposed to levels at or near occupational levels misses the mark.  This line of argument ignores the fact that occupational levels are often set based upon an entire work lifetime of exposure and simply do not correlate to non-occupational.  *See* Ex. BB.

number of workplace safety/regulatory compliance tests (at the behest of contractors) involving a

number of new, sealed, unoccupied EHUs in October 2005 in the State of Mississippi, but, the

testing showed that airing out and venting sealed units reduced formaldehyde to permissible

levels for workers who were working in new, sealed, unoccupied EHUs each and every work

day.[23]  There is no evidence that indicates that this testing raised any red flags at FEMA

regarding unreasonably dangerous **occupant** exposures to formaldehyde in **occupied and vented**

EHUs.  While Plaintiffs argue that FEMA should have been proactive and "connected the dots,"

this is a product of hindsight bias – there is no evidence indicating that FEMA employees

contemporaneously perceived any danger to occupants and certainly no evidence that they knew

occupants could be seriously be harmed but simply did not care.  No health complaints were

being reported.  Regardless of the exact date FEMA may have learned of potential formaldehyde

health concerns in the EHUs it purchased after Hurricanes Katrina and Rita, FEMA took a

programmatic and comprehensive response within a matter of months.  There is certainly no

evidence showing a **complete** absence of care by FEMA.

The first resident complaint or concern raised about formaldehyde in occupied units

occurred in mid-March 2006 and involved an occupant in Mississippi.[24]  U.S. SOF ¶ 17.

---

[23]  A March 2006 e-mail from a FEMA occupational safety employee reflects concern as to why the Mississippi OSHA tests had not previously been provided to the occupational safety office.  Drawing a distinction between units that have been made ready for occupancy and units being entered by workers at staging areas, he remarked that "the levels were high at the staging area . . . (where our staff work) however, they were relatively low once they were handed over to the public.  I am very concerned as to why OSHA did not share the information with our staff."  Early occupational concerns involving new, sealed, unoccupied EHUs simply did not trigger concerns about EHUs that had been made ready for occupancy.  U.S. Ex. 27.  Plaintiffs have not come forward with any facts to the contrary.

[24]  Although FEMA first heard of an occupant complaint or concern in mid-March 2006 (in Mississippi), it is pure supposition whether one complaint in the context of thousands of distributed EHUs (following the successful use of EHUs for decades without air quality problems) was sufficient to put the

Plaintiffs have come forward with no facts that establish an earlier complaint by any disaster victim.  Plaintiffs also have not rebutted facts that show that, in that same month (March 2006), FEMA encouraged all EHU occupants (including Louisiana occupants), through the news media, to air out and vent their EHUs and to call the maintenance number if there were problems.  U.S. SOF ¶ 21.  Also in March 2006, FEMA asked its contractors what they were doing about the possibility of formaldehyde in EHUs and assessed whether they were airing out units prior to occupancy.  U.S. SOF ¶22.  By late March 2006, FEMA's occupational safety office did its own occupational testing (results not available until May 2006) of sealed, unoccupied units and recommended that staging area workers *and occupants* be told to air out units.  U.S. SOF ¶ 24.  By May 2006, FEMA officials were attempting to put in place a contract for formaldehyde testing of EHUs.  U.S. SOF ¶ 25.  In June 2006, FEMA decided to prepare its own formaldehyde brochure (U.S. Ex. 54) for the occupants of EHUs (the document warned about formaldehyde in EHUs, provided mitigation instructions stressing the need for ventilation, and encouraged occupants to talk with their medical providers if they had health concerns) and these brochures were distributed between July and September 2006.[25]  U.S. SOF ¶¶ 30-31.  Also in June 2006, FEMA engaged the EPA and ATSDR to independently test EHUs.  U.S. SOF ¶ 32.  After encountering logistical difficulties, testing began in September 2006.  U.S. SOF ¶ 35.  None of this evidence has been rebutted by Plaintiffs.

These indisputable facts depict a government response full of activity.  Though there may have been some delays and errors in judgment, the record does not support Plaintiffs' argument

---

government on notice that the EHUs could potentially be unreasonably dangerous for occupants.

[25] Also in June 2006, FEMA issued a press release stressing to trailer occupants to "Ventilate trailers regularly to avoid buildup of possible odors from construction materials."  U.S. SOF ¶ 26.

that FEMA employees exhibited a complete lack of care in dealing with this issue.  Nonetheless,

Plaintiffs again attempt to rely on e-mail traffic from agency attorneys in an attempt to survive

the government's motion.  There is no substance to their argument.  Plaintiffs have not come

forward with anything evincing a factual nexus between attorney concerns and actual delays in

FEMA's response.  For example, a FEMA attorney e-mail cited by Plaintiffs in the Third AMC

(¶ 183) is dated June 16, 2006, and states "OGC has advised that we do not do testing," yet the

factual record shows that later that same month, FEMA emergency managers overrode any

objections and made the decision to press forward with testing.[26]  U.S. SOF ¶ 32.  The earliest e-

mails cited by Plaintiffs (Rec. Doc. 717 at 29, Rec. Doc. 2001 at 19) from a FEMA attorney

having ***anything to do with formaldehyde*** were sent in March 2006 (Plaintiffs have failed to

come forward with any evidence reflecting attorney communications regarding formaldehyde

earlier than this date), yet, in less than three months, FEMA emergency managers were preparing

hundreds of thousands of formaldehyde brochures for disbursement to all EHU occupants across

the Gulf South.[27]  FEMA attorneys' concerns about anticipated and pending litigation (most of

---

[26]  Plaintiffs argue that an excerpt from the deposition of FEMA employee David Garratt evinces
how overarching litigation strategy drove FEMA's response to the formaldehyde issue and further argue,
without producing any support, that this testimony "just brushes the surface."  Pls. Mem. at 17.  In the
excerpt, Mr. Garratt testifies that, according to e-mail records, FEMA lawyers wanted to delay the testing
of EHUs.  *Id.*  However, e-mail from June 27, 2006, reflects that Mr. Garratt made the decision to move
past any objections from counsel to "mission assign EPA to to [sic] a full assessment of the formaldehyde
problem, and make recommendations," he also made clear, "***Agree that you should not wait to post
notices***."  U.S. Ex. 53 (emphasis added).  Garratt has testified that, in June 2006, he authorized the
distribution of safety notices to EHU occupants (which happened upon his authorization).  U.S. Ex. 52,
96:18-97:20.  Further, the government's supplemental memorandum filed in support of an earlier motion
to dismiss (Rec. Doc. 2505 at 6-9) sets forth ***in detail*** the testimony surrounding how FEMA emergency
managers moved past any concerns voiced by agency counsel to take responsive action regarding
formaldehyde in EHUs.

[27]  Taking an e-mail statement out of context, Plaintiffs argue that FEMA's response actions were
driven by a desire to "not generate a lot of calls."  Pls. Mem. at. 19.  The cited e-mail was authored by a
FEMA Temporary Recovery Office employee on July 26, 2006, and discussed whether a FEMA phone

which were voiced in June 2006) did not prevent FEMA emergency managers from exercising

care soon thereafter in how they responded to the issue of formaldehyde in EHUs.  To the extent

there were delays in responding to this unexpected crisis, this is not surprising given the

uncertainty of the situation, confusion over who would be in charge of the response, conflicting

reports, and disaster conditions.[28]  Although Plaintiffs also accuse FEMA attorneys of

subsequently skewing the ATSDR's interpretation of test results, such claims are belied by the

testimony of Joseph Little, the ATSDR employee assigned to this project.  Plaintiffs can offer no

---

number should be included on formaldehyde information flyers (U.S. Ex. 54) distributed to EHU
occupants in the summer of 2006.  The FEMA employee told another FEMA employee, "we are trying to
not generate a lot of calls, *just get the facts out as we know them* so we are not putting our number on it.
We are anticipating that we will be able to refine the flier [sic] after the test to be a little more specific on
actions that may reduce the levels."  U.S. Ex. 55 (emphasis added).  The e-mail traffic goes on to describe
how FEMA was preparing 200,000 of these flyers for the Louisiana theater alone.  *Id.*  Once FEMA had
an opportunity to learn more about the issue, a specific formaldehyde phone line was developed and the
number was listed on a summer 2007 FEMA brochure (U.S. Ex. 64).  *See* U.S. Ex. 64.  While relevant
information regarding the potential problem was still coming in, FEMA acted as soon as it could to
provide some information about formaldehyde to EHU occupants.

[28]  Plaintiffs' witness throughout this litigation, Kenneth Laughery, Ph.D, has explained the
numerous difficulties inherent in a third party (such as FEMA in this case) warning about a product made
by someone else.  U.S. Ex. CC (highlighted excerpts).  According to Dr. Laughery, for a third party to
competently warn about a manufacturer's product, they must acquire and access all of the relevant
information in the hands of the manufacturer.  *Id.* at 150:21-151:16; 165:6-10 (Q: "Because you can't
warn about a product that you don't know from top to bottom?"  A: "Yeah, and you expect the
manufacturer to be the source, normally a primary source of information.").  To assess whether or not a
product presents a hazard *takes time* and a third party must come to know the ins and outs of th hazard
before they can attempt to warn about the product.  *Id.* at 154:13-155:12.  Dr. Laughery also agrees that
the brochures FEMA issues to occupants after gathering relevant information about formaldehyde in
EHUs contain a large number of the attributes he would like to see in a hazard communication.  *Id.* at
167:21-171:15; 180:21-109:20 (describing how the July 2006 FEMA brochure contains the potential
components for an effective warning; 123:5-125:24 (discussing how the July 2006 FEMA brochure
provides the kind of information that a manufacturer should have addressed in a label on the product);
*see also id.* at 172:5-172:15 (agreeing that after a product leaves the hands of a manufacturer, it
would be far more effective to personally deliver rather than mail a hazard communication).  Dr.
Laughery also was asked about his review of the depositions of two FEMA employees who
worked on the flyer campaign: Q: "*Did you see any indication they were trying to move as
quickly as possible with the formaldehyde flyer campaign*?"  A: "*Yes*."  *Id.* at 197:6-198:1
(emphasis added).

evidence that contradicts Cmdr. Little's testimony.[29]  Similarly, Plaintiffs have deposed numerous FEMA personnel involved in the agency's response to the issue of formaldehyde in EHUs (including the recipients of cited e-mails from agency counsel) and have had a full opportunity to ask them about the e-mails from FEMA attorneys regarding litigation concerns. Plaintiffs have failed to come forward with *any* testimony that indicates FEMA emergency managers substantively changed their formaldehyde response or altered their approach in an attempt to shield the government from legal liability.  The record is void of potentially admissible evidence reflecting a conscious decision on the part of FEMA employees to engage in delay tactics in response to the concerns voiced by some FEMA attorneys.  Ultimately, the extent of counsel's involvement is not material.  It does not and cannot change the fact that, when considering the totality of the circumstances, FEMA did exercise *some* care.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)

Formaldehyde in EHUs was a difficult problem to which there was no easy solution. Had FEMA removed Plaintiffs from EHUs they would have been left homeless.  Had FEMA stopped issuing EHUs, homeless disaster victims would have had nowhere to go.  Even if FEMA

---

[29]  Cmdr. Little testified that although FEMA counsel would be on the line during FEMA conference calls with the ATSDR (8:9-14), they did not have a significant role in ATSDR's preparation of a health assessment, nor were FEMA litigation concerns ever discussed with the author of the ATSDR assessment. US Ex. 49 (89:20-24, 92:14-23).  Ignoring the facts and citing their own Complaint, Plaintiffs further argue that FEMA caused the ATSDR to ignore "its own limit of 0.008 ppm" despite Cmdr. Little's testimony explaining why he selected the level of concern he selected and the scientific research he consulted.  U.S. Ex. 49; 154:1-3 (describing the 0.008 ppm by saying "That's not a guide.  That's not a standard." and stating that he did not address cancer because that involved "10, 20 years" of exposure). As Cmdr. Little testified, FEMA did not manipulate the testing of EHUs, FEMA initially wanted broader testing than the kind that occurred (148:18-23), and FEMA counsel never put any limitation or restriction on what could be tested, when it could be tested, or how it could be tested (149:8-13).  He also testified that FEMA counsel never placed any restriction or limitation on the ATSDR review and analysis Cmdr. Little conducted (150:17-20).

officials had "stuck their heads in the sand" for some period of time regarding the issue of formaldehyde in EHUs, as this Court has stated, any inaction was "temporary." *See* Order and Reasons, August 13, 2009 (Rec. Doc. 2621).  Although Plaintiffs seek to point to an alleged period of inaction during a limited time period in an attempt to argue that their claims only relate to this abbreviated yet undefined period, the Court must consider the totality of the circumstances in assessing whether the conduct at issue could amount to gross negligence.  *See Brooks v. City of Jennings*, 944 So.2d, 768, 774 (La. App. 3 Cir. 2006) (considering the "totality of the circumstances" in assessing gross negligence claims).  It is indisputable that the government did take remedial steps and exercise care during the months after the first concerns or complaints regarding formaldehyde in EHUs surfaced.  These acts, including the disbursement of information brochures and the testing of mitigation techniques, sought to help reduce the levels of formaldehyde faced by occupants in EHUs and were taken in the face of limited options given the unavailability of alternate housing.  Plaintiffs even concede that it is the "promptness" of FEMA's response that they contend gives rise to government liability.  *See* Pls.' Mem. at 6.  Yet, even if some FEMA employees did not react with the speed and sensitivity expected, even if some employees made troubling comments, and even if FEMA could have and should have acted with more aggression or urgency – this conduct, while unfortunate, does not rise to the outrageous level of gross negligence.  Unsurprisingly, Plaintiffs contend that FEMA's formaldehyde response was not enough, but contrary to Plaintiffs' argument, this cannot be considered a complete failure to respond or an utter lack of any care.  Plaintiffs have simply not come forward with evidence sufficient for a reasonable trier of fact to return a verdict for Plaintiffs on gross negligence.  Thus, summary judgment is appropriate in this case.

Dated:  January 19, 2011

TONY WEST
Assistant Attorney General, Civil Division

J. PATRICK GLYNN
Director, Civil Division, Torts Branch

DAVID S. FISHBACK
Assistant Director

OF COUNSEL:

JANICE WILLIAMS-JONES
Senior Trial Attorney
FEMA/DHS

Respectfully Submitted,

HENRY T. MILLER
ADAM BAIN
Senior Trial Counsel

MICHELLE BOYLE
JONATHAN WALDRON
Trial Attorneys


*s/ Adam M. Dinnell*
ADAM M. DINNELL (TX No. 24055405)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 340, Ben Franklin Station
Washington, DC 20004
Telephone:  (202) 616-4211
E-mail:  Adam.Dinnell@usdoj.gov

Attorneys for Defendant United States


## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2011, the foregoing document was filed via the U.S.

District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison

Counsel.

*s/ Adam M. Dinnell*
ADAM M. DINNELL (TX No. 24055405)