UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER             MDL NO. 07-1873
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION            SECTION "N" (5)
           JUDGE ENGELHARDT
           MAG. JUDGE CHASEZ

THIS DOCUMENT RELATES TO:
ALL CASES ("Louisiana Plaintiffs")

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT UNITED STATES' REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS THE REMAINING FTCA CLAIMS OF ALL
"LOUISIANA PLAINTIFFS," OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT (Rec. Doc. 16598)**

In their opposition to the United States' motion, Louisiana Plaintiffs rely on stale legal theories, revisit unrelated rulings, and promise as yet undiscovered support for their position – all the while ignoring the facts gathered over the past two years of discovery.[1] First, with respect to the FTCA's misrepresentation exception, Plaintiffs concede that some of their claims directly stem from alleged government misrepresentations.[2] Plaintiffs' allegations that the government failed to warn them about the EHUs and suppressed and withheld information from the public that the EHUs contained formaldehyde are inextricably linked with an alleged misrepresentation and must be barred. In an attempt to save the remainder of their claims, Plaintiffs argue that the government owed a variety of other independent duties (beyond providing information), none of which is supported by Louisiana law. Because any breach of the duty that would be owed by a private person who owns immovable property or premises must be based on an alleged failure to provide information, the actions must be dismissed in their entirety under the misrepresentation exception.

Second, Plaintiffs fail to offer any facts showing gross negligence or willful and wanton misconduct by FEMA. The totality of the circumstances (as pleaded and in the factual record) demonstrates that FEMA exercised some degree of care, undermining any theory of gross negligence. Moreover, despite Plaintiffs' emphasis on individualized Plaintiff-specific issues, they have failed to identify any pleading of individualized allegations, or offer a single fact to show a genuine issue as to whether any individual Plaintiff may have been treated with gross negligence.

Instead, they argue that the government treated *all* Plaintiffs with gross negligence, relying on a purely legal argument, conclusory statements devoid of record support, and their own allegations.

---

[1]/ Plaintiffs' argument that the government considered legal strategy in its deliberations regarding how to respond to the issue of formaldehyde in EHUs does not make an alleged misrepresentation less essential to their claims, nor does it show that the government subjected any Plaintiff to gross negligence or willful and wanton misconduct. The key facts are not in dispute. Following the hurricanes, FEMA acquired shelters from third parties, provided the shelters to hurricane victims, learned that the shelters might have problems with formaldehyde, and took some level of responsive action. Plaintiffs' own allegations and the factual record conclusively establish that FEMA did not act with a complete and total lack of care (the standard for gross negligence) in responding to formaldehyde in EHUs.

[2]/ Plaintiffs concede that two specific claims asserted in the Third AMC (Rec. Doc. 4486), ¶ 209(b) and ¶ 209(e), specifically "deal with the [government's] failure to adequately communicate information." *See* Pls.' Mem. at 10. (Rec. Doc. 18714). Irrespective of any argument, these specific claims clearly are barred by the exception.

1

Under Plaintiffs' theory, no matter what the factual record shows in terms of FEMA's response actions, the actions must have been the result of improper motivations (*i.e.*, litigation concerns), and, thus, FEMA had to have been grossly negligent. Plaintiffs ignore that, after numerous depositions of FEMA employees (including the recipients of e-mails from agency counsel), they cannot cite any evidence showing a factual nexus between litigation concerns voiced by agency counsel and a real detrimental impact on the government's action/inaction.[3]

At best, Plaintiffs seek to create a genuine issue as to whether FEMA was proactive enough in responding to the issue of formaldehyde in EHUs and whether it took FEMA longer than it should have to respond – but these facts cannot establish gross negligence under Louisiana law. Isolated e-mails did not deter responsive action taken shortly after initial concerns were raised regarding formaldehyde in EHUs. Considering the totality of the circumstances, the factual record does not reflect that FEMA treated any Plaintiff with the complete disregard required to for gross negligence.

**I. Plaintiffs' FTCA claims necessarily rely on an alleged failure to provide information.**

Plaintiffs argue that, although their overall claims "partially overlap[ ] with alleged misrepresentations," the gravamen of these claims is a delayed response to the issue of formaldehyde in EHUs rather than a misrepresentation."[4] Pls.' Mem. at 8. What they fail to grapple with, however, is

---

[3]/ Plaintiffs incorrectly argue that, where a claim may fall outside the protections of the FTCA's discretionary function exception, it is per se actionable. The discretionary function exception has nothing to do with the issues in this motion. Contrary to Plaintiffs' assertion, this Court did not cloak any claims as "colorable" such that they are immune to all other jurisdictional or substantive arguments. *See* Pls.' Mem. at 4. That a claim may fall outside the FTCA's discretionary function exception does not mean that it is not subject to dismissal or summary judgment on other grounds. Moreover, the Court stressed that its discretionary function exception ruling was addressing a "threshold inquiry" at an "early juncture." *See* Order and Reasons (Rec. Doc. 717). After extensive discovery, Plaintiffs offer nothing more than the same recycled, unrelated legal arguments relating to the discretionary function exception in an attempt to maintain their claims. That their opposition repeats the arguments made during the discretionary function briefing crystallizes the lack of factual support for their remaining claims.

[4]/ Plaintiffs plainly admit that they have alleged government misrepresentations in this case. Pls.' Mem. at 7 (referencing the "misrepresentations alleged by Plaintiffs"). In an attempt to save their claims from dismissal, they merely alter their description – the same claims that, prior to this motion, were characterized as being based on the "deliberate withholding of information about formaldehyde health risks," are now characterized as being based on the "choice not to respond promptly to a known health crisis." *Compare* U.S. Ex. B at 13, *with* Pls.' Mem. at 6. Plaintiffs also seek to create a false distinction between action and inaction under the misrepresentation exception, arguing that their claims are about "strategic silence" and "deliberate inaction," not "action" or "overt falsification." Pls.' Mem. at 2. Well-settled case law rejects such a distinction. *See JBP Acquisitions, LP v. United States*, 224 F.3d 1260, 1265-66 (11th Cir. 2000) ("the failure to communicate, as well as direct communication, is encompassed by the

that their FTCA actions cannot proceed unless they are based on the breach of independent state law tort duties beyond the duty to provide them with information. A private person who owns immovable property or other premises only owes a duty when the property or premises presents an unreasonably dangerous condition (defect) that causes an unreasonable risk of harm. *See David v. Reon*, 520 So.2d 820, 822-23 (La. App. 3 Cir. 1987). Once an owner knows (or should know) of an unreasonably dangerous risk of harm/injury to persons on the premises, the owner has two alternative ways to discharge his duty – by either correcting the condition *or* warning of its existence within a reasonable amount of time. *See Dauzat v. Curnest Guillot*, 995 So.2d 1184, 1186 (La. 2008). At the core of Plaintiffs' claims is the notion that, had they been informed about formaldehyde in EHUs, they would have declined the offer of free shelter and either found other housing or left the area. Thus, even assuming that Louisiana Plaintiffs were to prove that the levels of formaldehyde in EHUs constituted an unreasonably dangerous condition that would reasonably be expected to cause injury to one using ordinary care (thereby triggering a duty on the part of the owner of the EHUs), Plaintiffs ***cannot*** establish a breach of duty without showing there was a failure to adequately warn (provide information) about the condition on the premises. Yet, in Plaintiffs' view, if persons were injured, the government must be at fault. As a result, they seek to impose duties (allegedly not involving misrepresentations) on the government simply because it is the government – this is not permissible under the FTCA. A private person in like circumstances (who voluntarily allows his property or premises to be used as emergency shelter) would not have a duty under Louisiana tort law to continue to provide housing, to provide alternative housing, to relocate shelter occupants, to offer or provide rental assistance, to offer or provide other forms of housing assistance, or to generally respond to a purported public health crisis. *See* Pls.' Mem. at 9 (citing Third AMC ¶ 209). Nor would a private person in like circumstances have a general "safety mandate" or a duty to ensure that his lawyers not pose legal considerations during

---

misrepresentation exception"). The exception applies to bar subject-matter jurisdiction regardless of whether it involves an act of commission (*i.e.*, provision of information) or omission (*i.e.*, failure to provide information). *Id.*

3

internal deliberations.[5]  *Id*.  To the contrary, a claim could not survive *without* the fact that the private person failed to communicate adequate information (*i.e.*, the private person could not be held liable for injuries if it had provided a warning).[6]  Because the causal chain leading to potential government liability hinges on the government's alleged failure to notify Plaintiffs about formaldehyde in EHUs, Plaintiffs' actions must be dismissed in their entirety.  A failure to communicate is essential to their ability to show there was a breach of an applicable duty under Louisiana tort law.

**II.  Plaintiffs' gross negligence claims are subject to dismissal or summary judgment.**

Plaintiffs have failed to meet their burdens to plead sufficient facts to support their gross negligence claims, and to set out specific facts showing a genuine issue for trial.  They cite the importance of individualized considerations, yet, have wholly failed to *plead* any individualized facts to support plausible gross negligence claims; and they have failed to *specify* any facts to rebut the government's motion for summary judgment.  In its opening brief, the government demonstrated the absence of any facts supporting gross negligence, stating "[t]he current factual record is devoid of any admissible evidence that the United States treated any Plaintiff in this litigation with the requisite willingness that extreme harm would occur."  Plaintiffs have responded to this challenge with silence.

In response to the government's motion to dismiss under Rule 12(b)(6), Plaintiffs failed to identify any *pleaded* Plaintiff-specific facts to support a gross negligence claim – there are no facts describing specific complaints about formaldehyde, interactions with FEMA, or any other facts

---

[5]/ Plaintiffs' additional argument that a governmental operational goal or mandate shapes the scope of the government's duty in an FTCA action is contrary to well-established law.  *See Richards v. United States*, 369 U.S. 1, 11 (1962) (the FTCA cannot be read to create or enlarge substantive causes of action that do not already exist under state law).  As a result, Plaintiffs' attempt to impose what they describe as "*Indian Towing* duties" on the government based on the policy pronouncements of FEMA officials is without merit.  *See* Pls.' Mem. at 11; *Johnson v. Sawyer*, 47 F.3d 716, 728 (5th Cir. 1995) (discussing *Indian Towing* and holding that the duty owed in an FTCA action "is at bottom a question of state law").  The FTCA's waiver does not apply "where the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own affairs."  *See Hornbeck v. United States*, 569 F.3d 506, 509 (D.C. Cir. 2009).  Thus, internal policies, goals, procedures, or rules discussing federal action (although they may be relevant to the discretionary function exception) cannot create duties under the FTCA.

[6]/ *Wells v. United States*, 655 F. Supp. 715, 724 (D. D.C. 1987) (barring claims based on the government's alleged failure, after learning of lead pollution, to take action to monitor, evaluate, regulate, and communicate knowledge of public health risks and hazards); *Dyer v. United States*, 96 F. Supp.2d 725, 737-38 (E.D. Tenn. 2000) (barring claim that government deliberately withheld information about the hazards from toxic chemicals at a government facility).

sufficient to show that their gross negligence claims should not be dismissed.[7]  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); U.S. Ex. A (listing LA actions).  Although the Court has held that application of the FTCA's discretionary function exception may differ from Plaintiff to Plaintiff, Plaintiffs cannot find shelter in that proposition with respect to discharging their burden to show they have adequately pleaded facts sufficient to sustain any individualized gross negligence claims.  Additionally, after having two months to respond to the government's motion for summary judgment, and with the benefit of years of discovery, Plaintiffs have not set out any facts showing a genuine issue for trial.  Plaintiffs contend they can come forward with affidavits and other discovery to establish such facts, but it is too late.  It was their obligation to set out such facts in their opposition.

Plaintiffs have gathered over 21,000 Plaintiff Fact Sheets, the government has produced over 200 FEMA IA Files, and the parties have deposed approximately 50 class representatives and nearly a dozen bellwether plaintiffs.  Yet, in response to the government's motion, Plaintiffs could not cite to a single *individualized* fact (through deposition testimony, affidavit, or otherwise) that reflects a legally significant difference among various Plaintiffs' gross negligence claims, nor have they cited any facts that meet the standard under Louisiana law for application of the doctrine to any Plaintiff.  *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (requiring that Plaintiffs "identify specific evidence in the record, and articulate" precisely how that evidence supports their claims).  As set forth below, because the pleaded and undisputed facts show the government took action to respond to formaldehyde in EHUs in an attempt to benefit *all* EHU occupants, Plaintiffs' *generalized* gross negligence claims also are also subject to dismissal or summary judgment.

**Plaintiffs have failed to sufficiently plead generalized gross negligence claims.**  Even if the Court were to allow Plaintiffs to plead gross negligence generally, they have failed to plead factual allegations that show how government gross negligence is plausibly the cause of their alleged injuries.

---

[7]/ Although Plaintiffs state that some Plaintiffs may have voiced complaints or concerns about formaldehyde to FEMA, the evidence shows that, as of June 2006 (potential discretionary function cutoff date), FEMA had only received *six* complaints from Louisiana occupants and the government responded.  U.S. SF ¶ 18.

5

Accepting Plaintiffs' allegations as true, they have not alleged facts that rise above simple negligence. Plaintiffs argue that their conclusory allegation that the government was "grossly negligent, reckless, willful and/or wanton" is supported by a number of factual allegations, including the fact that FEMA received the first occupant complaints regarding formaldehyde in EHUs in May and June 2006 (Third AMC ¶ 180) and did not commence testing EHUs until September and October 2006 (Third AMC ¶ 52).[8] Even if such a delay were unreasonable, it is not "entire absence of care."

The insufficiency of Plaintiffs' gross negligence allegations is underscored by their own characterizations. According to Plaintiffs, their allegations "when viewed as a whole and in a light most favorable to Plaintiffs, refer to *delays* in testing and resident notification which were provoked by FEMA" and show that "FEMA failed to respond *for a period of months*." Pls.' Mem. at 2, 15 (emphasis added). Even accepting these allegations as true, a *delayed response* does not amount to a grossly negligent response under Louisiana law. *See Reynolds v. Louisiana Plastic*, 26 So.3d 149, 153 (La. App. 2 Cir. 2009) (finding that even if there was a delay, it would not constitute gross negligence). FEMA voluntarily chose to provide emergency shelter to disaster victims and soon was faced with a novel crisis amidst no guidelines. Though FEMA may have been deliberate or uncertain in how to respond, the alleged facts do not make a plausible showing that FEMA intended to cause harm. *See Cates v. Beauregard Elec., Inc.*, 316 So.2d 907, 916 (La. App. 3 Cir. 1975). The case cannot proceed where Plaintiffs' allegations, if true, cannot show FEMA was grossly negligent.

**Plaintiffs have failed to create a genuine issue of material fact.** Focusing solely on the generalized gross negligence allegations of all Plaintiffs, they attempt to manufacture an issue where there is none, relying on unidentified yet "discovered evidence," out of context statements, and their

---

[8]/ Plaintiffs argue that they have alleged FEMA had early knowledge of formaldehyde dangers and travel trailer composition (Pls.' Mem. at 14 n.23 (citing Third AMC at 36-39, 47)), but these allegations deal with the knowledge of the manufactured housing industry and HUD. It is FEMA's knowledge that is relevant to this litigation. *See Wyler v. Korean Air Lines, Inc.*, 928 F.2d 1167, 1172 (D.C. Cir. 1991) ("Indeed even within FAA imputation of knowledge between different FAA operations may not be justified"); *United States v. Schiffer*, 831 F. Supp. 1166, 1204 n.45 (E.D. Pa. 1993), *aff'd*, 31 F.3d 1135 (3rd Cir. 1994) ("knowledge by other federal agencies such as the Army . . . cannot be imputed to the INS"). Plaintiffs filed claims with FEMA and allege that **FEMA** employees were grossly negligent. The

own allegations. It was Plaintiffs' burden in responding to the government's motion to come forward with specific facts that establish a triable issue as to the United States' alleged gross negligence.[9] They have not met this burden. While there may be factual issues that remain disputed between the parties (*e.g.*, the "safe" level of formaldehyde in a residence), Plaintiffs have not identified a genuine issue as to *any material fact* that would establish that the government acted with an extreme and utter absence of care. Thus, summary judgment is appropriate.[10]

Plaintiffs argue, without evidentiary support, that "[t]he deliberate decision to prioritize concerns for litigation strategy above concerns of public health and safety" amounts to gross negligence. *See* Pls.' Mem. at 19. According to Plaintiffs, if there was any delay on the part of FEMA in responding to an unexpected crisis involving products it did not manufacture, it must have been caused by FEMA's counsel, and, thus, FEMA was grossly negligent. But, they fail to point to *any evidence* to show a factual nexus between FEMA counsel's concerns and comments about anticipated/pending litigation and the nature of FEMA's response. On the contrary, the undisputed facts establish that FEMA's response was the product of an evolving appreciation of occupant health concerns and that officials were not constrained from acting due to counsel's comments.[11]

Plaintiffs argue that OSHA conducted a number of workplace safety/regulatory compliance tests (at the behest of contractors) involving a number of new, sealed, unoccupied EHUs in October

---

entire knowledge of the federal government cannot be imputed to FEMA employees in judging whether they were aware of an unreasonably dangerous condition and were grossly negligent.

[9]/ Conclusory allegations and unsubstantiated assertions are insufficient to defeat a summary judgment motion. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To avoid summary judgment, a non-movant must "come forward with competent evidence, such as affidavits or depositions, to buttress his claims." *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (hearsay evidence and unsworn documents do not qualify).

[10]/ *Because Plaintiffs failed to respond with a separate and concise statement of material facts that present a genuine issue, all material facts in the United States' motion must be deemed admitted.* L.R. 56.2.

[11]/ Plaintiffs argue that an excerpt from the deposition of FEMA employee David Garratt evinces how overarching litigation strategy drove FEMA's response to the formaldehyde issue and further argue, without producing any support, that this testimony "just brushes the surface." Pls.' Mem. at 17. In the excerpt, Mr. Garratt testifies that, according to e-mail records, FEMA lawyers wanted to delay the testing of EHUs. *Id*. However, e-mail from June 27, 2006, reflects that Mr. Garratt made the decision to move past any objections from counsel to "mission assign EPA to to [*sic*] a full assessment of the formaldehyde problem, and make recommendations," he also made clear, "*Agree that you should not wait to post notices*." U.S. Ex. 53 (emphasis added); *see also* U.S. Ex. 52, 96:18-97:20. Further, Rec. Doc. 2505 at 6-9 sets forth *in detail* how FEMA moved past any concerns voiced by counsel.

2005 in Mississippi; but ignore that the testing showed that airing out and venting sealed units reduced formaldehyde to permissible levels for workers who were working in new, sealed, unoccupied EHUs each and every work day.[12] There is no evidence that indicates that this testing raised any red flags at FEMA regarding unreasonably dangerous *occupant* exposures to formaldehyde in *occupied and vented* EHUs. While Plaintiffs argue that FEMA should have been proactive and "connected the dots," this is a product of hindsight bias – there is no evidence indicating that FEMA employees contemporaneously perceived any danger to occupants during this timeframe and certainly no evidence that they knew occupants could be seriously harmed but simply did not care.[13] Regardless of the exact date FEMA may have learned of potential formaldehyde health effects on occupants in the EHUs, FEMA took a programmatic and comprehensive response within a matter of months. There is certainly no evidence showing a *complete* absence of care by FEMA.

The first resident concern raised about formaldehyde in occupied units occurred in mid-March 2006 and involved an occupant in Mississippi.[14] U.S. SF ¶ 17. Plaintiffs failed to set out any facts suggesting an earlier complaint by any disaster victim, nor any facts to rebut the following:

> In March 2006, FEMA encouraged all EHU occupants (including Louisiana occupants), through the news media, to air out and vent their EHUs and to call the maintenance number if there were problems. FEMA also asked its contractors what they were doing about the possibility of

---

[12]/ A March 2006 e-mail from a FEMA occupational safety employee reflects concern as to why the Mississippi OSHA tests had not previously been provided to the occupational safety office. Drawing a distinction between units that have been made ready for occupancy and units being entered by workers at staging areas, he remarked that "the levels were high at the staging area . . . (where our staff work) however, *they were relatively low once they were handed over to the public*." Early occupational concerns involving new, sealed, unoccupied EHUs simply did not trigger concerns about vented EHUs that had been made ready for occupancy. U.S. Ex. 27 (emphasis added).

[13]/ Plaintiffs have failed to come forward with any evidence that FEMA had ever had problems with formaldehyde in its past experiences with travel trailers and other forms of EHUs. Given its successful use of these types of EHUs in the past, FEMA could not have expected that units, presumably built to industry standards, could potentially contain unreasonably dangerous levels of formaldehyde. *See* U.S. SF at 3 n.2 (citing U.S. Ex. 9 (describing how comprehensive research shows that, during the three decades or more prior to Katrina, air quality problems had never been among the many concerns and complaints occupants had voiced about EHUs)). Similarly, without factual support, Plaintiffs argue that "FEMA had been aware for years of the dangers of formaldehyde." Pls.' Mem. at 10. Imputation of formaldehyde knowledge from other arms of the federal government to the FEMA emergency managers who were making decisions in the context of the growing crisis is not appropriate. *See supra* at n. 8. Further, Plaintiffs' argument that there is evidence suggesting EHU occupants were exposed to levels at or near occupational levels misses the mark. This line of argument ignores the fact that occupational levels are often set based upon an entire work lifetime of exposure and do not correlate to non-occupational settings. *See* Ex. BB.

[14]/ It is pure supposition whether one complaint in the context of thousands of distributed EHUs (following the successful use of EHUs for decades without air quality problems) was sufficient to put the government on notice that the EHUs could potentially be unreasonably dangerous for occupants.

formaldehyde in EHUs and assessed whether they were airing out units prior to occupancy. By late March 2006, FEMA's occupational safety office did its own occupational testing (results not available until May 2006) of sealed, unoccupied units and recommended that staging area workers *and occupants* be told to air out units. By May 2006, FEMA officials were attempting to put in place a contract for formaldehyde testing of EHUs. In June 2006, FEMA decided to prepare its own formaldehyde brochure (U.S. Ex. 54) for the occupants of EHUs and these brochures (approx. 200,000) were distributed between July and September 2006. Also in June 2006, FEMA engaged the EPA and ATSDR to independently test EHUs. After encountering logistical difficulties, testing began in September 2006.

U.S. SF ¶¶ 21-25, 30-35. These undisputed facts depict a government response full of activity. Though there may have been some delays and errors in judgment, the record does not support a finding that FEMA emergency managers exhibited a complete lack of care in dealing with this issue.

Plaintiffs' invocation of fragments of evidence considered by the Court in connection with the discretionary function exception proceedings is unavailing. Plaintiffs have not pointed to any evidence of a factual nexus between attorney concerns and actual delays in FEMA's response.[15] That there were delays in responding to this unexpected crisis is not surprising given the facts that the potential hazard was caused by someone else's product, the uncertainty of the situation, confusion over who would be in charge of the response, conflicting reports, and disaster conditions. *See* U.S. Ex. AA, CC (discussing the inherent delays associated with third party warnings and agreeing that the July 2006 brochure contains key elements of a good warning). Plaintiffs have deposed numerous FEMA personnel involved in the agency's response to the issue of formaldehyde in EHUs and have had a full opportunity to ask them about the attorneys' litigation concerns. Plaintiffs failed to come forward with *any* testimony that indicates FEMA emergency managers substantively changed their formaldehyde response, consciously engaged in delay tactics, or altered their approach in an attempt to shield the government from legal

---

[15]/ A FEMA attorney e-mail cited by Plaintiffs in the Third AMC (¶ 183) dated June 16, 2006, states "OGC has advised that we do not do testing," yet, the factual record shows that later that same month, FEMA emergency managers overrode any objections and made the decision to press forward with testing. *See supra* at n. 11. The earliest e-mails cited by Plaintiffs (Rec. Doc. 2001 at 19) from a FEMA attorney having *anything to do with formaldehyde* were in March 2006 (Plaintiffs failed point to any attorney communications regarding formaldehyde earlier than this date); yet, in less than three months, FEMA emergency managers were preparing hundreds of thousands of formaldehyde brochures for disbursement to all EHU occupants across the Gulf South. FEMA attorneys' concerns (mostly voiced in June 2006 after suit filed in May 2006) about anticipated and pending litigation did not prevent FEMA employees from exercising care in how they responded to formaldehyde in EHUs.

9

liability.[16]  Ultimately, the extent of counsel's involvement is not material.  Considering the totality of the circumstances, FEMA did exercise *some* care.

Formaldehyde in EHUs was a difficult problem and there was no easy solution.  Had FEMA removed Plaintiffs from EHUs they would have been left homeless.  Had FEMA stopped issuing EHUs, homeless disaster victims would have had nowhere to go.  Even if FEMA officials had "stuck their heads in the sand" for some period of time regarding the issue, as this Court has stated, any inaction was "temporary."  Order and Reasons (Rec. Doc. 2621).  Plaintiffs focus on alleged inaction during a limited time period and argue that their claims only relate to this abbreviated yet undefined period, but the Court must consider the totality of the circumstances in assessing whether the conduct at issue could amount to gross negligence.  *See Brooks v. City of Jennings*, 944 So.2d, 768, 774 (La. App. 3 Cir. 2006).  It is indisputable that FEMA took remedial steps and exercised care during the months after the first health complaints surfaced.  These acts, including disbursement of information brochures and testing of mitigation techniques, sought to help reduce the levels of formaldehyde faced by EHU occupants.  Plaintiffs even concede that it is the "promptness" of FEMA's response that gives rise to government liability.  *See* Pls.' Mem. at 6.  Yet, even if some FEMA employees did not react with the speed and sensitivity expected, even if some employees made troubling comments, and even if FEMA could have and should have acted with more aggression or urgency – this conduct, while unfortunate, does not rise to the complete lack of care necessary to establish gross negligence.  Because Plaintiffs have not come forward with evidence sufficient for a reasonable trier of fact to return a verdict for Plaintiffs on gross negligence, summary judgment is appropriate.

Dated:  January 21, 2011                                              Respectfully Submitted,

TONY WEST                                                                   HENRY T. MILLER
Assistant Attorney General, Civil Division              ADAM BAIN
                                                                                        Senior Trial Counsel

---

[16]/ Although Plaintiffs also accuse FEMA attorneys of subsequently skewing the ATSDR's interpretation of test results, such claims are belied by the undisputed testimony of Cmdr. Joseph Little, the ATSDR employee assigned to the project.  U.S. Ex. 49 at 8:9-14, 89:20-24, 92:14-23, 154:1-3 (discussing why he did not use ATSDR MRLs), 148:18-23, 149:8-13, 150:17-20 (FEMA wanted broader testing, did not restrict testing or ATSDR analysis).

| | |
|---|---|
| J. PATRICK GLYNN<br>Director, Civil Division, Torts Branch | MICHELLE BOYLE<br>JONATHAN WALDRON |
| DAVID S. FISHBACK<br>Assistant Director | Trial Attorneys |
| OF COUNSEL: | *s/ Adam M. Dinnell*<br>ADAM M. DINNELL (TX No. 24055405) |
| JANICE WILLIAMS-JONES<br>Senior Trial Attorney<br>FEMA/DHS | Trial Attorney<br>United States Department of Justice<br>Civil Division, Torts Branch<br>P.O. Box 340, Ben Franklin Station<br>Washington, DC 20004<br>Telephone: (202) 616-4211<br>E-mail: Adam.Dinnell@usdoj.gov |
| | Attorneys for Defendant United States |

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2011, the foregoing document was filed via the U.S. District Court's CM/ECF electronic filing system and a copy thereof was served upon Liaison Counsel.

*s/ Adam M. Dinnell*
ADAM M. DINNELL (TX No. 24055405)