UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                                        MDL NO. 07-1873
        FORMALDEHYDE PRODUCTS
        LIABILITY LITIGATION
                                                           SECTION "N"  (5)

THIS DOCUMENT RELATES TO
Member Case No. 09-3818

## ORDER AND REASONS

Before the Court are the following cross motions for summary judgment: (1) the Motion

for Partial Summary Judgment on the Duty to Defend (Rec. Doc. 10038), filed by Plaintiff North

American Catastrophe Services, Inc. ("NACS"); and (2) Northfield Insurance Company's Cross-

Motion for Summary Judgment (Rec. Doc. 11579). After considering the memoranda of the

parties and the applicable law, the Court rules as set forth herein.

I.      BACKGROUND

In August 2004, NACS, which was engaged in the business of procuring modular

temporary housing units for FEMA, purchased a commercial general liability ("CGL") insurance

policy from Northfield Insurance Company ("Northfield").  (Exhibit B to Rec. Doc. 10038).

Specifically, after Hurricanes Katrina and Rita in 2005, NACS acted as a broker between FEMA

and modular-home manufacturers in acquiring emergency housing units ("EHUs") for

individuals displaced by the storms. Some residents of those EHUs have since filed suit against

the manufacturers of the EHUs and other involved parties, including NACS.

After being named a defendant in the first of several lawsuits, NACS advised Northfield of the claims asserted against it, and requested that Northfield furnish a defense and pay any liability ultimately found to be due. Northfield disclaimed all liability under the policy with respect to the claims in the underlying lawsuits[1] and continues to refuse to undertake NACS' defense of these claims. Because Northfield refused to defend NACS in these lawsuits, NACS filed this declaratory judgment action. Now, NACS asserts that there are no material facts in dispute which would absolve Northfield of its duty to defend NACS in this litigation. Northfield, on the other hand, asserts that certain exclusions in the relevant insurance policies unambiguously exclude any coverage for the underlying plaintiffs' claims of alleged exposure to formaldehyde.

## II.     ARGUMENTS OF THE PARTIES

### A.     NACS

NACS asserts that insurers are obligated to furnish a defense unless a complaint unambiguously excludes coverage, and courts liberally construe complaints to determine whether any one claim triggers the duty to defend. *Yount v. Maisano*, 627 So.2d 148, 153 (La. 1993). NACS argues that because Plaintiffs' claims for damages due from alleged exposure to formaldehyde in EHUs are potentially valid causes of action against it, Northfield should be required to honor the insurance agreement and furnish NACS a defense to these claims.

Specifically, NACS asserts that the policy's insuring agreement obligates Northfield to

---

[1]     In both of the underlying cases, the *Sinegar* and *Aldridge* lawsuits, in which NACS is a defendant, the plaintiffs seek damages allegedly resulting from exposure to formaldehyde while living in the EHUs procured by NACS pursuant to its contract with FEMA. The plaintiffs in both suits allege that NACS had actual or constructive knowledge that the EHUs off-gassed formaldehyde, and that extended habitation would expose them to elevated levels of formaldehyde. The plaintiffs further assert that NACS' failure to act reasonably in identifying, selecting, and procuring the EHUs proximately caused their exposure to formaldehyde, and, consequently, their injuries.

defend NACS against any suits seeking damages allegedly resulting from "bodily injury".  The

policy provides primary liability coverage for sums that NACS becomes legally obligated to pay

as damages due to "occurrences" causing "bodily injury" or "property damage."  NACS argues

that the *Sinegar* and *Aldridge* lawsuits can only be characterized as claims for damages that

allegedly stem from occurrences that resulted in personal injuries.  The policy requires

Northfield to defend NACS with respect to any "suit" that alleges any covered "occurrence."

The policy's insuring agreement provides as follows:

> SECTION I – COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE
> LIABILITY
>
> 1. Insuring Agreement
>
> a.      We will pay those sums that the insured becomes legally obligated
>          to pay as damages because of "bodily injury" or "property
>          damage" to which this insurance applies. We will have the right
>          and duty to defend the insured against any "suit" seeking those
>          damages. However, we will have no duty to defend the insured
>          against any "suit" seeking damages for "bodily injury" or
>          "property damage" to which this insurance does not apply… .

(Exhibit D to Rec. Doc. 11578, at NIC000029; Exhibit E to Rec. Doc. 11578, at NIC000114).

NACS asserts that the above disclaimer related to Northfield's duty to defend has no bearing on

whether such a duty ultimately exists.  NACS argues that there is little doubt that, at the very

least, the claims of the underlying plaintiffs disclose the possibility of Northfield's liability under

the policy, which gives rise to a duty to defend NACS.

NACS argues that here, comparing the allegations of the plaintiffs' complaints (See

Exhibits C and D to Rec. Doc. 10038) to the policy language yields to the conclusion that there

are no pertinent material facts in dispute which could relieve Northfield of its duty to defend.

NACS asserts that this Court has concluded that "…Northfield consented to suit within Louisiana and under Louisiana law." (Rec. Doc. 8625). Thus, NACS argues that Louisiana law will govern the interpretation of the insurance policy, including as it pertains to the applicability of the policy's pollution exclusion, which Northfield contends applies here.

While NACS admits that it did not procure a certificate of authority from the Louisiana Secretary of State prior to conducting business in this State, it claims that it was not required to do under subsections (E) and (H) of La. Rev. Stat. 12:302. NACS contends that Northfield knew about the nature and geographical extent of NACS's business operations when it issued the policy. As indicated in the policy's declarations, NACS was engaged in the business of supplying modular units to FEMA when it purchased the policy in August 2004. Because Northfield knew of NACS's business activities in other states, NACS asserts that it would have been understandable had Northfield sought to include a choice of law provision in the policy, especially given the possibility that the object of the insurance contract—the insured risk—might manifest in a state other than Florida. However, Northfield did not include such a provision. Instead, NACS notes that Northfield included two separate clauses in the policy which relate to out-of-state coverage.

The first provision is the Service of Suit Clause, which provides:

SERVICE OF SUIT

> It is agreed that in the event of our failure to pay any amount claimed
> to be due hereunder, we, at your request, will submit to the jurisdiction
> of any court of competent jurisdiction within the United States of
> America and will comply with all requirements necessary to give such
> court jurisdiction and all matters arising hereunder shall be
> determined in accordance with the law and practice of such court. …

(Rec. Doc. 3193-2, p. 73; Rec. Doc. 3193-3, p. 69). In addition to that clause, the policy also

4

contains a Coverage Territory Clause stating that coverage under the policy exists within "[t]he

United States of America (including its territories and possessions)".  (Rec. Doc. 3193-2, p. 33,

57; Rec. Doc. 3193-3, pp. 29, 52).  Although Northfield had the option to contractually

pre-determine which jurisdiction's laws would apply to a dispute arising out of the insurance

policy by including a choice of law, it did not do so.  Based on these clauses, this Court stated as

in its judgment denying Northfield's motion to transfer venue:

> The Coverage Territory Clause, found three times within the policy,
> concedes that coverage under the policy exists with "The United States
> of America (including its territories and possessions)". Likewise and
> perhaps most importantly, the Service of Suit Clause states that "all
> matters arising hereunder shall be determined in accordance with the
> law and practices of" "any court of competent jurisdiction within the
> United States of America." NACS relied upon the words of the contract
> when it filed suit in this Court. …Northfield was aware that it was
> amenable to suit based upon the contract under the laws of the State of
> Louisiana. Northfield, as author of the contract, could have inserted into
> the contract a specific choice-of-law clause requiring the contract to be
> interpreted according to the laws of the state of its choosing; however, it
> did not.

(Rec. Doc. 8625, p. 6, *internal citations omitted*).  Essentially, NACS contends that this Court

concluded that these policy provisions made it unnecessary "…for the Court to engage in a

conflicts of law analysis, as Northfield consented to suit within Louisiana and under Louisiana

law." (Rec. Doc. 8625, p. 6).

However, even if such analysis was necessary, NACS asserts that Louisiana law would

govern interpretation of the policy, including the policy's pollution exclusion (discussed in

further detail, *infra*).  NACS notes that some of the considerations identified in articles 3537 and

3515 will be given more weight than others.  NACS argues that where the insured risk—the

object of the contract—is involved, "the insured should be entitled to the application of the more

beneficial of the conflicting rules because the law is protective of the insured and because the policy which favors the spreading of the risk will often be considered a superior policy by the states involved.*" In re Combustion (I)*, 960 F.Supp. 1056 (W.D. La. 1997) (citing P. Hay, E. Scoles, Conflict of Laws, § 17.34 at 621 (2 ed. 1992)). Here, NACS points out that the insured risk—the object of the contract—spanned the entire Gulf Coast. In addition to being the location of the insured risk, Louisiana's relationship to this dispute arises from numerous other sources, including for example: (1) NACS conducted business here pursuant to its contract with FEMA; (2) the alleged injuries all occurred in Louisiana; (3) the litigation commenced in Louisiana and remains pending in this Court; (4) the plaintiffs are alleged to be residents of Louisiana; and (5) all of the conduct related to NACS's defense of those claims is occurring here.

In contrast to Louisiana's contacts with this dispute, NACS argues that Florida's contacts are derived entirely from the simple fact that NACS is a Florida corporation. NACS asserts that Northfield's narrow focus on the parties to the contract and the place where the administrative activities related to the contract took place is misguided.  Instead, NACS asserts that the principles governing conflicts analysis are not meant for mechanical application based entirely on the relationship of contracting parties, and irrespective of the relationship of the parties involved in a dispute to a contract. *Boutte v. Fireman's Fund County Mutual Inc.*, 06-34 (La.App. 3 Cir. 5/10/06), 930 So.2d 305, 320. NACS admits that Florida has an interest in the regulation of companies domiciled there and contractual obligations into which those companies may enter. However, NACS notes that Florida likely does not have an interest in asserting its laws to interpret an insurance contract entered into by its domiciliary, where it's domiciliary will be protected and benefit by the application of Louisiana law to the contract.  Instead, Louisiana's

6

interests are much more substantial. Louisiana has an "…interest in having localized controversies decided locally."  (Rec. Doc. 8625, p. 4). NACS urges that Plaintiffs in the underlying lawsuits are Louisiana residents who rightfully expect to be protected by this State's laws, including its strong public policy to compensate tort victims.  Louisiana's serious concern for the health and safety of its residents also supports a finding that Louisiana has a genuine interest in this dispute.

Under Louisiana's laws, and, particularly, the Louisiana Supreme Court's decision in *Doerr*, NACS argues that the policy's pollution exclusion does not apply to the claims against NACS in the underlying lawsuits.  In *Doerr*, the Louisiana Supreme Court held that the pollution exclusion was designed to exclude coverage for environmental pollution only. The applicability of a pollution exclusion turns on several considerations:

(1) Whether the insured is a "polluter" within the meaning of the exclusion;

(2) Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and

(3) Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.

NACS asserts that a proper interpretation of a total pollution exclusion is that the "exclusion [is] designed to exclude coverage for environmental pollution only and not for all interactions with irritants or contaminants of any kind." *Doerr v. Mobile Oil Corp., 774 So.2d 119,* 136, (La. 2000).[2]  NACS asserts that regardless of whether formaldehyde can be considered a "pollutant," NACS cannot be considered a"polluter" or "discharger" of pollutants. (Notably,

_____

[2]        This opinion was corrected on rehearing by *Doerr*, 782 So.2d 573.

formaldehyde is not specifically listed in the pollution exclusion of the policy. Moreover, Louisiana courts have not addressed whether formaldehyde is a "pollutant" under *Doerr*.)  In determining whether an insured is a polluter, it is necessary to examine of the nature of the insured's business.  *Doerr*, 774 So.2d at 135. NACS claims that based on the necessary considerations, it is not a polluter.

NACS claims that its  "business" was acting as a broker between FEMA and modular manufacturers. This is not a business pursuit that presents a risk of pollution, and there is not a separate policy covering the disputed claims against NACS. At the time of negotiating and signing the policy, Northfield knew that NACS was not engaged in the type of business that would present any more than an attenuated risk of pollution.  NACS also notes that it has no knowledge of the types of businesses Northfield typically insures.  In order to qualify as a polluter, the insured must be an "active polluter."  *Thomson v. Temple*, 580 So.2d 1133, 1134 (La. App. 4 Cir. 1991); see also *Avery v. Commercial Ins. Co.*, 621 So.2d 184, 190 (La. App. 3 Cir. 1993). In *Thomson*, the court observed that "pollution exclusions are intended to exclude coverage for active industrial polluters, when businesses knowingly emitted pollutants over extended periods of time." *Id.* at 1134. In *Doerr*, the Louisiana Supreme Court approved this reasoning, stating that "there is no history in the development of this exclusion to suggest that it was ever intended to apply to anyone other than an active polluter of the environment."  *Doerr*, 774 So.2d at 127.

**B.    Northfield**

In opposition, Northfield argues that it insured NACS, a Florida company, under policies of insurance issued in Florida that contain a total pollution exclusion that excludes coverage for

8

bodily injury because of "actual, alleged or threatened discharge, disposal, dispersal, seepage, migration, release or escape of 'pollutants'." (Exhibit D to Rec. Doc. 11578, at NIC000030-31; Exhibit E to Rec. Doc. 11578, at NIC000115-16). "Pollutants" is defined to include "fumes". (Exhibit D to Rec. Doc. 11578, at NIC000040; Exhibit E to Rec. Doc. 11578, at NIC000125). Northfield asserts that, under Florida law, total pollution exclusions are applied as written to exclude coverage for losses such as the instant ones.[3]

Contrary to NACS's assertions, Northfield contends that this Court has not determined that Louisiana law governs the interpretation of the policies at issue in this case.  Northfield asserts that the Court only concluded that Louisiana's choice of law provisions will govern to determine whether Florida law applies to a contract negotiated in Florida with a company domiciled in Florida. (Rec. Doc. 8625).  In that respect, Northfield argues that Louisiana's choice of law analysis applicable to contract interpretation[4] mandates that this Court interpret Northfield's policies under Florida law.

Northfield asserts that articles 3515 and 3537 of the Louisiana Civil Code focus the choice of law analysis on the state with the most significant contacts with the contract. Northfield asserts that, here, that state is Florida as the policies were brokered, negotiated, and delivered there. Northfield asserts that the fact that torts may have occurred elsewhere (in

---

[3]       Notably, under Louisiana law, the total pollution exclusion has been applied pursuant to strict guidelines and a fact-intensive inquiry established by the Louisiana Supreme Court in *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 3/16/01), 782 So.2d 573. To the contrary, under Florida law, the exclusion has been upheld as unambiguous and applied as written to bar coverage without any regard to active versus non-active polluters or for the alleged type of "pollutant" at issue.  See *Deni Associates of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So.2d 1135, 1138 (Fla. 1998).

[4]       Insurance coverage disputes are contract issues governed by the choice of law articles specific to contracts. *Levy v. Jackson*, 612 So.2d 894, 897 (La. App. 4 Cir. 1993).

multiple states) has no affect on this.  Here, Northfield asserts that all the pertinent contacts are in Florida. For example, Northfield notes that the case concerns coverage issued to a Florida corporation by an insurer domiciled in Iowa with its principle place of business in Minnesota. The policies were negotiated, brokered, and executed in Florida to a Florida corporation whose principal place of business is in Florida. Any proceeds payable under the policy will be delivered in Florida.

Northfield next asserts that Louisiana's choice of law provisions confirm that Florida law governs Northfield's obligations under the relevant policies.  If Florida law did not govern, Northfield could have conflicting obligations to NACS for the same alleged acts merely because the allegedly injured parties reside in different states (i.e., Texas, Mississippi, Louisiana, and Alabama).  Northfield notes that interpreting its policies under several states' laws could result in contradictory and irreconcilable obligations under the very same policies for the same alleged injuries, which could cause confusion and produce inconsistent results.

Northfield asserts that, under Florida law, the total pollution exclusion unambiguously excludes coverage for these claims. See *Deni*, 711 So.2d at1138 (finding the total pollution exclusion to be clear and unambiguous). Thus, Northfield argues that, because Plaintiffs' alleged injuries were caused by formaldehyde fumes, the Northfield policy does not apply, based on the Total Pollution exclusion located therein.

Northfield contests that this Court has already determined that Louisiana law governs its coverage obligations under the policies.  Next, as for NACS' attempt to point to the other policy provisions (Service of Suit clause and Territory clause) to suggest that Northfield consented to the application of Louisiana law, Northfield asserts that the Service of Suit clause is merely a

choice of forum clause  - not a choice of law clause - as it states that Northfield will submit to the jurisdiction of any court of competent jurisdiction in the United States.  As for the Coverage Territory clause, Northfield argues that it merely extends coverage to the insured for certain occurrences that could take place within the defined coverage territory.  It does not contemplate the substantive law governing those contractual obligations.

Last, Northfield notes that the dispute in this litigation pertains to whether NACS is entitled to a defense or indemnity for the underlying actions - it is completely separate and unrelated to the interests of the underlying plaintiffs. This case only seeks a determination of who will fund that recovery - NACS or its insurer, Northfield.

## III.    LAW AND ANALYSIS

First, the Court notes that its ruling on the venue issue did not and does not dictate that Louisiana law should be used to interpret the insurance policy in this case.  While the Court declined Northfield's request to transfer this case to the Middle District of Florida, it stated, "it is not certain the laws of Florida would thus necessarily apply in this case." (Rec. Doc. 8625, p. 5). This clearly indicates that the Court was not making a ruling on that issue at that time. The Court concluded in that decision that the case would not be transferred and that Louisiana's conflicts laws would be used to determine what state's law applies to the interpretation of the Policy.

Our choice-of-law provisions are set forth in the Civil Code, and provide guidance as to which states' law should apply. Relevant to choice-of-law issues in contract interpretation is La. C.C. art. 14 which provides:

> Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code.

11

Because there are no specific statutory choice of law rules applicable in this case, we examine

the general choice of law rules set forth in the Code. Under La. C.C. art. 3515, the Louisiana

conflicts of law provides:

> Except as otherwise provided in this Book, an issue in a case having
> contacts with other states is governed by the law of the state whose
> policies would be most seriously impaired if its law were not applied to
> that issue.

> That state is determined by evaluating the strength and pertinence of the
> relevant policies of all involved states in the light of: (1) the relationship
> of each state to the parties and the dispute; and (2) the policies and needs
> of the interstate and international systems, including the policies of
> upholding the justified expectations of parties and of minimizing the
> adverse consequences that might follow from subjecting a party to the law
> of more than one state.

Further, La. C.C. art. 3537 provides:

> Except as otherwise provided in this Title, an issue of conventional
> obligations is governed by the law of the state whose policies would be
> most seriously impaired if its law were not applied to that issue.

> That state is determined by evaluating the strength and pertinence of the
> relevant policies of the involved states in the light of: (1) the pertinent
> contacts of each state to the parties and the transaction, including the place
> of negotiation, formation, and performance of the contract, the location of
> the object of the contract, and the place of domicile, habitual residence, or
> business of the parties; (2) the nature, type, and purpose of the contract;
> and (3) the policies referred to in Article 3515, as well as the policies of
> facilitating the orderly planning of transactions, of promoting multistate
> commercial intercourse, and of protecting one party from undue
> imposition by the other.

In *Holcomb v. Universal Insurance Co.*, 93-1424 (La.App. 3 Cir. 6/1/94), 640 So.2d 718,

*writ denied*, 94-1740 (La.10/7/94), 644 So.2d 643, a case cited by Northfield, an automobile

accident occurred in Louisiana between Arkansas plaintiffs and Louisiana defendants. After

settling with the defendants and their insurer, the Arkansas plaintiffs sought coverage for

uninsured motorists under their own Arkansas policy. In finding that Arkansas law would be controlling in that instance, the court stated:

> The action under consideration herein is likewise a matter of contract interpretation. The insurance policy herein was entered into between an Arkansas insurance company (Universal) and an Arkansas resident/domiciliary (Bradshaw) to provide coverage on a vehicle registered, titled and garaged in Arkansas. That policy is being sued on by other Arkansas residents/domiciliaries seeking coverage under that contract (policy) for damages they allegedly sustained. The only Louisiana contacts are the heretofore released tortfeasor and the site of the accident. Neither is relevant to the issues to be decided herein. No Louisiana resident or company is a party to this action; and, inasmuch as a complete release has been executed in favor of all Louisiana parties, the outcome of this action will not affect any policy or party in this state.

*Id.* at p. 7, 640 So.2d at 722.  In *Harrison v. R.R. Morrison & Son, Inc.*, 37,992 (La.App. 2 Cir. 12/10/03), 862 So.2d 1065, *writ denied*, 04-0101 (La.3/19/04), 869 So.2d 857, a similar case also cited by Northfield, at issue was the law that should be applied to an insurance contract that contained a pollution exclusion. The court stated:

> Federated Mutual argues that our court should apply Mississippi law and not Louisiana law in this case. We agree with Federated Mutual's argument and find that the law of the State of Mississippi would be most seriously impaired if its law was not applied in this case. The relationship of the State of Mississippi to each party is stronger than the relationship of the State of Louisiana to each party. The purpose of the insurance policy was to insure the assets and activities of a Mississippi corporation. R.R. Morrison is a Mississippi corporation that has its headquarters in Mississippi, its primary place of business is in Mississippi and an important fact to our court is that the insurance policy was negotiated and executed in Mississippi.
>
> Further, the policies and needs of the interstate system, including the policies of upholding the justified expectations of the parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state, weigh in favor of applying the law of the State of Mississippi.  The insurance policy insures R.R. Morrison's operations in a number of states, but both parties should have expected Mississippi law to apply, considering their strong contacts to that state. If

we were to subject Federated Mutual to the laws of Louisiana, then adverse consequences could occur. The application of Louisiana law to the policy could result in the negation of a contract that Federated Mutual confected under the laws of another state.

In addition, the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of business of the parties, all favor applying the law of the State of Mississippi. As previously stated, the insurance policy was negotiated and formed in Mississippi. R.R. Morrison's primary place of business and headquarters is in the State of Mississippi. The performance of the contract included whatever states in which R.R. Morrison operated, but the State of Louisiana has no connection to the insurance policy other than the fact that it is one location among many that is considered the object of the contract.

Also, the nature, type and purpose of the insurance policy are in favor of applying the law of the State of Mississippi. Louisiana courts have often interpreted insurance policies according to the law of the state where the policy was issued. ... Mississippi has a legitimate interest in regulating insurance policies executed in Mississippi, especially when an insurance policy is issued to a Mississippi business insuring all its activities. The purpose of the insurance policy in this case was to insure all the activities of R.R. Morrison, a Mississippi business. The integrity of an insurance policy is a substantial and real interest. The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests that this is a legitimate public purpose.

*Id.* at pp. 7-9, 862 So.2d at 1070 (internal citations omitted).

Here, as the Court found in *Murden v. Acands, Inc.*, 2005-0319 (La. App. 4 Cir. 2005), 921 So.2d 165, 171-72, the pertinent contacts of Louisiana and Florida to the parties and the transaction strongly favor the application of Florida law to this coverage issue. The policy was negotiated, brokered, and executed in Florida to NACS, a Florida corporation whose principal place of business is in Florida. Any proceeds payable under the policy will be delivered in Florida.  The performance of the contract included whatever states in which the EHUs procured by NACS were distributed. Louisiana has no particular connection to the insurance policy other

14

than the fact that it is one location among many that could be considered the object of the contract since the EHUs NACS procured were delivered across the Gulf Coast. See *Harrison*, 862 So.2d at 1070. If Florida law did not govern, Northfield could have conflicting obligations to NACS for the same alleged acts merely because the allegedly injured parties reside in different states (i.e., Texas, Mississippi, Louisiana, and Alabama). Indeed, the risk of claims against NACS by Plaintiffs residing in multiple states is one of the main reasons why the law of the single state of Florida should govern the policy interpretation: interpreting Northfield's policies under several states laws could result in contradictory and irreconcilable obligations under the very same policies for the same alleged injuries, inevitably causing inconsistent results.

Here, the dispute pertains to whether NACS is entitled to a defense or indemnity for the underlying actions; it is separate and apart from the interests of the underlying plaintiffs. This lawsuit only seeks a determination of who will fund that Plaintiff's recovery (if they are found to be entitled to such recovery): NACS or its insurer, Northfield.

Also, as for NACS' attempt to point to the other policy provisions (i.e., the Service of Suit clause and Coverage Territory clause) to suggest that Northfield consented to the application of Louisiana law, the Court agrees with Northfield that the Service of Suit clause is merely a choice of forum because it states that Northfield will submit to the jurisdiction of any court of competent jurisdiction in the United States. As for the Coverage Territory clause, the Court finds that it merely extends coverage to the insured for certain occurrences that could take place within the defined coverage territory; it does not contemplate the substantive law governing those contractual obligations.

Based on Louisiana's choice of law provisions and prior jurisprudence, Florida law

15

should be applied to the insurance contract at issue. Under Florida law, it seems clear that the total pollution exclusion unambiguously excludes coverage for these claims. See *Deni Associates*, 711 So.2d 1135, 1138 (Fla. 1998) (finding the total pollution exclusion to be clear and unambiguous). Thus, because Plaintiffs alleged injuries were caused by formaldehyde fumes, the Northfield policy does not apply, based on the Total Pollution exclusion located therein. The exclusion should be enforced as written and coverage is precluded.

## IV.   CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the **Motion for Partial Summary Judgment on the Duty to Defend (Rec. Doc. 10038)** is **DENIED.**

**IT IS FURTHER ORDERED** that **Northfield Insurance Company's Cross-Motion for Summary Judgment (Rec. Doc. 11579)** is **GRANTED**.

New Orleans, Louisiana, this 25th day of January, 2011.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**