UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 14, 2010

Lyle W. Cayce
Clerk

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   FEB - 7 2011

LORETTA G. WHYTE
CLERK

No. 09-31131

D.C. Docket No. 2:07-MD-1873 - N
D.C. Docket No. 2:09-CV-2967

IN RE: FEMA TRAILER FORMALDAHYDE PRODUCTS LIABILITY
LITIGATION

RAYMOND BELL, III,

      Plaintiff - Appellant

v.

KEYSTONE RV COMPANY; SHAW ENVIRONMENTAL INC.; FEDERAL
EMERGENCY MANAGEMENT AGENCY,

      Defendants - Appellees

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before JONES, Chief Judge, PRADO, Circuit Judge, and O'CONNOR,
District Judge.*

J U D G M E N T

    This cause was considered on the record on appeal and was argued by
counsel.

    It is ordered and adjudged that the judgment of the District Court is
affirmed.

—————————

    *District Judge of the Northern District of Texas, sitting by
designation.

Fee_____
Process_____
X Dktd_____
CtRmDep_____
Doc. No._____

IT IS FURTHER ORDERED that plaintiff-appellant pay to defendants-appellees the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE:   0 7 FEB 2011

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
Deputy
                              0 7 FEB 2011

New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

# FILED

December 14, 2010

Lyle W. Cayce
Clerk

No.  09-31131

IN RE:  FEMA TRAILER FORMALDAHYDE PRODUCTS
LIABILITY LITIGATION

---

RAYMOND BELL, III,

Plaintiff – Appellant

v.

KEYSTONE RV COMPANY; SHAW ENVIRONMENTAL INC.;
FEDERAL EMERGENCY MANAGEMENT AGENCY,

Defendants – Appellees

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

Before JONES, Chief Judge, PRADO, Circuit Judge, and O'CONNOR, District
Judge.[*]

EDITH H. JONES, Chief Judge:

---

[*] District Judge of the Northern District of Texas, sitting by designation.

No. 09-31131

Appellant Bell challenges the dismissal with prejudice of his case following the district court's denial of his requests either to substitute a new "bellwether"[1] plaintiff or to continue the scheduled trial date. The court's actions were taken in the course of its management of thousands of similar MDL-consolidated suits for allegedly injurious formaldehyde exposure in FEMA trailers following Hurricanes Katrina and Rita. After reviewing all the factors that affected the district court's decisions, we find no abuse of discretion and AFFIRM.

## I. BACKGROUND AND STANDARD OF REVIEW

Raymond Bell and his mother, like thousands of other plaintiffs, filed suit against multiple defendants who participated in the government's program to supply temporary housing for victims of the devastating 2005 hurricanes. These cases were assigned by the Multi-District Litigation Panel for pretrial management by Judge Engelhardt in New Orleans. *In re FEMA Trailer Formaldehyde Prods Liab. Litig.*, MDL. No. 07-1873. After he denied the motion for class certification, the judge systematically began issuing, with counsel's participation, pretrial management orders and trial dates for bellwether trials. Pretrial Order 28, on February 10, 2009, set dates in 2009 and January 2010 for four bellwether cases, each to be prosecuted by a plaintiff against one of the four trailer manufacturers estimated to have the most units at issue in the suits. The parties were to confer on the identity of the plaintiffs in these trials, while the defendant manufacturers were Gulf Stream,

---

[1] "Bellwether" trials typically are used to assess whether a class should be certified, *In re Norplant Contraceptive Prods. Litig.*, 165 F.3d 374 (5th Cir. 1999), or to assess a claim's value for settlement purposes, *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297 (5th Cir. 1998). The latter purpose is relevant here. *See* Part II.A, *infra*.

No. 09-31131

Fleetwood, Forest River, and Keystone. The court insisted that proper venue
be established in the Eastern District of Louisiana for each of these test cases.

On April 6, 2009, the case of Diana Bell, Raymond's mother, was identified
as the bellwether case against Keystone RV, manufacturer of the trailer in which
her family had lived. Both Diana and Raymond had been "nominated" as
bellwether plaintiffs, but the court selected Diana. A formal scheduling order
followed two days later and incorporated an earlier comprehensive trial
management order. Trial was set to occupy two weeks in January 2010.
Pretrial preparation proceeded concerning the trailer that had housed the Bells.

Five months later, in early September, Diana Bell requested, and the court
permitted, her withdrawal as a bellwether plaintiff.[2] Diana then voluntarily
dismissed her case with prejudice on September 23. After consulting with
counsel, the court promptly selected Raymond Bell as the next bellwether
plaintiff in order to maintain the benefit of trial preparation concerning the
particular trailer. On September 29, however, Bell moved to substitute a new
bellwether plaintiff or obtain a continuance of the January trial date. He made
three arguments in support of this dual motion. He asserted he could not take
two weeks off from his job to attend trial; moreover, as the supporter of a two-
year-old child, he could not afford to forego at least one week of income; and the
trial dates would interfere with his participation in Delgado Community College
classes at the beginning of the spring semester. Bell suggested no alternative
trial date that would be convenient. Keystone RV and its co-defendants
questioned how these facts, even if true, could differentiate Raymond Bell's

---

[2] Before she requested to withdraw, Diana had refused, until a court order was entered,
to submit to a medical exam, and had missed the court's deadline to turn over expert reports.

3

No. 09-31131

inconvenience at meeting a trial date from that of any other plaintiff, and it pointed out that he had three and a half months before trial in which to resolve these alleged problems.

On October 1, the court denied Raymond Bell's motions "for all the reasons the undersigned has previously discussed with counsel," but it also stated that, "the Court is willing to appropriately instruct the jury as to any absences/prior commitments of bellwether plaintiff Raymond Bell, III that prohibit him from sitting through the entire trial, such that those absences will be excused."

Raymond Bell really did not want to go to trial in January. He moved on October 12 for a dismissal without prejudice and attached an affidavit asserting as fact the arguments noted above. He expressed doubt about the curative impact of the judge's proposed instruction if he were to be absent from part of the trial. He complained, "[t]he fact that the attorneys herein have been readying themselves for months to try a case on January 11 of next year, while a source of frustration, should not obscure the fact that these claimants are being asked to make what is for them an important re-arrangement of their affairs on extremely short notice." He also opined that were this not an MDL case, the request for rescheduling would not be "unexpected."

At this juncture the court ordered dismissal with prejudice, as requested by the defendants. The court's order states:

> Plaintiffs' counsel should take notice that all plaintiffs who assert claims in this MDL shall be ready and willing to serve as bellwether plaintiffs in this matter, if called upon to do so, as any other plaintiff would be expected to do in an ordinary case. The claims of those plaintiffs who refuse to do so, when called upon, will be dismissed with prejudice. Such has been the case thus far in this litigation and the Court sees no reason to depart from this mode of procedure for Raymond Bell, III.

4

No. 09-31131

As discussed on many previous occasions, the parties have expended much time, effort, and money into readying the case involving the Bell trailer for trial.   When Mrs. Bell chose to voluntarily dismiss her claims with prejudice in lieu of fulfilling her role as the bellwether plaintiff, the Court chose her son, Mr. Bell to fulfill the role, reasoning that the same trailer could be used, which would save the parties from incurring more expenses readying a case involving a different trailer for trial. However, despite the offer from the Court to instruct the jury as to any absences/prior commitments of Mr. Bell that would prohibit him from sitting through the entire trial, he still insists on dismissing his claims in lieu of fulfilling his role as the bellwether plaintiff.  Based on his decision (and that of Mrs. Bell), all the pre-trial work and discovery relating to the Bell trailer is rendered utterly useless.  All of the resources spent in preparing this case for trial have been wasted. Because the parties will now have to choose another bellwether plaintiff, which will involve conducting discovery on an entirely different trailer and readying a completely different case for trial, the claims of Mr. Bell, like those of Mrs. Bell, should be dismissed *with prejudice*.  Not doing so would possibly cause other bellwether plaintiffs to "jump ship" at the last minute; this is obviously a tactic that the Court does not wish to encourage.

Bell has appealed from all three orders:  denial of the motion to substitute another bellwether plaintiff; denial of the motion to continue; and dismissal with prejudice.  All three orders are reviewed for abuse of discretion. *See United States v. Stalnaker*, 571 F.3d 428, 439 (5th Cir. 2009) (noting that courts examine "the totality of the circumstances" in reviewing the denial of a continuance); *United States v. German*, 486 F.3d 849, 854 (5th Cir. 2007) (noting that "serious prejudice" is required to find abuse of discretion on a motion for continuance); *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000) (noting that district courts have broad discretion in scheduling decisions); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 721 (5th Cir. 1995).  We do not speculate on whether

No. 09-31131

the motions to continue or dismiss without prejudice might have had some merit had this been ordinary two-party litigation. The challenge to case administration arose here from the court's obligation to manage thousands of claims against numerous defendants in an efficient and expeditious manner that would best serve justice for both plaintiffs and defendants. That multiparty background heavily influenced the trial court and permeates this court's review.

## II. DISCUSSION

### A. Motion to Substitute Plaintiff/Motion to Continue.

At the heart of the bellwether case approach to handling complex litigation is the court's decision, reached after numerous pretrial conferences with the parties, to select particular plaintiffs' cases whose trials will furnish data that may facilitate settlement of the remaining cases. Judge Engelhardt handled this formaldehyde litigation in the standard fashion by selecting a test case against each of the four prominently involved trailer manufacturers. Of course, in each case, different subsidiary defendants, such as contractors and the United States, would also be involved, but the focus was correctly placed on an attempt to find representative plaintiffs' claims against these four major defendants. When Keystone initially suggested the Bell case as a bellwether, the plaintiff counsels' only objection was that because they were smokers, the Bells' case might not be fairly representative. The court selected Bell over the plaintiffs' alternative choice; this decision has not been challenged on appeal. Either at the time it selected the Bell case, or shortly thereafter, the court was reminded of the practicality of using the suit of an entire family as a bellwether. If one plaintiff's claim was dropped, other family member plaintiffs who had lived in the same

No. 09-31131

trailer could carry on, and the target defendant could develop its case premised on one particular trailer. *See* Order and Reasons at 2 (RE 43).

When the Bell case was selected for bellwether status in early April, Raymond Bell was on notice that he could become the named plaintiff and that his mother's case was set for trial in January 2010. This is not to say he personally contemplated the possibility of having to go to trial, but his counsel knew of the potential. Further, during the summer's trial preparation, this potential became more likely as Mrs. Bell refused to cooperate in providing evidence about herself and failed to produce her expert witness reports required by the pretrial schedule. In September, after the court granted Mrs. Bell's motion to withdraw and she dismissed her case with prejudice, the court convened counsel to address the situation. Raymond Bell's father, another resident of the trailer and plaintiff in the suit, refused to serve as the trial plaintiff. Raymond Bell then demurred with the brief motions supported only by the three reasons noted above. No affidavit was attached to the motion to substitute or continue, nor did Bell explain where he was working, why he would be unable to get time off for the trial, or exactly how his education would be disadvantaged by attendance at a trial that could last two weeks.

It is not hard to justify the court's decision to deny these alternative motions. Raymond Bell's attempt to withdraw as plaintiff or to continue seemed contrived, especially in light of his mother's less than diligent prosecution of a claim bearing on the same trailer. Nothing in his motion papers distinguishes Bell's inconvenience in going forward with trial from the inconvenience that any plaintiff may suffer from having to try the case he has filed. The case had been pending for months, the parties had been actively preparing for trial, and Bell

No. 09-31131

still had several months to organize his own schedule around the impending trial. The selection of a substitute bellwether plaintiff would inflict considerable inconvenience on the defendants. Not only would Keystone have to explore the condition of another trailer, but the identity and role played by subsidiary defendants would change.[3]  In effect, Keystone would be defending an entirely different case without having seen a conclusion of the Bell case.

If, on the other hand, a continuance was considered, Bell's reasons offered no prospect of an early reset. His fears of job loss, loss of income and educational interruption could continue indefinitely. If Bell received a continuance on these flimsy grounds, there would be little basis for denying continuance motions sought by other parties in the pending bellwether cases. The court's attempt to provide trial results that would offer a firm basis for resolution of the thousands of outstanding cases would be thwarted and unreasonably delayed by granting a continuance. The court certainly did not abuse its discretion in denying the alternative motions.

## B.  Decision to dismiss with prejudice.

Under Fed R. Civ. Pro. 41(a)(2), the court may dismiss a case following the defendant's answer or summary judgment only "upon order of the court and upon such terms and conditions as the court deems proper."  *See Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 320 (5th Cir. 2002).  The purpose of authorizing the court to place conditions on a voluntary dismissal is to prevent unfair prejudice to the other side in the case. Typical examples of such prejudice occur when a party proposes to dismiss the case at a late stage of pretrial

---

[3] In fact, because of Bell's dismissal, the court had to appoint another bellwether plaintiff, and another contractor defendant has since become involved.

8

No. 09-31131

proceedings, or seeks to avoid an imminent adverse ruling, or may on refiling deprive the defendant of a limitations defense. *Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990); *Oxford v. Williams Cos., Inc.*, 154 F. Supp 2d 942, 951 (E.D. Tex 2001); *see generally* 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2366 (3d ed. 2010). When a court is faced with a Rule 41(a)(2) motion, it should "first ask whether an unconditional dismissal will cause the non-movant to suffer plain legal prejudice." *Elbaor*, 279 F.3d at 317. The prejudice to co-plaintiffs may also be considered. If such prejudice would ensue, the court may either refuse to dismiss the case or may "craft conditions that will cure the prejudice." *Id.* at 318. Requiring dismissal with prejudice is one available option; the court exercises considerable discretion even in selecting this condition, but it "must be careful to craft conditions that are not overbroad." *Id.* at 320.

Plain legal prejudice would accrue to non-movants from an unconditional dismissal of Raymond Bell's case without prejudice. The court would have to re-align Keystone RV with a new bellwether plaintiff who resided in a different trailer and whose suit would almost surely add a different group of subsidiary defendants. Not only would Bell be able to refile his suit, but the appellees were in no way spared the continuing costs of legal defense. Appellees' investment in trial preparation for Bell's case was wasted. Moreover, other plaintiffs in the FEMA trailer formaldehyde litigation were disadvantaged by the tactics employed on Bell's behalf as they were delayed in acquiring trial information important for their cases. The size and scope of this multiparty litigation inescapably heightened the prejudice from Bell's motion to dismiss.

No. 09-31131

Nevertheless, converting Bell's motion from voluntary dismissal without prejudice to dismissal with prejudice was a step that deserves serious attention.[4] Although we are aware of no cases directly on point concerning the dismissal with prejudice of the claim of a reluctant bellwether plaintiff, we cannot conclude that the court abused its discretion.

Bell wanted to have his cake and eat it by withdrawing from a bellwether trial and then sitting back to await the outcome of another plaintiff's experience against the appellees. When a plaintiff files any court case, however, sitting back is no option. He must be prepared to undergo the costs, psychological, economic and otherwise, that litigation entails. That the plaintiff becomes one of a mass of thousands pursuing particular defendants lends urgency to this reality. Courts must be exceedingly wary of mass litigation in which plaintiffs are unwilling to move their cases to trial. Any individual case may be selected as a bellwether, and no plaintiff has the right to avoid the obligation to proceed with his own suit, if so selected.

Confronted with Raymond Bell's request to substitute or continue, and his abrupt refusal to accept the court's offer to instruct the jury on Bell's trial absence, if it occurred, the court faced a stark choice. If it permitted Bell to dismiss without prejudice, it would set a precedent that other plaintiffs could use to manipulate the integrity of the court's bellwether process. It would have subjected Keystone to the rigors and costs of trial preparation against Bell without reaching a resolution of Bell's claim. Moreover, Bell had been aware of

---

[4] Our authority holds that before requiring a Rule 41(a)(2) dismissal to be with prejudice, a court must allow a plaintiff the opportunity to retract his motion to dismiss. *See Elbaor*, 279 F.3d at 320. Bell has not suggested that the court's procedure here was deficient or that he would have taken advantage of any such offer.

10

No. 09-31131

the trial date for his mother's case for nearly six months, and his counsel was surely aware of the importance of hewing to a bellwether trial schedule. Whatever might have been the proper exercise of discretion for a case with just two parties involved, the court correctly saw this case as part of a much larger picture in which for the sake of doing justice to thousands of plaintiffs and multiple defendants, the court had to maintain enforceable deadlines. Allowing Bell to receive a dismissal without prejudice at this stage of his case, on the flimsy basis Bell offered, and at a critical stage in the bellwether process threatened to defeat the court's management effort. The court's order explaining its decision to dismiss with prejudice says all this and more. Its action was not so much a sanction against Bell as a necessary device to maintain an orderly resolution of the massed cases. Under all the circumstances, there was no abuse of discretion.

### III. CONCLUSION

For these reasons, the trial court's judgment is **AFFIRMED**.

11

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

**BILL OF COSTS**

NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion*, See FED. R. APP. P. & 5TH CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.

Raymond Bell, III _____ v. Keystone RV Co., et al. _____ No. 09-31131

The Clerk is requested to tax the following costs against: Raymond Bell, III

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee ($450.00) | | | | $30.00 | | | | |
| Appendix or Record Excerpts | 4 | 50 | $.15 | $30.00 | 4 | 48 | .15 | 28.80 |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief | 7 | 29 | $.15 | 30.45 | 7 | 27 | .15 | 28.35 |
| Appellant's Reply Brief | | | | | | | | |
| Other: | | | | | | | | |
| | | | Total $ | $60.45 | | | | |

Costs are hereby taxed in the amount of $ 57.15 _____ this 7th

Costs are taxed in the amount of $ 57.15

this _____ 7th _____ day of February, 2011

LYLE W. CAYCE, CLERK

By _____ Deputy Clerk

I Michele S. Greif _____ do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 16th _____ day of December _____, 2010

_____ (Signature)

Attorney for United States

State of _____

County of _____

*SEE REVERSE SIDE FOR RULES GOVERNING TAXATION OF COSTS

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

February 07, 2011

Ms. Loretta Whyte
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

　　　　No. 09-31131,  In Re: FEMA Trailer, et al
　　　　　　USDC No. 2:07-MD-1873
　　　　　　USDC No. 2:09-CV-2967

Enclosed is a copy of the judgment issued as the mandate.

Enclosed, for the Eastern District of Louisiana, New Orleans
only, is a copy of the court's opinion.

Record/original papers/exhibits to be returned.

Enclosed for the Eastern District of Louisiana, New Orleans and
counsel is the approved bill of costs.

　　　　　　　　　　　Sincerely,

　　　　　　　　　　　LYLE W. CAYCE, Clerk

　　　　　　　　　　　By: _____
　　　　　　　　　　　Shawn D. Henderson, Deputy Clerk
　　　　　　　　　　　504-310-7668

cc: (letter only)
　　　Honorable Kurt D. Engelhardt

cc w/encl:
　　　Ms. Madeleine M Fischer
　　　Ms. Tara Jo Gilbreath
　　　Ms. Michele Susan Greif
　　　Mr. Ryan Estes Johnson
　　　Mr. Michael David Kurtz
　　　Mr. Gerald Edward Meunier
　　　Mr. Henry Thomas Miller
　　　Mr. James Conner Percy
　　　Ms. Catherine N Thigpen

Ms. Karen Kaler Whitfield
Mr. Justin I Woods

P.S. to Judge Engelhardt:  A copy of the opinion was sent to your
office via email the day it was filed.