UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:   FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO | * | |
| *Ausbrooks v. Forest River, Inc., et al.; Early v.* | * | |
| *Gulf Stream, et al.; Price v. Jayco, Inc., et al.;* | * | |
| *Clementin v. Keystone RV, et al.; Wiliams v.* | * | |
| *KZRV, LP, et al.* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' SUR-REPLY MEMORANDUM TO
DEFENDANTS' REPLY MEMORANDUM TO
PLAINTIFFS' RESPONSE TO MANUFACTURING DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE EXPERT PAUL HEWETT, Ph.D.**

Plaintiffs respectfully submit the following Sur-Reply to Defendants' Reply Memorandum to Plaintiffs' Response to Manufacturing Defendants' Motion *in Limine* to Exclude Expert Testimony of Paul Hewett, Ph.D. (Rec. Doc 20092) and show as follows:

**I.    INTRODUCTION**

At the outset, Plaintiffs would note that although Defendants' filing is nominated a "Reply" to "Plaintiff's Response" it really raises new points not addressed in the Manufacturing Defendant's Original Motion *in Limine* (Rec. Doc 18283) or addressed in Plaintiff's Response (Rec. Doc 19797). Therefore, Defendants "Reply" should be disregarded in its entirety. Defendants raise three supposed bases in their "Reply" for limiting or excluding Dr. Hewett's testimony: 1), Dr. Hewett is not a statistician; 2) Dr.

1

Hewett did not design and execute statistical analysis; and 3), Dr. Hewett's Report provides multiple pages of graphs and charts but his ultimate conclusions do not depend on or rely on the bulk of those calculations. Reply Memorandum, p. 2. As will be seen below, each of these arguments fails.

## II.     DR. HEWETT HAS THE REQUISITE EXPERTISE IN STATISTICS

Plaintiff would note the Defendants' Reply was filed by counsel for the Defendants, Andrew Weinstock, and that Mr. Weinstock has previously stipulated to Dr. Hewett as an expert in statistics. Exhibit A, Transcript of Proceedings, September 18, 2009, p. 217. Further, this Court also accepted Dr. Hewett as an expert in statistics on May 18, 2010. Exhibit B, Transcript of Proceedings pp. 363-364.

By way of further argument, if such argument be necessary, Plaintiffs would show that the discipline of statistics has been defined as "a branch of mathematics dealing with the collection, analysis, interpretation, and presentation of masses of numerical data"[1]. This is exactly what Dr. Hewett has been doing for over 30 years. Exhibit C. As part of his work for the National Institute of Occupational Safety and Health (NIOSH) for 25 years, Dr. Hewett collected and analyzed exposure data and statistically analyzed the data comparing them to exposure limits. Exhibit B, pp. 365-366. This is the same type of analysis he did in this case. According to the Federal Judicial Center's "Reference Manual on Scientific Evidence" (2000):

---

[1] http://www.merriam-webster.com/dictionary/statistics

2

> "Statistics, broadly defined, is the <u>art</u> and <u>science</u> [emphasis added] of gaining information from data. ... The field of statistics includes methods for (1) collecting data, (2) analyzing data, and (3) drawing inferences from data." (p.85)
>
> "Statistical expertise is not confined to those with degrees in statistics. Because statistical reasoning underlies all empirical research, researchers in many fields are exposed to statistical ideas.  Experts with advanced degrees in the physical medical, and social sciences - and some of the humanities - may receive formal training in statistics.  Such specializations as biostatistics, epidemiology, econometrics, and psychometrics are primarily statistical, <u>with an emphasis on methods and problems most important to the substantive discipline</u> [emphasis added]. (p.87)
>
> "Individuals who specialize in using statistical methods - and whose professional careers demonstrate this orientation - are most likely to apply appropriate procedures and correctly interpret the results." (p.87)

Dr. Hewett has the type of experience that qualifies him to testify about statistical matters as discussed in the Reference Manual on Scientific Evidence for someone who does not have a degree in statistics.  Dr. Hewett has a doctorate in industrial hygiene, and a large part of his work as an industrial hygienist has been conducting statistical analysis on exposure data to toxic gases, vapors and particulates.  Exhibit A, pp. 217-221, Exhibit B, pp. 364-365.  Dr. Hewett has published peer-reviewed papers and text chapters on specific types of statistical analysis, taught graduate courses on occupational exposure assessment strategies and statistics, and annually presents professional development courses on statistics as applied to occupational and environmental data.  See Exhibit C, Hewett CV.  Furthermore, Dr. Hewett is a fellow of the American Industrial Hygiene Association, which in 2007 awarded him the "Edward

J. Baier Technical Achievement Award" for his work pioneering the use of Bayesian statistical analysis methods in the field of industrial hygiene. Exhibit C, p. 1. Dr. Hewett is sufficiently qualified, by virtue of training and experience to serve as an expert in this case regarding statistical analysis, presentation, and interpretation.

### III. DR. HEWETT CONDUCTED A STATISTICAL ANALYSIS SIMILAR TO THAT CONDUCTED BY THE ATSDR AND THE CDC

Defendants awkwardly argue that Dr. Hewett did not engage in "statistical reasoning" or alternately, in "statistical analysis". Reply Memorandum, p. 5-8. Defendants amorphously define of statistical analysis and reasoning, and what it should include, but fail to identify any case law or scholarly article on the same.[2] In response, Plaintiff would show that Dr. Hewett's statistical analyses are consistent with the statistical analyses conducted by Agency for Toxic Substances and Disease Registry (ATSDR) and the Centers for Disease Control (CDC).

In October 2007, the ATSDR issued a report entitled *An Update and Revision of ATSDR's February 2007 Health Consultation*. Exhibit D. In the Report, the ATSDR analyzed formaldehyde levels and ventilation in numerous FEMA travel trailers. In the process, they reviewed relevant formaldehyde standards and cited the ATSDR Health Guideline Values for chronic, intermediate and long-term formaldehyde exposure

---

[2] Defendants do cite an a long and rambling article on statistical "thought processes" by C.J. Wild and M. Pfannkuch from the University of Auckland, New Zealand, entitled *Statistical Thinking in Empirical Enquiry*, but the article does not identify the particular statistical methods Defendants claim that Dr. Hewett should have employed.

4

(0.008 ppm, 0.03 ppm and 0.04ppm).  Exhibit D, p. 10.  These are the same exposure levels Dr. Hewett referenced and used as comparators in his Report. Exhibit E, pp. 32-93.  The ATSDR also referenced the same NIOSH and ACGIH guidelines that Dr. Hewett utilized in his analysis.  Exhibit D, p. 11 & Exhibit E, pp. 32-93.  The ATSDR further reported standard deviations, maximum formaldehyde levels, minimum formaldehyde levels, and median formaldehyde levels.  Exhibit D, pp. 15, 30-31.  The ATSDR described this as "statistical analysis".  Exhibit D, pp. 28-29.  This is the same type of statistical analyses Dr. Hewett conducted when he set forth standard deviations, maximum formaldehyde levels, minimum formaldehyde levels, and median formaldehyde levels in his Report.  Exhibit E, pp. 32-93.

Defendants criticize Dr. Hewett for using the log normal distribution.  However, Dr. Hewett gave the rationale for the same writing that exposure data are typically log normally distributed[3].  Exhibit E, p. 12. Defendants have not contested the same. Interestingly, the ATSDR also used the log normal distribution in their calculations. Exhibit D, p. 29.  Furthermore, as an alternative, Dr. Hewett reported arithmetic mean of the formaldehyde levels based upon the normal distribution as opposed to the log normal distribution.  See charts, Exhibit E, pp. 32-93.

In July 2008, the CDC released their *Final Report on Formaldehyde Levels in FEMA*

---

[3]   Ginevan, M.E. and Splitstone, D.E. (2004): *Statistical Tools for Environmental Quality Measurement*. Chapman and Hall/CRC.  pp.19-23 and Gilbert, R.O. (1987) and *Statistical Methods for Environmental Pollution Monitoring*. Van Nostrand Reinhold, New York. pp.152-155

*Supplied Travel Trailers, Park Models, and Mobile Homes* (CDC Report, Exhibit F). The CDC Report examined formaldehyde levels in travel trailers from several manufacturers. The CDC also included a regression analysis with temperature and humidity as separate variables and recorded *p* values. Exhibit F, p. 32. Dr. Hewett also conducted a regression analysis with temperature and humidity as separate variables and included *p* values. The CDC further reported that formaldehyde levels tended to be higher in newer trailers and during warmer weather therefore the levels in the study likely underrepresented long-term exposures. Exhibit F, pp. iii, 12-13. This is the same as Dr. Hewett reported. Exhibit E, p. 23, and Hewett Appendix, Exhibit G. Furthermore like Dr. Hewett, the CDC reported the geometric mean for the formaldehyde levels in the trailers which relied on the log normal distribution. Exhibit F, pp. 10, 30-31. The CDC also reported 95% confidence intervals (Exhibit F, pp. 10, 24) the upper and lower ranges and the percentages that were above .1ppm and .3 ppm, as did Dr. Hewett. Exhibit F, pp. 23-24 & Exhibit E, charts on pp. 32–93. In summary, the CDC statistical analyses were similar to Dr. Hewett's analyses in several respects.

Interestingly, in their original Memorandum in Support of their Motion *in Limine*, Defendants criticized Dr. Hewett for not using a Monte Carlo analysis, Spearman Rank Correlation Coefficients or a jackknife procedure in analyzing the data. Rec. Doc 18283-1. However, there is no evidence anywhere that any of these procedures or methods would have improved the analyses that were conducted.

Furthermore, neither the ATSDR nor the CDC used the Monte Carlo analysis, Spearman Rank Correlation Coefficients, a jackknife procedure, nor conducted the type of analysis that Defendants are assuming that Dr. Hewett should have done[4].  Exhibits D & F.

Contrary to what Defendants maintain, Dr. Hewett did not just blindly follow the recommendation of others in selecting formaldehyde levels as comparators. Dr. Hewett reviewed the various limits and independently concluded that the ATSDR chronic level was the "most appropriate limit" as it was the limit for those who had been exposed to formaldehyde for a year or more as most people who were living in the travel trailers had been living there a year or more.  Exhibit E, p. 8.  Dr. Hewett also included in his Report the percentages above other limits including those who had been exposed for less than a year and the NIOSH and ACGIH limits identified above.  See Exhibit E, pp. 32- 93.

The Defendants incongruously criticize Dr. Hewett for failing to "improve the quality of the data".  Reply Memorandum, p. 7.  This is disingenuous.  The data are what the data are.  Data cannot be improved.  With regard to data quality, Defendants' statistical expert, Dr. Lawrence Mayer, could not identify any errors in the data sets that Dr. Hewett relied upon.  Mayer Deposition Excerpts, Exhibit H, pp. 34-35, 86-90.

---

[4] Defendants also raise the issue of a Monte Carlo analysis on pages 7 and 9 of their Reply Memorandum to Plaintiff's Response, but they seem to have abandoned their claim as to the propriety of the using the jackknife procedure or Spearman Rank Correlation Coefficients.  The Defendants' statistical expert, Dr. Mayer, admitted under oath that none of his Spearman Rank Correlation Coefficients were statistically significant.  Exhibit H, p. 66.

The Defendants argue mistakenly that Dr. Hewett failed to address uncertainty and variability of the testing procedures. Dr. Hewett addressed the uncertainty and variability in the datasets by comparing the datasets by data source and manufacturer unit model (Exhibit E, Section 4.3, pp. 18-19), and by calculating confidence intervals around the point estimates of the percent of measurements exceeding the ATSDR and the NIOSH limits. Dr. Hewett also examined uncertainty and variability by calculating the confidence intervals around the point estimates of the mean formaldehyde levels. Exhibit E, Sections 4.2 and 5.3, pp. 15-17, and 22-23. These were the same methods utilized by the CDC to address uncertainty and variability. Exhibit F.

## IV.  DR. HEWETT ADEQUATELY SUPPORTS HIS CONCLUSIONS

The Defendants argue that Dr. Hewett's "ultimate conclusions do not depend on, or even utilize, the bulk of [his] calculations". Defendants did not read Dr. Hewett's Report closely. There are up to eight different data sets Dr. Hewett examined for trailers from five different manufacturers, therefore there are numerous charts and graphs. Dr. Hewett writes in Section 5.3 on "Formaldehyde Concentration Estimation":

> When considered together - the high percentage of measurements that exceeded the three ATSDR population limits (and other limits) and the mean formaldehyde levels that also exceeded the three ATSDR limits (and other limits), as well as the 99%LCL's for these estimates - there is compelling evidence to support the conclusion that formaldehyde levels in unmeasured, occupied THU's, similar to the THU used by the plaintiffs, exceeded the three ATSDR and NIOSH full-shift limits the majority of the days of occupancy. Exhibit E, p. 23.

As a final point, it is worth noting that the above statements are based on a

> statistical analysis of the *observed data*. It does not take into account the very real possibility, presented in Section 5.2 and my earlier Appendix 10.3 (Hewett, 2010), that earlier formaldehyde concentrations tended to be greater than the concentrations evaluated here. Exhibit E, p. 23.

Dr. Hewett's conclusions regarding the overall percent of measurements exceeding the various limits (per manufacturer), and the mean of the formaldehyde levels (per manufacturer) are clearly stated in the Results (Section 4, Exhibit E, pp. 14-19) and Discussion (Section 5, Exhibit E, pp. 19-26) sections of the Report, and these conclusions were based upon the descriptive and inferential statistics (i.e., confidence intervals) calculated by Dr. Hewett and set forth in the charts and graphs. Exhibit E, pp. 32-93 & Exhibit G. There is a different set of charts and graphs for each specific manufacturer. Section 8, Exhibit E, pp. 32-93 & Appendix, Exhibit G. All this data and analysis supports Dr. Hewett's conclusions.

### V.  CONCLUSION

For the reasons stated above, and for the reasons set forth in Plaintiffs' Response to Defendants' Motion *in Limine* to Exclude Expert Testimony of Paul Hewett, Ph. D. (Rec. Doc 19797), which are incorporated by reference, Plaintiffs respectfully request that this Court deny Defendants' Motion to Exclude the Testimony of Paul Hewett, Ph.D.

Respectfully submitted:

FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

BY:     s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        PLAINTIFFS' CO-LIAISON COUNSEL
        JUSTIN I. WOODS, # 24713
        PLAINTIFFS' CO-LIAISON COUNSEL
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:    504/528-9973
        gmeunier@gainsben.com

        COURT-APPOINTED PLAINTIFFS'
        STEERING COMMITTEE
        ANTHONY BUZBEE, Texas # 24001820
        RAUL BENCOMO, #2932
        FRANK D'AMICO, #17519
        MATT MORELAND, #24567
        MIKAL WATTS, Texas # 20981820
        ROBERT HILLIARD, Texas # 09677700
        DENNIS REICH, Texas #16739600

CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing on February 23, 2011.


                        s/Gerald E. Meunier
                        GERALD E. MEUNIER, #9471

10