| | |
|---|---|
| | **EXHIBIT B** |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-5"<br><br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO ALL CASES

-------------------------------------------------------------------------------

## DECLARATION OF GERALD MEUNIER

COMES NOW Gerald Meunier, being of sound mind and lawful age, and subject to the penalties for perjury deposes and states as follows:

1. My name is Gerald Meunier. I am a member of the Plaintiff's Steering Committee ("PSC"), and am Plaintiffs' Co-Liaison Counsel, as appointed by the Court, in this case. I have personal knowledge of the matters declared herein.

### Qualifications and Experience as Class Counsel

2. I have been involved in the following mass tort /class actions in varying roles (as indicated) and I have extensive experience in the resolution of class action matters that have proven beneficial to class members:

I.  Court-appointed member of Plaintiffs' Steering Committee in *In Re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047, U.S. District Court, E.D. La [multi-district litigation against numerous manufacturers, distributors, etc. based on damage and injury from defective drywall made in China].

II. Plaintiffs' common benefit counsel working with Court-appointed Committee in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 10-2179, U.S. District Court, E.D. La [multi-district litigation against BP entities, etc. following explosion and oil spill in the Gulf of Mexico].

1

III.  Court-appointed Plaintiffs' Liaison Counsel for Levee cases and Court-appointed member of the Levee PSLC in *In Re: Katrina Canal Breaches,* No. 05-4181, U.S. District Court, E.D. La.; Court-appointed Plaintiffs' Liaison Counsel in the levee breach cases only [consolidated litigation arising out of flooding from Hurricane Katrina].

IV.  Court-appointed member of Plaintiffs' Steering Committee in *In Re: Vioxx, Products Liability Litigation, MDL No. 1657,* U.S. District Court, E.D. La. [multi-district litigation against Merck, the manufacturer of Vioxx; settlement].

V.  Court-appointed member of Plaintiffs' Steering Committee in *Patrick Joseph Turner, et al v. Murphy Oil USA, Inc.,* U.S. District Court, E.D. La. [litigation against Murphy Oil as a result of an oil spill that occurred during Hurricane Katrina; settlement].

VI.  Court-appointed liaison counsel in federal court, and co-lead counsel of Plaintiffs' Legal Committee in *In Re: Chemical Release at Bogalusa,* 22nd Judicial District Court (Parish of Washington) [class action; explosion of tank car and chemical release in Bogalusa, Louisiana; verdict for plaintiffs in common issues trial, 2003; settlement].

VII.  Court-appointed class counsel in *Susan Blades, et al vs. Illinois Central Railroad Company d/b/a Canadian National Railroad/Illinois Central Railroad,* U.S. District Court, E.D. La. [class action; train derailment; settlement].

VIII.  Lead counsel for plaintiffs in mass tort case of *In Re: St. Louis Encephalitis Outbreak in Ouachita Parish,* 4th Judicial District Court (Monroe, Louisiana) [case for victims of St. Louis encephalitis outbreak, Ouachita Parish; settlement].

IX.  Court-appointed co-liaison counsel in *In Re: Industrial Life Insurance Litigation,* U.S. District Court, E.D. La. [national class action/mass joinder against various life insurance companies for racially discriminatory practices in charging premiums].

X.  Court-appointed Special Master in *Custom Bus Litigation,* U.S. District Court, E.D. La. [mass tort; multiple deaths and injuries from crash of Casino bus; settlement].

XI.  Court-appointed Special Master in *In Re: Chippewa Street Spill,* 19th Judicial District Court (Parish of East Baton Rouge) [class action; chemical spill; settlement].

XII.  Member of Claimants' Committee in *In re: Complaint of Clearsky Shipping Corp., as Owner, and Cosco (H.K.) Shipping Company Limited, as Owner of the M/V BRIGHT FIELD, for Exoneration from or Limitation of Liability,* United States District Court, E.D. La., C.A. #96-4099, [case involving collision between the vessel BRIGHT FIELD and Poydras Street wharf/New Orleans Riverwalk; settlement].

XIII.  Court-appointed class counsel in *Lailhengue v. Mobil Oil,* 34th Judicial District Court (Parish of St. Bernard) [class action; refinery explosion case; settlement].

2

XIV. Court-appointed class counsel in *Andry v. Murphy Oil*, 34th Judicial District Court (Parish of St. Bernard) [class action; refinery explosion case; settlement].

XV. Court-appointed class counsel in *Kaiser Plant Explosion at Kaiser*, 23rd Judicial District Court (Parish of St. James) [class action; plant explosion; settlement].

### **Relevant and Significant Factors in Settlement of Claims**

3. Following the landfalls of Hurricanes Katrina and/or Rita, the homes of hundreds of thousands of people who resided along the Gulf Coast of the United States were rendered uninhabitable, leaving those persons homeless. The United States, through the Federal Emergency Management Agency, provided emergency housing units ("EHUs") for these individuals, a significant number of whom subsequently filed suit against the manufacturers of the units, alleging injury from formaldehyde exposure. Some of these EHUs were Manufactured Homes, as opposed to travel trailers.

4. Substantial testing of EHUs, discovery, document production, motion practice and bellwether trials now have been completed in this Multi-District Litigation [MDL]. All Plaintiffs in the MDL have produced a total of over 21,000 "Plaintiff Fact Sheets" [PFS], a portion of which relate to occupancy in manufactured housing units. The Parties have conducted 95 depositions. Defendants have produced over 40,000 thousand pages of documents. The Parties have engaged in extensive motion practice addressing common issues. This motion practice included a PSC motion to certify a class for the purposes of litigating all claims against all defendants, which was denied, as well as the Manufactured Housing Defendants' FRCP 12(b)(6) motion for dismissal on the basis of preemption, which in part was granted on May 29, 2009 [Doc. 1629]. The PSC has also conducted three bellwether trials, all of which have resulted in defense verdicts. As such, the PSC is in a reasonable position to assess the factual and legal merits and weakness of the Plaintiffs' claims and Defendants' defenses.

3

5.    On April 8, 2010, the Court appointed a mediator, John Perry, to assist with a possible resolution of this case. One or more members of the PSC, myself included, met with the mediator in person 10 times, and have had at least 25 telephone conversations with him regarding settlement with the defendant manufacturers of Manufactured Housing units. The claims against these HUD-regulated units have been temporarily placed by the Court on a "non-litigation" track in order to facilitate these efforts. The settlement negotiations with counsel for these defendants have been at arms' length, adversarial, and characterized by the vigorous presentation of opposing positions in the litigation.

6.    In granting in part Defendants' motion to dismiss based on preemption, the Court dismissed with prejudice all plaintiff claims in this Action that allege these manufacturers' departure from a standard "different from (i.e., not identical to) the formaldehyde regulations in the HUD Code and the formaldehyde warning standard specifically set forth in 24 C.F.R. § 3280.309(a)." *See* Doc. 1629, at p. 27. The PSC has appealed this ruling to the Fifth Circuit, but the appeal has been stayed for the purpose of pursuing settlement negotiations with the defendant manufactrers which are subject to the preemption ruling. I acknowledge that this preemption ruling, unless reversed or modified on appeal, will significantly increase each plaintiff's burden of proof in cases against the manufacturers of Manufactured Housing units. Only a demonstrated violation of federal formaldehyde regulations now forms the basis for a plaintiff's possible recovery in such cases. The practical difficulties of such proof are especially significant because most, if not all, of the units in question no longer are available for destructive testing.

7.    Plaintiffs also are faced with burden of proof issues with respect to medical causation in these cases. The required proof that a demonstrated level of formaldehyde caused

injury ordinarily entails the cost of expert testimony. In addition, a number of Plaintiffs were smokers, or had pre-existing medical issues that potentially contributed to their alleged injuries, independent of formaldehyde exposure. The types of injuries that have been alleged by plaintiffs in this MDL range from transient or temporary ailments such as minor eye, throat and skin irritation to more serious ailments such as the exacerbation or onset of asthma (or other severe respiratory ailments) and severe dermatitis. Risk and fear of cancer claims also are alleged.[1] The range of possible recovery for any individual would depend upon the health effects experienced, the individual sensitivity of a Plaintiff to formaldehyde, the length of exposure to formaldehyde and the level of exposure, and the ability of one or more qualified experts to satisfy the requirement of medical causation.

8. Given this Court's denial of a litigated class action, each plaintiff will need to try his or her case separately. As of this date, the parties to the MDL have conducted three bellwether jury trials to verdict. Each trial has taken approximately 11 days. Each trial involves thousands of hours of preparation. Plaintiffs have been taxed with Defendants' costs in those trials (a total of almost $500,000 for those three trials). Moreover, with each bellwether trial, an appellate phase is virtually inevitable because of the importance of the final disposition of common, triable issues. There are currently two appeals pending from previous bellwether trial verdicts. The Plaintiffs are appealing as to *Batson* issues and jury instructions in the *Alana Alexander, et al vs. Gulf Stream Coach, et al* bellwether trial. The Plaintiffs are also appealing the applicability of the "sophisticated user defense" in the bellwether trial of *Earline Castanel vs. Recreation By Design.*

---

[1] Later-arising claims of latent injury from formaldehyde exposure which are supported by credible scientific proof, i.e., claims of nasophyryngeal cancer and/or myleloid leukemia, are excluded from and not released by this settlement.

9. As a result of the extensive litigation now completed or in progress, including motion practice, discovery and bellwether trials, the PSC and all plaintiffs' counsel have become aware of: (a) the merits of the complaints or the lack thereof; (b) the relative strengths and weaknesses of the Plaintiffs' claims, including the issues of manufacturer liability and damages; (c) the time, expense and effort necessary to maintain and conclude the Actions and the Pending Actions; (d) the possibilities of success weighed against the possibilities of loss; (e) the range of potential judgment values, if any should be awarded; (f) the legal complexities of the contested issues in the Action and the Pending Actions; (h) the risks inherent in protracted litigation; (i) the magnitude of benefits to be gained from an immediate settlement, in light of both the maximum potential of a favorable outcome and the attendant expense and likelihood of an unfavorable outcome; (j) the strong possibility of no recovery by any potential Class Members whatsoever in light of the past results of the bellwether trials and the trial court ruling on preemption; and (k) the fairness of benefits to or from an immediate settlement under all of the foregoing considerations. The PSC has evaluated these considerations fully and fairly, for the benefit of all plaintiffs.

10. In light of the foregoing, the PSC believes that the establishment of the proposed Total Settlement Fund, and the management thereof under the supervision of the Court, more likely will result in the greatest benefit to the potential Class Members in the Action and the Pending Actions, as compared to the prosecution of the pending appeal on preemption and continued litigation activity in the trial court.

11. Because of the above-referenced preemption ruling and the relatively modest size of the settlement fund, the benefit to each participant may be uniform, subject to the analysis and

recommendations of the Special Master. Each claimant will be asked to provide certain information that will establish residency in a unit manufactured by the settling defendants.

### Affiant's Conclusion and Opinion as to Proposed Settlement

12. Comparing the benefits of the proposed settlement to Class Members with the less certain range of possible recoveries and significant litigation risks, particularly in light of the preemption ruling and the real risk of each plaintiff receiving a zero recovery in proceeding to trial on the merits, it is my conclusion and opinion that the proposed settlement is fair, adequate and reasonable for the Class and the Class Members.

13. It additionally is my conclusion and opinion that, given the dispersion of class members following Hurricane Katrina and their temporary occupancy in FEMA EHUs, the best and most practicable written notice to class members known to be represented by counsel would be written notification to their counsel on their behalf.

14. Attached hereto as Exh. G is the List of all pending actions against Settling Defendants, compiled by the PSC. The named Plaintiffs in these actions therefore are known by the PSC to have claims against the Settling Defendants.

_____
GERALD E. MEUNIER