**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | |
|---|---|
| IN RE:  FEMA TRAILER | MDL NO. 1873 |
| FORMALDEHYDE | |
| PRODUCT LIABILITY LITIGATION | SECTION "N-5" |
| | |
| | JUDGE ENGELHARDT |
| | MAG. JUDGE CHASEZ |

**THIS DOCUMENT IS RELATED TO ALL CASES**

-----------------------------------------------------------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF PROPOSED CLASS SETTLEMENT**

The Plaintiffs' Steering Committee ("PSC"), on behalf of the Class[1] and jointly with the

Defendants, submit this Memorandum of Law in Support of the First Amended Joint Motion for

Preliminary Approval of Proposed Class Settlement.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

After the landfalls of Hurricanes Katrina and Rita, the homes of thousands of people who

resided along the Gulf Coast were rendered uninhabitable, leaving these people homeless.  The

Federal Emergency Management Agency ("FEMA") provided housing for these people, in part

by acquiring emergency housing units ("EHUs") manufactured by the Defendants.  Plaintiffs in

this lawsuit are those people who resided in EHUs manufactured by the Defendants.  They allege

they have been injured from exposure to formaldehyde in those homes.  Defendants deny these

allegations.

---

[1] Any capitalized term used herein shall have the meaning set forth in the "Definitions" section of the First Amended Stipulation of Settlement filed as Exhibit 1 to the First Amended Joint Motion for Preliminary Approval of Proposed Class Settlement, of which this Memorandum of Law is being filed in support.

This Action has been pending for several years.  It originally began as hundreds of individual cases filed in state and federal courts throughout Louisiana, Alabama, Mississippi and Texas.  Those individual actions were removed and consolidated in this MDL in October, 2007.

The Parties have engaged in substantial field testing, discovery, document exchanges, and several years of motion practice.  Three significant events have occurred in this case leading to the present settlement arrangement:  (1) this Court denied certification of a litigated class action; (2) this Court granted the Defendants' motion to dismiss certain claims based on federal preemption;  and (3) the Parties have conducted three bellwether trials, all of which have resulted in a defense verdict.

### A.     The Class Certification Denial.

Plaintiffs moved for certification of a litigated class on October 24, 2008.  This Court denied that litigated class action certification on December 29, 2008, citing several bases for its decision, including variations in the four states' laws, the various possible causes of Plaintiffs' injuries, and the different manufacturers and products involved in this case.  (D.E. 1014.)  For the reasons set forth herein, those concerns are not present in this settled class action.

### B.     This Court's Granting of Defendants' Motion to Dismiss Based on Preemption.

After class certification was denied, Defendants moved for the dismissal of any claims preempted by the HUD Code and the Manufactured Housing Act.  On May 29, 2009, the Court dismissed with prejudice all claims in this Action advancing a standard of care different from the federal formaldehyde regulations contained in the HUD Code and the federal formaldehyde warning standard set forth in 24 C.F.R. § 3280.309(a) (1993).  The PSC's appeal of that ruling has been stayed.  That ruling has dramatically changed the "commonality" nature of this

2

purported class action, making a uniform standard of care – that found in the HUD Code – applicable to all claims, state or federal.

### C.    The Bellwether Trials.

The Parties have conducted three bellwether jury trials, all of which resulted in defense verdicts.   (*See* Ex. A.)   There are currently two appeals pending from previous bellwether trial verdicts.   (Ex. B, Declaration of Gerald Meunier ¶ 8.)

### D.    The Negotiated Settlement.

Due to the denial of a litigated class, the granting of Defendants' motion to dismiss all preempted claims, and the total defense results of the three bellwether trials, along with the 95 depositions taken and 40,000 pages of documents exchanged between the Parties, the Parties have obtained sufficient information to reasonably assess the merits of their respective claims and defenses.   (Meunier Decl. ¶ 4.)   In the wake of the extensive work completed by the Parties, the dismissal of the Preempted Claims and the results of the bellwether trials, the Parties undertook negotiations for a global settlement of the Action and the Pending Actions.

At the request of the Parties, the Court ordered on April 8, 2010 the appointment of a Mediator, John Perry, in the litigation "in order to facilitate settlement discussions," and "for the purposes of exploring the potential for global settlement as to any and all other defendant manufacturers." (D.E. 13236.)   John Perry was heavily involved in all stages of the settlement negotiations.   He met privately with counsel for the Plaintiffs and then had a number of sessions with only the Defendants in New Orleans, Louisiana.   He had multiple meetings with counsel and client representatives present.   He also hosted a number of conference calls with all mediation participants (Plaintiffs and Defendants) for the purpose of discussing various aspects of the settlement.   The Parties reached a tentative settlement in the summer of 2010 after months

of negotiating. Settlement negotiations were hard fought and conducted at arms-length. Counsel for both sides vigorously represented their clients' interests during the negotiations. (Ex. C, Declaration of John Perry ¶ 3.)

The Parties have spent a substantial amount of time negotiating the compromise set forth in the Settlement Agreement. The consensus of the Parties is that the certification of a settlement class,[2] the immediate payment of the proposed Total Settlement Fund, and the Court's supervision thereof is likely to result in the greatest benefit to the Class Members, as well as ensuring peace and finality in this matter to the Parties involved.

## II.    SUMMARY OF PROPOSED CLASS SETTLEMENT

Subject to the Court's Final Order and Judgment following notice to the Class and a Fairness Hearing, the Settlement Agreement provides, *inter alia*, that: (1) Defendants will pay a combined total of $2.675 million, the "Total Settlement Fund," for the settlement of all Released Claims; (2) a Special Master, jointly designated by the Parties and paid by the PSC, shall determine the availability of Class Relief to each Class Member, based on the Special Master's evaluation of the Claim Form and other materials submitted by the Claimant and according to the Class Benefit Formula; (3) the PSC shall determine each Class Representative's Award, with Court approval; (4) each Class Representative's Award shall be paid out of the Total Settlement Fund; (5) all attorneys' fees for any PSC or non-PSC attorney, or any other attorney representing a Class Member, shall be determined by the PSC, approved by the Court, and paid out of the Total Settlement Fund; (6) there shall be a reserve established for all of the fees and expenses that are to be deducted from the Total Settlement Fund, including but not limited to attorneys'

---

[2] Defendants continue to deny that certification of a litigated class is appropriate.

4

and special master fees, and that reserve shall be 48% of the Total Settlement Fund, such that the total of all fees and expenses to be deducted from the Total Settlement Fund shall not exceed 48% of the Total Settlement Fund; (7) the Defendants shall deposit the Total Settlement Fund in an Escrow Account on June 21, , 2011; and (8) the Parties will sign an Escrow Agreement prior to that deposit.

### III.   THE PROPOSED CLASS SETTLEMENT MERITS PRELIMINARY APPROVAL

Pursuant to Federal Rule of Civil Procedure 23(e), a district court has broad discretion to approve a class action settlement if the settlement is fair, adequate and reasonable.  *Ayers v. Thompson,* 358 F.3d 356, 368 (5th Cir. 2004).  Moreover, in the Fifth Circuit, a strong judicial policy favors the resolution of class disputes through settlement.  *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. 1982) (*"Parker"*).  This judicial policy is due in part to the fact that "[p]articularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977) ("*Cotton*").

### A.   The proposed settlement is fair, adequate and reasonable.

Courts in the Fifth Circuit apply a six-factor test to evaluate the fairness, adequacy and reasonableness of a class settlement: (1) whether evidence exists that the settlement was obtained by fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability that plaintiffs will prevail on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.  *Newby v. Enron Corp.,* 394 F.3d 296, 301 (5th Cir. 2004) (*"Newby"*) (citing *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) ("*Reed*")).

5

When considering the six *Reed* factors, "the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.,* No. Civ.A. 301CV1754L, 2003 WL 22976611, at *4 (N.D.Tex. Dec. 11, 2003).  Courts in the Fifth Circuit should adhere to this fairness presumption "especially when doing so will result in significant economies of judicial resources – absent evidence weighing against approval."  *Klein v. O'Neal, Inc.,* 705 F.Supp.2d 632, 650 (N.D.Tex. 2010) ("*Klein*").

Applying the *Reed* factors to this case, the class settlement merits preliminary approval. Upon entry of a Preliminary Approval Order, the Parties will implement the Settlement Notice Plan attached as Exhibit C to the Stipulation of Settlement.  Class Members will have the opportunity to opt out of the settlement and to express their opinions regarding the Settlement Agreement at a Fairness Hearing.  After the Fairness Hearing, the Court should apply the six *Reed* factors to determine whether to issue a Final Order and Judgment approving the settlement. *See Newby*, 394 F.3d at 301.

1.  **No fraud or collusion exists.**

"A strong presumption exists in favor of settlement if the district court determines that the settlement resulted from arms-length negotiations between experienced counsel and was not tainted by fraud or collusion."  *Turner v. Murphy Oil USA,* 472 F.Supp.2d 830, 844 (E.D.La. 2007) ("*Turner*").  In the absence of any evidence of actual fraud or collusion between class counsel and defense counsel, a court may presume that no fraud or collusion occurred.  *Klein*, 705 F.Supp.2d at 651.  This is particularly true where, as here, the proposed settlement is "the culmination of several years of pretrial proceedings, motion practice, and forceful negotiations by the class plaintiffs and defendants." *Id*.; (Meunier Decl. ¶ 4).  There is no evidence of fraud or collusion in this case.  All counsel have vigorously represented their respective clients'

6

interests throughout this litigation, including the negotiation process.  (Meunier Decl. ¶¶ 4-5, 8; Perry Decl. ¶ 3.)

On April 8, 2010, the Court appointed John Perry as Mediator in this litigation "for the purpose[] of exploring the potential for global settlement as to any and all other defendant manufacturers in the MDL . . . . "  (D.E. 13236.)   Mr. Perry has met with the parties in person and by phone numerous since being appointed on April 8, 2010.  Mr. Perry has attested that the settlement was reached after "months of negotiating" and that "[s]ettlement negotiations were hard fought and arms-length."  (Perry Decl. ¶ 3.)   As the declarations of the PSC and the mediator make clear, the Settlement Agreement is the product of hard-fought litigation, not the result of fraud or collusion.   These statements of the mediator weigh heavily in favor of approving the settlement.  *See, e.g., Klein,* 705 F.Supp.2d at 651 (in support of the approval  of a products liability class action settlement, the district court noted the mediator's statements regarding the hard fought negotiations and arms length bargaining between the parties); *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001) (in affirming class action settlement approval, the Second Circuit noted that the district court had appointed a special master to assist in the settlement process and that the special master testified that the negotiations were "bona fide, at times contentious, and all counsel involved were capable.") (citation omitted).

2. **Continued litigation would be complex, expensive and protracted.**

Where, as here, it is apparent that continuing the litigation will require a substantial financial and time commitment from the parties, the reasonableness of approving a negotiated settlement is heightened.  *See Klein*, 705 F. Supp.2d at 651; (Meunier Decl. ¶ 8 (attesting that Plaintiffs have already been taxed with almost $500,000 in Defendants' costs for the three bellwether trials))**.** "The public interest favoring settlement is especially apparent in the class

7

action context where claims are complex and may involve a large number of parties, which otherwise could lead to years of protracted litigation and sky-rocketing expenses." *Turner*, 472 F.Supp.2d at 843.  Given the vast number of plaintiffs and the large number of defendants, this mass tort litigation could go on for years if not settled.  The three bellwether trials have been expensive, and resulted in no relief whatsoever to Plaintiffs.  (*See* Meunier Decl. ¶ 8.)  Both sides of this case intend to appeal if either does not prevail at trial, thereby prolonging the time and expense of litigation.  (*Id.* ¶ 8; Ex. D, Declaration of Thomas W. Thagard ¶ 2.)  In contrast, approval of the settlement will permit Class Members to recover damages much sooner than would be possible following an uncertain, expensive and protracted trial and appellate process. *See Klein*, 705 F.Supp.2d at 653.  Therefore, the second *Reed* factor favors the preliminary approval of the Settlement Agreement.

### 3.    The stage of proceedings is appropriate for evaluating settlement.

Formal discovery need not be complete in order for the parties to be in a position to accurately evaluate the fairness of a class settlement.  *Newby*, 394 F.3d at 306; *Turner*, 472 F.Supp.2d at 847; *Batchelder v. Kerr-McGee Corp.,* 246 F.Supp.2d 525, 528 (N.D.Miss. 2003) ("*Batchelder*").  The Fifth Circuit has held that discovery is not necessary, provided that the interests of the class have not been prejudiced by the settlement negotiations, and substantial factual bases exist on which to premise settlement.  *Newby*, 394 F.3d at 306.

The standard set forth by the Fifth Circuit in *Newby* has been more than met in this case. The Parties in the FEMA litigation have exchanged thousands of documents, taken 95 depositions, and conducted three bellwether trials.  (Meunier Decl. ¶¶ 4, 8.)  The Court's preemption ruling significantly restricted Plaintiffs' claims and the three bellwether trials have resulted in defense verdicts.  (*Id.* ¶¶ 6, 8.)  The time is right for settlement.

### 4.   The probabilities of success favor approval of settlement.

The Parties have conducted three bellwether trials, and all have ended in defense verdicts. Given the court's ruling dismissing the preempted Claims and the results of the bellwether trials to date, the Plaintiffs face a significant risk of recovering nothing.  *See In re Dell, Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *6 (W.D.Tex. June 11, 2010) (approving class settlement and noting that the Plaintiffs' case was "no doubt in dire straits," with the Plaintiffs "facing a significant risk the Class Members would recover nothing at all").   Defendants face a long, expensive battle and the uncertainties inherent in a jury trial.  Regardless of who prevails at trial, lengthy and expensive appeals can be expected.  *See id.;*(Meunier Decl. ¶ 8; Thagard Decl. ¶ 2). All of these factors favor preliminary approval of the Settlement Agreement.  *Dell,* 2010 WL 2371834, at *6.

### 5.   The range of possible recovery favors settlement.

The fifth *Reed* factor requires a court to determine "the value of the settlement in light of the potential for recovery."  *In re Shell Oil Refinery,* 155 F.R.D. 552, 563 (E.D.La. 1993).  To assess the fairness of a class settlement, a court should consider "whether the settlement's terms fall within a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits."  *Turner*, 472 F.Supp.2d at 849-50.  When considering the possible range of recovery, a court should keep in mind that "compromise is the essence of a settlement."  *Id.* at 850 (quoting *Cotton*, 559 F.2d at 1330)).   "[I]nherent in compromise is a yielding of absolutes and an abandoning of highest hopes."  *Klein*, 705 F.Supp.2d at 649 (citing *Cotton,* 559 F.2d at 1330). Thus, "[a] proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances."  *Klein,* 705 F.Supp.2d at 649; *see also Pettway v. Am.Cast Iron Pipe Co.,* 576

F.2d 1157, 1214 n.69 (5th Cir. 1978) ("[C]ompromise is the essence of settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial.").

As one court has explained:

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'

*In re Shell Oil Refinery,* 155 F.R.D. at 560 (quoting *Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597, 624 (D.Colo. 1974) (quoting *State of West Virginia v. Chas. Pfizer & Co.,* 314 F.Supp. 710, 743 (S.D.N.Y. 1970))).

Given the preemption ruling and the results of the three bellwether trials, this Court need not consider an unrealistic high end of recovery in which all class members would recover significant damages. *See In re Educational Testing Service Praxis Principles of Learning and Teaching:  Grades 7-12 Litigation,* 447 F.Supp.2d 612, 622 (E.D.La. 2006) ("In considering the range of possible recovery, the Court need not consider recoveries that are beyond the range of the most minimal probability. Thus, engaging in an exercise that posits on the high end a recovery in which all class members would recover significant . . . damages is too unrealistic to be useful.").

One Court in a recent settlement also involving victims of Hurricanes Katrina and Rita noted that "[w]hile the individual payments contemplated under the Settlement Agreement are potentially modest, they avoid the need for any further litigation . . . by individual class members." *Ridgely v. F.E.M.A.,* Civ. No. 07-2146, 2010 WL 5140833, at *2 (E.D.La. Dec. 13, 2010). That same balance is present here. The value of the proposed settlement is fair and

reasonable in light of the strong possibility of no recovery and the aforementioned risks of proceeding to trial.  (Meunier Decl. ¶¶ 9-10; Perry Decl. ¶ 4.)

6.   **The opinion of the PSC favors settlement.**

Counsel are the court's main source of information about the fairness, adequacy and reasonableness of a class settlement.  *Turner*, 472 F.Supp.2d at 852.  As a result, "[t]he Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight." *Klein*, 705 F.Supp.2d at 649; *see also Newby,* 394 F. 3d at 309 ("[T]he weight the district court attached to the opinions of class counsel, relative to those of the [] Objectors, was justified in light of their superior sophistication."); *Cotton,* 559 F.2d at 1330 ("[T]he trial court is entitled to rely upon the judgment of experienced counsel for the parties.").  "Class counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit."  *Turner*, 472 F.Supp.2d at 852.

The members of the PSC are experienced class action attorneys, with substantial experience both litigating and settling class actions.  (Meunier Decl. ¶ 2.)  After years of litigating this case, including the exchange of thousands of documents, the taking of 95 depositions, extensive motion practice, and participation in a months-long and hard fought negotiation process, the PSC has concluded the proposed settlement is fair, adequate and reasonable for the Class.  (*Id.* ¶¶ 4-6, 8-10, 12.)

B.   **Certification of the settlement Class is proper.**

The Parties seek certification of a Class for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).  The proposed settlement Class meets the applicable requirements of Rules 23(a) and (b)(3).  This Court's December 29, 2008 Order concluded that various substantial barriers existed to certifying this case as a litigated class.  In this settlement

11

context, and particularly given the uniform standard of care following the preemption ruling, those barriers have been removed.[3]

### 1.   The settlement Class meets the numerosity requirement.

Rule 23(a)(1) requires that members of a class be so numerous that it would be impracticable to join them individually. *Pederson v. La. State Univ.,* 213 F.3d 858, 868 (5th Cir. 2000). In this case, there are over one thousand (1000) individual Pending Actions filed against these Defendants by Class Members. (*See* Exh. G to Settlement Agreement.) Thus, the numerosity requirement has been met. *Mullen v. Treasure Chest Casino LLC,* 186 F.3d 620, 624 (5th Cir. 1999) (class of 100 and 150 satisfies numerosity requirement).[4]

This Court's December 29, 2008 Order ("2008 Order") held that Plaintiffs failed to show numerosity was met for each of the four subclasses requested (a subclass for each state involved – Louisiana, Alabama, Mississippi, and Texas). As the Court noted in its 2008 Order, to establish numerosity a class representative must present some evidence or reasonable estimate of the number of class members. (D.E. 1014 at 9.) This Court concluded that Plaintiffs had not yet established numerosity as to each of the four subclasses sought therein. (*Id.* at 10.) At the time,

---

[3]This Court has the authority under Federal Rule 23 to revisit the decision to deny class certification. Rule 23(c)(1)(C) states: "An order that . . . denies class certification may be altered or amended before final judgment." This subsection of Rule 23 gives a federal district court authority to revisit the class certification issue for settlement purposes. The committee notes to the 2003 Amendments further state: "A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification *until they have been met*." These notes further support the notion that a court's decision to deny class certification can be revisited. In *In re Phenylpropanolamine (PPA) Product Liability Litigation,*, 227 F.R.D. 553, 564 (W.D.Wash. 2004) ("*PPA*"), the court, in approving a class action settlement in a products liability action, noted that it had "already declined to certify litigation classes" in the MDL. The Fifth Circuit specifically has recognized that a district court may later alter its decision to deny certification pursuant to Rule 23(c)(1). *Calderon v. Presidio Valley Farmers Association,* 863 F. 2d 384, 389 (5th Cir. 1989).

[4] This Court previously denied class certification for litigation purposes, in part, because Plaintiffs failed to establish numerosity for each of the four subclasses they sought at the time. No such subclasses are sought in this settlement class, and thus that reasoning does not apply here.

12

Plaintiffs sought four subclasses for each of the four states in which Plaintiffs resided in EHUs – Louisiana, Alabama, Mississippi and Texas – because of the variation in laws of those states.

For a settlement class, however, differing state laws are not relevant.  *See In re Serzone Products Liability,* 231 F.R.D. 221, 240 (S.D.W.Va. 2005) ("*Serzone")* (in approving a class settlement in litigation of a product liability nationwide class action, the court noted that while the litigated class presented individual issues such as "different state laws," in the context of settlement, such an issue was "rendered irrelevant"); *see also PPA,* 227 F.R.D. at 563 (approving class action settlement and noting that "different state laws would have more import in the context of litigation than in settlement").

Here, therefore, no subclasses for each state are sought in this settlement class.  Plaintiffs can now establish that the Class consists of at least 1000 members and clearly meets the numerosity requirement.  (*See* Exh. G to Settlement Agreement.)

### 2.   The settlement class meets the commonality requirement.

The commonality requirement of Rule 23(a)(2) is not a demanding test.  Commonality is fulfilled when the resolution of at least one issue will affect all or substantially all of the putative class members. *Mullen*, 186 F.3d at 625. Several common issues exist in this case, most notably the uniform standard of care based on the uniform HUD Code.   In addition, all of the plaintiffs in this case allege injuries due to formaldehyde exposure.  *See PPA,* 227 F.R.D. at 561 (holding that commonality is met for settlement purposes in part because "[a]ll members of the Class allege injuries from the ingestion of a Dexatrim product containing PPA").

The 2008 Order held that Plaintiffs failed to show commonality was met because this case does not involve a single product, but rather multiple different manufacturers with multiple products, such that "a determination of fault as to one defendant will not answer the question as

to any other defendant." (D.E. 1014 at 12.) This Court also held that Plaintiffs failed to show commonality because the specific level of formaldehyde, and the resulting symptoms, suffered by each plaintiff varied. (*Id.*)

These deficiencies do not exist with respect to the proposed settlement Class. On May 29, 2009, the Court granted Defendants' motion to dismiss based on federal preemption and restricted Plaintiffs' claims to a uniform standard of care based on the federal HUD Code. (D.E. 1629.) Every class member faces the same hurdle with regard to liability. Additionally, the Special Master will submit to the Court a Class Benefit Formula, and will consider therein any significant variation in symptoms suffered by a class member.

### 3.   The settlement class meets the typicality and adequacy of representation requirements.

Like commonality, the typicality requirement of Rule 23(a)(3) is not demanding. *Stirman v. Exxon Corp.,* 280 F.3d 554, 562 (5th Cir. 2002) (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)). A class representative's claims are typical of the proposed class when his or her claims and legal theories arise from a singular nucleus of operative facts as the claims and legal theories of absent class members. *Mullen*, 186 F.3d at 625; *see also Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir. 1993). In this case, the Class Representatives' claims in this settlement class are typical of the Class because, again, all claims in this case have the same standard of care.

Rule 23(a)(4)'s adequacy requirement requires a court to consider: (1) whether the class representatives have interests that conflict with the class, (2) whether the class representatives will vigorously pursue the litigation on behalf of the class, and (3) whether class counsel are competent, qualified, experienced and able to conduct the litigation. *Stirman*, 280 F.3d at 563; *James,* 254 F.3d at 571.

In this case, the interests of the Class Representatives are sufficiently aligned with those of the Class, and they have vigorously pursued this litigation.  (Meunier Decl. ¶¶ 4-6, 8; Perry Decl. ¶ 3.)  The PSC meets the adequacy requirement because it is comprised of competent and experienced class action attorneys, and because it has secured and submitted a fair and adequate settlement for the Court's preliminary approval.  *Parker*, 667 F.2d at 1211; (Meunier Decl.  ¶¶ 2, 4-6, 8).

The 2008 Order held that Plaintiffs failed to show typicality and adequacy of representation because of the factual variations as to each individual regarding causation and injury.  (D.E. 1014 at 17, 21-22.)  The Court also held that typicality was lacking because different state laws governed Plaintiffs' manufacturer liability claims, individual issues of specific medical causation were dominant, and Plaintiffs resided in different models of EHUs. (*Id.* at 15-17.)  As shown above, however, the Court's May 29, 2009 preemption Order ("2009 Order") and the Class Benefit Formula resolve these issues.  The 2008 Order found that class counsel was adequate but that the class representatives were not adequate because their claims were not typical.  (*Id.* at 20-21.)  Again, the 2009 Order and Class Benefit Formula resolve these adequacy issues.  *See also PPA,* 227 F.R.D. at 561 (in approving class settlement of a product liability class action, holding that the claims of class representatives who asserted different injuries were nonetheless typical because they were "reasonably co-extensive" with those of other class members).

As to adequacy of representation, there is no "futures" problem of the sort identified in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-28, 117 S. Ct. 2231 (1997) (affirming the Third Circuit's vacating a class settlement in part because the interests of those class members with current asbestos injuries conflicted with those of class members who had no current injuries

but possibly would in the future).  Here, the only credible scientific evidence of latent injuries linked to formaldehyde exposure is for nasopharyngeal cancer and myleloid leukemia.  (Meunier Decl. ¶ 7 n.1.)  Claims for those two cancers not existing as of the Claim Form Deadline have been excluded from this settlement.

Thus, there is no *Amchem* "futures" problem with this proposed settlement.  *See PPA*, 227 F.R.D. at 562 (in approving class action settlement in products liability case, the court concluded there was no *Amchem* "futures" problem "because there is no scientific evidence of latent injuries from the ingestion of PPA," and thus "there is no class of potential future claimants, as in *Amchem*");  *Serzone,* 231 F.R.D. at 238 ("in contrast [to *Amchem*], there is no scientific evidence of latent or progressive liver injuries arising from the ingestion of Serzone nor does the class have to accommodate future claimants").

## 4.   The settlement class meets the predominance requirement.

A class may be certified as a Rule 23(b)(3) class if the court finds that (1) questions of law or fact common to the class predominate over individualized questions, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the dispute.  FED. R. CIV. P. 23(b)(3).  Unlike a litigated class, manageability is not an issue.  *See Amchem,* 521 U.S. at 620 ("[A] district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial").  (internal citation omitted)).

The predominance inquiry tests whether a proposed class is cohesive enough to warrant adjudication by representation.  *Serzone,* 231 F.R.D. at 239.  Because there is no trial of a settlement class, individualized questions, such as specific medical causation or the application of different state laws to class members from different states, do not destroy class cohesion and

thus are not barriers to class certification.  *Id.* at 240; *PPA,* 227 F.R.D. at 562-63; *Klein,* 705 F.Supp.2d at 668-69.  Here, predominance is also met because there is one standard of care applicable to all claims.

The 2008 Order held that Plaintiffs failed to show predominance due to numerous individualized factors:  (a) the case involves hundreds of models of homes manufactured by dozens of different manufacturers;  (b)  each plaintiff's habits, such as how often they open windows or use air conditioning, vary greatly; (c)  each plaintiff's exposure to formaldehyde from sources other than their EHU vary greatly;  (d)  some plaintiffs may be smokers and thus have a cause of injury other than formaldehyde exposure;  (e)  each plaintiff's injury is unique.  (D.E. 1014 at 24-27.)  The 2008 Order also found that individualized issues of different state laws, specific medical causation, and EHU models would predominate over common issues.  (*Id.* at 25-27.)  As shown above, the variation in state laws is not an issue for this settlement class, the standard of care is now identical for all claims following the preemption ruling, and the Special Master will consider a Class Benefit Formula to accommodate any extreme variation in medical condition.  Moreover, because there will be no trial of the proposed settlement Class, the individualized questions identified in the 2008 Order do not destroy class cohesion and thus are not barriers to class certification.  *See Serzone*, 231 F.R.D. at 240; *PPA,* 227 F.R.D. at 562-63; *Klein,* 705 F.Supp.2d at 668-69.

### 5.  The settlement class meets the superiority requirement.

The superiority inquiry tests whether resolving a dispute on a class basis will "achieve economies of time, effort, and expense, and promote. . .uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Serzone,* 231 F.R.D. at 240 (quoting *Amchem*, 521 U.S. at 615).  Settling this case as a

17

class action will achieve significant economies of time, effort and expense for the Class and for the Court. *See Serzone*, 231 F.R.D. at 240. Litigating the claims in individual lawsuits would consume many more judicial resources. *See id.*

The Parties have conducted three bellwether trials. Each trial has taken approximately 11 days, with each involving thousands of hours of preparation. Plaintiffs have been taxed with Defendants' costs for those three bellwether trials (a total of almost $500,000.00). There are currently two appeals pending from those trials. (Meunier Decl. ¶ 8.)

Approving this settlement will end the excessive bleeding of costs by both sides in litigation that has dealt the Plaintiffs one blow after another. Distribution of the Total Settlement Fund will give Plaintiffs some immediate relief after years of fruitless litigation. *See PPA,* 227 F.R.D. at 563-64 (in approving class action settlement, court noted that several defense verdicts had been reached in state court PPA cases and that "mass tort litigation places an unusual strain on court dockets," and that each individual claim, "absent the settlement, could result in costly, time-consuming proceedings").

The 2008 Order held that Plaintiffs failed to show superiority due to the variations in applicable state law, the dozens of class representatives who would want to testify on their own individual behalf; the dozens of defendant manufacturers who would want to offer their own witnesses, and the potential resulting jury confusion. (D.E. 1014 at 30-31.)

All of these issues are now moot in the settlement context. Only claims with a common standard of care remain in the case, and the fact that the proposed Class is now a settlement class "moots concern that trial would present intractable problems of management." *Serzone*, 231 F.R.D. at 237. Indeed, the fact that the Court has previously declined to certify a litigation class actually favors the approval of this settlement Class. *See PPA,* 227 F.R.D. at 564. If the

settlement is not approved, each Class Member's claim will have to be adjudicated on an individual basis, placing a tremendous strain on the judicial system.  *Id.; see also Strong v. Bellsouth Telecomms. Inc.,* 137 F.3d 844, 847 (5th Cir. 1998) (Fifth Circuit impliedly accepted settlement class certified after district court denied class certification for litigation purposes).

Finally, several federal courts have approved the settlement of mass tort class actions involving personal injuries, despite the problems that these cases would have posed for a litigated class.  *See, e.g., In re Diet Drugs Prods. Liab. Litig.,* 385 F.3d 386 (3d Cir. 2004); *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 176 F.R.D. 158 (E.D.Penn. 1997); *Batchelder,* 246 F.Supp.2d 525 (alleging creosoting process from a plant contaminated the groundwater and released harmful vapors, mist and dust into the community); *Olden v. Gardner,* 294 F. App'x 210 (6th Cir. 2008) (holding that district court did not abuse its discretion in finding class settlement to be fair and reasonable, in case alleging personal injury and property damage from a cement plant producing and emitting cement kiln dust); *Joel v. Giuliani,* 218 F.3d 132 (2d Cir. 2000) (affirming district court's approval of class settlement in case brought by children who had suffered severe abuse and neglect in the child welfare system).

The Rule 23 requirements for this settlement class have been met.

## **CONCLUSION**

The proposed settlement is fair, adequate and reasonable to the Class, and the proposed settlement Class complies with the applicable requirements of Rule 23.  As a result, the Court should grant its preliminary approval to the Settlement Agreement.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:     s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:     504/522-2304
        Facsimile:      504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:     504/522-2304
        Facsimile:      504/528-9973
        jwoods@gainsben.com


        **COURT-APPOINTED PLAINTIFFS'
        STEERING COMMITTEE**

            ROBERT M. BECNEL #14072
            RAUL BENCOMO, #2932
            ANTHONY BUZBEE, Texas #24001820
            FRANK D'AMICO, JR., #17519
            ROBERT C. HILLIARD, Texas #09677700
            MATT MORELAND, #24567
            DENNIS C. REICH Texas #16739600
            MIKAL C. WATTS, Texas #20981820



            s/ Thomas W. Thagard, III
            THOMAS W. THAGARD, III
            **DEFENDANTS' LIAISON COUNSEL**
            Maynard Cooper & Gale, PC

                          20

1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, Alabama 35203
Telephone:     205/254-1091
Facsimile:     205/254-1999
tthagard@maynardcooper.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier

21