CAUSE NO. D189-038

| | | |
|---|---|---|
| GERALD WATSON, SR., and GLORIA WATSON | § § § § | IN THE DISTRICT COURT OF |
| VS. | § § § | JEFFERSON COUNTY, TEXAS<br>136th JUDICIAL DISTRICT |
| HEARTLAND RECREATIONAL VEHICLES, LLC | § § § | JURY TRIAL DEMANDED |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs, GERALD WATSON, SR., and GLORIA WATSON, complain of Defendant HEARTLAND RECREATIONAL VEHICLES, LLC, and for cause would show as follows:

### I.
### DISCOVERY PLAN

Discovery in this matter will be conducted pursuant to Level 2.

### II.
### PARTIES

Plaintiff, GERALD WATSON, SR., is a citizen of the State of Texas.

Plaintiff, GLORIA WATSON, is a citizen of the State of Texas.

Defendant Heartland Recreational Vehicles, LLC (hereinafter "Heartland") is a foreign limited liability company doing business in Texas.

### III.
### VENUE AND JURISDICTION

Venue is proper in this matter because all or a substantial part of the events or omissions giving rise to this claimed occurred in this County.

The amount in controversy is within the jurisdictional limits of this Court. The Court has jurisdiction over this matter in that Defendant does business in Texas. Further, diversity jurisdiction



does not exist in this matter under 28 U.S.C. §1332 because Plaintiffs all stipulate that their damages do not exceed $75,000, exclusive of interest and costs.

## IV.
## FACTUAL ALLEGATIONS

At all pertinent times hereto, Heartland was engaged by the Federal Emergency Management Agency (hereinafter "FEMA") to sell temporary housing units for provision to the Plaintiffs as temporary housing following Hurricanes Katrina and Rita.

On information and belief, Heartland expedited production of these housing units, and, on information and belief, resorted to using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing units occupied by each Plaintiff containing higher than normal levels of formaldehyde.

On information and belief, the housing unit of each Plaintiff, including those units which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, deviated from Government specifications pertaining to the safety of the unit as a residence.

Plaintiffs submit that each and all of the housing units which are at issue herein, both those which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, did not conform to any Government-imposed specifications which addressed the design and/or construction of the housing units pertinent to formaldehyde levels.

Plaintiffs submit that each of the housing units at issue, both those which were manufactured prior to the hurricanes and those later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to Heartland's use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the

2

Federal Government's intended use of the housing units as temporary residences for at least 18 months, but that Heartland failed to warn the Federal Government about these dangers, which initially were not known to the Federal Government.

Plaintiffs submit that Heartland ignored, or concealed and/or condoned the concealment of, the fact that each and all of the housing units at issue contained dangerous levels of formaldehyde due to Heartland's use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, all in order to sell Heartland's products, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions.

Each and all of the Plaintiffs spent significant time in the FEMA-provided housing units manufactured by Heartland and provided to Plaintiffs by the Federal Government. As a result, the Plaintiffs unwittingly were exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing units.

Heartland knew or should have known of the health hazards inherent in the products it constructed, by familiarity with industry standards and published medical studies.

As a result of the foregoing, Plaintiffs were caused to sustain injuries including, but not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural

disaster, as well as, all general, special, incidental and consequential damages as shall be proven, but in no event to exceed $75,000 each, exclusive of interest and costs.

## V.
## CAUSES OF ACTION

### A. TEXAS PRODUCTS LIABILITY ACT

Plaintiffs re-allege each and every allegation set forth above.

Heartland, at all relevant times, was in the business of designing and manufacturing the housing unit(s) for commercial gain and placed the housing unit in the stream of commerce.

The housing unit(s) contained design, manufacturing and/or marketing defects at the time the housing unit left Heartland's possession and/or control.

Those defects caused the housing unit(s) to be unreasonably dangerous and such defects were a producing cause of each Plaintiff's damages.

The design of the housing units, using plywood, press board, other composite wood products and other products that contain formaldehyde is defective and posed an unreasonable risk of harm to each Plaintiff.

Further, the use of plywood, press board, other composite wood products and other products that contain formaldehyde constitutes a defect in composition or manufacture that posed an unreasonable risk of harm to each Plaintiff.

Additionally, Heartland failed to adequately warn each Plaintiff, the end user of each product, of the dangers associated with formaldehyde exposure, the risk of exposure to formaldehyde by using such products, and the means to mitigate such risks, which constitute a marketing defect.

4

The defects in Heartland's housing units are the result of and/or include, but are not limited to, the following:

a. Inherent characteristics, known to Heartland which gave each product such a potential for causing health problems as to render the product unreasonable per se;

b. Lack of warnings or lack of sufficient warnings of the inherently dangerous properties of each product when used in the fashion for which they were anticipated or should have been anticipated being used;

c. Lack of instructions or lack of sufficient instructions for eliminating or minimizing the health risks inherent in the use of the product;

d. Lack of sufficient inspections by Heartland of its product to ensure that each product contained sufficient warnings of the dangerous properties of the products;

e. Lack of reasonable inspections by Heartland of its products to ensure that each product contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of the product;

f. Lack of testing or lack of sufficient tests to determine the effects and/or the risks of formaldehyde fumes on intended users of each product or their guests; and

g. Defective designs calling for the inclusion of materials which included formaldehyde, when equally suitable materials which did not contain formaldehyde were available, would have prevented or significantly reduced the risk of each Plaintiff's damages without substantially impairing the product's utility, and which were economically and technologically feasible at the time each product left Heartland's control.

The defects in the housing units rendered each product unreasonably dangerous and each defect was a producing cause of each Plaintiff's damages, as set forth herein. Each Plaintiff's damages resulted from the normal, foreseeable, and intended use of the product and equipment, without substantial alteration, in the condition in which Heartland sold the housing units, or in which they left Heartland's control.

Each Plaintiff was an intended and foreseeable user of the housing units, and damages and losses to the plaintiffs through normal, foreseeable and intended use of the product, could reasonably be anticipated by Heartland.

If Heartland claims that any of its housing units are governed by any local, state or federal government's procedures, regulations or requirements for building or marketing the housing units, then Plaintiffs would show that:

a. Heartland did not follow such procedures, regulations or requirements and that each housing units did not and does not comply with such procedures, regulations or requirements;

b. Even if such procedures, regulations or requirements apply, and even if Heartland built and manufactured the housing units according to such procedures, regulations or requirements, then the housing units still contain manufacturing flaws or defects; and/or

c. Any such safety standards, regulations or requirements are or were inadequate to protect the public from unreasonable risks of injury or damage caused by the housing units; and/or

6

    d.    Heartland withheld or misrepresented information or material relevant to the government's or agency's determination of adequacy of the safety standards or regulations at issue in this lawsuit.

**B.   NEGLIGENCE**

Plaintiffs re-allege each and every allegation set forth above.

At all times material, Heartland was the designer, marketer, manufacturer, distributor, and/or seller of the housing unit(s), which have caused plaintiffs' injuries.

Heartland owed a duty to each Plaintiff to provide safe housing units that did not emit unsafe levels of formaldehyde.

Heartland knew or should have known that when it provided the housing units to the general public or directly to FEMA that the housing units would be used in the manner that each Plaintiff herein used the housing units.

Heartland breached its duty to each Plaintiff in failing to act reasonably in the design, marketing, distribution and sale of the housing unit; specifically by:

    a.    Failing to provide any/or sufficient warnings regarding the inherently dangerous properties of each housing unit when used in the fashion for which they were anticipated or should have been anticipated being used;

    b.    Failing to provide any/or sufficient instructions for eliminating or minimizing the health risks inherent in the use of the housing unit, in particular, the risk of the exposure to formaldehyde;

    c.    Failing to adequately and properly inspect the housing unit to ensure that the housing units contained sufficient warnings of their dangerous properties of the product, in particular, the risk of the exposure to formaldehyde;

7

d. Failing to adequately and properly inspect the housing unit to ensure that such products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of the product, in particular, the risk of the exposure to formaldehyde;

e. Failing to test or lack of sufficient tests to determine the effects and/or the risks of formaldehyde fumes on intended users of the housing unit or their guests;

f. Failing to properly design the housing unit, including inappropriate designs calling for the inclusion of materials which included formaldehyde, when equally suitable materials which did not contain formaldehyde were available, which would have prevented or significantly reduced the risk of each Plaintiff's damages without substantially impairing the housing unit's utility, and which were economically and technologically feasible at the time the housing unit left Heartland's control;

g. Failing to properly manufacture the housing unit by incorporating materials in the housing unit which included formaldehyde, when equally suitable materials which did not contain formaldehyde were available, which would have prevented or significantly reduced the risk of each Plaintiff's damages without substantially impairing the housing unit's utility, and which were economically and technologically feasible at the time the housing unit left Heartland's control; and

h. Failing to disclose to FEMA and/or each Plaintiff that the housing unit emitted formaldehyde fumes and that such fumes caused health problems, despite the fact that Heartland knew of the dangers of formaldehyde exposure and the emission of formaldehyde from the housing unit.

8

Heartland's breaches were a proximate, direct and/or producing cause of each Plaintiff's damages, as set forth herein.

### C. BREACH OF IMPLIED WARRANTY

Plaintiffs re-allege each and every allegation set forth above.

At times material herein, Heartland impliedly warranted that each housing unit was made in a good and workmanlike manner, and would be merchantable and habitable, and were fit for their intended purpose as safe and compliant housing units to be used, among other things, to house each Plaintiff.

As set forth herein, each housing unit was not fit for its intended purpose as safe and compliant housing unit for each Plaintiff.

Therefore, Heartland breached these warranties.

Each Plaintiff has notified Heartland of this breach, or has been unable to do so because the housing unit has been removed in many cases.

As set forth herein, Heartland's conduct was a producing cause of each Plaintiff's damages incurred and set forth herein.

### D. VICARIOUS LIABILITY

Plaintiffs re-allege each and every allegation set forth above.

Defendant Heartland Recreational Vehicles, LLC is legally responsible to Plaintiffs for the negligent conduct of its employees, agents, servants and representatives under the legal doctrines of respondeat superior, agency and/or ostensible agency because these individuals were at all times material hereto agents, ostensible agents, servants and/or employees of Defendant Heartland Recreational Vehicles, LLC, and were acting within the course and scope of such

9

agency, servitude or employment. As a result thereof, Heartland is vicariously liable for all negligence of its employees, agents, servants and representatives.

## VI.
## EXEMPLARY DAMAGES

Plaintiffs re-allege each and every allegation set forth above.

Under the laws of the State of Texas, each Plaintiff seeking relief under the statutory provisions set forth herein is also entitled to awards for exemplary/punitive damages as are appropriate and necessary under these facts.

## VII.
## Request for Rule 194 Disclosure

Pursuant to Texas Rule of Civil Procedure 194, Plaintiffs request that Defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194.2(a)-(k), Tex. R. Civ. P.

## VIII.
## STIPULATION

Plaintiffs hereby stipulate that the damages they are seeking do not exceed $75,000 each, exclusive of interest and costs.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for judgment against Defendant in an amount not to exceed SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS each, plus pre- and post-judgment interest at the legal rate, for all costs of court, and all such other and further relief, at law and in equity, to which they may be justly entitled.

**PLAINTIFFS RESPECTFULLY REQUEST A TRIAL BY JURY.**

Respectfully submitted,

THE BUZBEE LAW FIRM

*[signature]*

Anthony G. Buzbee
Texas Bar No. 24001820
Peter K. Taaffe
Texas Bar No. 24003029
JPMorgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Tel.:   (713) 223-5393
Fax.:   (713) 223-5909

ATTORNEYS FOR PLAINTIFFS