```
                                                                    1


 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
 2
 3
     IN RE: FEMA TRAILER            *    MDL NO. 1873
 4          FORMALDEHYDE PRODUCTS   *
            LIABILITY LITIGATION    *    SECTION "N"(4)
 5                                  *
                                    *    JUDGE ENGELHARDT
 6                                  *
     * * * * * * * * * * * * * * *
 7
 8
 9          The 30(b)(6) videotaped deposition upon oral
10   examination of FOREST RIVER by DOUG GAEDDERT, a
11   witness produced and sworn before me, Patrice E.
12   Morrison, RMR, CRR, Notary Public in and for the
13   County of Marion, State of Indiana, taken on behalf of
14   the Plaintiffs at The Marriott, 123 North Saint Joseph
15   Street, South Bend, Indiana, on August 6, 2008, at
16   9:02 a.m., pursuant to the Federal Rules of Civil
17   Procedure.
18
19
20              STEWART RICHARDSON & ASSOCIATES
                Registered Professional Reporters
21                    One Indiana Square
                         Suite 2425
22                  Indianapolis, IN  46204
                       (317)237-3773
23
24
25
```

**EXHIBIT A**

```
 1        opinion, you're asking --
 2    Q   Right.
 3    A   -- no fact, just what it meant to me.
 4    Q   This is Mike writing to you after having
 5        conversations with you.  Correct?
 6    A   Right.
 7    Q   What did that line mean to you?
 8    A   To me that meant that they wanted an impressive
 9        number from us to bid on in a short time frame to
10        improve chances of receiving a 35,000 unit order or
11        substantial part thereof.
12    Q   Okay.  In that written statement that we referred
13        to earlier by Peter Liegl, on page 2 at the top --
14        do you have a copy of it in front of you?  Right
15        here.
16            MR. GIEGER:  Read it before you answer the
17        question.
18    Q   All right.  Do you see the first sentence at the
19        top?
20    A   Yes.
21    Q   "This time, NACS asked if we could produce 35,000
22        units for it to sell to FEMA."
23            Is that an accurate statement?
24    A   Yes.
25    Q   "We knew we had to figure out what we could do --
```

```
 1        consistent with our production capacity, our
 2        ongoing operations and commitments, and our quality
 3        standards."
 4             Is that also a correct statement, to the best
 5        of your knowledge?
 6   A    Yes.
 7   Q    "But we wanted to help, even if it meant
 8        interrupting some of our other planned production.
 9        We knew we had to make a decision that made sense
10        for our workers, our suppliers, our dealers and our
11        customers.  So, our team at Forest River came up
12        with a production schedule that allowed us to build
13        5000 trailers to help Gulf Coast victims."
14             Is that an accurate statement?
15   A    Yes.
16   Q    So in response to NACS's request of Forest River
17        for 35,000 units, Forest River decided to produce
18        5000.  Is that an accurate statement?
19   A    We didn't have an order.  We supplied a quote, a
20        production schedule based on 5000, that's correct.
21   Q    Right.  I didn't say you had an order, but as
22        stated here, there was a request for 35,000 --
23   A    Yes.
24   Q    -- as you previously stated --
25   A    Yes.
```

```
 1    Q  -- and as Peter Liegl stated.  There was a
 2       request --
 3    A  Liegl.
 4    Q  -- for 35,000.
 5    A  Yes.
 6    Q  And in response to that request, Forest River
 7       decided it would produce 5000.
 8    A  That we were -- we were in a position to produce
 9       5000 efficiently, yes.
10    Q  All right.  And is it also true that Forest River
11       eventually produced those 5000 units --
12    A  Yes.
13    Q  -- to NACS in response to Hurricane Katrina and
14       Rita?
15    A  Yes.
16    Q  And is it also true, as testified to and read into
17       the record by Peter Liegl, that another 5- to 6000
18       Forest River units, and perhaps a few more directly
19       from dealers, were provided to victims of Katrina
20       and Rita?
21          MR. GIEGER:  Object to the form of the
22       question.  Information not in evidence.
23          MR. MILLER:  Objection.  Foundation.
24          MR. GIEGER:  Answer again, if you can.
25    A  Two things:  One, it's Peter Liegl; if he ever
```

```
 1      2004.  "Gentlemen, please review these
 2      specifications noting the differences we have noted
 3      and those items you may notice.  This is the new
 4      direction FEMA is going and as such we hope to
 5      build great quantities of these new units."
 6           You see that?
 7    A Yes, sir.
 8    Q You see the next paragraph down?
 9           "We do not currently offer any non" -- what is
10      that? -- "sliding models in the size range of 32 to
11      35 feet.  To the best of our knowledge, Forest
12      River does not build one.  Can we overcome this?"
13    A Yes.
14    Q You see that?  That's what I'm referring to.
15    A I understand.
16    Q Okay.
17    A Yes.
18    Q So did you have to modify the model in some way to
19      comport with this request from FEMA to provide a
20      non-sliding model?
21    A We designed a model specifically to meet the FEMA
22      specification.
23    Q Thank you, that's what I'm getting at.  That's what
24      I thought from my review of the documents.  So you
25      understand my question; right?  You did have to
```

```
 1         modify your model line --
 2    A    To meet the specifications.
 3    Q    -- to meet the specs set out by FEMA.
 4    A    Not our manufacturing.
 5    Q    Yes.  Your model.
 6    A    Okay.
 7    Q    You had to modify the model.  We're clear on that.
 8    A    Clear.
 9    Q    Okay.  If you'll look to the second page under Tab
10         24.  This is a letter dated June 30, 2004, from
11         Richard Spillane, Contracting Specialist from FEMA.
12         This was a document that you provided to us through
13         the production request with a Bates number of
14         0003522.  See that document?
15    A    Yes.
16    Q    All right.  It says here -- does it not? -- to
17         Prospective Bidders:  "This Request for Proposal...
18         is for a new Travel Trailer specification that FEMA
19         desires to procure.  These units are to be utilized
20         in future disasters at various locations in the
21         United States."
22              Is that correct?
23    A    Yes.
24    Q    All right.  So it was your understanding that FEMA
25         had requested a new travel trailer specification;
```

```
 1       when you replaced that with low emission materials,
 2       the increased cost per unit was about $10.  Is that
 3       right?
 4    A  That's my best recollection.
 5    Q  Now, at the same time that you were manu- -- when
 6       you manufactured these 5000 units for FEMA, some of
 7       these were manufactured in Oregon and California
 8       where you were manufacturing using low emission
 9       materials, including low emission decorative
10       hardwood materials; right?
11    A  That's correct.
12    Q  Was there a cost differential in producing the
13       units out of California from a supply point of view
14       because you used the low emission materials versus
15       the Indiana facility?
16          MR. GIEGER:  Object to form.  Foundation.
17          If you know.
18    A  There would have been a cost difference borne by
19       us, because material costs are typically several
20       percent higher there anyhow.  The LFE would have
21       added additional cost.  We did not have a
22       difference in what we bid to NACS.  And to my
23       knowledge NACS sold everything to the Government at
24       the same price, so basically --
25    Q  You haven't broken down that difference in cost
```