UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRIALER | * | MDL NO. 1873 |
|    FORMALDEHYDE | * | |
|    PRODUCTS LIABILITY | * | SECTION: N(4) |
|    LITIGATION | * | |
| | * | |
| This Document Relates to: | * | JUDGE:  ENGELHARDT |
| *Eloise Gums, et al. v. Forest River, Inc.,* | * | |
| Docket No. 11-410 | * | MAG:  CHASEZ |

**************************************************************************

## OPPOSITION TO PLAINTFFS' MOTION TO REMAND

**NOW INTO COURT,** through undersigned counsel, comes defendant, Forest

River, Inc., ("Forest River") and, with a full reservation of rights, files this Opposition to

Plaintiffs' Motion to Remand [Rec. Doc. 20423] and, based on the laws and facts stated herein,

avers that this matter has been properly removed to this Court on the following grounds:

(1)    Federal jurisdiction is proper in this matter under 28 U.S.C. §1332 as all plaintiffs named are diverse in citizenship from all named defendants and the amount in controversy more likely than not exceeds $75,000.00 per plaintiff.

    (a)    Plaintiffs' general allegation that no one plaintiff seeks more than $75,000.00 in damages is not dispositive.

    (b)    The category of damages sought in the Complaint and jurisprudence involving similar cases clearly demonstrates that, if proven, the plaintiffs' claims could be worth greater than $75,000.00.

        (i)    It is facially apparent from the Plaintiffs' Original Petition for Damages that potential damages in this matter exceed $75,000.00 for any individual plaintiff.

        (ii)    Alternatively, based a sample of awards granted by various juries for cases similar to the current matter, the allegations of the Plaintiffs, if proven at trial, are reasonably valued at over $75,000.00, thus invoking federal jurisdiction.

> (c)   Plaintiffs' "Declarations under Penalty of Perjury" are not binding stipulations and have no effect on this removal.

(2)   In addition and/or alternatively, federal jurisdiction over this case is proper under the Federal Officer Removal statute, 28 U.S.C.§ 1442(a)(1).  Forest River meets all three requirements established in the *Mesa* decision for jurisdiction.

> (a)   The federal government exercised the requisite federal control needed for jurisdiction under 28 U.S.C. § 1442(a)(1).

> (b)   Forest River established the plausibility of a "colorful defense" necessary for federal jurisdiction.

> > (i)   The United States approved reasonably precise specifications.

> > (ii)   Forest River's travel trailers conformed to FEMA's specifications.

> > (iii)   FEMA knew of formaldehyde in the trailers, but to the extent Forest River was obligated to "warn" FEMA about the dangers from formaldehyde, it did so.

## BACKGROUND

On December 29, 2010, Plaintiffs, through attorney Anthony Buzbee of the Buzbee Law Firm, filed the Original Petition in this action, entitled *"Eloise Gums, William Vaughn, Sr. and Charlene Vaughn v. Forest River, Inc."* and bearing Docket Number A189-040 (the "Complaint" or "Petition"), in the 58th Judicial District Court in Jefferson County, Texas.[1]  On February 1, 2011, Plaintiffs filed their First Amended Complaint for Damages (the "Amended Complaint") in the same court.[2]

On February 1, 2011, Forest River properly removed this matter to the Federal Court for the Eastern District of Texas.  Because this Petition arises solely from operative facts that are the subject of multidistrict litigation ongoing in the U.S. District Court for the Eastern District of Louisiana, entitled *In re: FEMA Trailer Formaldehyde Products Liability Litigation* and bearing

---

[1] *See* Case No. 11-0410, Rec. Doc. 1-2.
[2] *See* Case No. 11-0410, Rec. Doc. 1-1.

MDL docket number 07-1873, the Panel on Multidistrict Litigation subsequently transferred the case into the Eastern District of Louisiana.  Plaintiffs then filed a Motion to Remand in this matter on March 3, 2011, alleging that the Federal Court lacks jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1442.  Forest River respectfully submits that the Motion should be denied, and this Honorable Court should retain jurisdiction over the instant lawsuit.

**II.  Federal jurisdiction is proper in this matter under 28 U.S.C. §1332 as all plaintiffs named are diverse in citizenship from all named defendants and the amount in controversy more likely than not exceeds $75,000.00 per plaintiff.**

Under 28 U.S.C. § 1332(a), a federal court has diversity jurisdiction if the matter in controversy (1) exceeds $75,000.00, exclusive of interest and costs, and (2) is between citizens of different states. In 2005, the United States Supreme Court held that where the other elements of jurisdiction are present <u>and at least one named plaintiff in the action satisfies 28 U.S.C. §1332(a)'s amount-in-controversy requirement</u>, 28 U.S.C. §1367 authorizes supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the requisite amount.  *See Exxon Mobile Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 125 S.Ct. 2611, 2616-2628 (2005) (emphasis added). Therefore, once this Court obtains §1332 jurisdiction over a single plaintiff in this suit, the entire suit falls under this Court's §1367 jurisdiction.

In their Memorandum in Support of their Motion to Remand, Plaintiffs argue that this Court has no jurisdiction to hear this matter under 28 U.S.C. 1332 for three separate reasons: 1) Plaintiffs have "stipulated" that the amount in controversy is less than $75,000 per plaintiff, 2) the jurisdictional amount is not facially apparent from the Original Complaint, and 3) Forest River has set forth no facts or evidence showing the jurisdictional amount has been satisfied.  Each of these arguments is without merit.

A.　　　　Plaintiffs' general allegation that no one plaintiff seeks more than $75,000.00 in damages is not dispositive.

Plaintiffs, in their Memorandum in Support of their Motion to Remand, do not dispute that diversity of citizenship exists between the parties.[3]   The Plaintiffs, however, allege that the damages sought by each plaintiff, exclusive of costs and interest, is less than $75,000.00.[4]

In their Complaint, Plaintiffs attempt to specifically limit their damages by asserting that no individual plaintiff seeks more than $75,000.00, exclusion of interest or costs.   The "amount in controversy should be determined at the time of filing."   *White v. FCI USA, Inc.,* 319 F.3d 672, 674 (5th Cir. 2003).   In cases where the plaintiff pleads a specific amount of damages that exceeds the required amount in controversy, that amount controls if made in good faith.   *Allen v. R&H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir. 1995) *citing St. Paul Mercury Indem. Co. v. Red Cab Co.* 303 U.S. 283, 289 (1939); *Thrash v. New England Mut. Life Ins. Co.,* 534 F.Supp.2d 691, 693 (S.D. Miss. 2008.)   The converse holds true, barring removal if plaintiff pleads damages less than the jurisdiction amount. *Allen,* 63 F.3d at 1335.   However, a simple allegation by Plaintiffs that they are not seeking damages in excess of the jurisdictional amount is not dispositive.   *Zunamon v. Brown*, 418 F.2d 883 (8th Cir. 1969).

For pre-removal stipulations to be binding and, thus, preclude federal court removal, plaintiffs must affirmatively renounce the right to accept a judgment in excess of $75,000.00.   *Levith v. State Farm Fire and Cas. Co.,* Civil Action No. 06-2785, 2006 WL 2947906, *2 (E.D. La. 2006)(Vance, J.); *Crosby v. Lassen Canyon Nursery, Inc.,* Civil Action No. 02-2721, 2003 WL 22533617, *3 (E.D. La. 2003) (Vance, J.)  Plaintiffs "stipulation" in their complaint simply states that no single plaintiff seeks more than $75,000 at trial.   It does not affirmatively renounce their right to accept an amount over the jurisdictional limit in accordance with *Levith* and *Crosby.*   Thus, this "stipulation" is ineffective as it concerns this removal.

---

[3] *See* Memorandum in Support of Motion to Remand, Record Document #20423-1, p. 2.
[4] *Id.*

Because the allegation seeking to limit damages under the jurisdictional requisite is neither dispositive nor a "specific amount," the allegations of injury and damages sought must be properly evaluated before any determination as to jurisdictional amount may be made.  The allegation in Plaintiffs' Complaint that no plaintiff seeks more than $75,000.00, *per se,* is not enough to prevent federal jurisdiction under 28 U.S.C. §1332.  Furthermore, Plaintiffs have failed to show any state procedural rule binding them to their complaint and have failed to enter into a binding stipulation, which would limit their damages to less than the jurisdictional amount in compliance with *De Aguilar*.

Furthermore, Plaintiffs' Complaint violates the Texas Rules of Civil Procedure.  In a case involving un-liquidated damages, Rule 47 of the Texas Rules of Civil Procedure requires that the original petition contain only the statement that the damages sought are within the jurisdictional limits of the court.  Tex. R. Civ. P. 47(b).  A plaintiff should not state the amount of damages he seeks in his original petition.  *Capital Brick, Inc., v. Fleming Mfg.,* 722 S.W. 2d 399, 401 (Tex. 1986).  Plaintiffs' pleading of a maximum damages amount is, of course, an attempt to avoid federal jurisdiction; a stipulation with the potential for abusive manipulation by plaintiff, who may plead for damages below the jurisdictional amount in a state court with the knowledge that the claim is actually worth more.  *De Aguilar*, 47 F. 3d 1404, 1410 (5th Cir. 1995).  The case at bar is one claiming un-liquidated damages.  As such, Plaintiffs should not have pled any specific amount of damages pursuant to the Texas Rules of Civil Procedure. The Plaintiffs violated the Texas Rules of Civil Procedure purely in an attempt to avoid removal based upon diversity jurisdiction.

**B.      The category of damages sought in the Complaint and jurisprudence involving similar cases clearly demonstrates that, if proven, the plaintiffs' claims could be worth greater than $75,000.00**

Forest River bears the burden of showing that it is more likely than not that Plaintiffs' claims for damages exceeds the jurisdictional amount.  Where no <u>specific</u> amount is alleged in the Complaint, the party invoking federal jurisdiction may prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.  *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir. 1993);

5

*Thrash*, 534 F.Supp.2d at 693. The burden of preponderance of the evidence is met if (1) it is apparent from the face of the complaint that the claims are likely to exceed $75,000, or alternatively, (2) the defendant sets forth summary judgment type evidence of facts in controversy that support a finding of the requisite amount. *Manguno v. Prudential Property and Casualty Ins. Co.* 276 F.3d 720 at 723 (5th Cir. 2002), *citing De Aguilar*, 47 F.3d at 1412.

It is facially apparent from Plaintiffs' specific category of damages cited in their complaint, that the amount in controversy in this matter exceeds $75,000. Furthermore, a thorough evaluation of awards granted for similar claims of formaldehyde exposure in travel-trailers suggests that if Plaintiffs were able to prove their claims at trial, the amount in controversy in this matter would exceed $75,000.

1.      **It is facially apparent from the Plaintiffs' Original Complaint for Damages that potential damages in this matter exceed $75,000.00 for any individual plaintiff.**

In their Original Complaint for Damages, Plaintiffs state:

> "As a result of the foregoing, Plaintiffs were caused to sustain injuries including, but not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairment and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during a period of displacement from a natural disaster, as well as all general, special, incidental, and consequential damages which shall be proven, but in no event to exceed $75,000 each, exclusive of interest and costs."[5]

A defendant makes a showing that the jurisdictional amount is "facially apparent" from a reading of the complaint when the plaintiff's claims are likely to exceed $75.000.00. *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995). Under any manner of proof, jurisdictional facts must be judged at the time of removal, and post-petition affidavits are allowable only if relevant to that period of time. *Allen,* 63 F.3d at 1335 (emphasis added).

a.      **The U.S. Fifth Circuit Court of Appeals' decision in *In re 1994 Exxon Chemical Fire* discusses, in detail, the categories of damages alleged in chemical exposure cases which justify removal to federal courts.**

---

[5]  *See* Case No. 11-0410, Rec. Doc. 1-2, Plaintiff's Amended Complaint.

The Fifth Circuit has held that removal is justified where alleged damages in a chemical exposure case include:

"individual and familial suffering; injuries to physical and mental health, including, but not limited to, emotional distress and mental anguish from the knowledge of exposure to a hazardous substance; expenses incurred by reason of illness caused by the nuisance; fear and apprehension of further exposure to, and impact from, hazardous chemicals; economic and financial harm; loss of enjoyment of life and peaceful use of property; and, other consequential, incidental, general, and special damages."

*In re 1994 Exxon Chemical Fire,* 558 F.3d 378 (5th Cir. 2009).

The listed damages cited by the Federal Fifth Circuit in *In re 1994 Exxon Chemical Fire* closely mirror the listed damages alleged by Plaintiffs here, justifying this removal under the "facially apparent" standard set forth in *Allen, supra.*[6]

**b.      Recent U.S. Fifth Circuit decisions hold that complaints that seek damages for disability and impairment support a substantially larger monetary basis for federal jurisdiction.**

In addition to the damages cited in *In re 1994 Exxon Chemical Fire,* Plaintiffs cite damages for "past and future physical impairments and disability,"[7] which, under federal jurisprudence, supports a substantially larger monetary basis for federal jurisdiction. The Federal Fifth Circuit has noted that emotional distress, functional impairment, and disability are the kinds of damages that if alleged, "support a substantially larger monetary basis for federal jurisdiction." *Simon v. Wal-Mart Stores, Inc.* 193 F.3d 848, 851 (5th Cir. 1999).

In *Robinson v. Delchamps,* the plaintiff sought remand, citing a failure to establish the requisite jurisdictional amount of $75,000.00. The defendant argued that the jurisdictional amount was facially apparent from the plaintiff's petition, which cited nine separate types of damages, including physical and mental pain and suffering (past and future), loss of income (past and future), medical expenses (past and

---

[6] *See also Aisola v. Exxonmobil Corp.,* No. 08-1105 2009 WL 1455788 at *1 (E.D. La. 05/22/09) where the Eastern District held that the current requisite jurisdictional amount of $75,000.00 was facially apparent from the Petition (Complaint) when asserting the exact same type of alleged damages in *In re 1994 Exxon Chemical Fire* and other chemical exposure cases.

[7] *See* Case No. 11-0410, Rec. Doc. 1-2, Plaintiff's Amended Complaint.

future), loss of enjoyment of life (past and future), and <u>disability (past and future)</u>. The Louisiana Eastern District held, "[t]he number of claims, the nature of those claims, and the allegations that plaintiff will continue to suffer damages into the future, all weigh against plaintiff's argument.  <u>It is facially apparent that if all damages alleged in this case are recovered, the amount of the judgment would likely be well in excess of the jurisdictional amount</u>." *Robinson v. Delchamps, Inc.,* No. 98-0503 1998 WL 352131 (E.D. La. 06/30/98) (emphasis added). In a similar holding, the Western District of Louisiana has found that the jurisdictional amount of $75,000.00 was facially apparent where the plaintiff sought damages for physical pain and suffering (past and future); mental anguish, emotional distress, worry, anxiety, and inconvenience (past and future); medical and related expenses (past and future); loss of enjoyment of life; and <u>disability and impairment</u>. *Lowery v. J.C. Penny Corp., Inc.* No. 06-1710 2006 WL 3827527 (W.D. La. 12/28/06) (*citing Robinson*)(emphasis added).

Furthermore, the Federal Fifth Circuit has found that the Louisiana Eastern District did not err in finding that it was facially apparent from the plaintiff's petition that the amount in controversy exceeded $75,000 when the petition sought damages for past and future medical expenses, past and future pain and suffering, past and future lost wages and <u>past and future disability</u>**.** *Davis v. Grider,* 214 F.3d 1350, 2000 WL 634655 (5th Cir. 2000) (emphasis added). These cases stand for the proposition that a certain, specific category of injury – disability – when alleged in a Complaint, as it is here, causes the requisite amount under 28 U.S.C. §1332 to become facially apparent under the standard set in *Allen, supra.*

> **c.   The Louisiana Eastern District's decision in *Aisola* is directly on point on this issue.**

Recently and most directly on point, the Eastern District of Louisiana found that a jurisdictional amount requirement of $75,000.00 was facially apparent from the Petition (Complaint) in a chemical exposure case asserting damages directly aligned with those asserted in the current matter.

In *Aisola,* thirteen minor school children were allegedly injured when the defendant negligently released chemicals into the air.  *Aisola v. Exxonmobil Corp.,* No. 08-1105 2009 WL 1455788 at *1 (E.D.

La. 05/22/09).  Each plaintiff cited damages "inclusive of past, present, and future medical expenses; past, present, and future lost wages; past, present, and future mental anguish; past, present, and future pain and suffering; disability and disfigurement; and other damages."  *Id.* at *2.  Furthermore, the plaintiffs claimed the exposure "necessitated and will further necessitate medical treatment."  *Id.*  The Court, based primarily on the *In re 1994 Exxon Chemical Fire* holding and a thorough discussion of damages sought for disability, found that it was facially apparent from the plaintiffs' petition that the amount in controversy exceeded $75,000.  *Id.*  Again, the determination that the Federal Court had jurisdiction under §1332 was made solely by an analysis of the category of injuries asserted.

The damages asserted in *Aisola* are almost identical to the damages asserted in the current matter. Both cases seek damages for 1) past and future mental anguish/pain and suffering, 2) past and future physical pain and suffering, 3) past and future medical expense, and 4) disability and impairment/disfigurement. The Plaintiffs here also seek damages not cited in *Aisola* such as past and future physical injury, loss of enjoyment of life, and exemplary damages.  Using *In re 1994 Exxon Chemical Fire, Aisola,* and *Robinson* as guides, it is facially apparent from the Plaintiffs' Complaint and Amended Complaint for Damages that if all category of damages alleged by the Plaintiffs were recovered, then this amount would more likely than not be in excess of $75,000.00.

> **d.      Plaintiffs seek exemplary damages which solidifies defendant's argument that the value of damages, if completely proven at trial, more likely than not exceeds $75,000.00.**

In addition to these above-cited categories of injuries seeking compensatory damages, the Plaintiffs seek exemplary damages under Texas law. This only increases the defendants' the potential exposure at trial.  It is well settled that, if Texas law permits exemplary/punitive damages attendant to the particular claims the plaintiff is seeking redress for, then those damages are included in computation of the amount in controversy.  *St. Paul Reinsurance Co., Ltd. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998); *Ruhgras AG v. Marathon Oil Co.,* 526 U.S. 574, 585-86 (1999) (by implication).  Claims for compensatory and punitive damages can be combined in determining jurisdictional amount.  *Jeffries v.*

*Silvercup Bakers, Inc.*, 434 F.2d 310 (7th Cir. 1970).  The Plaintiffs' allegation that they are entitled to exemplary damages only increases the potential value of each claim and solidifies the fact that the jurisdictional requisite is "facially apparent" from a clear reading of the Complaint.        Based on the Plaintiffs' own allegations of damages, Forest River has proved that the requisite amount in controversy under 28 U.S.C. §1332 is facially apparent from the Plaintiffs' Amended Complaint, and this Court need not look further.

> **2.    Alternatively, based a sample of awards granted by various juries for cases similar to the current matter, the allegations of the Plaintiffs, if proven at trial, are reasonably valued at over $75,000.00, thus invoking federal jurisdiction.**

Although Section II clearly indicates that the jurisdictional amount required under 28 U.S.C. §1332 is facially apparent from Plaintiffs' Complaint for Damages, in an abundance of caution and in accordance with *Luckett* and *White, infra*, Forest River submits the following jurisprudence which clearly shows that Plaintiffs' claims for damages could be reasonably calculated to exceed $75,000.00. To reiterate the law stated earlier, so long as one named plaintiff in this action meets the jurisdictional requisite amount under 28 U.S.C. §1332, then jurisdiction is obtained over all other plaintiffs.  *See Exxon Mobile Services, supra.*

If it is not "facially apparent" from a plaintiff's petition that the amount in controversy exceeds $75,000.00, the Court may rely on "summary judgment-type" evidence relevant to the amount in controversy at the time of removal to make the determination.  *White v. FCI USA, Inc.,* 319 F.3d 672, 675 (5th Cir. 2003); *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir.1999).  It is important to note that, despite requests from defendants, the plaintiffs have failed to submit any allegations or evidence of the actual symptoms and/or ill-health effects allegedly suffered as a result of the their alleged exposure.[8]

---

[8]   All Plaintiffs in FEMA formaldehyde exposure cases in the U.S. District Court for the Eastern District of Louisiana, entitled *In re: FEMA Trailer Formaldehyde Products Liability Litigation* and bearing MDL docket number 07-1873 have been ordered to fill out a "Plaintiff Fact Sheet" which asks the party to identify the   actual symptoms and consequences suffered as a result of the alleged formaldehyde exposure. It also asks the Plaintiff to identify medical providers and supply a medical history. Finally, it asks Plaintiffs to note  whether they have suffered from any property loss or devaluation as a result of the alleged exposure.

Thus, the only "summary judgment" type evidence that should be considered by this Court, in accordance with *White* and *Luckett,* is a jurisprudential sampling of the amount of damages awarded by various juries in similar cases involving formaldehyde exposure in mobile homes/trailers.

Four cases involving alleged formaldehyde exposure in mobile homes/trailers were presented to various juries on the state and federal level in which awards, both compensatory and punitive, were given to plaintiffs. In *Boelens,* a jury from the United States District Court for the Northern District of Texas awarded a mother and her two minor children $178,903.80 in compensatory damages for alleged injuries caused by formaldehyde fumes emitting from a mobile home. *Boelens v. Redman Homes, Inc.,* 748 F.2d 1058, 1061 (N.D. Tex. 1983).[9]  The jury also awarded the plaintiffs an additional $206,250.00 in punitive and discretionary damages. *Id.*

In *Tiderman,* the Washington State Supreme Court reversed the decision by an Appellate Court and reinstated a jury verdict of $566,500.00 for compensatory damages awarded to a single plaintiff for alleged formaldehyde exposure emitting from a mobile home after the plaintiff allegedly suffered eye, throat, and respiratory irritation as a result of the exposure. *Tiderman v. Fleetwood Homes of Washington,* 102 Wash.2d 334, 335 (Wash. 1984).

In *Troensegaard,* a California jury awarded a plaintiff $90,000.00 in compensatory damages, $55,000.00 in punitive damages, and levied a $90,000.00 "civil fine" against a mobile home manufacturer for alleged formaldehyde exposure suffered by the plaintiff in her mobile home. *Troensegaard v. Silvercrest Industries, Inc.,* 175 Cal.App.3d 218, 221 (Cal.App. 1 Dist. 1985).  The Appellate Court affirmed the compensatory award but reversed the award of $55,000.00 in punitive damages on Appeal. *Id.* at 230.  In *Alley,* two plaintiffs were awarded $20,000.00 and $30,000.00 respectfully in compensatory damages for injuries suffered as the result of alleged formaldehyde exposure from a mobile home. *Alley v. Gubser Development, Co.,* 785 F.2d 849, 853 (10th Cir. 1986).

---

[9]  The Federal Fifth Circuit overturned the jury's decision due to the fact that personal injury damages were not recoverable under Magnuson-Moss Warranty Act. *Boelens* at 1071.

Additionally, they were awarded a total of $510,000.00 in punitive damages against various defendants in the case. *Id* at 853-54.[10]

Thus, over the four cases examined involving formaldehyde exposure from mobile homes/trailers, the average compensatory award granted by juries was $126,486.25 per plaintiff. Furthermore, these juries also awarded a total of $902,250.00 in punitive or discretionary damages. These figures far exceed the jurisdictional requisite of $75,000.00 required by 28 U.S.C. §1332.  It should also be noted that these awards were granted between 1983-1986, some twenty-seven to twenty-four years ago. With the constant price increase of medical care and the natural decrease in the valuation of money over time, it is unreasonable to believe that the value of these types of cases has not increased in since the time in which they were decided.

The requisite amount under 28 U.S.C. §1332 is facially apparent from a clear reading of the categories of injuries asserted by the Plaintiffs the their Complaint for Damages under the standard set and jurisprudence found in *Allen, In re 1994 Exxon Chemical Fire, Robinson,* and *Aisola.*  Furthermore, awards granted for compensatory damages alone by juries in the 1980s in strikingly similar cases were, on average, about $50,000.00 more per plaintiff than the current jurisdictional requirement.  For the many reasons stated above, Forest River has met its burden for jurisdiction under 28 U.S.C. §1332.

### C.    Plaintiffs' "Declarations under Penalty of Perjury" are not binding stipulations. Thus, they have no legal effect in this matter.

Plaintiffs filed their First Amended Petition on February 01, 2011, the same day Forest River filed its removal.  Attached as an exhibit to this Amended Complaint were three documents entitled "Declarations under Penalty of Perjury."[11]  In these documents, each Plaintiff declares that he or she is not seeking damages in excess of $75,000 exclusive of interests or costs. These documents are ineffective for the reasons cited below.

---

[10] These punitive awards were reduced on Appeal to an unspecified amount. *Alley* at 857.
[11] *See* "Declarations under Penalty of Perjury," *in globo,* attached as Ex. A to Rec. Doc. #20423-1.

First, it should be noted that, if a defendant can prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount, removal is proper unless the plaintiff shows that at the time of removal he was legally certain not to be able to recover that amount." *Thrash*, 534 F.Supp.2d at 693 (quoting *Allen v. R&H Oil and Gas Co.,* 63 F.3d 1326, 1335 (5th Cir. 1995); *see St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938). The plaintiffs' burden of proving this legal certainty of not recovering more than the amount plead for in the complaint can be met by: (1) showing state procedural rules binding a plaintiff to his pleadings; or (2) filing with the complaint a binding stipulation or affidavit to that effect. *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1412 (5th Cir.1995). Statements found in Complaints, such as found here, that allege that plaintiffs "do not seek a judgment in excess of $75,000.00" do not constitute a "specific amount" under *Thrash* or *De Aguilar. See generally Jackson v. Balboa Insurance Co., et al.,* 590 F.Supp.2d 825 (S.D. Miss. 2008); *Manguno v. Prudential Property and Cas. Ins. Co.,* 276 F.3d 720, 722-23 (5th Cir. 2002).

The "Declarations under Penalty of Perjury" also do not meet the standards for a binding stipulation. In *Hamilton,* the federal court for the Southern District for West Virginia evaluated stipulations concerning the jurisdictional amount in controversy in a case seeking removal. The Court honored the stipulations because it was determined that these stipulations meet the requirements needed for a binding agreement. The Court noted that these stipulations:

1.   Unequivocally stated that Plaintiffs would not accept an amount greater than $74,000, <u>in any event</u> (magical words.)

2.   The stipulation was filed in the state court <u>prior to removal being filed.</u>

3.   The stipulation was notarized.

*Hamilton, Burgess, Young, & Pollard, PLLC, v. Markel American Ins. Co.,* 2006 WL 218200, (S.D. W. Vir. 2006), *citing as support Hicks v. Herbert,* 122 F.Supp.2d. 699, 701 (S.D.W.Va.2000).

Plaintiffs' current "Declarations Under Penalty of Perjury" fail to meet any of these three requirements. First, the Declarations state, "the damages I am <u>seeking</u> do not exceed $75,000 exclusive

of interest or costs."  This statement does not unequivocally state that the Plaintiffs will not accept an amount in excess of the jurisdictional limit; it only states that plaintiffs are not seeking an amount over $75,000.[12]  In order for allegations within a state court petition to constitute a binding stipulation limiting damages below the federal jurisdictional minimum, warranting remand to state court, the plaintiff must do more than simply allege that the amount in controversy or the amount of damages suffered does not exceed $74,999; the plaintiff must expressly deny that he or she will accept more than $75,000 if the state court awards in excess of that amount.  *McGlynn v. Huston*, 693 F.Supp.2d 585, (M.D. La. 2010). Finally, none of these Declarations is notarized.[13] The Declarations fail to meet any of the requirements of a binding stipulation as cited in *Hamilton,* and, as such, should not be considered in this jurisdictional determination.

In support of the unsworn declarations, the plaintiffs cite *ANPAC v. Dow Quimcia de Columubia S.A.*  In *ANPAC*, the Federal Fifth Circuit allowed a post-removal affidavit to be used in support of the plaintiffs' Motion to Remand. The Court reasoned that the affidavit was attempting to "clarify" and not change the previously asserted damages. *ANPAC v. Dow Quimcia de Columubia S.A.*, 988 F.2d 559 (5th Cir. 1993), *abrogated by Marathon Oil Co. v. A.G. Ruhrgas,* 145 F.3d 211 (5th Cir. 1998). The U.S. Court of Appeals for the Fifth Circuit, mere months after deciding *ANPAC,* described, in detail, its very limited application.  In *Marcel,* the Fifth Circuit stated, "*ANPAC,* though controlling authority, is very narrowly drawn and circumscribed and is plainly distinguishable." *Marcel v. Pool Co.*, 5 F.3d 81, 84 (5th Cir. 1993). The Fifth Circuit concluded, "[n]othing in *ANPAC* suggests that stipulations or affidavits-- from the plaintiffs, their attorneys, or otherwise--always or even usually should be given effect to defeat removal." *Marcel,* at p. 85.

---

[12]  The *Hamilton* Court held that two statements would satisfy the unequivocal statement requirement. The Plaintiffs could state that "plaintiff will not accept an amount over $75,000, in any event" or " plaintiff will not seek or accept" an amount greater than the jurisdictional amount. *Hamilton* at 2.
[13] *See generally* "Declarations under Penalty of Perjury," *in globo*, attached as Ex. A to Rec. Doc. #20423-1.

In any case, nothing prevents the Plaintiffs from amending their petition to claim a greater amount of damages. Under the Texas Rules of Civil Procedure, parties are free to amend their pleadings at any time prior to a deadline to amend pleadings established by a pre-trial order, or in the absence of such a pre-trial order, at any time up until seven days prior to trial. Tex. R. Civ. P. 63; *Mackey v. U.P. Enterprises*, 935 S.W. 2d 446, 461 (Tex. App.-Tyler 1996, no writ); *G.R.A.V.I.T.Y. Enterprises v. Reece Sup.*, 177 S.W. 3d 537, 542 (Tex. App.-Dallas 2005, no pet.). The Texas Rules would allow these Plaintiffs to amend their petition without leave of court at any time as long as it was more than seven days prior to trial or before a pleadings deadline established by a pre-trial order. In fact, Texas law allows a claimant in some circumstances to amend the pleadings after a jury verdict so as to conform the amount of damages claimed in the petition to the amount of the verdict if a jury returns a verdict in an amount greater than the maximum amount claimed in the petition. *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W. 2d 938, 939 (N.1 (Tex. 1990)); *Harvey v. Stanley*, 803 S.W. 2d 721, 727 (Tex. App.-Fort Worth 1990, den.).

Based on the foregoing, it is clear that Forest River has met its burden of proof in showing that removal is proper under the diversity jurisdiction granted this Court under 28 U.S.C. §1332. However, in the alternative, if this Court were to determine that Forest River has failed to meet this burden, then Forest River requests that this Court grant the parties time to conduct limited discovery as to the value of this claim prior to making a final ruling on removability.

### D.    Other Similar Claims

Finally, Forest River would note that the case at bar is but one of many lawsuits brought by plaintiffs complaining of injuries resulting from formaldehyde in travel trailers supplied to them by FEMA. Plaintiffs' attorney has also filed other petitions that are part of this MDL alleging similar causes of action and damages.[14] In those cases, Plaintiffs' counsel has alleged that plaintiff's damages exceed

---

[14] *See Andrea Baquet, et al v. Forest River, Inc., et al;* Docket No. 09-2961 EDLA.

$75,000.00 each. The instant case is no different. The types of damages being claimed and the causes of action being alleged are similar to those in the other cases. Forest River contends that these other filings demonstrate that the Complaint in this case and belatedly submitted declarations are nothing more than an attempt to avoid federal court jurisdiction.

Based on the foregoing, it is clear that Forest River has met its burden of proof showing that removal is proper under the diversity jurisdiction granted this Court under 28 U.S.C. §1332. However, in the alternative, if this Court were to determine that Forest River has failed to meet this burden, then Forest River requests that this Court grant the parties time to conduct limited discovery as to the value of this claim prior to making a final ruling on removability as more fully set forth below.

III.     **Federal jurisdiction over this case is proper under the Federal Officer Removal statute, 28 U.S.C. § 1442(a)(1). Forest River meets all three requirements established in the *Mesa* decision for jurisdiction.**

In addition to diversity jurisdiction, this Court also has jurisdiction over this case under the Federal Officer Removal statute, 28 U.S.C. § 1442(a)(1). Under that statute, the Court has jurisdiction over any civil action involving any officer of the United States or officer of any federal agency, when that officer is sued for any act done under the color of his office. *Id*. The statute provides a federal forum for any case in which a federal official can raise a defense arising out of his official duties. *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981); *see Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55, 58 (5th Cir. 1975). Courts give a liberal interpretation to the statute and resolve any factual disputes in favor of federal jurisdiction. *See Preston v. Tenet Healthsystem Memorial Med. Ctr.*, 463 F.Supp.2d 583, 588 (E.D. La. 2006). As this Honorable Court has recognized, courts give a liberal and broad interpretation to the statute. *Allen v. City of Laurel*, 2009 WL 2486183, *2 (S.D. Miss. Aug. 11, 2009). The statute is not "narrow or limited," and covers all cases in which a federal officer can raise a colorable defense arising out of its duty to implement federal law. *Malsch v. Vertex Aerospace, L.L.C.*, 361 F.Supp.2d 583, 587 (S.D. Miss. 2005).

Three requirements must be met to invoke the Federal Officer Removal statute: (1) the defendant must be a "person" within the meaning of § 1442(a)(1); (2) the defendant must have acted under color of federal authority when committing the acts that allegedly caused plaintiffs' injuries; and (3) the defendant must have a colorable federal defense. *Williams v. Todd Shipyards Co.,* 154 F.3d 416, 1998 WL 526612, *2 (5th Cir. 1998) (citing *Mesa v. California,* 489 U.S. 121, 129, 131 (1989)). Once these factors are established, the right of removal under the statute is absolute. *Willingham v. Morgan*, 395 U.S. 402, 406 (1969). In this case, plaintiffs have stipulated that Forest River is a "person," so only factors two and three warrant discussion. *See* Rec. Doc. 20423-1, p. 7.

### A.        Requisite Federal Control

The second Federal Officer Removal factor hinges on whether Forest River acted under the color of federal authority when committing the acts that allegedly caused the plaintiffs to suffer damages. The color of federal authority requirement is "neither limited nor narrow, but should be afforded a broad reading so as not to frustrate the statute's underlying rationale." *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998). In this case, Forest River asserts that FEMA – in various ways and over a significant period of time – exerted direct, detailed and substantial control over the construction <u>and</u> design of Forest River's Temporary Housing Units.

First of all, Forest River has not, as the plaintiffs incorrectly allege, overstated FEMA's role in the monitoring and inspecting of Forest River's travel trailers. The evidence establishes that the design and construction of the Forest River travel trailers were dictated by specifications provided by the United States, through the Federal Emergency Management Agency. In June of 2004, Richard Spillane, a Contracting Specialist from FEMA, contacted Forest River with a Request for Proposal setting out FEMA specifications for travel trailers to be used in future disasters.[15] The FEMA-issued procurement specifications detailed how the EHUs were to be built.[16] These "FEMA specs" were

---

[15] *See* Deposition of Doug Gaeddert depo, dated August 6, 2008, p. 39, attached as Exhibit "A."
[16] *See, e.g.*, FEMA Travel Trailer Procurement Specifications, attached as Exhibit "B."

comprehensive, setting forth information about the size and configuration of the trailers, electrical service, plumbing service, appliances, furnishings, heating and cooling mechanisms, safety equipment, coverings, transportation methods, and other issues.[17]

At the time Forest River initially received these FEMA specs in 2004, none of its commercially available travel trailers was equipped with the items mandated by FEMA.[18]   In particular, the existing Forest River models did not have any "FEMA upgrades" related to air conditioning, plumbing, bathroom, kitchen and heating components, nor did the commercially available floor plans address FEMA's requests.[19]   Consequently, Forest River had to create a unique floor plan design and integrate other specialized components in order to meet FEMA's specifications.[20]

Additionally, FEMA required the manufacturer to produce a "first article" or prototype to be inspected by FEMA prior to large scale production.  A FEMA representative was sent to inspect this prototype during a "First Article Inspection," which consisted of an in-person visit to the manufacturer's location to ensure conformance with FEMA's specifications.[21]   This visit was conducted in the summer of 2004 by Dave Porter, an emergency management specialist with FEMA.[22] Porter had worked at FEMA since 1993 and helped to coordinate specifications for housing following disasters from 1997 to 2007.[23]   His responsibilities included inspection of emergency housing units, monitoring refurbishment of those units, and dispatching those units to various sites following disasters.[24]

---

[17] *Id.*
[18] *See* Deposition of Doug Gaeddert, dated August 6, 2008, p. 38, attached as Exhibit "A."
[19] *See* Deposition of Doug Gaeddert, dated November 2009, p. 174-75, attached as Exhibit "C"; Deposition of Jamie Albrecht, production manager at Forest River, taken 1/20/10, p. 30-32; 108-110, attached as Exhibit "D."
[20] *See* Deposition of Doug Gaeddert, dated August 6, 2008 p. 38, attached as Exhibit "A"; Deposition of Doug Gaeddert, dated November 6, 2009, p. 197-99, attached as Exhibit "C."
[21] *See* Deposition of Doug Gaeddert, dated November 6, 2009, p. 127-28, attached as Exhibit "C."
[22] *See* Deposition of Doug Gaeddert, dated November 6, 2009, p. 127-28, attached as Exhibit "C"; Deposition of David Porter, p. 15, attached as Exhibit "E."
[23] *See* Deposition of David Porter, p. 15-16, attached as Exhibit "E."
[24] *Id.* at 16.

During the First Article Inspection at Forest River's manufacturing facility in Indiana, Porter spent three hours at the plant, during which time he performed inspections of both the plant and FEMA spec prototype.  As Forest River's Doug Gaeddert explained, Porter had access to the entire plant, was allowed to review Forest River's books, and engaged in a question and answer session following his inspection.[25]

Following this inspection, Forest River employees made several recommendations to the existing FEMA specs to facilitate production on the scale required by FEMA.[26]  FEMA responded to these suggestions later that summer by incorporating the rubber roof into the specs and allowing the option of either a three or four-burner stovetop.[27]

Following Hurricane Katrina, Forest River was contacted by North American Catastrophe Services ("NACS") with an invitation to submit a bid for production of the FEMA spec travel trailers.[28]  In response, Forest River submitted a bid to NACS to produce 5,000 FEMA spec models.[29]  These units were ultimately produced in conformance with the August 2004 FEMA specs and delivered to FEMA through NACS.[30]

As this time line demonstrates, FEMA's control over the process was long-standing.  Indeed, Forest River sold approximately 800 travel trailers that were used in FEMA disaster relief in response to hurricanes in Florida in 2004.[31]  FEMA has long used travel trailers as emergency housing units in responding to disasters, including in Louisiana.[32]

---

[25] *See* Deposition of Doug Gaeddert, dated November 6, 2009, p. 147-49, attached as Exhibit "C."

[26] *Id.; see also* Deposition of Jamie Albrecht, production manager at Forest River, taken January 20, 2010, p. 30-32; 108-110, attached as Exhibit "D."

[27] *Id.*

[28] *See* Deposition of Doug Gaeddert, taken August 6, 2008, p. 32-34, attached as Exhibit "A."

[29] *Id.*

[30] *See* Deposition of Doug Gaeddert, taken November 6, 2009, p. 20-21; 78-79, attached as Exhibit "C."

[31] *See* Deposition of Doug Gaeddert, taken November 6, 2009, p. 72, attached as Exhibit "C."

[32] *See* Deposition of David Garratt, taken on July 7, 2009, p. 32, attached as Exhibit "F" (stating that travel trailers were used in the disaster relief efforts undertaken since Hurricane Andrew in 1992).

Also, because of FEMA's extensive experience, FEMA knew what it was buying when it purchased these THUs for disaster relief after Katrina.[33]   FEMA was aware that the units contained formaldehyde.[34]   Martin McNeese, FEMA's Emergency Program Specialist, said that it was not surprising to him that the travel trailers contained formaldehyde.[35]   Nevertheless, FEMA deliberately chose to use travel trailers because of their practicality and functionality.[36]   Second, FEMA's control started well before construction, at the time when it supplied specific and detailed specifications for travel trailer procurement.[37]   As a manufacturer of these trailers, Forest River was compelled to abide by these specifications during manufacture. The instructions were direct and detailed, and they controlled precisely how Forest River was to build the THUs.

Regarding the argument that the specifications did not rise to the level of "official control" needed for Federal Officer Removal, Forest River asserts that the case cited by the plaintiffs is distinguishable with respect to this issue.  In that case, *Joseph v. Fluor Corp.*, the defendants relied upon the FEMA trailer specifications as the only basis for Federal Officer Removal.  *See* 513 F.Supp.2d 664, 672 (E.D. La. 2007).  The Court specifically noted that the defendants never presented any other evidence that FEMA exercised control over the defendants' other activities (e.g., on-site inspections and installation of travel trailers).  *Id.* at 673 n. 11.  In this case, the opposite is true – Forest River has shown that FEMA exercised control over Forest River's actions not only through the production of specifications but also through FEMA's "first article" inspection.  Thus, regarding the question of whether it worked under color of federal authority, Forest River stands apart from the defendants in the *Joseph* case.

---

[33]   *See* Deposition of David Garratt, taken July 7, 2009, p. 157-58, attached as Exhibit F; Deposition of David Porter, p. 115-16, 161-62, attached as Exhibit "E."
[34]   *See* Deposition of Martin McNeese, dated July 14, 2009, p. 35, attached as Exhibit "G."
[35]   *Id.* at 108.
[36]   See Deposition of David Garratt, taken July 7, 2009, p.  207-08, attached as Exhibit F.
[37]   *See generally* FEMA specs, attached as Ex. "B."

While Forest River did not have a direct contractual relationship with FEMA, the absence of a contract does not impair Forest River's right to invoke the government contractor defense. *See In re Air Disaster at Ramstein Air Base, Germany, on 8/29/90*, 81 F.3d 570 (5th Cir. 1996) (extending the government contractor defense to subcontractors that did not have a direct government contract). **Moreover, the Eastern District of Louisiana has already allowed Forest River's government contractor defense to be presented to the jury and included in the Jury Instructions in a 2010 FEMA formaldehyde litigation bellwether trial, *Lyndon Wright v. Forest River, Inc., et al.*, No. 09-2977 (E.D. La., March 2010).** Plaintiffs' argument also ignores the realities of the facts of this case, as the government clearly has an intimate interest in providing shelter to its citizens following a natural disaster as part of its police power. Plaintiff cannot legitimately argue that the federal government's interests are not at issue with respect to Forest River merely because Forest River sold the trailers through an intermediary such as NACS.

Taking this evidence discussed above into account, Forest River respectfully submits that FEMA exercised direct, detailed and substantial control over Forest River's construction of the Temporary Housing Units. FEMA inspected and monitored Forest River's construction, it specifically told Forest River what to build and how to build it, and the plaintiffs have essentially admitted that Forest River's very involvement in this case arose because of its relationship with FEMA. Thus, Forest River acted under the color of federal authority, and in doing so satisfied the second prong of Federal Officer Removal.

**B.      Forest River has established the plausibility of a "colorable defense" necessary for federal jurisdiction.**

The third factor centers on whether Forest River has a colorable federal defense – namely, the government contractor defense. This is essentially a moot issue. In a Federal Officer Removal case involving Temporary Housing Units provided after Hurricane Katrina, this Court ruled that the trailer manufacturers have a colorable claim to the government contractor defense. *See Joseph v. Fluor*

21

*Corp.*, 513 F.Supp.2d 664, 671 (E.D. La. 2007).   Additionally, during the *Wright* bellwether trial involving Forest River, this Court heard the plaintiffs' Rule 50 motion to dismiss Forest River's government contractor defense, yet still allowed the defense to be submitted to the jury.[38]  Thus, it is evident by these decisions that Forest River meets the minimum threshold of having a colorable federal defense.

If this Court feels, however, that these decisions are inapplicable to this action, Forest River nevertheless asserts that it has a colorable defense on the basis that it was a government contractor and is therefore immune from liability under state tort law. At the outset, it is critical to note that Forest River has **no obligation to actually prove the defense at this stage**.  *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 400 (5th Cir. 1998).   All that is required is a showing that the defense is plausible.  *U.S. v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001).[39]

As for the defense itself, the main focus is whether the federal preemption of state law is justified under the circumstances. In *Boyle v. United Tech Corp.*, the U.S. Supreme Court held that some areas of activity – those involving "uniquely federal interests" – are so committed to federal control that any applicable state law becomes pre-empted. *See* 487 U.S. 500, 504 (1988).   In determining whether such "displacement" is warranted, the Court held that state-law liability for design defects in military equipment cannot be imposed when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id*. at 512.[40]

---

[38] Also, during the *Alexander* trial, this Court heard the plaintiffs' Rule 50 motion to dismiss Gulf Stream's government contractor defense, yet still allowed the defense to be submitted to the jury.
[39]

[40] At the outset, Plaintiffs incorrectly argue that Forest River must show that its obligations under the contract with the government were in conflict with its performance of whatever state law might have been imposed on it.  Very recently, the U.S. Court of Appeals for the Fifth Circuit rejected the argument that the "significant conflict" issue was some sort of prerequisite to analyzing the three-prong test set forth in *Boyle*. *See In re Katrina Canal Breaches Litigation*, 2010 WL 3554304, *4 (5th Cir. Sept. 14, 2010). As the Fifth Circuit stated, "Whether the GCI defense will apply to a particular claim depends *only* upon whether *Boyle*'s three conditions are met . . . ." *Id.*

**In an effort to shorten the length of the instant Motion, Forest River hereby adopts and incorporates *in extenso* the arguments it presented regarding the three *Boyle* factors in its *Motion for Summary Judgment* on the government contractor defense presented in the *Wright v. Forest River* case, E.D. La., No. 09-2977, Rec. Doc. 10936 in the current MDL.**

Forest River would also address some additional arguments raised by Plaintiffs.  For instance, Plaintiffs have argued that because "there is absolutely no mention of formaldehyde" in the specifications, the government's approval was not reasonably precise.  However, this argument has already been rejected by another appellate court.  *See In Re: Agent Orange Product Liability Litigation*, 517 F.3d 76 (2nd Cir. 2008).  Applied to this case, the FEMA specifications did not have to reference formaldehyde because the formaldehyde is not the allegedly defective product at issue. The chemical was but a component of a larger product – namely, the wood products, floor coverings, carpeting and underlying pads that were used to construct the finished trailer – just like the dioxin was part of the larger herbicide combination used to make Agent Orange.[41]

Plaintiffs also argue that the government's approval was not reasonable precise because the specifications only set forth minimum standards for the construction of travel trailers and allowed the manufacturers to supply units of equal or better quality.  According to the plaintiffs, the permission to construct better units allowed Forest River too much discretion in its manufacture of the trailers, and the minimum design standards "do not direct Defendant Forest River as to how to construct the units."  However, the fact that the government did not foreclose the option of providing a "better" trailer (provided the competitive pricing and delivery requirements were met) does not mean that the government failed to exercise control over the design of the actual unit it specified.  That the

---

(emphasis in original). Therefore, only the three *Boyle* factors are relevant to this inquiry.

[41]  Critically, the products that contained the formaldehyde – the actual allegedly defective products – **were specified** when the government called for industry standard products. The government's inclusion of "industry standard" in the specifications was a carefully chosen term based on FEMA's years of experience with the product, and was made subject to a number of very specific modifications by FEMA.  The industry standard was not some sort of vague catchall, but rather the foundation from which the government worked to obtain the exact product it wanted.

government would accept a "better" model says nothing about the specificity of its design of the standard model – the two concepts are wholly unrelated.  How four pages of documents dealing with all aspects of a unit – including minimum square footage of living space, floor plan configuration, finishes, furnishings, and environmental living conditions – could be said to provide no direction whatsoever defies logic. That evidence, along with the other evidence discussed above, establishes that FEMA approved reasonably precise specifications for the procurement of travel trailers.

In conclusion, Forest River avers that by establishing it has a plausible argument that it can satisfy each of the three elements to obtain government contractor immunity, it has proven its possession of a colorable federal defense. In doing so, it has satisfied the third and final prong of Federal Officer Removal. Accordingly, this Court has jurisdiction over the plaintiffs' claims against Forest River.

## Plaintiffs' Requests for Costs

Plaintiffs also seek costs related to the filing of their instant Motion to Remand.  The United States Supreme Court has held that "the standard for awarding fees should turn on the reasonableness of the removal" and "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Admiral Ins. Co. v. Abshire,* 574 F.3d 267, 280 (5th Cir. 2009).  Further, it is settled in the Fifth Circuit that "[t]here is no automatic entitlement to an award of attorney's fees." *Valdes v. Wal-Mart Stores, Inc.* 199 F.3d 290, 292 (5th Cir. 2000).  Although from time to time factual situations may arise in which the district court is required to award attorney's fees, the "mere determination that removal was improper is not one of them." *Valdes,* 199 F.3d at 292.

Forest River submits that this request must be denied, as it has submitted not one but two valid grounds for removal.  With regard to federal question jurisdiction, it is critical to note that Forest River has **no obligation to actually prove the defense at this stage**.  *See Winters v.*

*Diamond Shamrock Chem. Co.*, 149 F.3d 387, 400 (5th Cir. 1998).   All that is required is a showing that the defense is plausible.   *U.S. v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001).   Forest River has provided a sufficient legal and factual basis to support removal under either diversity or federal question jurisdiction.   Accordingly, Plaintiffs' assertion that the removal was "frivolous" is without merit, and their claim for costs related to this Motion to Remand should be denied.

## CONCLUSION

WHEREFORE, defendant, Forest River, Inc., prays that the Court deny Plaintiffs' Motion to Remand.   Forest River prays that this matter be removed to the United States District Court for the Eastern District of Louisiana for further proceedings and disposition.

Respectfully submitted,

/s/ Ernest P. Gieger, Jr.
ERNEST P. GIEGER, JR.
Louisiana State Bar No. 6154
Texas State Bar No. 24054169
ANDREW A. BRAUN
Louisiana State Bar No. 3415
Texas State Bar No. 24061558
LAUREN C. CANCIENNE
Texas State Bar No. 24055257
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana  70139-4800
ATTORNEYS FOR FOREST RIVER, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of March, 2011, a copy of the foregoing *Opposition to Plaintiffs' Motion to Remand* was filed electronically with the Clerk of Court using the CM/ECF system.   Notice of this file will be sent to all known counsel of record by operation of the court's electronic filing system.

/s/ Ernest P. Gieger, Jr.