UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCT | * | |
| LIABILITY LITIGATION | * | SECTION "N-5" |
| | * | |
| THIS DOCUMENT RELATES TO | * | JUDGE ENGELHARDT |
| ALL CASES | * | MAG. JUDGE CHASEZ |

**PRETRIAL ORDER NO. 86**

The Court enters this Order (1) to assist in the marshalling of data concerning each plaintiff; (2) to suspend the deficiency notice process during said process; and (3) to eliminate the need for any further fact sheet discovery from Plaintiffs or Defendants prior to April 1, 2012; provided, however, that this Order shall not be construed to limit in any way Defendant United States of America's right to conduct discovery of Plaintiffs who have filed suit against the government.

I.   BACKGROUND AND PREVIOUS ORDERS GIVING RISE TO THIS ORDER

1.1   A large number of persons occupied in excess of 140,000 Emergency Housing Units ("EHUs"), provided by FEMA in the aftermath of Hurricanes Katrina and Rita. Lawsuits were filed against the United States of America (FEMA), various manufacturers of the EHUs and various government contractors who transported and installed such EHUs. Most early complaints were filed on behalf of numerous plaintiffs who collectively sued most known EHU manufacturers and most known government contractors involved in the hauling and installing of such EHUs.

A.   PTO   REGARDING PLAINTIFF FACT SHEETS

1.2   In lieu of requiring each plaintiff to answer requests for production and interrogatories from the various Manufacturing Defendants, the Plaintiffs and Manufacturing Defendants negotiated the form and content a Plaintiff Fact Sheet (PFS) and the court eventually

ordered on January 30, 2008 in Pretrial Order No. 2 each Plaintiff to fill out answers to a PFS, and to serve such answers upon the Manufacturing Defendants. (Rec. Doc. 87). That process was amended by the entry of Pretrial Order Number 32 on March 18, 2009. (Rec. Doc. 1180)

1.3    Individual plaintiffs filled out PFS forms, and served them upon counsel for the Manufacturing Defendants. Counsel for individual Manufacturing Defendants then served upon counsel for individual plaintiffs "Deficiency Notices", wherein an alleged failure to fully answer each portion of the PFS is set forth, and then the Plaintiff is called upon to cure said alleged deficiency. This process has steadily continued for over three years, yet still is not complete.

B.    PTOS 38, 53 AND 68 REGARDING MATCHING PLAINTIFFS TO DEFENDANTS

1.4    Meanwhile, the Court sought to require individual plaintiffs to specify individual private party defendants allegedly involved with their particular trailer. On May 27, 2009, this Court entered Pretrial Order No. 38 (Rec.Doc. 1596), ordering that each Plaintiff had the burden to file suit against only the particular manufacturer of his or her trailer, and on December 14, 2009, this Court entered Pretrial Order No. 53 (Rec.Doc. 10228), ordering that each Plaintiff had the burden to file suit only against the particular government contractor involved with his or her unit.

1.5    To assist in "matching" a particular plaintiff to a particular manufacturer and a particular government contractor, United States of America ("USA") and the Federal Emergency Management Agency ("FEMA") agreed to provide matching data to claimants who provided certain basic information, including a FEMA ID Number. The "matching process" had been underway for more than two years, when this Court entered Pretrial Order No. 68 (Rec.Doc. 14200) to (1) "assist potential claimants for whom matching information ha[d] not yet been obtained from the USA by providing a "last chance" process for them to obtain whatever other

information is efficiently obtainable from other sources; [and](2) to provide a date certain by which the matching effort will end, and dismissals of claims for unmatched claimants will occur." Importantly, PTO 68, Paragraph III, provided that "PSC liaison counsel are ordered to provide the Court, and to the Court's court-appointed master, data files listing the number of plaintiffs with cases filed against each defendant manufacturer, against each defendant government contractor and against the USA."  The original deadline for Paragraph III's requirement of a census of how many plaintiffs had filed against each such defendant was December 10, 2010, yet with PTO 83, such deadline was extended by this Court until January 31, 2011.

1.6     The "last chance" matching process has ended, and the Court's deadline for requiring plaintiffs to file matched lawsuits against particular defendants has expired.  The Court presently is entertaining motions to dismiss for failing to comply with PTO 68.  Further, in compliance with PTOs 68 and 83, the PSC liaison counsel provided to defense liaison counsel a draft census count of the number of plaintiffs who had sued each individual defendant.

C.    PTO 84 CONCERNING ADDITIONAL INFORMATION SOUGHT BY THE PRIVATE PARTY NON-GOVERNMENTAL DEFENDANTS

1.7     Shortly after receiving the census required in PTOs 68 & 83, the private party defense liaison counsel filed a motion seeking further information, and a more helpful formatting of the information that had been provided.  At its February 4, 2011 status conference, the defendants' motion in this regard was discussed with all counsel.  With PTO 84, this Court appointed Mikal Watts and Justin Woods on behalf of the Plaintiffs, and Andrew Weinstock and David Kurtz on behalf of the private party Defendants as a committee to suggest a resolution of the defendants' motion seeking further information.  The Court also ordered Mr. Weinstock to provide the Court by February 11 a statement of complaints of the information provided

previously and a statement of the information needed, and ordered Mr. Watts to provide the Court by February 18 with a plan of how to meet the defendants' requests. Both Mr. Weinstock and Mr. Watts complied with the Court's directive within PTO 84. Further, counsel for the various parties then conferred and alerted the Court to their collective desire to update the Court on their discussions during a conference in chambers to occur on March 2, 2011.

### D.   CONFERENCE WITH THE COURT ON MARCH 2, 2011

1.8   On March 2, 2011, counsel for the plaintiffs and private party defendants briefed the Court on their discussions, and discussion occurred about how best to deliver to the defendants the information needed, but to do so in a way that is most economical and most efficacious.

1.9   During this conference, counsel for the private party defendants explained that (1) the census spreadsheet provided by Plaintiffs' PSC counsel in compliance with PTO 83 had certain infirmities that caused the data presented therein to be less than optimally presented; (2) to truly know which plaintiffs had in fact sued the correct manufacturer pursuant to PTO 68, more information was required; (3) due to the absence of matching of tens of thousands of plaintiffs to a particular government contractor and failure to provide PFSs to contractor defendants, the government contractor defendants had no way to participate in the deficiency notice process; (4) some lawfirms had not provided the PSC with a census of their cases, as required in PTO 68, and that as a result the census numbers provided by the Plaintiffs' Liaison Counsel in compliance with PTO 83 did not match the number of lawsuits filed against each defendant; and (5) some lawfirms had not complied with this Court's orders regarding the PFS, and had instead merely signed an empty form, without supplying the answers required in the PFS; and that to remedy the problems created by the complaints enumerated in #1-5 above, more information from the Plaintiffs was

required.

    1.10   In response, counsel for Plaintiffs explained that (1) the PSC had deputized Mikal Watts of Watts Guerra Craft to correct any deficiencies that caused the data presented therein to be less than optimally presented, and that Mikal Watts agreed to attempt to correct such infirmities <u>with respect to such data that had been provided therein</u>; (2) the manufacturer defendants had been filing deficiency notices for years, many seeking information not critical to trial selection or eventual resolution of this case, and that to continue that process indefinitely was driving up the litigation costs of the plaintiffs, thereby reducing a plaintiff's net recovery upon eventual resolution; and that the inability of the government contractor defendants to meaningfully participate in the deficiency notice process could be cured by (a) causing the contractor defendants and the manufacturer defendants to confer and decide which particular questions within the PFS were of utmost importance to evaluating the claims;(b) freezing the deficiency notice process until the date when the case either resolves, or by April 1, 2012; and (c) then permitting both the manufacturer defendants and the contractor defendants to resume deficiency notices; (3) that an order would be entered on March 9, 2011 (Rec. Doc. 20455) notifying any plaintiffs' firm that failed to provide a census of its plaintiffs suing individual defendants, that (a) they had misinterpreted PTO 68, which required that all firms do so, (b) ordering all firms to provide such a census, or risk sanctions, and (c) advising such firms that a failure to do so may result in sanctions from the Court; and (4) with respect to firms that had failed to comply with PTOs2 and 32 concerning PFS completion, that any order from this Court freezing deficiency notices in aide of settlement would not preclude a defendant from presenting this Court with a motion for sanctions and/or dismissal for failing to comply with its obligations to fill out a PFS.

1.11    Plaintiffs counsel advised that the data needed by the private party Defendants was included within the census spreadsheet provided in compliance with PTO 83, and within the Plaintiff Fact Sheets (PFS) themselves.  However, the PFS forms were in handwritten format, and were provided to the Manufacturing Defendants in PDF formats, which were not searchable.  Of approximately 75,000 plaintiffs, 38,000 had seen the data contained therein entered into a database by a third-party vendor in India, allowing such data to be searchable, rankable, and format usable.  Plaintiffs counsel suggested that Defendants' problem was not an absence of information provided by Plaintiffs; rather, it was an absence of an ability to access it in a meaningful way via a database.

1.12    The Court ordered the parties to confer and to present the Court with an order containing as many agreed provisions as could be negotiated, and that the Court would then resolve any remaining disputes and enter an order (1) to assist in the marshalling of data concerning each plaintiff; (2) to suspend the deficiency notice process during said process; and (3) to eliminate the need for any further fact sheet discovery from Plaintiffs or Defendants prior to April 1, 2012.

## ORDER OF THE COURT

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

2.01    Defendants are ordered to notify the Court by May 1, 2011 of the sixteen (16) portions of the PFS (and the corresponding datafields) that they absolutely require to conduct an appropriate evaluation of this case;

2.02    The Defendants shall have the right to continue to serve Deficiency Notices upon the plaintiffs only until June 30, 2011, and that the Plaintiffs shall cure such deficiencies through Amended PFS forms on or before July 31, 2011.

   The deficiency notice process shall then be suspended or frozen, until April 1, 2012.  Nothing in this Order shall be construed to limit the Defendants' rights after April 1, 2012, nor shall this Order be construed to limit in any way Defendant United States of America's right to conduct discovery of plaintiffs who have filed suit against the government.

2.03 Each plaintiff, through his or her counsel, shall serve upon Mikal Watts, on behalf of the Plaintiffs' Liaison Counsel, a true and correct copy of the most updated, Amended PFS, by August 1, 2011 in electronic format (PDF).

2.04 Mikal Watts, on behalf of Plaintiffs' Liaison Counsel, shall then send such Amended PFS to a third-party vendor in India to have the key datafields entered into a database to be provided to the Defendants and Plaintiffs' liaison counsel.

2.05 The issue of which parties shall bear the cost of the labor and bill from the third-party vendor in India shall be reserved for a future order of this Court.

2.06 Immediately upon receiving from the third-party vendor in India the database containing the key datafield information from the PFS, Mikal Watts will supply all liaison counsel with a data searchable copy.  The Court expects that liaison counsel will work cooperatively in determining how best to utilize such data.

2.07 No further fact sheet information shall be sought from Plaintiffs or Defendants between the date of this Order and April 1, 2012, exclusive of discovery in bellwether cases.

2.08 To be clear, the purpose of this Order is to provide the private parties with the

       data each needs.  Nothing in this Order is intended to preclude Defendants from seeking further information after April 1, 2012.  Further, nothing in this Order is intended to preclude the United States from conducting discovery that the government believes is necessary for resolution of Plaintiffs' claims against the United States.

2.09    This Order only applies to PFS forms that were originally produced before January 1, 2011.  For all other fact sheets, compliance with Pre-Trial Orders Nos. 2 and 32 will still apply.

2.10    This Order does not apply to Actions filed after the date this Order is signed.

ENTERED this 8th day of April, 2011.

                                                 _____
                                                       Honorable Kurt D. Engelhardt