UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER                         MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                SECTION "N-5"

                                            JUDGE ENGELHARDT
                                            MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

MEMORANDUM IN SUPPORT OF PLAINTITFFS' MOTION TO ENJOIN
CONFLICTING STATE COURT PROCEEDINGS IN ELHART COUNTY,
INDIANA THAT INTERFERE WITH THIS COURT'S CONTINUING
JURISDICTION OVER THIS LITIGATION

I. INTRODUCTION

This motion concerns a declaratory judgment action brought by Colony National Insurance Company (hereinafter, "Colony"),[1] who is a defendant in a number of related cases pending before the Court in this multi-district litigation ("MDL"). This action, along with a parallel Complaint for Declaratory Judgment filed by Colony against Sun Valley, Inc.,[2] has been stayed by the Elkhart County, Indiana Superior Court until May 1, 2011. Allowing the stay of these actions to expire may potentially derail settlement discussions that have been undertaken, and are continuing, as a result of this Court's Orders.[3]

After Hurricanes Katrina and Rita, thousands of travel trailers, including trailers manufactured by Sunnybrook RV, Inc. ("Sunnybrook"), were obtained by FEMA through its dealings with distributors for these manufacturers, for displaced persons who then used the

---

[1] *See* Complaint for Declaratory Judgment, Cause No. 20D02-1010-PL-84, Elkhart County. Superior Court, County of Elkhart, State of Indiana, filed October 12, 2010, attached hereto as Exhibit "A."
[2] Complaint for Declaratory Judgment, Cause No. 20D02-1010-PL-83, Elkhart County. Superior Court, County of Elkhart, State of Indiana, filed October 12, 2010.
[3] *See* Orders of February 7, 2011 (Rec. Docs. 20172 and  20171), setting deadlines for scheduling settlement conferences with Sunnybrook RV, Inc. and Sun Valley, Inc., respectively.

trailers as emergency temporary housing units.[4] For policy years 2007 and 2008, Sunnybrook purchased policies of comprehensive liability insurance from Colony National Insurance Company (hereinafter, "Colony CGL Policies").[5] Sunnybrook also purchased policies of excess liability insurance from Colony, for policy years 2007 – 2008 (hereinafter, "Colony Excess Policies").[6] These policies were in effect while temporary housing units ("THUs") manufactured by Sunnybrook were placed into service by FEMA following Hurricanes Katrina and Rita. Some residents of these emergency housing units have since filed suit against the manufacturers of the temporary housing units and other involved parties, including Sunnybrook, alleging, *inter alia*, damages due to injuries from exposure to formaldehyde emitted or off-gassed from wood products and/or glues in the temporary housing units.[7]

On October 24, 2007, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from formaldehyde due to living in emergency housing units to the United States District Court for the Eastern District of Louisiana for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.[8] For more than three years, this MDL Court has worked tirelessly to manage this mass litigation and coordinate and oversee pretrial

---

[4] Sunnybrook had a number of other comprehensive general, excess and umbrella insurance carriers over the time period during which plaintiffs claim to have suffered injuries, including Arch Specialty Insurance Company (2005-2006), Axis Specialty Insurance Company (2005), St. Paul Surplus Lines Insurance Company (2006), Westchester Surplus Lines Insurance Company (2006-2008), and Lexington Insurance Company (2009-2010).

[5] *See* Colony National Insurance Company Commercial General Liability Declarations pages for policy no. AR5360404, issued to Sunnybrook RV, Inc. for policy year 1/1/2007 to 1/1/2008, attached hereto as Exhibit "B;" Colony National Insurance Company Commercial General Liability Declarations pages for policy no. AR5360404A, issued to Sunnybrook RV, Inc. for policy year 1/1/2008 to 1/1/2009, attached hereto as Exhibit "C."

[6] *See* Colony National Insurance Company Declarations pages for policy no. AR5360463, issued to Sunnybrook RV, Inc. for policy year 1/1/2007 to 1/1/2008, attached hereto as Exhibit "D;" Colony National Insurance Company Declarations pages for policy no. AR5360463A, issued to Sunnybrook RV, Inc. for policy year 1/1/2008 to 1/1/2009, attached hereto as Exhibit "E."

[7] *See* Rec. Doc. 1 at 1.

[8] *See* Rec. Doc. 1. Congress authorized such transfers when the Panel determines that it "will . . . promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

discovery. In addition, the Court has assisted the parties in bringing all interested and affected entities into the MDL litigation in a consistent and fair manner. During this time, the Court has resolved three bellwether trials in Louisiana,[9] which were intended to serve as a useful tool for all plaintiffs and defendants, as well as the Court.[10]

To accomplish these goals, the Court appointed a Plaintiffs' Liaison Counsel and a Plaintiffs' Steering Committee ("PSC") to prepare and respond to pleadings and motions, engage in discovery, pretrial preparation and settlement, manage the docket, establish and administer a document depository, communicate with individual plaintiffs and their counsel, liaison with defendants and attend court appearances.[11] The Court also appointed a Defendants' Steering Committee and Defendants' Liaison Counsel[12] to assist in these efforts. The Court appointed several other liaison counsel, including liaison counsel for the insurers. Since the inception of the MDL, the Court has held routine status conferences, attended by several dozen counsel, and it has entered Pretrial Orders and scores of other orders and minute entries. To date there have been almost 21,000 record entries in this matter.

Colony issued Sunnybrook the Colony General Policies and Colony Excess Policies, which cover the periods in which the FEMA MDL plaintiffs allegedly resided in the Sunnybrook

---

[9] *Alexander*, Member case no. 09-2892; *Wright*, Member case no. 09-2977; *Castanel*, Member case no. 09-3957. An additional bellwether case involving bankrupt defendant Fleetwood, was settled. In addition, two bellwether trials against defendant Keystone were dismissed voluntarily. The Court has also conducted two summary jury trials, as a form of alternative dispute resolution, to advance the potential for resolution of claims in the MDL.

[10] *See* Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict Litigation," 82 TUL. L. REV. 2323 (Jun. 2008) (concluding that the use of a bellwether trial is "one of the most innovative and useful techniques for the resolution of complex cases"); *In re Chevron U.S.A., Inc.,* 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar.... The reasons for acceptance by bench and bar are apparent. If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts").

[11] *See* Rec. Doc. 49 (appointing Plaintiffs' Steering Committee and Plaintiffs" Co-Liaison Counsel).

[12] *See* Rec. Doc. 49 (appointing Defendants" Steering Committee and Defendants" Liaison Counsel).

FEMA trailers. In direct contravention of the painstaking and coordinated efforts of this MDL Court, Colony filed a competing and conflicting declaratory action in state court in Elkhart County, Indiana, entitled *Colony National Insurance Company v. Sunnybrook RV, Inc.*, Case No. 20D02-1010-PL-84 (the "Declaratory Action").[13] Most importantly, this Declaratory Action seeks to determine coverage issues for the alleged damages sustained in the instant litigation, an issue currently pending before this Court, which clearly interferes with the Court's jurisdiction. As a consequence, the Declaratory Action also seeks to determine whether Colony has a duty to defend and/or indemnify Sunnybrook in the instant litigation, further interfering and compromising with this Court's authority to assist in the resolution of the FEMA Trailer litigation. It is anticipated that Colony's action will trigger many of the other manufacturer's insurers to follow suit and file similar Declaratory Judgment Actions against their insureds throughout various state courts in the United States. Colony's filing of its Declaratory Action in Indiana state court is simply an end-run around this MDL Court's jurisdiction and supervision over the FEMA Trailer litigation, without proper notice to any parties.[14]

On November 18, 2010, the FEMA MDL plaintiffs filed unopposed motions for leave to file amended complaints to include Colony as a direct action defendant.[15] Plaintiffs are moving the Court for the entry of an Order enjoining the Indiana state court Declaratory Action because it interferes with and erodes this MDL Court's coordinated and consistent supervision over and management of the FEMA MDL litigation.

---

[13] *See* Exhibit "A," attached hereto.
[14] Counsel for Sunnybrook in the instant litigation received no prior notice from Colony of the filing of the Declaratory Action; instead, counsel for Sunnybrook learned of the declaratory action from Sunnybrook, after Sunnybrook contacted counsel when it was served upon Sunnybrook.
[15] *See* Rec. Docs. 17994 and 17995.

4

## II. PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A.  FEMA MDL Proceedings

The impetus for this complex multidistrict litigation began over three years ago when scores of individual and class action lawsuits were brought in several federal district courts in the Gulf Coast of the United States by property owners whose homes were damaged by Hurricane Katrina and/or Rita. To bring all interested parties into this litigation in a fair and consistent manner, the PSC has undertaken the enormous burden and concomitant expense of preparing, filing and serving the various complaints to attract and aggregate thousands of plaintiffs and their associated defendants and insurers into this MDL. As a consequence of these tremendous efforts, the claims asserted against Fleetwood were resolved through settlement and the claims asserted against the manufactured housing defendants have been tentatively resolved.

Most importantly, settlement discussions, which began at the Sunnybrook settlement conference on April 26, 2011, may be in jeopardy as a result of the impending expiration of the stay in the Declaratory Action.

### B.  Conflicting Indiana State Court Action

On October 12, 2010, Colony filed its Complaint for Declaratory Judgment in Elkhart County Superior Court, State of Indiana.[16] In its Complaint, Colony specifically refers to the instant FEMA Trailer litigation, including certain allegations made by the FEMA MDL plaintiffs.[17] Furthermore, Colony alleges that it believes it is not obligated to defend or indemnify Sunnybrook under the Colony Policies, due to lack of coverage for the injuries alleged in the instant FEMA Trailer litigation. As such, Colony seeks a determination from the Elkhart County

---

[16] *See* Exhibit "A," attached hereto.
[17] *See* Exhibit "A," at ¶¶ 5, 6, 7, 11, 12, 17 and 19, attached hereto.

Superior Court in Indiana as to its coverage vis-à-vis Sunnybrook, and consequently, whether a duty to defend and/or indemnify in the FEMA Trailer litigation exists.

In the meantime, on November 18, 2010, the FEMA MDL plaintiffs filed a unopposed motions for leave to file amended complaints to include Colony as a direct action defendant.[18] As a result, the question of coverage under the Colony Policies is now directly before this Honorable Court. Therefore, the Declaratory Action is in direct contravention to the aims of the MDL, and consequently, should be enjoined from proceeding in the Indiana state court.

## III. ARGUMENT

### A. This MDL Court May Properly Enjoin the State Court Proceedings in *Colony v. Sunnybrook,* as Necessary in Aid of Its Jurisdiction Over This Complex Litigation

The MDL Court's fundamental authority vis-à-vis state courts derives from the Supremacy Clause of the United States Constitution, which provides that: "This Constitution, and the laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Congress has since provided statutory constructs delimiting the ability of the federal district courts to protect their authority over competing state court rulings.

Pursuant to the All Writs Act, 28 U.S.C. § 1651, the MDL Court has the authority to "issue all writs necessary or appropriate in aid of [its] jurisdiction] and agreeable to the usages and principles of law." Under the All Writs Act, the MDL Court has the power to protect its continuing jurisdiction over complex litigation and ongoing global settlement efforts from

---

[18] *See* Rec. Docs. 17994 and 17995.

competing state court litigation that threatens to derail the achievements of the Court and that infringes upon the rights of class members before the Court.

The Anti-Injunction Act, 28 U.S.C. §2283, a complement to the All Writs Act, also empowers the MDL Court to enjoin state court proceedings where "necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Courts liberally invoke the "necessary in aid of its jurisdiction" exception "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R.* v. *Bhd. of Locomotive Eng'rs,* 398 U.S. 281,295 (1970); *In re Baldwin-United Corp.,* 770 F.2d 328, 337 (2nd Cir. 1985) (same); *In re Corrugated Container Antitrust Litig.,* 659 F.2d 1332, 1334 (5th Cir. 1981), *cert. denied,* 456 U.S. 936 (1982) (same); *In re Joint E. & S. Dist. Asbestos Litig.,* 134 F.R.D. 32, 37 (E.&S.D.N.Y. 1990) (same); Martin H. Redish, *The Anti-Injunction Statute Reconsidered,* 44 U. Chi. L. Rev. 717, 754 (1977) ("necessary in aid of jurisdiction" exception should be construed "to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory"); *In re Diet Drugs,* 282 F.3d 220, 235 (3rd Cir. 2002) (recognizing "a category of federal cases for which state court actions present a special threat to the jurisdiction of the federal court" – namely, where "a federal court [is] entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts").

An injunction against competing state court proceedings is appropriate to allow the federal court to "legitimately assert comprehensive control over complex litigation," *United States v. Int'l Bhd. of Teamsters,* 907 F.2d 277, 281 (2nd Cir. 1990), especially "where a federal

court is on the verge of settling a complex matter, and state court proceedings undermine its ability to achieve that objective," *Standard Microsystems Corp. v. Texas Instruments, Inc.,* 916 F.2d 58, 60 (2nd Cir. 1990). *See Carlough v. Amchem Prods., Inc.,* 10 F.3d 189, 204 (3ld Cir. 1993) (in complex class action that was also an MDL where the court had expended substantial time and resources and global settlement was imminent, injunction prohibiting the prosecution of a competing state class action was affirmed, noting that foreign action "would be disruptive to the district court's ongoing settlement management[,]" "would jeopardize the settlement's fruition[,]" and would "present] a likelihood that [class] members... [would] be confused as to their membership status in the dueling law suits"); *Diet Drugs,* 282 F.3d at 235 (finding "the complexity of the case to be a substantial factor in justifying the injunction"); *Corrugated Container,* 659 F.2d at 1334 (upholding validity of injunction issued by district court overseeing multidistrict litigation against actions by same plaintiffs in state court, as necessary in aid of district court's jurisdiction); *Newby v. Enron Corp.,* 338 F.3d 467, 474-75 (5th Cir. 2003) (where "injunctions sought in state court threatened to interfere with the federal court's orderly handling of the massive federal litigation," All Writs Act properly invoked); *Winkler* v. *Eli Lilly & Co.,* 101 F.3d 1196, 1202 (7th Cir. 1996) (to protect its discovery orders, federal court has "power under the All Writs Act" to enjoin state court litigation and "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction"), *quoting United States* v. *New York Tel.,* 434 U.S. 159, 173 (1977); *Class Plaintiffs* v. *City of Seattle,* 955 F.2d 1268 (9th Cir.), *cert. denied,* 506 U.S. 953 (1992) (approving settlement barring competing actions in state court alleging claims similar to those in the federal action); *White v. National Football League,* 41 F.3d 402, 409 (8th Cir. 1994)

("the ability to facilitate . . . settlement by enjoining related suits of absent class members is ancillary to jurisdiction over the class action itself), *cert, denied,* 515 U.S.1137 (1995); *James* v. *Bellotti,* 733 F.2d 989, 994 (1st Cir. 1984) (provisionally approved settlement justifies injunction against competing state court cases); *In re Granada Partnership Sec. Litig.,* 803 F.Supp. 1236, 1246 (S.D. Tex. 1992) (enjoining "commencement, continuance and/or prosecution of any and all proceedings in federal or state court" by class members in connection with preliminary and final approval of class settlement); *Joint E. & S. Dist. Asbestos Litig,* 134 F.R.D. at 37 ("An injunction of all proceedings is necessary to implement the terms of the settlement and to protect the court's jurisdiction over the class action").

In *Baldwin-United,* a consolidated, multidistrict, class action involving more than 100 federal lawsuits, the Second Circuit upheld an injunction issued by the MDL court that prohibited any person with knowledge of the court's order from "commencing any action or proceeding" against any of the defendants in the MDL that might "in any way affect the right of any plaintiff or purported class member in any proceeding under" the MDL. *Baldwin-United,* 770 F.2d at 331. Competing state actions were found to "frustrate the district court's efforts to craft a settlement" in that litigation. *Id.* at 337. Thus, in recognition of the "utility of the multidistrict forum [as] ideally suited to resolving . . . broad claims," and to protect its ability to settle complex litigation, the court held that the All-Writs Act empowers an MDL court to issue an injunction against actions in state court "even before a federal judgment is reached." *Id.* at 335, 337 & 338. *See also In re School Asbestos Litig.,* 1991 WL 61156, *l,*2 (E.D. Pa. Apr. 16, 1991), *affd mem.,* 950 F.2d 723 (3rd Cir. 1991) ("[W]here the potential for resolution is gaining

momentum . . . this court's ability to oversee a possible settlement would be 'seriously impaired' by the continuing litigation of parallel state actions . . . ").

Courts have recognized that the jurisdiction of a multidistrict court or a class action proceeding is "analogous to *in rem* actions given their magnitude and complexity." *Joint E. & S. Dist. Asbestos,* 134 F.R.D. at 38; *Baldwin-United,* 770 F.2d at 337 (class action proceeding was "so far advanced that it was the virtual equivalent of a res over which the district judge required full control."); *Battle* v. *Liberty Nat'l Life Ins. Co.,* 877 F.2d 877, 882 (llth Cir. 1989) ("makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered"); *Corrugated Container,* 659 F.2d at 1334-35 (injunction proper because "complicated antitrust action . . . required a great deal of the district court's time and necessitates] its ability to maintain a flexible approach in resolving the various claims of the many parties").

Under these circumstances, an injunction against parallel or conflicting state court proceedings would be proper, "because the 'exercise by the state court of jurisdiction over the same *res* necessarily impairs, and may defeat, the jurisdiction of the federal court already attached,' [and] the federal court is empowered to enjoin any state court proceeding affecting that res." *Baldwin- United,* 770 F.2d at 336, *quoting Kline* v. *Burke Constr. Co.,* 260 U.S. 226, 229 (1922).

### B. This MDL Court Has a Duty to Act as Efficiently as Possible and Prohibit Duplicative Efforts That Impede the Court's Management of the Litigation

In consideration of the fact that the districts court's power to control multidistrict litigation is derived by statute, 28 U.S.C. § 1407, courts have held that "with that power comes the duty to exercise it as efficiently as possible." *Winkler,* 101 F.3d at 1202; *Marrese v. Am.*

*Acad. Of Orthopaedic Surgeons,* 726 F.2d 1150, 1161 (7th Cir. 1984) (en banc), *rev 'd in part on other grounds,* 470 U.S. 373 (1985). "Indeed, an express purpose of consolidating multidistrict litigation for discovery is to conserve judicial resources by avoiding duplicative rulings." *Winkler,* 101 F.3d at 1202; *Matter of Orthopedic Bone Screw Prod. Liab. Litig.,* 79 F.3d 46, 48 (7th Cir. 1996). Thus, "[w]here a litigant's success in a parallel state court action would make a nullity of the district court's ruling[s], and render ineffective its efforts effectively to manage the complex litigation at hand, injunctive relief is proper." *Winkler,* 101 F.3d at 1202.

The Declaratory Action filed in Indiana state court by Colony clearly frustrates the orders given by this Honorable Court, and most certainly hinders this Court's efforts to provide a consistent resolution among the parties to this litigation. Should the Declaratory Action move forward, it would inevitably involve duplicative and cumbersome discovery efforts, and may also result in an inconsistent ruling regarding coverage under the Colony CGL and Excess Policies. Consequently, this Court may have to contend with the outcome of the Declaratory Action in an exercise of redundancy, as well as the waste of time, effort, and resources already expended by this Court.

## C.  This MDL Court Has Inherent Authority to Manage Its Affairs and Control Its Docket Expeditiously

Even beyond the All Writs Act, "[t]he concept that district courts exercise procedural authority outside the explicit language of the rules of civil procedure is not frequently documented, but valid nevertheless." *G. Heileman Brewing Co., Inc.* v. *Joseph Oat Corp.,* 871 F.2d 648, 651 (7th Cir. 1989). Indeed, "a district court's ability to take action in a procedural context may be grounded in 'inherent power, governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and

expeditious disposition of cases.'" *G. Heileman,* 871 F.2d at 651, *quoting Link v. Wabash R.R.,* 370 U.S. 626 (1962). Certainly, this Court is vested with the power to manage the resolution of this litigation.

Furthermore, the United States Supreme Court "has long held that 'the inherent powers of federal courts are those which 'are necessary to the exercise of all others,'" *G. Heileman,* 871 F.2d at 651 n.3, *quoting Roadway Express, Inc.* v. *Piper,* 447 U.S. 752 (1980). Meaning, "[i]nherent authority remains the means by which district judges deal with circumstances not proscribed or specifically addressed by rule or statute, but which must be addressed to promote the just, speedy, and inexpensive determination of every action." *G. Heileman,* 871 F.2d at 653. In *G. Heileman,* the district court sanctioned the corporate defendant for failing to send a corporate representative to settlement conference as ordered. The Seventh Circuit held that the district court did not abuse its discretion by ordering a represented litigant to appear before it in person at the pretrial conference to discuss the posture and settlement of the case. *Id.* at 655.

Federal Rule of Civil Procedure 83 provides: (b) Procedures When There is No Controlling Law. A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules . . . Fed.R.Civ.P. 83(b). Thus, Rule 83 also provides authority for the Court to issue the order sought here.

A federal court "certainly has the power to issue any order necessary to preserve its ability to manage and adjudicate a case or controversy properly before it. Without such power, the federal judiciary would be crippled." *In re Novak,* 932 F.2d 1397, 1403 (11th Cir. 1991). The Eleventh Circuit in *Novak,* explained "inherent power" as "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of

cases." *Id.* at 1406, *quoting Link v. Wabash R.R.,* 370 U.S. 626, 630-31 (1962). "Such powers are 'essential to the administration of justice.'" *Novak,* 932 F.2d at 1406, *quoting Young v. U.S. ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 795 (1987).

In the present case, the Court's inherent power and control over the litigation and the settlement process has been, and will continue to be, crippled by the proceedings in the Declaratory Action. As such, this Court must maintain control over the parties and their counsel.

### D. This Court Already Determined That Insurance Disputes Implicated in the FEMA MDL Litigation Should Be Determined by This Court

Earlier in the FEMA MDL litigation, North American Catastrophe Service, Inc. (hereinafter "NACS"), a defendant in two cases pending before this MDL, brought a declaratory action against Northfield Insurance Company (hereinafter "Northfield"), to resolve the coverage dispute between them implicated by the FEMA MDL litigation. Northfield then filed a Motion to Transfer Venue for Convenience, seeking to have the matter transferred to the United States District Court for the Middle District of Florida.[19] In determining whether to grant Northfield"s Motion to Transfer, this Court balanced both the private interests (affecting the convenience of the litigants) and public interests (affecting the convenience of the forum) involved, and ultimately denied the Motion to Transfer.

First, in balancing the private interests involved, this Court considered the convenience of the transfer with regards to the parties and the witnesses. This Court reasoned that since NACS was before the Court as a defendant in the underlying suits, transferring the declaratory action to a federal district court in another state would require NACS to argue related issues in two courts located hundreds of miles apart. Such a requirement would greatly inconvenience NACS.

---

[19] *See* Rec. Doc. 3193.

Likewise, this Court noted that Northfield was not a resident of the proposed transfer state, and was no more inconvenienced by appearing in Louisiana to defend the suit as Northfield would be by traveling to Florida. This Court also pointed out that minimal witness testimony would likely be needed, as it involved a coverage dispute. As such, this Court determined that the private interests weighed against granting the transfer.

Second, in balancing the public interests involved, this Court noted the interest in having localized controversies decided locally. The injuries that gave rise to the underlying lawsuits occurred locally; the injuries allegedly suffered were suffered by local citizens. The lawsuit was filed by NACS against Northfield in the Eastern District of Louisiana. Therefore, Northfield's obligation to defend, if it existed, arose in Louisiana, which weighed against this Court granting transfer. Further, although the insurance contract at issue was negotiated in Florida, under Florida law, and covered a Florida domiciliary, it was not certain the laws of Florida would thus necessarily apply in that case. Additionally, this Court also noted that not only were the parties' interests implicated in the suit, but also the interests of the State of Louisiana, as the place of performance, the location of the object of the contract, and NACS' business dealings within Louisiana all implicated Louisiana's interest in the suit. Finally, this Court pointed out that Northfield demonstrated its awareness of the risk of the insurance contract being construed under the laws of a state other than Florida in two separate clauses within the contract,[20] and could have inserted into the contract a specific choice-of law clause requiring the contract to be interpreted according to the laws of the state of its choosing; however, it did not.

---

[20] The Coverage Territory Clause, found three times within the Northfield policy, concedes that coverage under the policy exists with "The United States of America (including its territories and possessions)". (Rec. Doc. 3194-3, pg. 57; 3194-4, pgs. 29 and 52.) NACS relied upon the words of the contract when it filed its Declaratory Action in this Court.

Third, this Court stated that while its docket was crowded, it was not so congested that the Court was unable to facilitate an expeditious resolution of the insurance dispute at issue. Ultimately, this Court denied the Motion to Transfer.

The instant matter is very similar to the NACS/Northfield dispute. While Sunnybrook is an Indiana domiciliary, Colony is not, so both parties would be equally inconvenienced by litigating the coverage issue in this Court, and being a coverage dispute, very few, if any, witnesses would be inconvenienced. Although the Colony policies were negotiated in Indiana under Indiana law and covered an Indiana domiciliary, it is not certain that Indiana law would necessarily apply to the insurance contracts at issue. Furthermore, the alleged injuries that gave rise to the underlying lawsuits to the FEMA MDL litigation occurred locally and were suffered by local citizens; therefore, Colony's obligation to defend arises in Louisiana. Like Northfield, Colony demonstrated its awareness of the risk of the insurance contract being construed under the laws of a state other than Indiana in two separate clauses within the contract.

The Coverage Territory Clause, found four times within each Colony Policy, concedes that coverage under the policy exists with "The United States of America (including its territories and possessions), Puerto Rico and Canada."[21] A presumption exists that the law of the forum will apply to suit brought within its courts. Colony was aware that it was amenable to suit based upon the contract under the laws of the State of Louisiana when the first suit was filed against Sunnybrook, at the latest. Colony, as author of the contract, could have inserted into the contract a specific choice-of- law clause requiring the contract to be interpreted according to the laws of any state of its choosing; however, it did not. Consequently, Colony consented to suit within

_____

[21] *See* Exhibits "B," "C," "D," and "E," attached hereto.

Louisiana and under Louisiana law. Therefore, as in the prior matter involving NACS and Northfield, this Court should recognize the substantial private and public interests in determining the coverage issue in the FEMA MDL litigation, thereby enjoining the Declaratory Action filed in state court in Indiana.

## IV. CONCLUSION

Plaintiffs' limited request is well established. The facts supporting the request are beyond dispute. The Declaratory Action affects a significant amount of plaintiffs before this Court, as well as Sunnybrook, and interferes with this MDL Court's supervision over the FEMA Trailer litigation, forcing plaintiffs to seek relief under the All Writs Acts and under this Court's inherent authority as a Federal Court. As such, this Court must invoke its authority under the All Writs Act and enjoin the Declaratory Action from continuing.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:     s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.
        2800 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:     504/522-2304
        Facsimile:      504/528-9973
        gmeunier@gainsben.com

        s/Justin I. Woods
        JUSTIN I. WOODS, #24713
        **PLAINTIFFS' CO-LIAISON COUNSEL**
        Gainsburgh, Benjamin, David, Meunier &
        Warshauer, L.L.C.

16

2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:    504/522-2304
Facsimile:    504/528-9973
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'**
**STEERING COMMITTEE**

ROBERT M. BECNEL #14072
RAUL BENCOMO, #2932
ANTHONY BUZBEE, Texas #24001820
FRANK D'AMICO, JR., #17519
ROBERT C. HILLIARD, Texas #09677700
MATT MORELAND, #24567
DENNIS C. REICH Texas #16739600
MIKAL C. WATTS, Texas #20981820

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record as indicated below in accordance with the Federal Rules of Civil Procedure on April 28, 2011.

s/Justin I. Woods
JUSTIN I. WOODS, #24713