# DECLARATIONS
# EXCESS LIABILITY POLICY

**COLONY NATIONAL INSURANCE COMPANY**
**8720 STONY POINT PARKWAY**
**SUITE 300**
**RICHMOND, VA 23235**

*Underwritten By Argonaut Specialty*

**POLICY NUMBER**
AR5460463
**RENEWAL OF:**
NEW

| ITEM 1. NAMED INSURED AND MAILING ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| SUNNYBROOK RV, INC.<br>201 14TH ST<br>MIDDLEBURY, IN 46540 | CRC INSURANCE SERVICES, INC. (IL)  A1203<br>105 W. ADAMS ST., 18TH FLOOR<br>CHICAGO, IL 60603 |

**ITEM 2.** POLICY PERIOD      From: 01/01/2007      To: 01/01/2008

12:01 A.M. Standard Time at your mailing address

**ITEM 3.**   LIMIT OF INSURANCE:

    A.    Each Occurrence Limit..................................................................$10,000,000.00

    B.    Aggregate Limit........................................................................$10,000,000.00

**ITEM 4.**   SCHEDULE OF UNDERLYING INSURANCE:

    See Schedule A – Schedule of Underlying Insurance

**ITEM 5.**   PREMIUM COMPUTATION:

    ✍    Premium.......................................................................... ▮▮▮▮▮▮

    ✍    Subject to Adjustment:

    Estimated Deposit Premium ........................................... $_____

    Estimated Exposure Base: _____

    Rate: _____ Per: _____

    Policy Minimum Premium ................................................. ▮▮▮▮▮▮

    Audit Period:

    Premium charge for coverage of certified acts of terrorism:................. $_____
    (Per Policyholder Disclosure TRIA2002Notice-1202 attached.)
    **OR**
    Coverage for certified acts of terrorism has been rejected; exclusion attached.  ☐
    (Per Policyholder Disclosure TRIA2002Notice-1202 attached.)

                                         **TOTAL POLICY PREMIUM:** ▮▮▮▮▮▮

**ITEM 6.**   ENDORSEMENTS ATTACHED TO THE POLICY AT INCEPTION:

    See Form U001 – Schedule of Forms and Endorsements

ELIZABETH CASSELL RUMFORD
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #248887
My Commission Expires Nov. 30, 2012

Countersigned: _____03/20/2007_____      By: _____Ken P Brooks_____
                     **Date**                              **Authorized Representative**

THIS EXCESS LIABILITY DECLARATIONS WITH THE COVERAGE FORM AND ENDORSEMENTS, IF ANY, COMPLETE THE
ABOVE NUMBERED POLICY.

*Elizabeth Cassell Rumford*
**NOTARY PUBLIC**
11-30-12
**MY COMMISSION EXPIRES**

I hereby certify this to be a true and correct copy.

*D Batterson*      5/18/10
Deborah Batterson-Operations Manager

XP0002D AS (06/05)

**CONFIDENTIAL**

U001 (10/04)

Insured:   SUNNYBROOK RV, INC.
Policy Number:   AR5460463

# SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements applying to and made part of this policy at the time of issuance:

| NUMBER | TITLE |
|---|---|
| FORMS APPLICABLE - | EXCESS LIABILITY POLICY DECLARATIONS |
| | |
| IL0017-1198 | COMMON POLICY CONDITIONS |
| SCHEDULE A-0301 | SCHEDULE A-SCHEDULE OF UNDERLYING INSURANCE |
| U002-0904 | MINIMUM POLICY PREMIUM |
| U094-0702 | SERVICE OF SUIT |
| UIL0272-0702 | INDIANA CHANGES - CANCELLATION AND NONRENEWAL |
| XP0002-0106 | EXCESS LIABILITY POLICY |
| XP02-0902 | CONTRACTUAL LIABILITY LIMITATION |
| XP03-0902 | CARE, CUSTODY OR CONTROL EXCLUSION |
| XP07-0902 | HAZARDOUS MATERIALS EXCLUSION |
| XP08-0902 | EMPLOYMENT RELATED PRACTICES EXCLUSION |
| XP103-0605 | CROSS SUITS EXCLUSION |
| XP200-0904 | WAR EXCLUSION |
| XP2123-0902 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| XP2127-0902 | FUNGI OR BACTERIA EXCLUSION |
| XP2128B-0904 | CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION |
| XP27-0902 | EXTERIOR INSULATION AND FINISH SYSTEMS EXCLUSION |
| XP40-0902 | E.R.I.S.A. EXCLUSION |
| XP45A-0902 | EXCLUSION - PROFESSIONAL SERVICES |
| XP57-0902 | AMENDMENT OF INSURING AGREEMENT - KNOWN INJURY OR DAMAGE |
| XP78-0304 | AIRCRAFT PRODUCTS AND GROUNDING EXCLUSION |
| XP82-0304 | ADDITIONAL INSUREDS-FOLLOW FORM BY DESIGNATED UNDERLYING INSURANCE |
| ZPJCG-0605 | POLICY JACKET |



8720 Stony Point Parkway
Suite 300
Richmond, VA 23235

**IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary as duly authorized representatives of the Company.**

Dale Pilkington, President                              Matt Pollak, Secretary

Colony Insurance Company ♦ Colony Specialty Insurance Company ♦ Colony National Insurance Company

ZPJCG (06/05)



*Colony Insurance Company*
*Colony National Insurance Company*
*Colony Specialty Insurance Company*

# PRIVACY NOTICE

Privacy is important to us. We understand that consumers really care about their privacy and want it to be protected. We are committed to safeguarding nonpublic personal information we collect about our consumers.

We treat personal information carefully and take steps to assure that it remains private. We allow only authorized employees to have access to personal information. We maintain physical, electronic and procedural security protections to safeguard the information in our records.

In order to conveniently and effectively provide and service the insurance products we sell, we may collect and use personal information from consumers on applications or other forms; from our transactions with consumers, such as payment and claims history; and from third parties, such as credit reports, driving and medical records, and claims history.

Except as required or permitted by law, we do not share personal information outside our company without obtaining the consumer's permission.

Keeping consumer information accurate and up to date is important to us. Consumers may see and request correction of personal information about them in our files, or contact us with questions about our privacy policy by writing to Privacy Coordinator, Colony Group, PO Box 85122, Richmond, Virginia 23285.

**IL 00 17 11 98**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

## SCHEDULE A – SCHEDULE OF UNDERLYING INSURANCE

This Schedule forms a part of your Excess Policy No. _____AR5460463_____
Coverage only applies in excess of those policies and limits scheduled below:

| | | |
|---|---|---|
| A. ☒ Automobile Liability | Insurance Company: The Netherlands Insurance Company | ☒ Primary ☐ Excess |
| ☐ Garage Liability | Insurance Company: | |
| | Policy Number: BA 8177974 | |
| | Effective from: 1/1/2007    to    1/1/2008 | |
| Combined Bodily Injury & Property Damage Single Limit: $ 1,000,000 CSL        Each Accident | | |

| | | |
|---|---|---|
| B. Commercial General Liability | Insurance Company: Colony National Insurance Company | ☒ Primary ☐ Excess |
| | Effective from: 1/1/2007    to    1/1/2008 | |
| | Policy Number: AR5360404 | |
| $2,000,000 | General Aggregate Limit (Other than Prod/Completed Ops) | |
| $2,000,000 | Prod/Completed Ops Aggregate Limit | |
| $1,000,000 | Personal and Advertising Injury Limit | |
| $1,000,000 | Each Occurrence Limit | |
| $ | Other: | |
| Coverage Trigger : ☒ Occurrence    ☐ Claims Made    Retro Date (if any) : | | |
| Defense Costs: ☐ Within Limits    ☒ Outside Limits | | |

| | | |
|---|---|---|
| C. Employers' Liability | Insurance Company: Wausau Underwriters Insurance Company | ☒ Primary ☐ Excess |
| | Effective from: 1/1/2007    to    1/1/2008 | |
| | Policy Number: WCJ-Z91-432590-017 | |
| Bodily Injury by Accident | $ 500,000    Each Accident | |
| Bodily Injury by Disease | $ 500,000    Policy Limit | |
| Bodily Injury by Disease | $ 500,000    Each Employee | |

This Schedule forms a part of your Excess Policy No. _____AR5460463_____

## Addendum to Schedule

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM POLICY PREMIUM

The following additional policy Conditions supersede any other policy conditions as regards the "minimum earned premium" for this policy:

**Minimum Earned Premium**

This policy is subject to a "minimum earned premium". "Minimum earned premium" means the premium that is calculated as follows:

1. The total policy premium as shown in the policy Declarations, plus
2. Any premium adjustment by endorsements, plus
3. Any additional premium developed by audit.

**Audits and Minimum Earned Premium**

Audits will not reduce the "minimum earned premium". The due date for audit premiums is the date shown as the due date on the bill.

**Cancellation and Minimum Earned Premium**

1. If you cancel this policy, the return premium will be 90% of the pro rata balance of any remaining unearned premium but no less than 25% of the "minimum earned premium".

2. If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply. We will return to you the pro rata amount of the unearned premium.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U002-0904                                                                 Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

Service of process may be made upon the Company to:

Claims Manager
   Colony Insurance Company,
   Colony National Insurance Company, or
   Colony Specialty Insurance Company
8720 Stony Point Parkway, Suite 300
Richmond, Virginia 23235

Where required by statute, regulation or other regulatory directive, the Company ap-
points the Commissioner of Insurance, or other designee specified for that purpose, as
its attorney for acceptance of service of all legal process in the state in any action or
proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company
as shown above, or if required in his/her particular state, to a designated resident agent
for service of process.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U094-0702                                                        Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

OUTPUT POLICY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EXCESS LIABILITY POLICY
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **2. Cancellation Of Policies In Effect**

   **a. 90 Days Or Less**

   If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

   **(2)** 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

   **(3)** 30 days before the effective date of cancellation if we cancel for any other reason.

   **b. More Than 90 Days**

   If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

   **(2)** 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

   **(3)** 45 days before the effective date of cancellation if:

    **(a)** There has been a substantial change in the scale of risk covered by this policy;

    **(b)** Reinsurance of the risk associated with this policy has been cancelled; or

    **(c)** You have failed to comply with reasonable safety recommendations.

UIL0272-0702          Contains material © ISO Properties, Inc.,  2001          Page 1 of 2
                                     with its permission.

**B.** The following is added to the Common Policy Conditions and supersedes any provision to the contrary:

**NONRENEWAL**

1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

   a. The expiration date of this policy, if the policy is written for a term of one year or less; or

   b. The anniversary date of this policy, if the policy is written for a term of more than one year.

2. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

# EXCESS LIABILITY POLICY

Various provisions in this policy restrict coverage. Read the entire policy and any "underlying insurance" carefully to determine rights, duties and what is covered and not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.   The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meanings. Refer to **Section IV-Definitions**.

The word insured means any person or organization qualifying as such under the "underlying insurance" and this policy.

**Section I – Coverage**

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes obligated to pay as damages in excess of the applicable limits of "underlying insurance", shown in the Declarations to which this insurance applies. The terms and conditions of insurance of this policy are the same as those of the "underlying insurance" in effect at the inception of this policy except as specifically set forth in this policy and any endorsements attached hereto. This policy provides excess liability insurance over "underlying insurance" in full force and effect during the "policy period" of this policy. However:

        (1) The amount we will pay for damages is limited as described in **Section II – Limits of Insurance**.

        (2) We shall have the right and duty to defend claims against the insured when the applicable Limit of Insurance of the "underlying insurance" is exhausted. This right and duty end when we have used up the applicable Limit of Insurance of this policy.  We have no duty to defend the insured against any claim to which this insurance or that of the "underlying insurance" does not apply.  We do, however, have the right to participate in the investigation, settlement or defense of a claim covered by "underlying insurance" which we believe may result in liability on our part.

    b.  Only payment of those damages covered by "underlying insurance" during the term of this policy shall be considered in determining the extent of any exhaustion of the Limits of Liability of any "underlying insurance".

2.  **Exclusions**

    This insurance does not apply to:

    a.  Any claim for damages covered by "underlying insurance" during any period of time prior to or subsequent to the "policy period" of this policy.

    b.  Any claim for damages based on or directly or indirectly arising out of any matter, fact, circumstance, situation, transaction or event when notice thereof has been given to any insurer prior to the effective date of this policy.

    c.  Any claim for damages covered under a renewed or replacement policy of "underlying insurance" that would not have been covered by the "underlying insurance" that was in force at the inception of this policy, unless coverage therefore has been provided by endorsement to this policy.

    d.  Any claim for damages or obligation imposed by law under any automobile no-fault, uninsured motorist, underinsured motorist, financial responsibility or any similar laws.

    e.  Any claim for damages that is covered under a sublimit of any "underlying insurance" or would have been covered but for the exhaustion of the sub-limit of liability of the "underlying insurance".

**Section II – Limits of Insurance**

1. The Limits of Insurance shown in the Declarations and the rules below determine the most we will pay regardless of the number of:

    a. insureds;

    b. claims made or suits brought; or

    c. persons or organizations making claims or bringing suits.

2. The Aggregate Limit is the most we will pay:

    a. For all damages for each type of coverage which is subject to an aggregate in the "underlying insurance";

    b. Subject to **2. a.** above, for each occurrence or offense with regard to all damages for all coverages to which this policy applies; and

    c. For any payments or expenses to which this insurance applies.

3. Subject to **2.** above, the Each Occurrence Limit is the most we will pay for all covered damages under this policy arising from each occurrence.

4. Subject to **2.** above:

    a. If reduction of Limits of Insurance of any "underlying insurance" results, this policy shall continue to apply to losses as excess insurance over the amount of Limits of Insurance of the "underlying insurance" remaining;

    b. Any exhaustion of any sub-limit of liability of any "underlying insurance" shall not be deemed to exhaust the "underlying insurance";

    c. Any exhaustion of any limit of liability of any "underlying insurance" for any coverage, term or condition excluded by this policy shall not be deemed to exhaust the "underlying insurance".

    d. If we have paid a Aggregate Limit within **2. a.** above prior to this policy's termination date, that portion of this policy's premium attributable to such coverage is fully earned.

5. When the policy period of the "underlying insurance" begins prior to or extends beyond the "policy period" of this policy, payment of losses covered by the "underlying insurance" before or after the "policy period" of this policy shall not be deemed to reduce or exhaust the Limits of Insurance of the "underlying insurance."

6. Two or more claims arising out of the same, related or continuous offense, wrongful act, occurrence, act, error or omission shall be considered a single claim.

7. If two or more Excess Policies of insurance issued by us apply to the same claim or claims for which any insured is legally liable only one Limit of Insurance shall apply. The limit shall be the highest of the Each Claim Limits of the policies that cover the claim or claims.

The Aggregate Limit applies separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Item 3 of the Declarations Page, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit Of Insurance.

**Section III – Conditions**

1. **Appeals**

    In the event the underlying insurer(s) elect not to appeal a judgement in excess of the limit of the "underlying insurance", we may elect to make such an appeal. If we so elect, we shall be liable, in addition to the applicable Limits of Insurance, for all defense costs we incur.

2. **Maintenance of "underlying insurance"**

   a. You agree to maintain the "underlying insurance" in full force and effect during the term of this policy.

   b. For purposes of this policy, if any "underlying insurance" is not available or collectible because of:

     (1) the bankruptcy or insolvency of the underlying insurer providing such "underlying insurance",

     (2) the inability or failure for any other reason of such underlying insurer to comply with any of the obligations of its policy, or

     (3) the rescission, wholly or in part, of policies shown in the schedule of "underlying insurance"

     then the insured shall be deemed to be self-insured and how this policy shall apply and amounts payable hereunder shall be determined as if such "underlying insurance" is available and collectible.

   c. Policies replaced renewed or reissued shall not provide coverage that is broader or Limits of Insurance that are less than that provided in the policies listed in the Schedule of Underlying Insurance.

   d. To the extent that the "underlying insurance" is rescinded wholly or in part this policy shall be deemed rescinded.

3. **Other Insurance**

This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, except other insurance written specifically to be excess over this insurance.

4. **Consent**

   a. No insured shall admit liability, consent to any judgment or agree to any settlement, which is reasonably likely to result in liability on our part without our consent. Such consent will not be unreasonably withheld.

5. **Subrogation-Recoveries**

   a. As this policy provides only "excess coverage", your and our right of recovery against any person or other entity may not be exclusively subrogated. Despite the foregoing, in the event of any payment under this policy, we shall be subrogated to all your rights of recovery against any person or organization, and you shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

   b. Any amounts recovered after payment of loss under this policy shall be apportioned so that any interests (including those paid by you) that have paid in an amount over and above any payment under this policy shall first be reimbursed up to the amount paid by you. We shall then be reimbursed out of any balance then remaining up to the amount paid under this policy. The interests of which this coverage is in excess shall then be reimbursed for the amount of residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests concerned in the ratio of their respective recoveries as finally settled.

6. **Representations**
By accepting this policy, you agree that:

   a. The information shown on the Declarations Page is accurate and complete;

   b. The information is based upon representations you made to us. This includes representations in any application submitted to us for this insurance;

XP0002-0106

**c.**  We have issued this policy in reliance upon your representations; and

Except as otherwise provided in this policy or by law, this policy is void in any case of fraud or if you intentionally conceal or misrepresent any material facts concerning this policy, in your application for this policy or otherwise.

**7. Notice To Agent Not Notice To Company**

Notice to any agent or knowledge possessed by any agent or other person acting on our behalf of us shall not effect a waiver or a change in any part of this policy or stop us from asserting any right under the provision of this policy, nor shall the provisions be waived or changed except by written endorsement issued to form a part of this policy.

**8. No Action Against Us**

**a.**  No action shall be taken against us unless, as a condition precedent, there shall have been full compliance with all the provisions of this policy, nor until the amount of our obligation to pay shall have been finally determined either by final and nonappealable judgment against the Insureds after trial, or by written agreement between you, the claimant and us.

**b.**  No person or organization shall have the right under this policy to join us as a party to any claim against the Insureds to determine the Insureds' liability, nor shall we be impleaded by the Insureds or their legal representatives in any such claim.

**9. Assignment of Interest**

Assignment of interest under this policy shall not bind us unless its consent is endorsed.

**Section IV – Definitions**

**1.**  "Policy period" means the period shown in the Declarations, unless earlier cancelled pursuant to **Section III. 4.** of this policy.

**2.**  "Underlying insurance" means the primary and excess policies that are listed in the Schedule of Underlying Insurance.

XP0002-0106

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

A. **Section I – Coverage, 2. Exclusions** is amended and the following added :

This insurance does not apply to any claim for injury or damages based on or directly or in-directly arising out of or resulting from any obligation of the insured to pay damages by reason of the assumption of liability in a written or oral contract or agreement.

This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the injury or damage occurs after the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages, provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

B. **Section IV- Definitions** is amended and the following added :

"Insured Contract" means:

a. A contract for a lease of premises, however, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CARE, CUSTODY OR CONTROL EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

**Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim for damages based on or directly or indirectly arising out of or resulting from damage including loss of use to:

  **(1)**  Property rented or occupied by any insured;

  **(2)**  Property loaned to any insured; or

  **(3)**  Personal property in the care, custody or control of any insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP03-0902

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HAZARDOUS MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

A.  **Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim based on or directly or indirectly arising out of or resulting from:

    **(1)** Injury or damage which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time;

    **(2)** Any loss, cost or expense arising out of any:

        **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

        **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials";

    **(3)** Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials";

    **(4)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs **(1)**, **(2)**, or **(3)**. above;

  **2.** whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

B.  **Section IV – Definitions** is amended and the following added:

"Hazardous materials" means "pollutants", lead, asbestos, silica and materials containing them.

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

    ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ CAREFULLY.**

# EMPLOYMENT RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

**Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim for injury or damages based on or directly or indirectly arising out of or resulting from:

(1) any actual or alleged:

(a) Refusal to employ any person;

(b) Termination of any person's employment; or

(2) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, assault, battery, discrimination or abuse including sexual abuse  directed at any person; or

(3) The spouse, child, parent, brother or sister of that person as a consequence of injury to that person at whom any of the employment-related practices described in Paragraphs 1 (a) or 1 (b) or (2) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; or

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP08-0902

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CROSS SUITS EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

**Section I – Coverage, 2. Exclusions** is amended and the following is added:

**CROSS SUITS EXCLUSION**

This insurance does not apply to any "claim" for injury or damage brought against you by any organization, partnership, joint venture or limited liability company:

1. You newly acquire or form, or
2. Over which you maintain ownership or majority interest, or
3. That qualifies as a Named Insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP103-0605

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAR EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

A.  **Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim for injury or damages based on or directly or indirectly arising out of or resulting from:

War, including:

(a) undeclared or civil war

(b) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(c) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

I.      The insurance does not apply:

    A.      Under any Liability Coverage, to injury or "property damage":

        (1)     With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2)     Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.      Under any Liability Coverage, to injury or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        (1)     The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

        (2)     The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

        (3)     The injury or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

II.     As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed

XP2123-0902

primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    (a)    Any "nuclear reactor";

    (b)    Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

    (c)    Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    (d)    Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

A. **Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim based on or directly or indirectly arising out of or resulting from:

   **(1)** injury or damages which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage; or

   **(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

B. **Section IV – Definitions** is amended and the following added:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP2127-0902

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

A. **Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim for injury or damages based on or directly or indirectly arising out of or resulting from:

(1) Any injury or damage arising, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism" including any action taken in hindering or defending against an actual or expected incident of a "certified act of terrorism" or an "other acts of terrorism"; or

(2) Any act of terrorism:

(a) that involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(b) that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

(c) in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage in **(1)** or **(2)** above; including

(3) Damages arising, directly or indirectly, out of **(1)** or **(2)** above that are awarded as punitive damages.

B. In the event of an act of terrorism, a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Policy.

C. **Section IV – Definitions** is amended and the following added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

a. The act resulted in aggregate losses in excess of $5 million; and

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXTERIOR INSULATION AND FINISH SYSTEMS EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

A.  **Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim for injury or damage based on or directly or indirectly arising out of or resulting from the manufacture, application, installation, use or sale of "exterior insulation and finish systems".

B.  **Section IV – Definitions** is amended and the following is added:

"Exterior insulation and finish system" means any exterior cladding or finish system or synthetic stucco used on any part of any structure that consists of any of the following components:

**a.**  a rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

**b.**  the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**c.**  a reinforced base coat;

**d.**  a finish coat providing surface texture and or color.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP27-0902                                                                      Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# E.R.I.S.A. EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

This insurance does not apply to any claim for damages based on or directly or indirectly arising out of or resulting from an actual or alleged violation or obligation of the insured under the Employees' Retirement Income Security Act (E.R.I.S.A.), any amendments thereto and any regulations or orders promulgated pursuant thereto or any similar federal, state or local statute.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP40-0902                                                                                              Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

**Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim for injury or damage arising out of or resulting from the rendering or failure to render any professional service. This includes but is not limited to:

> **(1)** Legal, accounting or advertising services;
>
> **(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;
>
> **(3)** Engineering services, including related supervisory or inspection services;
>
> **(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;
>
> **(5)** Any health or therapeutic service treatment, advice or instruction;
>
> **(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;
>
> **(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;
>
> **(8)** Body piercing or tattooing services including but not limited to the insertion of pigment, collagen or any other foreign substance into or under the skin;
>
> **(9)** Services in the practice of pharmacy;
>
> **(10)** Law enforcement or firefighting services; and
>
> **(11)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

**Section I – Coverage, 1. Insuring Agreement** is amended and the following added:

**1. Insuring Agreement**

    **d.** This insurance applies to bodily injury and property damage only if:

        **(1)** The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory;

        **(2)** The bodily injury or property damage occurs during the policy period; and

        **(3)** Prior to the policy period, no insured listed under – Who Is An Insured in any "underlying insurance and no employee authorized by you to give or receive notice of an occurrence or claim, knew that the bodily injury or property damage had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the policy period, that the bodily injury or property damage occurred, then any continuation, change or resumption of such bodily injury or property damage during or after the policy period will be deemed to have been known prior to the policy period.

    **e.** Bodily injury or property damage which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under– Who Is An Insured in any "underlying insurance" or any employee authorized by you to give or receive notice of an occurrence or claim, includes any continuation, change or resumption of that bodily injury or property damage after the end of the policy period.

    **f.** Bodily injury or property damage will be deemed to have been known to have occurred at the earliest time when any insured listed under– Who Is An Insured in any "underlying insurance" or any employee authorized by you to give or receive notice of an occurrence or claim:

        **(1)** Reports all, or any part, of the bodily injury or property damage to us or any other insurer;

        **(2)** Receives a written or verbal demand or claim for damages because of the bodily injury or property damage; or

        **(3)** Becomes aware by any other means that bodily injury or property damage has occurred or has begun to occur.

    **g.** Damages because of bodily injury include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AIRCRAFT PRODUCTS AND GROUNDING EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

A. **Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to injury or damage arising out of or resulting from:

**(1)** any "aircraft product" or the "grounding" of any aircraft; or

**(2)** "your work" on aircraft (including missile or spacecraft, and any ground support or control equipment).

B. **Section IV – Definitions** is amended and the following added:

"Aircraft product" means:

**a.** Aircraft (including missile or spacecraft, and any ground support or control equipment used therewith);

**b.** Any article furnished by you or on your behalf and installed in an aircraft or used in connection with an aircraft or for spare parts for an aircraft including ground handling tools and equipment;

**c.** Any of "your products" used at an airport for the purpose of guidance, navigation or direction of aircraft;

**d.** training aids, instructions, manuals, blueprints, engineering or other data or advice and services and labor relating to such aircraft, articles or products that you or any other person or organization on your behalf:

**(1)** sold, handled or distributed; or

**(2)** manufactured, assembled or processed:

**(a)** according to specifications, plans, suggestions, orders, or drawings provided by you or on your behalf; or

**(b)** With tools, machinery or equipment furnished to such persons or drawings provided by you or on your behalf.

"Grounding" means:

**a.** the withdrawal of one or more aircraft from flight operations; or

**b.** the imposition of speed, passenger or load restrictions on such aircraft

by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft or any part thereof whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations.

"Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

XP78-0304

Page 1 of 2

    **(c)** A person or organization whose business or assets you have acquired; and

  **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

"Your work":

**a.** Means:

  **(1)** Work or operations performed by you or on your behalf; and

  **(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

  **(2)** The providing of or failure to provide warnings or instructions.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP78-0304

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSUREDS - FOLLOW FORM BY DESIGNATED UNDERLYING INSURANCE

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

**A. Section I – Coverage, 1. Insuring Agreement,** paragraph **b.** is deleted and replaced with the following:

**b.** As of the effective date of this endorsement, this insurance shall apply to persons or organizations insured as an Additional Insured(s) under any "underlying insurance" only if:

**(1)** The person or organization is specifically listed in an Additional Insured endorsement made part of to the "underlying insurance"; and

**(2)** The "underlying insurance" is described below:

| Policy Number | Policy Type | Effective Date | Expiration Date |
|---|---|---|---|
| AR5360404 | Commercial General Liability | 1/01/2007 | 1/01/2008 |

**B. SECTION I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to injury or damage:

**(1)** For which any Additional Insured(s) are obligated to pay damages by reason of the assumption of liability in a contract or agreement.

**(2)** Occurring after your work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the Additional Insured(s) at the site of the covered operations has been completed; or

**(3)** Occurring after that portion of your work out of which the injury or damage arises has been put to its intended use by any person or organization.

**(4)** Occurring prior to the effective date on any endorsement adding the Additional Insured to any "underlying insurance";

**(5)** Directly arising out of or resulting from the negligence of the Additional Insured(s).

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP82-0304

# POLICYHOLDER DISCLOSURE
# NOTICE OF INSURANCE COVERAGE FOR CERTIFIED ACTS OF TERRORISM

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act.

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States: to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage under your policy may be affected as follows:

You should know that coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the Act.

You should also know that your policy does not provide coverage for acts of terrorism that are not certified by the Secretary of the Treasury.

### Election or Rejection of Certified Terrorism Insurance Coverage

You must elect or reject this coverage for losses arising out of certified acts of terrorism, as defined in Section 102(1) of the Act, before the effective date of this policy. Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.

**☐ Coverage election.**
I hereby elect to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act for a prospective annual premium of $ _____. I understand that I will not have coverage for losses arising from any non-certified acts of terrorism.

## OR

**[x] Coverage rejection.**
I hereby elect **not** to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act. I understand that I will not have coverage for any losses arising from certified or non-certified acts of terrorism.

| | |
|---|---|
| Signature On File | COLONY NATIONAL INSURANCE COMPANY |
| **Policyholder/Applicant's Signature-** **Must be person authorized to sign for all insureds.** | **Insurance Company** |
| On File | AR5460463 |
| **Print Name** | **Policy Number** |
| SUNNYBROOK RV, INC. | On File |
| | **Submission Number** |
| **Named Insured** | A1203 |
| | **Producer Number** |
| On File | CRC INSURANCE SERVICES, INC. (IL) |
| **Date** | **Producer Name** |
| | 105 W. ADAMS ST., 18TH FLOOR |
| | **Street Address** |
| | CHICAGO, IL  60603 |
| | **City, State, Zip** |

The producer shown above is the wholesale insurance broker your insurance agent used to place your insurance coverage with us. Please discuss this Disclosure with your agent before signing.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change Number _____1_____

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| AR5460463 | 01/01/2007 | **COLONY NATIONAL INSURANCE COMPANY**<br>*Underwritten by Argonaut Specialty* |
| **NAMED INSURED**<br><br>SUNNYBROOK RV, INC. | | **AUTHORIZED REPRESENTATIVE**<br><br>CRC INSURANCE SERVICES, INC. (IL)<br>**ATTN:  JOHANNA NAWROT** |

| COVERAGE PARTS AFFECTED |
|---|
| ALL COVERAGE PARTS |

| CHANGES |
|---|

IN CONSIDERATION OF THE PREMIUM ALREADY CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE XP0002D AS (06/05) (EXCESS LIABILITY POLICY DECLARATIONS) IS AMENDED AS FOLLOWS:

**NAMED INSURED AND MAILING ADDRESS:**

SUNNYBROOK RV, INC
P.O. BOX 2001
201 14TH ST
MIDDLEBURY, IN 46540


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.




04/25/2007 VS

_____
Authorized Representative Signature