1               UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3     ********************************************************

4 IN RE:  FEMA TRAILER

5 FORMALDEHYDE PRODUCTS
   LIABILITY LITIGATION

6                 DOCKET MDL NO. 1873 "N"
                NEW ORLEANS, LOUISIANA

7                 FRIDAY, MAY 13, 2011

8     10:00 A.M.

9 THIS DOCUMENT IS RELATED
   TO ALL CASES

10    ********************************************************

11

12                  STATUS CONFERENCE

13             TRANSCRIPT OF PROCEEDINGS

14       HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT

              UNITED STATES DISTRICT JUDGE

15

16

17

18

19 SUSAN A. ZIELIE, RPR, FCRR
   OFFICIAL COURT REPORTER

20 UNITED STATES DIST COURT
   EASTERN DIST OF LOUISIANA

21 500 POYDRAS STREET
   ROOM HB-406

22 NEW ORLEANS, LA 70130
   504.589.7781

23 susan_zielie@laed.uscourts.gov

24

25 PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.
   TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

1    APPEARANCES:

2

3    FOR THE PLAINTIFFS:        WATTS GUERRA CRAFT
                                BY:  MIKAL C. WATTS, ESQ.
4                               FOUR DOMINION DRIVE
                                BUILDING THREE, SUITE 100
5                               SAN ANTONIO, TX 78257

6    FOR THE PLAINTIFFS'        GAINSBURGH BENJAMIN DAVID
     STEERING COMMITTEE:          MEUNIER AND WARSHAUER, LLC
7                               BY: GERALD E. MEUNIER, ESQ.
                                   DUSTIN WOODS, ESQ.
8                               2800 ENERGY CENTRE
                                1100 POYDRAS STREET
9                               SUITE 2800
                                NEW ORLEANS LA  70163
10

11   FOR THE DEFENDANTS:        DUPLASS ZWAIN BOURGEOIS
                                  MORTON PFISTER WEINSTOCK
12                              BY:  ANDREW WEINSTOCK, ESQ.
                                THREE LAKEWAY CENTER
13                              3838 N. CAUSEWAY BOULEVARD
                                SUITE 2900
14                              METAIRIE LA  70002

15                              BAKER DONELSON BEARMAN
                                CALDWELL & BERKOWITZ
16                              BY: MICHAEL D. KURTZ,  ESQ.
                                201 ST. CHARLES AVENUE
17                              SUITE 3600
                                NEW ORLEANS LA  70170
18

19   FOR THE UNITED STATES      UNITED STATES DEPARTMENT
     AMERICA:                     OF JUSTICE
20                              CIVIL DIVISION, TORTS
                                BY:  HENRY T. MILLER, ESQ.
21                              P.O. BOX 340
                                BEN FRANKLIN STATION
22                              WASHINGTON DC  20004

23   ALSO PRESENT:              ERNEST P. GIEGER, ESQ.
                                ANTHONY G. BUZBEE, ESQ.
24                              CHARLES PENOT, JR., ESQ.

25

```
 1              NEW ORLEANS, LOUISIANA; FRIDAY, MAY 13, 2011

 2                         10:00 A.M.

 3              THE COURT:  You all may be seated.  It looks

 4    like the crowd has thinned a bit.

 5              It's reconfigured for other matters.

 6              Is there anyone in the hallway?  Would one

 7    of you all just peek out and make sure if anyone's out

 8    there.

 9              While they're making their way in, thank you

10    all for your patience against.  We're going to try to

11    give you a quick update as to where we are on a variety

12    of issues.  And there's a lot going on I think in the

13    MDL right, now even though it may not appear from the

14    record that we're as active as we were.  But we do have

15    bellwethers scheduled, we'll talk about those.  We also

16    have some other things that are in the works right now

17    that I think are within the scope and the intent of

18    having the MDL, this matter being put into an MDL.

19    We'll try to give you an update on that as well.  And

20    think we have some instructions that I think are

21    important for those of you who are in attendance to try

22    to follow, or at least to try to tell others who are not

23    in attendance that these items were stressed today.

24              Mr. Meunier, would you like to begin with

25    the report?
```

1          MR. MEUNIER:  Good morning, Your Honor.  May

2  it please the Court, Jerry Meunier, co-liaison counsel

3  for plaintiffs.

4          Your Honor, the joint report, as usual, has

5  been submitted to you in proposed form.  There will be

6  certain edits and corrections made before it is put into

7  the record.

8          THE COURT:  Is this sound system on?  It

9  doesn't seem like it's on.

10          MR. WEINSTOCK:  Just project.

11          MR. MEUNIER:  I will project.

12          Judge, the first section of the report, as

13  usual, just gives a statement of the inventory, the case

14  inventory.  There are an estimated 5,000 actions which

15  have now been filed in or transferred into the MDL.

16          The next session deals with plaintiff fact

17  sheets.  And we have had extensive discussion with Your

18  Honor this morning about the fact that many plaintiff's

19  counsel are seriously concerned about the ability they

20  have to respond to a number of deficiency letters which

21  are being received on numerous cases as part of the

22  ongoing process to correct deficiencies in the profile

23  forum.  Or fact sheet.  And, at the outset, we want to

24  make a distinction between situations where plaintiffs

25  have simply failed to submit any fact sheet and

1  situations where some fact sheet has been provided but

2  is deemed deficient.

3        The situation where the plaintiff has not

4  submitted any fact sheet remains one in which that

5  plaintiff is exposed, under this Court's orders and the

6  standing protocol, exposed to a motion to dismiss with

7  prejudice.  That has not changed in any of the

8  discussions we've had.  There is still the mandate to

9  provide a fact sheet within a certain period of time

10  from filing of a case.

11        But moving to the question of fact sheets

12  that are deemed deficient, as we've discussed with Your

13  Honor this morning, there's a tension between the need

14  of the defendant group to obtain what they consider to

15  be relevant information on claims through the deficiency

16  process.  And the concern of the plaintiff's group that

17  the MDL mission should not be to expend an inordinate

18  amount of energy and time on individual claimed

19  discovery, as you would normally do for litigation

20  purposes, but rather that the MDL mission, past the

21  resolution of common issues, should be to facilitate

22  what amounts to a unique unit for global resolution.

23  And so out, off that tension, we've had discussion with

24  the Court about ways and means of having deficiencies

25  addressed but in a more limited fashion.  And I will try

1    to state what I understand to be the current agreement,

2    with the Court's help.

3            Number one, it will not be necessary for any

4    defendant to send more than one deficiency letter.

5    However, by next Friday, the parties having discussed it

6    among themselves, will advise the Court as to the number

7    of deficiencies or deficiencies fields, if you will,

8    which are --

9            MR. WEINSTOCK:  You might want to call them

10   key data fields.

11           MR. MEUNIER:  Key data fields which are

12   designated to be needed at this time by the defendants

13   for the purposes of settlement evaluation and

14   discussion.

15           It will be expected that the plaintiff

16   counsel will advise, likewise, as to the time needed

17   realistically to furnish what is deemed as deficient

18   information in those key data fields only.

19           All of this will be done without prejudice

20   to the right of the defendants to have follow-up

21   discovery at the appropriate time on the remaining

22   deficiencies.  But the focus in the near term will be on

23   those data fields, and we will have a deadline agreed to

24   hopefully for those data fields, and we will presumably

25   have the Court presented with an order which reflects

1    the agreement of counsel on how to proceed in that

2    fashion.

3              THE COURT:  Mr. Weinstock.

4              MR. WEINSTOCK:  Yes.

5              THE COURT:  By the way, if anybody still

6    can't hear and you'd like to move into the jury section

7    here, these seats over here, please feel free to

8    relocate.  I think everybody's talking loud enough, but

9    of course I'm closer to them than you all are.  If

10   anybody wants to sit up here, you're more than welcome.

11             MR. WEINSTOCK:  Currently, Your Honor, the

12   system where we've been dealing with pursuant to PTO 86

13   was to provided the Court and the plaintiffs with the 16

14   data fields that would ultimately go into a database and

15   could be used for settlement purposes.

16             This does not preclude defendant from

17   ultimately getting a complete and satisfactory fact

18   sheet for every plaintiff, but it does postpone that

19   moment until a later point in time.

20             Now that it's become clear that the Court

21   thinks it's best to limit the deficiency process to the

22   key data fields, the defendants are to go back and

23   figure out if those 16 are sufficient, if we need to add

24   to those 16.  Confer with the plaintiffs and present to

25   the Court what we can agree upon by next Friday.  And,

 1    if we can't agree on something, present that to the

 2    Court as well.

 3              Those are the data fields that the

 4    plaintiffs will have to cure currently right now

 5    pursuant to PTO 2 and 32 in the time limits allotted.

 6    Those time limits may be subject to change.

 7              They will not have to do a complete cure of

 8    the deficiency.  They have the option to do so; because,

 9    if we're still here at this time next year, they're then

10    going to go back and cure all those deficiencies without

11    a second notice.  So, when you send out your letter now,

12    my suggestion would be to do a complete deficiency

13    letter, and they'll be required if and when that stay

14    ends.  Next April, if we're still here, they'll be

15    required to cure the complete deficiency at that time.

16              THE COURT:  Let me see if I can state it

17    maybe a little bit more directly.  If you're on the

18    defendant's side of this case, you should do two things.

19    Number one, you should send deficiency notices, complete

20    deficiency notices as scheduled, as set forth in the

21    Court's orders, and it should highlight the deficiencies

22    that you were planning to highlight any way with regard

23    to the fact sheets.  So it doesn't change the exercise.

24    The defendants will send one deficiency letter, you will

25    not need to send an another deficiency letter layer.  So

1   this doesn't impact what you're doing with regard to

2   deficiency notices.

3            The second thing that you need to do is to

4   consider, and try to be conservative, about what you

5   consider to be the most critical pieces of information

6   of the plaintiff fact sheet that your

7   client/carrier/whoever else is involved in any type of

8   evaluation of these claims would like to know in order

9   to participate in a settlement negotiation in the MDL.

10  Now, that should be as few as possible.  In other words,

11  the critical fields of data off of the plaintiff fact

12  sheet, and then Mr. Weinstock is going to gather that

13  information -- you'll hear from him shortly by email or

14  whatever means he chooses.  You will then have the

15  opportunity to designate which fields that your client

16  has told you to be critical pieces of information for

17  that purpose alone.

18            If you are on the plaintiff's side, if you

19  have clients that you're representing, you have two

20  scenarios right now.  If you have not submitted a fact

21  sheet at all for a particular plaintiff, then you really

22  have a lot of work to do soon, because you should be

23  working on those.  And, frankly, you should have already

24  submitted a fact sheet, so you're delinquent in the

25  sense that you don't have a fact sheet that should have

1   already been provided.

2          The second contingency is that you have

3   submitted a fact sheet but the fact sheet that you have

4   submitted doesn't provide certain data as requested on

5   the fact sheet.  If that's the case, then you will

6   receive a complete deficiency notice from the relevant

7   defendant, or defendants if it's a third party, a

8   third-party contractor, and you should respond in short

9   order within the time that is going to be decided and

10   will be circulated.  But you should respond in short

11   order with the particular fields that are deemed to be

12   the most critical.  You will be told which items those

13   are.

14          Quite honestly, if you're going to have to

15   go back and recontact a client plaintiff, you're

16   probably better off trying to capture all of the

17   deficient information on one occasion so you don't have

18   to recontact them later.  If for some reason your case

19   is remanded, then to just go after those fields, and

20   then pre-remit getting the rest of the information.

21          So if you've done a fact sheet and you get a

22   deficiency notice, you should try to cure the entirety

23   of the deficiency.  But you should especially try to

24   capture those critical data fields that will hopefully

25   get your client, that particular plaintiff, included in

1   any settlement discussion, as part of the MDL.

2           What we're trying to do is lessen the burden

3   on everybody but preserve the right of the parties to

4   litigate these claims in the event they can't be settled

5   in the MDL.  So defendants, by specifying limited

6   fields, you're not in any way foregoing the right to get

7   each and every piece -- I think it works now.

8           MR. MEUNIER:  You don't have to start over.

9           THE COURT:  You're not foregoing the right

10  to get each and every piece of information that you

11  would otherwise get on the plaintiff's fact sheet.

12  Okay?

13          Does anybody have any questions about why

14  we're doing it that way and what it is you're supposed

15  to be doing?  On either side?

16          It's very important that we do it -- let me

17  go back even further.  If you're on the plaintiff's

18  side, you should have been doing fact sheets pursuant to

19  the pretrial orders that required them to begin with.

20  So, that part of it, there's nothing new on that part of

21  it.  You were having to do the facts sheets now for at

22  least a couple years, if not all along.  So, if you

23  haven't done that, then you're way behind in the game,

24  and you run the risk of getting that plaintiff's claim

25  dismissed for failure to fill out a fact sheet.  Okay?

1          MR. WEINSTOCK:  Your Honor, if I could just

2    add, what the defendants could expect is, if you go back

3    last Thursday, I believe I circulated a list of the 16

4    question and answers that would be converted to data

5    field.  I will recirculate that.  And then we will talk

6    about, in both the smaller and larger group, about what

7    may or may not be added to that list.

8          MR. MEUNIER:  Thank you, Judge.

9          Your Honor, the next section of the report

10   lists a number of motions which are pending in the draft

11   that was reviewed with the Court this morning.  Your

12   Honor did point out that there are several on the list

13   in the draft joint report which have now been acted

14   upon.  We will correct, when we file the final version

15   of the joint report, we will correct in the record the

16   listing of pending motions to eliminate those that have

17   been acted upon.

18         There are several matters on appeal.  As

19   also discussed in that same section of the joint report,

20   the appeal from the Alexander jury verdict was argued in

21   the Fifth Circuit on April 26th, and we now await a

22   decision from the panel.

23         The appeal from this Court's dismissal of

24   Christopher Cooper's FTCA claim, likewise, has been

25   argued orally in the Fifth Circuit.  That argument was

1   on March 1st of 2011.  And we await a decision from the

2   panel on that appeal.

3           There are two other appeals, which are

4   really companion appeals, and those are the ones taken

5   from Your Honor's dismissal of all Mississippi and all

6   Alabama FTCA claims, and those appeals in the Fifth

7   Circuit have now been fully briefed.  Briefing was

8   completed on April the 18th.  And we await the

9   scheduling of oral argument on those appeals.

10           There is also an appeal brought in the Fifth

11  Circuit from the jury verdict in the bellwether trial of

12  Earline Castanel.  But no briefing and obviously no oral

13  argument has occurred yet as to that appeal.

14           Your Honor, the next section of the report

15  deals with the manufactured housing, so called

16  non-litigation track cases.  This Court on April 5th

17  preliminarily approved a proposed class settlement

18  brought on -- a settlement involving all the occupants

19  of manufactured housing units.  The Court's approval

20  included approval of a notice to prospective or punitive

21  class members.  The notification process has been

22  commenced.  And the fairness hearing for the Court to

23  consider whether to approve under Rule 23 that proposed

24  class settlement is currently scheduled to begin in this

25  court on August 22nd of this year at 9 a.m.

1          Anything else?

2          And we do encourage counsel to look at the

3    preliminary approval document or order in the record

4    which is record document 20669 to be informed as to all

5    other pertinent deadline dates that they must comply

6    with in the processing of the non-lit proposed class

7    settlement.

8          THE COURT:  Okay.

9          MR. MEUNIER:  The next section deals with

10   matching.  As Your Honor noted this morning, we've now

11   matured to a point where we don't have to talk about

12   matching ongoingly from start to finish in these

13   meetings and discussions.  The last chance matching

14   process continues.  And, under that protocol, certain

15   plaintiffs who remain unmatched are subject to motions

16   to dismiss with prejudice by the defendants.  And we

17   know that and the Court knows that those motions in some

18   cases already have been filed and in some cases granted.

19          As we discussed this morning, the procedure

20   we hope that is followed is that, when the defendants

21   come to the point of wanting to file a motion to dismiss

22   an unmatched plaintiff, that they would contact counsel

23   for the plaintiff to see if the motion is unopposed.  If

24   there is reason to oppose it, given the importance of

25   what's at issue, we assume that there will be opposition

1    memoranda filed and perhaps even a request for oral

2    argument so Your Honor can hear the circumstances of

3    that particular case.

4            THE COURT:  If there's opposition to motions

5    to dismiss, make certain that you're able to state that

6    comprehensively and very specifically on the record.  I

7    know there's sort of a visceral response of:  Gee, I

8    really wish you would not dismiss my client's claim.

9    But you need it give me a particular reason.

10            As Mr. Meunier just pointed out, we are now

11   beyond the matching phase, which this is probably the

12   first status conference we've had where we have not

13   discussed continued matching efforts with Mr. Miller on

14   behalf of government and the third-party contractors,

15   the complications that arise in matching a third-party

16   contractor.  So we're finally to the point where a

17   matching should no longer be an issue.

18            So, if you do have an opposition to a motion

19   to dismiss, you're going to be very, very specific as to

20   why the claim should not be dismissed.  As Mr. Meunier

21   indicated, there will be some communication to find out

22   whether or not a particular motion to dismiss is

23   opposed.  And, as a result of that, I would expect, if

24   there's going to be an opposition, you should be able to

25   articulate particular grounds as to why the motion to

```
 1   dismiss should not be granted.

 2              Most of the ones that we've seen so far -- I

 3   say most of them, a good number of them -- have been

 4   unopposed because we've done all we can do to try to

 5   match.  We've tried to facilitate using the efforts and

 6   records of the defendants even to try to have,

 7   especially with the government, to try to match people

 8   to defendants.

 9              So, if you really don't have a suggestion as

10   to how you could possibly match, and you represent a

11   plaintiff, and you've followed all of avenues that we've

12   provided, then unfortunately that particular claimant's

13   action in this MDL is probably going to be dismissed.

14              MR. MEUNIER:  And of course, Your Honor, one

15   of the benefits of the matching process for case

16   management purposes was to come up with a unified

17   spreadsheet that would show the Court and show all

18   litigants which plaintiffs are matched to which

19   manufacturers and which contractors.  And, as discussed

20   in this same section of the joint report, the PSE was

21   charged with the responsibility of forwarding

22   spreadsheet data in that regard to the defendants, which

23   was done.  Although we did not warrant completeness

24   because we are relying, on many cases, on plaintiff's

25   counsel who may not even be members the committee.
```

1    Nonetheless, we have furnished that material, both to

2    the defendants and to special master Dan Balhoff.  And

3    we produced a revised master spreadsheet pursuant, to

4    the Court's orders PTO 68, in particular, on March 31st

5    of 2011.  And that's an ongoing effort, Judge.

6                But, at the end of the day, I think one of

7    the important common missions, if you will, of the MDL

8    will have been to create a consensus which can be used

9    going forward and remand if necessary to know who goes

10   where, with what defendant group, for litigation

11   purposes.

12               Judge, Section VI of the report is our

13   outline of the bellwether and summary trials.  The

14   bellwether trials, both summary jury trials and

15   otherwise.  There was a trial set for this coming

16   Monday, as the Court knows, which was to be a summary

17   jury trial, plaintiff vs. KZ RV and Fluor.  The Court

18   has entered an order of the dismissal of that plaintiff

19   case against KZ RV pursuant to a pending settlement

20   proposal.  Counsel for Fluor will be submitting a

21   revised order to reflect the fact that that plaintiff's

22   case has not been resolved or there is no propose to

23   resolve it as to the Defendant Fluor.  And so, to that

24   extent, that trial against Fluor is continued without

25   date at this time.

1          The remaining trials are set forth in the

2    order, in the joint report.  The next trial will be a

3    summary jury trial on June -- is it 13?

4          THE COURT:  13th.

5          MR. MEUNIER:  2011.  And that is a case

6    against Coachman RV Company.  The Court has selected the

7    bellwether plaintiff Anthony Dixon to proceed in that

8    summary jury trial.

9          The next summary jury trial, the next trial,

10   bellwether trial, will be August 1st of 2011.  That also

11   is a summary jury trial against the defendant

12   manufacturer Jayco, Inc., and the bellwether plaintiff

13   selected is Quiniece Lambert-Dolliole.

14         And then the final bellwether trial which is

15   scheduled at this time is a trial against Sun Valley and

16   CH2M Hill, which is set for October 17, 2011.  Charles

17   Marshall has been selected as the bellwether trial; and,

18   in the event he does not proceed, Sonya Andrews has been

19   designated as a replacement bellwether trial.

20         THE COURT:  And, since our last conference,

21   we had one summary jury trial that was held, that the

22   results of which are confidential at this point?

23         MR. MEUNIER:  Correct, Your Honor.  At this

24   point, the results remain confidential.

25         The summary jury trial in question was

1   against Dutchman, the manufacturer Dutchman, which is

2   part of the group of companies in the case affiliated

3   with Thor Industries.

4           THE COURT:  Right.

5           MR. MEUNIER:  Your Honor, the report in

6   Section VII discusses the status of claims against the

7   United States.  We've already mentioned the pendency of

8   Fifth Circuit appeals from this Court's dismissal of the

9   Mississippi and Alabama plaintiff, cases against FEMA

10  brought under the FTCA.

11          On May 18 of last year, this Court also

12  dismissed, pursuant to the government's motion, all

13  ordinary or simple negligence claims brought under the

14  FTCA by Louisiana plaintiffs, preserving only the gross

15  negligence or willful and wanton misconduct claims of

16  Louisiana plaintiffs as to FEMA.  The PSE did pursue

17  interlocutory appeal certification with this Court, but

18  the Fifth Circuit did deny our petition for an

19  interlocutory appeal.  And so the Court's ruling, at

20  least as to Louisiana plaintiffs cases against FEMA,

21  remains in that posture in this Court, those claims are

22  limited to gross fault, gross negligence claims only.

23          THE COURT:  I'm not sure if you or any

24  number of you would agree with me on this, but I would

25  think that the Fifth Circuit's treatment of the Alabama

1    and Mississippi statutes, to the extent that they carve

2    out certain claims or at least discuss a standard of

3    care, might be insightful as to what the Circuit's

4    feeling would be with regard to the Louisiana statute.

5    Although the statute is different from the other two

6    states, it might give some insight as to what the

7    Circuit's attitude might be towards the types of

8    statutes involved, which are all in the nature of

9    immunity statutes for tort actions based upon emergency

10   circumstances as a general proposition.

11              MR. MEUNIER:  I think you're correct, Judge.

12   There are common legal questions in the case of

13   Louisiana, Mississippi and Alabama.  And I think, with

14   the presentation of the appeals with the respect to

15   Mississippi and the Alabama, the plaintiffs and FEMA are

16   certainly going to be teaming up arguments about

17   applicability of those statutes, which in turn, as you

18   say will influence perhaps the situation in the

19   Louisiana situation as well.

20              THE COURT:  My appreciation of those issues

21   too, the arguments are largely based on policy choices

22   which are outlined pretty much in the statute history.

23   So I think the Circuit's comments and Alabama and

24   Mississippi, unless they expressly state nothing stated

25   here has anything to do with the Louisiana statute,

1    which they from time to time do, I think they'll

2    certainly help out in what they might do had they taken

3    the Louisiana statute.

4            MR. MEUNIER:  So I think it's fair to say --

5    and I know Mr. Miller's here, that the status of this

6    litigation against FEMA is dependent at this point

7    largely on appellate court practice and what will happen

8    in those pending appeals.

9            Your Honor, we do continue in the joint

10   report in this case in Section IX to reference the

11   settlement against Fleetwood.  This was not a proposed

12   class settlement but rather an individual release driven

13   settlement against that bankrupt entity and its

14   insurers.  The special master in the Fleetwood

15   settlement, Dan Balhoff, has now issued his

16   recommendations on methodology and allocation of the

17   settlement fund, and this Court approved those

18   recommendations on March 9th.

19           The special master, now having been approved

20   in his allocation proposal, has communicated to each

21   plaintiff counsel representing individuals who occupied

22   Fleetwood units what the proposed settlement allocation

23   is to each individual plaintiff.  Those allocation

24   letters were mailed out to counsel on March 22nd.  And

25   we now are receiving or we know that the responses are

1  being made to the allocation.  The claimants had

2  actually until actually April 8th to file objections.

3  And, under the protocol, will now proceed to address

4  those objections primarily or chiefly through the

5  services of the Special Master Balhoff.

6           THE COURT:  Okay.

7           MR. MEUNIER:  Your Honor, the remainder of

8  the report is simply related to other efforts at

9  settlement.  John Perry is appointed as a mediator for

10  global settlement discussions with all defendant

11  manufacturers.

12           In addition, Dan Balhoff, as just mentioned,

13  is not only special master in Fleetwood but he has also

14  agreed to step forward as a member of Mr.  Perry's group

15  to assist us with mediation discussions involving other

16  defendant manufacturers.  And those discussions have

17  taken place.

18           As indicated in the report, at the end of

19  April, there were mediated discussions through Mr.

20  Balhoff with counsel for Sunnybrook RV and its insurers,

21  as well as with Sun Valley, Inc., and its insurers.  In

22  both cases those insurers are the same, Colony National

23  and Westchester Surplus Lines.

24           And, as this Court knows, one of the motions

25  that is pending before you is a motion on behalf of

1    plaintiffs to stay under the All Writs Act a declaratory

2    judgment action which has been brought by those insurers

3    in the state court of Indiana.  And we believe that, as

4    long as these discussions on possible settlement

5    continue, it's helpful to just leave matters status quo

6    on that.  Because obviously the same counsel who are

7    involved in that state court action seeking declaratory

8    judgment are counsel with whom we're having discussions

9    about possible settlement.

10                  THE COURT:  Okay.  And that really applies

11   to any manufacturer.  If you're a counsel for any

12   manufacturing defendant who has not yet had a bellwether

13   trial but you have had the results, you're able to use

14   the results of the bellwether trials.  If you would like

15   to start or pursue settlement negotiations with

16   plaintiff's counsel in order to conserve fees and costs

17   hence forth, please feel free to contact either Mr.

18   Perry or Mr. Balhoff, both of whom are acting with the

19   Court's authority as special masters to facilitate a

20   settlement discussion.  They're experienced in this

21   particular litigation with a framework that might work

22   for you and your clients.  Please don't wait until

23   others do it.  If you feel like you and your client and

24   your client's carriers or those involved in terms of

25   resolution are interested in pursuing a resolution

1    sooner rather than later, there's nothing stopping you

2    from beginning that process.  So I would encourage you

3    all to do that.

4              Because, what's going to happen at some

5    point, is those that are able to settle their claims

6    in-globo as part of the MDL are going to do so.  And, if

7    you've been sitting on the sidelines, and you only have

8    a small number of units and you've been watching Mr.

9    Weinstock and some of the other attorneys for the larger

10   players here, your cases may wind up getting remanded

11   and you may -- your client's going say:  Well, I thought

12   we were in the MDL, I thought this was going to work

13   out, now I've got to defend 15 claims here, 10 claims

14   over here and now I'm back in state court.  Don't wait

15   for that to happen before you take advantage of Mr.

16   Perry and Mr. Balhoff's services as special masters in

17   this case.

18             I strongly encourage to you visit with your

19   clients and all involved in evaluating the claims to try

20   to have that conversation sooner rather than later, and

21   they will be in touch with Mr. Meunier in so far as a

22   response from the plaintiff's side.

23             MR. MEUNIER:  And, Your Honor, just to add

24   to that, we have been requested at different times to

25   hold strictly confidential even the raising of the

1   subject of settlement on behalf of a given defendant.

2   And we honor those requests and believe them to be

3   important.  So counsel who wish to proceed with

4   discussions can be assured that, if they want to it kept

5   confidential that they have even reached out through the

6   mediator to us, then that is certainly a protocol we

7   have followed and will continue to follow.

8                   THE COURT:  That's good to know.

9                   I guess my point, in short, is, in addition

10  to what Mr. Meunier just pointed out, my point in short

11  is it that, if your client sees its role in the MDL as

12  sort of a tag-along or somebody who is -- you'll be

13  called upon later to respond, you may -- the person that

14  you're tagging along with, the defendant that you're

15  tagging along with, may wind up resolving the claims, in

16  which case you're going to be front and center, and you

17  will not have had the learning curve the person you

18  think is the primary counsel has, and that person's

19  claims are now going to be resolved.  So please don't

20  wait for somebody else to do something.  If you feel

21  like now is the time to have that conversation, your

22  clients can greatly benefit by starting that process

23  sooner rather than later.

24                  And that's the whole idea of the earlier

25  discussion we had with the plaintiff fact sheets, is to

```
 1    try to get you the information, your clients the
 2    information they need to have sooner rather than later,
 3    so that they can have that type of an evaluation while
 4    we still have the MDL to work through.
 5              Mr. Weinstock, did you want to add anything
 6    to what Mr. Meunier has covered here?
 7              MR. WEINSTOCK:  Nothing, Your Honor, except
 8    that we've agreed on the next day would be I believe
 9    would be July 15.
10              THE COURT:  Yeah.  Friday, July the 15th,
11    will be the next conference.  Same schedule, 8:30 for
12    the committees and 10.
13              But, before we conclude, of course, Mr.
14    Kurtz, did you have anything for the third-party
15    contractors?
16              MR. KURTZ:  No, Your Honor.
17              THE COURT:  And, Mr. Miller?
18              MR. MILLER:  No, Your Honor.
19              THE COURT:  Let me open the floor to any
20    further discussions about anything we've either covered
21    as part of the report that Mr. Meunier has presented or
22    anything else that we've not covered.  Any other topic
23    in the MDL that anyone would like to discuss, now would
24    be the time to go ahead and raise it.  Questions,
25    comments, issues?  Anybody else?
```

1                    (No Response.)

2                    THE COURT:  Thank you all for coming.  We'll

3    have a lot more to report on July the 15th.

4                    (10:37 a.m., Proceedings Concluded.)

5

6

7                         CERTIFICATE

8

9

10

11       I, Susan A. Zielie, Official Court Reporter, do
     hereby certify that the foregoing transcript is correct.

12

13

14                         /S/ SUSAN A. ZIELIE, RPR, FCRR
                           _____
15                           Susan A. Zielie, RPR, FCRR

16

17

18

19

20

21

22

23

24

25