UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE<br>PRODUCT LIABILITY LITIGATION | MDL NO. 1873 |
| | SECTION "N-5" |
| | JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PSC MOTION TO APPROVE
DEDUCTION OF COMMON BENEFIT EXPENSES FROM
MANUFACTURED HOUSING CLASS SETTLEMENT FUND**

**MAY IT PLEASE THE COURT:**

**I.      INTRODUCTION**

On December 11, 2007, this Court appointed certain attorneys to the Plaintiffs' Steering Committee ("PSC") and charged them with the responsibility of prosecuting all plaintiffs' claims in this MDL. *See* Order of Dec. 12, 2007 (Rec. Doc. 49). The functions of such Court-appointed committees are recognized in the Manual for Complex Litigation; they include developing plaintiffs' proof of liability, anticipating defenses, gathering expertise to prove causation and damages, coordinating pleadings, managing discovery, and conducting trial activity. *See* MANUAL FOR COMPLEX LITIGATION, Fourth, §22.62.

Since its establishment the PSC has assumed, and continues to meet, all such responsibilities. PSC members, assisted by counsel who have subscribed to a working relationship with the PSC, have tested numerous temporary housing units (including a large number of mobile homes made by manufactured housing defendants), retained experts, prepared pleadings (including, in the case of certain bankrupt manufactured housing defendants, pleadings in the bankruptcy proceedings associated with those defendants), presented arguments on class

certification issues, responded to defenses asserted under FRCP 12, created a process to help claimants identify the manufacturers of temporary housing units occupied by these claimants, conducted weekly telephone conferences with PSC members and other plaintiffs' counsel, attended monthly status conferences with the Court, prepared (or helped prepare) joint reports to the Court, created/staffed a claims office to assist claimants in completing Plaintiff Fact Sheets, tried several bellwether cases to verdict, and prepared, in particular, briefing on the preemption issue associated specifically with the manufactured housing ("non-litigation track") defendants. Plaintiffs pursuing claims in this MDL, specifically including those asserting claims against manufactured housing defendants, have benefited from these efforts by Court-appointed counsel.[1]

The PSC and counsel for the manufactured housing defendants now have negotiated a proposed class settlement of all claims made by plaintiffs against these manufacturers. The total settlement amount is $2.675 million. On a joint motion of the settling parties, the Court has granted preliminary approval of the class settlement. (Rec. Doc. 20668).

The negotiation of this proposed agreement was challenging for plaintiffs for a number of reasons. Because of bankruptcy proceedings instituted by several of the manufacturing entities involved, it was necessary – and at times difficult – to secure the necessary insurer participation in the settlement. Moreover, this Court's granting of a motion brought by all manufactured housing defendants on the issue of preemption, though the subject of plaintiffs' pending appeal in the Fifth Circuit, significantly circumscribed the product liability case against these

---

[1] Approximately 11,000 occupants of manufactured housing units used by FEMA to house citizens displaced by Hurricanes Katrina and Rita have asserted claims against the various manufactured housing defendants and/or their insurers in the MDL.

defendants. Nonetheless, the PSC firmly believes the settlement to be fair, reasonable, and in plaintiffs' best interests in these proceedings.

The PSC therefore respectfully requests that this Court approve the reimbursement of certain common benefit expenses to the PSC, as a deduction from the manufactured housing class settlement fund. These expenses either have been already paid by the PSC in litigation on behalf of all manufactured housing claimants against these settling defendants or, in some cases, remain to be paid as necessary cost obligations associated with the finalization of the manufactured housing settlement.

Given the limited per claim recovery of the settlement, the PSC and associated common benefit counsel have agreed to waive common benefit fees, unless individual attorneys move for an award of attorney's fees.[2]

## II. THE AUTHORITY OF AN MDL JUDGE TO AUTHORIZE THE REIMBURSEMENT OF COMMON BENEFIT EXPENSES INCURRED BY COURT-APPOINTED COUNSEL IS WELL-ESTABLISHED.

Authority is vested in an MDL judge to "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The Court's approval and administration of settlements also is contemplated under the MDL statute. *See generally* MANUAL FOR COMPLEX LITIGATION, Fourth, §22.9. Inherent in this authority is the discretion to approve the reimbursement of common benefit fees and/or expenses, when requested by Court-appointed counsel. *See, e.g.*, *In re Diet Drugs Prods. Liab. Litig.*, MDL 1203, 2002 WL 32154197, *17 (E.D. Pa. 10/3/02) ("the court

---

[2] By e-mail of ___ [date] to all plaintiffs' counsel of record, the undersigned Co-Liaison Counsel for plaintiffs has advised that the PSC and associated common benefit counsel are proposing that <u>all</u> fees be waived in this settlement, and further that the instant motion, if granted, will seek a deduction from the settlement fund for cost reimbursement which may impinge upon a portion of the fund otherwise reserved for both common benefit and private fees. The e-mail suggests that any counsel seeking private fees therefore file an opposition to this motion, or a separate motion to reserve private fees from the settlement fund. This e-mail is made Exhibit 1 in order to form part of the record for what is at issue in the August 22, 2011 hearing on this motion.

must be permitted to compensate fairly the attorneys who serve on . . . a [court-appointed] committee."); *In re Genetically Modified Rice Litig.*, MDL 1811, 2010 WL 716190, *4 (E.D. Mo. 2/24/10) ("An MDL court's authority to . . . order contributions to compensate leadership counsel derives from its 'managerial' power over the consolidated litigation, and, to some extent, from its inherent equitable power.").

MDL transferee courts traditionally have exercised broad discretion with regard to orders addressing common benefit fees and expenses. Such a deduction for fees/costs is based upon the well-established common benefit doctrine, a doctrine which for years has been recognized and affirmed by the U.S. Supreme Court. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980) (providing that all who benefit from a common fund created through the efforts of a litigant or attorney, must contribute proportionately to the costs of litigation); *see also Sprague v. Ticonic National Bank*, 307 U.S. 161, 166 (1938); *Kirkpatrick v. Young*, 456 So.2d 622, 625 (La. 1984); MANUAL FOR COMPLEX LITIGATION §14.121.

The Fifth Circuit specifically has applied the common benefit doctrine in an MDL context. *See, e.g.*, *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1021 (5th Cir. 1977). The underlying justification is that Court-appointed counsel can serve effectively only if their services and efforts are understood to be compensable in the event of a global recovery:

> In matters of complex litigation, the district court must be instilled with the power necessary to order appropriate compensation to lead counsel . . . [for] the services lead counsel provide to all parties involved. 'The court's power is illusory if it is dependent on lead counsel's performing the duties desired of them for no additional compensation.'

*In re Clearsky Shipping Corp.*, 2003 WL 1563820 at *4 (E.D.La. 2003) (citing *Fla. Everglades,* 549 F.2d at 1016-17).

The reimbursement of common benefit expenses out of a class settlement recovery in an MDL is therefore consistent with ample precedent. Federal courts routinely have allowed Court-appointed counsel in mass tort, consolidated MDL proceedings to be reimbursed for the reasonable costs shown by counsel to have been expended in the administration and prosecution of all Plaintiffs' claims. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, MDL 1657, Order dated Aug. 4, 2005 (Doc. 792) [pre-trial order granting set-aside for common benefit fees/costs]; *In re Diet Drugs*, *supra*; *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1996 WL 900349 (PTO 402) (E.D. Pa. 6/17/96); *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992); *Fla. Everglades*, *supra*; *In re Bausch & Lomb Contact Lens Solution Prods. Liab. Litig.*, 2008 WL 2330571 at *1 (D.S.C. 2008) (approval given for "the fair and equitable sharing among plaintiffs of the cost of services performed and expenses incurred by attorneys acting for MDL administration and common benefit of all plaintiffs in this complex litigation").

In order to preserve the right of common benefit counsel to seek a reimbursement of expenses out of a global settlement, courts have consistently ordered a portion of the settlement fund be designated for allocation by the Court in accordance with appropriate legal standards. *See, e.g.*, *In re Diet Drugs, supra; In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 300 (1st Cir. 1995); *Smiley v. Sincoff*, 958 F.2d 498, 499 (2d Cir. 1992); *In re Orthopedic Bone Screw, supra*; *In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1296, 1317 (E.D.N.Y. 1985); *In re Silicone Gel Breast Implant Product Liability Litigation*, MDL 926, Pretrial Order Nos. 13 & 23 (N.D. Ala. July 23, 1993 and July 28, 1995). Once a preliminarily-approved class settlement is given final approval, the presiding judge is vested with the authority to "award . . . nontaxable costs that are authorized by law." Fed. R. Civ. P. 26(h).

For this reason, the class notice of the Fairness Hearing of August 22, 2011 at which final approval of this class settlement will be sought – a notice authorized and approved by this Court in conjunction with preliminary approval of the settlement – makes plaintiff class members and their individual counsel aware that there will be a request by common benefit counsel for a deduction from the settlement fund to reimburse common benefit expenses.[3]

### III.   THE COMMON BENEFIT COST REIMBURSEMENT REQUESTED IS A REASONABLE DEDUCTION FROM THE SETTLEMENT FUND.

Attached as Exhibit 2 is an itemization detailing the common benefit expenses for which reimbursement is sought by the PSC from the manufactured housing settlement fund. These expenses fall into two categories: (1) litigation costs; and, (2) estimated class administration costs.

#### A.   LITIGATION COSTS

There are two types of costs incurred by common benefit or class counsel in prosecuting litigation; "hard," out-of-pocket expenses such as discovery costs and expert witness fees, and "held" costs such as salaries for additional staff, copying, and long-distance phone charges, etc. It has been suggested by district courts that priority over "held" costs should be given to "hard" costs in the reimbursement of common benefit expenses. *See In re Clearsky Shipping Corp.*, 2003 WL 1563820 at *2 (E.D.La. 2003). All of the litigation costs for which the PSC seeks reimbursement in this settlement are such out-of-pocket expenditures; none of the items in the litigation cost category made the subject of this motion is in the nature of a "held" common benefit expense.

---

[3] Part of the negotiated agreement is that no more that 48% shall be deducted from the settlement for fees and costs combined. The class notice therefore specified that common benefit fees and costs may be sought in an amount that "shall not exceed 48% of the Total Settlement Fund." As noted, common benefit fees are being waived, save to the extent payable out of private fees sought by counsel. *See* p.3 and n.2, *supra*.

6

As reflected in Exhibit 2, the PSC and subscribing member firms have incurred out-of-pocket expenses directly related to the litigation of claims against the manufactured housing defendants in the total amount of $757,565.29. Significant portions of these litigation expenses listed were incurred in the expert testing of mobile homes by Mary DeVany, in securing important expert testimony regarding formaldehyde exposure, and in retaining the services of bankruptcy counsel for the various bankrupt manufactured housing defendants. Undersigned Co-Liaison Counsel for Plaintiffs verify that these submitted expense amounts relate to, and have been incurred in connection with, the claims of manufactured housing Plaintiffs in the MDL, i.e., those Plaintiffs who now will participate in, and benefit from, the settlement negotiated with the manufactured housing defendants.

### B.  CLASS ADMINISTRATION COSTS

Regarding class administration costs, also itemized in Exhibit 2, the PSC has incurred common benefit expenses both in the operation of the PSC claims office and in retaining the services of class administration consultants, including Postlethwaite & Netterville and the Garretson Resolution Group.

The statement of class administration costs begins with an itemized total of the centralclaims office costs incurred by the PSC from the month the office opened, May 2005, until the month of the manufactured housing settlement, March 2010. The statement further estimates the total number of all plaintiffs in this MDL, and calculates the percentage of those in this total population who are known and identified as manufactured housing Plaintiffs (i.e. 13.39%). The concluding calculation refers to a subtotal sum of $106,525.60 in PSC claims office expenses. The PSC submits that this share of total PSC claims office expenses incurred prior to the manufactured housing settlement, being 13.39% of the total claims office expenses

for this period, should be considered attributable to the handling of the Plaintiffs' claims against manufactured housing defendants, and on this basis reimbursed out of the settlement.

Additionally, the PSC has incurred $78,885.80 in expenses related to the implementation and administration of the class notice. As reflected in Exhibit 2, this, combined with claims office expenses, brings to a total of $196,078.99 the amount which the PSC has expended in class administration costs.

The finalization of this proposed class settlement, if approved, will involve ongoing claims processing, objection-to-allocation processing, other needed communications to and with claimants, and lien resolution. Postlethwaite & Netterville has estimated the range of future costs for its services to be between $180,000 and $250,000. The expected cost for the lien resolution services of the Garretson Resolution Group is $21,000. The maximum total of such future costs is therefore $271,000. The PSC respectfully submits that this maximum amount should be set aside and reserved from the settlement fund, any unused balance being subject to further orders or the Court for the benefit of class members.

### C.  TOTAL COMMON BENEFIT COSTS

Accordingly, the maximum amount of the reimbursable common benefit expenses for both incurred and projected litigation and class administration costs identified in Exhibit 2, is $1,224,644.28, i.e., 45.8% of the settlement fund. This amount is reasonable given the above-described efforts of common benefit counsel, and also is within the maximum 48%-of-fund deduction for fees and costs which was agreed upon between the parties in their Stipulation of Settlement (Rec. Doc. 20481-1 at 17), and which appeared in the class notice for the Fairness Hearing.

## IV.     CONCLUSION

Pursuant to the above authority, the PSC therefore respectfully requests that this Honorable Court enter the attached order, approving both a common benefit cost reimbursement of $953,644.28 (representing 35.7% of the total manufactured housing settlement fund) for the expenses advanced by the PSC and associated common benefit counsel, and a future class administration cost reserve of $271,000 (representing an additional 10.1% of the settlement fund) for the prospective services required to administer and finalize the proposed settlement..

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION**

BY:     s/Gerald E. Meunier
         GERALD E. MEUNIER, #9471
         JUSTIN I. WOODS, #24713
         **PLAINTIFFS' CO-LIAISON COUNSEL**
         Gainsburgh, Benjamin, David, Meunier &
         Warshauer, L.L.C.
         2800 Energy Centre, 1100 Poydras Street
         New Orleans, Louisiana 70163
         Telephone:     504/522-2304
         Facsimile:     504/528-9973
         gmeunier@gainsben.com
         jwoods@gainsben.com

         **COURT-APPOINTED PLAINTIFFS'
         STEERING COMMITTEE**
         ROBERT M. BECNEL #14072
         RAUL BENCOMO, #2932
         ANTHONY BUZBEE, Texas #24001820
         FRANK D'AMICO, JR., #17519
         ROBERT C. HILLIARD, Texas #09677700
         MATT MORELAND, #24567
         DENNIS C. REICH Texas #16739600
         MIKAL C. WATTS, Texas #20981820

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier<br>
GERALD E. MEUNIER, #9471