## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
|     FORMALDEHYDE | * | |
|     PRODUCTS LIABILITY | * | SECTION: N (5) |
|     LITIGATION | * | |
| | * | JUDGE: ENGELHARDT |
| THIS DOCUMENT RELATES TO: | * | |
| *Gerod Macon, et al v. Sun Valley, Inc., et al* | * | MAG. JUDGE: CHASEZ |
| *Docket No. 09-7103 (Laura Demetriace Batiste)* | * | |
| 09-7109 | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### SUN VALLEY, INC., d/b/a SUN-LITE'S REPLY TO PLAINTIFF'S OPPOSITION TO SUN VALLEY'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON MEDICAL CAUSATION ON LAURA BATISTE (R.DOC 22226)

**MAY IT PLEASE THE COURT:**

Sun Valley, Inc., d/b/a Sun-Lite filed a Motion for Summary Judgment on Medical Causation regarding the claims of Laura Batiste. (R.Doc. 22226) In response, Ms. Batiste filed an opposition brief, albeit deficient according to the docket clerk (Local Rule 56.2 for failing to submit a statement of contested facts). (R.Doc. 22295) Thereafter and less than eight days prior to the hearing date, Ms. Batiste filed another opposition brief with a statement of contested facts. (R.Doc. 22316)

Sun Valley now replies to Ms. Batiste's opposition briefs as follows.

**1.**  **<u>Summary Judgment Would Not Unfairly Prejudice Ms. Batiste.</u>**

Although Ms. Batiste' counsel contends that Charles Marshall was intended to proceed to trial and that Ms. Batiste was not proceeding to trial, this intention was not communicated to Sun Valley's counsel until after all parties incurred the substantial expense of generating expert reports and after the filing of the instant Motion on July 21, 2011, as illustrated below. In other words, plaintiffs' counsel communicated their decision to select

Charles Marshall as the bellwether plaintiff to go forward with the trial after they realized that the claim of Laura Batiste was subject to dismissal on a pending summary judgment motion.

On June 10, 2011, Sun Valley's counsel sent electronic correspondence to counsel for plaintiffs asking for a date by which plaintiffs would declare whether they will proceed to trial with the case of Charles Marshall.[1]   Attorneys for plaintiffs did not reply. This was confirmed in R. Doc 22076 filed by Counsel for Fluor Enterprises Inc. in which its attorney stated:

> "FEI represents that by email from Sun Valley, Inc's counsel June 10, 2011, plaintiffs were called upon to agree to or at least discuss a date by which the plaintiffs would declare if they are proceeding to trial with the first-scheduled bellwether trial of Charles Marshall. As of the date FEI is submitting this designation, plaintiffs have yet to respond to that inquiry…"[2]

In fact, on August 3, 2011, Fluor's attorney sent an email to plaintiffs' attorney confirming a conversation between them on July 15, 2011, whereby plaintiffs' attorney stated that he would make a decision as to how he would proceed, i.e. whether he would dismiss Fluor or instead ask the judge to take the back-up plaintiff's cases off the docket.[3]  This confirms that plaintiffs failed to communicate their intentions with defendants as of July 15, 2011. In fact, the first notice that plaintiffs intended to go forward with the trial of Charles Marshall was received as a response to the email sent by the Court on July 26, 2011, *after* the subject Motion for Summary Judgment was filed.[4]

Because plaintiffs failed to officially designate a bellwether plaintiff despite Sun Valley's request, defendant spent considerable time and expense obtaining expert reports, defending Ms. Batiste' suit, and preparing the instant Summary Judgment Motion.

---

[1] See Exhibit 1 Email from Brent Maggio to plaintiff's attorneys dated June 10, 2011.
[2] See R. Doc. 22076 page 2 ¶ 5
[3] See Exhibit 2 email from attorney for Fluor to plaintiff's attorneys dated August 3, 2011.
[4] See Exhibit 3 email from plaintiff's attorneys to the Court dated June 26, 2011.

Because plaintiffs' attorneys refused to respond to undersigned counsel's request (dated June 10, 2011) that they designate a bellwether plaintiff for trial, Sun Valley was forced to comply with the Court's Scheduling Order that mandated it to produce expert reports by no later than July 18, 2011. (R.Doc. 19813) In doing so, Sun Valley retained the following experts who issued reports in this case: Drs. Graham Allan, Coreen A. Robbins, Robert C. James, Philip Cole, and H. James Wedner.[5] Further, the Plaintiff herself designated experts and provided expert reports for her case on or about June 15, 2011, thereby undermining and contradicting her position that Charles Marshall was designated as the bellwether plaintiff to go to trial, not her.[6] In other words, if Counsel for plaintiffs designated Charles Marshall as their bellwether trial candidate why would the parties, including the plaintiffs, waste so much time and money on cases that would not go forward?

Plaintiff argues that she would be unfairly singled out from the rest of the plaintiffs if this Motion was granted as she would be unable to participate in future settlements. Defendant contends that Ms. Batiste has already been singled out from the general plaintiff population in that she has been given the opportunity to prove her case through discovery, depositions and expert reports. She cannot now claim prejudice just because she has failed to meet her burden of proof after being given an opportunity to do so. In fact, defendant would be unfairly prejudiced if it is not granted this motion for summary judgment in spite of the considerable time and expense that has been spent preparing her case.

Finally, plaintiff attempts to blame Sun Valley for the judicial process by stating that the alternate bellwether plaintiffs were selected at the insistence of Defendant. (R.Doc. 22316, p. 2) Admittedly, Sun Valley believed and still believes that backup plaintiffs are

---

[5] See Sun Valley's Expert Designation R. Doc. 22038; Selected portions of the expert report of G. Graham Allan, Ph.D and affidavit Exhibit 4; Selected portions of the expert report of Coreen A. Robbins, M.H.S., Ph.D., C.I.H. and affidavit Exhibit 5; Selected portions of the expert report of Robert C. James, Ph.D and affidavit Exhibit 6; Selected portions of the expert report of Philip Cole, M.D, and affidavit Exhibit 7; Selected portions of the expert report of H. James Wedner, M.D and

3

crucial to this bellwether process based on the history of plaintiffs voluntarily dismissing their cases throughout this multi-district litigation once chosen for a bellwether trial, the Court issued this Order and the plaintiffs consented to the Scheduling Order which was eventually approved and signed by the Court.[7]

**2.     Ms. Batiste has not established a disputed factual issue as to medical causation under Louisiana law.**

Plaintiff's case lacks both general and specific causation. The Court is only to consider specific causation evidence as a "follow-up to admissible general causation evidence".[8] Further, a plaintiff in a toxic tort case is required to produce expert testimony to establish causation.[9]

Plaintiff relies on Dr. Patricia Williams for her general causation testimony. However, Dr. Williams only opined regarding broncho-constriction/asthma, upper respiratory tract damage and cancer.[10] Plaintiff's claims for headaches, sore throat, itchy and burning eyes, runny nose and nausea lack general causation. Without general causation evidence, her claims fail and specific causation and the *Housley* presumption issues need not be reached.[11]

Even assuming that Dr. Williams offered admissible general causation testimony as to the plaintiffs alleged injuries, expert testimony is "unquestionably required" in proving **both** general and specific causation to assist the jury in a toxic tort case.[12] This Court has

---

affidavit Exhibit 8.
[6] See R.Doc. 21627, and Exhibits C and D to Sun Valley's Motion for Summary Judgment R.doc. 22226.
[7] R.Doc. 17328, Pretrial Order no. 78; R.Doc. 19813.
[8] *Knight v. Kirby Inland Marine Inc.*, 482 F. 3d 347, 351 (5th Cir. 2007) *citing Raynor v. Merrell Pharm.*, 104 F.3d 1371, 1376 (D.C. Cir. 1997)
[9] See Seaman v. Seacor Marine L.L.C., 326 Fed. Appx. 721, 723 (5th Circuit 2009) *internal citations omitted.*
[10] See exhibit B to R.doc. 22226 ALEX-EXP-77-000035. Although Williams' lengthy report cites a plethora of studies regarding a variety of symptoms reported as a result of formaldehyde exposure, her opinions are clearly summarized on the last page of her report. These opinions are silent as to headaches, sore throat, itchy and burning eyes, runny nose or nausea. Just because those conditions are mentioned in her report does not mean that Williams is expressing an expert opinion attributing those complaints to formaldehyde exposure.
[11] *Id. citing Cano v. Everest Minerals Corp.*, 362 F. Supp 2d. 814, 824 (W.D. Tex. 2005) "First the district court must determine whether there is general causation. Second if it concludes that there is admissible general causation evidence, the district court must determine whether there is admissible specific causation evidence."
[12] *Junk v. Terminix Intern. Co.*,628 F. 3d 439,450 (2010).  In *Junk*, Defendant's filed a Motion for Summary Judgment asserting that Plaintiff failed to meet his burden of proof on causation.  The District Court granted the Motion and the

previously held that specific causation requires medical testimony.[13] It is undisputed that Plaintiff offers no specific causation experts in support of her case. Instead, Ms. Batiste is attempting to advance her claims with general causation experts who do not address her at all and her own testimony.

Further, this Court has questioned whether *Housley* even applies to cases such as the one at bar where the injury arises from repeated behavior. In *Kemp v. Metabolife Intern., Inc.*, the Court stated;

> "It is questionable whether *Housley* should even apply to a situation where injury allegedly arises not from one incident, as in most personal injury suits and *Housley,* but from repeated behavior, such as the regular use of dietary supplements. The *Housley* presumption makes sense in situations involving as single incident because a reasonable person, presumably, would not continually repeat behavior that had a very close temporal relationship with an injury. Conversely, the *Housely* presumption is not easily applied in situations where injury allegedly arises not from a single "accident" or incident but rather from a series of incidents which, for that matter, where [sic] not "accidental."[14]

Admissible expert testimony is required in a toxic tort case to prove causation.[15] Dr. Williams only gave "general medical causation" opinions; she did not provide "specific medical causation" opinions as indicated in plaintiff's Expert Designation List filed with the Court and as reflected in her report. Plaintiff is attempting to prove her case using irrelevant general causation expert testimony prepared for *other* plaintiffs and her own lay testimony. This is an ineffective attempt to meet her burden of proof.

3.    **Ms. Batiste has not established dose.**

"Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the

---

decision was affirmed on appeal.
[13] *Kemp v. Metabolife Intern., Inc.* 2004 WL 2095618 (EDLA 2004)
[14] *Kemp v. Metabolife Intern., Inc.* 2004 WL 2095618 (EDLA 2004) at *4
[15] *Knight v. Kirby Inland Marine Inc.,* at 351 wherein the District Court held that a plaintiff failed to meet his burden where the doctor upon whom he relied for a general causation expert lacked the necessary foundation to withstand *Daubert*

plaintiffs' burden in a toxic tort case."[16] Plaintiff does not produce evidence of these necessary facts.

Stephen Smulski's report referenced in plaintiff's opposition brief was drafted in 2008.[17] At that time, Sun Valley was not even a party to this litigation.[18] Therefore, the report and the opinions referenced therein, could not have contemplated Laura Batiste or Sun Valley trailers. Further, Smulski's report does not actually contain an opinion regarding the dose more likely than not experienced by residents of FEMA trailers. His opinions are stated in paragraph 14 and 15 of his report.[19] Neither of those paragraphs mentions anything about the levels of formaldehyde experienced by any resident of any FEMA trailer and those paragraphs certainly do not address Laura Batiste or Sun Valley.

4.   **Plaintiff's List of Disputed Facts.**

After reviewing plaintiff's list of disputed facts, Sun Valley submits that these alleged facts are completely irrelevant to the issues at hand: general and specific medical causation. Specifically, she has failed to present testimony from one medical expert who opined that her alleged symptoms are causally related to formaldehyde exposure inside her Sun Valley travel trailer. To further compound this lack of medical testimony, Sun Valley presented Dr. James Wedner's testimony that unequivocally stated that Ms. Batiste did not sustain any injury from the alleged formaldehyde exposure within the Sun Valley trailer.

5.   **Defendant's Expert fees.**

In the event that this Court decides to refrain from ruling on the instant Motion for Summary Judgment, then Sun Valley requests that the Court issue an Order requiring

---

scrutiny. Because the Court determined that general causation testimony was lacking, it was unnecessary for them to consider specific causation. Their decision was upheld by the 5th Circuit.
[16] See *Seaman v. Seacor Marine L.L.C.*, 326 Fed. Appx. 721, 723 (5th Circuit 2009) *citing Allen v. Pa. Eng'g Corp.*, 102 F. 3d 194, 199 (5th Cir. 1996) and at 729
[17] See R. Doc. 22226, Exhibit C; R.Doc. 22316, Exhibit C.
[18] See *Doty v. Sun Valley* 09-3722, the first matched complaint filed against Sun Valley in June 2009 and the 3rd Amended Master Complaint R. doc. 4486 filed October 2009, naming Sun Valley for the first time in a Master Complaint.
[19] See R. Doc. 22226, Exhibit C; R.Doc. 22316, Exhibit C.

plaintiff or the Plaintiffs' Steering Committee to reimburse Sun Valley for its fees and expenses associated with generating the expert reports of Drs. Graham Allan, Coreen A. Robbins, Robert C. James, Philip Cole, and H. James Wedner as it was their refusal to commit to a bellwether plaintiff for trial that triggered their fees.

## Conclusion

The entire purpose of a Motion for Summary Judgment is to preclude claims by plaintiffs who cannot meet their burden of proof. For plaintiff to now assert that a device being used for its intended purpose is unfair leaves the undersigned at a loss for words. A considerable amount of time and money has been expended by all parties, including the plaintiffs, to develop the case of Laura Batiste. Despite this, Ms. Batiste has failed to meet her burden of proof for all the reasons previously expressed. Therefore, Defendant's Summary Judgment on Medical Causation should be granted.

Respectfully submitted,
**ALLEN & GOOCH**

*/s/ Brent M. Maggio*
BRENT M. MAGGIO, T.A., # 19959
MARK W. VERRET, #23583
LORI D. BARKER, # 31687
SCOTT F. DAVIS, # 26013
JEFFREY E. MCDONALD, # 33270
3900 N. Causeway Blvd, Suite 1450
Metairie, Louisiana 70002
Tel: 504.836.5260
Fax: 504.836.5265
***Attorneys for Sun Valley, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been electronically filed on the 8th day of August, 2011, with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, and, it will be emailed to all Liaison Counsel, Government Counsel, and counsel for the above-captioned plaintiff.

*/s/ Brent M. Maggio*
BRENT M. MAGGIO