UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: FEMA TRAILER** | * | **MDL NO. 1873** |
| **FORMALDEHYDE** | * | |
| **PRODUCTS LIABILITY** | * | **SECTION: N (5)** |
| **LITIGATION** | * | |
| | * | **JUDGE: ENGELHARDT** |
| **THIS DOCUMENT RELATES TO:** | * | |
| *Irma Miller, et al. v. Sun Valley, Inc., et al* | * | **MAG. JUDGE: CHASEZ** |
| *Docket No. 09-5658 (Charles Marshall)* | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO
ESTABLISH "REASONABLY ANTICIPATED USE" UNDER THE LPLA REGARDING
CLAIMS OF CHARLES MARSHALL (Rec. Doc. 22235)</u>

**MAY IT PLEASE THE COURT:**

Defendant, Sun Valley, Inc. d/b/a Sun Lite ("Sun Valley"), respectfully submits this Reply Memorandum in Support of its Motion for Summary Judgment, and briefly responds to Plaintiff's Response (Rec. Doc. 22297) as follows:

**I.   Plaintiff's "Uncontested Statement of Material Fact" is Untimely and Mischaracterizes Testimony, and Defendant's Statement Should Be Admitted**

Local Rule 56.2 states:

"Any opposition to a motion for summary judgment must include a separate and concise statement of the material facts which the opponent contends present a genuine issue. All material facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement." [Amended June 28, 2002; Amended February 1, 2011]

Local Rule 7.5 provides that the deadline for filing pleadings in Opposition is eight days prior to hearing, or Tuesday, August 2, 2011. Plaintiff filed his statement untimely, on August

8, 2011. (*See* Rec. Doc. 22234). According to LR 56.2, all material facts stated in Sun Valley's statement should be deemed admitted.

Further, defendant contests plaintiff's statements of material fact for reasons more fully addressed, *infra*. Specifically, defendant contends that plaintiff mischaracterizes and misleadingly paraphrases testimony, and otherwise asserts facts which are immaterial to the instant litigation.

**II. Plaintiff Has Not Established That His Use of Sun Valley's Travel Trailer Is A Use That Sun Valley Should Have Reasonably Expected of an Ordinary Person, at the Time Plaintiff's Trailer Was Manufactured**

Plaintiff's burden is to show that his use of the product in question was a "reasonably anticipated use", regardless of whether or not Plaintiff's actual use of Sun Valley's product was reasonably foreseeable by Sun Valley. *Lockart v. Kobe Steel Ltd. Const. Machinery Div.*, 989 F.2d 864 (5th Cir. 1993); *Hunter on Behalf of Hunter v. Knoll Rig & Equipment Mfg. Co., Ltd.*, 70 F.3d 803, 810 (5th Cir. 1995) (citing *Daigle,* 598 So.2d at 1307; *Lockart,* 989 F.2d at 867). This is due to the fact that a reasonably anticipated use does not encompass foreseeable uses or misuses (*Frith v. John Deere Co.*, 955 F.Supp. 663 (W.D. La. 1996); *Hunter*, 70 F.3d at 810), and because damages linked to a product misuse (i.e., one that is not reasonably anticipated) are not recoverable (*Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306, 316 (5th Cir. 1998); *see also, Payne v. Gardner*, 56 So.3d 229, 231-32 (La. 2011)).

Therefore, the only appropriate question, at this stage, is whether or not plaintiff has established that the continuous and systematic use of his Sun Valley travel trailer—for permanent shelter, as a long-term residence for nearly three years—constitutes a use which Sun Valley should have reasonably expected of an ordinary person, at the point in time when plaintiff's trailer was manufactured. *See Matthews v. Remington Arms Co.*, 2011 WL 35894124 (5th Cir. 2011) at *8, 9; *Kampen*, 157 F.3d at 310-12; *Thompson, supra.*

Plaintiff simply has not done so.

### A. The Fact That Some People May Stay in Travel Trailers for an Extended Period of Time Does Not Make Continuous, Systematic Use of a Travel Trailer as a Permanent Home for a Period of Three Years a Reasonably Anticipated Use

#### 1) Plaintiff Again Mischaracterizes Sun Valley's Testimony

In his Opposition, plaintiff cites to the depositions of Mark Romanetz and Daniel Morrison in an attempt to demonstrate Sun Valley's knowledge that its trailers were used for extended full-time residence. Sun Valley respectfully represents that Plaintiff mischaracterizes and misquotes that testimony.

Plaintiff would first have this Court believe that Mark Romanetz's testimony shows that Sun Valley is aware that people use travel trailers continuously for full-time residences, and, therefore, full-time residential use should be a reasonably anticipated use. (See Rec. Doc. 22297, page 3). Mr. Romantez testified that the term "full-timers" is a "phrase that's used in the RV industry" to describe "people that use their RV and travel all over and they stay in the RV continuously." (Exhibit "A" 161:23-162:5). Mr. Romanetz also acknowledged that "some people who <u>might</u> buy [travel trailers] are 'full-timers' and will live in these units full-time." (Exhibit "A", 181:2-6). However, Mr. Romanetz had previously stated that "<u>probably a small percentage</u>" of people "<u>may</u> buy [a travel trailer] and use it full-time". (Exhibit "A", 164:14-17).

Mr. Romanetz's actual testimony speaks about "full-timers" as generally defined across the entire RV industry. Mr. Romanetz describes full-timers as RV owners who "travel all over" and, in doing so, "stay in the RV continuously". In the context of 'travelling all around' and 'staying in the RV continuously' during travel, Mr. Romanetz's testimony lends no support to an argument that a trailer's use as an extended, non-recreational, full-time residence, for a period of three years, should be a reasonably anticipated use. Finally, Mr. Romanetz's testimony

regarding hypothetical, potential, even foreseeable small percentages of customers possibly using a trailer full-time simply does not equate to plaintiff's use of Sun Valley's trailer being a reasonably expected use of an ordinary customer.

Plaintiff would next have this Court believe that the following testimony from Daniel Morrison demonstrates awareness that people use travel trailers for extended periods, thus plaintiff's full-time residential use should be a reasonably anticipated use. (See Rec. Doc. 22297, page 3):

> Q. Do any other family members own a RV unit?
> A. My parents.
> Q. Do they still own that unit?
> A. They don't. But they did for 15 or 20 years.
> Q. And what would they use that unit for?
> A. They would -- they camped frequently. And, also they -- they were "snowbirds," and in the wintertime they would set their RV up in an RV park in Florida for four months and live in it.
> Q. Did they live full-time up here in Indiana?
> A. Yes.
> Q. And they two drive it down to Florida and set it up?
> A. Yes, sir.
> Q. They would be what we'd call "snowbirds" or "full/long -timers"?
> A. Yes, sir.

(Exhibit "B", 64:20-65:11). Mr. Morrison testified that his parents took their RV to Florida in the wintertime and camped at an RV park for four months. This testimony comes nowhere near to supporting the proposition that plaintiff's continuous, full-time, residential use of a Sun Valley trailer for three years should be considered a reasonably anticipated use.

### 2) Foreseeable Use Does Not Equal Reasonably Anticipated Use

Foreseeability is not the LPLA standard. *See Matthews,* 2011 WL 35894124 at *8, 9 ("The standard is: at the time of manufacture, how did the manufacturer reasonably expect its product to be used by an ordinary person"). This is because "virtually any conceivable use is

foreseeable." *Lockart*, 989 F.2d at 867. Accordingly, the reasonably anticipated use analysis was incorporated to make it clear that a manufacturer will not be responsible for accounting for every conceivable foreseeable use of a product. *Butz v. Lynch*, 762 So.2d 1214, 1218 (La.App. 1 Cir. 6/23/00), rehearing denied, writ denied, 774 So.2d 980 (La. 11/17/00) (citing *Delphen v. Dept. of Transp. and Development,* 657 So.2d 328, 333 (La.App. 4 Cir.1995)). Furthermore, the use of the words "reasonably anticipated" effectively discourages the fact-finder from using hindsight. *Payne v. Gardner*, 56 So.3d 229, 231 (La. 2011) (citing *Daigle v. Audi of America, Inc.,* 598 So.2d 1304, 1307 (La.App. 3 Cir.), *writ denied,* 604 So.2d 1306 (La. 1992)).

For all of the reasons cited in Sun Valley's original memorandum in support of this Motion for Summary Judgment (Rec. Doc. 22235), Sun Valley should not have reasonably expected the ordinary customer to use its travel trailer in the manner in which plaintiff did at the time that plaintiff's trailer was manufactured.

### 3) Sun Valley's Concept of an "Extended Period of Time" Is Far Shorter Than That of Plaintiff

Sun Valley's definition of an 'extended period of time' clearly differs substantially from plaintiff's definition. Sun Valley has acknowledged that the term "full-timer" refers to a customer who "use[s] their RV and travel[s] all over and they stay[s] in the RV continuously." (Exhibit "A" 161:23-162:5). The only 'extended period of time' expressly contemplated in Sun Valley's testimony is a four month period of RV camping. This is less than one-tenth the amount of time plaintiff used his travel trailer, and the manner of use is not even comparable. Recreational camping excursions are a far cry from continuous, long-term use of a travel trailer as a permanent residence for a period of several years.

### 4) An Ordinary Customer Would Not Use a Sun Valley Trailer as Plaintiff Did

Sun Valley has thoroughly briefed the Court on this argument in its original memorandum in support of its Motion for Summary Judgment (Rec. Doc. 22235), and incorporates its arguments herein in their entirety. Sun Valley travel trailers were not designed, made, or marketed for full-time residential use; The warranty does not apply in cases of commercial or full time residential use; The Owner's Manual prepares the purchaser for no other use of the trailer other than towing it to and from a recreational camping site, or other comparable recreational excursion; The size, composition, capacity, and amenities of the Sun Valley travel trailers are prohibitive of full-time residential use.

### 5) Plaintiff Has Not Met His Burden Regarding "Time of Manufacture"

By late November 2005, Plaintiff Charles Marshall had received his travel trailer from FEMA. (Exhibit "C", 194:2-4). Plaintiff makes no showing that Sun Valley, prior to November of 2005, should have reasonably expected an ordinary customer to use its travel trailer as a permanent residence, continuously and systematically, for a period of three years.

### B. Acknowledgement of Potential Use or Misuse in a Warranty Exclusion Does Not Mean Such Use or Misuse Constitutes a Reasonably Anticipated Use

The fact that Sun Valley specifically excluded plaintiff's use of his travel trailer from the product warranty cannot establish that such use is a reasonably anticipated one. The result of that logic leads to absurdity; that logic is also contrary to the LPLA and judicial interpretation thereof. *Delphen,* 657 So.2d at 333 (A manufacturer is not responsible for accounting for every conceivable foreseeable use of its product); *Lockart,* 989 F.2d at 867 (reasonably anticipated use does not encompass foreseeable misuses).

Following this logic, the manufacturer of an automobile would be unable to exclude use of the vehicle for off-road driving from warranty coverage, because the very act of expressly excluding such use would make that use reasonably anticipated for purposes of liability under the

LPLA. Similarly, a golf cart manufacturer could not disclaim the inappropriate, yet foreseeable, use of the cart for highway driving. Yet both manufacturers would be liable to a customer for those uses, in part, because they could not disclaim them.

Louisiana courts have declined to follow plaintiff's flawed logic:

In *Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306 (5th Cir. 1998), the Fifth Circuit Court affirmed summary judgment granted in favor of the defendant on the issue of reasonably anticipated use. In *Kampen*, the Fifth Circuit Court determined that using a car jack in contravention of warnings within the car's owner manual was not a reasonably anticipated use.

In *Broussard v. Proctor & Gamble Co.*, 463 F.Supp.2d 596 (W.D. La. 2006), the District Court granted summary judgment to the defendant on the issue of reasonably anticipated use. The plaintiff in *Broussard*, suffered injuries from using a ThermaCare pain-relieving heat wrap essentially as the product was advertised, but in contravention of precautions contained on the labeling. The *Broussard* Court found that warning against product misuse is relevant to assessing what uses of a product a manufacturer should reasonably anticipate, and that use of a product in contravention of warnings, precautions, or instructions for use, even where there was no qualitative misuse of the product, cannot be a reasonably anticipated use. 463 F.Supp.2d 606-08.

This exclusion acknowledges that there is a particular use which has been foreseen by the manufacturer, and that the manufacturer, by operation of the exclusion, has placed such use in a category for which the product was not intended or fit for. Thus, a manufacturer should not reasonably expect that an ordinary customer will use its product in a manner which voids the warranty, and a warranty exclusion should not be evidence that the excluded use is somehow a reasonably anticipated use of the product. *See Kampen*, 157 F.3d 306 at 316 (a manufacturer is

not responsible for any damages caused by misuse); *See also*, *Broussard*, 463 F.Supp.2d 596 (the manufacturer is not responsible for every conceivable, foreseeable use of its product) (citing Kampen, 157 F.3d at 309-10) (citing *London v. MAC Corp. of America,* 44 F.3d 316 (5th Cir.1995)).

### C. Bruce Workman's December 5, 2005, E-Mail is Irrelevant to Plaintiff's Claims

#### 1) Testimony Regarding Mr. Workman's E-mail Only Establishes What Mr. Workman Wanted to Do, Not What Sun Valley Did

On December 5, 2005, Bruce Workman, an independent salesman, approached Sun Valley about producing five hundred Model 30HB trailers to sell to a Texas distributor who intended to re-sell those trailers to FEMA. However, Plaintiff fails to offer any Sun Valley testimony which suggests that this order was filled, because no such testimony exists. Nonetheless, Sun Valley has testified as to why it would not have done so:

> FEMA was looking for five hundred to a thousand units at a time. The most we ever did in a year was fifteen hundred. And if we would have tried to have built five hundred units, we would not have been able to build anything for our normal dealer base for six or seven months. . . it would have been great to have those five hundred units -- five hundred orders from FEMA.
> But if we can't supply our dealers, our dealers are going to go elsewhere. And after we would have fulfilled that FEMA order, our dealers would have been gone. We would have been out of business.

(Exhibit "B", 14:8-25).

Mr. Workman also suggested increasing production in response to FEMA demand. Plaintiff offers no testimony to suggest that Sun Valley ever did so, because no such testimony exists. In fact, Sun Valley's production numbers increased, every year, between 2000 and 2007. (Exhibit "A", 110:11-111:14). In 2008 and 2009, Sun Valley's production numbers fell off (Exhibit "A", 111:15-22), and Sun Valley attributes this drop to a downturn in the economy, and a resulting lack of consumer financing (Exhibit "A", 16:1-17:11).

In sum, the E-mail sent by Mr. Workman establishes only what Mr. Workman wanted to do. Plaintiff makes no presentation of testimony which suggests the thoughts and acts of Sun Valley were aligned with Mr. Workman's. Sun Valley's testimony makes clear that Mr. Workman's e-mail is irrelevant and immaterial to the instant case.

### 2) The E-mail Does Not Establish What Uses Sun Valley Should Have Reasonably Expected at the Time Plaintiff's Trailer Was Manufactured

Mr. Workman's E-mail is, in any event, chronologically irrelevant to plaintiff's claims. By late November 2005, Plaintiff Charles Marshall had received his travel trailer from FEMA. (Exhibit "C", 194:2-4). If plaintiff was already living in his trailer by late November 2005, an E-mail dated December 5, 2005, does not, and cannot, establish what use Sun Valley should have reasonably expected when plaintiff's trailer was manufactured.

### D. Plaintiff's Remaining Argument is Based on Manipulated Testimony and Otherwise Fails to Address the "Time of Manufacture" Element

In the remaining paragraph of its Opposition (Rec. Doc 22297, page 4), plaintiff again mischaracterizes Sun Valley testimony in asserting that Sun Valley knew that its trailers would be purchased by FEMA. First, plaintiff points to an increase in Sun Valley's production numbers in 2006. However, Sun Valley's production numbers increased, every year, between 2000 and 2007. (Exhibit "A", 110:11-111:14). Moreover, Mark Romanetz testifies clearly that he does not know if the 2006 numbers increased as a result of retailers selling trailers to FEMA. (Exhibit "A", 152:3-6).

Next, plaintiff cites Mr. Romanetz's testimony to demonstrate that Sun Valley was selling 30BH models to FEMA, and that those models were somehow different than those for sale to the general public. However, Mr. Romanetz testifies quite clearly that "these were the ones we were selling to the general public." (Exhibit "A", 155:14-15). Mr. Romanetz explains

that the 30 BH was Sun Valley's "price point trailer to the industry" and further explains that to keep the model as close to competitor's prices as possible, Sun Valley used obsolete fabrics in that model. (Exhibit "A", 153:14-154:14).

Finally, plaintiff asserts that Sun Valley outfitted those units with obsolete fabric materials, specifically for FEMA, because FEMA was less concerned with aesthetics than were typical customers. Yet, the actual testimony must be read in context, and with the knowledge that FEMA's attorney was doing the questioning:

> Q. The models that he was asking for in this e-mail, these five hundred units, he wasn't asking for FEMA-spec models, was he?
> A. No. Based on this, no, it was our standard production 30BH LTDs.
> Q. Okay. To the extent that you provided any units to your dealers which were subsequently sold to FEMA, would those units have been any way different from units that your dealers would have sold to the general public?
> A. As far as construction, windows, everything, no. The only thing that would have changed might have been drapery material and cushions material, colors.
> Q. How would that have changed?
> A. We would have just bought a different color. The 30BH model was, if you will, our price point trailer to the industry. And what we wanted to do was use fabrics, drapes that might have been obsolete from a motor home manufacturer, that was extra supplied to one of our current suppliers.
> Q. You used the phrase "price point model"?
> A. Yes.
> Q. What does "price point model" refer to?
> A. At that time, if I remember the figures correctly, our competition was offering a similar trailer, same style, for like 7,995. So we came 1 up with our version of it and tried to get as close to that price as we could.
> Q. You also used the term "obsolete materials."
> A. Correct.
> Q. Were these materials bad, were they --
> A. No.
> Q. What made them obsolete?
> A. A motor home manufacturer, another travel trailer manufacturer -- we change model years, like we discussed earlier, in June or July, and they have bought, the supplier has bought, that material. Well, they change models -- model year and they change the fabric. So this supplier gets stuck with this fabric.
> Q. When you're selling to the general public, the general public is much more concerned about the aesthetics of the unit they're buying, it must be more fashionable, so to speak.
> A. Correct.

> Q. When you're selling a unit that may be oriented more towards the government or FEMA, the aesthetics is not as big an issue.
> A. I would say you're probably right. Yes.
> Q. And so, in other words, if you were building a unit that might be used for disaster relief, that one of your retailers might use to sell to FEMA, if it has obsolete or the materials are not quite the current fashion, that's not as big an issue, that's not an issue of concern.
> A. If they were selling to FEMA? Probably not.
> Q. And the obsolete materials, by virtue of them being obsolete, would be less expensive.
> A. Correct.
> Q. And so that would help you meet that price point.
> A. Correct.
> Q. But the materials themselves, the quality of the materials was no different than the ones that you were selling to the general public.
> A. These were the ones we were selling to the general public.

(Exhibit "A", 152:15-155:15).

Plaintiff concludes that this testimony establishes that Sun Valley produced special trailers in anticipation of FEMA's purchase for the full-time residency of Katrina victims. It simply does not. Rather, plaintiff attempts to 'muddy the waters' through selective use, and plainly inaccurate paraphrasing, of testimony acquired by hypothetical questioning. Regardless, none of the evidence offered by plaintiff in his Opposition establishes that Sun Valley, at the time of manufacture of plaintiff's travel trailer, should have reasonably expected an ordinary customer to use a travel trailer as full-time, permanent housing, continuously and systematically, for a period of three years.

### III. CONCLUSION

For all of the reasons presented in its original memorandum in support of the instant Motion for Summary Judgment (Rec. Doc. 22235), and bolstered herein, Sun Valley asserts that plaintiff still has not established that his use of Sun Valley's travel trailer was a "reasonably anticipated use" as contemplated by the LPLA. Sun Valley, therefore, is entitled to summary judgment, and dismissal of all of plaintiff's claims against Sun Valley, with prejudice.

Respectfully submitted,

**ALLEN & GOOCH**

*/s/ Brent M. Maggio*
BRENT M. MAGGIO, T.A., # 19959
MARK W. VERRET, #23583
LORI D. BARKER, # 31687
SCOTT F. DAVIS, # 26013
JEFFREY E. MCDONALD, #33270
3900 N. Causeway Blvd, Suite 1450
Metairie, Louisiana 70002
Tel: 504.836.5260
Fax: 504.836.5265
***Attorneys for Sun Valley, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically filed on the 8th day of August, 2011, with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, and, it will be emailed to all Liaison Counsel, Government Counsel, and counsel for the above-captioned plaintiff.

*/s/ Brent M. Maggio*
BRENT M. MAGGIO