UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER           MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION  SECTION "N-5"

                              JUDGE ENGELHARDT
                              MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

# Special Master's Recommendations on Methodology as Required by Court's Order of April 5, 2011

## I.   The Special Master's investigation.

On March 11, 2011, the plaintiffs (represented by the PSC) and certain manufacturers and their insurers filed a Stipulation of Settlement into the record.[1] On April 5, 2011, the Court appointed the undersigned as Special Master and assigned him the task of developing and implementing a protocol for the disbursement of the proceeds of the settlement.[2] Since then, the Special Master has coordinated with the PSC, Postlethwaite & Netterville, and defense counsel to procure and evaluate information to aid of his investigation.

The Court's Preliminary Approval Order assigned several deadlines which have now passed. Putative Class Members were required to opt out by June 2, 2011.[3] The PSC was required to inform defendants of any such opt-outs by June 22, 2011. Counsel have informed the Special Master that

---

[1] Doc. 20481-1.

[2] Doc. 20669.

[3] *Id.*

they received no such opt-outs. Furthermore, anyone objecting to the settlement was required to file his or her objection by July 13, 2011. Any objectors were also required to send such objections to counsel for the PSC and defendants by the same date. Counsel have informed the Special Master that they received no objections.

## II.   The Special Master's conclusions.

The Special Master has conducted an extensive investigation to determine the most just allocation of the fund. The Special Master notes the following:

- On March 20, 2009, several defendants (the Manufactured Housing Defendants, listed in doc. 1192-2) filed a motion to dismiss based on federal preemption.[4] On May 29, 2009, the District Court granted the motion.[5] The District Court dismissed those claims "which advance a standard of care that is different from (i.e., not identical to) the formaldehyde regulations in the HUD Code and the formaldehyde warning standard specifically set forth in 24 C.F.R. § 3280.309(a) . . . ."

- The PSC has taken steps to appeal this ruling, but the Fifth Circuit has not yet acted on the appeal.

- The District Court's ruling significantly impairs the ability of all claimants to proceed with their claims against the Manufactured Housing Defendants. This impairment does not depend upon any other factors, such as duration of residency, medical bills, or physical or emotional injuries.

- When the parties settled these claims, they specifically noted that the preemption ruling "made the prosecution of Plaintiffs' claims against the Defendants significantly more challenging on the merits, and also exponentially increased the expense burden associated with the prosecution of both mass and individual claims."[6]

-

---

[4]Doc. 1192.

[5]Doc. 1629.

[6]Doc. 20481-1.

- The parties further noted: "As of this date, the parties to the MDL have conducted three bellwether jury trials to verdict, all of which have resulted in defense verdicts and have awarded no money or benefits to the bellwether plaintiffs."[7]  Again, this development decreases the settlement value of a potential claim regardless of other factors, such as duration of residency, medical bills, or physical or emotional injuries.

- The parties have settled the matter for a total of $2.675 million. On August 1, 2011, the PSC filed a motion requesting approval of a common benefit cost reimbursement of $953,644.28, together with a future class administrative cost reserve of $271,000. This would leave a balance of $1,450,355.72 to be distributed to the class.

- Based upon the submissions by the attorneys and the claim forms that the CADA has received, the Special Master estimates[8] that there will be more than 11,000 claimants against the settlement fund.

- Although the CADA has access to the claimed residency of many of the claimants, that data is not available for all claimants.

- Although the Special Master and the CADA could further investigate the claims to determine the length of residence, medical bills, claimed physical and emotional injuries, etc., the time and expense involved would increase the cost of administering the settlement fund and thus reduce the amount available to the claimants. The Special Master firmly believes that such an investigation would yield only a diminishing return, and would not be in the interest of the intended beneficiaries of the settlement.

- The Special Master's recommendation that all claimants be treated equally finds further support in the effect of the Court's preemption ruling, which impairs the claimants' ability to proceed across-the-board.

---

[7]*Id.*

[8]The CADA has not yet finally determined the number of claimants. The deadline for the submission of Claim Forms is August 26, 2011. See doc. 20699. Once this deadline passes, the CADA will evaluate the Claim Forms and eliminate duplicates. After the CADA completes this process, and after consultation with the appropriate attorneys, the Special Master will submit a motion to the Court to approve the preliminary allocation and establish relevant deadlines discussed in Section IV below.

### III. The Special Master's recommended methodology.

For the above-stated reasons, the Special Master recommends that the Court allocate the settlement fund equally (on a per capita basis) to each claimant who shows that he or she resided in a unit manufactured by a settling manufacturer.[9] If a claimant resided in more than one such unit, the Special Master recommends that he or she receive only one such award (not multiple awards). In the event of exceptional circumstances, the Special Master shall make supplemental recommendations on an individual basis. The Special Master (subject to the Court's review) shall have the discretion and the authority to determine what degree of proof is necessary for a claimant to participate in the settlement.

### IV. The Special Master's recommended deadlines and procedures.

- After the deadline to submit Claim Forms has expired, the Special Master shall cause the CADA to prepare a list of those claimants who qualify to participate in the settlement fund. The Special Master will submit the list (under seal) to the District Court for approval, together with a proposed order setting forth the following dates.

- **On a date to be assigned,** the Special Master will cause to be mailed preliminary allocation letters to the PSC (via U.S. Mail) and (to the extent the addresses are available on claim forms) to the claimants. If claimant addresses are not available, or if claimant addresses are incorrect, mailing to the PSC (via U.S. Mail) will be sufficient for notice purposes, with the exception that for all claimants who used a plaintiff's fact sheet as a claim form notice shall go to those claimants individual attorneys. These letters will advise the claimants of their preliminary allocations (or the fact that their claims have been denied) as well as the objection procedure described below.

---

[9] The Special Master anticipates that the interested governmental authorities will waive any liens that they may have in the settlement. If they do not, the Special Master will only allocate the settlement fund (on a per capita basis) to those claimants who provide proof that they are Entitled Class Members as that term is defined in the Stipulation of Settlement.

- **By a date to be assigned,** claimants who object to their allocations must file such objections in the record, and *additionally* mail (by U.S. Mail) or deliver such objection to the Special Master (Office of the Special Master/Formaldehyde-Manufactured Housing Defendants, P.O. Box 82180 Baton Rouge LA 70884-2180). All objections must be postmarked no later than 30 days from the signing of the Judge's Order referenced above (a date which will be reflected in the letters mailed to the claimants). The objections must state the claimants' reasons for objecting and must attach any supporting evidence. Failure to comply with this procedure will be deemed to be a waiver and/or withdrawal of any objection and/or appeal that the claimant might have. Objections not timely mailed will not be considered absent good cause shown.

- After receiving the objections, the Special Master will caused to be mailed to the objectors (or, where appropriate, their counsel) notice of a hearing at which the Special Master will consider their objection. The Special Master will thereafter conduct hearings on all objections and make rulings (giving notice to objectors in open court) that same day. Those wishing to object to the Special Master's decision will be informed in writing of the day, time and place. Objectors must appear in person and bring all competent evidence to support their claims. Failure to comply with this procedure will be deemed to be a waiver and/or withdrawal of any objection and/or appeal that the claimant might have.

- **Within 20 days of the Special Master's ruling in open court** – Claimants who object to the Special Master's rulings must file in the record an appeal to the District Court and simultaneously mail the appeal to the Special Master (Office of the Special Master/Formaldehyde-Manufactured Housing Defendants, P.O.Box 82180 Baton Rouge LA 70884-2180). All appeals shall utilize the above caption and shall be entitled "Appeal of Special Master Ruling on Objection." Failure to comply with this procedure will be deemed to be a waiver and/or withdrawal of any objection and/or appeal that the claimant might have. Appeals not timely filed will not be considered absent good cause shown.

- **On a date and time to be assigned** – The District Court will consider all appeals from the Special Master's rulings and recommendations. The Court may decide the appeals based upon the record developed by the Special Master and without additional hearings. If the Court chooses to hold hearings, those wishing to appeal will be informed in writing of the day, time, and place and must appear in person and bring all competent evidence to support their claims. The Court on appeal may award more or less than the Special Master's recommendations. A claimant's failure to comply with this procedure will be deemed to be a waiver and/or withdrawal of any objection and/or appeal that the claimant might have.

Once the objections are resolved, the Special Master will work with the Court, the CADA, the attorneys, and the claimants to disburse the funds as expeditiously as possible. The Special Master will also work with the attorneys and the claimants (to the extent called upon to do so) to

procure any release documents called for in the Settlement Agreement. In the event that money remains in the settlement fund after the money is disbursed to the claimants and all administrative fees and expenses are paid, the Court will have the power to issue a cy près award after consulting with the PSC and the Special Master.

Baton Rouge, Louisiana, this 17th day of August, 2011.

Daniel J. Balhoff
Daniel J. Balhoff (#18776)
Randi S. Ellis (#25251)
