UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
|     FORMALDEHYDE | * | |
|     PRODUCTS LIABILITY | * | SECTION: N (5) |
|     LITIGATION | * | |
| | * | JUDGE: ENGELHARDT |
| THIS DOCUMENT RELATES TO: | * | |
| | * | MAG. JUDGE: CHASEZ |
| *Irma Miller, et al. v. Sun Valley, Inc., et al* | * | |
| Docket No. 09-5658 (Charles Marshall) | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>SUN VALLEY'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO
DEMONSTRATE AN "UNREASONABLY DANGEROUS" PRODUCT UNDER THE
LPLA REGARDING CLAIMS OF CHARLES MARSHALL</u>

MAY IT PLEASE THE COURT:

Defendant, Sun Valley, Inc. d/b/a Sun Lite ("Sun Valley"), respectfully submits this Memorandum in Support of its Motion for Summary Judgment regarding the claims made against Sun Valley under the Louisiana Products Liability Act ("LPLA") by Plaintiff Charles Marshall. Sun Valley asserts that Plaintiff cannot carry his burden under any theory of recovery pursuant to the LPLA. Alternatively, Sun Valley requests that certain legal theories be dismissed.

## I.   FACTUAL SUMMARY

This Multi-District Litigation is the consolidation of several state and federal toxic tort suits in which an estimated thirty thousand named plaintiffs claimed to have inhabited emergency housing units ("EHUs") that were provided to them by the Federal Emergency Management Agency ("FEMA") as a result of the alleged un-inhabitability of their residences due to Hurricanes Katrina and Rita. (Doc. No. 109, at ¶ 96). During the course of this litigation,

the parties completed the class certification phase, conducted substantial discovery, and now have moved into the trial phase.

Charles Marshall commenced his cause of action in an unmatched lawsuit on June 15, 2009. (*Kenshawn King v. Alliance Homes, Inc et al.*, case #09-4074) (Rec. Doc. 1)  He then "matched" his claims against Sun Valley on August 14, 2009. (*Irma Miller, et al. v. Sun Valley, Inc., et al.*, case #09-cv-04074) (Rec. Doc. 1) Plaintiff subsequently filed a Second Amended Complaint for Damages. (Rec. Doc. 17717) On January 6, 2011, this Court issued Orders severing the claims of the Plaintiff, so that he could be tried separately. (Rec. Doc. 19333)

The causes of action against Defendant, Sun Valley, arise under the LPLA, and are embodied throughout paragraphs 97 through 102 of the Plaintiff's Second Amended Complaint for Damages. (Rec. Doc. 17717) The LPLA establishes the exclusive theories of liability for manufacturers for damage caused by their products, and Plaintiff may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in the provisions of the LPLA. LA. R.S. 9:2800.52.

In summary, Sun Valley herein asserts that Plaintiff, Charles Marshall, cannot carry his burden of establishing that Sun Valley's trailer was "unreasonably dangerous". Specifically, plaintiff lacks evidentiary support for claims that Sun Valley's trailer was defective in construction or composition, defective in design, failure to warn, or for breach of express warranty.

## II.    LAW & ARGUMENT

A.    **Summary Judgment Standard**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the nonmoving party, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must initially show "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party need only point out this absence; it "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir.1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075); *see also, S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996). If the nonmovant cannot meet this burden, then "the motion for summary judgment must be granted." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir.1996); *Little*, 37 F.3d at 1076.

B.   **Evidence—Or Lack Thereof— Supporting the Parties' Arguments**

As noted in Plaintiff's Expert Designation (Rec. Doc 2120), Plaintiff identified only three experts and produced their corresponding expert reports, namely Dr. Lawrence Miller, Patricia Williams, Ph.D., and Stephen Smulski, Ph.D. Dr. Miller is plaintiff's medical expert, Dr. Smulski is plaintiff's material selection expert, and Dr. Williams is plaintiff's general causation expert. (Expert reports of Stephen Smulski, Ph.D., Patricia Williams, Ph.D., and Lawrence Miller, M.D., are attached as Exhibits "E", "F", and "G", respectively). In fact, Dr. Williams' report was produced in the Alexander bellwether trial, and Dr. Smulski's report was produced in the class certification stage. Thus, two of the three experts upon whom plaintiff relies have never reviewed anything relevant to his case in reaching their conclusions. Both of plaintiff's general causation experts' reports were issued years before discovery began in this case, and so it follows that Drs. Williams and Smulski did not review the plaintiff's medical records, Sun Valley corporate depositions, materials regarding Sun Valley, depositions or any other documents related to his claim in order to prepare their reports and form their opinions. Simply put, the only general causation expert testimony offered by plaintiff in this case supports the claims of *other* plaintiffs regarding *other* manufacturers' trailers.

Therefore, not surprisingly, plaintiff's expert reports fail to reference, much less establish, several elements which are essential for plaintiff to carry his burden in surviving the instant summary judgment motion. These elements include: a discussion of Sun Valley manufacturing specifications and standards; the deviation of plaintiff's Sun Valley trailer from those standards and specifications; the existence of a feasible alternative design; evidence that plaintiff's alleged injuries would have been prevented or reduced due to that alternative design; typical formaldehyde levels within typical Sun Valley trailers as compared with actual

formaldehyde levels in plaintiff's trailer; and, frequency of prior formaldehyde-related injury. Plaintiff's medical expert report similarly fails to evidence formaldehyde-related complaints, or actual causation of plaintiff's alleged injuries, or any connection between plaintiff's trailer and its condition, and plaintiff's alleged injuries.

The only evidence which establishes Sun Valley's manufacturing standards and specifications, inspection process, and Sun Valley's compliance with industry standards is in the form of deposition testimony of Sun Valley's corporate representatives, Mark Romanetz and Daniel Morrison (attached hereto as Exhibits "A" and "C", respectively), and former Sun Valley employee and fact witness, Doreen Staines (attached hereto as Exhibit "B").[1] Sun Valley's expert, Coreen Robbins, Ph.D., points out that there were no samples of formaldehyde collected from plaintiff's trailer, and as such, there is no data from which it can be concluded that plaintiff's trailer contained atypical levels of formaldehyde, or that establishes a potentially damage-causing characteristic of that trailer. (Expert Report of Coreen Robbins, Ph.D., attached hereto as Exhibit "H").

In light of these facts, and supported by the arguments herein made, Sun Valley asserts that plaintiff cannot, without offering substantial further evidence to this Court, survive the instant summary judgment motion.

C. **Plaintiff Fails to Establish That His Sun Valley Trailer Was Unreasonably Dangerous in Construction or Composition**

Under the LPLA, "[a] product is unreasonably dangerous in construction or composition if, at the time the product left the manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from

---

[1] Tommy Sanford, another Sun Valley employee, has been deposed as a fact witness. His testimony was cited in Sun Valley's Motion for Summary Judgment for failure to establish "reasonably anticipated use" (Rec. Doc 22235), however, his testimony is not cited in the instant motion.

otherwise identical products manufactured by the same manufacturer." La. R.S. 9:2800.55. There is no presumption that a defect in composition or construction exists merely because an injury occurred. *Brown v. Stenograph Corp.*, 2001 WL 648966 at *3 (M.D. La. 2001); *Sittig v. Louisville Ladder Group LLC.*, 136 F.Supp.2d 610, 613 (W.D. La. 2001); *Pipitone v. Biomatrix, Inc.*, 2001 WL 568611 at *8 (E.D. La. 2001).

Sun Valley has testified that since 1984, the company has used the same manufacturing process and design—its "trailers were built the same way, just different shapes". (Exhibit "A", Deposition of Mark Romanetz, 17:20-24). The raw materials composing Sun Valley trailers never changed. (Exhibit "A", 18:1-5). Sun Valley also had an internal inspection system which ensured its trailers were in compliance with codes and within manufacturing and design specifications. (Exhibit "A", 18:14-21; *See also*, Exhibit "B", Deposition of Doreen Staines, 14:4-15:18). The Sun Valley manufacturing process never changed during the post-Katrina time period. (Exhibit "A", 50:20-23).

Moreover, Sun Valley trailers were manufactured according to industry standards and all applicable regulations and codes, as inspected by the Recreational Vehicle Industry Association. (Exhibit "A", 21:4-24:4; Exhibit "B", 14:13-17). The entire time Sun Valley built travel trailers, from 1984 through 2008, its trailers complied with all codes, regulations, and industry standards which applied to the design and manufacture of travel trailers. (Exhibit "A", 22:2-14; Exhibit "C", Deposition of Daniel Morrison, 52:18-20)). Finally, none of the regulations, codes, and industry standards limited the amount of formaldehyde content or emissions a Sun Valley product could have. (Exhibit "A", 23:11-24:3).

To survive summary judgment on their "defective construction and composition" claims, plaintiff has the burden of demonstrating that plaintiff's Sun Valley travel trailers deviated in a

material way from the manufacturing specifications or the product's intended composition. *Broussard v. Proctor & Gamble Co.*, 463 F.Supp.2d 596, 610 (W.D. La. 2006); *Stahl v Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Mere evidence that an ingredient (*i.e.*, a material used in composition of the whole) can be dangerous is not dispositive in a "construction or composition" claim under the LPLA. *Stahl*, 283 F.3d at 263.

Consequently, without evidence of Sun Valley's manufacturing specifications and performance standards, and that plaintiff's trailer deviated from those specifications and standards, Plaintiff cannot establish that the trailer is unreasonably dangerous in construction or composition. *Ashley v. General Motors Corp.*, 666 So. 2d 1320, 1322 (La.App 2 Cir. 1/24/96) (reversing the trial court's finding that plaintiffs met the necessary burden of proof for recovery under the LPLA); *See also, Welch v. Technotrim, Inc.*, 778 So. 2d 728, 733-34 (La.App. 2 Cir. 1/24/01) (a claimant must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it "unreasonably dangerous" . . . it is apparent that Technotrim succeeded in pointing out an absence of factual support for one or more elements essential to Welch's claim . . . Welch has produced no factual support sufficient to establish that he will be able to meet the burden at trial of proving a material deviation from the specifications, performance standards, or other seat covers manufactured by Technotrim) (citations omitted).

Plaintiff alleges that "the use of plywood, press board, other composite wood products and other products that contain formaldehyde constitutes a defect in composition or manufacture that posed an unreasonable risk of harm". (Rec. Doc. 17177, paragraph 100). In support of his claims, plaintiff offers the expert reports of Stephen Smulski, Ph.D., Patricia Williams, Ph.D., and Lawrence Miller, M.D. (attached as Exhibits "E", "F", and "G", respectively). Plaintiff's

evidence and expert testimony does not address Sun Valley's manufacturing specifications, nor does it demonstrate that plaintiff's travel trailer deviated from those standards. Conversely, the undisputed evidence indicates that Sun Valley performed quality control tests ensuring that its products met design and manufacturing specifications, invariably utilized the same raw materials in its products, and maintained a consistent manufacturing process during its entire corporate existence. Sun Valley's expert, Coreen Robbins, Ph.D., also points out that there were no samples of formaldehyde collected from plaintiff's trailer, and as such, there is no data from which it can be concluded that plaintiff's trailer contained atypical levels of formaldehyde. (Exhibit "H", page 2, 10).

Where there is no testimony as to precisely how plaintiff's trailer deviated from Sun Valley's specifications and standards, a defect in composition or construction cannot be established. *Morris v. United Services Auto Ass'n*, 756 So. 2d 549, La.App. 2 Cir. 2/18/00); *Hinson v. Mentor Corp, Inc.*, 207 F.Supp.2d 531, 536 (M.D. La. 2002); *See also, supra, Ashley*, 666 So. 2d at 1322; *Welch*, 778 So. 2d at 733. Plaintiff has failed to meet his burden, and summary judgment as to these "construction and composition" claims is, therefore, appropriate.

**D.     Plaintiff Cannot Prevail on His Defective Design Claims**

In order to show that a product is unreasonably dangerous in design, the plaintiff must show that: (1) there existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. *Broussard*, 463 F.Supp.2d at 610-11 (citing La.Rev.Stat. 9:2800.56; *Morgan v. Gaylord Container Corp.*, 30 F.3d 586 (5th Cir.1994)).

### 1) Plaintiff Fails to Demonstrate an Alternative Design

An unreasonably dangerous design will not be presumed simply because injury occurred; rather, the plaintiff must come forward with scientifically viable evidence to show that the alternative design would have prevented her injuries. *Id.* at 611 (citing *Miles v. Olin Corp.*, 922 F.2d 1221, 1226 (5th Cir. 1991); *McCarthy v. Danek Medical, Inc.*, 65 F.Supp.2d 410 (E.D. La. 1999); *Tucker v. Dick Flick, Inc.* 1996 WL 125933, *3 (E.D. La. 1996)). The crux of plaintiff's defective design argument is that Sun Valley's travel trailers were defectively designed simply because they contain plywood, press board and/or other composite wood products which contain and emit formaldehyde. (Rec. Doc. 17717, paragraph 99, 102). However, the logic of this argument leads to absurdity: should every product containing formaldehyde-emitting plywood, pressboard, or other composite wood be deemed defective? Surely every manufacturer of any product containing such materials should not now be exposed to liability for defectively designing their product. (*See* Exhibits "E", "F", and "H" for lengthy discussion of the prevalence of formaldehyde-emitting wood products and their utility).

Even the argument that plaintiff's injuries could have been prevented had Sun Valley utilized "low formaldehyde emitting" composite wood must fail. The instant litigation is replete with examples of alleged injuries, similar to those alleged by this plaintiff, resulting from products containing "low formaldehyde emitting" wood, and products specifically inspected and regulated for formaldehyde emissions. Thus, plaintiff offers no evidence, and Sun Valley would submit that there is none, which would demonstrate that any change in design would have prevented, or even significantly reduced, plaintiff's injuries.

Nonetheless, plaintiff offers no proof of an alternative design, in existence at the time the Sun Valley trailers at issue were manufactured, which remedies this alleged defect. Plaintiff's

expert testimony is similarly deficient in this regard. (*See* Exhibits "E", "F", and "G"). Conversely, Sun Valley contends that its designs resulted in a product just like the products of all the other manufacturers in the industry. (Exhibit "C", 49:10-15). Where there is no evidence that a safer alternative design existed at the time the trailer left Sun Valley's control, summary judgment as to defective design claims is appropriate. *Thompson v. Nissan North America, Inc.*, 429 F.Supp.2d 759, 767 (E.D. La. 2006); *Campbell v. Mitsubishi Motors, Inc.*, 344 F.Supp.2d 962, 964 (W.D. La. 2004) (citing *Broussard v. Pennsylvania Millers Mutual Insurance Co.*, 406 So.2d 574, 576 (La. 1981); *Traut v. Uniroyal*, 555 So.2d 655, 656 (La.App. 4 Cir. 1989)).

### 2) Plaintiff Makes No Showing That the Risk-Utility Element Weighs in His Favor

Even if plaintiff presents sufficient evidence to survive summary judgment on the "in existence" requirement of a defective design claim, he must still satisfy the "risk-utility" element. *Thompson*, 429 F.Supp.2d at 777. That is, plaintiff must prove that the likelihood that the product as designed would cause the claimant's damage, and the gravity of that damage, outweighed the burden on the manufacturer of adopting the alternative design, and the adverse effect on the product's utility. *Id.* Plaintiff's expert testimony fails to address the likelihood, if any, that Sun Valley's trailers, as designed, would cause the plaintiff's damages. The same expert testimony is silent as to the gravity of plaintiff's damages, and not even determinative as to the actual causation of plaintiff's alleged injuries. (See Exhibits "E" and "F"; Exhibit "G", pages 42, 62-86, and 106-107).

Plaintiff has provided no showing of prior incidents or analysis of any possible mitigation of the hazard by alternative design. *See Id.* (citing, *contra*, *Garcia v. Brown*, 889 So.2d 359, 362 (La.App. 2 Cir. 2004) (plaintiff introduced evidence concerning the extent of the risk that the alternative design would have avoided, the frequency of accidents like his own, and the

economic costs entailed by those accidents)); *See also, Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000) (In applying the risk-utility analysis, we have said that <u>a plaintiff must show evidence "concerning the frequency of accidents like his own, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of his proposed alternative design"</u>) (citations omitted) (emphasis added).

Likewise, plaintiff has offered no evidence concerning the burden of switching to an alternative design. *Id.* (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 183 (5th Cir. 1990)). Determining whether Sun Valley's trailer was defectively designed also requires an understanding of the purpose or goal of the trailer. *See Thomas v. Sport City, Inc.*, 738 So.2d 1153, 1155 (La.App. 2 Cir. 6/16/99). There is no showing by the plaintiff, that the goal and purpose of providing a "price point" travel trailer, for camping, travel, and recreation, could even be accomplished utilizing an alternative design.

Thus, even if this Court finds that plaintiff has met the initial burden in proving a defective design claim - that a safer design was in existence at the time of manufacture - summary judgment should nonetheless be granted as to such claims.

### 3) Subsequent Alteration and Modification Absolves Defendant of Liability

Plaintiff alleges that his injuries are, at least in part, a result of certain contractors "blocking" the trailers, or raising them several feet in the air, and off of their wheel base, setting the trailers on concrete blocks. (Rec. Doc. 17717, paragraph 41). Plaintiff alleges that his trailer was not designed to be lifted in this manner, and that subsequent stress and flexing of the trailers increased moisture intrusion and formaldehyde exposures. (Rec. Doc. 17717, paragraphs 42, 43). Plaintiff's material selection expert also asserts that "the process of jacking these units up

off of their wheels . . . can allow formaldehyde gas inside the walls, ceilings and floor to more easily enter into the living space and increase the concentration of formaldehyde inside the unit." (Exhibit "E", paragraph 12).

Sun Valley never saw FEMA's requirements for trailer installation, thus was unaware that its travel trailers were being set up on blocks. (Exhibit "A", 79:12-80:8). No one from Sun Valley discussed installation and blocking procedures with FEMA or its contractors. (Exhibit "A", 85:9-22). The Sun Valley Owner's Manual provides no instructions on lifting the trailer to a height which brings the wheels off of the ground. (Exhibit "A", 86:18-22).

Accordingly, Sun Valley asserts that, to any extent the plaintiff's injuries were caused or exacerbated by conduct of FEMA contractors' "installation" and "blocking" of Sun Valley trailers, such constitutes a material alteration of the trailers which was not reasonably anticipated. *See Hoyt v. Wood Chuck Chipper Corp.*, 651 So. 2d 1344 (La.App. 1 Cir. 1/6/95); *Zeller v. Olympic Marine Co.*, 692 So. 2d 1172 (La.App. 5 Cir. 3/12/97). A manufacturer is not liable for damages brought about by a later intervention of a separate, independent, superseding cause. *Masters v. Courtesy Ford Co., Inc.*, 758 So. 2d 171, 192 (La.App. 2 Cir. 10/29/99). Moreover, La-R.S. 9:2800.54(C) requires that the characteristic of the product which makes it unreasonably dangerous in design must exist at the time the product leaves the control of its manufacturer or result from a reasonably anticipated modification or alteration. Thus, if this Court should find that plaintiff's defective design claims survive to necessitate this analysis, full or partial summary judgment as to damages caused by FEMA contractors would be required.

It is Sun Valley's position that this claim regarding "installation" and "blocking" is now moot as plaintiff voluntarily dismissed that contractor, CH2M Hill, with prejudice from this lawsuit. (Rec. doc. 22107)

E.   **Plaintiff's Inadequate Warning/Failure to Warn Claims Are Without Merit**

   1) **Plaintiff Demonstrates No Evidence of Severity of Risk Nor Frequency of Injury**

Formaldehyde was never an issue with Sun Valley travel trailers. (Exhibit "A", 29:24-30:4). Sun Valley never received complaints from anyone, whether it was customers, distributors, or employees, about formaldehyde in travel trailers (Exhibit "A", 45:18-22; Exhibit "B", 16:25-17:3); Likewise, there were no incidents of formaldehyde-related odor or injury during the production of Sun Valley trailers. (Exhibit "B", 17:4-20).

Sun Valley produced over seven thousand travel trailers during its corporate existence, and received no formaldehyde-related complaints in the entire history of the company. (Exhibit "A", 187:15-25). Sun Valley was not required to display any type of health notice regarding formaldehyde in its trailers. (Exhibit "A" 52:11-20); *See also, In re FEMA Trailer Formaldehyde Products Liability Litigation*, 620 F.Supp.2d 755 (E.D. La. 2009). The Recreational Vehicle Industry Association, which conducted inspections of Sun Valley products and notified them of industry safety concerns, never notified Sun Valley that formaldehyde levels might be dangerous. (Exhibit "A", 53:9-20; 56:14-21) Sun Valley's expert testimony confirms that no formaldehyde samples were taken from plaintiff's trailer, and thus, there is no evidentiary connection between a potentially damage-causing characteristic of that trailer and Sun Valley's failure to warn of it. (Exhibit "H", page 2, 10)

To successfully maintain a failure-to-warn claim under the LPLA, a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic. *Stahl*, 382 F.3d at 264. Without evidence showing the severity of the risk created,

or the frequency of injury, Sun Valley cannot be held liable for failure to warn. *See Krummel*, 206 F.3d at 552 ("Even if Bombardier kept poor accident records, Krummel must provide evidence regarding the frequency of the accidents. Without evidence showing the severity of the risk created . . . or the frequency of [injury], it cannot be shown Bombardier failed to use reasonable care").

Plaintiff in the instant matter has not made this evidentiary showing, and the testimony from Sun Valley establishes an absence of such evidence.

### 2) There is No Connection Between Alleged Failure to Warn and Plaintiff's Injury

Another essential element of a plaintiff's cause of action for failure to warn of a product's danger is that there is some reasonable connection between the omission of the manufacturer and the damage which the plaintiff has suffered. *Bloxom v. Bloxom*, 512 So.2d 839 (La. 1987); *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110 (La. 1986). Accordingly, if a plaintiff proves that the lack of an adequate warning or instruction rendered the product unreasonably dangerous, his cause-in-fact burden is assisted by a presumption that the user would have read and heeded such admonitions. *Bloxom*, 512 So. 2d at 850 (citing *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1281-82 (5th Cir.1974); *Jackson v. Johns-Mansville Sales Corp.*, 727 F.2d 506, 523 (5th Cir.1984)).

This presumption, however, may be rebutted if the manufacturer produces contrary evidence which demonstrates that an adequate warning would have been futile under the circumstances. *Id.* (citing, Cf., *Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832 (Tex.1986); See Note, Products Liability, 50 Tex.L.Rev. 577 (1972); McCormick on Evidence, 3d ed. § 343 (1984). Failure to read the Owner's Manual is evidence of the futility of an adequate warning.

*Id.* at 851; *See also, Matthews v. Remington Arms Co., Inc.*, 2009 WL 1220541 (W.D. La. 2009) at *3. Consequently, where a plaintiff does not read the Owner's Manual, the only way a plaintiff can show that Sun Valley breached its duty to warn is to show that an additional warning was needed (on the product) because of the likelihood that a user would not consult or be in possession of the owner manual. *Matthews*, 2009 WL 1220541 at *3 (citing *Delery v. Prudential Ins. Co. of Am.*, 643 So.2d 807, 814 (La.App. 4 Cir. 9/29/94) (holding that the manufacturer breached its duty to warn based on evidence that the warning on the bottom of the chair was not likely to be seen by a user of the chair and that the warning in the sales brochure was not forwarded to the user of the chair)).

In the instant case, plaintiff has not testified to having read the Sun Valley Owner's Manual. In fact, plaintiff does not recall an Owner's Manual being in the trailer. (Exhibit "D" Deposition of Charles Marshall, 178:24-179:4). Plaintiff never saw a Sun Valley Owner's Manual, and similarly, plaintiff never requested an Owner's Manual. (Exhibit "D", 179:8-14). Plaintiff did, however, have firsthand knowledge of the noxious odor, and otherwise had notice of the formaldehyde problem, yet continued to utilize his trailer for full-time residential purposes, for a period of years. Plaintiff, Charles Marshall, knew by late 2006 or early 2007 (Exhibit "D", 178:2-19), yet he was still "insistent on staying in the trailer" in 2008 (Exhibit "D", 141:14-15).

In sum, Plaintiff offers no evidence which demonstrates that he would have seen a warning had it been in the Owner's Manual, nor that he would not have lived in the trailers had there been a warning, or even that he ceased living in the trailers upon learning of the potential risks. In fact, his testimony demonstrates that the opposite is true. Plaintiff also fails to show that a warning on the product was necessary due to a likelihood that a user would not consult or

be in possession of the owner manual. Therefore, even if plaintiff established that Sun Valley's trailer was unreasonably dangerous due to inadequate warning, plaintiff still fails in his burden of showing a reasonable connection between the omission of the manufacturer and the damage which the plaintiff has allegedly suffered. Consequently, this Court should grant summary judgment in favor of Sun Valley, as to the "inadequate warning" claims of plaintiff, as he cannot establish the requisite cause-in-fact.

### 3) Subsequent Alteration and Modification Absolve Defendant of Liability

For the same reasons outlines, *supra*, in Section II(D)(3), Sun Valley cannot be liable for subsequent modification and alteration. To any extent the plaintiff's injuries were caused or exacerbated by conduct of FEMA contractors' "installation" and "blocking" of Sun Valley trailers, such constitutes a material alteration of the trailers which was not reasonably anticipated. *See Hoyt v. Wood Chuck Chipper Corp.*, 651 So. 2d 1344 (La.App. 1 Cir. 1/6/95); *Zeller v. Olympic Marine Co.*, 692 So. 2d 1172 (La.App. 5 Cir. 3/12/97). A manufacturer is not liable for damages brought about by a later intervention of a separate, independent, superseding cause. *Masters v. Courtesy Ford Co., Inc.*, 758 So. 2d 171, 192 (La.App. 2 Cir. 10/29/99). Sun Valley never saw FEMA's requirements for trailer installation, thus was unaware that its travel trailers were being set up on cinder blocks. (Exhibit "A", 79:12-80:8). Accordingly, if this Court should find that plaintiff's defective "failure to warn" claims survive to necessitate this analysis, full or partial summary judgment as to damages caused by FEMA contractors would be required.

### 4) Any Duty to Warn is Vitiated by FEMA's Status as a Sophisticated User

Under Louisiana law, a manufacturer's duty to warn is precluded in situations when the purchaser has particular knowledge of or experience with the inherent dangers in the use of a

product, i.e., a sophisticated user. *Mozeke v. International Paper Co.*, 933 F.2d 1293, 1297 (5th Cir. 1991) (citing *Byrd v. Hunt Tool Shipyards, Inc.*, 650 F.2d 44, 47 n. 1 (5th Cir.1981)). Similarly, a manufacturer has no duty to warn a sophisticated purchaser. *Davis v. Avondale Industries, Inc.*, 975 F.2d 169, 172 (5th Cir. 1992) ("... Louisiana does not hold a manufacturer is compelled to warn sophisticated purchasers of dangers of which the buyer either knows or should be aware") (citations omitted)). The "sophisticated purchaser" is one who "already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic...." La-R.S. 9:2800.57(B)(2).

**FEMA is a sophisticated purchaser/user:**

The standard for a sophisticated user is constructive knowledge. *Mallery v. International Harvester Co.*, 690 So. 2d 765, 768 (La.App. 3 Cir. 1996). FEMA is charged with knowledge of HUD regulations regarding formaldehyde. *See* 24 C.F.R. § 3280, et. seq.; *U.S. ex rel. Finney v. Nextwave Telecom, Inc.*, 337 B.R. 479, 487 (S.D N.Y. 2006). It has been previously stipulated in this litigation, that FEMA has provided thousands of travel trailers to displaced residents following natural disasters in the United States since 1992. (Rec. Doc. 13112) (citing trial testimony, p. 1889-91, *Lyndon T. Wright v. Forest River, Inc., et al.*, Docket No. 09-2977); (Exhibit "I", Deposition of David Garratt, 203:19-22). Further, there is testimony regarding the systemic formaldehyde issue that had been well known in the manufacturing industry for 30 years. (Exhibit "I", 237:12-239:15). At very least, FEMA had constructive knowledge of potential and actual formaldehyde issues in trailers.

There is no duty to warn a sophisticated user of dangers of which he may be presumed to know through his familiarity with the product. *Duncan v. Louisiana Power & Light Co.*, 532

So.2d 968, 972 (La.App., 5th Cir. 1988); *See also*, *Mozeke,* 933 F.2d at 1299. However, in the instant matter, FEMA was the purchaser of the Sun Valley trailer, and plaintiff was the end user. Accordingly, Sun Valley's liability to plaintiff necessarily depends upon whether Sun Valley owed any duty to provide an adequate warning to FEMA. *See Morgan v. Gaylord Container Corp.*, 1993 WL 205052 (E.D. La. 1993) at *3; *Jones v. Flowserve FCD Corp.*, 73 Fed.Appx. 706, 711-12 (5th Cir. 2003).

Sun Valley had no control over who FEMA would provide trailers to, or whether its Owner's Manuals would be provided to end users, therefore, Sun Valley should be entitled to rely on the sophisticated purchaser, FEMA, to provide any necessary warning. *See*, *e.g.*, *Davis*, 975 F.2d at 173 ("We recognize, however, that certain courts have indicated that whether the seller has a duty to warn third parties may depend on whether the seller has reason to assume that the purchaser will do so. It is usually held that the seller may so assume where the purchaser is a sophisticated user and the third parties are employees of the purchaser whom it has a duty to warn or protect").

**F.    Plaintiff Has Not Stated a Valid Claim With Regard to Express Warranty Made By Sun Valley**

To survive summary judgment on an express warranty claim under Louisiana Products Liability Act (LPLA), plaintiff is required to demonstrate or provide evidence to create a genuine issue of material fact regarding whether (1) manufacturer made an express warranty regarding the product, (2) plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) plaintiff's damages were proximately caused because the express warranty was untrue. *Broussard*, 463 F.Supp.2d at 611.

A plaintiff cannot prevail on an express warranty claim under Louisiana law, where there is no evidence that he or she had read or was aware of the express warranty and was induced to use the product because of it. *Evans v. Ford Motor Co.*, 484 F.3d 329, 336 (5th Cir. 2007) (citing *Brown v. Hudson,* 700 So.2d 932, 940 (La.App. 1997) (rejecting an express warranty claim because there was "no evidence that Mrs. Brown read the owner's manual or, more importantly, that provisions in question induced her to use the restraint system"); *Clay v. Int'l Harvester Co.,* 674 So.2d 398, 412 (La.App. 1996) ("No testimony or proof was adduced concerning whether Clay, his employer, or any co-employees had ever been made aware of any express warranty prior to using the tractor. For this reason, we find that Clay failed to prove that the model 3294 tractor was unreasonably dangerous for noncompliance with an express warranty")).

Plaintiff has not testified to having read the Sun Valley Owner's Manual. In fact, plaintiff does not recall an Owner's Manual being in the trailer. (Exhibit "D", 178:24-179:4). Plaintiff never saw a Sun Valley Owner's Manual, and similarly, plaintiff never requested an Owner's Manual. (Exhibit "D", 179:8-14). There is similarly no evidence to establish that plaintiff was aware of any express warranty made by Sun Valley, or, more importantly, that such a warranty induced plaintiff to purchase the product (which he, nevertheless, absolutely did not do). Therefore, plaintiff has not demonstrated the requisite evidence to prevail on an express warranty claim, and Sun Valley is entitled to summary judgment as to these claims.

### III.  CONCLUSION

For all of the reasons cited herein above, Sun Valley asserts that plaintiff, Charles Marshall, has not presented sufficient evidence to prevail under any theory of recovery afforded him under the LPLA. Therefore, Defendant, Sun Valley, respectfully requests, and this Court

should, grant summary judgment in favor of Sun Valley, dismissing the claims of Plaintiff, Charles Marshall, with prejudice, as he has failed to establish that Sun Valley's product was unreasonably dangerous. In the alternative, Sun Valley requests that the Court dismiss those legal theories asserted under the LPLA for which the plaintiff has failed to satisfy his burden of proof.

        Respectfully submitted,
        **ALLEN & GOOCH**

        */s/ Brent M. Maggio*
        BRENT M. MAGGIO, T.A., # 19959
        MARK W. VERRET, #23583
        LORI D. BARKER, # 31687
        SCOTT F. DAVIS, # 26013
        JEFFREY E. MCDONALD, #33270
        3900 N. Causeway Blvd, Suite 1450
        Metairie, Louisiana 70002
        Tel: 504.836.5260
        Fax: 504.836.5265
        *Attorneys for Sun Valley, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically filed on the 18TH day of August, 2011, with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, and, it will be emailed to all Liaison Counsel, Government Counsel, and counsel for the above-captioned plaintiff.

        */s/ Brent M. Maggio*
        BRENT M. MAGGIO