

REDMOND, WA • PORTLAND, OR • HILTON HEAD, SC • CAPE ELIZABETH, ME

Our reference:  20614A

July 8, 2011

Allen & Gooch, A Law Corporation
One Lakeway
3900 N. Causeway Blvd, Suite 1450
Metairie, LA 70002

Re:     Charles Marshall v. Sun Valley, Inc., et al.

The following report sets forth my opinions and conclusions regarding the industrial hygiene
and environmental inspection materials related to the Sun Valley trailer provided to Mr.
Marshall by the Federal Emergency Management Agency (FEMA) after hurricane Katrina.

## I.        Qualifications

I am an Industrial Hygienist at Veritox, Inc. in Redmond, Washington.  I have over twenty
years of experience in industrial hygiene and I have served as a consultant in numerous
industrial hygiene matters throughout the United States.  I hold a master's degree in
Occupational Safety and Health and a Ph.D. in Environmental Science.  I am also a Certified
Industrial Hygienist (CIH).  I am a full member of the American Academy of Industrial
Hygiene and the American Industrial Hygiene Association (AIHA).  I am a full member of the
Society of Toxicology (SOT) and an affiliate member of the American Conference of
Governmental Industrial Hygienists (ACGIH). My current CV is attached to this report.

As part of my industrial hygiene-related activities, I have been frequently asked to address the
issue of exposure to chemicals such as formaldehyde and other agents in indoor environments.
In this matter, I have been asked to address general industrial hygiene issues related to
formaldehyde and indoor air quality, and environmental inspections and testing related to the
Sun Valley trailer provided by FEMA to Mr. Marshall.

## II.       Summary of Opinions

A summary of opinions is provided below. Detailed discussion and supporting information is
provided for each opinion subsequently.  Full-page versions of all the graphs are included in
Appendices.

Robbi- CM00816





Charles Marshall v. Sun Valley, Inc. et al.                                                    Page 2

**A. OPINIONS REGARDING FORMALDEHYDE EXPOSURE FOR MR. MARSHALL IN HIS TEMPORARY HOUSING UNIT (THU)**

1. There are no data from which it is possible to conclude that Mr. Marshall was exposed to formaldehyde concentrations above those levels typically found in other non-complaint FEMA housing units, other emergency housing or conventional homes in Louisiana.

   a. There were no samples of formaldehyde collected in Mr. Marshall's THU; therefore, there are no data to indicate concentrations of formaldehyde specifically in his THU.

   b. Since it is ubiquitous in indoor environments, formaldehyde was present in all other housing available to hurricane victims; however, there are no contemporaneous data collected in other housing to indicate whether levels in other housing were higher or lower compared to levels measured in the THUs, including Mr. Marshall's.

2. It is unlikely that Mr. Marshall was exposed to formaldehyde in his THU in excess of concentrations typically found in conventional homes or other emergency housing in Louisiana.

   a. Formaldehyde levels in THUs reported by the CDC (Centers for Disease Control 2008) which Plaintiff's experts rely upon are not significantly different when compared to levels reported for conventional homes in Louisiana and other southern states.

   b. Mr. Marshall and Ms. Blazio describe airing out Mr. Marshall's THU by opening windows and doors and he used the unit's air conditioning system during warm weather; this would have significantly reduced the concentration of any formaldehyde in the unit.

   c. The results of the cited CDC study (Centers for Disease Control 2008) cannot be used to estimate formaldehyde levels specifically for Sun Valley trailers including Mr. Marshall's since there are no data reported in this study for Sun Valley trailers.

**B. OPINIONS REGARDING OTHER SOURCES OF FORMALDEHYDE EXPOSURE AND EXPOSURE TO OTHER MATERIALS THAT CAN RESULT IN HEALTH SYMPTOMS REPORTED BY MR. CHARLES MARSHALL**

1. Mr. Marshall participated in clean-up and tear-out activities at his Katrina-damaged home during the time he lived in the THU; these activities would have resulted in substantial exposures to airborne dust,



      mold, bacteria, and other bioaerosols which exposures are known to result in many of the health complaints reported by Mr. Marshall.

2.      Mr. Marshall has been and continues to be exposed to environmental tobacco smoke (ETS) in casinos; exposure to ETS is known to result in increased symptom complaints in asthmatics.

3.      Mr. Marshall is likely to have been and still is exposed to increased concentrations of formaldehyde indoors due to his exposure to ETS.

4.      Mr. Marshall's use of marijuana presents the potential for exposure to formaldehyde via direct inhalation since it is sometimes added to illegal marijuana.

5.      Mr. Marshall has a history of exposure to marijuana and cocaine use; this exposure and use is associated with some of the health complaints that are claimed by Mr. Marshall to be due to living in his THU.

## C. OPINIONS REGARDING REPORTS OF DR. WILLIAMS AND DR. MILLER

1.      Neither Dr. Williams nor Dr. Miller appropriately consider: 1) exposures to other agents (ETS, inhaled particles during demolition and renovation work) that could be responsible for Mr. Marshall's complaints; and, 2) other sources of exposure to formaldehyde (ETS and smoking marijuana) for Mr. Marshall outside of his FEMA trailer.

2.      Dr. Williams's report contains no information specific to Mr. Marshall; however, it does contain references to other plaintiffs (A. Alexander and C. Cooper).

3.      Dr. Williams's report contains extensive discussions of mold exposure, particulate exposure, and adverse health effects of these substances; however, she does not consider or discuss the issue of exposure to airborne mold or other particles for Mr. Marshall during the renovation and repair of his water-damaged house.

4.      Dr. Williams's report does not elucidate whether Mr. Marshall's exposure to formaldehyde in his trailer was higher than other available housing or whether this exposure was sufficient to result in his health complaints.

5.      Dr. Williams's general causation opinions are irrelevant with respect to Mr. Marshall because they are not qualified in terms of the exposure levels and/or duration required to produce the adverse health effects she cites; this disregards the fundamental principal of toxicology, that of dose-response.

Robbi- CM00818



Case 2:07-md-01873-KDE-MBN   Document 22460-11   Filed 08/18/11   Page 4 of 64

Charles Marshall v. Sun Valley, Inc. et al.                                    Page 4

6. Dr. Williams notes the ATSDR MRL and implies that levels of formaldehyde in homes are expected to be below these levels, and that adverse health effects will occur at levels above this, despite data showing that formaldehyde concentrations in non-complaint homes are consistently reported at levels above the chronic MRL of 0.008 ppm.

   a. Other published studies describing formaldehyde concentration indoors and outdoors and in non-complaint mobile and conventional homes show that concentrations above the MRL are common and expected.

   b. Exposure to formaldehyde above the MRL does not mean that adverse health effects will occur; MRLs are set well below levels that, based on current information, might cause adverse health effects.

7. Dr. Miller relies on the temporal relationship of Mr. Marshall's asthma symptoms to living in the THU in concluding that his asthma is related to formaldehyde exposure in the THU; he does not consider and has not ruled out the significant exposure to mold and other dusts likely experienced by Mr. Marshall due to repairing his flood-damaged house that occurred at the same time that he lived in the THU, nor does he consider Mr. Marshall's ongoing exposure to ETS which is known to exacerbate asthma symptoms.

8. Dr. Miller has not noted that the medical records of Mr. Marshall indicating that he has a history of asthma, he uses an inhaler, and that his asthma re-emerged in 9/05 prior to his occupancy in the THU in 1/06.

D. OPINIONS REGARDING REPORTS OF MR. SMULSKI

1. Mr. Smulski relies on concentrations of formaldehyde reported in the CDC study (Centers for Disease Control 2008) to conclude that the THUs supplied by FEMA to victims of the hurricane were not suitable for use and their use may result in adverse health effects; however, as described previously, formaldehyde levels in THUs reported by the CDC are not significantly different compared to levels in conventional homes in Louisiana and other southern states.

2. Mr. Smulski lacks training and credentials that would allow him to opine about exposure to formaldehyde in THUs and what levels are normal or typical in indoor environments and what levels may result in adverse health effects.

III. Basis of Opinions

The basis for my opinions includes my education, training in basic science and industrial hygiene; experience in exposure assessment generally and specifically related to

Robbi- CM00819



formaldehyde and indoor air quality. In addition, I have reviewed and analyzed published literature concerning exposure assessment and potential health effects of formaldehyde. This training, experience, and study of the published literature include an in-depth knowledge of exposure assessment and potential health effects of formaldehyde. My opinions are also based on materials reviewed specific to this matter (Appendix A).

## IV.    Background Information

### A. Formaldehyde

Formaldehyde is ubiquitous in both indoor and outdoor environments (Agency for Toxic Substances and Disease Registry 1999). It is a colorless gas with a pungent odor. The majority of formaldehyde in the ambient environment is a result of combustion processes from sources such as power plants, refineries, and vehicle exhaust. Formaldehyde is also produced indirectly via photochemical oxidation of air pollution and as a result of forest fires. Other anthropogenic sources of formaldehyde include fumigants and fireplaces. Activities and processes well known to increase formaldehyde concentrations indoors include the use of combustion appliances such as gas stoves, smoking, and cooking. Sources of formaldehyde indoors also include household products such as pesticides, cosmetics, dish-washing liquids, fabric softeners, carpet cleaners, other household cleaning products, and new furnishings and clothing. Formaldehyde is used in the manufacturing of pressed wood construction products, including particle board, fiber board, and in glues, adhesives, paper and plastic products. As a result of its many sources indoors through common processes and its frequent use in consumer products, building components and products, formaldehyde is commonly detected indoors often at concentrations above that present outdoors. Formaldehyde is also naturally present in human bodies as a result of the process of normal metabolism.

In addition to variable sources of formaldehyde indoors, formaldehyde levels indoors are also influenced by ventilation rate, indoor temperature and relative humidity, and season of year (Clarisse et al. 2003; Gilbert et al. 2005; Hawthorne et al. 1986; Lindstrom et al. 1995; Stock and Mendez 1985). Higher indoor concentrations of formaldehyde have been identified in heavily populated or industrial areas compared to rural locations (Lemus et al. 1998). Ventilation will be affected by occupancy since occupied homes will have doors and windows opened or closed as occupants perform daily activities, and ventilation systems and air conditioning (AC) may be used. Ventilation results in bulk airflow and consequent dilution of indoor formaldehyde concentration as outdoor air mixes with and/or replaces indoor air. The amount of ventilation will influence formaldehyde levels indoors; and ventilation is a significant factor in the increase or reduction of formaldehyde levels due to emissions from indoor sources. Therefore, levels of formaldehyde in unoccupied buildings that are closed or sealed do not reflect levels associated with conditions of normal occupancy and use.

### 1.  Formaldehyde Regulatory Limits and Guidance Levels

Regulatory limits and guidance levels pertaining to formaldehyde provided by several entities are listed below. There is a very wide variance among these different levels. In addition, these levels are used and applied in different settings. There is currently no consensus concerning acceptable indoor residential formaldehyde levels.

Robbi- CM00820



The OSHA, AIHA and ACGIH levels are intended for occupational settings and are based on avoiding acute effects of irritation. The NIOSH REL for formaldehyde is based on the lower limit of analytical sensitivity; this limit is not based on a consideration of the levels at which health effects may occur. The ATSDR MRLs are much lower and are based upon the "no observed adverse effect level/uncertainty factor," or "NOAEL/UF" approach (Agency for Toxic Substances and Disease Registry 2009). This means that the lowest tested exposure levels that show minimal or no adverse health effects are determined; and then are decreased through division by factors for uncertainty such as for extrapolation from animals to humans and for variability in human response. The chronic inhalation MRL of 0.008 ppm was derived based on a minimal lowest observed adverse effect level (LOAEL) of 0.24 ppm for histological evidence of mild damage to the nasal epithelial tissue in formaldehyde exposed chemical workers (Agency for Toxic Substances and Disease Registry 1999). Then, to derive the MRL, the minimal LOAEL was divided by an uncertainty factor of 30 (3 for the use of a minimal LOAEL and 10 for human variability). The ATSDR specifically cautions that "...MRLs are not intended to define clean up or action levels for ATSDR or other Agencies."

The Department of Housing and Urban Development's (HUD) plywood and particle board levels are not ambient air standards, but are emission standards that apply to formaldehyde concentrations for these products determined in a controlled test chamber. Adherence to the plywood and particle board emission levels is intended to result in indoor levels in manufactured homes to the "targeted ambient level" of 0.4 ppm. The HUD also concluded that indoor ambient formaldehyde levels of 0.4 ppm provide reasonable protection to manufactured home occupants, and that medical and scientific evidence does not adequately establish a health benefit for levels below 0.4 ppm (U.S.Dept.of Housing and Urban Development and Office of the Assistant Secretary for Housing - Federal Housing Commissioner 1984). Note that only the levels set by OSHA and HUD (for product emissions in manufactured homes) are enforceable standards.

Robbi- CM00821



Table 1. Regulatory limits and guidance levels for formaldehyde.

| Entity | Formaldehyde (ppm) |
|---|---|
| OSHA 8-hr PEL TWA | 0.75 |
| OSHA STEL 15-min TWA | 2.0 |
| NIOSH REL 8-hr TWA | 0.016 |
| NIOSH ceiling 15-min | 0.1 |
| NIOSH immediately dangerous to health or life | 20.0 |
| ACGIH ceiling limit | 0.3 |
| ATSDR acute inhalation MRL | 0.04 |
| ATSDR intermediate duration inhalation MRL | 0.03 |
| ATSDR chronic duration inhalation MRL | 0.008 |
| HUD-plywood* | 0.2 |
| HUD-particle board* | 0.3 |
| HUD-targeted ambient level | 0.4 |
| AIHA | 1.0 |

*Not an ambient air standard, but an emission standard.
References: (Agency for Toxic Substances and Disease Registry 1999; American Conference of Governmental Industrial Hygienists 2009; American Industrial Hygiene Association 1989; National Institute for Occupational Safety and Health and NIOSH 2005; Occupational Safety and Health Administration *et al.* 2008; U.S.Dept.of Housing and Urban Development and Office of the Assistant Secretary for Housing - Federal Housing Commissioner 1984).

## 2.  Background on Industrial Hygiene and Formaldehyde Sampling

Industrial hygiene is the science of anticipation, recognition, evaluation, and control of physical, chemical, or other hazards.  The main task of industrial hygiene is the evaluation, or assessment, of exposure or potential for exposure.  To carry out this task, the industrial hygienist (IH) must understand exposure assessment methods and strategies, and the relevant toxicological issues and likely exposure pathway of the agent(s) they are to assess.

With any chemical, exposure is necessary in order for an individual to receive a dose of the chemical.  In order for exposure to occur, there must be a pathway from the source of the agent to the individual and the chemical must be present in a form that can gain entry to the body.  Industrial hygiene sampling should be conducted in a way that is relevant to the exposure route for individuals in a particular environment.  For exposure to formaldehyde in residences, the important exposure route is inhalation.  Thus, air samples are collected to estimate the potential inhalation exposure to formaldehyde.

Air samples for determination of formaldehyde concentration can be collected using passive diffusion "badge" samplers or by active sampling with an adsorbent tube or impinger and vacuum pump. For both methods, the sample media are sent to a laboratory for analysis where the mass of formaldehyde collected is determined.  The concentration of formaldehyde per air volume collected is calculated by dividing the mass of formaldehyde by the volume of the air sampled.  For diffusion samplers, the actual sampling rate is unknown but is assumed to be as specified by the manufacturer of the sampler.  The time for which the badge is exposed is multiplied by the assumed flow rate to calculate sample volume.  Active sampling uses a



Case 2:07-md-01873-KDE-MBN   Document 22460-11   Filed 08/18/11   Page 8 of 64

Charles Marshall v. Sun Valley, Inc. et al.                                                                Page 8

pump with a known and calibrated air flow rate to pull air through the sample media for a measured time period, resulting in a measured volume of air. Although many diffusion samplers have been validated as accurate to $\pm 25\%$, sufficiently accurate for occupational exposure assessment, quantification of formaldehyde levels is more reliable with volumetric sampling especially at low concentrations of formaldehyde.

Air samples for formaldehyde can be taken over varying lengths of time, from fifteen minutes to a week, or longer. The longer duration samples provide an estimate of the average concentrations to which occupants are exposed over time. Although indoor formaldehyde concentrations are often higher than outdoor concentrations, outdoor samples collected on the same day of indoor sampling are useful for comparison and to account for possible contributions of outdoor formaldehyde to indoor levels. Since formaldehyde is ubiquitous in the environment, sampling protocols must be followed carefully to avoid contamination. "Field blanks" are also required to verify that samples have not been contaminated during shipping and handling. Field blanks are sample media that are handled exactly like the sample except that they are not exposed to air for long periods (diffusion samples) or air is not pulled through the media (active sampling). The NIOSH Method 2016, a volumetric method using adsorbent tubes, specifies the collection of two to ten field blanks per set of samples (National Institute for Occupational Safety and Health and NIOSH 2003). There is no specific NIOSH diffusion sample method, and instructions with diffusion samples or "badges" do not always specify field blank requirements. However, the OSHA Method 1007 for diffusion badges requires "at least one blank sampler with each set of samples" and provides very detailed instructions for handling the blank samples (Occupational Safety and Health Administration *et al.* 2005).

It is standard practice in industrial hygiene sampling to collect field blank samples to allow detection of extraneous amounts of the tested material that can be inadvertently collected during sample handling and shipping. Laboratories routinely include "laboratory blanks" to control for possible contamination of samples during processing. The field and laboratory blanks are critical for ubiquitous substances, including formaldehyde; the ever-present nature of formaldehyde means that there is a high likelihood of inadvertent contamination of samples (Shirtliffe *et al.* 1985). Sample results are adjusted, by subtracting the amount of the substance found on the field and laboratory blanks, to more accurately reflect the concentration in the sampled environment.

For sample results to accurately reflect exposure of a particular occupant to formaldehyde under the conditions in which he or she lives, sampling must take place during similar conditions. If factors known to affect formaldehyde concentration indoors are substantially changed from normal occupancy conditions during sampling, such samples cannot accurately reflect exposures to occupants. For example, closing all windows and turning off the AC system is likely to increase indoor formaldehyde levels; if an occupant did not live in such conditions then these samples would not accurately reflect their potential exposure. Samples collected under "worst case" conditions of closed windows and doors, inactive ventilation, and high indoor heat and humidity; all factors known to increase formaldehyde concentrations indoors, can only reasonably represent these "worst case" conditions that would be intolerable to the occupants. In addition, for sample results to accurately reflect exposures of an occupant to formaldehyde, samples must be collected from areas indoors that are occupied; for



example, a sample collected inside a closed cupboard would not likely be representative of exposure to occupants. The interior of the cupboard may be a local source of formaldehyde which would increase the concentration measured in the cupboard; however, the level in the cupboard would not reflect the level in the occupied space.

It is well established that installation of new building materials in homes is associated with initial elevations in formaldehyde levels indoors whether the new products are installed in a newly constructed conventional home, manufactured home, or in a home undergoing renovation with associated installation of new materials. In one study, homes that were renovated showed nearly two times higher formaldehyde levels after renovation compared to before as a result of installation of new materials (Park and Ikeda 2006). Formaldehyde levels will then decrease after installation at varying rates depending on the specifications of the home (design, construction materials, ventilation, etc.) and occupancy characteristics (Hare 1996; Hodgson *et al.* 2000; Park and Ikeda 2006). Therefore, formaldehyde emissions from home building materials (particleboard, paneling, counter tops, etc.) are typical and can be expected in both newly constructed homes and homes that are recently renovated.

### B. Background on the FEMA Trailers and "Bellwether" Plaintiff Charles Marshall

Hurricane Katrina landed in the southern USA in 8/05. In response to the loss of homes, FEMA provided rent-free housing units (mobiles homes, travel trailers, and park homes) to those affected by the hurricane. In response to concerns or questions about potentially elevated formaldehyde levels in these units, air quality investigations and studies have been performed by several entities.

The "Bellwether" Plaintiff addressed in this report is Mr. Charles Marshall. Mr. Marshall moved to his property located at 3500 Dickens Drive, New Orleans, LA in 9/72 and resided there until 10/08 (Plaintiff Fact Sheet, p6 [Robbi-CM00255]). According to Mr. Marshall's Plaintiff Fact Sheet, he resided in a Sun Valley THU located on his private property between 1/06 and 10/08 (Plaintiff Fact Sheet, p9 [Robbi-CM00258]). Mr. Marshall's personal injury claims include fear of cancer, bronchitis, nausea, and burning of eyes (Plaintiff Fact Sheet, p11 [Robbi-CM00260]). Mr. Marshall's Plaintiff Fact Sheet indicates that he is not aware of any air quality testing being performed on the FEMA unit (Plaintiff Fact Sheet, p10 [Robbi-CM00259]). Mr. Marshall currently resides at 520 Wall Boulevard, New Orleans, LA (Plaintiff Fact Sheet, p6 [Robbi-CM00255]).

### V.   Opinions

I have been asked to address general industrial hygiene issues related to formaldehyde and indoor air quality in the trailer occupied by Mr. Marshall following hurricane Katrina. The following material sets forth my opinions and conclusions, to a reasonable degree of scientific certainty, on these issues and related matters.



## A. OPINIONS REGARDING FORMALDEHYDE EXPOSURE FOR MR. MARSHALL IN HIS TEMPORARY HOUSING UNIT (THU)

**1. There are no data from which it is possible to conclude that Mr. Marshall was exposed to formaldehyde concentrations in his THU above those levels typically found in other non-complaint FEMA housing units, other emergency housing or conventional homes in Louisiana.**

**a. There were no samples of formaldehyde collected in Mr. Marshall's THU; therefore, there are no data to indicate concentrations of formaldehyde specifically in his THU.**

No formaldehyde sampling was performed in Mr. Marshall's Sun Valley housing unit at any time. Since occupancy-related factors (e.g. ventilation, number of occupants), age, and condition of the unit are relevant to airborne formaldehyde levels in living spaces; without sampling from Mr. Marshall's own unit it is not possible to extrapolate exposure levels based on other units Mr. Marshall never occupied.

**b. Since it is ubiquitous in indoor environments, formaldehyde was present in all other housing available to hurricane victims; however, there are no contemporaneous data collected in other housing to indicate whether levels in other housing were higher or lower compared to levels measured in the THUs, including Mr. Marshall's.**

Samples were not collected in the Marshall trailer, outdoors, in comparison homes, or in alternative emergency housing. Since the Plaintiff's experts did not test these or any other comparison buildings, they can't conclude that trailers provided by FEMA were subjecting occupants to formaldehyde concentrations at or above levels found in alternative emergency or non-emergency housing facilities. Other data indicate that formaldehyde levels in the FEMA trailers were within the range of levels found in conventional homes in Louisiana (Lemus *et al.* 1998; U.S.Consumer Product Safety Commission 2009b).

**2. It is unlikely that Mr. Marshall was exposed to formaldehyde in his THU in excess of concentrations typically found in conventional homes or other emergency housing in Louisiana.**

**a. Formaldehyde levels in THUs reported by the CDC (Centers for Disease Control 2008) which Plaintiff's experts rely upon are not significantly different when compared to levels reported for conventional homes in Louisiana and other southern states.**

Formaldehyde levels reported in the CDC study for "Other" travel trailers are within indoor formaldehyde ranges reported in the literature for conventional site built homes in Louisiana (Figure 1). The category of "Other" travel trailers might include units from Sun Valley. Lemus *et al.* (1998) performed a survey of conventional homes in southern Louisiana and reported average formaldehyde concentrations of 0.25 and 0.41 ppm for rural and urban homes, respectively; measured concentrations ranged from non-detect to 5.36 ppm. Note that

Robbi- CM00825



the non-detect samples were included in the calculation of the mean. A total of 71% of urban homes and 68% of rural homes were above 0.1 ppm, the ASHRAE guideline level at the time of the study (Lemus *et al.* 1998). The average concentration of formaldehyde reported by the CDC for "Other" occupied trailers (0.048-0.074 ppm) is less than the averages found in conventional homes as reported by Lemus *et al.* (0.25 and 0.41 ppm) (Figure 1). Thus, based upon this study, the level of formaldehyde in an average unit was not different than what would likely have been experienced in a site built home in southern Louisiana.

**Figure 1. Average Indoor Formaldehyde Concentrations Reported by Lemus 1998 and by the CDC for Occupied "Other" THUs**



In recent studies, new or remodeled homes in the Southern US were found to have formaldehyde levels in the same range as "Other" trailers tested by the CDC (CDC: 0.048-0.074 ppm; CPSC: 0.03-0.40 ppm). New formaldehyde sampling data from conventional homes located in Florida and Louisiana became available on 10/29/09 (U.S.Consumer Product Safety Commission 2009b). These samples were collected by the Environmental Protection Agency Environmental Response Team (EPA/ERT) and Florida Department of Health (FDOH) as a component of a 2009 Federal Consumer Products Safety Commission (CPSC) home survey. The study was undertaken to evaluate the issues of "Chinese" drywall products, including their impact on indoor air quality. As a part of this study, formaldehyde samples were collected from ten homes located in Florida and Louisiana using an accepted and validated formaldehyde sampling method (EPA TO-11A). Samples were collected in "test" houses with Chinese drywall and in "control" houses, which were built during the same time frame, but had no Chinese drywall. Summary results were provided for six of the ten houses. Data for the remaining four homes will be presented at a later date[1]; however, the data for these houses are reported to be consistent with results for formaldehyde for the six homes reported. Summary results are shown below in Table 2. (The results are from the report summary and Appendix H in "Tab C," associated with the 10/29/09 Executive Summary).

---

[1] "The FDOH did not originally test for formaldehyde; however, when early reports identified formaldehyde at levels above the odor threshold, measurements were taken in October 2009 on homes 80, 81, 90, and 91. Since different test methods were used and the data received late, a consensus decision was made to not include that data into this technical report.")



Charles Marshall v. Sun Valley, Inc. et al.                                                                     Page 12

Table 2: Formaldehyde concentration (ppm) in test and control homes with air conditioning on and off.

|         | AC Off<br>*mean (range)* | AC On<br>*mean (range)* |
|---------|--------------------------|-------------------------|
| Overall | 0.107*                   | 0.054                   |
| Test    | 0.167 (0.079-0.400)      | 0.057 (0.030-0.075)     |
| Control | 0.092 (0.046-0.130)      | 0.050 (0.035-0.076)     |

\* The highest mean value, 0.324 ppm was not included because status of AC was unknown. These means were calculated without the highest mean home.

The 10/29/09 report of the CPSC notes the following (U.S.Consumer Product Safety Commission 2009b); Personal communication with Clark Eldridge, Florida DOH, November 2009):

- Formaldehyde levels were significantly higher in houses when the air conditioning was turned off, compared to when it was in use.
    - "Formaldehyde was detected in all homes at or above ~100 ppb (122.7 $\mu g/m^3$) [~0.1 ppm] under AC "OFF" conditions. In Test home 202 formaldehyde was measured at concentrations up to 400 ppb (490.8 $\mu g/m^3$) [0.4 ppm]."
    - "The use of air conditioning systems appeared to result in lower levels of formaldehyde in homes 100, 101, 200, and 201."

- Formaldehyde levels were similar between test and control homes.
    - "No statistical difference was found between formaldehyde levels measured in the Florida and Louisiana Test and Control homes."

- Levels of formaldehyde found in these conventional homes in Florida and Louisiana are in excess of the ATSDR MRL of 0.008 ppm.
    - "…measurements taken with the air conditioning on demonstrate a significant decrease in detected levels, these lower values remain above some of the minimal risk levels found in Appendix I."

The individual or "raw" data underlying these summary values are not yet available; however, they are to be made available in the future after the agency responsible for its release is able to determine the manner of and location for providing these data (U.S.Consumer Product Safety Commission 2009c); Personal communication with Clark Eldridge, Florida DOH, November 2009).

On 11/23/09, a new report containing information for 51 additional single-family homes was released (U.S.Consumer Product Safety Commission 2009a). According to the report summary:

"Levels of formaldehyde and other aldehydes were comparable in complaint and control homes, and were consistent with levels that are expected in newly

Robbi- CM00827



Case 2:07-md-01873-KDE-MBN   Document 22460-11   Filed 08/18/11   Page 13 of 64

Charles Marshall v. Sun Valley, Inc. et al.                                                    Page 13

constructed homes. This finding was consistent with the previously released ten-home air study that also found formaldehyde in test and control homes."

Samples were collected in 51 homes in Florida, Louisiana, Mississippi, Alabama, and Virginia. At this time, the technical portion of the report, "Draft Final Report on an Indoor Environmental Quality Assessment of Residences Containing Chinese Drywall," which follows the summary, is noted as "Draft" and "Do not quote or cite." Thus, the draft results are not referenced in this report due to this notation; however, summary data concerning formaldehyde levels are reported in the body of the summary. Detailed descriptions of the study's sampling and analytical methods for formaldehyde and other compounds (including discussion of field blank collection and handling) are included in the draft report. The underlying data are not yet available with the report or on the CPSC website.

Results of these recent studies indicate that for homes with AC not in use, formaldehyde levels are similar to those found in single-family Southern Louisiana homes as reported by Lemus (1998). In addition, the mean concentrations are similar to results reported in the literature for mobile homes and for samples collected by the CDC in FEMA housing units (means between 0.050 – 0.15 ppm, see Figure 2). These data additionally support my opinions concerning the formaldehyde levels measured in FEMA housing units; they are in the same range as formaldehyde levels reported for non-emergency housing in Louisiana and in mobile homes. These data indicate that hurricane victims including Mr. Marshall would likely have had similar exposures to formaldehyde whether they were housed in new conventional homes or THUs. In addition, the data indicate that new or recently remodeled conventional homes in the south are likely to have formaldehyde levels well in excess of the ATSDR MRL of 0.008 ppm.

Robbi- CM00828



Charles Marshall v. Sun Valley, Inc. et al.                                                                    Page 14



Figure 2: Means and Ranges of Indoor Formaldehyde Levels Reported for Mobile Homes in the Literature (non-complaint), by the CPSC, and by the CDC for Occupied "Other" THUs

### b. Mr. Marshall and Ms. Blazio describe airing out Mr. Marshall's THU by opening windows and doors, and he used the unit's air conditioning system during warm weather; this would have significantly reduced the concentration of any formaldehyde in the unit.

Mr. Marshall (Deposition of Charles Marshall, 123:22-124:10, 157:6-24, 162:2-8) and Ms. Blazio (Deposition of Patricia Blazio, 64:18-65:1, 156:1-20) describe airing out Mr. Marshall's THU each time they entered it by opening windows and doors. Mr. Marshall also used the unit's air conditioning system during warm weather and kept his unit at a temperature of 65-68°F (Deposition of Charles Marshall, 162:19-25, 332:3-9). These would have significantly reduced the concentration of any formaldehyde in the unit.

In the study conducted by the ATSDR in 2006, it was clearly demonstrated that simply opening windows or using the air conditioning in the THUs significantly reduced indoor formaldehyde concentrations. In the study of 96 unoccupied trailers conducted by the ATSDR in 2006 (Agency for Toxic Substances and Disease Registry 2007), it was clearly demonstrated that simply opening windows or using the air conditioning in the THUs significantly reduced indoor formaldehyde concentrations. The overall mean concentration was reduced by 91% (from 1.044 to 0.0899 ppm; n = 96 and 863, respectively) for units with



windows open. The overall average concentration (1.044 ppm) was reduced by 77% (0.244 ppm) within four days and 78% (0.233 ppm) at ten days, for combined data (windows open or air conditioning used). These results indicate the efficacy of opening windows for ventilation and the use of air conditioning to reduce indoor formaldehyde concentrations in a short period of time.

> **c. The results of the cited CDC study (Centers for Disease Control 2008) cannot be used to estimate formaldehyde levels specifically for Sun Valley trailers including Mr. Marshall's since there are no data reported in this study for Sun Valley trailers.**

Results of CDC's sampling of trailers for formaldehyde are not known to be applicable to Sun Valley trailers. It is not known how many, if any, Sun Valley trailers were included in the CDC study data because information for this manufacturer was not indicated; only the data for manufacturers supplying large numbers of units were reported by manufacturer (travel trailers: Gulfstream, Forest River, Fleetwood, Pilgrim, Keystone). Since the Sun Valley trailers were few in number compared to other manufacturers, even a random sample of all trailers would include few Sun Valley trailers or may exclude them entirely. Since the vast majority of trailers tested were of other manufacturers, the formaldehyde sampling results from the CDC study are derived from conditions and characteristics of their trailers. The characteristics that influence formaldehyde off-gassing and concentration (size, ventilation options and efficiency, component materials, etc.) for the other manufacturer's trailers have not been shown to be similar to or representative of Sun Valley trailers. Therefore, the results of this study, relied upon by Plaintiff's experts, have unknown applicability to understanding the level of formaldehyde specifically in Sun Valley trailers and it cannot be assumed that the levels reported by the CDC are indicative of formaldehyde concentrations in Sun Valley trailers.

> **B. OPINIONS REGARDING OTHER SOURCES OF FORMALDEHYDE EXPOSURE AND EXPOSURE TO OTHER MATERIALS THAT CAN RESULT IN HEALTH SYMPTOMS REPORTED BY MR. CHARLES MARSHALL**

> **1. Mr. Marshall participated in clean-up and tear-out activities at his Katrina-damaged home during the time he lived in the THU; these activities would have resulted in substantial exposures to airborne dust, mold, bacteria, and other bioaerosols which exposures are known to result in many of the health complaints reported by Mr. Marshall.**

The temporality of the onset of Mr. Marshall's health complaints coincides with his cleaning efforts at his Katrina-damaged home. According to the Plaintiff Fact Sheet, Mr. Marshall's claimed injuries first occurred in 3/06 (Plaintiff Fact Sheet, p4). He then testified that between 3/06 and 5/06 he spent four to five hours per day in the house trying to clean up (Deposition of Charles Marshall, 77:21-78:2). He also testified that he began cleaning his home in 2/06 or 3/06 and cleaned for maybe three or four months before hiring a contractor to "tear it up" (Deposition of Charles Marshall, 74:5-7, 95:7-21).

Robbi- CM00830



Mr. Marshall testified that his house was damaged "beyond belief" by Katrina; the ceilings were down, the floors, carpeting and wood were all wet, and there was mold, mildew and rainwater "everywhere" (Deposition of Charles Marshall, 51:16-52:6). The whole house was devastated from front to back (Deposition of Charles Marshall, 67:11-69:2). Between 1/06 and 5/06, Mr. Marshall tried to remove some of the mold and fallen ceilings, plaster and sheetrock at his house (Deposition of Charles Marshall, 67:11-18). He testified that he washed down woodwork or "parts" with bleach and tore out some sheetrock. Eventually he replaced all the sheetrock (Deposition of Charles Marshall, 67:11-69:2). Mr. Marshall also testified that he started cleaning up the house in 2/06 or 3/06. He cleaned the house for maybe three or four months. He then hired a contractor to tear it up (Deposition of Charles Marshall, 74:5-7, 95:7-21). Between 3/06 and 5/06, Mr. Marshall spent four to five hours per day in the house trying to clean up (Deposition of Charles Marshall, 77:21-78:2). Mr. Marshall also testified that he had a house with mold and mildew that he was trying to clean up from 3/06 to early 2010 (Deposition of Charles Marshall, 108:18-21). Between 10/08 and early 2010 there was still mold and mildew in the house on sheetrock and carpeting. Before the sheetrock, carpeting "and all" was removed, Mr. Marshall stayed in the house maybe once a week or every other week. He had the bedroom done early so he could use it (Deposition of Charles Marshall, 105:23-106:3; 106:22-107:19).

Mr. Marshall's work with the clean-up and tear-out of the home on his property would more likely than not result in exposure to extremely elevated amounts of airborne dust, mold, bacteria, and other bioaerosols. Following Hurricane Katrina, many homes were left with substantial water damage to structure and contents, and standing water in affected areas provided conditions favorable to proliferation of mold and bacteria. Studies of Louisiana homes after Katrina have demonstrated elevated levels of mold spores indoors (Adhikari *et al.* 2009; Reponen *et al.* 2007). Those involved in demolition or renovation to damaged homes, as Mr. Marshall was, would be exposed to the elevated levels of airborne mold spores and other bioaerosols. A study specifically measuring mold and endotoxin levels in three New Orleans homes before renovation, during renovation, and after renovation found that levels were elevated before and during the renovation (Chew *et al.* 2006). A study of renovations in Katrina-affected homes reported health symptoms in those who performed repairs or renovations to their home without use of respirators (Cummings *et al.* 2008). The CDC and other authors have recommended that personal respiratory protection be used during repair or clean-up of damaged homes in order to minimize exposure to dusts and particles (Centers for Disease Control and Prevention 2006; Cummings *et al.* 2008). Thus, it is probable that Mr. Marshall experienced exposure to elevated levels of respirable particles, including mold and bacteria, while performing work on his damaged home. The time that Mr. Marshall occupied the housing unit corresponds to the time that he worked on repairing his house and to the time that he has claimed symptoms; therefore, this exposure should be considered in regard to his health complaints.

   **2. Mr. Marshall has been and continues to be exposed to environmental tobacco
       smoke (ETS) in casinos; exposure to ETS is known to result in increased
       symptom complaints in asthmatics.**

Mr. Marshall testified that he has gone to casinos more frequently since Katrina. He stated that he visits casinos every two to three weeks as a driver for senior citizens and the smoke in



the casinos bothers him (Deposition of Charles Marshall, 308:17-312:12). Exposure to ETS at casinos makes his eyes burn and causes him to cough. It doesn't make his nose itchy or runny, or give him wheeze, shortness of breath, asthma flare-up, nausea, or vomiting (Deposition of Charles Marshall, 340:6-24).

Secondhand smoke can trigger asthma episodes and increase the severity of asthma attacks (Barnes 2008; U.S.Environmental Protection Agency 2011).

### 3. Mr. Marshall is likely to have been and still is exposed to increased concentrations of formaldehyde indoors due to his exposure to ETS.

Tobacco smoke is a significant source of formaldehyde exposure (Agency for Toxic Substances and Disease Registry 1999). Formaldehyde is a constituent of both the smoke that is inhaled by the smoker and the smoke that is released into the air. It is estimated that ETS contributes 10 to 25% of the total average indoor exposure of formaldehyde (Agency for Toxic Substances and Disease Registry 1999). As a consequence, smokers and persons who occupy indoor spaces with smokers can be exposed to higher levels of formaldehyde (Agency for Toxic Substances and Disease Registry 1999; Lofroth *et al.* 1989; Triebig and Zober 1984). In indoor environments where smoking occurs, formaldehyde concentrations tend to be higher than in indoor environments where smoking does not occur (Figure 4). Ranges of formaldehyde in nonsmoking office buildings are lower than buildings where smoking is allowed. Concentrations ranged from not detectable to 0.22 ppm in nonsmoking buildings, and ranged from not detectable to 0.6 ppm where smoking was permitted (Sterling *et al.* 1987). Formaldehyde concentrations measured on two different days inside a tavern during normal smoking conditions were 0.072 to 0.088 ppb (Lofroth *et al.* 1989). When three to nine commercial cigarettes were smoked in a climatic chamber, the concentration of formaldehyde was as high as 0.19 ppm (Baek and Jenkins 2004). The increase in formaldehyde due to smoking is observed in experimental chamber studies (Lofroth *et al.* 1989) (Figure 3).

Robbi- CM00832



**Figure 3. Airborne Formaldehyde from Environmental Cigarette Smoke, Reported by Lofroth et al. 1989**



4. **Mr. Marshall's use of marijuana presents the potential for exposure to formaldehyde via direct inhalation since it is sometimes added to illegal marijuana.**

At a medical visit on 11/1/07, Dr. Parikh noted that Mr. Marshall was positive for a marijuana use history and "cleansed times two weeks...one month no smoking." Dr. Parikh was not sure what was meant by the "cleansed times two weeks" (Deposition of Vipul Parikh, MD, 14:3-5, 23:3-11). According to the progress note, "He has previously used marijuana on a regular basis though has not for the last month" (Clinic Progress Note from Tulane University Hospital & Clinic, Vipul Parikh, MD, 11/1/07 [Robbi-CM00491]). He also reported a "distant history" of cocaine use (Clinic Progress Note from Tulane University Hospital & Clinic, 11/1/07 [Robbi-CM00491]; Deposition of Vipul Parikh, MD, 17:17-20). At a 1/28/09 medical visit with Dr. Tracy Conrad, Mr. Marshall reported that he has "occasional marijuana use" (Clinic Progress Note, Tulane University Hospital & Clinic, Tracy Conrad, DO, 1/28/09 [Robbi-CM00556]). At a 2/16/11 medical visit with Dr. Conrad, Mr. Marshall mentioned Dr. Parikh's note from several years ago regarding "brief experimentations with marijuana and cocaine" in his youth in relation to his lawsuit. Mr. Marshall asked Dr. Conrad to put in the record that he is not a current and habitual user of marijuana or cocaine (Deposition of Tracy Conrad, MD, 34:19-36:9).

Formaldehyde is one of the primary components of "fry" or "illy", which refers to embalming fluid and/or phencyclidine (PCP)-laced cigarettes or marijuana sticks (Marceaux *et al.* 2008; Modesto-Lowe and Petry 2001; National Drug Intelligence Center 2004; Peters, Jr. *et al.* 2008). Mixing of formaldehyde-containing embalming fluid with other drugs or substances (e.g. marijuana or mint) has been reported to be widely occurring (Singer *et al.* 2005). In one study of drug-involved youth, for the 90% of youth who reported ever use of embalming fluid, the embalming fluid was mixed with marijuana 80% of the time (Singer *et al.* 2005).



Although quantification of the amount of embalming fluid smoked has not been feasible (Marceaux *et al.* 2008), Mr. Marshall's use of marijuana presents the potential for exposure to formaldehyde via direct inhalation.

5. **Mr. Marshall has a history of exposure to marijuana and cocaine use; this exposure and use is associated with some of the health complaints that are claimed by Mr. Marshall to be due to living in his THU.**

Mr. Marshall has claimed that his respiratory symptoms, such as asthma, cough, and shortness of breath are associated with occupancy in the trailer unit (Plaintiff Responses to Defendants' Request for Interrogatories, No.10; Plaintiff Fact Sheet, p3-4). Dr. Pearson testified that smoking marijuana can cause an asthma attack (Deposition of John Pearson, MD, 18:19-19:3, 21:17-20). Dr. Conrad testified that marijuana and possibly excessive cocaine use could trigger worsening of asthma (Deposition of Tracy Conrad, MD, 44:24-45:7). According to Dr. Conrad, an occasional snorter of cocaine may have sinus inflammation. Acute cocaine use constricts and opens the passages, but afterwards as it wears off it could make the nose stuffy or make it difficult to breathe (Deposition of Tracy Conrad, MD, 41:8-17). Dr. Conrad is not aware of cocaine causing eyes to water, though smoking marijuana can cause cough (Deposition of Tracy Conrad, MD, 41:18-24).

C. **OPINIONS REGARDING REPORTS OF DR. WILLIAMS AND DR. MILLER**

1. **Neither Dr. Williams nor Dr. Miller appropriately consider: 1) exposures to other agents (ETS, inhaled particles during demolition and renovation work) that could be responsible for Mr. Marshall's complaints; and, 2) other sources of exposure to formaldehyde (ETS and smoking marijuana) for Mr. Marshall outside of his FEMA trailer.**

I reviewed the affidavit of Patricia Williams, PhD, DABT in the Alexander/Cooper matter, dated 5/18/09. I also reviewed the report of Lawrence Miller, MD dated 6/15/11 in which Dr. Miller addresses Mr. Marshall's exposure to formaldehyde resulting from his occupancy of the Sun Valley trailer. Drs. Miller and Williams do not consider that Mr. Marshall likely had exposure to cigarette smoke and exposure to elevated levels of dust, mold, bacteria and other bioaerosols as a result of his clean-up and tear-out work on his damaged home; and that these exposures may have contributed to or caused his complaints.

2. **Dr. Williams's report contains no information specific to Mr. Marshall; however, it does contain references to other plaintiffs (A. Alexander and C. Cooper).**

3. **Dr. Williams's report contains extensive discussions of mold exposure, particulate exposure, and adverse health effects of these substances; however, she does not consider or discuss the issue of exposure to airborne mold or other particles for Mr. Marshall during the renovation and repair of his water-damaged house.**



**4. Dr. Williams's report does not elucidate whether Mr. Marshall's exposure to formaldehyde in his trailer was higher than other available housing or whether this exposure was sufficient to result in his health complaints.**

Dr. Williams's report contains factual statements about formaldehyde, mold, and particles from articles; it does not contain any conclusions, integration or discussion of these statements with respect to: 1) the exposure level potentially experienced by Mr. Marshall; 2) what level and duration of exposure the health effects she claims are likely to occur; and, 3) whether or how the literature she cites is relevant to Mr. Marshall's exposure and claimed health effects.

**5. Dr. Williams's general causation opinions are irrelevant with respect to Mr. Marshall because they are not qualified in terms of the exposure levels and/or duration required to produce the adverse health effects she cites; this disregards the fundamental principal of toxicology, that of dose-response.**

The dose-response relationship is the most fundamental and pervasive concept in toxicology and an understanding of this relationship is essential for the study of toxic materials - "All substances are poisons; there is none which is not a poison. The right dose differentiates poison from a remedy (Paracelsus)." All chemicals have toxic properties that become apparent as increasing quantities are consumed or absorbed. It follows that there may be "safe" levels of exposure to even the most toxic substances (Gallo 2008; Zenz 1994).

**6. Dr. Williams notes the ATSDR MRL and implies that levels of formaldehyde in homes are expected to be below these levels, and that adverse health effects will occur at levels above this, despite data showing that formaldehyde concentrations in non-complaint homes are consistently reported at levels above the chronic MRL of 0.008 ppm.**

**a. Other published studies describing formaldehyde concentration outdoors, indoors, and in non-complaint mobile and conventional homes show that concentrations above the MRL are common.**

Some studies report even outdoor concentrations above the chronic MRL, in the range of 0.02 to 0.07 ppm (Grosjean 1982; Hanrahan *et al.* 1984; Liteplo and Meek 2003; Stock and Mendez 1985). Sources cited in the ATSDR 1999 document containing this MRL, as well as more recent studies, show that outdoor levels often exceed the MRL (0.008 ppm), particularly in urban areas (Grosjean 1982; Liteplo and Meek 2003; Zhang *et al.* 1994):

        Schenectady, New York, 0.001 to 0.031 ppm
        California State University Los Angeles campus, 0.002 to 0.040 ppm
        Claremont, California, 0.003 to 0.048 ppm
        New Jersey, 0.00202-0.034 ppm
        Eight urban sites in Canada, up to 0.0229 ppm

Formaldehyde concentrations in excess of the MRL were reported for ambient air in cities for samples collected for two to three day periods from June 1980 to April 1984, and the



maximum concentration in each city ranged from 0.0156 ppm in Chicago to 0.0677 ppm in Downey (Salas and Singh 1986; Singh *et al.* 1982):

| Location | Average Concentration (ppm) |
|---|---|
| St. Louis, Missouri | 0.0113 |
| Denver, Colorado | 0.0123 |
| Riverside, California | 0.0190 |
| Staten Island, New York | 0.0143 |
| Pittsburgh, Pennsylvania | 0.0185 |
| Chicago, Illinois | 0.0113 |
| Downey, California | 0.0155 |

**b. Exposure to formaldehyde above the MRL does not mean that adverse health effects will occur; MRLs are set well below levels that, based on current information, might cause adverse health effects.**

ATSDR specifically states that "Exposure to a level above the MRL does not mean that adverse health effects will occur." (Agency for Toxic Substances and Disease Registry 1999). ATSDR has established a Minimal Risk Level for formaldehyde of 0.04 ppm for acute exposure (1 to 14 days of continuous exposure) and 0.03 ppm for intermediate exposure (up to 365 days of continuous exposure) and 0.008 ppm for chronic exposure (365 days to a lifetime exposure), (Agency for Toxic Substances and Disease Registry 1999). Minimum Risk Levels are considered safe levels of daily human exposure to a hazardous substance over a specified duration of exposure. Minimum Risk Levels are set *below* levels that, based on current information, *might* cause adverse health effects. The MRLs are derived through the use of safety factors applied to levels that are already below levels at which effects are minimal or absent. In discussing MRLs, ATSDR emphasizes: "**It is important to note that MRLs are not intended to define clean up or action levels for ATSDR or other Agencies.**" (Bold in original.)

The ATSDR describes the review of extensive literature in the documentation of the MRLs for formaldehyde, but the >365 day chronic MRL is based upon calculations applied to the results of a single study of workers with exposure to formaldehyde over many years (Holmstrom *et al.* 1989). Occupationally exposed workers showed changes in nasal mucosa at average exposure levels of 0.24 ppm. However, the calculation on this result that produced the MRL does not take into account peak exposures for these workers, which were in excess of 0.81 ppm, and the fact that the measured effect (effects of formaldehyde on the nasal mucosa) are dependent on concentration of exposure rather than duration of exposure (Holmstrom *et al.* 1989). That is, for the same total dose of formaldehyde, lower exposures for longer duration will have less or no effect, but short exposures at greater levels (such as 0.81 ppm in the Holmstrom study) may produce changes in the nasal mucosa. The control group, office workers with no direct occupational exposure (lower average exposure and no peak exposure in their workday) experienced mean concentrations of 0.07 ppm, and had significantly fewer changes in mucosa compared to the subject workers. The author notes that exposure to formaldehyde is unavoidable since it is present in nearly all indoor environments.



Charles Marshall v. Sun Valley, Inc. et al.                                      Page 22

The MRL is not a guideline for allowable or recommended exposures. It is a concentration at
which health effects will not occur even with an entire lifetime of exposure at that level. The
ATSDR does not recommend or require that the concentration in homes be maintained at or
below the MRL.

### c. Formaldehyde concentrations in non-complaint homes are consistently reported at levels above the MRL.

Virtually all studies of formaldehyde concentrations in *non-complaint* conventional homes
and mobile homes report mean concentrations in excess of the ATSDR MRL (0.008 ppm).
The graphs of the means of the studies are depicted in Figures 2 and 4, and clearly
demonstrate this fact. Maintaining average formaldehyde levels at or below the MRL may be
a desirable goal; however, the data collected for outdoor samples in urban areas and a wide
range of housing types indicate that the MRL is often exceeded outdoors and in much of the
available "normal" housing under non-emergency conditions (Hanrahan *et al.* 1984; Hanrahan
*et al.* 1985; Hodgson *et al.* 2000; Kinney *et al.* 2002; Lemus *et al.* 1998; Ritchie and Lehnen
1985; Sax *et al.* 2004; Sexton *et al.* 1986; Sexton 1989; Stock 1987; Stock and Mendez 1985;
Weisel *et al.* 2005).

**Figure 4. Indoor Formaldehyde Levels Reported for Non-Complaint
Conventional Homes**



7. **Dr. Miller relies on the temporal relationship of Mr. Marshall's asthma symptoms to living in the THU in concluding that his asthma is related to formaldehyde exposure in the THU; he does not consider and has not ruled out the significant exposure to mold and other dusts likely experienced by Mr. Marshall due to repairing his flood-damaged house that occurred at the same time that he lived in the THU, nor does he consider Mr. Marshall's ongoing exposure to ETS which is known to exacerbate asthma symptoms.**

8. **Dr. Miller has not noted that the medical records of Mr. Marshall indicating that he has a history of asthma, he uses an inhaler, and that his asthma re-emerged in 9/05 prior to his occupancy in the THU in 1/06.**

Dr. Miller has not noted that medical records indicate that on 2/24/06, Mr. Marshall told the medical staff at Northside Hospital that he has a history of asthma, he uses an inhaler, and that his asthma re-emerged in 9/05 (Emergency Department Report, Northside Hospital, John Pearson, MD, 2/24/06 [Robbi-CM000454]; Emergency Department Nurse's Notes, Northside Hospital, 2/24/06 [Robbi-CM00457]; Deposition of John Pearson, MD, 9:10-12:8). This pre-dates Mr. Marshall's time in the THU since Mr. Marshall moved into it in 1/06.

### E. OPINIONS REGARDING REPORT OF DR. SMULSKI

1. **Dr. Smulski relies on concentrations of formaldehyde reported in the CDC study (Centers for Disease Control 2008) to conclude that the THUs supplied by FEMA to victims of the hurricane were not suitable for use and their use may result in adverse health effects; however, as described previously, formaldehyde levels in THUs reported by the CDC are not significantly different compared to levels in conventional homes in Louisiana and other southern states.**

2. **Dr. Smulski lacks training and credentials that would allow him to opine about exposure to formaldehyde in THUs and what levels are normal or typical in indoor environments and what levels may result in adverse health effects.**

Dr. Smulski is a "wood scientist" whose expertise is related to "wood science and technology" (Affidavit of Stephen Smulski, PhD, dated 8/20/08, p1); however, he does not appear to have any education or expertise related to exposure assessment, industrial hygiene or toxicology that would allow him to opine about exposure to formaldehyde in THUs and what levels are normal or typical in indoor environments and what levels may result in adverse health effects. He appears to base his opinion on extremely limited information concerning formaldehyde levels in indoor environments since he cites only the CDC study (Centers for Disease Control 2008) for his opinion on this issue.

### VI.   Trial Testimony

A list of my expert testimony for the last four years is attached.



Charles Marshall v. Sun Valley, Inc. et al.                                                      Page 24

## VII.   Materials Reviewed

The case-specific records reviewed for the purposes of establishing my opinion are listed in Appendix A, attached.

## VIII.   Compensation

My company charges **$425** per hour for my time in this matter.


This report is based on the materials received and analyzed to date. Should additional information become available, I reserve the right to amend my opinions accordingly.


Sincerely,

Veritox, Inc.

Coreen A. Robbins, PhD, CIH
Senior Industrial Hygienist

Robbi- CM00839



Reference List

1. Adhikari, A., Jung, J., Reponen, T., Lewis, J. S., DeGrasse, E. C., Grimsley, L. F., Chew, G. L., and Grinshpun, S. A. (2009). Aerosolization of fungi, (1-3)-B-D glucan, and endotoxin from flood-affected materials collected in New Orleans homes. *Environmental Research* **109**, 215-224.

2. Agency for Toxic Substances and Disease Registry. (1999). Toxicological Profile for Formaldehyde. U.S. Department of Health and Human Services.

3. Agency for Toxic Substances and Disease Registry. (2007). An Update and Revision of ATSDR's February 2007 Health Consultation: Formaldehyde Sampling of FEMA Temporary-Housing Trailers. Baton Rouge, Louisiana, Sept. - Oct. 2006.Atlanta, Agency for Toxic Substances and Disease Registry.

4. Agency for Toxic Substances and Disease Registry. (2009). Minimal Risk Levels (MRLs) for Hazardous Substances. Accessed 6-18-2009.

5. American Conference of Governmental Industrial Hygienists (2009). Adopted Threshold Limit Values. In *Documentation of Threshold Limit Values and Biological Exposure Indices* (ACGIH, Ed.), pp. 30-31. ACGIH, Cincinnati.

6. American Industrial Hygiene Association (1989). Occupational Exposure and Work Practice Guidelines for Formaldehyde, pp. 1-30.

7. Baek, S. O., and Jenkins, R. A. (2004). Characterization of Trace Organic Compounds Associated with Aged and Diluted Sidestream Tobacco Smoke in a Controlled Atmosphere - Volatile Organic Compounds and Polycyclic Aromatic Hydrocarbons. *Atmospheric Environment* **38**(6583), 6599.

8. Barnes, P. J. (2008). Asthma. In *Harrison's Principles of Internal Medicine* (A.S.Fauci, E.Braunwald, D.L.Kasper, S.L.Hauser, D.L.Longo, J.L.Jameson, and J.Loscalzo, Eds.), 17th ed., pp. 1596-1607. McGraw-Hill Medical, New York.

9. Centers for Disease Control. (2008). Final Report on Formaldehyde Levels in FEMA-Supplied Travel Trailers, Park Models and Mobile Homes.

10. Centers for Disease Control and Prevention (2006). Mold prevention strategies and possible health effects in the aftermath of hurricanes and major floods. *Morbidity and Mortality Weekly* **55**(RR-8), 1-27.

11. Chew, G. L., Wilson, J., Rabito, F. A., Grimsley, F., Iqbal, S., Reponen, T., Muilenberg, M. L., Thorne, P. S., Dearborn, D. G., and Morley, R. L. (2006). Mold and Endotoxin

Robbi- CM00840



Levels in the Aftermath of Hurricane Katrina: A Pilot Project of Homes in New Orleans Undergoing Renovation. *Environ. Health Perspect.* **114**(12), 1883-1889.

12. Clarisse, B., Laurent, A. M., Seta, N., Le Mouellec, Y., El Hasnaoui, A., and Momas, I. (2003). Indoor Aldehydes: Measurement of Contamination Levels and Identification of Their Determinants in Paris Dwellings. *Environmental Research* **92**, 245-253.

13. Cummings, K. J., Cox-Ganser, J., Riggs, M. A., Edwards, N., Hobbs, G. R., and Kreiss, K. (2008). Health Effects of Exposure to Water-Damaged New Orleans Homes Six Months after Hurricanes Katrina and Rita. *Am J Public Health* **98**(5), 869-875.

14. Gallo, M. A. (2008). History and Scope of Toxicology. In *Casarett and Doull's Toxicology. The Basic Science of Poisons* (C.D.Klaassen, Ed.), 7th ed., pp. 3-10. McGraw Hill Medical, New York.

15. Gilbert, N. L., Guay, M., David, M. J., Judek, S., Chan, C. C., and Dales, R. E. (2005). Levels and Determinants of Formaldehyde, Acetaldehyde, and Acrolein in Residential Indoor Air in Prince Edward Island, Canada. *Environ Res* **99**(1), 11-17.

16. Grosjean, D. (1982). Formaldehyde and Other Carbonyls in Los Angeles Ambient Air. *Environ Sci Technol* **16**, 254-262.

17. Hanrahan, L. P., Anderson, H. A., Dally, K. A., Eckmann, A. D., and Kanarek, M. S. (1985). Formaldehyde Concentrations in Wisconsin Mobile Homes. *Journal of the Air Pollution Control Association* **35**(11), 1164-1167.

18. Hanrahan, L. P., Dally, K. A., Anderson, H. A., Kanarek, M. S., and Rankin, J. (1984). Formaldehyde Vapor in Mobile Homes - A Cross-Sectional Survey of Concentrations and Irritant Effects. *American Journal of Public Health* **74**(9), 1026-1027.

19. Hare, D. A. (1996). Evaluating the Contribution of UF-Bonded Building Materials to Indoor Formaldehyde Levels in a Newly Constructed House. Washington State University's 30th Annual Particleboard/Composite Materials Symposium. p. 93-108.

20. Hawthorne, A. R., Gammage, R. B., and Dudney, C. S. (1986). An Indoor Air Quality Study of 40 East Tennessee Homes. *Environment International* **12**, 221-239.

21. Hodgson, A. T., Rudd, A. F., Beal, D., and Chandra, S. (2000). Volatile Organic Compound Concentrations and Emission Rates in New Manufactured and Site-Built Houses. *Indoor Air* **10**(3), 178-192.

22. Holmstrom, M., Wilhelmsson, B., Hellquist, H., and Rosen, G. (1989). Histological Changes in the Nasal Mucosa in Persons Occupationally Exposed to Formaldehyde Alone and in Combination with Wood Dust. *Acta Otolaryngol.* **107**(1-2), 120-129.

23. Kinney, P. L., Chillrud, S. N., Ramstrom, S., Ross, J., and Spengler, J. D. (2002). Exposures to Multiple Air Toxics in New York City. *Environ Health Perspect.* **110 Suppl 4**, 539-546.



24. Lemus, R., Abdelghani, A. A., Akers, T. G., and Horner, W. E. (1998). Potential Health Risks From Exposure to Indoor Formaldehyde. *Rev. Environ Health* **13**(1-2), 91-98.

25. Lindstrom, A. B., Proffitt, D., and Fortune, C. R. (1995). Effects of Modified Residential Construction on Indoor Air Quality. *Indoor Air* **5**, 258-269.

26. Liteplo, R. G., and Meek, M. E. (2003). Inhaled Formaldehyde: Exposure Estimation, Hazard Characterization, and Exposure-Response Analysis. *Journal of Toxicology and Environmental Health, Part B* **6**(1), 85-114.

27. Lofroth, G., Burton, R. M., Forehand, L., Hammond, S. K., Sella, R. L., Zweldinger, R. B., and Lewtas, J. (1989). Characterization of Environmental Tobacco Smoke. *Environ Sci Technol* **23**(610), 614.

28. Marceaux, J. C., Dilks, L. S., and Hixson, S. (2008). Neuropsychological effects of formaldehyde use. *J. Psychoactive Drugs* **40**(2), 207-210.

29. Modesto-Lowe, V., and Petry, N. M. (2001). Recognizing and managing "illy" intoxication. *Psychiatric Services* **52**(12), 1660.

30. National Drug Intelligence Center. (2004). Fry Fast Facts. Johnstown, PA, NDIC.

31. National Institute for Occupational Safety and Health (2003). Formaldehyde: Method 2016, Issue 2. In *NIOSH Manual of Analytic Methods (NMAM)* 4th ed., pp. 1-7.

32. National Institute for Occupational Safety and Health. (2005). NIOSH Pocket Guide to Chemical Hazards - Formaldehyde. NIOSH Publication 2005-149. http://www.cdc.gov/niosh/npg/npgd0293.html.

33. Occupational Safety and Health Administration and U.S.Department of Labor. (2005). Sampling and Analytical Methods: Formaldehyde (Diffusive Samplers) - Method 1007. Methods Development Team and Industrial Hygiene Division. OSHA Website, accessed 5-12-2009.

34. Occupational Safety and Health Administration, U.S.Department of Labor (2008). Occupational Safety and Health Standards. Subpart Z. Toxic and Hazardous Substances. 1910.1048. Formaldehyde.

35. Park, J. S., and Ikeda, K. (2006). Variations of Formaldehyde and VOC Levels During 3 Years in New and Older Homes. *Indoor Air* **16**(2), 129-135.

36. Peters, R. J., Jr., Williams, M., Ross, M. W., Atkinson, J., and McCurdy, S. A. (2008). The use of fry (embalming fluid and PCP-laced cigarettes or marijuana sticks) among crack cocaine smokers. *J. Drug Educ.* **38**(3), 285-295.



Case 2:07-md-01873-KDE-MBN   Document 22460-11   Filed 08/18/11   Page 28 of 64

Charles Marshall v. Sun Valley, Inc. et al.          Page 28

37. Reponen, T., Seo, S. C., Grimsley, F., Lee, T., Crawford, C., and Grinshpun, S. A. (2007). Fungal Fragments in Moldy Houses: A Field Study in Homes in New Orleans and Southern Ohio. *Atmos. Environ* **41**(37), 8140-8149.

38. Ritchie, I. M., and Lehnen, R. G. (1985). An Analysis of Formaldehyde Concentrations in Mobile and Conventional Homes. *Journal of Environmental Health* **47**(6), 300-305.

39. Salas, L. J., and Singh, H. B. (1986). Measurements of Formaldehyde and Acetaldehyde in the Urban Ambient Air. *Atmospheric Environment* **20**(6), 1301-1304.

40. Sax, S. N., Bennett, D. H., Chillrud, S. N., Kinney, P. L., and Spengler, J. D. (2004). Differences in Source Emission Rates of Volatile Organic Compounds in Inner-City Residences of New York City and Los Angeles. *J Expo Anal. Environ Epidemiol.* **14 Suppl 1**, S95-109.

41. Sexton, K. (1989). Formaldehyde Exposures Inside Mobile Homes. *Environ Sci Technol* **23**(8), 985-988.

42. Sexton, K., Liu, K. S., and Petreas, M. X. (1986). Formaldehyde Concentrations Inside Private Residences - A Mail-Out Approach to Indoor Air Monitoring. *Journal of the Air Pollution Control Association* **36**(6), 698-704.

43. Shirtliffe, C. J., Rousseau, M. Z., and Young, J. C. (1985). Formaldehyde Measurements in Canadian Homes Using Passive Dosimeters. In *Formaldehyde. Analytical Chemistry and Toxicology* (V.Turovski, Ed.), pp. 161-192. American Chemical Society, Washington DC.

44. Singer, M., Clair, S., Schensul, J., Huebner, C., Eiserman, J., Pino, R., and Garcia, J. (2005). Dust in the wind: the growing use of embalming fluid among youth in Hartford, CT. *Subst Use. Misuse.* **40**(8), 1035-1050.

45. Singh, H. B., Salas, L. J., and Stiles, R. E. (1982). Distribution of Selected Gaseous Organic Mutagens and Suspect Carcinogens in Ambient Air. *Environ Sci Technol* **16**(1982), 872-880.

46. Sterling, T. D., Collett, C. W., and Sterling, E. M. (1987). Environmental Tobacco Smoke and Indoor Air Quality in Modern Office Work Environments. *J Occup Med* **29**(1), 57-62.

47. Stock, T. H. (1987). Formaldehyde Concentrations Inside Conventional Housing. *JAPCA.* **37**(8), 913-918.

48. Stock, T. H., and Mendez, S. R. (1985). A Survey of Typical Exposures to Formaldehyde in Houston Area Residences. *Am Ind. Hyg Assoc. J* **46**(6), 313-317.

49. Triebig, G., and Zober, M. A. (1984). Indoor Air Pollution by Smoke Constituents--a Survey. *Prev. Med* **13**(6), 570-581.

Case 2:07-md-01873-KDE-MBN  Document 22460-11  Filed 08/18/11  Page 29 of 64

Charles Marshall v. Sun Valley, Inc. et al.                                                                Page 29



50. U.S.Consumer Product Safety Commission. (2009a). Executive Summary of November 23, 2009 Release. Bethesda MD, U.S. Consumer Products Safety Commission.

51. U.S.Consumer Product Safety Commission. (2009b). Interagency Task Force on Chinese Drywall. Executive Summary of October 29, 2009 Release of Initial Chinese Drywall Studies.

52. U.S.Consumer Product Safety Commission. (2009c).Summary of Contractor's Indoor Air Quality Assessment of Homes Containing Chinese Drywall.  Bethesda MD, U.S. Consumer Products Safety Commission.

53. U.S.Dept.of Housing and Urban Development, and Office of the Assistant Secretary for Housing - Federal Housing Commissioner (1984). Manufactured Home Construction Safety Standards: Proposed Revisions to 24 CFR Part 3280. *Federal Register* **49**(155), 31996-32013.

54. U.S.Environmental Protection Agency. (2011). Asthma Triggers: Gain Control. Secondhand Smoke.  Retrieved 7-5-2011.

55. Weisel, C. P., Zhang, J., Turpin, B. J., Morandi, M. T., Colome, S., Stock, T. H., Spektor, D. M., Korn, L., Winer, A. M., Kwon, J., Meng, Q. Y., Zhang, L., Harrington, R., Liu, W., Reff, A., Lee, J. H., Alimokhtari, S., Mohan, K., Shendell, D., Jones, J., Farrar, L., Maberti, S., and Fan, T. Relationships of Indoor, Outdoor, and Personal Air (RIOPA). Part I. Collection Methods and Descriptive Analyses. Res Rep.Health Eff.Inst 7(130 Pt 1), 1-107. 2005. Boston, MA, Health Effects Institute.

56. Zenz, C. (1994). Occupational Medicine, Mosby-Year Book, Inc, St. Louis, MO.

57. Zhang, J., He, Q., and Lloy, P. J. (1994). Characteristics of Aldehydes: Concentrations, Sources and Exposures for Indoor and Outdoor Residential Microenvironments. *Environmental Science & Technology* **28**, 146-152.



Appendix A – Materials Received for Review

Robbi- CM00845



## Materials Received for Review
### *In Re: FEMA Trailer Formaldehyde Liability Litigation*

**Marshall v. Sun Valley**
- Defendants' Requests for Admissions, Interrogatories and Requests for Production of Documents [Robbi-CM00185 – 00195]
- Plaintiff, Charles Marshall Answers to Defendants' Request for Admissions [Robbi-CM00196 – 00197]
- Plaintiff, Charles Marshall's Responses to Defendants' Request for Production [Robbi-CM00198 – 00215]
- Plaintiff, Charles Marshall's Responses to Defendants' Request for Interrogatories [Robbi-CM00216 – 00228]
- Plaintiff, Charles Marshall's Supplemental Responses to Interrogatories [Robbi-CM00229 – 00230]
- Defendants' Second Set of Request for Production of Documents [Robbi-CM00231 – 00232]
- Plaintiff, Charles Marshall's Responses to Defendants' Second Request for Production [Robbi-CM00233]
- Defendant CH2M Hill Constructors, Inc.'s First Set of Interrogatories to Plaintiff Charles Marshall [Robbi-CM00238 – 00247]
- Plaintiff, Charles Marshall's Responses to CH2M Hill Constructors, Inc.'s First Set of Interrogatories [Robbi-CM00248 – 00249]
- Plaintiff Fact Sheet for Charles Marshall [Robbi-CM00250 – 00267]
- Plaintiff's Expert Reports with Exhibit A: Report of Lawrence G. Miller, MD, MPH in the matter of Charles Marshall, 6/15/11
- Deposition of Charles Marshall, 1/5/11 [Robbi-CM00001 – 00126]
- Deposition of Patricia Blazio, 3/23/11 [Robbi-CM00284 – 00344]
- Deposition of Vipul Parikh, MD, 2/17/11 [Robbi-CM00127 – 00142]
- Deposition of Dr. Douglas Koppel, 3/22/11 [Robbi-CM00143 – 00156]
- Deposition of Dr. Tracy Conrad, 3/23/11 [Robbi-CM00157 – 00176]
- Deposition of John Pearson, MD, 4/22/11 [Robbi-CM00177 – 00184]
- Medical Records from Dr. Koppel [Robbi-CM00345 – 00390]
- Medical Records from LSU/University Hospital [Robbi-CM00391 – 00449]
- Medical Records from Northside Hospital [Robbi-CM00450 – 00488]
- Medical Records from Tulane University Hospital& Clinic (Dr Conrad & Dr. Parikh) [Robbi-CM00489 – 00763]
- Medical Records from West Jefferson Medical Center [Robbi-CM00764 – 00785]
- Pharmacy Records from C's Discount Pharmacy [Robbi-CM00786 – 00790]
- Pharmacy Records from Castellon Pharmacy [Robbi-CM00791 – 00797]
- Pharmacy Records from Walgreens [Robbi-CM00798 – 00812]
- Photographs of Charles Marshall's Trailer [Robbi-CM00268 – 00283]
- Letter from Brent Maggio (representing Sun Valley) to Shari Wright (representing Charles Marshall), 3/25/11 and response dated 4/15/11

Robbi- CM00846

1



## Andrews v. Sun Valley
- Plaintiff Fact Sheet on Sonya Andrews [Robbi-SA 00105-00132]
- Plaintiff, Sonya Andrews Answer to Defendants' Request for Admissions [Robbi-SA 00133]
- Plaintiff, Sonya Andrews Responses to Defendants' Request for Interrogatories [Robbi-SA 00134-00146]
- Plaintiff, Sonya Andrews Responses to Defendants' Request for Production [Robbi-SA 00147-00161]
- Deposition of Sonya P. Andrews, 1/6/11 [Robbi-SA 00001-00103]
- Deposition of Brandon Andrews, 3/22/11 [Robbi-SA 00290-00302]
- Deposition of Andrew Keys, 3/22/11 [Robbi-SA 00303-00326]
- Deposition of Dr. Mehdi Mosadegh, 4/14/11 [Robbi-SA 00190- 00215]
  - Exhibit 2: Medical Records from LSU Health Systems [Robbi-SA 00216-00253]
- Deposition of Dr. Michael Kolinsky, 4/14/11 [Robbi-SA 00254-00275]
  - Exhibit 2: Medical Records from Tulane Medical Center [Robbi-SA 00276-00289]
- Google Map Photograph of 38205 Derogers Lane (Andrews Exhibit 3) [Robbi-SA00104]
- Temporary Housing Unit Inspection Report for Sonya Andrews, 5/15/09 [Robbi-SA 00162, FEMA212-015273]
- Flour Haul/Install File Re: Sonya Andrews' Trailer [Robbi-SA00163-189]

## Batiste v. Sun Valley
- Plaintiff Fact Sheet for Demetriace Batiste [Robbi-LB 00085-00114]
- Plaintiff, Demetriace Batiste Responses to Defendants' Request for Interrogatories [Robbi-LB 00116-00127]
- Plaintiff, Demetriace Batiste Responses to Defendants' Request for Production [Robbi-LB 00128-00132]
- Plaintiff, Demetriace Batiste Answers to Defendants' Request for Admissions [Robbi-LB 00133]
- Plaintiff, Demetriace Batiste Responses to Defendants' Request for Interrogatories [Robbi-LB 00134-00146]
- Deposition of Demetriace Laura Batiste, 1/7/11 [Robbi-LD 00001-00083]
- Deposition of Dr. Bertrand Tillery, 4/13/11 [Robbi-LB 00147-00156]
- Deposition of Dr. Abida Butler, 4/18/11 [Robbi-LB 00157-00171]
- Deposition of Dr. Lloyd Gueringer, 4/19/11 [Robbi-LB 00172-00183]
- Deposition of Albert I. Tydings, MD, 3/29/11 [Robbi-LD 00456-00471]
- Medical Records from Louisiana Heart Hospital [Robbi-LB 00184-00455]
- Medical Records from Lakeview Regional Medical Center [Robbi-LB 00472-00743]
- Medical Records from Dr. Albert Tydings [Robbi-LB 00744-00786]
- Google Map Photograph of 27668 W. Orleans St, 1/3/11 [Robbi-LD00084]
- Temporary Housing Unit Inspection Report for Treyna Batiste, 11/3/08 [FEMA121-014424] [Robbi-LB 00115]

## Sun Valley Background Materials in FEMA Formaldehyde Liability Litigation
- Deposition of Mark Romanetz (Corporate Representative of Sun Valley, Inc.), 3/16/11 [SV-Robb-00005 – 00071]

Robbi- CM00847



- Deposition of Daniel M. Morrison (Corporate Representative of Sun Valley, Inc.), 3/17/11 [SV-Robb-00072 – 00096]
- Deposition of Tommie E. Sanford, 3/17/11 and exhibit 1 [SV-Robb-00097 – 00120]
- Deposition of Doreen Staines, 3/17/11 [SV-Robb-00121 – 00140]
- FEMA-BVN Documents Received 2/2/09 [FEMA120-000001-01084]  [SV-Robb-00001]
- PSC Testing Database and Backup Documentation, 5/19/09 [PSC006169 – PSC021467] [SV-Robb-00002]
- PSC Testing Database, 8/5/09 [PSC006169 – PSC021466, PSC026037]  [SV-Robb-00003]
- Document Production from Marco Kaltofen Plaintiff's Test Results Through 4/9/08 [SV-Robb-00004]
- Color Photographs of Sun Valley trailer [SV-Robb-00141 – 000152]

**Dr. Robbins' Reports**
- Expert Report by Coreen Robbins, PhD, CIH, in the matter of Porter v. Gulf Stream Coach, Inc., et al., 6/4/10
- Expert Report by Coreen Robbins, PhD, CIH, in the matter of Charles v. Gulf Stream Coach, Inc., et al., 6/4/10
- Expert Report by Coreen Robbins, PhD, CIH, in the matter of Lewis v. Gulf Stream Coach, Inc., et al., 6/4/10
- Expert Report by Coreen Robbins, PhD, CIH, in the matter of David McGraw v. Keystone, Inc., et al., 5/3/10
- Expert Report by Coreen Robbins, PhD, CIH, in the matter of Lyndon Wright v. Forest River, Inc., et al., 11/2/09
- Expert Report by Coreen Robbins, PhD, CIH, in the matter of Elisha Dubuclet OBO Timia Dubuclet v. Fleetwood, Fluor Enterprises, Inc., et al., 8/21/09
- Expert Report by Coreen Robbins, PhD, CIH, in the matter of Charlie Age, et al. (Alana Alexander and Christopher Cooper) v. Gulf Stream Coach, et al., No. 09-2892, 6/19/09

**Background Materials for Bellwether Trials**
- Federal Rules of Civil Procedure 26(2)
- FEMA Bellwether Trials – Master Schedule, 4/8/09
- Pretrial Order No. 34
- Bellwether Trial Plaintiffs PFS Symptoms Summary
- Complaint for Damages in *Age v. Gulf Stream, et al* (Alexander Complaint)
- Trial 1 Scheduling Order
- Plaintiff Fact Sheet for Alana Alexander
- Plaintiff Fact Sheet for Christopher Cooper
- Alana Alexander Form 95
- Alana Alexander Denial Letter, 4/7/09
- Christopher Cooper Form 95
- Christopher Cooper Denial Letter, 4/7/09

**Background Materials**

Robbi- CM00848

3



- CDC Summary of Lawrence Berkeley National Laboratory Interim VOC Report, 6/26/08 (PSC 002113 – 2114)
- Maddalena, R., et al (Lawrence Berkeley National Laboratory) Interim Report: VOS and Aldehyde Emission in Four FEMA Temporary Housing Units, 5/8/08 (PSC 002115 – 2166)
- Lando, Jim (CDC), Formaldehyde levels in Occupied FEMA-supplied Temporary Housing Units (THUs) in LA and MS, Winter 2007-2008 (PSC 002167 – 2181)
- CDC, Interim Findings on Formaldehyde Levels in FEMA-Supplied Travel Trailers, Park Models and Mobile Homes, 2/29/08 (PSC 002182 – 2202)
- CDC, Final Report on Formaldehyde Levels in FEMA-Supplied Travel Trailers, Park Models, and Mobile Homes, 7/2/08 (CDC 000208 – 268)
- ATSDR, Health Consultation, Formaldehyde Sampling at FEMA Temporary Housing Units, Baton Rouge, LA, 2/1/07 (PSC 002264 – 2277)
- ATSDR, An Update and Revision of ATSDR's February 2007 Health Consultation: Formaldehyde Sampling at FEMA Temporary-Housing Units, Baton Rouge, LA September-October, 2006, October 2007. (PSC 002278 – 2318)
- Material Safety Data Sheets (PSC 003069 – 3090)
- EPA, Basic Information on Formaldehyde, 11/14/07 (PSC 003214 – 3217)
- EPA, An Introduction to Air Quality, Formaldehyde, 10/9/08 (EPA 000001 – 4)
- HUD Rules and Regulations re: Formaldehyde (49 FR 31966), 8/9/84 HUD 000001 – 48)
- CDC/FEMA, Formaldehyde Exposure in Homes: A Reference for State Officials to Use in Decision-making, March 2008 (CDC 000269 – 274)
- CPSC, An Update on Formaldehyde, 1997 Revision. (CPSC 000001 – 12)
- FEMA, Important Information for Travel Trailer Occupants. (FEMA08 0000013 – 15)
- FEMA, FEMA's Ongoing Response to Formaldehyde, 2/12/08 (FEMA10 000209 – 211)
- CDC/FEMA, Formaldehyde Levels in FEMA-Supplied Trailers, Early Findings from the Centers for Disease Control and Prevention. (FEMA08 000011 – 12)

**Plaintiffs' Expert Reports from Class Certification**
- Affidavit of Lee E. Branscome, and David P Barnes, Jr., Climatology of Air Temperature and Humidity for Alabama, Mississippi, Louisiana and Texas for September 1, 2005 through June 30 2008, 8/21/08 (PSC 002352 - 2385)
- Affidavit of Mary DeVany, MS, CSP, CHMM, Air Sampling Results Pertaining to Airborne Formaldehyde in FEMA-Supplied Temporary Housing Units, 8/08 (PSC 002386 – 2418)
- Affidavit of Paul Hewett, PhD, CIH, Estimation of Sample Sizes for the FEMA Temporary Housing Unit Study, 8/20/08 (PSC 002419 – 2446)
- Affidavit of Marco Kaltofen, PE, 8/20/08 (PSC 002447 – 2466)
- Affidavit of Gerald McGwin, Jr., MS, PhD, Expert Opinion of the Epidemiologic Evidence Regarding the Health Effects Associated with Exposure to Formaldehyde, 8/20/08 (PSC 002467 – 2511)
- Affidavit of Harry Milman, PhD, Expert Opinion on the Toxic and Carcinogenic Effects of Exposure to Formaldehyde in FEMA-Supplied Housing Units in the Gulf Coast, 8/21/08 (PSC 002512 – 2540)



- Affidavit of Stephen Mullet, Expert Opinion on the Manufacturing of Travel Trailers, 8/20/08. (PSC 002541 – 2555)
- Affidavit of Kenneth Paris, MD, MPH, 8/20/08 PSC 002556 – 2568)
- Supplemental Affidavit of Kenneth Paris, MD, MPH, 11/15/08 (PSC 002569 – 2571)
- Affidavit of Expert Report by Judd Shellito, MD, 8/18/08 (PSC 002572 – 2612)
- Affidavit of Stephen Smulski, PhD, 8/20/08. (PSC002613 – 2629)
- Affidavit of William Stein, III, MD, Medical Expert Opinion of the Toxic and Oncologic Effects of Exposure to Formaldehyde in FEMA-Supplied Housing Units on the Gulf Coast Following Hurricanes Katrina and Rita and Recommendations for Medical Surveillance, 8/20/08 (PSC 002630 – 2648)
- Affidavit of Patricia M. Williams, PhD, DABT, 8/21/08. (PSC 002649 – 2682)

**Manufacturers' Expert Reports from Class Certification**
- Affidavit of Philip Cole, MD, DrPH, Formaldehyde and Cancer: A Review of the Epidemiologic Evidence, 9/16/08 (D-CLASS-221 0001 – 0033)
- Affidavit of W. Brooks Emory, MD (D-CLASS-222 0001 – 0010)
- Affidavit of Thomas W. Fribley (D-CLASS-223 0001 – 0015)
- Affidavit of Michael E. Ginevan (D-CLASS-224 0001 – 0027)
- Affidavit of Robert Golden, PhD (D-CLASS-226 0001 – 0051)
- Affidavit of William J. Waddell, MD (D-CLASS-227 0001 – 0030)
- Affidavit of H. James Wedner, MD (D-CLASS-228 0001 – 0027)
- Affidavit of Michael L. Zieman, PE (D-CLASS-229 0001 – 0020)

**Sampling Background Documents**
- DeVany Industrial Consultants, Formaldehyde Sampling: Active and Passive Sampling Protocols, Procedures for Evaluating Formaldehyde Levels in FEMA Temporary Housing Units, 3/08 (PSC 003220 – 3348)
- PSC Testing Database [Interim Database Summary Report Sorted by Manufacturer and Formaldehyde Concentration Levels as of 11-21-2008] (PSC 003349 – 3393)
- Alexander Test Data [from Interim Database Summary Report Sorted by Manufacturer and Formaldehyde Concentration Levels as of 11-21-2008] (PSC 003373)
- PSC Testing Database Graph [titled Cumulative Distribution – PPM Formaldehyde vs. Trailer Number] (PSC 003394)
- Bonner Analytical Testing Company, Case Narrative An Evaluation of Formaldehyde Concentration in the Carlton and Dawn Sistrunk FEMA Trailer, 8/6/06 (PSC 003400 – 3406)
- Weston Solutions, Inc. START-3 contractor involvement in the Formaldehyde Sampling at FEMA Temporary Housing Units (PSC 003407 – 3409)
- @Air Toxics, Ltd, Laboratory Narrative for Weston Solutions, Inc. (PSC 003410 – 3415)
- FEMA Test Results at Staging Areas (PSC 003416 – 3420)
- FEMA Memo from Bronson Brown to Jesse Crowley, Formaldehyde Air Sampling, FEMA Trailer Staging Area, Purvis, Mississippi, 5/31/06 (PSC 003421-3438)
- CDC Data Set [Data Dictionary for FEMA Trailer Formaldehyde Study] (D-CLASS-254 0001 – 0016)
- DeVany Test Result Dataset (D-CLASS-258 0001-0006)                    Robbi- CM00850



- D'Amico Test Result Dataset (D-CLASS-259 0001 – 0002)
- FEMA Memo from Bronson Brown to Jess Crowley, Formaldehyde Statistics, Formaldehyde Air Sampling, FEMA Trailer Staging Area, Purvis, Mississippi, 5/31/06 (REMA 10-000163 – 164)
- OSHA Data (FEMA 09-000081 – 85)
- Sierra Club Information: (FEMA 123-000001 – 15)
  - o Memo from Becky Gillette, Sierra Club to Dave Garrett, FEMA, 6/13/06
  - o Formaldehyde testing results for Sierra Club April-May 2006
  - o Article "FEMA won't test air in trailers despite report of formaldehyde," Sun Sentinel, 5/19/06
  - o Sierra Club, Toxic Trailers? Tests Reveal High Formaldehyde in FEMA Trailers.
  - o Mary DeVany, Formaldehyde in FEMA trailers can be reduced by "baking off"
  - o News articles, May – June 2006
- OSHA, 2005 Gulf-Coast Hurricane Response, OSHA Gas and Vapor Monitoring Data (OSHA 00001 – 64)
- Data Dictionary for FEMA Trailer Formaldehyde Study SAS Dataset, 7/21/08

**Plaintiff Expert Depositions in Products Liability Litigation:**
- Deposition of Mary C. DeVany, MS, CSP, CHMM, 10/7/08
- Deposition of Marco Kaltofen, 10/8/08

**Mary DeVany Expert File:**
- CD's labeled: "Mary DeVany Expert Documents 5/19 – 5/27"; "Mary DeVany Expert Documents 5/27 – 6/4"; "Mary DeVany Expert Documents 6/17 – 7/7"; "Mary DeVany Expert Documents 7/7 – 7/23"; "Mary DeVany Expert Documents 7/23 – 8/4"; "Mary DeVany Expert Documents 8/4 – 8/8"; "Mary DeVany Expert Documents 8/8 – 8/14"; "Mary DeVany Expert Documents 8/15 – 8/23"; "Mary DeVany Expert Documents 8/26 – 8/28"; "Mary DeVany Expert Documents Produced 10-30-08"; "Mary DeVany Expert Documents Produced 10-3-08"

**Alexander v. Gulfstream:**
- WD Scott Group, Gulf Stream Bellwether Test Results, 1/29/08
- Letter from Gerald Meunier and Justin Woods (Plaintiffs' Steering Committee) to Henry Miller and Adam Dinnell (US DoJ) re: Testing protocol for Alexander/Cooper trailer, 4/23/09
- Letter from Mikal Watts (Plaintiffs' Steering Committee) to Henry Miller and Adam Dinnell (US DoJ) re: Clarifying testing protocol for Alexander/Cooper trailer.
- Affidavit of Marco Kaltofen, PE, 5/11/09
- Declaration of Clyde Payne of OSHA (US Exhibit No. 4 from Defendant USA's Motion to Dismiss Plaintiffs'' Remaining FTCA Claims for Lack of Subject Matter Jurisdiction)
- Declaration of Bronson Brown of FEMA(US Exhibit No. 4 from Defendant USA's Motion to Dismiss Plaintiffs'' Remaining FTCA Claims for Lack of Subject Matter Jurisdiction)
- Videotaped Deposition of Marco Kaltofen, 6/16/09 (No exhibits provided)
- Rough Draft Transcript of Deposition of William Scott, 6/11/09

Robbi- CM00851



- Videotaped Deposition of William D. Scott, 6/11/09 (No exhibits provided)
- Oral and Videotaped Deposition of Paul Hewett, PhD, 7/10/09 (Exhibits not provided)
- Videotaped Deposition of Mary C. DeVany, 7/31/09
- Exhibits 1 – 5, 12 – 14 and 16 for Videotaped Deposition of Mary C. DeVany, 7/31/09
- Transcript of Jury Trial Proceedings for Patricia Williams, 9/15/09
- Transcript of Jury Trial Proceedings for Paul Hewett, 9/18/09
- Transcript of Jury Trial Proceedings for Marco Kaltofen, 9/18/09
- Memorandum in Support of Gulf Stream Coach, Inc.'s Motion *In Limine* to Exclude Expert Testimony of William D. Scott
- Memorandum in Support of Gulf Stream Coach, Inc.'s Motion *In Limine* to Exclude Expert Testimony of Paul Hewett, PhD
- Report by Coreen Robbins, PhD, CIH, in the matter of Charlie Age, et al. (Alana Alexander and Christopher Cooper) v. Gulf Stream Coach, Inc., et al., No. 09-2982, 6/19/09

**Alexander v. Gulfstream Plaintiff Expert Reports:**
- Plaintiffs Alana Alexander's and Christopher Cooper's Designation of Expert Witnesses
- Narrative Report by Janet Duncan Barnes, MD, MBA re: Christopher Cooper, 5/15/09 (ALX-EXP-4-00001 – 4)
- CV of Janet Barnes (ALX-EXP-1-000001 – 2)
- Report by Lee Branscome, PhD, Weather Condition in Punta Gora, FL and New Orleans, LA for the Trailer Occupied by the Alexander Family, 5/18/09 (ALX-EXP-8-000001 – 21)
- CV, Fee Schedule, Testimony List of Lee Branscome (ALX-EXP-5-000001 – 4, ALX-EXP-6-000001, ALX-EXP-7-000001 – 5)
- Branscome, New Orleans Weather Data from 5/1/06 to 5/7/09
- Branscome, Punta Gorda Weather Data from 12/13/04 to 5/1/06
- Affidavit of Gary Bunzer, Expert Opinion Regarding the Set-up, Maintenance and Repair of Recreation Vehicles (RVs), 5/15/09 (ALX-EXP-12-000001 – 42)
- CV, Fee Schedule, Testimony List of Gary Bunzer (ALX-EXP-9-000001 – 2, ALX-EXP-10-000001, ALX-EXP-11-000001)
- Affidavit of Mary C. DeVany, Overview of the Formaldehyde Exposure to Christopher Cooper and Alan Alexander in Their FEMA-Issued Gulfstream Cavalier, 5/19/09 (ALX-EXP-16-000001 – 34)
- CV, Fee Schedule, Testimony List of Mary DeVany (ALX-EXP-13-000001 – 8, ALX-EXP-14-000001 – 3, ALX-EXP-15-000001)
- Affidavit of Paul Hewett, PhD, CIH, Analysis of the Gulf Stream Coach Inc. Formaldehyde Exposure Dataset, 5/18/09 (ALX-EXP-20-000001 – 20)
- CV, Fee Schedule, Testimony List of Paul Hewett (ALX-EXP-17-000001 – 4, ALX-EPX-18-000001, ALX-EPX-19-000001)
- Reagan Johnson, (C4 Animation), 5/14/09 (ALX-EXP-24-000001 – 23)
- CV, Testimony List of Reagan Johnson (ALX-EXP-21-000001 – 10, ALX-EXP-23-000001)
- Affidavit of Marco Kaltofen, PE, 5/19/09 (ALX-EXP-28-000001 – 17)

Robbi- CM00852



- CV, Testimony List of Marco Kaltofen (ALX-EXP-24-000001 – 9, ALX-EXP-27-000001 – 2)
- Spreadsheet labeled "Kaltofen-DatabaseRecords051809"
- Affidavit of James P. Kornberg, MD, ScD, Environmental Medical Causation Report Including Consideration for the Necessity and Cost of Medical monitoring and Early Cancer Detection, Christopher James Cooper, 5/19/09 (ALX-EXP-32-000001 – 48)
- CV, Fee Schedule, Testimony List of James Kornberg (ALX-29-000001 – 12, ALX-EXP-30-000001, ALX-EXP-31-000001)
- Paul LaGrange (LaGrange Consulting), Inspection Report, 5/7/09 (ALX-EXP-36-000001 – 17)
- CV, Fee Schedule, Testimony List of Paul LaGrange (ALX-EXP-33-000001 – 4, ALX-EXP-34-000001, ALX-EXP-35-000001)
- Report by Lila F. Laux, PhD, 5/11/09 (ALX-EXP-40-000001 – 12)
- CV, Testimony List of Lila Laux (ALX-EXP-37-0000018, ALX-EXP-39-000001)
- Affidavit of Alexis Mallet, Jr. (First General Services of the South, Inc.), 5/19/09 (ALX-EXP-44-000001 – 102)
- Photos dated 5/6/09 & 5/7/09
- CV, Fee Schedule, Testimony List of Alexis Mallet (ALX-EXP-41-000001 – 8, ALX-EXP-42-000001 – 2, ALX-EXP-43-000001 – 3)
- Report by Thomas H. Mayor, PhD, 5/18/09 (ALX-EXP-82-000001 – 8)
- CV, Testimony List of Thomas Mayer (ALX-EXP-79-000001 – 3, ALX-EXP-81-00001 – 12)
- Report by Gerald McGwin, Jr., MS, PhD, Formaldehyde exposure and Asthma in Children: A Systemic Review, 5/18/09 (ALX-EXP-48-000001 – 6)
- Affidavit of Gerald McGwin, Jr., MS, PhD, Expert Opinion on the Epidemiologic Evidence Regarding the Health Effects Associated with Exposure to Formaldehyde, 8/20/08 (ALX-EXP-83-000001 – 45)
- CV, Fee Schedule, Testimony List of Gerald McGwin (ALX-EXP-45-000001 – 35, ALX-EXP-46-000001, ALX-EXP-47-000001 – 2)
- Report by Charles David Moore, PE, PLS, Structural Condition Assessment for FEMA Travel Trailer, Lottie Louisiana, 5/15/09 (ALX-EXP-52-000001 – 7)
- CV, Fee Schedule, Testimony List of Charles David Moore (ALX-EXP-49-000001 – 3, ALX-EXP-50-000001, ALX-EXP-51-000001 – 3)
- Medical Report by Karin Pacheco, MD, MSPH re: Christopher Cooper, 5/18/09 (ALX-EXP-56-000001 – 9)
- CV, Fee Schedule, Testimony List of Karin Pacheco (ALX-EXP-53-000001 – 3, ALX-EXP-54-000001, ALX-EXP-55-000001)
- Report by Ervin L Ritter, Investigation of FEMA Travel Trailer No. 1041407, 5/15/09 (ALX-EXP-60-000001 – 38)
- CV, Fee Schedule, Testimony list of Ervin Ritter (ALX-EXP-57-000001 – 3, ALX-EXP-58-000001, ALX-EXP-59-000001)
- Affidavit of William D. Scott, PE, CHMM, 5/18/09 (ALX-EXP-64-000001 – 50)
- CV, Fee Schedule, Testimony List of William Scott (ALX-EXP-61-000001 – 5, ALX-EXP-62-000001 – 2, ALX-EXP-63-000001 – 7)



- Psychological Examination of Alana Alexander by Edward Halie Shwery, PhD, 5/18/09 (ALX-EXP-78-000001 – 3)
- Psychological Examination of Christopher Cooper by Edward Halie Shwery, PhD, 5/4/09 (ALX-EXP-68-000002 – 7)
- Psychological Examination of Erika Alexander by Edward Halie Shwery, PhD, 5/4/09 (ALX-EXP-69-000002 – 7)
- CV, Fee Schedule, Testimony List of Edward Halie Shwery (ALX-EXP-65-000001 – 16, ALX-EXP-66-000001, ALX-EXP-67-000001 – 6)
- Affidavit of Stephen Smulski, PhD, 5/18/09 (ALX-EXP-73-000001 – 11)
- CV, Fee Schedule, Testimony List of Stephen Smulski (ALX-EXP-70-000001 – 10, ALX-EXP-71-000001, ALX-EXP-72-000001 – 2)
- Affidavit of Patricia Williams, PhD, DABT in the Trial of Alana Alexander and Christopher Cooper, 5/18/09 (ALX-EXP-77-000001 – 42)
- CV, Fee Schedule, Testimony List of Patricia Williams (ALX-EXP-74-000001 – 31, ALX-EXP-75-000001, ALX-EXP-76-000001 – 2)

**Alexander Gulfstream Bellwether Photos:**
- Photos of Alexander Gulf Stream (undated) (DLC_A.Alexander-000001-74)
- Photos of Alexander Gulf Stream (undated) (FL_A.Alexander-000001-83)
- Photos of Alexander Gulf Stream (undated) (PL_A.Alexander-000001-333)
- Photos of Alexander Residence (undated) (PL_A.Alexander-000334-349)
- Photo of Alexander Gulf Stream (undated; printed) (PL_A.Alexander-000350)
- Photos of Alexander Residence (undated) (CDOJ_A.Alexander-000001-31)

**Dubuclet v. Fleetwood**
- Plaintiff's' Original Complaint
- Pretrial Order #1
- Plaintiffs' First Supplemental and Amending Complaint
- Plaintiff Fact Sheet: Elisha Dubuclet O/B/O Timia Dubuclet
- Plaintiff Elisha Dubuclet on Behalf of her Minor Child, Timia Dubuclet's Designation of Expert Witnesses
- Deposition (Class Certification) of Elisha A. Dubuclet, 9/17/08
- Photographs/photograph log, inspection of Dubuclet housing unit 8/7/09
- Report by Coreen Robbins, PhD, CIH, in the matter of Elisha Dubuclet OBO Timia Dubuclet v. Fleetwood, Fluor Enterprises, Inc., et al., 8/21/09

**Dubuclet v. Fleetwood Plaintiff Expert Reports**
- Report by Lee Branscome, PhD, Weather Conditions in New Orleans and Lottie, LA, for the Trailer Occupied by the Dubuclet Family, 7/9/09 (DUB000254 – 271)
- CV, Fee Schedule, Publication and Testimony List for Lee Branscome (PSC025205 – 25214)
- Affidavit of Mary C. DeVany, 7/17/09 (DUB000603 – 644)
- CV, Fee Schedule and Testimony List for Mary DeVany (PSC025215 – 25221)
- Affidavit of George A. Farber, MD, 7/17/09 (DUB001138 – 1171)
- CV for George Farber, MD (PSC025222 – 25264)

Robbi- CM00854



- Affidavit of Paul Hewett, PhD, Analysis of the Fleetwood Formaldehyde Dataset, 7/16/09 (DUB000544 – 566)
- CV, Fee Schedule and Testimony List for Paul Hewett (PSC025265 – 25269)
- Affidavit of Marco Kaltofen, PE, 7/17/09 (DUB000567 – 587)
- CV, Fee Schedule and Testimony List for Marco Kaltofen (PSC025270 – 25281)
- Report by Kenneth Laughery, PhD, 7/15/09 (DUB000588 – 595)
- CV and Testimony List for Kenneth Laughery (PSC025282 – 25313)
- Report by Alexis Mallet, Jr., 7/17/09 (DUB000683 – 1120)
- CV, Fee Schedule and Testimony List for Alexis Mallet (PSC025314 – 25326)
- Affidavit of Lawrence Miller, MD, MPH, 7/13/09 (DUB000596 – 602)
- CV, Fee Schedule and Testimony List for Lawrence Miller (PSC025327 – 25345)
- Report by Charles David Moore, PE, PLS, 7/16/09 (DUB001121 – 1128)
- CV and Fee Schedule for Charles David Moore (PSC024346 – 25349)
- Report by Ervin Ritter, PE, 7/16/09 (DUB001395 – 2133)
- CV, Fee Schedule and Testimony List for Ervin Ritter (PSC025350 – 25354)
- Affidavit of William D. Scott, PE, CHMM, 7/17/09 (DUB000645 – 682)
- CV, Fee Schedule and Testimony List for William D. Scott (PSC025355 – 25368)
- Report by Edward H. Shwery, PhD, 7/17/09 (DUB001129 – 1137)
- CV, Fee Schedule and Testimony List for Edward Shwery (PSC025369 – 25391)
- Affidavit of Stephen Smulski, PhD, 7/10/09 (DUB000274 – 284)
- CV, Fee Schedule and Testimony List for Stephen Smulski (PSC025392 – 25406)
- Affidavit of Patricia Williams, PhD, DABT, 7/9/09 (DUB000206 – 253)
- CV, Fee Schedule and Testimony List of Patricia Williams (PSC025407 – 25440)

**Wright v. Forest River:**
- Complaint for Damages in *Wright v. Forest River, Inc, et al*
- Trial III Scheduling Order
- Plaintiff Fact Sheet: Lyndon T. Wright
- Plaintiff Lyndon Wright's Designation of Expert Witnesses
- Plaintiff Lyndon Wright's Supplemental Designation of Expert Witnesses
- Deposition of Lyndon Wright, 7/10/09 with Exhibits 1 – 13
- Veritox®, Inc. inspection photos and field notes for 8/7/09 and 8/31/09-9/1/09
- Inspection photos and notes from 8/7/09 site visit of Wright trailer by Bruce Kelman, Ph.D, D.A.B.T., A.T.S
- Expert Report of Coreen Robbins, PhD, CIH in the matter of Lyndon Wright v. Forest River, Inc., *et al.*, 11/2/09
- Supplemental Report of Coreen Robbins, PhD, CIH in the matter of Lyndon Wright v. Forest River, Inc., *et al.*, 11/25/09
- Expert Report of Bruce Kelman, Ph.D., D.A.B.T., A.T.S. in the matter of Wright, *et al.* v. Forest River, *et al*, 11/2/09
- William Scott Reliance Materials (LWFR-EXP-11-000136 – 002131)
- Notice of Oral and Videotaped Deposition of Coreen A. Robbins, MHS, PhD
- Transcript of the Testimony of Videotaped Deposition of Paul Hewett, PhD, CIH, 10/3/08



- Transcript of the Testimony of Videotaped Deposition of Paul Hewett, PhD, CIH, 12/2/09 in the matter of FEMA Trailer Formaldehyde Product Liability Litigation (Wright)
- Deposition of Coreen A. Robbins in the matter of Alexander v. Gulfstream, *et al.*, 7/22/09

**Wright v. Forest River Plaintiff Expert Reports:**
- Report by Lee Branscome, PhD, Weather Conditions in New Orleans and Melville, LA, for the Trailer Occupied by Lyndon Wright, 7/9/09 (LWFR-EXP 1-000001 – 18)
- CV, Fee Schedule, Publication and Testimony List for Lee Branscome (PSC025205 – 25214)
- Branscome, New Orleans, LA Weather Data (LWFR-EXP-1-000019 – 98)
- Branscome, Melville, LA, Weather Data (LWFR-EXP-1-000099 – 122)
- Affidavit of George A. Farber, MD, 7/28/09 (LWFR-EXP-2-000001 – 6)
- Supplemental Affidavit of George A. Farber, MD, 10/2/09 (LWFR-EXP-2-000007 – 20)
- CV for George Farber, MD (PSC025222 – 25264)
- Affidavit of Paul Hewett, PhD, Analysis of the Forest River, Inc. Formaldehyde Dataset, 7/27/09 (LWFR-EXP-3-000001 - 26)
- Affidavit of Paul Hewett, PhD, Analysis of the Forest River, Inc. Formaldehyde Dataset, 9/26/09 (LWFR-EXP-3-0000027 - 61)
- CV, Fee Schedule and Testimony List for Paul Hewett (PSC025265 – 25269)
- Preliminary Report by Darryl Hicks, PE, 7/27/09 (LWFR-EXP-4 000001 – 3)
- Electrical Systems Observations Report by Darryl Hicks, PE, 10/1/09 (LWFR-EXP-4-000004 – 17)
- CV and Fee Schedule for Darryl Hicks (PSC026023 – 26014, LWFR-EXP-4-000003)
- Place holder Report by Paul LaGrange, 7/21/09 (LWFR-EXP-5-000001 – 2)
- Inspection Report by Paul LaGrange, August 2009 (LWFR-EXP-5-000003 – 316)
- CV, Fee Schedule and Testimony List for Paul LaGrange (PSC026031 — 26036)
- Report by Kenneth Laughery, PhD, 7/28/09 (LWFR-EXP-6-000001 – 6)
- Report by Kenneth Laughery, PhD, 10/1/09 (LWFR-EXP-6-000007 – 13)
- CV and Testimony List for Kenneth Laughery (PSC025282 – 25313)
- Preliminary Inspection Report by Alexis Mallet, Jr., 7/29/09 (LWFR-EXP-7-000001 – 13)
- Inspection Report and Photos by Alexis Mallet, Jr., 10/2/09 (LWFR-EXP-7-0000014 – 144, LWFR-EXP-7-0000145 - 1841)
- CV, Fee Schedule and Testimony List for Alexis Mallet (PSC025314 – 25326)
- Affidavit of Lawrence Miller, MD, MPH, 7/28/09 (LWFR-EXP-8-000001 – 9)
- Affidavit of Lawrence Miller, MD, MPH, 10/2/09 (LWFR-EXP-8-000010 – 19)
- CV, Fee Schedule and Testimony List for Lawrence Miller (PSC025360 – 25375)
- Preliminary Report by Charles David Moore, PE, PLS, 7/24/09 (LWFR-EXP-9-000001 – 4)
- Structural Condition Assessment for FEMA Travel Trailer Wright/Forest River, Inc. Trailer Melville, Louisiana by Charles David Moore, PE, PLS, 10/2/09 (LWFR-EXP-9-000005 – 42)
- CV and Fee Schedule for Charles David Moore (PSC024346 – 25349)      Robbi- CM00856



- Preliminary Report by Ervin Ritter, PE, 7/23/09 (LWFR-EXP-10-000001 – 7)
- Investigation and Inspection Report by Ervin Ritter, PE, 10/1/09 (LWFR-EXP-10-000008 – 117)
- CV, Fee Schedule and Testimony List for Ervin Ritter (PSC025350 – 25354)
- Affidavit of William D. Scott, PE, CHMM, 7/28/09 (LWFR-EXP-11-000001 – 42)
- Affidavit of William D. Scott, PE, CHMM, 10/2/09 (LWFR-EXP-11-000043 – 135)
- CV, Fee Schedule and Testimony List for William D. Scott (PSC025355 – 25368)
- Report by Edward H. Shwery, PhD, 7/28/09 (LWFR-EXP-12-000001 – 11)
- Psychological Examination Report by Edward H. Shwery, PhD, 9/24/09 (LWFR-EXP-12-0000012 – 16)
- CV, Fee Schedule and Testimony List for Edward Shwery (PSC025369 – 25391)
- Preliminary Affidavit of Stephen Smulski, PhD, 7/27/09 (LWFR-EXP-13-000001 – 22)
- Affidavit of Stephen Smulski, PhD, 9/29/09 (LWFR-EXP-13-0000023 – 61)
- CV, Fee Schedule and Testimony List for Stephen Smulski (PSC025392 – 25406)
- Affidavit of Richard A. Spector, MD, JD, 7/25/09 (LWFR-EXP-14-000001 – 4)
- Affidavit of Richard A. Spector, MD, JD, 9/21/09 (LWFR-EXP-14-000005 – 15)
- CV for Richard A. Spector, MD, JD (PSC026027 – 26030)
- Preliminary Affidavit of Patricia Williams, PhD, DABT, 7/28/09  (LWFR-EXP-15-000001 – 54)
- Preliminary Affidavit of Patricia Williams, PhD, DABT, 10/2/09  (LWFR-EXP-15-0000055 – 130)
- CV, Fee Schedule and Testimony List for Patricia Williams (PSC025407 – 25440)

**Medical Records for Lyndon Wright:**
- Dr. Farber (FARBER-00001-13)
- Medical records from Cruz-Field Clinic (PL_L.WRIGHT-000108 – 279)
- Pharmacy records from Walgreen (PL_L.WRIGHT-000362 – 369)
- Pharmacy records from RiteAid (PL_L.WRIGHT-000370 – 394)

**Wright v. Forest River Other Materials:**
- WD Scott Fungal Sampling Log, 8/7/09
- EM Lab Test Results, 8/21/09 (Scott Sampling 8/2/09)
- EM Lab Test Results, 8/13/09 (Scott Sampling 8/2/09)
- EM Lab Test Results, 8/27/09 (Sampling date 8/7/09) (PL_L.WRIGHT-000395 – 398)
- EM Lab Test Results, 8/21/09 (Scott Sampling 8/17/09)
- EM Lab Test Results, 9/21/09 (Scott Sampling)
- EM Lab Test Results, 9/4/09 (Scott Sampling)
- Trailer Inspection/Examination Schedule for Forest River Plaintiff
- Photos of Wright trailer (FEMA165-000001 – 12)
- Trailer documents (FEMA165-000013 – 189)
- Letter from Stephen Smulski, 9/10/09
- Email from Aaron Ahlquist re: Final Reports in Wright, 9/23/09
- W.D. Scott Letter re: lab's handling of samples (attached to Ahlquist email)

Robbi- CM00857



- MSDS for Coolite 115, Bio Treat 183, Bio Treat 189, Cornite L, CWT 8333, CWT 3737, MBC 449, MBC 215

**Materials Produced by City of New Orleans for Wright v. Forest River:**
- MMG Mold Investigation Report – Civil District Court, City of New Orleans, 6/6/08
- MMG Asbestos Investigation at the New Orleans Civil District Court House, 5/15/06 (Sampling 5/10/06)
- MMG Mold Clearance Test at the First Floor Air Return Room inside the New Orleans Civil District Court House, 5/31/06 (Sampling 5/29/06)
- MMG Asbestos Investigation at the Civil District Court, 12/3/06 (Sampling 11/7/06)
- MMG Asbestos Investigation at 9th Floor East – City Planning Area, 9/7/05
- US Dept. of Labor - OSHA Letter to Algiers Community Health Clinic re: safety or health hazards at 4422 General Meyer Ave, New Orleans, 9/13/07
- MMG Mold Investigation Report for 4422 General Meyer Ave, Suite 100, New Orleans, LA, 10/8/07
- MMG Summary Report for the Limited Indoor Air Quality Evaluation at NOFD Facilities, 12/14/05
- MMG Mold Investigation at the Municipal Training Academy, 7/15/09 (Sampled 7/10/09)
- MMG Asbestos Re-Investigation of the Office of Emergency Preparedness,12/14/05 (Sampled 12/12/05)
- MMG Asbestos Investigation at the Office of Emergency Preparedness, 12/10/05 (Sampled 12/9/05)
- MMG Asbestos Investigation on the Ninth Floor East Wing at City Hall, 5/15/06 (Sampled 5/12/06)
- MMG Letter Re: Removal of Suspected Asbestos-Containing Materials from Ceiling Located on the Ninth Floor West Wing at City Hall, 7/12/06 (Sample Received 7/13/06)
- MMG Limited Indoor Air Quality Evaluation of the Basement of City Hall, 12/27/05 (Sampled 12/6/05)
- MMG Limited Indoor Air Quality Evaluation at the BE10 of City Hall, 8/14/06 (Sample Received 8/12/06)
- MMG Limited Indoor Air Quality Evaluation at the 2W20 of City Hall, 5/27/06 (Sampled 5/25/06)
- MMG Limited Indoor Air Quality Evaluation at Room LW34 City Hall, 12/18/2007 (Sample Received 12/13/07)
- MMG Limited Indoor Air Quality Evaluation 1 at Civil District Court Room 302, 11/14/07 (Sample Received 11/12/07)

**McGraw v. Keystone:**
- Plaintiff Fact Sheet for David L McGraw
- Inspection Protocol
- Indemnification and Hold Harmless Agreement for Entrance onto David McGraw's Properties
- Complaint for Damages

Robbi- CM00858

13



- Plaintiff David L. McGraw's Responses to First Set of Discovery Requests from Defendant Keystone RV Company
- Plaintiff's Verification
- Videotaped Deposition of David Leon McGraw, 2/22/10

**Plaintiff Expert Reports:**
- Branscome, Lee E., PhD, Weather Conditions for the Trailer Occupied by David McGraw, 3/3/10 [MCGRAW001458 – 1474]
- Report by Paul Hewett, Analysis of Keystone RV Company Formaldehyde Dataset, 3/27/10 [MCGRAW001665 – 1752]
- CV, Fee Schedule and Testimony List for Paul Hewett, 3/14-15/09
- LaGrange, Paul, McGraw vs. Keystone RV Observations and Test Results January 2010, 3/31/10 [MCGRAW001524 – 1538]
- Laughery, Kenneth, PhD, Expert Report, 3/30/10 [MCGRAW001450 – 1457]
- Mallet, Alexis, Jr., Inspection Report of the 2006 Springdale Keystone Travel Trailer, 3/31/10 [MCGRAW009726 – 9836]
- Mallet, Alexis, Jr., Inspection Report of the 2006 Springdale Keystone Travel Trailer, Resubmitted 4/9/10 [MCGRAW010913 – 11031]
- McGwin, Gerald, Jr, MS, PhD, Respiratory Health Effects Associated with Residential Exposure to Formaldehyde, 4/1/10 [MCGRAW001541 – 1554]
- Moore, Charles David, PE, PLS, Structural Condition Assessment for FEAM Trailer McGraw/Keystone Columbia Mississippi, 3/31/10 [MCGRAW001511 – 1523]
- Shwery, Edward Hale, PhD, Expert Report, 3/19/10 [MCGRAW001443 – 1449]
- Smulski, Stephen, PhD, Expert Report, 3/30/10 [MCGRAW001479 – 1510]
- Williams, Patricia, PhD, DABT, Preliminary Affidavit in Trial of Dave Leon McGraw, 4/1/10 [MCGRAW001753 – 1879]
- Ritter, Ervin L., PE, Inspection Report of FEMA Travel Trailer Keystone Springdale, 3/30/10 [MCGRAW001555 – 1664]
- Affidavit of Lawrence G. Miller, MD, MPH, 4/15/10 [MCGRAW011063 – 11073]

**Medical Records for David McGraw:**
- Clinical Report by Antoinette Harvey-Fields [MCGRAW001539 – 1540]
- LSU Hospitals [MCGRAW011032 – 11039]
- Medical Center of LA NO [MCGRAW01140 - 11041 (duplicate of MCGRAW001539 – 1540)]
- Touro [MCGRAW011042 – 11062]

**McGraw v. Keystone Other Materials:**
- Manuals and Warranties for Keystone RV and components [MCGRAW000001 – 176]
- Keystone RV Company Systems Checks – Dealer Prep [MCGRAW000177 – 178]
- FEMA THU Inspection Report and Agreement to Rules of Occupancy, 7/27/06 [MCGRAW000179 – 180]
- CH2M Hill, Pre-delivery Trailer Inspection, 7/21/06 [MCGRAW000181 – 183]
- FEMA Trailer User's Guide, Version 5 [MCGRAW000184 – 198]



- Claim Form to FEMA for Damage, Injury or Death by David McGraw, 6/23/08 [MCGRAW000199 – 203]
- Keystone documents (invoices, inspection, delivery information) [KEY0076031 – 76053]
- FRRATS Screens for David McGraw, prepared on 11/24/09 [FEMA10-003590 – 3617]
- Table labeled "SP_Formaldehyde_PS_Post" [FEMA162 – 001536]
- Unit details (McGraw trailer) [FEMA213-000001 – 5]
- FEMA, documents re: disaster assistance to David McGraw [FEMA214-000001 – 105]
- Detailed Unit Information [FEMA217-000001 – 4]
- Unit Inspection Report [FEMA219-000001]
- Detailed Unit Information [FEMA219-000002 – 5]
- Stock as of 10-3-17 [FEMA219-000006]
- FOPS Field Investigation Report, 2/23/10 [FEMA219-000007 – 14]
- Table – Invoice 49-4 [FGC033 – 022317]
- Private Site Deactivation Work Order [ FGC033-022325]
- Table – Invoice 40-4 [FGC033-022390]
- Private Site Deactivation Work Order [FGC033-022396]
- CH2M Hill documents [CH2M-FEMA(MDL)-006413 – 6425]
- Al Mallet Photographs & Videos [MCGRAW000326 – 932]
- LaGrange Photos & Videos [MCGRAW001006 – 1442]
- Stephen Smulski Photographs [MCGRAW000204 – 932]
- AJ Valenti Photos & Video [MCGRAW000204 – 324]
- Mallet Report Enclosures [MCGRAW009837 – 10912]
- Williams Report Enclosures [MCGRAW001880 – 9725]
- PSC Database, 2009 02 21- working LWFR-EXP 3 – 000291
- Exhibit 4 from Deposition of Paul Hewett 12/2/09

**Lewis v. Gulf Stream:**
- Complaint for Damages in Bonnie Coleman-Polk, et al. v. Gulfstream Coach, Inc., et al.
- First Amended Complaint for Damages in Octave Bazanac, et al. v. Gulf Stream Coach, Inc., et al.
- Second Supplemental and Amended Complaint (Plaintiff Robin Lewis)
- Inspection Protocol (Plaintiff Robin Lewis)
- Plaintiff Robin Lewis' Response to Gulf Stream's First Requests for Admissions, Interrogatories and Requests for Production of Documents
- Plaintiff Lewis' Supplemental and Amended Response to Gulf Stream's First Requests for Admissions, Interrogatories and Requests for Production of Documents
- Amended Exhibit A to Plaintiffs' Amended Complaint Pursuant to Pretrial Order 53
- Plaintiff Robin Lewis' Verification
- Plaintiff Fact Sheets for Robin Lewis
- Videotaped Deposition of Robin Lewis, 6/9/10

**Lewis v. Gulf Stream Plaintiff Expert Reports:**
- Expert Report by Paul Hewett, PhD, CIH, 5/3/10 [LEWIS002396 – 2473]
- CV and Fee Schedule of Paul Hewett, PhD, CIH

Robbi- CM00860



- Environmental Medical Causation Report by James P. Kornberg, MD, ScD, 5/3/10 [LEWIS002589 – 2617]
- CV of James P. Kornberg, MD, ScD
- Supplemental Report by James P. Kornberg, MD, ScD, 5/6/10 [LEWIS012760 – 12762]
- Attachment "A" to Report by J. Kornberg: Report on Formaldehyde Exposures in a FEMA Supplied Gulf Stream Coach, Inc., Trailer in Louisiana in Relation to the Development of Robin Lewis' Signs, Symptoms and Medical Conditions, A Review of Relevant Scientific Literature by Stephen King, PhD, MPH, 5/3/10 [LEWIS002618 – 2633]
- Attachment "A" to Report by J. Kornberg: Updated Report on Formaldehyde Exposures in a FEMA Supplied Gulf Stream Coach, Inc., Cavalier Trailer in Louisiana in Relation to the Development of Robin P. Lewis' Signs, Symptoms and Medical Conditions, A Review of Relevant Scientific Literature by Stephen King, PhD, MPH, 5/10/10 [LEWIS012763 – 212778]
- Report by Paul LaGrange, Robin Lewis vs. Gulfstream Coach Observations and Test Results, 3/24/10 [LEWIS012738 – 12759]
- Inspection Report by Alexis Mallet, March 23, 24 and 25, 2010 [LEWIS002474 – 2588]
- Inspection Report of FEMA Travel Trailer Gulfstream Cavalier by Ervin Ritter, PE, 4/30/10 [LEWIS002634 – 2671]
- Psychological Examination of Robin Lewis by Edward Halie Shwery PhD, 5/22/10 [LEWIS002356 – 2363]
- Affidavit of Stephen Smulski, PhD, 4/28/10 [LEWIS002364 – 2395]
- Preliminary Affidavit of Patricia M. Williams, PhD, DABT in the Trial of Robin Lewis, 5/3/10

**Charles v. Gulf Stream:**
- Complaint for Damages in Charlie Age, et al. v. Gulfstream Coach, Inc., et al.
- First Supplemental and Amending Complaint in Charlie Age, et al. v. Gulf Stream Coach, Inc., et al.
- First Supplemental and Amended Complaint in Re: FEMA Trailer Formaldehyde Product Liability Litigation (Related to Charlie Age, et al. v. Gulf Stream Coach, Inc., et al.)
- Second Supplemental and Amending Complaint in Charlie Age, et al. v. Gulfstream Coach, Inc., et al.
- Third Supplemental and Amended Complaint in Charlie Age, et al. v. Gulfstream Coach, Inc., et al. (Plaintiff Alana Alexander)
- Fourth Supplemental and Amended Complaint in Charlie Age, et al. v. Gulfstream Coach, Inc., et al. (Plaintiff Easton Charles Jr.)
- Inspection and Testing Protocol (Plaintiff Easton Charles, Jr.)
- Plaintiff Charles' Response to Gulf Stream's First Requests for Admissions, Interrogatories and Requests for Production of Documents
- Plaintiff Charles' Supplemental and Amended Responses to Gulf Stream's First Requests for Admissions, Interrogatories and Request for Production of Documents
- Plaintiff Easton Charles, Jr.'s Verification
- Plaintiff Fact Sheet for Easton E. Charles, Jr.

Robbi- CM00861



- W.D. Scott Group, Inc., "Formaldehyde Passive Monitoring Data- FEMA Housing Units" for Mr. Charles' Gulf Stream trailer.
- Deposition of Easton Ely Charles, Jr.  6/11/10

**Charles v. Gulf Stream Plaintiff Expert Reports:**
- Expert Report by Paul Hewett, PhD, CIH, 5/3/10 [CHARLES000228 – 305]
- Environmental Medical Causation Report on Easton Charles, Jr. by James P. Kornberg, MD, ScD, 5/10/10
- Attachment "A" to Report by J. Kornberg: Updated Report on Formaldehyde Exposures in a FEMA Supplied Gulf Stream Coach, Inc., Cavalier Trailer in Louisiana in Relation to the Development of Easton Charles, Jr.'s Signs, Symptoms and Medical Conditions, A Review of Relevant Scientific Literature by Stephen King, PhD, MPH, 5/10/10
- Inspection Report by Alexis Mallet, 5/14/10 [CHARLES010205 - 10312]
- Inspection Report of FEMA Travel Trailer Gulfstream Cavalier by Ervin Ritter, PE, 4/30/10 [CHARLES009912 – 9947]
- Psychological Examination of Easton Charles, Jr. by Edward Halie Shwery PhD, 4/30/10 [CHARLES000220 – 227]
- Affidavit of Stephen Smulski, PhD, 5/11/10 [CHARLES010173 – 10204]
- Preliminary Affidavit of Patricia M. Williams, PhD, DABT in the Trial of Easton Charles, Jr., 5/3/10 [CHARLES000306 – 439]

**Porter v. Gulf Stream:**
- Complaint for Damages in Betty Alleman, et al. v. Gulfstream Coach, Inc., et al.
- First Amended and Restated Complaint for Damages in Betty Alleman, et al. v. Gulf Stream Coach, Inc., et al.
- Inspection and Testing Protocol (Plaintiff Daniel Porter)
- Plaintiff Porter's Response to Gulf Stream's First Requests for Admissions, Interrogatories and Requests for Production of Documents
- Update to Daniel Porter's Discovery Responses (Letter by Peter Taaffe of Buzbee Law Firm, 4/14/10)
- Plaintiff Daniel Porter's Verification
- Plaintiff Fact Sheet for Daniel R. Porter
- Videotaped Deposition of Daniel Porter, 6/8/10

**Porter v. Gulf Stream Plaintiff Expert Reports:**
- Expert Report by Paul Hewett, PhD, CIH, 5/3/10 [PORTER001514 – 1591]
- Environmental Medical Causation Report, Daniel Porter by James P. Kornberg, MD, ScD, 5/10/10
- Attachment "A" to Report by J. Kornberg: Updated Report on Formaldehyde Exposures in a FEMA Supplied Gulf Stream Coach, Inc., Cavalier Trailer in Louisiana in Relation to the Development of Daniel R. Porter's Signs, Symptoms and Medical Conditions, A Review of Relevant Scientific Literature by Stephen King, PhD, MPH, 5/10/10
- Report by Paul LaGrange, Daniel Porter vs. Gulfstream Coach Observations and Test Results, 4/13/10 [PORTER011789 – 11812]

Robbi- CM00862



- Inspection Report by Alexis Mallet, April 12 and 13, 2010 [PORTER001592 - 1705]
- Inspection Report of FEMA Travel Trailer Gulfstream Cavalier by Ervin Ritter, PE, 4/30/10 [PORTER001706 – 1743]
- Psychological Examination of Daniel Porter by Edward Halie Shwery PhD, 4/30/10 [PORTER001476 – 1482]
- Affidavit of Stephen Smulski, PhD, 4/28/10 [PORTER001483 – 1513]
- Preliminary Affidavit of Patricia M. Williams, PhD, DABT in the Trial of Daniel R. Porter, 5/3/10

**Other:**
- Transcript of Jury Trial Proceedings in Wright v. Forest River, Day 2 Afternoon Session, Paul Hewett's Testimony, 3/16/10
- Transcript of Jury Trial Proceedings in Castanel v. Recreation by Design, Day 2 Morning Session, Paul Hewett's Testimony, 5/18/10
- Hewett, Paul, PhD, CIH, Analysis of the Formaldehyde Dataset for Forest River, Inc.; Gulf Stream Coach, Inc.; Jayco, Inc., Keystone RV Company; and KZRV, LP, 10/4/10
- Hewett, Paul, Appendix 10.3 Decay Curve Analysis
- Errata for Paul Hewett, "Analysis of the Formaldehyde Dataset for Forest River, Inc.; Gulf Stream Coach, Inc.; Jayco, Inc., Keystone RV Company; and KZRV, LP", dated October 4, 2010, 10/5/10



Appendix B – Figures 1 to 4

Robbi- CM00864



Figure 1. Average Indoor Formaldehyde Concentrations Reported by Lemus 1998 and by the CDC for Occupied "Other" THUs

Robbi- CM00865



Figure 2: Means and Ranges of Indoor Formaldehyde Levels Reported for Mobile Homes in the Literature (non-complaint), by the CPSC, and by the CDC for Occupied "Other" THUs

Robbi- CM00866



Figure 3. Airborne Formaldehyde from Environmental Cigarette Smoke, Reported by Lofroth et al. 1989

Robbi- CM00867



Figure 4. Indoor Formaldehyde Levels Reported for Non-Complaint Conventional Homes

Robbi- CM00868



Appendix C – CV and Testimony List of Coreen Robbins, MHS, PhD, CIH

Robbi- CM00869



REDMOND, WA • PORTLAND, OR • HILTON HEAD, SC • CAPE ELIZABETH, ME

# Coreen A. Robbins, M.H.S., Ph.D., C.I.H.

### Education
B.S., Zoology, Michigan State University, 1983.
M.H.S., Occupational Safety and Health, The Johns Hopkins University, 1989.
Ph.D., Environmental Health Science, The Johns Hopkins University, 1995.

### Affiliations
Society of Toxicology
American Industrial Hygiene Association
American Conference of Governmental Industrial Hygienists
Pacific Northwest Section of the American Industrial Hygiene Association

### Certifications
Certified Industrial Hygienist #5605

### Experience

| | | |
|---|---|---|
| 1999 - Present | **Veritox®, Inc. (formerly GlobalTox, Inc.)**<br>*Principal – Senior Industrial Hygienist* | **Redmond, Washington** |
| 1998-1999 | **McConnell and Associates**<br>*Industrial Hygienist* | **Bellevue, Washington** |
| 1994-1998 | **International Center for Toxicology and Medicine** (formerly National Medical Advisory Service)<br>*Senior Industrial Hygienist* | **Bethesda, Maryland** |

### Publications

(1) = Research Articles; (2) = Abstracts; (3) = Other

1.  (1) Hardin, B.D., C.A. Robbins, P. Fallah and B.J. Kelman. 2009. The concentration of No Toxicological Concern (CoNTC) and airborne mycotoxins. *Journal of Toxicology and Environmental Health,* Part A 72 (9):585-598.

2.  (3) Robbins, C.A., L.J. Swenson and S. Arnold. 2008. Chapter 23: Exposure Assessment, pp. 285-299. In: *Toxicology Principles for the Industrial Hygienist*, W.E. Luttrell, W. W. Jederberg, and K.R. Still (eds.), AIHA, Fairfax, VA.

3.  (1) Krause, M.W., W.T. Geer, L.J. Swenson, P. Fallah, and C.A. Robbins. 2006. Controlled study of mold growth and cleaning procedure on treated and untreated wet gypsum wallboard in an indoor environment. *Journal of Occupational and Environmental Hygiene* 3:435-441.

4.  (1) Kelman, B.J., C.A. Robbins, L.J. Swenson, and B.D. Hardin. 2004. Risk from Inhaled Mycotoxins in Indoor Office and Residential Environments. *International Journal of Toxicology* 23(1):3-10.

0309
Robbi- CM00870



# Coreen A. Robbins, M.H.S., Ph.D., C.I.H.

## Publications (Continued)

5.  (1) Van Loo, J., C.A. Robbins, L.J. Swenson, and B.J. Kelman. 2004. Growth of Fungi on Fiberglass Insulation Building Materials – A Review of the Literature. *Journal of Occupational and Environmental Hygiene* 1:349-354.

6.  (3) Robbins, C.A., L.J. Swenson, W.T. Geer and B.J. Kelman. 2003. Mold in Indoor Environments: A Critical Review of Research Studies. *Injury Insights*, April/May 2003: 1-2.

7.  (2) Jarand, C.W., C.A. Robbins, and B.J. Kelman. 2003. Evaluation of Potential Exposure to Volatile Organic Compounds Emitted from a Spray Grade Contact Cement, *Toxicological Sciences* 72:301.

8.  (3) Robbins, C.A. and J. Morrell. 2002 (Revised 2006). *Mold, Housing and Wood*. Western Wood Products Association, Portland, OR.

9.  (2) Kelman, B.J., C.A. Robbins, and L. Swenson. 2002. Evaluation of potential health effects from inhalation exposure to mycotoxins in indoor office and residential environments. *Toxicological Sciences* 66: 267.

10. (3) Swenson, L.J., C.A. Robbins and W.T. Geer. 2002. Poster session: *Variability in Viable and Non-viable Mold Spore Sampling Results*. American Industrial Hygiene Conference and Exposition (AIHCE), San Diego, CA. June 2002.

11. (3) Swenson, L.J., C.A. Robbins and W.T. Geer. 2001. Poster session: *What's Growing in the Pacific Northwest?* AIHCE, New Orleans, LA, June 2001.

12. (1) Breysse, P.N., P.S.J. Lees, B.C. Rooney, B.R. McArthur, M.E. Miller, and C.A. Robbins. 2001. End-user exposures to synthetic vitreous fibers: II. Fabrication and installation fabrication of commercial products. *Applied Occupational and Environmental Hygiene* 16(4):464-470.

13. (1) Robbins, C.A., L.J. Swenson, M.L. Nealley, R.E. Gots, and B.J. Kelman. 2000. Health Effects of Mycotoxins in Indoor Air: A Critical Review. *Applied Occupational and Environmental Hygiene* 15(10):773-784. (Awarded "Best Indoor Environmental Quality Publication in 2000" by the American Industrial Hygiene Association Indoor Environmental Quality Committee, June 2001).

14. (1) Robbins, C.A. and P.N. Breysse. 1996. The effect of vapor polarity and boiling point on breakthrough for binary mixtures on respirator carbon. *American Industrial Hygiene Association Journal* 57(8):717-723.

15. (3) Robbins, C.A. 1995. The Adsorption of Binary Organic Vapor Mixtures on Respirator Carbon. Ph.D. Thesis, The Johns Hopkins University.

16. (1) Lees, P.S.J., P.N. Breysse, B.R. McArthur, M.E. Miller, B.C. Rooney, C.A. Robbins and M. Corn. 1993. End user exposures to man-made vitreous fibers: I. Installation of residential insulation products. *Applied Occupational and Environmental Hygiene* 8(12):1022-1030.

17. (1) Robbins, C.A., P.N. Breysse, M. Francis, P.S.J. Lees, N. Chopra and M. Corn. 1992. Comparison of size characteristics of fibers found on sample filters and cassette cowls from personal samples of airborne man-made mineral fibers. *Applied Occupational and Environmental Hygiene* 7(10):659-664.



# Coreen A. Robbins, M.H.S., Ph.D., C.I.H.

## Selected Presentations

1. *Health Effects of Environmental Mold; Evaluation and Legal Aspects,* Workshop at American College of Allergy, Asthma and Immunology (ACAAI) Annual Meeting, Seattle, WA, 8 November 2008.

2. *Mold and IAQ in Buildings: "Green" or Not,* Washington State Bar Association, Seattle, WA, 15 November 2007.

3. *Take-Home Exposure to Asbestos: Are Family Members of Auto Mechanics at Risk?* Podium Session 124: From Meth Labs to lead: Policies and Practices in Community Environmental Health, American Industrial Hygiene Conference and Exposition (AIHCE), Philadelphia, PA, 6 June 2007.

4. *Indoor Mycotoxins Update: IH issues, Biomonitoring, Occupational Medicine.* Roundtable 213, AIHCE, Philadelphia, PA, 6 June 2007.

5. *Silica Sandstorn: Causation and Legal Controversy,* AIHCE, Chicago, IL, 18 May 2006.

6. *Mold in Schools and Commercial Buildings: Exposure Assessment and Health Effects of Mold,* State of Washington Governor's Industrial Safety and Health Conference, Olympia, WA, 28 September 2005.

7. Invited Faculty Speaker: *Mold Remediation and Clean Up.* Washington State Bar Association, CLE. Water Intrusion and Mold: Addressing Recent Mold Claims From all Angles of the Case, Seattle, WA, 22 March 2005.

8. *Toxicological and Occupational Medicine Perspective on Molds and Mycotoxins: Update and Implication for IH,* AIHA, On-line seminar, 16 February 2005.

9. Invited Speaker: *Health Aspects of Indoor Fungal Contamination, NAS Report.* California Industrial Hygiene Council (CIHC), 14th Annual Conference, Redondo Beach, CA, 3 December 2004.

10. Invited Speaker: *Health and Scientific Basis of Assessment and Remediation Techniques.* American Society for Testing Materials (ASTM) Mold Symposium, Boulder, CO, 22 July 2004.

11. *Development of the Current Industrial Hygiene Perspective on Molds and Mycotoxins.* Roundtable 236: Toxicological and Occupational Medicine Perspective on Molds and Mycotoxins: Update and Implications for Industrial Hygiene, AIHCE, Atlanta, GA, 12 May 2004.

12. Invited Faculty Speaker: *Mold in the Indoor Air Environment: Exposure and Health Effects,* University of Washington School of Medicine Continuing Medical Education, Occupational & Environmental Medicine: New developments for primary care clinicians, Seattle WA, April 6, 2001.

13. Robbins, C.A. 2000. Toxicology, Stachybotrys, and the Industrial Hygienist. Roundtable 243, *Critical Review of Health Hazards from Exposure to Mycotoxic Fungi in Indoor Environments*, AIHCE, Orlando, FL, 25 May 2000.

## Professional Committees And Activities

AIHA Bioremediation Task Force

AIHA Toxicology Committee

Robbi- CM00872

Coreen A. Robbins, M.H.S., Ph.D., C.I.H.
Testimony List

1.   **Aspen Grove Owners Association v. Kabili**
     United States District Court, Western District of Washington at Seattle
     Case No. CV09-1110
     Deposition taken on February 18, 2011

2.   **Morrison v. Alfa Laval, Inc.**
     Superior Court of California, County of Los Angeles
     Case No. BC 441029
     Deposition taken on February 1, 2011

3.   **Ogard v. EC-Timber Ridge, LLC**
     Superior Court of Washington for King County
     Case No. 08-2-17079-9SEA
     Deposition taken on January 19, 2011

4.   **Waniss v. Honda**
     Superior Court of California, County of Los Angeles
     Case No. BC 424811
     Deposition taken on October 14, 2010

5.   **Bankhead v. Carlisle, Arvin Meritor and Kelsey-Hayes**
     Superior Court of California, County of Alameda
     Case No. RG10502243
     Deposition taken on October 12, 2010

6.   **Eddolls v. Allstate**
     Superior Court of Arizona, County of Maricopa
     Case No. CV2007-010209
     Deposition taken on July 28, 2010

7.   **FEMA Trailer Formaldehyde Products Liability Litigation (Lewis v
     Gulfstream Coach, Inc.)**
     United States District Court, Eastern District of Louisiana
     Case No. MD-1873, Civil Action No. 09-8320
     Deposition taken on July 20, 2010

8.   **Boger v. CertainTeed**
     Superior Court of California, County of San Francisco
     Case No. 459163
     Deposition taken on June 14, 2010

Robbi- CM00873

9.  **Delgado v. Rockwell, LLC**
    Superior Court of California, County of Sonoma
    Case No. SCV-242059
    Deposition taken on April 27, 2010

10. **Khieu v. Age Refining, Inc. et al.**
    District Court of Dallas County, Texas, 193rd Judicial District
    Cause No. 08-10425
    Deposition taken on March 17, 2010

11. **Palmer v. AC&S, Inc. et al.**
    Superior Court of the State of California, County of San Francisco
    Case No. CGC-09-275247
    Deposition taken on February 11, 2010

12. **Newkirk v. ConAgra Foods, Inc., et al.**
    United States District Court for the Eastern District of Washington
    Case No. CV-08-273-FVS
    Deposition taken on February 4, 2010

13. **FEMA Trailer Formaldehyde Products Liability Litigation (Wright v. Forest River, Inc., et al.)**
    United States District Court, Eastern District of Louisiana
    Case No. MD-1873
    Deposition taken on December 14, 2009

14. **Holcomb v. Bondex International, Inc., et al.**
    District Court, Clark County, Nevada
    Case No. A556412
    Deposition taken on December 9, 2009

15. **Dein v. AAMCO Transmission, Inc., et al.**
    Superior Court of the State of Delaware, County of New Castle
    Case No. 08C-10-240
    Deposition taken on October 20, 2009

16. **Escoto v. Christopher Homes, et al.**
    District Court of Clark County, Nevada
    Case No. A507086
    Deposition taken on September 1, 2009

17. **Boman v. Alfa Laval, Inc., et al.**
    Superior Court of the State of California, County of Los Angeles

Robbi- CM00874

Case No. BC405823
Deposition taken on August 27, 2009

18. **Knippers v. Harley Davidson**
Superior Court of the State of California, County of San Francisco
Case No. CGC-06-449275
Deposition taken on July 31, 2009

19. **FEMA Trailer Formaldehyde Products Liability Litigation (Alexander v. Gulf Stream Coach, Inc., et al.)**
United States District Court, Eastern District of Louisiana
Case No. MD-1873
Deposition taken on July 22, 2009

20. **James and Patti Schibel v. Leroy W. Johnson**
Superior Court of the State of Washington, County of Spokane
Case No. 2007-02-00033-1
Deposition taken on June 16, 2009

21. **The Admiral Condominium Owners' Association v. Admiral Way, LLC**
Superior Court of the State of Washington, King County
Case No. 07-2-22890-0 SEA
Deposition taken on May 28, 2009

22. **Martin v. A.W. Chesterton Company, et al.**
Superior Court of California, County of Los Angeles
Case No. BC 378790
Deposition taken on May 5, 2009

23. **Robert Smith v. Chrysler, LLC, et al.**
Superior Court of California, County of Alameda
Case No. RG08-394924
Deposition taken on February 18, 2009

24. **Brunald v. A.W. Chesterton Company, et al.**
Superior Court of California, County of Alameda
Case No. RG-07-359353
Deposition taken on February 11, 2009

25. **Vastine v. Owens Corning, et al., Johnson v. T&N, Ltd., et al.**
Superior Court of California, County of Alameda
Case Nos. C-831397 and 810332-9
Deposition taken on January 19, 2009

Robbi- CM00875

26. **Merkle v. Advocate Mines, Ltd, et al.**
Superior Court of California, County of Alameda
Case No. RG08384801
Deposition taken on December 1, 2008

27. **Fulton v. Carlisle Corporation, et al.**
Superior Court of California, County of San Francisco
Case No. CGC 05-440464
Deposition taken on November 21, 2008

28. **Barr v. Plant Insulation Company, et al., Trombella v. Plant Insulation Company, et al.**
Superior Court of California, County of Alameda
Case Nos. RG05193719 and RG07317461
Deposition taken on September 24, 2008

29. **Collins v. A.W. Chesterton et al., Henderson v. Advocate Mines Ltd., et al., Peterson v. AC&S et al.**
Superior Court of California, County of Alameda
Consolidated No. RG04-143303 (Lead Case), 2002-065247, 830012-0
Deposition taken on September 18, 2008

30. **Ward v. Christopher Homes, LLC**
District Court of Clark County
Case No. A475862
Deposition taken on July 17, 2008

31. **Marshall v. AC&S et al., Rogers v. A.W. Chesterton et al., Salinas v. AC&S et al., Ranney v. Owens Corning**
Superior Court of California, County of Alameda
Consolidated Cases No. 2002037221
Deposition taken on July 2, 2008

32. **Olsen v. Christopher Homes**
District Court Clark County, Nevada
Case No. A473284
Deposition taken on June 10, 2008

33. **Smith v. Genuine Parts**
Superior Court of the State of California
Case No. BC 371 491
Deposition taken on May 27, 2008

34. **Bradford v. Genuine Parts**

Robbi- CM00876

Superior Court of the State of California
Case No. BC 368842
Deposition taken on May 21, 2008

35.   **Raff v. Genuine Parts**
Superior Court of the State of California
Case No. BC 359849
Deposition taken on March 7 and 11, 2008

36.   **Campos v. Genuine Parts**
Superior Court of the State of California
Case No. BC 344892
Deposition taken on February 14, 2008

37.   **Peach v. Warmington Homes**
District Court Clark County, State of Nevada
Case No. A466958
Deposition taken on February 4, 2008

38.   **Mitchell v. Honda, et al.**
Superior Court of the State of California
Case No. 274372
Deposition taken on January 11, 2008

39.   **Pelley v. Toyota, et al.**
Superior Court of the State of California
Case No. BC 358812
Deposition taken on August 15, 2007

40.   **Eubanks v. Genuine Parts**
Superior Court of the State of California
No. BC 365542
Deposition taken on July 24, 2007

41.   **Jones v. Eden Housing**
Alameda County Superior Court/Eastern Div.
No. VG04153398
Testimony taken on July 19 and 25, 2007

42.   **Dame, et al. v. Eastside Place Apartments**
Superior Court of the State of Arizona
No. C 2003 5581
Deposition taken on May 3, 2007

Robbi- CM00877

43.   **Meyer v. Genuine Parts**
      Superior Court of the State of California, County of San Francisco
      No. 456279
      Deposition taken on April 17, 2007

44.   **Bellagio v. Hansen Mechanical**
      District Court, Clark County, Nevada
      No. A471037
      Deposition taken on March 26, 2007

45.   **Wigle v. Yarnell**
      Superior Court of the State of California, County of Santa Barbara
      No. 01112810
      Deposition taken on February 21, 2007

Robbi- CM00878

Rate Schedule for
Veritox®, Inc.

Calendar Year 2010

## INVOICES

Invoices from Veritox® include all labor charges, other direct costs, and costs associated with in-house services. Charges include only those services directly attributable to the completion of the work. Payment is required in US dollars within thirty (30) days after receipt or interest charges may be applied.

## PROFESSIONAL FEES

Labor charges are based upon actual hourly salary rates and costs to cover payroll taxes, insurance incident to employment, benefits (including holiday, sick leave, and vacation), administrative overheads, and profit. Rate ranges by labor category are illustrated below:

| Title | Range |
|---|---|
| Principals and Practice Leaders | $ 140 - 450 |
| Medical Toxicologist – Consulting | $ 600 |
| Senior Industrial Hygienist | $ 150 - 350 |
| Senior Mycologist | $ 400 |
| Chemist | $ 150 |
| Industrial Hygienist | $ 60 - 120 |
| Senior Toxicologist | $ 140 - 300 |
| Toxicologist | $ 65 - 140 |
| Research Librarian | $ 60 - 120 |
| Administrative/Data Processing | $ 65 - 120 |

The fee for all depositions is $500-$600/hour for a minimum of one hour, except as noted below. Professional fee rates may be modified at the discretion of Veritox®. Premium rates may be applied when the Client requests work be accomplished in such a way that additional costs are incurred by Veritox®. Time spent in travel will be charged in accordance with hourly rates.

## SPECIAL CONDITIONS FOR PHYSICIANS

IME reports will be submitted only after all fees have been paid in full.

Court testimony is billed at a rate of $4,000/day. Depositions are billed at $2,000/half day (if local); $4,000/full day. Travel expenses and time are extra. Full payment must be received prior to scheduling the testimony date, at which point, the physician will schedule for that day. Due to the difficulties involved in rescheduling, cancellation of the appointment fourteen days or more in advance will result in a refund of one half of the amount. Cancellations of less than fourteen days result in the forfeiture of the entire amount.

## OTHER DIRECT COSTS

Air travel is charged at the most effective fare basis for the individual project. Local mileage is charged in accordance with IRS guidelines. Lodging and meals are charged to the project when travel is required.

Other project expenses which are charged directly may include (but are not necessarily limited to) communications charges, materials, outside laboratory tests, outside computer charges, reproduction, mailing and shipping charges, and special insurance. Technical equipment, used either in-house or in the field, is charged at an hourly rate. Rates may be adjusted for equipment dedicated to a project for an extended period of time.

Other direct costs, including materials, travel, and subsistence will be invoiced at cost plus a general and administrative fee of 15%.

February 2010

Robbi- CM00879