UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
|     FORMALDEHYDE | * | |
|     PRODUCTS LIABILITY | * | SECTION:  N(5) |
|     LITIGATION | * | |
| | * | JUDGE: ENGELHARDT |
| This Document Relates to:  **ALL CASES** | * | |
| | * | MAG: CHASEZ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR
ENTRY OF *LONE PINE* ORDER**</u>

**MAY IT PLEASE THE COURT:**

The Defendants, Gulf Stream Coach, Inc., Jayco, Inc., Starcraft RV, Inc., SunRay RV, LLC, Heartland Recreational Vehicles, LLC, Sun Valley, Inc. d/b/a Sun Lite, SunnyBrook RV, Inc., TL Industries, Inc., Recreation By Design, LLC, Frontier RV, Inc., Cruiser RV, LLC, Play'Mor Trailers, Inc., Fluor Enterprises, Inc., CH2M Hill Constructors, Inc., Shaw Environmental, Inc., Forest River, Inc., Skyline Corporation and Layton Homes Corporation, submit this Memorandum in Support of their Motion for Entry of a *Lone Pine* Order.

**I.     NATURE OF THE CASE**

The Court is well aware of the nature and background of this litigation, so reference is made to prior pleadings filed by various parties, including most notably Gulf Stream Coach, Inc., regarding the background. Briefly, Plaintiffs' claims in this case center on alleged exposure to formaldehyde in travel trailers built by the Defendants and supplied to Plaintiffs by the Federal Emergency Management Agency following Hurricane Katrina. Because of the alleged exposure, Plaintiffs claim a wide array of injuries – some that have a true scientific connection to formaldehyde exposure, and some that do not. As redress for their injuries, Plaintiffs seek recovery for personal injury, personal discomfort, annoyance, fear of disease, and emotional distress/mental anguish resulting from the knowledge of exposure to formaldehyde.

00238932-1

Several years ago, several defendants sought a *Lone Pine* order that would require each plaintiff to present competent medical evidence that the personal injuries he or she alleges were caused by exposure to formaldehyde and expert testimony that the particular level of exposure could have caused the claimed medical conditions. Though the Court denied the Motion, it left open the possibility of re-filing the Motion at a later date. (Rec. Doc. 66). However, the circumstances of the case have changed since that time. First, several plaintiffs' cases have been tried to verdict, both in bellwether fashion and summary jury trial proceedings. Second, multiple defendants either have settled or are negotiating settlements with the Plaintiffs at this time. Third, years have elapsed since these cases initially arose, which has allowed for enough time to determine the precise scope of each plaintiff's alleged injuries. As will be shown below, this Honorable Court has previously shown a preference for *Lone Pine* orders once such mass tort cases have moved beyond their initial stage. Therefore, the Defendants now seek similar relief, but respectfully submit that such an Order is much more appropriate at this time to eliminate frivolous claims and to confirm which plaintiffs have at least some degree of legitimate evidence that would support a claim against the defendants.

## II.   PURPOSE OF THE "LONE PINE" ORDER

The *Lone Pine* order is a well-accepted and often-utilized case management tool for balancing the burdens imposed by toxic tort allegations in multiple-plaintiff and multiple-defendant cases. "The basic purpose of a *Lone Pine* order is to identify and cull potentially meritless claims and streamline litigation in complex cases." *In re Vioxx Prod. Liab. Litig.*, 557 F.Supp.2d 741, 743 (E.D. La. 2008).

The order derives its name from the case of *Lore v. Lone Pine Corp.*, a lawsuit that involved numerous plaintiffs' claims for personal injuries and property damage allegedly caused by pollution from the Lone Pine Landfill. 1986 WL 637507 (N.J. Super. Ct. Law Div. 1986).

The New Jersey Superior Court issued a case management order which required each plaintiff to provide:

    1)    with respect to each claim of personal injury

        (a)    Facts of each individual plaintiff's exposure to alleged toxic substances at or from Lone Pine Landfill; and

        (b)    Reports of treating physicians and medical or other experts, supporting each individual plaintiff's claim of injury and causation by substances from Lone Pine Landfill; and

    2)    with respect to each claim with diminution of property value

        (a)    Each individual plaintiff's address, including tax block and lot number, for the property alleged to have declined in value; and

        (b)    Reports of real estate or other experts supporting each plaintiff's claim of diminution of property value, including the timing and degree of such diminution and the causation of same.

Plaintiffs were given four months to provide this information, which, as the court observed, was the "basic facts plaintiffs must furnish in order to support their claims of injury and property damage." Ultimately, plaintiffs in *Lone Pine* were unable to comply with the court's order (thus demonstrating they could not establish a *prima facie* case) and their claims were dismissed.

As is evident from its original application, the *Lone Pine* order serves to separate those cases (or even those plaintiffs) with meritorious claims from those with unfounded claims, and the order saves enormous litigation costs and judicial resources. The information required from plaintiffs under a *Lone Pine* order is nothing more than the information plaintiffs are required to know under modern pleading rules in advance of filing suit. Fed. R. Civ. P. 11(b)(3); *see also Bell Atlantic Corp. v. Twombly*, No. 05-1126, 127 S.Ct. 1955, 1965 (U.S. 2007) (holding that under Federal Rule of Civil Procedure 8, a plaintiff is obligated to provide more than labels and conclusions and "a formulaic recitation of the elements of a cause of action will not do.").

Further support of the Court's authority to issue a *Lone Pine* order can be found in Federal rule of Civil Procedure 1 which states that the Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."

## III. LOCAL FEDERAL COURTS HAVE EMPLOYED "LONE PINE" ORDERS

As this Honorable Court has noted, "The United States Court of Appeals for the Fifth Circuit has recognized the value of and approved the use of *Lone Pine* orders in mass tort litigation." *In re Vioxx Prod. Liab. Litig.*, 557 F.Supp.2d 741, 743—44 (E.D. La. 2008). In *Acuna v. Brown & Root*, the Fifth Circuit upheld the Western District of Texas' *Lone Pine* order requiring the plaintiffs to establish certain elements of their claims through expert affidavits. 200 F.3d 335, 337 (5th Cir. 2000). The case involved the consolidation of two personal injury actions involving 1,600 total plaintiffs. *Id*. at 337—38. In each case, plaintiffs brought suit in state court against various defendants alleging personal injuries and property damages arising from the defendants' uranium mining and processing activities. *Id*. at 337. After the cases were removed to federal court, the Western District ordered the plaintiffs to obtain expert affidavits that stated:

a)  the injuries or illness suffered by the plaintiff that were caused by the alleged uranium exposure;

b)  the materials or substance causing the injury;

c)  the facility thought to be their source;

d)  the dates or circumstances and means of exposure to the injurious materials; and

e)  the scientific and medical bases for the expert's opinions. *Id*. at 338.

In reviewing the court's action, the Fifth Circuit noted that *Lone Pine* orders are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation, and that they are issued in the federal courts under the wide discretion afforded district judges over the management of discovery under Federal Rule of Civil Procedure 16. *Id.* at 340.

The Fifth Circuit found that it was within the court's discretion to take steps to manage the complex and potentially burdensome discovery that the cases would require and that the scheduling orders essentially required the information which plaintiffs should have had before they filed their claims. *Id.* "Each plaintiff should have had at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries." *Id.*

This Honorable Court has likewise endorsed the use of such orders. Quite recently, Judge Fallon handed down a *Lone Pine* Order in the *Vioxx* litigation. *See In re Vioxx Prod. Liab. Litig.*, 557 F.Supp.2d 741, 743—44 (E.D. La. 2008). Several years after the Vioxx Multi-District Litigation was transferred to the Eastern District, the parties agreed to form a settlement program that involved claimants with particular injuries. *See id*. at 742. To address the remaining claims, the Court ordered the plaintiffs not involved in the settlement program to submit a case-specific expert report that stated: (i) to a reasonable degree of medical certainty, that the claimant suffered an injury; (ii) that Vioxx caused the injury; (iii) the explanation for the opinion that Vioxx caused the injury; (iv) the identity of other causes considered by the expert; (v) a description of the specific injuries allegedly suffered; (vi) the specific medical findings that supported the diagnosis of the injuries; and (vii) the identity of the documents the expert relied upon in rendering his opinion. *See id*.; Pre-Trial Order No. 28 (Rec. Doc. 12962), *In re Vioxx Prod. Liab. Litig.*, C.A. No. 2:05-md-01657-EEF-DEK, p. 4, attached as Exhibit "A." After the Court handed down the order, several plaintiffs filed a motion to suspend the effect of the *Lone Pine* order, arguing that it was premature because the order did not provide the plaintiffs enough time to develop their cases. *In re Vioxx*, 557 F.Supp.2d at 743.

In considering the motion, the Court noted that the primary motivation in formulating

such an order is to "strike a balance between efficiency and equity." *Id*. at 744. The Court noted that such considerations militated against the order in the preliminary stages of the litigation, when "little was known about the structure, nature and effect of Vioxx by anyone other than perhaps the manufacturer of the drug." *Id*. But, in the Court's opinion, the long-standing nature of the case and the copious amounts of discovery that had already taken place justified the institution of the order at that point. *Id*. Over seven years had passed since the first Vioxx cases were filed, the drug manufacturer had produced tens of millions of documents, hundreds of depositions had been taken, and the parties had engaged in six bellwether trials. *Id*. Thus, the Court held that at this advanced stage, it was not too much to ask a plaintiff to provide some form of evidence to prove that Vioxx caused them to suffer a personal injury. *Id*. "[A]fter all this time it is reasonable to require Plaintiffs to come forward and show the basis for their beliefs and show some kind of basic evidence of specific causation." *Id*. In its conclusion, the Court also pointed out that a *Lone Pine* order can benefit the plaintiffs, as well – before incurring the substantial cost associated with trying a Vioxx case, it would be helpful for the plaintiffs to know whether a particular claim has merit. *Id*. at 745.

*Lone Pine* orders have also been issued in the United States District Courts for the Middle District of Louisiana. In *In Re: 2000 ExxonMobile Release Litigation*,[1] the Honorable Magistrate Judge Stephen Riedlinger entered an Order requiring each plaintiff to provide an affidavit from a qualified treating or other physician stating: the identity of the particular substances allegedly released from the plant to which each plaintiff was exposed, and the manner and duration of each exposure; to a reasonable medical probability, the diagnosis of injury, illness or condition of the plaintiff; and to a reasonable medical probability, that each injury, illness or condition diagnosed was caused by exposure to the particular substances released from

---

[1]     Master Docket No. 00-MD-1-C-1 (M.D. La 2003). Attached hereto as Exhibit "B."

the plant. Further, Magistrate Judge Riedlinger required that each affidavit specify all medical examinations, testimony or treatment of the plaintiff relied upon by the physician to support any diagnosis and the conclusion that any injury, illness, or condition of the plaintiff was caused by exposure to the particular substances emanating from the facility. The order required similar information regarding the property damage claims.

A similar *Lone Pine* Order was entered in *In Re: 1994 Exxon Chemical Plant Fire Litigation*.[2] There, Magistrate Judge Riedlinger noted that if the plaintiff is unable to link his alleged exposure to an injury, "then the court should be concerned with the viability of that plaintiff's claim." The Fifth Circuit noted with approval the use of this case management tool that had streamlined the case. *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 604 (5th Cir. 2006). Finally, in *Carlton Gene Rinehart v. CIBA-Geigy Corporation*,[3] Magistrate Judge Christine Noland recognized the use of a *Lone Pine* Order and required each of the named plaintiffs to provide the Court and defendants, within 90 days from the signing of the Order, a report identifying any environmental injury alleged to be suffered by the plaintiffs, or to be suffered by the plaintiffs in the future. The Court required the report to supply sufficient evidence that the alleged injuries were caused by chemicals to make a *prima facie* case. The Court further required each plaintiff to provide the Court and defendants *prima facie* evidence that the plaintiffs' property was damaged.

## IV.    OTHER COURTS HAVE EMPLOYED "LONE PINE" ORDERS

The *Lone Pine* procedure or the functional equivalent has been employed by numerous other courts in toxic tort suits. Although these cases are not binding on this Court, they are presented to demonstrate the acceptance and use of *Lone Pine* orders in toxic tort cases.

---

[2]    Master Docket No. 94-MS-3-C-1. Attached hereto as Exhibit "C."

[3]    No. 96-517-M2 (M.D. La. July 6, 2000). Attached hereto as Exhibit "D."

In *Turner v. Firestone Tire & Rubber Co.*, No. 5-95CV-152 (E.D. Tex. May 31, 1996), Judge David Folsom entered an order requiring each plaintiff to file an affidavit from medical or other experts stating the particular substances to which each plaintiff claimed exposure, the identity of the manufacturer of those substances, and the manner, duration and concentration of each exposure. In addition, each plaintiff was required to submit "a sworn statement by a medical expert or other qualified expert that to a reasonable degree of medical probability the exposure described…was a cause of such illness, injury or condition."

In *Schelske v. Creative Nail Design*, 933 P.2d 799 (Mont. 1997), the trial court entered a case management order that was "designed to help focus the extensive discovery and to aid in the handling of the complex, multi-party litigation." *Id.* at 801. The order required the plaintiff (an ex-beautician claming she was exposed to toxic substances at the beauty salon where she worked) to provide the defendants with a list of products, the circumstances of the alleged exposure, an identification of each specific chemical which allegedly caused harm, and a physician's opinion of a causal connection between exposure and injury. The physician's affidavit was required to 1) list all injuries, illness, or conditions suffered by the plaintiff; 2) specify the chemical(s) that caused each illness, injury or condition; and 3) state the scientific bases for the physician's conclusion. *Id.* The suit was dismissed when the plaintiff failed to produce the required information. The Montana Supreme Court upheld the dismissal of the suit holding that she had not sufficiently complied with the case management order (patterned after the order approved in *Claar*) requiring that she plead each chemical that allegedly caused harm and provide a physician's opinion as to causal link between each exposure and injury. *Id.*

In *Cottle v. Superior Court*, 5 Cal.Rptr.2d 882 (Cal. Ct. App. 1992), the trial court required each plaintiff to file a statement identifying the substances to which he or she was exposed, the dates, place and method of exposure, the resulting injury, and the identity of each

medical expert who would support each claim of injury. The court of appeals upheld the trial court's application of the case management order on the basis that a "court may order the exclusion of evidence if the plaintiffs are unable to establish a *prima facie* claim prior to the start of trial." *Id.* at 890.

In *Martinez v. City of San Antonio*, 40 S.W.3d 587 (Tex. App. - San Antonio, 2001, pet. denied), approximately 600 San Antonio residents sued various defendants in three separate lawsuits (that were later consolidated for discovery) for alleged injuries resulting from exposure to lead-contaminated soils during construction of the Alamodome Sports Complex. Plaintiffs brought suit under the theories of negligence, gross negligence, public and private nuisance, negligence per se, trespass, maintenance of an ultra-hazardous activity, and unconstitutional taking of property. The trial court entered a *Lone Pine* order, selecting a small number of plaintiffs (50) for full discovery and requiring plaintiffs to prepare expert reports for such plaintiffs within 90 days. The trial court subsequently entered a no evidence summary judgment in favor of the defendants. On appeal, the plaintiff appellants complained the *Lone Pine* order hindered their ability to conduct the discovery necessary to overcome the no-evidence motion. The court of appeals disagreed noting that "appellants are presumed to have duly investigated their case before filing suit. *Id.* at 592.

The Texas Supreme Court has recognized the importance in toxic tort cases of discovery of plaintiffs' evidence of exposure and causation. In *Able Supply Co. v. Moye*, 898 S.W.2d 866, 700 (Tex. 1995) the court stated: "Each defendant is entitled to discover whether there has been a medical determination that an illness has been caused by the defendant's product." The court recognized that requiring plaintiffs to come forward with information "linking each plaintiff's injuries with a particular product will simplify the case, streamline costs to both plaintiffs and defendants, conserve judicial resources, and aid the trial court in preparing a plan for the trial of

these cases." *Id.* at 771. Similarly, in *In re: Colonial Pipeline Co.*, 968 S.W.2d 938, 942 (Tex. 1998), a case based upon claims of nuisance and trespass, the court observed that "[w]ithout discovery of basic medical information from all plaintiffs, each defendant is put in the position of preparing to defend itself against claims that may not involve [its alleged contaminant]."

## V.     DEFENDANTS' PROPOSED "LONE PINE" ORDER

Applying the precepts behind the *Lone Pine* order to this case, the Defendants aver that such an order is a necessary and efficient step at this stage of the litigation that will streamline the process and save all involved tremendous time and expense. An order that requires precisely what was required in *Vioxx* – a plaintiff-specific expert report that states whether the plaintiff has suffered an injury, a description of that specific injury, whether formaldehyde caused the injury, the explanation for such an opinion, the specific medical findings that opinion, the identity of other causes considered by the expert, and the identity of the documents the expert relied upon in rendering his opinion -- is entirely appropriate. The same reasons that compelled Judge Fallon to issue a *Lone Pine* order in the *Vioxx* case are applicable here – over five years have elapsed since the first formaldehyde cases were filed, the parties have engaged in countless hours of discovery (both through document production and depositions), and the parties have held three bellwether and two summary jury trials. Also, just as Judge Fallon noted in *Vioxx*, the parties have conducted significant motion practice and attended multiple status conferences regarding various aspects of the case. Simply put, the time has come for the plaintiffs to establish that there is some objective form of evidence that supports their claims. As this Court is well aware, many plaintiffs have not seen even seen a doctor for the injuries they claim as a result of formaldehyde exposure. Therefore, the acquisition of an expert report establishing a formaldehyde-based injury is, in the words of Judge Fallon, "not too much to ask." *In re Vioxx Prod. Liab. Litig.*, 557 F.Supp.2d 741, 744 (E.D. La. 2008).

## VI. LONE PINE LITE

While the standard *Lone Pine* order is justified in this case, the Defendants are cognizant of the costs involved in obtaining an expert for each and every plaintiff in the case. This Honorable Court, therefore, might feel that a less-costly alternative is the best method to streamline this case. Accordingly, the Defendants propose as a possible alternative, a sort of middle ground for this particular *Lone Pine* order. Each plaintiff should produce some evidence, in the form of medical records, expert reports, or some other competent evidence, that establishes the plaintiff has undergone medical treatment for some condition that has been scientifically associated with formaldehyde. This evidence would, at the very least, establish the most basic connection between exposure to the chemical and some injury that can, according to the recognized scientific literature and study, actually be caused by such exposure. If some number of the plaintiffs cannot satisfy this minimal threshold after all this time, then their cases should be dismissed.

The litigation up to this point has proven that such an order is necessary. For example, the first bellwether plaintiff, Alana Alexander, dismissed her personal injury claims during the middle of her trial because she could not plausibly ask the jury to award her damages when she never saw a doctor for a formaldehyde-related illness or disease. The Defendants seek nothing more than to strike similarly situated plaintiffs from the MDL. If these plaintiffs cannot show that they even had an illness that required medical treatment in the first place – let alone a showing that the illness was actually caused by formaldehyde exposure – then they should not be allowed to proceed further in this litigation.

Additionally, the Defendants would point out that the costs for such an alternative *Lone Pine* order will be insignificant. In fact, most of the work to identify which plaintiffs have not sought treatment is already complete. In accordance with Pre-Trial Order 86 as modified by Pre-

Trial Order 88 (Rec. Doc. 20,770), the defendants completed a wholesale analysis of the Plaintiff Fact Sheets produced in this case on June 30, 2011, and notified the plaintiffs of the myriad deficiencies in these fact sheets. Pursuant to PTO 86 as modified by Pre-Trial Order 88, the Plaintiffs Steering Committee, through member attorney Mikal Watts, must compile updated and amended Fact Sheets and submit them to a technology company that will compile the results into a database. *See* Rec. Doc. 20,770, at p. 7. Once the database is completed, the PSC will provide a searchable copy to all liaison counsel. *Id*. When the database is received, the parties should have a very clear idea of which plaintiffs have treated with a physician for a formaldehyde-related illness, and which have not. Thus, the process to identify which plaintiffs should be dismissed would be extremely easy and inexpensive.

As the *Vioxx* Court stated, this proposed order is just as much a positive for the plaintiffs as it is the defendants – each side stands to preserve valuable time and expense by eliminating the meritless claims at this stage. The Defendants further point out that there is a limited amount of funds available to resolve these cases. As such, a *Lone Pine* Order would direct those funds to claimants who may have more legitimate claims rather than those who merely "signed up" looking for a piece of the settlement.

## VII.   CONCLUSION

A *Lone Pine* order is necessary to promote efficiency, protect fairness to all parties, and to streamline this long-standing litigation. At this stage, after many years of litigation, voluminous discovery, and several trials, it is now time for the plaintiffs to establish that they have suffered an illness related to formaldehyde exposure, or at the very least to show that they treated for an illness that has some medical connection to that exposure. For these reasons, the Defendants request that their motion be granted.

Respectfully submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/Andrew D. Weinstock
_____
**ANDREW D. WEINSTOCK (#18495)
JOSEPH G. GLASS (#25397)**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
andreww@duplass.com
jglass@duplass.com

and

**SCANDURRO & LAYRISSON
Timothy D. Scandurro #18424
Dewey M. Scandurro #23291**
607 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7100
(504) 529-6199 (FAX)
tim@scanlayr.com
dewey@scanlayr.com
**Counsel for Gulf Stream Coach, Inc.**

**THOMAS L. COUGILL
JEFFREY P. FULTZ
WILLINGHAM, FULTZ & COUGILL, LLP**
Neil Esperson Building
808 Travis Street, Suite 1608
Houston, TX 77002
(713) 333-7600
(713) 333-7601 (FAX)
tomc@willingham-law.com
**Counsel for Jayco, Inc. and Starcraft RV, Inc.**

**TOM W. THAGARD, III
JOSH BAKER
MAYNARD COOPER & GALE PC**
1901 Sixth Ave. North
2400 AmSouth/Harbert Plaza
Birmingham, Al 35203-2618
(205) 254-1000
(205) 254-1999 (fax)
tthagard@maynardcooper.com

**Counsel for Defendants, SunRay RV, LLC**

**BRENT M. MAGGIO**
**LORI DAIGLE**
**ALLEN & GOOCH**
3900 North Causeway Blvd, Ste. 1450
Metairie, Louisiana 70002
**836-5200**
**(FAX) 836-5205**
brentmaggio@allengooch.com
**Counsel for Heartland Recreational Vehicles, Inc. and Sun Valley, Inc. d/b/a Sun Lite**


**CYNTHIA THOMAS**
**GALLOWAY, JOHNSON, TOMPKINS BURR & SMITH**
#3 Sanctuary Blvd., Ste. 301
Mandeville, LA 70471
(985) 674-6680
Fax: (985)674-6681
cthomas@gtbs.com
**Counsel for Sunnybrook RV, Inc.**

**LYON H. GARRISON**
**RANDY C. MULCAHY**
**KELLY MORTON**
**GARRISON, YOUNT, FORTE, MULCAHY, L.L.C.**
909 Poydras Street, Suite 1800
New Orleans, LA 70112
527-0109
527-0686 (FAX)
lgarrison@garrisonyount.com
**Counsel for Defendant, TL Industries, Inc., Recreation by Design, LLC, Frontier RV, Inc., Cruiser RV, LLC and Play'Mor Trailers, Inc.**

**CHARLES R. PENOT, JR.**
**DOMINIC J. GIANNA**
**RICHARD A. SHERBURNE**
**SARAH A. LOWMAN**
**MIDDLEBERG RIDDLE & GIANNA**
KPMG Centre, Suite 2400
717 N. Harwood
Dallas, Texas 75201
(direct) 214.220.6334
(fax) 214.220.6807
cpenot@midrid.com
**Counsel for Fluor Enterprises, Inc.**

**GERARDO R. BARRIOS**
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, PC**
3 Sanctuary Blvd., Suite 201
Mandeville, LA  70471
(985) 819-8416
(985) 819-6716 (fax)
gbarrios@bakerdonelson.com
**Counsel for CH2M Hill Constructors, Inc.**
**DAVID KURTZ**
**KAREN WHITFIELD**
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, PC**
201 St. Charles Ave., Ste. 3600
New Orleans, LA 70170
566-5259
FAX: 636-5259
**Counsel for Shaw Environmental, Inc.**
**dkurtz@bakerdonelson.com**
kwhitfield@bakerdonelson.com

**ERNEST P. GIEGER, JR.**
**MIKE DIGIGLIA**
**GIEGER, LABORDE & LAPEROUSE, LLC**
701 Poydras Street, Suite 4800
New Orleans, LA 70139
561-0400
egieger@glllaw.com
mdigiglia@glllaw.com
**Counsel for Defendant, Forest River, Inc.**

**LARRY FELDMAN**
**ROBERT SHEESLEY**
**MCGLINCHEY STAFFORD, PLLC**
601 Poydras Street, 12th Floor
New Orleans, LA 70130
(504) 586-1200
(504)596-2800 (fax)
New Orleans, La 70130
**Counsel for Layton & Skyline Corporation**
**lfeldman@mcglinchey.com**
**rsheesley@mcglinchey.com**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of September, 2011, a copy of the foregoing Memorandum in Support of Motion for Entry of *Lone Pine* Order was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to all known counsel of record by operation of the court's electronic filing system.

                                 s/Andrew D. Weinstock
                                 _____
                                 ANDREW D. WEINSTOCK #18495
                                 andreww@duplass.com