UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE | * | |
| PRODUCT LIABILITY LITIGATION | * | SECTION "N-5" |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAG. JUDGE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO: | * | |
| *ALL CASES* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**OPPOSITION TO MOTION FOR ENTRY OF *LONE PINE* ORDER (REC. DOC. 22808)**

Although permissible under a broad reading of Federal Rule of Civil Procedure 16, the entry of *Lone Pine* orders is neither required nor explicitly authorized under any federal rule or statute. Rather, as one district judge has stated in an MDL proceeding, "[t]he propriety of entering a *Lone Pine* order appears to hinge on a number of factors, including (1) the posture of the action, (2) the peculiar case management needs presented, (3) external agency decisions impacting the merits of the case, (4) the availability and use of other procedures explicitly sanctioned by federal rule or statute, and (5) the type of injury alleged by plaintiffs and its cause." *In re Digitek Prod. Liab. Litig.*, MDL No. 1968, 264 F.R.D. 249, 256 (S.D. W.Va. 2010).

The *Lone Pine* order sought by defendants,[1] therefore, is a litigation tool to be used in consolidated mass tort cases only when special circumstances exist to justify such an order. In particular, the Court must balance whatever advantage may derive from requiring each plaintiff to present proof of specific causation/medical treatment, against the considerable expenditure and investment of time and cost on a global scale.

---

[1] The references to defendants herein relate to the original defendant-movants and Bechtel National, Inc., who has moved to adopt the arguments and submission of original defendant-movants. Rec. Doc. 22997.

The PSC submits that the instant motion for the entry of a *Lone Pine* order in this MDL should be denied, or alternatively deferred, because the motion fails to recognize at least two important preconditions for the entry of a *Lone Pine* order, neither of which has been satisfied herein. The PSC further submits that the requested entry of such an order not only is unnecessary, but actually would be counterproductive at this stage of the proceedings.

When an MDL has reached the present, mature stage of this matter, the primary goal of both the presiding Judge and the parties should be to encourage, explore and exhaust all reasonable prospects of global resolution. This is so because the MDL is a truly unique vehicle to achieve such resolution; conversely, once the various cases in an MDL are returned to their original fora for merits adjudication, the parties' counsel will not necessarily be coordinated in their efforts, and individual dockets likewise will be subject to different case management decisions by different presiding Judges. Common issues having been resolved through motion practice and a series of cost- and labor-intensive bellwether trials now having been conducted in this MDL, it would be counterproductive at this time for the parties to engage in any efforts not consistent with the objective of exhausting and exploring global resolution.

Notably, some of the defendant-movants already have commenced global settlement discussions with plaintiffs, while others have not yet begun to do so; but presumably <u>every</u> defendant-movant would agree that such efforts ought to be undertaken at this stage of the litigation. This motion does not serve that aim. Instead, it seeks to provoke merits-related discovery and costly litigation activity (a) without having first exhausted the prospects of settlement before such activity is undertaken and such costs incurred, and (b) without demonstrating how and why the production of specific causation proof for thousands of plaintiffs at this moment will encourage or inspire the parties' efforts at global resolution.

Also notable is the fact that defendants chiefly rely upon the precedent set by Judge Fallon in the Vioxx MDL. They suggest to this Court that entry of the order as requested would be consistent with Judge Fallon's approach in that case. In fact, the opposite is true. It was only <u>after</u> the global Vioxx settlement program was negotiated and announced that Judge Fallon identified those plaintiff cases which elected not to participate in the settlement program, and, for the purpose of case management <u>as to these non-settling cases</u>, directed the entry of a *Lone Pine* order to identify medical causation proof as a predicate for setting the cases for trial on the merits. The *Lone Pine* order in Vioxx to which defendant refer, therefore, did not affect the approximately 50,000 plaintiff cases which entered the global settlement program, but only those relatively few cases in which decisions were made by plaintiffs and their counsel to litigate against the defendant Merck instead of settling.  In short, the *Lone Pine* order in Vioxx was "dictated by circumstances at the windup of litigation rather than as a threshold sorting tool." *See* Rheingold & Pitter, "Lone Pine Orders: An Abused Remedy?," ABA Section of Litigation, Mass Torts Litigation Committee, <u>Mass Torts</u> (Fall 2009).

The Vioxx MDL also is instructive, and supportive of plaintiffs' position, for another reason:  The litigants in Vioxx successfully negotiated a global settlement based not upon the results or effects of a *Lone Pine* order, but rather on the basis of:  results from a series of bellwether trials, evidence as to the defendant product's safety and risk profile, expert testimony regarding general (vs. specific) causation, and thousands of Plaintiff Profile Forms.  Indeed, these sources of information proved sufficient for informed negotiations in a case that arguably was far more complicated than this one with respect to specific, medical causation.  Hence, no plausible argument can be made that the litigants in this MDL are not informed sufficiently at this time to proceed with meaningful settlement discussions.  There has been a series of

bellwether trials, evidence has been developed through discovery and trials as to the defendant products' risk and safety, as well as the science of general causation, and thousands of Plaintiff Fact Sheets have been provided, claims information which, even now and at great effort and expense, is being converted into a global, searchable database.  This is the time to mine this wealth of information for settlement discussions, not micro-manage the issue of specific causation.[2]

To suggest the order requested will somehow serve, rather than retard, efforts at reaching a global settlement, therefore, is truly to stand logic on its head. To the extent plaintiffs' counsel are Court-ordered to secure individual case written reports from medical experts, or even to obtain complete medical records, for a population of approximately 70,000 clients, the amount of litigation expense invested in each case will greatly increase, which in turn will reduce any potential net settlement recovery by that client. The lower the net recovery by the client after deducting fees and expenses, the more difficult it is for plaintiffs' counsel to represent the settlement as fair and justified, either in a class or mass joinder context. It is one thing to impose such litigation expense on plaintiffs who, for whatever reason, are unable to settle at a time when sufficient information is available to inform global settlement discussions.  It is a far different matter to add litigation cost investment to each plaintiff's case before entering negotiations which are made more difficult as these costs increase.

---

[2] Other Courts likewise have found that the entry of a *Lone Pine* order is inappropriate as a substitute for general discovery and bellwether trial procedures, both of which have been fully engaged in this MDL. The Southern District of Alabama, for example, was faced with a situation similar to the one at hand in this case in *Abrams v. CIBA Specialty Chems. Corp.,* Case No. 08-68, 2008 WL 4710724 (S.D.Ala. Oct. 23, 2008). There, claims of property damage resulting from DDT emissions at a chemical manufacturing plant were brought by approximately 270 plaintiffs against multiple defendants, and the district judge was asked by defendants to issue a *Lone Pine* order.  He declined to do so, however, because of the fact that extensive discovery had been undertaken and because of the court's decision to advance the case using a group of "test plaintiffs." *Abrams*, 2008 WL 4710724 at *5 ("the properties of each Plaintiff have been tested for the presence of DDTr and Defendants have been provided with the results").

Therefore, the first and most fundamental precondition for the entry of a *Lone Pine* order in a mature MDL proceeding is not satisfied as to defendant-movants. Their motion is premature without having satisfied the Court that, as to these defendants, global settlement prospects have been fully explored and exhausted, thus requiring that further merits-related (and costly) discovery activity be conducted.

The second precondition to the entry of a *Lone Pine* order which defendants have not satisfied is also basic: The requested order contemplates a dismissal <u>with prejudice</u>, the ultimate sanction in a civil case brought by a plaintiff, because of a plaintiff's inability to support specific causation by means of an expert's written opinion or record of treatment. Yet there is no clear authority to support the proposition that an individual causation expert or a medical record of treatment constitute legal prerequisites for presenting a personal injury case to a jury, in a case where (unlike, for example, the heart attack injury in Vioxx) the respiratory injury at issue is transient in the vast majority of cases, and the reported, irritant symptoms already are proven to be consistent with formaldehyde exposure.

The class certification and bellwether trial records herein contain the expert testimony of Dr. Patricia Williams, a board-certified toxicologist, to the effect that general causation is established in cases where plaintiffs report symptoms which are consistent with exposure to formaldehyde at the levels measured or indicated in the trailers they occupied. In many cases, trailer-specific or statistical proof of these levels has been offered; alternatively, there has been bellwether plaintiff testimony establishing exposure at a level in excess of the odor threshold for formaldehyde, a level recognized as causing irritant symptoms. Plaintiffs therefore should be permitted to present their claims to the jury without the necessity of offering either a medical opinion on specific causation or a medical record of treatment. The lack of such a report or

5

record may affect quantum in a given case, but cannot – and should not by Court order – be established as an across-the-board barrier to recovery.

*Lone Pine* orders are simply not appropriate in every case and are not suitable at every stage of the litigation. *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d at 744; *Morgan v. Ford Motor Co.*, No. 06-1080, 2007 WL 1456154, at *7 (D.N.J. May 17, 2007) (observing that *Lone Pine* orders "are not appropriate in all circumstances."). "Resorting to crafting and applying a *Lone Pine* order should only occur where existing procedural devices explicitly at the disposal of the parties by statute and federal rule have been exhausted or where they cannot accommodate the unique issues of this litigation." *In re Digitek*, 264 F.R.D. at 259.

Here, defendants have not presented sufficient justification for what is universally viewed as a specialized litigation tool in mass tort cases. "A *Lone Pine* order should issue only in an exceptional case and after the defendant has made a clear showing of significant evidence calling into question the plaintiffs' ability to bring forward necessary medical causation and other scientific information." *McManaway v. KBR, Inc.*, 265 F.R.D. 384, 388 (S.D. Ind. 2009); *In re Digitek*, 264 F.R.D. at 259 (finding that defendants had not shown that case was an exceptional case "justifying the extraordinary relief" of a *Lone Pine* order); *In re 2004 DuPont Litigation*, No. 04-229-DLB *et al.*, 2006 WL 5097316, at *2 (E.D. Ky. March 8, 2006) (rejecting *Lone Pine* order where information was available to defendants through written discovery). No exceptional case exists in this MDL, wherein plaintiffs have: (1) presented over 60,000 PFSs which identify with specificity the nature and extent of the injuries claimed by each plaintiff;[3] (2) presented Dr. Patricia Williams' expert testimony on general causation evidence in a number of bellwether trials and summary jury trials, to the effect there is a credible link between the

---

[2] These PFSs have been submitted to Mikal Watts of the Plaintiffs' Steering Committee, who pursuant to Pretrial Order No. 88 has been tasked with the creation of a searchable database of PFS information deemed by defendants to be information necessary and essential for settlement evaluation purposes.

symptoms and/or injuries known to be reported by plaintiffs and formaldehyde exposure; and, (3) conducted formaldehyde testing of thousands of emergency housing units in which certain plaintiffs resided. Through these efforts, plaintiffs' complaints present evidence sufficient to support *prima facie* cases of respiratory irritation and/or injury.

It further should be noted that plaintiffs in this MDL already have been required by the Court to provide to defendants signed authorizations for the release of medical records and, pursuant to Pretrial Order No. 88, to provide additional medical information in PFSs when plaintiffs seek the recovery of medical expenses. Defendants have filed numerous motions to dismiss where the information provided in PFSs did not meet the requirements of Pretrial Order Nos. 2, 32 & 88. If a plaintiff fails to timely or substantially complete their PFS under these existing Pretrial Orders, this Court has acted upon motions to dismiss that individual's claims. Indeed, an entire subsection of Pretrial Order No. 88 was devoted to a deficiency process that defendants could use to compel discovery responses to certain "key fields" in the PFS or seek dismissal. The procedure has been used successfully by defendants, in that certain plaintiffs' cases have been, or are in the process of being, dismissed with prejudice. Thus, adequate remedies already are available for defendants to dismiss claims of plaintiffs who fail to present claims information which includes the "key fields" necessary for settlement discussion.

Had the defendant-movants already explored and exhausted all prospects of global settlement, the instant motion might be appropriate to consider with respect to those plaintiffs identified as being unable or unwilling to settle their claims.  Even then, the legal question whether a dismissal of claims of injury consistent with general causation evidence can occur solely based on the failure to secure a specific causation expert report or produce a medical record of treatment, is one which this Court must seriously consider.  Once global settlement

efforts are concluded, in other words, it remains to be seen whether the factors justifying a *Lone Pine* order can be said to exist in this MDL.

For all of these reasons, the instant motion should be denied.

Respectfully submitted:

**FORMALDEHYDE TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY:  */s/Gerald E. Meunier*
GERALD E. MEUNIER, #9471
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:     504/522-2304
Facsimile:      504/528-9973
gmeunier@gainsben.com

**COURT-APPOINTED PLAINTIFFS' STEERING COMMITTEE**

ROBERT M. BECNEL #14072
RAUL BENCOMO, #2932
ANTHONY BUZBEE, Texas #24001820
FRANK D'AMICO, JR., #17519
ROBERT C. HILLIARD, Texas #09677700
MATT MORELAND, #24567
DENNIS C. REICH Texas #16739600
MIKAL C. WATTS, Texas #20981820

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing

8

document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

            */s/Gerald E. Meunier*
            GERALD E. MEUNIER, #9471