# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

IN RE: FEMA TRAILER     )  MDL NO. 1873
FORMALDEHYDE      )
PRODUCT LIABILITY LITIGATION )
             )
_____ ) SECTION: N(4)
             )
             ) JUDGE: ENGELHARDT
THIS RELATES TO:     ) MAG: ROBY
             )
Plaintiff: Marvin Spears     )
             )
_____ )

## PLAINTIFF FACT SHEET

## I. INSTRUCTIONS

**IT IS VERY IMPORTANT FOR YOU TO COMPLETE THIS FORM IN ITS ENTIRETY
IN ORDER TO PROTECT YOUR CLAIM. THIS FORM MUST BE COMPLETED
WITHIN THIRTY(30) DAYS OF THE TRANSFER OR FILING (AS DEFINED IN PRE-
TRIAL ORDER NO. 2(DOC NO. 87)) OF YOUR COMPLAINT IN THIS LITIGATION
OR YOU WILL NOT BE ABLE TO PARTICIPATE IN THIS LITIGATION. ONCE
COMPLETED, PLEASE IMMEDIATELY RETURN THIS FORM TO YOUR
ATTORNEY.**

Please provide the following information for each person claiming a formaldehyde related
injury as a result of living in a travel trailer or mobile home provided by FEMA after Hurricanes
Katrina and Rita in August and September, 2005. **A** separate **Plaintiff Fact Sheet must be
completed for each individual claiming exposure to formaldehyde. For example, a parent
must complete a separate form for each minor child and a personal representative must
complete a separate form for each deceased person.** Whether you are completing this fact
sheet for yourself or for someone else, please assume that "You" means the person who resided
in or lived in the housing units.

If additional space is needed for any response, please attach additional sheets. If the
person completing this Fact Sheet does not know or does not recall the information requested in
any question, that response should be entered in the appropriate location.

1

## II.   PERSONAL INFORMATION

A.   Name (person completing form): Marvin Spears

B.   Maiden or other names used or by which you have been known: None

C.   Current Street Address: 7300 Dogwood Drive, New Orleans, LA 70126

D.   Home Telephone No.: 504-813-0728
Cell Phone No.: 504-669-3745
Work Telephone No: None
Other Telephone Nos.: 985-726-9004

E.   Email address:   None

## III.   CASE INFORMATION

A.   If you are completing this questionnaire in a **representative** capacity (for example, on behalf of the estate of a deceased person or on behalf of a minor), please complete the following information on such person:

1.   State which individual or estate you are representing:

2.   Maiden Or Other Names Used or By Which Such Person Has Been Known:

3   Address (or last known address if deceased):

4.   Home Telephone No.:
Cell Phone No.:
Work Telephone No:
Other Telephone Nos.:

5.   E-mail address:

6.   If you were appointed as a representative by a court, state the:

2

Court: _____   Date of Appointment: _____

7. What is your relationship to the deceased or represented person or person claimed to be injured? _____

8. If you represent a decedent's estate, state the date of death of the decedent and the place where the decedent died:

_____

_____

B. Please state the name and address of the attorney representing you:

Parker Waichman Alonso LLP and Becnal Law Firm LLC
_____
Attorney's Name/Law Firm
Great Neck, New York, 11021 and Reserve, LA 70084
City, State and Zip Code

C. Please state the following: (If you are a representative, please state this information for each such person being represented):

1. Are you claiming that you have developed, or may have developed, a disease or illness as a result of being exposed to formaldehyde while residing in a FEMA-provided trailer or mobile home?
Yes ☑        No ☐

2. What is your understanding of the illness or disease you claim you have developed, or may in the future develop, from living in a FEMA trailer or mobile home? Including but not limited to ulcers, bronchitis, and emotional problems; see records and authorizations.

3. During the time that you lived in your FEMA trailer, did you experience or report to a physician any of the following symptoms? If yes, place a check mark (✓) by the symptom that you experienced.

☐ irritation to eyes
☐ burning of eyes
☐ tearing of eyes
☐ irritation to nasal membranes (inside of nose)
☐ burning of nasal membranes (inside of nose)
☐ bleeding of nasal membranes (inside of nose)
☐ irritation or itching of skin
☐ burning of skin
☐ rashes on skin
☐ drying or scaling of skin
☐ scaling or itching of eyelids
☐ irritation or swelling of eyelids or eye area

☐ tingling or swelling of lips or face area
☐ headaches
☐ nausea
☐ vomiting
☑ bloody vomiting
☑ abdominal pain
☑ diarrhea
☑ difficulty in breathing
☑ wheezing
☑ shortness of breath
☑ persistent cough
☐ tightness of the chest

3

☑ bronchitis
☑ throat irritation
☐ hoarseness
☐ laryngitis
☐ pneumonia
☑ upper respiratory tract infections
☐ pulmonary edema
☐ asthma attacks for the first time in your life
☐ asthma attacks that are recurrence of
    childhood asthma
☐ allergies for the first time in your life
☐ worsening of allergies that you had previous
    to living in FEMA trailer

☐ allergic contact dermatitis
☑ dizziness
☐ unconsciousness
☐ convulsions or seizures
☐ blood in urine
☐ abnormal liver enzymes
☐ nephritis (inflammation of kidneys)
☑ low blood pressure
☐ hypothermia (low body temperature)
☐ miscarriage or stillbirth
☑ abnormal laboratory tests on blood
☐ abnormal laboratory tests on urine

Please list any other symptoms you have suffered as a result of residing in a FEMA trailer (not listed above) and any conditions for which you have been diagnosed by a physician. Had a blood transfusion due to abdominal pain from which I was throwing up due to nausea and headaches.

4. Since you moved into the FEMA trailer and up to the present date, have you been diagnosed with cancer? No

    If yes, which kind of cancer?

5. When do you claim this injury or disease first occurred? I do not recall

6. Did you ever suffer this type of illness or disease prior to living in the FEMA trailer?
    Yes ☐    No ☑

    *If "Yes,"* when and who diagnosed the condition at that time?

7. Do you claim that your use of a FEMA trailer or mobile home worsened a condition that you already had or had in the past?
    Yes ☐    No ☑

    *If "Yes,"* set forth the illness, disease or condition; whether or not you had already recovered from that illness, disease or condition before you began

4

residing in a FEMA trailer or mobile home and the date of your recovery, if any. _____

_____
_____

8.  **Are you claiming mental and/or emotional damages as a result of residing in a FEMA trailer or mobile home?**
    Yes ☑        No ☐

    *If "Yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor, pastor or religious counselor) from whom you have sought treatment for any psychological, psychiatric or emotional problems during the last seven (7) years, state:

    Name and address of each person who treated or counseled you:
    Pastor Lamar Dunford- 10250 Hayne Blvd., New Orleans, LA 70127
    _____
    _____
    _____

    To your understanding, describe the condition for which treated:
    Depression
    _____
    _____
    _____

    State when you were treated for this psychological, psychiatric or emotional problem
    No formal treatment
    _____
    _____
    _____

    List the medications prescribed or recommended by the physician or counselor
    No formal treatment
    _____
    _____
    _____

9.  Are you making a claim for medical expenses as a result of the injury, illness or disease identified in C.2. above?
    Yes ☑        No ☐

    *If "Yes,"* state the amount of your claim:   Approximately $10,000.  _____

5

## IV.   BACKGROUND INFORMATION

A.   Identify each **address** at which you have resided during the last five (5) years, and list when you started and stopped living at each one:

| Address | Dates of Residence |
|---|---|
| 7300 Dogwood Drive, New Orleans, LA 70126 | Until Hurricane Katrina |
| 201 Meadows, Slidell, LA | Lived in my sisters trailer 8/12/2005-7/25/2006 |
| 7300 Dogwood Drive, New Orleans, LA 70126 (in FEMA trailer) | 7/25/2006-3/5/2007 |
| 7300 Dogwood Drive, New Orleans, LA 70126 | 3/5/2007-present |
| | |

B.   State Driver's License Number and State Issuing License: 006273367 Louisiana

C.   Date and Place of Birth: April 3, 1965          Place: New Orleans, LA

D.   Sex:  Male ✓          Female ☐

E.   Identify the highest level of **education** (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded:

| Institution | Dates Attended | Course of Study | Diplomas or Degrees |
|---|---|---|---|
| U Rhode Island | 1983-1985 | Criminology | None |
| Military Distant Learning | 1987-1988 | Criminal Justice | 4 year degree |
| | | | |

F.   Employment Information

1.   Current employer (if not currently employed, state your last employer):

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| US Navy | N/A | I do not recall-disabled now | Navy Seal- Classified disabled Vet retired |
| | | | |

2.   List the following for each employer you have had in the last ten (10) years:

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| US Navy | N/A | I do not recall | Navy Seal |
| | | | |

6

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

3.   Are you making a wage loss claim, or claim of lost earning capacity as a result of your exposure to formaldehyde while residing in a FEMA trailer or mobile home?

Yes ☐        No ☑

*If "Yes,"* state the following:

a.   If you are making a claim for lost earnings and/or lost earning capacity, state your income from employment for each of the last five (5) years:

| Year | Income |
|------|--------|
| _____ | $_____ |
| _____ | $_____ |
| _____ | $_____ |
| _____ | $_____ |
| _____ | $_____ |

b.   Total amount of time which you have lost from work as a result of any and all condition(s) related to residing in a FEMA trailer or mobile home, and the amount of income that you lost:

_____

_____

G.   Previous Claims Information

1.   Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any sickness or disease, excluding auto accidents?

Yes ☐        No ☑    Don't recall ☐

*If "Yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and nature of the sickness or disease._____

_____

_____

7

## IV.   FAMILY INFORMATION

A.   To the best of your knowledge has any child, parent, sibling, or grandparent of yours suffered from any type of disease [such as asthma, shortness of breath, headaches, lung disease, liver disease, skin disease, neurological disease, allergies, or cancer].
Yes ☐      No ☑      Don't Know ☐

*If "Yes,"* provide the information below.

| Name | Relationship | Current Age (or Age at Death) | Medical Condition | Cause of Death (if applicable) |
|------|-------------|-------------------------------|-------------------|-------------------------------|
|      |             |                               |                   |                               |
|      |             |                               |                   |                               |
|      |             |                               |                   |                               |
|      |             |                               |                   |                               |
|      |             |                               |                   |                               |
|      |             |                               |                   |                               |

B.   Are you are claiming the wrongful death of a family member related to formaldehyde?
Yes ☐      No ☑

*If "Yes,"* state the name of the deceased and fill out a separate form for the deceased.
Name: _____

## V.   FEMA TRAILER OR MOBILE HOME UNIT

Please respond to Sections V. A-E below, including all subparts, with respect to **each** FEMA trailer or mobile home that you have resided in.  Attach additional sheets if necessary.

A.   Please provide the following information regarding the FEMA trailer or mobile home:

1.   Manufacturer of trailer or mobile home: Cherokee _____

2.   VIN: I do not recall _____

3.   FEMA Identification No.: 93-9730317 _____

4.   Bar Code Number on FEMA housing unit: I do not recall _____

8

5.    Was the temporary housing unit provided to you by FEMA a travel trailer or a mobile home?   Travel Trailer ☑    Mobile Home ☐

6.    Move-in Date: 7/25/2006

7.    Move-out Date: 3/5/2007

8.    Please state the mailing address and physical location for the FEMA trailer or mobile home unit.
7300 Dogwood Drive, New Orleans, LA 70126

9.    Was the FEMA trailer or mobile home located in a trailer park or on private property? Private property

10.   State the reason you stopped living in the FEMA trailer or mobile home:
Was making me sick (coughing a lot, dizziness and headaches) and moved into my half finished home.

11.   Please state the approximate square footage of the FEMA housing unit: 200 square feet

12.   Please state the approximate length and width of the FEMA housing unit: 8 by 20

13.   What is/was the average number of hours spent in the FEMA trailer or mobile home each day? 16 hours

14.   Is/was the FEMA housing unit "jacked-up" on blocks (wheels off of the ground)?
Yes ☑        No ☐

15.   Is/was the FEMA housing unit hooked up to a sewer line?
Yes ☑        No ☐

16.   Is/was the FEMA housing unit hooked up to an electrical line?
Yes ☑        No ☐

17.   Is/was the FEMA housing unit hooked up to natural gas line?
Yes ☐        No ☑

18.   Is/was propane gas used in the FEMA housing unit?
Yes ☑        No ☐

9

19. How many days per week did you work outside of the home during the time you lived in the FEMA trailer or mobile home? None

20. Did you ever temporarily live in another location during the time you resided in the FEMA trailer or mobile home:
Yes ☐     No ☑

*If "Yes,"* please state the following:

Where did you temporarily live? 201 Meadows, Slidell, LA (My sister's trailer)

For what period of time did you temporarily live in another location?
Approx. 8/12/2005-7/25/2006

B. Have any air quality tests ever been performed on your FEMA trailer or mobile home?
Yes ☐     No ☑

*If "Yes,"* please state when the test was performed and who prepared this testing:_____

C. Was your FEMA trailer or mobile home ever fumigated for insects or any other reason?
Yes ☐     No ☑

*If "Yes,"* please state the following:

Date and reason for fumigation: _____

D. Were any repairs, service, or maintenance performed on your FEMA trailer or mobile home?
Yes ☑     No ☐

*If "Yes,"* please state the date and reason for repair, service or maintenance:
In 2006 (exact date unknown) the A/C unit broke.
_____

_____

E. Please state in the chart provided below the name and present address and telephone number of every person who resided in your FEMA trailer or mobile home, the period of time such person resided in the FEMA trailer or mobile home (however brief), and whether such person is making a claim for personal injury as a result of residing in the FEMA trailer or mobile home.

10

| Name | Current Age | Current Address and Telephone number | Dates lived in the FEMA trailer or mobile home | Making personal injury claim? | If "Yes," what is the nature of the personal injury? |
|---|---|---|---|---|---|
| Marvin Speare | 44 | 7300 Dogwood Drive, New Orleans, LA 70126 (504) 669-3745 | From 7/25/06<br>To 3/5/07 | Yes ☑<br>No ☐<br>Don't Know ☐ | Ulcers, dizziness, headaches, coughing a lot, bronchitis, and emotional problems. |
| | | | From _____<br>To _____ | Yes ☐<br>No ☐<br>Don't Know ☐ | |
| | | | From _____<br>To _____ | Yes ☐<br>No ☐<br>Don't Know ☐ | |
| | | | From _____<br>To _____ | Yes ☐<br>No ☐<br>Don't Know ☐ | |
| | | | From _____<br>To _____ | Yes ☐<br>No ☐<br>Don't Know ☐ | |
| | | | From _____<br>To _____ | Yes ☐<br>No ☐<br>Don't Know ☐ | |

## VI.   MEDICAL BACKGROUND

A.   Height: 6'3"

B.   Current Weight: 245

Weight prior to living in a FEMA trailer or mobile home: 265

C.   Personal Smoking/Tobacco Use History: *Check only the answer and that applies to you and fill in the blanks applicable to your history of smoking and/or tobacco use.*

☐   Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.

☑   Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.

11

    1.     Date on which smoking/tobacco use ended: 2003 _____

    2.     Amount smoked or used on average:
        4 _____ per day for 2 _____ years.

☐   Current smoker of cigarettes/cigars/pipe tobacco or user of chewing tobacco/snuff.

    1.     Amount currently smoked or used on average:
        _____ per day for _____ years.

D.    Other Smoking/Tobacco Use History:

If someone who resides or resided with you in your FEMA housing unit is or was a smoker of cigarettes/cigars/pipe tobacco or user of chewing tobacco/snuff, please state the following concerning their smoking history:

    1.     Amount smoked or used on average, if you know:
        _____ per day for _____ years.

    2.     Relationship to you: _____

    3.     Please state whether the smoking occurred inside, outside or both._____

E.    Were you pregnant during the time in which you resided in a FEMA trailer or mobile home?
Yes ☐     No ☑

*If "Yes,"* what was the date of birth:_____.

Did your pregnancy terminate in a miscarriage or a stillborn child?
Yes ☐     No ☑

F.    Have you ever suffered from any of the following illnesses, diseases or abnormal physical conditions?

    1.     Lung or other respiratory disease
        Yes ☑     No ☐

        *If "Yes,"* please indicate the following:

        Name and description of each illness, disease, or abnormal condition:
        Bronchitis
        _____

        The date of illness:
        2/25/2007
        _____

    2.     Infectious disease (such as, tuberculosis, pneumonia, hepatitis)

Yes ☐          No ☑

*If "Yes,"* please indicate the following.

Name and description of each illness, disease, or abnormal condition:

_____

_____

The date of illness:

_____

_____

3.  Long-term stomach or bowel disease
    Yes ☑          No ☐

    *If "Yes,"* please indicate the following.

    Name and description of each illness, disease, or abnormal condition:
    Ulcers
    _____

    The date of illness:
    2006
    _____

    _____

4.  Skin disease
    Yes ☐          No ☑

    *If "Yes,"* please indicate the following.

    Name and description of each illness, disease, or abnormal condition:

    _____

    _____

    The date of illness:

    _____

    _____

G.  Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1.  To your knowledge, have you ever had any of the following tests performed: chest X-ray, CT scan, MRI.

    Yes ☑          No ☐          Don't Recall ☐

    *If "Yes,"* answer the following:

| Diagnostic Test | When | Treating Physician | Hospital | Reason |
|---|---|---|---|---|
| X-Ray | 2/25/2007 | Arman Abdalkhani | Tulane University | Coughing & dizziness |
|  |  |  |  |  |
|  |  |  |  |  |

13

| | | | | |
|---|---|---|---|---|

## VII. MEDICAL DIAGNOSIS

A. Please identify the doctor or health care provider(s) who treated you for each disease, illness or injury that you claim you (or the person you represent) suffered as a result of **living** in a FEMA trailer or mobile home and the date of the diagnosis.

B. Doctor's Name: Tulane Medical Center
Specialty, if any: _____
Address: 1415 Tulane Avenue, New Orleans, LA 70112
Phone: I do not recall
Treatment received: See medical records
Dates of treatment: See medical records

Doctor's Name: New Orleans VA Outpatient Clinic
Specialty, if any: _____
Address: 1601 Perdido Street, New Orleans, LA 70112
Phone: I do not recall
Treatment received: See medical records
Dates of treatment: See medical records

Doctor's Name: Dr. A. Albright
Specialty, if any: Gastroenterology
Address: 131-13 Cherokee Rose Lane, Covington, LA 70433-7195
Phone: 985-871-1456
Treatment received: Blood transfusion and polypectomy
Dates of treatment: 2/2007

C. If you are alleging psychological symptoms or emotional problems as a result of living in a FEMA trailer or mobile home, please identify any physician that you have received psychological care and provide a medical records authorization.
No formal treatment

D. Has any health care professional told you that your alleged illness, disease, or injury is related to living in a FEMA trailer or mobile home?
Yes ☐      No ☑

*If "Yes,"* please provide the name and address of the health care professional.

_____

_____

14

## VIII.  DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"Yes"* or *"No."* Where you have indicated *"Yes,"* please attach **a copy of** the documents and things to your responses to this Plaintiff Fact Sheet.

    A.    Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this Plaintiff Fact Sheet.
    Yes ☑    No ☐

    B.    Standard Form 95 submitted to any federal agency regarding any claim related to a FEMA trailer or mobile home, including any and all attachments.
    Yes ☑    No ☐

    C.    Any test results from any testing done on your FEMA trailer or mobile home.
    Yes ☐    No ☑

    D.    All bills from any physician, hospital, pharmacy, or other healthcare provider, if you incurred related medical expenses.
    Yes ☑    No ☐

    E.    Any questionnaires that you have filled out to assist any individual or entity with any testing done on your FEMA trailer or mobile home.
    Yes ☐    No ☑

    F.    Decedent's death certificate, if applicable.
    Yes ☐    No ☑

    G.    Report of autopsy of decedent, if applicable.
    Yes ☐    No ☑

## IX.  LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

For each medical provider and pharmacy identified in Sections A through F below, please fill out and sign and date an attached authorization. You must also sign and date five (5) blank medical authorizations and attach them to this Form.

You must also sign and date authorizations permitting social security disability and workers' compensation records to be requested, to the extent applicable.

15

A.   Identify your current family and/or primary care physician:

| Name | Address |
|------|---------|
| Dr. Stephanie L. Sarrat | 2633 Napoleon Avenue, Ste 400, New Orleans, LA 70115 |
|  |  |
|  |  |

B.   Identify your primary care physicians for the last seven (7) years.

| Name | Address | Approximate Dates |
|------|---------|-------------------|
| Dr. Stephanie L. Sarrat | 2633 Napoleon Avenue, Ste 400, New Orleans, LA 70115 | I do not recall |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

C.   Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last seven (7) years.

| Name | Address | Admission Dates | Reason for Admission |
|------|---------|-----------------|----------------------|
| Tulane Medical Center | 1415 Tulane Ave, New Orleans, LA 70112 | See medical records | See medical records |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

D.   Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last seven (7) years.

| Name | Address | Admission Dates | Reason for Admission |
|------|---------|-----------------|----------------------|
| New Orleans VA Outpatient Clinic | 1601 Perdido Street, New Orleans, LA 70112 | See medical records | See medical records |
| Dr. A. Albright | 131-13 Cherokee Rose Ln, Covington, LA 70433 | 2/2007 | Blood transfusion and polypectomy |
| Slidell Memorial Hospital | 1001 Gause Blvd., Slidell, LA 70458 | See medical records | See medical records |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

E.   Each physician or healthcare provider from whom you have received treatment during the last seven (7) years.

| Name | Address | Dates of Treatment |
|------|---------|--------------------|
| Tulane Medical Center | 1415 Tulane Ave., New Orleans, LA 70112 | See medical records |
| New Orleans VA Outpatient Clinic | 1601 Perdido St., New Orleans, LA 70112 | See medical records |
| Dr. A. Albright | 131-13 Cherokee Rose Ln, Covington, LA 70433-7405 | 2/2007 |

16

| | | |
|---|---|---|
| Dr. Stephanie L. Sarral | 2633 Napoleon Avenue, Ste 400, New Orleans, LA 70115 | I do not recall |
| Slidell Memorial Hospital | 1001 Gause Blvd., Slidell, LA 70458 | See medical records |
| | | |
| | | |

F.      Each pharmacy that has dispensed medication to during the last seven (7) years.

| Name | Address |
|---|---|
| WalMart | Slidell, LA 70460 |
| Rite Aid | 2669 Canal Street, New Orleans, LA 70119 |
| | |
| | |
| | |

# CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. §1746 that all of the information provided in this Plaintiff Fact Sheet is true and correct to the best of my knowledge, and that I have supplied all the documents requested in Part VIII of this Plaintiff Fact Sheet, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have signed the authorizations attached to this declaration.

_Marvin Spears_                    MARVIN SPEARS            6/10/08

Signature of Plaintiff              Print Your Name          Date

17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL No. 1873

**AUTHORIZATION FOR RELEASE OF
MEDICAL RECORDS PURSUANT TO 45
C.F.R. § 164.508 (HIPAA)**

Name: *MARVIN SPEARS*

Date of Birth: *4-3-65*

Last Four Numbers of SSN: *438/-45-1509*

    I hereby authorize _____ (the "Provider") to release all existing records regarding the above-named person's medical care, treatment, physical condition, and/or medical expenses to the law firm of **Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock, 3838 N. Causeway Boulevard, Suite 2900, Metairie, LA 70002, and/or to the law firm of** _____ _____**and/or their designated agents.** These records shall be used or disclosed solely in connection with the currently pending FEMA Formaldehyde product liability litigation involving the person named above. This authorization shall cease to be effective as of the date on which the above-named person's FEMA Formaldehyde product liability litigation concludes.

    This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs, EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms, admission and discharge records, operation records, doctor and nurses notes (excluding psychotherapy notes maintained separately from the individual's medical record that document or analyze the contents of conversation during a private counseling session or a group, joint, or family counseling session by referring to something other than medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills, invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing information. It also includes, to the extent such records currently exist and are in your possession, insurance records, including Medicare/Medicaid and other public assistance claims, applications, statements, eligibility material, claims or claim disputes, resolutions and payments, medical records provided as evidence of services provided, and any other documents or things pertaining to services furnished under Title XVII of the Social Security Act or other forms of public assistance (federal, state, local, etc.). This listing is not meant to be exclusive.

    This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this

authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA.

Any copy of this document shall have the same authority as the original, and may be substituted in its place.

Dated this _10_ day of _JUNE_ , 2008.

_Marvin Spears_
[PLAINTIFF OR REPRESENTATIVE]

If a representative, please describe your relationship to the plaintiff and your authority to act on his/her behalf:_____

NAME OF FACILITY: _____

Authorization for Use and Disclosure of Protected Health Information (PHI)
pursuant to HIPAA Privacy/Regulations, 45 CFR§§ 160&164 and Louisiana Revised Statutes,
Title 40: 1299.41, et seq., 40:1299.96 et seq., 13:3715 et seq. and C.C.P. art. 1467

| Patient Legal Name | Birth Date | Social Security No. |
|---|---|---|
| MARVIN SPEARS | 4-3-65 | 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 |

Address: 7300 DOGWOOD DR.          Telephone No.: 504-669-3745
City: NEW ORLEANS    State: LA     Zip Code: 70126

I hereby authorize the Medical Records Custodian of _____
To disclose medical record information and/or protect health information and to provide a complete and certified copy of my entire record of the patient listed above to:

Name. _____

Title. _____

Address. _____

Purpose: To Protect My Legal Rights

For Treatment Date(s): All Available

| Type of Access | | | | |
|---|---|---|---|---|
| Requested: | q Abstract/pertinent<br>q Emergency Room<br>q H&P<br>q Consult Report<br>q Operative Report<br>q Rehab Services | q Lab<br>q Imaging/Radiology<br>q Cardiac Studies<br>q Face Sheet<br>q Nursing Notes<br>q Medication Record | q Progress Notes<br>q Physician's Orders<br>q Entire Record<br>q Other_____ | |
| q Copies of the records &<br>q Inspection of the record | | | | |

_MS_ I acknowledge, and hereby consent to such, that the released information may contain
Initials   alcohol, drug abuse, psychiatric, HIV testing, HIV results, or AIDS information.

This authorization shall expire upon the following expiration date or event (if I fail to specify an expiration date or event, this authorization will expire in four [4] years from the date on which it was signed): _Marvin Spear_

You have my specific consent to meet and discuss in person or by telephone with my attorneys only, any and all protected health information.

- I understand that I have a right to revoke this authorization at any time. I understand that if I revoke this authorization, I must do so in writing and present my written revocation to the above-named health care provider. I understand that the revocation will not apply to information that has already been released in response to this authorization. I understand that the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy.
- I understand that the information used or disclosed pursuant to this authorization may be subject to re-disclosure by the recipient and no longer protected.
- Fees/charges will comply with all laws and regulations applicable to release information.
- I understand authorizing the use or disclosure of the information identified above is voluntary and I may refuse to sign. My refusal to sign will not affect payment for or coverage of services, or ability to obtain treatment.
- I understand that I may inspect or copy the information used or disclosed upon request.
- **You are specifically not authorized to speak or confer with anyone except me, or my attorneys, unless you have the written consent of my attorneys or me.**

Pursuant to HIPAA Privacy/Regulations, 45 CFR §§ 160 & 164.

I have read the above and authorize the disclosure of the protected health information as stated.

_Marvin Spears_                    _6/10/08_
Signature of Patient/Legal Representative        Date

If signed by legal representative, relationship to patient: _____

## PRIVACY ACT RELEASE LANGUAGE

I, _MARVIN SPEARS_ [insert name] understand that information

maintained by the Federal Emergency Management Agency (FEMA) and contained in

files related to disaster assistance provided to me by FEMA is subject to the Privacy

Act of 1974, 5 U.S.C. 552a. I hereby authorize FEMA to release to my attorney

_____, Plaintiffs' Liaison Counsel Justin Woods and

Gerald E. Meunier, and Defense Liaison Counsel Andrew D. Weinstock, information

contained in FEMA's Privacy Act files related to the travel trailer or mobile home unit

provided to me by FEMA.

Dated: _6 - 10 - 08_

Name: _MARVIN SPEARS_ (print legibly or type out name)

Signature: _Marvin Spears_

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>Federal Emergency Management Agency<br>Office of the Director<br>500 C Street South West<br>Washington D.C. 20472 | 2. Name, Address of claimant and claimant's personal representative, if any. (See Instructions on reverse.) (Number, Street, City, State and Zip Code)<br><br>Marvin Spears<br>7300 Dogwood Drive<br>New Orleans, LA 70126 |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>□ MILITARY  ☑ CIVILIAN | 4. DATE OF BIRTH<br>04/03/05 | 5. MARITAL STATUS<br>married | 6. DATE AND DAY OF ACCIDENT<br>SEE ATTACHED RIDER | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)
The United States of America (U.S.), through its agencies, including but not limited to the Federal Emergency Management Agency (FEMA) was negligent, reckless, careless, grossly negligent and acted with deliberate indifference to the health and safety of the public and the claimant herein by failing to provide the claimant with a housing unit that was reasonably safe and not dangerous. The U.S. and its agencies, including but not limited to FEMA, breached its duty to provide reasonably safe and habitable housing by providing a trailer housing unit to the claimant that exposed claimant to excessive and unsafe levels of formaldehyde. The U.S. and its agencies, including but not limited to FEMA, provided a trailer housing unit that contained building materials which emitted formaldehyde in excess of acceptable limits. The trailer housing unit provided to claimant was in violation of local, state, national and international statues, regulations and trade group standards regarding formaldehyde exposure. The U.S. and its agencies, including but not limited to FEMA, failed to insure
SEE ATTACHED RIDER

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.
The claimant has suffered and continues to suffer from eye, nose and throat irritation, headache, nausea, asthma like symptoms, shortness of breath, emotional distress, fear of illness, including cancer. The foregoing are a direct result of exposure to excessive levels of formaldehyde, a known carcinogen. The claimant has and will continue to suffer and experience fear, anxiety and distress because of the risk of latent and/or future disease resulting from the exposure. Claimant will require medical monitoring for life to check for signs of formaldehyde based injury. Claimant is also claiming all damages flowing from the deprivation of constitutional rights, privileges and immunities as set forth in #8(SUPRA).

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| | |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY<br>$500,000 | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br>$500,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>Marvin Spears | 13b. Phone number of person signing form<br>(504) - 669 - 3945<br>(504) - 214 - 4788 | 14. DATE OF SIGNATURE<br>3/7/08 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

BECKER, WAICHMAN & ALONSO
ATTORNEYS AT LAW
NSW 76 CRICKWOOD ROAD
SUITE 101
GREAT NECK, NY 11021

95-109

STANDARD FORM 95
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance?  ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.    ☐ No

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes    ☐ No    |    17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance?  ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).    ☐ No

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a)  In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b)  In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c)  In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d)  Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A.  Authority:  The requested information is solicited pursuant to one or more of the following:  5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  Principal Purpose:  The information requested is to be used in evaluating claims.
C.  Routine Use:  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  Effect of Failure to Respond:  Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

RIDER

6. Claimant became aware of the potential exposure within the last two years.

8. Basis of Claim (state in detail the known facts and circumstances attending the damage, injury or death, identifying the persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

that the trailer housing units provided to claimant were suitable for their intended use. The U.S. and its agencies, including but not limited to FEMA, failed to properly inspect the units to make certain that they were in compliance with all local, state, federal and international regulations and standards. The U.S. and its agencies, including but not limited to FEMA, provided trailer housing units that failed to adhere to express and/or implied warranties of habitability and fitness. The U.S. and its agencies, including but not limited to FEMA, failed to warn claimant that claimant was being exposed to dangerously high levels of formaldehyde. The U.S. and it agencies, including but not limited to FEMA, failed to provide the proper specifications to the manufacturers of the trailer housing units to ensure that they were in compliance with all local, state, federal and international regulations and standards. The U.S. and its agencies, including but not limited to FEMA, intentionally and with reckless indifference to the safety of claimant and the public in general, concealed and knowledge of the excessive levels of formaldehyde in the trailer housing units. The U.S. and its agencies, including but not limited to FEMA, failed to immediately relocate the claimant after learning of the excessive levels of formaldehyde, further exposing claimant and failed to provide medical care for those suffering from such exposure injuries. The U.S. through its agencies, including but not limited to FEMA, has engaged in a concerted effort to "cover-up" and conceal testing results of the formaldehyde levels in the trailer units provided to claimant and others. The foregoing actions by the U.S. and its agents were in violation of and constituted a deprivation of the claimant's state and federal constitutional rights, privileges and immunities. The claimant is demanding all damages recoverable under the applicable state constitutions, the Constitution of the United States, 42 USC section 1983, and all applicable law, state and federal statutes or ordinances, which allow for recovery of damages flowing from the deprivation of a constitutional right, privilege or immunity. Moreover, the U.S. and its agencies, including but not limited to FEMA, are liable under all state tort law remedies found applicable herein.

10. The claimant has suffered and continues to suffer from eye, nose and/or throat irritation, nose bleeds, headaches, nausea, asthma like symptoms and respiratory problems, shortness of breath, emotional distress, fear of illness, including cancer, and or increased risk of cancer. The full residual effects are yet unknown, but are serious in nature. And foregoing are a direct result of exposure to excessive levels of formaldehyde, a known carcinogen. The claimant has and will continue to suffer, and experience fear, anxiety and distress because of the risk of latent and/or future disease resulting from the exposure. Claimant will require medical monitoring for life to check for signs of formaldehyde based injury. Claimant is also claiming all damages, flowing from the deprivation of constitutional rights, privileges and immunities as set forth in #8 (SUPRA).

GASTROENTEROLOGY GROUP, AMC
131-B CHEROKEE ROSE LANE
COVINGTON, LA 70433-7195

**PLEASE CHARGE MY CREDIT CARD:**

☐ VISA  ☐ ⊕  ☐ ▦  ☐ AMERICAN EXPRESS

Card #: _____  Exp. Date: _____
Signature: _____  Sec. Code: _____
Name of Cardholder: _____

**RETURN SERVICE REQUESTED**

GAS          02          V

3275 - 4020 T15 P1

(985) 871-1456
Page 1

| AMOUNT DUE NOW | STATEMENT DATE | ACCOUNT NUMBER | AMOUNT ENCLOSED |
|---|---|---|---|
| $800.00 | 5/30/2008 | 47164 | |

CHECK NUMBER

MARVIN SPEARS
7300 DOGWOOD DRIVE
NEW ORLEANS  LA 70126

MAKE CHECKS PAYABLE TO:

GASTROENTEROLOGY GROUP, AMC
c/o Resource Bank
PO Box 1790
COVINGTON, LA  70434-1790

☐ Please check box if above address is incorrect and indicate change(s) above.

**PLEASE DETACH AND RETURN THE TOP PORTION OF THIS STATEMENT WITH YOUR PAYMENT. RETAIN THE BOTTOM PORTION FOR YOUR RECORDS.**

| PATIENT / PHYSICIAN | DATE | DESCRIPTION | | AMOUNT DUE |
|---|---|---|---|---|
| MARVIN SPEARS | | PAT#:    47164          BAL:      800.00 | | |
| | | --------------ACCOUNT ACTIVITY------------- | | |
| DR. ALBRIGHT,A | 3/31/06 | COLON POLYPECTOMY HOT BX | 800.00 | |
| | 5/08/06 | PAYMENT-TRICARE-PGBA | .00 | 800.00 |
| | | ELIGIBILITY EXPIRED DEERS | | |

If a charge is pending insurance, the payments associated are not
reflected in detail above.

Total Personal Payments:          .00
Since Last Statement Date:  4/30/08

Last Payment on Account :   $292.50 (INS)
Date:  6/08/07

GASTROENTEROLOGY GROUP, AMC
(985) 871-1456

| Account Number | Please Pay This Amount |
|---|---|
| 47164 | $800.00 |

## Tulane University **ADMISSIONS**

| ACCOUNT NO. | ADM DATE/TIME | FC | DOB | AGE | SX | RACE | MS | SERVICE | LOCATION | ROOM/BED | ACC | PAT TYPE | INIT | UNIT NO. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D00055745801 | 02/24/07 1345 | 99 | 04/03/65 | 41Y | M | BL | X | - | D.ER | - | | REG ER/ | | D000573385 |

| | | |
|---|---|---|
| PATIENT NAME AND ADDRESS:<br>SPEARS,MARVIN<br>7300 DOGWOOD DR<br><br>NEW ORLEANS,LA 70126 | SOC SEC NO<br>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<br><br>TELEPHONE NO<br>(504)246-1793 | PATIENT EMPLOYER:<br>DISABLED<br>DISABLED<br><br>DISABLED,XX 00000 |

TELEPHONE NO
(999)999-9999

| | | |
|---|---|---|
| GUARANTOR NAME AND ADDRESS:<br>SPEARS,MARVIN<br>7300 DOGWOOD DR<br><br>NEW ORLEANS,LA 70126 | SOC SEC NO<br>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<br>TELEPHONE NO<br>(504)246-1793<br>RELATION: PATIENT | GUARANTOR EMPLOYER:<br>DISABLED<br>DISABLED<br><br>DISABLED,XX 00000 |

TELEPHONE NO
(999)999-9999
OCCUPATION
DISABLED

| | | |
|---|---|---|
| PERSON TO NOTIFY:<br>SPEARS,DARLENA<br>0 MEADOWS<br><br>SLIDELL,LA 70469 | TELEPHONE NO<br>(H) (985)726-9004<br>(W) (504)756-1408 CELL<br>RELATIONSHIP<br>SISTER | MISCELLANEOUS:<br>REASON FOR VISIT:DIZZINESS,COUGH,FEVER,BODY ACHES<br>ADM PRIORITY:EM         ADM SOURCE:EMERGENCY ROOM<br>ARRIVAL MODE:<br>RELIGION:CATHOLIC          REQ ACCOM: |

| ADMITTING PHYSICIAN | FACILITY PHYSICIAN# | REFERRING PHYSICAN | DISCHARGE DATE | DISCHARGE SERVICE |
|---|---|---|---|---|
| | | | | |

INSURANCE #1: MEDICAID PENDING                    PO BOX 3396                          BATON ROUGE,LA 70821
  PHONE: (800)443-6323          POLICY #: 438451509        INSURED: SPEARS,MARVIN
  IPLAN: 04735          AUTHORIZATION #:                   GROUP #: 999999
  PRECERTIFICATION CO:                                                         PHONE:

INSURANCE #2: CHARITY PENDING            1415 TULANE AVE                     NEW ORLEANS,LA 70112
  PHONE: (504)584-2455          POLICY #: 438451509        INSURED: SPEARS,MARVIN
  IPLAN: 09950          AUTHORIZATION #:                   GROUP #: 999999

INSURANCE #3: SELF PAY / UNINSURED       1415 TULANE AVE                     NEW ORLEANS,LA 70112
  PHONE: (504)584-2455          POLICY #: 438451509        INSURED: SPEARS,MARVIN
  IPLAN: 09940          AUTHORIZATION #:                   GROUP #: 999999

PRINCIPAL DIAGNOSIS: (The condition established after study, to be chiefly responsible for the admission of the patient to the hospital for care. HCFA)

COMORBIDITY: (Pre-existing condition which, because of it's presence, will cause an increase in the length of stay by at least one day in approximately 75% of the cases.)

COMPLICATIONS: (Conditions which arise during hospital stay that prolong the length of stay by at least one day in approximately 75% of the cases.)

SURGICAL PROCEDURES: (Principal procedure is that procedure most related to the principal diagnosis. If two or more major procedures are performed and are related to the principal diagnosis, the determination as to the principal procedure must be made by the attending physician. HCFA)

DATE:_____     SIGNATURE:_____, M.D.

NOTIFICATION OF ATTENDING:

| NAME (M.D.) | NOTIFIED BY | DATE | TIME |
|---|---|---|---|

U# |||||||||||||||||||||||||||     MEDICAL RECORDS - CHART COPY     A# |||||||||||||||||||||||||||

Circle one:   NON-URGENT   LESS URGENT   URGENT   EMERGENT   RESUSCITATION

| Date 2/24/07 | Time of Arrival 1300 | Patient Name Spears Marvin | | DOB 4/3/65 | Age 41 | Ht/Wt 6-5 240 |
|---|---|---|---|---|---|---|

PCP VA Hospital

Interpreter Needed  ☐ Yes  ☒ No  Describe: _____

Visual Acuity  ☒ N/A  Mode of Arrival ☐ Amb ☐ W/C ☐ Carried
OS ___ OD ___   ☐ EMS

TB Screen  ☐ Pos ☒ Neg   Latex Screen ☐ Pos ☐ Neg   Domestic Violence ☐ Pos ☐ Neg   Immunizations ☒ N/A   Tetanus
☐ Current ☐ Non-Current

LMP: ____   ☒ N/A GR ___ P ___ AB ___ L ___

EDC: ____

Tx PTA

Assessment RN: Newellson   Triage Time 1345

PMH:  None   COPD   Ulcers   Renal/Liver   Epilepsy
Cardiac   HTN   DM   Arthritis   PUD   GB   CVA   Asthma   HIV
Other   Back surgery / Ankle surgery

Chief Complaint & Onset: Dizziness, Cough, fever,
body aches, (R) shoulder pain   Onset
x 4 days.

Social History ☐ Tobacco ☒ ☐ ETOH ☒ ☐ Drugs ☒

Allergies
☐ NKA   Iodine

Assessment: Pt unlabored. Cough, productive
c brown expidate noted. Ø N/V

Medications: ☐ See Medication Reconciliation form
Sudafed, Aspirin, Nexium

Tx in Triage

| Temp 96.5 | HR 98 | RR 16 | BP 66/85 | O2 Sat 2001% | GCS | Pain Scale |
|---|---|---|---|---|---|---|

| Time to Room 1320 | Room No. 60 | Mode Pinl | Initials CMW | Notifications: Police |
|---|---|---|---|---|---|

Animal Control   CPS   APS   Soc. Services/CM

## Vital Signs

| Time | Temp | BP | HR | RR | O2/Delivery | SpO2 | GCS | Pain Scale |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

### Adult Glasgow Coma Scale

| Eye Opening | | Verbal Response | | Motor Response | |
|---|---|---|---|---|---|
| Spontaneously | 4 | Oriented | 5 | Obeys commands | 6 |
| To Verbal Command | 3 | Confused | 4 | Purposeful movement | 5 |
| To Pain | 2 | Inappropriate words | 3 | Withdraws (pain) | 4 |
| No Response | 1 | Incomprehensible words | 2 | Flexion (pain) | 3 |
| | | None | 1 | Extension (pain) | 2 |
| | | | | None | 1 |

## IV Infusions/Medications

| Time | Medications/Solutions | Dosage | Route | Initials | Time | Response | Initials |
|---|---|---|---|---|---|---|---|
| 1110 | Remain in WR | | | 1910 | ob Ø pain | | |
| 200 | Remain in WR | NAD | dated | | | | |
| 2BK | Remain in WR | ob | wait | instruct | teaching | Ht Clinic | 1587 |
| | Complete pt verbally | | | | | | |

## Nurses Interventions/Evaluations

| Time | Assessment by ▶ | Time | Initials | Time | | Initials |
|---|---|---|---|---|---|---|
| 1345 | Remain in WR | | | | | |
| 145 | Remain in WR | | | | | |

| Initials | Signature/Title |
|---|---|
| | Danell |

---

## Tulane
UNIVERSITY
HOSPITAL & CLINIC
1415 TULANE AVENUE
NEW ORLEANS, LA 70112

### ED CORE
### ENCOUNTER RECORD

Affix Patient ID Label Here
(If no label, complete patient information)

Patient Name: _____

M.R. # _____

SPEARS, MARVIN
D000055745801   REG ER
02/24/07 1345 Pierce, Diane
DOB:04/03/65   41         H      MR# 0000573385
Tulane University Hospital & Clinic

PAGE 1 of 2

## Physician's Orders

| Time Ordered & Initials | Test | Time Done & Initials | Time Ordered & Initials | Test | Time Done & Initials | Test | Time Done & Initials |
|---|---|---|---|---|---|---|---|
| | EKG/RS | ✓ | | CBC w/Diff | | FHT | |
| | Repeat EKG | ✓ | | Basic Metabolic Panel | | Preg./HCG  S/U | |
| | Cardiac Monitor | | | Comp Metabolic Panel | | HCG Quant. | |
| | O₂ via | | | Glucose: Capillary | 105 | GC/Chlamydia/PCR | |
| | Pulse Ox C/S | | | Repeat Glucose: Capillary | | Wet Prep | |
| | Troponin/MYOG | | | Liver Function | | Gram Stain | |
| | CKMB | | | Amy/Lipase | | Dip:Urine___U/A___ | |
| | BNP | | | Dig Level | | Urine Culture | |
| | PT/PTT | | | Teg/Dilantin | | FOBT | |
| | ABG/CBG | | | Blood Cultures___ sets | | Peak Flow: Pre/Post | |
| | D-Dimer | | | Rapid Strep | | Aerosol Tx: | |
| | CK | | | ASA/ACET | | 1st c̄ Albuterol | |
| | CSP/pCSP | | | ETOH | | 2nd c̄ _____ | |
| | Thoracic Spine | | | Toxic: S/U | | 3rd c̄ _____ | |
| | Lumbar Spine | | | | | V/Q Scan | |
| | Pelvis | | | IV Lock | | Type and Screen | |
| | CXR/2 View pCXR | ✓ | | IVF_____ | | RBC - No. units ___ | |
| | Abd/2 View KUB | | | | | MEDS: | |
| | R  Knee Ankle Tib/Fib  Patella Femur Hip Foot | | | | | Tetanus adn Diphtheria 0.5ml IM | |
| | R  Finger Hand Wrist Forearm Elbow Humerus Shoulder | | | | | | |
| | L  Knee Ankle Tib/Fib Patella Femur Hip Foot | | | | | | |
| | L  Finger Hand Wrist Forearm Elbow Humerus Shoulder | | | | | | |
| | U/S: Pelvic Abd Preg Transvaginal | | | Foley | | | |
| | Other _____ | | | NGT | | | |
| | CAT Head c̄ / s̄ | | | Lavage _____ ml | | | |
| | CAT _____ c̄ / s̄ | | | Charcoal _____ gms | | | |
| | CT - Kidney Stone Protocol | | | Orthostatic V.S. | | | |

Consultant Called: _____  Consultant Arrived: _____  Name(s): _____

Time of Initial Exam: _____   Notes: _____   ☐ See Addendum

Physician(s) Signature:  1 _____  2 _____  3 _____   Dictated By: ☐ EMP ☐ Consultant ☐ PCP

Provisional Dx:  1 _____  2 _____  3 _____

**Disposition**

Status: DC /Admit  OBS  Transfer  OR  Refusal of Care   Condition: Improved  Stable  Unstable  Deceased   Mode: Amb  W/C  Carried  EMS  Gurney

To Unit: Monitored  RN  EMT  Escort   Room No.: _____

Valuables: Patient  Family  Security   Belongings: Patient  Family

Signature: _____   Date: _____   Time: 1115

Initials | Signature/Title

Tulane
UNIVERSITY
HOSPITAL & CLINIC
1415 TULANE AVENUE
NEW ORLEANS, LA 70112

ED CORE
ENCOUNTER RECORD

Patient Name _____

M.R. # _____

Affix Patient ID Label Here
(If no label, complete patient information)

SPEARS, MARVIN
D00055745801   REG ER
02/24/07 1345 Pierce, Diane
DOB: 04/03/65  41    M   NR# D000573385
Tulane University Hospital & Clinic

| Patient Name | Attending Physician | Date |
|---|---|---|

☐ Patient unable to give information secondary to medical condition. Information received from _____
(Name of person and relationship to patient)

**History**

**Chief Complaint & History of Present Illness** • Location • Quality • Severity • Duration • Timing • Context • Modifying Factors • Associated S/S

_____
_____
_____
_____
_____

**Review of Systems (ROS)**

• Constitutional Symptoms • Eyes • Ears, Nose, Mouth, Throat • Cardiovascular • Respiratory • Gastrointestinal • Genitourinary
• Musculoskeletal • Integumentary *(skin and/or breast)* • Neurological • Psychiatric • Endocrine • Hematological /Lymphatic • Allergic/Immunologic

_____
_____

☐ All other systems negative

| PMHx | | Social Hx | | Family Hx | ☐ Non-Contributory |
|---|---|---|---|---|---|
| | ☐ Resp. | | ☐ Smoker | | |
| | ☐ C-V | | ☐ Uses ETOH | | |
| | ☐ HTN | | ☐ Uses Rec. Drugs | | |
| | ☐ MI | | | | |
| | ☐ DM | | | | |

**Physical Exam**

• Constitutional • Eyes • Ears, Nose, Mouth and Throat • Neck • Respiratory • Cardiovascular • Chest *(breasts)*
• Gastrointestinal *(abdomen)* • Genitourinary • Lymphatic • Musculoskeletal • Skin • Neurologic • Psychiatric

_____
_____
_____
_____
_____

**Test Results • Medical Decision Making • Procedures • Clinical Course**

83756J

_____
_____
_____

**Provisional Diagnosis**
1. Bronchitis       2. _____       3. _____
4. _____       5. _____       6. _____

| | Name of Physician | Place Phoned | Time | Called By | Results |
|---|---|---|---|---|---|
| **Contacts** | | | | | |
| | | | | | |
| | | | | | |

**Condition**
on Disposition: ☐ Improved ☑ Stable ☐ Unstable ☐ Deceased
Disposition Time _____
**To:** ☐ OR ☐ Admit ☐ OBS ☐ Transfer ☐ D/C ☐ Refusal of Care
Discharge Instructions _____

Rx _____

Follow Up with _____

Physician Signature _____    Date 2/ 6/

PATIENT IDENTIFICATION

SPEARS,MARVIN
D00055745801   REG ER
02/24/07 1345 Pierce,Diane
DOB:04/03/65  41     M  MR# D000573385
Tulane University Hospital & Clinic

**ED Physician Assessment Record (PAR) - Short**
T3116 11/98 (RC# 0258985)

T 3118

## Baseline Nursing Examination

Date _____   Time of Assessment _____   Bed _6 0_   Page _____

### Psychosocial

**Behavioral**
Age/Devel. Approp.
☑ Yes  ☐ No
**Eye Contact**
☑ Yes  ☐ No
**Affect**
☑ Normal  ☐ Abnormal
**Motor Behavior**
☑ Cooperative
☐ Restless  ☐ Agitated
**Speech**
☑ Normal  ☐ Abnormal
**Support System**
☐ Lives Alone
☑ Family/Significant Other
☐ Other
**Language Barrier**
☑ No  ☐ Yes
**Ideations**
☐ None
☐ Harmful to Self
☐ Harmful to Others

### Skin
☐ Intact   ☐ Lesions
☐ Warm   ☐ Dry
☐ Cool   ☐ Diaphoretic
**Turgor**
☐ Normal  ☐ Decreased
**Edema**
☐ Absent  ☐ Present
☐ Site/Degree: _____
**Color**
☐ Normal   ☐ Pale
☐ Cyanotic  ☐ Mottled
☐ Jaundice  ☐ Flushed
**Mucous Membranes**
☐ Moist  ☐ Dry
**Ortho**
☐ N/A
☐ Swelling  ☐ Deformity
☐ Limited Movement
Site: _____ Color: _____
Sensation: _____
ROM: ☐ Limit ☐ Full

### Respiratory
☑ Normal   ☐ Denies
☐ Dyspnea
☐ Nasal Flaring
☐ Retractions
☐ Stridor
☐ Cough
  ☐ Non-Productive
  ☐ Productive
  ☐ Color _____
☐ Using Accessory Muscles
☐ Expiratory Grunt

**Breath Sounds**
| | R | | L |
|---|---|---|---|
| Clear | ☐ | | ☐ |
| Crackles | ☐ | | ☐ |
| Wheezing | ☐ | | ☐ |
| Diminished | ☐ | | ☐ |
| Absent | ☐ | | ☐ |

### Neurological
☑ Alert
☐ Oriented
☐ Disoriented
☐ Drowsy
☐ Confused
☐ Lethargic
☐ Unresponsive
☐ Combative
☐ Uncooperative
**Fontanelle**
☐ Flat
☐ Depressed
☐ Bulging
☐ Crying
☐ Age Appropriate
**Responsive to Stimuli**
☐ Verbal  ☐ Painful
**Pupils**
☐ N/A  ☐ Equal  ☐ Unequal
☐ Reactive  ☐ Non-Reactive

### Cardiac
☐ N/A   ☐ CP
**Onset**
☐ Constant
☐ Intermittent
☐ Resolved
☐ Palpitations
☐ Non-Radiating
☐ Radiating
Arm  ☐ R  ☐ L
☐ Back
☐ Neck / Jaw
☐ Pain Scale (1-10) ___
**Heart Sounds**
☐ Normal / Regular
☐ Irregular
**Pulses**
Radial   ☐ R  ☐ L
Femoral  ☐ R  ☐ L
Pedal    ☐ R  ☐ L
**Capillary Refill**
☐ Slow
(2 secs)   (>2 secs)

### G.I.
☐ N/A   ☐ Denies
**Abdomen**
☐ Normal  ☐ Distended
☐ Guarding  ☐ Rigid
**Tenderness**
☐ LUQ   ☐ RUQ
☐ LLQ   ☐ RLQ
☐ Epigastric
**Bowel Sounds**
☐ Present  ☐ Absent
☐ Hyper  ☐ Hypo
☐ Last BM _____
☐ Vomiting _____
☐ Diarrhea _____
☐ Blood in Stool
**G.U.**
☐ N/A   ☐ Denies
☐ Flank Pain ☐ L ☐ R
☐ Dysuria
☐ Hematuria ☐ Frequency
☐ Oliguria ☐ Retention

## Vital Signs

| Time | Temp | BP | HR | RR | SpO₂ | O₂ Delivery | GCS | Rhythm | Pain Scale |
|------|------|----|----|----|------|-------------|-----|--------|------------|
|      |      |    |    |    |      |             |     |        |            |
|      |      |    |    |    |      |             |     |        |            |
|      |      |    |    |    |      |             |     |        |            |
|      |      |    |    |    |      |             |     |        |            |
|      |      |    |    |    |      |             |     |        |            |

## Gyn / Pregnancy

☐ N/A  ☐ Denies  ☐ Preg. Gest.: _____
☐ Cramping _____  ☐ FHT _____
☐ Discharge _____  ☐ LMP _____
☐ Bleeding _____  ☐ EDC _____
No. Pads per hour _____
☐ Spotting
☐ Clots: small  medium  large

## IV Infusions/Medications

| Time | Medications/Solutions | Dosage | Route | Initials | Time | Response | Initials |
|------|----------------------|--------|-------|----------|------|----------|----------|
| 0107 | _Solu Medrol_ | | | | | | |
|      |                      |        |       |          |      |          |          |
|      |                      |        |       |          |      |          |          |
|      |                      |        |       |          |      |          |          |
|      |                      |        |       |          |      |          |          |
|      |                      |        |       |          |      |          |          |
|      |                      |        |       |          |      |          |          |

## Nurses' Interventions / Evaluations

| Time | Nurses' Interventions / Evaluations | Initials | Time | Nurses' Interventions / Evaluations | Initials |
|------|-------------------------------------|----------|------|-------------------------------------|----------|
| _(handwritten, illegible)_ | | | | | |
| _(handwritten, illegible)_ | | | | | |
| _(handwritten, illegible)_ | | | | | |

## Intake / Output

| Intake | IV | PO | Blood | | Total | PATIENT IDENTIFICATION |
|--------|----|----|-------|---|-------|------------------------|
| Output | Urine | NG | Emesis | | Total | |

| Init | Signature/Title |
|------|-----------------|
| _(handwritten)_ | _(handwritten)_ |

SPEARS, MARVIN
D000055745801   REG ER
02/24/07 1345 Pierce.Diane
DOB:04/03/65  41    M   MR# D000573385
Tulane University Hospital & Clinic

## ED Nursing Flow Sheet - Short
T3118  Rev. 05/00  (RC# 0258987)

*We appreciate your choosing us for your emergency medical care needs. These are the instructions your physician has given you. Please read them carefully. We are here to serve you.*

Educational needs/factors have been assessed and addressed through:
☐ In-Department Teaching   ☐ Hand-Out   ☐ Referral/Interpreter _____   ☐ Other _____

**Important** - The examination and treatment you have received in the Emergency Department has been done on an emergency basis only and is not intended to be a substitute for, or an effort to provide, complete medical care. In most cases it is important that you let your doctor check you again and that you report to him/her any new or remaining problems. If you had special tests or X-rays, they will be reviewed again within 24 hours. You will be notified if a change in your treatment program is indicated. After leaving our department, it is important that you Follow The Instructions Checked Below as indicated for you.

Your diagnosis is _Bronchitis_
and you have been seen by Dr. _Ashby_

**Wound**
1. Have stitches removed in _____ days.
2. Keep wound clean & dry. No swimming or tub baths.
3. Clean wound ___ a day with _____.
4. Apply antibiotic ointment and cover with bandage.
5. Return to your Doctor or the ED immediately if wound develops any redness, warmth, pain or drainage of fluid/pus.

**Fracture**
1. Keep splint dry.
2. Keep elevated above level of heart.
3. Ice pack 20 min. every 2-4 hours for 1st 2 days.
4. Do not remove splint.
5. If toes or fingers lose sensation, strength, turn cold or blue or develop severe pain, loosen splint. If persists return to ED.
6. Use crutches as instructed.

**Back or Neck Pain**
1. Bed rest for _____.
2. Lie on back or side with knees flexed or bent.
3. Heat or cold application 4 times a day, 20 min.
4. Avoid heavy lifting.
5. If burning or shooting pains or numbness begin in an arm or leg, see your physician.

**Corneal Abrasion**
1. Wear patch as directed by physician.
2. Do not drive with patch on.
3. If pain increases, return to ED or see your physician immediately.
4. Make sure to have your eye rechecked tomorrow, if instructed to do so by physician.

**Fever**
1. Take temp 4 times a day and record results.
2. Give Tylenol _____ tsp. or _____ mg. every 4 hours as needed.
3. Give Motrin _____ tsp. or _____ mg. every 4-6 hours or 2 hours after Tylenol if fever over 101°F.
4. If fever remains over 103 degrees F, or lasts longer than 2 days, see your Dr. or return to the ED.
5. Give cold liquids or popsicles.
6. Wear light clothing - no blankets.
7. If severe vomiting, headache, new rash, overly sleepy, or confused return to ED.

**Vomiting/Diarrhea/Abdominal Pain**
1. Do not eat or drink anything for _____ hours.
2. Clear liquids for _____ hours (Sprite, Gatorade, Pedialyte, Ricelyte, water, apple juice, etc.)
3. If no vomiting for _____ hours; increase to bland diet (bananas, rice, toast, crackers, apple sauce) for _____ hours.
4. Call or Return to the ED, if the following occurs:
   a. Your pain gets worse or does not go away.
   b. Your fever increases over 101 degrees F or 38 degrees C.
   c. You become sicker or vomit more frequently.
   d. Your pain localizes to one area.
   e. You are light-headed when standing up.
   f. You have severe diarrhea or are unable to take fluids.

**Sprain/Bruise**
1. Elevate injured part above level of heart.
2. Ice 20 min. 4 times a day for 2 days.
3. If splinted, wear _____ days. Keep dry.
4. If toes or fingers lose sensation, strength, turn cold or blue or develop severe pain, loosen splint. If persists return to ED.
5. No weight bearing until pain clearly improved.

1. Wake up patient every _____ hours throughout the night.
2. No alcohol or medication which causes sleepiness.
3. Tylenol may be used for pain or headache.
4. Return to the ED or call your Dr. if:
   a. Any type of unusual behavior.
   b. Drainage of blood or fluid from ears or nose.
   c. Unequal pupils (one large, one small).
   d. Overly sleepy, disoriented or having problems with coordination.
   e. Vomiting more than 2 times.
   f. Very severe headache or headache which continues longer than 24 hours.
   g. Any seizure or suspected seizure.
   h. Any loss of strength, sensation or vision.
5. Never give children aspirin or aspirin-containing products.

Other Instructions:
— Drink plenty of fluids.
— Follow up with your doctor Monday

☐ None Prescribed   ☐ No Aspirin   ☐ Tylenol/Advil for Mild Pain   ☐ Take Medication with Food   ☐ Do not Drive While Taking Medication
☐ Food and Drug Interaction   ☐ You have received a narcotic medication. Do not attempt to drive, operate machinery or consume alcohol for 24 hours.

Azithromycin Z pack   2 tabs day 1, then 1 tab a day rest 4 day
Tessalon Perles 200 mg every 8 hours as needed for cough

**Note:** Any medication may cause an allergic reaction. If you develop a rash, difficulty breathing or other unusual symptoms after taking a medication, consult your physician or return to the Emergency Department immediately.

**Referral**

☐ See your private physician ☐ In _____ days  ☐ if symptoms persist or worsen
☐ See Doctor _____ in _____ days
☐ Telephone No. _____
☐ Occupational health care or telephone no. _____

**Activity/Work Release**

No PE / Sports until _____
Return to work / school _____
Return to work with restrictions _____

**Note:** If you are unable to see your physician in the suggested period of time or feel your condition persists or worsens, please return to the Emergency Dept.

*My signature indicates that I have received the Aftercare Instructions, verbalized that I understand them, and am able to manage my continuing care after discharge. I have been referred to a physician for continued medical care and I will do so. I am leaving with all of my personal belongings and valuables.*

☐ I give permission to release my ED medical records to my attending (private) physician or the referral physician for follow up care.

Signed/Relationship to Patient _____   Date 2 25 07

Designated Driver _____

Nurse/Physician _____

PATIENT IDENTIFICATION

SPEARS, MARVIN
D00055745801   REG ER
02/24/07 1345 Pierce, Diane
DOB: 04/03/65  41     M  M# 0000573385
Tulane University Hospital & Clinic

**ED Education/Discharge Instructions**
T3122  Rev. 03/95  (RC# 0258591)

## Tulane University Hospital Clinic - Medication Reconciliation Form

| Allergies: Drug/Foods | Reactions/Side Effects |
|---|---|
| | |
| | |
| | |
| | |

Do you have a latex allergy or sensitivity?
☐ Yes   ☐ No   ☐ Unsure
If yes, describe type of reaction: _____
Are you allergic to iodine?   ☐ Yes   ☐ No
Are you allergic to dyes?   ☐ Yes   ☐ No
Height:   Actual _____ cm
Weight:   Actual _____ kg
Information Source:   ☐ Patient   ☐ Spouse
☐ Home Meds   ☐ Wallet Card   ☐ Other _____

☐ On No Medications at Home
☐ Swallow pills   ☐ Crushes pills   ☐ Liquid meds only
☐ Unable to Obtain Medication History - Reason:

| | Home Medications on Admission (Prescriptions, OTC, Herbals, Patches, Inhalers, Eye drops & Supplements) | | | | | Home Medication Orders at Discharge | | |
|---|---|---|---|---|---|---|---|---|
| Initials | Drug Name | Dose | Route | Frequency | Last Taken Date/Time | Order Unchanged | Change (Write Below-New Med) | DO NOT ORDER |
| | | | | | | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ |

| New Medications/Previous Home Medications with Changes | | | | | | |
|---|---|---|---|---|---|---|
| Drug Name | Dose | Route | Frequency | Quantity | Refills | Duration |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Nurse Reconciled Medication:

Admit RN: _____   Date/Time: _____

Discharge RN: _____   Date/Time: _____

Physician has Reconciled Medication:

Physician Signature: _____   Date/Time: _____

---

**Tulane**
UNIVERSITY
HOSPITAL & CLINIC
1415 TULANE AVENUE
NEW ORLEANS, LA 70112

**MEDICATION RECONCILIATION FORM**

Patient Name:

SPEARS, MARVIN
D000557456B01   REG ER
02/24/07 1345 Pierce, Diane
DOB: 04/03/65   41
Tulane University Hospital & Clinic   M   MR# D000573385

M.R. # _____

BB-302 (R. 4/06)

### TB Screen

| | | YES | NO |
|---|---|---|---|
| 1. | Have you ever been told you have TB? | ☐ YES | ☑ NO |
| 2. | Have you ever tested positive for TB? | ☐ YES | ☑ NO |
| 3. | Have you ever been around anyone who has been infected with TB? | ☐ YES | ☑ NO |
| 4. | Have you ever had a persistent cough greater than three weeks? | ☐ YES | ☑ NO |
| | Difficulty breathing/shortness of breath? | ☐ YES | ☑ NO |
| | If yes, are you coughing up blood? | ☐ YES | ☑ NO |
| | Have you had fever or night sweats? | ☐ YES | ☑ NO |
| | Have you been feeling sick or weak lately? | ☐ YES | ☑ NO |
| | Have you had unexplained weight loss? | ☐ YES | ☑ NO |

A response of YES TO ANY OF THE ABOVE will be documented and reported to the ED and/or Admitting Referral physician or Clinic Physician

### Nutrition Screen

| | | YES | NO |
|---|---|---|---|
| 1. | Problems chewing or swallowing? | ☐ YES | ☑ NO |
| 2. | Recent unintentional weight changes? | ☐ YES | ☑ NO |
| 3. | Poor appetite, chronic nausea, vomiting or diarrhea? | ☐ YES | ☑ NO |
| 4. | Non-healing wound or pressure sore? | ☐ YES | ☑ NO |

A response of YES TO ANY OF THE ABOVE will be documented and reported to the ED and/or Admitting Referral physician or Clinic Physician

### Abuse/Neglect

| | | YES | NO |
|---|---|---|---|
| 1. | Evidence of abuse/neglect | ☐ YES | ☑ NO |
| 2. | Unexplained bruises, injuries | ☐ YES | ☑ NO |
| 3. | Unkempt, dirty, poor hygiene | ☐ YES | ☑ NO |
| 4. | Excessive fear | ☐ YES | ☑ NO |
| 5. | Loss of interest in self | ☐ YES | ☑ NO |
| 6. | Reasonable suspicion of sexual/physical/mental abuse or neglect | | |

A RESPONSE TO ANY OF THE ABOVE will be documented and reported to the ED and/or Admitting Referral physician or Clinic Physician and appropriate notifications (Police, ACT, HRS) made. Patient to receive numbers to these agencies as part of discharge instructions

### Functional Screen/Fall Risk

| | | YES | NO |
|---|---|---|---|
| 1. | Orthostatic changes | ☐ YES | ☑ NO |
| 2. | Syncope | ☐ YES | ☑ NO |
| 3. | Current Seizure activity | ☐ YES | ☑ NO |
| 4. | Decreased bladder/bowel tone | ☐ YES | ☑ NO |
| 5. | Impaired cognition/vision | ☐ YES | ☑ NO |
| 6. | Gait/balance disturbance/fall in last 6 months* | ☐ YES | ☑ NO |
| 7. | Medication sensory impairment (narcotics, sedatives, diuretics, etc.)* | ☐ YES | ☑ NO |
| 8. | Mobility restrictions/limitations that impair daily living activities | ☐ YES | ☑ NO |

A RESPONSE TO ANY OF THE ABOVE will be documented and reported to the Ed and/or Admitting Referral physician or Clinic Physician; if yes to #5 and #7 initiate Fall Risk Assessment

### Skin Assessment

| | | YES | NO |
|---|---|---|---|
| 1. | Ability to respond meaningfully to pressure related discomfort? | ☑ YES | ☐ NO |
| 2. | Is skin Warm/ Dry/ Intact? | ☑ YES | ☐ NO |
| 3. | Are you chair or bed bound? | ☐ YES | ☑ NO |
| 4. | If bed bound can you turn on your own? | ☐ YES | ☑ NO |
| 5. | Nutrition Assessment per above. | | |

A RESPONSE TO ANY OF THE ABOVE will be documented and reported to the Ed and/or Admitting Referral physician or Clinic Physician; if yes to any of the above complete Full Braden Risk Assessment Scale.

### Readiness to Learn Assessment

| | | YES | NO |
|---|---|---|---|
| 1. | Ability to participate in the education process? | ☐ YES | ☐ NO |
| 2. | Patient's attitude toward learning:☐ receptive ☐ reluctant ☐ resistant ☐ Unable due to___ | | |
| 3. | Describe patient's ability to learn: ☐ Able to understand written/verbal instruction ☐ able to read written materials ☐ understands English ☐ unable due to___ | | |
| 4. | Education level: ☐ elementary ☐ junior high ☐ high school ☐ college | | |
| 5. | Barriers to learning: (check all that apply) ☐ physical ☐ visual ☐ hearing ☐ reading ☐ language ☐ motivation ☐ financial ☐ emotional ☐ cognitive ☐ religious ☐ cultural ☐ other___ | | |
| 6. | Preferred method of learning: ☐ verbal instructions ☐ written instructions ☐ video ☐ demonstration/hands-on practice | | |

A RESPONSE TO ANY OF THE ABOVE will be documented and reported to the Ed and/or Admitting Referral physician or Clinic Physician. This serves as a reference/monitoring tool.

Date:_____ Time:_____

Completed By: _____

Reported to:_____

**A response of YES TO ANY OF THE ABOVE will be documented and reported to the ED and/or Admitting/Referral Physician or Clinic

---

### 1 MONTH

| | YES | NO |
|---|---|---|
| Moves arms and legs | ☐ YES | ☐ NO |
| Regards face | ☐ YES | ☐ NO |
| Responds to noise | ☐ YES | ☐ NO |

### 2 MONTHS

| | YES | NO |
|---|---|---|
| Vocalizes | ☐ YES | ☐ NO |
| Smiles Responsively | ☐ YES | ☐ NO |
| Holds head up 90 degrees in prone | ☐ YES | ☐ NO |
| Responds to noise | ☐ YES | ☐ NO |

### 4 MONTHS

| | YES | NO |
|---|---|---|
| Babbling | ☐ YES | ☐ NO |
| Grasps rattle | ☐ YES | ☐ NO |
| Responds to noise | ☐ YES | ☐ NO |
| Watches parent | ☐ YES | ☐ NO |

### 6 MONTHS

| | YES | NO |
|---|---|---|
| Reaches for object (5mo) | ☐ YES | ☐ NO |
| Smiles spontaneously (5mo) | ☐ YES | ☐ NO |
| Sits alone | ☐ YES | ☐ NO |
| Bears weight on legs | ☐ YES | ☐ NO |

### 9 MONTHS

| | YES | NO |
|---|---|---|
| Sits well | ☐ YES | ☐ NO |
| Crawls creeps | ☐ YES | ☐ NO |
| Babbles consonants (dada/mama) | ☐ YES | ☐ NO |
| Plays Peek-a-boo | ☐ YES | ☐ NO |
| Pinches/claps | ☐ YES | ☐ NO |

### 12 MONTHS

| | YES | NO |
|---|---|---|
| Pulls to stand | ☐ YES | ☐ NO |
| Walks with support | ☐ YES | ☐ NO |
| Uses mama/dada correctly | ☐ YES | ☐ NO |

### 15 MONTHS

| | YES | NO |
|---|---|---|
| Walks alone | ☐ YES | ☐ NO |
| Crawls | ☐ YES | ☐ NO |
| Gives/Takes toys | ☐ YES | ☐ NO |
| Knows simple commands | ☐ YES | ☐ NO |

### 18 MONTHS

| | YES | NO |
|---|---|---|
| Runs/kicks a ball | ☐ YES | ☐ NO |
| Takes off clothes with limited assistance | ☐ YES | ☐ NO |
| 7-10 word vocabulary | ☐ YES | ☐ NO |

### 2-3 YEARS

| | YES | NO |
|---|---|---|
| Walks up steps | ☐ YES | ☐ NO |
| 2-3 word sentences (24+ months) | ☐ YES | ☐ NO |
| Takes off/ Puts on clothes with some assistance | ☐ YES | ☐ NO |
| Washes hands | ☐ YES | ☐ NO |

### 4-5 YEARS

| | YES | NO |
|---|---|---|
| Dresses self with minimal assist | ☐ YES | ☐ NO |
| Knows cold/hot/tired | ☐ YES | ☐ NO |
| Knows colors | ☐ YES | ☐ NO |
| Plays cooperatively | ☐ YES | ☐ NO |

Does the child have physical deformity which may interfere with development?
☐ YES ☐ NO

Does the child feel stiff when you move His arms or legs? ☐ YES ☐ NO

Does the child feel floppy? ☐ YES ☐ NO

---

Tulane University Hospital and Clinic
New Orleans, LA 70112

Clinical Interventions Screening From
(TB, Nutritional, Fall Risk, Abuse) 03-01-06 rev

Patient ID stick---

SPEARS ,MARVIN
D000S5745801   REG ER
02/24/07  1345 Pierce,Diane
DOB:04/03/65  41   M   MRE D000573305
Tulane University Hospital & Clinic

spears, marvin
41years        Black
Male

Technician:
Test Ind:

| | |
|---|---|
| Vent. rate | 103 bpm |
| PR interval | 164 ms |
| QRS duration | 80 ms |
| QT/QTc | 340/445 ms |
| P-R-T axes | 52  14  19 |

ID: 000573385          25-Feb-2007     0:40:44

Sinus tachycardia
Nonspecific T wave abnormality
Abnormal ECG

Referred by:                    Unconfirmed

CVRA, Tulane Hospital & Clinic

spears, marvin

41years
Male          Black

Technician:
Test ind:

ID: 0005733385          24-Feb-2007     23:53:42          CVRA, Tulane Hospital & Clinic

| | | |
|---|---|---|
| Vent. rate | 106 bpm | |
| PR interval | 166 ms | Sinus tachycardia |
| QRS duration | 76 ms | Nonspecific T wave abnormality |
| QT/QTc | 340/451 ms | Abnormal ECG |
| P-R-T axes | 51  14  22 | |

Referred by:                                        Unconfirmed

SPEARS, MARVIN
D0005745801   REG ER
02/24/07  1345 Pierce, Diane
D031-04/03/65  41   M   M0# 0005733385
Tulane University Hospital & Clinic

KENDALL  MEDITRACE

204g

PRINTED IN U.S.A.

## TULANE UNIVERSITY HOSPITAL & CLINIC - CONDITIONS OF ADMISSION

PATIENT NAME:   SPEARS,MARVIN
MEDICAL RECORD #: D000573385

ACCT #:         D00055745801
DATE OF SERVICE: 20070224

1. CONSENT AND CONDITION OF TREATMENT  I consent to the procedures which may be performed during this hospitalization or on an outpatient basis, including emergency treatment or services, and which may include but are not limited to laboratory procedures, x-ray examination, diagnostic procedures, medical, nursing or surgical treatment or procedures, anesthesia, or hospital services rendered to me as ordered by my physician or other healthcare professional on the hospital's medical staff. I understand that as part of their training, students in healthcare education may participate in the delivery of my medical care and treatment or be observers while I receive medical care and treatment at the Hospital, and that these students will be supervised by instructors and hospital staff.

2. FINANCIAL AGREEMENT  In consideration of the services to be rendered to the patient, I individually promise to pay the patient's account at the rates stated in the hospital's price list (known as the 'Charge Master') effective on the date the charge is processed for the service provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the patient's account.  Some special items will be priced separately if there is no price list on the Charge Master, or if the charge is listed as zero.  An estimate of the anticipated charges for services to be provided to the patient is available upon request from the hospital.  Estimates may vary significantly from the final charges based on a variety of factors, including but not limited to the course of treatment, intensity of care, physician practices, and the necessity of providing additional goods and services.

If supplies and services are provided to a patient who has coverage through a govermental program or through certain private health insurance plans, the hospital may accept a discount payment for those supplies and services.  In this event any payment required from the undersigned will be determined by the terms of the govermental program or private health insurance plan.  If the patient is uninsured and not covered by a govermental program, the patient may be eligible to have his or her account discounted or forgiven under the hospital's uninsured discount or charity care programs in effect at the time of treatment. You may request information about these programs from the hospital.

As courtesy to you, the hospital may bill your insurance company, but is not obligated to do so.  Regardless, you agree that except where prohibited by law, the financial responsibility for the services rendered belongs to you, the undersigned.  You also agree that if the hospital must initiate collection efforts to recover amounts owed by you, then in addition to amounts incurred for the services rendered you will pay: (a) any and all costs incurred by the hospital in pursuing collection, including, but not limited to, reasonable attorneys' fees, and (b) any court costs or other costs of litigation incurred by the hospital that applicable rules or statutes permit the hospital to recover.

The hospital will provide a medical screening examination as required to all patients who are seeking medical services to determine if these is an emergency medical condition, without regard to the patient's ability to pay.  If there is an emergency medical condition, the hospital will provide stabilizing treatment within its capacity.  However, patients who do not qualify under the hospital's charity care policy or other applicable policy are not relieved of their obligation to pay for these services.

3. RELEASE OF INFORMATION  I permit the hospital and the physicians or other health professionals involved in the inpatient or outpatient care to release the healthcare information necessary for treatment, payment or healthcare operations in accordance with state and federal law.  Healthcare information may be released to any person or entity liable for payment on the patient's behalf in order to verify coverage or payment questions, or for any other purpose related to benefit payment.  Healthcare information may also be released to my employer's designee when the services delivered are related to a claim under worker's compensation.  If I am covered by Medicare or Medicaid, I authorize the release of healthcare information to the Social Security Administration or its intermediaries or carriers for payment of a Medicare claim or to the appropriate state agency for payment of a Medicaid claim.  This information may include, without limitation, history and physical, emergency records, laboratory reports, operative reports, physician progress notes, nurse's notes, consultations, psychological and/or psychiatric reports and discharge summary.  This consent specifically includes information concerning psychological conditions, psychiatric conditions, and/or infectious diseases including, but not limited to, blood borne diseases, such as Hepatitis, Human Immunodeficiency Virus (HIV) and Acquired Immune Deficiency Syndrome (AIDS).

4. PATIENT SELF DETERMINATION ACT  I have been furnished information regarding Advance Directives (such as durable power of attorney for healthcare and living wills).  I have also been furnished with written information regarding patient rights and responsibilities and other information related to my stay.  Please initial the following applicable statements:

_____ I executed an Advance Directive and have been
requested to supply a copy to the hospital

_____ Wish to execute an Advance Directive

_____ have not executed an Advance Directive

_____ do not wish to execute an Advance Directive

5. NOTICE OF PRIVACY PRACTICES  I acknowledge that I have received the hospital's Notice of Privacy Practices, which describes the ways in which the hospital may use and disclose my healthcare information for its treatment, payment, healthcare operations and other described and permitted uses and disclosures. I understand that I may contact the hospital Privacy Officer designated on the notice if I have a question or complaint.    INITIALS _____

6. COMMUNICATIONS ABOUT MY HEALTHCARE  I authorize my healthcare information to be disclosed for the purposes of communicating results, findings, and care decisions to my family members and others responsible for my care or designated by me. I will provide those individuals with a password or other verification means specified by the hospital.

7. PRIVATE ROOM  I understand and agree that I or the party responsible for payment for hospital and medical services is responsible for any additional charges associated with the request and use of a private room.

*Continue reading and sign on next page.*

## TULANE UNIVERSITY HOSPITAL & CLINIC - CONDITIONS OF ADMISSION

PATIENT NAME:     SPEARS,MARVIN                    ACCT #:           D00055745801
MEDICAL RECORD #:   D000573385                     DATE OF SERVICE:  20070224

**8. ASSIGNMENT OF BENEFITS**  In executing this assignment of benefits, I am directing the health insurance carrier or other health benefit plan providing my coverage (including, but not limited to, any employer, employer group or trust sponsored or offered plan) to pay the hospital and/or hospital-based physicians directly for the services the hospital and/or hospital-based physicians provided to the patient during this admission.  In return for services rendered and to be rendered by the hospital and/or hospital-based physicians, I hereby irrevocably assign and transfer to the hospital and/or hospital-based physicians all right, title, and interest in all benefits payable for the healthcare rendered, which are provided in any and all insurance policies and health benefit plans from which I am entitled services or I am entitled to recover. I understand that any payment received from these policies and/or plans will be applied to the amount that I have agreed to pay for services rendered during this admission, as further described under Section 2.  This assignment shall be for the purpose of granting the hospital and/or hospital-based physicians an independent right of recovery against my insurer or health benefit plan, but shall not be construed as an obligation of the hospital and/or hospital-based physicians to pursue any such right of recovery.  In no event will the hospital and/or hospital-based physicians retain benefits in excess of the amount owed to the hospital and/or hospital-based physicians for the care and treatment rendered during the admission.  If a third party payer (such as an insurance company or employer group or trust sponsored or offered plan) may be obligated to pay some or all of these charges, I agree to take all actions necessary to assist the hospital and/or hospital-based physicians in collecting payment from any such third party payer. I hereby appoint the hospital as my authorized representative to pursue, if it so chooses, all administrative remedies, claims and/or lawsuits on my behalf and at the hospital's election, against any responsible third party, medical insurer, or employer sponsored medical benefit plan for purposes of collecting any and all hospital benefits due me for the payment of the charges referred to in section 2 above. If the hospital elects to pursue a claim or lawsuit against a third party payer as authorized representative, I agree to execute a special power of attorney, if requested, authorizing the hospital to take all actions necessary or appropriate in pursuit of such claim or lawsuit, including allowing the hospital to bring suit against the third party payer in my name. I agree to pay over to the hospital immediately all sums recovered in any claim or lawsuit brought on my behalf by the hospital (up the amount of the hospital's charges, plus expenses and attorney's fees). I have read and been given the opportunity to ask questions about this assignment of benefits and I have signed this document freely and without inducement, other than the rendition of services by the hospital and/or hospital-based physicians.

*Hospital-based physicians include but are not limited to: Emergency Department Physicians, Pathologists, Radiologists, and Anesthesiologists. These services are rendered by independent contractors and are not part of your hospital bill. These services will be billed for separately by each physician's billing company.*

**9. MEDICARE PATIENT CERTIFICATION AND ASSIGNMENT OF BENEFIT**  I certify that any information I provide in applying for payment under Title XVIII (Medicare) or Title XIX (Medicaid) of Social Security Act is correct. I request payment of authorized benefits to be made on my behalf to the hospital or hospital-based physician by the Medicare or Medicaid program.

**10. OTHER ACKNOWLEDGEMENTS**
  a. Legal Relationship Between Hospital and Physicians. Most or all of the health care professionals performing services in the hospital are independent contractors and are not hospital agents or employees.   Independent contractors are responsible for their own actions and the hospital shall not be liable for the acts or omissions of any such independent contractors. I understand that physicians or other healthcare professionals may be called upon to provide care or services to me or on my behalf, but that I may not actually see, or be examined by, all physicians or healthcare professionals participating in my care, for example. I may not see physicians providing radiology, pathology, EKG interpretation and anesthesiology services. I understand that in most instances, there will be a separate charge for professional services rendered by physicians to me or on my behalf, and that I will receive a bill for these professional services that is separate from the bill for hospital services.

  b. Personal Valuables. I understand that the hospital maintains a safe for the safekeeping of money and valuables, and the hospital shall not be liable for the loss of or damage to any money, jewelry, documents, furs, fur coats and fur garments, or other articles of unusual value and small size, unless placed in the safe, and shall not be liable for the loss or damage to any other personal property, unless deposited with the hospital for safekeeping.  The liability of the hospital for loss of any personal property that is deposited with the hospital for safekeeping is limited to the greater of five hundred dollars ($500.00) or the maximum required by law, unless a written receipt for the greater amount has been obtained from the hospital by the patient.

  c. Weapons/Explosives/Drugs. I understand and agree that if the hospital at any time believes there may be a weapon, explosive device, illegal substance or drug, or any alcoholic beverage in my room or with my belongings, the hospital may search my room and my belongings, confiscate any of the above items that are found, and dispose of them as appropriate, including delivery of any item to law enforcement authorities.

DATE: 2/24/07

TIME: 13-40

I, the undersigned, as the patient, or the parent, guardian, spouse, guarantor or agent of the patient, hereby certify I have read, and fully and completely understand this Conditions of Admission and Authorization for Medical treatment, and I have signed this Conditions of Admission and Authorization for Medical Treatment knowingly, freely, voluntarily and agree to be bound by its terms. I have received no promises, assurances, or guarantees from anyone as to the results that may be obtained by any medical treatment or services.
☐ Patient is medically unable to sign the Conditions of Admission    ☐ Patient Refused to Sign

Patient/Parent/Guardian

Witness (to signature only)

If other than patient, indicate relationship

Spouse (if Married/Available)

Printed: 02/24/07 R.DAD.SHF

## Tulane University Hospital & Clinic
### ADVANCE DIRECTIVES

PATIENT NAME:    SPEARS,MARVIN
MEDICAL RECORD #: D000573385

ACCT #:           D000055745801
DATE OF SERVICE:  20070224

| WHAT ARE ADVANCE DIRECTIVES? | PATIENT | TUHC STAFF |
|---|---|---|
| You have the right to give instructions about your own health care.  You also have the right to name someone else to make health care decisions for you.  Advance Directives are a patient's documented wishes concerning the withholding &/or withdrawing of life sustaining procedures.<br><br>**Durable Healthcare Power of Attorney:**  Appoints someone (usually family or close friend) to make healthcare decisions for you if you are unable to communicate your wishes.<br><br>**Living Will:**  Lists the kinds of care you would or would not want if you were to become terminally and irreversibly ill, or in a profound comatose state with no reasonable chance of recovery. | 1. Do you have an Advance Directive?<br>☑ No. Go to Question 3.<br><br>☐ Yes, I have a current<br>☐ Living Will<br>☐ Durable Healthcare Power of Attorney<br>☐ Other<br><br>2. A copy of the Advance Directives is:<br>☐ provided.<br>☐ was provided on a previous admission. Date: _____<br>☐ with Doctor _____<br>☐ Other | 'A Living Will', the LA Hospital Association pamphlet, is given to the patient.<br><br>The Advance Directive document is obtained and placed in the Patient's current Medical Record.<br><br>Rep. Initials: _____<br><br>Date: _____ |
| Advance Directives information is provided to all adult patients as required by federal law. | 3. I have received information regarding Advance Directives?<br>☑ Yes        ☐ No | |
| You may wish to discuss this issue with your family, clergy, or attorney.  Your doctor or a Social Worker can also assist you in discussing and completing an Advance Directive. | 4. Do you need help to complete an Advance Directive?<br>☐ Yes        ☑ No | Refer to:<br>☐ Social Services<br>☐ Physician<br>Name: _____ |

I certify that the above information has been addressed.

Patient _____                    or

Agent/Rep. _____          Relationship _____

Hospital Rep. _____          Date _____

If patient is unable to make a declaration, or family members are unavailable or have no knowledge of prior patient Advance Directives, notify Social Services.

Printed: 02/24/07 R.DAD.SMF

# Tulane University Hospital & Clinic
# Tulane Lakeside Hospital

# ACKNOWLEGEMENT

I have received the informational brochure, *Freedom From Smoking®*, from the American Lung Association regarding Smoking Cessation. Additionally, I have received the TUHC handout "Smoking: Ways to Quit".

_____
Patient Signature

2-28-7
Date

SPEARS,MARVIN
D000557458B1    REG ER
02/24/07 1345 Pierce.Diane
DOB:04/03/65  41      M   MRF D000573385
Tulane University Hospital & Clinic