UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | ) ) ) ) | MDL NO. 1873 |
| ——————————————— | ) ) | SECTION: N(4) |
| THIS RELATES TO: | ) ) ) | JUDGE: ENGELHARDT MAG: ROBY |
| Plaintiff: _____ | ) ) | |
| *Marlene Gable* | ) | |

## PLAINTIFF FACT SHEET

## I.    INSTRUCTIONS

**IT IS VERY IMPORTANT FOR YOU TO COMPLETE THIS FORM IN ITS ENTIRETY IN ORDER TO PROTECT YOUR CLAIM.  THIS FORM MUST BE COMPLETED AND RECEIVED BY JUNE 18, 2008 OR YOU WILL NOT BE ABLE TO PARTICIPATE IN THIS LITIGATION.  ONCE COMPLETED, PLEASE IMMEDIATELY RETURN THIS FORM TO YOUR ATTORNEY.**

Please provide the following information for each person claiming a formaldehyde related injury as a result of living in a travel trailer or mobile home provided by FEMA after Hurricanes Katrina and Rita in August and September, 2005.  **A separate Plaintiff Fact Sheet must be completed for each individual claiming exposure to formaldehyde.  For example, a parent must complete a separate form for each minor child and a personal representative must complete a separate form for each deceased person.**  Whether you are completing this fact sheet for yourself or for someone else, please assume that "You" means the person who resided in or lived in the housing units.

If additional space is needed for any response, please attach additional sheets. If the person completing this Fact Sheet does not know or does not recall the information requested in any question, that response should be entered in the appropriate location.

1



## II.   PERSONAL INFORMATION

A.   Name (person completing form): Marlene Hable

B.   Maiden or other names used or by which you have been known: Miles

C.   Current Street Address: 3903 Virgil Blvd, NOLA 70122

D.   Home Telephone No.: 504 218 5224
Cell Phone No.: ~~504~~ 225 329 7898
Work Telephone No: ——
Other Telephone Nos.: ——

E.   Email address: —

## III.   CASE INFORMATION

A.   If you are completing this questionnaire in a **representative** capacity (for example, on behalf of the estate of a deceased person or on behalf of a minor), please complete the following information on such person:

1.   State which individual or estate you are representing: N/a

2.   Maiden Or Other Names Used or By Which Such Person Has Been Known: N/a

3   Address (or last known address if deceased): N/a

4.   Home Telephone No.: N/a
Cell Phone No.: 
Work Telephone No: N/a
Other Telephone Nos.: 

5.   E-mail address: N/a

6.   If you were appointed as a representative by a court, state the:

2

Court: ___N|A___          Date of Appointment: __N|A__

7.   What is your relationship to the deceased or represented person or person claimed to be injured? ___N|a___

8.   If you represent a decedent's estate, state the date of death of the decedent and the place where the decedent died:

_____N|a_____

B.   Please state the name and address of the attorney representing you:

Nicaud & Sunseri LLC
Attorney's Name/Law Firm

J. DOUGLAS SUNSERI
3000 18th STREET
METAIRIE, LA 70002

_____
City, State and Zip Code

C.   Please state the following: (If you are a representative, please state this information for each such person being represented):

1.   Are you claiming that you have developed, or may have developed, a disease or illness as a result of being exposed to formaldehyde while residing in a FEMA-provided trailer or mobile home?
Yes ☑          No ☐

2.   What is your understanding of the illness or disease you claim you have developed, or may in the future develop, from living in a FEMA trailer or mobile home? _Exposure to Formaldehyde_

3.   During the time that you lived in your FEMA trailer, did you experience or report to a physician any of the following symptoms? If yes, place a check mark (✓) by the symptom that you experienced.

☑ irritation to eyes
☐ burning of eyes
☑ tearing of eyes
☑ irritation to nasal membranes (inside of nose)
☑ burning of nasal membranes (inside of nose)
☐ bleeding of nasal membranes (inside of nose)
☑ irritation or itching of skin
☐ burning of skin
☑ rashes on skin
☑ drying or scaling of skin
☑ scaling or itching of eyelids
☐ irritation or swelling of eyelids or eye area

☐ tingling or swelling of lips or face area
☑ headaches
☑ nausea
☐ vomiting
☐ bloody vomiting
☑ abdominal pain
☐ diarrhea
☑ difficulty in breathing
☐ wheezing
☑ shortness of breath
☑ persistent cough
☑ tightness of the chest

3

☑ bronchitis
☑ throat irritation
☑ hoarseness
☐ laryngitis
☐ pneumonia
☑ upper respiratory tract infections
☐ pulmonary edema
☐ asthma attacks for the first time in your life
☐ asthma attacks that are recurrence of
    childhood asthma
☐ allergies for the first time in your life
☑ worsening of allergies that you had previous
    to living in FEMA trailer

☐ allergic contact dermatitis
☑ dizziness
☐ unconsciousness
☐ convulsions or seizures
☐ blood in urine
☐ abnormal liver enzymes
☐ nephritis (inflammation of kidneys)
☐ low blood pressure
☐ hypothermia (low body temperature)
☐ miscarriage or stillbirth
☐ abnormal laboratory tests on blood
☐ abnormal laboratory tests on urine

Please list any other symptoms you have suffered as a result of residing in a FEMA trailer (not listed above) and any conditions for which you have been diagnosed by a physician. _____

_Persistent cough w/ clear mucus._

4.    Since you moved into the FEMA trailer and up to the present date, have you been diagnosed with cancer? _NO_

    If yes, which kind of cancer?
    _N/a_

5.    When do you claim this injury or disease first occurred? _Oct 2005_

6.    Did you ever suffer this type of illness or disease prior to living in the FEMA trailer?
    Yes ☐    No ☑

    *If "Yes,"* when and who diagnosed the condition at that time?
    _N/a_

7.    Do you claim that your use of a FEMA trailer or mobile home worsened a condition that you already had or had in the past?
    Yes ☑    No ☐

    *If "Yes,"* set forth the illness, disease or condition; whether or not you had already recovered from that illness, disease or condition before you began

4

residing in a FEMA trailer or mobile home and the date of your recovery, if any. _____ *allergies* _____

_____

_____

8.  **Are you claiming mental and/or emotional damages as a result of residing in a FEMA trailer or mobile home?**
    Yes ☐        No ☑

    *If "Yes,"* for each provider (including but not limited to primary care physician, psychiatrist, psychologist, counselor, pastor or religious counselor) from whom you have sought treatment for any psychological, psychiatric or emotional problems during the last seven (7) years, state:

    Name and address of each person who treated or counseled you:

    _____ N/a _____

    To your understanding, describe the condition for which treated:

    _____ N/a _____

    State when you were treated for this psychological, psychiatric or emotional problem

    _____ N/a _____

    List the medications prescribed or recommended by the physician or counselor

    _____ N/a _____

9.  Are you making a claim for medical expenses as a result of the injury, illness or disease identified in C.2. above?
    Yes ☑        No ☐

    *If "Yes,"* state the amount of your claim: ___ unknown ___.

5

## IV.   BACKGROUND INFORMATION

A.   Identify each **address** at which you have resided during the last five (5) years, and list when you started and stopped living at each one:

| Address | Dates of Residence |
|---|---|
| 3903 Virgil Blvd., NOLA | Last 5 years |
| | |
| | |
| | |

B.   State Driver's License Number and State Issuing License: La D0426 7229

C.   Date and Place of Birth: ██████████████████

D.   Sex: Male ☐   Female ☑

E.   Identify the highest level of **education** (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded:

| Institution | Dates Attended | Course of Study | Diplomas or Degrees |
|---|---|---|---|
| MedalsThr College, Qval 81, NOLH | Business | Assc. Degree |
| | | | |

F.   Employment Information

1.   Current employer (if not currently employed, state your last employer):

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| Retired in | | | |
| | | | |

2.   List the following for each employer you have had in the last ten (10) years:

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| Retired — | | | |
| | | | |

6

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

3. Are you making a wage loss claim, or claim of lost earning capacity as a result of your exposure to formaldehyde while residing in a FEMA trailer or mobile home?

   Yes ☐      No ☑

   *If "Yes,"* state the following:

   a. If you are making a claim for lost earnings and/or lost earning capacity, state your income from employment for each of the last five (5) years:

   | Year | Income |
   |---|---|
   | | $ |
   | N/a | $ N/a |
   | | $ |
   | | $ |
   | | $ |

   b. Total amount of time which you have lost from work as a result of any and all condition(s) related to residing in a FEMA trailer or mobile home, and the amount of income that you lost:

   N/a

G. Previous Claims Information

   1. Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any sickness or disease, excluding auto accidents?

   Yes ☐      No ☑  Don't recall ☐

   *If "Yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and nature of the sickness or disease. N/a

## IV.   FAMILY INFORMATION

A.   To the best of your knowledge has any child, parent, sibling, or grandparent of yours suffered from any type of disease [such as asthma, shortness of breath, headaches, lung disease, liver disease, skin disease, neurological disease, allergies, or cancer].

Yes ☑   No ☐   Don't Know ☐

*If "Yes,"* provide the information below.

| Name | Relationship | Current Age (or Age at Death) | Medical Condition | Cause of Death (if applicable) |
|------|-------------|------------------------------|-------------------|-------------------------------|
| Velma | mother | 65 | Colon Cancer | — |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

B.   Are you are claiming the wrongful death of a family member related to formaldehyde?

Yes ☐   No ☑

*If "Yes,"* state the name of the deceased and fill out a separate form for the deceased.

Name: _____N/a_____

## V.   FEMA TRAILER OR MOBILE HOME UNIT

Please respond to Sections V. A-E below, including all subparts, with respect to **each** FEMA trailer or mobile home that you have resided in. Attach additional sheets if necessary.

A.   Please provide the following information regarding the FEMA trailer or mobile home:

1.   Manufacturer of trailer or mobile home: Key Stone Industries, Inc.

2.   VIN: 4YdT261228589116080

3.   FEMA Identification No.: 93-973378 1603

4.   Bar Code Number on FEMA housing unit: 1147259

8

5.   Was the temporary housing unit provided to you by FEMA a travel trailer or a mobile home?   Travel Trailer ☑   Mobile Home ☐

6.   Move-in Date: _Oct 05_

7.   Move-out Date: _July 06_

8.   Please state the mailing address and physical location for the FEMA trailer or mobile home unit.
     _3903 Virgil Blvd._
     _NOLa 70122_

9.   Was the FEMA trailer or mobile home located in a trailer park or on private property? _Public trailer park_

10.  State the reason you stopped living in the FEMA trailer or mobile home:
     _health issues & too small_

11.  Please state the approximate square footage of the FEMA housing unit: _20x8_

12.  Please state the approximate length and width of the FEMA housing unit: _20x8_

13.  What is/was the average number of hours spent in the FEMA trailer or mobile home each day? _15-20hrs_

14.  Is/was the FEMA housing unit "jacked-up" on blocks (wheels off of the ground)?
     Yes ☑      No ☐

15.  Is/was the FEMA housing unit hooked up to a sewer line?
     Yes ☑      No ☐

16.  Is/was the FEMA housing unit hooked up to an electrical line?
     Yes ☑      No ☐

17.  Is/was the FEMA housing unit hooked up to natural gas line?
     Yes ☐      No ☑

18.  Is/was propane gas used in the FEMA housing unit?
     Yes ☑      No ☐

9

19. How many days per week did you work outside of the home during the time you lived in the FEMA trailer or mobile home? _____

20. Did you ever temporarily live in another location during the time you resided in the FEMA trailer or mobile home:
Yes ☐    No ☑

If "Yes," please state the following:

Where did you temporarily live? _____ N|a _____

For what period of time did you temporarily live in another location?
_____ N|A _____

B. Have any air quality tests ever been performed on your FEMA trailer or mobile home?
Yes ☐    No ☑

If "Yes," please state when the test was performed and who prepared this testing: _____ N|a _____

C. Was your FEMA trailer or mobile home ever fumigated for insects or any other reason?
Yes ☐    No ☑

If "Yes," please state the following:

Date and reason for fumigation: _____ N|a _____

D. Were any repairs, service, or maintenance performed on your FEMA trailer or mobile home?
Yes ☐    No ☐

If "Yes," please state the date and reason for repair, service or maintenance:
toilets & locks on trailer
_____

E. Please state in the chart provided below the name and present address and telephone number of every person who resided in your FEMA trailer or mobile home, the period of time such person resided in the FEMA trailer or mobile home (however brief), and whether such person is making a claim for personal injury as a result of residing in the FEMA trailer or mobile home.

| Name | Current Age | Current Address and Telephone number | Dates lived in the FEMA trailer or mobile home | Making personal injury claim? | If "Yes," what is the nature of the personal injury? |
|---|---|---|---|---|---|
| Kenneth Prable | 66 | 3903 Virgil Blvd NOLA | From 10/05 To 7/06 | Yes ☑ No ☐ Don't Know ☐ | Servere. allergies & back pain |
| | | | From _____ To _____ | Yes ☐ No ☐ Don't Know ☐ | |
| | | | From _____ To _____ | Yes ☐ No ☐ Don't Know ☐ | |
| | | | From _____ To _____ | Yes ☐ No ☐ Don't Know ☐ | |
| | | | From _____ To _____ | Yes ☐ No ☐ Don't Know ☐ | |
| | | | From _____ To _____ | Yes ☐ No ☐ Don't Know ☐ | |

## VI.   MEDICAL BACKGROUND

A.   Height: ~~5'6"~~ 5'

B.   Current Weight: 0 lb _____

Weight prior to living in a FEMA trailer or mobile home: 0 lb _____

C.   Personal Smoking/Tobacco Use History:  *Check only the answer and that applies to you and fill in the blanks applicable to your history of smoking and/or tobacco use.*

☐   Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.

☐   Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.

11

1.  Date on which smoking/tobacco use ended: _____ N/A _____
2.  Amount smoked or used on average:
    _N/A_ per day for _N/A_ years.

☑ Current smoker of cigarettes/cigars/pipe tobacco or user of chewing
    tobacco/snuff.

1.  Amount currently smoked or used on average:
    _1/2 pk_ per day for _25_ years.

D.  Other Smoking/Tobacco Use History:

    If someone who resides or resided with you in your FEMA housing unit is
    or was a smoker of cigarettes/cigars/pipe tobacco or user of chewing
    tobacco/snuff, please state the following concerning their smoking history:

    1.  Amount smoked or used on average, if you know:
        _1/2 pk_ per day for _30_ years.
    2.  Relationship to you: _____ husband _____
    3.  Please state whether the smoking occurred inside, outside or
        both. _Both_

E.  Were you pregnant during the time in which you resided in a FEMA trailer or
    mobile home?
    Yes ☐    No ☑
    *If "Yes,"* what was the date of birth: _____ N/A _____ .

    Did your pregnancy terminate in a miscarriage or a stillborn child?
    Yes ☐    No ☑

F.  Have you ever suffered from any of the following illnesses, diseases or abnormal
    physical conditions?

    1.  Lung or other respiratory disease
        Yes ☐    No ☑

        *If "Yes,"* please indicate the following:

        Name and description of each illness, disease, or abnormal condition:
        _____ N/A _____

        The date of illness:
        _____ N/A _____

    2.  Infectious disease (such as, tuberculosis, pneumonia, hepatitis)

Yes ☐       No ☑

*If "Yes,"* please indicate the following.

Name and description of each illness, disease, or abnormal condition:

_____ N|a _____

The date of illness:

_____ N|a _____

3.   Long-term stomach or bowel disease
    Yes ☐       No ☑

*If "Yes,"* please indicate the following.

Name and description of each illness, disease, or abnormal condition:

_____ N|a _____

The date of illness:

_____ N|a _____

4.   Skin disease
    Yes ☐       No ☑

*If "Yes,"* please indicate the following.

Name and description of each illness, disease, or abnormal condition:

_____ N|a _____

The date of illness:

_____ N|a _____

G.   Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:

1.   To your knowledge, have you ever had any of the following tests performed: chest X-ray, CT scan, MRI.

    Yes ☑       No ☐       Don't Recall ☐

    *If "Yes,"* answer the following:

| Diagnostic Test | When | Treating Physician | Hospital | Reason |
|---|---|---|---|---|
| Chest X-ray | 2000 | | University Hosp | Stomach |
| | | | | |

## VII.   MEDICAL DIAGNOSIS

A.   Please identify the doctor or health care provider(s) who treated you for each disease, illness or injury that you claim you (or the person you represent) suffered as a result of **living** in a FEMA trailer or mobile home and the date of the diagnosis.

B.   Doctor's Name: _Tech Community Clinic - Interns._
Specialty, if any: _____
Address: _Franklin, La_____
Phone: _____
Treatment received: _____
Dates of treatment: _____

Doctor's Name: _____
Specialty, if any: _____
Address: _____
Phone: _____
Treatment received: _____
Dates of treatment: _____

Doctor's Name: _____
Specialty, if any: _____
Address: _____
Phone: _____
Treatment received: _____
Dates of treatment: _____

C.   If you are alleging psychological symptoms or emotional problems as a result of living in a FEMA trailer or mobile home, please identify any physician that you have received psychological care and provide a medical records authorization.

_____N/A_____

D.   Has any health care professional told you that your alleged illness, disease, or injury is related to living in a FEMA trailer or mobile home?
Yes ☐        No ☑

*If "Yes,"* please provide the name and address of the health care professional.

_____N/A_____

14

## VIII.  DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"Yes"* or *"No."* Where you have indicated *"Yes,"* please attach a copy of the documents and things to your responses to this Plaintiff Fact Sheet.

A.    Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this Plaintiff Fact Sheet.
Yes ☐    No ☑

B.    Standard Form 95 submitted to any federal agency regarding any claim related to a FEMA trailer or mobile home, including any and all attachments.
Yes ☑    No ☐

C.    Any test results from any testing done on your FEMA trailer or mobile home.
Yes ☐    No ☑

D.    All bills from any physician, hospital, pharmacy, or other healthcare provider, if you incurred related medical expenses.
Yes ☐    No ☑

E.    Any questionnaires that you have filled out to assist any individual or entity with any testing done on your FEMA trailer or mobile home.
Yes ☐    No ☑

F.    Decedent's death certificate, if applicable.
Yes ☐    No ☑

G.    Report of autopsy of decedent, if applicable.
Yes ☐    No ☑

## IX.    LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

For each medical provider and pharmacy identified in Sections A through F below, please fill out and sign and date an attached authorization. You must also sign and date five (5) blank medical authorizations and attach them to this Form.

You must also sign and date authorizations permitting social security disability and workers' compensation records to be requested, to the extent applicable.

15

A.    Identify your current family and/or primary care physician:

| Name | Address |
|------|---------|
| Chioma Ogbuefi | Daughters of Charity on N. Rampart, NOLA |
| | |

B.    Identify your primary care physicians for the last seven (7) years.

| Name | Address | Approximate Dates |
|------|---------|-------------------|
| Charity Hospital | NOLA | — 2005 |
| | | |
| | | |
| | | |
| | | |

C.    Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last seven (7) years.

| Name | Address | Admission Dates | Reason for Admission |
|------|---------|-----------------|----------------------|
| N/A | | | |
| | | | |
| | | | |
| | | | |

D.    Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last seven (7) years.

| Name | Address | Admission Dates | Reason for Admission |
|------|---------|-----------------|----------------------|
| N/A | | | |
| | | | |
| | | | |
| | | | |

E.    Each physician or healthcare provider from whom you have received treatment during the last seven (7) years.

| Name | Address | Dates of Treatment |
|------|---------|--------------------|
| Chioma Ogbuefi | NOLA | Current |
| | | |

16

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

F.     Each pharmacy that has dispensed medication to during the last seven (7) years.

| Name | Address |
|---|---|
| Walmart | Loyola St   NOLA |
|  |  |
|  |  |
|  |  |

17

## CERTIFICATION

I declare under penalty of perjury subject to 28 U.S.C. §1746 that all of the information provided in this Plaintiff Fact Sheet is true and correct to the best of my knowledge, and that I have supplied all the documents requested in Part VIII of this Plaintiff Fact Sheet, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have signed the authorizations attached to this declaration.

| Marlene Gable | Marlene Gable | 10-14-08 |
|---|---|---|
| **Signature of Plaintiff** | **Print Your Name** | **Date** |

18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL No. 1873

**AUTHORIZATION FOR RELEASE OF
MEDICAL RECORDS PURSUANT TO 45
C.F.R. § 164.508 (HIPAA)**

Name: _Marlene Grable_

Date of Birth: ████████

Last Four Numbers of SSN: ████████

I hereby authorize _____ (the
"Provider") to release all existing records regarding the above-named person's medical care,
treatment, physical condition, and/or medical expenses to the law firm of **Duplass, Zwain,
Bourgeois, Morton, Pfister & Weinstock, 3838 N. Causeway Boulevard, Suite 2900,
Metairie, LA 70002,** and/or to the law firm of _____
_____and/or their designated agents. These records shall be used or disclosed solely
in connection with the currently pending FEMA Formaldehyde product liability litigation
involving the person named above. This authorization shall cease to be effective as of the date
on which the above-named person's FEMA Formaldehyde product liability litigation concludes.

This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs,
EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms,
admission and discharge records, operation records, doctor and nurses notes (excluding
psychotherapy notes maintained separately from the individual's medical record that document or
analyze the contents of conversation during a private counseling session or a group, joint, or
family counseling session by referring to something other than medication prescription and
monitoring, counseling session start and stop times, the modalities and frequencies of treatment
furnished, results of clinical tests, and any summary of the following items: diagnosis, functional
status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills,
invoices, histories, diagnoses, narratives, and any correspondence/memoranda and billing
information. It also includes, to the extent such records currently exist and are in your
possession, insurance records, including Medicare/Medicaid and other public assistance claims,
applications, statements, eligibility material, claims or claim disputes, resolutions and payments,
medical records provided as evidence of services provided, and any other documents or things
pertaining to services furnished under Title XVII of the Social Security Act or other forms of
public assistance (federal, state, local, etc.). This listing is not meant to be exclusive.

This will further authorize you to provide updated medical records, x-rays, reports or
copies thereof to the above attorney until the conclusion of the litigation. I understand that I
have the right to revoke in writing my consent to this disclosure at any time, except to the extent
that the above-named facility or provider already has taken action in reliance upon this

authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA.

Any copy of this document shall have the same authority as the original, and may be substituted in its place.

Dated this /4 day of Oct , 2008.

X Marlene Huble
[PLAINTIFF OR REPRESENTATIVE]

If a representative, please describe your relationship to the plaintiff and your authority to act on his/her behalf:_____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL No. 1873

**AUTHORIZATION FOR RELEASE OF
PSYCHOLOGICAL/PSYCHIATRIC
RECORDS PURSUANT TO 45 C.F.R.
§ 164.508 (HIPAA) (TO BE SIGNED BY
PLAINTIFFS MAKING A CLAIM FOR
EMOTIONAL DISTRESS)**

Name: Marlene Gable

Date of Birth: ████████

Last Four Numbers of SSN: ████████

I hereby authorize _____ to release
all existing records regarding the above-named person's psychological or psychiatric
care, treatment, condition, and/or expenses to the law firm of **Duplass, Zwain, Bourgeois, Morton,
Pfister & Weinstock, 3838 N. Causeway Boulevard, Suite 2900, Metairie, LA 70002,** along
with other defense counsel in the above-captioned matter, the law firm of _____
_____ **and/or any of their designated agents.** These
records shall be used or disclosed solely in connection with the currently pending FEMA
Formaldehyde product liability litigation involving the person named above. This authorization
shall cease to be effective as of the date on which the above-named person's FEMA
Formaldehyde product liability litigation concludes.

This authorization also may include x-ray reports, CT scan reports, MRI scans, EEGs,
EKGs, sonograms, arteriograms, discharge summaries, photographs, surgery consent forms,
admission and discharge records, operation records, doctor and nurses notes (excluding
psychotherapy notes maintained separately from the individual's medical record that document or
analyze the contents of conversation during a private counseling session or a group, joint, or
family counseling session by referring to something other than medication prescription and
monitoring, counseling session start and stop times, the modalities and frequencies of treatment
furnished, results of clinical tests, and any summary of the following items: diagnosis, functional
status, the treatment plan, symptoms, prognosis and progress), prescriptions, medical bills,
invoices, histories, diagnoses, psychiatric treatment and counseling records, psychological
treatment and counseling records, narratives, and any correspondence/memoranda and billing
information. It also includes, to the extent such records currently exist and are in your
possession, insurance records, including Medicare/Medicaid and other public assistance claims,
applications, statements, eligibility material, claims or claim disputes, resolutions and payments,
medical records provided as evidence of services provided, and any other documents or things
pertaining to services furnished under Title XVII of the Social Security Act or other forms of
public assistance (federal, state, local, etc.). This listing is not meant to be exclusive.

This will further authorize you to provide updated medical records, x-rays, reports or copies thereof to the above attorney until the conclusion of the litigation. I understand that I have the right to revoke in writing my consent to this disclosure at any time, except to the extent that the above-named facility or provider already has taken action in reliance upon this authorization, or if this authorization was obtained as a condition of obtaining insurance coverage. I further understand that the above-named facility or provider cannot condition the provision of treatment, payment, enrollment in a health plan or eligibility for benefits on my provision of this authorization. I further understand that information disclosed pursuant to this authorization may be subject to redisclosure by the recipient to its clients, agents, employees, consultants, experts, the court, and others deemed necessary by the recipient to assist in this litigation and may no longer be protected by HIPAA.

Any copy of this document shall have the same authority as the original, and may be substituted in its place.

Dated this _14_ day of _Oct_____, 2008.

X _Marlene Hable_
[PLAINTIFF OR REPRESENTATIVE]

If a representative, please describe your relationship to the plaintiff and your authority to act on his/her behalf:_____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL No. 1873

**AUTHORIZATION FOR RELEASE OF
RECORDS (To be signed by plaintiffs
making a claim for lost wages or earning
capacity.)**

Name: Marlene Gable

Date of Birth: ███████

Last Four Numbers of SSN: ███████

I hereby authorize _____ to release
all existing records and information in its possession regarding the above-named person's
employment, income and education to the law firm of **Duplass, Zwain, Bourgeois, Morton,
Pfister & Weinstock, 3838 N. Causeway Boulevard, Suite 2900, Metairie, LA 70002,** along
with other defense counsel in the above-captioned matter, the law firm of _____
_____and/or any of their designated agents. These
records shall be used or disclosed solely in connection with the currently pending FEMA Trailer
Formaldehyde product liability litigation involving the person named above. This authorization
shall cease to be effective as of the date on which the above-named person's FEMA Trailer
Formaldehyde product liability litigation concludes.

I understand that this authorization includes the above-named person's complete
employment personnel file (including attendance reports, performance reports, W-4 forms, W-2
forms, medical reports, workers' compensation claims), and also includes all other records
relating to employment, past and present, all records related to claims for disability, and all
educational records (including those relating to courses taken, degrees obtained, and attendance
records). This listing is not meant to be exclusive.

Any copy of this document shall have the same authority as the original, and may be
substituted in its place.

Dated this _14_ day of _Oct_, 2008.

X _Marlene Gable_
*[PLAINTIFF OR REPRESENTATIVE]*

If a representative, please describe your relationship to the plaintiff and your authority to act on
his/her behalf: _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL No. 1873

**AUTHORIZATION FOR RELEASE OF
RECORDS (To be signed by plaintiffs *not*
making a claim for lost wages or lost
earning capacity.)**

Name: Marlene Gable

Date of Birth: █████████

Last Four Numbers of SSN: ████████

I hereby authorize _____ to release all
existing records and information in its possession regarding the above-named person's
employment and education (with the exception of W-4 and W-2 forms) to the law firm of
**Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock, 3838 N. Causeway Boulevard,
Suite 2900, Metairie, LA 70002, along with other defense counsel in the above-captioned
matter, the law firm of** _____
**and/or any of their designated agents.** These records shall be used or disclosed solely in
connection with the currently pending FEMA Formaldehyde product liability litigation involving
the person named above. This authorization shall cease to be effective as of the date on which
the above-named person's FEMA Formaldehyde product liability litigation concludes. I
understand that this authorization includes the above-named person's complete employment
personnel file with the exception of W-4 and W-2 forms (including attendance reports,
performance reports, medical reports, workers' compensation claims), and also includes all other
records relating to employment, past and present, all records related to claims for disability, and
all educational records (including those relating to courses taken, degrees obtained, and
attendance records). This listing is not meant to be exclusive.

Any copy of this document shall have the same authority as the original, and may be
substituted in its place.

Dated this 14 day of Oct , 2008.

X Marlene Gable
[PLAINTIFF OR REPRESENTATIVE]

If a representative, please describe your relationship to the plaintiff and your authority to act on
his/her behalf: _____

NAME OF FACILITY: _____

Authorization for Use and Disclosure of Protected Health Information (PHI)
pursuant to HIPAA Privacy/Regulations, 45 CFR§§ 160&164 and Louisiana Revised Statutes,
Title 40: 1299.41, *et seq.*, 40:1299.96 *et seq.*, 13:3715 *et seq.* and C.C.P. art. 1467

| Patient Legal Name Marlene Fable | Birth Date ▇▇▇ | Social Security No. ▇▇▇ |
|---|---|---|
| Address: 3903 Virgil Blvd | | Telephone No.: 504 218 5224 |
| City: New Orleans   State: La | | Zip Code: 70122 |

I hereby authorize the Medical Records Custodian of _____
To disclose medical record information and/or protect health information and to provide a complete and certified copy of my entire record of the patient listed above to:
*Name.* . _____
*Title.* . _____
*Address.* _____
Purpose: To Protect My Legal Rights _____
For Treatment Date(s): All Available

| Type of Access | | |
|---|---|---|
| Requested: | ☐ Abstract/pertinent<br>☐ Emergency Room<br>☐ H&P<br>☐ Consult Report<br>☐ Operative Report<br>☐ Rehab Services | ☐ Lab<br>☐ Imaging/Radiology<br>☐ Cardiac Studies<br>☐ Face Sheet<br>☐ Nursing Notes<br>☐ Medication Record |
| ☐ Copies of the records &<br>☐ Inspection of the record | | |

Additional column:
☐ Progress Notes
☐ Physician's Orders
☐ Entire Record
☐ Other_____

MG   I acknowledge, and hereby consent to such, that the released information may contain alcohol, drug abuse, psychiatric, HIV testing, HIV results, or AIDS information.
*Initials*

This authorization shall expire upon the following expiration date or event (if I fail to specify an expiration date or event, this authorization will expire in four [4] years from the date on which it was signed):_____

You have my specific consent to meet and discuss in person or by telephone with my attorneys only, any and all protected health information.

- I understand that I have a right to revoke this authorization at any time. I understand that if I revoke this authorization, I must do so in writing and present my written revocation to the above-named health care provider. I understand that the revocation will not apply to information that has already been released in response to this authorization. I understand that the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy.
- I understand that the information used or disclosed pursuant to this authorization may be subject to re-disclosure by the recipient and no longer protected.
- Fees/charges will comply with all laws and regulations applicable to release information.
- I understand authorizing the use or disclosure of the information identified above is voluntary and I may refuse to sign. My refusal to sign will not affect payment for or coverage of services, or ability to obtain treatment.
- I understand that I may inspect or copy the information used or disclosed upon request.
- **You are specifically not authorized to speak or confer with anyone except me, or my attorneys, unless you have the written consent of my attorneys or me.**

Pursuant to HIPAA Privacy/Regulations, 45 CFR §§ 160 & 164.
I have read the above and authorize the disclosure of the protected health information as stated.

X Marlene Fable _____     10-14-08
Signature of Patient/Legal Representative          Date
If signed by legal representative, relationship to patient: _____

## PRIVACY ACT RELEASE LANGUAGE

I, _Marlene Fable_ [insert name] understand that information

maintained by the Federal Emergency Management Agency (FEMA) and contained in

files related to disaster assistance provided to me by FEMA is subject to the Privacy

Act of 1974, 5 U.S.C. 552a. I hereby authorize FEMA to release to my attorney

_____, Plaintiffs' Liaison Counsel Justin Woods and

Gerald E. Meunier, and Defense Liaison Counsel Andrew D. Weinstock, information

contained in FEMA's Privacy Act files related to the travel trailer or mobile home unit

provided to me by FEMA.

Dated: _10/14/2008_

Name: _Marlene Fable_ (print legibly or type out name)

Signature: _X Marlene Fable_

*Amended*

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>**Federal Emergency Management Agency**<br>**Office of the Director**<br>**500 C Street S.W.**<br>**Washington, DC   20472** | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code)<br><br>Marlene Gable<br>3903 Virgil Blvd<br>NOLA<br><br>See attached rider for representatives. |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH<br>5/30/45 | 5. MARITAL STATUS<br>married | 6. DATE AND DAY OF ACCIDENT<br>SEE ATTACHED RIDER | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

The United States of America (U.S.), through its agencies, including but not limited to the Federal Emergency Management Agency (FEMA) was negligent, reckless, careless, grossly negligent and acted with deliberate indifference to the health and safety of the public and the claimant herein by failing to provide the claimant with a housing unit that was reasonably safe and not dangerous. The U.S. and its agencies, including but not limited to FEMA, breached its duty to provide reasonably safe and habitable housing by providing a trailer housing unit to the claimant that exposed claimant to excessive and unsafe levels of formaldehyde. The U.S. and its agencies, including but not limited to FEMA, provided a trailer housing unit that contained building materials which emitted formaldehyde in excess of acceptable limits. The trailer housing unit provided to claimant was in violation of local, state, national and international statues, regulations and trade group standards regarding formaldehyde exposure. The U.S. and its agencies, including but not limited to FEMA, failed to insure
SEE ATTACHED RIDER

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

See Attached Rider.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

See Attached Rider.

| 11. | WITNESSES |  |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| See Attached Rider. | | |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE<br>$20,000 | 12b. PERSONAL INJURY<br>$50,000.00 | 12c. WRONGFUL DEATH<br>0 | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br>$70,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>X Marlene Gable | 13b. Phone number of person signing form<br>5012185224 | 14. DATE OF SIGNATURE<br>10/14/2008 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| 95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.    X No

Not applicable.

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No    | 17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance? ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).    X No

Not applicable.

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response,

**ADDENDUM**

SECTION 2:

J. Douglas Sunseri of the law firm of Nicaud & Sunseri (3000 18th Street, Metairie, LA 70002); Nexsen Pruet, LLC (205 King Street, Suite 400, Charleston, SC 29401); and Bice, Palermo and Vernon, LLC (721 Kirby Street, Lake Charles, LA 70602) represent the Claimant.

SECTIONS 6 AND 7:

Claimant became aware of the potential exposure within the last year. Claimant first became ill after moving into a FEMA trailer on ___ ¹꜄˙ ___ / ₃ , 200꜀. However, the Claimant became ill but was unaware of the cause.

SECTION 8:

The Claimant has suffered and continues to suffer from eye, nose and throat irritation, headache, nausea, asthma-like symptoms, shortness of breath, emotional distress, and fear of illness, including cancer. The foregoing is a direct result of exposure to excessive levels of formaldehyde, a known carcinogen.

The Claimant has suffered and will continue to suffer and experience fear, anxiety and distress because of the risk of latent and/or future disease resulting from the exposure. Claimant will require medical monitoring for life to check for signs of formaldehyde-based injury. Claimant is also claiming all damages flowing from the deprivation of constitutional rights, privileges and immunities as set forth in #8 (SUPRA) that the trailer housing units provided to Claimant were unsuitable for their intended use.

The U.S. and its agencies, including but not limited to FEMA, failed to properly inspect the units to make certain that they were in compliance with all local, state, federal and international regulations and standards. The U.S. and its agencies, including but not limited to FEMA, provided trailer housing units that failed to adhere to express and/or implied warranties of habitability and fitness. The U.S. and its agencies, including but not limited to FEMA, failed to warn Claimant that Claimant was being exposed to dangerously high levels of formaldehyde. The U.S. and its agencies, including but not limited to FEMA, failed to properly monitor the manufacturing process of the trailer housing units to insure that they were in compliance with all local, state, federal and international regulations and standards. The U.S. and its agencies, including but not limited to FEMA, intentionally and with reckless indifference to the safety of Claimant and the public in general, concealed knowledge of the excessive levels of formaldehyde in the trailer housing units. The U.S. and its agencies, including but not limited to FEMA, failed to immediately relocate the Claimant after learning of the excessive levels of formaldehyde, further exposing Claimant. The U.S., through its agencies including but not limited to FEMA, has engaged in a concerted effort to "cover up" and conceal testing results of the formaldehyde levels in the trailer units provided to Claimant and others. The foregoing actions by the U.S. and its agents were in violation of and constituted a deprivation of the Claimant's state and federal constitutional rights, privileges and immunities. The

Claimant is demanding all damages recoverable under the applicable state constitutions, the Constitution of the United States, 42 USC Section 1983 and all applicable local, state and federal statutes or ordinances which allow for recovery of damages flowing from the deprivation of a constitutional right, privilege or immunity. Moreover, the U.S. and its agencies, including but not limited to FEMA, are liable under all state tort law remedies found applicable herein.

SECTION 9:

The "property damage" suffered by the Claimant is being deprived of reasonably healthy, safe living space by his/her landlord, FEMA.

SECTION 10:

The Claimant has suffered and continues to suffer from eye, nose and/or throat irritation, nose bleeds, headaches, nausea, asthma-like symptoms and respiratory problems, shortness of breath, emotional distress, fear of illness including cancer, and/or increased risk of cancer. The full residual effects are as yet unknown, but are serious in nature. And the foregoing is a result of exposure to excessive levels of formaldehyde, a known carcinogen. The Claimant has and will continue to suffer, and experience fear, anxiety and distress because of the risk of latent and/or future disease resulting from the exposure. The Claimant will require medical monitoring for life to check for signs of formaldehyde-based injury. The Claimant is also claiming all damages, flowing from the deprivation of constitutional rights, privileges, and immunities as set forth in #8 (above).

SECTION 11:

The witnesses include the Claimant; all government employees involved in procuring and providing trailers through FEMA; all persons involved in the production and manufacture of the trailers; and all professionals who have tested the air quality in the trailers, including but not limited to those retained by the named Claimants, CNN and the Sierra Club.

CONTRACT OF EMPLOYMENT/ENGAGEMENT OF LEGAL SERVICES

I, **Marlene Gable** , (hereinafter designated as "Client") hereby retain and employ the law firm of Nicaud, Sunseri and Fradella, L.L.C., Nexson Pruet, L.L.C. and Bice, Palermo and Vernon, L.L.C. (hereinafter designated as "Firm" or "Attorneys"), to represent me in my claim for personal injuries and/or property damages and/or losses arising from my exposure to formaldehyde while residing in a FEMA provided trailer.

## PURPOSE OF REPRESENTATION

1. The Client retains and employs the Attorneys to act for the Client in the Client's name and to take all appropriate legal action that the Attorneys deem necessary or desirable to recover damages and compensation to which the Client may be entitled against the instrumentalities of the government to include the Federal Emergency Management Agency ("FEMA") and the manufacturers of certain FEMA issued travel trailer(s) in which the Client resided, as well as to compromise and settle all potential claims against the said government instrumentalities and travel trailer manufacturer(s) [and possibly other defendants should the litigation later be expanded] for the injuries and damages sustained by the Client arising from or related to exposure to formaldehyde while residing in a FEMA provided travel trailer.

2. It is specifically agreed and understood that Attorneys' representation is limited to the specific person(s) named in this Agreement as the Client, and that the Attorneys are not representing or expected to represent any other person or entity not named herein as a Client. It is expressly agreed and understood that Attorneys' obligations are limited to representing the Client in the specific matter(s) described herein, and the Client does not engage nor expect the Attorneys to do anything else.

3. The Client authorizes and empowers the Attorneys to act as his/her negotiator; to file pleadings and to appear in courts of law on the Client's behalf; and to prosecute the Client's claim to settlement or judgment at trial. The Client authorizes the Attorneys to file, process and/or collect any and all benefits, payments, monetary awards and all other types and sources of compensation arising out of the injuries and/or damages described above. The Client understands and acknowledges that the specified Attorneys' fees shall be due and payable based on any and all gross revenues along with the value of any non-cash benefits collected on the Client's behalf.

4. If there is any type of settlement whereby the Client is to receive or to be paid future payments, then the settlement amounts and benefits will be reduced to present value using an annual discount rate of seven percent (7%) (to be prorated for any portion of a year), and the settlement will be arranged whereby there will be sufficient cash at the time of the settlement to pay the Attorneys' fees which will be calculated based on the present value of the total settlement, including without limit the present value of all future payments.

-1-


RECEIVED
MAY 3 1 2011

## APPROVAL NECESSARY FOR SETTLEMENT

5.   No final settlement of the Client's claim shall be made without Client's approval, and the Client agrees to make no settlement or offer of settlement to any responsible party, except through the Client's Attorneys.

6.   The Attorneys are hereby granted a power of attorney so that the Attorneys may have full authority to prepare, sign and file all legal instruments, pleadings, drafts, authorizations, and papers as shall be reasonably necessary to conclude this representation, as well as to execute, prosecute, or pursue any and all avenues of potential recovery on the Client's behalf. The Attorneys are also authorized and empowered to act as the Client's negotiator in any and all settlement negotiations concerning the subject of this Agreement.

## REPRESENTATIONS

7.   It is understood and agreed that the Attorneys cannot and do not warrant, guarantee, or predict the outcome of the dispute, and the Attorneys have not represented, warranted or guaranteed to the Client that the Client will recover all or any of the funds so desired by the Client. Instead, all of the Attorneys' statements, if any, are estimates or opinions only and shall not be considered as warranties or guarantees of the merits of the Client's claim or the claim's outcome.

8.   All related expenses and charges of any nature associated with the Client's claims, including but not limited to, medical bills and liens, Medicare subrogation, Medicaid subrogation, health insurance company or property insurance company liens, or any other bills and liens, will be paid by the Client from his/her respective share of the recovery obtained. In the event of a recovery, the Client agrees that the Attorneys are authorized to pay any unpaid medical bills or liens and all other expenses from the Client's share of the recovery, and the Attorneys are in no way obligated to pay any of these expenses from the Attorneys' fee portion of the recovery.

## CLIENT'S COOPERATION

9.   The Client agrees to fully cooperate with the Attorneys at all times and to comply with all reasonable requests of the Attorneys. The Client further agrees to keep the Attorneys advised of his/her whereabouts at all times, and to provide the Attorneys with an accurate: home address; home telephone number; business address; business telephone number; and any regularly used e-mail addresses. The Client agrees to inform the Attorneys, in writing, of any changes in such contact information within 48 hours of any such change.

10.  The Client agrees to accurately prepare, amend, and/or assist in the accurate preparation of or amendment to the documents necessary or desirable to advance the Client's claims (*e.g.,* Plaintiff Fact Sheet; Form 95, *etc.*).

11.  The Client understands and agrees that the Attorneys may request that the Client cooperate with and obtain a medical diagnosis relating to the Client's claims regarding formaldehyde exposure.  The Client agrees to reasonably cooperate with such efforts and to authorize all medical providers to provide all of the Client's related medical records to the Attorneys.

12.  The Client understands that the Attorneys will be investigating the law and facts applicable to the Client's claim on an ongoing basis. Should Attorneys learn something which in the opinion of Attorneys makes it impractical for the Attorneys to proceed with the handling of Client's claim, the Attorneys may then withdraw from further representation of the Client by sending written notice to Client's last known home mailing address.  In such event, the Client shall not be obligated to pay any fees to Attorneys.  The Attorneys' right to withdraw is wholly unconditional, and includes such reasons as the Attorneys' sole opinion that circumstances have developed that hinder continued effective litigation; that continued litigation would not be cost effective or not result in a sustainable or collectable judgment; or the Client has engaged in conduct which renders it unreasonably difficult for the Attorneys to carry out representation effectively; all as determined by the Attorneys in the Attorneys' sole discretion.

13.  If the Client terminates the Attorneys in this matter at any time or for any reason, the Client understands and agrees that the percentage interest assigned and conveyed to the Attorneys shall survive such termination, as the Attorneys' fee percentage interest assigned in this Agreement is irrevocable.  Furthermore, the Attorneys shall be entitled to reimbursement for any expenses that have been advanced for and in furtherance of the Client's claim.

14.  The Client understands that the Client's claims are part of a mass tort claim impacting potentially tens of thousands of injured persons and have been designated as part of Multidistrict litigation. The Client understands that attorneys (including the Attorneys in this Agreement) representing the numerous injured persons in this litigation are jointly cooperating on certain communal issues which provide a common benefit to those numerous injured persons to include, as relevant, the Client.  As part of the process of resolving the claims in this litigation, the Client understands and agrees that the Client may be designated, by the Attorneys, as a plaintiff who will be named in the caption of the pleadings and whose case may be tried as an illustrative case as part of the larger resolution of the litigation.

15.  The Attorneys may, at their own expense, and from the contingent fee interest stated herein, use or associate other attorneys in the representation of the Client's claims. The Client understands that the Firm is comprised of a number of attorneys.  Any one or more of those attorneys may work on Client's case, and Client agrees that no particular attorney within the Firm is undertaking the representation of Client by virtue of this Agreement.  The Client further understands that in such an instance, the "attorneys" will share any fees that may be generated in this matter and the Client will be advised of the fee division prior to any final distribution, as required.

-3-

## LEGAL CONSTRUCTION

16.  In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions thereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

17.  As consideration for legal services rendered and to be rendered by the Firm in carrying out the purposes of this Agreement, the Client agrees to pay to the Firm **THIRTY-THREE and ONE-THIRD PERCENT (33-1/3%)** of any and all amounts (monetary and non-monetary) which the Client may then receive through settlement prior to trial and **FORTY PERCENT (40%)** of any and all amounts (monetary and non-monetary) which the Client may receive should the matter be tried or appealed.  The payment of Attorneys' fees shall be calculated on the gross recovery prior to the deduction of expenses.

18.  If a recovery is made, then the Client will be responsible for all costs and expenses incurred in the handling of the Client's case. However, the Client's responsibility for paying costs shall not exceed the Client's gross recovery amount. The Client shall be responsible for paying the Attorneys' fees noted above in addition to the costs.

19.  Costs shall include, but not be limited to: cash and non-cash expenditures for filing fees; subpoenas; depositions; witness fees; in-house and outside investigation services; expert witness fees; medical and/or other forms of records and reports, as necessary to the claim; Lexis/Nexis/Westlaw and other computer research and on-line service costs; photographs; in-house and outside photocopies; facsimiles; long distance telephone calls; postage and federal express, UPS and other overnight service charges; mediation fees; travel costs; out-of-town hotel, food, and transportation charges; in-house and outside trial exhibits; in-house and outside multi-media services; outside legal fees and costs for estate, guardianship, bankruptcy and/or probate matters as relate to the claim; and all other costs necessary for performance of legal services.

20.  In addition to the above listed individual costs, the Firm also charges common benefit costs to Clients in mass tort and/or environmental cases.  Common benefit costs are costs expended by the Firm for the common benefit of a group of clients.  For example, if a deposition of a defendant expert witness is taken in one case, and this deposition can be used for and/or benefit the claims of many other clients, the Firm classifies these costs as common benefit costs. Similarly, if the Firm spends $30,000 to hire an expert to reach an opinion on a topic affecting many clients, then instead of charging the entire $30,000 to the first client who utilizes this expert, the Firm allocates the costs among all the clients in the group. Thus, using this example, if the Firm has 100 clients being represented in similar litigation, each client is charged $300 of the expert fee instead of the first client being charged $30,000.  By using this common benefit cost system, no one client has to solely bear the costs which actually benefit the group as a whole, and many of the most substantial costs of litigation can

-4-

be shared equally by all. Common benefit costs include any and all costs which can benefit a group of clients. For example, to the extent charges benefit a group of clients, common benefit charges may include postage, faxes, telephone, copies, experts, investigation, computer research, medical research, transportation, litigation group expenses, and many of the costs incurred in actually trying one client's case before a jury.

21.  All expenses incurred and paid by the Firm for and on behalf of the Client in prosecuting the claim and/or lawsuit shall be reimbursed by the Client out of the proceeds of any settlement or judgment.

22.  Often times in cases where attorneys represent multiple clients in similar litigation (for example, environmental contamination, asbestos, breast implant, Fen-Phen, Baycol), the opposing parties (the defendants) attempt to settle the attorneys' cases in groups under a matrix type system whereby the attorneys' clients are offered varying settlement amounts depending upon the circumstances of the clients' case. Once a settlement value under the matrix is determined, the client is then given the opportunity to accept or reject the value being offered within the matrix system. Similarly, defendants may wish to settle the attorneys' cases as a group, meaning the defendants may attempt to settle clients' case along with a number of other similar cases the Firm is handling. When this group settlement system is being offered by the defendant, the Firm will get each client's authorization for a minimum gross amount for which the clients authorize the Firm to attempt to settle the client's case. The Firm then adds up the total of all clients' minimum authorized settlement values and attempts to settle the group for at least the minimum authorized by the clients. Finally, under some circumstances, the defendants offer to pay a certain sum to all the Firm clients regardless of the circumstances of the individual cases. Thus, each client receives the same amount of money even though the clients may have different levels of injuries or damage. Just because a client's case settles with a group of others will not take away the client's right to approve or not approve his/her individual settlement. Moreover, if one client in the group does not wish to settle that does not affect another client's ability to settle or not to settle his/her case. Each client will always have the right to approve or not to approve his/her individual settlement.

23.  No party to this Agreement shall have the right to release, settle, transact, compromise or discontinue any demand, claim, suit or action commenced pursuant to this Agreement without the written consent of each party hereto, and that the Firm has acquired an interest in this suit in accordance with the laws of this State.

## CONFLICT OF INTEREST

24.  It is understood and agreed that Attorneys represent other clients arising out of the exposure to formaldehyde that is the subject of this Agreement and to the extent there are potential conflicts of interest, the Client agrees to waive such conflicts to the extent permissible.

READ and SIGNED in METAIRIE, LOUISIANA, _Tuesday_ this _14_ day of _October_, 2008, in the presence of the undersigned, after due reading of the whole.

WITNESSES:

_____
Sarah A. Martinez

_____
MARY MARTENSTEIN

X _Marlene Hable_
CLIENT'S SIGNATURE

_504  218 5224_
Telephone (Home)

_225 329 7898_
(Cell)                    (Work)

NICAUD, SUNSERI & FRADELLA, L.L.C.
3000 18th Street
Metairie, LA 70002
(504) 837-1304

BY: _J. Douglas Sunseri_

-6-