UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                                   MDL NO. 07-1873
       FORMALDEHYDE PRODUCTS
       LIABILITY LITIGATION
                                                                                          SECTION "N" (5)

THIS DOCUMENT RELATES TO
Member Case Nos. 09-4730

## ORDER AND REASONS

Before the Court are the following motions: (1) a Motion for New Trial and in the Alternative Motion for Relief from a Judgment or Order, filed by Laura Domingo (Rec. Doc. 23031); and (2) a Motion for New Trial and in the Alternative Motion for Relief from a Judgment or Order, filed by Penny Saunders (Rec. Doc. 23032). Sentry Insurance A Mutual Company has filed memoranda in opposition to the motions. (Rec. Docs. 23237, 23238, 23604, 23605).

## I. BACKGROUND:

The movants seek reconsideration of an Order and Reasons, dated September 2, 2011 (Rec. Doc. 22693), dismissing the claims of both Laura Domingo and Penny Saunders, among others. In that ruling, the Court granted a motion to dismiss each of the movant's claims with prejudice on the ground that each of them had failed to comply with the Court's orders by failing to cure material deficiencies in her Plaintiff Fact Sheet. (Rec. Doc. 22693). The full procedural history of the instant motions is set forth in this Court's Order and Reasons entered November 17, 2011 (Rec. Doc. 23558).

### A. The FEMA Trailer Formaldehyde Products Liability Litigation:

This multi-district litigation ("MDL"), referred to as *In Re: FEMA Trailer Formaldehyde*

1

*Products Liability Litigation*, has been active since October 24, 2007. The plaintiffs are individuals who resided in emergency housing units provided by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita. In general, they claim injuries resulting from alleged exposure to the release of formaldehyde and/or formaldehyde vapors in these units. Plaintiffs have sued over 100 entities, including the Government. In all, 4693 cases are associated with this MDL, with 4103 of them still pending. *See* Joint Report No. 25 of Liaison and Government Counsel (Rec. Doc. 22939). It has been estimated that more than 66,000 plaintiffs have submitted a Plaintiff Fact Sheet. *See* Minutes to Status Conference (Sept. 16, 2011, 10:00 a.m.).

### B. **Procedure for Dismissal of Claims for Failure to Comply with Discovery:**

A litigation of this size and complexity requires a well drawn case management structure. To this end, shortly after the creation of the MDL, this Court issued Pre-Trial Order No. 2, mandating that each plaintiff serve on the defendants a completed and verified Plaintiff Fact Sheet (PFS), within thirty days after transfer (or direct filing) into the MDL. (Rec. Doc. 87, signed Jan. 30, 2008). This Order, which reflected an agreement among the parties regarding case management, provided in section III(D) a "Procedure for Dismissal of Claims for Failure to Comply with Discovery." *See* Rec. Doc. 87 at pp. 8-9. The Court reiterated this procedure in Pre-Trial Order No. 32 (Rec. Doc. 1180, signed Mar. 18, 2009). According to the procedure, "[w]hen any plaintiff has failed to materially comply with his or her obligations under this Order to submit a completed PFS within the timelines established herein, a counsel representing a Defendant shall send to Plaintiff's Counsel for the plaintiffs in question...a letter confirming the failure to timely file and/or explaining the material deficiency in the PFS." *See* Rec. Doc. 1180 at p.5. This deficiency letter must identify the deficiency and notify the plaintiff that he or she "will have thirty (30) days to cure the alleged

material deficiencies, or any Defendant may thereafter move for dismissal, upon an appropriate showing that Plaintiff's claims should be dismissed for failure to comply with the Court's applicable Orders." *Id*. In Pre-Trial Order No. 88, the Court temporarily narrowed the PFS deficiency process to twenty-three "key" questions (except for cases where deficiency notices had been served and the time for curing such deficiencies already had expired) and, for deficiency notices served after March 24, 2011, extended the time for curing deficiencies by an additional thirty days. *See* Rec. Doc. 22124 (signed June 24, 2011), as corrected in Rec. Doc. 22153.

### C. The Movants' Deficiency Process:

The histories of the PFS deficiency processes of Penny Saunders and Laura Domingo are set out more fully in the Court's original Order and Reasons and the parties' underlying motion papers. (Rec. Docs. 20886, 21900, 22055, 22092, 22693). Deficiency notices were served on both Ms. Domingo and Ms. Saunders on May 26, 2010. (Rec. Docs. 20886-5, 20886-10). In the case of both Ms. Domingo and Ms. Saunders, the counsel for these plaintiffs attempted to reach them for more than one year in an effort to obtain the information necessary to cure the PFS deficiencies, making weekly telephone calls, performing computer-based person searches, and sending multiple letters, to no avail. (Rec. Docs. 22092 at 5, 8; 22092-1). In addition, counsel for these plaintiffs attempted to avoid dismissal by serving supplemental PFS answers in response to the deficiency notices. *Id.*; *see also* 22055-1, 22055-3. However, since they were unable to contact their clients, these supplemental responses did not cure the deficiencies. *See* Rec. Docs 22693 at 2. Plaintiffs' counsel also filed memoranda in opposition to the motion seeking to dismiss the plaintiffs' claims, asserting numerous arguments on behalf of their clients. *See* Rec. Docs. 21900, 22092. Despite counsel's efforts, the Court found a clear record of delay and contumacious conduct on the part of Ms.

3

Domingo and Ms. Saunders and found that the blame for this delay and failure to prosecute lay with the plaintiffs themselves, not with their counsel. *See* Order & Reasons entered Sept. 2, 2011, Rec. Doc. 22693 at 4-5. Accordingly, the Court concluded that the high threshold for dismissal under Rule 41(b) had been met with respect to each of them. *Id.*

### D. The Movants' Asserted Bases for New Trial:

In the instant motions, each of the movants seeks relief from the Court's ruling based on "newly discovered evidence," namely, that shortly after the claims were dismissed each of the movants contacted her attorney and provided the information necessary to cure the PFS deficiencies. (Rec. Docs. 23031-1 at 2; 23032-1 at 2). In addition, Ms. Domingo seeks relief on the additional basis of "excusable neglect" under Rule 60(b)(1), arguing that her failure to respond to her attorneys' multiple requests for information was excusable because "she is the mother of two children and was busy with them once school was out and was busy with her husband's litigation and volunteer work." Rec. Doc. 23031-1 at 4. Ms. Saunders also seeks relief on the additional basis of "excusable neglect" under Rule 60(b)(1), arguing that her failure to respond to her attorneys' multiple requests for information was excusable because she "had moved and changed her phone number but had neglected to inform counsel of her new phone number and address until after the Court dismissed the case." Rec. Doc. 23032-1 at 4. Finally, the movants argue that in light of this new information, the Court should vacate its previous orders to under the omnibus clause of Rule 60(b)(6).

## II. APPLICABLE LAW:

A motion asking that the court reconsider a prior ruling is evaluated either as a motion to "alter or amend a judgment" under Federal Rule of Civil Procedure 59(e) or as a motion for "relief

4

from a final judgment, order or proceeding" under Federal Rule of Civil Procedure 60(b). Which rule applies depends upon when the motion was filed. *Texas A & M Research Foundation v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003). If the motion was filed within twenty-eight days after the entry of the judgment or order at issue, the motion can be brought under Rule 59(e). Fed. R. Civ. P. 59(e). If it is filed after that time, it falls under Rule 60(b). *Texas A & M,* 338 F.3d at 400. Here, the motions were filed on September 30, 2011, precisely twenty-eight days after entry of the Court's rulings on September 2, 2011. Thus, they qualify as motions to alter or amend under Rule 59(e). Nevertheless, because the movants present arguments under both Rule 59(e) and Rule 60(b), the Court will evaluate the motions under the standards of each Rule, respectively, to determine whether relief is warranted under either.

    A. **Rule 59(e):**

"A motion to reopen a case under Rule 59(e), though subject to much more stringent time limitations than a comparable motion under Rule 60(b), is not controlled by the same exacting substantive requirements." *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 173-74 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). "Unlike Rule 60(b), Rule 59(e) does not set forth any specific grounds for relief." *Id.*

The Fifth Circuit has stated repeatedly that "Rule 59(e) relief is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Schiller v. Physicians Res. Grp Inc.*, 342 F.3d 563, 567 (5th Cir.2003); *see also Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010); *Marseilles Homeowners Condo. Ass'n Inc. v. Fidelity Nat'l Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008) ("A motion to alter

5

or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence.'"); *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir.2004) (a Rule 59(e) motion "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence"); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir.2003) ("[A] motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued.") (internal quotations omitted).[1]

In exercising its discretion under Rule 59(e), the court "must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993). In balancing these interests, courts consider the following non-inclusive factors: "(1) the reasons for the plaintiffs' default, (2) the importance of the evidence to the plaintiffs' case, (3) whether the evidence was [previously] available to plaintiffs ..., and (4) the likelihood that the defendants will suffer unfair prejudice if the case is reopened." *Ford v. Elsbury*, 32 F.3d 931, 937-38 (5th Cir.1994); *see also Texas A & M Research,* 338 F.3d at 400-01. However, none of these factors is determinative. Unlike Rule 60(b)(2), which requires a specific showing regarding the prior

---

[1] However, at least one panel of the Fifth Circuit has suggested that "[t]his standard is too stringent," opting instead for a balancing of equitable factors. *See Estate of Sturges v. Moore*, 73 Fed. Appx. 777, 2003 WL 22100834 at *1 (5th Cir. 2003) (unpublished opinion). Which standard applies is not dispositive here, for even under the more lenient approach of balancing the equities, the Court does not find relief under Rule 59(e) to be warranted, as discussed more fully below.

6

unavailability of evidence,[2] Rule 59(e) requires no special showing in this regard. *Ford*, 32 F.3d at 937.

**B. Rule 60(b):**

In deciding a motion for relief from judgment under Rule 60(b), the court "must engage in the same balancing of competing interests" as under Rule 59(e). *Edward H. Bohlin Co.*, 6 F.3d at 356. However, unlike Rule 59(e), Rule 60(b) "sets forth specific grounds for relief," making a motion under it "subject to unique limitations that do not affect a 59(e) motion." *Id.* Rule 60(b) permits a court to relieve a party from a final judgment, order, or proceeding for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). Here, the movants argue that they qualify for relief under Rule 60(b)(1), allowing relief from judgment in the case of "mistake, inadvertence, surprise, or excusable neglect," and under the omnibus provision of Rule 60(b)(6), which allows relief for "any other reason that justifies relief."

---

[2] Rule 60(b)(2) allows relief from judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b). "To obtain Rule 60(b)(2) relief, a movant must demonstrate: '(1) that it exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment.' " *Hesling v. CSX Transportation, Inc.*, 396 F.3d 632, 639 (5th Cir.2005) (quoting *Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003)).

7

"Several factors shape the framework of the court's consideration of a 60(b) motion: '(1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to do substantial justice; (4) whether the motion was made within a reasonable time; (5) whether—if the judgment was a default or a dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether there are any intervening equities that would make it inequitable to grant relief; and (7) any other factors relevant to the justice of the judgment under attack.' " *Edward H. Bohlin Co.*, 6 F.3d at 356 (quoting *Seven Elves v. Eskenazi*, 635 F.2d 396, 402 (5th Cir.1981)); *see also Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1082 (5th Cir. 1984).

1. Rule 60(b)(1): Mistake, Inadvertence, Surprise, or Excusable Neglect:

"While Rule 60(b)(1) allows relief for 'mistake, inadvertence ... or excusable neglect,' these terms are not wholly open-ended." *Pryor v. U.S. Postal Service*, 769 F.2d 281, 287 (5th Cir.1985). The Fifth Circuit has made clear that relief under Rule 60(b) is an extraordinary remedy, which will be granted only in "unusual or unique circumstances." *Id.* at 286.[3] "Gross carelessness is not enough. Ignorance of the rules is not enough, nor is ignorance of the law." *Id.* (citation omitted). Indeed, the Fifth Circuit has stated that "a court would abuse its discretion if it were to reopen a case

---

[3] *See also Petter v. Bickham* (*In re Pettle*), 410 F.3d 189, 191 (5th Cir. 2005) ("We have consistently held that the 'relief under Rule 60(b) is considered an extraordinary remedy [and that] "[t]he desire for a judicial process that is predictable mandates caution in reopening judgments." ' ") (quoting *Carter v. Fenner*, 136 F.3d 1000, 1007 (5th Cir.1998) (citation omitted)); *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d at 355-57 ("Rule 60(b) relief will only be afforded in 'unique circumstances.'").

8

under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court." *Edward H. Bohlin Co.*, 6 F.3d at 357. Likewise, "the fact that a litigant is personally uninformed as to the state of the matters before the court pertaining to his case is not sufficient to constitute the excusable neglect warranting relief from summary judgment contemplated by Rule 60(b)." *Smith v. Alumax Extrusions, Inc.*, 868 F.2d 1469, 1471-72 (5th Cir. 1989); *see also Edward H. Bohlin Co.*, 6 F.3d at 357 ("A party has a duty of diligence to inquire about the status of a case...."); *Pryor*, 769 F.2d at 287 ("This Court has pointedly announced that a party has a duty of diligence to inquire about the status of a case...."). Once it is established that a party's neglect "was at least a partial cause of its failure to respond," the moving party then has "the burden to convince the court that its neglect was excusable." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 939 (5th Cir. 1999).

In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993), faced with determining whether an attorney's neglect was "excusable" within the context of the Bankruptcy Rules, the Supreme Court provided useful guidance for determining "excusable neglect" under Rule 60(b)(1). The Court stated: "Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* Such circumstances "include ... the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*; *see also Dunn v. Cockrell*, 302 F.3d 491, 493 (5th Cir. 2002) (citing *Pioneer* in the context of Rule 60(b)(1)), *cert. denied*, 537 U.S. 1181 (2003).

9

Finally, in the context default judgments, the Fifth Circuit has "directed district courts to consider three factors in determining whether sufficient grounds exist for setting aside a default judgment under Rule 60(b)(1): '(1) the extent of prejudice to the plaintiff; (2) the merits of the defendant's asserted defense; and (3) the culpability of [the] defendant's conduct." *Rogers*, 167 F.3d at 938-39 (quoting *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1280 (5th Cir.1985)). "These factors are not 'talismanic.'" *Id.* The decision is within the district court's discretion, and the court may consider other factors. *Id.*

Here, the rulings at issue are not default judgments against defendants who failed to appear. Nevertheless, as dismissals for failure to prosecute and noncompliance with court orders, they share one of the characteristics of default judgments, namely an adjudication without full consideration of the substantive merits.[4] Thus, the above factors are applicable here, albeit in a slightly amended form (*i.e.,* the extent of prejudice to the *defendants*, the merits of the *plaintiffs*' arguments, and the culpability of the *plaintiffs*' conduct).

2. Rule 60(b)(6) Omnibus Clause:

Rule 60(b)(6) allows a court to set aside a final judgment, order, or proceeding "for any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Supreme Court has stated that "[t]o justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Pioneer Inv. Servs. Co.*, 507 U.S. at 393; *see also Edward H.*

---

[4] The dismissals here do not share the other characteristics of default judgments that have been set aside on Rule 60(b) motions. *See, e.g., Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981) (default judgment was entered in appellants' absence, and appellants did not have an opportunity to be heard). As will be discussed more fully below, the plaintiffs here were well represented by counsel, who participated fully and competently in all phases of the motion practice that resulted in the dismissals.

*Bohlin Co.*, 6 F.3d at 357 (Clause (6) is designed "to cover unforeseen contingencies—a means to accomplish justice under exceptional circumstances."). "If a party is partly to blame for the delay, relief must be sought...under subsection (1) and the party's neglect must be excusable." *Id.* Subsection (6) applies where a party is unable to take the necessary legal action "for reasons beyond his or her control." *Id.* at 394 (citing *Klapprott v. United States*, 335 U.S. 601, 613-14 (1949) (petitioner qualified for subsection (6) and was not relegated to subsection (1) where his failure to defend against denaturalization charges was due not to neglect, but to reasons beyond his control, *i.e.*, being imprisoned, ill, and "without a lawyer in the denaturalization proceedings or funds to hire one").[5] The Fifth Circuit has stated that where a party submits previously undisclosed evidence that is "so central to the litigation that it shows the initial judgment to have been manifestly unjust," relief under rule 60(b)(6) may be proper "even though the original failure to present that information was inexcusable." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (5th Cir. 1980); *see also Lavespere*, 910 F.2d at 173.

## III. ANALYSIS:

As set forth above, the movants seek relief under Rule 59(e) on the basis of "newly discovered evidence," under Rule 60(b)(1) on the basis of "excusable neglect," and under the omnibus clause of Rule 60(b)(6).

### A. "New Evidence":

Each of the movants argues that relief is warranted on the basis of "newly discovered

---

[5] A Rule 60(b) motion must be brought within one year if it is based on subsection (1) ("mistake, inadvertence, surprise or excusable neglect"). Fed. R. Civ. P. 60(c)(1). A motion under subsection (6) is not subject to this time bar. Thus, in *Klapprott*, where the motion was filed more than one year after judgment was entered, the petitioner could qualify for relief only by establishing that he did not fall within subsection (1).

evidence." In support of this argument, the movants point to the affidavits of plaintiffs' counsel's project coordinator stating that "on September 16, 2011, Laura Domingo did indeed call back Plaintiff's counsel and supplied the needed information to respond to the deficiencies" and that "when Penny Saunders did indeed call back after the dismissal, she supplied the needed information to respond to the deficiencies." *See* Rec. Docs. 23031-1 at 2; 23032-1 at 2. With regard to Penny Saunders, plaintiffs also point to the "new evidence" regarding the alleged reasons for the plaintiff's failure to provide the information earlier, *i.e.*, that Ms. Saunders had moved and changed her telephone number without informing her attorneys. *See* Rec. Doc. 23032-1 at 2.

### 1. **The Standard for "Newly Discovered Evidence":**

In opposing the instant motions, Sentry argues that the plaintiffs' new information does not qualify as "new evidence" under Rule 59(e) because it was available and known to the plaintiffs prior to the Court's rulings. Sentry argues that to satisfy the standard under Rule 59, the newly discovered evidence must be evidence (1) that was in existence at the time of trial (or earlier ruling); (2) that was discovered after the trial (or earlier ruling); (3) of which the plaintiffs were "excusably ignorant" (requiring a showing of "reasonable diligence"); and (4) that is material and such as to require a different result.

In support of this argument, the opponents cite *United States v. 41 Cases, More or Less*, 420 F.2d 1126, 1132 (1970) and *Government Financial Services One Ltd. Partnership v. Peyton Place, Inc.*, 62 F.3d 767, 775 (5th Cir. 1995). These cases do apply the standard articulated by the opponents in the context of a Rule 59(a) motion for new trial. *See 41 Cases*, 420 F.2d at 1132 ("Newly discovered evidence must be evidence in existence of which a party was excusably ignorant, discovered after trial. In addition facts implying reasonable diligence must be provided

by the movant. The evidence must be material, and not cumulative or impeaching, and it must be such as to require a different result."); *Gov't Fin. Serv. One Ltd. P'ship*, 62 F.3d at 775 ("[T]o prevail on a Rule 59(a) claim based on newly discovered evidence, the movant must have been excusably ignorant of the facts at the time of the trial despite due diligence to learn about them."). However, in other cases, the Fifth Circuit has held that unlike Rule 60(b)(2), which requires a specific showing regarding the prior unavailability of evidence and the movant's diligence,[6] Rule 59 requires no special showing in this regard. *See Ford*, 32 F.3d at 938; *see also Lavespere*, 910 F.2d at 173-74 ("We conclude...that in order to reopen a case under Rule 59(e) on the basis of evidentiary materials that were not timely submitted, the mover need not first show that her default was the result of mistake, inadvertence, surprise, or excusable neglect or that the evidence is such as to show that the judgment was manifestly wrong.").

Because the additional information submitted by the movants is not "evidence" in the classic sense and because of the policy favoring adjudication on the merits, the Court will resolve this conflict in law in favor of the movants. It is not dispositive, however, because even with the new information, the Court would not reach a different result. Essentially, the "new evidence" is the project coordinator's affidavit stating that the plaintiffs did return counsel's calls (after their claims had been dismissed) and did provide at that time the information necessary to prepare supplemental PFS responses. At least with regard to Penny Saunders, the "new evidence" also includes the

---

[6] *See supra* note 2; *see also Gov't Fin. Serv. One Ltd. P'ship*, 62 F.3d at 771 ("To succeed on a motion brought under 60(b)(2) based on newly discovered evidence, the movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment. The newly discovered evidence must be in existence at the time of trial and not discovered until after trial.") (internal quotations and citations omitted).

statements in the project coordinator's affidavit setting forth the reasons for the plaintiff's failure to provide the information earlier, *i.e.*, that Ms. Saunders had moved and changed her telephone number without informing her attorneys. *See* Rec. Doc. 23032-1 at 2. As discussed in more detail below,[7] even accepting the plaintiffs' assertions as true, the Court still would find a record of delay, contumacious conduct, and failure to prosecute on the part of each of the movants and would dismiss under Rule 41(b). For these same reasons, the Court need not decide whether these facts qualify as "newly discovered evidence" under Rule 59, given that they were unknown to counsel but were well known to the client at the time of the prior ruling.

## 2. **The Lack of Competent, Admissible Evidence:**

Sentry suggests that the proof submitted in support of the movants' argument is weak because the sole evidence is the affidavit testimony of Nicole Porter, plaintiffs' counsel's project coordinator. *See* Rec. Docs. 23031-3, 23032-3. She attests that she spoke with each movant by telephone and, through these telephone conversations, learned the reasons for the movants' failure to provide the information sooner. *Id.* As Sentry points out, the plaintiffs submit no affidavits from the movants themselves attesting to any of the reasons for their failure to provide their attorneys with the required PFS information or, in the case of Penny Saunders, the circumstances of her move and her failure to provide her attorneys with accurate contact information. Thus, Sentry argues that the evidence submitted does not support the new facts asserted.

Although Sentry does not make the argument directly, it alludes to a hearsay and/or competency problem regarding certain of the statements contained in the affidavits. Were the matter before the Court on summary judgment, there is little doubt that certain statements contained in the

---

[7] See discussion *infra* at 15-18.

affidavits – indeed, the key statements would not qualify as competent, admissible evidence regarding the actions and/or knowledge of the movants themselves. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also* Fed. R. Evid. 801-805; *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) ("Neither the district court nor this court may properly consider hearsay evidence in affidavits and depositions."). However, Sentry does not brief the applicable law regarding the competency and/or admissibility of the affidavit statements. More importantly, the Court does not find their admissibility (or lack thereof) to be dispositive. Even taking the affidavit statements as competent and admissible proof of the matters asserted, the Court does not find that relief is warranted under either Rule 59(e) or Rule 60(b). As explained more fully below,[8] even accepting the plaintiffs new assertions as true, the Court still would find a record of delay, contumacious conduct, and failure to prosecute on the part of the movants and would dismiss under Rule 41(b).

### B. "Excusable Neglect":

Plaintiffs argue that each of the following constitutes "excusable neglect" within the meaning of Rule 60(b)(1), and therefore justifies relief from this Court's prior rulings: (1) that Penny Saunders moved and changed her telephone number prior to the rulings but neglected to inform counsel of her new telephone number and address until after the Court had dismissed her claims; and (2) that Laura Domingo failed to respond to her attorneys' requests for information because "she is the mother of two children and was busy with them once school was out and was busy with her

---

[8] See discussion *infra* at 15-18.

husband's litigation and volunteer work." *See* Rec. Doc. 23032-1 at 4; Rec. Doc. 23031 at 4.

As the Supreme Court has stated, the determination of whether neglect is "excusable" is an equitable one, "taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. Here, the level of neglect is extreme. Over the course of several months, the movants failed to exercise even a modicum of responsibility regarding the prosecution of their case. The effort required to avoid dismissal was minuscule. Ms. Saunders needed only to have provided her attorney with a means to contact her regarding the case. Ms. Domingo needed only to have returned one her attorneys' multiple telephone calls or responded to one of her attorneys' multiple letters. *See* Rec. Doc. 22092-1. Yet, they failed to do even this. Thus, months elapsed with plaintiffs' counsel unable to comply with Court orders and unable to provide the defendants with the most basic information about the movants' claims. No exigent or extraordinary circumstances have been presented that would have prevented the movants from taking these minimal steps to protect their claims from dismissal.

It is true that the law favors adjudication on the merits and that this weighs in favor of granting relief from judgment. However, the equities of this case differ greatly from those in cases where the Fifth Circuit has found relief to be appropriate. For example, in *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981), the court found that the equities favored relief from judgment where the appellants "were informed by their attorney that no action would be required of them unless and until he contacted them; he subsequently 'withdrew' from the case without being relieved as attorney of record or informing the appellants of his withdrawal; he determined he would not appear at trial without informing the appellants of that decision; and although notice of trial was

forwarded to the appellants, they did not in fact receive it." *Id.* "Thus, relying on the assurances of their attorney, as might any laymen, the appellants found themselves [to be] judgment debtors...in the amount of a quarter of a million dollars without ever having had their day in court." *Id.* Likewise, in *Associated Marine Equipment LLC v. Jones*, 2009 A.M.C. 277, 72 Fed. R. Serv. 3d 363, 2008 WL 5129612 *4-5 (5th Cir. 2008), the appellant's attorney completely abandoned him without his knowledge. "At the time [he] was faulted for failing to contact the court, he believed that he was still represented by counsel," yet "he could not contact his counsel despite his repeated attempts to do so." *Id.* As a result, an entire "series of motions and decisions in [the appellee's] favor...went entirely unopposed and unquestioned." *Id.* at *5.

Here, in sharp contrast, the record reflects that plaintiffs' counsel worked diligently to protect the interests of clients who failed to make the slightest effort in furtherance of their case. Counsel made weekly telephone calls and sent multiple mailings over the course of two years in an effort to obtain the information needed to comply with the Court's orders. *See* Rec. Doc. 22092-1. They sent supplemental responses in an effort to satisfy the plaintiffs' obligations and filed opposition memoranda with the Court when the defendants moved to dismiss. (Rec. Docs. 22092-1, 21900). The movants, meanwhile, went more than two years without contacting their attorneys. *See* Rec. Doc. 22092-1. In the case of Ms. Saunders, she moved without taking even the slightest of steps that would have enabled her attorneys to reach her regarding important obligations in the case. In the case of Ms. Domingo, she ignored her attorneys' weekly telephone calls and multiple letters seeking information because she was "busy" with other things.

Moreover, there are other considerations in this case that weigh against relief, despite the strong policy favoring adjudication on the merits. There are more than 66,000 plaintiffs in this

17

MDL. The plaintiffs have sued more than 100 entities. The PFS process was established to lessen the burden of initial discovery while providing the defendants with basic information about each plaintiff and his or her claim. The vast majority of these plaintiffs have complied with their PFS obligations and are waiting for resolution of a matter that already has taken more than four years to litigate. Others are working with counsel to cure their deficiencies. Dismissal of those who do not comply with these obligations is necessary to effectively administer this litigation. Without this dismissal procedure, which has been part of the agreed case-management structure from the beginning (*see* Rec. Doc. 87), it would take decades to litigate these claims. To be effective, the dismissal procedure requires predictability regarding the Court's orders. Lightly vacating Orders, in the absence of unusual or compelling circumstances (which are not present here), would undermine the process and lead to further delay. If cases of extreme neglect such as the movants' cannot be dismissed (and remain dismissed), then the Court's orders would lose all credibility. The message sent would be that compliance with the Court's deadlines is optional.

Furthermore, even if the movants' claims were not part of a massive MDL, the Court would not reach a different result. As stated above, the level of neglect here is extreme. The movants failed to exercise even the feeblest responsibility regarding the prosecution of their case. Ms. Domingo needed only to have answered one of her attorneys' many calls and letters; Ms. Saunders needed only to have provided her attorneys with a means to contact her regarding the case. Yet, they failed to do so. Thus, for months plaintiffs' counsel was unable to comply with Court orders and unable to provide the defendants with the most basic information about the movants' claims. No Court would have tolerated this in a stand-alone case. To tolerate it in an MDL would be disastrous.

Thus, taking into account all of the circumstances surrounding the movants' omissions, and

weighing all of the factors, including prejudice to the other parties in the case, both the defendants and the thousands of other plaintiffs in this litigation, the Court finds that the movants' neglect was not excusable. Moreover, the Court does not find, under the circumstances presented here, that the interest in deciding cases on the merits outweighs the interest in the finality and predictability of the Court's orders. Therefore, the new facts presented by the movants do not justify relief under either Rule 60(b)(1) or Rule 59(e).

### C. "Manifest Injustice" and the Omnibus Clause of Rule 60(b)(6):

Finally, the movants argue that the Court should vacate its prior rulings under Rule 59(e) or the omnibus clause of Rule 60(b)(6) based on the equities of the case. Specifically, the movants argue that they provided the required information shortly after the Court dismissed their claims, that the prejudice to the defendants is small, and that the law favors adjudication on the merits.

1. Rule 60(b)(6):

As discussed above, Rule 60(b)(6) is an omnibus clause designed "to cover unforeseen contingencies — a means to accomplish justice under exceptional circumstances." *Edward H. Bohlin Co.*, 6 F.3d at 357. The Supreme Court has stated that this clause allows a court to set aside an order where the movant shows " 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Pioneer Inv. Servs. Co.*, 507 U.S. at 393. "If a party is partly to blame for the delay," then subsection (6) does not afford relief. *Id.* The Fifth Circuit has stated that relief under rule 60(b)(6) may be proper regardless of fault if the motion is based on new evidence that is "so central to the litigation that it shows the initial judgment to have been manifestly unjust." *Good Luck Nursing Home*, 636 F.2d at 577. The instant motions do not satisfy either of these standards. Each of the movants is to blame for her delay in complying with the Court's orders, and

the newly proffered reasons for the movants' delay do not show the Court's initial rulings to have been manifestly unjust.

    2. Rule 59(e):

Rule 59(e) "is not controlled by the same exacting substantive requirements" as Rule 60(b). *Lavespere*, 910 F.2d 167, 173-74. Thus, the Court has discretion under Rule 59(e) to alter its previous rulings if the equitable considerations show that justice requires it. However, having weighed all of the circumstances presented, the Court does not find that the facts here merit relief under Rule 59. For all of the reasons discussed in detail above,[9] the Court would have reached the same decision if it had known the information presented here, including the reasons for the movants' failure to comply with the Court's orders. Accordingly,

**IT IS ORDERED** that the following motions are **DENIED**: (1) Motion for New Trial and in the Alternative Motion for Relief from a Judgment or Order (Rec. Doc. 23031), filed by plaintiff Laura Domingo; and (2) a Motion for New Trial and in the Alternative Motion for Relief from a Judgment or Order (Rec. Doc. 23032), filed by plaintiff Penny Saunders.

New Orleans, Louisiana, this 7th day of December, 2011.

                                                    **KURT D. ENGELHARDT**
                                                    **United States District Court**

---

[9] *See* discussion *supra* at pages 15-18.