## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE FEMA FORMALDEHYDE PRODUCT    \*   CIVIL ACTION NO. 1873
LIABILITY LITIGATION,    \*
   \*
   \*
   \*
   \*   JUDGE ENGELHARDT
   \*
This Document Relates To:    \*
   \*
*Helen Albarado, et al.  v. Morgan Buildings & Spas,*   \*   MAGISTRATE CHASEZ
*Inc., et al* (E.D. La. 09-3702)    \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS WITH PREJUDICE FOR FAILURE TO COMPLY WITH PRE-TRIAL ORDER 32 RELATING TO PLAINTIFF FACT SHEETS

Defendants, Morgan Buildings & Spas, Inc. and Morgan Building Systems, Inc. (collectively, Morgan),[1] move this Court for summary dismissal of the claims filed by plaintiffs Clarence Blagio, Rosemary Blasio,[2] Faith Blasio and Linda Begnaud, because none lived in a temporary housing unit (THU) procured by Morgan.  Accordingly, Clarence Blagio, Rosemary Blasio, Faith Blasio and Linda Begnaud cannot state a claim against Morgan.  Morgan's motion for summary judgment should be granted, and Clarence Blagio, Rosemary Blasio, Faith Blasio and Linda Begnaud's claims against Morgan should be dismissed with prejudice, at their costs.

Morgan also moves to dismiss the claims of the following plaintiffs, with prejudice, because they failed to comply with Pre-Trial Order No. 32 as it relates to their obligation to produce completed Plaintiff Fact Sheets: Jerrilyn Carnesi, William Carnesi, Theresa Lopez, Adam Henry Patcheco, Karen Patcheco, Patricia Patechco, B. Vandenborre, R. Vandenborre,

---

[1] Morgan Building Systems, Inc., which merged into Morgan Buildings & Spas, Inc. on January 19, 1994, no longer exists.

[2] At times, Rosemary's last name is listed as "Blasio" and at other times it is listed as "Blagio."  It appears that in all instances, the reference is to the same person.   Morgan uses "Blasio" throughout as this is how Rosemary signed her Plaintiff Fact Sheets.

Henry Vandenborre, III, and Marina Vandenborre. Thus, their claims should be dismissed for failure to comply with Pre-Trial Order Nos. 2 and 32.

## I.   Background

In 2008, the Court was presented with numerous defense Rule 12(b)(1) challenges, including a Rule 12(b)(1) motion by Morgan, to the Court's subject matter jurisdiction as the plaintiffs generally had failed to match specific plaintiffs with specific defendants. Finding merit in these motions, the Court granted Morgan's Rule 12(b)(1) motion and ordered the plaintiffs to match to specific defendants or risk dismissal.[3] Thereafter, numerous new suits were filed in or transferred to the MDL, and Pretrial Order No. 40 was entered giving plaintiffs 45 days from the filing of each complaint to match plaintiffs to manufacturers.[4]

On October 15, 2010, plaintiffs filed the matter styled *Emmette Burrle, et al. v. Morgan Buildings and Spas, Inc., et al.* in the Eastern District of Louisiana, Civil Action No. 10-3702. The plaintiffs alleged that they resided in travel trailers, park models, and mobile homes in the State of Louisiana, which were provided by FEMA after Hurricanes Katrina and/or Rita in September 2005. The plaintiffs also alleged that the Morgan defendants manufactured and supplied these temporary housing units pursuant to contracts with FEMA and that the housing units were defective. *See generally* E. Dist. La. Civil Action No. 10-3702, R. Doc. No. 1. Specifically, the plaintiffs assert a cause of action against Morgan pursuant to the Louisiana Product Liability Act, La. R.S. 9:2800.51, *et seq. See id.*, Count 2.

As the captioned multi-district litigation was initiated to allow for the consolidated resolution and completion of discovery and other pre-trial matters, the Court has issued several pre-trial orders on numerous subjects, including discovery, to guide the multitude of parties and

---

[3] *See* R. Doc. Nos. 599 and 604.
[4] *See* R. Doc. No. 1781.

395198.3

counsel involved.   On January 30, 2008, the Court issued Pre-Trial Order No. 2, describing procedures for various case management issues. Pre-Trial Order No. 2 introduced the "Plaintiff Fact Sheet," which serves as a substitute for initial interrogatories and request for production of documents on a standardized and simple form:[5]

> Each Plaintiff's responses to the PFS will be treated as answers to interrogatories under Fed. R. Civ. P. 33, and request for production of documents under Fed. R. Civ. P. 34, and must be supplemented in accordance with the Fed. R. Civ. P. 26.[6]

Pre-Trial Order No. 2 also provided deadlines for the completion of Plaintiff Fact Sheets as well as consequences for failure to meet those deadlines.[7]   Subsequently, on March 18, 2009, the Court issued Pre-Trial Order No. 32, which amended Pre-Trial Order No. 2 concerning Plaintiff Fact Sheets.   Due to the large number of cases filed in summer 2009, Pre-Trial Order No. 32 provided new deadlines for the production of Plaintiff Fact Sheets.[8] The Plaintiff Fact Sheet questions covered, among other things, identification of the plaintiff's THU by manufacturer, VIN number, and size.

On May 27, 2009, the Court entered Pre-Trial Order No. 38, ordering that each plaintiff had the burden to file suit against only the particular manufacturer of his or her temporary housing unit.[9] Pre-Trial Order No. 53 was subsequently entered, ordering that each plaintiff had the burden to file suit against the particular government contractor involved with his or her unit.[10]   To assist in the matching process, the USA agreed to provide matching data to claimants who provided certain basic information, including a FEMA ID number.   After more than two years of discovery between the plaintiffs and the USA to facilitate the matching process, the

---

[5] *See* R. Doc. No. 87.
[6] *See id.*, p. 7.
[7] *See id.*, p. 8.
[8] *See* R. Doc. No. 1180.
[9] R. Doc. No. 1596.
[10] R. Doc. No. 10228.

Court entered Pre-Trial Order No. 68 to further facilitate discovery of information to enable the plaintiffs to match themselves to the appropriate defendants. Pre-Trial Order No. 68 introduced a "last chance" process for plaintiffs to obtain matching information and a date certain by which the matching efforts would end.[11]

Clarence Blagio, Rosemary Blasio, Faith Blasio and Linda Begnaud submitted Plaintiff Fact Sheets and Linda Begnaud and Rosemary Blasio submitted supplemental responses.[12] Their responses to questions identifying their THUs prove that summary judgment should be granted in favor of Morgan.

## II.   Summary Judgment Standard

The Federal Rules of Civil Procedure provide that the Court shall grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and identifying portions of the record the mover believes demonstrates the absence of a genuine issue of material fact. *Anderson,* 477 U.S. at 256; *Lopez v. Crowmark, Inc.,* 2000 WL 1010257, * 1 (E.D. La. July 19, 2000). If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. *Matsushita Elec. Indust. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 597, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

---

[11] R. Doc. No. 14200.
[12] *See* Exhibit A – Clarence E. Blagio, Sr.'s Plaintiff Fact Sheet; Exhibit B – Rosemary Blasio's original Plaintiff Fact Sheet; Exhibit C – Rosemary Blasio's supplemental Plaintiff Fact Sheet; Exhibit D – Faith Blasio's Plaintiff

Once the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Instead, the moving party must come forward with "specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (emphasis in original); *e.g. Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). To meet this burden, the non-moving party must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claims[s]." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993); *Johnson v. Tuff-N-Rumble Mgmt., Inc.*, 2000 WL 1145748, 6 (E.D. La. 8/14/00).

In order to determine whether or not summary judgment should be granted, an examination of substantive law is essential. *Landreneau v. Fleet Financial Corp.*, 197 F.Supp.2d 551 (M.D. La. 2002). Therefore, the court must examine a motion for summary judgment on its merits and grant the motion "if appropriate." Fed. R. Civ. P. 56(a).

The Louisiana Product Liability Act (LPLA) provides that "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product." La. R.S. 9:2800.54A. An essential element of any product liability claim is that liability is imposed only upon the manufacturer of the item in question. *Jack v. Alberto–Culver USA, Inc.*, 06–1883 (La. Feb. 22, 2007), 949 So.2d 1256, 1258; *LeBlanc v. Wyeth, Inc.*, 495 F.Supp.2d 609 (W.D. La. 2007); La. R.S. 9:2800.53(1)(a), (b).

Fact Sheet; Exhibit E – Linda H. Begnaud's original Plaintiff Fact Sheet; Exhibit F – Linda H. Begnaud's second Plaintiff Fact Sheet; Exhibit G – Linda Begnaud's third Plaintiff Fact Sheet.

While the plaintiffs allege that Morgan manufactured and supplied their THUs, Morgan did not, in fact, construct any THUs for Hurricanes Katrina or Rita.[13]  Morgan did, however, supply units manufactured by Fleetwood, Monaco, and Recreation By Design to FEMA.[14]  Putting to the side issues pertaining to "labeling and manufacturer" status, Morgan did not supply the THUs resided in by Clarence Blagio, Rosemary Blasio, Faith Blasio and Linda Begnaud.

III.   **Summary Judgment Should Be Granted Because the Evidence Establishes That Morgan Did Not Procure Clarence Blagio's, Rosemary Blasio's, Faith Blasio's and Linda Begnaud's THUs**

   A.   **Discovery responses place Clarence Blagio, Rosemary Blasio and Faith Blasio in the same mobile home manufactured by Cavalier**

Clarence Blagio, Rosemary Blasio and Faith Blasio submitted Plaintiff Fact Sheets which confirm they did not live in a Morgan-procured trailer.  Clarence Blagio, Rosemary Blasio and Faith Blasio all allege they lived in a THU manufactured by Morgan.[15]  Clarence Blagio identified Rosemary Blasio, and others, as occupants of his THU.[16]  Faith Blasio listed Clarence Blagio and Rosemary Blasio, among others, as occupants of her THU.[17]  And Rosemary Blagio identified Clarence Blagio, and others, as occupants of her THU.[18]  None knew the VIN number or the FEMA bar code number of their THU, nor could they state the approximate size of the THU, though Rosemary Blasio indicated that it was a 3-room handicap trailer.[19]

---

[13] Exhibit J - October 22, 2009 Morgan Buildings & Spas deposition excerpts, at 19:9-20:21; Exhibit K – July 14, 2011 letter from A. Stout to R. Burns, at James Schilligo's affidavit.
[14] Exhibit I – August 13, 2008 Morgan Buildings & Spas, Inc. and Morgan Building Systems, Inc. deposition excerpts, 21:6-13; Exhibit J, at 19:9-20:21 and 24:12-23; Exhibit K, at James Schilligo's affidavit.
[15] Exhibit A, pp 8-9, Exhibit B, pp. 8-9, Exhibit C, pp. 8-9, and Exhibit D, pp. 8-9.
[16] Exhibit A, p. 11.
[17] Exhibit D, at p. 11.
[18] Exhibit B, p. 11.
[19] Exhibits A, B, C and D, at pp. 8 - 9.

FEMA provided FRRATS information for Clarence Blagio, Rosemary Blasio and Faith Blasio stating that all three lived in a three bedroom mobile home manufactured by Cavalier and bearing VIN number ACBC06AL031166.[20]

The discovery produced by Morgan is clear. Morgan did not construct THUs.[21] Morgan procured THUs directly from limited, specific manufacturers and did not act as a general procuring agent for FEMA. James Schilligo, Morgan's National Sales Manager, was deposed as Morgan's corporate representative during Morgan's August 13, 2008, Rule 30(b)(6) deposition. Mr. Schilligo testified that for the Katrina/Rita disasters, Morgan's manufacturer-suppliers of THUs were Fleetwood, Recreation by Design, and Monaco.[22] Mr. Schilligo again confirmed its manufacturer-suppliers on October 22, 2009, in Morgan's Rule 30(b)(6) deposition in the Dubuclet/Fleetwood matter.[23]

Morgan did not procure the mobile home FEMA gave to Clarence Blagio, Rosemary Blasio and Faith Blasio. Morgan did not procure mobile homes manufactured by Cavalier.[24] Thus, Clarence Blagio's, Rosemary Blasio's and Faith Blasio's claims against Morgan should be dismissed with prejudice.

**B.**     **Morgan did not procure Linda Begnaud's THU**

Linda Begnaud submitted three Plaintiff Fact Sheets. In two, she identified the manufacturer of her mobile home as "Fleetwood Morgan" and the VIN number as TNFL427A296048A3.[25] In the third, she identified the manufacturer as "Fleetwood" and the

---

[20] Exhibit H – FEMA's response to Exhibit D, Sidney Torres Client List (April 27, 2009), excerpts, FEMA 10-001778; *See also* Exhibit CC - FEMA's response to Exhibit EE, Sidney Torres Client List (July 1, 2009), excerpts, FEMA 10-002190 at lines 183-187; Exhibit DD - FEMA's response to Exhibit HHH, Sidney Torres Client List (September 9, 2009), excerpts, FEMA 10-003043 at OriginalKey 139-142 and 147.
[21] Exhibit J, at 24:12-23.
[22] Exhibit I, at 21:6-13.
[23] Exhibit J, at 19:9-20:21.
[24] *Id.*; Exhibit I, at 21:6-13.
[25] Exhibits E and F at pp. 8-9.

395198.3

VIN number as TNFL427A296048A33.[26]   The VIN numbers are identical with the exception of the additional "3" at the end of the VIN number on her third Plaintiff Fact Sheet.  Ms. Begnaud also reported that the length and width of her mobile home was either 14 feet by 80 feet or 14 feet by 70 feet.[27]

FEMA provided FRRATS information for Linda Begnaud confirming that she lived in a mobile home manufactured by Fleetwood and bearing VIN number TNFL427A296048A33.[28]

As discussed above, Morgan procured THUs from Fleetwood.  However, Morgan did not procure the Fleetwood mobile home FEMA assigned to Ms. Begnaud.  Morgan has searched its records and determined that it did not procure a mobile home from Fleetwood bearing VIN numbers TNFL427A296048A3 or TNFL427A296048A33.  Further, Morgan did not procure mobile homes from Fleetwood which measured 14 feet by 80 feet or 14 feet by 70 feet.  All mobile homes Morgan procured from Fleetwood measured 14 feet by 60 feet.[29]   Accordingly, Ms. Begnaud's claims against Morgan should be dismissed with prejudice.

### C.   <u>Summary Judgment Should Be Granted</u>

Clarence Blagio's, Rosemary Blasio's, Faith Blasio's and Linda Begnaud's claims against Morgan fail, because they cannot produce evidence of the fundamental element of any product liability claim: that the defendant manufactured the product in question.  There is no evidence that Morgan procured the Cavalier mobile home in which Clarence Blagio, Rosemary Blasio and Faith Blasio resided.   Further, there is no evidence that Morgan procured the Fleetwood mobile home in which Linda Begnaud resided.  Therefore, Clarence Blagio's, Rosemary Blasio's, Faith Blasio's and Linda Begnaud's claims against Morgan should be

---

[26] Exhibit G, pp. 8-9
[27] *See* Exhibits E, F and G, at p. 9.
[28] Exhibit H, at FEMA 10-001780; Exhibit CC, at FEMA 10-002189, line 153.
[29] Exhibit K, at James Schilligo's affidavit.

dismissed, with prejudice. Weighing all of the evidence, there is no genuine issue as to any material fact and Morgan is entitled to a judgment as a matter of law.

Morgan's counsel wrote to Clarence Blagio's, Rosemary Blasio's, Faith Blasio's and Linda Begnaud's counsel on July 14, 2011, advising that Morgan did not procure the temporary housing units in question and demanding that their claims against Morgan be dismissed.[30] Morgan has not received any response to this letter. Accordingly, summary judgment should be granted dismissing Clarence Blagio's, Rosemary Blasio's, Faith Blasio's and Linda Begnaud's claims against Morgan with prejudice, at their costs.

## IV. Several *Albarado* Plaintiffs' Claims Should Be Dismissed With Prejudice For Failure to Comply With Pre-Trial Order Nos. 2 and 32.

As set forth above, the Court has entered several pre-trial orders relating to Plaintiff Fact Sheet discovery. In addition to introducing the Plaintiff Fact Sheet, Pre-Trial Order No. 2 also established a process for "curing" deficiencies in the fact sheets. Pursuant to Pre-Trial Order No. 2, when any plaintiff failed to materially comply with the obligations to submit a completed Plaintiff Fact Sheet within the timelines established, counsel for the defendants was to send the plaintiff's counsel a letter explaining the material deficiency in the Plaintiff Fact Sheet.[31] The letter would specifically list each alleged material deficiency and state that the defendants would seek dismissal if the plaintiff failed to cure the deficiencies within 30 days.[32] Additionally, Pre-Trial Order No. 88 identified twenty-three key Plaintiff Fact Sheet questions which were necessary for the purpose of exploring global resolution of claims.[33] This Court has stated that, while the purpose of Pre-Trial Order No. 88 was to streamline temporarily the Plaintiff Fact Sheet information gathering process, information identified in Pre-Trial Order No. 88 "is most

---

[30] Exhibit K.
[31] R. Doc. No. 87, pp. 8-9.
[32] *Id.*; *See also* Pre-Trial Order No. 32, R. Doc. No. 1180, p. 5.

vital and pressing in moving this matter toward resolution" which this Court finds "instructive on the issues of materiality and prejudice."[34]

### A.  **Plaintiffs who failed to submit completed Plaintiff Fact Sheets**

Numerous plaintiffs in this matter have provided insufficient Plaintiff Fact Sheet responses and failed to cure these deficiencies. The responses of the individual plaintiffs are discussed in detail below. While the extent of the deficiencies vary by plaintiff, the majority failed to provide the VIN number of their unit and their FEMA bar code number. The remaining few provided a VIN number and/or FEMA bar code number of units Morgan did not procure, but then changed their responses to identify Morgan as the manufacturer without providing any information which would assist Morgan in confirming that they actually resided in a Morgan-procured trailer. Responses to the questions identifying the THUs are essential for Morgan to determine that the plaintiff actually resided in a Morgan-procured unit. Morgan's involvement in this MDL is different from the other manufacturers because Morgan did not construct THUs. Morgan procured a select number of units from three manufacturers, but was not the sole provider of units manufactured by Fleetwood, Monaco and Recreation by Design. As set forth above in Morgan's motion for summary judgment, there are units manufactured by Morgan's suppliers which FEMA distributed which were not procured by Morgan. The source of these units is known. Perhaps FEMA obtained them directly from the manufacturer, they were units FEMA had from a previous disaster, or another procurer sold them to FEMA. Whatever the source, the fact remains that not all units manufactured by Fleetwood, Monaco and Recreation by Design were procured by Morgan. Therefore, it is essential that the plaintiffs provide identifying information about their units in order to affirmatively establish that they lived in a Morgan-

---

[33] R. Doc. No. 22153.
[34] *See* R. Doc. No. 22802, fn. 3.

procured unit.  The below discussed plaintiffs did not provide this information (in addition to failing to answer other Plaintiff Fact Sheet questions).   Therefore, their claims should be dismissed with prejudice for failing to comply with Pre-Trial Order Nos. 2 and 32.

### 1.   *The Carnesi plaintiffs failed to provide completed Plaintiff Fact Sheets*

#### a.   <u>Jerrilyn Carnesi's original Plaintiff Fact Sheet</u>

Ms. Carnesi did not state when her alleged injury or disease first occurred, though she listed several symptoms which she allegedly experienced.  (Section III(C)(5)).[35]  She responded "don't know" to questions about her FEMA identification number and the FEMA bar code number.  (Sections V(3-4)).[36]  Ms. Carnesi also stated that she does not know who treated her for each disease, illness or injury that she claims to have suffered.  (Section VII(B)).[37]  Ms. Carnesi failed to identify whether she has any test results from testing done on her FEMA THU or any questionnaires filled out regarding testing done on her FEMA THU.  (Section VIII(C) and (E)).[38]  Ms. Carnesi also failed to identify her current physician or any health care professional who has treated her in the last 7 years, even though she stated that Walgreens has dispensed medication to her during the same time period.  (*See* Section IX).[39]  Finally, neither Ms. Carnesi's Plaintiff Fact Sheet or the various authorizations are dated, with the exception of the Privacy Act Release Language form.[40]

#### b.   <u>William Carnesi's original Plaintiff Fact Sheet</u>

William Carnesi responded "N/A" to whether he is claiming that his use of a FEMA THU worsened a condition he already had or had in the past.  (Section III(A)(7)).[41]  It is unclear

---

[35] Exhibit L – Jerrilyn Carnesi's Plaintiff Fact Sheet, pp. 3-4.
[36] *Id*, p. 8.
[37] *Id.*, p. 14.
[38] *Id.*, p. 15.
[39] *Id.*, pp. 15-17.
[40] *Id.*, pp. 17 and the 8 unnumbered pages following p. 17.
[41] Exhibit O – William J. Carnesi' Plaintiff Fact Sheet, p. 4.

whether he is making this claim or simply not providing any information about the claim.  Mr. Carnesi stated that he does not recall whether he has ever filed a lawsuit or made a claim relating to any sickness or disease.  (Section IV(G)(1)).[42]  He stated that he did not know his VIN number, FEMA identification number and bar code number.  (Section V(A)(1-4)).[43]  Mr. Carnesi admitted that he suffered from a skin disease, but did not provide any information about when he suffered from the condition and did not recall whether he had ever had a chest x-ray, CT scan or MRI.  (Sections VI(F)(4) and (G)(1)).[44]  Mr. Carnesi also responded that he could not identify the health care providers who treated him for the disease, illness or injury he claims to have suffered.   (Section VII(B)).[45]   Mr. Carnesi did not date his Plaintiff Fact Sheet or the authorizations.[46]

### c.   Ms. Carnesi's Supplemental Plaintiff Fact Sheet Responses are insufficient and Mr. Carnesi failed to supplement his responses

Counsel for Morgan wrote to Mr. and Mrs. Carnesi's attorney on June 17, 2011, outlining these deficiencies.[47]  On August 15, 2011, Mr. Carnesi's attorney responded that she was still attempting to cure Mr. Carnesi's Plaintiff Fact Sheet deficiencies.[48]  To date, Morgan has not received a supplemental Plaintiff Fact Sheet from Mr. Carnesi.

Ms. Carnesi supplemented her response to Section III(C)(5), stating that she does not know when her alleged injury first occurred.[49]  She also revised her responses identifying her THU.  She removed her original identification of her VIN number and now states that she was

---

[42] *Id.*, p. 7.
[43] *Id.*, p. 8.
[44] *Id.*, p. 13
[45] *Id.*, p. 14.
[46] *Id.*, p. 17 and the 8 pages following p. 17.
[47] Exhibit N - June 17, 2011 letter from A. Stout to R. Burns.  Morgan acknowledges that Ms. Carnesi's name did not appear in the body of this letter, but Ms. Carnesi's deficiencies were referenced on the enclosure which outlined the specific deficiencies for each plaintiff.
[48] Exhibit P – August 15, 2011 letter from R. Burns to A. Stout.
[49] Exhibit M – Jerrilyn Carnesi supplemental Plaintiff Fact Sheet.

unable to obtain this information from FEMA.  She also changed the identification of her THU manufacturer from Monaco Coach to Morgan.  In her supplemental Plaintiff Fact Sheet, she provided her FEMA identification number and stated that she was unable to obtain her FEMA Bar Code number. (Section V(A)).[50] Ms. Carnesi did not update her Plaintiff Fact Sheet concerning who treated her for each disease, illness or injury that she claims to have suffered (Section VII(B)), or whether she had any test results from testing done on her FEMA THU or any questionnaires filled out regarding testing done on her FEMA THU.  (Section VIII(C) and (E)).[51]  She also failed to update her responses concerning the identity of her current physician or any health care professional who has treated her in the last 7 years, even though she still claims that Walgreens has dispensed medication to her during the last 7 years.  (*See* Section IX).[52]  Her supplemental Plaintiff Fact Sheet and the authorizations were also not signed.[53]

Though Ms. Carnesi attempted to resolve her Plaintiff Fact Sheet deficiencies, her responses are not sufficient.  She has not provided any information about her alleged Morgan trailer and failed to provide sufficient information about her alleged injuries or her medical history.  Ms. Carnesi's failure to answer these key questions justifies the dismissal of her claims.  Likewise, Mr. Carnesi's failure to supplement his Plaintiff Fact Sheet providing responses to key questions, including information establishing that he actually resided in a Morgan-procured THU, justifies dismissal of his claims.[54]

### 2.  *Theresa Lopez failed to provide a completed Plaintiff Fact Sheet*

Theresa Lopez submitted a Plaintiff Fact Sheet on December 23, 2009, which contains several insufficient responses.  She did not respond to the questions asking whether she is

---

[50] *Id.*, p. 8.  *Compare with* Exhibit L, p. 8.
[51] *Id.*, p. 14 – 15.
[52] *Id.*, pp. 15-17.
[53] *Id.*, pp. 17 and the 8 unnumbered pages following p. 17.

claiming to have developed or may have developed a disease or illness as a result of being exposed to formaldehyde, or what is her understanding of the disease or illness she claims to have developed or may develop.  (Section III(C)(1-2)).[55]  Ms. Lopez did not respond to the questions asking whether she has been diagnosed with cancer since moving into the FEMA trailer, when she claims her injury or disease first occurred, whether she suffered this type of illness or disease prior to living in a FEMA trailer, or whether she is claiming that her use of a FEMA trailer worsened a condition that she already has or had in the past.  (Section III(C)(3-7)).[56]  Ms. Lopez states that she is claiming mental and/or emotional damages as a result of residing in a FEMA THU, but does not provide any information about providers from whom she sought treatment, her understanding of the condition for which she was treated, whether she was treated for this psychological, psychiatric or emotional problem, or the medications prescribed or recommended by her physician or counselor.  (Section III(C)(8)).[57]  Ms. Lopez did not provide her drivers license number or the state issuing her license, the date and place of her birth, or any information about her education or her employment.  (Section IV(B-C) and (E-F)).[58]  Ms. Lopez also did not provide her move-in or move-out dates, the approximate square footage of her housing unit, or the approximate length and width of her housing unit.  (Section V(A)(6-7) and (11-12)).[59]

She did not respond to the questions asking whether she resided in another location during the time that she also resided in the FEMA THU, or whether any air quality tests were performed on her FEMA THU.  (Section V(A)(20) and (B)).[60]  Ms. Lopez stated that she was a

---

[54] See R. Doc Nos. 22803 and 22828 for dismissals under similar circumstances.
[55] Exhibit Q, Theresa Lopez's Plaintiff Fact Sheet, p. 4.
[56] *Id.*, pp. 4-5.
[57] *Id.*, p. 5.
[58] *Id.*, pp. 6-7.
[59] *Id.*, p. 8.
[60] *Id.*, p. 10.

395198.3

past smoker of cigarettes-cigars-pipe tobacco or used chewing tobacco/snuff, but did not identify how much she smoked or used on average.  (Section VI(C)).[61]  She also failed to respond to the questions about whether she has suffered from any lung or respiratory diseases, infectious diseases, long-term stomach or bowel disease, or skin disease.  (Section VI(F)).[62]  Ms. Lopez stated that she has received either a chest x-ray, CT scan or MRI, but did not provide any information about when the test was performed, and she did not answer any of the questions in Section VII concerning medical diagnosis. (Section VI(G) and VII).[63]  She did not answer any of the questions in Section VIII concerning various documents which are in her possession, custody or control.[64]  Ms. Lopez provided some information about medical providers, such as hospital and physician names, but did not provide any dates of treatment, admission dates or reasons for admission. (Section IX).[65]

Originally, Ms. Lopez did not provide any information about her manufacturer, VIN number, FEMA identification number or the FEMA bar code number.  (Section V(A)).[66]  She later supplemented her Plaintiff Fact Sheet and identified her manufacturer, VIN number and FEMA identification number, but did not provide a FEMA bar code number (Section V(A)).[67]  She did not supplement any of the other deficient responses referenced above.  Though Ms. Lopez submitted a supplemental Plaintiff Fact Sheet, she did not date her supplemental responses.

---

[61] *Id.*, pp. 11-12.
[62] *Id.*, pp. 12-13.
[63] *Id.*, pp. 13-14.
[64] *Id.*, p. 15.
[65] *Id.*, pp. 16-17.
[66] *Id.*, p. 8.
[67] Exhibit R - Theresa Lopez supplemental Plaintiff Fact Sheet, p. 8.  Morgan's counsel wrote to Ms. Lopez's counsel on June 17, 2011 concerning these deficiencies. *See* Exhibit N.

Ms. Lopez failed to answer the vast majority of her Plaintiff Fact Sheet questions and her supplemental response is woefully insufficient. Accordingly, Ms. Lopez's claims should be dismissed with prejudice.[68]

### 3.   The Patcheco plaintiffs failed to provide complete Plaintiff Fact Sheets

Neither Adam, Karen or Patricia Patechco provided complete responses to their Plaintiff Fact Sheets. In particular, none provided their THU VIN number or FEMA bar code number, and they failed to provide sufficient responses concerning their move-in and move-out date(s), among other questions. Responses to these questions are essential for Morgan to confirm that Adam, Karen and Patricia Patechco actually resided in a Morgan-procured THU and to evaluate their claims. Since Adam, Karen and Patricia Patcheco have failed to respond to these questions, among others, their claims should be dismissed.

### a.   Adam Patcheco

On June 17, 2011, counsel for Morgan wrote to plaintiffs' counsel advising that they had no record of plaintiff, Adam Henry Patcheco, submitting a Plaintiff Fact Sheet.[69] Thereafter, Mr. Patcheco produced a Plaintiff Fact Sheet, which appears to be his original, undated, Plaintiff Fact Sheet, with a supplemental response included on the original Plaintiff Fact Sheet, which are dated July 10, 2011. His Plaintiff Fact Sheet fails to provide responses to key questions.

Mr. Patcheco did not provide his THU VIN number or the FEMA bar code number. (Section V(A)(2) and (4)).[70] Mr. Patcheco did not provide a specific move-in date; instead, he only listed the year. He also did not provide a move-out date. He does not provide the

---

[68] *See* R. Doc. Nos. 22756, 22693, and 22802 for orders dismissing plaintiffs under similar circumstances.
[69] Exhibit N - June 17, 2011 letter from A. Stout to R. Burns.
[70] Exhibit S - Adam Patcheco's Plaintiff Fact Sheet, p. 8.

approximate square footage of his FEMA housing unit or the approximate length and width of the FEMA housing unit. (Section V(A)(6-7) and (11-12)).[71]

### b.   Karen Patcheco

On June 17, 2011, counsel for Morgan wrote to plaintiffs' counsel advising that they had no record of plaintiff, Karen C. Patcheco, submitting a Plaintiff Fact Sheet.[72]  Karen Patcheco, like Adam Patcheco, submitted an undated Plaintiff Fact Sheet and what appears to be a supplemental response to the same Plaintiff Fact Sheet dated July 10, 2011.[73]  In her Plaintiff Fact Sheet responses, Ms. Patcheco did not provide her VIN number or bar code number of her THU.  (Section V(A) (2) and (4)).[74]  She also did not provide her move-out date or the approximate square footage of the FEMA housing unit or its approximate length and width. (Section V(A)(7) and (11-12)).[75]

### c.   Patricia Patcheco

On June 17, 2011, counsel for Morgan also wrote to plaintiffs' counsel advising that they had no record of plaintiff, Patricia Patcheco, submitting a Plaintiff Fact Sheet.[76]  Patricia Patcheco then submitted what appears to be a supplemental Plaintiff Fact Sheet dated July 11, 2011.[77]  In her Plaintiff Fact Sheet responses, Ms. Patcheco states that she was treated or counseled for mental and/or emotional problems and identified the name of the person who counseled her, but later stated that she did not receive treatment, thus her responses concerning mental and/or emotional damages are inconsistent. (Section III(C)(8)).[78]  Ms. Patcheco also did not provide the VIN number of her THU or the FEMA bar code number stating that she did not

---

[71] *Id.*, p. 9.
[72] Exhibit N.
[73] Exhibit T - Karen Patcheco's Plaintiff Fact Sheet.
[74] *Id.*, p. 8.
[75] *Id.*, p. 9.
[76] Exhibit N.
[77] Exhibit U - Patricia Patcheco's Plaintiff Fact Sheet.

395198.3

know this information. (Section V(A)(2) and (4)).[79]  She did not provide a specific move-in date

nor did she provide any information concerning a move-out date or the approximate size of her

THU.  (Section V(A)(6-7) and (11-12)).[80]

### 4.    The Vandenborre plaintiffs failed to provide completed Plaintiff Fact Sheets

B. Vandenborre, R. Vandenborre, Marina Vandenborre, and Henry Vandenborre, III,

failed to provide sufficient responses to several Plaintiff Fact Sheet questions. On June 17, 2011,

counsel for Morgan wrote to plaintiffs' counsel requesting that the Vandenborres supplement

their Plaintiff Fact Sheets.[81]  On August 15, 2011, plaintiffs' counsel wrote to Morgan's counsel

stating that they are attempting to cure B. Vandenborre's, R. Vandenborre's, Marina

Vandenborre's, and Henry Vandenborre, III's, deficiencies.[82]  To date, Morgan has not received

a supplemental Plaintiff Fact Sheet for any of the Vandenborre plaintiffs.

All of the Vandenborre plaintiffs failed to answer numerous Plaintiff Fact Sheet

questions.  Additionally, Henry Vandenborre has identified at least two trailers in which he

resided, but the other family members only provided (limited) information about one trailer.

Their failure to answer several key questions, in addition to their inconsistent responses

concerning their THUs, justifies dismissal of their claims.[83]

### a.    B. Vandenborre

B. Vandenborre, represented by Henry Vandenborre, Jr., failed to respond to the question

concerning whether she was claiming that she developed or may develop a disease or illness as a

---

[78] *Id.*, p. 5.
[79] *Id.*, p. 8.
[80] *Id.*, p. 9.
[81] Exhibit N.
[82] Exhibit P.
[83] *See* R. Doc. Nos. 22821, 22756 and 23549 for orders dismissing plaintiffs under similar circumstances.

395198.3

result of being exposed to formaldehyde while residing in a THU. (Section III(C)(1)).[84] She also did not identify when she claimed her injuries or diseases first occurred, or whether she is claiming that the FEMA THU worsened the condition that she already had. (Section III(C)(5) and (7)).[85] Ms. Vandenborre claims that she is asserting damages for mental and/or emotional distress, but failed to provide any information concerning treatment for her alleged mental and/or emotional damages. (Section III(C)(8)).[86] She did not respond to the questions concerning family members who suffered from any type of disease. (Section IV).[87] Ms. Vandenborre also did not provide her FEMA bar code number, nor did she identify the approximate square footage or approximate length and width of her THU. (Section V(A)(4) and (11-12)).[88] She claims that repairs, service, or maintenance was performed on her THU, but she did not provide any information concerning the date and reason for the repair, service or maintenance. (Section V(D)).[89] Ms. Vandenborre also did not provide any information about her height or weight or smoking/tobacco use history. (Section VI(A-C)).[90] Ms. Vandenborre failed to answer several questions concerning her medical diagnosis (Section VII(C and D)), and whether she has been treated at any hospital, clinic, or health care facility for in patient or out patient treatment. (Section IX (C and D).[91]

      b.    **R. Vandenborre**

On December 18, 2009, R. Vandenborre, through Henry Vandenborre, Jr., submitted a Plaintiff Fact Sheet.[92] Ms. Vandenborre did not answer the question concerning whether she is

---

[84] Exhibit V – B. Vandenborre Plaintiff Fact Sheet, p. 3.
[85] *Id.*, p. 4.
[86] *Id.*, p. 5.
[87] *Id.*, p. 8.
[88] *Id.*, pp. 8-9.
[89] *Id.*, p. 10.
[90] *Id.*, pp. 11-12.
[91] *Id.*, pp. 14 and 16.
[92] Exhibit W – R. Vandenborre's Plaintiff Fact Sheet.

395198.3

19

claiming that she developed, or may have developed a disease or illness as a result of being exposed to formaldehyde, or her understanding of such disease or illness. (Section III(C)(1 and 2)).[93]  She does not identify the date on which her injuries or diseases first occurred (Section III(C)(5)),[94] or whether she is claiming that her use of the FEMA THU worsened the condition that she already had.  (Section III(C)(7).[95]  Ms. Vandenborre states that she is making a claim for mental and/or emotional damages, but does not provide any information about her treatment. (Section III(C)(8)).[96]  Ms. Vandenborre did not answer the questions in Section IV concerning family information.[97]  She also did not identify her FEMA bar code number or state the approximate square footage or length and width of her THU.  (Section V(A)(4) and (11-12)).[98] She confirmed that repairs, service or maintenance was performed on her THU, but does not state the date or reason for the repair, service or maintenance.  (Section V(D)).[99]  She does not provide to any information concerning her height, weight or  tobacco use.  (Section VI(A-C)).[100] Ms. Vandenborre also failed to provide information concerning health care providers who have treated her.  (Section VII(C and D) and Section X(C-D)).[101]

### c.   Marina Vandenborre

Marina Vandenborre submitted a Plaintiff Fact Sheet dated December 18, 2009.[102]  Ms. Vandenborre does not identify when she claims her injuries or diseases first occurred, or whether the THU worsened a condition that she has or already had.  (Section III(C)(5) and (7)).[103]  Ms.

---

[93] *Id.*, p. 3.
[94] *Id.*, p.4.
[95] *Id.*, p. 4.
[96] *Id.*, p. 8.
[97] *Id.*, p. 8.
[98] *Id.*, pp. 8-9.
[99] *Id.*, p.10.
[100] *Id.*, pp. 11-12.
[101] *Id.*, pp. 14 and 16-17.
[102] Exhibit X - Marina Vandenborre's Plaintiff Fact Sheet.
[103] *Id.*, p. 4.

395198.3

Vandenborre did not provide any employment information. (Section IV(F)).[104] Ms. Vandenborre indicated that a family member has suffered from diseases such as asthma, shortness of breath, headaches, etc., but did not provide any information concerning those persons or their conditions. (Section IV(A)).[105] She did not identify the VIN number or FEMA bar code number of her THU. (Section V(A)(1) and (3)).[106] Ms. Vandenborre did not state whether other persons resided in her THU (Section V(E)), and did not provide basic medical information, such as her height and weight. (Section VI(A and B)).[107] She did not identify any health care providers who treated her for a disease, illness or injury that she claims to have suffered as a result of living in a THU (Section VII(A and B))[108] and stated "n/a" concerning her medical providers (Section IX).[109]

### d.   Henry Vandenborre, III

Henry H. Vandenborre, III submitted a Plaintiff Fact Sheet dated December 18, 2009.[110] Mr. Vandenborre did not identify when his injuries or diseases first occurred, whether he suffered from the type of illness or disease prior to living in the THU or whether he is claiming his use of the THU worsened the condition that he already had or had in the past. (Section III(C)(5-7).[111] Mr. Vandenborre claims mental and/or emotional distress damages, but does not provide any information concerning his treatment or condition. (Section III(C)(8)).[112] In response to family members who have suffered from any type of disease, Mr. Vandenborre indicated that he did have such family members, but he did not provide any information

---

[104] Id., p. 6.
[105] Id., p. 8.
[106] Id., p. 8.
[107] Id., p. 10-11.
[108] Id., p. 14.
[109] Id., pp. 15-17.
[110] Exhibit Y - Henry H. Vandenborre, III's Plaintiff Fact Sheet.
[111] Id., p. 4.
[112] Id., p. 5.

concerning the names of the family members or their condition.   (Section IV(A)).[113]   Mr. Vandenborre did not provide basic information concerning his height and weight.   (Section VI(A and B)).[114]   Mr. Vandenborre claims that he has suffered from lung or other respiratory disease, but does not provide any additional information about his condition.   He did not answer the questions concerning whether he suffered from any infectious disease, long-term stomach or bowel disease, or skin disease.   (Section VI(F)).[115]   Mr. Vandenborre also did not respond to the questions concerning whether he has ever had an x-ray, CT scan or MRI, and did not provide any information concerning health care providers for physical or mental conditions relating to his use of a THU.   (Section VII(C and D)).[116]   Mr. Vandenborre did not provide any information concerning his physician and health care history, though he admitted that he has had medication dispensed to him during the last seven years.   (Section IX (A – F)).[117]

Mr. Vandenborre has also provided inconsistent information concerning his THU. Morgan has received three Plaintiff Fact Sheets for Mr. Vandenborre.   The above described deficiencies are present on all three Plaintiff Fact Sheets.   On one Plaintiff Fact Sheet, Mr. Vandenborre stated that he resided in a Gulf Stream unit and provided a VIN number.   He also stated that he resided in this unit for a time period between December 27, 2005 and September 16, 2006.[118]   Mr. Vandenborre then crossed out the manufacturer name and VIN number and stated that he was in a unit manufactured by Morgan Building & Spas, Inc.[119]

On a second Plaintiff Fact Sheet, Mr. Vandenborre again originally listed Gulf Stream as his manufacturer, but crossed out this response and stated the manufacturer was Morgan

---

[113] *Id.*, p. 8.
[114] *Id.*, p. 11.
[115] *Id.*, pp. 12-13.
[116] *Id.*, pp. 13-14.
[117] *Id.*, pp. 15-17.
[118] *Id.*, pp. 8-9.
[119] *Id.*, p. 8.

Buildings & Spas, Inc..[120] He did not list a VIN number for either the Gulf Stream unit or the alleged Morgan unit. He also stated his move-in date was February 16, 2006 and his move-out date was November 2007.[121]

On a third Plaintiff Fact Sheet, Mr. Vandenborre identified a second trailer in which he resided as a Fleetwood trailer. He also provided the VIN number and stated he lived in this unit between September 16, 2006 and November 2007.[122]

### B.    Dismissal with prejudice is appropriate

Rule 41(b) of the Federal Rules of Civil Procedure provides the basis for dismissal for failure to comply with a court order. The authority is based on the court's power to manage and administer its own affairs, and to ensure the orderly and expeditious disposition of cases. *See Berry v. CIGNA/RSI_CIGNA,* 975 F.2d 1188, 1190 (5th Cir. 1992); *Colle v. Brazos County, Texas,* 981 F.2d 237 at 242-243. Specifically, Rule 41(b) states: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him." The established rule in the Fifth Circuit is that dismissal under Rule 41(b) "is appropriate only where there is a clear record of delay or contumacious conduct and lesser sanctions would not serve the best interest of justice." *Wrenn v. American Cast Iron Pipe Co.,* 575 F.2d 544, 546 (5th Cir. 1978); *Connolly v. Papachristid Shipping Ltd.,* 504 F.2d 917 (5th Cir. 1974); *Pond v. Braniff Airways, Inc.,* 453 F.2d 347 (5th Cir. 1972); *Brown v. Thompson,* 430 F.2d 1214 (5th Cir. 1970). Additionally, Fed. R. Civ. P. 37(b)(2)(VI) permits the dismissal of an action as an appropriate sanction for failure to comply with discovery. Therefore, in accordance with Pre-Trial Orders No. 32, Fed. R. Civ. P. 41(b) and

---

[120] Exhibit Z - Henry Vandenborre, III's Plaintiff Fact Sheet No. 2, p. 8.
[121] *Id.*
[122] Exhibit AA - Henry Vandenborre, III's Plaintiff Fact Sheet No. 3, pp. 8-9.

395198.3

23

Fed. R. Civ. P. 37(b)(2)(VI), the proper remedy is dismissal of the above mention plaintiffs' claims, with prejudice.

As a defendant evaluates whether to become involved in a bellwether trial, whether settlement is feasible, and other issues concerning the progress of this lawsuit, a defendant must be able to know who is proceeding against it. The Plaintiff Fact Sheet serves as the initial round of discovery responses. In the absence of complete discovery responses, provided in a timely manner, such as described in Pre-Trial Order No. 2, Morgan is prejudiced. Because complete and cured Plaintiff Fact Sheets have not been provided by the aforementioned plaintiffs, and they failed to respond to a request to cure the deficiencies or provided supplemental responses that are still deficient, good cause exists for the Court to prevent further prejudice to Morgan and dismiss these plaintiffs' claims.

This Court has taken similar action in other suits pending in this MDL, based on circumstances similar to this case.[123] Therefore, Jerrilyn Carnesi's, William Carnesi's, Theresa Lopez's, Adam Henry Patcheco's, Karen Patcheco's, Patricia Patcheco's, B. Vandenborre's, R. Vandenborre's, Henry Vandenborre, III's, and Marina Vandenborre's, claims should be dismissed for failure to comply with Pre-Trial Order No. 32.

## V.   Conclusion

The claims against Morgan by Clarence Blagio, Rosemary Blasio, Faith Blasio and Linda Begnaud should be dismissed, because none lived in a temporary housing unit (THU) procured by Morgan. Thus, Clarence Blagio, Rosemary Blasio, Faith Blasio and Linda Begnaud cannot establish that Morgan is a "manufacturer" under the Louisiana Products Liability Act and their claims fail as a matter of law.

---

[123] *See* R. Doc. Nos. 22802 and 22803.

395198.3

Additionally, Jerrilyn Carnesi's, William Carnesi's, Theresa Lopez's, Adam Henry Patcheco's, Karen Patcheco's, Patricia Patcheco's, B. Vandenborre's, R. Vandenborre's, Henry Vandenborre, III's, and Marina Vandenborre's, claims should be dismissed with prejudice because they failed to provide complete Plaintiff Fact Sheet responses and did not respond to Morgan's letter that they correct the deficiencies or submitted insufficient supplemental responses. They have failed to comply with Pre-Trial Order No. 32, and dismissal of their claims is appropriate.

Respectfully submitted,

/s/ Amanda S. Stout
Christine Lipsey (La. Bar Roll No. 1182), T.A.
Dan E. West (La. Bar Roll No. 13372)
Amanda S. Stout (La. Bar Roll No. 29001)
McGLINCHEY STAFFORD, PLLC
One American Place, 14th floor
Baton Rouge, Louisiana 70825
Telephone: (225) 383-9000
Facsimile: (225) 343-3076

Attorneys for Morgan Buildings & Spas, Inc. and Morgan Building Systems, Inc

**Certificate of Service**

I certify that, on December 15, 2011, a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all liaison counsel by operation of the court's CM/ECF system and by electronic mail.

/s/ Amanda S. Stout
Amanda S. Stout

395198.3