**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| | * | |
| THIS DOCUMENT IS RELATED TO | * | |
| | * | |
| 09-2961 *Baquet, et al v. Forest River, Inc.* | * | |
| 09-8375 *Lazard, et al v. Vanguard Industries of Michigan, Inc.* | * | |
| 10-2304 *Celestine, et al v. Vanguard Industries of Michigan, Inc.* | * | |
| 10-2336 *Albert, et al v. Forest River, Inc.* | * | |
| 10-4663 *Hill, et al v. Forest River, Inc.* | * | |
| 11-850 *Jones, et al v. Forest River, Inc.* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF CERTAIN PLAINTIFFS' MOTION FOR PARTIAL RELIEF FROM JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 60(b), Certain Plaintiffs John A. Davis, Cheryl A. Washington, individually and on behalf of Arthur Washington and Isaiah Washington, Brian Clayton, Julien Dennis, Hailey Fontenot, Johnathan Fontenot Jr., Justin Fontenot, Nyriel Davis, Ashley Johnson, Beatrice Jones, Arthur Lawrence, Arthur Parker, Gary Richard Sr., Earnest Russell, Sabrina Thompson, Jasmine Thompson, Quintrice Thompson, Tia Thompson, Dianne Thornton, James Washington, Keoka Johnson, George Slan III on behalf of Cedric Roger, and Larries McGrew, on behalf of D'Morris Hill ("Certain Plaintiffs") respectfully request that this Court grant relief from the Order of Dismissal entered (Rec. Doc. 22956) in the above referenced cases, granting Defendant Forest River, Inc. and Vanguard LLC's (collectively,

1

"Forest River") Motion to Dismiss (Rec. Doc. 22607) and, in support, would show:

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDING.

Defendant Forest River filed a Motion to Dismiss on August 26, 2011 (Rec. Doc. 22607). The Court granted Defendant's motion on September 21, 2011 (Rec. Doc. 22956).

The subject Order of Dismissal dismissed the claims of 36 plaintiffs, across several different lawsuits. However, there is a discrepancy between the Civil Action numbers cited in the caption of Forest River's Motion to Dismiss, and the corresponding Court's Order of Dismissal, and the plaintiffs whose claims were dismissed.

Specifically, there are some plaintiffs who are listed in the body of the Order of Dismissal as having their claims dismissed, but whose corresponding lawsuit is not listed in the caption to the Order. Thus, at least according to PACER, those plaintiffs claims are not showing as dismissed.

The following are Certain Plaintiffs who were listed in the body of the Order of Dismissal and their case was properly identified in the caption to the Order. Their names and corresponding case style and Civil Action number are as follows:

| Civil Action Number | Plaintiff |
| --- | --- |
| C.A. No. 09-2961 | John A. Davis |
| C.A. No. 09-8375 | Cheryl A. Washington, individually and on behalf of Arthur Washington and Isaiah Washington |
| C.A. No. 11-850 | None |
| C.A. No. 10-2304 | George Slan, III, on behalf of Cedric Roger |
| C.A. No. 10-2336 | None |
| C.A. No. 10-4663 | Larries McGrew, on behalf of D'Morris Hill |

2

The following Certain Plaintiffs were listed in the body of the Order of Dismissal, but the Civil Action number for their case was not listed in the caption of the Order. Thus, PACER does not show that their case has been dismissed. These are:

| Civil Action Number | Plaintiff |
| --- | --- |
| C.A. No. 09-8374 | Brian Clayton |
| | Julien Dennis |
| | Earnest Russell |
| | Hailey Fontenot |
| | Johnathan Fontenot Jr. |
| | Justin Fontenot |
| | Nyriel Davis |
| | Ashley Johnson |
| | Keoka Johnson |
| | Beatrice Jones |
| | Arthur Lawrence |
| | Arthur Parker |
| | Gary Richard Sr. |
| | Sabrina Thompson |
| | Jasmine Thompson |
| | Quintrice Thompson |
| | Tia Thompson |
| | Dianne Thornton |
| | James Washington |

Aside from "Certain Plaintiffs", there are other plaintiffs that were listed in the subject Order of Dismissal.[1] However, Plaintiffs' Counsel does not seek to have the order set aside as to those plaintiffs.

---

1 Latoya Brown, David Calloway, Eugene Bibbins, Hoover Jones, Zavion Jones, Better Chester on behalf of Lian Chester and Lion Chester, Christine Myles, Edmon Harris, Donna Brown on behalf of Donna Lin Richrdson.

3

**STANDARD OF REVIEW**

"Motions under Rule 60(b) are directed to the sound discretion of the district court, and its denial of relief upon such motion will be set aside on appeal only for abuse of that discretion." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981)(internal citations omitted). "It is not enough that the granting of relief might have been permissible, or even warranted denial must have been so unwarranted as to constitute an abuse of discretion." *Id.*

"Nevertheless, the discretion of the district court is not unbounded, and must be exercised in light of the balance that is struck by Rule 60(b) between the desideratum of finality and the demands of justice." *Id.* (internal citations omitted). "That same consideration must inform appellate review of a district court's exercise of discretion under Rule 60(b); and where denial of relief precludes examination of the full merits of the cause, even a slight abuse may justify reversal." *Id*. (internal citations omitted).

**BACKGROUND**

I.   PLAINTIFF FACT SHEET PROTOCOLS

As the Court is aware, shortly after the creation of this MDL, the Court issued Pre-Trial Order No. 2 ("PTO 2"), which mandates that each plaintiff serve on the defendants a completed and verified Plaintiff Fact Sheet ("PFS") within thirty days after transfer (or direct filing) into the MDL. (Rec. Doc. 87, signed Jan. 30, 2008). PTO 2 also established a "Procedure for Dismissal of Claims for Failure to Comply with Discovery." (Rec. Doc. 87 at pp. 8-9, § III(D)).

The Court reiterated this dismissal procedure in Pre-Trial Order No. 32 (Rec. Doc. 1180)("PTO 32"). According to the procedure, "[w]hen any plaintiff has failed to materially

comply with his or her obligations under this Order to submit a completed PFS within the timelines established..., a counsel representing a Defendant shall send to Plaintiff's Counsel for the plaintiffs in question...a letter confirming the failure to timely file and/or explaining the material deficiency in the PFS." (Rec. Doc. 1180 at p.5). This deficiency letter must notify the plaintiff that he or she "will have thirty (30) days to cure the alleged material deficiencies, or any Defendant may thereafter move for dismissal, upon an appropriate showing that Plaintiff's claims should be dismissed for failure to comply with the Court's applicable Orders." *Id*.

More recently, in Pre-Trial Order No. 88 ("PTO 88"), the Court (1) temporarily narrowed the PFS deficiency process to twenty-three "key" questions (except for cases where deficiency notices had been served and the time for curing such deficiencies already had expired) and (2) for deficiency notices served after March 24, 2011, extended the time for curing deficiencies to sixty (60) days.  (Rec. Doc. 22153, dated July 5, 2011)

II. PLAINTIFFS' COUNSEL'S COMPLETION OF FACT SHEETS VIA CLAIMS OFFICE AND OTHERWISE.

Plaintiffs' Counsel, a member of the Plaintiffs' Steering Committee, utilized the Plaintiffs' Claims Office in New Orleans to complete and produce PFS for his clients throughout 2008 and 2009. Plaintiffs' Counsel understands that the Claims Office and the Manufacturer Defendant Liaison Counsel, Andrew Weinstock, and his staff, had a standard protocol whereby the Claims Office would submit large numbers of PFS's to Mr. Weinstock's office and Mr. Weinstock's office would notify counsel for other manufacturing defendants that they should come view the PFS databases to locate PFS's that related to their clients, or lawsuits naming their clients, or the like.

5

Obviously, Plaintiffs' Counsel has no idea exactly how Mr. Weinstock and other defense counsel facilitated the data exchange--which is logical, because PTO 2 only required plaintiffs' counsel to deliver PFS's to Mr. Weinstock. (Rec. Doc. 87, at III(b)).

Plaintiffs' Counsel believes that this is what happened, and Plaintiffs' counsel is completely confident that Mr. Weinstock and his staff made all appropriate steps to make those PFS's available to Forest River's counsel. Whether or not Forest River's counsel availed themselves is, again, not something that plaintiffs would, or could, know.

### III.   DEFENDANTS' DEFICIENCY PROCESS

In April 2011, Defendants in this MDL began a collective push to notify plaintiffs' counsel of deficiencies in their Plaintiff Fact Sheet responses. Counsel for plaintiffs in this MDL, including the undersigned, received multiple deficiency letters from defense counsel, listing thousands of deficiencies.

For example, in May and June 2011, the Plaintiffs' Counsel received, processed and responded to over 1,500 deficiency notices. *See* Declaration of Peter Taaffe, attached as **Exhibit A**. These 1,500 (plus) deficiency notices came from seven defense firms, representing twelve defendants. *Id.* Since June 2011, Plaintiffs' Counsel has received and addressed more than 600 additional deficiency notices. *Id.* In all situations—except this one---Plaintiffs' Counsel either resolved the deficiency to the defendant's satisfaction or, if that was not possible, dismissed the plaintiff from their lawsuit.

### IV.   BACKGROUND RELATING TO THE ORDER OF DISMISSAL AT ISSUE

In a letter dated, May 2, 2011, sent via U.S. Mail, Forest River's counsel notified

6

Plaintiffs' Counsel of deficiencies with 134 clients, claiming no PFS had been provided at all. Letter from Forest River Counsel to Buzbee Law Firm, attached as **Exhibit B**.

On June 8, 2011, Plaintiffs' Counsel responded that they had previously provided PFS forms for several of the plaintiffs at issue, were providing PFS for others at the time, and supplements/erratas for some of the PFS's that had already been provided. Letter from Buzbee Law Firm to Forest River Counsel, attached as **Exhibit C**. Plaintiffs Counsel's supplements/errata sheets identified the exact date that the original PFS form had been provided to Liaison Counsel from the Claims Office. *Id.*

A summary of the Certain Plaintiffs' PFS production from the Claim Center to Mr. Weinstock's office are as follows. *See* Declaration of David Carr, attached as **Exhibit D**.

| Name | Date of Original Production of PFS / Date of Production of Supplement/Errata |
|---|---|
| John A. Davis | 3/2/1999<br>6/8/2011 |
| Cheryl A. Washington, individually | 7/16/2008<br>6/8/2011 |
| Cheryl Washington on behalf of Isaiah Washington | 12/30/2009<br>6/8/2011 |
| Brian Clayton | 7/28/2009<br>6/8/2011 |
| Julien Dennis | 7/16/2008<br>6/8/2011 |
| Hailey Fontenot | 8/1/2008<br>6/8/2011 |
| Johnathan Fontenot Jr. | 8/1/2008<br>6/8/2011 |
| Justin Fontenot | 8/1/2008<br>6/8/2011 |
| Nyriel Davis | 8/1/2008<br>6/8/2011 |
| Ashley Johnson | 7/2/2009 |

7

|  | 6/8/2011 |
|---|---|
| Beatrice Jones | 7/16/2008 |
|  | 6/8/2011 |
| Arthur Lawrence | 7/16/2008 |
|  | 6/8/2011 |
| Arthur Parker | 7/16/2008 |
|  | 6/8/2011 |
| Gary Richard Sr. | 3/28/2009 |
|  | 6/8/2011 |
| Earnest Russell | 7/16/2008 |
|  | 6/8/2011 |
| Sabrina Thompson | 7/16/2008 |
|  | 6/8/2011 |
| Jasmine Thompson | 7/16/2008 |
|  | 6/8/2011 |
| Quintrice Thompson | 7/16/2008 |
|  | 6/8/2011 |
| Tia Thompson | 7/16/2008 |
|  | 6/8/2011 |
| Dianne Thornton | 7/16/2008 |
|  | 6/8/2011 |
| James Washington | 5/6/2009 |
|  | 6/8/2011 |
| Keoka Johnson | 7/5/2009 |
|  | 6/8/2011 |

The following Certain Plaintiffs' PFS forms were submitted directly from Plaintiffs' Counsel's office to Mr. Weinstock's office as follows. *See* Carr Declaration.

| Name | Date of Original Production of Fact Sheet Date of Production of Supplement/Errata |
|---|---|
| George Slan, III, on behalf of Cedric Roger | January 2010 |
|  | 6/8/2011 |
| Cheryl Washington, on behalf of Arthur Washington | February 1, 2010 |
|  | 6/8/2011 |
| Larries McGrew, on behalf of D'Morris Hill | January 2010 |
|  | 6/8/2011 |

A copy of Certain Plaintiffs' PFS forms and addendums/erratas, all provided to Mr.

8

Weinstock's office or Forest River's counsel well before Forest River filed its Motion to Dismiss, are attached as **Exhibit E.**

On June 30, 2011, a legal assistant from Forest River's counsel's office emailed and mailed a 73 page deficiency letter to Tony Buzbee. *See* Email from Forest River legal assistant to Tony Buzbee, attached as **Exhibit F**. Mr. Buzbee noticed that the email failed to include attorney Peter Taaffe and administrator David Carr. Mr. Buzbee advised Mr. Taaffe and Mr. Carr of the deficiency letter. *See* Taaffe Declaration. That day, Mr. Taaffe emailed the legal assistant and notified her that all correspondence like this must include himself and David Carr, as they were the ones at the firm handling such matters. *See* Email from Peter Taaffe to Forest River Legal Assistant, attached as **Exhibit G.**[2]

Although the deficiencies had been addressed, and despite the explicit request to include Mr. Taaffe and Mr. Carr on all deficiency-related correspondence, on August 22, 2011, the Forest River legal assistant <u>again</u> emailed Tony Buzbee a draft motion to dismiss, relating to the May 2, 2011 deficiency letter. *See* Email from Forest River Legal Assistant to Tony Buzbee, attached as **Exhibit H**. She did <u>not</u> copy Mr. Taaffe or Mr. Carr on the email, despite the previous request.

On August 26, 2011, Forest River filed a motion to dismiss Plaintiffs' claims. In that motion, Forest River represented to the Court that it had "no record" of ever receiving PFS forms for the listed 36 plaintiffs. (Rec. Doc. 22607-1, at p.3). Forest River represented to the Court that, "even after the start of the deficiency notice process, as discussed in more detail below, no

---

[2] These June 30, 2011 deficiencies were dealt with and are not at issue in this motion.

9

PFS was received. Counsel for the plaintiffs have stated that many PFSs were previously submitted with wrong or no manufacturer, however, Defendants have still not received PFSs for the above listed plaintiffs." *Id.*

On September 21, 2011, Forest River's motion was granted and the claims of 36 plaintiffs, including the claims of the Certain Plaintiffs, were dismissed.

On September 28, 2011, Forest River's legal assistant (<u>again</u>) emailed Tony Buzbee a Draft Motion to Dismiss pertaining to some other plaintiffs. *See* Taaffe Declaration. Once again, neither Mr. Taaffe, nor Mr. Carr were copied. *Id*. Fortunately, when Forest River filed their Motion to Dismiss on (Rec. Doc. 23894), Plaintiffs' counsel noticed that the motion involved its clients. *Id.* Counsel contacted Forest River's counsel, and reminded them of the request to copy Mr. Taaffe and Mr. Carr on these matters. *Id.* Plaintiffs' Counsel also remedied all of the deficiencies except one. *Id.* Plaintiffs' Counsel agreed to voluntarily dismiss the claims of the un-remedied plaintiff.[3] After this was done, Forest River's counsel agreed to and did withdraw the motion. (Rec. Doc. 24064).

On January 20, 2012, the Court set the case of *Hill v. Forest River* for trial (Rec. Doc. 24225). In the course of preparing for that trial, Plaintiffs' counsel noted that two of the Plaintiffs had been dismissed from the case. *See* Taaffe Declaration. This led to a review of the MDL docket and the revelation of the subject order of dismissal. *Id.* Plaintiffs' counsel immediately notified Forest River's counsel of the issue and requested that they agree to vacate the order, with respect to the Certain Plaintiffs. *Id.* To date, Forest River has refused to do so, making this motion necessary.

---

3 Again, this is exactly what has happened in every single situation, with every other defendant and defense firm.

10

**ARGUMENT AND AUTHORITIES**

I.  THE STANDARD

Rule 60 provides that:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; **or**

(6) any other reason that justifies relief.

FED. R. CIV. P. 60(b)(emphasis added).  Plaintiffs respectfully submit that the judgment should be vacated under on grounds 1, 3 or 6.

"The purpose of Rule 60(b) is to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of the facts." *Hesling v. CSX Transp. Inc.*, 396 F.3d 632, 638 (5th Cir. 2005).  "Although the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the case." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981).

In *Seven Elves*, the Fifth Circuit also noted that, "[b]y its very nature, the rule seeks to

strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of *all* the facts.'" *Seven Elves, Inc.*, 635 F.2d at 401.  (citing *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir.), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970)(italics in original).  "In this light, it is often said that the rule should be liberally construed in order to do substantial justice." *Id.*  Thus, "Rule 60(b) vests in the district courts power "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."  *Id*. (internal citations omitted).

In fleshing out the factors that help a court weigh the "equities of the particular case", so that the court can see "that justice is done in light of all of the facts", and that "the judgment might reflect the true merits of the case," the Fifth Circuit, in *Seven Elves*, delineated factors that should inform the district court's consideration of a motion under Rule 60(b):

(1) that final judgments should not lightly be disturbed;

(2) that the Rule 60(b) motion is not to be used as a substitute for appeal;

(3) that the rule should be liberally construed in order to achieve substantial justice;

(4) whether the motion was made within a reasonable time;

(5) whether — if the judgment was a default or a dismissal in which there was no consideration of the merits — the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense;

(6) whether — if the judgment was rendered after a trial on the merits — the movant had a fair opportunity to present his claim or defense;

    (7)    whether there are intervening equities that would make it inequitable to grant relief; and

    (8)    any other factors relevant to the justice of the judgment under attack.

*Id.* (citing *United States v. Gould*, 301 F.2d 353, 355-56 (5th Cir. 1962); 7 MOORE'S FEDERAL PRACTICE ¶ 60.19, at 237-39).

## II. THE ORDER WAS SECURED BY FRAUD, MISREPRESENTATION AND MISCONDUCT BY FOREST RIVER.

In its motion to dismiss, Forest River represented that Certain Plaintiffs had not provided PFS forms and that Forest River had not received them. The truth is that Plaintiffs did provide PFS forms. Counsel provided the PFS's for the subject Plaintiffs, via either the Claims Office to Liaison Counsel Weinstock or from their office to Mr. Weinstock, as required under PTO 2. Obviously, Plaintiffs' Counsel has no idea exactly how Mr. Weinstock and other defense counsel facilitated the data exchange. Plaintiffs' Counsel is completely confident that Mr. Weinstock and his staff took all appropriate steps to make those PFS's available to Forest River's counsel. Whether or not Forest River's counsel availed themselves is, again, not something that plaintiffs would, or could, know.

Also, Plaintiffs' Counsel provided Errata Sheets to Forest River's counsel on these plaintiffs in June 2011, in response Forest River's first deficiency notice. Even if Forest River's counsel did not (for whatever reason) obtain the PFS's of the plaintiffs when they were initially delivered to Mr. Weinstock's office, when the Errata Sheets were provided, which tied these Plaintiffs to Forest River, that should have been a tip-off that Forest River needed to go back to Mr. Weinstock's database to get the original PFS's for these plaintiffs.

Plaintiffs' Counsel followed the procedure set out in the PTO's. If Forest River had a

13

problem with how Mr. Weinstock was handling the transmission of PFS forms from his database to them, Forest River should have addressed it with Mr. Weinstock or the Court. Forest River should not be rewarded for effectively putting its head in the sand, in contravention of the applicable PTO's. And, Certain Plaintiffs should not be punished because Forest River's counsel could not properly coordinate with Mr. Weinstock's office, as implicitly required under the PTO's.

Forest River's sending the draft Motion to Dismiss to via email to Tony Buzbee only, despite the previous request to send these types of requests to Peter Taaffe and David Carr, suggests misconduct and gamesmanship on Forest River's part. This could have been a simple mistake. However, if it was a mistake, then Forest River should have no problem with setting aside the dismissal. In fact, as discussed above, when Forest River did this again, and were confronted with their mistake, Forest River did withdraw the motion. One would think that Forest River would do the same here, if it was truly a mistake.

Unfortunately, they have refused to do so here, suggesting that it was not a mistake. If this was instead a deliberate attempt to trick opposing counsel, then this raises serious concerns. Because Forest River has not agreed to set aside the dismissals, one can only assume that this was not a mistake but a calculated attempt to trick opposing counsel. This is another reason why the dismissal should be set aside under Rule 60(b)(3).

III.   ALTERNATIVELY, THE ORDER WAS A RESULT OF MISTAKE, INADVERTANCE OR EXCUSABLE NEGLECT.

Alternatively, Plaintiff would show the order was issued as a result of mistake, inadvertence or excusable neglect and should be vacated under Rule 60(b)(1). Forest River

14

should have notified the people handling this matter at Plaintiffs' Counsel's office. It is important to note that, at this time, Plaintiffs' Counsel and his staff were receiving thousands of deficiency notices by email, fax and letter. It was virtually impossible to notice that his co-counsel and staff were not included in this one mail---particularly when every other defense firm managed to communicate these issues to the right people, time and time again. Plaintiffs respectfully submit this qualifies as mistake, inadvertence or excusable neglect, under Rule 60(b)(1).

Further, Forest River has suffered no prejudice because it either had the PFS forms, or had the ability (and obligation) to retrieve them from Mr. Weinstock, per PTO 2. If Forest River elected not to retrieve the PFS forms, then any prejudice suffered lays at their own feet.

In light of the misrepresentations (whether intentional or unintentional) and the circumstances of the "conference" with Plaintiffs' counsel prior to the filing of the motion, Certain Plaintiffs respectfully submit that, Rule 60(b)(6) is another basis to set aside the order.

IV. <u>APPLICATION OF *SEVEN ELVES* FACTORS</u>

This motion was made within a reasonable time after Counsel learned of the issue. This involves a dismissal in which there was no consideration of the merits. There is merit in Certain Plaintiffs' claim. Forest River has suffered zero prejudice and will suffer zero prejudice if the motion is granted (other than having a dismissal secured by misrepresentation reversed).

In *Seven Elves*, the Fifth Circuit made it very clear that the overriding concern in considering a Rule 60(b) motion is "seeing that justice is done in light of all of the facts" and "that the judgment might reflect the true merits of the case".

Justice will not be done and the current judgment will not reflect the true merits of the case if Forest River and its counsel are rewarded for playing games with opposing counsel and misrepresenting facts to the Court   Justice will not be done if the current dismissal stays in place.

## PRAYER

WHEREFORE, Plaintiffs respectfully request that the Court grant their motion and partially vacate the Order of Dismissal with respect to Certain Plaintiffs, and for such other relief to which they are entitled.

Respectfully submitted,

### THE BUZBEE LAW FIRM

By: */s/ Peter K. Taaffe*_____
    Anthony G. Buzbee
    Texas Bar No. 24001820
    Peter K. Taaffe
    Texas Bar No. 24003029
    600 Travis, Suite 7300
    Houston, Texas 77002
    Tel.: (713) 223-5393
    Fax: (713) 223-5909

    JOHN MUNOZ (#9830)
    GARNER & MUNOZ
    1010 Common Street, Suite 3000
    New Orleans, LA 70112-2411
    Tel: (504) 581-7070
    Fax: (504) 581-7083

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for Forest River, Ernie Gieger, by email on January 31 and February 1, 2012, about the substance of the motion.  Agreement could not be reached, making this motion necessary.

>	*/s/ Peter K. Taaffe*
>	Peter K. Taaffe

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.

>	*/s/ Peter K. Taaffe*
>	Peter K. Taaffe