UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: FEMA TRAILER<br>FORMALDEHYDE PRODUCTS<br>LIABILITY LITIGATION | MDL NO. 07-1873<br><br>SECTION "N" (5) |

THIS DOCUMENT RELATES TO
Member Case Nos. 10-1291

## ORDER AND REASONS

Before the Court is Plaintiff's, Inoka Salter, as Next Friend of Caitlyn McDavell, Motion for Reconsideration (Rec. Doc. 24120). Defendants Starcraft RV, Inc. ("Starcraft"), Bechtel National, Inc., and Shaw Environmental, Inc., have filed a memorandum in opposition to the motion. (Rec. Docs. 24340).

## I. BACKGROUND:

The movant seeks reconsideration of an Order and Reasons dated December 14, 2011 (Rec. Doc. 23879), dismissing the claims of Inoka Salter on behalf of her minor daughter Caitlyn McDavell, along with the claims of one other plaintiff. In that ruling, the Court granted a motion to dismiss the movant's claims with prejudice on the ground that she had failed to comply with the Court's orders by failing to cure material deficiencies in her Plaintiff Fact Sheet. (Rec. Doc. 23539).

### A. The FEMA Trailer Formaldehyde Products Liability Litigation:

This multi-district litigation ("MDL"), referred to as *In Re: FEMA Trailer Formaldehyde Products Liability Litigation*, has been active since October 24, 2007. The plaintiffs are individuals who resided in emergency housing units provided by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita. In general, they claim injuries resulting from alleged

1

exposure to the release of formaldehyde and/or formaldehyde vapors in these units. Plaintiffs have sued over 100 entities, including the Government. In all, 4693 cases are associated with this MDL, with 4103 of them still pending. *See* Joint Report No. 25 of Liaison and Government Counsel (Rec. Doc. 22939). It has been estimated that more than 66,000 plaintiffs have submitted a Plaintiff Fact Sheet. *See* Minutes to Status Conference (Sept. 16, 2011, 10:00 a.m.).

    **B.** **Procedure for Dismissal of Claims for Failure to Comply with Discovery:**

A litigation of this size and complexity requires a well drawn case management structure. To this end, shortly after the creation of the MDL, this Court issued Pre-Trial Order No. 2, mandating that each plaintiff serve on the defendants a completed and verified Plaintiff Fact Sheet (PFS), within thirty days after transfer (or direct filing) into the MDL. (Rec. Doc. 87, signed Jan. 30, 2008). This Order, which reflected an agreement among the parties regarding case management, provided in section III(D) a "Procedure for Dismissal of Claims for Failure to Comply with Discovery." *See* Rec. Doc. 87 at pp. 8-9. The Court reiterated this procedure in Pre-Trial Order No. 32 (Rec. Doc. 1180, signed Mar. 18, 2009). According to the procedure, "[w]hen any plaintiff has failed to materially comply with his or her obligations under this Order to submit a completed PFS within the timelines established herein, a counsel representing a Defendant shall send to Plaintiff's Counsel for the plaintiffs in question...a letter confirming the failure to timely file and/or explaining the material deficiency in the PFS." *See* Rec. Doc. 1180 at p.5. This deficiency letter must notify the plaintiff that he or she "will have thirty (30) days to cure the alleged material deficiencies, or any Defendant may thereafter move for dismissal, upon an appropriate showing that Plaintiff's claims should be dismissed for failure to comply with the Court's applicable Orders." *Id*. In Pre-Trial Order No. 88, the Court (1) temporarily narrowed the PFS deficiency process to twenty-three "key"

questions (except for cases where deficiency notices had been served and the time for curing such deficiencies already had expired) and (2) for deficiency notices served after March 24, 2011, extended the time for curing deficiencies by an additional thirty days.  *See* Rec. Doc. 22124 (signed June 24, 2011), as corrected in Rec. Doc. 22153.

### C. The Movants' Deficiency Process:

The history of the PFS deficiency process of movant is set out more fully in the Court's original Order and Reasons and the parties' underlying motion papers.  (Rec. Docs. 23539, 23798, 23879).  Deficiency notices were served on the movant on April 13, 2011 and May 31, 2011.  (Rec. Docs. 23539-4, -10).  When the motion was filed seeking to dismiss the movant's claims, plaintiffs' counsel filed a memorandum in opposition to the motion, together with supporting affidavits, explaining that counsel had made repeated attempts to reach the movant in an effort to obtain the information necessary to fulfill her PFS obligations, but to no avail.  *See* Rec. Doc. 23798, 23798-2.  Based upon the evidence indicating the movant's failure to respond to counsel's requests for information, the Court found a clear record of delay and contumacious conduct on the part of the movant and found that the blame for this delay and failure to prosecute lay with the movant herself, not with her counsel.  *See* Order & Reasons entered Dec. 14, 2011 (Rec. Doc. 23879).  Accordingly, the Court concluded that the high threshold for dismissal under Rule 41(b) had been met.  *Id.*

### D. The Movant's Asserted Bases for Relief from Judgment:

In the instant motion, the movant seeks relief from the Court's ruling on the basis of "mistake" and "inadvertence."  Specifically, the movant argues that it was a mistake or inadvertence that plaintiffs' counsel's project coordinator filed an affidavit stating that plaintiffs' counsel had been unable to reach Inoka Salter on behalf of Caitlyn McDavell, when in fact certain of plaintiffs'

counsel's staff had spoken to Inoka Salter but had not correlated the daughter's name with that of the mother, Inoka Salter.

## II. APPLICABLE LAW:

A motion asking that the court reconsider a prior ruling is evaluated either as a motion to "alter or amend a judgment" under Federal Rule of Civil Procedure 59(e) or as a motion for "relief from a final judgment, order or proceeding" under Federal Rule of Civil Procedure 60(b). Which rule applies depends upon when the motion was filed. *Texas A & M Research Foundation v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003). If the motion was filed within twenty-eight days after the entry of the judgment or order at issue, the motion can be brought under Rule 59(e). Fed. R. Civ. P. 59(e). If it is filed after that time, it falls under Rule 60(b). *Texas A & M,* 338 F.3d at 400. Here, the motion was filed on January 11, 2012, precisely twenty-eight days after entry of the Court's rulings on December 14, 2011. Thus, it qualifies as a motion to alter or amend under Rule 59(e). Nevertheless, because the movant presents arguments under both Rule 59(e) and Rule 60(b), the Court will evaluate the motion under the standards of each rule, respectively, to determine whether relief is warranted under either.

### A. Rule 59(e):

"A motion to reopen a case under Rule 59(e), though subject to much more stringent time limitations than a comparable motion under Rule 60(b), is not controlled by the same exacting substantive requirements." *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 173-74 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). "Unlike Rule 60(b), Rule 59(e) does not set forth any specific grounds for relief." *Id.*

The Fifth Circuit has stated repeatedly that "Rule 59(e) relief is appropriate (1) where there

4

has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Schiller v. Physicians Res. Grp Inc.*, 342 F.3d 563, 567 (5th Cir.2003); *see also Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010); *Marseilles Homeowners Condo. Ass'n Inc. v. Fidelity Nat'l Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008) ("A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence.'"); *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir.) (a Rule 59(e) motion "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence"), *cert. denied*, 543 U.S. 976 (2004); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir.2003) ("[A] motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued.") (internal quotations omitted).[1]

In exercising its discretion under Rule 59(e), the court "must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993). In balancing these interests, courts consider the following non-inclusive factors: "(1) the reasons for the plaintiffs' default, (2) the importance of the evidence to the plaintiffs' case, (3) whether the evidence was [previously] available to plaintiffs ..., and (4) the likelihood that the defendants will suffer unfair prejudice if the case is reopened." *Ford v. Elsbury*, 32 F.3d 931,

---

[1] However, at least one panel of the Fifth Circuit has suggested that "[t]his standard is too stringent," opting instead for a balancing of equitable factors. *See Estate of Sturges v. Moore*, No. 61023, 2003 WL 22100834, *1 (5th Cir. Sept. 11, 2003) (unpublished opinion).

937-38 (5th Cir.1994); *see also Texas A & M Research,* 338 F.3d at 400-01.

### B. Rule 60(b):

Rule 60(b) of the Federal Rules of Civil Procedure permits a court to relieve a party from a final judgment, order, or proceeding for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

"Several factors shape the framework of the court's consideration of a 60(b) motion: '(1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to do substantial justice; (4) whether the motion was made within a reasonable time; (5) whether—if the judgment was a default or a dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether there are any intervening equities that would make it inequitable to grant relief; and (7) any other factors relevant to the justice of the judgment under attack.' " *Edward H. Bohlin Co.*, 6 F.3d at 356 (quoting *Seven Elves v. Eskenazi*, 635 F.2d 396, 402 (5th Cir.1981)); *see also Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1082 (5th Cir. 1984).

1. <u>Rule 60(b)(1):  Mistake, Inadvertence, Surprise, or Excusable Neglect</u>:

"While Rule 60(b)(1) allows relief for 'mistake, inadvertence ... or excusable neglect,' these terms are not wholly open-ended." *Pryor v. U.S. Postal Service*, 769 F.2d 281, 287 (5th Cir.1985). The Fifth Circuit has made clear that relief under Rule 60(b) is an extraordinary remedy, which will be granted only in "unusual or unique circumstances." *Id.* at 286.  Once it is established that a party's neglect "was at least a partial cause of its failure to respond," the moving party then has "the burden to convince the court that its neglect was excusable."  *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 939 (5th Cir. 1999).

In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993), faced with determining whether an attorney's neglect was "excusable" within the context of the Bankruptcy Rules, the Supreme Court provided useful guidance for determining "excusable neglect" under Rule 60(b)(1).  The Court stated: "Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.*  Such circumstances "include ... the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*; *see also Dunn v. Cockrell*, 302 F.3d 491, 493 (5th Cir. 2002) (citing *Pioneer* in the context of Rule 60(b)(1)), *cert. denied*, 537 U.S. 1181 (2003); *Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 468-70 (5th Cir. 1998) (holding that *Pioneer*'s excusable neglect standard applies to civil cases outside the bankruptcy context), *cert. denied*, 526 U.S. 1005 (1999).

Finally, in the context default judgments, the Fifth Circuit has "directed district courts to consider three factors in determining whether sufficient grounds exist for setting aside a default judgment under Rule 60(b)(1): '(1) the extent of prejudice to the plaintiff; (2) the merits of the defendant's asserted defense; and (3) the culpability of [the] defendant's conduct." *Rogers*, 167 F.3d at 938-39 (quoting *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1280 (5th Cir.1985)). "These factors are not 'talismanic.' " *Id.* The decision is within the district court's discretion, and the court may consider other factors. *Id.*

Here, the ruling at issue is not a default judgment against defendants who failed to appear. Nevertheless, as a dismissal for failure to prosecute and noncompliance with court orders, it shares one of the characteristics of default judgments, namely an adjudication without full consideration of the substantive merits. Thus, the above factors are applicable here, albeit in a slightly amended form (*i.e.,* the extent of prejudice to the *defendants*, the merits of the *plaintiff's* arguments, and the culpability of the *plaintiff's* conduct).

2. Rule 60(b)(6) Omnibus Clause:

Rule 60(b)(6) allows a court to set aside a final judgment, order, or proceeding "for any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Supreme Court has stated that "[t]o justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Pioneer Inv. Servs. Co.*, 507 U.S. at 393; *see also Edward H. Bohlin Co.*, 6 F.3d at 357 (Clause (6) is designed "to cover unforeseen contingencies—a means to accomplish justice under exceptional circumstances."). "If a party is partly to blame for the delay, relief must be sought...under subsection (1) and the party's neglect must be excusable." *Id.* Subsection (6) applies where a party is unable to take the necessary legal action "for reasons beyond

8

his or her control." *Id.* at 394 (citing *Klapprott v. United States*, 335 U.S. 601, 613-14 (1949) (petitioner qualified for subsection (6) and was not relegated to subsection (1) where his failure to defend against denaturalization charges was due not to neglect, but to reasons beyond his control, *i.e.*, being imprisoned, ill, and "without a lawyer in the denaturalization proceedings or funds to hire one").[2] The Fifth Circuit has stated that where a party submits previously undisclosed evidence that is "so central to the litigation that it shows the initial judgment to have been manifestly unjust," relief under rule 60(b)(6) may be proper "even though the original failure to present that information was inexcusable." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (5th Cir. 1980).

### III. ANALYSIS:

The movant argues that her dismissal should be vacated because it was a mistake or inadvertence that plaintiffs' counsel's project coordinator filed an affidavit stating that plaintiffs' counsel had been unable to reach Inoka Salter on behalf of Caitlyn McDavell, when in fact certain of plaintiffs' counsel's staff had spoken to Inoka Salter. They simply had not correlated the daughter's name with that of her mother.

These are critical facts. This Court dismissed the movant's claims pursuant to Rules 41(b) and 37(b)(2) for noncompliance with this Court's orders relating to Plaintiff Fact Sheets. Under these rules, it is important that the Court make a finding that the fault for the delay and/or

---

[2] A Rule 60(b) motion must be brought within one year if it is based on subsection (1) ("mistake, inadvertence, surprise or excusable neglect"). Fed. R. Civ. P. 60(c)(1). A motion under subsection (6) is not subject to this time bar. Thus, in *Klapprott*, where the motion was filed more than one year after judgment was entered, the petitioner could qualify for relief only by establishing that he did not fall within subsection (1).

9

noncompliance lies with the plaintiff herself and not with her counsel.[3]  In its prior Order and Reasons, the Court made such a finding and its dismissal of the movant's claims rested on this finding.  Now, based on the representations of counsel in connection with the instant motion, it appears that Ms. Salter did not in fact neglect to cooperate with her attorneys in their efforts to gather the required information.  Rather, it seems that plaintiffs' counsel's staff, after speaking with Ms. Salter, failed to register that fact in connection with her daughter's file.  Consequently, in opposing Starcraft's motion to dismiss, plaintiffs' counsel mistakenly submitted an affidavit stating that their staff, despite vigorous attempts, had been unable to reach Ms. Salter.  Thus, contrary to the Court's finding in its previous Order and Reasons, the blame for the movant's noncompliance with the Court's orders lies at least in part with the office of plaintiff's counsel, rather than with the plaintiff herself.

The question for the Court is whether the neglect or inadvertence of plaintiffs' counsel or their staff is "excusable."  The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the [non-movant], the length of the delay and its potential

---

[3]  Under Rule 41(b), " 'delay caused by [the] plaintiff himself and not his attorney' " is among the aggravating factors that the Fifth Circuit requires for dismissal.  *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) (quoting *Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir. 1986)).  In addition, the Fifth Circuit has articulated four factors under Rule 37(b)(2) "that must be present before a district court may dismiss a case as a sanction for violation of a discovery order": (1) the violation must result "'from willingness or bad faith and [be] accompanied by a clear record of delay or contumacious conduct;'" (2) "*the violation ... must be attributable to the client instead of the attorney*;" (3) the violation "'must substantially prejudice the opposing party;'"and (4) there must be no "less drastic sanction [that] would substantially achieve the desired deterrent effect."  *FDIC v. Conner*, 20 F.3d 1376, 1380-81 (5th Cir. 1994) (emphasis added) (citations omitted) (quoting *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir. 1990)).

impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395. In addition, the Court should consider the extent of prejudice to the defendant, the merits of the plaintiff's arguments, and the culpability of the plaintiff's conduct. *Rogers*, 167 F.3d at 938-39 (citation omitted).

Considering all of the circumstances, the Court finds that the neglect was excusable. The misstatement in the affidavit submitted plaintiffs' counsel was due to an oversight by their staff. In litigation as large and complex as this, mistakes are bound to occur. It is important here that the length of the delay and its potential impact on the judicial proceedings are slight. Moreover, the prejudice to the defendants is negligible. Finally, perhaps the most important factor in the Court's analysis is that the information presented here would have resulted in a different outcome had it been known and presented prior to the Court's dismissal of the movant's claims. Had the Court known that the movant had in fact responded to her attorneys' requests for information, the Court would have been unable to find that the fault for the movant's delay and noncompliance lay with the movant herself and not with counsel.

Therefore, considering all of the circumstances and weighing all of the equities, the Court concludes that relief from its prior ruling is appropriate under Rules 59(e) and 60(b)(1). Accordingly,

**IT IS ORDERED** that the **Plaintiff's, Inoka Salter, as Next Friend of Caitlyn McDavell, Motion for Reconsideration (Rec. Doc. 24120)** is **GRANTED**.

**IT IS FURTHER ORDERED** that this Court's **Order and Reasons dated December 14, 2011 (Rec. Doc. 23879)**, in which the Court granted the Motion to Dismiss for Failure to Comply

with Pre-Trial Orders No. 2 & 32 Relating to Plaintiffs Fact Sheets (Rec. Doc. 23539) is hereby **VACATED IN PART**, in that it is vacated only with respect to Inoka Salter on behalf of Caitlyn McDavell.

**IT IS FURTHER ORDERED** that the claims of plaintiff Inoka Salter on behalf of Caitlyn McDavell are hereby reinstated.

New Orleans, Louisiana, this __13th__ day of February, 2012.

_____
**KURT D. ENGELHARDT**
**United States District Court**