

**DIV. M**
**JUDGE**
**HENRY G. SULLIVAN, JR.**

24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO.: 710913                                                          DIVISION: " "

ANN M. TERRELL

versus

GULF STREAM COACH, INC. AND SHAW ENVIRONMENTAL, INC.

FILED: _____           _____
                                                                    DEPUTY CLERK

### PETITION FOR DAMAGES

THE PETITION of Ann M. Terrell, a person of full age of majority (hereinafter "Plaintiff"), through undersigned counsel, respectfully represents that:

I.

Plaintiff is a resident of and domiciled in the Parish of Jefferson.

II.

Made Defendants are:

A. Gulf Stream Coach, Inc. (hereinafter "Gulf Stream"), is a corporation organized under the laws of the State of Indiana, which conducts business in the State of Louisiana and within the jurisdiction of this Honorable Court; and

B. Shaw Environmental, Inc. (hereinafter "Shaw"), is a corporation organized under the laws of the State of Louisiana with its principle place of business in the State of Louisiana, and is authorized to do and doing business in the State of Louisiana and within the jurisdiction of this Honorable Court.

III.

Venue is proper in Jefferson Parish as it is the parish where the Plaintiff's injuries occurred.

1

IV.

Following Hurricanes Katrina and Rita, Plaintiff resided in a FEMA-provided temporary housing unit, manufactured by Gulf Stream, with VIN 1NL1GTR2761024105, installed and maintained by Shaw, from November 2005 to June 2008.

V.

On information and belief, Gulf Stream, expedited production of this travel trailer, and, on information and belief, resorted to using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing unit occupied by Plaintiff containing higher than normal levels of formaldehyde.

VI.

Plaintiff submits that the housing unit at issue contained dangerous levels of formaldehyde due to Gulf Stream's use of certain materials in its construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the intended use of the housing unit as a temporary residence for at least 18 months, but that Gulf Stream failed to warn the Federal Government about these dangers.

VII.

Gulf Stream sold thousands of units directly to FEMA, knowing that the units would be converted it into temporary housing units to be used as a residence for long term occupancy in some instances exceeding 18 months.

VIII.

Plaintiff submits that Gulf Stream ignored, and/or concealed and/or condoned the concealment of the fact that the housing unit at issue contained dangerous levels of formaldehyde due to Gulf Stream's use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the intended use of the housing unit as a temporary residence for at least 18 months, all in order to sell Gulf Stream's product, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions.

IX.

Plaintiff spent significant time in the Gulf Stream unit. As a result, the Plaintiff unwittingly was exposed to dangerously high concentrations of formaldehyde emitted from products used in the manufacture of the subject housing unit.

X.

Gulf Stream knew or should have known of the health hazards inherent in the products it constructed, by familiarity with industry standards and published medical studies.

XI.

Once the temporary housing unit occupied by the Plaintiff was transported and delivered to its particular location, Shaw had the responsibility for installing that temporary housing unit. Shaw installed the temporary housing unit by "blocking" the unit. This meant raising the Plaintiff's unit several feet into the air and off of its wheel base, and placing it on concrete blocks.

XII.

By blocking the temporary housing unit of Plaintiff, Shaw created stress and flexing on the frame of the unit as it was not designed to be lifted off of the wheel base. In fact, the manufacturer of the temporary housing unit warned in the owner's manual provided with the unit, that units should not be jacked so that the vehicle's weight is no longer supported by the wheels.

XIII.

The stress and flexing of the temporary housing unit's frame caused by Shaw "blocking" it created distortion in the travel trailer's shell allowing increased moisture intrusion which contributed to increased formaldehyde emissions.

XIV.

Thereafter, Shaw connected the unit it to local utilities, including sewage, water, and electricity. Shaw knew or should have known that these preparations were for long-term occupancy of the temporary housing unit.

XV.

Shaw failed to adhere to all warnings and instructions relating to the temporary housing unit as provided and indicated by the manufacturer of same.

XVI.

A travel trailer is, by definition, mobile. It is designed for and intended for periodic, recreational use and not for long-term habitation. By installing the travel trailer on concrete blocks for extended occupancy, Shaw knowingly and intentionally modified the design and the actual use of the unit occupied by the Plaintiff by converting it into a temporary housing unit to be used as a residence for long term occupancy in some instances exceeding 18 months.

XVII.

Shaw failed to consult with the manufacturer of the temporary housing unit, Gulf Stream, with regard to the installation, warnings, warranty issues or advisability of using a travel trailer for long term residence and occupation. Shaw took actions which voided the warranty of the manufacturer and directly created or contributed to unsafe and hazardous living conditions in the temporary housing unit.

XVIII.

Once Shaw had completed the transportation, delivery and installation of the temporary housing unit occupied by the Plaintiff, Shaw was tasked with inspecting the unit to ensure that it was safe and habitable, prior to occupancy by the Plaintiff. Upon information and belief, Shaw failed to adequately inspect the temporary housing unit occupied by the Plaintiff to ensure that the unit was safe and suitable for its intended use – the long-term occupancy by individuals and families displaced by Hurricanes Katrina and Rita. This failure to properly inspect the unit for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by hurricane victims.

XIX.

In addition to transportation, site identification, installation and inspection, the temporary housing unit occupied by the Plaintiff provided in response to Hurricanes Katrina and Rita was also managed, maintained and repaired by Shaw, or their various subcontractors over whom they

4

maintained direct oversight and responsibility. Upon information and belief, Shaw failed to adequately manage, maintain and repair the temporary housing unit which enabled and contributed to the unsafe and hazardous conditions that led to adverse health effects of the Plaintiff.

XX.

Shaw, at every stage of their involvement, failed to warn the Plaintiff of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde – a known human carcinogen – which led directly to adverse health effects.

XXI.

Through its actions and omissions, Shaw created and perpetuated a situation wherein Plaintiff was exposed to elevated levels of formaldehyde and, as a result, suffered adverse health effects. Shaw negligently failed to adhere to the manufacturer instructions and warnings related to: (1) the manufacturers' intended (short-term) use of the temporary housing unit; (2) the installation and set-up of the temporary housing unit; and (3) the warning that the temporary housing unit contained urea formaldehyde resin which would release formaldehyde gas directly into the intended living space.

XXII.

Shaw failed to warn the Plaintiff of the hazardous conditions created by the elevated levels of formaldehyde in the temporary housing unit.

XXIII.

Plaintiff developed acute myelogenous (myeloid) leukemia, which was diagnosed in July 2010 and treated through June of 2011.

XXIV.

While watching a presentation by physicians on the Today Show airing on the local NBC broadcasting affiliate on June 15, 2011, Plaintiff discovered that formaldehyde exposure was causally linked to myeloid leukemia.

XXV.

After diligent effort to investigate the representations made on the Today Show, Plaintiff discovered that myeloid leukemia has been classified as causally connected with formaldehyde exposure in humans.

XXVI.

The formaldehyde exposure experienced by Ms. Terrell while residing in the Gulf Stream unit was a substantial factor and/or cause of her development of myeloid leukemia.

XXVII.

As a result of the foregoing, Plaintiff was caused to sustain injuries including, but not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairment and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven.

XXVII.

Plaintiff's injuries and resulting damages were proximately caused by the fault of Defendants and their officers, agents, employees, and those for whom they are legally responsible.

XXVIII.

Gulf Stream, under all applicable laws, including but not limited to, the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, *et seq.*, is strictly liable unto Plaintiff for all injuries and damages for designing, manufacturing, distributing and/or selling the temporary housing unit described above, that was defective, unsafe, and unreasonably dangerous in design, composition, manufacture, and/or construction and/or due to its lack of and/or inadequate warnings and due to its non-conformity to the express warranty of fitness of said product.

## XXIX.

Furthermore, Shaw, under all applicable laws, including but not limited to, the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, *et seq.*, is strictly liable unto Plaintiff for all injuries and damages for designing, manufacturing, constructing, assembling, distributing, and/or refurbishing of the residential housing as described above, that were defective, unsafe, and unreasonably dangerous in design, composition, manufacture, and/or construction and/or due to its lack of and/or inadequate warnings and due to its non-conformity to the express warranties of fitness of said product.

## XXX.

Plaintiff asserts her claims against both Gulf Stream and Shaw under the laws of the State of Louisiana and under any other state and federal statutes which may be applicable.

## XXXI.

Plaintiff is entitled to a trial by jury

WHEREFORE, Plaintiff prays that Gulf Stream Coach, Inc. and Shaw Environmental, Inc., be served with a copy of this Petition for Damages and that after due proceedings are had, Plaintiff prays for judgment in her favor and against Defendants, Gulf Stream and Shaw, in an amount reasonable under the premises, together with legal interest thereon from the date of judicial demand, and for all costs of these proceedings, and for all appropriate legal and equitable relief, and for trial by jury.

Respectfully submitted:

**GAINSBURGH, BENJAMIN, DAVID, MEUNIER & WARSHAUER, L.L.C.**

BY: _____
GERALD E. MEUNIER, #9471
JUSTIN I. WOODS, #24713
M. PALMER LAMBERT, #33228
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
ATTORNEYS FOR PLAINTIFF

**PLEASE SERVE:**

**Through the Louisiana Long Arm Statute:**
Gulf Stream Coach, Inc.
Through its Agent for service of Process
Kenneth C. Brinker
503 South Oakland Avenue
Nappanee, IN 46550


Shaw Environmental, Inc.
Through its Agent for Service of Process
CT Corporation
5615 Corporate Boulevard
Suite 400B
Baton Rouge, LA 70808

8