UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION: N, 5 |
| | * | |
| This document relates to: | * | JUDGE ENGELHARDT |
| | * | |
| *Kasinda Brumfield, et al v. Pilgrim* | * | MAGISTRATE CHASEZ |
| *International, Inc., et al* | * | |
| No. 10-2248 | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF CRUM & FORSTER SPECIALITY INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

This Memorandum is submitted on behalf of Crum & Forster Specialty Insurance Company ("Crum & Forster") through undersigned counsel in support of its Motion for Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, to declare that no liability insurance coverage exists under the insurance policy issued by Crum & Forster to Pilgrim International, Inc., ("Pilgrim") for the claims of any plaintiff who first moved into a Pilgrim-manufactured trailer in Louisiana on or after April 1, 2006, in all cases consolidated in this multidistrict litigation. This motion seeks the dismissal of the claims of 21 distinct plaintiffs, who are named in Exhibit A.

## II.   INTRODUCTION

This case arises from the provision of various types of trailers as emergency housing units following Hurricanes Katrina and Rita in 2005. The trailers include travel

5

trailers manufactured by Pilgrim.  Certain Louisiana plaintiffs[2] suing Crum & Forster and/or Pilgrim did not move into the trailers provided to them until after Crum & Forster's policy expired.  These plaintiffs did not sustain a bodily injury during the Crum & Forster policy period.  Crum & Forster therefore has no coverage with respect to these plaintiffs' claims under Louisiana law.

## II.     FACTS

The named plaintiffs are individuals who were provided emergency housing units (EHU's) in Louisiana following Hurricanes Katrina and Rita in 2005.[3]  The Amended Complaint for Damages named as a defendant Crum & Forster Specialty Insurance Company as insurer of Pilgrim International, Inc.[4]  Crum & Forster was named in this suit under Louisiana's Direct Action Statute, La. R.S. 22:1269, as to Louisiana-domiciled plaintiffs.[5]

The Plaintiffs in the Amended Complaint for Damages are persons who resided in EHUs in Louisiana, Mississippi, and Alabama.[6]  Plaintiffs allege that the trailers manufactured by Pilgrim, among others,

> "contained dangerous levels of formaldehyde due to Manufacturing Defendants' use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of housing units as temporary residences for at least 18 months, all in order to sell Manufacturing Defendant's products, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions."[7]

---

[2] The list of plaintiffs who, according to their plaintiff fact sheets, moved into Pilgrim trailers after March 31, 2006, is attached as Exhibit "A". Copies of the pertinent Plaintiff Fact Sheets and Errata sheets are filed as Exhibits A-1 through A-21.
[3] See Amended Complaint for Damages, ¶ 13 [Case #10-2248, Document #1].   See List, Exhibit "A".
[4] See Amended Complaint for Damages, ¶ 4.
[5] See Amended Complaint for Damages, ¶ 4.
[6] See Amended Complaint for Damages, ¶ 13, et seq.
[7] See Amended Complaint for Damages, ¶ 23.

These plaintiffs allege that:

> "As a result, the Named Plaintiffs unwittingly were exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing units."[8]

The claims of the Louisiana plaintiffs against Crum & Forster are grounded in Product Liability.[9]

Certain travel trailers provided as EHUs were manufactured by Pilgrim.[10] Crum & Forster insured Pilgrim under policy number GLO081110.[11] This policy was in effect March 31, 2005 through March 31, 2006.[12] Crum & Forster did not insure Pilgrim after March 31, 2006.[13]

The move-in dates of trailer residents varied. However, many of the Plaintiffs who have sued Crum & Forster and/or Pilgrim moved in ***after*** the Crum & Forster policy expired on March 31, 2006.[14] Crum & Forster has reviewed Plaintiff Fact Sheets for 21 Louisiana plaintiffs who first resided in Pilgrim trailers in the above-captioned matters allegedly on or after April 1, 2006.[15] These plaintiffs who moved into Pilgrim trailers in Louisiana after April 1, 2006 did not reside in Pilgrim trailers during the Crum & Forster policy period. If these Plaintiffs sustained any bodily injury, which is denied, it did not occur during the policy period. If these Plaintiffs sustained any bodily injury, which is denied, the injury did not manifest during the Crum & Forster policy period. If these

---

[8] See Amended Complaint for Damages, ¶ 24.
[9] See Amended Complaint for Damages, Paragraphs 97 through 102.
[10] See Amended Complaint for Damages, Paragraph 2.
[11] See Exhibit "B", certified copy of the policy, GLO081110.
[12] See Exhibit "B".
[13] See Exhibit "B".
[14] See Exhibits "A" and A-1 through A-21.
[15] *Id*.

plaintiffs sustained any bodily injury, they were not exposed to formaldehyde in a Pilgrim trailer during the Crum & Forster policy period.

### III.   LAW AND ARGUMENT

A.   Summary Judgment

Summary judgment is appropriate under Fed.R.Civ.P. 56 if the record discloses that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. There is no genuine issue of material fact if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party. Matsushita Electric Industrial Corp. v. Zenith Radio Co., 475. U.S. 574, 586-587, 106 S. Ct. 1348, 89 L.Ed. 2d 538 (1986).  The mere existence of factual disputes will not defeat an otherwise properly supported motion. See Anderson v.Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Further, the court's finding that a rational jury could not find for the nonmoving party may be supported by the absence of evidence needed to establish an essential element of the non-moving party's case. See id. Fed.R.Civ.P. 56 would be thwarted if a defendant had "to bear the costs of trying all of the issues in a case when some can and should be resolved on summary judgment." Little v. Liquid Air Co., 37 F.3d 1069, 1076 (5th Cir. 1994).

After the moving party meets its burden of demonstrating the absence of a genuine issue of material fact, the non-moving party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Id. at 1075l; Bryant v. Military Department of Mississippi, 597 F.3d 678, 688 (5th Cir. 2010). This burden cannot be met merely by pointing to "some metaphysical doubt as to the material facts,' ...

8

by 'conclusory allegations,' [or] by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Id. (citing <u>Matsushita</u>, 475 U.S. at 586; <u>Lujan v. Nat'l. Wildlife Fed.</u>, 497 U.S. 871-73 (1990); <u>Hopper v. Frank</u>, 16 F.3d 92 (5th Cir. 1994); <u>Davis v. Chevron U.S.A., Inc.</u>, 14 F.3d 1082 (5th Cir. 1994)). "Such evidence must be sufficient on its own to 'support a jury verdict in the nonmoving party's favor.'" <u>Armour v. Knowles</u>, 512 F.3d 147, 153 (5th Cir. 2007)(quoting 11 James W. Moore Et Al., MOORE'S FEDERAL PRACTICE § 56.13[2], at 56-146 through 56-147 (3d ed.2007); <u>see</u> <u>also</u> <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

B.   <u>No Coverage Where Plaintiff is Not Damaged During the Policy Period</u>

An insurance policy's clear language must be given effect:

> An insurance policy is a contract between the parties. The parties' intent, as reflected by the words in the policy, determine the extent of coverage. <u>Louisiana Ins. Guar. v. Interstate Fire</u>, 93-0911 (La. 1/14/94), 630 So.2d 759, 763. In determining the meaning of the words of an insurance policy, they are to be given their generally prevailing meaning. When the meaning of the words is clear, the court should look no further in determining the intent of the parties. [<u>Schroeder v. Board of Sup'rs of Louisiana State University</u>, 591 So.2d 342, 345 (La. 1991)]. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. [<u>Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co</u>., 630 So.2d 759, 763 (La. 1994)].

<u>St. Paul Fire & Marine Ins. Co. v. Valentine</u>, 95-0649 (La.App. 1 Cir. 11/9/95), 665 So.2d 43, 46.   The Crum & Forster policy provided effective dates of March 31, 2005 through March 31, 2006.  The policy states that:

> b.   This insurance applies to "bodily injury" and "property damage" only if:

9

> 1) The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory";
>
> 2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> 3) Prior to the policy period no insured . . . knew that the "bodily injury" or "property damage" had occurred.[16]

According to the policy, in order for there to be coverage, there must be "bodily injury" occurring **during the policy period**. This means that the plaintiffs must sustain an injury during the policy period. For coverage purposes, the focus of the policy is on when the injury is sustained, and not when a wrongful act, if any, occurred. This is clearly established under Louisiana law:

> We conclude the term "occurrence" is generally understood to mean the time and/or event when negligence manifests itself by causing actual damages, rather than the commission of the causative negligence. Alberti v. WELCO Mfg. of Texas, 560 So.2d 964, 965 (La.App. 4th Cir.), writ denied, 565 So.2d 945 (1990); Blue Streak Industries v. N.L. Industries, Inc., 650 F.Supp. 733, 735 (E.D.La.1986). See also Jackson v. Welco Mfg. of Texas, 612 So.2d 743, 744 (La.App. 4th Cir.1992); Prudential Property Cas. Ins. Co. v. Stuckey, 486 So.2d 352, 356-59 (La.App. 3rd Cir.1986). Although the definition of "occurrence" in the Maryland policy does not provide that it must take place during the policy period, this definition must be read together with the definition of "property damage" which does require that the damage "occur during the policy period."

St. Paul Fire & Marine Ins. Co. v. Valentine, 95-0649 (La.App. 1 Cir. 1995), 665 So.2d 43, 46; see also Motorola, Inc. v. Associated Indem. Corp., 2002-1351, 7 (La.App. 1 Cir. 2004), 878 So.2d 838, 842; New Orleans Assets, L.L.C. v. Travelers Property Cas. Co., 2002 WL 32121257, *2 (E.D.La. 2002).[17] Likewise, while the definition of "occurrence"

---

[16] See Exhibit "B".

[17] The Louisiana Civil Law Treatise explains:
> Under Louisiana jurisprudence, the "accident" is the negligent act or omission or other fault that caused the loss. The policy, however, is quite clear that the "accident" is not the event that triggers coverage. Instead, Subsection b(2) requires that the "property damage" [or "bodily injury"] occur within the policy period."

15 LACIVL § 183 (footnotes omitted).

10

in the Crum policy does not discuss the timeframe, this definition must be read together with subsection (b) quoted above.[18]

The Court in *St. Paul* concluded:

> Considering the language of the policy at issue herein, as well as the jurisprudence interpreting similar and/or identical provisions, we agree with the trial court's conclusion that there was no "occurrence" under the Maryland policy during the applicable policy period. Although the alleged negligent act occurred during the policy period, no property damages took place as a result thereof until after the policy expired. Coverage can not reasonably be extended to include liability for an occurrence beyond the policy period.

See id., at 47. Further, the First Circuit explicitly rejected the notion that that policy's coverage was triggered when the allegedly negligent act occurred:

> We find no merit in St. Paul's argument that the Maryland policy should be interpreted in the light of a reasonable insured's expectation that the policy would provide coverage based on when the negligent act takes place, rather than when the damages are sustained or discovered. A court may look to the reasonable expectations of the parties in attempting to ascertain the parties' intent only if the words of the policy are ambiguous. When the words of the policy are clear and unambiguous, the court should look no further in determining the intent of the parties, and the insurance contract must be enforced as written. Louisiana Ins. Guar., [Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 7643 (La. 1994)]; Schroeder [v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La. 1991)]. In this case, we have already concluded the definitions in question were not ambiguous.

St. Paul, 665 So.2d at 47. In Oceanonics, Inc. v. Petroleum Distributing Co., 280 So.2d 874 (La. App., 3rd Cir. 1973), affirmed, 292 So.2d 190 (La. 1974), Louisiana's Third Circuit held that there was no coverage with respect to a claim against an insured because of an allegedly defective weld on a crane boom performed during the policy period. The collapse of the boom and the resulting property damage occurred two months after the policy period had expired. "The policy also stipulates that, 'This insurance applies only to bodily injury or property damage Which occurs during the policy period within the

---

[18] See Exhibit "B": "'Occurrence' means an accident, including continuous or repeated exposure to substantially the

11

policy territory.'"  Id., at 876.  "We interpret the policy as providing completed operations coverage only if the bodily injury or property damage occurs during the policy period.  The property damage which forms the basis for the instant suit occurred almost two months after the term of the Market policy had expired. The Market policy thus provided no coverage for that loss."  See id., at 877.

Under this "Manifestation Theory", coverage hinges on whether the "bodily injury" or "property damage" *manifests itself* during the coverage period.  See Mirza v. Outdoor Leisure, Inc., 625 So.2d 199, 201 (La.App. 3 Cir.,1993).

> We feel that the policy issued by Hartford clearly and unambiguously states that "bodily injury" or "property damage" are covered only when such occurrences happen during the existence of the policy periods. We, therefore, find that the policy at issue provided no coverage for plaintiffs' loss.

Mirza, 625 So.2d at 201 -202.  The Hartford policy at issue in Mirza, like the Crum policy issued to Pilgrim in the present matter, included the requirement that the damage "occurs during the policy period" in the "This insurance applies to..." section:

> *This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period.* The "bodily injury" or "property damage" must be caused by an "occurrence". The "occurrence" must take place in the coverage territory. We will have the right and duty to defend any "suit" seeking those damages ...

Mirza, 625 So.2d at 201 (Emphasis in original.)  The Court, reading that section and the definition of occurrence together, determined that an accident occurring three years after installation of defective plywood decking of a spa, and after the end of the policy period, was not covered.

---

same harmful conditions."

12

In <u>Alberti v. WELCO Mfg. of Texas</u>, 560 So.2d 964 (La.App. 4th Cir.1990), sheetrock walls were installed in the plaintiff's home in 1985, while an insurance policy was in effect. However, plaintiffs did not notice any discoloration of the sheetrock until "late December, 1986," after the policy expired on December 3, 1986. The policy defined "property damage" as "physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use there of at anytime resulting therefrom ..." Construing this definition, Louisiana's Fourth Circuit held that "even if a chemical reaction occurred immediately after the placement of the sheetrock mud, it is only when this reaction affected the walls that damage envisioned in the policy occurred. There is no evidence that the wall discoloration occurred before late December, after the policy had lapsed." Therefore, because the damage, i.e. discoloration, appeared after the policy expired, there was no coverage.

The Crum & Forster policy defines "bodily injury" as:

> "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

The policy also provides that "This insurance applies to "bodily injury" and "property damage" only if: ... (2) The "bodily injury" or "property damage" occurs during the policy period." The use of the phrase "occurs during the policy period," in the Crum and Forster policy requires the same result as <u>Mirza</u> and <u>Alberti</u>. <u>See</u> <u>also</u> <u>Jackson v. Welco Mfg. of Texas</u>, 612 So.2d 743 (La.App. 4 Cir. 1992).

Likewise, in <u>Prudential Property. Cas. Ins. Co. v. Stuckey</u>, 486 So.2d 352 (La.App. 3rd Cir.1986), the defendant contractor constructed a house in 1978, which he subsequently sold to plaintiffs. In 1982, a fire occurred in the house, which allegedly

13

started as a result of a defect in the home's brick fireplace. The liability insurance policy in effect at the time of the home's construction was not renewed beyond 1980. The policy defined **'bodily injury'** as "bodily injury, sickness or disease sustained by any person *which occurs during the policy period,* including death at any time resulting therefrom"; it defined "property damage" as "(1) physical injury to or destruction of tangible property *which occurs during the policy period,* including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence *during the policy period*." (Emphasis added.)   See id*.,* at 357-358. Louisiana's Third Circuit held that the policy did not provide coverage for property damage caused by acts which occurred during the policy period, but which manifested themselves only after the policy lapsed.  See id*.,* at 359.  See also Tindol v. A&P Boat Rentals, 1988 WL 86792, *2+ (E.D.La. Jul 22, 1988); Silva v. St. Charles Steel Works, Inc., 2007 WL 496866, *3 (E.D.La. Feb 13, 2007).

     The opposing theory is the "Exposure Theory".  Under the "Exposure Theory" coverage hinges on whether the plaintiff was exposed to an alleged harmful condition during the policy period.  See Cole v. Celotex Corp., 599 So.2d 1058 (La.1992); Motorola, Inc. v. Associated Indem. Corp*.,* 878 So.2d 838 (La.App. 1st Cir. 2004), Porter v. Am. Optical Corp*.,* 641 F.2d 1128, 1143 (5th Cir.1981).  The cases that follow the Exposure Theory typically involve long-term latency diseases like asbestosis or cancer. In St. Paul, Louisiana's First Circuit stated:

> Additionally, we reject St. Paul's contention that the Supreme Court's holding in Cole v. Celotex Corp*.,* 599 So.2d 1058 (La.1992), mandates that coverage under all

14

> liability policies be triggered by mere exposure to harmful conditions during the policy period. In Cole the Supreme Court did adopt the exposure theory as the trigger for coverage for claims brought by plaintiffs who had suffered long-term exposure to asbestos. However, in reaching this result, the Court noted several times "[t]he uniqueness of asbestosis cases and the difficulties of trying to fit such cases within the framework of concepts designed to handle traditional torts...." Cole, 599 So.2d at 1065. Further, in a concurrence, Justice Dennis noted that "[t]he medical evidence ... established that the plaintiffs began to sustain tissue damage shortly after the initial inhalation of asbestos fibers; and that plaintiffs sustained distinct bodily injury in each year of their employment." Cole, 599 So.2d at 1084. In light of these circumstances, particularly the special considerations unique to asbestosis and other latent disease cases, we believe the holding in Cole is limited to cases of a similar nature and was not intended to have application beyond those types of cases."

St. Paul Fire & Marine Ins. Co. v. Valentine, 95- 0649 (La.App. 1 Cir. 11/9/95), 665 So.2d 43, 47-48.   In Oxner v. Montgomery, 34,727 (La.App. 2 Cir.,2001), 794 So.2d 86, 93, Louisiana's Second Circuit stated: "under the exposure theory, an insurer would arguably remain a guarantor of its insured's actions forever. We reject such an inequitable result."

In the present matter, **under either theory – manifestation or exposure – if a plaintiff did not live in a Pilgrim trailer during the Crum & Forster policy period, there was neither manifestation of any injury nor exposure to formaldehyde during the Crum policy period**.  Therefore, no "bodily injury" occurred during the policy period.  The plaintiffs could not have sustained bodily injury during the policy period when they did not move into their Pilgrim trailers until after the policy had ended, on or after April 1, 2006.

### IV.     CONCLUSION

For the 21 plaintiffs in this matter who did not reside in FEMA trailers manufactured by Pilgrim International, Inc., until after April 1, 2006, there was neither exposure to formaldehyde nor manifestation of an injury during the policy period.  Under

15

the terms of the Crum & Forster policy, "bodily injury" did not occur during the policy period.  The claims of these certain plaintiffs are not covered by the Crum & Forster policy.  Therefore, it is proper for this Honorable Court to grant partial summary judgment and declare no coverage by Crum & Forster for the claims of any plaintiffs who resided in a Pilgrim trailer beginning on or after April 1, 2006.[19]

Respectfully submitted:

**CERTIFICATE OF SERVICE**

I CERTIFY THAT A COPY OF THE FOREGOING PLEADING HAS BEEN SERVED UPON COUNSEL FOR ALL PARTIES BY EMAIL THROUGH THE COURT'S ELECTRONIC CASE FILING (ECF) SYSTEM ON THIS __1st_ DAY OF __March__, 2012.

_____/s Eric B .Berger_____

_____*/s Eric B. Berger*_____
SIDNEY J. ANGELLE, #1002
ERIC B. BERGER, #26196
LOBMAN, CARNAHAN, BATT,
   ANGELLE & NADER
400 POYDRAS STREET, SUITE 2300
NEW ORLEANS, LOUISIANA  70130
(504) 586-9292     FAX (504) 586-1290

---

[19] Crum & Forster makes no admission with respect to the existence of any "bodily injury", the existence of an "occurrence" or any other fact which would prejudice its right to contest coverage under other theories, which is expressly reserved.   Crum & Forster does not admit that there is coverage for anyone residing in a Pilgrim trailer on or before March 31, 2006, but those claims are not addressed in this Motion.