UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                        MDL NO. 07-1873
      FORMALDEHYDE PRODUCTS
      LIABILITY LITIGATION

SECTION "N"  (5)

THIS DOCUMENT RELATES TO
Member Case Nos. 09-5847

### ORDER AND REASONS

Before the Court is a Show Cause Order, issued on January 24, 2012 (Rec. Doc. 24245), mandating that attorney Jonathan Andry show cause in writing why his conduct in connection with his client's Motion for Reconsideration and in the Alternative Motion for New Trial (Rec. Doc. 23689) did not violate Rule 11(b) of the Federal Rules of Civil Procedure and why monetary sanctions should not be imposed. Mr. Andry has filed a written response to the Show Cause Order (Rec. Doc. 24597).

### I. BACKGROUND:

**A. The FEMA Trailer Formaldehyde Products Liability Litigation:**

This multi-district litigation ("MDL"), referred to as *In Re: FEMA Trailer Formaldehyde Products Liability Litigation*, has been active since October 24, 2007. The plaintiffs are individuals who resided in emergency housing units provided by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita. In general, they claim injuries resulting from alleged exposure to the release of formaldehyde and/or formaldehyde vapors in these units. Plaintiffs have sued over 100 entities, including the Government. In all, 4721 cases are associated with this MDL, with 3999 of them currently active. *See* Joint Report No. 29 of Liaison and Government Counsel

(Rec. Doc. 24394). It has been estimated that more than 66,000 plaintiffs have submitted a Plaintiff Fact Sheet. *See* Minutes to Status Conference (Sept. 16, 2011, 10:00 a.m.). Mr. Andry represents approximately 126 of those plaintiffs. *See* Rec. Doc. 24597 at 4.

### B. The Underlying Motions:

In her Motion for Reconsideration and in the Alternative Motion for New Trial (Rec. Doc. 23689), Mr. Andry's client, Ora Brock, individually and on behalf of Lionel Brock (deceased), sought reconsideration of an Order and Reasons dated November 2, 2011 (Rec. Doc. 23389), in which the Court granted a motion to dismiss filed by defendant Recreation By Design ("RBD"),[1] dismissing the claims of Ms. Brock (individually and on behalf of her deceased husband) on the ground that she had failed to comply with the Court's orders by failing to produce a Plaintiff Fact Sheet.[2] Plaintiffs did not submit any memoranda in opposition to the motion to dismiss.

In her Motion for Reconsideration (Rec. Doc. 23689), Ms. Brock sought relief pursuant to Rules 59(e) and 60(b) on the ground that her counsel, Mr. Andry, had failed to file an opposition to

---

[1] RBD's motion to dismiss was entitled "Motion to Dismiss for Failure to Comply with Pre-Trial Order Nos. 2, 32 and 88 Relating to Plaintiff Fact Sheets" (Rec. Doc. 23080).

[2] Shortly after the creation of the MDL, this Court issued Pre-Trial Order ("PTO") No. 2, mandating that each plaintiff serve on the defendants a completed and verified Plaintiff Fact Sheet ("PFS"), within 30 days after transfer (or direct filing) into the MDL. (Rec. Doc. 87). This Order provided in section III(D) a "Procedure for Dismissal of Claims for Failure to Comply with Discovery." *Id.* The Court reiterated this procedure in PTO No. 32 (Rec. Doc. 1180). According to the procedure, "[w]hen any plaintiff has failed to materially comply with his or her obligations under this Order to submit a completed PFS within the timelines established herein, a counsel representing a Defendant shall send to Plaintiff's Counsel for the plaintiffs in question...a letter confirming the failure to timely file and/or explaining the material deficiency in the PFS" and notifying the plaintiff that he or she "will have thirty (30) days to cure the alleged material deficiencies, or any Defendant may thereafter move for dismissal, upon an appropriate showing that Plaintiff's claims should be dismissed for failure to comply with the Court's applicable Orders." *Id.* PTO No. 88 extended the time for complying to 60 days. (Rec. Doc. 22124).

RBD's motion to dismiss because he had been unaware of the motion. Mr. Andry affirmatively represented to the Court that he did not receive any notice regarding RBD's intentions to file a motion to dismiss and that he "never received notice that a Motion to Dismiss had been filed." (Rec. Doc. 23689-1 at pp. 6, 9). RBD filed an opposition to the motion for reconsideration, together with evidence, in which it demonstrated that its counsel had twice sent Mr Andry notice of RBD's intent to file a motion to dismiss with respect to Ms. Brock's claims. (Rec. Doc. 23940).

Mr. Andry also argued, among other things, that he was unaware of the motion to dismiss because the motion "was not filed in the correct case of *Ora Brock, et al v. Recreation by Design, LLC, et al,* Civil District Court of the Parish of Orleans, State of Louisiana, Civil Action No. 2009-07920, Section 11-G," but rather "was erroneously filed in the matter of *In re: FEMA Trailer Formaldehyde Products Liability Litigation* and bearing docket number 07-1873." (Rec. Doc. 23689-1 at 3, 8). In other words, although Ms. Brock's case was long ago removed to and remains active in federal court, Mr. Andry argued that RBD's motion to dismiss should have been filed in state court.

**C. The Court's Rulings:**

In an Order and Reasons dated January 5, 2012, this Court denied the motion for reconsideration, finding that Mr. Andry's neglect was not excusable and finding no other basis for granting relief. (Rec. Doc. 24060). In so finding, the Court observed that Mr. Andry had made "outrageous arguments and questionable assertions of fact" in his motion papers. *Id*. at 14. Among the questionable assertions of fact was Mr. Andry's assertion that he "never received notice that a Motion to Dismiss had been filed." (Rec. Doc. 23689-1 at p. 9). In this MDL, the protocol for serving notice of a filing is to send electronic notification to liaison counsel, who in turn transmit

the notification to all members of their respective groups. *See* PTO No. 1 at ¶ 15 (Rec. Doc. 5). Therefore, to determine whether or not to issue an order to show cause, the Court issued an Order, dated January 5, 2012, directing Plaintiffs' Co-Liaison Counsel to search their records to determine whether they possessed a record of having sent notice of RBD's motion to Mr. Andry. (Rec. Doc. 24061). On January 20, 2012, Plaintiffs' Co-Liaison Counsel filed a status report stating that they had located a copy of "an email of October 10, 2011 sent to Mr. Andry and others...which email, consistent with the practice and protocol of Co-Liaison Counsel for Plaintiffs, was the means by which the...motion, as an attachment, was forwarded to those shown in receipt." (Rec. Doc. 24222). Thereafter, on January 24, 2010, the Court entered the Show Cause Order, mandating that attorney Jonathan Andry show cause in writing why his conduct in connection with the above did not violate Rule 11(b) of the Federal Rules of Civil Procedure and why monetary sanctions should not be imposed. (Rec. Doc. 24245). On February 22, 2012, Mr. Andry, through counsel retained for this issue, filed a written response to the Show Cause Order (Rec. Doc. 24597), and the matter is now before the Court.

## II. APPLICABLE LAW:

Rule 11(b) provides in relevant part:

By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances: * * *

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery... ."

Fed. R. Civ. P. 11(b). Thus, "[a] signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both... ." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 542 (1991). "The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the district court that this document is to be taken seriously." *Id.* at 546. The rule's purpose is to bring home to the signer his responsibility to "validate the truth and legal reasonableness of the papers filed." *Id.* at 547 (quoting *Pavelic & LeFlore v. Marvel Entertainment Grp.*, 493 U.S. 120, 126 (1989)).

The subparts of Rule 11(b) establish independent obligations. Each must be satisfied, and violation of any one justifies sanctions. *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 802-03 (5th Cir.) (en banc), *cert. denied*, 540 U.S. 1047 (2003). At issue here are subsection (2) (certification that the signer has conducted a reasonable inquiry into the law and is satisfied that the legal contentions contained in the paper are warranted by existing law or a nonfrivolous argument for modification of the law) and subsection (3) (certification that the signer has conducted a reasonable inquiry into the facts and is satisfied that the factual contentions contained in the paper have evidentiary support).[3] In determining whether an attorney has satisfied his obligations under Rule 11, the standard with which he "is measured is an objective, not subjective, standard of reasonableness under the circumstances." *Id.* at 802 (internal quotation omitted). "When a reasonable amount of research would have revealed that a party's position is groundless, Rule 11 sanctions are appropriate." *Goldman v. Hartford Life & Acc. Ins. Co.*, 2004 WL 2435500 (E.D. La.

---

[3] Subsections (1) and (4) are not at issue here. Subsection (1) addresses certification that a paper is not being presented for an improper purpose, and subsection (4) addresses denials of factual contentions. Fed. R. Civ. P. 11(b).

5

2004).

"On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

### III. ANALYSIS:

Here, the Show Cause Order addressed both legal contentions and factual contentions. The Court will address them in turn.

#### 1. Did Mr. Andry's Legal Contentions Violate Rule 11(b)(2)?

In the memorandum in support of Ms. Brock's motion for reconsideration, Mr. Andry argued that he was unaware that a motion to dismiss had been filed because the motion "was not filed in the correct case of *Ora Brock, et al v. Recreation by Design, LLC, et al,* Civil District Court of the Parish of Orleans, State of Louisiana, Civil Action No. 2009-07920, Section 11-G," but rather "was erroneously filed in the matter of *In re: FEMA Trailer Formaldehyde Products Liability Litigation* and bearing docket number 07-1873." (Rec. Doc. 23689-1 at 3). Mr. Andry asserted this argument twice in his memorandum, once at page 3,[4] and again at page 8 ("The Motion to Dismiss and

---

[4] Mr Andry argued at page 3: "Recreation filed a "Motion to Dismiss for Failure to Comply with Pre-trial Order Nos. 2, 32, and 88 Relating to Plaintiff Fact Sheets" against the Brocks. It was erroneously filed in the matter of *In re: FEMA Trailer Formaldehyde Products Liability Litigation* and bearing MDL docket number 07-1873. The Motion to Dismiss and supporting documentation was not filed in the correct case of *Ora Brock, et al v Recreation by Design, LLC, et al.*, Civil District Court of the Parish of Orleans, State of Louisiana, Civil Action No. 2009-07920, Section 11-G. Thus, undersigned counsel did not receive electronic notice of the filing. As undersigned counsel was not aware of the Motion to Dismiss, no Opposition was filed." Rec. Doc. 23689-1 at 3.

6

supporting documentation was [sic] not filed in the matter of *Ora Brock, et al v. Recreation by Design, LLC, et al,* Civil District Court of the Parish of Orleans, State of Louisiana, Civil Action No. 2009-07920, Section 11-G, thus undersigned did not receive electronic notice of the filing.").[5] According to Mr. Andry, this was the reason that he "did not receive electronic notice of the filing" and "was not aware of the Motion to Dismiss." *See* Rec. Doc. 23689-1 at 3.

As stated in the previous Order and Reasons, the Court finds it incredible that any lawyer would make such a baseless argument. First, regardless of the established procedure in this MDL, no competent attorney would attempt to file a motion in state court in a matter that had been removed to and remained pending in a United States District Court. To suggest that the Orleans Parish proceeding was the "correct case" in which RBD's motion should have been filed is patently absurd. Second, it has been the established procedure in this litigation for four years, as ordered by this Court, that all documents filed after the initial complaint "*are to be made on the master docket sheet '07 md 1873'* with a notation listing the cases to which the document applies." Pre-Trial Order No. 1 (Rec. Doc. 5) at p.4, dated Nov. 6, 2007 (emphasis added). All counsel are chargeable with knowledge of the Court's Orders and following their instruction. Thus, to argue that RBD "erroneously filed" its motion in the master docket is directly contrary this Court's Orders and inconsistent with the procedure that has been followed in this litigation for four years.

In his response to the Show Cause Order, Mr. Andry does not disagree with the Court's previous statements regarding the baselessness of his argument. Instead, he states that this "was a

---

[5] Elsewhere Mr. Andry argued: "Defendant's Motion to Dismiss was apparently entered into the MDL case number, 07-1873, as opposed to the individual case number, 2:09-CV-05847, thus undersigned did *not* receive electronic notice of the filing of the Motion to Dismiss." Rec. Doc. 23689-1 at 5 (emphasis in original).

7

proofreading error by counsel. Such a statement is so far from correct that it sheds light on the fact that it was a mistake." Rec. Doc. 24597 at 6. This statement seems intended to imply that Mr. Andry did not even see the argument in either of the two places it appeared. Had he done so, it is implied, he certainly would have removed it given that it "is so far from correct."

There are several problems with this response. First, it is difficult for the Court to accept Mr. Andry's explanation considering that the assertion was made not once, but twice, in two separate sections of the memorandum. Second, regardless of who wrote the memorandum, Mr. Andry was the signer and, as such, had an obligation to make a reasonable inquiry sufficient to form a belief that the legal contentions contained therein were warranted under the law. His contentions were not warranted under the law, as a simple glance at the removal statute would have told him. *See* 28 U.S.C. § 1446(d).[6] He cannot avoid his Rule 11 duties by shifting them to some unnamed mystery writer and then claiming to have "proofread" the product so badly that he did not see two separate occurrences of an argument that was "so far from correct" as to be utterly baseless.

Mr. Andry states that he did not offer the memorandum "in an attempt to mislead the Court." Rec. Doc. 24597 at 3. However, Rule 11 is not restricted to assertions made in subjective bad faith. It imposes a duty of pre-filing inquiry, and the standard is one of objective reasonableness. *See, e.g., Whitehead*, 332 F.3d at 802. Mr. Andry is the attorney of record. He signed and filed the memorandum. Thus, he bears responsibility for the contentions contained therein.

Mr. Andry now claims that what he really meant was that RBD should have filed its motion

---

[6] Section 1446(d) provides: "Promptly after the filing of such notice of removal of a civil action the defendant...shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and *the State court shall proceed no further unless and until the case is remanded.*" 28 U.S.C. § 1446(d) (emphasis added).

8

to dismiss in the docket for the individual case *Ora Brock, et al v. Recreation By Design, LLC*. Rec. Doc. 24597 at 7. It is difficult to accept that Mr. Andry twice stated "Civil District Court of the Parish of Orleans, State of Louisiana, Civil Action No. 2009-07920, Section 11-G," when what he really meant was "United States District Court for the Eastern District of Louisiana, Civil Action No. 09-5847." However, even accepting that this is correct, this argument is likewise without legal basis. Indeed, it is directly contrary to this Court's orders establishing the proper procedure for filing documents in this litigation. As set forth above, this Court ordered early in the MDL that all documents filed after the initial complaint "*are to be made on the master docket sheet '07 md 1873'* with a notation listing the cases to which the document applies." Pre-Trial Order No. 1 (Rec. Doc. 5) at p.4, dated Nov. 6, 2007 (emphasis added). This is because all FEMA trailer formaldehyde cases have been consolidated for pre-trial purposes. *See id*. at pp.1-2. In fact, this Court-ordered procedure is the one that Mr. Andry has used for all of his own filings in this litigation.

If the point that Mr. Andry was trying to make was that he believes the MDL filing and notice procedures should be different than they in fact are, then he easily could have made this point without implicating Rule 11.[7] Instead, he argued that RBD committed a procedural error when it filed its motion in accordance with the law and this Court's orders. He had no legal basis for this argument, and does not pretend to have made any inquiry into whether it was warranted.

---

[7] Although valid criticisms of the Court's filing and notice procedures could perhaps be made, it would not have strengthened Mr. Andry's ultimate argument under the circumstances. Essentially, he would have been arguing that, despite the fact that he had failed to read two important e-mail notifications sent by RBD's counsel and despite the fact that he had failed to read an important e-mail notification sent by liaison counsel, if the motion had been filed in the individual member case docket, then he would have read the e-mail notification. Like Mr. Andry's other arguments, such an argument strains credulity.

**2. Did Mr. Andry's Factual Contentions Violate Rule 11(b)(3)?**

Mr. Andry's questionable contentions of fact fall into two main groups: (1) his statements (a) that RBD already had Ms. Brock's PFS in its possession at the time it moved to dismiss her claims on grounds that she had failed to provide a PFS and (b) that RBD had in fact sent a notice specifying particular deficiencies in the PFS, to which Mr. Andry responded in February 2009 by sending errata sheets to RBD; and (2) his statements that he did not receive any notice stating that the motion to dismiss was to be filed or that it had been filed.

    a.    **Contention That RBD Already Possessed Ms. Brock's PFS:**

Mr. Andry made several representations in his memorandum indicating that RBD already had Ms. Brock's PFS in its possession at the time it moved to dismiss her claims:

> The Brocks submitted Plaintiff Fact Sheets to Defendant as required by this Court's Pre-trial Order No. 2 on December 30, 2008. See Exhibit A. After receiving the Plaintiff Fact Sheets for the Brocks, Defendant sent to Plaintiff's counsel a deficiency notice with questions such as "Section V(A)(11) and (12) square footage, length and width of trailer not provided." Plaintiff counsel responded to the questions submitted with Errata Sheets dated February 17, 2009.     (Rec. Doc. 23689-1 at 3).

> It is interesting that the Brocks were included in the defendants' Motion to Dismiss, given the fact that this defendant was in possession of the materials it sought through the motion.     (*Id.* at 4).

> Defendant's allegation that the Brocks failed to produce Plaintiff Fact Sheets to Defendant is clearly in error. The Brocks responded to a deficiency notice *sent by Defendant* in regards to those Plaintiff Fact Sheets in February, 2009.     (*Id.* at 5).

> Indeed [if e-mail notice of the impending motion to dismiss had been received] undersigned would have reminded the defendant that the Brocks has [sic] previously submitted fax sheets, and responded to a deficiency notice regarding those Plaintiff Fact Sheets from Defendant, several years ago.     (*Id.* at 6).

> The evidence that Plaintiff would have submitted - the previously submitted Plaintiff Fact Sheets and responses to deficiencies *sent by Defendant* - is material and controlling....     (*Id.* at 7).

>  The evidence that Plaintiff would have submitted in support of its Opposition- the previously submitted Plaintiff Fact Sheets and responses to Defendant's deficiency notice - would have produced a different result....                    (*Id.* at 9).
>
>  It is manifestly unjust to dismiss the claims of the Brocks on grounds that Plaintiff Fact Sheets were not submitted, as the opposite is true. Plaintiff Fact Sheets *were* submitted in 2008. *See* Exhibit A.  Responses to Defendant's deficiency notice regarding those Plaintiff Fact Sheets was [sic] submitted in February, 2009.
>                                                                                 (*Id.* at 11).
>
>  Defendant's argument is that Plaintiff failed to produce any Plaintiff Fact Sheets at any time. This is not correct. As stated above, Plaintiff has submitted to Defendant the required Plaintiff Fact Sheets, Errata Sheets and medical records.
>                                                                                 (*Id.* at 12).
>
>  The evidence that Plaintiff would have submitted - the *previously* submitted Plaintiff Fact Sheets and responses to deficiencies *sent by Defendant* - is material and controlling....                                                        (*Id.* at 12).

The meaning of these statements seems unequivocal:   The Brocks submitted PFSs to RBD in 2008, RBD thereafter served a deficiency notice on the Brocks, and the Brocks responded by delivering errata sheets and medical records to RBD in February 2009.  The message intended by the statements above is plainly one of righteous indignation and refutation, accented by use of italics:  "Defendant's allegation that the Brocks failed to produce Plaintiff Fact Sheets to Defendant is clearly in error.  The Brocks responded to a deficiency notice *sent by Defendant* in regards to those Plaintiff Fact Sheets in February, 2009."  (Rec. Doc. 23689-1 at 5).  Mr. Andry impugns the audacity of RBD to dismiss Ms. Brock on grounds that she had failed to produce a PFS, all the while holding her PFS in its possession.

Yet, it seems that this is not at all what happened.   Although the Brocks submitted

11

plaintiff fact sheets to someone[8] in 2008, neither the PFS nor the errata sheets contain any mention of RBD. Rather, the manufacturer information provided in the PFS indicates that Gulf Stream likely manufactured the Brocks' FEMA unit. Moreover, the Brocks did not file the instant action against RBD until July 30, 2009, when the complaint was filed in state court. Thus, not surprisingly, counsel for RBD asserts that RBD did not receive any PFS, errata sheets, or medical records relating to the Brocks and that counsel for RBD did not send any deficiency notices relating to the PFS submitted by the Brocks. *See* Rec. Doc. 23940 at 3-4. In its opposition, RBD surmises that the deficiency notice referenced repeatedly by Mr. Andry was likely prepared and served by counsel for Gulf Stream. Mr. Andry has never attempted to refute this assertion by RBD or to clarify or correct his argument, either in connection with the Motion for Reconsideration or in response to the Show Cause Order.

This revelation is troubling. As RBD pointed out in its opposition to Ms. Brock's Motion for Reconsideration, Mr. Andry "failed to attach as an exhibit to the memorandum a copy of the deficiency notice. Surely, the deficiency notice and/or letter accompanying same includes information which identifies the author of the referenced deficiency notice." Rec. Doc. 23940 at 4, note 12. In his response to the Show Cause Order, Mr. Andry states that the Brocks' "fact sheets were previously provided to the PSC and, as such, Mr. Andry thought to all the defendants." Rec. Doc. 24597 at 3. This does not alleviate the problem, however. Even if Mr.

---

[8] To whom Mr. Andry sent the PFS is unclear. The cover of the PFS contains a handwritten note stating: "Sent to Δ [defendant] 12/30/08 by Andry." *See* Rec. Doc. 23689-2. However, Mr. Andry's response to the Show Cause Order states that the "fact sheets were previously provided to the PSC and, as such, Mr. Andry thought to all defendants." Rec. Doc. 24597 at 3. In any event, Mr. Andry has submitted no evidence demonstrating that he ever sent Ms. Brock's PFS to counsel for RBD.

Andry actually thought that all defendants were given copies of the Brocks' PFS, this does not explain his unequivocal statements regarding the deficiency notice. *See, e.g.,* Rec. Doc. 23689-1 at 5 ("Defendant's allegation that the Brocks failed to produce Plaintiff Fact Sheets to Defendant is clearly in error. The Brocks responded to a deficiency notice *sent by Defendant* in regards to those Plaintiff Fact Sheets in February, 2009."). The deficiency notice was sent to Mr. Andry. It should be in his file. Yet, he did not attach it to his memorandum although he specifically referred to it (as having been sent by RBD) no fewer than seven times. Nor did he submit evidence that the defense counsel to whom he sent errata sheets was in fact counsel for RBD. Under the circumstances, it is difficult to avoid the conclusion that one of two things occurred: Either Mr. Andry made the statements above knowing that the deficiency notice he referenced did not come from counsel for RBD, or he made the statements without making an inquiry to determine whether the deficiency notice came from counsel for RBD. Either is problematic under Rule 11(b)(3).

      **b.**    **Contention That Mr. Andry Did Not Receive Notice of RBD's Motion to Dismiss:**

Mr. Andry made multiple assertions regarding his lack of receipt of notice. He maintained that he did not receive notice that RBD intended to file a motion to dismiss, and he asserted multiple times that he did not receive notice that the motion had been filed.

With regard to notice prior to the filing of the motion, Mr. Andry made the following statement, referring to RBD's counsel's certificate of compliance with Pre-Trial Order No. 10 (which requires that moving parties contact opposing counsel prior to filing a motion to determine whether the proposed motion is opposed):

> Undersigned is confident that defense counsel would never make such a representation to this Court if that were not true. As such, for the purposes of this motion, plaintiffs will assume that it was sent **but not received** by undersigned counsel because, if such an Email was received, undersigned certainly would have stated an objection to the filing of a Motion to Dismiss. (Rec. Doc. 23689-1 at 6) (emphasis added).

In opposition to Ms. Brock's motion for reconsideration, RBD presented evidence refuting Mr. Andry's contention that he did not receive notice that RBD was on the verge of filing a motion to dismiss. On April 13, 2011, counsel for RBD sent via e-mail a letter notifying Mr. Andry that RBD had received no PFS for Ora Brock, individually or on behalf of Lionel Brock. *See* Rec. Docs. 23940-2 through 23940-4). The letter stated: "As these plaintiffs are not in compliance with Pre-Trial Orders 2 and 32, *we intend to move for a Dismissal with Prejudice*." *See* Exhibit B to RBD's Memorandum in Opposition (Rec. Doc. 23940-2) (emphasis added). On April 25, 2011, counsel for RBD received electronic notification that their message to Mr. Andry, while read by other recipients (*e.g.*, defense liaison counsel, plaintiff's liaison counsel, government counsel), was "deleted without being read" by Mr. Andry. *See* Rec. Doc. 23940-5 through 23940-7). Subsequently, on September 19, 2011, counsel for RBD forwarded to Mr. Andry a copy of the proposed motion to dismiss and asked him to inform her as to whether he would oppose the motion. *See* Rec. Doc. 23940-8. As with the previous e-mail notice, counsel for RBD received electronic notification that the message was in fact delivered. *See* Rec. Doc. 23940-8.

With regard to notice of the actual filing of the motion to dismiss, Mr. Andry made multiple assertions stating that he did not receive the notice:

>The Motion to Dismiss and supporting documentation was not filed in the correct case of Ora Brock, et al v Recreation by Design, LLC, et al., Civil District Court of the Parish of Orleans, State of Louisiana, Civil Action No. 2009-07920, Section 11-G.  Thus, undersigned counsel **did not receive** electronic notice of the filing.
>
>Rec. Doc. 23689-1 at 3-4  (emphasis added).
>
>Defendant's Motion to Dismiss was apparently entered into the MDL case number, 07-1873, as opposed to the individual case number, 2:09-CV-05847, thus undersigned **did not receive** electronic notice of the filing of the Motion to Dismiss.
>
>*Id.* at 5 (emphasis added).
>
>Due to the unique circumstances that are created in MDL litigation, counsel for Plaintiff **never received** notice that a Motion to Dismiss had been filed.
>
>*Id.* at 8 (emphasis added).
>
>The Motion to Dismiss and supporting documentation was not filed in the matter of Ora Brock, et al v Recreation by Design, LLC, et al., Civil District Court of the Parish of Orleans, State of Louisiana, Civil Action No. 2009-07920, Section 11-G, thus undersigned counsel **did not receive** electronic notice of the filing.
>
>*Id.* at 8 (emphasis added).
>
>As stated above, it is due to the unique circumstances that are created in MDL litigation that counsel for Plaintiff **never received** notice that a Motion to Dismiss had been filed.                                              *Id.* at 9 (emphasis added).

On January 20, 2012, Plaintiffs' Co-Liaison Counsel filed a status report stating that they had located a copy of "an email of October 10, 2011 sent to Mr. Andry and others...which email, consistent with the practice and protocol of Co-Liaison Counsel for Plaintiffs, was the means by which the...motion, as an attachment, was forwarded to those shown in receipt." (Rec. Doc. 24222).  Thus, the evidence demonstrates that, contrary to his repeated assertions, Mr. Andry in fact did receive electronic notification that the motion to dismiss had been filed.  This was in addition to two prior notices sent by RBD informing Mr. Andry of RBD's intent to file the motion.  *See* discussion *supra* at 13-14.

15

To further compound this troublesome assertion, in his response to the Show Cause Order, "Mr. Andry submits to this Court that in the pleading where he stated that he did not receive the emails in question he meant that he had not read the emails in question." Rec. Doc. 24597 at 5. He states further:

> Not to make excuses, but the facts are that Mr. Andry received the Notice of the [Order and Reasons granting RBD's motion to dismiss]. Mr. Andry did not "receive" the earlier e-mails about the Motion to Dismiss because, he would suggest to the court in this context, "received" and "read" are synonymous. The fact is that, whether it was a spam issue where the e-mail got caught in the spam filter or whether it was accidently deleted or inadvertently deleted, Mr. Andry never received the e-mail.

*Id.* at 8.

The Court finds this explanation disconcerting for multiple reasons. First, the Court is frankly stunned at Mr. Andry's position that when he said "received," he really meant "read," and that these two words are somehow synonymous. It is truly difficult to take this argument seriously. Even in the context of e-mail, "received" does not mean the same thing as "read." As with regular mail, one receives an e-mail when it is delivered to one's address. As with regular mail, one may choose to open it and read it or may choose to leave it unopened. As with regular mail, one may deposit it, unopened, into the recycling bin. But one would not say in such a case that the mail was never received. Mr. Andry is not merely mincing words; he is equating two words with completely different meanings, defying the common sense expectation that chosen words have intended meanings. The Court does not accept Mr. Andry's position that by "received" he really meant "read." No reasonable person would. And if one replaces the word "received" with the word "read" in each of the statements that Mr. Andry made to the Court, it becomes clear that this is not the meaning that he intended to convey to the Court.

16

Second, the Court regards with misgiving Mr. Andry's decision to conjure the specter of a spam filter problem without attesting that he has good cause for believing that this is, in fact, what occurred.[9] If Mr. Andry honestly holds the belief that two emails from opposing counsel and one email from Liaison Counsel were in fact "caught up in the spam filter," then he should have attached an affidavit explaining the facts upon which he bases that belief. Indeed, the Court is disappointed in general at Mr. Andry's decision to assert speculative "maybes" and "what ifs" through counsel, rather than submit an affidavit attesting to the actual underlying facts or, if after personal investigation he still is not certain as to all the facts, explaining to the Court what steps he has taken to ascertain the facts.

Finally, the Court is troubled by Mr. Andry's attempt to equate his situation with others in which this Court has not ordered counsel to show cause why they should not be subject to sanctions. In particular, Mr. Andry points to the Court's ruling at Rec. Doc. 24507, in which this Court granted a plaintiff's motion for reconsideration based on plaintiffs' counsel's realization that an affidavit previously submitted by him contained statements that he later discovered were inaccurate. That instance, the Inoka Salter matter, bears no resemblance to this one. There, Ms. Salter's counsel discovered that an affidavit previously submitted by him contained inaccuracies that were unknown to him or the affiant (an employee of plaintiffs' counsel) at the time the affidavit was submitted to the Court. On discovering the error, Ms. Salter's counsel himself properly brought the matter to the Court's attention and explained the circumstances with

---

[9] Mr. Andry (through counsel) states: "As of this writing, Mr. Andry cannot unequivocally state whether the emails in question were caught up in the spam filter or whether they were inadvertently deleted. He can state unequivocally that regardless of the fact how they were deleted that they were and that he did not read them." Rec. Doc. 24597 at 5.

candor. Nothing before the Court in that case suggested any facts that would raise questions as to whether counsel fulfilled his duties under Rule 11. He made no misrepresentations to the Court. Nor was the error in the affidavit due to any failure to inquire on counsel's part. It was a forthright case of isolated human error: a staff member had spoken with Ms. Salter but had failed to make a notation of this conversation in the daughter's file. Thus, when the project coordinator prepared her affidavit, she based her testimony on a record that was incomplete. Counsel did not attempt to portray the error as anything other than it was.

As the Court stated in that case, and has said on other occasions, [i]n a litigation as large and complex as this, mistakes are bound to occur." Rec. Doc. 24507 at 11. The Court has treated mistakes of counsel with considerable understanding, particular where they are isolated and relief can be granted with little or no prejudice to other litigants. However, Mr. Andry is not before this Court on a Show Cause Order because he made an isolated human error. He is not before the Court because he inadvertently deleted important emails. He is before the Court because of the affirmative statements contained in his memorandum, not just one but multiple statements that were not supported by the facts, not to mention legal arguments that were without any basis in the law. For such conduct, the Court has little tolerance.

## IV. CONCLUSION:

For all of the reasons set forth above, it is difficult to avoid the conclusion that the memorandum filed by Mr. Andry with this Court contained contentions that are adverse confrontations of both Rule 11(b)(2) and 11(b)(3). Moreover, in light of his response to the Show Cause Order, it is difficult to avoid the impression that Mr. Andry remains somewhat glib toward this entire matter. Rather than setting out the facts in an earnest, straightforward fashion,

he chose to be unconvincingly clever but ultimately irresponsible, stirring up a dust of "maybes" (maybe the spam filter deleted all three e-mail notifications), insisting that his words meant something that they clearly did not, and blaming the unfounded legal arguments on unnamed ghost writers.  Nevertheless, this is the first such matter to come before the Court in this MDL.  For this reason, the Court will exercise its discretion to show leniency.

Accordingly, the Court will hold the Show Cause Order in abeyance for six months.  The Court will deem the Show Cause Order to be satisfied if, prior to the expiration of six months after entry of this Order and Reasons, Mr. Andry submits to the Court his comprehensive affidavit as follows:

1) Certifying that he has attended at least six hours of LSBA certified continuing legal education (CLE) related to law office management and/or practice management, including the use of computer technology in the practice of law (proof of attendance shall be attached to Mr. Andry's affidavit); and

2) Attesting to what steps he has implemented in his practice and office protocol related to ensuring that e-mails and all electronic notifications are opened and handled appropriately, whether they are from the Court, Liaison Counsel, opposing counsel, or clients.

If the Court receives no such affidavit, the Court will take up the Show Cause Order in six months hence and make specific findings as to whether Mr. Andry violated Rule 11(b) and what, if any, sanctions should be imposed.

As stated, in the four years that this MDL has been pending in this Court, this is the first matter of this type to come to the Court's attention.  Thus, the Court has no reason to expect that anything of this nature will reoccur.  Yet, all counsel in this MDL should be forewarned:  the

Court will be far less indulgent should any attorney in the future file a motion or other pleading that contains baseless legal or factual contentions. Genuine, isolated human error will occur, and this Court will continue to be equitable in its treatment of such. However, careless disregard for the accuracy of statements will in the future result in sanctions, as will any lack of candor toward this Court. Accordingly,

**IT IS ORDERED** that the Show Cause Order, issued on January 24, 2012 (Rec. Doc. 24245), is hereby **CONTINUED** to September 5, 2012.

New Orleans, Louisiana, this __6th__ day of March, 2012.

                                                   **KURT D. ENGELHARDT**
                                                   **United States District Court**