# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**F I L E D**
January 23, 2012
Lyle W. Cayce
Clerk

No. 10-30921

IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY
LITIGATION (MISSISSIPPI PLAINTIFFS),

*Consolidated With*

No. 10-30945

IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY
LITIGATION (ALABAMA PLAINTIFFS),

Appeals from the United States District Court for the Eastern District of
Louisiana MDL No. 07-1873, Section "N"

Before HIGGINBOTHAM, STEWART, and HAYNES, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Plaintiffs-Appellants ("Appellants")[1] brought this Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, action against the United States ("the Government") for injuries allegedly related to their exposure to elevated levels of formaldehyde contained in the component materials of the Emergency

---

[1] Except where noted otherwise herein, "Appellants" refers to Mississippi Plaintiffs (Case No. 10-30921) and Alabama Plaintiffs (Case No. 10-30945) collectively.

No. 10-30921 *Consolidated With* 10-30945

Housing Units ("EHUs") provided to them by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita. The district court dismissed Appellants' claims for lack of subject matter jurisdiction. We AFFIRM.

## I.

In 2005, Hurricanes Katrina and Rita destroyed the homes of thousands of residents along the Gulf Coast.[2] Over the months and years following the hurricanes, displaced residents returned to find a shortage of alternative housing. Pursuant to 42 U.S.C. § 5170, the President of the United States declared the occurrence a major disaster. In response to the disaster, FEMA was directed to provide assistance to the disaster victims. 42 U.S.C. § 5174(b)(1).

Shortly thereafter, FEMA activated its Individual and Household Assistance Program and, from September 2005 through May 1, 2009, the agency supplied disaster victims with EHUs, at no cost, to use as temporary shelter. The EHUs were taken from FEMA's preexisting inventory, which had been purchased from public retailers as well as manufacturers. The EHUs were small, portable, and usually placed at the disaster victims' home sites. The trailers were installed by Government contractors who placed the units on blocks or piers, anchored them to the ground using straps or bolts, and connected them to public sewer and water lines. To obtain use of an EHU, the person seeking assistance would complete and sign an application acknowledging that he was requesting an EHU to use as shelter because he was currently unable to live in his own residence due to the disaster. The EHU applications indicated that the

---

[2] Both Hurricanes Katrina and Rita significantly affected disaster victims residing in Mississippi, while only Hurricane Katrina significantly affected disaster victims residing in Alabama.

2

No. 10-30921 *Consolidated With* 10-30945

units were intended for temporary use and that applicants were required to accept alternative housing options as they became available.

In March 2006, FEMA began receiving complaints from EHU occupants regarding formaldehyde odors inside of the units and continued receiving complaints during the following months. Formaldehyde is a chemical substance commonly found in many construction materials such as plywood, particle board, home furnishing, fabrics, and other household products. According to the Center for Disease Control - Agency for Toxic Substances and Disease Registry (CDC-ATSDR), elevated and high levels of formaldehyde can act as an irritant and lead to other health problems.

In March 2006, when FEMA began receiving formaldehyde complaints, it encouraged shelter occupants to ventilate their EHUs by opening the doors and windows. In June 2006, FEMA prepared an informational brochure informing EHU occupants of the dangers of formaldehyde exposure, encouraging them to ventilate their units, and urging them to seek medical help if they developed health problems related to formaldehyde. The brochures were distributed between July and September 2006.

In September 2006, FEMA began working with the Environmental Protection Agency ("EPA") which tested the EHUs for formaldehyde and developed mitigation techniques. Over the next year, FEMA received approximately 200 formaldehyde complaints from EHU occupants. In July 2007, FEMA distributed another informational brochure to EHU occupants, set up a hotline and a dedicated call center to field formaldehyde complaints from occupants, and continued to assist occupants in locating alternative housing. FEMA subsequently entered into an agreement with the CDC to conduct additional testing, the findings of which were compiled in a third informational brochure and distributed to EHU occupants in early 2008. On May 1, 2009, the

No. 10-30921 *Consolidated With* 10-30945

Government officially ended efforts to provide EHUs to disaster victims from Hurricanes Katrina and Rita.

Appellants are individuals who resided in the EHUs in Mississippi and Alabama. The Mississippi and Alabama appellants each sued more than 100 entities, including the Government. In October 2007, the United States Judicial Panel on Multidistrict Litigation ("MDL") created MDL No. 07-1873 (*In re: FEMA Trailer Formaldehyde Products Liability Litigation*)[3] and assigned the litigation to the United States District Court for the Eastern District of Louisiana. In March 2008, in accordance with the district court's order, Appellants filed a consolidated master complaint containing class allegations and naming as defendants various private manufacturers and contractors as well as the Government. All actions centralized in the MDL share factual questions relating to allegations that the EHUs provided by FEMA in response to Hurricanes Katrina and Rita contained materials which emit dangerous levels of formaldehyde.

Appellants allege that, for the period of time between March and June 2006, FEMA caused them harm by placing litigation concerns ahead of the safety of EHU occupants by exposing them to trailers FEMA knew to contain dangerous levels of formaldehyde, without warning occupants of the dangerous nature of the units or remedying the dangerous nature of the units.

In support of this contention, Appellants assert that, in spite of being notified on numerous occasions of complaints by EHU residents regarding formaldehyde emissions during March through June of 2006, FEMA persisted in not responding to these concerns. According to Appellants, FEMA's lack of a

---

[3] MDL No. 07-1873 includes (No. 10-30921) *In re: FEMA Trailer Formaldehyde Products Liability Litigation* (Mississippi) and (No. 10-30945) *In re: FEMA Trailer Formaldehyde Products Liability Litigation* (Alabama). These two cases have been consolidated in this appeal.

response was part of a deliberate effort to avoid liability for future formaldehyde exposure claims and litigation. Appellants further allege that FEMA ignored and manipulated the concerns of federal scientists in an attempt to avoid negative publicity and legal liability.

In May 2008, the Government moved to dismiss Appellants' FTCA claims for lack of subject-matter jurisdiction, or in the alternative for summary judgment, based on the FTCA's discretionary function exception. In October 2008, the district court found that all of the Government's conduct at issue was discretionary, but that some of its actions may not have been grounded in social, economic, or political policy. Therefore, it held that a genuine issue of material fact remained as to whether, during an identifiable period of time, FEMA's response to the issue of formaldehyde in the EHUs was insufficient or delayed due to self-interest or liability concerns.

In May 2009, the Government filed a second motion to dismiss Appellants' claims for lack of subject-matter jurisdiction, or in the alternative for summary judgment, based on the FTCA's discretionary function exception. In August 2009, the district court denied this motion and reaffirmed that the FTCA's discretionary function exception may not apply to some or all of Appellants' claims, the determination of which would be driven by the facts of each individual case.

The district court then denied class certification and scheduled a series of bellwether trials, but none of the FTCA claims brought by the bellwether plaintiffs against the Government advanced to the trial stage. In October 2009, Appellants filed a supplemental administrative master complaint for the purpose of presenting to the district court an updated "procedural vehicle for the disposition of common issues."

In November 2009, the Government moved under Rule 12(b)(1) to dismiss Appellants' FTCA claims for lack of subject-matter jurisdiction on the grounds

of no analogous private liability under the Mississippi and Alabama emergency statutes, Mississippi Emergency Management Law ("MEML"), Miss. Code § 33-15-21(b) and Alabama Emergency Management Act ("AEMA"), Ala. Code § 31-9-17. *See* Fed. R. Civ. P. 12(b)(1); 28 U.S.C. §§ 1346(b)(1), 2674. After concluding that the aforementioned emergency statutes would bar suit against a "private person under similar circumstances," the district court granted the Government's motion and dismissed Appellants' FTCA claims.

In August 2010, the district court entered a final, appealable judgment under Fed. R. Civ. P. 54(b) dismissing Appellants' remaining FTCA claims. This appeal ensued.

## II.

A Rule 12(b)(1) motion to dismiss challenges the subject-matter jurisdiction of the federal court. *See* Fed. R. Civ. P. 12(b)(1). A district court's determination of subject-matter jurisdiction is generally reviewed *de novo*. *Williams v. Wynne*, 533 F.3d 360, 364-65 (5th Cir. 2008). Plaintiffs bear the burden of establishing subject-matter jurisdiction. *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009), *vacated on other grounds*, 608 F.3d 266 (5th Cir. 2010).

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted). The court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Considering Rule 12(b)(1)

No. 10-30921 *Consolidated With* 10-30945

motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts. *Ramming*, 281 F.3d at 161. A motion to dismiss for lack of subject-matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief. *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007).

A plaintiff may only sue the United States if a federal statute explicitly provides for a waiver of sovereign immunity. The United States must consent to be sued, and that consent is a prerequisite to federal jurisdiction. *Delta Commercial Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council*, 364 F.3d 269, 273 (5th Cir. 2004). Waivers of sovereign immunity should be narrowly construed in favor of the United States. *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 253 (5th Cir. 2006).

The FTCA is recognized as providing a waiver of sovereign immunity and provides the sole basis of recovery for tort claims against the United States. *See* 28 U.S.C. § 1346 and § 2671, *et seq.*; *In re Supreme Beef Processors*, 468 F.3d at 252 n.4. Section 2674 provides that the United States shall be liable in the same manner and to the same extent as a private individual under like circumstances. 28 U.S.C. § 2674.

Similarly, section 1346 provides that:

> [D]istrict courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under

circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The "law of the place where the act or omission occurred" refers exclusively to state law. *Brown v. United States*, 653 F.2d 196, 201 (5th Cir. 1981). Since the FTCA requires the Government's liability to be measured in accordance with the law of the state where the alleged act or omission occurred, Appellants' FTCA claims are limited by the provisions set forth in Mississippi and Alabama tort law. *See* 28 U.S.C. § 1346(b)(1); *Richards v. United States*, 369 U.S. 1, 11-14 (1962); *Cleveland ex rel. Cleveland v. United States*, 457 F.3d 397, 403 (5th Cir. 2006).

Mississippi law provides:

> (a) Neither the state nor any political subdivision thereof, nor other agencies, nor, **except in cases of willful misconduct**, the agents, employees, or representatives of any of them engaged in any emergency management activities, while complying with or attempting to comply with this article or any rule or regulation promulgated pursuant to the provisions of this article, shall be liable for the death of or any injury to persons, or damage to property, as a result of such activity. The provisions of this section shall not affect the right of any person to receive benefits to which he would otherwise be entitled under this article, or under the workmen's compensation law, or under any pension law, nor the right of any such person to receive any benefits or compensation under any act of congress.
>
> (b) Any person owning or controlling real estate or other premises who voluntarily and without compensation grants a license or privilege, or otherwise permits the designation or use of the whole or any part or parts of such real estate or premises for the purpose of sheltering persons or providing assistance to persons during or in recovery from an actual, impending, mock or practice attack or any man-made,

No. 10-30921 *Consolidated With* 10-30945

> technological or natural disaster, together with his successors in interest, if any, shall not be civilly liable for negligently causing the death of, or injury to, any person on or about such real estate or premises by virtue of its use for emergency management purposes, or loss of, or damage to, the property of such person.

Miss. Code § 33-15-21 (emphasis added).

Similarly, Alabama law provides:

> Neither the state nor any political subdivision thereof nor other agencies of the state or political subdivisions thereof, nor, **except in cases of willful misconduct, gross negligence or bad faith**, any emergency management worker, individual, partnership, association or corporation complying with or reasonably attempting to comply with this chapter or any order, rule or regulation promulgated pursuant to the provisions of this chapter or pursuant to any ordinance relating to blackout or other precautionary measures enacted by any political subdivision of the state, shall be liable for the death of or injury to persons, or for damage to property, as a result of any such activity. The provisions of this section shall not affect the right of any person to receive benefits to which he would otherwise be entitled under this chapter or under the Worker's Compensation Law or under any pension law, nor the right of any such person to receive any benefits or compensation under any act of Congress.

Ala. Code § 31-9-16(b) (emphasis added).

> Any person owning or controlling real estate or other premises who voluntarily and without compensation grants a license or privilege, or otherwise permits the designation or use of the whole or any part or parts of such real estate or premises for the purpose of sheltering persons during an actual disaster or an actual, impending, mock or practice attack, shall, together with his successors in interest, if any, not be civilly liable for negligently causing the death of, or injury to, any person on or about such real estate or premises, or for the loss of, or damage to, the property of such person.

Ala. Code § 31-9-17.

No. 10-30921 *Consolidated With* 10-30945

Whether a private person in "like circumstances" would be subject to liability is a question of sovereign immunity and, thus, is ultimately a question of federal law. *See United States v. Olson*, 546 U.S. 43, 44 (2005). Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy. *LaBarge v. Cnty. of Mariposa*, 798 F.2d 364, 366-69 (9th Cir. 1986). Inherent differences between the government and a private person cannot be allowed to disrupt this analysis. *Olson*, 546 U.S. at 46-47. The Fifth Circuit has consistently held that the Government is entitled to raise any and all defenses that would potentially be available to a private citizen or entity under state law. *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 410 (5th Cir. 2006); *Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1998); *Palmer v. Flaggman*, 93 F.3d 196, 199 (5th Cir. 1996). Therefore, if a private person under "like circumstances" would be shielded from liability pursuant to a state statute, lower courts must decline to exercise subject-matter jurisdiction.

Appellants concede that, in accordance with the FTCA, the Government can only be held liable to the extent that a private individual or a business entity could be held liable under similar circumstances under the laws where the act or omission occurred. However, Appellants contend that FEMA's actions were non-discretionary, not voluntary, and not without compensation, so the most reasonable private person analogue would be a temporary housing manager, not a good Samaritan provider of free shelter.

Appellants argue that FEMA's provision of the trailers was not voluntary because the President, under the Stafford Act, is authorized to direct FEMA and other agencies of the state to provide assistance and services to victims in need as a result of a natural disaster. *See* 42 U.S.C. § 5174. Additionally, Appellants submit that, because the district court previously dismissed their claims involving the discretionary conduct of the Government (*i.e.*, the selection and

Case 2:07-md-01873-KDE-MBN   Document 24884-2   Filed 03/20/12   Page 11 of 13

No. 10-30921 *Consolidated With* 10-30945

initial provision of the EHUs), the remaining claims must necessarily involve non-discretionary conduct. Appellants contend that the Government's response, or lack thereof, to formaldehyde concerns, should be considered non-discretionary conduct. Further, because FEMA receives its budget from the Government, and the Government provides that budget by collecting taxes, Appellants argue that the Government's actions were not without compensation.

Appellants also claim that the statutory phrase "during or in recovery from an actual disaster," which provides the time frame for immunized conduct, does not extend to cover FEMA's decision-making process in response to post-disaster reports of dangerous formaldehyde levels in the EHUs.[4]

Additionally, Mississippi Appellants argue that, because the FTCA is an "act of congress" under which they are seeking compensation, and because the emergency statutes purport not to affect the rights of those seeking "compensation under any act of congress," the immunity provisions were erroneously applied to their FTCA claims, interfering with their right to recovery.[5]

Accordingly, Appellants contend that the Government's conduct should not be immunized under the Mississippi and Alabama emergency statutes, effectively barring their FTCA claims. *See* Miss. Code § 33-15-21(b) and Ala. Code § 31-9-17. Appellants have not cited, nor has our research located, any controlling or persuasive case law that supports these arguments.

Because the Mississippi and Alabama emergency statutes abrogate the tort liability of a private person who, (1) voluntarily, (2) without compensation, (3) allows his property or premises to be used as shelter during or in recovery from a natural disaster, the Government's voluntary, cost-free provision of the

---

[4] The language in the Alabama emergency statute is more narrow and provides that the time frame for the immunized conduct is "during an actual disaster." Ala. Code § 31-9-17.

[5] Alabama Appellants do not submit this argument in their brief.

No. 10-30921 Consolidated With 10-30945

EHUs to disaster victims, in connection with Hurricanes Katrina and Rita, is also immunized conduct under the statute.[6] *See* Miss. Code § 33-15-21(b) and Ala. Code § 31-9-17. The Government's provision of the government-owned EHUs, as implemented by FEMA, was voluntary because it was under no contractual or legal obligation, under the Stafford Act or other federal legislation, to provide the EHUs to disaster victims in response to the disasters. *See Ridgley v. FEMA*, 512 F.3d 727, 736 (5th Cir. 2008). The Government did not receive compensation from the disaster victims in exchange for letting them use the EHUs. The collection of taxes by the Government is not comparable to the traditional quid pro quo compensation contemplated by the statute. In addition, the Government's actions relating to the EHUs fell within the time frame contemplated by the statute as "during or in recovery from" a major disaster, since FEMA's temporary emergency housing program did not end until May 2009.

We pretermit discussion of the remaining arguments set forth by Appellants that were not raised before the district court, as it is a bedrock principle of appellate review that claims raised for the first time on appeal will not be considered.[7] *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctr., Inc.*, 200 F.3d 307, 316-17 (5th Cir. 2000).[8]

---

[6] Because Appellants failed to properly preserve their argument regarding lack of immunity for willful misconduct, we do not here need to address the scope of the tort liability for which immunity is granted.

[7] Appellants have not argued for plain error review. In any event, given the admittedly res nova nature of the questions presented, we conclude that any error could not be "clear" or "obvious." *Crawford v. Falcon Drilling Co.*, 131 F.3d 1120, 1124 (5th Cir. 1997).

[8] As noted by the district court, Appellants also failed to address the issue that the "willful misconduct" exclusion set forth in Miss. Code § 33-15-21(a) and Ala. Code § 31-9-16(b) is not included in Miss. Code § 33-15-21(b) or Ala. Code § 31-9-17. Additionally, Alabama Plaintiffs failed to address the issue that the language describing the time frame for the immunized conduct set forth in Ala. Code § 31-9-17 ("during an actual disaster") is more narrow than that set forth in the Miss. Code § 33-15-21(b) ("during or in recovery from [a

No. 10-30921 *Consolidated With* 10-30945

Additionally, as an alternative to handling the issue on appeal with this court, Appellants move to certify the following questions to the Alabama and Mississippi Supreme Courts: (1) Whether the federal government and its political subdivisions are considered "persons" under the emergency statutes as read in conjunction with the entire acts in which they are contained; (2) Whether the FTCA preempts state law as to the liability *vel non* of the federal government when exercising non-discretionary duties; and (3) Whether the Mississippi and Alabama state legislatures clearly intended to immunize the federal government under the state emergency statutes. Alabama Appellants also move to certify the following question to the Alabama Supreme Court: (1) Whether the actions of FEMA in failing to properly respond to complaints of formaldehyde exposure, months after Hurricane Katrina, occurred "during an actual disaster."

The decision of whether to certify a question lies within this court's sound discretion. *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 487 (5th Cir. 2003) (citing *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650, 656 (5th Cir. 2002)). The court should exercise that discretion sparingly, certifying only in "exceptional case[s]." *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 920 F.2d 259, 262 (5th Cir. 1990). Having considered the foregoing and upon determining that the questions do not warrant certification, we deny Appellants' motions.

### III.

For the foregoing reasons, we **AFFIRM** the district court's judgment dismissing Appellants' FTCA claims against the United States for lack of subject-matter jurisdiction. Appellants' motions for certification are **DENIED**.

---

natural disaster]"). Accordingly, we pretermit discussion of these issues on appeal as well. *Stewart Glass & Mirror, Inc.*, 200 F.3d at 316-17.

13