UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                   MDL NO. 07-1873
    FORMALDEHYDE PRODUCTS
    LIABILITY LITIGATION
                                                                                SECTION "N"  (5)

THIS DOCUMENT RELATES TO
ALL CASES

## ORDER AND REASONS

Before the Court is Defendant United States' Motion to Dismiss the Remaining FTCA Claims of All Louisiana Plaintiffs or, in the Alternative, for Summary Judgment (Rec. Doc. 16598). Plaintiffs have filed a memorandum in opposition to the motion. (Rec. Doc. 18714). The United States has filed a reply memorandum. (Rec. Doc. 19925).

## I. BACKGROUND:

In this multi-district litigation ("MDL"), the plaintiffs are individuals who resided in emergency housing units ("EHUs") provided by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita. In general, they claim injuries resulting from alleged exposure to formaldehyde in these units. Plaintiffs have sued over 100 entities, including the United States Government ("the Government"), the manufacturers of the EHUs, and the government contractors retained by FEMA to deliver, set up, and/or maintain the EHUs.

### A. Plaintiffs' Allegations Against the Government:

Plaintiffs allege that the Government, under the Stafford Act and as owner of the EHUs, had a duty (1) "to provide reasonably safe, functional and habitable housing units for the use of the...Plaintiffs," (2) to ensure that the EHUs "were free of defects, including but not limited to

1

elevated levels of formaldehyde," and (3) "to promptly warn the...Plaintiffs of any defects in the housing units which could cause harm." *See* Third Supplemental & Amended Administrative Master Complaint (Rec. Doc. 4486) ("AMC") at ¶¶ 201-205.

Specifically, the plaintiffs allege that the Government was negligent in: (1) "continuing to provide unreasonably dangerous housing units to the...Plaintiffs after FEMA became aware of elevated levels of formaldehyde;" (2) "failing to adequately warn the...Plaintiffs of the unreasonably dangerous nature of the housing units which the Plaintiffs occupied;" (3) "failing to remedy the dangerous nature of the housing units they provided to the...Plaintiffs once FEMA became aware of the elevated levels of formaldehyde;" (4) "failing to timely implement adequate safety measures and procedures to address/remove the defects in the housing units of the... Plaintiffs, or to remove or protect the...Plaintiffs from the defective housing units by providing them with alternative housing;" (5) "knowingly and intentionally suppressing and withholding information from the public that the temporary housing units contained elevated levels of formaldehyde;" (6) "knowingly and intentionally allowing litigation concerns to take priority over its safety mandate relating to the elevated levels of formaldehyde;" (7) "continuing to house ...Plaintiffs in hazardous temporary housing units for extended periods of time after FEMA became aware of elevated levels of formaldehyde in the temporary housing units;" (8) "continuing to house...Plaintiffs in hazardous, unreasonably dangerous temporary housing units rather than warning Plaintiffs of the dangers and offering rental assistance that would allow ...Plaintiffs to leave the defective temporary housing units;" and (9) "failing to offer...Plaintiffs rental assistance or other housing assistance when the...Government knew or should have known that the temporary housing units supplied to...Plaintiffs were unsafe and uninhabitable." AMC at ¶ 209.

With regard to gross negligence, plaintiffs allege that the Government "was obligated to promptly warn the...Plaintiffs of any defects in the housing units which could cause harm and of which the...Government was aware," and that the "Government, after becoming aware of the potential for such harm, violated this duty to each...Plaintiff, rendering the...Government negligent, grossly negligent, reckless, willful and/or wanton." AMC at ¶ 205-206.

**B. The Court's Prior Rulings Regarding Plaintiffs' Claims Against the Government:**

Early in this litigation, the Government moved to dismiss plaintiffs' claims against it on grounds that the claims are barred under the discretionary function exceptions of the Federal Tort Claims Act ("FTCA") and the Stafford Act. 28 U.S.C. § 2680(a); 42 U.S.C. § 5148. This Court granted the motion in part, finding that the discretionary function exception applies to bar claims relating to (1) the selection of EHUs (*i.e.*, FEMA's decision to provide travel trailers, park models, and mobile homes as emergency housing), and (2) the provision and installation of EHUs (*i.e.*, the decision to hire contractors, the choice of contractors, the instructions and directions given to contractors, and the supervision of contractors).[1] (Rec. Doc. 717). With regard to claims relating to FEMA's response to complaints and concerns about formaldehyde, the Court denied the motion, finding that on the showing made, genuine issues of fact existed as to whether FEMA's actions (or inaction) in this regard were grounded in policy considerations. *Id.*

In a later ruling, the Court elaborated regarding the contours of these remaining claims, stating: That "the Government appears to have had information in March 2006 that led it to warn its own employees of the possible harmful effects of formaldehyde in these EHUs, but may have

---

[1] The Court also dismissed plaintiffs' warranty and contract claims on other grounds. *See* Rec. Doc. 717 at 10, 46.

waited until some time thereafter to warn Plaintiffs of this same potential makes it difficult for the Government to justify its, albeit temporary, inaction." Rec. Doc. 2621 at 5. Thus, the Court found that the claims relating to the Government's response to formaldehyde complaints might fall outside the discretionary function exception "– at least for the period of time in which the Government knew of the potential effects of formaldehyde but did nothing to warn inhabitants." *Id.* Based on the evidence before the Court at the time, it appeared that this period of potential liability commenced sometime between late 2005 and March 2006 and ended in June 2006. *Id.* at 2, 5.

In May 2010, the Court dismissed all the Louisiana plaintiffs'[2] negligence claims against the Government on grounds that there is no analogous tort liability for private persons in like circumstances given Louisiana's statute abrogating all potential negligence liability for private persons who voluntarily and without compensation allow their property or premises to be used as shelter in response to an emergency.[3] *See* Rec. Doc. 14124 (citing La. R.S. § 29:733.1). The only claims exempted from this protection are those for damages caused by the "gross negligence or the willful and wanton misconduct" of the person owning the property or premises. *See* La. R.S. § 29:733.1. Thus, the only claims remaining by the Louisiana plaintiffs against the Government are those based upon FEMA's conduct in response to formaldehyde complaints during the period from late 2005 to June 2006 to the extent that such conduct amounted to gross negligence.

---

[2] By the term "Louisiana plaintiffs" the Court refers to all plaintiffs in this MDL who inhabited FEMA-provided EHUs and allegedly suffered injuries therefrom while in the State of Louisiana.

[3] The Court also dismissed the claims of Mississippi and Alabama plaintiffs based on similar statutes in those states. *See* Rec. Docs. 14486, 15061. The United States Court of Appeals for the Fifth Circuit has affirmed these rulings. *See In re FEMA Trailer Formaldehyde Products Liability Litigation,* 668 F.3d 281 (5th Cir. 2012).

4

### C. The Instant Motion:

With the instant motion, the Government seeks to dismiss the Louisiana plaintiffs' remaining claims. It does so on three grounds: (1) that the remaining claims should be dismissed under Rule 12(b)(1), because they are barred under the misrepresentation exception to the FTCA, 28 U.S.C. § 2680(h); (2) that the remaining claims should be dismissed under Rule 12(b)(6) because the plaintiffs have failed to plead plausible factual allegations that would establish a claim for gross negligence under Louisiana tort law; and (3) that the Government is entitled to summary judgment pursuant to Rule 56 because the plaintiffs cannot establish a genuine issue of material fact as to whether the Government proximately caused the plaintiffs' damages through the kind of outrageous conduct necessary to establish gross negligence and thus lose immunity under La. R.S. § 29:733.1.

Because the Court concludes that the Louisiana plaintiffs' remaining claims are barred under 28 U.S.C. § 2680(h) and therefore that the Court is without subject matter jurisdiction over those claims, the Court need not address the Government's arguments that it is also entitled to dismissal under Rule 12(b)(6) or Rule 56. The Court has not considered the parties' Rule 56 evidence.

## II. APPLICABLE LAW:

"The party asserting jurisdiction bears the burden of proof on a 12(b)(1) motion to dismiss." *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011). "The court takes as true all of the allegations of the complaint and the facts set out by the plaintiff." *Id.* The claims will not be dismissed "unless it appears certain that the plaintiff[s] cannot prove any set of facts in support of [their] claim which would entitle [them] to relief." *Id.* (alterations in original) (internal quotation marks omitted).

"The United States as a sovereign nation is immune from suit except as the United States has consented to be sued." *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993). "One of the vehicles by which the United States has consented to be sued is the Federal Tort Claims Act" ("FTCA"), which provides that the United States can be liable in tort for any "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.*; 28 U.S.C. § 1346(b). "Congress, however, adopted several exceptions to this consent to be sued, which must be strictly construed in favor of the United States." *McNeily*, 6 F.3d at 347. The exception relevant here bars claims against the Government "arising out of ... misrepresentation [or] deceit." 28 U.S.C. § 2680(h).

The misrepresentation exclusion "encompasses claims for negligent as well as intentional misrepresentation." *McNeily*, 6 F.3d at 347. "It also covers both affirmative acts of misrepresentation and omissions of material fact." *Id.* "Moreover, causes of action distinct from those excepted under section 2680(h) are nevertheless barred when the underlying governmental conduct 'essential' to the plaintiff's claim can be fairly read to 'arise out of' conduct that would establish an excepted cause of action." *Id.* ("a plaintiff cannot avoid the reach of § 2680(h) by framing his complaint in terms of negligent failure to prevent the excepted harm"). "Thus, the manner in which a plaintiff chooses to plead her claim is not controlling; rather, a court must 'look to the essential act that spawned the damages' to determine whether the misrepresentation exception bars the claim." *Metropolitan Life Ins. Co. v. Atkins*, 225 F.3d 510, 512 (5th Cir. 2000) (quoting *Saraw Partnership v. United States*, 67 F.3d 567, 570 (5th Cir.1995)).

If a plaintiff's damages arose out of a misrepresentation (or a failure to communicate information), then the plaintiff's claims are barred even if the government was also negligent in the performance of another duty. *See Life Partners*, 650 F.3d at 1031 (citing *United States v. Neustadt*, 366 U.S. 696, 706-07 (1961)). However, an independent claim will not be barred merely because it partially overlaps a claim that is grounded in misrepresentation. *See Block v. Neal*, 460 U.S. 289, 298 (1983). If the plaintiff alleges a distinct claim arising out of breach of a separate duty, with an injury that he would have suffered independently of the misrepresentation, then such a claim is not barred notwithstanding that misrepresentation might also have occurred. *Id.* at 296-67, 298-99.

To determine whether a claim arises out of misrepresentation, the Court must "consider whether the focal point of the claim is negligence in the communication of (or failure to communicate) information or negligence in the performance of an operational task, with misrepresentation being merely collateral to such performance." *Metro. Life*, 225 F.3d at 512; *Life Partners*, 650 F.3d at 1031. "The key question is 'whether the chain of causation from the alleged negligence to the alleged injury depends upon the transmission of misinformation by a government agent.' " *Metro. Life*, 225 F.3d at 512 (quoting *Comm'l Union Ins. Co. v. United States*, 928 F.2d 176, 179 (5th Cir. 1991)); *Life Partners*, 650 F.3d at 1031.[4]

---

[4] The Government cites numerous cases supporting the application of the misrepresentation exception to bar claims involving personal injury damages. Rec. Doc. 16598-1 at 15-17 & notes10, 11. This Court recognizes that contrary jurisprudence exists outside the Fifth Circuit. The issue in such cases is whether the action in question "falls within the commonly understood definition of a misrepresentation claim, which 'has been identified with the common law action of deceit,' and has been confined 'very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.' " *Block,* 460 U.S. at 296 n.5. However, this Court need not address the issue, for the plaintiffs have not contested the Government's contention in this regard. Indeed, they effectively concede that certain of their claims are barred under the misrepresentation exception. Instead, they argue, as discussed *infra*, that misrepresentation is not essential to all of their remaining claims and thus that these other

7

**III. ANALYSIS:**

The Government argues that a withholding of or failure to communicate information is essential to plaintiffs' remaining claims concerning FEMA's response to formaldehyde complaints during the window of time described above. Indeed, the plaintiffs allege that the Government was at fault in "knowingly and intentionally suppressing and withholding information from the public that the temporary housing units contained elevated levels of formaldehyde" and in "failing to adequately warn...each of the...Plaintiffs of the unreasonably dangerous nature of the housing units." AMC ¶ 209. These two allegations fall squarely within the jurisprudence outlining the misrepresentation exception, and the plaintiffs effectively concede that claims based on these allegations are barred by section 2680(h). However, the plaintiffs argue that the "remaining gross negligence claims, while partially overlapping with alleged misrepresentations, do not arise out of

---

claims should stand. Although the Court has found no case in which the Fifth Circuit has decided the issue directly, the Court notes that the Fifth Circuit has addressed the application of the misrepresentation exception in cases involving personal injury claims without suggesting that such claims are necessarily outside the exception's reach. *See, e.g.*, *De Bardeleben Marine Corp. v. United States*, 451 F.2d 140, 143 (5th Cir. 1971) (in submerged pipeline explosion case involving damage to tug and barges and personal injuries to tug's mate, agreeing that claim against Government for failure of coastal survey chart to include pipeline was "one of negligent misrepresentation" that would be barred under § 2680(h) but holding that FTCA's limitations of liability did not apply in action brought under amendments to Suits in Admiralty Act); *Sullivan v. United States*, 411 F.2d 794 (5th Cir. 1969) (affirming on basis of district court opinion which found that pilot's personal injury claims were not barred by misrepresentation exception because preparation of chart was operational task and airfield attendant committed further operational negligence in failing to turn on runway lights); *Beech v. United States*, 345 F.2d 872, 874 (5th Cir. 1965) (in personal injury action for medical malpractice in Army hospital, finding that claim was not barred by misrepresentation exception because "the Government had not only the duty to communicate to Mrs. Beech a diagnosis of her condition, but also to render proper care for her treatment" and "failure to perform this latter duty ...is not covered by the 2680(h) exception"); *see also Matthews v. United States*, 456 F.2d 395, 398 (5th Cir. 1972) (noting "apparent broad application of the misrepresentation exception" and citing *Vaughn v. United States*, 259 F. Supp. 286 (N.D. Miss. 1966) (applying misrepresentation exception to bar personal injury claim)).

8

the alleged misrepresentations." Rec. Doc. 18714 at 8. Rather, plaintiffs argue, these remaining claims address a "duty to respond." *Id.* at 10.

According to the plaintiffs, it is the Government's "misuse of information – the failure to respond," not misrepresentation, that forms the gravamen of the remaining claims. This failure, the plaintiffs argue, "is not simply a misrepresentation," but also "a failure to investigate, a failure to test and communicate, and a choice to delay for the sake of litigation." *Id.* Plaintiffs continue: "What is actionable is what FEMA chose to do once it acquired this knowledge [of the dangers of formaldehyde]; and what FEMA chose to do was not misrepresent, but rather delay a proper response to the crisis based purely on litigation strategy. It was this deliberate, and/or grossly negligent, decision to delay response to a public health crisis which allegedly caused or contributed to Plaintiffs harm, not overt misrepresentation." *Id.* at 2; *see also id.* at 12 ("Plaintiffs' remaining claims...are not based on misrepresentation, but rather are predicated on a deliberate and grossly-negligent failure to perform a duty to respond."). According to plaintiffs, the gravamen of their remaining claims "is not action so much as it is deliberate inaction, not so much overt falsification as strategic silence." *Id.* Their allegations, they argue, "refer to delays in testing and resident notification." *Id.* In essence, the plaintiffs' gross negligence claim is this: "With all of the Federal Government's knowledge of formaldehyde, travel trailer composition, and the Gulf Coast climate, FEMA's inaction and unwillingness to either remove occupants from the trailers or completely and adequately warn occupants of the dangers of protracted exposure to a carcinogen, can only be characterized as willful, wanton, and an utter disregard for the health and safety of certain Plaintiffs." *Id.* at 20.

It is clear from these characterizations that the plaintiffs are struggling in their effort to

articulate an independent claim that does not rely on the allegations that plainly lie at the center of their claims regarding FEMA's response to formaldehyde complaints, *i.e.*, that FEMA "knowingly and intentionally suppress[ed] and withh[eld] information from the public that the temporary housing units contained elevated levels of formaldehyde" and "fail[ed] to adequately warn ...the Plaintiffs." Yet, even as recast, the claims still rely in large part on FEMA's failure to communicate information, pointing to FEMA's "strategic silence," "delays in testing and resident notification," "failure to test and communicate," and "unwillingness to...adequately warn occupants." Such claims on their face rely on FEMA's failure to communicate information, and thus are barred under the misrepresentation exception.

Beyond such statements, the plaintiffs are left largely with a fatally vague "failure to respond" or "delay [of] a proper response." Outside of warning the plaintiffs regarding formaldehyde, which is barred under the misrepresentation exception from forming the basis of their claim, plaintiffs point to two possible actions that they claim the government should have taken in response to formaldehyde complaints: (1) testing formaldehyde levels; and (2) removing plaintiffs from the trailers or, at the very least, suspending efforts to house new occupants. The Court will address each in turn.

    A. <u>Testing Formaldehyde Levels</u>:

Plaintiffs claim that FEMA intentionally delayed testing formaldehyde levels inside the EHUs because of concerns regarding litigation and potential liability. There are at least two obstacles to this allegation serving as a basis for an independent claim of gross negligence. First, the jurisprudence delineating the misrepresentation exception includes information gathering within the tort of misrepresentation. *See, e.g.*, *Neustadt*, 366 U.S. at 706-07 (breach of the "duty to use due

care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation,' ...which there is every reason to believe Congress had in mind when it placed the word 'misrepresentation' before the word 'deceit' in § 2680(h)"); *see also id.* at 710-11 ("While we do not condone carelessness by government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability."); *JBP Acquisitions, LP v. United States*, 224 F.3d 1260, 1264 (11th Cir. 2000) ("The test in applying the misrepresentation exception is whether the essence of the claim involves the government's failure to use due care in obtaining and communicating information.").

Second, even if such information gathering were not itself encompassed within the misrepresentation exception, it cannot support an independent claim of gross negligence because without some further act or failure to act (*e.g.*, failure to communicate the information or otherwise warn the plaintiffs), there is no chain of causation between the alleged breach of duty (*i.e.*, the delay in obtaining test results) and the plaintiffs' alleged harm. As plaintiffs themselves acknowledge, knowledge itself is not actionable. *See* Rec. Doc. 18714 at 2 ("FEMA's early awareness and knowledge of the dangers of formaldehyde, while probative [of wantonness and reckless disregard]...is not *per se* actionable. What is actionable is what FEMA chose to do once it acquired this knowledge...."). By promptly testing air quality in the trailers, FEMA would have obtained additional information regarding the problem of formaldehyde. Yet, if FEMA had tested but then done nothing with the additional information, the plaintiffs' position would not have been changed in the least. A causal link is missing. Thus, a duty to test cannot form the basis of the plaintiffs'

11

gross negligence claim.

B. Removing Plaintiffs From the EHUs:

Plaintiffs assert that FEMA could have responded to formaldehyde complaints by removing plaintiffs from the trailers or, at the very least, suspending efforts to house new occupants. *See* Rec. Doc. 18714 at 13, 20 (pointing to FEMA's "unwillingness to either remove occupants from the trailers or completely and adequately warn occupants of the dangers"); *see also* AMC ¶ 209(h) (FEMA was negligent in "continuing to house...Plaintiffs in hazardous, unreasonably dangerous temporary housing units rather than warning Plaintiffs of the dangers and offering rental assistance that would allow...Plaintiffs to leave the defective temporary housing units."). The problem with this argument is two-fold. First, under the FTCA, the Government can be held liable only under circumstances where a private person would be liable under the law of the state where the act or omission occurred. 28 U.S.C. § 1346(b). As the Government points out, no private person in like circumstances (*i.e.*, having voluntarily allowed his or her property or premises to be used as emergency shelter) would have a duty under Louisiana law to continue to provide housing, to provide alternative housing, to relocate shelter occupants, or to provide rental assistance or any other form of housing assistance. Because no private person would have owed such duties under Louisiana law, they cannot form the basis of an independent claim for gross negligence under the FTCA,[5] even if FEMA did owe such duties under the Stafford Act.[6]

---

[5] *See, e.g., Johnson v. Sawyer*, 47 F.3d 716, 727-29 (5th Cir. 1995) ("[V]iolation of a federal statute or regulation does not give rise to FTCA liability unless the relationship between the offending federal employee or agency and the injured party is such that the former, if a private person or entity, would owe a duty under state law to the latter in a *nonfederal* context.").

[6] For purposes of the instant motion, the Court has assumed that FEMA did owe such obligations under the Stafford Act and/or applicable regulations. However, the law appears to be to the contrary. *See, e.g.*, Rec. Doc. 14124 at 13-15 ("Plaintiffs have pointed to no law, mandate,

Second, in seeking to impose liability on the Government for "continuing to house" the plaintiffs in EHUs rather than "offering rental assistance that would allow...Plaintiffs to leave the defective temporary housing units," the plaintiffs are encroaching onto conduct that the Court has already determined to be shielded from suit by the discretionary function exception. *See* Rec. Doc. 717 at 15-21. In that ruling, the Court found "that the discretionary function exception applies to shield FEMA from liability as to Plaintiffs' claims relating to the selection of and provision of EHUs." *Id.* at 47. The Court denied the Government's motion solely with respect to "Plaintiffs' claims regarding FEMA's alleged negligent conduct in responding to complaints and concerns of formaldehyde in EHUs." *Id.* In arguing that FEMA had a duty to remove all plaintiffs from EHUs, the plaintiffs are in essence attacking FEMA's decision to use EHUs, which the Court has found to have been grounded in public policy.

Thus, for all the reasons stated above, the Court concludes that the Louisiana plaintiffs' remaining claims against the Government, relating to FEMA's response to formaldehyde complaints and concerns, are barred under the misrepresentation exception of 28 U.S.C. § 2680(h) and/or are not cognizable under the FTCA. Consequently, the Court is without jurisdiction over these claims.

---

contractual agreement, or other external provision that obligates the Government to provide free shelter to displaced residents....[T]he Stafford Act and its related implementing regulations do not affirmatively require the provision of assistance."). In deciding whether the Government was entitled to dismissal based upon the discretionary function exception, this Court found that FEMA's policy pronouncements relative to emergency housing suggested that eligible residents should have been provided alternative housing that was safe and habitable and, therefore, that genuine issues of material fact precluded an early determination that FEMA, in responding to formaldehyde complaints, acted on the basis of permissible policy considerations. *See* Rec. Doc. 717 at 37-41. The question now before the Court is entirely different than the one at issue there. Here, the question is whether FEMA owed a duty (other than to communicate information or a warning), the breach of which would impose liability on a private person under Louisiana law.

Accordingly,

**IT IS ORDERED** that **Defendant United States' Motion to Dismiss the Remaining FTCA Claims of All Louisiana Plaintiffs or, in the Alternative, for Summary Judgment (Rec. Doc. 16598)**, is hereby **GRANTED**, and the remaining claims of the Louisiana plaintiffs against the United States are hereby dismissed.

New Orleans, Louisiana, this 23rd day of March, 2012.

_____
**KURT D. ENGELHARDT**
**United States District Court**