UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-5"<br><br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED:
*Ann M. Terrell v. Gulf Stream Coach, et al.,* EDLA 12-0548

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

MAY IT PLEASE THE COURT:

Plaintiff, Ann M. Terrell, files this Motion to Remand this case to the 24th Judicial District Court for the Parish of Jefferson, Louisiana, pursuant to 28 U.S.C. § 1447(c) and, in support, would show:

### I.     INTRODUCTION

Plaintiff filed suit against Defendants, Gulf Stream Coach, Inc. ("Gulf Stream") and Shaw Environmental, Inc. ("Shaw"), in the 24th Judicial District Court for the Parish of Jefferson, Louisiana on or about February 1, 2012. On February 29, 2012, Shaw removed the case to this Court, claiming federal court jurisdiction based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *See* Shaw's Original Notice of Removal, at ¶¶ 4-12. Gulf Stream filed a preservation of defenses on March 13, 2012, and an answer on March 28, 2012. This case was consolidated with the MDL on March 21, 2012.

Plaintiff has filed a First Supplemental and Amended Petition. This amended Petition removes all allegations of negligent failure to warn against Shaw and all LPLA claims against Shaw, leaving only a claim that Shaw's negligent jacking of the unit caused or contributed to

increased formaldehyde emissions, which in turn caused injury to Plaintiff. Because the Government gave no reasonably precise specifications with regard to Shaw's "jacking" of the unit, the government contractor defense is not "colorable;" thus, Shaw is not entitled to removal under 28 U.S.C. § 1442(a)(1), and this Court lacks subject matter jurisdiction.

## II.     ARGUMENT AND AUTHORITIES

A court may remand a case on the basis of any defect identified in a motion for remand filed within 30 days after the notice of removal under 28 U.S.C. § 1446(a). 28 U.S.C. § 1447(c). Shaw removed this case to federal court on February 29, 2012. Therefore, this motion is timely.

Federal district courts are courts of limited jurisdiction. U.S. Const. art. III, § 2, cl. 1. Federal subject matter jurisdiction cannot be consented to nor waived. *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999). Therefore, a federal court may exercise jurisdiction only in certain, specific instances. "The removing party bears the burden of establishing that federal jurisdiction exists." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) ("*de Aguilar II*"). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Here, the Court lacks subject matter jurisdiction over this case; therefore, this case should properly be remanded to state court.

### A.  Standard of Review.

The Fifth Circuit will "review a denial of a motion to remand *de novo*." *Gebbia v. Wal-Mart Stores*, 233 F.3d 880, 882 (5th Cir. 2000). "[A]n order remanding a case to the State court

from which it was removed pursuant to section 1442 . . . shall be reviewable by appeal or otherwise." 28 U.S.C. § 1447(d).

### B. Shaw Is Not A Federal Officer.

The Federal Officer Removal Statute states that:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a). The purpose of this statute is to allow a federal official, acting in his official capacity, to present his defenses, including immunity, in a federal forum so that "a trial upon the merits of the state-law question [will be] free from local interests or prejudice." *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981). While § 1442 is not to be narrowly construed like other removal statutes, the "broad language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history and purposes." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). Further, even though § 1442(a)(1) "is to be liberally construed, it must nevertheless be interpreted 'with the highest regard for the right of the states to make and enforce their own laws in the field belonging to them under the Constitution." *Preston v. Tenet Healthsystem Mem. Med. Ctr.*, 463 F.Supp.2d 583, 590 (E.D. La. 2006) (*quoting Dixon v. Ga. Indigent Legal Servs., Inc.*, 388 F.Supp. 1156, 1162 (S.D. Ga. 1975)). And, as in all other removal actions, the party seeking removal under § 1442 still bears

3

the burden of proving that federal jurisdiction exists. *Winters v. Diamond Shamrock Chemical Co.*, 149, F.3d 387, 398 (5th Cir. 1998).

> While available to contractors and other private parties in certain instances,
>
> [t]he federal officer removal statute confers jurisdiction only if at least one of the Defendants is (1) a "person," (2) that acted under color of federal authority when committing the allegedly tortious conduct, and (3) can assert a colorable federal defense.

*Breaux v. Gulf Stream Coach, Inc.*, Civ. Act. No. 08-893, 2009 WL 152109, at *2 (E.D. La. Jan. 21, 2009) (*citing Winters*, 149, F.3d at 397). Shaw must demonstrate that it meets all three criteria, but it cannot.

### 1. Defendant is a person.

Plaintiffs do not contest that Defendant, Shaw, qualifies as a "person" for the purposes of this statute.

### 2. Defendant was not acting under the color of federal authority *when it jacked the trailers that caused Plaintiff's injuries.*

Analysis of this factor:

> depends on 'the level of official control, and perhaps more to the point, whether the defendant acted sufficiently under the direction of a federal officer in the performance of the acts that form the basis of the suit.'

*Breaux*, 2009 WL 152109, at *2 (*quoting Guillory v. Ree's Contract Services, Inc.*, 872 F.Supp. 344, 346 (S.D. Miss. 1994)). In order to meet the second prong and "show the requisite federal direction," the contractor must "demonstrate that a federal officer has direct and detailed control over it." *Kaye v. Southwest Airlines Co.*, 2005 WL 2074327, at *3 (N.D. Tex. 2005 Aug. 29, 2005) (*citing* 16 Moore's Federal Practice § 107.15(1)(b)(ii) (3d ed. 2005)); *see also Winters*, 149 F.3d at 398 ("the defendants acted pursuant to a federal officer's directions and that a causal

4

nexus exists between the defendants' actions under color of federal office and the plaintiff's claims"); *Preston*, 463 F.Supp.2d at 590.

The Fifth Circuit looks to three factors that assess the level of control actually exercised by the government: (1) the level of detail in the government's specifications; (2) the government's compulsion with regard to the specifications; and (3) the degree of supervision exercised by the government. *Winters*, 149 F.3d at 400. "Federal direction requires more than general auspices of a federal officer, or participation in a regulated industry." *Breaux*, 2009 WL 152109, at *3 (*citing Bradley v. Northrop Grumman Systems*, 2007 WL 115246, at *2 (E.D. La. Apr. 12, 2007)).

The specifications cited by Shaw in its IA/TAC contract with the government do not meet the requisite standard of "reasonably precise specifications" with respect to Shaw's jacking of the unit. *See* Exhibit 2 to Shaw's Original Notice of Removal at 108-109 (no mention of jacking/lifting). In fact, this issue has already been addressed by Your Honor in an Order and Reasons denying a motion for summary judgment by another IA/TAC, Fluor Enterprises, Inc., based on the government contractor defense and adopted in a similar denial of a motion for summary judgment by Shaw (Rec. Doc. 11910):

> While the Government gave Fluor detailed specifications on the EHU "blocking" procedure, one critically important aspect of that procedure that was left to the discretion of Fluor was the means and method for "jacking up" the EHUs (i.e., for lifting the EHU from the ground up onto concrete blocks).

Rec. Doc. 3205 at 6. Your Honor also noted that "[a]s Plaintiffs point out in their opposition memorandum, this issue is particularly important because Plaintiffs assert that the means and methods that were utilized by Fluor and/or its subcontractors for jacking up the EHUs were a

5

major cause in increasing formaldehyde exposure to Plaintiff." *Id.* at 8 (internal citations omitted).

FEMA did not exercise any significant degree of control over the engineering decision of how to go about jacking up the travel trailer unit.

> Fluor claims that the requirement that there be "reasonably precise specifications" does not translate to "exactly" precise specifications. While the Court recognizes this, the problem here is that a crucial part of the blocking process was left entirely to the discretion of Fluor (i.e., how to raise the EHU off the ground onto the concrete blocks). Further, it is this specific process, obviously known and anticipated by both Fluor and the Government, that Plaintiffs assert caused or substantially contributed to the increased release of formaldehyde emissions. The Court notes that there are likely many different ways to go about lifting the EHU from the ground to the concrete blocks and many different tools, machines and mechanisms that can be utilized to accomplish this - some likely better than others.

*Id.* at 8-9.

Additionally any claims that § 1442(a)(1) should be interpreted even more broadly because of the disaster context of this case have been routinely rejected by the courts. *Id*. (finding the Fleetwood and Fluor were not entitled to removal); *see also Creighton v. Fleetwood Enterprises, Inc.*, Civ. Act. No. 07-7194, 2009 WL 1229793 (E.D. La. May 5, 2009) ("American Radiation Services, Inc. (ARS), a government contractor responsible for inspecting and maintaining the FEMA trailers" was not entitled to removal under § 1442(a)(1)); *Breaux*, 2009 WL 152109, at *5 (Shaw not entitled to removal); *Preston*, 463 F.Supp.2d at 590 (finding that FEMA did not exercise direct and detailed control over evacuation operations at local hospitals in the days following Katrina).

Further, in its Notice of Removal, Shaw can cite no involvement by FEMA in the jacking of units. *See* Exhibit 2 to Shaw's Original Notice of Removal at 108-109 (no mention of jacking/lifting).

### 3. Defendant does not have a colorable federal defense.

While Shaw is not required to prove its defense on the merits, it must still show that it has a colorable, or plausible, federal defense. *Winters*, 149 F.3d at 400. Shaw's federal contractor defense is not plausible without "reasonably precise specifications" related to the jacking up of travel trailers, such as Plaintiff's. *See In re Katrina Canal Breaches Litig.*, 620 F.3d 455 (5th Cir. 2010) (reversing summary judgment in favor of defendant, who asserted government contractor defense, when general mandates of compacting soil and selecting "on-site" soil were not found to be reasonably precise specifications as to the methods of compaction of the soil and of selecting the proper/suitable soil composition for levee construction).

The Supreme Court held that a federal contractor would be immune from state tort law only when 1) the subject matter involves "uniquely federal interests"[1] and 2) a "significant conflict exists between an identifiable federal policy of interest and the operation of state law or the application of state law would frustrate specific objective of federal legislation." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 507-08 (1998). If there is a "uniquely federal interest," then the Supreme Court provided three factors to determine if there was a significant conflict and thus where preemption should apply and to what extent:

(1) whether the United States approved **reasonably precise specifications**;
(2) whether the equipment conformed to those specifications; and

---

[1] *Boyle* identified three areas where "uniquely federal interests arise: 1) the obligations to, and rights of, the United States under its contracts; 2) the liability of federal officers for official acts; and 3) civil liabilities arising out of procurement contracts relating to national defense. *Boyle*, 487 U.S. at 504-05.

>    (3)    whether the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id*. at 512 (emphasis added). The Fifth Circuit has held that

> **The protective shield in favor of the contractor collapses when the actions of the government contractor – and not those of the Government – produce the damaging defect.** In such a situation, fairness dictates that a government contractor should not be permitted to escape liability by asserting the sovereign immunity of the Government.

*Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 245-46 (5th Cir. 2000) (emphasis added).

### a.  There Were No Reasonably Precise Specifications.

The first element requires the government provide precise specifications leaving no discretion to the contractor. *Boyle*, 487 U.S. at 513; *Wisner v. Unisys Corp.*, 917 F. Supp. 1501, 1510 (D.C. Kan. 1996) (noting that "virtually microscopic precision" meets the first element). Courts have interpreted this to require "continuous back and forth" collaboration between the contractor and the government with respect to the design of the product supplied to the government. *See Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000) (the government continuously interacted with the contractor over eight years and the government addressed the design issues specific to this case during the process); *Stout v. Bourgh-Warner Corp.*, 933 F.2d 331, 336 (5th Cir. 1991) (government contractor defense is available where "review [of the project] involved, inter alia, [the contractor's] submission of detailed drawings at various progressive stages of the design, critical design reviews where [government] engineers critiqued [the contractor's] work, and finally, the production of prototype model tested and evaluated for months by the [government] for its actual performance."); *Smith v. Xerox Corp.*, 866 F.2d 135, 137-38 (5th Cir. 1989) (first element established by government's initial supply of relevant specifications for shoulder-mounted weapon which were incorporated into production

contract, and government's subsequent review and approval of contractor's final drawings and specifications); *see also Harduvel v. General Dynamics Corp.*, 878 F.2d 1311, 1320 (11th Cir. 1989) (extensive analysis and review by government of fighter aircraft's electrical system established government approval); *Kleeman v. McDonnell Douglas Corp.*, 890 F.2d 698, 702-03 (4th Cir. 1989) ((1) regular discussions between Navy officials and the contractor's employees as to the design, testing and production of the aircraft, (2) the Navy's large staff presence at the contractor's facility; (3) the Navy's retention and exercise of the power to approve and reject design modifications; (4) the contractor's use of the Navy specifications for the landing gear design; and (5) the Navy's testing of the prototype).

In contrast, when the government passively accepts the contractor's independently developed design choices and, accordingly, does not exercise sufficient discretion over the design features in question, the contractor will not be allowed to assert the government contractor defense. *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1486-87 (5th Cir. 1989). "'[A]pproval' under the *Boyle* defense requires more than a rubber stamp" from the government. *Id*. at 1480.

The Fifth Circuit has held that reasonably precise specifications and conformity with those specifications refer to the particular feature of the product claimed to be defective. *Id*. at 1486; *see also Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 799 (5th Cir. 1993) (a court's analysis must focus upon the "particular feature" allegedly defective); *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746-47 (9th Cir. 1997); *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1371, 1377-79 (11th Cir. 1997); *Shurr v. A.R. Siegler, Inc.*, 70 F. Supp.2d 900, 900 (E.D. Wis. 1999); *Strickland v. Royal Lubricant Co.*, 911 F. Supp. 1460, 1467-68 (M.D. Ala. 1995). The Fifth Circuit has recently further clarified:

> Specifications are reasonably precise as long as the specifications address, in reasonable detail, the product design feature, alleged to be defective. The requirement that the specifications be precise means that the discretion over significant details and all critical design choices will be exercised by the government. Reasonably precise specifications for one aspect of a large project do not create an umbrella of protection for an entire project. Instead, the requirement of reasonably precise specifications must be met by the specific feature at issue in the claim.

*In re Katrina Canal Breaches Litig.*, 620 F.3d at 461 (internal citations omitted).

Indeed, the set of facts in the present case is closely analogous to the example given in *Boyle* of what does not pose a significant conflict between federal and state interests. Here, the government specified only basic requirements for installation of travel trailers and did not specify the precise manner in which Shaw should jack up or lift the units; therefore, Shaw could comply with both its contractual duty to the government and with general state negligence law which required Shaw to use reasonable care in performing the jacking up or lifting task, given the government's deference to its engineering judgment. *See Boyle*, 487 U.S. at 509. In such a case, "No one suggests that state law would generally be pre-empted in this context." *Id*.

      b. <u>As There Are No Specifications, The Point is Moot on Whether The Trailer "Conformed" to Those Specifications.</u>

As the government specifications are not reasonably precise and contain no references to the precise manner in which the travel trailer units were to be jacked up or lifted, it is impossible for Shaw to prove that it complied with these non-existent "reasonably precise specifications."

      c. <u>Defendant Knew of the Risks of Improper Jacking or Lifting, but Failed to Warn the United States.</u>

The third factor for "significant conflict" between federal interest and state law requires proof that the contractor warned the government about possible dangers in the use of the product that were known to the contractor but not to the government. *Boyle*, 487 U.S. at 512. The contractor satisfies this element by proving (1) that it lacks knowledge of any alleged danger

relating to the product, or (2) the government already knew of the alleged danger or hazard. *See Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996). However, where a government contractor, by virtue of being engaged in the business, should have known as much, if not more than, the government regarding toxicity, the government contract defense is weakened. *Strickland*, 911 F. Supp. at 1468. At the very least, Shaw knew that improper jacking or lifting could lead to dangerous consequences, especially given express warnings of the manufacturers of travel trailers related to lifting or jacking the unit.

Shaw has offered no evidence that it advised FEMA about the dangers of improper jacking up or lifting of FEMA trailers.

### III. CONCLUSION

As demonstrated above, this Court lacks subject matter jurisdiction over this matter. Defendant, Shaw, does not qualify for removal under the federal officer removal statute, because it lacked reasonably precise specifications from the government with regard to Plaintiff's sole claim against it (i.e., negligent jacking up or lifting, which caused increased formaldehyde exposure of Plaintiff). For all of these reasons, Plaintiff respectfully requests that this Court grant the motion to remand and remand this suit to the 24th Judicial District Court for the Parish of Jefferson, Louisiana.

Respectfully submitted:

**GAINSBURGH, BENJAMIN, DAVID,
MEUNIER & WARSHAUER, L.L.C.**


BY:  */s/M. Palmer Lambert*  
　　　GERALD E. MEUNIER, #9471  
　　　JUSTIN I. WOODS, #24713  
　　　M. PALMER LAMBERT, #33228  
　　　2800 Energy Centre

        1100 Poydras Street
        New Orleans, Louisiana 70163
        Telephone:    504/522-2304
        Facsimile:     504/528-9973
        ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

        */s/M. Palmer Lambert*
        M. PALMER LAMBERT, #33228