UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                                               MDL NO. 07-1873
      FORMALDEHYDE PRODUCTS
      LIABILITY LITIGATION
                                              SECTION "N"  (5)

THIS DOCUMENT RELATES TO
Member Case No. 10-4120

## ORDER AND REASONS

Before the Court is a Motion to Remand (Rec. Doc. 17825), filed by the plaintiffs in the referenced case. Opposition memoranda have been filed by defendants Gulf Stream Coach, Inc. ("Gulf Stream") and Bechtel National, Inc. ("Bechtel") (Rec. Docs. 18480, 18494).

### A. BACKGROUND:

Plaintiffs Kevin and Madeleine Ammentorp, individually and on behalf of their three minor children, filed a complaint on June 1, 2010 in the Circuit Court of Hancock County, Mississippi, against defendants Gulf Stream, Bechtel, and various John Doe defendants. (Rec. Doc. 17825-1). Gulf Stream was served on August 6, 2010 (Rec. Doc. 17825-2), and filed a Notice of Removal on August 25, 2010, removing the case to the United States District Court for the Southern District of Mississippi. (Rec. Doc. 18480-1). Gulf Stream based its removal on diversity jurisdiction under 28 U.S.C. § 1332, the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and the Federal Officer Removal Statute, 28 U.S.C. § 1442(a). Bechtel was served on August 19, 2010 (Rec. Doc. 18494-1), and on September 7, 2010, filed its Joinder of Removal. *See Ammentorp v. Gulf Stream Coach Inc., et al*, S.D. Miss. No. 1-10-CV-426, Rec. Doc. No. 5. On October 29, 2010, the case was transferred to this Court by the Judicial Panel for Multidistrict Litigation, as it arises from operative facts that are the subject of multidistrict litigation ("MDL") ongoing in this Court before the undersigned, entitled *In re: FEMA Trailer Formaldehyde Products Liability Litigation*, MDL No.

07-1873. (Member Case No. 10-4120, Rec. Doc. 1).

The plaintiffs in the MDL are individuals who resided in emergency housing units provided by the Federal Emergency Management Agency ("FEMA") after Hurricanes Katrina and Rita. In general, they claim injuries resulting from alleged exposure to the release of formaldehyde and/or formaldehyde vapors in these units. Plaintiffs in the MDL have sued over 100 entities, including the Government. In all, 4721 cases are associated with this MDL, 3999 of which are currently active. *See* Joint Report No. 29 of Liaison and Government Counsel (Rec. Doc. 24394). It has been estimated that more than 66,000 plaintiffs have submitted a Plaintiff Fact Sheet. *See* Minutes to Status Conference (Sept. 16, 2011, 10:00 a.m.).

**B. LAW AND ANALYSIS:**

The plaintiffs assert four arguments in favor of remand: (1) the removal is defective under the first served defendant rule; (2) diversity jurisdiction does not exist because the jurisdictional amount in controversy is not met; (3) CAFA does not apply; and (4) Gulf Stream is not entitled to remove under the Federal Officer Removal Statute. Because the Court finds that diversity jurisdiction exists under 28 U.S.C. § 1332(a), the Court need not address whether removal was also proper under CAFA and/or the Federal Officer Removal Statute.

**1. Defect under the First-Served Defendant Rule:**

Under the general removal statute, a notice of removal must be filed within thirty days of receipt of service. 28 U.S.C. § 1446(b). The Fifth Circuit follows the "unanimous consent rule," which requires that all served, properly joined defendants must join in the removal, and the "first-served defendant" rule, which requires that "all served defendants must join in the petition no later than thirty days from the day on which the first defendant was served." *Getty Oil Corp., a Division*

*of Texaco, Inc.*, 841 F.2d 1254, 1261-63 & n.9 (5th Cir. 1988).[1]

Plaintiffs argue that removal was defective here because Gulf Stream, the first served defendant, was served on August 6, 2010, and Bechtel did not file its joinder in the removal until September 7, 2010, thirty-two days later. Gulf Stream, however, points out that the thirtieth day fell on Sunday, September 5, which was followed by Labor Day on Monday, September 6, 2010. Under Rule 6(a)(1) of the Federal Rules of Civil Procedure, for time periods that are stated in days or longer units of time, the period is computed by including the last day of the period, except that "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1).[2] Labor Day is a legal holiday. Fed. R. Civ. P. 6(a)(6). Thus, the time for joining in the removal continued to run until Tuesday, September 7, and Bechtel's joinder was timely.

**2. Amount in Controversy:**

"A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction." *Manguno v. Prudential Property & Casualty Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Id.*; *see also Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998) ("[W]hen faced

---

[1] These rules do not apply in a case that is properly removed pursuant to the Federal Officer Removal Statute because it creates an independent right of removal that does not require the consent of other defendants. 28 U.S.C. § 1442(a). However, the Court does not reach the question of whether removal was proper under this statute. Thus, it is appropriate to address the timeliness of Bechtel's joinder.

[2] Rule 6(a) applies in computing the time period specified "in any statute that does not specify a method computing time." Fed. R. Civ. P. 6(a). Thus, it applies to the removal statute.

with a motion to remand, it is the defendant's burden to establish the existence of federal jurisdiction over the controversy."), *cert. denied*, 526 U.S. 1034 (1999). To determine whether jurisdiction is present for removal, the court looks to "the claims in the state court petition as they existed at the time of removal." *Manguno*, 276 F.3d at 723. The removal statute must "be strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).

Federal courts have diversity jurisdiction where there is complete diversity between all plaintiffs and all defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The parties here agree that complete diversity of citizenship exists. The sole question is whether the amount in controversy meets the jurisdictional threshold.

In the Fifth Circuit, where a plaintiff sues in state court, the plaintiff's specific claim for damages "remains presumptively correct unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir.), *cert. denied*, 516 U.S. 865 (1995). "The defendant may make this showing in either of two ways: (1) by demonstrating that it is 'facially apparent' [from the complaint] that the claims are likely above $75,000, or (2) 'by setting forth the *facts* in controversy – preferably in the removal petition, but sometimes by affidavit – that support a finding of the requisite amount.' " *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995) (emphasis in original)).[3]

---

[3] Contrary to plaintiffs' argument, establishing bad faith is not part of the defendant's burden. *See, e.g., In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 387 (5th Cir. 2009).

4

In this case, the plaintiffs do not assert a specific monetary demand. Instead, they seek an indeterminate amount of damages and seek to prevent removal by asserting that they "individually do not seek more than $75,000.00 exclusive of interests and costs." *See* Complaint for Damages, Rec. Doc. 17825-1 at ¶ 8.[4] However, Gulf Stream has demonstrated from the face of the complaint that the amount in controversy, as alleged, more likely than not exceeds $75,000. Gulf Stream has done this by examining the nature of the claims asserted, by analyzing the types of compensatory damages alleged, and by citing numerous quantum awards for similar claims. Gulf Stream also points to the plaintiffs' claim for punitive damages.

      a. <u>Compensatory Damages</u>:

Where the plaintiff does not demand specific sums for the categories of damages sought, courts look to the nature of the claims and damages alleged to determine whether the jurisdictional amount is met. *See, e.g., In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 387-88 (5th Cir. 2009);

---

[4] The Fifth Circuit has on several occasions addressed allegations such as those here, where a plaintiff seeks no exact sum, but alleges that his damages do not exceed the federal jurisdictional threshold. In certain of these cases, the Circuit has regarded the allegation as a claim for specific amount, *i.e.*, the jurisdictional threshold. *See, e.g., De Aguilar*, 47 F.3d at 1408. In others, the Circuit has regarded such allegations as not demanding a specific amount. *See, e.g., Manguno*, 276 F.3d at 722, 723 (although complaint alleged that amount in controversy did not exceed $75,000, finding that "the petition does not include a specific monetary demand"); see *also In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 388 (5th Cir. 2009). However, in all such cases (at least since *De Aguilar*), the Circuit's substantive treatment of such allegations as been the same: the plaintiff's claim is regarded as only presumptively correct and does not control where the defendant shows that the amount in controversy likely exceeds the jurisdictional amount. *See, e.g., De Aguilar*, 47 F.3d at 1412; *Manguno*, 276 F.3d at 723; *Exxon*, 558 F.3d at 387-88 ("It is well established that a plaintiff may avoid federal-court jurisdiction by claiming a sum below the amount in controversy. Doing so, however, defeats federal subject-matter jurisdiction only when, 'from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed.'") (internal citation omitted). In such a case, "[r]emand is proper only if the plaintiff has shown it is legally certain that his recovery will not exceed the amount stated in the state complaint." *Exxon*, 558 F.3d at 387.

*Luckett*, 171 F.3d at 298. In this case, the nature of the plaintiffs' allegations is serious. They have alleged that they were wrongfully exposed to dangerously high concentrations of formaldehyde, a chemical that has been classified as a probable human carcinogen by the EPA. Complaint, Rec. Doc. 17825-1 at ¶¶ 17, 19. According to the complaint, the Agency for Toxic Substances and Disease Registry has reported that there is no recognized safe level of exposure to formaldehyde and that any level of exposure may pose a cancer risk, regardless of duration. *Id.* at ¶ 19. Plaintiffs allege that, as a result of testing FEMA trailers, the Centers for Disease Control and Prevention ("CDC") recommended, among other things, the establishment of a registry to conduct long-term health monitoring of children and others who resided in FEMA-provided housing units in the Gulf Coast Region. *Id.* at ¶¶ 45-46.

The types of damages alleged are also serious. They allege that the defendants' conduct caused damages to the plaintiffs' three minor children, including medical bills, "physical and emotional pain and suffering due [to] chronic sinusitis, bronchitis, upper respiratory tract infections, croup, pharyngitis, shortness of breath, wheezing, abdominal pain, vomiting nausea, rashes and headaches." *Id.* at ¶ 47. Further, the plaintiffs allege that their damages "include, but are not limited to, past *and future* physical injuries, past *and future* mental and physical pain and suffering, past *and future* physical impairments and disability, past *and future* reasonable and necessary medical expenses, past *and future* loss of earning capacity, past *and future* loss of enjoyment and quality of life and other damages and injuries, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven at the time of trial." *Id.* at ¶ 88 (emphasis added); *see also id.* at pp. 21-22.

The Court finds that the compensatory damage claims, if successful, will more likely than not exceed the jurisdictional amount for each plaintiff. *See, e.g.*, *Holmes v. Citifinancial Mortgage Co., Inc.*, 436 F. Supp. 2d 829, 832 (N.D. Miss. 2006) ("[I]t is undisputed that Mississippi juries routinely award damages for pain and suffering and/or mental or emotional damages in excess of $75,000."); *Colony Ins. Co. v. Ropers of Hattiesburg, LLC*, 2011 WL 1226095 *3 (S.D. Miss. 2011) (same); *Jenkins v. Kellogg Co.*, 2009 WL 2005162 *4 (N.D. Miss 2009) (same). This finding is bolstered by Gulf Stream's survey of jury awards in cases of formaldehyde exposure, all of which exceed the jurisdictional amount. *See* Rec. Doc. 18480 at pp. 13-15. The plaintiffs have offered no cases to the contrary.

The Court's finding is further reinforced by the fact that the plaintiffs seek damages for future injuries, future physical and mental pain and suffering, future impairments and disabilities, future lost earning capacity, and future medical expenses. It is clear from these allegations that the amount in controversy is not limited to damages sustained by the plaintiffs prior to filing suit, but rather includes damages that are continuing and/or are expected to manifest in the future.

    b. <u>Punitive Damages:</u>

In addition to the compensatory damage claims cited above, plaintiffs also allege that, "[p]ursuant to Miss. Code Ann. §11-1-65, inasmuch as the conduct of Gulf Stream and Bechtel and their servant/employees constitutes willful, wanton, egregious and reckless disregard for the rights and safety of the Plaintiffs, an award of punitive damages is appropriate and necessary under these facts." Complaint, Rec. Doc. 17825-1 at ¶ 89. The plaintiffs also list punitive damages in their prayer for relief. *Id.* at page 22. The Court finds that the punitive damages claim, if proven, will alone exceed the jurisdictional threshold, whether aggregated as a collective award or attributed *pro*

*rata* among the plaintiffs.

Under Mississippi law, punitive damages may be awarded if the plaintiff proves by clear and convincing evidence that the defendant acted with "gross negligence which evidences a willful, wanton or reckless disregard for the safety of others." Miss. Code Ann. § 11-1-65(a).[5]  Plaintiffs

---

[5] The statute provides in part:

(1) In any action in which punitive damages are sought:

(a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.  * * *

(e) In all cases involving an award of punitive damages, the fact finder, in determining the amount of punitive damages, shall consider, to the extent relevant, the following: the defendant's financial condition and net worth; the nature and reprehensibility of the defendant's wrongdoing, for example, the impact of the defendant's conduct on the plaintiff, or the relationship of the defendant to the plaintiff; the defendant's awareness of the amount of harm being caused and the defendant's motivation in causing such harm; the duration of the defendant's misconduct and whether the defendant attempted to conceal such misconduct; and any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages. The trier of fact shall be instructed that the primary purpose of punitive damages is to punish the wrongdoer and deter similar misconduct in the future by the defendant and others while the purpose of compensatory damages is to make the plaintiff whole.  * * *

(f)(ii) In determining whether the award is excessive, the court shall take into consideration the following factors:

> 1. Whether there is a reasonable relationship between the punitive damage award and the harm likely to result from the defendant's conduct as well as the harm that actually occurred;
>
> 2. The degree of reprehensibility of the defendant's conduct, the duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct;
>
> 3. The financial condition and net worth of the defendant; and
>
> 4. In mitigation, the imposition of criminal sanctions on the defendant for its conduct and the existence of other civil awards against the defendant for the same conduct.  * * *

(3)(a) In any civil action where an entitlement to punitive damages shall have been established under applicable laws, no award of punitive damages shall exceed the following:

(i) Twenty Million Dollars ($20,000,000.00) for a defendant with a net worth of more than One Billion Dollars ($1,000,000,000.00);

allege that "Gulf Stream expedited production of these housing units, and, on information and belief, resorted to using substandard material and/or employing irregular practices during the manufacturing process, all of which resulted in the housing units occupied by Plaintiffs containing higher than normal levels of formaldehyde." Rec. Doc. 17825-1 at ¶ 13. They allege that "Gulf Stream ignored, or concealed and/or condoned the concealment of, the fact that each and all of the housing units at issue contained dangerous levels of formaldehyde due to Defendant Gulf Stream's use of certain material in their construction, ... all in order to sell [its] products, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions." *Id.* at ¶ 16. Plaintiffs allege that Gulf Stream sold thousands of the housing units to FEMA. *Id.* at ¶ 12. As stated above, the plaintiffs allege that formaldehyde is a human carcinogen, with well established limits on workplace exposure and use in manufactured homes. *Id.* at ¶¶ 19-21.

---

(ii) Fifteen Million Dollars ($15,000,000.00) for a defendant with a net worth of more than Seven Hundred Fifty Million Dollars ($750,000,000.00) but not more than One Billion Dollars ($1,000,000,000.00);

(iii) Five Million Dollars ($5,000,000.00) for a defendant with a net worth of more than Five Hundred Million Dollars ($500,000,000.00) but not more than Seven Hundred Fifty Million Dollars ($750,000,000.00);

(iv) Three Million Seven Hundred Fifty Thousand Dollars ($3,750,000.00) for a defendant with a net worth of more than One Hundred Million Dollars ($100,000,000.00) but not more than Five Hundred Million Dollars ($500,000,000.00);

(v) Two Million Five Hundred Thousand Dollars ($2,500,000.00) for a defendant with a net worth of more than Fifty Million Dollars ($50,000,000.00) but not more than One Hundred Million Dollars ($100,000,000. 00); or

(vi) Two percent (2%) of the defendant's net worth for a defendant with a net worth of Fifty Million Dollars ($50,000,000.00) or less.

\* \* \*

Miss. Code Ann. § 11-1-65.

Such conduct, if proven, is well within the range of conduct for which Mississippi courts have upheld awards of punitive damages substantially exceeding $75,000. *See, e.g., Franklin Corp. v. Tedford*, 18 So. 3d 215, 240-42 (Miss. 2009) (upholding punitive damage award against furniture manufacturer who used glue containing a known neuro-toxin, but reducing award from $7.5 million to $5 million); *Cooper Tire & Rubber Co. v. Tuckier*, 826 So. 2d 679, 690-91 (Miss.) (upholding punitive damage award against tire manufacturer who was aware that some bad stock had been used in manufacturing process; finding 10:1 ratio of punitive to compensatory damages appropriate and noting that court has upheld punitive damage awards 150 times and 43 times actual damages), *cert. denied*, 537 U.S. 820 (2002). "[F]ederal courts in Mississippi have consistently held that a claim for an unspecified amount of punitive damages under Mississippi law is deemed to exceed the amount necessary for federal jurisdiction." *Braswell v. Unumprovident Corp.*, 2001 WL 1530342 *2 (N.D. Miss. 2001); *Colony Ins.*, 2011 WL 1226095 at *3 (same); *Jenkins*, 2009 WL 2005162 at *4 (same); *Haney v. Continental Cas. Co.*, 2008 WL 5111021 *1 (S.D. Miss. 2008) (same); *Ross v. First Family Fin'l Servs., Inc.*, 2002 WL 31059582 *8 (N.D. Miss. 2002) (same); *see also Arnold v. State Farm Fire & Cas. Co.*, 277 F.3d 772, 775 n. 3 (5th Cir. 2001) (noting that a ratio of 6:1 is "very conservative" and that "[b]ased on other Mississippi awards, it is highly unlikely that the plaintiffs will be content with seeking a 6:1 ratio").

Considering the size of punitive damage awards that are routinely upheld in Mississippi, together with the very serious allegations alleged in the complaint and the nature of the compensatory damages sought, the Court finds that if the plaintiffs are successful in their punitive

10

damage claim against Gulf Stream,[6] the award would almost certainly exceed $375,000, which if allocated *pro rata* among the plaintiffs, would result in each plaintiff's claim exceeding the jurisdictional amount without even adding the compensatory damages discussed above.

Moreover, because the punitive damage claim is brought under Mississippi law, the Court is required to treat the prospective punitive damage award as a collective award and, thus, attribute the entire award to each individual plaintiff for purposes of determining jurisdictional amount. *See Allen*, 63 F.3d at 1334-35; *Thomas v. NBC Universal, Inc.*, 694 F. Supp. 2d 564, 567 ("[I]n suits involving multiple plaintiffs seeking punitive damages under Mississippi law, the court is required to aggregate the plaintiffs' claims for punitive damages in determining the amount in controversy."); *Amos v. Citifinancial Corp.,* 243 F. Supp. 2d 587, 590 (N.D. Miss. 2003) (same); *Agnew v. Comm'l Credit Corp.*, 2002 WL 1628537 *2-3 (S.D. Miss. 2002) ("*Allen* remains the law for cases in which punitive damages are sought under Mississippi law."). Using this approach, it is evident that the amount in controversy well exceeds $75,000 based on punitive damages alone. When punitive damages and compensatory damages are combined, there can be no doubt that the jurisdictional amount is met.

Consequently, for all of these reasons, the Court finds that Gulf Stream has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000.

    c. Plaintiffs' "Legal Certainty" Burden:

"[O]nce a defendant is able to show that the amount in controversy exceeds the jurisdictional amount, removal is proper, provided plaintiff has not shown that it is legally certain that his recovery

---

[6] Although the plaintiffs allege that Bechtel's conduct also warrants punitive damages, their complaint contains no substantive allegations against Bechtel that would evidence willful, wanton, or reckless disregard for the safety of others, as required under Mississippi law.

will not exceed the amount stated in the state complaint." *De Aguilar*, 47 F.3d at 1412. A plaintiff can meet this burden by citing "to a state law that prohibits recovery of damages that exceed those requested in the *ad damnum* clause and that prohibits the initial *ad damnum* to be increased by amendment." *Id.* "Absent such a statute, '[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints.' " *Id.* (quoting *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992)). A mere allegation that damages sought do not exceed the jurisdictional amount will not suffice to prevent removal. Rather, "a plaintiff must affirmatively waive the right to *accept* a judgment in excess of the jurisdictional amount in order for his pre-removal state-court stipulations to bind him." *Exxon*, 558 F.3d at 389 (emphasis added). "The general principle is that plaintiffs will have to show that they are bound irrevocably by their state pleadings in these situations." *De Aguilar*, 47 F.3d at 1412 n.10.

Here, the plaintiffs can point to no state law that would prohibit recovery of damages in excess of $75,000. As federal courts in Mississippi have recognized, that State's "rules of civil procedure do not limit a plaintiff's recovery to the amount pled in the complaint." *Smith v. Wal-Mart Stores, Inc.*, 489 F. Supp. 2d 600, 602 (N.D. Miss. 2007) (citing Rule 54(c) of the Mississippi Rules of Civil Procedure and noting that a plaintiff may be awarded an amount in excess of that demanded in his pleadings and then amend his complaint after trial to allow for the full amount awarded) ; *Craft v. First Family Fin'l Servs.,* 2003 WL 1801038 *2 & n.4 (S.D. Miss. 2003) ("Since plaintiff's pleadings could be amended at the close of trial, and even after a jury verdict, to conform to the evidence presented and/or to the jury's verdict, then it would seem that Mississippi's procedural rules do not foreclose the kind of jurisdictional manipulation that these principles are designed to guard against.").

Nor does the allegation purporting to limit damages to $75,000 per plaintiff qualify as a binding stipulation sufficient to preclude recovery in excess of the jurisdictional amount. Putting aside the question of whether a non-verified complaint could otherwise qualify as a binding stipulation,[7] the allegation here states only that the plaintiffs "individually do not seek more than $75,000.00, exclusive of interests and costs." Rec. Doc. 17825-1 at ¶ 8. They do "not deny that they would *accept* more than" $75,000. *Exxon*, 558 F.3d at 389; *Craft*, 2003 WL 1801038 at *2. They also do not stipulate that they will not amend their complaint to conform to any eventual jury verdict in excess of $75,000. *Craft*, 2003 WL 1801038 at *2. Thus, the plaintiffs have failed to establish to a legal certainty that they will not recover more than $75,000.

## C. CONCLUSION:

For the reasons stated above, the Court finds that removal was proper and that jurisdiction is established under 28 U.S.C. § 1332(a). Accordingly,

**IT IS ORDERED** that the Motion to Remand (Rec. Doc. 17825), filed by the plaintiffs in the referenced case, is hereby **DENIED**.

New Orleans, Louisiana, this 11th day of April, 2012.

_____
**KURT D. ENGELHARDT**
**United States District Court**

---

[7] Certain federal courts in Mississippi have required that "such a binding stipulation or affidavit must be made by the plaintiff himself as opposed to his counsel since the plaintiff could hire different counsel and later seek more than $75,000." *Holmes*, 436 F. Supp. 2d at 832.