UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                                                   MDL NO. 07-1873
    FORMALDEHYDE PRODUCTS
    LIABILITY LITIGATION
                                                                                 SECTION "N"  (5)

THIS DOCUMENT RELATES TO
Member Case No. 12-548

**ORDER AND REASONS**

Before the Court is a Motion to Remand (Rec. Doc. 25037), filed by the plaintiff in the referenced case. Opposition memoranda have been filed by defendants Gulf Stream Coach, Inc. ("Gulf Stream") and Shaw Environmental, Inc. ("Shaw") (Rec. Docs. 25153, 25156). Plaintiff has filed a reply memorandum (Rec. Doc. 25313). Gulf Stream has filed a sur-reply (Rec. Doc. 24333).

**A. BACKGROUND:**

Plaintiff Ann Terrell filed a complaint on February 1, 2012 in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, against defendants Gulf Stream and Shaw. *See* Original Petition (Rec. Doc. 24692-2). She alleges that she has been diagnosed and treated for acute myelogenous (myeloid) leukemia, a cancer that has been associated with exposure to formaldehyde. *Id.* at ¶¶ XXIII, XXIV. According to the complaint, the plaintiff was exposed to dangerous levels of formaldehyde while living in an emergency housing unit provided by the Federal Emergency Management Agency ("FEMA") following Hurricanes Katrina and Rita. *Id.* at ¶¶ IV, VI, IX. She alleges that the FEMA unit was manufactured by Gulf Stream and installed and maintained by Shaw. *Id.* at ¶ IV.

Shaw filed a timely notice of removal on February 29, 2012. *See* Notice of Removal, *Ann M. Terrell v. Gulf Stream Coach Inc., et al*, Civil Action No. 12-CV-548, Rec. Doc. No. 1. Shaw based its removal on the Federal Officer Removal Statute, 28 U.S.C. § 1442(a), on grounds that its

acts in installing and maintaining emergency housing units were done pursuant to a contract with FEMA and "under color" of FEMA's authority. Gulf Stream joined in the notice of removal on the same day that it was filed. (Rec. Doc. 24692). Gulf Stream also asserted independent grounds for removal based on diversity jurisdiction under 28 U.S.C. § 1332, arguing that the plaintiff has no reasonable basis to recover damages against Shaw, the only non-diverse defendant. *Id.*

The case was consolidated with other related cases, as it arises from operative facts that are the subject of multidistrict litigation ("MDL") ongoing in this Court before the undersigned, entitled *In re: FEMA Trailer Formaldehyde Products Liability Litigation*, MDL No. 07-1873. The plaintiffs in the MDL are individuals who resided in emergency housing units provided by FEMA after Hurricanes Katrina and Rita. They claim injuries resulting from alleged exposure to formaldehyde in these units. They have sued more than 100 defendants, including manufacturing defendants such as Gulf Stream, contractor defendants such as Shaw, as well as the United States government.

On March 30, 2012, plaintiff filed simultaneously the instant Motion to Remand (Rec. Doc. 24037) and a First Supplemental and Amended Petition (Rec. Doc. 25038). The Amended Petition seeks to remove claims against Shaw based on negligent maintenance, which has been held by this Court to be a proper basis for federal officer removal by contractors such as Shaw. *See* Rec. Doc. 24606). In support of the Motion to Remand, plaintiff argues that the amended petition retains against Shaw only a claim for negligent jacking of the FEMA unit, a claim which plaintiff argues does not provide Shaw with a colorable federal defense, as required for removal pursuant to 28 U.S.C. § 1442(a).

Shaw and Gulf Stream argue that plaintiff's motion should be denied because (1) post-removal amendments can have no effect on the propriety of removal under 28 U.S.C. § 1442(a); and

(2) even if the plaintiff had not asserted negligent maintenance claims against Shaw, removal was nevertheless proper under 28 U.S.C. § 1442(a) based upon plaintiff's negligent installation claim. In its sur-reply, Gulf Stream further states that, based upon a recent settlement agreement between Shaw and the MDL Plaintiffs' Steering Committee (the "PSC"), Gulf Stream expects that the plaintiff in this case will ultimately dismiss her claims against Shaw, leaving complete diversity between the parties and creating jurisdiction under 28 U.S.C. § 1332.

B. **LAW AND ANALYSIS**:

"[W]hen faced with a motion to remand, it is the defendant's burden to establish the existence of federal jurisdiction over the controversy." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998), *cert. denied*, 526 U.S. 1034 (1999).

1. **Federal Officer Removal:**

The federal officer removal statute provides, in relevant part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office....

28 U.S.C. § 1442(a)(1). As the Supreme Court has explained, "the purpose of this provision is to protect the lawful activities of the federal government from undue state interference." *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*, 809 F. Supp. 2d 524, (2011) (Vance, J.) (citing *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)). "Because of its broad language and unique purpose, the federal officer removal statute has been interpreted to operate somewhat differently than the general removal provision." *Id.* "Unlike the general removal statute, which

3

must be 'strictly construed in favor of remand,' the federal officer removal provision's broad language must be liberally interpreted." *Id.* (internal citation omitted) (citing *Watson v. Philip Morris Cos. Inc.*, 551 U.S.142, 147 (2007) ("this Court has made clear that the statute [1442(a)] must be 'liberally construed' ")). "Also unlike the general removal provision, there is no requirement in the federal officer removal provision that the district court have original jurisdiction over the plaintiff's claim." *Id.*; *see Willingham*, 395 U.S. at 406 ("the right of removal under § 1442(a)(1) is made absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court").

Where the defendant invoking section 1442(a) is a government contractor, the Fifth Circuit has adopted a three-part test for determining whether such contractor qualifies as a "person acting under [a federal] officer" who is "sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a). The contractor must prove that: (1) it is a "person" within the meaning of the statute; (2) it "acted pursuant to a federal officer's directions and that a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims;" and (3) it has asserted a "colorable federal defense." *Winters*, 149 F.3d at 398-400.

    a. <u>First Factor: Contractor is a Person</u>:

There is no argument with respect to the first factor. Shaw is a corporate entity, which qualifies as a "person" within the meaning of the statute. *See Winters*, 149 F.3d at 398.

    b. <u>Second Factor: Causal Nexus and Action Pursuant to Federal Officer's Direction</u>:

"The second factor necessary for § 1442 removal is a finding that the defendants acted pursuant to a federal officer's directions and that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims." *Winters*, 149 F.3d at 398. As the

Fifth Circuit and Supreme Court have admonished, this " 'color of federal office' requirement is neither 'limited' nor 'narrow,' but should be afforded a broad reading so as not to frustrate the statute's underlying rationale." *Id.* "On the other hand, the [Supreme] Court has clarified that the right to removal is not unbounded, and only arises when 'a federal interest in the matter' exists." *Id.* (quoting *Willingham*, 395 U.S. at 406).

This factor, although contested, is likewise easily satisfied. This Court has already held that federal officer removal by FEMA contractors in this litigation was proper based on claims of improper maintenance. *See* Rec. Doc. 24606. Shaw's contract with FEMA and the negligent maintenance claims in plaintiff's petition (at the time of removal) are identical in all material respects to the contracts and claims at issue in this previous ruling. Thus, based on the facts and pleadings as they existed at the time of removal, Shaw's removal was proper under 28 U.S.C. § 1442(a). Subsequent to removal, plaintiff attempted to remove all bases for section 1442(a) removal. Toward this end, she attempted to erase all references to her previously asserted claims against Shaw based on negligent maintenance, products liability, and failure to warn. Of course, she could not dismiss Shaw altogether because that would create diversity jurisdiction under 28 U.S.C. § 1332. Thus, she maintained her negligent installation claim, attempting to strip away all traces of federal control therein by attempting (unsuccessfully) to erase all references to "blocking." The Court will address in a later section the efficacy of these post-removal attempts to render removal improper. However, even if the Court uses the amended petition to evaluate the propriety of removal, it nonetheless finds that removal was proper.

It is clear from plaintiff's petition, even as amended, that Shaw (allegedly) "installed and maintained" the emergency housing unit that FEMA provided to the plaintiff following hurricanes

5

Katrina and Rita.[1]  *See* Petition (Rec. Doc. 24692-2) at ¶IV; Amended Petition (Rec. Doc. 25038) (does not alter ¶IV).    She alleges that "[t]hrough its actions and omissions, Shaw created...a situation wherein Plaintiff was exposed to elevated levels of formaldehyde and, as a result, suffered adverse health effects." *Id.* at ¶ XXI.  Although plaintiff is careful to avoid mentioning Shaw's contract with FEMA directly, the Notice of Removal makes clear that Shaw's actions as alleged in the petition were taken pursuant to a contract with FEMA, in which FEMA hired Shaw to install and maintain emergency housing units in the wake of hurricanes Katrina and Rita.

Shaw has attached the contract as an exhibit to its Notice of Removal.  *See Ann M. Terrell v. Gulf Stream Coach Inc., et al*, Civil Action No. 12-CV-548, Rec. Doc. Nos. 1-3 and 1-4.  Exhibit 7 to this Contract is entitled "Travel Trailer Installation." *Id.*, Rec. Doc. 1-3.  Section 2.1.2 therein addresses the procedure required for "Blocking and Leveling":

> The Contractor shall clean away all grass roots, loose dirt, rocks or debris where at the base of the piers.  **Travel trailers shall be set-up on concrete piers and after the weigh [sic] of the travel trailer is transferred to the piers**, if the unit is not leveled properly the contractor will reinstall the unit at no additional cost to the government.  The travel trailer set-up will also include a minimum of six piers (three on each side) evenly spaced.  The end piers should not be directly on the end of the unit, but approximately six inches off the edge of the unit.  The Contractor shall provide a base for each pier.  The base will be 3/4" x 24" x 24" exterior grade plywood.  The piers will have at a minimum two solid cap blocks on the base and two sold cap blocks at the top of the piers.
>
> The space between the top of the pier's solid cap blocks and the bottom of the travel trailer I-beam frame shall not exceed seven inches (7").  Up to four inches (4") of this space may be filled with a solid concrete block laid parallel to the travel trailer steel I-beam frame.  Up to three inches (3") of this space may be filled with blocking timber and wedges laid perpendicular to the travel trailer steel I-beam.  No more than one inch (1") of this area shall

---

[1] Thus, despite plaintiff's post-removal efforts to remove them, some vestiges of the negligent maintenance claim remains.

>be shimmed with wedges.
>
>**After the weight of the travel trailer is transferred to the concrete piers**, the piers must be vertically aligned and tightly shimmed with wooden wedges. If the piers are not vertical at the time of final inspection, they shall be removed and reinstalled by the Contractor at no additional cost. The Contractor will be responsible for all necessary re-leveling and re-blocking of the travel trailer for a period of 90 days after final inspection.

*Id.* at § 2.1.2, pp.108-09 of 206 (emphasis added).

As this Court has previously found, the FEMA contract does not specify by what particular method the contractor must lift the trailer off its wheel base onto the six concrete piers. *See* Rec. Doc. 18426 ("While the Government gave the contractor defendants detailed specifications on the EHU "blocking" procedure, one critically important aspect of that procedure that was left to their discretion was the means and method for "jacking up" the EHUs (i.e., for lifting the EHU from the ground up onto concrete blocks)."). However, it does specifically require that the contractor must transfer the weight of the trailer onto six concrete piers.

In her amended petition, the plaintiff has attempted to circumvent this aspect of the installation. *See* Rec. Doc. 25038. In that document, she has replaced *almost* every instance of the word "blocking" with the word "jacking." *Id.* However, she did not remove every reference to the "blocking" procedure. In paragraph XI, she alleges: "Once the temporary housing unit occupied by the Plaintiff was transported and delivered to its particular location, Shaw had the responsibility of installing the temporary housing unit. Shaw installed the temporary housing unit by 'blocking' the unit. This meant raising the Plaintiff's unit several feet into the air and off of its wheel base, and placing it on concrete blocks." *See* Petition (Rec. Doc. 24692-2) at ¶XI; Amended Petition (Rec. Doc. 25038) (does not alter ¶XI). Moreover, it appears that the very basis of her negligent installation claim is that the weight of the unit was lifted off its wheel base. She does not state what

7

method Shaw used to "jack" the unit; nor does she suggest how this method fell short of the standard of reasonableness. Indeed, the heart of her negligent installation claim appears to be not that Shaw used the wrong method for lifting, but that the unit "was not designed to be lifted off the wheel base" at all. *Id.* at ¶XII. She alleges: "By blocking [changed to 'jacking'] the temporary housing unit of plaintiff, Shaw created stress and flexing on the frame of the unit *as it was not designed to be lifted off the wheel base*. In fact, the manufacturer of the temporary housing unit warned in the owner's manual provided with the unit, that units should not be jacked so that the vehicle's weight is no longer supported by the wheels." *Id.* at ¶XII (emphasis added).

As discussed above, this aspect of installation was specifically mandated by FEMA. Although FEMA left to the contractor's discretion the means and method for "jacking up" the trailer, it specifically required that the weight of the trailer be transferred to six concrete piers. As to this aspect of the installation procedure, FEMA left Shaw no discretion. Thus, it is evident that Shaw's alleged actions in installing the unit were done, at least in part, pursuant to FEMA's specific directions. Further, given that the core of plaintiff's negligent installation claim, as alleged, is that the unit should not have been lifted off its wheels at all, the Court finds that a direct causal nexus exists between the plaintiff's claims of increased formaldehyde exposure and FEMA's specific directions to Shaw.

          c. <u>Third Factor: Contractor Has Asserted a "Colorable Federal Defense"</u>:

"The third and final factor necessary for removal pursuant to § 1442 is the assertion of a 'colorable federal defense.' " *Winters*, 149 F.3d at 400 (quoting *Willingham*, 395 U.S. at 406-07). To satisfy this requirement, a defendant need not establish that he will ultimately prevail in his defense. He "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407.

To impose such a requirement would produce "the anomalous result of allowing removal only when the officers had a clearly sustainable defense. The suit would be removed only to be dismissed." *Id.* The Supreme Court has determined that "Congress certainly meant more than this when it chose the words 'under color of * * * office.' " *Id.* "In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Id.*

In this case, Shaw has raised the government contractor defense. The test for immunity under this defense is met where: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Winters*, 149 F.3d at 400 (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)).

In arguing this factor, the plaintiff relies heavily on the fact that this Court has previously denied a motion for summary judgment by Shaw seeking to dismiss plaintiffs' claims on the basis of the government contractor defense. *See* Rec. Doc. 11910. The plaintiff places too much weight on this denial of summary judgment. In so ruling, the Court did not find that Shaw was *not* entitled to the federal contractor defense. To the contrary, the Court specifically stated: "The Court disagrees with Plaintiff that the issue/claim of the government contractor defense is precluded based on its previous rulings in this MDL.... Shaw is in no way precluded from raising this defense in this motion or hereinafter. This Court's instant ruling simply instructs that, at this time, Shaw is not entitled to summary judgment on this issue." Rec. Doc. 11910.

The bar for removal is not so high. Shaw need not convince the Court that it will ultimately prevail in its defense in order to have it tried in federal court. It need not establish that no genuine issue of fact exists or that it is entitled to judgment as a matter of law. Rather, it need only establish

9

that its claim to the federal contractor defense is "colorable." The Court finds that Shaw has done so. Indeed, in the same member case in which the Court denied Shaw's motion for summary judgment, the Court later denied the plaintiff's Rule 50 motion for judgment as a matter of law seeking to strike Shaw's government contractor defense and the corresponding jury instruction. *See* Rec. Doc. 13116. The Court found "that sufficient evidence has been presented...to allow this defense to be presented to the jury." *Id.*

Consequently, the third and final factor required for section 1442 removal has been met. Accordingly, the Court finds that removal was proper.

**2. The Efficacy of Plaintiff's Post-Removal Efforts to Thwart Removal:**

Shaw and Gulf Stream argue that plaintiff's post-removal amendment of her petition must be disregarded because removal jurisdiction is judged at the time of removal, and post-removal events cannot deprive the Court of jurisdiction. Plaintiff, on the other hand, argues that her amended petition destroys subject matter jurisdiction and thus that remand is mandated under section 1447(c). *See* Rec. Doc. 25313. Neither is entirely correct. While the defendants are right that many post-removal events do not deprive the Court of jurisdiction, it is also true that certain post-removal events do destroy jurisdiction. For example, a post-removal attempt to reduce damages below the jurisdictional threshold will not destroy diversity jurisdiction. *See, e.g.*, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) ("And though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."). However, the joinder of a non-diverse defendant can destroy jurisdiction. *See Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir. 1987) ("Although it is true that most subsequent events will not defeat jurisdiction, addition of

10

a nondiverse defendant will."), *cert. denied*, 493 U.S. 851 (1989).

In the context of section 1442(a) removal, the Fifth Circuit has held that dismissal of the federal defendant (the defendant entitled to section 1442 removal) does "not deprive the district court of power to entertain the remaining state law controversy." *IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc.*, 676 F.2d 152, 158 (5th Cir. 1982). This is because section 1442(a) permits removal of the entire case, not just the claims that serve as a basis for removal, and "creates a species of ancillary jurisdiction over the nonfederal elements of the case." *Id.* In creating such ancillary jurisdiction, section 1442(a) "confers discretion on the district court to decline to exercise continued jurisdiction" over the non-federal claims once the removing defendant is no longer in the case. *Id.* at 160. Thus, it is in the district court's discretion whether to remand the remaining claims in such cases.

Here, unlike in *IMFC*, the removing defendant has not been dismissed from the case. As discussed above, the plaintiff has maintained at least one of her claims against Shaw, and the Court has found that this remaining claim is a proper basis for removal under section 1442(a). *See supra*. However, *IMFC* is nonetheless instructive, for it makes clear that remand would not be required even if the remaining claim against Shaw had not supported removal. Because removal was proper based on the original petition, the Court retains continued jurisdiction over the remainder of the case even if the claims that justified removal are later dismissed. As for discretionary remand, such a remedy would be improvident in this case. If the Court were to sever the claims against the non-federal defendant (Gulf Stream), such an action would create complete diversity and give rise to an independent basis for jurisdiction over the non-federal claim. Given that Gulf Stream has asserted diversity as a separate basis for removal and it appears that the amount in controversy exceeds the

jurisdictional threshold, this would be an exercise in futility.

Thus, for all of these reasons, the Court finds that removal was proper and that jurisdiction is established.

## C. SEVERANCE FOR TRIAL:

Given the nature of the serious health problems alleged by the plaintiff, the Court finds that her case should be severed from the MDL for purposes of trial so that it may be placed promptly on the Court's trial docket. The Court will forthwith enter a separate order severing this case for purposes of trial and directing the Case Manager to conduct a telephone conference with counsel for the purpose of setting this case for trial not later than April 2013.

## D. CONCLUSION:

For all of the reasons stated above, accordingly,

**IT IS ORDERED** that the Motion to Remand (Rec. Doc. 25037), filed by the plaintiff in the referenced case, is hereby **DENIED**.

New Orleans, Louisiana, this 26th day of April, 2012.

**KURT D. ENGELHARDT**
**United States District Court**