1

```
 1            UNITED STATES DISTRICT COURT

 2            EASTERN DISTRICT OF LOUISIANA

 3
   *****************************************************
 4
   IN RE:  FEMA TRAILER
 5 FORMALDEHYDE PRODUCTS
   LIABILITY LITIGATION
 6                      DOCKET MDL NO. 1873 "N"
                        NEW ORLEANS, LOUISIANA
 7                      FRIDAY, MAY 13, 2011

 8      8:30 A.M.

 9
   *****************************************************
10

11         COMMITTEES' STATUS CONFERENCE

12            TRANSCRIPT OF PROCEEDINGS

13    HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT

14            UNITED STATES DISTRICT JUDGE

15

16

17

18 SUSAN A. ZIELIE, RPR, FCRR
   OFFICIAL COURT REPORTER
19 UNITED STATES DIST COURT
   EASTERN DIST OF LOUISIANA
20 500 POYDRAS STREET
   ROOM HB-406
21 NEW ORLEANS, LA 70130
   504.589.7781
22 susan_zielie@laed.uscourts.gov

23

24 PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.
   TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
25
```

EXHIBIT

C

```
 1  | APPEARANCES:
    |
 2  |
    | FOR THE PLAINTIFFS:      WATTS GUERRA CRAFT
 3  |                          BY:   MIKAL C. WATTS, ESQ.
    |                          FOUR DOMINION DRIVE
 4  |                          BUILDING THREE, SUITE 100
    |                          SAN ANTONIO, TX 78257
 5  |
    |
 6  | FOR THE PLAINTIFFS'      GAINSBURGH BENJAMIN DAVID
    | STEERING COMMITTEE:         MEUNIER AND WARSHAUER, LLC
 7  |                          BY: GERALD E. MEUNIER, ESQ.
    |                             DUSTIN WOODS, ESQ.
 8  |                          2800 ENERGY CENTRE
    |                          1100 POYDRAS STREET
 9  |                          SUITE 2800
    |                          NEW ORLEANS LA   70163
10  |
    |
11  | FOR THE DEFENDANTS:      DUPLASS ZWAIN BOURGEOIS
    |                             MORTON PFISTER WEINSTOCK
12  |                          BY:   ANDREW WEINSTOCK, ESQ.
    |                          THREE LAKEWAY CENTER
13  |                          3838 N. CAUSEWAY BOULEVARD
    |                          SUITE 2900
14  |                          METAIRIE LA   70002
    |
15  |                          BAKER DONELSON BEARMAN
    |                          CALDWELL & BERKOWITZ
16  |                          BY: MICHAEL D. KURTZ,  ESQ.
    |                          201 ST. CHARLES AVENUE
17  |                          SUITE 3600
    |                          NEW ORLEANS LA   70170
18  |
    |
19  | FOR THE UNITED STATES    UNITED STATES DEPARTMENT
    | AMERICA:                    OF JUSTICE
20  |                          CIVIL DIVISION, TORTS
    |                          BY:   HENRY T. MILLER, ESQ.
21  |                          P.O. BOX 340
    |                          BEN FRANKLIN STATION
22  |                          WASHINGTON DC   20004
    |
23  | ALSO PRESENT:            ERNEST P. GIEGER, ESQ.
    |                          ANTHONY G. BUZBEE, ESQ.
24  |                          CHARLES PENOT, JR., ESQ.
    |
25  |
```

```
 1          NEW ORLEANS, LOUISIANA; FRIDAY, MAY 13, 2011
 2                         8:30 A.M.
 3              THE COURT:  If you haven't signed in yet --
 4   if you haven't signed in, make sure you sign in before
 5   you leave the room here today.
 6              And also, for the sake of or record here,
 7   unless you're -- well, identify yourself the first
 8   couple of times you speak here so that we can make
 9   certain that we know who is talking for purposes the
10   record.
11              I did get the joint reports, and went
12   through it.  Justin and Gerry do, either one of you all
13   want to highlight anything on here?  And then I'll ask
14   Andy and Joe and then of course David, Karen and then
15   Henry.  Anything that we need to talk about from your
16   point of view on the report?  It seems pretty
17   straightforward to me, and it follows the form that
18   we've been following.
19              MR. WOODS:  It's all pretty straightforward.
20   I think the most important information for the larger
21   group, from our protective, is under Section IV, the
22   manufacturing house litigation track and where we are on
23   the proposed settlement and the notice and the deadlines
24   and the fairness hearing that is scheduled for August
25   22nd.  Everyone's received notice, we're in that
```

4

```
 1    process.  But that would be important we generate --
 2    that that fairness hearing is coming up and that there
 3    are certain deadlines associated with that.
 4               THE COURT:  Okay.
 5               MR. MEUNIER:  And then, Your Honor, the next
 6    section should probably be mentioned in open court, the
 7    fact that motions to dismiss are being filed for
 8    unmatched plaintiffs.  I think one of the things we
 9    discussed in chambers was the fact that, when a
10    defendant seeks to bring a motion to dismiss for a
11    matched plaintiff, there would first be a contact made
12    with the plaintiff's counsel.  So that, in some cases,
13    those may be unopposed.  It may be a plaintiff who has
14    dropped out or lost touch with, and only notice for a
15    hearing if there's some reason the plaintiff can make an
16    argument to you they should not be dismissed.
17               So the plaintiff lawyers need to be tuned in
18    to how we're going to approach these dismissals that are
19    now going to be filed and be prepared it tell the
20    defendants whether its unopposed or whether they have a
21    reason to come to court on.
22               THE COURT:  Okay.  Let me go back to the
23    pending motions here on Section III.  We have denied the
24    first one listed.
25               By way of an update here, the 14480 was
```

1    denied in document No. 20.784.

2            On the next page, page 3, document 19570 was

3    granted in Docket No. 20914.

4            And the one right below it, 19571, was

5    granted in 20916.  So those two can come off.

6            And remind me at the end, for those of you

7    -- I think Dennis, you're involved in the motions to

8    enjoin, which would be 17661 -- the ones involving the

9    Indiana cases, at the conclusion of our big status

10   conference, I'd like to talk to you all, including those

11   who aren't here but hopefully will be here for the big

12   conference, I'd like to talk to you all briefly about

13   the status of those.  I think there's two motions.  One

14   is the 17661, which is the third motion listed on this

15   draft, and it also appears, the issue has also been

16   raised in 20861m which appears on page 4.  Those are the

17   Elkhart, Indiana motions.

18           Because we're after the May 1st date that I

19   had dealt with the state court judge on, and I'll tell

20   you what's going on in my end.  I'm hoping to hear more

21   about what's going on on your end.

22           MR. MEUNIER:  Judge, in Section X on

23   Miscellaneous, subparagraphs B and C, I'm reporting to

24   you that there have been settlement discussions with Dan

25   Balhoff with Sunnybrook and Sun Valley.  The insurers in

```
 1    both of those cases are the same as involved in the
 2    state court, so it does link to the efforts we're making
 3    here.
 4              THE COURT:  I was hoping that would be the
 5    case, but we can just talk briefly after the big
 6    meeting.
 7              Anything else, Jerry and Justin, that you
 8    all would like to highlight off of the report?
 9              MR. MEUNIER:  On bellwether trials, Judge,
10    Section VI, I haven't had a chance to talk to Jimmy yet
11    about what if anything needs to be said in open court
12    about KZ RV.  There was a submitted motion to dismiss.
13    I think Charley Penot was going to be preparing a
14    revision of that to preserve plaintiff's claim as to
15    Fluor.  But he'd indicated that perhaps, since it was
16    previously announced that there was a trial, we ought to
17    say something in the larger session about the fact that
18    that trial has been bumped.
19              THE COURT:  Right.
20              MR. MEUNIER:  Pursuant to settlement.
21              MR. WEINSTOCK:  Can I suggest to Jerry and
22    Jimmy come up to the bench and talk to you about it
23    briefly?
24              THE COURT:  That's fine.  My purpose in
25    raising it is that we announced at the last conference
```

1   the scheduled bellwethers including one that was to

2   start on Monday.  So whatever you want to tell the group

3   as to the circumstances of that case and the status of

4   it is fine.  I don't want to cover it myself, but maybe

5   Jerry when you --

6              MR. MEUNIER:  There's an order in the record

7   now saying it's dismissed.  You know, there's a public

8   pleading on it.  But what if anything in addition we

9   want to say or need to say, I'll check with Jimmy and

10  come up with something.

11             THE COURT:  Right.  If you want to just

12  limit it to what's set forth in the order, you know, it

13  begs a lot of questions that I know you all either

14  aren't prepared to answer today or don't wish to answer

15  today.  And all of that's fine with me, so long as the

16  group out there who is not familiar and maybe who's been

17  depending on the national flow of information maybe

18  hasn't checked the record or maybe hasn't received that

19  order or looked at that order, I would like some note to

20  be made that that is no longer listed as a bellwether

21  and is not going to begin on Monday morning.

22             MR. MEUNIER:  Right.

23             THE COURT:  All right.  Anything else that

24  you all would highlight here in this committee, other

25  than -- the committee meeting as opposed to the big one?

```
 1              MR. WOODS:   There is, just in Section IX,
 2   the last sentence, I would like to edit that and delete
 3   it.  It's on page 9 right before Section X, the
 4   claimants have until Friday, April 8th to file
 5   objections.  Since that has passed, I'd like to take
 6   that out.
 7              THE COURT:  All right.  Go ahead.
 8              MR. MEUNIER:  If you're finished with that,
 9   just getting back to Section X.B and C, I think the most
10   appropriate thing to say is that the discussions have
11   taken place and will be continuing.
12              THE COURT:  Right.
13              MR. MEUNIER:  We remain hopeful, but we're
14   not there yet.
15              THE COURT:  I'm fine with that.  Something
16   that's very nonspecific at this point.
17              MR. MEUNIER:  Section II of the report is
18   the PSF issue, which we've just had a lot of discussion
19   about.  Perhaps the larger group needs to be advised
20   that what we're going to presumably say in open court
21   about next Friday's deadline.
22              THE COURT:  Let me come back to that in a
23   minute.  Because I want to, right now, let's just stick
24   to what the joint report says.
25              Andy, is there anything that you're going
```

```
1    highlight off of here that you'd like to raise here that
2    goes above and beyond what you've just intended to
3    report over there?
4              MR. WEINSTOCK:  Not highlight but correct.
5    If you go to Section VI.A(1), the Coachman trial was
6    moved to June 13th from June 20th based on Judge Roby's
7    schedule.
8              THE COURT:  Right.
9              MR. MEUNIER:  I'm sorry, what date?
10             MR. WEINSTOCK:  June 13th.
11             THE COURT:  Okay.
12             MR. WEINSTOCK:  That's it.
13             THE COURT:  All right.  David, anything that
14   you think we need to cover off of this here?
15             MR. KURTZ:  No.
16             THE COURT:  Then let's go back to the issue
17   that Jerry was about to talk about, and it's one that we
18   spent some time, a good degree of time this morning on,
19   about next Friday and the idea of fact sheet
20   information.
21             MR. MEUNIER:  My understanding, Judge -- and
22   the Court will correct me, I'm sure Andy will if I'm
23   wrong on this -- is that by next Friday the defendant
24   manufacturers and contractors will identify for the
25   Court which fields of the plaintiff profile form or fact
```

```
 1    sheet are needed for settlement development purposes
 2    without prejudice to their right to pursue the remainder
 3    of the information through the deficiency process at a
 4    later time.  It's understood that, in so limiting the
 5    focus to those items now, they do so without prejudice.
 6    And, also, that they are entitled to submit one
 7    deficiency letter at this time that would cover all
 8    deficiencies, albeit only receiving now the designated
 9    areas.
10               And then, by next Friday, we will advise the
11    Court, given the position taken, of what time the
12    plaintiffs need collectively to respond to the
13    designated deficiencies.
14               MR. WEINSTOCK:  Close but not entirely
15    accurate.
16               My understanding, that we would come
17    together before next Friday and see what we can agree on
18    and submit to the Court what we could agree on,
19    plaintiffs and defendants.  And, if there was anything
20    else we wanted that we could not agree on, we would let
21    the Court know that as well.
22               THE COURT:  I'm counting on it being the
23    former rather than the latter.
24               MR. MEUNIER:  I'm assuming that we will be
25    in discussion.  But, if we can't agree, then I think on
```

1   Friday nonetheless there's going to be a report to the

2   Court on what the defendants think they need.  You will

3   know how much of that is agreeable or not with us.

4            THE COURT:  Let me back up, and I hope I

5   don't muddle the issue further, In an effort to try to

6   clarify it.  The idea is that -- since all of you are

7   were not in the room, I'll try to recap why we're doing

8   this and the purpose of this.

9            The idea is to, on the one hand, afford the

10  defendants the opportunity to send out a single

11  deficiency notice, and not later deficiency notices, but

12  a single deficiency notice with regard to the plaintiff

13  fact sheets.  And be entitled to have all fields on that

14  deficiency notice that can be satisfied ultimately

15  satisfied.

16           In the meantime, it's to facilitate -- in

17  order to facilitate a settlement discussion, hopefully

18  on an in-globo basis on the basis of manufactures and

19  hopefully third-party contractors, a flow of information

20  back from the plaintiffs that relate and can be useful

21  for purposes of settlement discussions and getting that

22  information back in short order.  As opposed to having

23  plaintiff's counsel have to take a deficiency notice,

24  resolve the deficiency notice in its entirety, including

25  information that would be unique to that particular

1    plaintiff.  And, in the meantime, not having the ability
2    to discuss settlement because the deficiency notice
3    would still be outstanding and the workload in
4    satisfying the deficiency notice would drag down the
5    process of or the hope of having any type of settlement
6    discussion in the MDL.
7              So the idea is, by next Friday, to have an
8    agreement between manufacturing defendants and
9    third-party defendants, that certain of the fields on
10   the plaintiff fact sheet, certain of the tidbits of
11   information are more useful for a settlement discussion
12   than others.  Other pieces of information are useful if
13   you were to litigate that plaintiff's claim, you would
14   want it know and would be entitled to know all of that
15   information on the fact sheet, and perhaps even more
16   information through other discovery.  So what we're
17   trying to do is to concentrate in short order on the
18   fields of information, hopefully fewer rather than more,
19   that your clients, carriers, whoever is involved on the
20   defendant's side, need to know in order to be able to
21   respond to a settlement offer from the plaintiffs.
22             So you're going to send a single deficiency
23   notice, plaintiffs counsel, with a pre-agreed upon set
24   of fields that would be useful for settlement will
25   respond with those fields.  Without prejudice to your

 1   right to have the entirety of the fact sheet deficiency
 2   notice responded to, plaintiffs would respond with a
 3   smaller set of information that we will know by Friday
 4   what that is.  And then they will also tell us how long,
 5   hopefully a short period of time they need, to get those
 6   critical pieces of information back to defense counsel.

 7                  And I've told you the reason for it, and
 8   I've told you how I think it's going to work.  Now,
 9   we'll try to memorialize that I'm hoping by Friday maybe
10   if someone can put pen to paper on this procedure.  It
11   doesn't have to be an order that we enter into the
12   record, but it has to be something in light of the
13   confusion that we've had last time.  If you want to put
14   it as an order in the record, I can do that.  I don't
15   want to put an order on top of an order on top of an
16   order and have everybody say:  Well, now we're really
17   confused.

18                  But the idea is to get -- the two things
19   that defendants have said, I've heard repeatedly as to
20   why they think the case can't be settled in the MDL is:
21   A, we don't know who all the plaintiffs are because
22   claims are still coming in.  And God knows we've tried
23   to resolve that any number of times.  And, B, we don't
24   have enough information to evaluate these claims because
25   we've got fact sheets that sometimes are meaningless and

 1    other times have such scant information as to be

 2    meaningless.  So we're trying to satisfy those two

 3    problems, along with the plaintiff's problem that they

 4    can't work up every single plaintiff's claim to the nth

 5    degree as though it was ready for trial in order to

 6    satisfy or to support a settlement demand.

 7              At the MDL level, we're either going to

 8    settle the case on a more global term, and I'm speaking

 9    by manufacturer or by third-party contractor, as opposed

10    to claim by claim.  If we're going to settle them claim

11    by claim, that will probably be done after the cases are

12    remanded.

13              And I've said before and I'll say again, I

14    said as early as this morning, if that's the way we're

15    going to go, then I can start remanding case.  I'm

16    hoping not to do that, and I hope that the prevailing

17    sentiment here is to not do that.  Rather, to continue

18    to try to work on the cases here and get them resolved

19    to our client's satisfaction.  Rather than have them as

20    individual pieces of litigation spread out over three or

21    four states, in various state and federal courts.

22              Does anybody have any questions, or maybe I

23    should start with Gerry and Andy and David and ask if I

24    have said something wrong or if I've left something out?

25              MR. MEUNIER:  Judge, I think that's

1    consistent with my understanding.

2            So, just on the timetable, if Andy can

3    report by the beginning of next week on what the fields

4    are needed for settlement, then hopefully by the middle

5    of the week we can forward a report to him on what time

6    we need.  I'll need to poll the group -- as you know,

7    there are different positions in the group -- all with a

8    view toward Friday.  If you don't want an order, at

9    least report to you on the fields and the time needed

10   and to the extent there might still be a difference in

11   our positions.

12           THE COURT:  Right.  That's fine.  And, if

13   necessary, we can have a telephone conference on

14   Thursday afternoon or some time Friday to discuss

15   whatever discrepancies there are.

16           Let me caution the defendants, if you say,

17   look, my client needs -- we did the fact sheet and I

18   need 80 percent of the questions answered, its probably

19   not going to work.  All right?  You need to be

20   conservative in your need for information.  They know

21   they're going to ultimately have to give you, if the

22   case doesn't settle, they're going to have to give you a

23   completed fact sheet.  To the extent that it can

24   possibly be known, the information's going to have to be

25   on a completed fact sheet.  So you're not going to be

 1    viewed as foregoing your right of any information by
 2    limiting the number of things you need to know in short
 3    order.
 4              I think the imperative on the defense side
 5    is:  But I want know that and I need to know that.  I
 6    understand that.  But what we're talking about here is
 7    what you need to know in order to participate in a
 8    global settlement discussion.  If it's five things, tell
 9    them the five.  Andy's going to meet with you all, come
10    up with the five.  If it's a dozen things, tell them
11    what dozen.  It may be different.  Gulf Stream's people
12    and the people that Andy's dealing which may say:  Well,
13    we only need these nine items.  You may have someone
14    else that says:  I need 18 items.
15              Let's see if you can come to an
16    understanding of what are the most critical pieces of
17    information that you need to participate in a settlement
18    discuss in this MDL without any in way foregoing your
19    rights to all of the rest of the information at a later
20    date.  So please be conservative on that.
21              If you undercut the effort by telling us
22    that you need 80 percent or 90 percent of the fact sheet
23    filled out, then plaintiffs -- and, on the plaintiff's
24    side, it's in their interest, when they follow-up with
25    individual clients, to get the entirety of the

1    information in your deficiency notice.  If they can do

2    that, I'm sure they'll be happy to give it to you.

3    Because they may have to do it anyway.  So there's an

4    incentive on both sides to try to make this thing work

5    in the short term; to forego the efforts on the long

6    term.

7              If it doesn't work, well then, guess what,

8    they're going to have to go back and get all this

9    information again.  You're going to have to go back, and

10   you would have already sent your deficiency notice, but

11   you're going to get the balance of the information, to

12   the extent they can provide it.  Unless you are a

13   Section Eastern District case, you're going to be

14   dealing in other court, or at least in front of another

15   judge.  I'm hoping to be able to save you all and the

16   other judges the effort of having to go through and pick

17   up every strand of information on each plaintiff's fact

18   sheet.  That's the purpose of the exercise.

19             So please don't undercut the purpose of the

20   exercise by saying:  Oh, I still need all but these

21   three.  I need every piece of information except these

22   three questions, because we're going to be back at

23   ground zero again.

24             MR. MEUNIER:  There's an ancillary issue

25   that deals with individual plaintiff discovery.  Tony

```
 1   has shown these requests that he's gotten from one of
 2   the defendants from his clients.
 3             MR. BUZBEE:  We're getting these notice of
 4   record depositions, subpoena duces tecums, to all of the
 5   medical providers by a bankrupt defendant.  It seems, to
 6   me, it sounds like that it's outrageous in my mind.
 7   That, if you have a bankrupt defendant, who's lawyer is
 8   for thousands of clients, multiple medical providers, is
 9   sending these subpoena duces tecums.  And we spent all
10   this time and effort, even if it's 16 fields or two or
11   whatever it is, and they're going to have no insurance
12   left because of this kind of conduct, to me, is
13   outrageous.  I wanted to bring it to your attention.
14   Hopefully, you would admonish and put an end to that
15   kind of silliness.
16             THE COURT:  Haven't named any names.  Does
17   anybody want to raise hands?
18             MR. BUZBEE:  This is a bankrupt defendant.
19   Lobman Carnahan.  I don't know who that is, but that's
20   who is sending them out.
21             THE COURT:  I mean, I don't have anybody
22   from Lobman here, I don't think.
23             MR. BUZBEE:  Can't we all agree, that's
24   outrageous?
25             THE COURT:  You've got a lot of enthusiasm
```

```
 1   from here on that point.  But, quite frankly, if that's
 2   an eroding policy --
 3               MR. BUZBEE:  I know the settlements that
 4   we've had, by the time you got to the point that you
 5   could settle, no money was left.  That doesn't seem to
 6   be in the best interest of the clients that are in this
 7   MDL.  And I know you're operating in the best interest
 8   of the defendants.
 9               MR. MEUNIER:  I can't speak for Gulf Stream,
10   but I know you're worried about these clients and the
11   best interests.
12               MR. BUZBEE:  I don't know who these folks
13   are, but I'm getting hundreds of these a day.
14               MR. WEINSTOCK:  But you're getting paper.
15               THE COURT:  But they're billing to send
16   these out, that's his point.
17               MR. GEIGER:  That was a wasting policy.
18               MR. MEUNIER:  I wanted to try to relate it
19   to the concept we're talking about.  Which is, when
20   we're talking about the PSF process, you have the
21   completing concerns.  On the one end, you have the
22   defendants saying:  We need all this information.  On
23   the plaintiff's position, we're saying:  The focus ought
24   to be on common issues and settlement.  Not, we can get
25   to that later.  This relates to that, in my view,
```

 1    because it's an effort of one of the defendant insurance
 2    companies.  It happens to be more egregious because it's
 3    for a bankrupt manufacturer, but it could be for a
 4    non-bankrupt manufacturer, to start propounding --
 5                THE COURT:  Crum & Forster is Pilgrim?
 6                MR. BUZBEE:  We didn't bring a direct action
 7    against the insurer.
 8                MR. PENOT:  Well, there have been a number.
 9    I've seen a number of the direct actions.
10                THE COURT:  Wait.  First of all, nobody's
11    doing what I suggested, such as stating your name.  So
12    we're going to have attorney 1 and 2 and attorney 15 and
13    attorney 16.  Okay?
14                The other thing is, even if you were stating
15    your name at the same time, you're all doing it at the
16    same time.  So she's not going to be --
17                MR. WEINSTOCK:  Weinstock says they must be
18    a correct defendant or they'd have no caption to file a
19    subpoena under.  They couldn't just intervene, they
20    haven't intervened to file subpoenas.
21                MR. BUZBEE:  On behalf my clients, I have
22    not filed against insurers, and these are my clients.
23                And you say:  Well, all you are getting is
24    paper.  No, I'm not.  I'm getting these electronically
25    and these are being printed out.  So, in that respect,

```
 1    it's costing these clients money, if we want to be
 2    technical about that.
 3                MR. WEINSTOCK:  Weinstock says don't print
 4    them out.
 5                THE COURT:  Why don't we do this.  Why don't
 6    we -- Andy, can you find out --
 7                MR. WEINSTOCK:  I know who the lawyer is.  I
 8    will talk to him.
 9                THE COURT:  Can you find out what it is what
10    the circumstance is with regard to this policy, first of
11    all.  And let me know, as well as liaison counsel, on
12    all sides, let us know?
13                MR. WEINSTOCK:  Yes, sir.
14                THE COURT:  Because, I agree, that this is
15    the type of particularized specific plaintiff discovery
16    that, unless there is a bellwether involving one of
17    these people, it certainly goes beyond what has been the
18    coordinated discovery plan up to this point.
19                MR. BECNEL:  Judge, Becnel says it's called
20    billable hours.  And I want that on the record.
21                MR. MEUNIER:  We don't need to necessarily,
22    in the big session, address that.  I just brought it up
23    because it seems relevant to what we were talking in the
24    BSF.  Maybe Andy can get the message to counsel that
25    that's not what we're up to right now.
```

```
 1              THE COURT:  I agree.  I agree.  And, if we
 2    need to have a status conference with this particular
 3    defendant to discuss this and the dynamics of the MDL
 4    and what impact this has, I'll do that.  If you can find
 5    out what the status of the policy is and report back,
 6    and also any content of your conversation that you can
 7    report back regarding their intent to pursue these.
 8    Because it's, at this point in time, as I say said a few
 9    minutes ago, the focus is on how the MDL can be resolved
10    at this point.
11              I think I told you all last time, I'm not
12    going to set up a whole another board of bellwether
13    trials.  We can bellwether trial cases until the cows
14    come home, but we get to the point of diminishing
15    returns.  And, unless there is an a manufacturer that
16    has a particular legitimate issue that they believe
17    their case is unique, or a carrier issue, that's fair
18    game, I can't see just sitting here and setting up
19    bellwether after bellwether after bellwether.
20              The purpose of the MDL is to establish
21    enough common rulings and enough bellwethers to have
22    some empirical data to discuss a resolution of the
23    claims.  In lieu of that, to start remanding cases.
24              Now, if they want that information after
25    cases are remanded, then that's fine.  I think it's
```

 1   appropriate.  It certainly is a regular run-of-the-mill
 2   discovery.  But at this point in time, given where we
 3   are in this MDL, it would seem to me -- and I haven't
 4   heard from the attorney who sent those out -- but it
 5   would seem to me to be either unhelpful to the effort
 6   right now or contrary to the effort right now.

 7            So see if you can find out from the attorney
 8   what the circumstances are.

 9            MR. GIEGER:  Judge, Geiger.  I've discussed
10   this with Andy, and I've read the whole committee, and
11   you discussed relative to this issue.  But I do have to
12   raise a concern that I have about, Mikal's original plan
13   was to set up some dates where we were going to stop a
14   lot of this action and move toward accumulating
15   information for a spreadsheet that we all know is geared
16   toward seeing whether or not we can resolve these
17   claims.  One of my concerns is, I probably have the
18   second largest number of trailers, and my deficiencies
19   letters are all out.  They have been since the first
20   week of April.

21            My second set of deficiency letters, which
22   are letters that go out to people who have no fact
23   sheets -- I've got about 67,000 trailers -- I'm sorry,
24   named manufacturers.  I've got around 2,500 to 3,000 of
25   those plaintiffs that have no fact sheets at all.

```
 1              My concern is that that group of people, if
 2    we start -- because there's been discussion about moving
 3    the time period along to give answers -- is that if I'm
 4    going to wait a longer period of time -- my time under
 5    the orders are almost up, and it would be time for me to
 6    come to you and say, hey, there are 3,000 plaintiff's
 7    claims that should be dismissed.  If I'm going to get an
 8    extension for these people on their efforts to get me
 9    fact sheets, and I get back the kind of answers I'm now
10    getting back on my first -- and I sent about a thousand
11    of them out and I'm getting answers back on fact sheets
12    that are saying attempting to contact client -- I'm not
13    saying that's by the people in this room, because
14    generally it's not.  But I will tell you, Judge, there
15    are lot of people outside of the people in this room;
16    right?  And I now there's some difficulty.  And I just
17    want to raise that for the Court.  If Mikal's deadlines
18    are going to stay in place, and it relates to me, if
19    you've got start extending it out another -- I've got a
20    motion that's pending before the Court that's asking for
21    an additional 45 or 120 days for a ruling from the Court
22    for those extensions, that's a problem.  If we're going
23    to start talking about getting a matrix together and
24    we're going to get the fact sheets from half of the
25    plaintiffs against my clients that aren't in yet, I see
```

1   a problem if we start extending these deadlines very

2   far.

3           MR. WATTS:  Mikal Watts.  We agree with

4   Ernie, and nobody on this side wants to extend the June

5   30 deadline.

6           I think the point that was being made this

7   morning is that, if we're going to be forced to comply

8   with deficiency notices about fourth grade teachers as

9   opposed to 16 key data points, we can't get it done in

10  term, or certain of us can't get it done in time, and

11  that's why we cam forward.  But nobody wants to extend

12  the June 30 deadline.  And nobody, depending upon how

13  many more needs Andy's group comes up with, wants to

14  extend the 30 day timeline more than necessary.  We want

15  to get it done so we can have our spreadsheet and get to

16  the settlement discussions.

17          MR. GEIGER:  I hear it, but there are claims

18  with no deficiencies.  And the kinds of responses I'm

19  getting back -- I just have an inkling feeling that, of

20  the 3,000 that are not going to have the 16 fields or

21  the 20, and I'm going to be coming back and writing more

22  deficiency letters saying --

23          MR. WATTS:  I think, they way it's designed,

24  once we get to June 30 and then the deadline to fix them

25  -- right now, it's July 30, maybe it goes to July,

 1  August 30 -- once that's done, everybody's under order
 2  to deliver to me the best you got. And then I ship them
 3  off to India and that is in frozen time. And then you
 4  guys can start dismissing right and left people who have
 5  failed to comply with the order.

 6          MR. WEINSTOCK: This may sound strong; but,
 7  for those people who have never filled out a fact sheet,
 8  the way the order's written, it's technically
 9  deficiencies. But it's its way beyond that. We're
10  three years into the game and if they've never produced
11  a fact sheet they should not get additional time.

12          THE COURT: We have said at every
13  conference -- and this is sort of like the matching
14  business which hasn't come up today. We've gotten into
15  this far with one of these things without using the word
16  matching, but it's sort of like matching. It's
17  fundamental that the fact sheet, which was worked on by
18  counsel, it was an effort that was a joint effort to try
19  to come up with a fact sheet that everyone thought was
20  useful. And I have said in the big conference, and I
21  know you all have said in your groups, that the fact
22  sheet is really the threshold piece of paper that every
23  plaintiff, when you sign up a plaintiff, you need a fact
24  sheet. And we've put a device, a time delay, that the
25  fact sheet needed to be forthcoming within so many days

```
 1   after the action was filed, plaintiff had officially
 2   filed their action.
 3              And, I agree with you, we're now, in my
 4   mind, we're well past the stage of getting a fact sheet.
 5   And, quite honestly, we should be past this stage of
 6   deficiencies.  But we're not.  We're still working on
 7   the deficiencies along the lines that we talked about
 8   this morning that I've mentioned here today.
 9              But, if you haven't done a fact sheet at
10   all, if no one has even seen a fact sheet, I'm ready to
11   dismiss those.
12              MR. WATTS:  I think the process that we set
13   up, to get back to Ernie, if you have somebody that
14   hasn't delivered a fact sheet, they have been sending
15   deficiency notices with that.
16              But, with all due respect and in fairness to
17   Ernie, if the deadline for that deficiency notice comes
18   and goes and you still don't have a fact sheet, I don't
19   think anybody on this side is saying we get another shot
20   at it.  It at that point in time -- in other words, it's
21   not good enough that they just start filing motions to
22   dismiss for failure to do a fact sheet if they haven't
23   sent a deficiency notice.  Because that's what tell us
24   that's you're deficient, fix it.
25              THE COURT:  We're going to stick with the
```

 1   framework we've got now.

 2              MR. GEIGER:  I understand, Your Honor, too,

 3   that of those almost 3,000 people have given me no fact

 4   sheet, start giving them to the middle of June --

 5   right -- which is when their time period is up, all of

 6   the sudden I'm now writing another deficiency letter to

 7   them saying of the 16 or 20 categories here, we're

 8   deficient.  And I'm going to be bumping --

 9              THE COURT:  Haven't you already sent a

10   deficiency notice saying:  I don't have a fact sheet at

11   all so therefore it's deficient because to my knowledge

12   it doesn't exist?

13              MR. GEIGER:  Right.  But what happens, when

14   I start getting 16 of them, that two or three are filled

15   in.

16              THE COURT:  If they're not compliant, then

17   they're not complaint.

18              MR. WATTS:  I think everybody, once we get

19   this list of 16, hopefully is not going to be more than

20   20, there's an expectation that you're going to get that

21   filled out for everybody.

22              I told the judge that one of those 16 fields

23   is the plaintiff's trailer's VIN number.  I'm not going

24   to be able to fill that out, people don't remember it.

25   I don't know the VIN number on my car right now, much

 1   less something I owned five years ago.

 2             If it's something like your name or other

 3   information that ought to be known that's not being

 4   filled out, that's where you go for a motion to dismiss

 5   for failing to comply with the orders.

 6             But I think the key is, and what we ought to

 7   make everybody clear in the room, is we have a process

 8   where everybody sent out deficiencies notices.  It's

 9   terrible, for everybody; okay?  And, in order to keep

10   our timeframe that the judge wants from the standpoint

11   of settlement discussions, the defendants are limited to

12   the 16 or the two or three or four that they've got to

13   have, they've got to pick their poison by next Friday.

14   You know, you've got to fill out those 16 to 19 fields.

15   If you don't, you're in trouble.

16             As to the others, you don't have it fill

17   them out right now, but you're going to have to

18   eventually if there's not a settlement.  It's without

19   prejudice.

20             But the point is, when you get a deficiency

21   notice and your 30 days has lapsed, or you don't get an

22   extension -- Andy's been nice to give us an extension

23   beyond the original deal or whatever.  But, once that

24   time periods ends, they need to understand that all bets

25   are off, once those things go to India.

1            And I don't think it's incumbent on you to

2    give them a second deficiency notice.  Ah-ha, a few

3    months ago, I told you to fill out 1 through 17, and now

4    I've got to send out a second deficiency notice because

5    you didn't fill out 8, 19.  I don't think you have to do

6    that.

7            MR. MEUNIER:  I think there's one deficiency

8    letter.  I don't know were Ernie would refer to the

9    first letter as a deficiency letter.  If you don't have

10   a fact sheet at all, it's not a deficiency.

11           MR. WEINSTOCK:  Yes, it is.

12           THE COURT:  Yes it is.

13           MR. GEIGER:  Trust me, that's why I did it.

14           THE COURT:  It's one letter.  If they get a

15   fact sheet, and it has deficiency in it, the deficiency

16   letters says:  Look, we've got your fact sheet, here's

17   what's wrong with it.  If they don't get a fact sheet at

18   all, then the deficiency is there's no fact sheet.  He

19   doesn't have to go back and do a two-step deal.  Because

20   then the incentive side is I should lay in the gap

21   because then I get two shots to fix it.

22           MR. WATTS:  There's no need for a second

23   deficiency letter, as the judge has pointed out, and we

24   agree.

25           THE COURT:  Send one letter that says:

1    Look, the deficiency is I don't have a fact sheet; I

2    want it and I want it filled out in a full and

3    non-deficient way.

4              If you don't get that, then at that point

5    the order applies and can be dismissed.

6              But if you don't submit a fact sheet at all,

7    you don't get the benefit of getting two letters, as

8    opposed to the poor guy who tried to send one and said:

9    Well now I've got to go back and talk to my client

10   again.  That person gets the benefit of fixing only the

11   items that are missing.  Other person's got to do the

12   fact sheet that they should have done way back when.

13             MR. MEUNIER:  We need to certainly make this

14   clear in open court.  Because, if there are that many

15   people who have no fact sheet whatsoever, they need to

16   understand how this current system is going to work for

17   them.

18             THE COURT:  And they should have -- we said

19   many times you need to do the fact sheet within so many

20   days after the action was filed.  That's in one or more

21   of the pretrial orders.

22             MR. WATTS:  60 days out.

23             THE COURT:  Amanda can give me the number of

24   the orders.  They are in the record.  The fact sheets

25   should have been done within the time delay specified in

 1  the orders.

 2          Now, if they're deficient or not should be

 3  the second question. Not the first. Because they said,

 4  well, we didn't get them. If you didn't get a fact

 5  sheet to begin with, then you didn't comply with the

 6  pretrial order that said you had to have a fact sheet to

 7  begin with.

 8          MR. WOODS: Justin Woods. If someone has

 9  not sent in a fact sheet at all, and Ernie sends them a

10  deficiency letter saying I don't have a fact sheet from

11  you. But, when we get to this point of identifying

12  these 20 data fields, is it that there will be in

13  compliance if they respond to those 20 at that point and

14  they will not be subject to dismissal?

15          THE COURT: That's the agreement we have

16  based upon the idea, what I just stated here on the

17  record, that we would like to see if we can resolve

18  certain claims against certain of the manufactures

19  in-globo or otherwise here. So the response that's

20  expected from the plaintiffs at this time will be the

21  fields that are designated. All right?

22          But the deficiency that is sent will be the

23  one and only deficiency that that person will get. So

24  it will be incumbent upon them to satisfy the fields

25  that we agree upon in the short term. So they will be

1    required to do at least that.

2              Later on, if we can't resolve it and the

3    cases are sent back to where they came from, or if it's

4    one of my cases that would have been one of my cases

5    anyway, you can move to dismiss for failing to satisfy.

6              But, right now, we're concentrating on the

7    fields that are agreed upon only because we're not

8    having bellwethers beyond those that are scheduled -- at

9    least I'm not planning it at this juncture -- and we

10   want to see if we can resolve as many claims as possible

11   in the MDL.

12             So, yeah, the expected response now is to

13   the designated fields.  All right?  That right now is

14   sufficient to cure the deficiency for now.

15             MR. WATTS:  The other thing, for my brothern

16   on the plaintiff's side, we sent out 31,000 letters last

17   week saying this is coming down, if we send you a

18   deficiency notice you must help, you must get it fixed

19   with us or you are subject to dismissal.  And I think

20   probably everybody ought to ship out a letter like to

21   that their client to cover their backside.

22             Because, I'll be honest with you, I've got

23   over a thousand people that I don't have facts sheets

24   for, and I told you that from the start.  And I know

25   they're going, and this process is getting it down

```
 1   quickly.  But the people that don't get there are going
 2   to get dismissed.  So everybody needs to cover their
 3   back.
 4            MR. MILLER:  If a plaintiff gives a fact
 5   sheet and they only give us eight of 16 or whatever the
 6   fields are, are they then subject to dismissal with
 7   prejudice?
 8            MR. WOODS:  They may not have a VIN number,
 9   like Mikal Watts.
10            MR. MILLER:  I understand they may not have
11   the information or the ability; but, if they only
12   complete a subset of the selected key factors, what is
13   the effect?
14            MR. WATTS:  I think it depends on which
15   ones, to be honest with you, of the 16.  Because some of
16   them are things you ought to know.  You ought to know
17   your name, this kind of stuff.  But others, VIN numbers,
18   FEMA ID numbers, we're going to have a case-by-case
19   debate about whether we can possibly know that.
20            THE COURT:  I think I question is answerable
21   once we decide whether there's sufficient information to
22   have a meaningful settlement discussion between
23   manufacturer and defendant and the plaintiffs.
24            If it's the type of information that the
25   plaintiff can be included and counted numerically as a
```

```
 1    participant in a settlement, then maybe it's no harm/no
 2    foul.  But if it's the type of information where a
 3    defendant says:  Well, we can't include this person
 4    because we don't know this critical piece of
 5    information, I may agree with you, then I may agree with
 6    the defendant, in which case then the defendant later
 7    can go ahead and file a motion to dismiss.  There was no
 8    global settlement, that person didn't write enough
 9    information, they didn't satisfy the deficiency notice,
10    you know, they're out.
11              MR. MEUNIER:  Your Honor, I do think at some
12    point after these discussions that place next week,
13    we're probably going to need an order that identifies
14    the vehicles, for the reason you just mentioned.  I
15    think, going forward, plaintiff is going to have to
16    understand the sacred fields you want and ones they just
17    can fudge on.  So whatever these discussions are,
18    hopefully we'll agree on a language in some sort of
19    order.
20              THE COURT:  I suggest that you all talk
21    early next week, come to some agreement on it.  If you
22    can't come to some agreement on it, we'll work with you
23    on Wednesday, Thursday, Friday on those that you can't
24    agree on.
25              MR. MEUNIER:  I just don't want a plaintiff
```

1    letter saying:  Oh, I didn't know that one was the

2    important one and I didn't get that from my client.

3            THE COURT:  Whatever ones we agree on, they

4    are all going to be important.  Some of them, like you

5    say -- if it's a VIN number, then it may be undisputed

6    that the person lived in a, for instance, a Gulf Stream

7    unit, in which case Gulf Stream may not contest:  Well,

8    you didn't give me a VIN number so I can't have that

9    person numerically counted in any type of settlement

10   discussion.  If it's undisputed that that person lived

11   in a Gulf Stream unit, we just don't have the VIN

12   number, then it's neither here nor there.

13           But if there are other certain pieces of

14   critical of information that would be in that field, and

15   the defendant deems that insufficient to count them as

16   part of the settlement, then they won't be included.

17           It's going take some work on, first of all,

18   on the defendant's side to come up with a meaningful and

19   scaled-down set of critical factors that need to be

20   known for an in-globo evaluation, and then trading that

21   information with plaintiff's counsel such that it can be

22   gathered in an efficient fashion.

23           MR. MEUNIER:  All right.  I think we have

24   it.

25           THE COURT:  Anything else?

```
 1               MR. MEUNIER:  Thank you, Judge.
 2               THE COURT:  Is there anything else we need
 3   to talk about here in this group before we go into the
 4   bigger conference?
 5               MR. WEINSTOCK:  The next conference.
 6               MR. WOODS:  Next conference date.
 7               THE COURT:  That may be a bit of a problem,
 8   because I'm going to be in trial for most of the summer.
 9               MR. WOODS:  According to the news, that's an
10   iffy question.
11               MR. WEINSTOCK:  That was Woods, not
12   Weinstock.
13               THE COURT:  There will be some days off that
14   it won't be a five-day work week every week.
15               What about July 8th or 15th?  I hate to wait
16   that long, but we'll be in communication with you all
17   during that time in smaller groups.  I'm talking about
18   the big conferences.  Either the 8th or the 15th of
19   July, does that create problem for anybody?  Anybody
20   have a preference out of those two?
21               If people travel during the week of the 4th,
22   why don't we make it July 15th.  We'll follow with the
23   same schedule.  And we'll be in touch with you all.
24               MR. WATTS:  Judge, my birthday's on the
25   17th, so we'll have a three day FEMA party.
```

```
 1              THE COURT:  Friday, the 15th, will be the
 2   next conference, with committees at 8:30 and conference
 3   with the bigger group at 10.
 4              Let's go ahead into the other room, and
 5   we'll present the joint report.
 6              MR. MEUNIER:  Actually, one thing is a
 7   plaintiff issue, but thank you for reminding me of it.
 8              We drafted an order, it's not finalized
 9   yet -- but just to give the Court a heads-up -- which is
10   going to ask for an amendment to the submission of
11   common expense to allow there to be a catch-up date, as
12   we did once before.  We'll find out that Bajoie Bennett
13   had fallen behind and we need a catch-up date.
14              Bajoie Bennett has asked that we change what
15   I've already drafted to provide for quarterly instead of
16   I guess monthly submissions to them.  They're finding it
17   burdensome to have to process.  So I'll just give a
18   heads-up, we'll be submitting an order.  I don't think
19   it's a defendant issue.
20              THE COURT:  It doesn't sound like it
21   involves the defendants.
22              But the key to saving us a lot of trouble
23   later is to do it frequently now.  So, if he wants to do
24   it quarterly, that's fine.  But it really depends on you
25   all getting the information to them timely.
```

```
 1                    (9:51 a.m., Proceedings Concluded.)

 2

 3

 4

 5                         CERTIFICATE

 6

 7
               I, Susan A. Zielie, Official Court Reporter, do
 8   hereby certify that the foregoing transcript is correct.

 9

10
                    /S/ SUSAN A. ZIELIE, RPR, FCRR
11                  _____
                    Susan A. Zielie, RPR, FCRR
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```