

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2009 AUG 10 PM 2:57
LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | MDL No. 1873 |
| FRANK R. AIRHART, ET AL. See Attachment "A" | JUDGE **09-5477** |
| VS. | SECTION: **SECT. N MAG 5** |
| THE UNITED STATES OF AMERICA AND FEMA | MAGISTRATE: |

*************************************************************************

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, come the Plaintiffs (attached hereto as Exhibit A), all persons of the full age of majority and residents of the State of Louisiana, for the purpose of submitting this Complaint, and respectfully say as follows:

**I.    PARTIES**

The Plaintiffs wish to name Defendant as follows:

1

$350
Fee____
Process_____
X Dktd_____
___ CtRmDep_____
___ Doc. No._____

1.

MADE DEFENDANT HEREIN:

Made defendant herein is the United States of America, through the Federal Emergency Management Agency (FEMA), referred to, interchangeably as the "Federal Government," "Government" and "FEMA".

2.

MADE PLAINTIFFS HEREIN:

A list of Plaintiffs is attached hereto as Exhibit A. All Plaintiffs have exhausted their administrative remedies against FEMA and their claims are now ripe to be filed against the Federal Government in this Court.

3.

## II. JURISDICTION

This Court has jurisdiction because there is diversity of citizenship between the Plaintiffs and the Defendants due to the fact that the United States is a Defendant to this action and that the other Defendants were contractors of the Federal Government. Alternatively, this Court has federal question jurisdiction because the project at issue was a federal project administered through FEMA.

4.

## III. BACKGROUND

The homes of hundreds of thousands of citizens of the United States who resided along the Gulf Coast were rendered uninhabitable and such citizens were left homeless, following

Hurricane Katrina's landfall on August 29, 2005. The Plaintiffs identified in Exhibit A were among them.

5.

FEMA was established in 1979 to provide a single point of accountability for the Federal Government's disaster response. Since its inception, FEMA has been charged with providing temporary housing to victims of numerous major disasters other hurricanes, earthquakes, wildfires, and civil unrest. FEMA's disaster response obligations are delineated in the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §4121, et seq. (the "Stafford Act").

6.

The Stafford Act outlines two types of temporary housing assistance to be made available to eligible, displaced applicants: financial assistance and direct services. This aid is sometimes referred to as Section 408 assistance. This provision was enacted as Public Law 93-288, Title IV, § 408 (1988). Under the Stafford Act, at 42 U.S.C.A. § 5174, the Executive, through FEMA, may provide "direct assistance" in the form of temporary housing units, acquired by purchase or lease, directly to individuals or households who, because of a lack of available housing resources, would be unable to make use of the alternative "financial assistance" provided under subparagraph (c)(1)(A).

7.

Pursuant to the provisions of the Stafford Act, FEMA provided temporary housing units to the Plaintiffs identified in Exhibit A.

3

8.

In October, 2005, the Federal Government, through the Occupational Health and Safety Administration ("OSHA"), conducted formaldehyde air sampling at the request of two FEMA contractors at a staging area in Mississippi. Upon information and belief, the Federal Government, as of October 2005, had sufficient evidence to put it on notice that there were hazardous concentrations of formaldehyde in the travel trailers that were being converted into temporary housing units at the instruction of FEMA.

9.

In March 2006, FEMA instructed its personnel to allow a period of off-gassing to occur prior to entering the temporary housing units. FEMA then initiated testing (along with OSHA) of the formaldehyde levels in the air of the temporary housing units over concerns for FEMA employee exposure to formaldehyde.

10.

In addition to FEMA's concerns for its employees, it was also in March 2006 that FEMA began receiving health complaints from occupants of the temporary housing units relating to formaldehyde exposure. Despite this knowledge that the temporary housing units contained hazardous levels of formaldehyde and FEMA's own safety instructions to its employees, no move was made to begin transitioning the occupants of the temporary housing units out of the converted travel trailers and into safe and sanitary alternative habitation.

11.

In April 2006, the Sierra Club published its report relating to the testing of the temporary housing units and the detection of hazardous levels of formaldehyde in the housing units pursuant to accepted ranges within the Environmental Protection Agency ("EPA") and the

Agency for Toxic Substances and Disease Registry ("ATSDR"), both agencies within the Federal Government. The levels detected in the temporary housing units also exceeded OSHA standards. Following the publication of this testing, FEMA knowingly and intentionally failed to generally transition the occupants of the temporary housing units into safe and sanitary alternative housing.

12.

FEMA knowingly and intentionally sought to avoid litigation liability relating to formaldehyde levels in the temporary housing units by refusing to take affirmative action to prevent continued formaldehyde exposure to the occupants of the temporary housing units, rather, as is illustrated by a number of emails from, amongst and between its officers and employees, FEMA avoided and suppressed the issue. This failure to adequately warn of, address and respond to the hazardous conditions in the temporary housing units caused unnecessary and or continued exposure to the Plaintiffs identified in Exhibit A, because it caused and contributed to and exacerbated the adverse health effects caused by the formaldehyde exposure experience by these Plaintiffs during their occupancy of the temporary housing units.

13.

FEMA knowingly and intentionally sold travel trailers without testing them to occupants until and through the end of July, 2007, approximately seventeen months after the latest possible date that FEMA was aware that at least some of the travel trailers contained hazardous levels of formaldehyde.

14.

A study undertaken by the Centers for Disease Control ("CDC") examined 519 temporary housing units and measured the formaldehyde levels in each. The results of this test

showed that the average levels of formaldehyde in the FEMA temporary housing units was 77 parts per billion (ppb). The level of 77 ppb is medically significant as it exceeds levels generally accepted as capable of causing adverse health effects. This level was an average, and many of the temporary housing units showed levels of formaldehyde significantly higher than that. Further, the CDC indicated that the testing had been done in the cold, dry winter months and that the levels and concentrations found in the temporary housing units would be higher in the warmer, more humid summer months in the States, where the units were occupied by Plaintiffs.

15.

Despite the complaints, studies, congressional inquiries, warnings, amongst others, FEMA failed to take proactive steps to remove occupants from the hazardous formaldehyde exposure until the spring of 2008. In fact, there are still thousands of people residing in FEMA temporary housing units at the time of filing this Amended Complaint.

16.

Rather than focus on the health and safety of the occupants of the temporary housing units once it was determined that the units contained hazardous levels of formaldehyde, FEMA took steps only to protect itself from liability exposure in anticipation of litigation.

## CAUSE OF ACTION:
## NEGLIGENCE OF THE UNITED STATES GOVERNMENT

17.

Named Plaintiffs incorporate the above allegations as fully repeated verbatim herein.

18.

From the time the Federal Government knew or should have known of the existence of elevated levels of formaldehyde in the temporary housing units, it was under a duty to use due

6

care and caution for the safety of the foreseeable users and occupants, Plaintiffs, of the subject housing units.

19.

From the time the Federal Government knew or should have known of the existence of elevated levels of formaldehyde in the temporary housing units, the Federal Government was under a duty to provide reasonably safe, functional and habitable housing units for the use of the Plaintiffs.

20.

From the time the Federal Government knew or should have known of the existence of elevated levels of formaldehyde in the temporary housing units, it was obligated to warn the plaintiffs of any defects in the housing units which could cause harm.

21.

The Federal Government negligently breached all of the referenced duties to the plaintiffs, rendering the Federal Government negligent, grossly negligent, reckless, willful and/or wanton.

22.

As a direct and proximate result of the acts and/or omissions of the Federal Government, the Plaintiffs have suffered, and will continue to suffer, injuries and damages, for which they are entitled to recover from the Federal Government, all as alleged herein.

7

23.

The Plaintiffs damages herein include physical pain and suffering, mental anguish and emotional distress, the loss and/or impairment of life's pleasures, the loss of consortium and services due to the harm suffered by immediate family members, medical expenses (past and continuing), lost income, and/or the loss or impairment of wage-earning capacity.

WHEREFORE, the Plaintiffs respectfully pray for judgment in their favor and against defendant in amounts to be determined at trial as fully and fairly compensatory for the damages sustained herein, together with legal interest on all said amounts from the dates of filing until paid in full, the costs of these proceedings, and any and all other equitable relief as the Court may deem fit.

Respectfully submitted,

FRANK J. D'AMICO, JR. (Bar No. 17519)
AARON Z. AHLQUIST (Bar No. 29063)
**FRANK J. D'AMICO, JR., APLC**
622 Baronne Street
New Orleans, LA 70113
Telephone:   (504) 525-7272
Fax:              (504) 525-9522

*Counsel for Plaintiffs and member of the PSC*

**PLEASE SERVE:**

1. The United States of America
   **through**
   U.S. Attorney's Office, Eastern District of Louisiana
   500 Poydras Street
   Room B210
   New Orleans, Louisiana 70130
   **and through**
   Attorney General of the United States
   U.S. Department of Justice
   950 Pennsylvania Avenue, NW
   Washington, DC 20530-0001
   **and through**
   Federal Emergency Management Agency
   Office of the Director, Office of the General Counsel
   500 C Street, SW
   Washington, DC 20472