UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

*****************************************************

IN RE: FEMA TRAILER
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION

DOCKET MDL NO. 1873 "N"
NEW ORLEANS, LOUISIANA
FRIDAY, MAY 13, 2011

8:30 A.M.

*****************************************************

COMMITTEES' STATUS CONFERENCE

TRANSCRIPT OF PROCEEDINGS

HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT

UNITED STATES DISTRICT JUDGE

SUSAN A. ZIELIE, RPR, FCRR
OFFICIAL COURT REPORTER
UNITED STATES DIST COURT
EASTERN DIST OF LOUISIANA
500 POYDRAS STREET
ROOM HB-406
NEW ORLEANS, LA 70130
504.589.7781
susan_zielie@laed.uscourts.gov

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.



APPEARANCES:

FOR THE PLAINTIFFS:

WATTS GUERRA CRAFT
BY: MIKAL C. WATTS, ESQ.
FOUR DOMINION DRIVE
BUILDING THREE, SUITE 100
SAN ANTONIO, TX 78257

FOR THE PLAINTIFFS' STEERING COMMITTEE:

GAINSBURGH BENJAMIN DAVID MEUNIER AND WARSHAUER, LLC
BY: GERALD E. MEUNIER, ESQ.
DUSTIN WOODS, ESQ.
2800 ENERGY CENTRE
1100 POYDRAS STREET
SUITE 2800
NEW ORLEANS LA 70163

FOR THE DEFENDANTS:

DUPLASS ZWAIN BOURGEOIS MORTON PFISTER WEINSTOCK
BY: ANDREW WEINSTOCK, ESQ.
THREE LAKEWAY CENTER
3838 N. CAUSEWAY BOULEVARD
SUITE 2900
METAIRIE LA 70002

BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
BY: MICHAEL D. KURTZ, ESQ.
201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS LA 70170

FOR THE UNITED STATES AMERICA:

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, TORTS
BY: HENRY T. MILLER, ESQ.
P.O. BOX 340
BEN FRANKLIN STATION
WASHINGTON DC 20004

ALSO PRESENT:

ERNEST P. GIEGER, ESQ.
ANTHONY G. BUZBEE, ESQ.
CHARLES PENOT, JR., ESQ.

NEW ORLEANS, LOUISIANA; FRIDAY, MAY 13, 2011

8:30 A.M.

THE COURT: If you haven't signed in yet -- if you haven't signed in, make sure you sign in before you leave the room here today.

And also, for the sake of or record here, unless you're -- well, identify yourself the first couple of times you speak here so that we can make certain that we know who is talking for purposes the record.

I did get the joint reports, and went through it. Justin and Gerry do, either one of you all want to highlight anything on here? And then I'll ask Andy and Joe and then of course David, Karen and then Henry. Anything that we need to talk about from your point of view on the report? It seems pretty straightforward to me, and it follows the form that we've been following.

MR. WOODS: It's all pretty straightforward. I think the most important information for the larger group, from our protective, is under Section IV, the manufacturing house litigation track and where we are on the proposed settlement and the notice and the deadlines and the fairness hearing that is scheduled for August 22nd. Everyone's received notice, we're in that

process. But that would be important we generate -- that that fairness hearing is coming up and that there are certain deadlines associated with that.

THE COURT: Okay.

MR. MEUNIER: And then, Your Honor, the next section should probably be mentioned in open court, the fact that motions to dismiss are being filed for unmatched plaintiffs. I think one of the things we discussed in chambers was the fact that, when a defendant seeks to bring a motion to dismiss for a matched plaintiff, there would first be a contact made with the plaintiff's counsel. So that, in some cases, those may be unopposed. It may be a plaintiff who has dropped out or lost touch with, and only notice for a hearing if there's some reason the plaintiff can make an argument to you they should not be dismissed.

So the plaintiff lawyers need to be tuned in to how we're going to approach these dismissals that are now going to be filed and be prepared it tell the defendants whether its unopposed or whether they have a reason to come to court on.

THE COURT: Okay. Let me go back to the pending motions here on Section III. We have denied the first one listed.

By way of an update here, the 14480 was

denied in document No. 20.784.

On the next page, page 3, document 19570 was granted in Docket No. 20914.

And the one right below it, 19571, was granted in 20916. So those two can come off.

And remind me at the end, for those of you -- I think Dennis, you're involved in the motions to enjoin, which would be 17661 -- the ones involving the Indiana cases, at the conclusion of our big status conference, I'd like to talk to you all, including those who aren't here but hopefully will be here for the big conference, I'd like to talk to you all briefly about the status of those. I think there's two motions. One is the 17661, which is the third motion listed on this draft, and it also appears, the issue has also been raised in 20861m which appears on page 4. Those are the Elkhart, Indiana motions.

Because we're after the May 1st date that I had dealt with the state court judge on, and I'll tell you what's going on in my end. I'm hoping to hear more about what's going on on your end.

MR. MEUNIER: Judge, in Section X on Miscellaneous, subparagraphs B and C, I'm reporting to you that there have been settlement discussions with Dan Balhoff with Sunnybrook and Sun Valley. The insurers in

both of those cases are the same as involved in the state court, so it does link to the efforts we're making here.

THE COURT: I was hoping that would be the case, but we can just talk briefly after the big meeting.

Anything else, Jerry and Justin, that you all would like to highlight off of the report?

MR. MEUNIER: On bellwether trials, Judge, Section VI, I haven't had a chance to talk to Jimmy yet about what if anything needs to be said in open court about KZ RV. There was a submitted motion to dismiss. I think Charley Penot was going to be preparing a revision of that to preserve plaintiff's claim as to Fluor. But he'd indicated that perhaps, since it was previously announced that there was a trial, we ought to say something in the larger session about the fact that that trial has been bumped.

THE COURT: Right.

MR. MEUNIER: Pursuant to settlement.

MR. WEINSTOCK: Can I suggest to Jerry and Jimmy come up to the bench and talk to you about it briefly?

THE COURT: That's fine. My purpose in raising it is that we announced at the last conference

the scheduled bellwethers including one that was to start on Monday. So whatever you want to tell the group as to the circumstances of that case and the status of it is fine. I don't want to cover it myself, but maybe Jerry when you --

MR. MEUNIER: There's an order in the record now saying it's dismissed. You know, there's a public pleading on it. But what if anything in addition we want to say or need to say, I'll check with Jimmy and come up with something.

THE COURT: Right. If you want to just limit it to what's set forth in the order, you know, it begs a lot of questions that I know you all either aren't prepared to answer today or don't wish to answer today. And all of that's fine with me, so long as the group out there who is not familiar and maybe who's been depending on the national flow of information maybe hasn't checked the record or maybe hasn't received that order or looked at that order, I would like some note to be made that that is no longer listed as a bellwether and is not going to begin on Monday morning.

MR. MEUNIER: Right.

THE COURT: All right. Anything else that you all would highlight here in this committee, other than -- the committee meeting as opposed to the big one?

MR. WOODS: There is, just in Section IX, the last sentence, I would like to edit that and delete it. It's on page 9 right before Section X, the claimants have until Friday, April 8th to file objections. Since that has passed, I'd like to take that out.

THE COURT: All right. Go ahead.

MR. MEUNIER: If you're finished with that, just getting back to Section X.B and C, I think the most appropriate thing to say is that the discussions have taken place and will be continuing.

THE COURT: Right.

MR. MEUNIER: We remain hopeful, but we're not there yet.

THE COURT: I'm fine with that. Something that's very nonspecific at this point.

MR. MEUNIER: Section II of the report is the PSF issue, which we've just had a lot of discussion about. Perhaps the larger group needs to be advised that what we're going to presumably say in open court about next Friday's deadline.

THE COURT: Let me come back to that in a minute. Because I want to, right now, let's just stick to what the joint report says.

Andy, is there anything that you're going

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 9 of 39



highlight off of here that you'd like to raise here that goes above and beyond what you've just intended to report over there?

MR. WEINSTOCK: Not highlight but correct. If you go to Section VI.A(1), the Coachman trial was moved to June 13th from June 20th based on Judge Roby's schedule.

THE COURT: Right.

MR. MEUNIER: I'm sorry, what date?

MR. WEINSTOCK: June 13th.

THE COURT: Okay.

MR. WEINSTOCK: That's it.

THE COURT: All right. David, anything that you think we need to cover off of this here?

MR. KURTZ: No.

THE COURT: Then let's go back to the issue that Jerry was about to talk about, and it's one that we spent some time, a good degree of time this morning on, about next Friday and the idea of fact sheet information.

MR. MEUNIER: My understanding, Judge -- and the Court will correct me, I'm sure Andy will if I'm wrong on this -- is that by next Friday the defendant manufacturers and contractors will identify for the Court which fields of the plaintiff profile form or fact

sheet are needed for settlement development purposes without prejudice to their right to pursue the remainder of the information through the deficiency process at a later time. It's understood that, in so limiting the focus to those items now, they do so without prejudice. And, also, that they are entitled to submit one deficiency letter at this time that would cover all deficiencies, albeit only receiving now the designated areas.

And then, by next Friday, we will advise the Court, given the position taken, of what time the plaintiffs need collectively to respond to the designated deficiencies.

MR. WEINSTOCK: Close but not entirely accurate.

My understanding, that we would come together before next Friday and see what we can agree on and submit to the Court what we could agree on, plaintiffs and defendants. And, if there was anything else we wanted that we could not agree on, we would let the Court know that as well.

THE COURT: I'm counting on it being the former rather than the latter.

MR. MEUNIER: I'm assuming that we will be in discussion. But, if we can't agree, then I think on

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 11 of 39



Friday nonetheless there's going to be a report to the Court on what the defendants think they need. You will know how much of that is agreeable or not with us.

THE COURT: Let me back up, and I hope I don't muddle the issue further, In an effort to try to clarify it. The idea is that -- since all of you are were not in the room, I'll try to recap why we're doing this and the purpose of this.

The idea is to, on the one hand, afford the defendants the opportunity to send out a single deficiency notice, and not later deficiency notices, but a single deficiency notice with regard to the plaintiff fact sheets. And be entitled to have all fields on that deficiency notice that can be satisfied ultimately satisfied.

In the meantime, it's to facilitate -- in order to facilitate a settlement discussion, hopefully on an in-globo basis on the basis of manufactures and hopefully third-party contractors, a flow of information back from the plaintiffs that relate and can be useful for purposes of settlement discussions and getting that information back in short order. As opposed to having plaintiff's counsel have to take a deficiency notice, resolve the deficiency notice in its entirety, including information that would be unique to that particular

plaintiff. And, in the meantime, not having the ability to discuss settlement because the deficiency notice would still be outstanding and the workload in satisfying the deficiency notice would drag down the process of or the hope of having any type of settlement discussion in the MDL.

So the idea is, by next Friday, to have an agreement between manufacturing defendants and third-party defendants, that certain of the fields on the plaintiff fact sheet, certain of the tidbits of information are more useful for a settlement discussion than others. Other pieces of information are useful if you were to litigate that plaintiff's claim, you would want it know and would be entitled to know all of that information on the fact sheet, and perhaps even more information through other discovery. So what we're trying to do is to concentrate in short order on the fields of information, hopefully fewer rather than more, that your clients, carriers, whoever is involved on the defendant's side, need to know in order to be able to respond to a settlement offer from the plaintiffs.

So you're going to send a single deficiency notice, plaintiffs counsel, with a pre-agreed upon set of fields that would be useful for settlement will respond with those fields. Without prejudice to your

right to have the entirety of the fact sheet deficiency notice responded to, plaintiffs would respond with a smaller set of information that we will know by Friday what that is. And then they will also tell us how long, hopefully a short period of time they need, to get those critical pieces of information back to defense counsel.

And I've told you the reason for it, and I've told you how I think it's going to work. Now, we'll try to memorialize that I'm hoping by Friday maybe if someone can put pen to paper on this procedure. It doesn't have to be an order that we enter into the record, but it has to be something in light of the confusion that we've had last time. If you want to put it as an order in the record, I can do that. I don't want to put an order on top of an order on top of an order and have everybody say: Well, now we're really confused.

But the idea is to get -- the two things that defendants have said, I've heard repeatedly as to why they think the case can't be settled in the MDL is: A, we don't know who all the plaintiffs are because claims are still coming in. And God knows we've tried to resolve that any number of times. And, B, we don't have enough information to evaluate these claims because we've got fact sheets that sometimes are meaningless and

other times have such scant information as to be meaningless. So we're trying to satisfy those two problems, along with the plaintiff's problem that they can't work up every single plaintiff's claim to the nth degree as though it was ready for trial in order to satisfy or to support a settlement demand.

At the MDL level, we're either going to settle the case on a more global term, and I'm speaking by manufacturer or by third-party contractor, as opposed to claim by claim. If we're going to settle them claim by claim, that will probably be done after the cases are remanded.

And I've said before and I'll say again, I said as early as this morning, if that's the way we're going to go, then I can start remanding case. I'm hoping not to do that, and I hope that the prevailing sentiment here is to not do that. Rather, to continue to try to work on the cases here and get them resolved to our client's satisfaction. Rather than have them as individual pieces of litigation spread out over three or four states, in various state and federal courts.

Does anybody have any questions, or maybe I should start with Gerry and Andy and David and ask if I have said something wrong or if I've left something out?

MR. MEUNIER: Judge, I think that's

consistent with my understanding.

So, just on the timetable, if Andy can report by the beginning of next week on what the fields are needed for settlement, then hopefully by the middle of the week we can forward a report to him on what time we need. I'll need to poll the group -- as you know, there are different positions in the group -- all with a view toward Friday. If you don't want an order, at least report to you on the fields and the time needed and to the extent there might still be a difference in our positions.

THE COURT: Right. That's fine. And, if necessary, we can have a telephone conference on Thursday afternoon or some time Friday to discuss whatever discrepancies there are.

Let me caution the defendants, if you say, look, my client needs -- we did the fact sheet and I need 80 percent of the questions answered, its probably not going to work. All right? You need to be conservative in your need for information. They know they're going to ultimately have to give you, if the case doesn't settle, they're going to have to give you a completed fact sheet. To the extent that it can possibly be known, the information's going to have to be on a completed fact sheet. So you're not going to be

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 16 of 39



viewed as foregoing your right of any information by limiting the number of things you need to know in short order.

I think the imperative on the defense side is: But I want know that and I need to know that. I understand that. But what we're talking about here is what you need to know in order to participate in a global settlement discussion. If it's five things, tell them the five. Andy's going to meet with you all, come up with the five. If it's a dozen things, tell them what dozen. It may be different. Gulf Stream's people and the people that Andy's dealing which may say: Well, we only need these nine items. You may have someone else that says: I need 18 items.

Let's see if you can come to an understanding of what are the most critical pieces of information that you need to participate in a settlement discuss in this MDL without any in way foregoing your rights to all of the rest of the information at a later date. So please be conservative on that.

If you undercut the effort by telling us that you need 80 percent or 90 percent of the fact sheet filled out, then plaintiffs -- and, on the plaintiff's side, it's in their interest, when they follow-up with individual clients, to get the entirety of the

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 17 of 39


information in your deficiency notice. If they can do that, I'm sure they'll be happy to give it to you. Because they may have to do it anyway. So there's an incentive on both sides to try to make this thing work in the short term; to forego the efforts on the long term.

If it doesn't work, well then, guess what, they're going to have to go back and get all this information again. You're going to have to go back, and you would have already sent your deficiency notice, but you're going to get the balance of the information, to the extent they can provide it. Unless you are a Section Eastern District case, you're going to be dealing in other court, or at least in front of another judge. I'm hoping to be able to save you all and the other judges the effort of having to go through and pick up every strand of information on each plaintiff's fact sheet. That's the purpose of the exercise.

So please don't undercut the purpose of the exercise by saying: Oh, I still need all but these three. I need every piece of information except these three questions, because we're going to be back at ground zero again.

MR. MEUNIER: There's an ancillary issue that deals with individual plaintiff discovery. Tony

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 18 of 39



has shown these requests that he's gotten from one of the defendants from his clients.

MR. BUZBEE: We're getting these notice of record depositions, subpoena duces tecums, to all of the medical providers by a bankrupt defendant. It seems, to me, it sounds like that it's outrageous in my mind. That, if you have a bankrupt defendant, who's lawyer is for thousands of clients, multiple medical providers, is sending these subpoena duces tecums. And we spent all this time and effort, even if it's 16 fields or two or whatever it is, and they're going to have no insurance left because of this kind of conduct, to me, is outrageous. I wanted to bring it to your attention. Hopefully, you would admonish and put an end to that kind of silliness.

THE COURT: Haven't named any names. Does anybody want to raise hands?

MR. BUZBEE: This is a bankrupt defendant. Lobman Carnahan. I don't know who that is, but that's who is sending them out.

THE COURT: I mean, I don't have anybody from Lobman here, I don't think.

MR. BUZBEE: Can't we all agree, that's outrageous?

THE COURT: You've got a lot of enthusiasm

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 19 of 39



from here on that point. But, quite frankly, if that's an eroding policy --

MR. BUZBEE: I know the settlements that we've had, by the time you got to the point that you could settle, no money was left. That doesn't seem to be in the best interest of the clients that are in this MDL. And I know you're operating in the best interest of the defendants.

MR. MEUNIER: I can't speak for Gulf Stream, but I know you're worried about these clients and the best interests.

MR. BUZBEE: I don't know who these folks are, but I'm getting hundreds of these a day.

MR. WEINSTOCK: But you're getting paper.

THE COURT: But they're billing to send these out, that's his point.

MR. GEIGER: That was a wasting policy.

MR. MEUNIER: I wanted to try to relate it to the concept we're talking about. Which is, when we're talking about the PSF process, you have the completing concerns. On the one end, you have the defendants saying: We need all this information. On the plaintiff's position, we're saying: The focus ought to be on common issues and settlement. Not, we can get to that later. This relates to that, in my view,

because it's an effort of one of the defendant insurance companies. It happens to be more egregious because it's for a bankrupt manufacturer, but it could be for a non-bankrupt manufacturer, to start propounding --

THE COURT: Crum & Forster is Pilgrim?

MR. BUZBEE: We didn't bring a direct action against the insurer.

MR. PENOT: Well, there have been a number. I've seen a number of the direct actions.

THE COURT: Wait. First of all, nobody's doing what I suggested, such as stating your name. So we're going to have attorney 1 and 2 and attorney 15 and attorney 16. Okay?

The other thing is, even if you were stating your name at the same time, you're all doing it at the same time. So she's not going to be --

MR. WEINSTOCK: Weinstock says they must be a correct defendant or they'd have no caption to file a subpoena under. They couldn't just intervene, they haven't intervened to file subpoenas.

MR. BUZBEE: On behalf my clients, I have not filed against insurers, and these are my clients.

And you say: Well, all you are getting is paper. No, I'm not. I'm getting these electronically and these are being printed out. So, in that respect,

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 21 of 39



it's costing these clients money, if we want to be technical about that.

MR. WEINSTOCK: Weinstock says don't print them out.

THE COURT: Why don't we do this. Why don't we -- Andy, can you find out --

MR. WEINSTOCK: I know who the lawyer is. I will talk to him.

THE COURT: Can you find out what it is what the circumstance is with regard to this policy, first of all. And let me know, as well as liaison counsel, on all sides, let us know?

MR. WEINSTOCK: Yes, sir.

THE COURT: Because, I agree, that this is the type of particularized specific plaintiff discovery that, unless there is a bellwether involving one of these people, it certainly goes beyond what has been the coordinated discovery plan up to this point.

MR. BECNEL: Judge, Becnel says it's called billable hours. And I want that on the record.

MR. MEUNIER: We don't need to necessarily, in the big session, address that. I just brought it up because it seems relevant to what we were talking in the BSF. Maybe Andy can get the message to counsel that that's not what we're up to right now.

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 22 of 39



THE COURT: I agree. I agree. And, if we need to have a status conference with this particular defendant to discuss this and the dynamics of the MDL and what impact this has, I'll do that. If you can find out what the status of the policy is and report back, and also any content of your conversation that you can report back regarding their intent to pursue these. Because it's, at this point in time, as I say said a few minutes ago, the focus is on how the MDL can be resolved at this point.

I think I told you all last time, I'm not going to set up a whole another board of bellwether trials. We can bellwether trial cases until the cows come home, but we get to the point of diminishing returns. And, unless there is an a manufacturer that has a particular legitimate issue that they believe their case is unique, or a carrier issue, that's fair game, I can't see just sitting here and setting up bellwether after bellwether after bellwether.

The purpose of the MDL is to establish enough common rulings and enough bellwethers to have some empirical data to discuss a resolution of the claims. In lieu of that, to start remanding cases.

Now, if they want that information after cases are remanded, then that's fine. I think it's

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 23 of 39



appropriate. It certainly is a regular run-of-the-mill discovery. But at this point in time, given where we are in this MDL, it would seem to me -- and I haven't heard from the attorney who sent those out -- but it would seem to me to be either unhelpful to the effort right now or contrary to the effort right now.

So see if you can find out from the attorney what the circumstances are.

MR. GIEGER: Judge, Geiger. I've discussed this with Andy, and I've read the whole committee, and you discussed relative to this issue. But I do have to raise a concern that I have about, Mikal's original plan was to set up some dates where we were going to stop a lot of this action and move toward accumulating information for a spreadsheet that we all know is geared toward seeing whether or not we can resolve these claims. One of my concerns is, I probably have the second largest number of trailers, and my deficiencies letters are all out. They have been since the first week of April.

My second set of deficiency letters, which are letters that go out to people who have no fact sheets -- I've got about 67,000 trailers -- I'm sorry, named manufacturers. I've got around 2,500 to 3,000 of those plaintiffs that have no fact sheets at all.

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 24 of 39



My concern is that that group of people, if we start -- because there's been discussion about moving the time period along to give answers -- is that if I'm going to wait a longer period of time -- my time under the orders are almost up, and it would be time for me to come to you and say, hey, there are 3,000 plaintiff's claims that should be dismissed. If I'm going to get an extension for these people on their efforts to get me fact sheets, and I get back the kind of answers I'm now getting back on my first -- and I sent about a thousand of them out and I'm getting answers back on fact sheets that are saying attempting to contact client -- I'm not saying that's by the people in this room, because generally it's not. But I will tell you, Judge, there are lot of people outside of the people in this room; right? And I now there's some difficulty. And I just want to raise that for the Court. If Mikal's deadlines are going to stay in place, and it relates to me, if you've got start extending it out another -- I've got a motion that's pending before the Court that's asking for an additional 45 or 120 days for a ruling from the Court for those extensions, that's a problem. If we're going to start talking about getting a matrix together and we're going to get the fact sheets from half of the plaintiffs against my clients that aren't in yet, I see

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 25 of 39


a problem if we start extending these deadlines very far.

MR. WATTS: Mikal Watts. We agree with Ernie, and nobody on this side wants to extend the June 30 deadline.

I think the point that was being made this morning is that, if we're going to be forced to comply with deficiency notices about fourth grade teachers as opposed to 16 key data points, we can't get it done in term, or certain of us can't get it done in time, and that's why we cam forward. But nobody wants to extend the June 30 deadline. And nobody, depending upon how many more needs Andy's group comes up with, wants to extend the 30 day timeline more than necessary. We want to get it done so we can have our spreadsheet and get to the settlement discussions.

MR. GEIGER: I hear it, but there are claims with no deficiencies. And the kinds of responses I'm getting back -- I just have an inkling feeling that, of the 3,000 that are not going to have the 16 fields or the 20, and I'm going to be coming back and writing more deficiency letters saying --

MR. WATTS: I think, they way it's designed, once we get to June 30 and then the deadline to fix them -- right now, it's July 30, maybe it goes to July,

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 26 of 39



August 30 -- once that's done, everybody's under order to deliver to me the best you got. And then I ship them off to India and that is in frozen time. And then you guys can start dismissing right and left people who have failed to comply with the order.

MR. WEINSTOCK: This may sound strong; but, for those people who have never filled out a fact sheet, the way the order's written, it's technically deficiencies. But it's its way beyond that. We're three years into the game and if they've never produced a fact sheet they should not get additional time.

THE COURT: We have said at every conference -- and this is sort of like the matching business which hasn't come up today. We've gotten into this far with one of these things without using the word matching, but it's sort of like matching. It's fundamental that the fact sheet, which was worked on by counsel, it was an effort that was a joint effort to try to come up with a fact sheet that everyone thought was useful. And I have said in the big conference, and I know you all have said in your groups, that the fact sheet is really the threshold piece of paper that every plaintiff, when you sign up a plaintiff, you need a fact sheet. And we've put a device, a time delay, that the fact sheet needed to be forthcoming within so many days

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 27 of 39



after the action was filed, plaintiff had officially filed their action.

And, I agree with you, we're now, in my mind, we're well past the stage of getting a fact sheet. And, quite honestly, we should be past this stage of deficiencies. But we're not. We're still working on the deficiencies along the lines that we talked about this morning that I've mentioned here today.

But, if you haven't done a fact sheet at all, if no one has even seen a fact sheet, I'm ready to dismiss those.

MR. WATTS: I think the process that we set up, to get back to Ernie, if you have somebody that hasn't delivered a fact sheet, they have been sending deficiency notices with that.

But, with all due respect and in fairness to Ernie, if the deadline for that deficiency notice comes and goes and you still don't have a fact sheet, I don't think anybody on this side is saying we get another shot at it. It at that point in time -- in other words, it's not good enough that they just start filing motions to dismiss for failure to do a fact sheet if they haven't sent a deficiency notice. Because that's what tell us that's you're deficient, fix it.

THE COURT: We're going to stick with the

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 28 of 39



framework we've got now.

MR. GEIGER: I understand, Your Honor, too, that of those almost 3,000 people have given me no fact sheet, start giving them to the middle of June -- right -- which is when their time period is up, all of the sudden I'm now writing another deficiency letter to them saying of the 16 or 20 categories here, we're deficient. And I'm going to be bumping --

THE COURT: Haven't you already sent a deficiency notice saying: I don't have a fact sheet at all so therefore it's deficient because to my knowledge it doesn't exist?

MR. GEIGER: Right. But what happens, when I start getting 16 of them, that two or three are filled in.

THE COURT: If they're not compliant, then they're not complaint.

MR. WATTS: I think everybody, once we get this list of 16, hopefully is not going to be more than 20, there's an expectation that you're going to get that filled out for everybody.

I told the judge that one of those 16 fields is the plaintiff's trailer's VIN number. I'm not going to be able to fill that out, people don't remember it. I don't know the VIN number on my car right now, much

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 29 of 39



less something I owned five years ago.

If it's something like your name or other information that ought to be known that's not being filled out, that's where you go for a motion to dismiss for failing to comply with the orders.

But I think the key is, and what we ought to make everybody clear in the room, is we have a process where everybody sent out deficiencies notices. It's terrible, for everybody; okay? And, in order to keep our timeframe that the judge wants from the standpoint of settlement discussions, the defendants are limited to the 16 or the two or three or four that they've got to have, they've got to pick their poison by next Friday. You know, you've got to fill out those 16 to 19 fields. If you don't, you're in trouble.

As to the others, you don't have it fill them out right now, but you're going to have to eventually if there's not a settlement. It's without prejudice.

But the point is, when you get a deficiency notice and your 30 days has lapsed, or you don't get an extension -- Andy's been nice to give us an extension beyond the original deal or whatever. But, once that time periods ends, they need to understand that all bets are off, once those things go to India.

And I don't think it's incumbent on you to give them a second deficiency notice. Ah-ha, a few months ago, I told you to fill out 1 through 17, and now I've got to send out a second deficiency notice because you didn't fill out 8, 19. I don't think you have to do that.

MR. MEUNIER: I think there's one deficiency letter. I don't know were Ernie would refer to the first letter as a deficiency letter. If you don't have a fact sheet at all, it's not a deficiency.

MR. WEINSTOCK: Yes, it is.

THE COURT: Yes it is.

MR. GEIGER: Trust me, that's why I did it.

THE COURT: It's one letter. If they get a fact sheet, and it has deficiency in it, the deficiency letters says: Look, we've got your fact sheet, here's what's wrong with it. If they don't get a fact sheet at all, then the deficiency is there's no fact sheet. He doesn't have to go back and do a two-step deal. Because then the incentive side is I should lay in the gap because then I get two shots to fix it.

MR. WATTS: There's no need for a second deficiency letter, as the judge has pointed out, and we agree.

THE COURT: Send one letter that says:

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 31 of 39



Look, the deficiency is I don't have a fact sheet; I want it and I want it filled out in a full and non-deficient way.

If you don't get that, then at that point the order applies and can be dismissed.

But if you don't submit a fact sheet at all, you don't get the benefit of getting two letters, as opposed to the poor guy who tried to send one and said: Well now I've got to go back and talk to my client again. That person gets the benefit of fixing only the items that are missing. Other person's got to do the fact sheet that they should have done way back when.

MR. MEUNIER: We need to certainly make this clear in open court. Because, if there are that many people who have no fact sheet whatsoever, they need to understand how this current system is going to work for them.

THE COURT: And they should have -- we said many times you need to do the fact sheet within so many days after the action was filed. That's in one or more of the pretrial orders.

MR. WATTS: 60 days out.

THE COURT: Amanda can give me the number of the orders. They are in the record. The fact sheets should have been done within the time delay specified in

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 32 of 39



the orders.

Now, if they're deficient or not should be the second question. Not the first. Because they said, well, we didn't get them. If you didn't get a fact sheet to begin with, then you didn't comply with the pretrial order that said you had to have a fact sheet to begin with.

MR. WOODS: Justin Woods. If someone has not sent in a fact sheet at all, and Ernie sends them a deficiency letter saying I don't have a fact sheet from you. But, when we get to this point of identifying these 20 data fields, is it that there will be in compliance if they respond to those 20 at that point and they will not be subject to dismissal?

THE COURT: That's the agreement we have based upon the idea, what I just stated here on the record, that we would like to see if we can resolve certain claims against certain of the manufactures in-globo or otherwise here. So the response that's expected from the plaintiffs at this time will be the fields that are designated. All right?

But the deficiency that is sent will be the one and only deficiency that that person will get. So it will be incumbent upon them to satisfy the fields that we agree upon in the short term. So they will be

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 33 of 39



required to do at least that.

Later on, if we can't resolve it and the cases are sent back to where they came from, or if it's one of my cases that would have been one of my cases anyway, you can move to dismiss for failing to satisfy.

But, right now, we're concentrating on the fields that are agreed upon only because we're not having bellwethers beyond those that are scheduled -- at least I'm not planning it at this juncture -- and we want to see if we can resolve as many claims as possible in the MDL.

So, yeah, the expected response now is to the designated fields. All right? That right now is sufficient to cure the deficiency for now.

MR. WATTS: The other thing, for my brothern on the plaintiff's side, we sent out 31,000 letters last week saying this is coming down, if we send you a deficiency notice you must help, you must get it fixed with us or you are subject to dismissal. And I think probably everybody ought to ship out a letter like to that their client to cover their backside.

Because, I'll be honest with you, I've got over a thousand people that I don't have facts sheets for, and I told you that from the start. And I know they're going, and this process is getting it down

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 34 of 39



quickly. But the people that don't get there are going to get dismissed. So everybody needs to cover their back.

MR. MILLER: If a plaintiff gives a fact sheet and they only give us eight of 16 or whatever the fields are, are they then subject to dismissal with prejudice?

MR. WOODS: They may not have a VIN number, like Mikal Watts.

MR. MILLER: I understand they may not have the information or the ability; but, if they only complete a subset of the selected key factors, what is the effect?

MR. WATTS: I think it depends on which ones, to be honest with you, of the 16. Because some of them are things you ought to know. You ought to know your name, this kind of stuff. But others, VIN numbers, FEMA ID numbers, we're going to have a case-by-case debate about whether we can possibly know that.

THE COURT: I think I question is answerable once we decide whether there's sufficient information to have a meaningful settlement discussion between manufacturer and defendant and the plaintiffs.

If it's the type of information that the plaintiff can be included and counted numerically as a

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 35 of 39



participant in a settlement, then maybe it's no harm/no foul. But if it's the type of information where a defendant says: Well, we can't include this person because we don't know this critical piece of information, I may agree with you, then I may agree with the defendant, in which case then the defendant later can go ahead and file a motion to dismiss. There was no global settlement, that person didn't write enough information, they didn't satisfy the deficiency notice, you know, they're out.

MR. MEUNIER: Your Honor, I do think at some point after these discussions that place next week, we're probably going to need an order that identifies the vehicles, for the reason you just mentioned. I think, going forward, plaintiff is going to have to understand the sacred fields you want and ones they just can fudge on. So whatever these discussions are, hopefully we'll agree on a language in some sort of order.

THE COURT: I suggest that you all talk early next week, come to some agreement on it. If you can't come to some agreement on it, we'll work with you on Wednesday, Thursday, Friday on those that you can't agree on.

MR. MEUNIER: I just don't want a plaintiff

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 36 of 39



letter saying: Oh, I didn't know that one was the important one and I didn't get that from my client.

THE COURT: Whatever ones we agree on, they are all going to be important. Some of them, like you say -- if it's a VIN number, then it may be undisputed that the person lived in a, for instance, a Gulf Stream unit, in which case Gulf Stream may not contest: Well, you didn't give me a VIN number so I can't have that person numerically counted in any type of settlement discussion. If it's undisputed that that person lived in a Gulf Stream unit, we just don't have the VIN number, then it's neither here nor there.

But if there are other certain pieces of critical of information that would be in that field, and the defendant deems that insufficient to count them as part of the settlement, then they won't be included.

It's going take some work on, first of all, on the defendant's side to come up with a meaningful and scaled-down set of critical factors that need to be known for an in-globo evaluation, and then trading that information with plaintiff's counsel such that it can be gathered in an efficient fashion.

MR. MEUNIER: All right. I think we have it.

THE COURT: Anything else?

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 37 of 39


MR. MEUNIER: Thank you, Judge.

THE COURT: Is there anything else we need to talk about here in this group before we go into the bigger conference?

MR. WEINSTOCK: The next conference.

MR. WOODS: Next conference date.

THE COURT: That may be a bit of a problem, because I'm going to be in trial for most of the summer.

MR. WOODS: According to the news, that's an iffy question.

MR. WEINSTOCK: That was Woods, not Weinstock.

THE COURT: There will be some days off that it won't be a five-day work week every week.

What about July 8th or 15th? I hate to wait that long, but we'll be in communication with you all during that time in smaller groups. I'm talking about the big conferences. Either the 8th or the 15th of July, does that create problem for anybody? Anybody have a preference out of those two?

If people travel during the week of the 4th, why don't we make it July 15th. We'll follow with the same schedule. And we'll be in touch with you all.

MR. WATTS: Judge, my birthday's on the 17th, so we'll have a three day FEMA party.

THE COURT: Friday, the 15th, will be the next conference, with committees at 8:30 and conference with the bigger group at 10.

Let's go ahead into the other room, and we'll present the joint report.

MR. MEUNIER: Actually, one thing is a plaintiff issue, but thank you for reminding me of it.

We drafted an order, it's not finalized yet -- but just to give the Court a heads-up -- which is going to ask for an amendment to the submission of common expense to allow there to be a catch-up date, as we did once before. We'll find out that Bajoie Bennett had fallen behind and we need a catch-up date.

Bajoie Bennett has asked that we change what I've already drafted to provide for quarterly instead of I guess monthly submissions to them. They're finding it burdensome to have to process. So I'll just give a heads-up, we'll be submitting an order. I don't think it's a defendant issue.

THE COURT: It doesn't sound like it involves the defendants.

But the key to saving us a lot of trouble later is to do it frequently now. So, if he wants to do it quarterly, that's fine. But it really depends on you all getting the information to them timely.

Case 2:07-md-01873-KDE-ALC Document 23822-14 Filed 12/12/11 Page 39 of 39





(9:51 a.m., Proceedings Concluded.)

CERTIFICATE

I, Susan A. Zielie, Official Court Reporter, do hereby certify that the foregoing transcript is correct.

/S/ SUSAN A. ZIELIE, RPR, FCRR

_____________________________

Susan A. Zielie, RPR, FCRR