**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | **MDL No. 1873** |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | **SECTION N(5)** |
| | * | |
| THIS DOCUMENT IS RELATED TO: | * | **JUDGE ENGELHARDT** |
| | * | |
| *Angela Pittman, et al v. Gulf Stream* | * | **MAGISTRATE CHASEZ** |
| *Coach, Inc., et al*; | * | |
| Civil action No. 10-2249 | * | |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANT'S RULE 12(b)(6)**
**MOTION TO DISMISS CERTAIN PLAINTIFFS' CLAIMS**

Come now Plaintiffs and submit this memorandum in response to Defendant Gulf Stream Coach, Inc.'s ("Defendant," "Gulf Stream") Memorandum in Support of its Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss for Prescription. Rec. Doc. 25228. Plaintiffs would respectfully show the Court as follows:

**FACTUAL BACKGROUND**

Hurricanes Katrina and Rita were two brutal hurricanes that assaulted the Southeast Gulf Coast in September of 2005. The following year, *Keith Hillard, et al v. the United States of America, et al.*, was filed in the Eastern District Court of Louisiana on May 18, 2006. Multiple Plaintiffs asserted claims against the United States, manufacturers of temporary housing units, and contractors assigned to work on the temporary housing units. The suits stemmed from the acts and conduct of the defendants in the aftermath of Hurricanes Katrina and Rita. Notably, *Hillard* was filed on behalf of a class of individuals with similar claims. On October 24, 2007, the above-mentioned Multi-District Litigation was created to consolidate discovery and other pre-trial matters.

Approximately one year later, on October 28, 2008, the Plaintiff Liaison Counsel filed a Motion to Certify Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Prior to a determination on Motion to Certify Class, the independent suit, *Belinda H. Bauer, et al. v. Gulf Stream Coach, et al.,* 2:08-cv-05031 was filed on December 01, 2008 ("*Bauer*").   The *Bauer* complaint contained claims for seven Plaintiffs, Janet Alexander, Glenda Bounds on behalf of Devin Bounds, Glenda Bounds, Lisa Beard, Marian Epperson, John Lose and Patti Lose, who eventually joined the *Pittman* action referenced above once their claims were matched and unbundled into groups of 300 or less[1].

On December 29, 2008 the Court denied the Motion to Certify Class. Subsequently, Gulf Stream filed a Rule 12 (b)(6) Motion to Dismiss Certain Plaintiffs' Claims for Prescription.   Specifically, Gulf Stream alleges the *Bauer* plaintiffs' prescriptive periods were not suspended during the pendency of the putative class action.   According to Gulf Stream, the *Bauer* plaintiffs voluntarily "opted-out" of the putative class by filing individual suit on December 1, 2008, prior to the Courts determination on the Motion to Certify Class, and therefore forfeited their right to suspend the prescriptive period as otherwise allowed by Article 596 of the Louisiana Code of Civil Procedure.   For the reasons set forth herein, this Court should **DENY** Defendant's Motion.

## **STANDARD OF REVIEW**

In considering a motion to dismiss pursuant to Rule 12(b)(6), a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)

---

[1] The Court dismissed the *Bauer* case on January 19, 2011.

(quoting *Jones v. Greginer*, 188 F.3d 322, 324 (5th Cir. 1999)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the Court should not dismiss a claim "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Jones*, 188 F.3d. at 324.

Further, the burden of proving prescription rests with the movant. *Taranto v. La. Citizens Prop. Ins. Corp.*, 62 So.3d 721, 726 (La. 2011) (citing *Bailey v. Khoury*, 891 So.2d 1268, 1275 (La. 2005)). Only if a petition is prescribed on its face does the burden shift to the plaintiff to negate the presumption by demonstrating that prescription has been suspended or interrupted. *Id.* Finally, the Louisiana Supreme Court has explicitly declared that prescription statutes must be strictly construed *against* prescription. *See Reggio v. E.T.I.*, 15 So.3d 951 (La. 2008); *Louisiana Health Serv. & Indem. Co. v. Tarver*, 635 So.2d 1090, 1098 (La. 1994); *Lima v. Schmidt*, 595 So.2d 624 (La. 1992)). Therefore, the Court should construe prescription statutes in favor of preserving the claims sought to be extinguished by Defendant. *See id.*

## ARGUMENT

### A. The *Bauer* Plaintiffs' Decision to File An Individual Suit Prior to A Determination On Class Certification Did Not Amount to an "Opt-Out" From the Putative Class.

It is well established that the filing of a class action interrupts prescription. *See Williams v. State*, 350 So.2d 131, 137 (La. 1977) ("[S]ince the class action is brought on behalf of all members of the class, its filing interrupts prescription as to the claims of all

members of the class, whether they are noticed before or after the prescriptive delay has terminated."); *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 350 (1983) ("The filing of a class action tolls the statute of limitations 'as to all asserted members of the class . . . .") (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)); *see also Eastin v. Entergy Corp.,* 971 So.2d 374, 381 (La. App. 5th Cir. 2007).   In *American Pipe & Construction Company v. Utah*, the Supreme Court created a tolling doctrine, now known as the "*American Pipe* tolling doctrine," which held that individual class members', whose claims were tolled by the filing of a class action, were entitled to intervene in the action.  *See American Pipe*, 414 U.S. at 551-52.  The Supreme Court extended the scope of the *American Pipe* tolling doctrine in *Crown, Cork & Seal Company, Inc. v. Parker*, and authorized plaintiffs to file an independent suit after the denial of class certification.  *See Crown, Cork & Seal Co.*, 462 U.S. at 349.  However, neither the United States Supreme Court nor the Louisiana Supreme Court has resolved whether the *American Pipe* tolling doctrine applies when a potential member of a putative class files an independent lawsuit before the trial court rules on certification of the class.  *See In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008) cert. denied sub nom; *See also Marion's Cleaners, L.L.C. v. Nat'l Fire & Indem. Exch.,* 2012 WL 476182 (E.D. La. Feb. 13, 2012) ("Staying this case pending the outcome of the writs of *certiorari* in *Duckworth . . .* would allow the Supreme Court of Louisiana to decide the Louisiana state law prescription issue . . . .").[2]

---

[2] In *Duckworth v. Louisiana Farm Bureau Mutual Insurance,* 2011 WL 5903854  (La. App. 4th Cir., Nov. 23, 2011), the Louisiana Fourth Circuit held that plaintiffs could not rely on the putative class actions to toll prescription because when they file their individual suits before the class certification process was completed.  However, on March 30, 2012 the Louisiana Supreme Court refused to outright affirm the lower court's decision, and instead granted Plaintiff Duckworth's writ of certiorari, presumably to address the very issue before this Court.  *See Duckworth v. La. Farm Bureau Mut. Ins. Co.,* 2012 WL 1215266 (La., Mar. 30, 2012).

The prescription statute in dispute is codified in Article 596 of the Louisiana Code of Civil Procedure, which "prevents prescription from accruing against the claims of members of a putative class action until the propriety of the class action or the member's participation in the action is determined."  *Taranto*, 62 So.3d at 729 (citing La. Civ. Code Ann. art. 596).   More specifically, Article 596(A) states that "liberative prescription on the claims arising out of the *transactions or occurrences described in a petition brought on behalf of a class* is suspended on the filing of the petition as to *all members of the class as defined or described therein."*  La. Civ. Code Ann. art. 596(A) (emphasis added).   Once the prescriptive period is suspended, "[t]he period of suspension is not counted toward the accrual of prescription.  Prescription commences to run again on the termination of the suspension."  La. Civ. Code Ann. art. 3472. Unfortunately, Gulf Stream's interpretation of Article 596 runs contrary to the rule of statutory construction of prescription statutes and seeks to have this Court bind itself to an unjust and illogical result.  *See Tarver*, 635 So.2d at 1098.

Most importantly, the Supreme Court's rulings in *American Pipe* and *Crown, Cork, & Seal* bolster the Plaintiffs' position that the statute of limitations governing all class members' claims is best understood as tolled from the commencement of the class action until the denial of certification—regardless of whether the putative member files an independent suit before or after a ruling on class certification.  *See In re WorldCom Securities Litig.*, 496 F.3d 245, 254 (2d Cir. 2007) ("Nothing in the Supreme Court decisions described above suggests that the rule should be otherwise for a plaintiff who files an individual action before certification is resolved."); *see also In re Katrina Canal Breaches Consolidated Litig.,* No. 05–4182, 2008 WL 2692674 (E.D.La.

July 2, 2008) (embracing the Second Circuit's view outlined in *In re WorldCom* and confirming a plaintiff's individual suit filed prior to class certification does not "opt" the plaintiff out of the putative class).  This Court should thus reject Gulf Stream's absurd logic that would effectively equate plaintiffs who file suit too soon with plaintiffs that file suit too late.

**B.    Allowing Class Members To File Individual Suits Prior to a Ruling On Class Certification is Consistent with *American Pipe* and The Underlying Policies Regarding Statutes Of Limitations.**

As iterated previously, in *American Pipe*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to *all* asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  *American Pipe*, 414 U.S. at 554 (emphasis added).  In *Crown, Cork & Seal Company, Inc. v. Parker* the Court reaffirmed *American Pipe* and once again employed expansive language in stating that the "commencement of a class action tolls the applicable statute of limitations as to *all* members of the class." *Crown, Cork, & Seal Co.,* 462 U.S. at 348-49 & n.2.  The Court's plain language alone suggests that it intended to toll the statute of limitations for *all* class members, including those individuals that file suit prior to a final determination on class certification. Nonetheless, Gulf Steam alleges that *American Pipe* tolling is limited in scope, only applicable to class members that file individual suits after a ruling on the class certification.   Gulf Stream's narrow characterization of class members is hardly representative of "*all* members of the class," as envisioned by the Supreme Court in *American Pipe* and *Crown, Cork, & Seal, Co*.  *See American Pipe*, 414 U.S. at 554; *Crown, Cork, & Seal Co.,* 462 U.S. at 348-49 & n.2.

*American Pipe* contemplated and analyzed two sets of underlying policies: those concerning statutes of limitations and those concerning Rule 23 of the Federal Rules of Civil Procedure.  *See American Pipe*, 414 U.S. at 550.  With respect to the former, the Court acknowledged that one purpose of a statute of limitations is to increase judicial efficiency by eliminating burdensome, stale claims.  *See id.* at 554-55.  However, the Court explicitly noted that the *primary purpose* of a statute of limitations is to provide **notice** to defendants and protect them from both surprise litigation and the difficulties that come with having to defend against **stale** claims.  *See id.* at 554-55; *see also Crown, Cork & Seal*, 462 U.S. at 352 ("Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights . . . .") (citations omitted).  To the contrary, courts have **never** suggested that a statute of limitations is to preemptively apply or penalize parties who appropriately file suit.  Much like statutes of limitation, prescription statutes are designed to protect a defendant from the lack of notification of a formal claim within the prescriptive period. *See Findlev v. City of Baton Rouge*, 570 So. 2d 1168, 1170 (La. 1991) (explaining that prescription statutes aim to prevent prejudice to a defendant either by delay in notification of the claim (prejudice usually being the deprivation of an opportunity to perform a timely investigation of the claim) or by the loss of documents or witnesses which the defendants would have gathered or preserved if timely notified); *see also Lima*, 595 So.2d at 625.

Here, Defendant has failed to demonstrate how tolling prescription for class members that file an individual suit **prior** to class certification would offend the policies underlying a statute of limitations, or how they would prove inconsistent with the

Supreme Court's holding in *American Pipe*.    Indeed, the timely filing of a class action provides a defendant, like Gulf Stream here, with notice of the claim, therefore an additional individual suit cannot be said to cause unfair surprise.    *See In re Hanford Nuclear Reservation Litig.,* 534 F.3d 986, 1009 (9th Cir. 2008); *see also American Pipe*, 414 U.S. at 554-555 (noting that the primary purpose of a statute of limitations is satisfied when "a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, *but also of the number and generic identities of the potential plaintiffs who may participate in the judgment*.") (citations omitted).   As the Second Circuit explained in *In re WorldCom Securities Litigation* that "[s]tatutes of limitations thus guard against unfair surprises that result from the resurrection of stale claims.   The need to put an adversary on notice to defend against a claim is served when a class action is brought identifying both the nature of the claim and the plaintiffs who may participate in the judgment."  *In re WorldCom*, 496 F.3d at 253; *see also State Farm Mut. Auto. Ins. Co. v. Boellstoff*, 540 F.3d 1223, 1230 (10th Cir. 2008) (extending *America Pipe* tolling to plaintiffs that file prior to class certification and noting that defendants still receive the benefits of statutes of limitations because the underlying class action puts defendants on notice of "substantive claims being brought against them" as well as "the number and generic identifies of potential plaintiffs." (citation omitted).   The Second Circuit elaborated that "a defendant is no less on notice when putative class members file individual suits before certification.   Further, the Supreme Court has emphasized that "[c]lass members who do not file suit while the class action is pending cannot be accused of sleeping on their rights." *Crown,* 462 U.S. at 352, 103

S.Ct. 2392.   "[T]he same is certainly true of class members who file individual suits before the court decides certification."   *In re WorldCom*, 496 F.3d at 254.   No genuine argument can be made that Gulf Stream was not on notice of the potential Hurricane Katrina plaintiffs because the damages were so colossal.   Gulf Stream also suffered no economic or psychological insecurity by the *Bauer* filing individual suits on December 1, 2008.

Moreover, the risk of stale evidence, or the loss of documents or other evidence is not present here because Plaintiffs actually sought to file suit *sooner* rather than *later*. In fact, forcing Plaintiffs to wait for a class certification ruling would actually frustrate the purpose underlying statutes of limitations, which are designed to guard against stale claims.   *See Boellstoff*, 540 F.3d at 1233 ("Forcing such plaintiffs to wait out a class certification decision makes even less sense when we consider the costs of delay (for example, the possibility that the evidence will grow stale and added time the plaintiff must go without recovery)").   Although Federal Rule of Civil Procedure 23(c)(1)(A) requires certification of the putative class "at an early, practicable time," in practice, class certification can often takes years.   *See id*; *see also* Fed. R. Civ. P. 23(c)(1)(A). Often, the "time between the commencement of a class action to its certification can be indefinite" and forcing class members to await a certification decision would render plaintiffs entirely "dependent on the pace set by attorneys and the [c]ourt[s] alike." *Mason v. Long Beach Mortg. Co.,* 2008 WL 4951228, 2 (N.D. Ill. 2008); *see Boellstoff*, 540 F.3d at 1233.   Ironically, Gulf Stream contends that because Plaintiffs filed their claims too soon, they must be dismissed because the statute of limitations was violated. This incongruous reasoning upends the primary purpose of statutes of limitation, as it

requires class members to *wait* until a dispute potentially becomes *stale* before they can file their individual cases, since requiring plaintiffs to wait until a class certification decision has been rendered would only increase the danger that claims and evidence would become stale.

The Supreme Court's language in *American Pipe* and *Crown, Cork, & Seal* strongly suggests that a class member's cause of action is tolled during the time they are part of the putative class.  "*American Pipe* incarnates the principle that the class action is a representative creature" and therefore "members of a putative class are treated as if they were parties to the action itself."  *Boelstoff*, 540 F.3d at 1229.  This position is aligned with the primary purpose of statutes of limitation because it poses little threat to judicial efficiency, and most importantly, defendants are still afforded sufficient notice of the individual's claim to avoid surprise litigation.  In the case at bar, the myriad claims and class actions filed in the wake of Hurricanes Katrina and Rita provided Gulf Stream with sufficient notice to collect and preserve any evidence surrounding this and other products liability claims.  As a manufacturer of one of the brands of allegedly defective trailers, Gulf Stream would have to be unacceptably naive to fail to preserve all evidence ensuing from these products liability claims.

In addition, given the lack of control that class members have over the timing of the certification decision, and the devastating effect that the statute of limitations may have on their claims, the Court should err on the side of allowing the claims to survive. Ultimately, excluding plaintiffs that file individual suits during the pendency of a class motion does not serve the policies behind statutes of limitations because there is no unfair surprise to the defendants, and the plaintiffs rather than "sleeping on their rights,"

are actively protecting their claims until they either affirmatively opt out or file individual suits.

**C.    Plaintiffs' Position is Consistent with the Policies Underlying Class Action Suits and Preserves Judicial Economy.**

Gulf Stream has failed to articulate sound legal reasoning or analysis to justify its harsh position.    Nonetheless, Plaintiffs are cognizant of the fact that the primary arguments against allowing action tolling for individual suits filed prior to class certification center on judicial efficiency.  *See Glater v. Eli Lilly & Co*., 712 F.2d 735, 739 (1st Cir. 1983); *see Wyser-Pratte Management Co. v. Telxon Corp*., 413 F.3d 553, 568-69 (6th Cir. 2005).  The argument is essentially that the purpose of the *American Pipe* doctrine is to reduce the number of suits filed in federal courts, and that allowing members of a putative class to file individual suits prior to class certification would achieve the opposite result of that sought by the Court in *American* Pipe, leading instead to an increase in the number of duplicative suits.  *See Glater*, 712 F.2d at 739. This argument is appealing at first glance, but is ultimately fatally flawed for numerous reasons.

To begin, the Supreme Court has recognized that there are multiple reasons why class members might wish to file independent lawsuits rather than participate in the class action.  *See American Pipe*, 414 U.S. at 350.  For example, the class member might wish to litigate in a forum different from the one chosen by the named plaintiffs in the original class action.  *Id*.  Alternatively, the class member might wish to exercise control over the litigation rather than share it with the named plaintiffs of the original class action.  *Id*.  Likewise, class members might fear that their motions to intervene will be denied on grounds "wholly unrelated to the merits" of their cases.  Whatever reasons

a plaintiff might have for filing an independent suit rather than intervening, the Supreme Court has determined that the essential justifications for class action tolling carry the same weight in a multitude of contexts.  *See id*. at 352-53.

Here, the Plaintiffs' proposed rule authorizes class members to decide to bring an individual action if they "either (1) deem their own claims valuable enough or (2) decide that class certification is doubtful."  *See Boellstoff*, 540 F.3d at 1233 (citing *In re WorldCom,* 496 F.3d at 256).  Because class members that file independent suits are likely the same class members who would likely opt out of certified classes in any event, the goal of judicial efficiency is only minimally served by restricting tolling to those who wait for class certification.  *See id*.  This is true for two reasons.  First, only a small percentage of putative class members would choose to file independent suits before class certification but after their statutes of limitations had run.  *See id.*  Second, a restriction on tolling would merely remove suits from dockets today and delay them until a later time.  *See id*.  Once that time arrives (a determination on certification), the Court will be faced with a stampede of simultaneous individual filings.

Additionally, *American Pipe* explicitly states that "although a defendant may prefer not to defend against multiple actions . . . this is not an interest that statutes of limitations are designed to protect."  *Id*. at 353.  This is precisely why arguments relied primarily upon the justification of judicial economy are so flawed.   This proposition was best articualted by the Second Circuit:

> The district court may be correct that its conception of the *American Pipe* rule would reduce the number of individual suits filed by class members. But this is beside the point. While reduction in the number of suits may be an incidental benefit of the *American Pipe* doctrine, it was not the purpose of *American Pipe* either to reduce the number of suits filed, or to force individual plaintiffs to make an early decision whether to proceed by individual suit or rely on a class

representative. Nor was the purpose of *American Pipe* to protect the desire of a defendant "not to defend against multiple actions in multiple forums." *Crown,* 462 U.S. at 353, 103 S.Ct. 2392. The *American Pipe* tolling doctrine was created to protect class members from being *forced* to file individual suits in order to preserve their claims. It was not meant to induce class members to forgo their right to sue individually.

*In re WorldCom*, 496 F.3d at 254-256.  Judge Duval adopted the Second Circuit's analysis in *In re Katrina Canal Breaches* and declared "[t]his Court embraces the *WorldCom* rationale . . . .as it appears to the Court that the major impetus for the 'majority view' was inconvenience for the Court because of the possibility of numerous filings.  Such a result could be handled with the administrative closing of such suits".  *In re Katrina Canal Breaches,*  2008 WL 2692674 * 4; *See also Lory v. La. Farm Bureau Ins. Co.,* 2012 WL 996536 (La. App. 1st Cir. 3/23/2012) (Hughes, J., dissenting) (opining *In re Katrina Canal* expressly adopted the Second Circuit's view).  Therefore, this Court should not overextend itself to protect defendants wholly at the expense of the plaintiffs and ignore the fact that a reduction in the number of suits was an incidental benefit of the *American Pipe* doctrine, but not its primary purpose.  *In re WorldCom*, 496 F.3d at 256

Finally, the application of *American Pipe* tolling to cases like these before the Court do not involving "tolling" in its traditional sense.  *See Boellstorff*, 540 F.3d at 1233. This is because class actions contain an inherently representative component, meaning each putative class member has functionally been a party to a suit against the defendant (because a class action covering all class members was originally filed).  *See id*.  *American Pipe* made much of this principle, positing that the class action tolling doctrine would apply regardless of the reliance or awareness of putative class members.  *American Pipe*, 414 U.S. at 551-52.  Therefore, the original suit filed on May

18, 2006 alleging similar claims against Gulf Steam, essentially pre-filed the *Bauer* plaintiffs claims.  Accordingly, when the *Bauer* plaintiffs filed individual suit on December 1, 2008, the *Bauer* plaintiffs merely retook the reins from the petitioned for class.  *See id.*  Therefore, the statute of limitations remained tolled and Plaintiffs did not retroactively "opt-out" entirely of the putative class.

**D.   The Defendant's Argument is Based On Flawed and Legally Distinguishable Judicial Decisions.**

Gulf Stream cites primarily four cases for the proposition that a plaintiff "opts-out" of putative class by filing an independent suit on their own, before the Court rules on class certification. *Katz v. Allstate Ins. Co.*, 04-1133 917 So.2d 443 (La. App. 4 Cir. 02/02/05); *Dixey v. Allstate Ins. Co.*, 09-4443, 2011 WL 44039888 (E.D. La. Sept. 21, 2011); *Lester v. Exxon Mobile Corp.*, 42 So.3d 1071 (La. App. 5 Cir. 06/29/10); *Duckworth v. La. Farm Bureau Mut. Ins. Co.*, 2011-0837, 2011 WL 5900384 (La. App. 4 Cir. 11/23/11).  According to Gulf Stream, these plaintiffs that "opt-out" of the putative class also forfeit the benefits of Article 596 tolling.  However, subjecting the Defendant's purported authorities to closer scrutiny quickly reveals why they are flawed and inapplicable.

First, *Lester* relied mainly on several federal district court decisions interpreting the tolling provisions as set forth in *American Pipe* not to apply where a plaintiff files an individual action before a ruling on class certification. The specific cases relied upon in *Lester* were *overruled* by the Second Circuit in *In Re WorldCom,* 496 F. 3d at 245. Second, *Lester* turned upon the fact that the plaintiff's amending petitions alleging wrongful death should have been filed within one year from the date of death of the putative class members' claims and did not "relate back" to previous filings.  *See Lester*,

42 So.3d 1076.   In contrast, the case before the Court has nothing to do with suspension of prescription, but instead interruption.   Third*, Lester* conflicts with the Fourth Circuit's five-judge panel decision in *Pitts v. La. Citizens Corp.,* 4 So.3d 107.   In *Pitts* the plaintiff filed her individual petition after the trial court rendered judgment excluding her from a certified class, but before notice of the class restriction and her exclusion was published. The defendant filed an exception of prescription and the trial court granted the exception.   The appellate court held that under La. Code Civ. P. art. 596, prescription of Ms. Pitts' claims were suspended by the filing of certain class actions, rejecting the premise underlying *Lester*.

Further, *Katz v. Allstate Insurance Company* failed to provide anything but token cursory analysis as to why the Court should not extend tolling protections to plaintiffs who file an individual suit prior to a determination on class certification.   *See Katz*, 917 So.2d at 447.   Moreover, *Katz* was reasoning was criticized by the Louisiana Supreme Court in *Taranto v. Louisiana Citizens Property Insurance Corporation,* 2010 WL 0105 (La. 3/15/2011), 62 So.3d 721, 730 and described as "without analysis."   In fact, *Taranto* reversed *Katz* by stating that a one-year contractual limitation on the filing of suit, in an insurance policy, invokes the prescription laws of the state and are therefore subject to statutory suspension of prescription principles.   *Id.* at 730.

Further, the holdings of *Lester* and *Duckworth* turn the purpose of statutes of limitations generally, and the tolling effect of a pending class action specifically, upside down, essentially requiring that a plaintiff whose claim is tolled by the suspension of prescription wait until a dispute is more stale before filing an individual suit.   Additionally, these cases made the odd pronouncement that the plaintiffs lost their right to sue

15

because they filed their individual claims too soon, creating an utterly illogical rule of law in which filing prematurely will permanently deprive a plaintiff of their right to sue. Finally, both *Duckworth* and *Dixey* are flawed in that they merely cite the flawed authority of *Katz* and *Lester*.  *See Dixey,* 2011 WL 44039888; *Duckworth*, 2011 WL 5900384.

**E.    The *Bauer* Plaintiffs Did Not "Opt-Out" of the Class Action Because No "Election Forum" Was Ever Submitted, As Required by Article 596(A)(1) of the Louisiana Code of Civil Procedure.**

Defendant's construction of Article 596 amounts to the creation of language where none exists and runs contrary to the rule of strict statutory construction applicable to prescription statutes.  Article 596(A)(1) does not specify that election ("opt out") may only be exercised from a certified class.  Likewise, Article 596 does not expressly provide for a forfeiture of the suspension of prescription accrued during the pending class action, nor does the article describe what actions taken by a litigant would trigger a forfeiture of the suspension of prescription.  Therefore, so long as the claims share a sufficient nexus with the initial class claims, there is no reason to deny the benefits of *American Pipe* tolling to the putative class members because the defendant received adequate notice of the nature of the claims that might be brought against it.  Such a determination is also at odds with this Court's precedent of construing statutes against prescription.  *See Tarver*, 635 So.2d at 1098 ("Of the two possible [prescription] constructions, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement, should be adopted.") (citation omitted).

Even if filing an individual suit somehow constituted an opt-out, such action would still not be sufficient to interrupt the suspension triggered by the clear language of

Article 596 because Plaintiffs never submitted an election form that documented any intent to opt-out of the suit.  Indeed, Article 9 of the Louisiana Code of Civil Procedure provides that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."  Here, Article 596(A)(1) states that "[p]rescription which has been suspended as provided herein, begins to run again as to any person electing to be excluded from the class, *thirty days from the submission of that person's election form*."  Here, the plain language of the statute makes clear that prescription begins to run again when someone opts out of the class "thirty days from the submission of that person's election form." Even if filing an earlier suit constitutes an opt-out from the suit, Article 596(A)(1) makes clear that prescription continues to run until the election form is submitted.

**F.    Individual Plaintiff Explanations**

Each Plaintiff's claim is addressed individually below:

- Plaintiff, Janet Alexander, alleges on the Plaintiff Fact Sheet that the injury occurred on May 01, 2006, the date upon which Plaintiff moved into the trailer. The *Hilliard* suit against Gulf Steam was initially filed on May 18, 2006.  A Motion to Certify Class was filed on October 28, 2008. The *Belinda Bauer* complaint was filed on December 1, 2008.   The *Angela Pittman* complaint was filed on July 30, 2010.  The *Belinda Bauer* complaint was dismissed on January 19, 2011. Thus, the claim is not prescribed.

- Plaintiff, Glenda Bounds on behalf of the minor, Devin Bounds, alleges on the Plaintiff Fact Sheet that the injury occurred on September 01, 2005, the date upon which Plaintiff moved into the trailer. The *Hilliard* suit against Gulf Steam was initially filed on May 18, 2006.  A Motion to Certify Class was filed on October 28, 2008. The *Belinda Bauer* complaint was filed on December 1, 2008.   The *Angela Pittman* complaint was filed on July 30, 2010.  The *Belinda Bauer* complaint was dismissed on January 19, 2011. Thus, the claim is not prescribed.

- Plaintiff, Glenda Bounds, alleges on the Plaintiff Fact Sheet that the injury occurred on September 01, 2005, the date upon which Plaintiff moved into the trailer. The *Hilliard* suit against Gulf Steam was initially filed on May 18, 2006. A Motion to Certify Class was filed on October 28, 2008. The *Belinda Bauer* complaint was filed on December 1, 2008. The *Angela Pittman* complaint was filed on July 30, 2010. The *Belinda Bauer* complaint was dismissed on January 19, 2011. Thus, the claim is not prescribed.

- Plaintiff, Lisa Beard on behalf of Brandon Dandrea, alleges on the Plaintiff Fact Sheet that the injury occurred on September 01, 2005, the date upon which Plaintiff moved into the trailer. The *Hilliard* suit against Gulf Steam was initially filed on May 18, 2006. A Motion to Certify Class was filed on October 28, 2008. The *Belinda Bauer* complaint was filed on December 1, 2008. The *Angela Pittman* complaint was filed on July 30, 2010. The *Belinda Bauer* complaint was dismissed on January 19, 2011. Thus, the claim is not prescribed.

- Plaintiff, Marian Epperson, alleges on the Plaintiff Fact Sheet that the injury occurred on September 01, 2005, the date upon which Plaintiff moved into the trailer. The *Hilliard* suit against Gulf Steam was initially filed on May 18, 2006. A Motion to Certify Class was filed on October 28, 2008. The *Belinda Bauer* complaint was filed on December 1, 2008. The *Angela Pittman* complaint was filed on July 30, 2010. The *Belinda Bauer* complaint was dismissed on January 19, 2011. Thus, the claim is not prescribed.

- Plaintiff, John Lose, alleges on the Plaintiff Fact Sheet that the injury occurred on October 01, 2005, the date upon which Plaintiff moved into the trailer. The *Hilliard* suit against Gulf Steam was initially filed on May 18, 2006. A Motion to Certify Class was filed on October 28, 2008. The *Belinda Bauer* complaint was filed on December 1, 2008. The *Angela Pittman* complaint was filed on July 30, 2010. The *Belinda Bauer* complaint was dismissed on January 19, 2011. Thus, the claim is not prescribed.

- Plaintiff, Patti Lose, alleges on the Plaintiff Fact Sheet that the injury occurred on October 01, 2005, the date upon which Plaintiff moved into the trailer. The *Hilliard* suit against Gulf Steam was initially filed on May 18, 2006. A Motion to Certify Class was filed on October 28, 2008. The *Belinda Bauer* complaint was filed on December 1, 2008. The *Angela Pittman* complaint was filed on July 30, 2010. The *Belinda Bauer* complaint was dismissed on January 19, 2011. Thus, the claim is not prescribed.

## Conclusion

Therefore, Plaintiffs' claims were tolled and filed well within the statute of limitations.  For the reasons set forth herein, this Court should **DENY** Defendant's Motion.

Respectfully submitted,
/s/ Robert C. Hilliard
**ROBERT C. HILLIARD**
**Trial Attorney in Charge for Plaintiff**
Texas State Bar No. 09677700
Southern District of TX Federal ID No.  5912
ROBERT C. HILLIARD, L.L.P.
719 S. Shoreline Boulevard, Suite 500
Corpus Christi, Texas 78401
Telephone:  (361) 882-1612
Facsimile:  (361) 882-3015


**MIKAL C. WATTS**
Texas State Bar No. 20981820
Southern District of TX Federal ID No. 12419
MIKAL C. WATTS, P.C.
2506 N. Port Ave.
Corpus Christi, Texas 78401
Telephone: (800) 994-0019
Facsimile: (361) 882-1261

**ATTORNEYS FOR PLAINTIFFS**



## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading was served on all counsel of record through electronic notification pursuant to the electronic filing in the United States District Court for the Eastern District of Louisiana this 8th day of May, 2012.


/s/ Robert C. Hilliard

_____
**ROBERT C. HILLIARD**