UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re:  FEMA TRAILER
FORMALDEHYDE PRODUCTS
LIABILITY LITIGATION

| | |
|---|---|
| VANESTA CHAMBERS, ET AL. | PLAINTIFFS |
| VS. | CIVIL ACTION NO. 2:09-cv-8057-KDE-ALC |
| FOREST RIVER, INC., ET AL., | DEFENDANTS |

SECOND AMENDING COMPLAINT
JURY TRIAL REQUESTED

NOW INTO THE COURT comes the Petitioners to supplement and amend their
Complaint, the following respects, to wit:

1.     Plaintiffs are adult and minor citizens that resided in the state of Mississippi
during and after the destruction of Hurricane Katrina.  Plaintiffs are all part of the original
Complaint filed in the United States District Court, Southern District of Mississippi
Eastern Division and under Civil Action Number 09-6214, filed by Ruben Green, et al v.
Gulfstream Coach, Inc., et al.  A list of Plaintiffs and their addresses is provided in
Exhibit "A."

2.     **Forest River, Inc.** is upon information and belief an Indiana corporate entity
which conducts business in the state of Mississippi and which manufactured and supplied
FEMA trailers or housing units as defined below pursuant to contracts with FEMA for
use in Mississippi. See additional Defendants listed in Exhibit "B".

3.     **Bechtel Corporation**, a Nevada corporation with its principal place of business in
San Francisco, California, which received a contract from FEMA which tasked them

with, amongst other things, performing significant functions in transportation, delivery, installation, blocking, maintenance, repair, de-installation and refurbishment of the temporary housing units provided by FEMA.

4.    **CH2M Hill, Inc.**, a Florida corporation with its principal place of business in Englewood, Colorado, which received a contract from FEMA which tasked them with, amongst other things, performing significant functions in transportation, delivery, installation, blocking, maintenance, repair, de-installation and refurbishment of the temporary housing units provided by FEMA.

5.    **ALCATEC LLC,** a Mississippi limited liability company which received a contract from FEMA which tasked them with, amongst other things, performing significant functions in transportation, delivery, installation, blocking, maintenance, repair, de-installation and refurbishment of the temporary housing units provided by FEMA.

6.    John Doe Defendants 26-100 are Defendants that received contracts from FEMA and were tasked with, amongst other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of Hurricane Katrina.  These entities consist of both Mississippi corporations and foreign corporations that do business within the state of Mississippi.

7.    Other as yet unnamed Defendants which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in Mississippi.

<u>**VENUE**</u>

8.      Certain Manufacturing Defendants named herein are subject to the *in personam* jurisdiction of this Court because they do substantial business in the State of Mississippi and within this federal district, and were at all times relevant hereto engaged in commerce both in this federal district and in the State of Mississippi. The remaining Manufacturing Defendants do substantial business in the State of Mississippi, and at all times relevant were hereto engaged in commerce within said State.

9.      Plaintiffs allege that they individual have suffered damages in an amount in excess of $75,000.00 exclusive of interest and court costs.

10.     Venue is proper in this district pursuant to 28 U.S.C. §1391 because a large portion of the negligent and wrongful actions of the defendants occurred in the Southern District of Mississippi.

## BACKGROUND

11.     On August 29, 2005 Hurricane Katrina stuck the Mississippi Gulf Coast, as a Category 4 hurricane. Katrina's fury devastated many of the homes of Harrison County, including the home of the Plaintiffs.

12.     After the hurricane, the Plaintiffs resided in travel trailers (hereinafter referred to as "FEMA Trailers") that were provided by the Federal Emergency Management Agency ("FEMA") for "temporary" housing. The specific FEMA Trailer in which the Plaintiffs resided was manufactured by the Defendants listed in paragraphs 3 through 26, (hereinafter referred to as "Defendant Manufacturer").

13.     FEMA contracted to purchase approximately 120,000 of these FEMA Trailers from numerous private manufacturing companies who reportedly grossed over a billion dollars from the sale of these FEMA Trailers. The named Defendant Manufacturer is one

3

of these many manufactures and manufactured the specific trailer the in which the Plaintiffs resided.

14.     Tragically, the rush by Defendant Manufacturer to pursue profit led to the Defendant Manufacturer producing and delivering unsafe and hazardous units. Due to the fault of the Manufacturer Defendant, FEMA Trailers contain a high level of formaldehyde, a known carcinogen and toxic chemical.

15.     In order to manage the significant obligation of providing housing to the victims of Katrina, FEMA engaged various groups to assist with many aspects of the project. Engaged through contracts, these individuals (hereinafter referred to as "Contract Defendants") were to provide information and advice on, among other things, the conversion of mobile travel trailers into temporary housing units for periods up to, and potentially exceeding, eighteen months in duration.

16.     The Contract Defendants were tasked with the transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units.

17.     Under the terms of their contracts, the Contract Defendants were obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and indicated by the manufacturers of same. Further, under their contract with FEMA, the Contract Defendants were obligated to advise and instruct FEMA regarding the implementation of those contracts. The Contract Defendants failed to properly fulfill any and all tasks due to FEMA and the Plaintiff.

4

18.     The Plaintiffs spent significant time in their FEMA Trailers, which were manufactured by the Defendant Manufacturer and supervised by the Contract Defendants and which exposed them to dangerously high concentrations of formaldehyde fumes.

19.     Although the Defendant Manufacturer knew or should have known of the health hazards inherent in the FEMA Trailers they were making, selling, distributing and delivering, the Defendant Manufacturer failed to inspect the trailers, failed to warn the Plaintiffs of the deadly dangerous of formaldehyde, failed to design the trailers with any suitable or adequate ventilation and failed to construct the trailers with materials that would not emit hazardous levels of formaldehyde and/or failed to follow a proper manufacturing process that would serve to lower the amount of formaldehyde fumes in the FEMA Trailers.

20.     Defendant Manufacturer ignored and/or withheld vital information in order to sell their products and/or to avoid the costs necessary to ensure safety to their end user.  The FEMA Trailers provided have been and continue to be unsafe and present a clear and present danger to the health and well being of the Plaintiffs, causing immediate and long term risk to their health.

21.     Formaldehyde is used in the manufacture of certain construction materials such as particle board and plywood, both of which are often used in the manufactured home industry.  There is no doubt that the Defendant Manufacturer had knowledge of the dangers that formaldehyde presented.  In fact, Defendant was required by federal law to display a "Health Notice" about exposure to formaldehyde which reads as follows:

> IMPORTANT HEALTH NOTICE
>         Some of the building materials used in this home emit formaldehyde.  Eye, nose and throat irritation, headache, nausea, and a variety of asthma-like symptoms, including shortness of breath, have

been reported as a result of formaldehyde exposure. Elderly persons and young children as well as anyone with a history of asthma, allergies, or lung problems, may be at greater risk. Research is continuing on the possible long-term effects of exposure to formaldehyde.

Reduced ventilation resulting from energy efficiency standards may allow formaldehyde and other contaminants to accumulate in the indoor air. Additional ventilation to dilute the indoor air may be obtained from a passive or mechanical ventilation system offered by the manufacturer. Consult your dealer for information about the ventilation options offered with this home.

High indoor temperatures and humidity raise formaldehyde levels. When a home is to be located in areas subject to extreme summer temperatures, an air-conditioning system can be used to control indoor temperature levels. Check the comfort cooling certificate to determine if this home has been equipped or designed for the installation of an air-conditioning system. If you have any questions regarding the health effects of formaldehyde, consult your doctor or local health department.
See 24 C.F.R. §3280.309.

22.     According to the National Cancer Institute, formaldehyde has been classified as a human carcinogen (cancer-causing substance) by the International Agency for Research on Cancer and as a probably human carcinogen by the U.S. Environmental Protection Agency.

23.     ASTDR, OSHA and NIOSH have all set limits on formaldehyde exposure for adults in the workplace, based on a forty hour work week. Specifically, OSHA reduced the acceptable amount of formaldehyde to which a worker can be exposed over an eight hour day from 3 parts per million (ppm) to 1ppm in 1987. By May of 1992, the limit was further reduced to only 0.75ppm.

24.     The Department of Housing and Urban Development ("HUD") regulates formaldehyde levels in certain construction materials, including the pressed wood products used in manufactured housing (such as those used by Defendant Manufacturer).

6

Their regulation states that plywood "shall not emit formaldehyde in excess of 0.2 parts per million . . ."   Similarly, regulations require that particleboard materials shall not emit formaldehyde in excess of 0.3 ppm . . ." *See* 24 C.F.R. §3280.308.

25.    OSHA also requires medical monitoring for all employees exposed to a time-weighted average concentration of formaldehyde of 0.1 ppm or more.

26.    Knowing these facts, the Manufacturer Defendant provided trailers to the victims of Katrina (the Plaintiffs included), each of which emit formaldehyde at a dangerously unhealthy rate in excess of any accepted level, and which have resulted and will continue to result in injury to the Plaintiffs.

27.    The Contract Defendants were tasked under their contracts with FEMA to identify and prepare the infrastructure for the various group site locations each Contract Defendant would operate.  This included, amongst other things, ensuring there would be adequate water, sewage, electricity and other amenities for the habitability of the FEMA Trailer.  The Contract Defendants knew or should have known that these preparations were for long-term occupancy of the temporary housing units.

28.    Once the temporary housing units were transported and delivered to a particular location, the Contract Defendants had the responsibility for installing the housing unit. The Contract Defendants installed the temporary housing units by "blocking" the unit. This meant raising the unit several feet into the air and off its wheel base, and setting it on concrete blocks.

29.    By blocking the FEMA Trailers, the Contract Defendants created stress and flexing on the frames of the units.  The stress and flexing of the FEMA Trailers' frames

caused by this "blocking" distorted the FEMA Trailers' shells, allowing increased moisture intrusion which contributed to increased formaldehyde exposures.

30.     Once the Contract Defendants had completed the transportation, delivery and installation of the FEMA Trailer, the Contract Defendants were also asked with inspecting the units to ensure they were safe and habitable, prior to occupancy by the victims of Hurricane Katrina.  The Contract Defendants failed to adequately inspect the FEMA Trailers to ensure that the units were safe and suitable for long-term occupancy by individuals and families displaced by Hurricane Katrina.  This failure to properly inspect the FEMA Trailers for unsafe and/or hazardous conditions directly contributed to the adverse health effects suffered by the hurricane victims.

31.     Contract Defendants were also responsible for the management, maintenance, repair and care of the FEMA Trailers.  The Contract Defendants failed to undertake appropriate action, maintenance or repair in response to the numerous complaints made by the Plaintiff about the condition of his FEMA Trailer and the various adverse health effects caused by exposure to elevated levels of formaldehyde.

32.     The Contract Defendants failed, at every stage of their involvement, to warn the Plaintiffs of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde.

**COUNT ONE:**
**STRICT PRODUCT LIABILITY**
**MS CODE ANNOTATED §11-1-63**
**DEFECTIVE MANUFACTURING AND DESIGN**

## DEFENDANT MANUFACTURER

33.     Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

34.     Manufacturing Defendant, at the time the subject FEMA Trailer left their control, knew or should have known that the products were defective because they deviated in a material way from manufacturers' specifications or from otherwise identical units manufactured to the same manufacturing specifications.

35.     The Manufacturing Defendants knew or should have known that the defective condition rendered the subject FEMA Trailers unreasonably dangerous to the user or consumer or others; and

36.     The defective and unreasonably dangerous condition of the product (the failure of the FEMA Trailers to be safely habitable without undue exposure to formaldehyde) proximately caused the damages and injuries sustained by Plaintiffs.

37.     At the time the subject FEMA Trailers left control of the Defendant Manufacturer, the trailers did not contain properly selected prepared and installed components.

38.     At all relative times, Plaintiffs lacked actual or constructive knowledge of the defective condition of the FEMA Trailers and that the said trailers were inconsistent with normal required safety standards.

39.     At all relative times, the Plaintiffs did not appreciate the danger of the FEMA Trailers defective conditions.

40.     At all relative times, the Plaintiffs did not deliberately nor voluntarily choose to expose themselves to this dangerous in such a manner to register assent to the continuance of the dangerous condition.

41.    The FEMA Trailers manufactured by the Manufacturer Defendant failed to function as expected as a result of their design characteristics.

42.    An alternative design existed (and was the industry standard) at the time the housing units left control of the Manufacturer Defendants which would not have impaired the products' usefulness or desirability.

43.    The alternative design would have to a reasonable probability prevented the toxic exposure of the Plaintiffs.

**COUNT TWO:**
**MS CODE ANNOTATED §11-1-63**
**CONTRACT DEFENDANT**

44.    Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

45.    The Contract Defendants, at the time the FEMA Trailers left their control, knew or should have known the products were defective because they deviated in a material way from the manufacturers' warnings.

46.    The Contract Defendants, by installing the temporary housing units on concrete blocks for extended occupancy, knowingly and intentionally modified the design and the actual use of the units.

47.    The Contract Defendants knew or should have known that the defective condition rendered the FEMA Trailer unreasonable dangerous to the Plaintiffs and others.

48.    The defective and unreasonably dangerous conditions of the product, the failure of the FEMA Trailer to be safely habitable and free from hazardous levels of formaldehyde, proximately caused damages and injuries sustained by Plaintiffs.

49.     At all relative times, the Plaintiffs lacked actual or constructive knowledge of the defective condition of the products and that the defective products were inconsistent with their safety.

50.     At all relative times, the Plaintiffs did not deliberately nor voluntarily choose to expose themselves to this danger in such a manner to register assent to the continuance of the dangerous condition

51.     An alternative installation procedure existed at the time the FEMA Trailers left control of the Contract Defendants which would not have impaired or negatively impacted the product's usefulness or desirability.  This design would have to a reasonable probability prevented increased toxic exposure to the Plaintiffs.

**COUNT THREE:**
**FAILURE TO WARN**
**DEFENDANT MANUFACTURER AND CONTRACT DEFENDANTS**

52.     Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

53.     The FEMA Trailers manufactured by the Defendant Manufacturer were defective in that they failed to provide or contain any adequate warnings or instructions.

54.     The Contract Defendants failed to warn the Plaintiffs of the inherently dangerous properties of the foreseeable conditions of the FEMA Trailer when used for long term occupancy.

55.     The Contract Defendants failed to warn the Plaintiffs of the presence of excessive levels of formaldehyde present in the FEMA Trailer they installed and supervised.

**COUNT FOUR:**
**BREACH OF EXPRESS WARRANTY**
**DEEFENDANT MANUFACTURER**

56.     Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

57.     The FEMA Trailers manufactured by the Defendant Manufacturer breached an express warranty and/or failed utterly to conform to other express factual representations upon which the claimant justifiably relied in electing to use these products.

**COUNT FIVE:**
**BREACH OF IMPLIED WARRANTY**
**DEEFENDANT MANUFACTURER- CONTRACT DEFENDANT**

58.     Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

59.     The Defendant Manufacturer breached the implied warranty of habitability due to the Plaintiffs.  These homes were manufactured with the expectation that the end user would be residing in the home for at least a period of eighteen months.  There is a clear implied warranty that such housing would be safe and free of any toxic dangers.

60.     The Contract Defendant breached the implied warranty of habitability due to the Plaintiffs.  These homes were installed and maintained with an expectation of habitability and a clear implied warranty that such housing would be safe and free of any toxic dangers.

**COUNT SIX:**
**NEGLIGENCE**
**DEFENDANT MANUFACTURER**

61.     Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

62.     At all times relevant hereto, the Defendant Manufacturer was under a duty to use due care and caution for the safety of foreseeable users and occupants of the FEMA Trailer homes, including the Plaintiffs:

    (a)     In manufacturing, marketing, distributing, licensing, and selling the FEMA Trailer;

    (b)     In observing and complying with the requirements of all applicable statutes, regulations, and ordinances;

    (c)     In ensuring that the product met or exceeded industry standards and government standards; and

12

(d)     In alerting consumers and occupants of the defects in the mobile homes through a meaningful product recall or other notice of defects to the marketplace.

63.     In violation of said duties, the Defendant Manufacturers were negligent, reckless, and/or willful in the following:

(a)     The manufacturing, testing, marketing, distribution, licensing and sale of the FEMA Trailer which was defective and unreasonable dangerous for their foreseeable use because of excessive emissions of formaldehyde;

(b)     The failure to properly test the FEMA Trailers to properly evaluate their level of emissions of formaldehyde under foreseeable conditions for extended periods of time;

(c)     In manufacturing, advertising, marketing, distributing, and selling the FEMA Trailers to third-parties including, and without limit, government personnel and end users when the Manufacturer Defendant knew or should have known the mobile homes were defective and unsuitable for use under the foreseeable conditions;

(d)     The failure to provide adequate and proper warnings to the occupants and end-users of the FEMA Trailers of the presence of excessive levels of emissions of formaldehyde and the hazards associated with the excessive levels of emissions of formaldehyde.

(e)     The failure to provide proper and adequate updates, information, and warnings to occupants and end-users, after the sale of the FEMA Trailers, of the hazards associated with the excessive levels of emissions of formaldehyde; and

(f)     The failure to properly hire, train and supervise individuals who, in turn, would inspect materials manufactured by vendors of wood products used in FEMA Trailers to ensure that such wood materials did not emit excessive levels of formaldehyde.

64.     As the direct and proximate result of the acts and/or omissions of the Defendant Manufacturer, the Plaintiffs have suffered and will suffer injury and damages.

### COUNT SEVEN:
### NEGLIGENCE
### CONTRACT DEFENDANTS

65.     Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

66.     At all relevant times the Contract Defendants were tasked with the transportation, installation, site identification, preparation, inspection, maintenance and repair of the FEMA Trailer, which caused the Plaintiffs' injuries.

67.     The Contract Defendants owed a duty to the Plaintiffs to provide, transport, install, inspect, maintain and repair safe FEMA Trailer units that did not emit hazardous levels of formaldehyde.

68.     The Contract Defendants breached their duty to the Plaintiffs in failing to act reasonably in the provision, transportation, installation, maintenance and repair of the FEMA Trailer; specifically by:

      (a)   Failing to sufficiently warn the Plaintiffs of the inherently dangerous properties or the foreseeable conditions of the FEMA Trailers when used for long term occupancy;
      (b)   Failing to adhere to the Defendant Manufacturer's warnings against jacking the FEMA Trailer off the wheel base by "blocking" the unit;

69.     The Contract Defendants' actions were the proximate cause of the increased exposure of formaldehyde to the Plaintiffs.

## COMPENSATORY DAMAGES

70.     Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

71.     As a direct and proximate result of the Defendant Manufacturer and Contract Defendants' acts and omissions, Plaintiffs have suffered and will continue to suffer damages in an amount in excess of the minimum jurisdictional limits of the court for past and future physical pain and mental suffering, past and future reasonable and necessary medical expenses and monitoring, past and future physical impairments and disability, past and future loss of earning capacity, and past and future loss of enjoyment and quality of life and other damages and injuries set for above, including damages Plaintiffs suffered from exposure to formaldehyde, a carcinogenic material.

72.     Plaintiffs, as a direct and proximate result of the Defendant Manufacturer and Contract Defendants' negligence, malicious, fraudulent and intentional acts and

omissions, and as a direct result of the other causes of action described above, have experienced and continue to experience severe mental pain, anguish and suffering directly attributable to the occurrence made the basis of this lawsuit and directly attributable to their injuries and the harm they have suffered.

73.     Plaintiffs have suffered sizeable out-of-pocket expenses which include travel expenses, attorney's fees, costs of court, time from work and other expenses. Accordingly, Plaintiffs seek all general, special incidental and consequential damages as shall be proven at the time of trial, including exemplary, enhanced and trebled damages, pre-judgment interest, and post-judgment interest.

74.     As a result of the FEMA Trailers' component parts emitting excessive and dangerous levels of formaldehyde, the trailers are dangerous to any human health.

75.     The amount of total damages suffered by Plaintiffs is significant and continuing in nature.  Plaintiffs reserve the right to amend and state further with respect to his damages.

## PUNITIVE/EXEMPLARY DAMAGES

76.     Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

77.     Pursuant to Miss. Code Ann. §11-1-65, inasmuch as the conduct of the Defendant Manufacturer, Contract Defendants and the servant/employees of both entities constitutes willful, wanton, egregious and reckless disregard for the rights, safety and welfare of the Plaintiffs, an award of punitive damages in appropriate and necessary under the facts at hand.

78.     The Plaintiffs respectfully demand a jury trial.

**WHEREFORE**, the Plaintiffs pray that:

1.     The Plaintiffs be awarded actual, consequential and punitive damages;

2.      The Defendant Manufacturer and Contract Defendants provide the

Plaintiffs with medical testing to determine the adverse effects of

formaldehyde exposure and medical monitoring and surveillance;

3.      The Plaintiffs be awarded their attorneys' fees, expenses and costs of this

action;

4.      The Plaintiffs be awarded prejudgment interest from the date of the filing

of this Complaint, and any further relief as the Court may deem

appropriate

THIS the 26th day of March,  2012.


Respectfully submitted,

**JOHN ARTHUR EAVES LAW OFFICES**

By: */s/ John Arthur Eaves*
        John Arthur Eaves (MSB 8843)
        Jon-Marc King (MSB 9736)
        Shana D. Fondren (MSB 100762)
        Anders Ferrington (MSB 102444)
        Eaves Law Offices
        101 North State Street
        Jackson, MS 39201
        Phone: (601) 355-7961
        Fax: (601) 355-0530

        **Attorneys for Plaintiff**

EXHBIBIT "A" FOREST RIVER
CIV. ACT. NO. 09-6214

| Last Name | First Name | Middle Name | Case No. | Contractor |
|---|---|---|---|---|
| Chambers | Vanesta | Individually and on behalf of M.F., minor child | 09-6214 | CH2MHILL |
| Green | Ruben | | 09-6214 | BECHTEL |
| Roux | Maureen | P. | 09-6214 | BECHTEL |
| Keys | Alisha | Individually and on behalf of A.K., T.K. and T.K., minor children | 09-6214 | UNKOWN |
| Keys, Jr. | Tommie | | 09-6214 | UNKOWN |
| Keys | Arneadra | | | UNKOWN |

EXHIBIT "B"

ADDITIONAL DEFENDANTS

| COMPANY NAME | REGISTERED AGENT | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| Bechtel Corporation | C T Corporation System | 818 West Seventh Street | Los Angeles | CA | 90017 |
| CH2M Hill, Inc. | C T Corporation System | 1200 South Pine Island Rd. | Plantation | FL | 33324 |
| Alcatec, LLC | Rosemary Barbour | 210 E. Capitol St., Ste M114 | Jackson | MS | 39201 |