```
 1                  UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF LOUISIANA

 3
     ****************************************************
 4
     IN RE:  FEMA TRAILER
 5   FORMALDEHYDE PRODUCTS
     LIABILITY LITIGATION
 6                         DOCKET MDL NO. 1873 "N"
                           NEW ORLEANS, LOUISIANA
 7                         FRIDAY, MAY 13, 2011

 8      8:30 A.M.

 9
     ****************************************************
10

11                  COMMITTEES' STATUS CONFERENCE

12                  TRANSCRIPT OF PROCEEDINGS

13        HEARD BEFORE THE HONORABLE KURT D. ENGELHARDT

14                  UNITED STATES DISTRICT JUDGE

15

16

17

18   SUSAN A. ZIELIE, RPR, FCRR
     OFFICIAL COURT REPORTER
19   UNITED STATES DIST COURT
     EASTERN DIST OF LOUISIANA
20   500 POYDRAS STREET
     ROOM HB-406
21   NEW ORLEANS, LA 70130
     504.589.7781
22   susan_zielie@laed.uscourts.gov

23

24   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.
     TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
25
```



EXHIBIT

C

```
 1 | APPEARANCES:
 2 |
   | FOR THE PLAINTIFFS:      WATTS GUERRA CRAFT
 3 |                          BY:  MIKAL C. WATTS, ESQ.
   |                          FOUR DOMINION DRIVE
 4 |                          BUILDING THREE, SUITE 100
   |                          SAN ANTONIO, TX 78257
 5 |
 6 | FOR THE PLAINTIFFS'      GAINSBURGH BENJAMIN DAVID
   | STEERING COMMITTEE:         MEUNIER AND WARSHAUER, LLC
 7 |                          BY: GERALD E. MEUNIER, ESQ.
   |                             DUSTIN WOODS, ESQ.
 8 |                          2800 ENERGY CENTRE
   |                          1100 POYDRAS STREET
 9 | •                        SUITE 2800
   |                          NEW ORLEANS LA  70163
10 |
11 | FOR THE DEFENDANTS:      DUPLASS ZWAIN BOURGEOIS
   |                          MORTON PFISTER WEINSTOCK
12 |                          BY:  ANDREW WEINSTOCK, ESQ.
   |                          THREE LAKEWAY CENTER
13 |                          3838 N. CAUSEWAY BOULEVARD
   |                          SUITE 2900
14 |                          METAIRIE LA   70002
15 |                          BAKER DONELSON BEARMAN
   |                          CALDWELL & BERKOWITZ
16 |                          BY: MICHAEL D. KURTZ,  ESQ.
   |                          201 ST. CHARLES AVENUE
17 |                          SUITE 3600
   |                          NEW ORLEANS LA   70170
18 |
19 | FOR THE UNITED STATES    UNITED STATES DEPARTMENT
   | AMERICA:                    OF JUSTICE
20 |                          CIVIL DIVISION, TORTS
   |                          BY:  HENRY T. MILLER, ESQ.
21 |                          P.O. BOX 340
   |                          BEN FRANKLIN STATION
22 |                          WASHINGTON DC  20004
23 | ALSO PRESENT:            ERNEST P. GIEGER, ESQ.
   |                          ANTHONY G. BUZBEE, ESQ.
24 |                          CHARLES PENOT, JR., ESQ.
25 |
```

```
 1            NEW ORLEANS, LOUISIANA; FRIDAY, MAY 13, 2011
 2                            8:30 A.M.
 3                 THE COURT:  If you haven't signed in yet --
 4    if you haven't signed in, make sure you sign in before
 5    you leave the room here today.
 6                 And also, for the sake of or record here,
 7    unless you're -- well, identify yourself the first
 8    couple of times you speak here so that we can make
 9    certain that we know who is talking for purposes the
10    record.
11                 I did get the joint reports, and went
12    through it.  Justin and Gerry do, either one of you all
13    want to highlight anything on here?  And then I'll ask
14    Andy and Joe and then of course David, Karen and then
15    Henry.  Anything that we need to talk about from your
16    point of view on the report?  It seems pretty
17    straightforward to me, and it follows the form that
18    we've been following.
19                 MR. WOODS:  It's all pretty straightforward.
20    I think the most important information for the larger
21    group, from our protective, is under Section IV, the
22    manufacturing house litigation track and where we are on
23    the proposed settlement and the notice and the deadlines
24    and the fairness hearing that is scheduled for August
25    22nd.  Everyone's received notice, we're in that
```

```
 1   process.  But that would be important we generate --
 2   that that fairness hearing is coming up and that there
 3   are certain deadlines associated with that.
 4              THE COURT:  Okay.
 5              MR. MEUNIER:  And then, Your Honor, the next
 6   section should probably be mentioned in open court, the
 7   fact that motions to dismiss are being filed for
 8   unmatched plaintiffs.  I think one of the things we
 9   discussed in chambers was the fact that, when a
10   defendant seeks to bring a motion to dismiss for a
11   matched plaintiff, there would first be a contact made
12   with the plaintiff's counsel.  So that, in some cases,
13   those may be unopposed.  It may be a plaintiff who has
14   dropped out or lost touch with, and only notice for a
15   hearing if there's some reason the plaintiff can make an
16   argument to you they should not be dismissed.
17              So the plaintiff lawyers need to be tuned in
18   to how we're going to approach these dismissals that are
19   now going to be filed and be prepared it tell the
20   defendants whether its unopposed or whether they have a
21   reason to come to court on.
22              THE COURT:  Okay.  Let me go back to the
23   pending motions here on Section III.  We have denied the
24   first one listed.
25              By way of an update here, the 14480 was
```

```
 1   denied in document No. 20.784.
 2              On the next page, page 3, document 19570 was
 3   granted in Docket No. 20914.
 4              And the one right below it, 19571, was
 5   granted in 20916. So those two can come off.
 6              And remind me at the end, for those of you
 7   -- I think Dennis, you're involved in the motions to
 8   enjoin, which would be 17661 -- the ones involving the
 9   Indiana cases, at the conclusion of our big status
10   conference, I'd like to talk to you all, including those
11   who aren't here but hopefully will be here for the big
12   conference, I'd like to talk to you all briefly about
13   the status of those. I think there's two motions. One
14   is the 17661, which is the third motion listed on this
15   draft, and it also appears, the issue has also been
16   raised in 20861m which appears on page 4. Those are the
17   Elkhart, Indiana motions.
18              Because we're after the May 1st date that I
19   had dealt with the state court judge on, and I'll tell
20   you what's going on in my end. I'm hoping to hear more
21   about what's going on on your end.
22              MR. MEUNIER: Judge, in Section X on
23   Miscellaneous, subparagraphs B and C, I'm reporting to
24   you that there have been settlement discussions with Dan
25   Balhoff with Sunnybrook and Sun Valley. The insurers in
```

```
 1   both of those cases are the same as involved in the
 2   state court, so it does link to the efforts we're making
 3   here.
 4             THE COURT:  I was hoping that would be the
 5   case, but we can just talk briefly after the big
 6   meeting.
 7             Anything else, Jerry and Justin, that you
 8   all would like to highlight off of the report?
 9             MR. MEUNIER:  On bellwether trials, Judge,
10   Section VI, I haven't had a chance to talk to Jimmy yet
11   about what if anything needs to be said in open court
12   about KZ RV.  There was a submitted motion to dismiss.
13   I think Charley Penot was going to be preparing a
14   revision of that to preserve plaintiff's claim as to
15   Fluor.  But he'd indicated that perhaps, since it was
16   previously announced that there was a trial, we ought to
17   say something in the larger session about the fact that
18   that trial has been bumped.
19             THE COURT:  Right.
20             MR. MEUNIER:  Pursuant to settlement.
21             MR. WEINSTOCK:  Can I suggest to Jerry and
22   Jimmy come up to the bench and talk to you about it
23   briefly?
24             THE COURT:  That's fine.  My purpose in
25   raising it is that we announced at the last conference
```

```
 1    the scheduled bellwethers including one that was to
 2    start on Monday.  So whatever you want to tell the group
 3    as to the circumstances of that case and the status of
 4    it is fine.  I don't want to cover it myself, but maybe
 5    Jerry when you --
 6                MR. MEUNIER:  There's an order in the record
 7    now saying it's dismissed.  You know, there's a public
 8    pleading on it.  But what if anything in addition we
 9    want to say or need to say, I'll check with Jimmy and
10    come up with something.
11                THE COURT:  Right.  If you want to just
12    limit it to what's set forth in the order, you know, it
13    begs a lot of questions that I know you all either
14    aren't prepared to answer today or don't wish to answer
15    today.  And all of that's fine with me, so long as the
16    group out there who is not familiar and maybe who's been
17    depending on the national flow of information maybe
18    hasn't checked the record or maybe hasn't received that
19    order or looked at that order, I would like some note to
20    be made that that is no longer listed as a bellwether
21    and is not going to begin on Monday morning.
22                MR. MEUNIER:  Right.
23                THE COURT:  All right.  Anything else that
24    you all would highlight here in this committee, other
25    than -- the committee meeting as opposed to the big one?
```

```
 1              MR. WOODS:  There is, just in Section IX,
 2    the last sentence, I would like to edit that and delete
 3    it.  It's on page 9 right before Section X, the
 4    claimants have until Friday, April 8th to file
 5    objections.  Since that has passed, I'd like to take
 6    that out.
 7              THE COURT:  All right.  Go ahead.
 8              MR. MEUNIER:  If you're finished with that,
 9    just getting back to Section X.B and C, I think the most
10    appropriate thing to say is that the discussions have
11    taken place and will be continuing.
12              THE COURT:  Right.
13              MR. MEUNIER:  We remain hopeful, but we're
14    not there yet.
15              THE COURT:  I'm fine with that.  Something
16    that's very nonspecific at this point.
17              MR. MEUNIER:  Section II of the report is
18    the PSF issue, which we've just had a lot of discussion
19    about.  Perhaps the larger group needs to be advised
20    that what we're going to presumably say in open court
21    about next Friday's deadline.
22              THE COURT:  Let me come back to that in a
23    minute.  Because I want to, right now, let's just stick
24    to what the joint report says.
25              Andy, is there anything that you're going
```

```
 1   highlight off of here that you'd like to raise here that
 2   goes above and beyond what you've just intended to
 3   report over there?
 4             MR. WEINSTOCK:  Not highlight but correct.
 5   If you go to Section VI.A(1), the Coachman trial was
 6   moved to June 13th from June 20th based on Judge Roby's
 7   schedule.
 8             THE COURT:  Right.
 9             MR. MEUNIER:  I'm sorry, what date?
10             MR. WEINSTOCK:  June 13th.
11             THE COURT:  Okay.
12             MR. WEINSTOCK:  That's it.
13             THE COURT:  All right.  David, anything that
14   you think we need to cover off of this here?
15             MR. KURTZ:  No.
16             THE COURT:  Then let's go back to the issue
17   that Jerry was about to talk about, and it's one that we
18   spent some time, a good degree of time this morning on,
19   about next Friday and the idea of fact sheet
20   information.
21             MR. MEUNIER:  My understanding, Judge -- and
22   the Court will correct me, I'm sure Andy will if I'm
23   wrong on this -- is that by next Friday the defendant
24   manufacturers and contractors will identify for the
25   Court which fields of the plaintiff profile form or fact
```

```
 1   sheet are needed for settlement development purposes
 2   without prejudice to their right to pursue the remainder
 3   of the information through the deficiency process at a
 4   later time.  It's understood that, in so limiting the
 5   focus to those items now, they do so without prejudice.
 6   And, also, that they are entitled to submit one
 7   deficiency letter at this time that would cover all
 8   deficiencies, albeit only receiving now the designated
 9   areas.
10             And then, by next Friday, we will advise the
11   Court, given the position taken, of what time the
12   plaintiffs need collectively to respond to the
13   designated deficiencies.
14             MR. WEINSTOCK:  Close but not entirely
15   accurate.
16             My understanding, that we would come
17   together before next Friday and see what we can agree on
18   and submit to the Court what we could agree on,
19   plaintiffs and defendants.  And, if there was anything
20   else we wanted that we could not agree on, we would let
21   the Court know that as well.
22             THE COURT:  I'm counting on it being the
23   former rather than the latter.
24             MR. MEUNIER:  I'm assuming that we will be
25   in discussion.  But, if we can't agree, then I think on
```

```
 1   Friday nonetheless there's going to be a report to the
 2   Court on what the defendants think they need.  You will
 3   know how much of that is agreeable or not with us.
 4             THE COURT:  Let me back up, and I hope I
 5   don't muddle the issue further, In an effort to try to
 6   clarify it.  The idea is that -- since all of you are
 7   were not in the room, I'll try to recap why we're doing
 8   this and the purpose of this.
 9             The idea is to, on the one hand, afford the
10   defendants the opportunity to send out a single
11   deficiency notice, and not later deficiency notices, but
12   a single deficiency notice with regard to the plaintiff
13   fact sheets.  And be entitled to have all fields on that
14   deficiency notice that can be satisfied ultimately
15   satisfied.
16             In the meantime, it's to facilitate -- in
17   order to facilitate a settlement discussion, hopefully
18   on an in-globo basis on the basis of manufactures and
19   hopefully third-party contractors, a flow of information
20   back from the plaintiffs that relate and can be useful
21   for purposes of settlement discussions and getting that
22   information back in short order.  As opposed to having
23   plaintiff's counsel have to take a deficiency notice,
24   resolve the deficiency notice in its entirety, including
25   information that would be unique to that particular
```

1    plaintiff.  And, in the meantime, not having the ability
2    to discuss settlement because the deficiency notice
3    would still be outstanding and the workload in
4    satisfying the deficiency notice would drag down the
5    process of or the hope of having any type of settlement
6    discussion in the MDL.

7              So the idea is, by next Friday, to have an
8    agreement between manufacturing defendants and
9    third-party defendants, that certain of the fields on
10   the plaintiff fact sheet, certain of the tidbits of
11   information are more useful for a settlement discussion
12   than others.  Other pieces of information are useful if
13   you were to litigate that plaintiff's claim, you would
14   want it know and would be entitled to know all of that
15   information on the fact sheet, and perhaps even more
16   information through other discovery.  So what we're
17   trying to do is to concentrate in short order on the
18   fields of information, hopefully fewer rather than more,
19   that your clients, carriers, whoever is involved on the
20   defendant's side, need to know in order to be able to
21   respond to a settlement offer from the plaintiffs.

22             So you're going to send a single deficiency
23   notice, plaintiffs counsel, with a pre-agreed upon set
24   of fields that would be useful for settlement will
25   respond with those fields.  Without prejudice to your

```
 1    right to have the entirety of the fact sheet deficiency
 2    notice responded to, plaintiffs would respond with a
 3    smaller set of information that we will know by Friday
 4    what that is.  And then they will also tell us how long,
 5    hopefully a short period of time they need, to get those
 6    critical pieces of information back to defense counsel.
 7              And I've told you the reason for it, and
 8    I've told you how I think it's going to work.  Now,
 9    we'll try to memorialize that I'm hoping by Friday maybe
10    if someone can put pen to paper on this procedure.  It
11    doesn't have to be an order that we enter into the
12    record, but it has to be something in light of the
13    confusion that we've had last time.  If you want to put
14    it as an order in the record, I can do that.  I don't
15    want to put an order on top of an order on top of an
16    order and have everybody say:  Well, now we're really
17    confused.
18              But the idea is to get -- the two things
19    that defendants have said, I've heard repeatedly as to
20    why they think the case can't be settled in the MDL is:
21    A, we don't know who all the plaintiffs are because
22    claims are still coming in.  And God knows we've tried
23    to resolve that any number of times.  And, B, we don't
24    have enough information to evaluate these claims because
25    we've got fact sheets that sometimes are meaningless and
```

```
 1    other times have such scant information as to be
 2    meaningless.  So we're trying to satisfy those two
 3    problems, along with the plaintiff's problem that they
 4    can't work up every single plaintiff's claim to the nth
 5    degree as though it was ready for trial in order to
 6    satisfy or to support a settlement demand.
 7             At the MDL level, we're either going to
 8    settle the case on a more global term, and I'm speaking
 9    by manufacturer or by third-party contractor, as opposed
10    to claim by claim.  If we're going to settle them claim
11    by claim, that will probably be done after the cases are
12    remanded.
13             And I've said before and I'll say again, I
14    said as early as this morning, if that's the way we're
15    going to go, then I can start remanding case.  I'm
16    hoping not to do that, and I hope that the prevailing
17    sentiment here is to not do that.  Rather, to continue
18    to try to work on the cases here and get them resolved
19    to our client's satisfaction.  Rather than have them as
20    individual pieces of litigation spread out over three or
21    four states, in various state and federal courts.
22             Does anybody have any questions, or maybe I
23    should start with Gerry and Andy and David and ask if I
24    have said something wrong or if I've left something out?
25             MR. MEUNIER:  Judge, I think that's
```

 1 | consistent with my understanding.

 2 | So, just on the timetable, if Andy can

 3 | report by the beginning of next week on what the fields

 4 | are needed for settlement, then hopefully by the middle

 5 | of the week we can forward a report to him on what time

 6 | we need.  I'll need to poll the group -- as you know,

 7 | there are different positions in the group -- all with a

 8 | view toward Friday.  If you don't want an order, at

 9 | least report to you on the fields and the time needed

10 | and to the extent there might still be a difference in

11 | our positions.

12 | THE COURT:  Right.  That's fine.  And, if

13 | necessary, we can have a telephone conference on

14 | Thursday afternoon or some time Friday to discuss

15 | whatever discrepancies there are.

16 | Let me caution the defendants, if you say,

17 | look, my client needs -- we did the fact sheet and I

18 | need 80 percent of the questions answered, its probably

19 | not going to work.  All right?  You need to be

20 | conservative in your need for information.  They know

21 | they're going to ultimately have to give you, if the

22 | case doesn't settle, they're going to have to give you a

23 | completed fact sheet.  To the extent that it can

24 | possibly be known, the information's going to have to be

25 | on a completed fact sheet.  So you're not going to be

1   viewed as foregoing your right of any information by
2   limiting the number of things you need to know in short
3   order.

4              I think the imperative on the defense side
5   is:  But I want know that and I need to know that.  I
6   understand that.  But what we're talking about here is
7   what you need to know in order to participate in a
8   global settlement discussion.  If it's five things, tell
9   them the five.  Andy's going to meet with you all, come
10  up with the five.  If it's a dozen things, tell them
11  what dozen.  It may be different.  Gulf Stream's people
12  and the people that Andy's dealing which may say:  Well,
13  we only need these nine items.  You may have someone
14  else that says:  I need 18 items.

15             Let's see if you can come to an
16  understanding of what are the most critical pieces of
17  information that you need to participate in a settlement
18  discuss in this MDL without any in way foregoing your
19  rights to all of the rest of the information at a later
20  date.  So please be conservative on that.

21             If you undercut the effort by telling us
22  that you need 80 percent or 90 percent of the fact sheet
23  filled out, then plaintiffs -- and, on the plaintiff's
24  side, it's in their interest, when they follow-up with
25  individual clients, to get the entirety of the

1   information in your deficiency notice.  If they can do
2   that, I'm sure they'll be happy to give it to you.
3   Because they may have to do it anyway.  So there's an
4   incentive on both sides to try to make this thing work
5   in the short term; to forego the efforts on the long
6   term.
7            If it doesn't work, well then, guess what,
8   they're going to have to go back and get all this
9   information again.  You're going to have to go back, and
10  you would have already sent your deficiency notice, but
11  you're going to get the balance of the information, to
12  the extent they can provide it.  Unless you are a
13  Section Eastern District case, you're going to be
14  dealing in other court, or at least in front of another
15  judge.  I'm hoping to be able to save you all and the
16  other judges the effort of having to go through and pick
17  up every strand of information on each plaintiff's fact
18  sheet.  That's the purpose of the exercise.
19           So please don't undercut the purpose of the
20  exercise by saying:  Oh, I still need all but these
21  three.  I need every piece of information except these
22  three questions, because we're going to be back at
23  ground zero again.
24           MR. MEUNIER:  There's an ancillary issue
25  that deals with individual plaintiff discovery.  Tony

```
 1   has shown these requests that he's gotten from one of
 2   the defendants from his clients.
 3              MR. BUZBEE:  We're getting these notice of
 4   record depositions, subpoena duces tecums, to all of the
 5   medical providers by a bankrupt defendant.  It seems, to
 6   me, it sounds like that it's outrageous in my mind.
 7   That, if you have a bankrupt defendant, who's lawyer is
 8   for thousands of clients, multiple medical providers, is
 9   sending these subpoena duces tecums.  And we spent all
10   this time and effort, even if it's 16 fields or two or
11   whatever it is, and they're going to have no insurance
12   left because of this kind of conduct, to me, is
13   outrageous.  I wanted to bring it to your attention.
14   Hopefully, you would admonish and put an end to that
15   kind of silliness.
16              THE COURT:  Haven't named any names.  Does
17   anybody want to raise hands?
18              MR. BUZBEE:  This is a bankrupt defendant.
19   Lobman Carnahan.  I don't know who that is, but that's
20   who is sending them out.
21              THE COURT:  I mean, I don't have anybody
22   from Lobman here, I don't think.
23              MR. BUZBEE:  Can't we all agree, that's
24   outrageous?
25              THE COURT:  You've got a lot of enthusiasm
```

```
 1    from here on that point.  But, quite frankly, if that's
 2    an eroding policy --
 3              MR. BUZBEE:  I know the settlements that
 4    we've had, by the time you got to the point that you
 5    could settle, no money was left.  That doesn't seem to
 6    be in the best interest of the clients that are in this
 7    MDL.  And I know you're operating in the best interest
 8    of the defendants.
 9              MR. MEUNIER:  I can't speak for Gulf Stream,
10    but I know you're worried about these clients and the
11    best interests.
12              MR. BUZBEE:  I don't know who these folks
13    are, but I'm getting hundreds of these a day.
14              MR. WEINSTOCK:  But you're getting paper.
15              THE COURT:  But they're billing to send
16    these out, that's his point.
17              MR. GEIGER:  That was a wasting policy.
18              MR. MEUNIER:  I wanted to try to relate it
19    to the concept we're talking about.  Which is, when
20    we're talking about the PSF process, you have the
21    completing concerns.  On the one end, you have the
22    defendants saying:  We need all this information.  On
23    the plaintiff's position, we're saying:  The focus ought
24    to be on common issues and settlement.  Not, we can get
25    to that later.  This relates to that, in my view,
```

 1  because it's an effort of one of the defendant insurance
 2  companies.  It happens to be more egregious because it's
 3  for a bankrupt manufacturer, but it could be for a
 4  non-bankrupt manufacturer, to start propounding --
 5              THE COURT:  Crum & Forster is Pilgrim?
 6              MR. BUZBEE:  We didn't bring a direct action
 7  against the insurer.
 8              MR. PENOT:  Well, there have been a number.
 9  I've seen a number of the direct actions.
10              THE COURT:  Wait.  First of all, nobody's
11  doing what I suggested, such as stating your name.  So
12  we're going to have attorney 1 and 2 and attorney 15 and
13  attorney 16.  Okay?
14              The other thing is, even if you were stating
15  your name at the same time, you're all doing it at the
16  same time.  So she's not going to be --
17              MR. WEINSTOCK:  Weinstock says they must be
18  a correct defendant or they'd have no caption to file a
19  subpoena under.  They couldn't just intervene, they
20  haven't intervened to file subpoenas.
21              MR. BUZBEE:  On behalf my clients, I have
22  not filed against insurers, and these are my clients.
23              And you say:  Well, all you are getting is
24  paper.  No, I'm not.  I'm getting these electronically
25  and these are being printed out.  So, in that respect,

```
 1    it's costing these clients money, if we want to be
 2    technical about that.
 3                MR. WEINSTOCK:  Weinstock says don't print
 4    them out.
 5                THE COURT:  Why don't we do this.  Why don't
 6    we -- Andy, can you find out --
 7                MR. WEINSTOCK:  I know who the lawyer is.  I
 8    will talk to him.
 9                THE COURT:  Can you find out what it is what
10    the circumstance is with regard to this policy, first of
11    all.  And let me know, as well as liaison counsel, on
12    all sides, let us know?
13                MR. WEINSTOCK:  Yes, sir.
14                THE COURT:  Because, I agree, that this is
15    the type of particularized specific plaintiff discovery
16    that, unless there is a bellwether involving one of
17    these people, it certainly goes beyond what has been the
18    coordinated discovery plan up to this point.
19                MR. BECNEL:  Judge, Becnel says it's called
20    billable hours.  And I want that on the record.
21                MR. MEUNIER:  We don't need to necessarily,
22    in the big session, address that.  I just brought it up
23    because it seems relevant to what we were talking in the
24    BSF.  Maybe Andy can get the message to counsel that
25    that's not what we're up to right now.
```

```
 1              THE COURT:  I agree.  I agree.  And, if we
 2    need to have a status conference with this particular
 3    defendant to discuss this and the dynamics of the MDL
 4    and what impact this has, I'll do that.  If you can find
 5    out what the status of the policy is and report back,
 6    and also any content of your conversation that you can
 7    report back regarding their intent to pursue these.
 8    Because it's, at this point in time, as I say said a few
 9    minutes ago, the focus is on how the MDL can be resolved
10    at this point.
11              I think I told you all last time, I'm not
12    going to set up a whole another board of bellwether
13    trials.  We can bellwether trial cases until the cows
14    come home, but we get to the point of diminishing
15    returns.  And, unless there is an a manufacturer that
16    has a particular legitimate issue that they believe
17    their case is unique, or a carrier issue, that's fair
18    game, I can't see just sitting here and setting up
19    bellwether after bellwether after bellwether.
20              The purpose of the MDL is to establish
21    enough common rulings and enough bellwethers to have
22    some empirical data to discuss a resolution of the
23    claims.  In lieu of that, to start remanding cases.
24              Now, if they want that information after
25    cases are remanded, then that's fine.  I think it's
```

1    appropriate.  It certainly is a regular run-of-the-mill
2    discovery.  But at this point in time, given where we
3    are in this MDL, it would seem to me -- and I haven't
4    heard from the attorney who sent those out -- but it
5    would seem to me to be either unhelpful to the effort
6    right now or contrary to the effort right now.

7              So see if you can find out from the attorney
8    what the circumstances are.

9              MR. GIEGER:  Judge, Geiger.  I've discussed
10   this with Andy, and I've read the whole committee, and
11   you discussed relative to this issue.  But I do have to
12   raise a concern that I have about, Mikal's original plan
13   was to set up some dates where we were going to stop a
14   lot of this action and move toward accumulating
15   information for a spreadsheet that we all know is geared
16   toward seeing whether or not we can resolve these
17   claims.  One of my concerns is, I probably have the
18   second largest number of trailers, and my deficiencies
19   letters are all out.  They have been since the first
20   week of April.

21             My second set of deficiency letters, which
22   are letters that go out to people who have no fact
23   sheets -- I've got about 67,000 trailers -- I'm sorry,
24   named manufacturers.  I've got around 2,500 to 3,000 of
25   those plaintiffs that have no fact sheets at all.

1           My concern is that that group of people, if
2   we start -- because there's been discussion about moving
3   the time period along to give answers -- is that if I'm
4   going to wait a longer period of time -- my time under
5   the orders are almost up, and it would be time for me to
6   come to you and say, hey, there are 3,000 plaintiff's
7   claims that should be dismissed.  If I'm going to get an
8   extension for these people on their efforts to get me
9   fact sheets, and I get back the kind of answers I'm now
10  getting back on my first -- and I sent about a thousand
11  of them out and I'm getting answers back on fact sheets
12  that are saying attempting to contact client -- I'm not
13  saying that's by the people in this room, because
14  generally it's not.  But I will tell you, Judge, there
15  are lot of people outside of the people in this room;
16  right?  And I now there's some difficulty.  And I just
17  want to raise that for the Court.  If Mikal's deadlines
18  are going to stay in place, and it relates to me, if
19  you've got start extending it out another -- I've got a
20  motion that's pending before the Court that's asking for
21  an additional 45 or 120 days for a ruling from the Court
22  for those extensions, that's a problem.  If we're going
23  to start talking about getting a matrix together and
24  we're going to get the fact sheets from half of the
25  plaintiffs against my clients that aren't in yet, I see

```
 1   a problem if we start extending these deadlines very
 2   far.
 3             MR. WATTS:  Mikal Watts.  We agree with
 4   Ernie, and nobody on this side wants to extend the June
 5   30 deadline.
 6             I think the point that was being made this
 7   morning is that, if we're going to be forced to comply
 8   with deficiency notices about fourth grade teachers as
 9   opposed to 16 key data points, we can't get it done in
10   term, or certain of us can't get it done in time, and
11   that's why we cam forward.  But nobody wants to extend
12   the June 30 deadline.  And nobody, depending upon how
13   many more needs Andy's group comes up with, wants to
14   extend the 30 day timeline more than necessary.  We want
15   to get it done so we can have our spreadsheet and get to
16   the settlement discussions.
17             MR. GEIGER:  I hear it, but there are claims
18   with no deficiencies.  And the kinds of responses I'm
19   getting back -- I just have an inkling feeling that, of
20   the 3,000 that are not going to have the 16 fields or
21   the 20, and I'm going to be coming back and writing more
22   deficiency letters saying --
23             MR. WATTS:  I think, they way it's designed,
24   once we get to June 30 and then the deadline to fix them
25   -- right now, it's July 30, maybe it goes to July,
```

1  August 30 -- once that's done, everybody's under order
2  to deliver to me the best you got. And then I ship them
3  off to India and that is in frozen time. And then you
4  guys can start dismissing right and left people who have
5  failed to comply with the order.
6          MR. WEINSTOCK: This may sound strong; but,
7  for those people who have never filled out a fact sheet,
8  the way the order's written, it's technically
9  deficiencies. But it's its way beyond that. We're
10 three years into the game and if they've never produced
11 a fact sheet they should not get additional time.
12         THE COURT: We have said at every
13 conference -- and this is sort of like the matching
14 business which hasn't come up today. We've gotten into
15 this far with one of these things without using the word
16 matching, but it's sort of like matching. It's
17 fundamental that the fact sheet, which was worked on by
18 counsel, it was an effort that was a joint effort to try
19 to come up with a fact sheet that everyone thought was
20 useful. And I have said in the big conference, and I
21 know you all have said in your groups, that the fact
22 sheet is really the threshold piece of paper that every
23 plaintiff, when you sign up a plaintiff, you need a fact
24 sheet. And we've put a device, a time delay, that the
25 fact sheet needed to be forthcoming within so many days

1    after the action was filed, plaintiff had officially

2    filed their action.

3            And, I agree with you, we're now, in my

4    mind, we're well past the stage of getting a fact sheet.

5    And, quite honestly, we should be past this stage of

6    deficiencies.  But we're not.  We're still working on

7    the deficiencies along the lines that we talked about

8    this morning that I've mentioned here today.

9            But, if you haven't done a fact sheet at

10   all, if no one has even seen a fact sheet, I'm ready to

11   dismiss those.

12           MR. WATTS:  I think the process that we set

13   up, to get back to Ernie, if you have somebody that

14   hasn't delivered a fact sheet, they have been sending

15   deficiency notices with that.

16           But, with all due respect and in fairness to

17   Ernie, if the deadline for that deficiency notice comes

18   and goes and you still don't have a fact sheet, I don't

19   think anybody on this side is saying we get another shot

20   at it.  It at that point in time -- in other words, it's

21   not good enough that they just start filing motions to

22   dismiss for failure to do a fact sheet if they haven't

23   sent a deficiency notice.  Because that's what tell us

24   that's you're deficient, fix it.

25           THE COURT:  We're going to stick with the

 1    framework we've got now.

 2            MR. GEIGER:  I understand, Your Honor, too,

 3    that of those almost 3,000 people have given me no fact

 4    sheet, start giving them to the middle of June --

 5    right -- which is when their time period is up, all of

 6    the sudden I'm now writing another deficiency letter to

 7    them saying of the 16 or 20 categories here, we're

 8    deficient.  And I'm going to be bumping --

 9            THE COURT:  Haven't you already sent a

10    deficiency notice saying:  I don't have a fact sheet at

11    all so therefore it's deficient because to my knowledge

12    it doesn't exist?

13            MR. GEIGER:  Right.  But what happens, when

14    I start getting 16 of them, that two or three are filled

15    in.

16            THE COURT:  If they're not compliant, then

17    they're not complaint.

18            MR. WATTS:  I think everybody, once we get

19    this list of 16, hopefully is not going to be more than

20    20, there's an expectation that you're going to get that

21    filled out for everybody.

22            I told the judge that one of those 16 fields

23    is the plaintiff's trailer's VIN number.  I'm not going

24    to be able to fill that out, people don't remember it.

25    I don't know the VIN number on my car right now, much

1  less something I owned five years ago.

2            If it's something like your name or other

3  information that ought to be known that's not being

4  filled out, that's where you go for a motion to dismiss

5  for failing to comply with the orders.

6            But I think the key is, and what we ought to

7  make everybody clear in the room, is we have a process

8  where everybody sent out deficiencies notices.  It's

9  terrible, for everybody; okay?  And, in order to keep

10  our timeframe that the judge wants from the standpoint

11  of settlement discussions, the defendants are limited to

12  the 16 or the two or three or four that they've got to

13  have, they've got to pick their poison by next Friday.

14  You know, you've got to fill out those 16 to 19 fields.

15  If you don't, you're in trouble.

16            As to the others, you don't have it fill

17  them out right now, but you're going to have to

18  eventually if there's not a settlement.  It's without

19  prejudice.

20            But the point is, when you get a deficiency

21  notice and your 30 days has lapsed, or you don't get an

22  extension -- Andy's been nice to give us an extension

23  beyond the original deal or whatever.  But, once that

24  time periods ends, they need to understand that all bets

25  are off, once those things go to India.

```
 1              And I don't think it's incumbent on you to
 2     give them a second deficiency notice.  Ah-ha, a few
 3     months ago, I told you to fill out 1 through 17, and now
 4     I've got to send out a second deficiency notice because
 5     you didn't fill out 8, 19.  I don't think you have to do
 6     that.
 7              MR. MEUNIER:  I think there's one deficiency
 8     letter.  I don't know were Ernie would refer to the
 9     first letter as a deficiency letter.  If you don't have
10     a fact sheet at all, it's not a deficiency.
11              MR. WEINSTOCK:  Yes, it is.
12              THE COURT:  Yes it is.
13              MR. GEIGER:  Trust me, that's why I did it.
14              THE COURT:  It's one letter.  If they get a
15     fact sheet, and it has deficiency in it, the deficiency
16     letters says:  Look, we've got your fact sheet, here's
17     what's wrong with it.  If they don't get a fact sheet at
18     all, then the deficiency is there's no fact sheet.  He
19     doesn't have to go back and do a two-step deal.  Because
20     then the incentive side is I should lay in the gap
21     because then I get two shots to fix it.
22              MR. WATTS:  There's no need for a second
23     deficiency letter, as the judge has pointed out, and we
24     agree.
25              THE COURT:  Send one letter that says:
```

```
 1   Look, the deficiency is I don't have a fact sheet; I
 2   want it and I want it filled out in a full and
 3   non-deficient way.
 4            If you don't get that, then at that point
 5   the order applies and can be dismissed.
 6            But if you don't submit a fact sheet at all,
 7   you don't get the benefit of getting two letters, as
 8   opposed to the poor guy who tried to send one and said:
 9   Well now I've got to go back and talk to my client
10   again.  That person gets the benefit of fixing only the
11   items that are missing.  Other person's got to do the
12   fact sheet that they should have done way back when.
13            MR. MEUNIER:  We need to certainly make this
14   clear in open court.  Because, if there are that many
15   people who have no fact sheet whatsoever, they need to
16   understand how this current system is going to work for
17   them.
18            THE COURT:  And they should have -- we said
19   many times you need to do the fact sheet within so many
20   days after the action was filed.  That's in one or more
21   of the pretrial orders.
22            MR. WATTS:  60 days out.
23            THE COURT:  Amanda can give me the number of
24   the orders.  They are in the record.  The fact sheets
25   should have been done within the time delay specified in
```

```
 1   the orders.

 2              Now, if they're deficient or not should be

 3   the second question.  Not the first.  Because they said,

 4   well, we didn't get them.  If you didn't get a fact

 5   sheet to begin with, then you didn't comply with the

 6   pretrial order that said you had to have a fact sheet to

 7   begin with.

 8              MR. WOODS:  Justin Woods.  If someone has

 9   not sent in a fact sheet at all, and Ernie sends them a

10   deficiency letter saying I don't have a fact sheet from

11   you.  But, when we get to this point of identifying

12   these 20 data fields, is it that there will be in

13   compliance if they respond to those 20 at that point and

14   they will not be subject to dismissal?

15              THE COURT:  That's the agreement we have

16   based upon the idea, what I just stated here on the

17   record, that we would like to see if we can resolve

18   certain claims against certain of the manufactures

19   in-globo or otherwise here.  So the response that's

20   expected from the plaintiffs at this time will be the

21   fields that are designated.  All right?

22              But the deficiency that is sent will be the

23   one and only deficiency that that person will get.  So

24   it will be incumbent upon them to satisfy the fields

25   that we agree upon in the short term.  So they will be
```

```
 1   required to do at least that.
 2           Later on, if we can't resolve it and the
 3   cases are sent back to where they came from, or if it's
 4   one of my cases that would have been one of my cases
 5   anyway, you can move to dismiss for failing to satisfy.
 6           But, right now, we're concentrating on the
 7   fields that are agreed upon only because we're not
 8   having bellwethers beyond those that are scheduled -- at
 9   least I'm not planning it at this juncture -- and we
10   want to see if we can resolve as many claims as possible
11   in the MDL.
12           So, yeah, the expected response now is to
13   the designated fields. All right? That right now is
14   sufficient to cure the deficiency for now.
15           MR. WATTS: The other thing, for my brothern
16   on the plaintiff's side, we sent out 31,000 letters last
17   week saying this is coming down, if we send you a
18   deficiency notice you must help, you must get it fixed
19   with us or you are subject to dismissal. And I think
20   probably everybody ought to ship out a letter like to
21   that their client to cover their backside.
22           Because, I'll be honest with you, I've got
23   over a thousand people that I don't have facts sheets
24   for, and I told you that from the start. And I know
25   they're going, and this process is getting it down
```

```
 1   quickly.  But the people that don't get there are going
 2   to get dismissed.  So everybody needs to cover their
 3   back.
 4              MR. MILLER:  If a plaintiff gives a fact
 5   sheet and they only give us eight of 16 or whatever the
 6   fields are, are they then subject to dismissal with
 7   prejudice?
 8              MR. WOODS:  They may not have a VIN number,
 9   like Mikal Watts.
10              MR. MILLER:  I understand they may not have
11   the information or the ability; but, if they only
12   complete a subset of the selected key factors, what is
13   the effect?
14              MR. WATTS:  I think it depends on which
15   ones, to be honest with you, of the 16.  Because some of
16   them are things you ought to know.  You ought to know
17   your name, this kind of stuff.  But others, VIN numbers,
18   FEMA ID numbers, we're going to have a case-by-case
19   debate about whether we can possibly know that.
20              THE COURT:  I think I question is answerable
21   once we decide whether there's sufficient information to
22   have a meaningful settlement discussion between
23   manufacturer and defendant and the plaintiffs.
24              If it's the type of information that the
25   plaintiff can be included and counted numerically as a
```

1   participant in a settlement, then maybe it's no harm/no

2   foul.  But if it's the type of information where a

3   defendant says:  Well, we can't include this person

4   because we don't know this critical piece of

5   information, I may agree with you, then I may agree with

6   the defendant, in which case then the defendant later

7   can go ahead and file a motion to dismiss.  There was no

8   global settlement, that person didn't write enough

9   information, they didn't satisfy the deficiency notice,

10  you know, they're out.

11              MR. MEUNIER:  Your Honor, I do think at some

12  point after these discussions that place next week,

13  we're probably going to need an order that identifies

14  the vehicles, for the reason you just mentioned.  I

15  think, going forward, plaintiff is going to have to

16  understand the sacred fields you want and ones they just

17  can fudge on.  So whatever these discussions are,

18  hopefully we'll agree on a language in some sort of

19  order.

20              THE COURT:  I suggest that you all talk

21  early next week, come to some agreement on it.  If you

22  can't come to some agreement on it, we'll work with you

23  on Wednesday, Thursday, Friday on those that you can't

24  agree on.

25              MR. MEUNIER:  I just don't want a plaintiff

```
 1    letter saying:  Oh, I didn't know that one was the
 2    important one and I didn't get that from my client.
 3              THE COURT:  Whatever ones we agree on, they
 4    are all going to be important.  Some of them, like you
 5    say -- if it's a VIN number, then it may be undisputed
 6    that the person lived in a, for instance, a Gulf Stream
 7    unit, in which case Gulf Stream may not contest:  Well,
 8    you didn't give me a VIN number so I can't have that
 9    person numerically counted in any type of settlement
10    discussion.  If it's undisputed that that person lived
11    in a Gulf Stream unit, we just don't have the VIN
12    number, then it's neither here nor there.
13              But if there are other certain pieces of
14    critical of information that would be in that field, and
15    the defendant deems that insufficient to count them as
16    part of the settlement, then they won't be included.
17              It's going take some work on, first of all,
18    on the defendant's side to come up with a meaningful and
19    scaled-down set of critical factors that need to be
20    known for an in-globo evaluation, and then trading that
21    information with plaintiff's counsel such that it can be
22    gathered in an efficient fashion.
23              MR. MEUNIER:  All right.  I think we have
24    it.
25              THE COURT:  Anything else?
```

```
 1                MR. MEUNIER:  Thank you, Judge.
 2                THE COURT:  Is there anything else we need
 3    to talk about here in this group before we go into the
 4    bigger conference?
 5                MR. WEINSTOCK:  The next conference.
·6                MR. WOODS:  Next conference date.
 7                THE COURT:  That may be a bit of a problem,
 8    because I'm going to be in trial for most of the summer.
 9                MR. WOODS:  According to the news, that's an
10    iffy question.
11                MR. WEINSTOCK:  That was Woods, not
12    Weinstock.
13                THE COURT:  There will be some days off that
14    it won't be a five-day work week every week.
15                What about July 8th or 15th?  I hate to wait
16    that long, but we'll be in communication with you all
17    during that time in smaller groups.  I'm talking about
18    the big conferences.  Either the 8th or the 15th of
19    July, does that create problem for anybody?  Anybody
20    have a preference out of those two?
21                If people travel during the week of the 4th,
22    why don't we make it July 15th.  We'll follow with the
23    same schedule.  And we'll be in touch with you all.
24                MR. WATTS:  Judge, my birthday's on the
25    17th, so we'll have a three day FEMA party.
```

1           THE COURT:  Friday, the 15th, will be the

2   next conference, with committees at 8:30 and conference

3   with the bigger group at 10.

4           Let's go ahead into the other room, and

5   we'll present the joint report.

6           MR. MEUNIER:  Actually, one thing is a

7   plaintiff issue, but thank you for reminding me of it.

8           We drafted an order, it's not finalized

9   yet -- but just to give the Court a heads-up -- which is

10  going to ask for an amendment to the submission of

11  common expense to allow there to be a catch-up date, as

12  we did once before.  We'll find out that Bajoie Bennett

13  had fallen behind and we need a catch-up date.

14          Bajoie Bennett has asked that we change what

15  I've already drafted to provide for quarterly instead of

16  I guess monthly submissions to them.  They're finding it

17  burdensome to have to process.  So I'll just give a

18  heads-up, we'll be submitting an order.  I don't think

19  it's a defendant issue.

20          THE COURT:  It doesn't sound like it

21  involves the defendants.

22          But the key to saving us a lot of trouble

23  later is to do it frequently now.  So, if he wants to do

24  it quarterly, that's fine.  But it really depends on you

25  all getting the information to them timely.



```
 1              (9:51 a.m., Proceedings Concluded.)

 2

 3

 4

 5                         CERTIFICATE

 6

 7          I, Susan A. Zielie, Official Court Reporter, do
 8   hereby certify that the foregoing transcript is correct.

 9

10
                        /S/ SUSAN A. ZIELIE, RPR, FCRR
11                      _____
                            Susan A. Zielie, RPR, FCRR
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```