**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION: N, 5 |
| | * | |
| This document relates to: | * | JUDGE ENGELHARDT |
| | * | |
| ALL CASES | * | MAGISTRATE CHASEZ |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF CRUM AND FORSTER SPECIALTY INSURANCE COMPANY'S MOTION TO ENFORCE MEMORANDUM OF UNDERSTANDING AND OBJECTION TO ORDER OF MAY 18, 2012

MAY IT PLEASE THE COURT:

On May 18, 2012, this Court issued, #25626, an "Order to Reimburse Costs Relating to Census Database". This Order, imposing costs on Crum & Forster Specialty Insurance Company, as insurer of Pilgrim International, Inc., is contrary to the terms of the Memorandum of Understanding (and Stipulation of Settlement) previously reached by the parties in this matter.

Prior to the date of the Order of May 18, 2012, Crum & Forster Specialty Insurance Company ["C&F Specialty"] had reached an agreement to settle, memorialized in a Memorandum Of Understanding,[1] which specifically limited the costs and expenses C&F would be required to pay in the future. Further, prior to the date of the May 18,

---

[1] See Exhibit A. Terms of the Memorandum of Understanding Require that the amounts of settlement be kept confidential. These figures have been redacted form the attached Exhibit A.

2012 order, C&F Specialty and plaintiffs had signed their exhibit to the Stipulation of Settlement, which also limits the costs and expenses C&F would be required to pay in the future.[2]   The Order is contrary to the C&F Specialty's Agreements to settle.   The Memorandum of Understanding must control and this assessment cannot be made against C&F Specialty.

### Facts.

In early, 2011, the PSC began to complain about responding to deficiency notices for all of the fields on a Plaintiff Fact Sheet.[3]   The PSC also proposed "freezing" the deficiency process to allow for it to create the subject Census Database of a minimum number of fields.[4]   At this time, C&F Specialty, through counsel, had already undertaken the onerous task of searching for, identifying, and reviewing the Plaintiff Fact Sheets for plaintiffs claiming to have lived in Pilgrim trailers. [5]   C&F Specialty created its own database of these Plaintiff Fact Sheets. [6]   From the start, C&F Specialty saw the creation of the "Census Database" as of limited value to C&F Specialty since it had already undertaken this effort. [7]   The Census Database may be useful to other parties, but to C&F Specialty, this was duplicative of own efforts.[8]   C&F Specialty thus wrote Manufacturer Defendant liaison counsel Andrew Weinstock indicating it would not agree to pay for the

---

[2] See Rec. # 25226-1, §III.C, page 15.
[3] See Pre-Trial Order No. 86, §1.10. #20770.
[4] See Pre-Trial Order No. 86, §1.11, #20770.
[5] See Exhibit B, Letter from Counsel for Mover to Manufacturer Defendant Liaison Counsel Andrew Weinstock, March 17, 2011.
[6] See Exhibit B
[7] See Exhibit B.
[8] See Exhibit B.

Census Database.[9]   It sought an exclusion from being required to pay for the database.[10]

Pre-Trial Order No. 86 ended up reading "The issue of which parties shall bear the cost

of the labor and bill from the third-party vendor in India shall be reserved for a future

order of this Court."  Thus no order assessing the costs of this Census database was made

before agreements to settle were reached.

Pilgrim's insurers and the PSC mediated the Pilgrim cases twice, on February 2,

2012 and February 28, 2012.  An agreement to settle was reached on March 8, 2012.  The

parties signed a Memorandum of Understanding on March 30, 2012.[11]     The

Memorandum of Understanding provides:

> Within five (5) business days of the entry of Final Orders Of
> Approval And Dismissal, or within such period longer than five (5)
> days if and only if requested by the Special Master and approved
> by the Court, all claimants included in this settlement will proceed
> with a binding allocation process. C&F Specialty, Sentry and
> Burlington will not be called upon to participate in the allocation
> process or to pay or contribute any additional funds above the
> payment amounts listed on page 1-2 of this Memorandum of
> Understanding. **C&F Specialty, Sentry and Burlington will not
> be responsible for any fees, costs or expenses, including fees,
> costs, or expenses relating to the class notice or allocation
> process or its administration, court costs or attorney fees.**
> ...
> The cost of settlement mediation and/or discussions with
> Mediators John Perry and Dan Balhoff shall be borne in the
> amounts reflected in the March 9, 2012 invoice issued by Perry
> Dampf.  All other costs, expenses and fees incurred on behalf of
> the settling plaintiffs and claimants in the effectuation of this MOU
> are to be borne entirely by PSC and/or plaintiffs' counsel, subject
> to Court-approved reimbursement from the settlement funds.
> ...

---

[9] See Exhibit B.
[10] See Exhibit C, March 18, 2011 Email from Andrew Weinstock.
[11] See Exhibit A.

> If a settlement class in connection with the resolution of all claims against Pilgrim, C&F Specialty, Sentry and Burlington is proposed either standing alone or as part of a larger settlement with other defendants, it will be at plaintiffs' sole cost, as the settlement herein is full and final and no settling defendant shall have any obligation to pay any amounts other than its respective settlement payment and its share of the fees of the Perry Dampf invoice, even if the proposed class settlement is ultimately not approved by the Court.
>
> (Emphasis supplied).[12]

This MOU specifically provides that C&F Specialty will pay its settlement fund, the mediation invoice, and no other amounts.

Subsequently, the PSC and numerous settling manufacturer defendants and their insurers negotiated a Stipulation of Settlement. This was signed on April 13, 2012 and was filed with the court on April 13, 2012 (#25226). The Stipulation of Settlement provides:

> **§III. C. No Further Payment From Settlors.**
>
> **The PSC and Settlors further expressly agree that, except for the payment of their respective Settlement Amounts, and as set forth above in the event the settlement is not Court-approved, under no circumstances whatsoever shall Settlors be responsible for paying any monies, benefits, costs, administrative costs, expense or attorneys fees in connection with this Settlement Agreement, nor will Settlors be required to take any action or incur any liability or pay any expense or be required to do any other thing, except as expressly provided herein.**
> ...
> § X
> All attorneys' fees **and expenses related to the MDL and any Pending Action** shall be paid out of the appropriate Settlement Fund, with prior approval by the Court.

---

[12] See Exhibit A.

(Emphasis supplied).[13]   The MOU and Stipulation of Settlement had been agreed to and signed prior to this Court's Order of May 18, 2012 (#25626).

## Argument

C&F Specialty never agreed to pay for any portion of the India database, and indeed specifically noted its objection to Defense Liaison Counsel in early 2011, because counsel for C&F Specialty had already reviewed the Plaintiff Fact Sheets and had created its own database, making the database being proposed by plaintiffs redundant to it.

Mover does not move to "enforce the settlement" as the proposed class action settlement in this matter is not final.  Preliminary Approval has been given and Movers look forward to final approval of the settlement.  Nevertheless, the Order issued on May 18, 2012 is contrary to the terms of the C&F Specialty's settlement.  The Order should not have been applied to C&F Specialty.  The parties negotiated through multiple drafts of the MOU (and the Stipulation of Settlement); C&F Specialty was concerned about being asked to pay for additional costs in addition to the amounts it agreed to pay as part of the settlement.  These concerns turned out to be well-founded.  However, this Order comes after the parties had already agreed that C&F would not be required to pay additional costs or expenses.   The Order in question noted that the Watts firm paid $134,246 for data entry in relation to the "Census Database."[14]   Of these charges, the court assessed 5% to the "Contractor defendants."   The Court's Order then assesses $63,766.85 to be paid by the manufacturer defendants.  On May 21, 2012, counsel for

---

[13] See #25226-1.
[14] See #25626.

Mover received a chart purporting to show that the share of this assessment due from Pilgrim or its insurers was $3,183.60.[15]   The Order was not based on a Motion and C&F Specialty was given no chance prior to the Order to contest the assessment or its calculation.   C&F Specialty must now do so after the fact.

Both because it initially objected to paying a portion of the "Census Database", because that database was redundant of work C&F Specialty did for itself, and because its Memorandum of Understanding puts into writing and we agreed to, prior to the date of the May 18, 2012 order, that C&F Specialty would not pay any further amounts for expenses or costs other than what was spelled out in the MOU, namely the mediation invoice, C&F Specialty objects to being assessed with any portion of the invoice for the Census Database.  The Order must be revised or stricken as it affects C&F specialty and C&F Specialty's Memorandum of Understanding must be enforced as written.

Respectfully submitted:

**CERTIFICATE OF SERVICE**

I CERTIFY THAT A COPY OF THE FOREGOING PLEADING HAS BEEN SERVED UPON COUNSEL FOR ALL PARTIES BY EMAIL THROUGH THE COURT'S ELECTRONIC CASE FILING (ECF) SYSTEM ON THIS __20th__ DAY OF __June__, 2012.

_____/s Eric B .Berger_____

_____*/s Eric B. Berger*_____
SIDNEY J. ANGELLE, #1002
ERIC B. BERGER, #26196
LOBMAN, CARNAHAN, BATT,
  ANGELLE & NADER
400 POYDRAS STREET, SUITE 2300
NEW ORLEANS, LOUISIANA  70130
(504) 586-9292    FAX (504) 586-1290

---

[15] See Exhibit "D".  Pilgrim's other insurers, Burlington Insurance Company and Sentry, a Mutual Company, arbitrarily decided their shares of this $3,183.60 amount would be $592.15 and $993.28 and, on information and belief, have paid these amounts.