## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("MOU") memorializes a Settlement Agreement reached on March 7, 2011, between authorized representatives of the Court-Appointed Plaintiff's Steering Committee ("PSC") in the case of *In Re: FEMA Trailer Formaldehyde Product Liability Litigation*, MDL No. 1873, before the United States District Court, E.D. Louisiana (the "MDL") and authorized representatives of Crum & Forster Specialty Insurance Company ("C&F Specialty"),  Sentry Insurance a Mutual Company ("Sentry") and The Burlington Insurance Company ("Burlington") related to the matters, risks, and claims asserted against Pilgrim International, Inc. ("Pilgrim"), a bankrupt entity, that was named as a defendant in the MDL. Sentry, C&F Specialty and Burlington each issued insurance policies to Pilgrim and have, themselves, been named as defendants in certain lawsuits included in the MDL.

The parties understand and agree that this document sets forth the understanding of the parties that they have reached a full and final settlement, but the parties also understand and agree that for the settlement to be effective they must execute the necessary settlement documents, including releases and dismissals in a form to be acceptable to representatives of C&F Specialty, Sentry and Burlington, in their sole respective discretion.

In consideration for the agreements and releases provided in this MOU, C&F Specialty, Sentry and Burlington agree to pay a total settlement amount of $ ▓▓▓▓ in the following shares:

| Defendant | Amount |
|---|---|
| C&F Specialty | |
| Sentry | |
| Burlington | |

(B0787475.2)

–1–

**EXHIBIT**

A

Total:          $ ▮▮▮▮▮

It is understood and agreed that the payments owed by Sentry, C&F Specialty and Burlington are individual obligations. Thus, there shall be no joint liability or solidary liability for the total amount owed.

It is understood and agreed that agreements contained herein and the consideration given are to compromise and settle disputed claims, avoid litigation, and buy peace, and that no payment made nor releases or other consideration given shall constitute an admission of liability, all liability being expressly denied. In addition, the agreements contained herein are in no way an admission of disputed facts.

It is understood and agreed that any and all plaintiffs and related claimants will release and dismiss, and the PSC will cause all plaintiffs to release and dismiss, with prejudice, any and all claims made against C&F Specialty, Sentry, Burlington and/or Pilgrim, and their predecessors, successors, assigns, parent corporations, subsidiaries, affiliates and agents, and the officers, directors, employees, agents, shareholders and representatives of any of them, including any direct actions filed against C&F Specialty, Sentry, and/or Burlington as insurers for Pilgrim, and any other company corporately affiliated with any of them, and their predecessors, successors, assigns, parent corporations, subsidiaries, affiliates, and agents, and the officers, directors, employees, agents, shareholders and representatives of any of them, arising out of alleged formaldehyde exposure in travel trailers manufactured and/or procured by Pilgrim and then provided by FEMA to individuals displaced by Hurricanes Katrina or Rita.

This agreement is conditioned upon the plaintiffs releasing the claims against Pilgrim, in addition to those against C & F Specialty, Sentry and Burlington. Thus, PSC also agrees that it

{B0787475.2}

–2–

will cooperate with C&F Specialty, Sentry and Burlington to, if required, seek bankruptcy court approval of the release of claims against Pilgrim.

The claims to be released specifically include any and all claims brought in any suits or actions currently or to be filed in or transferred into the aforementioned MDL, as well as any and all other later claims brought in any other actions and lawsuits arising out of the occupancy of the travel trailer, mobile home, manufactured housing units and/or park models used as emergency or FEMA housing or arising out of related claims of formaldehyde exposure during or in connection with occupancy of such units, which have not been transferred to the MDL, and which will be identifiable at the time of, and enumerated by attachment to, the MDL Order of Dismissal provided for herein; and including but not limited to any and all claims, suits or actions filed against C&F Specialty, Sentry, Burlington and/or Pilgrim, whether filed under the Louisiana Direct Action Statute ("Direct Action Cases") or similar statute, or not, and either currently pending in the MDL or to be filed in or transferred to the MDL.

The claims of plaintiffs and claimants against all other defendants, specifically including contractors, installers and FEMA, are not released and are fully preserved under this agreement.

The authorized representatives of the PSC collectively represent that they have the authority to settle and to take all steps necessary to effectuate this settlement agreement on behalf of all plaintiffs and related claimants in actions filed in or transferred into the MDL, as well as any and all other claims, causes of actions and lawsuits arising out of the travel trailer use as emergency FEMA housing, or arising out of related claims of formaldehyde exposure.

The PSC and plaintiffs' counsel agree to provide information necessary for compliance with the reporting requirements (if any) of Section 111 of the Medicare, Medicaid, and SCHIP

{B0787475.2}

--3--

Extension Act of 2007.  C&F Specialty, Sentry and Burlington agree to reasonably cooperate with the PSC in providing information to facilitate this effort.  The PSC and plaintiffs' counsel assume responsibility for all medical liens, including but not limited to securing Medicare and Medicaid lien waivers or releases as a condition of this settlement.

The PSC and plaintiffs' counsel agree to provide to C&F Specialty, Sentry and Burlington with precise payment instructions, including a corresponding W-9 required by C&F Specialty, Sentry and Burlington as necessary for these insurer to issue the settlement funds.

Within 30 days of execution of this Memorandum of Understanding and the provision of the W-9 forms required by C&F Specialty, Sentry and Burlington, C&F Specialty, Sentry and Burlington agree to place the $. ▮▮▮ settlement funds into the Registry of the United States District Court for the Eastern District of Louisiana.  Upon such deposit of the settlement funds into the registry of the Court, PSC shall file all appropriate pleadings to finalize this settlement agreement, and to seek prompt dismissal of all claims against Pilgrim, C&F Specialty, Sentry and Burlington for all Pilgrim-related claims.

The parties will request and propose that upon certification of the settlement class, the Court will enter a Final Order Of Approval/Certification of the settlement class and a Final Order of Dismissal of all known cases described above.   Within five (5) business days of the entry of Final Orders Of Approval And Dismissal, or within such period longer than five (5) days if and only if requested by the Special Master and approved by the Court, all claimants included in this settlement will proceed with a binding allocation process. C&F Specialty, Sentry and Burlington will not be called upon to participate in the allocation process or to pay or contribute any additional funds above the payment amounts listed on page 1-2 of this Memorandum of

{B0787475.2}

-4-

Understanding. C&F Specialty, Sentry and Burlington will not be responsible for any fees, costs or expenses, including fees, costs, or expenses relating to the class notice or allocation process or its administration, court costs or attorney fees.

No settlement funds in the registry of the Court may be withdrawn by plaintiffs until after certification of the settlement class has been granted by the Court and a Final Order Of Approval/Certification of the settlement class and a Final Order of Dismissal has been executed by the Court.

To avoid potential or actual conflicts of interest, the PSC and plaintiffs' counsel agree that the binding allocation process will vest allocation decisional authority in Daniel Balhoff, as an independent Special Master to be appointed by the Court in the MDL.

The terms and conditions of this MOU, including the amount of the settlement as well as the individual amounts determined through the allocation process, shall be kept confidential by all parties to the MOU, except as necessary to effectuate and finalize the settlement or as required by law and the Court. All proceedings reflecting the terms and conditions of the settlement agreement shall be the subject of a request by the parties that the Court place such matters under seal, unless the parties jointly agree otherwise. All parties agree not to disclose to the media the amount, terms, or conditions of this settlement.

The cost of settlement mediation and/or discussions with Mediators John Perry and Dan Balhoff shall be borne in the amounts reflected in the March 9, 2012 invoice issued by Perry Dampf. All other costs, expenses and fees incurred on behalf of the settling plaintiffs and claimants in the effectuation of this MOU are to be borne entirely by PSC and/or plaintiffs' counsel, subject to Court-approved reimbursement from the settlement funds.

{B0787475.2}

--5--

The parties agree to attempt to include this settlement as a part of a larger class settlement with other defendants in MDL No. 1873. As appropriate, the parties will work together to submit the necessary motion and supporting documentation required to propose such a class settlement. If a settlement class in connection with the resolution of all claims against Pilgrim, C&F Specialty, Sentry and Burlington is proposed either standing alone or as part of a larger settlement with other defendants, it will be at plaintiffs' sole cost, as the settlement herein is full and final and no settling defendant shall have any obligation to pay any amounts other than its respective settlement payment and its share of the fees of the Perry Dampf invoice, even if the proposed class settlement is ultimately not approved by the Court.

The parties agree that if any claimant to this settlement timely "opt-out" of the class, any defendant, at its sole discretion, may elect to withdraw from the settlement within 14 days of receiving written notice of opt-outs from the PSC. If any insurer withdraws from the agreement, the agreement shall remain enforceable as to the other remaining insurers.

All disputes or issues regarding interpretation and enforcement of the agreement shall be determined under Louisiana law.

This Agreement to memorialize the settlement reached on March 7, 2012 is executed this 29th day of March, 2012.

GERALD E. MEUNIER
Counsel for Plaintiffs

SIDNEY J. ANGELLE
ERIC B. BERGER
Counsel for Crum & Forster Specialty
Insurance Company
[B0787475.2]

RYAN E. JOHNSON
Counsel for Sentry Insurance A Mutual
Company

SIDNEY W DEGAN, III
Counsel for The Burlington Insurance
Company

–6–

```
                    ***********************
                    ***   TX REPORT   ***
                    ***********************

        TRANSMISSION OK

        TX/RX NO            1789
        RECIPIENT ADDRESS   98373119
        DESTINATION ID
        ST. TIME            03/17 16:15
        TIME USE            03'54
        PAGES SENT          13
        RESULT              OK
```

## LOBMAN, CARNAHAN, BATT, ANGELLE & NADER
### A PROFESSIONAL CORPORATION

DAVID V. BATT
SIDNEY J. ANGELLE
JAMES P. NADER †
JOSEPH M. MESSINA
BRANT J. CACAMO
PAMELA K. RICHARD
ERIC B. BERGER †
JAMES J. YOUNG, IV

EDWARD P. LOBMAN (1941-2004)
BURT K. CARNAHAN (RETIRED)

**ATTORNEYS AT LAW**

CHARLES R. RUMBLEY
ANGELA C. BECNEL
DANIEL M. REDMANN
PEYTON C. LAMBERT
BRADLEY S. GROCE

400 POYDRAS STREET
SUITE 2300
NEW ORLEANS, LOUISIANA 70130-3425

TELEPHONE (504) 586-9292
FACSIMILE (504) 586-1290

† ALSO ADMITTED IN TEXAS

WRITER'S E-MAIL ADDRESS:
SJA@LCBA-LAW.COM

WWW.LCBA-LAW.COM

March 17, 2011

**Fax 837-3119**
Mr. Andrew D. Weinstock
Three Lakeway Center, Ste. 2900
3838 N. Causeway Blvd.
Metairie, LA 70003

            *In Re: FEMA Trailer Formaldehyde Products Liability Litigation*
            *(07-MD-1873)*

Dear Andy,

    We have reviewed the plaintiffs' proposed "Follow-up to PTO #84."   As you know, Crum & Forster Specialty Insurance Company, as insurer of Pilgrim International, Inc,. has been reviewing the plaintiff fact sheets ("PFS") for plaintiffs who resided in Pilgrim trailers and has been writing deficiency/Rule 37 letters for several months.

    We will object to any future deficiency letter being limited to only certain PFS "key fields." [¶ 2.01 of the "Follow-Up to PRO #84"].  A PFS may be deficient for multiple reasons and we do not think this can be limited to whether certain fields are covered.

**EXHIBIT**

B

# LOBMAN, CARNAHAN, BATT, ANGELLE & NADER

### A PROFESSIONAL CORPORATION

### ATTORNEYS AT LAW

DAVID V. BATT
SIDNEY J. ANGELLE
JAMES P. NADER †
JOSEPH M. MESSINA
BRANT J. CACAMO
PAMELA K. RICHARD
ERIC B. BERGER †
JAMES J. YOUNG, IV

EDWARD P. LOBMAN (1941-2004)
BURT K. CARNAHAN (RETIRED)

400 POYDRAS STREET
SUITE 2300
NEW ORLEANS, LOUISIANA 70130-3425

CHARLES R. RUMBLEY
ANGELA G. BECNEL
DANIEL M. REDMANN
PEYTON C. LAMBERT
BRADLEY S. GROCE

TELEPHONE (504) 586-9292
FACSIMILE (504) 586-1290

†ALSO ADMITTED IN TEXAS

WWW.LCBA-LAW.COM

WRITER'S E-MAIL ADDRESS:
SJA@LCBA-LAW.COM

March 17, 2011

<u>*Fax 837-3119*</u>
Mr. Andrew D. Weinstock
Three Lakeway Center, Ste. 2900
3838 N. Causeway Blvd.
Metairie, LA 70003

> *In Re: FEMA Trailer Formaldehyde Products Liability Litigation*
> (07-MD-1873)

Dear Andy,

We have reviewed the plaintiffs' proposed "Follow-up to PTO #84." As you know, Crum & Forster Specialty Insurance Company, as insurer of Pilgrim International, Inc,. has been reviewing the plaintiff fact sheets ("PFS") for plaintiffs who resided in Pilgrim trailers and has been writing deficiency/Rule 37 letters for several months.

We will object to any future deficiency letter being limited to only certain PFS "key fields." [¶ 2.01 of the "Follow-Up to PRO #84"]. A PFS may be deficient for multiple reasons and we do not think this can be limited to whether certain fields are covered.

We also disagree with plaintiff's proposal of "key datafields" being limited to <u>*ten,*</u> either for the writing of deficiency letters or for OCR'ing for review for settlement or any other purpose.

Our review, for Crum & Forster, of the Pilgrim-related fact sheets has resulted in a spreadsheet of the fields we deemed most crucial for tracking the identity of claimants, their complaints, their backgrounds, their dates and locations of trailer residency, and their relation to one another. Our spreadsheet – we attach a blank version with all of the column headings – includes twenty-eight *key datafields* that our firm has determined are

most critical to defend our clients against Plaintiffs' claims.   [We do not consider non-listed fields non-critical or unimportant, but a spreadsheet that tracked every single field would unmanageable].   These categories provide only the rudimentary information necessary to prepare a defense.

To limit either a deficiency notice or a database to be used in considering settlement to only ten fields only gathers the most basic demographic data of the claimants:

1. Last Name
2. First Name
3. Social Security Number
4. Name of lawsuit
5. Date of Birth
6. Trailer Manufacturer
7. Vehicle Identification Number (VIN)
8. Trailer location
9. Pre-Katrina residence location
10. Dates Lived in trailer

Even for an adult individual plaintiff not represented by another individual, the following critical issues would not be addressed if plaintiff discovery is limited to ten fields of data, all of which we would also deem essential to evaluating the settlement value of any individual claim:

11. FEMA ID
12. Bar Code Number
13. When the First Symptoms  were experienced
14. What are the physical symptoms
15. Whether there was medical treatment for these symptoms
16. Whether the plaintiff is seeking reimbursement of medical expenses and the amount of those expenses
17. Whether the plaintiff is claiming mental health effects as a result of their occupancy in a travel trailer
18. Whether the plaintiff is seeking mental health expenses and the amount of those expenses
19. Whether the plaintiff has been diagnosed with cancer
20. Whether a wrongful death claim is being made and on whose behalf
21. Whether the Plaintiff had significant pre-existing health conditions
22. Whether the plaintiff smoked or
23. Was in the presence of smoking in the travel trailer
24. Whether the plaintiff was employed at the time and
25. Whether the plaintiff is claiming lost income and the amount of such income

26. Whether Plaintiff is a minor, deceased or infirmed and represented in litigation by another individual who must be identified along with identification of his or her right to represent the plaintiff
27. The approximate numbers of hours spent in the trailer each day; and
28. Their attorney

These categories do not touch on the following, which we tend to put in a Comments section:

29. Whether the plaintiff resided in more than one travel trailer
30. Whether a plaintiff was pregnant at the time of trailer residence
31. Names of doctors and pharmacies
32. Dates of treatment

Lastly, as our firm's review of the Pilgrim-related Plaintiff Fact Sheets and data entry has already exceeded the scope of what OCR'ing and database entry is being discussed in Plaintiffs' proposal, we expect our client will object to any cost-sharing, after already undertaking the expense ourselves.

Sincerely,

SIDNEY J. ANGELLE
ERIC B. BERGER

SJA/EBB/HFC

Enclosures

| Last Name | First name(S) (p. 2, 11) | Name of Person who filed obo pltf if not same as plaintiff (p. 2, 11) | Social Security # | Lawsuit ID | DOB(S) (p. 6) | CURRENT AGE(S) | TRAILER MANUFACTURER (listed on PFS) (p. 8) | VIN (p. 9) | FEMA ID (p.9) | "barcode number" (p. 9) | Trailer Location (p. 9) | Pre-K Residence(s) (p. 6) | Dates Lives in Trailer, (p. 9) | Dates of 1st Symptoms, (p.4, #5) | Physical Symptoms, (p. 3-4) | Treated for Physical Symptoms (p. **) | Mental Symptoms, (p. 5) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Treated for Mental Symptoms (p. **) | Cancer Dx, (p.4) | Wrongful Death & of whom (p. 8) | Major Preexisting condition(s) | Employment (p. 6) | Alleged Time/Income Lost (p. 7) | Smoker? (p. 12) | Smoking in Trailer? (p. 12) | Approx # of Hours in Trailer per Day (p. 9) | Plaintiff atty (p. 3) | Notes |
|---|---|---|---|---|---|---|---|---|---|---|

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCT | * | |
| LIABILITY LITIGATION | * | SECTION "N-5" |
| | * | |
| THIS DOCUMENT RELATES TO | * | JUDGE ENGELHARDT |
| ALL CASES | * | MAG. JUDGE CHASEZ |

### PRETRIAL ORDER NO. ___

The Court enters this Order (1) to assist in the marshalling of data concerning each plaintiff before the expiration of all applicable states' statutes of limitation in preparation for settlement discussions; (2) to suspend the deficiency notice process during said process; and (3) to eliminate the need for any further discovery from Plaintiffs prior to the eventual resolution, or remand, of the cases consolidated in this court under the MDL process.

I.   BACKGROUND AND PREVIOUS ORDERS GIVING RISE TO THIS ORDER

1.1   A large number of persons occupied in excess of 140,000 Emergency Housing Units ("EHUs"), provided by FEMA in the aftermath of Hurricanes Katrina and Rita.  Lawsuits were filed agains the United States of American (FEMA), various manufacturers of the EHUs and various government contractors who transported and installed such EHUs. Most early complaints were filed on behalf of numerous plaintiffs who collectively sued most known EHU manufacturers and most known government contractors involved in the hauling and installing of such EHUs.

A.   PTO   REGARDING PLAINTIFF FACT SHEETS

1.2   In lieu of requiring each plaintiff to answer requests for production and interrogatories from the various defendants, the parties negotiated the form and content a Plaintiff Fact Sheet (PFS) and the court eventually ordered on _____ ___, 20__ in Pretrial Order No. __ each Plaintiff to fill out answers to a PFS, and to serve such answers upon the

1

Defendants. (Rec. Doc. _____).

    1.3    Individual plaintiffs filled out PFS forms, and served them upon counsel for the defendants. Counsel for individual defendants then served upon counsel for individual plaintiffs "Deficiency Notices", wherein an alleged failure to fully answer each portion of the PFS is set forth, and then the Plaintiff is called upon to cure said alleged deficiency. This process has steadily continued for over three years, yet still is not complete.

    B.    <u>PTOS 38, 53 AND 68 REGARDING MATCHING PLAINTIFFS TO DEFENDANTS</u>

    1.4    Meanwhile, the Court sought to require individual plaintiffs to specify individual defendants allegedly involved with their particular trailer. On May 27, 2009, this Court entered Pretrial Order No. 38 (Rec.Doc. 1596), ordering that each Plaintiff had the burden to file suit against only the particular manufacturer of his or her trailer, and on December 14, 2009, this Court entered Pretrial Order No. 53 (Rec.Doc. 10228), ordering that each Plaintiff had the burden to file suit only against the particular government contractor involved with his or her unit.

    1.5    To assist in "matching" a particular plaintiff to a particular manufacturer and a particular government contractor, Defendant United States of America ("USA") agreed to provide matching data to claimants who provided certain basic information, including a FEMA ID Number. The "matching process" had been underway for more than two years, when this Court entered Pretrial Order No. 68 (Rec.Doc. _____) to (1) "assist potential claimants for whom matching information ha[d] not yet been obtained from the USA by providing a "last chance" process for them to obtain whatever other information is efficiently obtainable from other sources; [and](2) to provide a date certain by which the matching effort will end, and dismissals of claims for unmatched claimants will occur." Importantly, PTO 68, Paragraph III, provided that "PSC liaison counsel are ordered to provide the Court, and to the Court's court-appointed master,

data files listing the number of plaintiffs with cases filed against each defendant manufacturer, against each defendant government contractor and against the USA." The original deadline for Paragraph III's requirement of a census of how many plaintiffs had filed against each such defendant was December 10, 2010, yet with PTO 83, such deadline was extended by this Court until January 31, 2011.

1.6     The "last chance" matching process has ended, and the Court's deadline for requiring plaintiffs to file matched lawsuits against particular defendants has expired. The Court presently is entertaining motions to dismiss for failing to comply with PTO 68. Further, in compliance with PTOs 68 and 83, the PSC liaison counsel provided to defense liaison counsel a census count of the number of plaintiffs who had sued each individual defendant.

C.     PTO 84 CONCERNING ADDITIONAL INFORMATION SOUGHT BY THE PLAINTIFFS

1.7     Shortly after receiving the census required in PTOs 68 & 83, defense liaison counsel filed a motion seeking further information, and a more helpful formatting of the information that had been provided. At its February 4, 2011 status conference, the defendants' motion in this regard was discussed with all counsel. With PTO 84, this Court appointed Mikal Watts and Justin Woods on behalf of the Plaintiffs, and Andrew Weinstock and David Kurtz on behalf of the Defendants as a committee to suggest a resolution of the defendants' motion seeking further information. The Court also ordered Mr. Weinstock to provide the Court by February 11 a statement of complaints of the information provided previously and a statement of the information needed, and ordered Mr. Watts to provide the Court by February 18 with a plan of how to meet the defendants' requests. Both Mr. Weinstock and Mr. Watts complied with the Court's directive within PTO 84. Further, counsel for the various parties then conferred and alerted the Court to their collective desire to update the Court on their discussions during a

conference in chambers to occur on March 2, 1011.

D.   CONFERENCE WITH THE COURT ON MARCH 2, 2011

1.8   On March 2, 2011, counsel for the plaintiffs and defendants briefed the Court on their discussions, and discussion occurred about how best to deliver to the defendants the information needed in aide of eventual settlement discussions, but to do so in a way that is most economical and most efficacious.

1.9   During this conference, counsel for the defendants explained that (1) the census spreadsheet provided by Plaintiffs PSC counsel in compliance with PTO 83 had certain infirmities that caused the data presented therein to be less than optimally presented; (2) to truly know which plaintiffs had in fact sued the correct manufacturer pursuant to PTO 68, more information was required; (3) due to the absence of matching of tens of thousands of plaintiffs to a particular government contractor, the government contractor defendants had no way to participate in the deficiency notice process; (4) some lawfirms had not provided the PSC with a census of their cases, as required in PTO 68, and that as a result the census numbers provided by the Plaintiffs' Liaison Counsel in compliance with PTO 83 did not match the number of lawsuits filed against each defendant; and (5) some lawfirms had not complied with this Court's orders regarding the PFS, and had instead merely signed an empty form, without supplying the answers required in the PFS; and that to remedy the problems created by the complaints enumerated in #1-5 above, more information from the Plaintiffs was required.

1.10   In response, counsel for Plaintiffs explained that (1) the PSC had deputized Mikal Watts of Watts Guerra Craft to correct any deficiencies that caused the data presented therein to be less than optimally presented, and that Mikal Watts agreed to attempt to correct such infirmities with respect to such data that had been provided therein; (2) to require Plaintiffs to go

4

back to their Plaintiffs to require more information than had been previous ordered in PTO __ concerning Plaintiffs' Fact Sheets and PTO 68 concerning Matching would cost millions of dollars that would eventually be subtracted from the plaintiffs' recoveries; (3) the defendants had been filing deficiency notices for years, many seeking information not critical to trial selection or eventual resolution of this case, and that to continue that process indefinitely was driving up the litigation costs of the plaintiffs, thereby reducing a plaintiff's net recovery upon eventual resolution; and that the alleged inability of the government contractor defendants to meaningfully participate in the deficiency notice process could be cured by (a) causing the contractor defendants and the manufacturer defendants to confer and decided which particular questions within the PFS were of utmost importance to entertaining settlement discussions;(b) freezing the deficiency notice process until the date when the case either resolves, or when this court orders the remand of these cases to the transferor courts; and (c) then permitting both the manufacturer defendants and the contractor defendants to resume deficiency notices; (4) that an order should be entered notifying any plaintiffs' firm that failed to provide a census of its plaintiffs suing individual defendants, that (a) they had misinterpreted PTO 68, which required that all firms do so, (b) ordering all firms to provide such a census, or risk sanctions, and (c) advising such firms that a failure to do so may result in sanctions from the Court; and (5) with respect to firms that had failed to comply with PTO __ concerning PFS completion, that any order from this Court freezing deficiency notices in aide of settlement would not preclude a defendant from presenting this Court with a motion for sanctions and/or dismissal for failing to comply with its obligations to fill out a PFS.

      1.11   Plaintiffs counsel advised that the data needed by the Defendants for purposes of settlement negotiations was included within the census spreadsheet provided in compliance with

5

PTO 83, and within the Plaintiff Fact Sheets (PFS) themselves.  However, the PFS forms were in handwritten format, and were provided to the Defendants in PDF formats, which were not searchable.  OF approximately 75,000 plaintiffs, 38,000 had seen the data contained therein entered into a database by a third-party vendor in India, allowing such data to be searchable, rankable, and format usable.  Plaintiffs counsel suggested that defendants' problem was not an absence of information provided by Plaintiffs; rather, it was an absence of an ability to access it in a meaningful way via a database.

     1.12   The Court ordered the parties to confer and to present the Court with an order containing as many agreed provisions as could be negotiated, and that the Court would then resolve any remaining disputes and enter an order (1) to assist in the marshalling of data concerning each plaintiff before the expiration of all applicable states' statutes of limitation in preparation for settlement discussions; (2) to suspend the deficiency notice process during said process; and (3) to eliminate the need for any further discovery from Plaintiffs prior to the eventual resolution, or remand, of the cases consolidated in this court under the MDL process.

II.    <u>ORDER OF THE COURT</u>

    IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

    2.01     Defendants are ordered to notify the Court by May 1, 2011 of the ten (10) portions of the PFS ("key datafields") it absolutely requires to conduct an appropriate evaluation of potential resolution of this case;

    2.02     The defendants shall have the right to continue to serve Deficiency Notices with respect to those key datafields only  upon the plaintiffs only until June 30, 2011, and that the Plaintiffs shall cure such deficiencies through Amended PFS forms on or before July 31, 2011.  The deficiency notice

process shall then be suspended or frozen, until such time as the case has either been resolved, or remanded to transferor courts. Nothing in this Order shall be construed to limit the Defendants' rights to further discovery after remand by this Court.

2.03   Each plaintiff, through his or her counsel, shall serve upon Mikal Watts, on behalf of the Plaintiffs' Liaison Counsel, a true and correct copy of the most updated, Amended PFS, by August 1, 2011 in electronic format (PDF).

2.04   Mikal Watts, on behalf of Plaintiffs' Liaison Counsel, shall then send such Amended PFS to a third-party vendor in India to have the key datafields entered into a database to be provided to the Defendants and Plaintiffs' liaison counsel.

2.05   The issue of which parties shall bear the cost of the labor and bill from the third-party vendor in India shall be reserved for a future order of this Court.

2.06   Immediately upon receiving from the third-party vendor in India the database containing the key datafield information from the PFS, Mikal Watts will supply all liaison counsel with a data searchable copy. The Court expects that liaison counsel will work cooperatively in determining how best to utilize such data.

2.07   No further information shall be sought from Plaintiffs between the date of this Order and the date of remand to transferor courts.

2.08   To be clear, the purpose of this Order is to provide all the parties with the data each needs to entertain meaningful settlement discussions in this case. Nothing in this Order is intended to preclude defendants from seeking

further information after remand, if resolution of this case does not occur.

ENTERED this _____ day of March, 2011

_____
                Honorable Kurt D. Engelhardt

8

EXHIBIT C

| Manufacturing Defendant | Defense Atty | Defense Phone | Census | Group # | Group ID | Cost Due |
|---|---|---|---|---|---|---|
| Gulf Stream Coach, Inc. | Andy Weinstock | 504-832-8700 | 25,984 | | | $34,469.77 |
| Forest River, Inc | Ernie Gieger | 504-654-1300 | 5,533 | 5,742 | Forest River | $7,616.76 |
| Vanguard Industries of Michigan, Inc. a/k/a | Ernie Gieger | 504-654-1300 | 209 | | | |
| Jayco Enterprises, Inc. a/k/a Bottom Line RV | Tom Cougill | 713-333-7600 | 1,655 | 2,107 | Jayco | $2,794.94 |
| Starcraft RV, Inc. (subsidiary of Jayco) | Tom Cougill | 713-333-7600 | 452 | | | |
| Monaco Coach Corporation | Charles Leche | 504-573-0790 | 1,389 | | | $1,842.51 |
| Pilgrim and/or its insurers (Crum & Forster, | Ryan Johnson; Terry | 225-248-2080 | 2,400 | | Pilgrim | $3,183.60 |
| Sunline Acquistion Co. Ltd. d/b/a Sunline Coach | Billy Parker (Allen | 337-291-1000 | 57 | | | $75.61 |
| Thor - Keystone RV Company | Jim Percy | 225-248-2130 | 2,330 | 5,402 | Thor | $7,165.75 |
| Thor - Dutchmen | Jim Percy | 225-248-2130 | 1,219 | | | |
| Thor | Jim Percy | 225-248-2130 | 851 | | | |
| DS Corp. d/b/a CrossRoads RV, Inc. | Jim Percy | 225-248-2130 | 988 | | | |
| Four Winds International | Jim Percy | 225-248-2130 | 12 | | | |
| Damon Motor Coach | Jim Percy | 225-248-2130 | 1 | | | |
| Komfort Corporation | Jim Percy | 225-248-2130 | 1 | | | |
| Layton Homes, Skyline Corp. | Larry Feldman | 504-596-2887 | 567 | | | $752.13 |
| Heartland Recreational Vehicles, L.L.C. | Brent Maggio | 504-836-5260 | 307 | | | $407.24 |
| Hy-Line Enters., Inc. n/k/a FRH, Inc. (out of | Thomas Buck (Blue | 504-831-4091 | 79 | | | $104.79 |
| Timberland RV Co. d/b/a Adventure | Thomas Buck (Blue | 504-831-4091 | 366 | | | $485.50 |
| R-Vision | Ralph Hubbard | 504-568-1990 | 780 | | | $1,034.67 |
| Sunnybrook R.V., Inc. | Jim Sutterfield | 504-598-2715 | 156 | | | $206.93 |
| Sun Ray Investments & Sunray RV , LLC | Tom Thaggard | 205-254-1091 | 137 | | | $181.73 |
| Frontier RV, Inc. | Randy Mulcahy | 504-527-0680 | 488 | | | $647.33 |
| Recreation By Design, LLC | Randy Mulcahy | 504-527-0680 | 1,089 | 1,341 | RBD | $1,778.84 |
| TL Industries, Inc. | Randy Mulcahy | 504-527-0680 | 252 | | | |
| Cruiser RV, LLC | Randall Mulcahay | 504-527-0680 | 7 | | | $9.28 |
| Play'Mor | Randall Mulcahay | 504-527-0680 | 3 | | | $3.98 |
| Morgan Building & Spas, Inc., and/or Morgan | Christine Lipsey | 225-382-3683 | 84 | | | $111.43 |
| Northwood Manufacturing d/b/a Northwood of | Sandy Duplantier | | 81 | | | $107.45 |
| Allen Camper Manufacturing Company, Inc. | Sandy Duplantier | | 17 | | | $22.55 |
| KZRV, LP | Jim Percy | | 443 | | | $587.64 |
| Sun Valley, Inc. | Jim Sutterfield | | 133 | | | $176.42 |
| TOTALS | | | 48,070 | | | 63,766.85 |

$127,533.70

Eric Berger

| | |
|---|---|
| **From:** | ANDREW WEINSTOCK [andreww@duplass.com] |
| **Sent:** | Friday, March 18, 2011 11:30 AM |
| **To:** | Eric Berger |
| **Subject:** | RE: Draft E-mail to Mikal Watts-Please comment before noon if possible |

OK, I am going to propose the cost issue be on a defendant by defendant basis and only with consent. As for the deficiency issue, that is what we will promote. I do not know if the Judge will agree.

**From:** Eric Berger [mailto:ebb@lcba-law.com]
**Sent:** Friday, March 18, 2011 11:21 AM
**To:** ANDREW WEINSTOCK
**Subject:** RE: Draft E-mail to Mikal Watts-Please comment before noon if possible

As long as the deficiencies can continue as is thru June 30, I can live with it.   We're compiling the 29 fields ourselves, so what's being proposed won't give us anything new.   If we hadn't been compiling the info ourselves, I don't think only ten would help, but that's for someone else to argue.

Eric B. Berger
ebb@lcba-law.com
Lobman, Carnahan, Batt, Angelle & Nader
400 Poydras Street
Suite 2300
New Orleans, LA 70130
(504) 586-9292
(504) 586-1290

**From:** ANDREW WEINSTOCK [mailto:andreww@duplass.com]
**Sent:** Friday, March 18, 2011 9:58 AM
**To:** Eric Berger
**Subject:** Draft E-mail to Mikal Watts-Please comment before noon if possible

Mikal,

Below are our comments on revisions to draft PTO # 84

Section 2.02 First I think you misunderstood what I was seeking in section 2.02. I am not fighting about the June 30 date (which the Judge told me point blank he was going to use). I am disagreeing over limiting the deficiency process to 10 "key data fields" between now and June 30. We would like the process to continue as is until the suspension. We certainly do not want to re-review and send out new letters next April if the cases are not settled by then.

Section 2.07 Should read as follows:

No further information shall be sought from Plaintiffs or Defendants between the
date of this Order and April 1, 2012, exclusive of discovery in bellwether cases.



1

Section 2.09 Since my initial draft was a double negative, we propose the following:

> This Order only applies to PFS forms that were originally produced before January 1, 2011. For all other fact sheets, compliance with Pre-Trial Orders Nos. 2 and 32 will still apply.

Add Section 2.10

> This Order does not apply to Actions filed after the date this Order is signed.