UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:   FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | LIABILITY LITIGATION |
| SECTION "N" (5) | * | |
| | * | |
| | * | JUDGE ENGELHARDT |
| | * | |
| | * | MAGISTRATE CHASEZ |
| THIS DOCUMENT IS RELATED TO: | * | |
| ALL CASES | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
CRUM AND FORSTER SPECIALTY INSURANCE COMPANY'S
MOTION TO ENFORCE MEMORANDUM OF UNDERSTANDING
AND OBJECTION TO ORDER OF MAY 18, 2012

COME NOW Plaintiffs and file this Memorandum in Opposition to Crum and Forster Specialty Insurance Company's Motion to Enforce Memorandum of Understanding and Objection to Order of May 18, 2012 (Rec. Doc. 25692).

## Background

In 2011, this Court entered an Order directing Mikal Watts on behalf of the Plaintiffs, after consultation with Defense Liaison counsel, to prepare a census of the claimants' data. PTO 86 (Rec. Doc. 20770). This was a huge undertaking, involving data compilation for over 50,000 claimants, and Mikal Watts' firm utilized the services of an overseas firm in India to compile the data. One of the purposes of this effort was to assist the parties in evaluating their relative positions in litigation and settlement. The

data also was organized in a searchable format, which assisted the parties in identifying duplicate claims.

The Court's Order specifically stated that the issue of which party shall bear the cost of the labor and bill from the third-party vendor in India would be reserved for a future determination of the Court. *Id.* Section 2.05. However, despite the reservation of this issue, all manufacturers at the time of the Order were clearly interested in confirming the actual number of the claimants against matched to their units. Likewise all parties were aware of the importance and value of compiling such data for evaluation and settlement purposes, since the Court consistently made it clear that global settlement was to be a priority during this phase of the MDL.

Consistent with the Court's Order, Mikal Watts undertook to have the census compiled, and his firm incurred costs in the amount of $134,246 in the process. On March 1, 2012, the Court informed Liaison counsel via e-mail of its intentions as to the apportionment of these incurred costs. A copy of that email is attached hereto as **Exhibit 1**. The Court indicated that as to the census cost total of $134,246, $6,712.30 should be paid by the contractors, and the remaining balance of $127,533.70 should be divided equally between the Plaintiffs and the manufacturing defendants. Of the manufacturing defendants, this cost share of $63,766.85 was to by divided in proportion to a census of matched claims that was attached to Defense Liaison's earlier email. On

May 18, 2012, the Court entered an Order allocating the costs in manner consistent with the March 1 email.  Rec. Doc. 25626.

Chris Pinedo, on behalf of Mikal Watts, wrote an e-mail of May 23, 2012 to Defense Liaison Counsel Andrew Weinstock, inquiring as to how the payments were to be divided up amongst the manufacturing defendants.  *See* **Exhibit 2**.  In response to that email, Plaintiffs' counsel received an e-mail along with a spreadsheet allocating the costs amongst the various manufacturing defendants.  **Exhibit 3**.  Pilgrim and/or their insurers, which have a census of approximately 2,400 claims, were allocated $3,283.60.  Pilgrim is bankrupt, and one of their insurers, Crum & Forster Specialty Insurance Company ("Crum"), now objects to paying this cost share.  It is important to note that Crum is not the only insurer for Pilgrim; therefore, Crum only bears a portion of the $3,283.60 share allocated to Pilgrim. This amount is $1,698.17, which is approximately in proportion to its settlement contribution, as referenced in Pilgrim's individual settlement sheet (Rec. Doc. 25226-2, p. 13 of 16), and it is far from arbitrary, as Crum has improperly suggested to this Court.

Crum also contends, incongruously, that requiring them to pay their share is somehow inconsistent with a Memorandum of Understanding ("MOU") pursuant to which the claims of plaintiffs in the MDL against Pilgrim and its insurers were settled.  This position is neither logical nor supported by the facts.

**Argument**

Crum has been on notice since April 2011 that the Court was going to allocate costs to the parties for the preparation of the census. Crum at no time objected to being responsible for its share of these costs. Moreover, Crum clearly relied on the census during settlement negotiations, and did not set forth in the MOU that it no longer was willing to pay for a share of the census data compilation effort.

Crum maintains that the census was of limited value to them, and, hence, they should not be obliged to pay. But, as the Court noted by e-mail with regard to the contractor defendants,

> [r]egarding the $134,246 that the Watts firm paid to Selectronic Equipment (the Indian company who prepared the census database), five percent (5%) of that amount -- $6,712.30 -- should be paid by the contractor defendants. *Although the database does not contain data specific to them, it is believed that they will derive some benefit from it, even if that benefit proves to be small.* Hopefully, they can agree among themselves as to how to share this expense without spending considerable billable time in the process. [emphasis added] **Exhibit 1**.

By their own admission, Crum saw the database effort had "value" to them, although they claim it was "limited". Memorandum in Support, p. 2, Rec. Doc. 25692-1. Even if the value of the data was "limited" or "small" as it was in the case of the contractors, Crum should pay their fair share of the census costs. In this regard, Plaintiffs would note that the amount allocated to Pilgrim and their insurers, $3,183.60, is less than half of what the contractors were allocated to pay for their "small benefit."

4

Crum claims it had its own data, data never shared with the Plaintiffs. However, even if were assumed that Crum's own data was similar to Plaintiffs' census data, the latter still had value during settlement discussions, because it allowed both sides to address the valuation of claims based upon an available and shared census. Further, Plaintiffs' census data provides the move-in and move-out dates, information which proved vital for Pilgrim's insurers (Crum, Sentry and Burlington) to evaluate their respective exposures and settlement contribution.

Crum argues that the Court's Order to Reimburse Costs Relating to Census Database (Rec. Doc. 25626) is "contrary" to the Crum's Agreement to Settle. Memorandum, p. 2. Rec. Doc. 25692-1, p. 2. This argument lacks merit for at least three reasons:

First, during the mediations with Pilgrim's insurers it was clear there were past litigation costs for which the parties, respectively, would remain responsible.  Second, during the mediations, Pilgrim repeatedly referred to the census as a factor limiting their exposure, i.e., this defendant relied upon census as an instrument to drive down the value of the settlement.  Third, the section of the MOU that Crum references in support of their argument does not specifically disavow responsibility for previously-incurred costs, including those related to the census data.  The section Movant references states that defendants will not be responsible for "costs or expenses, including fees, costs, or expenses relating to the class notice allocation process or its

5

administration, court costs or attorney fees." Memorandum, p. 3.  This refers to the prospective costs of finalizing the settlement, and, self-evidently, the already-completed census was not part of the class notice or administrative procedures required to achieve this finalization.

Crum was already on notice as far back as April 2011, that there would be a potential assessment to them for the census, yet they did not specifically disavow responsibility for its share of the census costs, either during settlement negotiations verbally or in the provisions of the MOU.  Most telling in this regard is that on page 6 of their Memorandum, Crum acknowledges that "[t]he parties negotiated through multiple drafts of the MOU (and the Stipulation of Settlement)."  The insurer had ample opportunity to address the previously-incurred census costs, and simply failed to do so.  Assuredly, had it done so, the plaintiffs would have refused to consider these costs their responsibility

For the reasons set forth above, Plaintiffs submit that Crum and Forster Specialty Insurance Company's Motion to Enforce Memorandum of Understanding and Objection to Order of May 18, 2012, is without merit and should be denied.

    Respectfully submitted,

    /s/ Robert C. Hilliard
    **ROBERT C. HILLIARD**
    **Trial Attorney in Charge for Plaintiff**
    Texas State Bar No. 09677700
    Southern District of TX Federal ID No.  5912

        ROBERT C. HILLIARD, L.L.P.
        719 S. Shoreline Boulevard, Suite 500
        Corpus Christi, Texas 78401
        Telephone:  (361) 882-1612
        Facsimile:  (361) 882-3015

        **MIKAL C. WATTS**
        Texas State Bar No. 20981820
        Southern District of TX Federal ID No. 12419
        MIKAL C. WATTS, P.C.
        2506 N. Port Ave.
        Corpus Christi, Texas 78401
        Telephone: (800) 994-0019
        Facsimile: (361) 882-1261

        **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

     I hereby certify that the above and foregoing pleading was served on all counsel of record through electronic notification pursuant to the electronic filing in the United States District Court for the Eastern District of Louisiana this 3rd day of July, 2012.

        /s/ Robert C. Hilliard
        _____
        **ROBERT C. HILLIARD**