UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION: N, 5 |
| | * | |
| This document relates to: | * | JUDGE ENGELHARDT |
| | * | |
| ALL CASES | * | MAGISTRATE CHASEZ |
| | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

### REPLY IN SUPPORT OF CRUM AND FORSTER SPECIALTY INSURANCE COMPANY'S MOTION TO ENFORCE MEMORANDUM OF UNDERSTANDING AND OBJECTION TO ORDER OF MAY 18, 2012

NOW INTO COURT, through undersigned counsel, comes Crum & Forster Specialty Insurance Company ["C&F Specialty"], and for Replying to the oppositions filed by the plaintiffs [#25728] and by Burlington Insurance Company [#25772], respectfully aver as follows. The submission date for this motion is July 11, 2012.

1. **The Memorandum of Understanding and Stipulation of Settlement Language is not narrow.**

Burlington and plaintiffs suggest that the language cited by C&F Specialty is too narrow to apply to the present situation. However, a review of the language shows it is not so limited. The pertinent portions of the MOU provide:

> Within five (5) business days of the entry of Final Orders Of Approval And Dismissal, or within such period longer than five (5) days if and only if requested by the Special Master and approved by the Court, all claimants included in this settlement will proceed with a binding allocation process. C&F Specialty, Sentry and Burlington will not be called upon to participate in the allocation process or to pay or contribute any additional funds above the payment amounts listed on page 1-2 of this Memorandum of Understanding. **C&F Specialty, Sentry and Burlington will not be responsible for any fees, costs or expenses, including fees, costs, or expenses relating to the class notice or allocation process or its administration, court costs or attorney fees.**
> ...
> The cost of settlement mediation and/or discussions with Mediators John Perry and Dan Balhoff shall be borne in the amounts reflected in the March 9, 2012 invoice issued by Perry Dampf. All other costs, expenses and fees incurred on behalf of the settling plaintiffs and claimants in the effectuation of this MOU are to be borne entirely by PSC and/or plaintiffs' counsel, subject to Court-approved reimbursement from the settlement funds.
> ...
> If a settlement class in connection with the resolution of all claims against Pilgrim, C&F Specialty, Sentry and Burlington is proposed either standing alone or as part of a larger settlement with other defendants, it will be at plaintiffs' sole cost, as the settlement herein is full and final and no settling defendant shall have any obligation to pay any amounts other than its respective settlement payment and its share of the fees of the Perry Dampf invoice, even if the proposed class settlement is ultimately not approved by the Court. (Emphasis supplied).[1]

The bold language in the first quoted paragraph shows that this provision applies to costs *including* class and notice costs. It is not *limited* to those costs. The language is much broader, and encompasses the costs imposed for the India database.[2]

The second and third quoted paragraphs show that the invoice of the mediator for the Pilgrim mediation was specifically included, but not other amounts of invoices were

---

[1] See Exhibit A to the Motion, #25692-2.
[2] Pilgrim's other insurers, Burlington Insurance Company and Sentry, a Mutual Company, have on information and belief paid $592.15 and $993.28 of the $3,183.60 amount assigned to Pilgrim, leaving $1598.17.

specifically included, as the only amount in addition to the settlement contribution C&F was to pay.  *Inclusio unius, exlcusio alterius.*   C&F Specialty demanded settlement language so as to avoid payment of any additional costs as was done with the mediation cost bill.  If plaintiffs had wanted the India database included, it could have done so.  It did not.

Likewise, the terms of the Stipulation of Settlement are broader than plaintiffs and Burlington admit:

> **§III. C. No Further Payment From Settlors.**
>
> **The PSC and Settlors further expressly agree that, except for the payment of their respective Settlement Amounts, and as set forth above in the event the settlement is not Court-approved, under no circumstances whatsoever shall Settlors be responsible for paying any monies, benefits, costs, administrative costs, expense or attorneys fees in connection with this Settlement Agreement, nor will Settlors be required to take any action or incur any liability or pay any expense or be required to do any other thing, except as expressly provided herein.**
> ...
> § X
> All attorneys' fees **and expenses related to the MDL and any Pending Action** shall be paid out of the appropriate Settlement Fund, with prior approval by the Court.

Section III may begin with a discussion of costs incident to the settlement, but the final clauses are not so limited.  Further, Section X is not limited as to which "expenses related to the MDL" will not be cast against defendants.

2.  **C&F Specialty Is In A Unique Position.**

Burlington argues that other defendants have not made the same argument as C&F Specialty, and therefore C&F Specialty must be wrong. This argument is flawed. C&F Specialty does not know what is in the mind of other defendants. C&F Specialty has not read other memoranda of understanding entered into by other manufacturing defendants and their insurers. If does not know if the language of other agreements is better or worse. The MOU document was not a form, and C&F Specialty specifically did work to include language about costs that other parties may try to charge against it. Further, on information and belief, many manufacturers did not undertake the effort, as C&F Specialty did, to obtain, review and summarize all of the plaintiff fact sheets it could locate (over 1,600) for plaintiffs who allegedly lived in Pilgrim trailers and were in suit against the insurers. Other defendants may have needed the India database. C&F Specialty did not. C&F Specialty further anticipated a cost issue when the India database was first discussed. It wrote its liaison counsel, to state an objection to paying for the database.[3]   Plaintiff will rely on Pre-Trial Order 86's (April, 2011) language that payment for the India database "shall be reserved for a future order of this Court." Pre-Trial Order 86 itself did not make an assessment against Pilgrim or C&F Specialty. This Court's May 18, 2012 Order cannot therefore be backdated to April, 2011. Nor is PTO clear that costs would be assessed against every single defendant, including Crum & Forster. Because PTO 86 pushed the issue off, C&F Specialty did not object further at that time. The undersigned did not receive the March 1, 2012 email attached to

---

[3] See Exhibit B to Motion (#25692-2), Letter from Counsel for Mover to Manufacturer Defendant Liaison Counsel Andrew Weinstock, March 17, 2011.

plaintiff's opposition.   As this cost issue was not brought up again with the undersigned until after the May 18, 2012 Order, Mover must make its argument now.

Plaintiff argues that because C&F Specialty used the words "limited value", in its memorandum in support, it must be subject to the assessment.  This ignores the next sentence of C&F Specialty's memorandum: "The Census Database may be useful to other parties, but to C&F Specialty, this was duplicative of own efforts."[4]   The fields used in C&F Specialty's database are included in Exhibit B to the Motion (#25692-2). These include move in and move out dates and several fields not in the PSC's database.[5] C&F Specialty should not have to pay for the PSC's database after paying for its own.[6]

## Conclusion

Because it initially objected to paying a portion of the "Census Database", because that database was redundant of work C&F Specialty did for itself, and because its Memorandum of Understanding clearly indicates the terms of settlement that C&F Specialty would not pay any further amounts for expenses or costs other than what was spelled out in the MOU, namely the mediation invoice, all prior to the Order of May 18, 2012, C&F Specialty objects to being assessed with any portion of the invoice for the Census Database.  The Order must be revised or stricken as it affects C&F Specialty, and C&F Specialty's Memorandum of Understanding must be enforced as written.

---

[4] See Memorandum in Support, Document 25692-1, p. 2.
[5] C&F Specialty has not attached a full copy of the data base due to its size
[6] The undersigned counsel represent C&F Specialty, not Pilgrim, which is bankruptcy.  If the Motion is granted and relief is to be provided, a ruling in favor of C&F Specialty should also reduce the May 18, 2012 Order's assessment against Pilgrim by the same amount, $1598.17 amount which may otherwise by due from C&F Specialty.

Respectfully submitted:

**CERTIFICATE OF SERVICE**

I CERTIFY THAT A COPY OF THE FOREGOING PLEADING HAS BEEN SERVED UPON COUNSEL FOR ALL PARTIES BY EMAIL THROUGH THE COURT'S ELECTRONIC CASE FILING (ECF) SYSTEM ON THIS __9th[h]__ DAY OF __July__, 2012.

_____/s Eric B .Berger_____

_____*/s Eric B. Berger*_____
SIDNEY J. ANGELLE, #1002
ERIC B. BERGER, #26196
LOBMAN, CARNAHAN, BATT,
  ANGELLE & NADER
400 POYDRAS STREET, SUITE 2300
NEW ORLEANS, LOUISIANA  70130
(504) 586-9292    FAX (504) 586-1290