**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: FEMA TRAILER FORMALDEHYDE ) <br> PRODUCTS LIABILITY LITIGATION ) <br> ) <br> This Document Relates to: ) <br> ) <br> *Serpas et al v. Keystone RV Company et al* ) <br> Docket No. 09-8696 ) <br> Plaintiff: Earnestine Frank ) <br> ) <br> *Adams, et al. v. Stewart Park Homes, Inc. et al* ) <br> Docket No. 09-8669 ) <br> Plaintiff: Sheilah DeGruy ) <br> ) | MDL NO.: 1873 <br><br> SECTION: N (4) <br><br><br> JUDGE: ENGELHARDT <br><br> MAG.: ROBY |

**MEMORANDUM IN SUPPORT OF DEFENDANT, C. MARTIN COMPANY INC.'S RULE 12 MOTION AND ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Defendant, C. Martin Company, Inc., through undersigned counsel, respectfully submits this Memorandum in support of its Motion to Dismiss pursuant to Rule 12(b) for: (a) prescription; (b) insufficiency of process; (c) insufficiency of service of process: (d) because Plaintiffs have failed to state a cause of action against Defendant, C. Martin Company and/or cannot prove a cause of action against C. Martin Company; (e) lack of personal jurisdiction; and, in the further alternative, for Summary Judgment.

I.      Procedural Background

The above-captioned Multi-District Litigation ("MDL") was created in 2007 to allow for the consolidated resolution and completion of discovery and other pre-trial matters. To guide the multitude of parties and counsel involved in this matter, the Court has issued over 80 Pre-Trial Orders on numerous subjects, including discovery and procedure. On January 30, 2008, the Court issued Pre-Trial Order No. 2, describing the procedures for various case management issues. In particular, Pre-Trial Order No. 2 required:

> Plaintiffs shall file a consolidated Master Complaint by February 29, 2008. The Master Complaint shall incorporate and supersede all pending actions and those subsequently filed, removed, or transferred to this Court as part of this proceeding. The Defendants before the Court as of the date of this Order agree to accept service of process of the Master Complaint (without, however, waiving any objections to personal jurisdiction) by having a copy of the Master Complaint mailed by regular mail to Defendants' Liaison Counsel.

See, Rec. Doc. No. 87.

The Plaintiffs in these matters initiated their lawsuits on December 30, 2009, by the filing of "Plaintiffs' Amending Complaint for Damages" (hereinafter "the Underlying Petitions"). The lawsuits were assigned the docket numbers noted herein above. The Underlying Petitions were then served upon Defendant, C. Martin Company with a request for Waiver of Service on or about March 28, 2011. Notably, to this day, the Master Complaint has never been served upon purported Defendant, C. Martin Company, nor has C. Martin Company been named as a Defendant in the Administrative Master Complaint.

The Underlying Petitions state the following as their legal allegations against Defendant, C. Martin Company:

2

Contractor defendant received a no-bid contract from FEMA and was tasked with, amongst other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA - ¶1(B)

Contractor Defendants performed sufficient business in the state of Louisiana to be subject to in personam jurisdiction, [and] engaged in commerce in both this federal district and in the State of Louisiana with respect to activities and claims - ¶7

FEMA engaged Contractor defendants with no-bid contracts, eventually amounting to billions of dollars – FEMA relied on expertise and knowledge of Contractor defendants to provide information and advice on, among other things, the conversion of mobile travel trailers into temporary housing units for periods up to, and potentially exceeding, 18 months in duration - ¶29

Contractor defendants were tasked with the transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units - ¶30

Under the terms of the contracts, the Contractor defendants were obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and indicated by the manufacturers of same – under their no-bid contracts with FEMA, the Contractor defendant was obligated to advise and instruct FEMA regarding the implementation of those contracts – Contractor defendant failed to properly fulfill either of these tasks - ¶31

Contractor defendant contracted with FEMA to pick-up and transport the temporary housing units from FEMA-controlled staging areas and deliver them to areas which the Contractor defendant was tasked with operating – new areas included stating areas to be managed and maintained as assigned to a Contractor defendant or individual locations and addresses where the Contractor defendant assigned that temporary housing unit would have obligations to manage and maintain it - ¶32

To accomplish their contractual obligations with FEMA, in addition to the use of subsidiary companies, the Contractor defendant entered into numerous sub-Ks, but at all times retained supervisory capacity and responsibility under their individual contracts with FEMA - ¶33

Contractor defendant was tasked under their contracts with FEMA to identify and prepare the infrastructure for the various group site locations – included, amongst other things, ensuring there would be adequate water, sewage, electricity, etc. – Contractor defendant knew or should have known that these preparations were for long-term occupancy of the temporary housing units - ¶34

One the temporary housing units occupied by the Plaintiff was transported and delivered to a particular location, the Contractor defendant had the responsibility for installing that temporary housing unit – the Contractor defendant installed the temporary housing unit by "blocking" the unit – this meant raising the Plaintiff's unit several feet into the air and off of its wheel base, and setting it on concrete blocks - ¶35

By blocking the temporary housing units of the Plaintiff, the Contractor defendant created stress and flexing on the frame of the unit as it was not designed to be lifted off of the wheel base – manufacturers of the temporary housing units warned in the various owners' manuals provided with the units, that units should not be jacked so that the vehicle's weight is no longer supported by the wheels - ¶36

The stress and flexing of the temporary housing unit's frame caused the Contractor defendant's blocking it with weight off the wheels created distortion in the travel trailer's shall allowing increased moisture intrusion which contributed to increased formaldehyde exposures - ¶37

By installing the travel trailers on concrete blocks for extended occupancy, the Contractor defendant knowingly and intentionally modified the design and the actual use of these units by converting them into a temporary housing unit to be used as a residence for long term occupancy in some instances exceeding 18 months - ¶38

Contractor defendant failed to consult with the Manufacturer defendant with regard to the installation, warnings, warranty issues or advisability or using travel trailers for long term residence and occupation – the Contractor defendant took actions which voided the warranties of the manufacturer and directly created or contributed to unsafe and hazardous living conditions in the temporary housing units - ¶39

Once the Contractor defendant had completed the transportation, delivery and installation of the THU occupied by the Plaintiff, the Contractor defendant was tasked with inspecting the unit to ensure that it was safe and habitable, prior to

occupancy by the Plaintiff – the Contractor defendant failed to adequately inspect the THU occupied by the Plaintiff to ensure that the unit was safe and suitable for its intended use – the long-term occupancy by individuals and families displaced by hurricanes Katrina and Rita – this failure to properly inspect the unit for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by hurricane victims - ¶40

*See*, Petitions, attached hereto as Exhibits A and B.

## II. Factual Background

On or about November 16, 2005, purported Defendant, C. Martin Company entered into a contract ("the Contract") with Co-Defendant Shaw Environmental Group. Pursuant to the Contract, Purchase Orders would be issued which would set forth the scope of services to be performed by Defendant, C. Martin. The "work" to be completed by Defendant, C. Martin was limited to daily, preventive and emergency maintenance on the emergency housing units. At no time was Defendant, C. Martin contracted to, obligated to, or involved in the installation of the emergency housing units, the selection of emergency housing units or the sites for same, or the removal, overhaul and/or reinstallation of the emergency housing units.

## III. Law and Argument

### A. Rule 12(b)(6) Motion to Dismiss as Plaintiffs' Claims have Prescribed

The prescriptive period for a tort/negligence claim in the State of Louisiana is one year from the date of injury. LA. CIV. CODE ANN. art. 3492. In the matters herein, Plaintiffs' injuries were suffered on dates ranging from January through April, 2006, the dates on which they moved into their trailers and allegedly were exposed to formaldehyde and were injured as a

result of said exposure. However, suit was not filed in these matters until December 30, 2009. As such, Plaintiffs' claims have clearly prescribed on their face.

Further, while the undersigned recognizes that "during the pendency of [a] putative class action, the statute of limitations [is] tolled or suspended and remain[s] tolled for all members of the putative class," it also respectfully submits that "the denial of class certification has the effect of re-starting the running of prescription, and at [that] point, putative class members may choose to file their own suits, provided that those actions are instituted within the time that remains on the limitations period, or [they] may elect to intervene as plaintiffs in the pending action." *Barasich v. Shell Pipeline Co., LP*, 2008 U.S.Dist. LEXIS 47474, 19-20 (E.D.La. 6/19/2008) (citing *Fulford v. Transport Services Co.*, 412 F.3d 609, 613 (5th Cir. 2005) (citing *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 354, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983))).

In the instant matter, the MDL was filed on or about June 12, 2007. There is no evidence that any of the Plaintiffs filed suit on or prior to that date. As such, Plaintiffs tentatively became class Plaintiffs at that time.[1] However, by filing suit separate from the claimed class action, and after the Class was denied certification, Plaintiffs herein have plainly opted for option one of the two discussed above – choosing to file their own suits rather than intervening as plaintiffs in a pending action. Plaintiffs, however, clearly missed the deadline to do so, as they did not file said suits until December 30, 2009, one year **and** one day after the denial of the class certification herein. Therefore, even presuming that the prescriptive period would completely restart with a

---

[1] Respectfully, however, it is submitted that Plaintiffs' claims were already prescribed on their face at that time as the alleged damages were incurred between February and April 2006, their move-in dates, and the MDL was not filed until June 2007, more than the one-year tort period applicable to such actions in Louisiana.

one year period at the denial of class certification, Plaintiffs' claims herein remain prescribed on their face. Further, when this period is added to the time period which had already run prior to the filing of the MDL – a period of an additional fourteen to sixteen months – it becomes clear that not only have Plaintiffs' claims prescribed, but that there can be no valid reason or good faith for such a delay in filing. As such, and based upon the above, it is respectfully submitted that Plaintiffs' claims should be dismissed with prejudice.

B. <u>Rule 12(b)(4) Motion to Dismiss for Insufficient Process</u>

A Rule 12(b)(4) Motion to Dismiss "is the proper challenge when the [defendant] alleges that the summons and complaint do not properly name the party on whom the summons and complaint were served." *Nicholson v. Wise*, 2008 WL 2051747, No. 08-0110 at *1 (W.D. La. April 7, 2008). The pertinent question in determining whether an action should be dismissed for insufficient process is whether the error in the process places some prejudice on the moving party. *See Shell Western E&P, Inc. v. Dia-Log Co.*, 2000 WL 805231, Nos. 99-3447, 97-0360, at *2 (E.D.La. June 21, 2000).

In the instant matter, pursuant to Pre-Trial Order Number 2, Defendants in the MDL were to be served with a copy of the AMC. C. Martin Company, however, was not named at all in the AMC by the specified date of February 29, 2008, and still has not been named as a Defendant in same to date. C. Martin Company was served with only the Underlying Petitions, in violation of Pre-Trial Order Number 2, and, therefore, process itself was insufficient herein. Simply put, there cannot be sufficient process when process itself is completely missing.

Further, it is submitted that these failures have resulted in a gross and unfair impediment to C. Martin's defense of the matter herein, particularly because it has not been served or provided with any of the discovery, including Master Interrogatories and/or Requests for Production, provided for and set out in Pre-Trial Order Number 2.[2] In fact, C. Martin Company has been unable to even review and analyze its defenses to a great degree as it has been provided with no substantive information regarding the claims against it, the defenses claimed by its co-defendants, or any information other than that set forth in the Underlying Petitions and the very limited PFS's it managed to obtain. As such, and based upon the above, it is respectfully submitted that the claims against C. Martin Company should be dismissed with prejudice herein pursuant to Rule 12(b) for insufficient process and/or insufficient service of process.

C.  Rule 12(b)(5) Motion to Dismiss for Insufficient Service of Process

This Honorable Court has held that Rule 12(b)(5) provides for dismissal of a claim if service of process was not timely made in accordance with [Rule 4] or was not properly served in the appropriate manner." *Thomas v. New Leaders for New Schools*, 278 F.R.D. 347, 349-50(E.D.La. 2011) (quoting *Wallace v. St. Charles Parish Sch. Board*, 2005 WL 1155770, No. 04-1376 at *1 (E.D.La. May 5, 2005)). Pursuant to Federal Rule of Civil Procedure 4(m), service is to occur within 120 days of filing of the Complaint. In the instant matter, C. Martin Company was not named as a Defendant herein until the filing of the Underlying Petitions on December 30, 2009. One hundred twenty days from that date was April 29, 2010. Clearly, the time within

---

[2] C. Martin Company has managed to obtain the PFS's for the Plaintiffs listed above, but only after requesting same multiple times, and not within the time frame set forth by this Honorable Court.

which C. Martin Company was to be served with the AMC has long passed, resulting in an evident insufficient service of process. Further, C. Martin Company was not even served with the Underlying Petitions until on or about March 28, 2011, a period of more than 400 days, in direct violation of Rule 4(m).

Furthermore, this Court has reasoned that "when an alleged defect in service is due to a minor, technical error, only actual prejudice to the defendant or evidence of a flagrant disregard of the requirements of the rules justifies dismissal. *Louisiana Acorn Fair Housing v. Quarter House*, 952 F.Supp. 352, 355 (E.D.La. 1997) (quoting *Libertad v. Welch*, 53 F.3d 428, 440 (1st Cir. 1995)). However, it is respectfully submitted that a delay of 400 days for service of what was already a prescribed Petition is not a minor, technical error, but is rather evidence of the required "flagrant disregard of the rules" and, therefore, dismissal is justified herein.

Furthermore, Pre-Trial Order No. 2 explicitly states that the AMC "shall incorporate and supersede all pending actions *and those subsequently filed.*" However, C. Martin Company was served with only the Underlying Petitions, which cannot constitute service of process as they are superseded by the AMC. As the AMC was never served upon C. Martin Company, this clearly constitutes insufficient service of process that cannot be remedied without prejudice to C. Martin. Additionally, it is respectfully submitted that the substantial delay in same, a period of more than 900 days, mandates a determination of flagrant disregard of the rules herein, and thus, dismissal pursuant to Rule 12(b)(5).

D. <u>Rule 12(b)96) Motion for Failure to State a Claim upon which Relief can be Granted</u>

The Fifth Circuit has held that "the district court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999). The central inquiry in determining the validity of a 12(b)(6) motion is "whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Id.*

In the present case, and pursuant to Pre-Trial Order Number 2, an AMC was to be filed with the Court by February 29, 2008. The AMC was not until filed until on or about March 18, 2008, and did not include any claims as against purported Defendant, C. Martin Company. Additionally, the AMC has not been amended to date to add C. Martin Company as a defendant. Further, to C. Martin Company's knowledge, no Plaintiff has even sought to amend the AMC to do so. As such, and based upon the procedures set forth in Pre-Trial Order Number 2, the AMC does not, and now cannot, include claims against purported Defendant, C. Martin Company as the Pre-Trial Order specifically requires that amendments may be filed with leave of the Court, "but in no event later than ninety (90) days after the filing of the Master Complaint or Master Answer to which the amendment of third-party claim applies, except by leave of court upon good cause shown."

Clearly, based upon the filing date of the Underlying Petitions and the time limits set forth in Pre-Trial Order Number 2, any amendment to the AMC naming C. Martin Company as a defendant thereto was required to be filed by January 30, 2009. To date, no such amendment has

10

been filed. Therefore, as the AMC supersedes any subsequent filings and does not name C. Martin Company as a party to the action, Plaintiffs have clearly failed to state a claim against purported Defendant, C. Martin Company. Further, it is respectfully submitted that there can be no "good cause shown" why Plaintiffs have not sought to amend the AMC within the past 900 days to add C. Martin Company as a Defendant thereto. As such, it is respectfully submitted that a dismissal with prejudice should be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Further, the Underlying Petitions filed by Plaintiffs specifically define the parameters of the alleged negligence by the named Defendants, which are actions which C. Martin Company did not undertake or contract to undertake as to Plaintiffs' temporary housing units as more fully set forth in this Memorandum below and in C. Martin Company's Affidavit attached hereto. The purported claims against C. Martin Company are defined by and limited to its duties to the Plaintiffs, which are defined by and limited under its contracts with Shaw and FEMA. As such, because the Underlying Petitions allege duties which were not contracted to or for by C. Martin Company, C. Martin Company did not have a duty to Plaintiffs under the contracts or the law of this State to those Plaintiffs. Therefore, it is respectfully submitted that even the Underlying Petitions fail to state a claim against purported Defendant C. Martin Company and, as such, Plaintiffs' claims should be dismissed with prejudice pursuant to Rule 12(b)(6).

E.  Motion for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that Summary Judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513. Conclusory statements,

speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim. *RSR Corporation v. International Insurance Company*, 612 F.3d 851, 857 (5th Cir. 2010).

In the instant suits, Plaintiffs have alleged the following actions in their Underlying Petitions, claiming same rise to the level of negligence on the part of purported Defendant, C. Martin Company:

> Contractor defendant received a no-bid contract from FEMA and was tasked with, amongst other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA - ¶1(B)
>
> FEMA engaged Contractor defendants with no-bid contracts, eventually amounting to billions of dollars – FEMA relied on expertise and knowledge of Contractor defendants to provide information and advice on, among other things, the conversion of mobile travel trailers into temporary housing units for periods up to, and potentially exceeding, 18 months in duration - ¶29
>
> Contractor defendants were tasked with the transportation, installation, site identification and preparation of locations and groups sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units - ¶30
>
> Under the terms of the contracts, the Contractor defendants were obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and indicated by the manufacturers of same – under their no-bid contracts with FEMA, the Contractor defendant was obligated to advise and instruct FEMA regarding the implementation of those contracts – Contractor defendant failed to properly fulfill either of these tasks - ¶31

Contractor defendant contracted with FEMA to pick-up and transport the temporary housing units from FEMA-controlled staging areas and deliver them to areas which the Contractor defendant was tasked with operating – new areas included stating areas to be managed and maintained as assigned to a Contractor defendant or individual locations and addresses where the Contractor defendant assigned that temporary housing unit would have obligations to manage and maintain it - ¶32

To accomplish their contractual obligations with FEMA, in addition to the use of subsidiary companies, the Contractor defendant entered into numerous sub-Ks, but at all times retained supervisory capacity and responsibility under their individual contracts with FEMA - ¶33

Contractor defendant was tasked under their cotnracts with FEMA to identify and prepare the infrastructure for the various group site locations – included, amongst other things, ensuring there would be adequate water, sewage, electricity, etc. – Contractor defendant knew or should have known that these preparations were for long-term occupancy of the temporary housing units - ¶34

One the temporary housing units occupied by the Plaintiff was transported and delivered to a particular location, the Contractor defendant had the responsibility for installing that temporary housing unit – the Contractor defendant installed the temporary housing unit by "blocking" the unit – this meant raising the Plaintiff's unit several feet into the air and off of its wheel base, and setting it on concrete blocks - ¶35

By blocking the temporary housing units of the Plaintiff, the Contractor defendant created stress and flexing on the frame of the unit as it was not designed to be lifted off of the wheel base – manufacturers of the temporary housing units warned in the various owners' manuals provided with the units, that units should not be jacked so that the vehicle's weight is no longer supported by the wheels - ¶36

The stress and flexing of the temporary housing unit's frame caused the Contractor defendant's blocking it with weight off the wheels created distortion in the travel trailer's shall allowing increased moisture intrusion which contributed to increased formaldehyde exposures - ¶37

By installing the travel trailers on concrete blocks for extended occupancy, the Contractor defendant knowingly and intentionally modified the design and the actual use of these units by converting them into a temporary housing unit to be

> used as a residence for long term occupancy in some instances exceeding 18 months - ¶38
>
> Contractor defendant failed to consult with the Manufacturer defendant with regard to the installation, warnings, warranty issues or advisability or using travel trailers for long term residence and occupation – the Contractor defendant took actions which voided the warranties of the manufacturer and directly created or contributed to unsafe and hazardous living conditions in the temporary housing units - ¶39
>
> Once the Contractor defendant had completed the transportation, delivery and installation of the THU occupied by the Plaintiff, the Contractor defendant was tasked with inspecting the unit to ensure that it was safe and habitable, prior to occupancy by the Plaintiff – the Contractor defendant failed to adequately inspect the THU occupied by the Plaintiff to ensure that the unit was safe and suitable for its intended use – the long-term occupancy by individuals and families displaced by hurricanes Katrina and Rita – this failure to properly inspect the unit for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by hurricane victims - ¶40

However, purported Defendant, C. Martin Company was not tasked with transportation, delivery, installation, de-installation or refurbishment of the temporary housing units provided by FEMA as alleged in Paragraph 1(B). *See*, Exhibit C, Affidavit of John Huge. Further, C. Martin Company did not contract to and never undertook to convert any mobile travel trailers into temporary housing units as alleged in Paragraph 29. *See, id.* It was also not tasked with the transportation, installation, site identification and preparation of locations and groups sites, preparation of infrastructure to handle the units, refurbishment and restoration, and the eventual de-installation and removal of the units as alleged in Paragraph 30. *See, id.* Further, because C. Martin Company was not contracted to install, refurbish, restore, and/or reinstall the units in question, it was not obligated to adhere to any warnings or instructions regarding same as alleged

15

in Paragraph 31. Simply put, C. Martin cannot have been obligated to adhere to warnings and instructions which did not apply to its duties under the contract.

Additionally, C. Martin did not pick up or transport the temporary housing units from FEMA-controlled staging areas or deliver them to areas which the Contractor defendant was tasked with operating as alleged in Paragraph 32. *See, id.* C. Martin was not tasked with identifying or preparing the infrastructure for the various group site locations as alleged in Paragraph 34. *See, id.* C. Martin had no duty, under any contract or otherwise, to install Plaintiff's temporary housing units as alleged in Paragraph 35, and specifically did not install Plaintiffs' temporary housing units and did not "block" the units (raising the Plaintiffs' units several feet into the air and off of its wheel base, and setting it on concrete blocks) as alleged in Paragraph 35. *See, id.* As such, C. Martin Company, having not installed or blocked the units, cannot have been responsible for any additional stress or flexing on the frame of the unit allegedly created by same. Nor could C. Martin Company have been responsible for following any guidelines set forth warnings or instructions for installation as alleged in Paragraph 36, as C. Martin Company was simply not involved in said installations.

As Plaintiffs allege in Paragraph 37 that it is this "stress and flexing of the temporary housing unit's frame caused by the Contractor defendant's blocking it with weight off the wheels [that] created distortion in the travel trailer's shell allowing increased moisture intrusion which contributed to increased formaldehyde exposures," it is clear that C. Martin Company, which was not involved with the installation of the travel trailers or the blocking of same, cannot have

been responsible for the alleged increase in formaldehyde exposure. Further, because it was not involved in the installation or blocking of the travel trailers, C. Martin Company did not modify the design or use of the trailers as alleged in Paragraph 38.

Additionally, because C. Martin Company was not a party to the decision to use the travel trailers in question, was not involved in site selection, and did not install the trailers in question, *see, id.*, it had no duty to consult with the Manufacturer Defendants regarding same as alleged in Paragraph 39, and it specifically took no actions which would void any warranties related to same or which would contribute to unsafe and/or hazardous living conditions related to same. C. Martin also did not inspect Plaintiffs' units to ensure that they were safe and habitable, prior to occupancy by the Plaintiffs as alleged in paragraph 40. *See, id.* In fact, the only tasks C. Martin Company contracted to perform were basic preventive maintenance inspections of the temporary housing units, which inspections did not include inspecting installations or environmental factors, and daily, preventive and emergency maintenance and repair to the trailers. *See also*, Record Doc. #18426, n.2 (dismissing claims against the Contractor Defendants when same were based solely on failure to properly maintain the EHU's); Rec. Doc. No. 25722.

As such, C. Martin Company was not contracted to and did not undertake to perform or provide any of the duties alleged in the Plaintiffs' Complaints, which duties allegedly caused Plaintiffs' injuries. Because C. Martin Company did not contract for or undertake any such duty, there is no genuine issue of fact that C. Martin Company owed no duty to the Plaintiffs, and Summary Judgment should be granted herein.

F.  <u>Conclusion</u>

WHEREFORE, Defendant, C. Martin Company, Inc., prays that its Motion to Dismiss be granted, dismissing the claims of Plaintiffs, Earnestine Frank and Sheilah DeGruy with prejudice as against this Defendant.

Respectfully submitted,

**PROVOSTY & GANKENDORFF, L.L.C.**


_____/s/ Edgar D. Gankendorff_____
Edgar D. Gankendorff
Louisiana Bar No.: 20550
Henry S. Provosty
Louisiana Bar No. 2056
Lena D. Giangrosso
Louisiana Bar No. 31464
650 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
(504) 410-2795 • (504) 410-2796 Fax

*Attorneys for C. Martin Company, Inc.*