UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 07-1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION N |
| | * | |
| | * | JUDGE ENGELHARDT |
| **THIS DOCUMENT RELATES TO:** | * | |
| *See Exhibit "A"* | * | MAGISTRATE CHASEZ |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF SETTLING
CONTRACTOR DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

The Settling Contractor Defendants ("Contractors")[1] move for this Court to enter

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing all

remaining claims against them in all cases in this MDL involving manufactured housing.[2]  In

brief, the plaintiffs in this MDL – including the plaintiffs in the manufactured housing cases –

have advanced four theories of liability with regard to the Contractors: products liability,

negligent installation, negligent maintenance, and failure to warn.  The maintenance and failure

---

[1]     The Settling Contractor Defendants are: Bechtel National, Inc.; CH2M HILL Constructors, Inc.; Fluor
Enterprises, Inc.; Shaw Environmental, Inc.; Jacquet Construction Services; PRI/DJI, A Reconstruction Joint
Venture; Project Resources, Inc.; American Radiation Services, Inc.; B & I Services, L.L.C.; Davis Professional
Accounting Services, Inc. a/k/a Davis Professional Services, Inc.; Multi-Task, L.L.C.; DC Recovery Systems; MLU
Services, Inc.; Smith Research Corporation; T-Mac, Inc.; TKTMJ, Inc.; and Del-Jen, Inc.

[2]     A list of all such cases is attached as Exhibit "A."

to warn claims have already been dismissed on an MDL-wide basis.[3]   The plaintiffs' products

liability claims were dismissed in the two individual bellwethers in which those claims were

tested;[4] however, they remain pending in the MDL.   That said, the products liability claim, the

negligent installation claim, and the failure to warn claim are not applicable to manufactured

housing.   Therefore, the Contractors urge the Court to dismiss those claims in all cases related to

manufactured housing.

**BACKGROUND**

The overall factual background underlying this MDL hardly requires further exposition at

this point.   There are, however, a few facts that are relevant to the present motion.   The first,

which is obvious but is nevertheless important, is that manufactured housing units

("Manufactured Homes") are not the same thing as travel trailers and park models.

Manufactured Homes are bigger than other emergency housing units ("EHUs").[5]   Manufactured

Homes are not designed to be hauled around once installed.[6]   They do not have vehicle

identification numbers like other EHUs.[7]   They are designed to be installed on permanent

foundations.[8]   More specifically, they are designed to be installed on piers generally made of

concrete blocks, which piers rest on the permanent foundations.[9]   They are built for use, and are

---

[3]   *See* R. Docs. 18426 and 24196.  The dismissal of failure to warn claims pertained to Louisiana law.  Such claims that arise under the laws of other states are discussed herein.

[4]   R. Docs. 3217 and 11240.  In the *Wright* bellwether, the plaintiff dismissed his LPLA claims in recognition of the prior ruling.

[5]   Statement of Uncontested Facts, ¶ 1.

[6]   Statement of Uncontested Facts, ¶ 2.

[7]   Statement of Uncontested Facts, ¶ 1.

[8]   Statement of Uncontested Facts, ¶ 2.

[9]   Statement of Uncontested Facts, ¶ 2.

generally used, as permanent housing by the people who live in them.[10]   Moreover, Manufactured Homes are regulated by federal laws[11] and by standards and regulations promulgated by the United States Department of Housing and Urban Development ("HUD").[12]

In a similar vein, the Contractors' duties with regard to the installation of Manufactured Homes are different than with regard to travel trailers.  Manufacturers of Manufactured Homes typically provide specific installation instructions that detail how Manufactured Homes are to be installed onto foundations and piers.[13]   Such installation instructions are incorporated by reference into the Contractors' respective contracts with FEMA.[14]   Moreover, the American National Standard for Manufactured Home Installations is also incorporated by reference into the Contractors' contracts.[15]   State and local laws pertaining to the installation of Manufactured Homes are further incorporated by reference.[16]   These instructions, laws and regulations uniformly discuss "installation" of Manufactured Homes onto foundations and piers.[17]   Moreover, by state law, Manufactured Homes may only be installed by those who are licensed to do so.[18]

---

[10]        Statement of Uncontested Facts, ¶ 3.

[11]        The Manufactured Home Construction and Safety Standards Act is found at 42 U.S.C. § 5401 *et seq.* ("the MHA").  *See also* Statement of Uncontested Material Facts, ¶ 4.

[12]        24 C.F.R. §§ 3280, 3282 (the "HUD Code").

[13]        Statement of Uncontested Facts, ¶ 2.

[14]        Statement of Uncontested Facts, ¶¶ 5-9.  A copy of Exhibit 6 to the Performance Work Statement, which is a part of FEMA's contract with Shaw, is attached as Exhibit "B."  Although this memorandum refers generally to portions of Shaw's contract, the other Contractors have substantially identical terms in their respective contracts. *See* excerpts from Bechtel's (Exhibit "C"); CH2M HILL's (Exhibit "D"); and Fluor's (Exhibit "E") contracts regarding installation of Manufactured Homes.

[15]        *See* Exhibit "A," §2.1; Statement of Uncontested Facts, ¶ 10.

[16]        *See* Exhibit "A," §2.1; Statement of Uncontested Facts, ¶ 11.  Louisiana has a specific law governing how Manufactured Homes are to be installed.  *See* La. R.S. 51:912.21-912.31.

[17]        Statement of Uncontested Facts, ¶ 12; La. R.S. 51:912.23.

[18]        Statement of Uncontested Facts, ¶ 14; La. R.S. 51:912.27; Miss. Code Ann. §75-49-9.

All of these instructions, laws and regulations pertaining to Manufactured Homes may be readily distinguished from the situation pertaining to travel trailers and park models.  Other than FEMA's directive to install travel trailers and park models on piers (but not permanent foundations), there is no instruction, law or regulation requiring that travel trailers or park models be "installed" on piers.[19]   To again state the obvious, this is because Manufactured Homes are intended to function as permanent homes and to stay in one place, whereas travel trailers and park models are meant to be mobile (except when FEMA directed otherwise).

**THE PLAINTIFFS' ALLEGATIONS**

Despite these fundamental differences, the plaintiffs in this MDL have (at least as far as their pleadings are concerned) treated claims relating to travel trailers and park models as if they were the same as those relating to Manufactured Homes.  In large part, the plaintiffs' allegations may be found in the Third Administrative Master Complaint, R. Doc. 4486 (the "AMC").[20] These allegations state four general theories of liability against the Contractors that can be summarized as products liability, negligent installation (often referred to as the "twisting theory"), negligent maintenance, and failure to warn.[21]   Because this Court has already dismissed all claims relating to negligent maintenance,[22] only the twisting theory, failure to warn,[23] and the products liability theories need be addressed at this time.

---

[19]      Statement of Uncontested Facts, ¶ 13.

[20]      The PSC also filed Fourth and Fifth Supplemental and Amended Administrative Master Complaints, but the modifications to the Third AMC were minor and did not affect the substance of the plaintiffs' allegations against the Contractors.  *See* R. Docs. 7688 and 14480-4.  The plaintiffs also have filed complaints in each of the underlying lawsuits listed on Exhibit "A," but those allegations are largely identical to those in the Third AMC, at least for purposes of the present motion.

[21]      *See generally* R. Doc. 4486, ¶¶ 293-342.  Although other theories can be derived from the pleadings, such as negligent refurbishment, absolutely no evidence has been developed to support them, and they are subject to the same arguments as the main four.  The count under Mississippi law for breach of implied warranty (¶¶ 327-28) is discussed below.

[22]      R. Doc. 18426.

**LAW AND ARGUMENT**

> **I.      The Plaintiffs Have No Evidence to Support Their Products Liability Theory; Moreover, that Theory Is Preempted.**

As previously noted, the plaintiffs do not present a distinct factual predicate for manufactured housing, but instead make the same allegations as to all "housing units," whether they are trailers or Manufactured Homes.  This failure is fatal to the plaintiffs' products liability claims.  With regard to travel trailers, the plaintiffs' theory was that the contractors "converted" the trailers by taking something mobile and turning them into stationary objects that were – contrary to their original intent, according to the plaintiffs – then to be used as "residential units."[24]  This theory was the only way that the plaintiffs could contend that the Contractors were "manufacturers" and therefore subject to products liability laws.  This theory, however, has no application to manufactured housing.   Manufactured Homes are intended to be used as residential units.  "Jacking" them onto permanent foundations and piers is simply doing what the manufacturers require.  For purposes of this motion, what this means is that the plaintiffs are simply unable to establish that any particular Contractor is a "manufacturer" for purposes of the LPLA or MPLA.[25]  The plaintiffs' claims are therefore subject to summary judgment because the plaintiffs cannot meet an essential element of a products liability claim.

The Contractors note that the Court has previously dealt with this issue.  The Court declined to dismiss LPLA claims on an MDL-wide basis, based upon the pleadings alone.[26]  But

---

[23]      *See* R. Doc. 24196, dismissing all Louisiana failure to warn claims.

[24]      This theory was articulated in several pleadings, including the PSC's opposition to Fluor's motion for judgment on the pleadings regarding the LPLA, R. Doc. 13821.  *See also* AMC, ¶ 294 (alleging that the Contractors "altered" the housing units).

[25]      La. R.S. 9:2800.51 *et seq*; Miss. Code Ann. §11-1-63.  The AMC does not assert products liability claims against the Contractors under Alabama or Texas law.

[26]      R. Doc. 18464.

in both bellwether cases in which this issue was raised and resolved, the plaintiffs could not develop evidence to show that either Fluor or Shaw had modified the travel trailers at issue such that they could be considered manufacturers for purposes of the LPLA.  Accordingly, the Court dismissed LPLA claims in the first bellwether, and the plaintiff voluntarily dismissed them in the second.[27]  Even leaving aside the nonsensical nature of the plaintiffs' allegations as applied to manufactured homes, this motion does not test the sufficiency of the pleadings, but rather whether the plaintiffs have presented any evidence that could show that the Contractors are manufacturers of Manufactured Homes for purposes of the products liability laws of Mississippi and Louisiana.  They cannot, and their claims must be dismissed.

Further undermining plaintiffs' claims is the fact that, if the Contractors were manufacturers, they would benefit from the same protections afforded by the MHA and HUD Code.[28]  This Court has already ruled that federal law and regulations preempt any state law claims against manufacturers that are predicated on standards of care that are different than those in the HUD Code.[29]  The plaintiffs cannot prove, and have not even alleged, that anything the Contractors did resulted in a violation of the MHA or HUD Code.  Thus, plaintiffs' claims must be dismissed.[30]

---

[27]     R. Docs. 3217, 11240.

[28]     The Contractors are, of course, most definitely **not** manufacturers of Manufactured Homes.   The Contractors make this observation only to illustrate how absurd the plaintiffs' position is.

[29]     R. Doc. 1629.

[30]     The Contractors note that the AMC also asserts a count under Mississippi law for "Breach of Implied Warranty."  AMC, ¶¶ 327-328.  It is unclear what the factual predicate for such a claim is, since the Contractors are not alleged to have sold the plaintiffs anything, much less warranted anything.  That said, it is still incumbent upon the plaintiffs to present evidence sufficient to show that the Contractors who installed mobile homes in Mississippi owed a warranty and breached it.  To the extent that this alleged breach relates to formaldehyde levels in manufactured homes, this theory would again run afoul of the preemption of the MHA and HUD Code (and, moreover, no evidence has been presented of violations of federal formaldehyde standards).  Thus, the breach of implied warranty claim must be dismissed for the same reason as the products liability claims.

**II.     The Plaintiffs Have No Evidence to Support Their Negligence Claims.**

As with the products liability claims, the plaintiffs' copying of their allegations with regard to travel trailers, and attempting to apply them to Manufactured Homes, is fatal to their negligence claims.  Although there are several problems with plaintiffs' claims, it is sufficient to focus here on one element of their claim that is wholly absent: evidence that the Contractors breached any duty.  The AMC recites two factual predicates for breach: (a) that the Contractors failed to warn the plaintiffs about formaldehyde; and (b) that the Contractors failed to adhere to manufacturers' warnings against jacking the units off of "the wheel base" by "blocking" the units.[31]

**A.     Failure to Warn Claims Are Preempted and Lack Evidentiary Support.**

As a preliminary matter, all Louisiana failure to warn claims have already been dismissed.[32]  Therefore, this motion applies only to such claims as asserted under Mississippi, Alabama and Texas law.  That said, regardless of which states' laws may apply, all failure to warn claims are preempted.  This Court previously held that all failure to warn claims arising from state law, rather than from an alleged violation of federal warning mandates, were preempted.[33]  It would make no sense to hold the Contractors to a higher standard than that imposed on the manufacturers; indeed, to do so would expose the contractors around the country who install manufactured homes to liability from which the manufacturers are immune.  That would chill the industry of installing Manufactured Homes and would thereby frustrate the intentions of the MHA and the HUD Code.

---

[31]     *See* AMC, ¶ 302 (Louisiana); ¶ 309 (Mississippi); ¶ 333 (Alabama); and ¶ 340 (Texas).

[32]     R. Doc. 24196.

[33]     R. Doc. 1629.

Besides this, the precise allegation levied against the Contractors is worth noting: "Failure to sufficiently warn the plaintiffs of the inherently dangerous properties or the foreseeable conditions of the temporary housing units when used for long term occupancy."[34] As with the products liability claims, this makes no sense when applied to Manufactured Homes. Using manufactured homes for "long term occupancy" is using them for their intended purpose.[35] There is simply nothing "inherently dangerous" about using a Manufactured Home for long term occupancy; thus, there is nothing about which to warn. The plaintiffs can adduce no evidence to support the notion that the Contractors failed to warn about anything relating to Manufactured Homes.

Finally, the plaintiffs can produce no evidence that any of the Contractors had knowledge of any dangerous condition relating to the Manufactured Homes about which they failed to warn the plaintiffs. After all, the Contractors were installing Manufactured Homes in the manner that Manufactured Homes were normally installed, and the Manufactured Homes were regulated by HUD, which presumably ensured their safety for long term occupancy. It would be nonsensical to charge the Contractors with "failing" to warn about a "danger" about which they knew nothing and had no duty to know. The plaintiffs simply cannot present a genuine issue of material fact sufficient to survive summary judgment on their failure to warn claims.

**B.     Manufactured Homes Are Supposed to Be Installed on Foundations and Concrete Piers.**

Finally, plaintiffs accuse the Contractors of "failing to adhere to the manufacturers' warnings against jacking" – when, of course, the manufacturers of Manufactured Homes actually

---

[34]     AMC, ¶ 309(a).

[35]     The fact that they are intended for long term occupancy is, of course, precisely why HUD regulates their manufacture.

*instruct* installers to raise them onto piers.  This is yet another example of the plaintiffs failing to conform their allegations to the actual facts related to Manufactured Homes.  Given that the instructions – as well as their contracts with FEMA – actually require the Contractors to do precisely what they did, the plaintiffs cannot raise a genuine issue of material fact that the Contractors, by raising the Manufactured Homes and installing them on piers, negligently failed to adhere to any instructions.

Fundamental to any negligence claim is the notion that the defendant damaged the plaintiff through the breach of some duty owed to the plaintiff.[36]  Plaintiffs complain that installation of an EHU by lifting it off of its wheels caused damage to the unit since the EHU (they allege) was not designed to be lifted off its wheels.  Thus, the plaintiffs could at least point to some action by the Contractors and claim that the action breached some duty.  But with regard to Manufactured Homes, the units are designed to be lifted off wheels onto foundations and piers, and the instructions say as much; in the absence of manufacturers' instructions, state law fills that role.[37]  Therefore, the plaintiffs can have no evidence that the Contractors breached any duty owed to the plaintiffs in the process of installing any Manufactured Home.

---

[36]    *See Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94), 646 So.2d 318, 321-322 (breach of a duty is an essential element of a negligence claim; if plaintiff fails to prove any element, defendant is not liable); *Martin v. Arnold*, 643 So.2d 564, 567 (Ala. 1994) (*citing Albert v. Hsu*, 602 So.2d 895, 897 (Ala. 1992)) (to establish negligence, the plaintiff must prove (among other things) a breach of a duty to a foreseeable plaintiff; court held that plaintiff did not produce substantial evidence to defeat defendant's motion for summary judgment on negligence claims); *Key v. Compass Bank, Inc.*, 826 So.2d 159, 169 (Ala. Civ. App. 2001) (court held that plaintiffs failed to demonstrate that defendant breached a duty it owed them; therefore, they were not entitled to a reversal of the trial court's summary judgment in favor of defendant on their negligence claim); *Simpson v. Boyd*, 880 So.2d 1047, 1050 (Miss. 2004) ("In this negligence action, plaintiff bears the burden of producing evidence sufficient to establish the existence of the conventional tort elements of duty, breach, proximate causation, and damages.  Duty and breach of duty, which both involve forseeability, are essential to finding negligence and must be demonstrated first."); *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (to establish negligence, a party must establish a duty, a breach of that duty, and damages proximately caused by the breach).

[37]    La. R.S. 51:912.23.

Because the plaintiffs cannot meet their burden of proof with regard to an essential element of their negligence claim, summary judgment is appropriate.

**CONCLUSION**

All of the claims against Contractors relating to Manufactured Homes must be dismissed for the simple reason that Manufactured Homes are very different than travel trailers. Whereas the plaintiffs could at least contend that it is not normal to jack up a trailer and put it on blocks for use as housing, no such contention can credibly be made about Manufactured Homes. Manufactured Homes are installed – indeed, must be installed – on concrete piers that rest on foundations. They are made to be lived in. And yet, the plaintiffs merely copied their allegations regarding travel trailers as if those allegations applied equally to Manufactured Homes. They do not.

The plaintiffs can present no evidence that any of the Contractors failed to do what they were supposed to do with Manufactured Homes. The Contractors raised the Manufactured Homes onto concrete piers, just as they were supposed to do. The plaintiffs then used the Manufactured Homes as housing – which is what Manufactured Homes are made for. Whether phrased in terms of negligent installation, failure to warn, or products liability, the plaintiffs simply cannot present evidence sufficient to withstand summary judgment on these claims.

Accordingly, the Contractors urge the Court to enter summary judgment dismissing all claims against them in cases that involve Manufactured Homes.

Respectfully submitted,

**BAKER DONELSON BEARMAN**
**CALDWELL & BERKOWITZ, PC**


   /s/ M. David Kurtz
M. DAVID KURTZ (#23821)
KAREN KALER WHITFIELD (#19350)
CATHERINE N. THIGPEN (#30001)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000

**LIAISON   COUNSEL   FOR   CONTRACTOR**
**DEFENDANTS**


## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2012, I electronically filed the foregoing pleading using

the Court's CM/ECF system, which sent notification of such filing to all court-appointed liaison

counsel.


   /s/ M. David Kurtz

11