UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE<br>PRODUCT LIABILITY LITIGATION | MDL NO. 1873<br><br>SECTION "N-5"<br><br>JUDGE ENGELHARDT<br>MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO ALL CASES

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF PSC MOTION TO APPROVE
DEDUCTION OF COMMON BENEFIT FEES AND EXPENSES
FROM CONTRACTOR CLASS SETTLEMENT FUND**

MAY IT PLEASE THE COURT:

**I.     INTRODUCTION**

On December 11, 2007, the Court appointed certain attorneys to the Plaintiffs' Steering Committee ("PSC"), and these attorneys thereby assumed the responsibility of prosecuting all of the numerous plaintiffs' claims in this MDL. *See* Order of Dec. 12, 2007 (Rec. Doc. 49).[1] The functions of such Court-appointed committees, as recognized in the Manual for Complex Litigation, include developing plaintiffs' proof of liability, anticipating defenses, gathering expertise to prove causation and damages, coordinating pleadings, managing discovery, and conducting trial activity. *See* MANUAL FOR COMPLEX LITIGATION, Fourth, §22.62.

Since its establishment in this MDL, the PSC has conducted, and continues to carry out, significant litigation activity for the common benefit of all plaintiffs. PSC members, assisted by counsel who have subscribed to a working relationship with the PSC, have tested thousands of temporary housing units, retained liability, causation and damage experts, prepared pleadings

---

[1] In the most recent audit of MDL cases, Joint Report No. 29 (Rec. Doc. 24394) reported that "[i]n all, 4721 cases are associated with this MDL [and] 3999 cases of those are currently pending . . . ." Rec. Doc. 24394.

(including, in the case of certain bankrupt defendants, pleadings in the bankruptcy proceedings associated with those defendants), presented arguments on class certification and important case management issues, responded to defenses asserted under FRCP 12, pursued a laborious process to help claimants identify and "match" with the manufacturers of the units they occupied and with the contractors that installed, maintained and/or refurbished the units they occupied, conducted weekly telephone conferences with PSC members and other plaintiffs' counsel, attended status conferences with the Court, prepared (or helped prepare) joint reports to the Court, created/staffed a claims office and data organization protocol to assist claimants in completing Plaintiff Fact Sheets, tried several bellwether cases to verdict, conducted several summary jury trials, and successfully negotiated settlements with more than twenty defendant manufacturers of manufactured housing units and mobile homes, more than thirty defendant manufacturers of travel trailers, and seventeen contractor/subcontractor defendants. All Plaintiffs pursuing claims in this MDL have benefited from these efforts by Court-appointed counsel.

The PSC's negotiation of the pending class settlement with defendant contractors proved especially challenging for a number of reasons. Some of these discussions involved complex bankruptcy and insurance coverage issues; and, in cases where bankruptcy proceedings had been instituted by several of the manufacturing entities involved, it was necessary – and at times difficult – to secure the essential participation of insurers in the negotiations. Claim census and financial circumstances related to each defendant also were necessary to consider in the discussions, which made achievement of global resolution both intensive and time-consuming.

The PSC now is satisfied that these efforts were justified, having resulted in a proposed class settlement that is fair, reasonable, and in plaintiffs' best interests.[2]

Consistent with the terms of the parties' proposed and pending settlement agreements, the PSC requests that 48% of the contractor class settlement fund be deducted and set aside by the CADA for all attorney fees and for common benefit costs. *See* Rec. Doc. 25226-1. From this reserve the PSC in due course will request, pursuant to Federal Rule of Civil Procedure 23(h), that the CADA be authorized by the Court to disburse funds in order to (1) compensate all attorneys for Plaintiffs and their firms for all legal fees, and (2) reimburse counsel for expenses incurred in rendering services for the common benefit of the plaintiff class members. In this regard, the PSC requests that the Court now apportion the total 48% reserve so that 28.5% (of the settlement fund) be dedicated to pay all fees, common benefit as well as private, and 19.5% (of the fund) be dedicated for common benefit cost reimbursement. Finally, the PSC requests that the 28.5% set-aside for fees be allocated evenly (50/50) between common benefit and private counsel, i.e., 14.25% of the settlement fund as common benefit fees to class counsel and 14.25% as private fees.[3]

---

[2] Due to the limited per-claim settlement recoveries in the Fleetwood and Manufactured Housing settlements, which have already been approved by this Court, the PSC and associated common benefit counsel agreed to waive all common benefit fees for the services associated with those settlements. However, the pending settlements will yield a total fund sufficient in amount to satisfy the instant motion without undue impingement on the net recovery by plaintiffs, and allow common benefit counsel to be compensated for their significant efforts.

[3] The PSC will seek a deduction and apportionment of these same percentages for fees and common benefit expenses from the manufacturer class settlement, as well as from the pending mass joinder settlements with manufacturers.

**II.     LAW AND ARGUMENT**

    **A. The Court has Authority and Discretion under both the Federal Rules of Civil Procedure and the MDL Statute to Deduct Fees and Expenses for the Compensation of Common Benefit Counsel.**

The authority of a district court to award fees and expenses to class counsel in the event of a class settlement is expressly authorized under Federal Rule of Civil Procedure 23(h); and the exercise of this authority typically is exercised through a Court-ordered deduction from a settlement fund which has been secured for the benefit of a class:

> When a plaintiff in an individual or representative capacity creates, increases, or preserves a fund by settlement or judgment, which benefits an ascertainable class, the court in exercising its equity jurisdiction, may grant class counsel fees by directing payment from the fund. It is an equitable doctrine based on the rationale that successful litigants would be unjustly enriched if their attorneys were not compensated from the fund created for the litigants.

*Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 857 (E.D. La. 2007) (citing Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 13:76 (4th ed. 2002)).

> Given the extensive financing and large numbers of skilled lawyers needed to bring a complex class action and prosecute it to a successful conclusion, and the large risk of no-recovery-or of a limited one-even when a case appears to have merit, substantial legal fees must be provided when a substantial fund is created if attorneys are to be induced to prosecute these actions.

*Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 857 (E.D. La. 2007) (citing *In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. 1296, 1303 (E.D.N.Y. 1985)). Indeed, a court's "active involvement" in the determination of class counsel compensation is an important judicial function designed to promote fairness and transparency in the process. *See* Fed. R. Civ. P. 23, Advisory Committee Note; *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 857 (E.D. La. 2007).

Separate and apart from Federal Rule of Civil Procedure 23, authority also is vested in an MDL judge to "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Consistent with this broad objective, the Court's approval and administration of settlements also is contemplated under the MDL statute. *See generally* MANUAL FOR COMPLEX LITIGATION, Fourth, §22.9. Inherent in this authority is the discretion to approve the reimbursement of common benefit fees and/or expenses, when requested by Court-appointed counsel. *See, e.g.*, *In re Diet Drugs Prods. Liab. Litig.*, MDL 1203, 2002 WL 32154197, *17 (E.D. Pa. Oct. 3, 2002) ("the court must be permitted to compensate fairly the attorneys who serve on . . . a [court-appointed] committee."); *In re Genetically Modified Rice Litig.*, MDL 1811, 2010 WL 716190, *4 (E.D. Mo. 2/24/10) ("An MDL court's authority to . . . order contributions to compensate leadership counsel derives from its 'managerial' power over the consolidated litigation, and, to some extent, from its inherent equitable power."). The "necessary corollary to court appointment of lead and liaison counsel . . . is the power to assure that these attorneys receive reasonable compensation for their work." *In re Linerboard,* 292 F. Supp. 2d at 653 (citing *In re Air Crash Disaster at Florida Everglades,* 549 F.2d 1006, 1016 (5th Cir. 1977)); *see also Smiley v. Sincoff,* 958 F.2d 498, 501 (2d Cir. 1992) (noting the authority of district judges to establish fees to compensate committee members for work performed on behalf of all plaintiffs involved in a consolidated litigation).

MDL transferee courts traditionally have exercised broad discretion with regard to orders addressing common benefit fees and expenses. Such a deduction for fees/costs is based upon the well-established common benefit doctrine, a doctrine which for years has been recognized and affirmed by the U.S. Supreme Court. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980) (providing that all who benefit from a common fund created through the efforts

of a litigant or attorney, must contribute proportionately to the costs of litigation); *see also Sprague v. Ticonic National Bank*, 307 U.S. 161, 166 (1938); *Kirkpatrick v. Young*, 456 So.2d 622, 625 (La. 1984); MANUAL FOR COMPLEX LITIGATION §14.121.

The Fifth Circuit specifically has applied the common benefit doctrine in an MDL context. *See In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1021 (5th Cir. 1977). Courts in other Circuits also recognize the common benefit doctrine in the context of consolidated litigation. *See, e.g.*, *In re Avandia Marketing, Sales Practices and Prods. Liab. Litig.,* MDL No. 1871, Pretrial Order No. 70, at en 1 (E.D. Pa. Aug. 26, 2009) (Ex. 1); *In re Protegen Sling and Vesica Sys. Prods. Liab. Litig.,* No. MDL 1387, 2002 WL 31834446, at *1 (D. Md. Apr. 12, 2002); In re Rezulin Prods. Liab. Litig.,* No. 00 CIV. 2843, 2002 WL 441342, at *2 (S.D.N.Y. Mar. 20, 2002); *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prods. Liab. Litig.,* No. MDL 1203, 2001 WL 497313, at **6-8 (E.D. Pa. May 9, 2001); *In re Orthopedic Bone Screw Prods. Liab. Litig.,* No. MDL 1014, 1998 WL 118060, at *2 (E.D. Pa. Jan. 12, 1998); *In re MGM Grand Hotel Fire Litig.,* 660 F. Supp. 522, 529 (D. Nev. 1987). The underlying justification is that Court-appointed counsel can serve effectively only if their services and efforts are understood to be compensable in the event of a global recovery:

> In matters of complex litigation, the district court must be instilled with the power necessary to order appropriate compensation to lead counsel . . . [for] the services lead counsel provide to all parties involved. 'The court's power is illusory if it is dependent on lead counsel's performing the duties desired of them for no additional compensation.'

*In re Clearsky Shipping Corp.*, 2003 WL 1563820 at *4 (E.D. La. 2003) (citing *Fla. Everglades,* 549 F.2d at 1016-17).

**B. A Common Benefit Fund Comprised of a 19.5%-of-Fund Allocation for Common Benefit Expenses and a 14.25%-of-Fund Allocation for Common Benefit Fees is Reasonable given the Significant Time and Investment of Common Benefit Counsel in Securing this Class Settlement.**

Since the inception of this litigation, and pursuant to Court-ordered protocol, the PSC and associated common benefit counsel regularly have submitted to the CPA firm of Bourgeois Bennett, both timesheets reflecting their common benefit service hours and records of the expenditure of costs that counsel and their firms have incurred, and are holding, over and above assessments paid to the PSC to cover shared costs during the prosecution of common issues. Over the five-year lifespan of this MDL, and pursuant to this protocol, the PSC and associated common benefit counsel now have expended more than 160,763 hours of attorney and staff time for the benefit of all plaintiffs, including beneficiaries of the proposed contractor class settlement. *See* Affidavit of Gerald E. Meunier, Co-Liaison Counsel for Plaintiffs, attached as Exhibit I. In addition, counsel for plaintiffs have expended a total of $6,379,449.10 in assessments to satisfy shared costs for the common benefit of plaintiffs, and a total of $2,433,059.04 in "held" common benefit costs. *See Id.* These cost expenditures remain unreimbursed. *Id.*

Given the mature stage of these proceedings, the Court has independent knowledge of the vast amount of common benefit work performed and significant resources invested by the PSC and associated common benefit counsel. It is respectfully submitted that the above total hours and costs are hardly untoward or surprising in the context of this MDL.

### i. A 19.5% Set-Aside for Common Benefit Expenses is Reasonable and Appropriate in this MDL.

Since the combined total of shared and held common benefit costs incurred by common benefit counsel is $8,812,508.14, the PSC respectfully submits that 19.5% of the settlement fund,

or $7,306,371.96, is both necessary and appropriate to satisfy these costs through the exercise of the Court's discretionary authority. It should be noted that counsel who incurred these expenses seek no "enhancement" from the Court, but strictly a reimbursement of what has been expended for plaintiffs' common benefit.[4]

The reimbursement of common benefit expenses out of a class settlement recovery in an MDL is consistent with ample precedent. *See, e.g., Turner, et al v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830 (E.D. La. 2007); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1135 (W.D. La. 1997) (citing Alyeska Pipeline Co. v. Wilderness Socy, 421 U.S. 240, 257 (1975)). Federal courts routinely have allowed Court-appointed counsel in mass tort, consolidated MDL proceedings to be reimbursed for the reasonable costs shown by counsel to have been expended in the administration and prosecution of all Plaintiffs' claims. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, MDL 1657, Order dated Aug. 4, 2005 (Doc. 792) [pre-trial order granting set-aside for common benefit fees/costs]; *In re Diet Drugs*, *supra*; *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1996 WL 900349 (PTO 402) (E.D. Pa. 6/17/96); *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992); *Fla. Everglades*, *supra*; *In re Bausch & Lomb Contact Lens Solution Prods. Liab. Litig.*, 2008 WL 2330571 at *1 (D.S.C. 2008) (approval given for "the fair and equitable sharing among plaintiffs of the cost of services performed and expenses incurred by attorneys acting for MDL administration and common benefit of all plaintiffs in this complex litigation").

---

[4] If the PSC's concurrent requests for a deduction of this same percentage (i.e., 19.5%) for common benefit expenses from the manufacturer class settlement and from the six pending non-class manufacturer settlements are approved, the total of the requested cost deductions will be $8,478,955.71, which is several hundred thousand dollars short of the unreimbursed cost total of $8,812,508.14. However, on the expected release of an already Court-approved cost reimbursement from the "non-lit" class settlement, the PSC hopes to both bridge this gap and cover the anticipated charges of the Special Master, Notice Administrator and CADA in finalizing the pending settlements.

In order to preserve the right of common benefit counsel to seek a reimbursement of expenses out of a global settlement, courts have consistently ordered a portion of the settlement fund be designated for allocation by the Court in accordance with appropriate legal standards. *See, e.g.*, *In re Diet Drugs, supra; In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 300 (1st Cir. 1995); *Smiley v. Sincoff*, 958 F.2d 498, 499 (2d Cir. 1992); *In re Orthopedic Bone Screw, supra*; *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1296, 1317 (E.D.N.Y. 1985); *In re Silicone Gel Breast Implant Prod. Liab. Litig.*, MDL 926, Pretrial Order Nos. 13 & 23 (N.D. Ala. July 23, 1993 and July 28, 1995). Once a preliminarily-approved class settlement is given final approval, the presiding judge is vested with the authority to "award . . . nontaxable costs that are authorized by law." Fed. R. Civ. P. 26(h).

This MDL litigation involved a substantial investment of the PSC and common benefit counsel in the form of PSC-voted assessments, which allowed costs to be advanced to fund the testing of thousands of temporary housing units, the retaining of various experts for eight bellwether trials (three of which were tried to verdict, two of which settled just prior to trial, and three of which were tried as confidential Summary Jury Trials), the staffing and creating of a claims office, the creation/execution of a process to help claimants identify the manufacturers of (and contractors for) temporary housing units occupied by these claimants, and the securing of mediator services necessary to reach not only the pending class settlements but also the Fleetwood and Manufactured Housing settlements which preceded.

Given the total sum of both unreimbursed assessment payments and the costs incurred but still "held" by certain firms after having been advanced to fund this litigation, the requested set-aside for the reimbursement of incurred common benefit expenses is necessary, reasonable, and supported by the documented financing of this complex litigation on plaintiffs' behalf.

### ii. A 14.25% Common Benefit Fee Set-Aside is Reasonable and Appropriate in this MDL.

Assuming a 19.5% allocation of the total 48% cost/fee deduction is made to satisfy common benefit costs, a remainder of 28.5% of the settlement fund is available to pay all legal fees herein, both common benefit and private in nature. Such a 28.5%-of-fund reserve for all attorney fees is entirely consistent with recent MDL jurisprudence in this District Court. *See, e.g., In re Vioxx Prods. Liab. Litig.,* 574 F.Supp.2d 606 (E.D. La. 2008) (capping all attorney fees at 32%); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 2012 WL 2236737 (E.D. La. June 15, 2012) (capping all attorney fees at 25%). In this case, the extensive costs incurred make such a total fee percentage both necessary and appropriate.

The PSC submits that one-half of this fee, or 14.25% of the settlement fund, should be made available to compensate for the common benefit services of Plaintiffs' class counsel, leaving an equal amount (14.25%) to be paid as private fees. This outcome is supported by precedent, by the circumstances of this litigation, and by the informed exercise of this Court's discretionary authority.

In order to safeguard the interests of attorneys who perform work for the common benefit of all plaintiffs, a portion of the fee generated from the resolution this MDL must be dedicated for the counsel who performed this work. Hence, courts have consistently ordered set-asides for common benefit fees to be deposited into an escrow account for ultimate allocation among common benefit counsel, per the court. *See e.g.*, *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, Pretrial Order No. 402 (E.D. Pa. June 17, 1996) (assessing 17% of recovery); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2008 WL 682174, *12 (D. Minn. Mar. 7, 2008) (increasing assessment to 15% of recovery); *In re Kugel Mesh*

*Hernia Patch Prod, Liab. Litig.,* MDL 1842, Order No. 22 (D.R.I. Nov. 20, 2009) (assessing 12% of recovery); *In re Diet Drugs Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 457 (E.D. Pa. 2008) (assessing 9% of recovery).

By a recent Order entered in another MDL in this District Court, Judge Fallon established a common benefit fee reserve amounting to 12% of the proposed class settlement fund. *See In re: Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, Doc. 8545 (E.D. La. April 13, 2011). In another Eastern District case, Judge Fallon awarded a common benefit fee to class counsel amounting to 17% of the class settlement fund. *See Turner, et al v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830 (E.D. La. 2007).[5] He concluded that this amount was adequately supported under his analysis of the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), as well as a "lodestar cross-check." *Id.* Moreover, he made reference to the suggestion in the Manual for Complex Litigation that a fee of 25% of a common fund "represents a typical benchmark" for compensating common benefit counsel. *See* MANUAL FOR COMPLEX LITIGATION § 14.121. Using this as a starting reference, Judge Fallon selected 15% as a more appropriate benchmark in the *Murphy Oil* litigation, and then enhanced the percentage by case-specific factors to arrive at a 17%-of-fund common benefit fee award. *Turner, et al v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830 (E.D. La. 2007).

In making his common benefit fee determination in the *Murphy Oil* case, Judge Fallon also noted that "a scaling effect exists, with fees constituting a lower percent of the client's recovery as the client's recovery increases." Theodore Eisenberg & Geoffrey P. Miller, *Attorney*

---

[5] It should be noted that, in the *Murphy Oil* class settlement, roughly 34,000 hours of attorney and paralegal time had been expended in common benefit legal work over approximately one year of litigation.

*Fees in Class Action Settlements: An Empirical Study,* 1 J. Empirical Legal Stud. 27, 28 (2004). This observation is relevant, given certain common benefit fees announced in Eastern District of Louisiana litigation which are a lesser percentage of the fund than 14.25% (e.g. *Vioxx* and *Deepwater Horizon*). Logically, in cases (such as this one) not involving large, so-called "mega-fund" settlements, common benefit fees generally will be higher as a percentage of the fund in order to fairly compensate common benefit counsel.

The PSC further submits that the requested amount of common benefit fees herein is exceptionally fair to plaintiffs when cross-checked with the Fifth Circuit's lodestar methodology in order to confirm the reasonableness of class counsel fees.[6]

Finally, the PSC submits that a 14.25%-of-fund allocation for common benefit fees is supported by the factors enumerated by the Fifth Circuit in *Johnson*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859 (E.D. La. 2007) [referencing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974)]. The time and labor of the PSC and associated common benefit counsel have been extensive, as this Court has

---

[6] Given a total of 160,763 hours of common benefit attorney and paralegal time in this case, and given plaintiffs' gross recoveries in <u>all</u> pending settlements of roughly $43.48 million, a common benefit fee of 14.25% of this recovery would result in an hourly rate for these common benefit counsel of $38.54 per hour, which certainly does not run afoul of either the lodestar cross-check or the factors enumerated by the Fifth Circuit in *Johnson v. Ga. Highway Express,* Inc., 488 F.2d. 714, 717-19 (5th Cir. 1974).

observed first-hand; common benefit counsel have expended more than 160,000 hours of attorney and paralegal time in this litigation. Moreover, the difficulty of the factual, legal and scientific issues faced by Plaintiffs has demanded a high level of skill by Plaintiffs' common benefit counsel; and many common benefit attorneys herein dedicated such a large portion of their firms' resources to this case that other employment opportunities necessarily have been precluded. It also should be noted that the present settlement has resulted from litigation activity carried out exclusively within this MDL by this Court's appointed common benefit counsel.[7]

Given the financial investment and risk incurred by the PSC and associated counsel over the lifespan of this case, and considering the substantial amount of common benefit hours expended on behalf of class members, the proposed equal division of the available 28.5% reserve for attorney fees between common benefit counsel and individual plaintiff counsel, and resulting allocation of 14.25% common benefit fees, is reasonable and fully justified by precedent, by the *Johnson* factors, and by the circumstances of this challenging litigation.

## III. CONCLUSION

Based on the foregoing, the PSC therefore requests that this Honorable Court enter the attached order, deducting from the contractor class settlement fund an amount equal to 19.5% of the fund for the reimbursement of common benefit expenses and 28.5% of the fund for all legal fees; and the PSC further requests that the Court allocate this total fee evenly between common benefit counsel and private fees, i.e., 14.25% of the settlement fund for the compensation of all common benefit counsel, and the remaining 14.25% of the fund for the payment of all individual plaintiffs' counsel fees. The order submitted herewith provides that these deductions, once

---

[7] This arguably distinguishes the instant matter from the *Vioxx* MDL, which ran parallel to active litigation in state court jurisdictions, and *Deepwater Horizon*, which (for a time) ran parallel with an active claims resolution process established outside of the MDL.

approved, will be made by the CADA but also held on deposit, pending certain prerequisites consistent with the parties' settlement agreement and further distribution orders by the Court. Specifically as to the common benefit fee portion of the set-aside, the order directs that these fees will be held by the CADA pending the Court's approval of a protocol for the allocation of common benefit fees among eligible attorneys/firms.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE**
**PRODUCT LIABILITY LITIGATION**
BY: s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
gmeunier@gainsben.com
jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'**
**STEERING COMMITTEE**
ROBERT M. BECNEL #14072
RAUL BENCOMO, #2932
ANTHONY BUZBEE, Texas #24001820
FRANK D'AMICO, JR., #17519
ROBERT C. HILLIARD, Texas #09677700
MATT MORELAND, #24567
DENNIS C. REICH Texas #16739600
MIKAL C. WATTS, Texas #20981820

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                                  s/Gerald E. Meunier
                                                  GERALD E. MEUNIER, #9471