**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:  FEMA TRAILER                                    MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION              SECTION "N-5"

                                                              JUDGE ENGELHARDT
                                                              MAG. JUDGE CHASEZ

**THIS DOCUMENT IS RELATED TO ALL CASES**

------------------------------------------------------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION FOR FINAL APPROVAL**
**OF PROPOSED CLASS SETTLEMENT**

The Plaintiffs' Steering Committee ("PSC"), on behalf of the Class[1] and jointly with the

settling Manufacturer Defendants, submit this Memorandum of Law in Support of the Joint

Motion for Final Approval of Proposed Class Settlement.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

After the landfalls of Hurricanes Katrina and Rita, the homes of thousands of people who

resided along the Gulf Coast were rendered uninhabitable, leaving these people homeless.  The

Federal Emergency Management Agency ("FEMA") provided housing for these people, in part

by acquiring emergency housing units ("EHUs") manufactured by the settling Defendants.

Plaintiffs in this lawsuit are those people who resided in EHUs manufactured by the settling

Defendants.  They allege they have been injured from exposure to formaldehyde in those homes.

Settling Defendants deny these allegations.

---

[1] Any capitalized term used herein shall have the meaning set forth in the "Definitions" section of the Stipulation of
Settlement (Rec. Doc. 25226-1).

This Multi-District Litigation proceeding ("MDL") has been pending for several years. It originally began as hundreds of individual cases filed in state and federal courts throughout Louisiana, Alabama, Mississippi and Texas. Those individual actions were removed and transferred into the MDL in October, 2007. Plaintiffs have filed a number of individual lawsuits against the Settling Defendants that are included in the MDL. These lawsuits are referred to as the "Pending Actions."

The Parties have engaged in substantial field testing, discovery, document exchanges, and several years of motion practice. Two significant events have occurred in this case leading to the present settlement arrangement: (1) this Court denied certification of a litigated class action; and (2) the Parties have conducted three bellwether trials, all of which have resulted in a defense verdict.

Based upon these case developments, together with substantial discovery consisting of almost 100 depositions and approximately 40,000 pages of documents exchanged between the Parties, Plaintiffs and Defendants have obtained sufficient information to reasonably assess the merits of their respective claims and defenses. (Rec. Doc. 25646-5, Declaration of Gerald Meunier ¶ 3.) On this basis, they proceeded with negotiations for a global settlement of the Action and the Pending Actions.

At the request of the Parties, the Court Ordered a sequence of mediations with the Settling Defendants mediated by Court-appointed mediators, John Perry and Daniel Balhoff in the litigation "to assist the plaintiffs and certain manufacturing defendants who chose to engage in settlement discussions to conduct mediation in short order" and for the purposes of exploring the potential for global settlement. (Rec. Doc. 23958.) John Perry and Daniel Balhoff were heavily involved in all stages of the settlement negotiations. They met both privately and jointly

with counsel for the Plaintiffs and Settling Defendants in New Orleans, Louisiana. They held multiple meetings and/or conference calls with counsel and client representatives present for the purpose of discussing various aspects of settlement. The Parties reached settlements with each of the Settling Defendants between the summer of 2011 and the winter of 2012 after in some cases months of negotiating. Settlement negotiations were hard fought and conducted at arms-length. "Counsel for both sides vigorously represented their clients' interests during the negotiations." (Rec. Doc. 25646-6, Declaration of Daniel J. Balhoff ¶ 2.)

In negotiating this settlement, it is the consensus of the Parties that the certification of a settlement class,[2] the deposit of the proposed Total Settlement Fund, and the Court's supervision thereof pending distribution of the Fund will result in the greatest benefit to the Class Members, while also ensuring the final resolution of this matter for the Parties involved.

On April 13, 2012, the Parties filed a Stipulation of Settlement (Rec. Doc. 25226-1) and a Joint Unopposed Motion for Preliminary Approval of Proposed Class Settlement (Rec. Doc. 25226). In connection with that filing, the Parties also filed declarations by Gerald Meunier (Rec. Doc. 25226-14), John W. Perry, Jr. (Rec. Doc. 25226-15), and James Percy (Rec. Doc. 25226-16), all of which are evidence in support of final approval of the proposed settlement. The Parties subsequently filed a Motion to Amend and Supplement Existing Motion for Preliminary Approval of Proposed Class Settlement (Rec. Doc. 25646). In connection with that filing, the Parties filed declarations by Gerald Meunier (Rec. Doc. 25646-5), Dan Balhoff (Rec. Doc. 25646-6), and James Percy (Rec. Doc. 25646-7), all of which are also evidence in support of final approval of the proposed settlement. This Court entered an Order preliminarily approving this proposed settlement on May 31, 2012. (Rec. Doc. 25666.)

---

[2] Defendants continue to deny that certification of a litigated class is appropriate.

## II.   SUMMARY OF PROPOSED CLASS SETTLEMENT

Subject to the Court's Final Order and Judgment, the Settlement Agreement provides, *inter alia*, that: (1) Defendants will pay a total of $37,468,574.16, the "Total Settlement Fund," for the settlement of all Released Claims, composed of individual settlement funds to be paid by individual defendants and/or groups of defendants and their insurers;[3] (2) Court-appointed Special Master Dan Balhoff shall determine the availability of Class Relief to each Class Member from the settlement fund provided by the Settlement Group to which they are connected based on the Special Master's evaluation of the Claim Form and other materials submitted by the Claimant and according to the Class Benefit Formula (Rec. Doc. 25866); (3) the Special Master shall be authorized by the PSC to determine each Class Representative's Award, with Court approval; (4) each Class Representative's Award shall be paid out of the Total Settlement Fund; (5) all attorneys' fees for any PSC or non-PSC attorney, or any other attorney representing a Class Member, shall be determined by the PSC, approved by the Court, and paid out of the appropriate settlement fund ;[4] (6)  there shall be a reserve established for all of the fees and

---

[3] These settlement funds for each Settlement Group are reflected in the Individual Settlement Sheets (Rec. Docs. 25226-2, 25646-1), and are summarized as follows: Gulf Stream Coach, Inc., Forest River, Inc., Vanguard Industries of Michigan, Inc., Vanguard, LLC, and Monaco Coach Corporation Settlement Group - $20,000,000.00; Thor Industries, Inc.,Thor California, Inc., Citair, Inc., Damon Motor Coach, DS Corp. d/b/a CrossRoads RV, Inc., Dutchmen Manufacturing, Inc., Four Winds International Corporation, Keystone RV Company, and  Komfort Corp. Settlement Group - $6,250,000.00; Jayco, Inc., Jayco Enterprises, Inc., Jayco Corp., and Starcraft RV, Inc. Settlement Group - $2,650,000.00; Recreation By Design, LLC and TL Industries, Inc. Settlement Group - $2,000,000.00; KZRV, LP Settlement Group - $1,250,000.00; Coachman Industries, Inc., Coachman RV Licensed Products Division, L.L.C., Coachmen Recreational Vehicle Company, L.L.C., Coachmen Recreational Vehicles of Georgia, LLC, and Viking Recreational Vehicles, LLC. Settlement Group - $1,000.974.16; Pilgrim International, Inc. Settlement Group - $887,250.00; R-Vision, Inc. Settlement Group - $750,000; Skyline Corporation, Inc., Skyline Homes, Inc., Layton Homes Corp., and Homette Corporation Settlement Group - $737,000; Frontier RV, Inc. and Frontier RV Georgia, L.L.C. Settlement Group $600,000.00; Heartland Recreational Vehicles, LLC Settlement Group - $552,600.00; Timberland RV Company, Inc. d/b/a Adventure Manufacturing Settlement Group - $443,300.00; SunRay R.V., L.L.C, and SunRay Investments, L.L.C. Settlement Group - $205,000.00; Hy-Line Enterprises, Inc., n/k/a FRH, Inc. Settlement Group - $122,450; Cruiser RV, LLC and Doubletree RV, L.L.C. Settlement Group - $14,000.00; Play'Mor Trailers, Inc. Settlement Group - $6,000.00.

[4] After the Stipulation of Settlement was filed, the PSC and other common benefit counsel submitted a Motion to Approve Deduction of Common Benefit Fees and Expenses From Manufacturer Class Settlement Fund.  (Rec. Doc. 25840)

expenses that are to be deducted from the appropriate settlement fund, including but not limited to attorneys' and Special Master fees, which reserve shall be at most 48% of the Total Settlement Fund, i.e., the total of all fees and expenses to be deducted from the Total Settlement Fund shall not exceed 48% of the Total Settlement Fund; (7) the Defendants were obliged to deposit the agreed upon settlement funds into the Registry of this Court pursuant to the terms of each settling Manufacturer's agreement with the PSC; and (8) the Parties shall move this Court to transfer from its Registry funds representing the Settlement Funds into a Disbursing Account promptly following final approval.

## III.   THE PROPOSED CLASS SETTLEMENT MERITS FINAL APPROVAL

Pursuant to Federal Rule of Civil Procedure 23(e), a district court has broad discretion to approve a class action settlement if the settlement is fair, adequate and reasonable. *Ayers v. Thompson,* 358 F.3d 356, 368 (5th Cir. 2004). Moreover, in the Fifth Circuit, a strong judicial policy favors the resolution of class disputes through settlement. *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. 1982) ("*Parker*"). This judicial policy is due in part to the fact that "[p]articularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977) ("*Cotton*").

### A.   The proposed settlement is fair, adequate and reasonable.

Courts in the Fifth Circuit apply a six-factor test to evaluate the fairness, adequacy and reasonableness of a class settlement: (1) whether evidence exists that the settlement was obtained by fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability that plaintiffs will prevail on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *Newby v. Enron Corp.,* 394 F.3d

296, 301 (5th Cir. 2004) ("*Newby*") (citing *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) ("*Reed*").

When considering the six *Reed* factors, "the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.,* No. Civ.A. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003). Courts in the Fifth Circuit should adhere to this fairness presumption "especially when doing so will result in significant economies of judicial resources – absent evidence weighing against approval." *Klein v. O'Neal, Inc.,* 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) ("*Klein*").

Applying the *Reed* factors to this case, the class settlement merits final approval. Notice was given to the class pursuant to the Settlement Notice Plan. (Ex. A, Declaration of Wayne Henderson Sec. II.) Class Members had the opportunity to opt out of the settlement.[5] Thirteen (13) Class Members initially opted out, and with the exception three (3) individuals, all have agreed to withdraw their opt-out requests. (Ex. D, Declaration of Justin Woods ¶ 9.) Seven (7) Class Members filed objections to the settlement; however, all of these Class Members have requested that their objections be withdrawn. (Woods Decl. ¶ 8.) The movants submit that notwithstanding these opt-outs, the class settlement is fair and reasonable in light of the *Reed* factors. At the Fairness Hearing, the Court should apply the six *Reed* factors to determine whether to issue a Final Order and Judgment approving the settlement. *See Newby*, 394 F.3d at 301.

### 1.   <u>No fraud or collusion exists</u>.

"A strong presumption exists in favor of settlement if the district court determines that the settlement resulted from arms-length negotiations between experienced counsel and was not

---

[5] The Settlement Agreement and procedure adopted by the Court gave all plaintiff ample opportunity to opt out of the settlement, if they chose to do so. No plaintiffs were denied the opportunity to opt out.

tainted by fraud or collusion." *Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830, 844 (E.D. La. 2007) ("*Turner*").  In the absence of any evidence of actual fraud or collusion between class counsel and defense counsel, a court may presume that no fraud or collusion occurred. *Klein*, 705 F. Supp. 2d at 651.  This is particularly true where, as here, the proposed settlement is "the culmination of several years of pretrial proceedings, motion practice, and forceful negotiations by the class plaintiffs and defendants." *Id.*; (Meunier Decl. ¶ 3).  There is no evidence of fraud or collusion in this case.  All counsel have vigorously represented their respective clients' interests throughout this litigation, including the negotiation process.  (Meunier Decl. ¶¶ 3-4, 6; Balhoff Decl. ¶ 2.)

On April 8, 2010, the Court appointed John Perry as Mediator in this litigation "for the purpose[] of exploring the potential for global settlement as to any and all other defendant manufacturers in the MDL . . . . " (Rec. Doc. 13236.) Mr. Perry, or his partner Daniel Balhoff, has met with the parties in person and by phone numerous times since being appointed on April 8, 2010. Mr. Perry has attested that the settlement was reached after "months of negotiating" and that "[s]ettlement negotiations were hard fought and arms-length." (Balhoff Decl. ¶ 2.) As the declarations of the PSC and the mediator make clear, the Settlement Agreement is the product of hard-fought litigation, not the result of fraud or collusion. These statements of the mediator weigh heavily in favor of approving the settlement. *See, e.g., Klein,* 705 F.Supp.2d at 651 (in support of the approval of a products liability class action settlement, the district court noted the mediator's statements regarding the hard fought negotiations and arms-length bargaining between the parties); *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001) (in affirming class action settlement approval, the Second Circuit noted that the district court had appointed a special master to assist in the settlement process and that the special master testified that the

negotiations were "bona fide, at times contentious, and all counsel involved were capable.") (citation omitted).

The class representatives support this settlement as fair and reasonable. (Ex. E, Class Representative Affidavits ¶¶ 10-12.)  Finally, only three (3) Class Members opted out of this settlement class of approximately 55,000 individuals and no Class Members presently object to it.  (Woods Decl. ¶¶ 8-9.)

2.    **Continued litigation would be complex, expensive and protracted.**

Where, as here, it is apparent that continuing the litigation will require a substantial financial and time commitment from the parties, the reasonableness of approving a negotiated settlement is heightened. *See Klein*, 705 F. Supp. 2d at 651; (Meunier Decl. ¶ 6 (attesting that Plaintiffs have already been taxed with Defendants' costs for the three bellwether trials))**.** "The public interest favoring settlement is especially apparent in the class action context where claims are complex and may involve a large number of parties, which otherwise could lead to years of protracted litigation and sky-rocketing expenses." *Turner*, 472 F. Supp. 2d at 843.  Given the vast number of plaintiffs and the large number of defendants, this mass tort litigation could go on for years if not settled.  The three bellwether trials have been expensive, and resulted in no relief whatsoever to Plaintiffs. (*See* Meunier Decl. ¶ 6.)  Both sides of this case intend to appeal if either does not prevail at trial, thereby prolonging the time and expense of litigation. (*Id.* ¶ 6; Rec. Doc. 25646-7, Percy Decl. ¶ 3.)  In contrast, approval of the settlement will permit Class Members to recover damages much sooner than would be possible following an uncertain, expensive and protracted trial and appellate process. *See Klein*, 705 F. Supp. 2d at 653.

Further, the class representatives support this settlement as fair and reasonable (Class Representative Affids. ¶¶ 10-12), only three (3) Class Members opted out of this settlement

class of approximately 55,000 individuals (Woods Decl. ¶ 9), and no Class Members presently

object to it.  (*Id.* ¶ 8.)  These facts strongly support this settlement as an alternative to complex,

expensive and protracted continued litigation that is in the best interests of Plaintiff class

members.   Therefore, the second *Reed* factor favors the final approval of the Settlement

Agreement.

### 3.  <u>The stage of proceedings is appropriate for evaluating settlement.</u>

Formal discovery need not be complete in order for the parties to be in a position to

accurately evaluate the fairness of a class settlement. *Newby*, 394 F.3d at 306; *Turner*, 472 F.

Supp. 2d at 847; *Batchelder v. Kerr-McGee Corp.,* 246 F. Supp. 2d 525, 528 (N.D. Miss. 2003)

("*Batchelder*").  The Fifth Circuit has even held that discovery is not necessary, provided that the

interests of the class have not been prejudiced by the settlement negotiations, and substantial

factual bases exist on which to premise settlement. *Newby*, 394 F.3d at 306.

The standard set forth by the Fifth Circuit in *Newby* has been more than met in this case.

The Parties in the FEMA litigation have exchanged thousands of documents, taken over 100

depositions, and conducted three bellwether trials. (Meunier Decl. ¶¶ 3, 6.) Additionally, the

three bellwether trials have resulted in defense verdicts. (*Id.* ¶ 6.) The time is right for settlement.

### 4.  <u>The probabilities of success favor approval of settlement.</u>

The Parties have conducted three bellwether trials, and all have ended in defense verdicts.

Given the results of the bellwether trials conducted to date, the Plaintiffs face a significant risk of

recovering nothing.[6] *See In re Dell, Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *6

(W.D.Tex. June 11, 2010) (approving class settlement and noting that the Plaintiffs' case was

"no doubt in dire straits," with the Plaintiffs "facing a significant risk the Class Members would

---

[6] *See* Bellwether Jury Verdict Forms (Rec. Doc. 25226-13).

recover nothing at all"). Defendants face a long, expensive battle and the uncertainties inherent in a jury trial. Regardless of who prevails at trial, lengthy and expensive appeals can be expected. *See id.;*(Meunier Decl. ¶ 6; Percy Decl. ¶ 3). All of these factors favor final approval of the Settlement Agreement. *Dell,* 2010 WL 2371834, at *6.

5.    <strong><u>The range of possible recovery favors settlement</u></strong>.

The fifth *Reed* factor requires a court to determine "the value of the settlement in light of the potential for recovery." *In re Shell Oil Refinery,* 155 F.R.D. 552, 563 (E.D. La. 1993). To assess the fairness of a class settlement, a court should consider "whether the settlement's terms fall within a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Turner*, 472 F. Supp. 2d at 849-50. When considering the possible range of recovery, a court should keep in mind that "[c]ompromise is the essence of a settlement." *Id.* at 850 (quoting *Nelson v. Waring*, 602 F. Supp. 410, 413 (N.D. Miss. 1983)). "[I]nherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Klein*, 705 F. Supp. 2d at 649 (citing *Cotton,* 559 F.2d at 1330). Thus, "[a] proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Id.*; *see also Pettway v. Am. Cast Iron Pipe Co.,* 576 F.2d 1157, 1214 n.69 (5th Cir. 1978) ("[C]ompromise is the essence of a settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial").

As one court has explained:

> [T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'

10

*In re Shell Oil Refinery,* 155 F.R.D. at 560 (quoting *Oppenlander v. Standard Oil Co. (Indiana),* 64 F.R.D. 597, 624 (D. Colo. 1974)).

Given the results of the three bellwether trials, this Court need not consider an unrealistic high end of recovery in which all class members would recover significant damages. *See In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12 Litigation,* 447 F.Supp.2d 612, 622 (E.D. La. 2006) ("In considering the range of possible recovery, the Court need not consider recoveries that are beyond the range of the most minimal probability. Thus, engaging in an exercise that posits on the high end a recovery in which all class members would recover significant . . . damages is too unrealistic to be useful.").

One Court in a recent settlement also involving victims of Hurricanes Katrina and Rita noted that "[w]hile the individual payments contemplated under the Settlement Agreement are potentially modest, they avoid the need for any further litigation . . . by individual class members." *Ridgely v. F.E.M.A.,* No. 07-2146, 2010 WL 5140833, at *2 (E.D. La. Dec. 13, 2010). That same balance is present here. The value of the proposed settlement is fair and reasonable in light of the strong possibility of no recovery and the aforementioned risks of proceeding to trial. (Meunier Decl. ¶¶ 7-8; Balhoff Decl. ¶ 3.)

### 6.    The opinion of the PSC favors settlement.

Counsel are the court's main source of information about the fairness, adequacy and reasonableness of a class settlement. *Turner,* 472 F.Supp.2d at 852. As a result, "[t]he Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight." *Klein,* 705 F.Supp.2d at 649; *see also Newby,* 394 F. 3d at 309 ("[T]he weight the district court attached to the opinions of class counsel, relative to those of the [] Objectors, was justified in light of their superior sophistication."); *Cotton,* 559 F.2d at 1330 ("[T]he trial court is entitled to

rely upon the judgment of experienced counsel for the parties."). "Class counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit." *Turner*, 472 F.Supp.2d at 852.

The members of the PSC are experienced class action attorneys, with substantial experience both litigating and settling class actions. (Meunier Decl. ¶ 2.) After years of litigating this case, including the exchange of thousands of documents, the taking of over 100 depositions, extensive motion practice, and participation in a months-long and hard fought negotiation process, the PSC has concluded the proposed settlement is fair, adequate and reasonable for the Class. (*Id.* ¶¶ 3-4, 6-8, 10.)

### B.    Certification of the settlement Class is proper.

The Parties seek certification of a Class for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). The proposed settlement Class meets the applicable requirements of Rules 23(a) and (b)(3). This Court's December 29, 2008 Order concluded that various substantial barriers existed to certifying this case as a litigated class. In this settlement context, those barriers have been removed.[7]

Moreover, unlike in the litigation context, certification of a class for settlement purposes does not implicate the superiority of the class vehicle for the purpose of adjudicating common issues.  There is no need to present or review a potential trial plan for class claims.  The issue is

---

[7] This Court has the authority under Federal Rule 23 to revisit the decision to deny class certification.  Rule 23(c)(1)(C) states: "An order that . . . denies class certification may be altered or amended before final judgment." This subsection of Rule 23 gives a federal district court authority to revisit the class certification issue for settlement purposes.  The committee notes to the 2003 Amendments further state:  "A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification *until they have been met*."  These notes further support the notion that a court's decision to deny class certification can be revisited.  In *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 227 F.R.D. 553, 564 (W.D. Wash. 2004) ("*PPA*"), the court, in approving a class action settlement in a products liability action, noted that it had "already declined to certify litigation classes" in the MDL. The Fifth Circuit specifically has recognized that a district court may later alter its decision to deny certification pursuant to Rule 23(c)(1). *Calderon v. Presidio Valley Farmers Ass'n*, 863 F. 2d 384, 389 (5th Cir. 1989).

whether a class vehicle is available and proper to bring resolution to a category of common claims against the settling manufacturer defendants in these consolidated proceedings.

### 1.   The settlement Class meets the numerosity requirement.

Rule 23(a)(1) requires that members of a class be so numerous that it would be impracticable to join them individually. *Pederson v. La. State Univ.,* 213 F.3d 858, 868 (5th Cir. 2000).  In this case, there are over three thousand (3,000) individual Pending Actions filed against these Defendants by Class Members.  (Rec. Doc. 25646-12.)  There are approximately 55,000 people listed on the List of Potential Class Members compiled by the PSC. (Henderson Decl. Sec. I.)  Thus, the numerosity requirement has been met.  *See, e.g.*, *Mullen v. Treasure Chest Casino LLC,* 186 F.3d 620, 624 (5th Cir. 1999) (class of 100 and 150 satisfies numerosity requirement).[8]

This Court's December 29, 2008 Order ("2008 Order") held that Plaintiffs failed to show numerosity was met for each of the four subclasses requested (a subclass for each state involved – Louisiana, Alabama, Mississippi, and Texas). As the Court noted in its 2008 Order, to establish numerosity a class representative must present some evidence or reasonable estimate of the number of class members. (Rec, Doc. 1014 at 9.) This Court concluded that Plaintiffs had not yet established numerosity as to each of the four subclasses sought therein. (*Id.* at 10.) At the time, Plaintiffs sought four subclasses for each of the four states in which Plaintiffs resided in EHUs – Louisiana, Alabama, Mississippi and Texas – because of the variation in laws of those states.

For a settlement class, however, differing state laws are not relevant. *See In re Serzone Products Liability,* 231 F.R.D. 221, 240 (S.D.W.Va. 2005) ("*Serzone*") (in approving a class settlement in litigation of a product liability nationwide class action, the court noted that while

---

[8] This Court previously denied class certification for litigation purposes, in part, because Plaintiffs failed to establish numerosity for each of the four subclasses they sought at the time.  No such subclasses are sought in this settlement class, and thus that reasoning does not apply here.

the litigated class presented individual issues such as "different state laws," in the context of settlement, such an issue was "rendered irrelevant"); *see also PPA,* 227 F.R.D. at 563 (approving class action settlement and noting that "different state laws would have more import in the context of litigation than in settlement").

Here, therefore, no subclasses for each state are sought in this settlement class. Plaintiffs can now establish that the Class consists of approximately 55,000 members and clearly meets the numerosity requirement. (*See* Henderson Decl. Sec. I.).

### 2.      The settlement Class meets the commonality requirement.

The commonality requirement of Rule 23(a)(2) is not a demanding test. Commonality is fulfilled when the resolution of at least one issue will affect all or substantially all of the putative class members. *Mullen*, 186 F.3d at 625. All of the plaintiffs in this case allege injuries due to formaldehyde exposure. *See PPA,* 227 F.R.D. at 561 (holding that commonality is met for settlement purposes in part because "[a]ll members of the Class allege injuries from the ingestion of a Dexatrim product containing PPA"). All members of the Class allege physical injury from formaldehyde exposure due to a failure to warn of the dangers of prolonged occupancy in the travel trailers (recreational vehicles) involved.

Every class member faces the same hurdle with regard to liability. Additionally, the Special Master has submitted to the Court a Class Benefit Formula, and will consider therein any significant variation in symptoms suffered by a class member.

### 3.      The settlement class meets the typicality and adequacy of representation requirements.

Like commonality, the typicality requirement of Rule 23(a)(3) is not demanding. *Stirman v. Exxon Corp.,* 280 F.3d 554, 562 (5th Cir. 2002) (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)). A class representative's claims are typical of the proposed class when

his or her claims and legal theories arise from a singular nucleus of operative facts as the claims and legal theories of absent class members. *See Mullen*, 186 F.3d at 625; *see also Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir. 1993). In this case, the Class Representatives' claims in this settlement class are typical of the Class because, again, all claims in this case have the same standard of care. Further, the Class Representatives, and all of the Class Members, are claiming injury due to formaldehyde exposure from units manufactured by Settlors and provided to them by FEMA. Virtually all of the class members are claiming similar injuries – physical injury due to alleged formaldehyde exposure such as respiratory ailments. (Second Balhoff Decl. ¶ 5.) Typicality is met.

Rule 23(a)(4)'s adequacy requirement requires a court to consider: (1) whether the class representatives have interests that conflict with the class, (2) whether the class representatives will vigorously pursue the litigation on behalf of the class, and (3) whether class counsel are competent, qualified, experienced and able to conduct the litigation. *See Stirman*, 280 F.3d at 563; *James,* 254 F.3d at 571.

In this case, the interests of the Class Representatives are sufficiently aligned with those of the Class, and they have vigorously pursued this litigation. (Meunier Decl. ¶¶ 3-6; Balhoff Decl. ¶ 2; Class Representative Decls.) The PSC meets the adequacy requirement because it is comprised of competent and experienced class action attorneys, and because it has secured and submitted a fair and adequate settlement for the Court's final approval. *Parker*, 667 F.2d at 1211; (Meunier Decl. ¶¶ 2, 3-4, 6).

The 2008 Order held that Plaintiffs failed to show typicality and adequacy of representation because of the factual variations as to each individual regarding causation and injury. (Rec. Doc. 1014 at 17, 21-22.) The Court also held that typicality was lacking because

different state laws governed Plaintiffs' manufacturer liability claims, individual issues of specific medical causation were dominant, and Plaintiffs resided in different models of EHUs. (*Id.* at 15-17.)  As shown above, however, the Class Benefit Formula resolves these issues.  The 2008 Order found that class counsel was adequate but that the class representatives were not adequate because their claims were not typical.  (*Id.* at 20-21.)  Again, the Class Benefit Formula resolves these adequacy issues.  *See also PPA,* 227 F.R.D. at 561 (in approving class settlement of a product liability class action, holding that the claims of class representatives who asserted different injuries were nonetheless typical because they were "reasonably co-extensive" with those of other class members) (internal citation omitted).

As to adequacy of representation, there is no "futures" problem of the sort identified in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-28 (1997) (affirming the Third Circuit's vacating a class settlement in part because the interests of those class members with current asbestos injuries conflicted with those of class members who had no current injuries but possibly would in the future).  All proposed class members claim both current injury and fear of future disease. Thus, there is no *Amchem* "futures" problem with this proposed settlement. *See PPA*, 227 F.R.D. at 562 (in approving class action settlement in products liability case, the court concluded there was no *Amchem* "futures" problem "because there is no scientific evidence of latent injuries from the ingestion of PPA," and thus "there is no class of potential future claimants, as in *Amchem*"); *Serzone,* 231 F.R.D. at 238 ("in contrast [to *Amchem*], there is no scientific evidence of latent or progressive liver injuries arising from the ingestion of Serzone nor does the class have to accommodate future claimants").

### 4.    <u>The settlement class meets the predominance requirement.</u>

A class may be certified as a Rule 23(b)(3) class if the court finds that (1) questions of law or fact common to the class predominate over individualized questions, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the dispute. FED. R. CIV. P. 23(b)(3). Unlike a litigated class, manageability is not an issue. *See Amchem,* 521 U.S. at 620 ("[A] district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (internal citation omitted).

The predominance inquiry tests whether a proposed class is cohesive enough to warrant adjudication by representation. *Serzone,* 231 F.R.D. at 239. Because there is no trial of a settlement class, individualized questions, such as specific medical causation or the application of different state laws to class members from different states, do not destroy class cohesion and thus are not barriers to class certification. *Id.* at 240; *PPA,* 227 F.R.D. at 562-63; *Klein,* 705 F. Supp. 2d at 668-69. Here, predominance is also met because there is one medical causation question applicable to all claims, namely whether formaldehyde exposure caused injury.

The 2008 Order held that Plaintiffs failed to show predominance due to numerous individualized factors: (a) the case involves hundreds of models of homes manufactured by dozens of different manufacturers; (b) each plaintiff's habits, such as how often they open windows or use air conditioning, vary greatly; (c) each plaintiff's exposure to formaldehyde from sources other than their EHU vary greatly; (d) some plaintiffs may be smokers and thus have a cause of injury other than formaldehyde exposure; (e) each plaintiff's injury is unique. (Rec. Doc. 1014 at 24-27.) The 2008 Order also found that individualized issues of different state laws, specific medical causation, and EHU models would predominate over common issues. (*Id.* at 25-27.) As shown above, the variation in state laws is not an issue for this settlement class,

and the Special Master will consider a Class Benefit Formula to accommodate any extreme variation in medical condition.   Moreover, because there will be no trial of the proposed settlement Class, the individualized questions identified in the 2008 Order do not destroy class cohesion and thus are not barriers to class certification.  *See Serzone*, 231 F.R.D. at 240; *PPA,* 227 F.R.D. at 562-63; *Klein,* 705 F. Supp. 2d at 668-69.

### 5.  The settlement class meets the superiority requirement.

The superiority inquiry tests whether resolving a dispute on a class basis will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Serzone,* 231 F.R.D. at 240 (quoting *Amchem,* 521 U.S. at 615).  Settling this case as a class action will achieve significant economies of time, effort and expense for the Class and for the Court.  *See Serzone*, 231 F.R.D. at 240.  Litigating the claims in individual lawsuits would consume many more judicial resources.  *See id.*

The Parties have conducted three bellwether trials.  Each trial has taken approximately 11 days, with each involving thousands of hours of preparation.  Plaintiffs have been taxed with Defendants' costs for those three bellwether trials (a total of almost $500,000.00).  There were two appeals pending from those trials prior to global resolution negations, and both have been resolved in the negotiations with Settling Defendants herein.

Approving this settlement will end the excessive bleeding of costs by both sides in litigation that has dealt the Plaintiffs one blow after another. Distribution of the the settlement funds  will give Plaintiffs some immediate relief after years of fruitless litigation. *See PPA,* 227 F.R.D. at 563-64 (in approving class action settlement, court noted that several defense verdicts had been reached in state court PPA cases and that "mass tort litigation places an unusual strain

on court dockets," and that each individual claim, "absent the settlement, could result in costly, time-consuming proceedings").

The 2008 Order held that Plaintiffs failed to show superiority due to the variations in applicable state law, the dozens of class representatives who would want to testify on their own individual behalf; the dozens of defendant manufacturers who would want to offer their own witnesses, and the potential resulting jury confusion. (Rec. Doc. 1014 at 30-31.)

All of these issues are now moot in the settlement context. The fact that the proposed Class is now a settlement class "moots concern that trial would present intractable problems of management." *Serzone*, 231 F.R.D. at 237. Indeed, the fact that the Court has previously declined to certify a litigation class actually favors the approval of this settlement Class. *See PPA,* 227 F.R.D. at 564. If the settlement is not approved, each Class Member's claim will have to be adjudicated on an individual basis, placing a tremendous strain on the judicial system. *Id.; see also Strong v. Bellsouth Telecomms. Inc.,* 137 F.3d 844, 847 (5th Cir. 1998) (Fifth Circuit impliedly accepted settlement class certified after district court denied class certification for litigation purposes).

Finally, several federal courts have approved the settlement of mass tort class actions involving personal injuries, despite the problems that these cases would have posed for a litigated class. *See, e.g., In re Diet Drugs Prods. Liab. Litig.,* 385 F.3d 386 (3d Cir. 2004); *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 176 F.R.D. 158 (E.D.Penn. 1997); *Batchelder,* 246 F.Supp.2d 525 (alleging creosoting process from a plant contaminated the groundwater and released harmful vapors, mist and dust into the community); *Olden v. Gardner,* 294 F. App'x 210 (6th Cir. 2008) (holding that district court did not abuse its discretion in finding class settlement to be fair and reasonable, in case alleging personal injury and property damage from a

cement plant producing and emitting cement kiln dust); *Joel v. Giuliani,* 218 F.3d 132 (2d Cir. 2000) (affirming district court's approval of class settlement in case brought by children who had suffered severe abuse and neglect in the child welfare system).

The Rule 23 requirements for this settlement class have been met.

### C.    The Notice Given Satisfies the Due Process Requirements Governing Notice of Class Actions.

Rule 23(e) states that a court must "direct notice in a reasonable manner to all class members who would be bound by the proposal" before approving a settlement.  Fed. R. Civ. P. 23(e)(1).  Under Rule 23(e), "a settlement notice need only satisfy the 'broad reasonableness standards imposed by due process.'"  *In re Katrina Canal Breaches Litig.,* 628 F. 3d 185, 197 (5th Cir. 2010) (citations omitted).  Due process requires "notice and opportunity for hearing appropriate to the nature of the case."  *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950).  Due process does not require that each class member receive actual notice. *E.g., Peters v. Nat'l R.R. Passenger Corp.,* 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("[T]he due process clause does not amount to a guarantee of notice to a class member").

In the context of non-mandatory class settlements, such as this one, notice "is not required to provide a complete source of settlement information." *Maher v. Zapata Corp.,* 714 F.2d 436, 452 (5th Cir. 1983) (citations and emphasis omitted).  The notice must "contain an adequate description of the proceedings written in objective, neutral terms that insofar as possible, may be understood by the average absentee class member." *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1104 (5th Cir. 1977).  It must contain information sufficient to allow a reasonable person to make "an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *Id.* at 1105.

This is a unique class action. In the typical class action, the "unnamed class members" have no attorneys individually representing them. In this class action, however, the vast majority of the Claimants in this proposed settlement are individually represented by counsel. (Henderson Decl. Sec. I.). In this case, first-class mail notice of the Class Notice Package went out to ALL attorneys representing the plaintiffs on the List of Potential Class Members assembled by the PSC. (*Id.* Sec. II.)   In addition, those same attorneys were sent the Class Notice Package and Claim Form by e-mail.  (*Id.* Sec. II.)  The Court-Appointed Special Master concluded this notice was the best individual notice practicable under the circumstances.   (Second Balhoff Decl. ¶¶ 3-4.)

Notice also included both newspaper and radio Publication Notice.  (Henderson Decl. Sec. II.)  The Publication Notice ran twice in each of the following eight newspapers between July 3, 2012 and July 29, 2012:

- Galveston County Daily News, Galveston, TX;

- Houston Chronicle, Houston, TX;

- The Advocate, Baton Rouge, LA;

- Times-Picayune, New Orleans, LA;

- Daily Advertiser, Lafayette, LA;

- American Press, Lake Charles, LA;

- The Sun Herald, Gulfport, MS;

- Press-Register, Mobile, AL

(*Id.*)

Further, notice was also broadcast via radio in the following areas and manner:

- Baton Rouge, LA                72 spots

- Houston/Galveston, TX        24 spots

- Biloxi, MS                              54 spots

- Mobile, AL                            72 spots

- New Orleans, LA                   90 spots

- Lafayette, LA                         36 spots

- Lake Charles, LA                    36 spots

(*Id.*)

In addition, a website was established by the PSC to inform the public of the Settlement. The site, "www.femaformaldehydelitigation.com," contained the following information:

- Legal contact information:

  A complete list of all attorneys representing claimants in the case, along with the name of the law firm they are associated with, the law firm's address, telephone number and website.

- Settlement Documents:

  - Claim Form

  - Class Notice Package

  - Preliminary Approval Order

  - Stipulation of Settlement

(*Id.*)

That potential class members received the notice is supported by the Claim Forms that have been separately filed in addition to the list of pre-identified claimants from the PSC, as well as the number of phone calls made to the call center asking questions about the settlement. (*Id.*)

Further, following the filing of the proposed settlement, there was substantial national and local media coverage of the proposed settlement.  Such media coverage further supports the conclusion that notice was sufficient to meet due process standards in this case.  *See Turner,* 472 F. Supp. 2d at 841-42 (noting the substantial media coverage that the proposed settlement had received as an additional factor in concluding that the notice provided "constituted the most reasonable manner of notice under Rule 23(e)(1)(B)").

The notice given advised class members of (1)  the effect of the court's final approval order;  (2)  the rights of class members to exclude themselves or object to the settlement;  (3)  the general terms of the settlement;  (4) the definition of the Class;  and (5)  the scope of the release. The notice given gave the class members several months notice of the Fairness Hearing and adequate time to opt out or file objections.  The Settlement Notice Plan provided the best notice practicable under the circumstances and unquestionably satisfies the due process considerations. *See* Henderson Decl. Sec. I.; Second Balhoff Decl. ¶ 4.

## CONCLUSION

This proposed class settlement is fair, adequate and reasonable to plaintiffs, and the proposed settlement Class complies with the applicable requirements of Rule 23.  The settlement brings comprehensive closure to a category of claims which, both legally and practically, would be difficult to resolve through the alternative mechanism of multiple trials.

The parties respectfully request that the Court grant final approval to the settlement, consistent with the evidence and supporting law.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

23

BY:   s/Gerald E. Meunier
       GERALD E. MEUNIER, #9471
       JUSTIN I. WOODS, #24713
       **PLAINTIFFS' CO-LIAISON COUNSEL**
       Gainsburgh, Benjamin, David, Meunier &
       Warshauer, L.L.C.
       2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163
       Telephone:   504/522-2304
       Facsimile:   504/528-9973
       gmeunier@gainsben.com
       jwoods@gainsben.com

**COURT-APPOINTED PLAINTIFFS'**
**STEERING COMMITTEE**
       ANTHONY BUZBEE, Texas # 24001820
       ROBERT M. BECNEL, #14072
       RAUL BENCOMO, #2932
       FRANK D'AMICO, JR., #17519
       MATT MORELAND, #24567
       DENNIS REICH, Texas #16739600
       MIKAL C. WATTS, Texas #20981820
       ROBERT C. HILLIARD, Texas ##09677700

s/ James C. Percy
James C. Percy
Ryan E. Johnson
DEFENDANTS' SETTLEMENT LIAISON COUNSEL
Jones Walker
8555 United Plaza Boulevard
5th Floor
Baton Rouge, Louisiana 70809
Telephone: 225-248-2130
Facsimile: 225-248-3130
jpercy@joneswalker.com
rjohnson@joneswalker.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

s/Gerald E. Meunier
GERALD E. MEUNIER, #9471