EXHIBIT
A, Part 3

# EXHIBIT 5

**PUBLIC SERVICE ANNOUNCEMENT TO BE BROADCAST ON RADIO STATIONS AIRING IN THE STATES WHERE FEMA PROVIDED TRAVEL TRAILERS and PARK MODEL TRAILERS AFTER HURRICANES KATRINA AND RITA.**

Did you suffer symptoms or injuries as a result of exposure to formaldehyde in a Travel Trailer or Park Model Trailer provided by FEMA following Hurricanes Katrina and/or Rita? If so, then this public service announcement may apply to you.

Lawsuits have been brought on behalf of the persons who claim formaldehyde exposure in these Travel Trailers and Park Model trailers.  A class settlement has been proposed to provide money for those who claim symptoms and injuries as a result of formaldehyde exposure.

If you think you may be a Class Member, call 1-800-728-1628 for a Claim Form, the Class Notice Package, or more information, or visit www.femaformaldehydelitigation.com.  You must submit a Claim Form and all Claim Forms must be postmarked by October 12, 2012 for a Class Member to receive money.  You also have the right to exclude yourself from the settlement, but must do so by August 17, 2012.  If you do not exclude yourself, the settlement and its release will be binding on you.  You may also object to the settlement or ask to appear in person or by counsel before the Court, but you must ask to do so by August 31, 2012.

This announcement has been approved and ordered by the United States District Court Judge Kurt Engelhardt.

**Cody Passman**

| | |
|---|---|
| **From:** | GUNKEL, DAMON [DAMONGUNKEL@clearchannel.com] |
| **Sent:** | Monday, June 25, 2012 3:24 PM |
| **To:** | Cody Passman |
| **Subject:** | RE: Clear Channel Price Quotes |

Hi Cody,
Please make the check out to KATZ Media Group. Please send the check for $18,119.45 Net to:
KATZ Media Group
Attn: Michael Denson
125 55th St.
New York, NY 10019

Please let me know if you need anything else at this point. Please forward the spot or script so we can start on Tuesday 7/3.
Thanks!

**Damon Gunkel** I Vice President | National Sales I Clear Channel Media + Entertainment
☎ 404.365.3093 I F: 917.206.9075
✉ 3495 Piedmont Road 12 Piedmont Center Suite 300 I Atlanta I GA I 30305



---

**From:** Cody Passman [mailto:cpassman@pncpa.com]
**Sent:** Monday, June 25, 2012 11:16 AM
**To:** GUNKEL, DAMON
**Subject:** RE: Clear Channel Price Quotes

Damon,

Quick question...Who do we make the check out to? I left you a voicemail but if you receive this before then just disregard the voicemail.

Thanks,

Cody

---

**From:** GUNKEL, DAMON [mailto:DAMONGUNKEL@clearchannel.com]
**Sent:** Friday, June 22, 2012 5:18 PM
**To:** Cody Passman
**Subject:** RE: Clear Channel Price Quotes

Sounds good! You too!

**Damon Gunkel** I Vice President | National Sales I Clear Channel Media + Entertainment
☎ 404.365.3093 I F: 917.206.9075
✉ 3495 Piedmont Road 12 Piedmont Center Suite 300 I Atlanta I GA I 30305



1

# Inventory OK but subject to change

**Flight Date: 07/03/12 - 07/08/12**                          **Target Demo: Adults 21-**

| Multi-Market Summary | | | | | |
|---|---|---|---|---|---|
| **Market** | **Total Spots** | **Total Cost** | **Reach** | **Rch %** | **Freq** |
| Baton Rouge | 72 | $2,815 | 116,608 | 23.5 | 2.3 |
| Biloxi-Gulfport | 54 | $1,105 | 53,501 | 20.5 | 2.5 |
| Houston-Galveston | 24 | $5,352 | 365,639 | 8.6 | 1.2 |
| Mobile | 72 | $3,200 | 106,214 | 24.7 | 2.6 |
| New Orleans | 90 | $8,845 | 355,427 | 34.8 | 3.1 |
| Schedule Total | 312 | $21,317 | 997,389 | 15.4 | 2.2 |

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.

Please Contact Damon Gunkel
VP / Sales
(Phone)404-365-3093 (Fax)917-206-9075
damon.gunkel@clearchannel.com

# Current Inventory is OK but subject to change

**Survey: Baton Rouge WI12 MSA ARB** | **Target Demo: Adults 21-**

| Daypart | Spt / Wk | Total Spots | Spt $ | Len | CPP ($.00) | Rch % | Freq | Total Cost |
|---|---|---|---|---|---|---|---|---|
| **KRVE-FM (Adult Contemporary)** | | | | | | | | |
| Tu-F 6a-10a* | 4 | 4 | $55 | 60 | $61.11 | 2.4 | 1.5 | $220 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $50 | 60 | $45.45 | 2.8 | 1.5 | $200 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $50 | 60 | $55.56 | 2.4 | 1.4 | $200 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 3 | 3 | $15 | 60 | $25.00 | 1.3 | 1.3 | $45 |
| Su 9a-4p* | 3 | 3 | $10 | 60 | $33.33 | 0.7 | 1.3 | $30 |
| **07/03/12-07/08/12 (1Wk)** | **18** | **18** | **$39** | | **$48.60** | **6.0** | **2.3** | **$695** |
| **Total** | **18** | **18** | **$39** | | **$48.60** | **6.0** | **2.3** | **$695** |
| **WFMF-FM (Contemporary Hit Radio)** | | | | | | | | |
| Tu-F 6a-10a* | 4 | 4 | $60 | 60 | $50.00 | 3.4 | 1.4 | $240 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $50 | 60 | $62.50 | 2.4 | 1.3 | $200 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $55 | 60 | $55.00 | 3.1 | 1.3 | $220 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 3 | 3 | $25 | 60 | $35.71 | 1.8 | 1.2 | $75 |
| Su 9a-4p* | 3 | 3 | $15 | 60 | $30.00 | 1.1 | 1.3 | $45 |
| **07/03/12-07/08/12 (1Wk)** | **18** | **18** | **$43** | | **$50.00** | **8.2** | **1.9** | **$780** |
| **Total** | **18** | **18** | **$43** | | **$50.00** | **8.2** | **1.9** | **$780** |
| **WJBO-AM (News/Talk)** | | | | | | | | |
| Tu-F 6a-10a* | 4 | 4 | $50 | 60 | $71.43 | 1.8 | 1.5 | $200 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $50 | 60 | $45.45 | 2.6 | 1.7 | $200 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $50 | 60 | $71.43 | 1.9 | 1.5 | $200 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 3 | 3 | $5 | 60 | $25.00 | 0.6 | 1.2 | $15 |
| Su 9a-4p* | 3 | 3 | $5 | 60 | $50.00 | 0.3 | 1.4 | $15 |
| **07/03/12-07/08/12 (1Wk)** | **18** | **18** | **$35** | | **$57.80** | **4.5** | **2.4** | **$630** |
| **Total** | **18** | **18** | **$35** | | **$57.80** | **4.5** | **2.4** | **$630** |
| **WYNK-FM (Country)** | | | | | | | | |
| Tu-F 6a-10a* | 4 | 4 | $50 | 60 | $62.50 | 2.5 | 1.3 | $200 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $50 | 60 | $62.50 | 2.3 | 1.5 | $200 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $55 | 60 | $61.11 | 2.8 | 1.3 | $220 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 3 | 3 | $15 | 60 | $18.75 | 1.8 | 1.3 | $45 |

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.
*These Audience estimates are derived using STRATA NuMath based on Arbitron's copyrighted and proprietary audience estimates. They are not estimates produced by Arbitron.
Arbitron Rating Data Copyright 2012 Arbitron Inc
5:32 PM June 22, 2012

# Current Inventory is OK but subject to change

**Survey: Baton Rouge WI12 MSA ARB**　　　　　　　　　　　　　　　　　**Target Demo: Adults 21-**

| Daypart | Spt / Wk | Total Spots | Spt $ | Len | CPP ($.00) | Rch % | Freq | Total Cost |
|---|---|---|---|---|---|---|---|---|
| WYNK-FM Continue... | | | | | | | | |
| Su 9a-4p* | 3 | 3 | $15 | 60 | $30.00 | 1.2 | 1.3 | $45 |
| 07/03/12-07/08/12 (1Wk) | 18 | 18 | $39 | | $51.08 | 7.1 | 2.0 | $710 |
| Total | 18 | 18 | $39 | | $51.08 | 7.1 | 2.0 | $710 |
| Grand Total | 72 | 72 | $39 | | $51.46 | 23.5 | 2.3 | $2,815 |

| Station Summary | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Station | Spt / Wk | Rch % | Reach | Freq | Total Spots | CPP ($.00) | GIMP | Total Cost |
| KRVE-FM | 18 | 6.0 | 29,800 | 2.3 | 18 | $48.60 | 69,000 | $695 |
| WFMF-FM | 18 | 8.2 | 40,500 | 1.9 | 18 | $50.00 | 78,800 | $780 |
| WJBO-AM | 18 | 4.5 | 22,400 | 2.4 | 18 | $57.80 | 54,500 | $630 |
| WYNK-FM | 18 | 7.1 | 35,400 | 2.0 | 18 | $51.08 | 70,800 | $710 |
| Grand Total | 72 | 23.5 | 116,608 | 2.3 | 72 | $51.46 | 273,100 | $2,815 |

Multi-week cumes derived from Arbitron Cume SlideRule.

Beginning with the Arbitron WI06 survey, stations that simulcast 100% throughout the survey period are reported only under the call letters of the primary station of the simulcast partnership.

Format, Owner, Power and Rep information provided by third parties.

Nondiscrimination –Paragraphs 49 and 50 of the United States Federal Communications Commission's Report and Order No. 07-217 provides that broadcast stations' advertising contracts will not discriminate on the basis of race or ethnicity, and must contain nondiscrimination clauses. Consistent with this order, Katz Communications, Inc. (including any subsidiary or division of Katz) does not discriminate in any broadcast advertising contract on the basis of race or ethnicity and evaluates, negotiates and completes its broadcast advertising contracts without regard to race or ethnicity.

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.
*These Audience estimates are derived using STRATA NuMath based on Arbitron's copyrighted and proprietary audience estimates. They are not estimates produced by Arbitron.
Arbitron Rating Data Copyright 2012 Arbitron inc
5:32 PM June 22, 2012

Please Contact Damon Gunkel
VP / Sales
(Phone)404-365-3093 (Fax)917-206-9075
damon.gunkel@clearchannel.com

# Current Inventory is OK but subject to change

**Survey: Biloxi-Gulfport FA11 MSA ARB**                                    **Target Demo: Adults 21-**

| Daypart | Spt / Wk | Total Spots | Spt $ | Len | CPP ($.00) | Rch % | Freq | Total Cost |
|---|---|---|---|---|---|---|---|---|
| **WBUV-FM (News/Talk)** | | | | | | | | |
| Tu-F 6a-10a* | 4 | 4 | $25 | 60 | $22.73 | 2.8 | 1.6 | $100 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $25 | 60 | $13.89 | 4.2 | 1.8 | $100 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $25 | 60 | $25.00 | 2.8 | 1.5 | $100 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 3 | 3 | $10 | 60 | $20.00 | 1.1 | 1.4 | $30 |
| Su 9a-4p* | 3 | 3 | $5 | 60 | $16.67 | 0.7 | 1.4 | $15 |
| **07/03/12-07/08/12 (1Wk)** | **18** | **18** | **$19** | | **$19.17** | **6.9** | **2.7** | **$345** |
| **Total** | **18** | **18** | **$19** | | **$19.17** | **6.9** | **2.7** | **$345** |
| **WKNN-FM (Country)** | | | | | | | | |
| Tu-F 6a-10a* | 4 | 4 | $25 | 60 | $25.00 | 2.9 | 1.4 | $100 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $25 | 60 | $27.78 | 2.7 | 1.4 | $100 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $25 | 60 | $25.00 | 2.9 | 1.3 | $100 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 3 | 3 | $10 | 60 | $9.09 | 2.6 | 1.3 | $30 |
| Su 9a-4p* | 3 | 3 | $5 | 60 | $7.14 | 1.6 | 1.3 | $15 |
| **07/03/12-07/08/12 (1Wk)** | **18** | **18** | **$19** | | **$20.29** | **8.0** | **2.1** | **$345** |
| **Total** | **18** | **18** | **$19** | | **$20.29** | **8.0** | **2.1** | **$345** |
| **WMJY-FM (Adult Contemporary)** | | | | | | | | |
| Tu-F 6a-10a* | 4 | 4 | $30 | 60 | $37.50 | 2.3 | 1.4 | $120 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $30 | 60 | $27.27 | 2.9 | 1.5 | $120 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $25 | 60 | $31.25 | 2.4 | 1.4 | $100 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 3 | 3 | $15 | 60 | $15.00 | 2.2 | 1.3 | $45 |
| Su 9a-4p* | 3 | 3 | $10 | 60 | $12.50 | 1.6 | 1.4 | $30 |
| **07/03/12-07/08/12 (1Wk)** | **18** | **18** | **$23** | | **$25.62** | **7.1** | **2.3** | **$415** |
| **Total** | **18** | **18** | **$23** | | **$25.62** | **7.1** | **2.3** | **$415** |
| **Grand Total** | **54** | **54** | **$20** | | **$21.58** | **20.5** | **2.5** | **$1,105** |

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.
*These Audience estimates are derived using STRATA NuMath based on Arbitron's copyrighted and proprietary audience estimates. They are not estimates produced by Arbitron.
Arbitron Rating Data Copyright 2012 Arbitron Inc
5:32 PM June 22, 2012

Please Contact Damon Gunkel
VP / Sales
(Phone)404-365-3093 (Fax)917-206-9075
damon.gunkel@clearchannel.com

# Current Inventory is OK but subject to change

**Survey: Biloxi-Gulfport FA11 MSA ARB**                                        **Target Demo: Adults 21-**

| Station Summary | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Station** | **Spt / Wk** | **Rch %** | **Reach** | **Freq** | **Total Spots** | **CPP ($.00)** | **GIMP** | **Total Cost** |
| WBUV-FM | 18 | 6.9 | 18,100 | 2.7 | 18 | $19.17 | 48,300 | $345 |
| WKNN-FM | 18 | 8.0 | 21,000 | 2.1 | 18 | $20.29 | 44,800 | $345 |
| WMJY-FM | 18 | 7.1 | 18,600 | 2.3 | 18 | $25.62 | 42,700 | $415 |
| **Grand Total** | **54** | **20.5** | **53,501** | **2.5** | **54** | **$21.58** | **135,800** | **$1,105** |

Multi-week cumes derived from Arbitron Cume SlideRule.

Beginning with the Arbitron WI06 survey, stations that simulcast 100% throughout the survey period are reported only under the call letters of the primary station of the simulcast partnership.

Format, Owner, Power and Rep information provided by third parties.

Nondiscrimination –Paragraphs 49 and 50 of the United States Federal Communications Commission's Report and Order No. 07-217 provides that broadcast stations' advertising contracts will not discriminate on the basis of race or ethnicity, and must contain nondiscrimination clauses. Consistent with this order, Katz Communications, Inc. (including any subsidiary or division of Katz) does not discriminate in any broadcast advertising contract on the basis of race or ethnicity and evaluates, negotiates and completes its broadcast advertising contracts without regard to race or ethnicity.

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.
*These Audience estimates are derived using STRATA NuMath based on Arbitron's copyrighted and proprietary audience estimates. They are not estimates produced by Arbitron.
Arbitron Rating Data Copyright 2012 Arbitron Inc
5:32 PM June 22, 2012

Please Contact Damon Gunkel
VP / Sales
(Phone)404-365-3093 (Fax)917-206-9075
damon.gunkel@clearchannel.com

# Current Inventory is OK but subject to change

**Survey: Houston-Galveston 3BK Mar12-May12 MSA ARB PPM**        **Target Demo: Adults 21-**

| Daypart | Spt / Wk | Total Spots | Spt $ | Len | CPP ($.00) | Rch % | Freq | Total Cost |
|---|---|---|---|---|---|---|---|---|
| **KKRW-FM (Classic Rock)** | | | | | | | | |
| Tu-F 6a-10a* | 2 | 2 | $200 | 60 | $666.67 | 0.6 | 1.1 | $400 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 2 | 2 | $160 | 60 | $320.00 | 0.9 | 1.1 | $320 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 1 | 1 | $300 | 60 | $750.00 | 0.4 | 1.0 | $300 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 1 | 1 | $100 | 60 | $250.00 | 0.4 | 1.0 | $100 |
| **07/03/12-07/08/12 (1Wk)** | **6** | **6** | **$187** | | **$466.67** | **2.0** | **1.2** | **$1,120** |
| **Total** | **6** | **6** | **$187** | | **$466.67** | **2.0** | **1.2** | **$1,120** |
| **KODA-FM (Adult Contemporary)** | | | | | | | | |
| Tu-F 6a-10a* | 1 | 1 | $475 | 60 | $791.67 | 0.6 | 1.0 | $475 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 2 | 2 | $500 | 60 | $454.55 | 2.1 | 1.0 | $1,000 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 1 | 1 | $500 | 60 | $555.56 | 0.9 | 1.0 | $500 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 1 | 1 | $150 | 60 | $187.50 | 0.8 | 1.0 | $150 |
| Su 9a-4p* | 1 | 1 | $100 | 60 | $200.00 | 0.5 | 1.0 | $100 |
| **07/03/12-07/08/12 (1Wk)** | **6** | **6** | **$371** | | **$445.00** | **4.4** | **1.1** | **$2,225** |
| **Total** | **6** | **6** | **$371** | | **$445.00** | **4.4** | **1.1** | **$2,225** |
| **KPRC-AM (Talk)** | | | | | | | | |
| Tu-F 6a-10a* | 1 | 1 | $70 | 60 | $700.00 | 0.1 | 1.0 | $70 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 2 | 2 | $50 | 60 | $500.00 | 0.2 | 1.1 | $100 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 1 | 1 | $92 | 60 | $460.00 | 0.2 | 1.0 | $92 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 1 | 1 | $35 | 60 | $0.00 | 0.0 | 1.0 | $35 |
| Su 9a-4p* | 1 | 1 | $15 | 60 | $0.00 | 0.0 | 1.0 | $15 |
| **07/03/12-07/08/12 (1Wk)** | **6** | **6** | **$52** | | **$624.00** | **0.5** | **1.2** | **$312** |
| **Total** | **6** | **6** | **$52** | | **$624.00** | **0.5** | **1.2** | **$312** |
| **KTRH-AM (News)** | | | | | | | | |
| Tu-F 6a-10a* | 1 | 1 | $385 | 60 | $962.50 | 0.4 | 1.0 | $385 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 2 | 2 | $410 | 60 | $683.33 | 1.1 | 1.1 | $820 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 1 | 1 | $350 | 60 | $700.00 | 0.5 | 1.0 | $350 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Su 9a-4p* | 2 | 2 | $70 | 60 | $350.00 | 0.3 | 1.1 | $140 |
| **07/03/12-07/08/12 (1Wk)** | **6** | **6** | **$283** | | **$678.00** | **1.9** | **1.3** | **$1,695** |

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.
*These Audience estimates are derived using STRATA NuMath based on Arbitron's copyrighted and proprietary audience estimates. They are not estimates produced by Arbitron.
Arbitron Rating Data Copyright 2012 Arbitron Inc
5:32 PM June 22, 2012

Please Contact Damon Gunkel
VP / Sales
(Phone)404-365-3093 (Fax)917-206-9075
damon.gunkel@clearchannel.com

# Current Inventory is OK but subject to change

| Survey: Houston-Galveston 3BK Mar12-May12 MSA ARB PPM | | | | | | | | Target Demo: Adults 21- |
|---|---|---|---|---|---|---|---|---|

| Daypart | Spt / Wk | Total Spots | Spt $ | Len | CPP ($.00) | Rch % | Freq | Total Cost |
|---|---|---|---|---|---|---|---|---|
| KTRH-AM Continue... | | | | | | | | |
| Total | 6 | 6 | $283 | | $678.00 | 1.9 | 1.3 | $1,695 |
| Grand Total | 24 | 24 | $223 | | $514.62 | 8.6 | 1.2 | $5,352 |

| Station Summary | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Station | Spt / Wk | Rch % | Reach | Freq | Total Spots | CPP ($.00) | GIMP | Total Cost |
| KKRW-FM | 6 | 2.0 | 86,900 | 1.2 | 6 | $466.67 | 106,000 | $1,120 |
| KODA-FM | 6 | 4.4 | 189,600 | 1.1 | 6 | $445.00 | 216,800 | $2,225 |
| KPRC-AM | 6 | 0.5 | 19,300 | 1.2 | 6 | $624.00 | 22,500 | $312 |
| KTRH-AM | 6 | 1.9 | 81,600 | 1.3 | 6 | $678.00 | 103,300 | $1,695 |
| Grand Total | 24 | 8.6 | 365,639 | 1.2 | 24 | $514.62 | 448,600 | $5,352 |

**The PPM ratings are based on audience estimates and are the opinion of Arbitron and should not be relied on for precise accuracy or precise representativeness of a demographic or radio market.**

Multi-week cumes derived from Arbitron Cume SlideRule.

Cume inconsistencies detected in the PPM data were corrected during survey installation for: Houston-Galveston 3BK Mar12-May12 MSA ARB PPM: KKRW-FM KODA-FM KPRC-AM KTRH-AM

Beginning with the Arbitron WI06 survey, stations that simulcast 100% throughout the survey period are reported only under the call letters of the primary station of the simulcast partnership.

Format, Owner, Power and Rep information provided by third parties.

Nondiscrimination –Paragraphs 49 and 50 of the United States Federal Communications Commission's Report and Order No. 07-217 provides that broadcast stations' advertising contracts will not discriminate on the basis of race or ethnicity, and must contain nondiscrimination clauses. Consistent with this order, Katz Communications, Inc. (including any subsidiary or division of Katz) does not discriminate in any broadcast advertising contract on the basis of race or ethnicity and evaluates, negotiates and completes its broadcast advertising contracts without regard to race or ethnicity.

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.
*These Audience estimates are derived using STRATA NuMath based on Arbitron's copyrighted and proprietary audience estimates. They are not estimates produced by Arbitron.
Arbitron Rating Data Copyright 2012 Arbitron Inc
5:32 PM June 22, 2012

Please Contact Damon Gunkel
VP / Sales
(Phone)404-365-3093 (Fax)917-206-9075
damon.gunkel@clearchannel.com

# Current Inventory is OK but subject to change

**Survey: Mobile WI12 MSA ARB**                                                     **Target Demo: Adults 21-**

| Daypart | Spt / Wk | Total Spots | Spt $ | Len | CPP ($.00) | Rch % | Freq | Total Cost |
|---|---|---|---|---|---|---|---|---|
| **WKSJ-FM (Country)** | | | | | | | | |
| Tu-F 6a-10a* | 3 | 3 | $100 | 60 | $76.92 | 3.2 | 1.2 | $300 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $65 | 60 | $43.33 | 4.1 | 1.4 | $260 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $75 | 60 | $53.57 | 4.2 | 1.4 | $300 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 3 | 3 | $50 | 60 | $35.71 | 3.1 | 1.3 | $150 |
| Su 9a-4p* | 4 | 4 | $60 | 60 | $85.71 | 2.0 | 1.3 | $240 |
| **07/03/12-07/08/12 (1Wk)** | **18** | **18** | **$69** | | **$55.56** | **10.0** | **2.2** | **$1,250** |
| **Total** | **18** | **18** | **$69** | | **$55.56** | **10.0** | **2.2** | **$1,250** |
| **WMXC-FM (Adult Contemporary)** | | | | | | | | |
| Tu-F 6a-10a* | 4 | 4 | $60 | 60 | $66.67 | 2.6 | 1.4 | $240 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $50 | 60 | $45.45 | 3.0 | 1.5 | $200 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $50 | 60 | $55.56 | 2.7 | 1.4 | $200 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 3 | 3 | $25 | 60 | $20.83 | 2.6 | 1.4 | $75 |
| Su 9a-4p* | 3 | 3 | $20 | 60 | $28.57 | 1.6 | 1.3 | $60 |
| **07/03/12-07/08/12 (1Wk)** | **18** | **18** | **$43** | | **$44.80** | **7.6** | **2.3** | **$775** |
| **Total** | **18** | **18** | **$43** | | **$44.80** | **7.6** | **2.3** | **$775** |
| **WNTM-AM (News/Talk)** | | | | | | | | |
| Tu-F 6a-10a* | 4 | 4 | $20 | 60 | $40.00 | 1.3 | 1.6 | $80 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 5 | 5 | $20 | 60 | $25.00 | 2.2 | 1.9 | $100 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 5 | 5 | $20 | 60 | $100.00 | 0.7 | 1.5 | $100 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 2 | 2 | $5 | 60 | $25.00 | 0.4 | 1.2 | $10 |
| Su 9a-4p* | 2 | 2 | $5 | 60 | $50.00 | 0.2 | 1.3 | $10 |
| **07/03/12-07/08/12 (1Wk)** | **18** | **18** | **$17** | | **$39.47** | **3.1** | **2.6** | **$300** |
| **Total** | **18** | **18** | **$17** | | **$39.47** | **3.1** | **2.6** | **$300** |
| **WRKH-FM (Classic Rock)** | | | | | | | | |
| Tu-F 6a-10a* | 4 | 4 | $65 | 60 | $65.00 | 2.5 | 1.6 | $260 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $60 | 60 | $54.55 | 2.9 | 1.5 | $240 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $60 | 60 | $85.71 | 2.1 | 1.4 | $240 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 3 | 3 | $25 | 60 | $35.71 | 1.6 | 1.3 | $75 |

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.
*These Audience estimates are derived using STRATA NuMath based on Arbitron's copyrighted and proprietary audience estimates. They are not estimates produced by Arbitron.
Arbitron Rating Data Copyright 2012 Arbitron Inc
5:32 PM June 22, 2012

Please Contact Damon Gunkel
VP / Sales
(Phone)404-365-3093 (Fax)917-206-9075
damon.gunkel@clearchannel.com

# Current Inventory is OK but subject to change

| Survey: Mobile WI12 MSA ARB | | | | | | | | Target Demo: Adults 21- |

| Daypart | Spt / Wk | Total Spots | Spt $ | Len | CPP ($.00) | Rch % | Freq | Total Cost |
|---|---|---|---|---|---|---|---|---|
| WRKH-FM Continue... | | | | | | | | |
| Su 9a-4p* | 3 | 3 | $20 | 60 | $28.57 | 1.4 | 1.4 | $60 |
| 07/03/12-07/08/12 (1Wk) | 18 | 18 | $49 | | $56.82 | 6.6 | 2.3 | $875 |
| Total | 18 | 18 | $49 | | $56.82 | 6.6 | 2.3 | $875 |
| Grand Total | 72 | 72 | $44 | | $50.96 | 24.7 | 2.6 | $3,200 |

| Station Summary | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Station | Spt / Wk | Rch % | Reach | Freq | Total Spots | CPP ($.00) | GIMP | Total Cost |
| WKSJ-FM | 18 | 10.0 | 43,200 | 2.2 | 18 | $55.56 | 96,300 | $1,250 |
| WMXC-FM | 18 | 7.6 | 32,700 | 2.3 | 18 | $44.80 | 76,500 | $775 |
| WNTM-AM | 18 | 3.1 | 13,500 | 2.6 | 18 | $39.47 | 34,500 | $300 |
| WRKH-FM | 18 | 6.6 | 28,500 | 2.3 | 18 | $56.82 | 65,100 | $875 |
| Grand Total | 72 | 24.7 | 106,214 | 2.6 | 72 | $50.96 | 272,400 | $3,200 |

Multi-week cumes derived from Arbitron Cume SlideRule.

Beginning with the Arbitron WI06 survey, stations that simulcast 100% throughout the survey period are reported only under the call letters of the primary station of the simulcast partnership.

Format, Owner, Power and Rep information provided by third parties.

Nondiscrimination –Paragraphs 49 and 50 of the United States Federal Communications Commission's Report and Order No. 07-217 provides that broadcast stations' advertising contracts will not discriminate on the basis of race or ethnicity, and must contain nondiscrimination clauses. Consistent with this order, Katz Communications, Inc. (including any subsidiary or division of Katz) does not discriminate in any broadcast advertising contract on the basis of race or ethnicity and evaluates, negotiates and completes its broadcast advertising contracts without regard to race or ethnicity.

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.
*These Audience estimates are derived using STRATA NuMath based on Arbitron's copyrighted and proprietary audience estimates. They are not estimates produced by Arbitron.
Arbitron Rating Data Copyright 2012 Arbitron Inc
5:32 PM June 22, 2012

Please Contact Damon Gunkel
VP / Sales
(Phone)404-365-3093 (Fax)917-206-9075
damon.gunkel@clearchannel.com

# Current Inventory is OK but subject to change

**Survey: New Orleans WI12 MSA ARB**                                         **Target Demo: Adults 21-**

| Daypart | Spt / Wk | Total Spots | Spt $ | Len | CPP ($.00) | Rch % | Freq | Total Cost |
|---|---|---|---|---|---|---|---|---|
| **KVDU-FM (Adult Hits)** | | | | | | | | |
| Tu-F 6a-10a* | 3 | 3 | $45 | 60 | $150.00 | 0.8 | 1.2 | $135 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $45 | 60 | $150.00 | 1.0 | 1.3 | $180 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $45 | 60 | $112.50 | 1.2 | 1.2 | $180 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 5 | 5 | $15 | 60 | $37.50 | 1.2 | 1.5 | $75 |
| Su 9a-4p* | 2 | 2 | $10 | 60 | $33.33 | 0.5 | 1.1 | $20 |
| **07/03/12-07/08/12 (1Wk)** | **18** | **18** | **$33** | | **$93.65** | **3.3** | **1.8** | **$590** |
| **Total** | **18** | **18** | **$33** | | **$93.65** | **3.3** | **1.8** | **$590** |
| **WNOE-FM (Country)** | | | | | | | | |
| Tu-F 6a-10a* | 3 | 3 | $160 | 60 | $106.67 | 3.4 | 1.4 | $480 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $160 | 60 | $88.89 | 4.5 | 1.5 | $640 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $160 | 60 | $114.29 | 4.0 | 1.4 | $640 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 5 | 5 | $30 | 60 | $25.00 | 3.7 | 1.6 | $150 |
| Su 9a-4p* | 2 | 2 | $15 | 60 | $18.75 | 1.5 | 1.2 | $30 |
| **07/03/12-07/08/12 (1Wk)** | **18** | **18** | **$108** | | **$77.91** | **9.5** | **2.6** | **$1,940** |
| **Total** | **18** | **18** | **$108** | | **$77.91** | **9.5** | **2.6** | **$1,940** |
| **WQUE-FM (Urban Contemporary)** | | | | | | | | |
| Tu-F 6a-10a* | 4 | 4 | $200 | 60 | $100.00 | 5.0 | 1.6 | $800 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $200 | 60 | $153.85 | 3.4 | 1.5 | $800 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $200 | 60 | $133.33 | 4.1 | 1.4 | $800 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 4 | 4 | $55 | 60 | $36.67 | 3.7 | 1.6 | $220 |
| Su 9a-4p* | 2 | 2 | $40 | 60 | $44.44 | 1.6 | 1.2 | $80 |
| **07/03/12-07/08/12 (1Wk)** | **18** | **18** | **$150** | | **$100.00** | **10.3** | **2.6** | **$2,700** |
| **Total** | **18** | **18** | **$150** | | **$100.00** | **10.3** | **2.6** | **$2,700** |
| **WRNO-FM (News/Talk)** | | | | | | | | |
| Tu-F 6a-10a* | 4 | 4 | $50 | 60 | $55.56 | 2.3 | 1.5 | $200 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $75 | 60 | $37.50 | 4.0 | 1.9 | $300 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 3 | 3 | $75 | 60 | $83.33 | 1.9 | 1.4 | $225 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 4 | 4 | $15 | 60 | $30.00 | 1.3 | 1.7 | $60 |

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.
*These Audience estimates are derived using STRATA NuMath based on Arbitron's copyrighted and proprietary audience estimates. They are not estimates produced by Arbitron.
Arbitron Rating Data Copyright 2012 Arbitron Inc
5:32 PM June 22, 2012

# Current Inventory is OK but subject to change

**Survey: New Orleans WI12 MSA ARB**                                    **Target Demo: Adults 21-**

| Daypart | Spt / Wk | Total Spots | Spt $ | Len | CPP ($.00) | Rch % | Freq | Total Cost |
|---|---|---|---|---|---|---|---|---|
| *WRNO-FM Continue...* | | | | | | | | |
| Su 9a-4p* | 3 | 3 | $10 | 60 | $25.00 | 0.8 | 1.4 | $30 |
| 07/03/12-07/08/12 (1Wk) | 18 | 18 | $45 | | $46.57 | 5.8 | 2.9 | $815 |
| **Total** | 18 | 18 | $45 | | $46.57 | 5.8 | 2.9 | $815 |
| **WYLD-FM (Urban AC)** | | | | | | | | |
| Tu-F 6a-10a* | 4 | 4 | $235 | 60 | $97.92 | 5.7 | 1.7 | $940 |
| one spot per day; Request 6a-8a | | | | | | | | |
| Tu-F 10a-3p* | 4 | 4 | $200 | 60 | $105.26 | 5.2 | 1.5 | $800 |
| one spot per day; Request 11a-1p | | | | | | | | |
| Tu-F 3p-7p* | 4 | 4 | $200 | 60 | $125.00 | 4.4 | 1.4 | $800 |
| one spot per day; Request 4p-6p | | | | | | | | |
| Sa 8a-6p* | 4 | 4 | $50 | 60 | $27.78 | 4.6 | 1.5 | $200 |
| Su 9a-4p* | 2 | 2 | $30 | 60 | $18.75 | 2.6 | 1.2 | $60 |
| 07/03/12-07/08/12 (1Wk) | 18 | 18 | $156 | | $82.35 | 12.2 | 2.8 | $2,800 |
| **Total** | 18 | 18 | $156 | | $82.35 | 12.2 | 2.8 | $2,800 |
| **Grand Total** | 90 | 90 | $98 | | $80.63 | 34.8 | 3.1 | $8,845 |

| Station Summary | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Station | Spt / Wk | Rch % | Reach | Freq | Total Spots | CPP ($.00) | GIMP | Total Cost |
| KVDU-FM | 18 | 3.3 | 34,000 | 1.8 | 18 | $93.65 | 62,400 | $590 |
| WNOE-FM | 18 | 9.5 | 97,400 | 2.6 | 18 | $77.91 | 253,300 | $1,940 |
| WQUE-FM | 18 | 10.3 | 104,800 | 2.6 | 18 | $100.00 | 270,200 | $2,700 |
| WRNO-FM | 18 | 5.8 | 59,300 | 2.9 | 18 | $46.57 | 174,300 | $815 |
| WYLD-FM | 18 | 12.2 | 125,000 | 2.8 | 18 | $82.35 | 344,200 | $2,800 |
| **Grand Total** | 90 | 34.8 | 355,427 | 3.1 | 90 | $80.63 | 1,104,400 | $8,845 |

Multi-week cumes derived from Arbitron Cume SlideRule.

Beginning with the Arbitron WI06 survey, stations that simulcast 100% throughout the survey period are reported only under the call letters of the primary station of the simulcast partnership.

Format, Owner, Power and Rep information provided by third parties.

Nondiscrimination –Paragraphs 49 and 50 of the United States Federal Communications Commission's Report and Order No. 07-217 provides that broadcast stations' advertising contracts will not discriminate on the basis of race or ethnicity, and must contain nondiscrimination clauses. Consistent with this order, Katz Communications, Inc. (including any subsidiary or division of Katz) does not discriminate in any broadcast advertising contract on the basis of race or ethnicity and evaluates, negotiates and completes its broadcast advertising contracts without regard to race or ethnicity.

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.
*These Audience estimates are derived using STRATA NuMath based on Arbitron's copyrighted and proprietary audience estimates. They are not estimates produced by Arbitron.
Arbitron Rating Data Copyright 2012 Arbitron Inc
5:32 PM June 22, 2012

Please Contact Damon Gunkel
VP / Sales
(Phone)404-365-3093 (Fax)917-206-9075
damon.gunkel@clearchannel.com

# Station Ranker

| Quan. Survey: | New Orleans WI12 MSA ARB | Population: | 1,021,500 |
|---|---|---|---|
| Daypart: | M-Su 6a-12m | Demo: | Adults 21+ |

**All Stations, Ranked On AQH Rtg**

| Rnk | Station | AQH Rtg | AQH | Cume (00) | Station Format | Owner | Dial Position |
|---|---|---|---|---|---|---|---|
| 1 | WYLD-FM | 1.7 | 16,900 | 1,987 | Urban AC | Clear Channel Communications | 98.5 |
| 2 | WQUE-FM | 1.3 | 12,800 | 1,742 | Urban Contemporary | Clear Channel Communications | 93.3 |
| 3T | WLMG-FM | 1.1 | 10,900 | 1,719 | Adult Contemporary | Entercom | 101.9 |
| 3T | WWL -AM | 1.1 | 11,700 | 2,121 | News/Talk | Entercom | 870 |
| 3T | WNOE-FM | 1.1 | 10,800 | 1,661 | Country | Clear Channel Communications | 101.1 |
| 6T | WKBU-FM | 0.8 | 7,800 | 1,358 | Classic Rock | Entercom | 95.7 |
| 6T | WRNO-FM | 0.8 | 8,100 | 954 | News/Talk | Clear Channel Communications | 99.5 |
| 8 | KMEZ-FM | 0.7 | 7,100 | 963 | Urban AC | Cumulus | 106.7 |
| 9 | WEZB-FM | 0.6 | 6,600 | 1,614 | Contemporary Hit Radio | Entercom | 97.1 |
| 10 | KKND-FM | 0.5 | 4,600 | 922 | Rhythmic CHR | Cumulus | 102.9 |
| 11T | WPRF-FM | 0.3 | 2,900 | 375 | Urban Inspirational | Dowdy Broadcasting Group | 94.9 |
| 11T | WTIX-FM | 0.3 | 3,000 | 755 | Oldies | GHB Broadcasting | 94.3 |
| 11T | KVDU-FM | 0.3 | 2,700 | 868 | Adult Hits | Clear Channel Communications | 104.1 |
| 11T | WRKN-FM | 0.3 | 3,100 | 735 | Altern/Modern Rock | Cumulus | 92.3 |
| 15T | WYLD-AM | 0.2 | 1,800 | 375 | Gospel | Clear Channel Communications | 940 |
| 15T | WBOK-AM | 0.2 | 1,800 | 307 | Black | Bakewell Media, LLC | 1230 |
| 17T | WFMF-FM | 0.1 | 600 | 244 | Contemporary Hit Radio | Clear Channel Communications | 102.5 |
| 17T | WIST-AM | 0.1 | 1,200 | 162 | Sports | GHB Broadcasting | 690 |
| 17T | KLRZ-FM | 0.1 | 1,000 | 183 | Ethnic-Other | Coastal Broadcasting Of Larose, | 100.3 |
| 17T | WCDV-FM | 0.1 | 600 | 248 | Adult Hits | Cumulus | 103.3 |
| 17T | WMTI-FM | 0.1 | 900 | 238 | Sports | Cumulus | 106.1 |
| 17T | WWWL-AM | 0.1 | 1,200 | 303 | Sports | Entercom | 1350 |
| 17T | WCPR-FM | 0.1 | 600 | 77 | Altern/Modern Rock | Triad Broadcasting | 97.9 |
| 17T | KXOR-FM | 0.1 | 900 | 86 | | | 0 |
| 17T | WYNK-FM | 0.1 | 1,500 | 253 | Country | Clear Channel Communications | 101.5 |
| 17T | WZKX-FM | 0.1 | 1,100 | 233 | Country | Dowdy Broadcasting Group | 107.9 |
| 27 | KCIL-FM | 0.0 | 500 | 129 | | | 0 |

Beginning with the Arbitron WI06 survey, stations that simulcast 100% throughout the survey period are reported only under the call letters of the primary station of the simulcast partnership.

Format, Owner, Power and Rep information provided by third parties.

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.
Arbitron Rating Data Copyright 2012 Arbitron Inc

Please Contact Damon Gunkel
VP / Sales
(Phone)404-365-3093 (Fax)917-206-9075
damon.gunkel@clearchannel.com

# Multi Daypart Ranker

**Top 11**  **New Orleans WI12 MSA ARB**  **Adults 21-**

| Rnk | Station | AQH Rtg | AQH | Cume | Rnk | Station | AQH Rtg | AQH | Cume | Rnk | Station | AQH Rtg | AQH | Cume |
|-----|---------|---------|-----|------|-----|---------|---------|-----|------|-----|---------|---------|-----|------|
| | **M-F 6a-7p** | | | | | **M-F 6a-10a** | | | | | **M-F 10a-3p** | | | |
| 1 | WYLD-FM | 2.0 | 20,000 | 175,300 | 1 | WYLD-FM | 2.4 | 24,600 | 109,100 | 1 | WRNO-FM | 2.0 | 20,000 | 67,000 |
| 2 | WWL -AM | 1.7 | 17,600 | 187,000 | 2 | WQUE-FM | 2.0 | 20,000 | 107,000 | 2 | WYLD-FM | 1.9 | 19,300 | 121,000 |
| 3 | WNOE-FM | 1.6 | 16,100 | 149,400 | 3 | WWL -AM | 1.9 | 19,500 | 116,800 | 3 | WLMG-FM | 1.9 | 19,100 | 101,700 |
| 4 | WLMG-FM | 1.6 | 16,000 | 147,000 | 4 | WKBU-FM | 1.8 | 18,800 | 84,500 | 4 | WNOE-FM | 1.8 | 17,900 | 101,900 |
| 5 | WQUE-FM | 1.5 | 15,700 | 161,000 | 5 | WNOE-FM | 1.5 | 15,600 | 89,600 | 5 | WWL -AM | 1.6 | 16,100 | 103,900 |
| 6 | WRNO-FM | 1.3 | 13,100 | 87,800 | 6 | WLMG-FM | 1.4 | 14,000 | 85,900 | 6 | WQUE-FM | 1.3 | 13,000 | 87,500 |
| 7 | WKBU-FM | 1.2 | 12,300 | 121,900 | 7 | WEZB-FM | 1.1 | 11,100 | 86,100 | 7 | KMEZ-FM | 1.0 | 10,400 | 52,100 |
| 8 | WEZB-FM | 0.9 | 9,700 | 142,200 | 8 | WRNO-FM | 0.9 | 8,800 | 50,700 | 8 | WKBU-FM | 1.0 | 9,900 | 62,600 |
| 9 | KMEZ-FM | 0.9 | 8,700 | 75,500 | 9T | KKND-FM | 0.6 | 5,700 | 44,400 | 9 | WEZB-FM | 0.8 | 7,900 | 76,500 |
| 10 | KKND-FM | 0.5 | 5,300 | 77,400 | 9T | KMEZ-FM | 0.6 | 5,700 | 38,800 | 10 | WTIX-FM | 0.5 | 5,200 | 44,300 |
| 11 | WRKN-FM | 0.4 | 4,300 | 64,300 | 11 | WPRF-FM | 0.4 | 4,000 | 22,300 | 11 | KKND-FM | 0.5 | 4,900 | 47,000 |
| | **M-F 3p-7p** | | | | | **M-F 7p-12m** | | | | | **Sa 6a-7p** | | | |
| 1 | WWL -AM | 1.7 | 17,700 | 126,900 | 1 | WYLD-FM | 1.2 | 12,400 | 74,600 | 1 | WYLD-FM | 1.7 | 17,500 | 93,800 |
| 2 | WYLD-FM | 1.6 | 16,200 | 111,400 | 2 | WQUE-FM | 0.8 | 8,600 | 65,900 | 2 | WQUE-FM | 1.4 | 13,900 | 76,500 |
| 3 | WQUE-FM | 1.5 | 14,900 | 108,200 | 3 | KMEZ-FM | 0.4 | 4,500 | 32,000 | 3 | WNOE-FM | 1.0 | 10,600 | 72,900 |
| 4 | WNOE-FM | 1.4 | 14,300 | 107,400 | 4 | WLMG-FM | 0.4 | 4,000 | 45,600 | 4T | WWL -AM | 0.9 | 8,900 | 69,500 |
| 5 | WLMG-FM | 1.4 | 14,000 | 97,900 | 5 | WWL -AM | 0.4 | 3,800 | 47,700 | 4T | WLMG-FM | 0.9 | 8,900 | 62,900 |
| 6 | WEZB-FM | 1.0 | 10,600 | 102,400 | 6 | WNOE-FM | 0.3 | 2,600 | 42,700 | 6T | WKBU-FM | 0.6 | 6,500 | 41,800 |
| 7 | KMEZ-FM | 0.9 | 9,500 | 53,100 | 7 | WRNO-FM | 0.2 | 2,500 | 25,300 | 6T | KMEZ-FM | 0.6 | 6,500 | 38,300 |
| 8 | WRNO-FM | 0.9 | 8,700 | 52,900 | 8 | KKND-FM | 0.2 | 2,200 | 25,200 | 8T | KKND-FM | 0.5 | 4,900 | 33,400 |
| 9 | WKBU-FM | 0.8 | 8,600 | 67,800 | 9 | KMEZ-FM | 0.2 | 2,100 | 31,800 | 8T | WEZB-FM | 0.5 | 4,900 | 49,300 |
| 10 | KKND-FM | 0.5 | 5,600 | 45,600 | 10T | WBOK-AM | 0.1 | 1,300 | 8,300 | 10 | WRNO-FM | 0.4 | 4,400 | 26,300 |
| 11 | WRKN-FM | 0.5 | 5,400 | 45,300 | 10T | KVDU-FM | 0.1 | 1,300 | 21,800 | 11 | WPRF-FM | 0.3 | 3,400 | 17,500 |
| | **Su 6a-7p** | | | | | | | | | | | | | |
| 1 | WYLD-FM | 1.4 | 13,900 | 82,200 | | | | | | | | | | |
| 2 | WQUE-FM | 1.0 | 9,800 | 61,200 | | | | | | | | | | |
| 3 | WNOE-FM | 0.7 | 7,100 | 56,000 | | | | | | | | | | |
| 4 | KMEZ-FM | 0.7 | 7,000 | 47,900 | | | | | | | | | | |
| 5T | WLMG-FM | 0.5 | 5,600 | 51,800 | | | | | | | | | | |
| 5T | KKND-FM | 0.5 | 5,600 | 33,100 | | | | | | | | | | |
| 7 | WWL -AM | 0.5 | 5,500 | 49,900 | | | | | | | | | | |
| 8 | WKBU-FM | 0.5 | 5,100 | 39,700 | | | | | | | | | | |
| 9 | WPRF-FM | 0.5 | 4,900 | 23,600 | | | | | | | | | | |
| 10 | WEZB-FM | 0.4 | 4,000 | 45,700 | | | | | | | | | | |
| 11T | WBOK-AM | 0.3 | 3,000 | 12,700 | | | | | | | | | | |

Beginning with the Arbitron WI06 survey, stations that simulcast 100% throughout the survey period are reported only under the call letters of the primary station of the simulcast partnership.

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.
Arbitron Rating Data Copyright 2012 Arbitron Inc

Please Contact Damon Gunkel
VP / Sales
(Phone)404-365-3093 (Fax)917-206-9075
damon.gunkel@clearchannel.com

# Multi Demo Ranker

| Top 10 | New Orleans WI12 MSA ARB | M-Su 6a-12m |
|---|---|---|

### Adults 25-54

| Rnk | Station | AQH (00) | AQH Rtg | Cume |
|---|---|---|---|---|
| 1 | WYLD-FM | 104 | 1.8 | 126,400 |
| 2 | WQUE-FM | 92 | 1.6 | 120,700 |
| 3 | WLMG-FM | 64 | 1.1 | 96,600 |
| 4T | WWL-AM | 60 | 1.0 | 105,900 |
| 4T | WKBU-FM | 58 | 1.0 | 90,000 |
| 6T | WNOE-FM | 53 | 0.9 | 89,600 |
| 6T | WEZB-FM | 53 | 0.9 | 125,100 |
| 8 | KMEZ-FM | 44 | 0.8 | 56,800 |
| 9 | WRNO-FM | 39 | 0.7 | 46,500 |
| 10T | KVDU-FM | 23 | 0.4 | 69,000 |

### Men 25-54

| Rnk | Station | AQH (00) | AQH Rtg | Cume |
|---|---|---|---|---|
| 1 | WWL-AM | 49 | 1.7 | 75,500 |
| 2T | WQUE-FM | 47 | 1.6 | 52,600 |
| 2T | WKBU-FM | 45 | 1.6 | 55,300 |
| 4 | WYLD-FM | 42 | 1.5 | 52,700 |
| 5 | WRNO-FM | 31 | 1.1 | 29,100 |
| 6T | WLMG-FM | 22 | 0.8 | 38,500 |
| 6T | WNOE-FM | 23 | 0.8 | 37,800 |
| 8T | WEZB-FM | 20 | 0.7 | 48,700 |
| 8T | KMEZ-FM | 20 | 0.7 | 23,100 |
| 10 | WRKN-FM | 14 | 0.5 | 33,600 |

### Women 25-54

| Rnk | Station | AQH (00) | AQH Rtg | Cume |
|---|---|---|---|---|
| 1 | WYLD-FM | 63 | 2.1 | 73,700 |
| 2 | WQUE-FM | 45 | 1.5 | 68,100 |
| 3 | WLMG-FM | 41 | 1.4 | 58,100 |
| 4 | WEZB-FM | 32 | 1.1 | 76,400 |
| 5 | WNOE-FM | 30 | 1.0 | 51,700 |
| 6 | KMEZ-FM | 24 | 0.8 | 33,700 |
| 7 | KKND-FM | 15 | 0.5 | 35,900 |
| 8T | WKBU-FM | 13 | 0.4 | 34,700 |
| 8T | WWL-AM | 11 | 0.4 | 30,400 |
| 8T | WPRF-FM | 12 | 0.4 | 17,100 |

### Adults 35-64

| Rnk | Station | AQH (00) | AQH Rtg | Cume |
|---|---|---|---|---|
| 1 | WYLD-FM | 115 | 2.0 | 123,900 |
| 2T | WWL-AM | 73 | 1.3 | 132,500 |
| 2T | WLMG-FM | 74 | 1.3 | 107,600 |
| 4 | WNOE-FM | 63 | 1.1 | 86,900 |
| 5T | WKBU-FM | 57 | 1.0 | 89,300 |
| 5T | WQUE-FM | 58 | 1.0 | 80,700 |
| 7T | KMEZ-FM | 51 | 0.9 | 62,500 |
| 7T | WRNO-FM | 51 | 0.9 | 56,100 |
| 9 | WEZB-FM | 29 | 0.5 | 70,800 |
| 10T | KKND-FM | 20 | 0.4 | 42,600 |

### Men 35-64

| Rnk | Station | AQH (00) | AQH Rtg | Cume |
|---|---|---|---|---|
| 1T | WWL-AM | 53 | 1.9 | 84,900 |
| 1T | WYLD-FM | 53 | 1.9 | 53,300 |
| 3 | WKBU-FM | 43 | 1.5 | 55,100 |
| 4 | WRNO-FM | 38 | 1.4 | 33,700 |
| 5 | WNOE-FM | 30 | 1.1 | 36,600 |
| 6 | WQUE-FM | 28 | 1.0 | 31,700 |
| 7 | WLMG-FM | 26 | 0.9 | 42,400 |
| 8 | KMEZ-FM | 22 | 0.8 | 25,200 |
| 9 | WTIX-FM | 15 | 0.5 | 25,400 |
| 10 | WEZB-FM | 10 | 0.4 | 27,700 |

### Women 35-64

| Rnk | Station | AQH (00) | AQH Rtg | Cume |
|---|---|---|---|---|
| 1 | WYLD-FM | 62 | 2.1 | 70,700 |
| 2 | WLMG-FM | 48 | 1.7 | 65,200 |
| 3 | WNOE-FM | 34 | 1.2 | 50,300 |
| 4 | WQUE-FM | 31 | 1.1 | 49,000 |
| 5 | KMEZ-FM | 30 | 1.0 | 37,400 |
| 6 | WWL-AM | 21 | 0.7 | 47,600 |
| 7 | WEZB-FM | 18 | 0.6 | 43,100 |
| 8 | WKBU-FM | 14 | 0.5 | 34,300 |
| 9T | WRNO-FM | 13 | 0.4 | 22,400 |
| 9T | WPRF-FM | 13 | 0.4 | 16,400 |

### Adults 18-49

| Rnk | Station | AQH (00) | AQH Rtg | Cume |
|---|---|---|---|---|
| 1 | WQUE-FM | 123 | 2.0 | 165,200 |
| 2 | WYLD-FM | 103 | 1.7 | 124,000 |
| 3 | WEZB-FM | 66 | 1.1 | 160,400 |
| 4 | WNOE-FM | 59 | 1.0 | 99,500 |
| 5T | WLMG-FM | 54 | 0.9 | 93,800 |
| 5T | WKBU-FM | 56 | 0.9 | 88,400 |
| 7T | WWL-AM | 43 | 0.7 | 81,800 |
| 7T | KKND-FM | 41 | 0.7 | 88,900 |
| 9 | KMEZ-FM | 39 | 0.6 | 55,500 |
| 10T | KVDU-FM | 28 | 0.5 | 82,100 |

### Men 18-49

| Rnk | Station | AQH (00) | AQH Rtg | Cume |
|---|---|---|---|---|
| 1 | WQUE-FM | 65 | 2.1 | 75,900 |
| 2T | WKBU-FM | 43 | 1.4 | 52,900 |
| 2T | WYLD-FM | 43 | 1.4 | 50,500 |
| 4 | WWL-AM | 35 | 1.2 | 59,400 |
| 5T | WRNO-FM | 23 | 0.8 | 26,100 |
| 5T | WNOE-FM | 25 | 0.8 | 40,600 |
| 5T | WEZB-FM | 24 | 0.8 | 60,100 |
| 7T | KKND-FM | 20 | 0.7 | 38,900 |
| 9T | KMEZ-FM | 19 | 0.6 | 20,800 |
| 9T | WLMG-FM | 18 | 0.6 | 35,000 |

### Women 18-49

| Rnk | Station | AQH (00) | AQH Rtg | Cume |
|---|---|---|---|---|
| 1 | WQUE-FM | 58 | 1.9 | 89,300 |
| 1T | WYLD-FM | 60 | 1.9 | 73,500 |
| 3 | WEZB-FM | 42 | 1.4 | 100,300 |
| 4 | WLMG-FM | 36 | 1.2 | 58,800 |
| 5 | WNOE-FM | 33 | 1.1 | 59,000 |
| 6 | KKND-FM | 21 | 0.7 | 49,900 |
| 7 | KMEZ-FM | 20 | 0.6 | 34,800 |
| 8 | KVDU-FM | 15 | 0.5 | 46,800 |
| 9T | WKBU-FM | 13 | 0.4 | 35,500 |
| 9T | WPRF-FM | 13 | 0.4 | 19,300 |

### Adults 18+

| Rnk | Station | AQH (00) | AQH Rtg | Cume |
|---|---|---|---|---|
| 1 | WYLD-FM | 180 | 1.7 | 207,000 |
| 2 | WQUE-FM | 144 | 1.3 | 199,600 |
| 3T | WWL-AM | 118 | 1.1 | 214,500 |
| 3T | WNOE-FM | 117 | 1.1 | 177,600 |
| 5 | WLMG-FM | 113 | 1.0 | 180,900 |
| 6 | WRNO-FM | 82 | 0.8 | 97,900 |
| 7T | KMEZ-FM | 72 | 0.7 | 99,400 |
| 7T | WEZB-FM | 75 | 0.7 | 184,500 |
| 7T | WKBU-FM | 81 | 0.7 | 138,900 |
| 10 | KKND-FM | 54 | 0.5 | 107,200 |

### Men 18+

| Rnk | Station | AQH (00) | AQH Rtg | Cume |
|---|---|---|---|---|
| 1T | WWL-AM | 83 | 1.6 | 134,500 |
| 1T | WYLD-FM | 82 | 1.6 | 86,900 |
| 3 | WQUE-FM | 74 | 1.4 | 86,500 |
| 4T | WKBU-FM | 62 | 1.2 | 83,800 |
| 4T | WRNO-FM | 60 | 1.2 | 59,000 |
| 6 | WNOE-FM | 56 | 1.1 | 75,000 |
| 7 | WLMG-FM | 40 | 0.8 | 69,300 |
| 8 | KMEZ-FM | 31 | 0.6 | 40,200 |
| 9T | WEZB-FM | 27 | 0.5 | 69,700 |
| 9T | KKND-FM | 27 | 0.5 | 47,000 |

### Women 18+

| Rnk | Station | AQH (00) | AQH Rtg | Cume |
|---|---|---|---|---|
| 1 | WYLD-FM | 98 | 1.9 | 120,100 |
| 2T | WQUE-FM | 71 | 1.3 | 113,200 |
| 2T | WLMG-FM | 73 | 1.3 | 111,700 |
| 4 | WNOE-FM | 61 | 1.1 | 102,500 |
| 5 | WEZB-FM | 48 | 0.9 | 114,800 |
| 6 | KMEZ-FM | 41 | 0.7 | 59,100 |
| 7 | WWL-AM | 35 | 0.6 | 80,000 |
| 8 | KKND-FM | 27 | 0.5 | 60,200 |
| 9T | WPRF-FM | 24 | 0.4 | 29,300 |
| 9T | WRNO-FM | 21 | 0.4 | 38,900 |

Beginning with the Arbitron WI06 survey, stations that simulcast 100% throughout the survey period are reported only under the call letters of the primary station of the simulcast partnership.

This report has been prepared using © STRATA NuMath research. STRATA NuMath and report designs © copyright 2012 Strata Marketing, Inc. 312-222-1555.
Arbitron Rating Data Copyright 2012 Arbitron Inc

**Cumulus-Lake Charles**

**KYKZ-FM**

## Cumulus Sales Order

| | |
|---|---|
| Advertiser **Postlethwaite and Netterville** | New / Revision **New** |
| Agency | Start Date **07/02/12** |
| | End Date **07/08/12** |
| Bill To **Postlethwaite and Netterville** | Month Type **Calendar** |
| **8550 United Plaza Blvd** | Billing Cycle **End of Flight** |
| **Suite 1001** | |
| **Baton Rouge, LA  70809** | Co-op **No** |
| Account | Co-op Product |
| Executive **Tebble, KAM Robertson** | Notarized **N** |
| Contract # | # of Invoices **1** |
| Estimate # **FEMA Trailer Class Action Law Suit** | Make Goods **Ask AE** |
| Description | Income Type **Local Direct - 40100** |
| Stratus # **372770** | Local Income Type **Local Direct** |
| Special Instructions | Competitive Code **Accounting / Tax Services**     Advt#**279811** |
| Contact **Cody Passman 225-922-4600** | Order Entered **06/26/12** |

## Schedule

| # | Sponsor Log Name Revenue Types | Length Rate Line# | Start Date End Date | Start time End time | Auto Weekly | #/Wk | M | T | W | T | F | S | S | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | 60 | 07/03/12 | 6:00AM | | | | | | | | | | 240.00 |
| | Postlethwaite and Netterville | 60.00 | 07/06/12 | 10:00AM | N | | 1 | 1 | 1 | 1 | | | | 4 Spots |
| | Local Direct - 40100 / Local Direct | 2382866 | All Weeks | | | | | | | | | | | REVISED |
| 2 | | 60 | 07/03/12 | 10:00AM | | | | | | | | | | 240.00 |
| | Postlethwaite and Netterville | 60.00 | 07/06/12 | 3:00PM | N | | 1 | 1 | 1 | 1 | | | | 4 Spots |
| | Local Direct - 40100 / Local Direct | 2382867 | All Weeks | | | | | | | | | | | REVISED |
| 3 | | 60 | 07/03/12 | 3:00PM | | | | | | | | | | 240.00 |
| | Postlethwaite and Netterville | 60.00 | 07/06/12 | 7:00PM | N | | 1 | 1 | 1 | 1 | | | | 4 Spots |
| | Local Direct - 40100 / Local Direct | 2382868 | All Weeks | | | | | | | | | | | REVISED |
| 4 | | 60 | 07/07/12 | 6:00AM | | | | | | | | | | 74.00 |
| | Postlethwaite and Netterville | 37.00 | 07/08/12 | 10:00AM | N | | | | | | | 1 | 1 | 2 Spots |
| | Local Direct - 40100 / Local Direct | 2382869 | All Weeks | | | | | | | | | | | REVISED |
| 5 | | 60 | 07/07/12 | 10:00AM | | | | | | | | | | 74.00 |
| | Postlethwaite and Netterville | 37.00 | 07/08/12 | 3:00PM | N | | | | | | | 1 | 1 | 2 Spots |
| | Local Direct - 40100 / Local Direct | 2382870 | All Weeks | | | | | | | | | | | REVISED |
| 6 | | 60 | 07/07/12 | 3:00PM | | | | | | | | | | 74.00 |
| | Postlethwaite and Netterville | 37.00 | 07/08/12 | 7:00PM | N | | | | | | | 1 | 1 | 2 Spots |
| | Local Direct - 40100 / Local Direct | 2382871 | All Weeks | | | | | | | | | | | REVISED |

| | | | | | |
|---|---|---|---|---|---|
| Jul 12 = 942.00 | Aug 12 = 0.00 | Sep 12 = 0.00 | Oct 12 = 0.00 | Nov 12 = 0.00 | Dec 12 = 0.00 |
| Jan 13 = 0.00 | Feb 13 = 0.00 | Mar 13 = 0.00 | Apr 13 = 0.00 | May 13 = 0.00 | Jun 13 = 0.00 |

Printed 6/26/2012 5:55:44 PM

| | Total Contract Value: 942.00 | Total Due: 942.00 | 18 Spots | |
|---|---|---|---|---|
| Client Acceptance: | | | Date: | |
| Account Executive: | 6/26/2012 5:55:10 PM by Tebble, KAM Robertson | | | |
| Sales / Market Manager: | | | | |
| Business Manager: | | | | |
| Traffic Manager: | | | | V 5.0 |

**ALL ORDERS SUBJECT TO THE STANDARD TERMS AND CONDITIONS ATTACHED HERETO**

Please mail pymt to:

Tebble Robertson.
Cumulus Media
425 Broad St
Lake Charles LA 70605.

STANDARD TERMS AND CONDITIONS

**1. PARTIES**
For purposes of this agreement:
(a) "Station" shall refer to radio stations owned and operated by Cumulus Broadcasting LLC and/or Cumulus Media Partners LLC, the licensee(s), which will broadcast the announcements or programs as provided for hereunder.
(b) "Advertiser" shall mean the person, firm, or corporation whose goods, services, or the like are the subject(s) of the radio time contracted for herein.
(c) "Agency" shall mean the advertising agency, if any, that authorized the purchase of radio time from the Station.
(d) "Advertiser/Agency" shall mean "Advertiser" if an agency is not involved with this agreement, and shall mean "Advertiser and/or Agency" if an agency is involved with this agreement.

**2. AGENCY AS AGENT FOR ADVERTISER**
Agency acknowledges and represents that it is acting as an agent for and on behalf of Advertiser. Agency further acknowledges and represents that it has actual authority to enter into this agreement for and on behalf of Advertiser. If an agency is involved with this agreement, Agency and Advertiser shall be jointly and severally liable for all payments to be made to Station under this agreement.

**3. PAYMENT AND BILLING**
(a) Station will invoice Advertiser/Agency not less than monthly.
(b) Station's invoices for broadcasts, announcements, or other services provided under this agreement shall be deemed correct unless proven otherwise, and shall be, in the case of broadcasts or announcements, based on Station's log.
(c) Upon Advertiser's/Agency's request, Station shall furnish an affidavit or certification of performance at the time of billing. Unless the request is received prior to billing, the request for an affidavit or certification of performance shall not act as a condition precedent to any payment or the time of any payment called for under this agreement.
(d) Payment by Advertiser/Agency is due on receipt of invoice and is considered past due at 30 days. Payments not made within 30 days shall bear interest at the rate of 1½ percent per month or the maximum amount permitted by law, if less than 1½ percent per month. If Advertiser/Agency fails to make payments as provided for herein, or if Advertiser/Agency fails to comply with any other provision of this agreement, notwithstanding any other contract provision, Station shall have the right, in addition to any other rights it may have, without notice, to cancel or suspend any broadcasting or to cancel this agreement. Station reserves the right to revoke any agency commission, in whole or in part, in the event that payments are not made as provided for herein.

**4. TERMINATION**
Either party may terminate this agreement by giving the other party 14 days prior written notice. If Advertiser/Agency so terminates this agreement, it shall pay Station at the rate on which this agreement is based up to the effective date of termination. If Station so terminates this agreement, Advertiser/Agency will either agree with Station on a satisfactory substitute day or time for continuance of the broadcast or announcements covered by this agreement at the rates on which this agreement is based for such substitute time, or if no such agreement can be reached, Advertiser/Agency will pay Station according to the rates specified herein for all broadcasts or announcements previously rendered by Station. Station may terminate this agreement at any time upon breach by Advertiser/Agency. In the event of termination hereunder, neither party shall be liable to the other party otherwise than as specified in this agreement.

**5. SUBSTITUTION OF PROGRAMS OF PUBLIC IMPORTANCE OR IN THE PUBLIC INTEREST**
(a) Station shall have the right to cancel any broadcast or announcement or any portion thereof covered by this agreement in order to broadcast any program that Station, in its absolute discretion, deems to be of public importance or in the public interest. In such case, Station will notify Advertiser/Agency in advance, if reasonably possible, but if not, within a reasonable time after such broadcast or announcement has been canceled.
(b) In the event that any broadcast or announcement is canceled under paragraph 5(a) above, Advertiser/Agency and Station will agree on a satisfactory substitute day and time for the broadcast or announcement, or if no such agreement can be reached within 7 days after notice of cancellation, the broadcast or announcement will be considered canceled without affecting the rates or rights provided under this agreement, except that Advertiser/Agency shall not be required to pay for the cancelled broadcast or announcement.

**6. FAILURE TO BROADCAST**
If, due to public emergency or necessity, restrictions imposed by law, acts of God, labor disputes, or for any other cause, including mechanical, electronic or technical breakdowns beyond Station's control, there is an interruption or omission of any program or commercial announcement contracted to be broadcast hereunder, Station shall not be in breach hereof, but upon agreement with Advertiser/Agency, Station shall substitute a reasonable equivalent date and time for the broadcast of the interrupted or omitted program or commercial announcement. If no such substitute time is available or agreed upon between the parties, the time charges allocable to the interrupted or omitted program or commercial announcement will be waived.

**7. RATE PROTECTION**
Station reserves the right at any time, upon 30-days written notice, to change the rates, discounts, or charges hereunder.

**8. COMMERCIAL MATERIALS; INDEMNIFICATION**
(a) This agreement is not exclusive as to Advertiser's business, products, or services and Station remains free to solicit and broadcast programs or announcements of other advertisers whether or not they are in competition with Advertiser's business, products, or services. All commercial materials, audio or video tapes, programs, or other similar materials shall be furnished and delivered to Station at Advertiser's/Agency's sole expense. Such materials, together with any instructions pertaining thereto, shall be delivered at least 48 hours in advance of the scheduled broadcast or announcement. All materials furnished for broadcast shall not be contrary to the public interest and shall conform to Station's then-existing program and operating policy and quality standards, and are subject to Station's prior approval and continuing right to reject or require editing of such materials. No advertising matter, announcement, or program that may be deemed, in the Station's sole discretion, injurious or prejudicial to the public's interest, the Station, or honest advertising and reputable business in general will be accepted. Station may destroy or dispose of any commercial material 60 days after the last broadcast hereunder, unless otherwise instructed in writing by Advertiser/Agency.
(b) Notwithstanding Station's approval rights in paragraph 8(a), Advertiser/ Agency shall indemnify and hold Station, its agents, employees, and officers harmless from and against all claims, damages, obligations, liabilities, costs and expenses, including attorneys' fees, that arise out of or result from any broadcast, preparation of any broadcast, or contemplated broadcast of materials furnished by or on behalf of Advertiser/Agency, or furnished by Station at Advertiser's/ Agency's request for use in connection with commercial material, including but not limited to those arising out of or that result from libel, slander, invasion of privacy rights, or infringement of any proprietary rights. Advertiser/Agency warrants that all materials furnished to Station truly represent Advertiser's business, products, or services and will be free from false claims or assertions. This paragraph 8(b) shall survive cancellation or termination of this agreement.

**9. DISPUTES**
Any discrepancy, dispute, or disagreement by Advertiser/Agency with any broadcast, announcement, program, or other service provided by Station hereunder or related to the amount charged by Station for same shall be reported to Station in writing within 20 days from the date of the invoice relating to same, time being of the essence. Failure to report such discrepancy, dispute, or disagreement in writing within such time shall constitute a waiver of all claims by Advertiser/Agency arising out of or related to such discrepancy, dispute, or disagreement.

**10. GENERAL**
(a) This agreement is subject to the terms of the licenses held by Station and is further subject to all federal, state, and municipal laws and regulations now in force or that may be enacted in the future, including but not limited to the Rules and Regulations of the Federal Communications Commission and its decisions, actions, and orders when acting under its quasi-legislative powers.
(b) This agreement, including the rights and obligations under it, may not be assigned or transferred without first obtaining Station's written consent, nor may Station be required to broadcast hereunder for the benefit of any Advertiser/ Agency other than those named on the face of this agreement.
(c) In the event of a breach by Station, Advertiser's/Agency's exclusive remedy therefore shall be a credit for substituted advertising time of equal value, and in no event shall Station be liable for any consequential, incidental, or punitive damages, or monetary damages of any type.
(d) This agreement shall be construed under and according to the laws of the State in which the Station's main studio is located. All parties hereto agree that in any action brought to enforce the obligation or right of any party hereunder, each party consents to personal jurisdiction and venue in any court of appropriate jurisdiction in the county or parish where the Station's main studio is located.
(e) If it becomes necessary for Station to place Advertiser's/Agency's account with an attorney or collection agency for the purpose of enforcing its rights hereunder, Advertiser/Agency shall be liable to Station for reasonable attorneys' fees, costs, and expenses.
(f) All notices hereunder shall be in writing and delivered by hand or registered or certified mail and shall be deemed given when delivered in person or, if mailed, on the second business day after the date of the mailing. Any notice hereunder shall be sufficient if given to either Advertiser or Agency.
(g) If any provision of this agreement shall be adjudged by a court to be void or unenforceable, such adjudication shall not affect the validity or enforceability of any other provision of this agreement.
(h) The provisions hereof constitute the entire agreement between the parties and supersede any and all other transactions, negotiations, or representations whatsoever as to the broadcast or announcements, or the parties' rights and obligations hereunder, and shall not be modified except in writing.
(i) This Station does not discriminate in the sale of advertising time, and will accept no advertising which is placed with an intent to discriminate on the basis of race, gender or ethnicity. Advertiser hereby certifies that it is not buying broadcasting air time under this advertising sales agreement for a discriminatory purpose, including but not limited to decisions not to place advertising on particular stations on the basis of race, gender, national origin or ancestry.
STANDARD TERMS AND CONDITIONS

5/3/2011

**Cumulus-Lake Charles**                                                                 **KQLK-FM**

## Cumulus Sales Order

| | |
|---|---|
| Advertiser **Postlethwaite and Netterville** | New / Revision **New** |
| Agency | Start Date **07/02/12** |
| | End Date **07/08/12** |
| Bill To **Postlethwaite and Netterville** | Month Type **Calendar** |
| **8550 United Plaza Blvd** | Billing Cycle **End of Flight** |
| **Suite 1001** | |
| **Baton Rouge, LA  70809** | Co-op **No** |
| Account | Co-op Product |
| Executive **Tebble, KAM Robertson** | Notarized **N** |
| Contract # | # of Invoices **1** |
| Estimate # **FEMA Trailer Class Action Law Suit** | Make Goods **Ask AE** |
| Description | Income Type **Local Direct - 40100** |
| Stratus # **372769** | Local Income Type **Local Direct** |
| Special | Competitive Code **Accounting / Tax Services**      **Advt#279811** |
| Instructions | |
| Contact **Cody Passman  225-922-4600** | Order Entered **06/26/12** |

## Schedule

| # | Sponsor / Log Name / Revenue Types | Length / Rate Line# | Start Date / End Date | Start time / End time | Auto Weekly | #/Wk | M | T | W | T | F | S | S | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | 60 | 07/03/12 | 6:00AM | | | | | | | | | | 88.00 |
| | Postlethwaite and Netterville | 22.00 | 07/06/12 | 10:00AM | N | | | 1 | 1 | 1 | 1 | | | 4 Spots |
| | Local Direct - 40100 / Local Direct | 2382860 | All Weeks | | | | | | | | | | | REVISED |
| 2 | | 60 | 07/03/12 | 10:00AM | | | | | | | | | | 88.00 |
| | Postlethwaite and Netterville | 22.00 | 07/06/12 | 3:00PM | N | | | 1 | 1 | 1 | 1 | | | 4 Spots |
| | Local Direct - 40100 / Local Direct | 2382861 | All Weeks | | | | | | | | | | | REVISED |
| 3 | | 60 | 07/03/12 | 3:00PM | | | | | | | | | | 88.00 |
| | Postlethwaite and Netterville | 22.00 | 07/06/12 | 7:00PM | N | | | 1 | 1 | 1 | 1 | | | 4 Spots |
| | Local Direct - 40100 / Local Direct | 2382862 | All Weeks | | | | | | | | | | | REVISED |
| 4 | | 60 | 07/07/12 | 6:00AM | | | | | | | | | | 36.00 |
| | Postlethwaite and Netterville | 18.00 | 07/08/12 | 10:00AM | N | | | | | | | 1 | 1 | 2 Spots |
| | Local Direct - 40100 / Local Direct | 2382863 | All Weeks | | | | | | | | | | | REVISED |
| 5 | | 60 | 07/07/12 | 10:00AM | | | | | | | | | | 36.00 |
| | Postlethwaite and Netterville | 18.00 | 07/08/12 | 3:00PM | N | | | | | | | 1 | 1 | 2 Spots |
| | Local Direct - 40100 / Local Direct | 2382864 | All Weeks | | | | | | | | | | | REVISED |
| 6 | | 60 | 07/07/12 | 3:00PM | | | | | | | | | | 36.00 |
| | Postlethwaite and Netterville | 18.00 | 07/08/12 | 7:00PM | N | | | | | | | 1 | 1 | 2 Spots |
| | Local Direct - 40100 / Local Direct | 2382865 | All Weeks | | | | | | | | | | | REVISED |

| | | | | | |
|---|---|---|---|---|---|
| Jul 12 = 372.00 | Aug 12 = 0.00 | Sep 12 = 0.00 | Oct 12 = 0.00 | Nov 12 = 0.00 | Dec 12 = 0.00 |
| Jan 13 = 0.00 | Feb 13 = 0.00 | Mar 13 = 0.00 | Apr 13 = 0.00 | May 13 = 0.00 | Jun 13 = 0.00 |

Printed 6/26/2012 5:55:27 PM

Total Contract Value: 372.00     Total Due: 372.00     18 Spots

Client Acceptance: _____        Date: _____

Account Executive:   6/26/2012 5:54:57 PM by Tebble, KAM Robertson

Sales / Market Manager:

Business Manager:

Traffic Manager:                                                      V 5.0

ALL ORDERS SUBJECT TO THE STANDARD TERMS AND CONDITIONS ATTACHED HERETO

STANDARD TERMS AND CONDITIONS
1. PARTIES
For purposes of this agreement:
(a) "Station" shall refer to radio stations owned and operated by Cumulus Broadcasting LLC and/or Cumulus Media Partners LLC, the licensee(s), which will broadcast the announcements or programs as provided for hereunder.
(b) "Advertiser" shall mean the person, firm, or corporation whose goods, services, or the like are the subject(s) of the radio time contracted for herein.
(c) "Agency" shall mean the advertising agency, if any, that authorized the purchase of radio time from the Station.
(d) "Advertiser/Agency" shall mean "Advertiser" if an agency is not involved with this agreement, and shall mean "Advertiser and/or Agency" if an agency is involved with this agreement.
2. AGENCY AS AGENT FOR ADVERTISER
Agency acknowledges and represents that it is acting as an agent for and on behalf of Advertiser. Agency further acknowledges and represents that it has actual authority to enter into this agreement for and on behalf of Advertiser. If an agency is involved with this agreement, Agency and Advertiser shall be jointly and severally liable for all payments to be made to Station under this agreement.
3. PAYMENT AND BILLING
(a) Station will invoice Advertiser/Agency not less than monthly.
(b) Station's invoices for broadcasts, announcements, or other services provided under this agreement shall be deemed correct unless proven otherwise, and shall be, in the case of broadcasts or announcements, based on Station's log.
(c) Upon Advertiser's/Agency's request, Station will furnish an affidavit or certification of performance at the time of billing. Unless the request is received prior to billing, the request for an affidavit or certification of performance shall not act as a condition precedent to any payment or the time of any payment called for under this agreement.
(d) Payment by Advertiser/Agency is due on receipt of invoice and is considered past due at 30 days. Payments not made within 30 days shall bear interest at the rate of 1½ percent per month or the maximum amount permitted by law, if less than 1½ percent per month. If Advertiser/Agency fails to make payments as provided for herein, or if Advertiser/Agency fails to comply with any other provision of this agreement, notwithstanding any other contract provision, Station shall have the right, in addition to any other rights it may have, without notice, to cancel or suspend any broadcasting or to cancel this agreement. Station reserves the right to revoke any agency commission, in whole or in part, in the event that payments are not made as provided for herein.
4. TERMINATION
Either party may terminate this agreement by giving the other party 14 days prior written notice. If Advertiser/Agency so terminates this agreement, it shall pay Station at the rate on which this agreement is based up to the effective date of termination. If Station so terminates this agreement, Advertiser/Agency will either agree with Station on a satisfactory substitute day or time for continuance of the broadcast or announcements covered by this agreement at the rates on which this agreement is based for such substitute time, or if no such agreement can be reached, Advertiser/Agency will pay Station according to the rates specified herein for all broadcasts or announcements previously rendered by Station. Station may terminate this agreement at any time upon breach by Advertiser/Agency. In the event of termination hereunder, neither party shall be liable to the other party otherwise than as specified in this agreement.
5. SUBSTITUTION OF PROGRAMS OF PUBLIC IMPORTANCE OR IN THE PUBLIC INTEREST
(a) Station shall have the right to cancel any broadcast or announcement or any portion thereof covered by this agreement in order to broadcast any program that Station, in its absolute discretion, deems to be of public importance or in the public interest. In such case, Station will notify Advertiser/Agency in advance, if reasonably possible, but if not, within a reasonable time after such broadcast or announcement has been canceled.
(b) In the event that any broadcast or announcement is canceled under paragraph 5(a) above, Advertiser/Agency and Station will agree on a satisfactory substitute day and time for the broadcast or announcement, or if no such agreement can be reached within 7 days after notice of cancellation, the broadcast or announcement will be considered canceled without affecting the rates or rights provided under this agreement, except that Advertiser/Agency shall not be required to pay for the cancelled broadcast or announcement.
6. FAILURE TO BROADCAST
If, due to public emergency or necessity, restrictions imposed by law, acts of God, labor disputes, or for any other cause, including mechanical, electronic or technical breakdowns beyond Station's control, there is an interruption or omission of any program or commercial announcement contracted to be broadcast hereunder, Station shall not be in breach hereof, but upon agreement with Advertiser/Agency, Station shall substitute a reasonable equivalent date and time for the broadcast of the interrupted or omitted program or commercial announcement. If no such substitute time is available or agreed upon between the parties, the time charges allocable to the interrupted or omitted program or commercial announcement will be waived.

7. RATE PROTECTION
Station reserves the right at any time, upon 30-days written notice, to change the rates, discounts, or charges hereunder.
8. COMMERCIAL MATERIALS; INDEMNIFICATION
(a) This agreement is not exclusive as to Advertiser's business, products, or services and Station remains free to solicit and broadcast programs or announcements of other advertisers whether or not they are in competition with Advertiser's business, products, or services. All commercial materials, audio or video tapes, programs, or other similar materials shall be furnished and delivered to Station at Advertiser's/Agency's sole expense. Such materials, together with any instructions pertaining thereto, shall be delivered at least 48 hours in advance of the scheduled broadcast or announcement. All materials furnished for broadcast shall not be contrary to the public interest and shall conform to Station's then-existing program and operating policy and quality standards, and are subject to Station's prior approval and continuing right to reject or require editing of such materials. No advertising matter, announcement, or program that may be deemed, in the Station's sole discretion, injurious or prejudicial to the public's interest, the Station, or honest advertising and reputable business in general will be accepted. Station may destroy or dispose of any commercial material 60 days after the last broadcast hereunder, unless otherwise instructed in writing by Advertiser/Agency.
(b) Notwithstanding Station's approval rights in paragraph 8(a), Advertiser/ Agency shall indemnify and hold Station, its agents, employees, and officers harmless from and against all claims, damages, obligations, liabilities, costs and expenses, including attorneys' fees, that arise out of or result from any broadcast, preparation of any broadcast, or contemplated broadcast of materials furnished by or on behalf of Advertiser/Agency, or furnished by Station at Advertiser's/ Agency's request for use in connection with commercial material, including but not limited to those arising out of or that result from libel, slander, invasion of privacy rights, or infringement of any proprietary right. Advertiser/Agency warrants that all materials furnished to Station truly represent Advertiser's business, products, or services and will be free from false claims or assertions. This paragraph 8(b) shall survive cancellation or termination of this agreement.
9. DISPUTES
Any discrepancy, dispute, or disagreement by Advertiser/Agency with any broadcast, announcement, program, or other service provided by Station hereunder or related to the amount charged by Station for same shall be reported to Station in writing within 20 days from the date of the invoice relating to same, time being of the essence. Failure to report such discrepancy, dispute, or disagreement in writing within such time shall constitute a waiver of all claims by Advertiser/Agency arising out of or related to such discrepancy, dispute, or disagreement.
10. GENERAL
(a) This agreement is subject to the terms of the licenses held by Station and is further subject to all federal, state, and municipal laws and regulations now in force or that may be enacted in the future, including but not limited to the Rules and Regulations of the Federal Communications Commission and its decisions, actions, and orders when acting under its quasi-legislative powers.
(b) This agreement, including the rights and obligations under it, may not be assigned or transferred without first obtaining Station's written consent, nor may Station be required to broadcast hereunder for the benefit of any Advertiser/ Agency other than those named on the face of this agreement.
(c) In the event of a breach by Station, Advertiser's/Agency's exclusive remedy therefore shall be a credit for substituted advertising time of equal value, and in no event shall Station be liable for any consequential, incidental, or punitive damages, or monetary damages of any type.
(d) This agreement shall be construed under and according to the laws of the State in which the Station's main studio is located. All parties hereto agree that in any action brought to enforce the obligation or right of any party hereunder, each party consents to personal jurisdiction and venue in any court of appropriate jurisdiction in the county or parish where the Station's main studio is located.
(e) If it becomes necessary for Station to place Advertiser's/Agency's account with an attorney or collection agency for the purpose of enforcing its rights hereunder, Advertiser/Agency shall be liable to Station for reasonable attorneys' fees, costs, and expenses.
(f) All notices hereunder shall be in writing and delivered by hand or registered or certified mail and shall be deemed given when delivered in person or, if mailed, on the second business day after the date of the mailing. Any notice hereunder shall be sufficient if given to either Advertiser or Agency.
(g) If any provision of this agreement shall be adjudged by a court to be void or unenforceable, such adjudication shall not affect the validity or enforceability of any other provision of this agreement.
(h) The provisions hereof constitute the entire agreement between the parties and supersede any and all other transactions, negotiations, or representations whatsoever as to the broadcast or announcements, or the parties' rights and obligations hereunder, and shall not be modified except in writing.
(i) This Station does not discriminate in the sale of advertising time, and will accept no advertising which is placed with an intent to discriminate on the basis of race, gender or ethnicity.  Advertiser hereby certifies that it is not buying broadcasting air time under this advertising sales agreement for a discriminatory purpose, including but not limited to decisions not to place advertising on particular stations on the basis of race, gender, national origin or ancestry.
STANDARD TERMS AND CONDITIONS

5/3/2011

**Cumulus-Lake Charles**                                                                 **KYKZ-FM**

## Cumulus Sales Order

| | |
|---|---|
| Advertiser **Postlethwaite and Netterville** | New / Revision **New** |
| Agency | Start Date **07/02/12** |
| | End Date **07/08/12** |
| Bill To **Postlethwaite and Netterville** | Month Type **Calendar** |
| **8550 United Plaza Blvd** | Billing Cycle **End of Flight** |
| **Suite 1001** | |
| **Baton Rouge, LA 70809** | Co-op **No** |
| Account | Co-op Product |
| Executive **Tebble, KAM Robertson** | Notarized **N** |
| Contract # | # of Invoices **1** |
| Estimate # **FEMA Trailer Class Action Law Suit** | Make Goods **Ask AE** |
| Description | Income Type **Local Direct - 40100** |
| Stratus # **372770** | Local Income Type **Local Direct** |
| Special | Competitive Code **Accounting / Tax Services**   **Advt#279811** |
| Instructions | |
| Contact **Cody Passman  225-922-4600** | Order Entered **06/26/12** |

## Schedule

| # | Sponsor Log Name Revenue Types | Length Rate Line# | Start Date End Date | Start time End time | Auto Weekly | #/Wk | M | T | W | T | F | S | S | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | 60 | 07/03/12 | 6:00AM | | | | | | | | | | 240.00 |
| | Postlethwaite and Netterville | 60.00 | 07/06/12 | 10:00AM | N | | 1 | 1 | 1 | 1 | | | | 4 Spots |
| | Local Direct - 40100 / Local Direct | 2382866 | All Weeks | | | | | | | | | | | REVISED |
| 2 | | 60 | 07/03/12 | 10:00AM | | | | | | | | | | 240.00 |
| | Postlethwaite and Netterville | 60.00 | 07/06/12 | 3:00PM | N | | 1 | 1 | 1 | 1 | | | | 4 Spots |
| | Local Direct - 40100 / Local Direct | 2382867 | All Weeks | | | | | | | | | | | REVISED |
| 3 | | 60 | 07/03/12 | 3:00PM | | | | | | | | | | 240.00 |
| | Postlethwaite and Netterville | 60.00 | 07/06/12 | 7:00PM | N | | 1 | 1 | 1 | 1 | | | | 4 Spots |
| | Local Direct - 40100 / Local Direct | 2382868 | All Weeks | | | | | | | | | | | REVISED |
| 4 | | 60 | 07/07/12 | 6:00AM | | | | | | | | | | 74.00 |
| | Postlethwaite and Netterville | 37.00 | 07/08/12 | 10:00AM | N | | | | | | | 1 | 1 | 2 Spots |
| | Local Direct - 40100 / Local Direct | 2382869 | All Weeks | | | | | | | | | | | REVISED |
| 5 | | 60 | 07/07/12 | 10:00AM | | | | | | | | | | 74.00 |
| | Postlethwaite and Netterville | 37.00 | 07/08/12 | 3:00PM | N | | | | | | | 1 | 1 | 2 Spots |
| | Local Direct - 40100 / Local Direct | 2382870 | All Weeks | | | | | | | | | | | REVISED |
| 6 | | 60 | 07/07/12 | 3:00PM | | | | | | | | | | 74.00 |
| | Postlethwaite and Netterville | 37.00 | 07/08/12 | 7:00PM | N | | | | | | | 1 | 1 | 2 Spots |
| | Local Direct - 40100 / Local Direct | 2382871 | All Weeks | | | | | | | | | | | REVISED |

| | | | | | |
|---|---|---|---|---|---|
| Jul 12 = 942.00 | Aug 12 = 0.00 | Sep 12 = 0.00 | Oct 12 = 0.00 | Nov 12 = 0.00 | Dec 12 = 0.00 |
| Jan 13 = 0.00 | Feb 13 = 0.00 | Mar 13 = 0.00 | Apr 13 = 0.00 | May 13 = 0.00 | Jun 13 = 0.00 |

**Total Contract Value: 942.00     Total Due: 942.00     18 Spots**

**Client Acceptance:** _____  **Date:** _____

**Account Executive:** 6/26/2012 5:55:10 PM by Tebble, KAM Robertson

**Sales / Market Manager:**

**Business Manager:**

**Traffic Manager:**                                                            V 5.0

**ALL ORDERS SUBJECT TO THE STANDARD TERMS AND CONDITIONS ATTACHED HERETO**

Please mail pymt to:

Tebble Robertson.

Cumulus Media

425 Broad St

Lake Charles LA 70605.

STANDARD TERMS AND CONDITIONS

1. PARTIES

For purposes of this agreement:
(a) "Station" shall refer to radio stations owned and operated by Cumulus Broadcasting LLC and/or Cumulus Media Partners LLC, the licensee(s), which will broadcast the announcements or programs as provided for hereunder.
(b) "Advertiser" shall mean the person, firm, or corporation whose goods, services, or the like are the subject(s) of the radio time contracted for herein.
(c) "Agency" shall mean the advertising agency, if any, that authorized the purchase of radio time from the Station.
(d) "Advertiser/Agency" shall mean "Advertiser" if an agency is not involved with this agreement, and shall mean "Advertiser and/or Agency" if an agency is involved with this agreement.

2. AGENCY AS AGENT FOR ADVERTISER

Agency acknowledges and represents that it is acting as an agent for and on behalf of Advertiser. Agency further acknowledges and represents that it has actual authority to enter into this agreement for and on behalf of Advertiser. If an agency is involved with this agreement, Agency and Advertiser shall be jointly and severally liable for all payments to be made to Station under this agreement.

3. PAYMENT AND BILLING

(a) Station will invoice Advertiser/Agency not less than monthly.
(b) Station's invoices for broadcasts, announcements, or other services provided under this agreement shall be deemed correct unless proven otherwise, and shall be, in the case of broadcasts or announcements, based on Station's log.
(c) Upon Advertiser's/Agency's request, Station shall furnish an affidavit or certification of performance at the time of billing. Unless the request is received prior to billing, the request for an affidavit or certification of performance shall not act as a condition precedent to any payment or the time of any payment called for under this agreement.
(d) Payment by Advertiser/Agency is due on receipt of invoice and is considered past due at 30 days. Payments not made within 30 days shall bear interest at the rate of 1½ percent per month or the maximum amount permitted by law, if less than 1½ percent per month. If Advertiser/Agency fails to make payments as provided for herein, or if Advertiser/Agency fails to comply with any other provision of this agreement, notwithstanding any other contract provision, Station shall have the right, in addition to any other rights it may have, without notice, to cancel or suspend any broadcasting or to cancel this agreement. Station reserves the right to revoke any agency commission, in whole or in part, in the event that payments are not made as provided for herein.

4. TERMINATION

Either party may terminate this agreement by giving the other party 14 days prior written notice. If Advertiser/Agency so terminates this agreement, it shall pay Station at the rate on which this agreement is based up to the effective date of termination. If Station so terminates this agreement, Advertiser/Agency will either agree with Station on a satisfactory substitute day or time for continuance of the broadcast or announcements covered by this agreement at the rates on which this agreement is based for such substitute time, or if no such agreement can be reached, Advertiser/Agency will pay Station according to the rates specified herein for all broadcasts or announcements previously rendered by Station. Station may terminate this agreement at any time upon breach by Advertiser/Agency. In the event of termination hereunder, neither party shall be liable to the other party otherwise than as specified in this agreement.

5. SUBSTITUTION OF PROGRAMS OF PUBLIC IMPORTANCE OR IN THE PUBLIC INTEREST

(a) Station shall have the right to cancel any broadcast or announcement or any portion thereof covered by this agreement in order to broadcast any program that Station, in its absolute discretion, deems to be of public importance or in the public interest. In such case, Station will notify Advertiser/Agency in advance, if reasonably possible, but if not, within a reasonable time after such broadcast or announcement has been canceled.
(b) In the event that any broadcast or announcement is canceled under paragraph 5(a) above, Advertiser/Agency and Station will agree on a satisfactory substitute day and time for the broadcast or announcement, or if no such agreement can be reached within 7 days after notice of cancellation, the broadcast or announcement will be considered canceled without affecting the rates or rights provided under this agreement, except that Advertiser/Agency shall not be required to pay for the cancelled broadcast or announcement.

6. FAILURE TO BROADCAST

If, due to public emergency or necessity, restrictions imposed by law, acts of God, labor disputes, or for any other cause, including mechanical, electronic or technical breakdowns beyond Station's control, there is an interruption or omission of any program or commercial announcement contracted to be broadcast hereunder, Station shall not be in breach hereof, but upon agreement with Advertiser/Agency, Station shall substitute a reasonable equivalent date and time for the broadcast of the interrupted or omitted program or commercial announcement. If no such substitute time is available or agreed upon between the parties, the time charges allocable to the interrupted or omitted program or commercial announcement will be waived.

7. RATE PROTECTION

Station reserves the right at any time, upon 30-days written notice, to change the rates, discounts, or charges hereunder.

8. COMMERCIAL MATERIALS; INDEMNIFICATION

(a) This agreement is not exclusive as to Advertiser's business, products, or services and Station remains free to solicit and broadcast programs or announcements of other advertisers whether or not they are in competition with Advertiser's business, products, or services. All commercial materials, audio or video tapes, programs, or other similar materials shall be furnished and delivered to Station at Advertiser's/Agency's sole expense. Such materials, together with any instructions pertaining thereto, shall be delivered at least 48 hours in advance of the scheduled broadcast or announcement. All materials furnished for broadcast shall not be contrary to the public interest and shall conform to Station's then-existing program and operating policy and quality standards, and are subject to Station's prior approval and continuing right to reject or require editing of such materials. No advertising matter, announcement, or program that may be deemed, in the Station's sole discretion, injurious or prejudicial to the public's interest, the Station, or honest advertising and reputable business in general will be accepted. Station may destroy or dispose of any commercial material 60 days after the last broadcast hereunder, unless otherwise instructed in writing by Advertiser/Agency.
(b) Notwithstanding Station's approval rights in paragraph 8(a), Advertiser/ Agency shall indemnify and hold Station, its agents, employees, and officers harmless from and against all claims, damages, obligations, liabilities, costs and expenses, including attorneys' fees, that arise out of or result from any broadcast, preparation of any broadcast, or contemplated broadcast of materials furnished by or on behalf of Advertiser/Agency, or furnished by Station at Advertiser's/ Agency's request for use in connection with commercial material, including but not limited to those arising out of or that result from libel, slander, invasion of privacy rights, or infringement of any proprietary rights. Advertiser/Agency warrants that all materials furnished to Station truly represent Advertiser's business, products, or services and will be free from false claims or assertions. This paragraph 8(b) shall survive cancellation or termination of this agreement.

9. DISPUTES

Any discrepancy, dispute, or disagreement by Advertiser/Agency with any broadcast, announcement, program, or other service provided by Station hereunder or related to the amount charged by Station for same shall be reported to Station in writing within 20 days from the date of the invoice relating to same, time being of the essence. Failure to report such discrepancy, dispute, or disagreement in writing within such time shall constitute a waiver of all claims by Advertiser/Agency arising out of or related to such discrepancy, dispute, or disagreement.

10. GENERAL

(a) This agreement is subject to the terms of the licenses held by Station and is further subject to all federal, state, and municipal laws and regulations now in force or that may be enacted in the future, including but not limited to the Rules and Regulations of the Federal Communications Commission and its decisions, actions, and orders when acting under its quasi-legislative powers.
(b) This agreement, including the rights and obligations under it, may not be assigned or transferred without first obtaining Station's written consent, nor may Station be required to broadcast hereunder for the benefit of any Advertiser/ Agency other than those named on the face of this agreement.
(c) In the event of a breach by Station, Advertiser's/Agency's exclusive remedy therefore shall be a credit for substituted advertising time of equal value, and in no event shall Station be liable for any consequential, incidental, or punitive damages, or monetary damages of any type.
(d) This agreement shall be construed under and according to the laws of the State in which the Station's main studio is located. All parties hereto agree that in any action brought to enforce the obligation or right of any party hereunder, each party consents to personal jurisdiction and venue in any court of appropriate jurisdiction in the county or parish where the Station's main studio is located.
(e) If it becomes necessary for Station to place Advertiser's/Agency's account with an attorney or collection agency for the purpose of enforcing its rights hereunder, Advertiser/Agency shall be liable to Station for reasonable attorneys' fees, costs, and expenses.
(f) All notices hereunder shall be in writing and delivered by hand or registered or certified mail and shall be deemed given when delivered in person or, if mailed, on the second business day after the date of the mailing. Any notice hereunder shall be sufficient if given to either Advertiser or Agency.
(g) If any provision of this agreement shall be adjudged by a court to be void or unenforceable, such adjudication shall not affect the validity or enforceability of any other provision of this agreement.
(h) The provisions hereof constitute the entire agreement between the parties and supersede any and all other transactions, negotiations, or representations whatsoever as to the broadcast or announcements, or the parties' rights and obligations hereunder, and shall not be modified except in writing.
(i) This Station does not discriminate in the sale of advertising time, and will accept no advertising which is placed with an intent to discriminate on the basis of race, gender or ethnicity. Advertiser hereby certifies that it is not buying broadcasting air time under this advertising sales agreement for a discriminatory purpose, including but not limited to decisions not to place advertising on particular stations on the basis of race, gender, national origin or ancestry.

STANDARD TERMS AND CONDITIONS

5/3/2011

**Cumulus-Lake Charles**                                                                 **KQLK-FM**

## Cumulus Sales Order

| | |
|---|---|
| Advertiser **Postlethwaite and Netterville** | New / Revision **New** |
| Agency | Start Date **07/02/12** |
| | End Date **07/08/12** |
| Bill To **Postlethwaite and Netterville** | Month Type **Calendar** |
| **8550 United Plaza Blvd** | Billing Cycle **End of Flight** |
| **Suite 1001** | |
| **Baton Rouge, LA 70809** | Co-op **No** |
| Account | Co-op Product |
| Executive **Tebble, KAM Robertson** | Notarized **N** |
| Contract # | # of Invoices **1** |
| Estimate # **FEMA Trailer Class Action Law Suit** | Make Goods **Ask AE** |
| Description | Income Type **Local Direct - 40100** |
| Stratus # **372769** | Local Income Type **Local Direct** |
| Special Instructions | Competitive Code **Accounting / Tax Services**   **Advt#279811** |
| Contact **Cody Passman 225-922-4600** | Order Entered **06/26/12** |

## Schedule

| # | Sponsor Log Name Revenue Types | Length Rate | Start Date End Date Line# | Start time End time | Auto Weekly | # Wk | M | T | W | T | F | S | S | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | 60 | 07/03/12 | 6:00AM | | | | | | | | | | 88.00 |
| | Postlethwaite and Netterville | 22.00 | 07/06/12 | 10:00AM | N | | 1 | 1 | 1 | 1 | | | | 4 Spots |
| | Local Direct - 40100 / Local Direct | 2382860 | All Weeks | | | | | | | | | | | REVISED |
| 2 | | 60 | 07/03/12 | 10:00AM | | | | | | | | | | 88.00 |
| | Postlethwaite and Netterville | 22.00 | 07/06/12 | 3:00PM | N | | 1 | 1 | 1 | 1 | | | | 4 Spots |
| | Local Direct - 40100 / Local Direct | 2382861 | All Weeks | | | | | | | | | | | REVISED |
| 3 | | 60 | 07/03/12 | 3:00PM | | | | | | | | | | 88.00 |
| | Postlethwaite and Netterville | 22.00 | 07/06/12 | 7:00PM | N | | 1 | 1 | 1 | 1 | | | | 4 Spots |
| | Local Direct - 40100 / Local Direct | 2382862 | All Weeks | | | | | | | | | | | REVISED |
| 4 | | 60 | 07/07/12 | 6:00AM | | | | | | | | 1 | 1 | 36.00 |
| | Postlethwaite and Netterville | 18.00 | 07/08/12 | 10:00AM | N | | | | | | | 1 | 1 | 2 Spots |
| | Local Direct - 40100 / Local Direct | 2382863 | All Weeks | | | | | | | | | | | REVISED |
| 5 | | 60 | 07/07/12 | 10:00AM | | | | | | | | 1 | 1 | 36.00 |
| | Postlethwaite and Netterville | 18.00 | 07/08/12 | 3:00PM | N | | | | | | | 1 | 1 | 2 Spots |
| | Local Direct - 40100 / Local Direct | 2382864 | All Weeks | | | | | | | | | | | REVISED |
| 6 | | 60 | 07/07/12 | 3:00PM | | | | | | | | 1 | 1 | 36.00 |
| | Postlethwaite and Netterville | 18.00 | 07/08/12 | 7:00PM | N | | | | | | | 1 | 1 | 2 Spots |
| | Local Direct - 40100 / Local Direct | 2382865 | All Weeks | | | | | | | | | | | REVISED |

| | | | | | |
|---|---|---|---|---|---|
| Jul 12 = 372.00 | Aug 12 = 0.00 | Sep 12 = 0.00 | Oct 12 = 0.00 | Nov 12 = 0.00 | Dec 12 = 0.00 |
| Jan 13 = 0.00 | Feb 13 = 0.00 | Mar 13 = 0.00 | Apr 13 = 0.00 | May 13 = 0.00 | Jun 13 = 0.00 |

Total Contract Value: 372.00     Total Due: 372.00     18 Spots

Client Acceptance: _____     Date: _____

Account Executive:     6/26/2012 5:54:57 PM by Tebble, KAM Robertson

Sales / Market Manager:

Business Manager:

Traffic Manager:     V 5.0

ALL ORDERS SUBJECT TO THE STANDARD TERMS AND CONDITIONS ATTACHED HERETO

STANDARD TERMS AND CONDITIONS
1. PARTIES
For purposes of this agreement:
(a) "Station" shall refer to radio stations owned and operated by Cumulus Broadcasting LLC and/or Cumulus Media Partners LLC, the licensee(s), which will broadcast the announcements or programs as provided for hereunder.
(b) "Advertiser" shall mean the person, firm, or corporation whose goods, services, or the like are the subject(s) of the radio time contracted for herein.
(c) "Agency" shall mean the advertising agency, if any, that authorized the purchase of radio time from the Station.
(d) "Advertiser/Agency" shall mean "Advertiser" if an agency is not involved with this agreement, and shall mean "Advertiser and/or Agency" if an agency is involved with this agreement.
2. AGENCY AS AGENT FOR ADVERTISER
Agency acknowledges and represents that it is acting as an agent for and on behalf of Advertiser. Agency further acknowledges and represents that it has actual authority to enter into this agreement for and on behalf of Advertiser. If an agency is involved with this agreement, Agency and Advertiser shall be jointly and severally liable for all payments to be made to Station under this agreement.
3. PAYMENT AND BILLING
(a) Station will invoice Advertiser/Agency not less than monthly.
(b) Station's invoices for broadcasts, announcements, or other services provided under this agreement shall be deemed correct unless proven otherwise, and shall be, in the case of broadcasts or announcements, based on Station's log.
(c) Upon Advertiser's/Agency's request, Station shall furnish an affidavit or certification of performance at the time of billing. Unless the request is received prior to billing, the request for an affidavit or certification of performance shall not act as a condition precedent to any payment or the time of any payment called for under this agreement.
(d) Payment by Advertiser/Agency is due on receipt of invoice and is considered past due at 30 days. Payments not made within 30 days shall bear interest at the rate of 1½ percent per month or the maximum amount permitted by law, if less than 1½ percent per month. If Advertiser/Agency fails to make payments as provided for herein, or if Advertiser/Agency fails to comply with any other provision of this agreement, notwithstanding any other contract provision, Station shall have the right, in addition to any other rights it may have, without notice, to cancel or suspend any broadcasting or to cancel this agreement. Station reserves the right to revoke any agency commission, in whole or in part, in the event that payments are not made as provided for herein.
4. TERMINATION
Either party may terminate this agreement by giving the other party 14 days prior written notice. If Advertiser/Agency so terminates this agreement, it shall pay Station at the rate on which this agreement is based up to the effective date of termination. If Station so terminates this agreement, Advertiser/Agency will either agree with Station on a satisfactory substitute day or time for continuance of the broadcast or announcements covered by this agreement at the rates on which this agreement is based for such substitute time, or if no such agreement can be reached, Advertiser/Agency will pay Station according to the rates specified herein for all broadcasts or announcements previously rendered by Station. Station may terminate this agreement at any time upon breach by Advertiser/Agency. In the event of termination hereunder, neither party shall be liable to the other party otherwise than as specified in this agreement.
5. SUBSTITUTION OF PROGRAMS OF PUBLIC IMPORTANCE OR IN THE PUBLIC INTEREST
(a) Station shall have the right to cancel any broadcast or announcement or any portion thereof covered by this agreement in order to broadcast any program that Station, in its absolute discretion, deems to be of public importance or in the public interest. In such case, Station will notify Advertiser/Agency in advance, if reasonably possible, but if not, within a reasonable time after such broadcast or announcement has been canceled.
(b) In the event that any broadcast or announcement is canceled under paragraph 5(a) above, Advertiser/Agency and Station will agree on a satisfactory substitute day and time for the broadcast or announcement, or if no such agreement can be reached within 7 days after notice of cancellation, the broadcast or announcement will be considered canceled without affecting the rates or rights provided under this agreement, except that Advertiser/Agency shall not be required to pay for the cancelled broadcast or announcement.
6. FAILURE TO BROADCAST
If, due to public emergency or necessity, restrictions imposed by law, acts of God, labor disputes, or for any other cause, including mechanical, electronic or technical breakdowns beyond Station's control, there is an interruption or omission of any program or commercial announcement contracted to be broadcast hereunder, Station shall not be in breach hereof, but upon agreement with Advertiser/Agency, Station shall substitute a reasonable equivalent date and time for the broadcast of the interrupted or omitted program or commercial announcement. If no such substitute time is available or agreed upon between the parties, the time charges allocable to the interrupted or omitted program or commercial announcement will be waived.

7. RATE PROTECTION
Station reserves the right at any time, upon 30-days written notice, to change the rates, discounts, or charges hereunder.
8. COMMERCIAL MATERIALS; INDEMNIFICATION
(a) This agreement is not exclusive as to Advertiser's business, products, or services and Station remains free to solicit and broadcast programs or announcements of other advertisers whether or not they are in competition with Advertiser's business, products, or services. All commercial materials, audio or video tapes, programs, or other similar materials shall be furnished and delivered to Station at Advertiser's/Agency's sole expense. Such materials, together with any instructions pertaining thereto, shall be delivered at least 48 hours in advance of the scheduled broadcast or announcement. All materials furnished for broadcast shall not be contrary to the public interest and shall conform to Station's then-existing program and operating policy and quality standards, and are subject to Station's prior approval and continuing right to reject or require editing of such materials. No advertising matter, announcement, or program that may be deemed, in the Station's sole discretion, injurious or prejudicial to the public's interest, the Station, or honest advertising and reputable business in general will be accepted. Station may destroy or dispose of any commercial material 60 days after the last broadcast hereunder. unless otherwise instructed in writing by Advertiser/Agency.
(b) Notwithstanding Station's approval rights in paragraph 8(a), Advertiser/ Agency shall indemnify and hold Station, its agents, employees, and officers harmless from and against all claims, damages, obligations, liabilities, costs and expenses, including attorneys' fees, that arise out of or result from any broadcast, preparation of any broadcast, or contemplated broadcast of materials furnished by or on behalf of Advertiser/Agency, or furnished by Station at Advertiser's/ Agency's request for use in connection with commercial material, including but not limited to those arising out of or that result from libel, slander, invasion of privacy rights, or infringement of any proprietary rights. Advertiser/Agency warrants that all materials furnished to Station truly represent Advertiser's business, products, or services and will be free from false claims or assertions. This paragraph 8(b) shall survive cancellation or termination of this agreement.
9. DISPUTES
Any discrepancy, dispute, or disagreement by Advertiser/Agency with any broadcast, announcement, program, or other services provided by Station hereunder or relating to the amount charged by Station for same shall be reported to Station in writing within 20 days from the date of the invoice relating to same, time being of the essence. Failure to report such discrepancy, dispute, or disagreement in writing within such time shall constitute a waiver of all claims by Advertiser/Agency arising out of or related to such discrepancy, dispute, or disagreement.
10. GENERAL
(a) This agreement is subject to the terms of the licenses held by Station and is further subject to all federal, state, and municipal laws and regulations now in force or that may be enacted in the future, including but not limited to the Rules and Regulations of the Federal Communications Commission and its decisions, actions, and orders when acting under its quasi-legislative powers.
(b) This agreement, including the rights and obligations under it, may not be assigned or transferred without first obtaining Station's written consent, nor may Station be required to broadcast hereunder for the benefit of any Advertiser/ Agency other than those named on the face of this agreement.
(c) In the event of a breach by Station, Advertiser's/Agency's exclusive remedy therefore shall be a credit for substituted advertising time of equal value, and in no event shall Station be liable for any consequential, incidental, or punitive damages, or monetary damages of any type.
(d) This agreement shall be construed under and according to the laws of the State in which the Station's main studio is located. All parties hereto agree that in any action brought to enforce the obligation or right of any party hereunder, each party consents to personal jurisdiction and venue in any court of appropriate jurisdiction in the county or parish where the Station's main studio is located.
(e) If it becomes necessary for Station to place Advertiser's/Agency's account with an attorney or collection agency for the purpose of enforcing its rights hereunder, Advertiser/Agency shall be liable to Station for reasonable attorneys' fees, costs, and expenses.
(f) All notices hereunder shall be in writing and delivered by hand or registered or certified mail and shall be deemed given when delivered in person or, if mailed, on the second business day after the date of the mailing. Any notice hereunder shall be sufficient if given to either Advertiser or Agency.
(g) If any provision of this agreement shall be adjudged by a court to be void or unenforceable, such adjudication shall not affect the validity or enforceability of any other provision of this agreement.
(h) The provisions hereof constitute the entire agreement between the parties and supersede any and all other transactions, negotiations, or representations whatsoever as to the broadcast or announcements, or the parties' rights and obligations hereunder, and shall not be modified except in writing.
(i) This Station does not discriminate in the sale of advertising time, and will accept no advertising which is placed with an intent to discriminate on the basis of race, gender or ethnicity. Advertiser hereby certifies that it is not buying broadcasting air time under this advertising sales agreement for a discriminatory purpose, including but not limited to decisions not to place advertising on particular stations on the basis of race, gender, national origin or ancestry.
STANDARD TERMS AND CONDITIONS

5/3/2011

**Lafayette**                                                                **KNEK-FM-AM**

## Cumulus Sales Order

| | |
|---|---|
| Advertiser **Postlethwait & Netterville APAC** | New / Revision **New** |
| Agency | Start Date **07/03/12** |
| | End Date **07/08/12** |
| Bill To **Postlethwait & Netterville APAC** | Month Type **Calendar** |
| **8550 United Plaza Blvd** | Billing Cycle **End of Flight** |
| | Co-op **No** |
| **Baton Rouge, La 70809** | Co-op Product |
| Account | Notarized **N** |
| Executive **Ronald Begnaud** | # of Invoices **1** |
| Contract # | Make Goods **Ask AE** |
| Estimate # | Income Type **Local Direct - 40100** |
| Description **FEMA TRAILER CLASS ACTION** | Local Income Type **New Local Direct** |
| Stratus # **3598** | Competitive Code **Legal Services**  **Advt#1000** |
| Special **Check number 028869 received and turned in** | |
| Instructions | |
| Contact **Cody Passman  225-922-4600** | Order Entered **06/28/12** |

## Schedule

| # | | Recording | Dates | Schedule Times | N | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | 60 | 07/03/12 | 6:00AM | | | | | | | 280.00 |
| | Postlethwait & Netterville APAC | 70.00 | 07/06/12 | 10:00AM | N | 1 | 1 | 1 | 1 | | 4 Spots |
| | Local Direct - 40100 / New Local Direct | 17424 | All Weeks | | | | | | | | REVISED |
| 2 | | 60 | 07/03/12 | 10:00AM | | | | | | | 280.00 |
| | Postlethwait & Netterville APAC | 70.00 | 07/07/12 | 3:00PM | N | 1 | 1 | 1 | 1 | | 4 Spots |
| | Local Direct - 40100 / New Local Direct | 17425 | All Weeks | | | | | | | | REVISED |
| 3 | | 60 | 07/03/12 | 3:00PM | | | | | | | 280.00 |
| | Postlethwait & Netterville APAC | 70.00 | 07/06/12 | 7:00PM | N | 1 | 1 | 1 | 1 | | 4 Spots |
| | Local Direct - 40100 / New Local Direct | 17426 | All Weeks | | | | | | | | REVISED |
| 4 | | 60 | 07/07/12 | 6:00AM | | | | | | | 35.00 |
| | Postlethwait & Netterville APAC | 35.00 | 07/07/12 | 10:00AM | N | | | | | 1 | 1 Spots |
| | Local Direct - 40100 / New Local Direct | 17427 | All Weeks | | | | | | | | REVISED |
| 5 | | 60 | 07/07/12 | 10:00AM | | | | | | | 35.00 |
| | Postlethwait & Netterville APAC | 35.00 | 07/07/12 | 3:00PM | N | | | | | 1 | 1 Spots |
| | Local Direct - 40100 / New Local Direct | 17428 | All Weeks | | | | | | | | REVISED |
| 6 | | 60 | 07/07/12 | 3:00PM | | | | | | | 35.00 |
| | Postlethwait & Netterville APAC | 35.00 | 07/07/12 | 7:00PM | N | | | | | 1 | 1 Spots |
| | Local Direct - 40100 / New Local Direct | 17429 | All Weeks | | | | | | | | REVISED |
| 7 | | 60 | 07/08/12 | 6:00AM | | | | | | | 30.00 |
| | Postlethwait & Netterville APAC | 30.00 | 07/08/12 | 10:00AM | N | | | | | 1 | 1 Spots |
| | Local Direct - 40100 / New Local Direct | 17430 | All Weeks | | | | | | | | REVISED |
| 8 | | 60 | 07/08/12 | 10:00AM | | | | | | | 30.00 |
| | Postlethwait & Netterville APAC | 30.00 | 07/08/12 | 3:00PM | N | | | | | 1 | 1 Spots |
| | Local Direct - 40100 / New Local Direct | 17431 | All Weeks | | | | | | | | REVISED |

| 9 | | 60 | 07/08/12 | 3:00PM | | | | | | | | | 30.00 |
| | Postlethwait & Netterville APAC | 30.00 | 07/08/12 | 7:00PM | N | | | | | | | 1 | 1 Spots |
| | Local Direct - 40100 / New Local Direct | 17432 | All Weeks | | | | | | | | | | REVISED |

| Jul 12 = 1035.00 | Aug 12 = 0.00 | Sep 12 = 0.00 | Oct 12 = 0.00 | Nov 12 = 0.00 | Dec 12 = 0.00 |
| Jan 13 = 0.00 | Feb 13 = 0.00 | Mar 13 = 0.00 | Apr 13 = 0.00 | May 13 = 0.00 | Jun 13 = 0.00 |

**Total Contract Value: 1035.00     Total Due: 1035.00     18 Spots**

Client Acceptance: _____     Date: _____

Account Executive:     6/28/2012 4:40:44 PM by Ronald Begnaud

Sales / Market Manager:

Business Manager:

Traffic Manager:                                                                   V 5.0

**ALL ORDERS SUBJECT TO THE STANDARD TERMS AND CONDITIONS ATTACHED HERETO**

STANDARD TERMS AND CONDITIONS

**1. PARTIES**

For purposes of this agreement:

(a) "Station" shall refer to radio stations owned and operated by Cumulus Broadcasting LLC and/or Cumulus Media Partners LLC, the licensee(s), which will broadcast the announcements or programs as provided for herein.

(b) "Advertiser" shall mean the person, firm, or corporation whose goods, services, or the like are the subject(s) of the radio time contracted for herein.

(c) "Agency" shall mean the advertising agency, if any, that authorized the purchase of radio time from the Station.

(d) "Advertiser/Agency" shall mean "Advertiser" if an agency is not involved with this agreement, and shall mean "Advertiser and/or Agency" if an agency is involved with this agreement.

**2. AGENCY AS AGENT FOR ADVERTISER**

Agency acknowledges and represents that it is acting as an agent for and on behalf of Advertiser. Agency further acknowledges and represents that it has actual authority to enter into this agreement for and on behalf of Advertiser. If an agency is involved with this agreement, Agency and Advertiser shall be jointly and severally liable for all payments to be made to Station under this agreement.

**3. PAYMENT AND BILLING**

(a) Station will invoice Advertiser/Agency not less than monthly.

(b) Station's invoices for broadcasts, announcements, or other services provided under this agreement shall be deemed correct unless proven otherwise, and shall be, in the case of broadcasts or announcements, based on Station's log.

(c) Upon Advertiser's/Agency's request, Station shall furnish an affidavit or certification of performance at the time of billing. Unless the request is received prior to billing, the request for an affidavit or certification of performance shall not act as a condition precedent to any payment or the time of any payment called for under this agreement.

(d) Payment by Advertiser/Agency is due on receipt of invoice and is considered past due at 30 days. Payments not made within 30 days shall bear interest at the rate of 1½ percent per month or the maximum amount permitted by law, if less than 1½ percent per month. If Advertiser/Agency fails to make payments as provided for herein, or if Advertiser/Agency fails to comply with any other provision of this agreement, notwithstanding any other contract provision, Station shall have the right, in addition to any other rights it may have, without notice, to cancel or suspend any broadcasting or to cancel this agreement. Station reserves the right to revoke any agency commission, in whole or in part, in the event that payments are not made as provided for herein.

**4. TERMINATION**

Either party may terminate this agreement by giving the other party 14 days prior written notice. If Advertiser/Agency so terminates this agreement, it shall pay Station at the rate on which this agreement is based up to the effective date of termination. If Station so terminates this agreement, Advertiser/Agency will either agree with Station on a satisfactory substitute day or time for continuance of the broadcast or announcements covered by this agreement at the rates on which this agreement is based for such substitute time, or if no such agreement can be reached, Advertiser/Agency will pay Station according to the rates specified herein for all broadcasts or announcements previously rendered by Station. Station may terminate this agreement at any time upon breach by Advertiser/Agency. In the event of termination hereunder, neither party shall be liable to the other party otherwise than as specified in this agreement.

**5. SUBSTITUTION OF PROGRAMS OF PUBLIC IMPORTANCE OR IN THE PUBLIC INTEREST**

(a) Station shall have the right to cancel any broadcast or announcement or any portion thereof covered by this agreement in order to broadcast any program that Station, in its absolute discretion, deems to be of public importance or in the public interest. In such case, Station will notify Advertiser/Agency in advance, if reasonably possible, but if not, within a reasonable time after such broadcast of announcement has been canceled.

(b) In the event that any broadcast or announcement is canceled under paragraph 5(a) above, Advertiser/Agency and Station will agree on a satisfactory substitute day and time for the broadcast or announcement, or if no such agreement can be reached within 7 days after notice of cancellation, the broadcast or announcement will be considered canceled without affecting the rates or rights provided under this agreement, except that Advertiser/Agency shall not be required to pay for the cancelled broadcast or announcement.

**6. FAILURE TO BROADCAST**

If, due to public emergency or necessity, restrictions imposed by law, acts of God, labor disputes, or for any other cause, including mechanical, electronic or technical breakdowns beyond Station's control, there is an interruption or omission of any program or commercial announcement contracted to be broadcast hereunder, Station shall not be in breach hereof, but upon agreement with Advertiser/Agency, Station shall substitute a reasonable equivalent date and time for the broadcast of the interrupted or omitted program or commercial announcement. If no such substitute time is available or agreed upon between the parties, the time charges allocable to the interrupted or omitted program or commercial announcement will be waived.

**7. RATE PROTECTION**

Station reserves the right at any time, upon 30-days written notice, to change the rates, discounts, or charges hereunder.

**8. COMMERCIAL MATERIALS; INDEMNIFICATION**

(a) This agreement is not exclusive as to Advertiser's business, products, or services and Station remains free to solicit and broadcast programs or announcements of other advertisers whether or not they are in competition with Advertiser's business, products, or services. All commercial materials, audio or video tapes, programs, or other similar materials shall be furnished and delivered to Station at Advertiser's/Agency's sole expense. Such materials, together with any instructions pertaining thereto, shall be delivered at least 48 hours in advance of the scheduled broadcast or announcement. All materials furnished for broadcast shall not be contrary to the public interest and shall conform to Station's then-existing program and operating policy and quality standards, and are subject to Station's prior approval and continuing right to reject or require editing of such materials. No advertising matter, announcement, or program that may be deemed, in the Station's sole discretion, injurious or prejudicial to the public's interest, the Station, or honest advertising and reputable business in general will be accepted. Station may destroy or dispose of any commercial material 60 days after the last broadcast hereunder, unless otherwise instructed in writing by Advertiser/Agency.

(b) Notwithstanding Station's approval rights in paragraph 8(a), Advertiser/ Agency shall indemnify and hold Station, its agents, employees, and officers harmless from and against all claims, damages, obligations, liabilities, costs and expenses, including attorneys' fees, that arise out of or result from any broadcast, preparation of any broadcast, or contemplated broadcast of materials furnished by or on behalf of Advertiser/Agency, or furnished by Station at Advertiser's/ Agency's request for use in connection with commercial material, including but not limited to those arising out of or that result from libel, slander, invasion of privacy rights, or infringement of any proprietary rights. Advertiser/Agency warrants that all materials furnished to Station truly represent Advertiser's business, products, or services and will be free from false claims or assertions. This paragraph 8(b) shall survive cancellation or termination of this agreement.

**9. DISPUTES**

Any discrepancy, dispute, or disagreement by Advertiser/Agency with any broadcast, announcement, program, or other service provided by Station hereunder or related to the amount charged by Station for same shall be reported to Station in writing within 20 days from the date of the invoice relating to same, time being of the essence. Failure to report such discrepancy, dispute, or disagreement in writing within such time shall constitute a waiver of all claims by Advertiser/Agency arising out of or related to such discrepancy, dispute, or disagreement.

**10. GENERAL**

(a) This agreement is subject to the terms of the licenses held by Station and is further subject to all federal, state, and municipal laws and regulations now in force or that may be enacted in the future, including but not limited to the Rules and Regulations of the Federal Communications Commission and its decisions, actions, and orders when acting under its quasi-legislative powers.

(b) This agreement, including the rights and obligations under it, may not be assigned or transferred without first obtaining Station's written consent, nor may Station be required to broadcast hereunder for the benefit of any Advertiser/ Agency other than those named on the face of this agreement.

(c) In the event of a breach by Station, Advertiser's/Agency's exclusive remedy therefore shall be a credit for substituted advertising time of equal value, and in no event shall Station be liable for any consequential, incidental, or punitive damages, or monetary damages of any type.

(d) This agreement shall be construed under and according to the laws of the State in which the Station's main studio is located. All parties hereto agree that in any action brought to enforce the obligation or right of any party hereunder, each party consents to personal jurisdiction and venue in any court of appropriate jurisdiction in the county or parish where the Station's main studio is located.

(e) If it becomes necessary for Station to place Advertiser's/Agency's account with an attorney or collection agency for the purpose of enforcing its rights hereunder, Advertiser/Agency shall be liable to Station for reasonable attorneys' fees, costs, and expenses.

(f) All notices hereunder shall be in writing and delivered by hand or registered or certified mail and shall be deemed given when delivered in person or, if mailed, on the second business day after the date of the mailing. Any notice hereunder shall be sufficient if given to either Advertiser or Agency.

(g) If any provision of this agreement shall be adjudged by a court to be void or unenforceable, such adjudication shall not affect the validity or enforceability of any other provision of this agreement.

(h) The provisions hereof constitute the entire agreement between the parties and supersede any and all other transactions, negotiations, or representations whatsoever as to the broadcast or announcements, or the parties' rights and obligations hereunder, and shall not be modified except in writing.

(i) This Station does not discriminate in the sale of advertising time, and will accept no advertising which is placed with an intent to discriminate on the basis of race, gender or ethnicity. Advertiser hereby certifies that it is not buying broadcasting air time under this advertising sales agreement for a discriminatory purpose, including but not limited to decisions not to place advertising on particular stations on the basis of race, gender, national origin or ancestry.

STANDARD TERMS AND CONDITIONS

5/3/2011

**Lafayette**

**KXKC-FM**

## Cumulus Sales Order

| | | | | |
|---|---|---|---|---|
| Advertiser | **Postlethwait & Netterville APAC** | | New / Revision | **New** |
| Agency | | | Start Date | **07/03/12** |
| | | | End Date | **07/08/12** |
| Bill To | **Postlethwait & Netterville APAC** | | Month Type | **Calendar** |
| | **8550 United Plaza Blvd** | | Billing Cycle | **End of Flight** |
| | **Baton Rouge, La  70809** | | Co-op | **No** |
| Account | | | Co-op Product | |
| Executive | **Ronald Begnaud** | | Notarized | **N** |
| Contract # | | | # of Invoices | **1** |
| Estimate # | | | Make Goods | **Ask AE** |
| Description | **FEMA TRAILER CLASS ACTION** | | Income Type | **Local Direct - 40100** |
| Stratus # | **3599** | | Local Income Type | **New Local Direct** |
| Special Instructions | **Check number 028869 received and turned in** | | Competitive Code | **Legal Services      Advt#1000** |
| Contact | **Cody Passman  225-922-4600** | | Order Entered | **06/28/12** |

## Schedule

| # | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | 60 | 07/03/12 | 6:00AM | | | | | | | | 260.00 |
| | Postlethwait & Netterville APAC | 65.00 | 07/06/12 | 10:00AM | N | 1 | 1 | 1 | 1 | | | 4 Spots |
| | Local Direct - 40100 / New Local Direct | 17433 | All Weeks | | | | | | | | | REVISED |
| 2 | | 60 | 07/03/12 | 10:00AM | | | | | | | | 260.00 |
| | Postlethwait & Netterville APAC | 65.00 | 07/06/12 | 3:00PM | N | 1 | 1 | 1 | 1 | | | 4 Spots |
| | Local Direct - 40100 / New Local Direct | 17434 | All Weeks | | | | | | | | | REVISED |
| 3 | | 60 | 07/03/12 | 3:00PM | | | | | | | | 260.00 |
| | Postlethwait & Netterville APAC | 65.00 | 07/06/12 | 7:00PM | N | 1 | 1 | 1 | 1 | | | 4 Spots |
| | Local Direct - 40100 / New Local Direct | 17435 | All Weeks | | | | | | | | | REVISED |
| 4 | | 60 | 07/07/12 | 6:00AM | | | | | | | | 30.00 |
| | Postlethwait & Netterville APAC | 30.00 | 07/07/12 | 10:00AM | N | | | | | 1 | | 1 Spots |
| | Local Direct - 40100 / New Local Direct | 17436 | All Weeks | | | | | | | | | REVISED |
| 5 | | 60 | 07/07/12 | 10:00AM | | | | | | | | 30.00 |
| | Postlethwait & Netterville APAC | 30.00 | 07/07/12 | 3:00PM | N | | | | | 1 | | 1 Spots |
| | Local Direct - 40100 / New Local Direct | 17437 | All Weeks | | | | | | | | | REVISED |
| 6 | | 60 | 07/07/12 | 3:00PM | | | | | | | | 30.00 |
| | Postlethwait & Netterville APAC | 30.00 | 07/07/12 | 7:00PM | N | | | | | 1 | | 1 Spots |
| | Local Direct - 40100 / New Local Direct | 17438 | All Weeks | | | | | | | | | REVISED |
| 7 | | 60 | 07/08/12 | 6:00AM | | | | | | | | 25.00 |
| | Postlethwait & Netterville APAC | 25.00 | 07/08/12 | 10:00AM | N | | | | | | 1 | 1 Spots |
| | Local Direct - 40100 / New Local Direct | 17439 | All Weeks | | | | | | | | | REVISED |
| 8 | | 60 | 07/08/12 | 10:00AM | | | | | | | | 25.00 |
| | Postlethwait & Netterville APAC | 25.00 | 07/08/12 | 3:00PM | N | | | | | | 1 | 1 Spots |
| | Local Direct - 40100 / New Local Direct | 17440 | All Weeks | | | | | | | | | REVISED |

Page 1

| 9 | | 60 | 07/08/12 | 3:00PM | | | | 25.00 |
|---|---|---|---|---|---|---|---|---|

Postlethwait & Netterville APAC   25.00   07/08/12   7:00PM   N   | | | | | | | 1 |   1 Spots

Local Direct - 40100 / New Local Direct   17441   All Weeks   **REVISED**

| Jul 12 = 945.00 | Aug 12 = 0.00 | Sep 12 = 0.00 | Oct 12 = 0.00 | Nov 12 = 0.00 | Dec 12 = 0.00 |
| Jan 13 = 0.00 | Feb 13 = 0.00 | Mar 13 = 0.00 | Apr 13 = 0.00 | May 13 = 0.00 | Jun 13 = 0.00 |

**Total Contract Value: 945.00    Total Due: 945.00    18 Spots**

**Client Acceptance:** _____    **Date:** _____

**Account Executive:**   6/28/2012 4:42:44 PM by Ronald Begnaud

**Sales / Market Manager:**

**Business Manager:**

**Traffic Manager:**                                                V 5.0

**ALL ORDERS SUBJECT TO THE STANDARD TERMS AND CONDITIONS ATTACHED HERETO**

STANDARD TERMS AND CONDITIONS
1. PARTIES
For purposes of this agreement:
(a) "Station" shall refer to radio stations owned and operated by Cumulus Broadcasting LLC and/or Cumulus Media Partners LLC, the licensee(s), which will broadcast the announcements or programs as provided for hereunder.
(b) "Advertiser" shall mean the person, firm, or corporation whose goods, services, or the like are the subject(s) of the radio time contracted for herein.
(c) "Agency" shall mean the advertising agency, if any, that authorized the purchase of radio time from the Station.
(d) "Advertiser/Agency" shall mean "Advertiser" if an agency is not involved with this agreement, and shall mean "Advertiser and/or Agency" if an agency is involved with this agreement.
2. AGENCY AS AGENT FOR ADVERTISER
Agency acknowledges and represents that it is acting as an agent for and on behalf of Advertiser. Agency further acknowledges and represents that it has actual authority to enter into this agreement for and on behalf of Advertiser. If an agency is involved with this agreement, Agency and Advertiser shall be jointly and severally liable for all payments to be made to Station under this agreement.
3. PAYMENT AND BILLING
(a) Station will invoice Advertiser/Agency not less than monthly.
(b) Station's invoices for broadcasts, announcements, or other services provided under this agreement shall be deemed correct unless proven otherwise, and shall be, in the case of broadcasts or announcements, based on Station's log.
(c) Upon Advertiser's/Agency's request, Station will furnish an affidavit or certification of performance at the time of billing. Unless the request is received prior to billing, the request for an affidavit or certification of performance shall not act as a condition precedent to any payment or the time of any payment called for under this agreement.
(d) Payment by Advertiser/Agency is due on receipt of invoice and is considered past due at 30 days. Payments not made within 30 days shall bear interest at the rate of 1½ percent per month or the maximum amount permitted by law, if less than 1½ percent per month. If Advertiser/Agency fails to make payments as provided for herein, or if Advertiser/Agency fails to comply with any other provision of this agreement, notwithstanding any other contract provision, Station shall have the right, in addition to any other rights it may have, without notice, to cancel or suspend any broadcasting or to cancel this agreement. Station reserves the right to revoke any agency commission, in whole or in part, in the event that payments are not made as provided for herein.
4. TERMINATION
Either party may terminate this agreement by giving the other party 14 days prior written notice. If Advertiser/Agency so terminates this agreement, it shall pay Station at the rate on which this agreement is based up to the effective date of termination. If Station so terminates this agreement, Advertiser/Agency will either agree with Station on a satisfactory substitute day or time for continuance of the broadcast or announcements covered by this agreement at the rates on which this agreement is based for such substitute time, or if no such agreement can be reached, Advertiser/Agency will pay Station according to the rates specified herein for all broadcasts or announcements previously rendered by Station. Station may terminate this agreement at any time upon breach by Advertiser/Agency. In the event of termination hereunder, neither party shall be liable to the other party otherwise than as specified in this agreement.
5. SUBSTITUTION OF PROGRAMS OF PUBLIC IMPORTANCE OR IN THE PUBLIC INTEREST
(a) Station shall have the right to cancel any broadcast or announcement or any portion thereof covered by this agreement in order to broadcast any program that Station, in its absolute discretion, deems to be of public importance or in the public interest. In such case, Station will notify Advertiser/Agency in advance. If reasonably possible, but if not, within a reasonable time after such broadcast or announcement has been canceled.
(b) In the event that any broadcast or announcement is canceled under paragraph 5(a) above, Advertiser/Agency and Station will agree on a satisfactory substitute day and time for the broadcast or announcement, or if no such agreement can be reached within 7 days after notice of cancellation, the broadcast or announcement will be considered canceled without affecting the rates or rights provided under this agreement, except that Advertiser/Agency shall not be required to pay for the cancelled broadcast or announcement.
6. FAILURE TO BROADCAST
If, due to public emergency or necessity, restrictions imposed by law, acts of God, labor disputes, or for any other cause, including mechanical, electronic or technical breakdowns beyond Station's control, there is an interruption or omission of any program or commercial announcement contracted to be broadcast hereunder, Station shall not be in breach hereof, but upon agreement with Advertiser/Agency, Station shall substitute a reasonable equivalent date and time for the broadcast of the interrupted or omitted program or commercial announcement. If no such substitute time is available or agreed upon between the parties, the time charges allocable to the interrupted or omitted program or commercial announcement will be waived.

7. RATE PROTECTION
Station reserves the right at any time, upon 30-days written notice, to change the rates, discounts, or charges hereunder.
8. COMMERCIAL MATERIALS; INDEMNIFICATION
(a) This agreement is not exclusive as to Advertiser's business, products, or services and Station remains free to solicit and broadcast programs or announcements of other advertisers whether or not they are in competition with Advertiser's business, products, or services. All commercial materials, audio or video tapes, programs, or other similar materials shall be furnished and delivered to Station at Advertiser's/Agency's sole expense. Such materials, together with any instructions pertaining thereto, shall be delivered at least 48 hours in advance of the scheduled broadcast or announcement. All materials furnished for broadcast shall not be contrary to the public interest and shall conform to Station's then-existing program and operating policy and quality standards, and are subject to Station's prior approval and continuing right to reject or require editing of such materials. No advertising matter, announcement, or program that may be deemed, in the Station's sole discretion, injurious or prejudicial to the public's interest, the Station, or honest advertising and reputable business in general will be accepted. Station may destroy or dispose of any commercial material 60 days after the last broadcast hereunder, unless otherwise instructed in writing by Advertiser/Agency.
(b) Notwithstanding Station's approval rights in paragraph 8(a), Advertiser/ Agency shall indemnify and hold Station, its agents, employees, and officers harmless from and against all claims, damages, obligations, liabilities, costs and expenses, including attorneys' fees, that arise out of or result from any broadcast, preparation of any broadcast, or contemplated broadcast of materials furnished by or on behalf of Advertiser/Agency, or furnished by Station at Advertiser's/ Agency's request for use in connection with commercial material, including but not limited to those arising out of or that result from libel, slander, invasion of privacy rights, or infringement of any proprietary rights. Advertiser/Agency warrants that all materials furnished to Station truly represent Advertiser's business, products, or services and will be free from false claims or assertions. This paragraph 8(b) shall survive cancellation or termination of this agreement.
9. DISPUTES
Any discrepancy, dispute, or disagreement by Advertiser/Agency with any broadcast, announcement, program, or other service provided by Station hereunder or related to the amount charged by Station for same shall be reported to Station in writing within 20 days from the date of the invoice relating to same, time being of the essence. Failure to report such discrepancy, dispute, or disagreement in writing within such time shall constitute a waiver of all claims by Advertiser/Agency arising out of or related to such discrepancy, dispute, or disagreement.
10. GENERAL
(a) This agreement is subject to the terms of the licenses held by Station and is further subject to all federal, state, and municipal laws and regulations now in force or that may be enacted in the future, including but not limited to the Rules and Regulations of the Federal Communications Commission and its decisions, actions, and orders when acting under its quasi-legislative powers.
(b) This agreement, including the rights and obligations under it, may not be assigned or transferred without first obtaining Station's written consent, nor may Station be required to broadcast hereunder for the benefit of any Advertiser/ Agency other than those named on the face of this agreement.
(c) In the event of a breach by Station, Advertiser's/Agency's exclusive remedy therefore shall be a credit for substituted advertising time of equal value, and in no event shall Station be liable for any consequential, incidental, or punitive damages, or monetary damages of any type.
(d) This agreement shall be construed under and according to the laws of the State in which the Station's main studio is located. All parties hereto agree that in any action brought to enforce the obligation or right of any party hereunder, each party consents to personal jurisdiction and venue in any court of appropriate jurisdiction in the county or parish where the Station's main studio is located.
(e) If it becomes necessary for Station to place Advertiser's/Agency's account with an attorney or collection agency for the purpose of enforcing its rights hereunder, Advertiser/Agency shall be liable to Station for reasonable attorneys' fees, costs, and expenses.
(f) All notices hereunder shall be in writing and delivered by hand or registered or certified mail and shall be deemed given when delivered in person or, if mailed, on the second business day after the date of the mailing. Any notice hereunder shall be sufficient if given to either Advertiser or Agency.
(g) If any provision of this agreement shall be adjudged by a court to be void or unenforceable, such adjudication shall not affect the validity or enforceability of any other provision of this agreement.
(h) The provisions hereof constitute the entire agreement between the parties and supersede any and all other transactions, negotiations, or representations whatsoever as to the broadcast or announcements, or the parties' rights and obligations hereunder, and shall not be modified except in writing.
(i) This Station does not discriminate in the sale of advertising time, and will accept no advertising which is placed with an intent to discriminate on the basis of race, gender or ethnicity. Advertiser hereby certifies that it is not buying broadcasting air time under this advertising sales agreement for a discriminatory purpose, including but not limited to decisions not to place advertising on particular stations on the basis of race, gender, national origin or ancestry.
STANDARD TERMS AND CONDITIONS

5/3/2011

# EXHIBIT 6

Home        Travel Trailer - Manufacturers        Travel Trailer - Contractors        Mobile Homes

# FEMA Travel Trailers Manufacturers Settlement

Did you suffer symptoms or injuries as a result of exposure to formaldehyde in a Travel Trailer or Park Model Trailer provided by the United States Government and manufactured by one of the below-listed Manufacturers following Hurricanes Katrina or Rita?

A legal settlement provides payments to people for exposure to and/or injuries from formaldehyde.

*A court authorized this notice. This is not a solicitation from a lawyer.*

- A class settlement has been proposed to resolve hundreds of lawsuits seeking damages for exposure to or injuries from formaldehyde in Travel Trailers and Park Model Trailers manufactured by certain Manufacturers.
- The settlement will pay money to those who suffered symptoms or injuries because of exposure to formaldehyde in such travel trailers and/or park model trailers and who submit valid claim forms.
- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

### YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

| | |
|---|---|
| Submit a Claim Form | The only way to ask for a payment. |
| Ask to be Excluded | Get no payment. The only option that allows you to sue the Defendants over the claims resolved by this settlement. |
| Object | Write to the Court about why you don't like the settlement. You still need to submit a Claim Form to ask for a payment. |
| Do Nothing | Get no payment. Give Up rights. |
| Go to a Hearing | Ask to speak in Court about the fairness of the settlement. You still need to submit a Claim Form to ask for a payment. |

- These rights and options—and the deadlines to exercise them—are explained in this site.
- The Court in charge of this case still has to decide whether to approve the settlement. Money will be distributed if the Court does so, and after any appeals are resolved. Please be patient.

This site summarizes the proposed settlement. More details are in a Settlement Agreement, which is available at www.femaformaldehydelitigation.com or by calling 1-800-728-1628. If you have questions, visit the website, or call 1-800-728-1628 toll free.

## BASIC INFORMATION

### 1. Why was this notice issued?

A Court authorized this notice because you have a right to know about a proposed settlement of this class action, including the right to claim money, and about all of your options, before the Court decides whether to give "final approval" to the settlement. If the Court approves the settlement,

---

**FORMS**

Claim Form

**CASE DOCUMENTS**

Class Notice (Long Form)

Legal Notice (Short Form)

Preliminary Approval Order

Stipulation of Settlement

**NOTE:** *You must have Adobe Acrobat Reader to view these documents.* Download Adobe Reader here.

**CONTACT US**

FEMA Trailer Litigation Claims Administrator:

**Telephone**
1.800.728.1628

**Email**
claims@femaformaldehydelitigation.com

**Mail**
FEMA Trailer Litigation
Claims Administrator
P.O. Box 82565
Baton Rouge, LA 70884

---

and after any appeals are resolved, payments will be made to everyone who submitted a timely and valid Claim. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for them, and how to get them.

Judge Kurt Engelhardt in the United States District Court for the Eastern District of Louisiana, is overseeing this class action. The case is known as in Re: FEMA Trailer Formaldehyde Product Liability Litigation, MDL No. 2:07-MD-1873, Section "N" (5). The people who sued are called the "Plaintiffs," and the companies they sued are called the "Defendants." This case is known as aMDL, which means that it groups together a number of cases that were originally filed in state and federal court in Alabama, Mississippi, Louisiana, and Texas. This Settlement will resolve all of those cases together against certain Defendants.

## 2. Which companies are part of the settlement?

The settlement includes the following Manufacturers, along with some of their insurers, as defendants and other Released Parties.

- Citair, Inc.
- Coachman Industries, Inc.
- Coachman RV Licensed Products Division, LLC
- Coachmen Recreational Vehicle Company, LLC
- Coachmen Recreational Vehicle Company of Georgia, LLC
- Cruiser RV, LLC
- Damon Motor Coach
- DS Corp. d/b/a CrossRoads RV, Inc.
- Doubletree RV, LLC
- Dutchmen Manufacturing, Inc.
- Fairmont Homes. Inc.
- Forest River, Inc.
- Four Winds International Corporation
- Frontier RV, Inc.
- Frontier RV Georgia, LLC
- Gulf Stream Coach, Inc.
- Heartland Recreational Vehicles, LLC
- Homette Corporation
- Hy-Line Enterprises, Inc. n/k/a FRH, Inc.
- Jayco, Inc.
- Jayco Enterprises, inc.
- Keystone RV Company
- Komfort Corp.
- KZRV, LP
- Layton Homes Corp.
- R-Vision, Inc.
- Monaco Coach Corporation
- Pilgrim International, Inc.
- Play'Mor Trailers, inc.
- Recreation By Design, LLC
- Skyline Corporation
- Skyline Homes, Inc.
- Starcraft RV, Inc.
- SunRay RV, LLC

- SunRay Investments, LLC
- Thor Industries, Inc.
- Thor California, Inc.
- Timberland RV Company, Inc. d/b/a Adventure Manufacturing
- TL Industries, Inc.
- Vanguard, LLC
- Vanguard Industries, Inc. of Michigan, Inc
- Viking Recreational Vehicles, LLC

*The participation of R-Vision, Inc. is contingent upon the approval of the United States Bankruptcy Courts for the District of Delaware. Should the Bankruptcy Court not approve the participation of this Defendant in this Settlement, this Defendant, and its contribution to the Settlement, will be considered withdrawn from the Settlement.

**The participation of Pilgrim International, Inc. is contingent upon the approval of the United States Bankruptcy Court for the Northern District of Indiana. Should the Bankruptcy Courts not approve the participation of these Defendants in this Settlement, this Defendant, and its contribution to the Settlement, will be considered withdrawn from the settlement.

### 3. What is this lawsuit about?

This case came about after Hurricanes Katrina and Rita. Those hurricanes left people homeless in Alabama, Mississippi, Louisiana and Texas. The federal government provided housing, called Emergency Housing Units ("EHUs"), for people. The Defendants and other Released Parties in this case Manufactured some of the EHUs provided. The Plaintiffs in this case allege that they were exposed to hazardous levels of formaldehyde the EHUs. Defendants deny these claims. This case applies only to those persons who claim to have suffered symptoms or injuries as a result of exposure to formaldehyde in a Travel Trailer or Park Model Trailer provided by FEMA and manufactured by one of the Settling Defendants listed above in Section 2. If you claim to have suffered symptoms or injuries as a result of exposure to formaldehyde in a Manufactured Home, also called a mobile home, provided by FEMA, you are not included in this Class.

### 4. What is Formaldehyde?

Formaldehyde is a chemical found both indoors and outdoors. Even the human body creates formaldehyde. Some of the building materials used in an EHU release formaldehyde. Formaldehyde is a chemical that is sometimes used as an adhesive in the assembly of certain parts of Travel Trailers.

### 5. Why is this a class action?

In a class settlement, one or more people called "Class Representatives" propose to settle claims on behalf of people who have similar claims, who are the "Class" or "Class Members." One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

### 6. Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or Defendants. Instead, both sides agreed to settle. That way, they avoid the costs and risks of a trial, and the people affected will get compensation. The Class Representatives and their attorneys think the settlement is best for all Class Members. The settlement does not mean that the Defendants and other Released Parties did anything wrong.

## WHO IS IN THE SETTLEMENT?

To see if you can get benefits from this settlement, you first have to determine if you are a Class Member

### 7. How do I know if I am part of the settlement?

If you claim to have suffered injuries or symptoms as a result of exposure to formaldehyde in a Travel Trailer or Park Model Trailer , provided by the federal government following Hurricanes

Katrina and/or Rita, you may be a Class Member. To be a Class Member, the Travel Trailer or Park Model Trailer must have been Manufactured by a Manufacturer listed above in Section 2. The paperwork you received from the federal government should include either the manufacturer of the Travel Trailer or Park Model Trailer, or the vehicle identification number, which will identify the manufacturer. To be a Class Member, the trailer in which you claim to have been exposed to formaldehyde must have been a a Travel Trailer or Park Model Trailer, not a Manufactured Home.

**8. I'm still not sure I'm included.**
If you are not sure whether you are included in the Class, you may call the toll free number 1-800-728-1628 with questions. Also, even if you are not sure if you are included in the Class, you should submit a timely Claim Form if you do not wish to be excluded from the Class.

**THE SETTLEMENT BENEFITS - WHAT YOU GET**
**9. What does the settlement provide?**
This settlement, in the total amount of $37,468,574.16, will provide money to Class Members who submit timely and valid Claim Forms. A Settlement Agreement, available at www.femaformaldehydelitigation.com or by calling 1-800-728-1628, describes all of the details about the proposed settlement.

**10. How much will my payment be?**
The money from the settlement will be distributed according to a Class Benefit Formula approved by the Court. If you received any Medicare/Medicaid/TRICARE/Veteran's Administration/Indiana Health Services benefits, some or all of these amounts may be deducted from your settlement.

**THE LAWYERS REPRESENTING YOU**
**11. Do I have a lawyer in this case?**
If you have hired a lawyer to represent you for claims in this litigation, please contact your lawyer for further information.

The Court appointed certain attorneys, known as the Plaintiffs' Steering Committee or "PSC," to represent you and other Class Members. You do not have to pay them. They will be paid out of the Total Settlement Fund. If you want to be represented by your own lawyer, and have that lawyer appear in court for you in this case, you may hire one at your own expense.

**THE COURT'S FAIRNESS HEARING**
The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

**12. When and where will the Court decide whether to approval the settlement?**
The Court has scheduled a Fairness Hearing on September 27, 2012, at the Courthouse for the Eastern District of Louisiana, Northern Division, Hale Boggs Federal Building, United States Courthouse, 500 Poydras Street, Room C-351, New Orleans, LA 70130. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Engelhardt will listen to people who have asked to speak about an objection according to Question 18 above. The Court may also decide how much to award the PSC as fees for representing the Class. At or after the hearing, the Court will decide whether to approve the settlement. We do not know how long this decision will take. The hearing may be moved to a different date without additional notice, so it is a good idea to check www.femaformaldehydelitigation.com for updated information.

**13. Do I have to come to the hearing?**
No. You do not have to attend the Fairness Hearing. The PSC will answer questions that Judge Engelhardt may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to the Fairness Hearing to talk about it. As long as you filed and mailed your written objection on time, and as long as you attended the Special Master hearing according to Question 20 above, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**14. May I speak at the hearing?**

If you submitted an objection to the settlement (see Question 18 of Long Form Notice), you may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in In Re: FEMA Trailer Formaldehyde Product Liability Litigation." Your Notice of Intention to Appear must be received no later than August 31, 2012, and must be sent to the addresses listed in Question 18 of Long Form Notice along with the following information:

- name of the case (In Re: FEMA Trailer Formaldehyde Product Liability Litigation, No. 2:07-MD-1873, Section "N" (5);
- your full name, address, telephone number, and signature;
- detailed statement of the specific legal and factual basis for each objection;
- list of any witnesses you intend to call at the Fairness Hearing, and a description of the testimony to be offered; and
- list of exhibits and copies of all exhibits you intend to introduce at the Fairness Hearing.

## HOW TO GET A PAYMENT - SUBMITTING A CLAIM FORM

**15. How can I get a payment?**

To ask for a payment, you must complete and submit a Claim Form. A Claim Form is included with this Notice. You can also get a Claim Form at www.femaformaldehydelitigation.com or by calling 1-800-728-1628. Please read the instructions carefully, fill out the Claim Form and mail it, postmarked by October 12, 2012, to:

FEMA TRAILER LITIGATION CLAIMS ADMINISTRATOR

P.O. Box 82565

Baton Rouge, Louisiana 70884

**16. When will I get my payment?**

The payments will be mailed to Class Members who send in timely and valid Claim Forms, after the Court grants "final approval" of the settlement, and any appeals are resolved. If Judge Engelhardt approves the settlement after an upcoming hearing (see the section "The Court's Fairness Hearing" below), there may be appeals. If there are any appeals, resolving them can take time. Please be patient.

**17. What am I giving up to get a payment or stay in the Class?**

If the settlement becomes final, you will be releasing the Defendants or other Released Parties who settled, for all the claims identified in Section IX of the Settlement Agreement. These are called "Released Claims." The Settlement Agreement is available at www.femaformaldehydelitigation.com. The Settlement Agreement describes the Released Claims with specific descriptions, in necessarily accurate legal terminology, so read it carefully. Talk to your attorneys (see the section on "The Lawyers Representing You" below) or your own lawyer if you have questions about the Released Claims or what they mean.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue the Defendants or other Released Parties about the issues in this case, then you must take steps to get out. This is called excluding yourself from—or is sometimes referred to as "opting out" of —the settlement Class.

**18. How do I get out of the settlement?**

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from In Re: FEMA Trailer Formaldehyde Product Liability Litigation. You must include the case number (No. 2:07-MD-1873, Section "N" (5)), your full name, address, and telephone number, identify which defendant(s) you have claims against (the manufacturer of your EHU), and sign the request. Your exclusion request will not be valid, and you will be bound by the settlement, if you do

not include this information in your exclusion request. You must mail your request for exclusion so
that it is received by August 17, 2012, to:

Gerald E. Meunier

Justin I. Woods

Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC

2800 Energy Centre

1100 Poydras Street

New Orleans, LA 70163

You can't exclude yourself on the phone or at the website.

### 19. If I don't exclude myself, can I sue the Defendants or other Released Parties for the same thing later?

No. Unless you exclude yourself, you give up any right to sue the Defendants or other Released
Parties for the claims that this settlement resolves. You must exclude yourself from this Class to
start your own lawsuit. Remember, any exclusion requests must be received by August 17, 2012.

### 20. If I exclude myself, can I get a payment from this settlement?

No. If you exclude yourself, do not submit a Claim Form to ask for a payment.

### OBJECTING TO THE SETTLEMENT

You can tell the Court if you don't agree with the settlement or some part of it.

### 21. How do I tell the Court if I don't like the settlement?

You can object to the settlement if you don't like some part of it. The Court will consider your views.
To do so, you must send in a written objection in the case, In Re: FEMA Trailer Formaldehyde
Product Liability Litigation, No. 2:07-MD-1873, Section "N" (5). You must include your full name,
address, telephone number, and your signature. You must also include the specific reasons why you
object to the settlement, any legal support or evidence to support your objection, and whether you or
your attorney, or any other witness, will be attending the hearing, along with a description of any
witness's testimony, and a list of any exhibits you may offer at the hearing along with copies of
those exhibits. (See "The Court's Fairness Hearing" below). You must mail your objection so that it
is received by August 31, 2012, to the three addresses listed below:

| Court | PSC | Defense Counsel |
|---|---|---|
| Clerk of Court | Gerald E. Meunier | James C. Percy |
| Eastern District of Louisiana, | Justin I. Woods | Ryan E. Johnson |
| North Division | Gainsburgh, Benjamin, David, | Jones Walker |
| Hale Boggs Federal Building | Meunier & Warshauer, LLC | 8555 United Plaza Blvd. |
| United States Courthouse | 2800 Energy Centre | 5th Floor |
| 500 Poydras Street, Room C-151 | 1100 Poydras Street | Baton Rouge, LA 70809 |
| New Orleans, LA 70130 | New Orleans, LA 70163 | |

The Court may overrule your objection. If you want money from the settlement, even if you object to
it, you must file a timely Claim Form.

### 22. What's the difference between objecting and asking to be excluded?

Objecting is telling the Court that you oppose approval of the settlement. You can object only if you
stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If
you exclude yourself, you have no basis to object because the case no longer affects you.

### 23. Do I need to make an appearance to talk about my objection?

Once you file a timely and valid objection, the Special Master, who is someone the Court appointed
to help with the settlement, will schedule a hearing to try to resolve your objection. You will receive a

notice of the date, time and place of the hearing. You must attend this Special Master hearing for your objection to be heard at the Fairness Hearing.

## IF YOU DO NOTHING

### 24. What happens if I do nothing at all?

If you do nothing, you'll get no payment from this settlement. And, unless you exclude yourself, you won't be able to sue the Defendants or other Released Parties for the claims resolved in this case.

## GETTING MORE INFORMATION

### 25. How do I get more information about the settlement?

This notice summarizes the proposed settlement. More details are in a Settlement Agreement, which is available at www.femaformaldehydelitigation.com or by calling 1-800-728-1628. If you have questions, visit the website, or call 1-800-728-1628 toll free.

Home      Travel Trailer - Manufacturers      **Travel Trailer - Contractors**      Mobile Homes

# FEMA Travel Trailers Contractors Settlement

Did you suffer symptoms or injuries as a result of exposure to formaldehyde in a Travel Trailer or Park Model Trailer provided by the United States Government and installed, maintained or refurbished by one of the below-listed Contractors following Hurricanes Katrina or Rita?

A legal settlement provides payments to people for exposure to and/or injuries from formaldehyde.

*A court authorized this notice. This is not a solicitation from a lawyer.*

- A class settlement has been proposed to resolve hundreds of lawsuits seeking damages for exposure to or injuries from formaldehyde in Travel Trailers and Park Model Trailers installed, maintained or refurbished by certain Contractors.
- The settlement will pay money to those who suffered symptoms or injuries because of exposure to formaldehyde in such travel trailers and/or park model trailers and who submit valid claim forms.
- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

### YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

| | |
|---|---|
| Submit a Claim Form | The only way to ask for a payment. |
| Ask to be Excluded | Get no payment. The only option that allows you to sue the Defendants over the claims resolved by this settlement. |
| Object | Write to the Court about why you don't like the settlement. You still need to submit a Claim Form to ask for a payment. |
| Do Nothing | Get no payment. Give Up rights. |
| Go to a Hearing | Ask to speak in Court about the fairness of the settlement. You still need to submit a Claim Form to ask for a payment. |

- These rights and options—and the deadlines to exercise them—are explained in this site.
- The Court in charge of this case still has to decide whether to approve the settlement. Money will be distributed if the Court does so, and after any appeals are resolved. Please be patient.

This site summarizes the proposed settlement. More details are in a Settlement Agreement, which is available at www.femaformaldehydelitigation.com or by calling 1-800-728-1628. If you have questions, visit the website, or call 1-800-728-1628 toll free.

## BASIC INFORMATION

### 1. Why was this notice issued?

A Court authorized this notice because you have a right to know about a proposed settlement of this class action, including the right to claim money, and about all of your options, before the Court decides whether to give "final approval" to the settlement. If the Court approves the settlement,

## FORMS

Claim Form

## CASE DOCUMENTS

Class Notice (Long Form)

Legal Notice (Short Form)

Preliminary Approval Order

Stipulation of Settlement

NOTE: *You must have Adobe Acrobat Reader to view these documents.* Download Adobe Reader here.

## CONTACT US

FEMA Trailer Litigation Claims Administrator:

**Telephone**
1.800.728.1628

**Email**
claims@femaformaldehydelitigation.com

**Mail**
FEMA Trailer Litigation
Claims Administrator
P.O. Box 82565
Baton Rouge, LA 70884

and after any appeals are resolved, payments will be made to everyone who submitted a timely and valid Claim. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for them, and how to get them.

Judge Kurt Engelhardt in the United States District Court for the Eastern District of Louisiana, is overseeing this class action. The case is known as In Re: FEMA Trailer Formaldehyde Product Liability Litigation, MDL No. 2:07-MD-1873, Section "N" (5). The people who sued are called the "Plaintiffs," and the companies they sued are called the "Defendants." This case is known as aMDL, which means that it groups together a number of cases that were originally filed in state and federal court in Alabama, Mississippi, Louisiana, and Texas. This Settlement will resolve all of those cases together against certain Defendants.

## 2. Which companies are part of the settlement?
The settlement includes the following Contractors, along with some of their insurers, as defendants and other Released Parties.

- Bechtel National, Inc.
- CH2M HILL Constructors. Inc.
- Fluor Enterprises, Inc.
- Shaw Environmental, Inc.
- Jacquet Construction Services
- PRI/DJI, A Reconstruction Joint Venture
- Project Resources. Inc.
- American Radiation Services, Inc.
- B & I Services, LLC
- Davis Professional Accounting Services, Inc. a/k/a Davis Professional Services, Inc.
- Multi-Task, LLC
- DC Recovery Systems
- MLU Services, Inc.
- Smith Research Corporation
- T-Mac, Inc.
- TKTMJ, Inc.
- Del-Jen, Inc.

## 3. What is this lawsuit about?
This case came about after Hurricanes Katrina and Rita. Those hurricanes left people homeless in Alabama, Mississippi, Louisiana and Texas. The federal government provided housing, called Emergency Housing Units ("EHUs"), for people. The Defendants and other Released Parties in this case Manufactured some of the EHUs provided. The Plaintiffs in this case allege that they were exposed to hazardous levels of formaldehyde the EHUs. Defendants deny these claims. This case applies only to those persons who claim to have suffered symptoms or injuries as a result of exposure to formaldehyde in a Travel Trailer or Park Model Trailer provided by FEMA and manufactured by one of the Settling Defendants listed above in Section 2. If you claim to have suffered symptoms or injuries as a result of exposure to formaldehyde in a Manufactured Home, also called a mobile home, provided by FEMA, you are not included in this Class.

## 4. What is Formaldehyde?
Formaldehyde is a chemical found both indoors and outdoors. Even the human body creates formaldehyde. Some of the building materials used in an EHU release formaldehyde. Formaldehyde is a chemical that is sometimes used as an adhesive in the assembly of certain parts of Travel Trailers.

## 5. Why is this a class action?
In a class settlement, one or more people called "Class Representatives" propose to settle claims on

behalf of people who have similar claims, who are the "Class" or "Class Members." One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

**6. Why is there a settlement?**
The Court did not decide in favor of the Plaintiffs or Defendants. Instead, both sides agreed to settle. That way, they avoid the costs and risks of a trial, and the people affected will get compensation. The Class Representatives and their attorneys think the settlement is best for all Class Members. The settlement does not mean that the Defendants and other Released Parties did anything wrong.

## WHO IS IN THE SETTLEMENT?
To see if you can get benefits from this settlement, you first have to determine if you are a Class Member

**7. How do I know if I am part of the settlement?**
If you claim to have suffered injuries or symptoms as a result of exposure to formaldehyde in a Travel Trailer or Park Model Trailer, provided by the federal government following Hurricanes Katrina and/or Rita, you may be a Class Member. To be a Class Member, the Travel Trailer or Park Model Trailer must have been installed, maintained or refurbished by a Contractor listed above in Section 2. The paperwork you received from the federal government should include either the manufacturer of the Travel Trailer or Park Model Trailer, or the vehicle identification number, which will identify the manufacturer. To be a Class Member, the trailer in which you claim to have been exposed to formaldehyde must have been a Travel Trailer or Park Model Trailer, not a Manufactured Home.

**8. I'm still not sure I'm included.**
If you are not sure whether you are included in the Class, you may call the toll free number 1-800-728-1628 with questions. Also, even if you are not sure if you are included in the Class, you should submit a timely Claim Form if you do not wish to be excluded from the Class.

## THE SETTLEMENT BENEFITS - WHAT YOU GET
**9. What does the settlement provide?**
This settlement, in the total amount of $5,129,250.00, will provide money to Class Members who submit timely and valid Claim Forms. A Settlement Agreement, available at www.femaformaldehydelitigation.com or by calling 1-800-728-1628, describes all of the details about the proposed settlement.

**10. How much will my payment be?**
The money from the settlement will be distributed according to a Class Benefit Formula approved by the Court. If you received any Medicare/Medicaid/TRICARE/Veteran's Administration/Indiana Health Services benefits, some or all of these amounts may be deducted from your settlement.

## THE LAWYERS REPRESENTING YOU
**11. Do I have a lawyer in this case?**
If you have hired a lawyer to represent you for claims in this litigation, please contact your lawyer for further information.

The Court appointed certain attorneys, known as the Plaintiffs' Steering Committee or "PSC," to represent you and other Class Members. You do not have to pay them. They will be paid out of the Total Settlement Fund. If you want to be represented by your own lawyer, and have that lawyer appear in court for you in this case, you may hire one at your own expense.

## THE COURT'S FAIRNESS HEARING
The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

**12. When and where will the Court decide whether to approve the settlement?**
The Court has scheduled a Fairness Hearing on **September 27, 2012**, at the Courthouse for the

Eastern District of Louisiana, Northern Division, Hale Boggs Federal Building, United States Courthouse, 500 Poydras Street, Room C-351, New Orleans, LA 70130. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Engelhardt will listen to people who have asked to speak about an objection according to Question 18 of Long Form Notice. The Court may also decide how much to award the PSC as fees for representing the Class. At or after the hearing, the Court will decide whether to approve the settlement. We do not know how long this decision will take. The hearing may be moved to a different date without additional notice, so it is a good idea to check www.femaformaldehydelitigation.com for updated information.

### 13. Do I have to come to the hearing?

No. You do not have to attend the Fairness Hearing. The PSC will answer questions that Judge Engelhardt may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to the Fairness Hearing to talk about it. As long as you filed and mailed your written objection on time, and as long as you attended the Special Master hearing according to Question 20 of the Long Form Notice, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

### 14. May I speak at the hearing?

If you submitted an objection to the settlement (see Question 18 of Long Form Notice), you may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in In Re: FEMA Trailer Formaldehyde Product Liability Litigation." Your Notice of Intention to Appear must be received no later than **August 31, 2012**, and must be sent to the addresses listed in Question 18 of Long Form Notice along with the following information:

- name of the case (In Re: FEMA Trailer Formaldehyde Product Liability Litigation, No. 2:07-MD-1873, Section "N" (5);
- your full name, address, telephone number, and signature;
- detailed statement of the specific legal and factual basis for each objection;
- list of any witnesses you intend to call at the Fairness Hearing, and a description of the testimony to be offered; and
- list of exhibits and copies of all exhibits you intend to introduce at the Fairness Hearing.

## HOW TO GET A PAYMENT - SUBMITTING A CLAIM FORM

### 15. How can I get a payment?

To ask for a payment, you must complete and submit a Claim Form. A Claim Form is included with this Notice. You can also get a Claim Form at www.femaformaldehydelitigation.com or by calling 1-800-728-1628. Please read the instructions carefully, fill out the Claim Form and mail it, postmarked by **October 12, 2012**, to:

FEMA TRAILER LITIGATION CLAIMS ADMINISTRATOR

P.O. Box 82565

Baton Rouge, Louisiana 70884

### 16. When will I get my payment?

The payments will be mailed to Class Members who send in timely and valid Claim Forms, after the Court grants "final approval" of the settlement, and any appeals are resolved. If Judge Engelhardt approves the settlement after an upcoming hearing (see the section "The Court's Fairness Hearing" below), there may be appeals. If there are any appeals, resolving them can take time. Please be patient.

### 17. What am I giving up to get a payment or stay in the Class?

If the settlement becomes final, you will be releasing the Defendants or other Released Parties who settled, for all the claims identified in Section IX of the Settlement Agreement. These are called

"Released Claims." The Settlement Agreement is available at www.femaformaldehydelitigation.com. The Settlement Agreement describes the Released Claims with specific descriptions, in necessarily accurate legal terminology, so read it carefully. Talk to your attorneys (see the section on "The Lawyers Representing You" below) or your own lawyer if you have questions about the Released Claims or what they mean.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue the Defendants or other Released Parties about the issues in this case, then you must take steps to get out. This is called excluding yourself from—or is sometimes referred to as "opting out" of —the settlement Class.

### 18. How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from In Re: FEMA Trailer Formaldehyde Product Liability Litigation. You must include the case number (No. 2:07-MD-1873, Section "N" (5)), your full name, address, and telephone number, identify which defendant(s) you have claims against (the contractor which installed, maintained or refurbished your EHU), and sign the request. Your exclusion request will not be valid, and you will be bound by the settlement, if you do not include this information in your exclusion request. You must mail your request for exclusion so that it is received by **August 17, 2012**, to:

Gerald E. Meunier
Justin I. Woods
Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163

You can't exclude yourself on the phone or at the website.

### 19. If I don't exclude myself, can I sue the Defendants or other Released Parties for the same thing later?

No. Unless you exclude yourself, you give up any right to sue the Defendants or other Released Parties for the claims that this settlement resolves. You must exclude yourself from this Class to start your own lawsuit. Remember, any exclusion requests must be received by **August 17, 2012**.

### 20. If I exclude myself, can I get a payment from this settlement?

No. If you exclude yourself, do not submit a Claim Form to ask for a payment.

## OBJECTING TO THE SETTLEMENT

You can tell the Court if you don't agree with the settlement or some part of it.

### 21. How do I tell the Court if I don't like the settlement?

You can object to the settlement if you don't like some part of it. The Court will consider your views. To do so, you must send in a written objection in the case, In Re: FEMA Trailer Formaldehyde Product Liability Litigation, No. 2:07-MD-1873, Section "N" (5). You must include your full name, address, telephone number, and your signature. You must also include the specific reasons why you object to the settlement, any legal support or evidence to support your objection, and whether you or your attorney, or any other witness, will be attending the hearing, along with a description of any witness's testimony, and a list of any exhibits you may offer at the hearing along with copies of those exhibits. (See "The Court's Fairness Hearing" below). You must mail your objection so that it is received by **August 31, 2012**, to the three addresses listed below:

| Court | PSC | Defense Counsel |
|---|---|---|
| Clerk of Court | Gerald E. Meunier | David Kurtz |

Eastern District of Louisiana,
North Division
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street, Room C-151
New Orleans, LA 70130

Justin I. Woods
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163

Baker Donelson
201 St. Charles Ave.
Suite 3600
New Orleans, LA 70170

The Court may overrule your objection. If you want money from the settlement, even if you object to it, you must file a timely Claim Form.

**22. What's the difference between objecting and asking to be excluded?**
Objecting is telling the Court that you oppose approval of the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

**23. Do I need to make an appearance to talk about my objection?**
Once you file a timely and valid objection, the Special Master, who is someone the Court appointed to help with the settlement, will schedule a hearing to try to resolve your objection. You will receive a notice of the date, time and place of the hearing. You must attend this Special Master hearing for your objection to be heard at the Fairness Hearing.

**IF YOU DO NOTHING**
**24. What happens if I do nothing at all?**
If you do nothing, you'll get no payment from this settlement. And, unless you exclude yourself, you won't be able to sue the Defendants or other Released Parties for the claims resolved in this case.

**GETTING MORE INFORMATION**
**25. How do I get more information about the settlement?**
This notice summarizes the proposed settlement. More details are in a Settlement Agreement, which is available at www.femaformaldehydelitigation.com or by calling 1-800-728-1628. If you have questions, visit the website, or call 1-800-728-1628 toll free.

# EXHIBIT 7

# FEMA Trailer Formaldehyde Product Liability Litigation (Consolidated)

## Call Log Statistics (as of 9/24/2012)

| DATE | IVR Calls | US IVR Minutes | Calls Offered | Abandon | Answered | Abandon Rate % | Average Answer Delay | Average wait time before Abandon | Average Talk Time | Total Talk Time | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/2012 | 10 | 10 | | 0 | | 0.00 | | | | | |
| 6/2/2012 | 2 | 2 | | 0 | | 0.00 | | | | | |
| 6/3/2012 | 1 | 1 | | 0 | | 0.00 | | | | | |
| 6/4/2012 | 12 | 12 | | 0 | | 0.00 | | | | | |
| 6/5/2012 | 16 | 16 | | 0 | | 0.00 | | | | | |
| 6/6/2012 | 19 | 19 | | 0 | | 0.00 | | | | | |
| 6/7/2012 | 23 | 23 | | 0 | | 0.00 | | | | | |
| 6/8/2012 | 18 | 18 | | 0 | | 0.00 | | | | | |
| 6/9/2012 | 5 | 5 | | 0 | | 0.00 | | | | | |
| 6/10/2012 | 5 | 5 | | 0 | | 0.00 | | | | | |
| 6/11/2012 | 31 | 31 | | 0 | | 0.00 | | | | | |
| 6/12/2012 | 36 | 36 | | 0 | | 0.00 | | | | | |
| 6/13/2012 | 33 | 33 | | 0 | | 0.00 | | | | | |
| 6/14/2012 | 28 | 28 | | 0 | | 0.00 | | | | | |
| 6/15/2012 | 12 | 12 | | 0 | | 0.00 | | | | | |
| 6/16/2012 | 4 | 4 | | 0 | | 0.00 | | | | | |
| 6/17/2012 | 2 | 2 | | 0 | | 0.00 | | | | | |
| 6/18/2012 | 30 | 30 | | 0 | | 0.00 | | | | | |
| 6/19/2012 | 31 | 31 | | 0 | | 0.00 | | | | | |
| 6/20/2012 | 32 | 32 | | 0 | | 0.00 | | | | | |
| 6/21/2012 | 22 | 22 | | 0 | | 0.00 | | | | | |
| 6/22/2012 | 12 | 12 | | 0 | | 0.00 | | | | | |
| 6/23/2012 | 4 | 4 | | 0 | | 0.00 | | | | | |
| 6/24/2012 | 4 | 4 | | 0 | | 0.00 | | | | | |
| 6/25/2012 | 15 | 15 | | 0 | | 0.00 | | | | | |
| 6/26/2012 | 16 | 16 | | 0 | | 0.00 | | | | | |
| 6/27/2012 | 21 | 21 | | 0 | | 0.00 | | | | | |
| 6/28/2012 | 18 | 18 | | 0 | | 0.00 | | | | | |
| 6/29/2012 | 14 | 14 | | 0 | | 0.00 | | | | | |
| 6/30/2012 | 5 | 5 | | 0 | | 0.00 | | | | | |
| 7/1/2012 | 4 | 4 | | 0 | | 0.00 | | | | | |
| 7/2/2012 | 22 | 22 | | 0 | | 0.00 | | | | | |
| 7/3/2012 | 92 | 245 | | 0 | | 0.00 | | | | | |
| 7/4/2012 | 32 | 84 | | 0 | | 0.00 | | | | | |
| 7/5/2012 | 116 | 423 | 61 | 3 | 58 | 4.92 | :25 | :52 | 3:38 | 3:31:03 | |
| 7/6/2012 | 107 | 433 | 43 | 3 | 40 | 6.98 | :47 | :34 | 4:08 | 2:45:29 | |
| 7/7/2012 | 82 | 196 | | 0 | | 0.00 | | | | | |
| 7/8/2012 | 127 | 347 | | 0 | | 0.00 | | | | | |

9/24/2012

# FEMA Trailer Formaldehyde Product Liability Litigation (Consolidated)

| DATE | IVR Calls | US IVR Minutes | Calls Offered | Abandon | Answered | Abandon Rate % | Average Answer Delay | Average wait time before Abandon | Average Talk Time | Total Talk Time | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/9/2012 | 242 | 1019 | 122 | 8 | 114 | 6.56 | :39 | 1:29 | 3:10 | 5:47:47 | |
| 7/10/2012 | 150 | 614 | 87 | 3 | 84 | 3.45 | :39 | 3:54 | 3:36 | 5:02:14 | |
| 7/11/2012 | 120 | 440 | 75 | 3 | 72 | 4.00 | :08 | 2:59 | 3:06 | 3:42:40 | |
| 7/12/2012 | 242 | 901 | 136 | 5 | 131 | 3.68 | :28 | 2:07 | 2:45 | 5:59:34 | |
| 7/13/2012 | 154 | 592 | 87 | 6 | 81 | 6.90 | :10 | 2:23 | 2:49 | 3:50:30 | |
| 7/14/2012 | 66 | 144 | | 0 | | 0.00 | | | | | |
| 7/15/2012 | 19 | 52 | | 0 | | 0.00 | | | | | |
| 7/16/2012 | 183 | 685 | 90 | 0 | 90 | 0.00 | :25 | 0:00 | 3:02 | 4:32:18 | |
| 7/17/2012 | 146 | 580 | 85 | 3 | 82 | 3.53 | :14 | 2:13 | 3:12 | 4:22:32 | |
| 7/18/2012 | 110 | 403 | 64 | 1 | 63 | 1.56 | :10 | :38 | 2:57 | 3:05:41 | |
| 7/19/2012 | 89 | 311 | 46 | 3 | 43 | 6.52 | :19 | 6:19 | 3:06 | 2:13:36 | |
| 7/20/2012 | 71 | 273 | 39 | 2 | 37 | 5.13 | :10 | :20 | 3:44 | 2:18:18 | |
| 7/21/2012 | 30 | 69 | | 0 | | 0.00 | | | | | |
| 7/22/2012 | 18 | 35 | | 0 | | 0.00 | | | | | |
| 7/23/2012 | 143 | 570 | 88 | 4 | 84 | 4.55 | :22 | 3:14 | 2:49 | 3:56:56 | |
| 7/24/2012 | 124 | 448 | 68 | 0 | 68 | 0.00 | :08 | 0:00 | 2:46 | 3:08:21 | |
| 7/25/2012 | 112 | 412 | 64 | 2 | 62 | 3.13 | :12 | :20 | 3:19 | 3:25:52 | |
| 7/26/2012 | 148 | 577 | 79 | 3 | 76 | 3.80 | :16 | :45 | 3:07 | 3:56:40 | |
| 7/27/2012 | 133 | 537 | 81 | 2 | 79 | 2.47 | :18 | :26 | 3:29 | 4:35:04 | |
| 7/28/2012 | 37 | 83 | | 0 | | 0.00 | | | | | |
| 7/29/2012 | 31 | 66 | | 0 | | 0.00 | | | | | |
| 7/30/2012 | 309 | 952 | 40 | 13 | 27 | 32.50 | 5:11 | 2:50 | 1:44 | 0:47:01 | |
| 7/31/2012 | 132 | 572 | 82 | 0 | 82 | 0.00 | :20 | 0:00 | 3:11 | 4:21:23 | |
| 8/1/2012 | 155 | 625 | 98 | 2 | 96 | 2.04 | :18 | :52 | 3:01 | 4:48:48 | |
| 8/2/2012 | 559 | 2456 | 308 | 45 | 263 | 14.61 | 1:45 | 2:53 | 2:57 | 12:53:45 | |
| 8/3/2012 | 404 | 1626 | 257 | 20 | 237 | 7.78 | :27 | 1:35 | 3:07 | 12:20:12 | |
| 8/4/2012 | 116 | 266 | | 0 | | 0.00 | | | | | |
| 8/5/2012 | 57 | 150 | | 0 | | 0.00 | | | | | |
| 8/6/2012 | 588 | 2609 | 333 | 48 | 285 | 14.41 | 1:40 | 2:43 | 2:57 | 14:01:33 | |
| 8/7/2012 | 404 | 1683 | 254 | 4 | 250 | 1.57 | :21 | 1:08 | 3:13 | 13:22:23 | |
| 8/8/2012 | 298 | 1307 | 191 | 10 | 181 | 5.24 | :55 | 3:29 | 3:02 | 9:09:03 | |
| 8/9/2012 | 569 | 2609 | 340 | 40 | 300 | 11.76 | 2:09 | 3:23 | 2:26 | 12:09:58 | |
| 8/10/2012 | 879 | 3784 | 514 | 54 | 460 | 10.51 | 1:36 | 2:31 | 2:36 | 19:57:38 | |
| 8/11/2012 | 199 | 439 | | 0 | | 0.00 | | | | | |
| 8/12/2012 | 96 | 253 | | 0 | | 0.00 | | | | | |
| 8/13/2012 | 780 | 3113 | 449 | 34 | 415 | 7.57 | 1:00 | 1:40 | 2:41 | 18:33:38 | |
| 8/14/2012 | 561 | 1972 | 316 | 13 | 303 | 4.11 | :16 | :57 | 2:34 | 12:56:57 | |
| 8/15/2012 | 423 | 1628 | 260 | 10 | 250 | 3.85 | :20 | :42 | 2:59 | 12:14:26 | |

Confidential

9/24/2012

# FEMA Trailer Formaldehyde Product Liability Litigation (Consolidated)

| DATE | IVR Calls | US IVR Minutes | Calls Offered | Abandon | Answered | Abandon Rate % | Average Answer Delay | Average wait time before Abandon | Average Talk Time | Total Talk Time | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/16/2012 | 361 | 1442 | 209 | 12 | 197 | 5.74 | :44 | 3:28 | 2:52 | 9:25:06 | |
| 8/17/2012 | 271 | 1047 | 165 | 7 | 158 | 4.24 | :23 | 1:20 | 3:00 | 7:53:11 | |
| 8/18/2012 | 64 | 132 | 0 | | | 0.00 | | | | | |
| 8/19/2012 | 41 | 95 | 0 | | | 0.00 | | | | | |
| 8/20/2012 | 340 | 1220 | 194 | 5 | 189 | 2.58 | :28 | 1:17 | 2:42 | 8:30:21 | |
| 8/21/2012 | 313 | 1175 | 174 | 9 | 165 | 5.17 | :42 | 1:20 | 3:07 | 8:35:16 | |
| 8/22/2012 | 203 | 762 | 117 | 4 | 113 | 3.42 | :35 | 6:15 | 2:39 | 5:00:04 | |
| 8/23/2012 | 216 | 752 | 119 | 0 | 119 | 0.00 | :10 | 0:00 | 2:48 | 5:32:37 | |
| 8/24/2012 | 183 | 653 | 97 | 1 | 96 | 1.03 | :12 | :37 | 3:13 | 5:09:23 | |
| 8/25/2012 | 34 | 69 | 0 | | | 0.00 | | | | | |
| 8/26/2012 | 28 | 62 | 0 | | | 0.00 | | | | | |
| 8/27/2012 | 110 | 418 | 71 | 1 | 70 | 1.41 | :10 | :29 | 3:02 | 3:32:28 | |
| 8/28/2012 | 46 | 192 | 28 | 0 | 28 | 0.00 | :33 | 0:00 | 3:01 | 1:24:57 | |
| 8/29/2012 | 34 | 119 | 23 | 0 | 23 | 0.00 | :08 | 0:00 | 3:38 | 1:23:37 | |
| 8/30/2012 | 41 | 170 | 22 | 2 | 20 | 9.09 | :09 | 8:07 | 4:01 | 1:20:27 | |
| 8/31/2012 | 76 | 408 | 50 | 6 | 44 | 12.00 | 1:40 | 5:11 | 3:41 | 2:43:15 | |
| 9/1/2012 | 35 | 69 | 0 | | | 0.00 | | | | | |
| 9/2/2012 | 16 | 32 | 0 | | | 0.00 | | | | | |
| 9/3/2012 | 62 | 133 | Holiday | 0 | | | 0.00 | | | | |
| 9/4/2012 | 148 | 587 | 92 | 2 | 90 | 2.17 | :31 | 1:52 | 3:10 | 4:44:43 | |
| 9/5/2012 | 137 | 452 | 74 | 1 | 73 | 1.35 | :10 | 3:41 | 3:02 | 3:41:19 | |
| 9/6/2012 | 186 | 839 | 112 | 13 | 99 | 11.61 | 1:31 | 3:45 | 3:19 | 5:27:51 | |
| 9/7/2012 | 155 | 544 | 75 | 4 | 71 | 5.33 | :38 | 1:19 | 3:17 | 3:53:02 | |
| 9/8/2012 | 113 | 233 | 0 | | | 0.00 | | | | | |
| 9/9/2012 | 36 | 96 | 0 | | | 0.00 | | | | | |
| 9/10/2012 | 286 | 1101 | 165 | 7 | 158 | 4.24 | 1:02 | 1:44 | 2:44 | 7:10:48 | |
| 9/11/2012 | 238 | 989 | 160 | 11 | 149 | 6.88 | :54 | 3:24 | 2:44 | 6:46:18 | |
| 9/12/2012 | 180 | 720 | 114 | 9 | 105 | 7.89 | :36 | 2:28 | 2:46 | 4:51:00 | |
| 9/13/2012 | 154 | 531 | 106 | 16 | 90 | 15.09 | :37 | 2:39 | 2:58 | 4:27:23 | |
| 9/14/2012 | 124 | 411 | 85 | 1 | 84 | 1.18 | :17 | :26 | 2:21 | 3:17:15 | |
| 9/15/2012 | 29 | 70 | 0 | | | 0.00 | | | | | |
| 9/16/2012 | 19 | 46 | 0 | | | 0.00 | | | | | |
| 9/17/2012 | 175 | 644 | 107 | 4 | 103 | 3.74 | :30 | 1:01 | 2:38 | 4:30:32 | |
| 9/18/2012 | 196 | 537 | 38 | 2 | 36 | 5.26 | :14 | :47 | 2:33 | 1:31:45 | Closed at noon |
| 9/19/2012 | 223 | 501 | Closed | 0 | | | 0.00 | | | | |
| 9/20/2012 | 123 | 519 | 69 | 1 | 68 | 1.45 | :52 | 3:10 | 2:59 | 3:23:08 | |
| 9/21/2012 | 97 | 330 | 54 | 0 | 54 | 0.00 | :22 | 0:00 | 2:32 | 2:16:55 | |
| 9/22/2012 | 31 | 76 | 0 | | | 0.00 | | | | | |
| 9/23/2012 | 9 | 14 | 0 | | | 0.00 | | | | | |
| TOTALS | 15,093 | 55,280 | 7,277 | 462 | 6,815 | 2.56 | | | | 330:24:01 | |

Confidential

9/24/2012