## GAINSBURGH BENJAMIN NARRATIVE

The firm of Gainsburgh Benjamin contributed to plaintiffs' common benefit in this MDL through a number of attorneys and non-attorney staff members who were with the firm over the course of the litigation.  Not all of these contributions can be specified within the page limitation of this narrative (e.g., switchboard services for calls from numerous plaintiffs, bookkeeping services for the PSC litigation account maintained by the firm, law clerk research activity, and a series of contract attorneys whose salaries were paid by the firm but not submitted as "held" costs to be reimbursed at this time).  What follows are the narratives of the firm's three attorneys and staff member whose services were most prevalent and substantive on plaintiffs' behalf:

### Gerald E. Meunier

As Co-Liaison counsel for plaintiffs (and, *de facto*, as co-lead counsel for plaintiffs) during all litigation and settlement activity in the MDL, I've been directly involved in all major areas of prosecuting and resolving the consolidated claims of plaintiffs.

My principal activities have included:  (1) drafting and finalization of all important pleadings, motions and briefs on plaintiffs' behalf, including the finalization of legal research and analysis on all key issues effecting plaintiffs;  (2) negotiation and crafting of language for all case management, scheduling and pretrial orders submitted to the Court in all phases of the litigation; (3) serving as a lead spokesman for plaintiffs in most of the MDL status conferences and meetings in Chambers with the Court;  (4) serving as a lead spokesman for plaintiffs in virtually all key interactions with opposing counsel; (5) serving as lead spokesman for plaintiffs in most of the major press coverage of the litigation; (6) arguing all important motions before Judge Engelhardt, and orally arguing in the Fifth Circuit on an appeal from the dismissal of a bellwether plaintiff; (7) serving as first chair in some of the key depositions made available for use at trial (e.g., FEMA officials, Chris DeRosa, The Formaldehyde Council); (8) serving as first chair in several 30(b)(6) depositions of the Thor/Keystone family of manufacturers; (9) serving as one of trial counsel in the first bellwether trial (Alexander/Cooper v. Gulf Stream) and as lead trial counsel in a SJT involving Keystone/Dutchmen; (10) serving as lead negotiator in literally dozens of mediations with manufacturers, and as lead negotiator for plaintiffs in virtually all global settlements (including the Fleetwood settlement, the non-lit class settlement, and the final class settlements with manufacturers, including Gulf Stream/Forest River); (11) serving as lead negotiator in the class settlement with contractors; (12) serving as lead counsel at all three settlement class fairness hearings:  non-lit, manufacturer and contractor; and (13) continuing to manage and oversee the daily administrative, procedural and financial aspects of the MDL in its current settlement phase.

Particularly from the firm's standpoint, it's important to add reference to the "preclusion of employment" factor in fee amount determination:  Having attended to these responsibilities on a daily basis during the last 6 or so years, I've had to forfeit participation in a number of other major and complex cases which no doubt would have proven much more profitable for the firm (e.g., I was unable to take larger common benefit role in the BP Oil Spill MDL).

### Justin I. Woods

As Co-Liaison Counsel for plaintiffs, I was involved in almost every aspect of the litigation on a daily basis since my appointment in December of 2007.  I was required to limit my involvement in other matters that were assigned to me as an associate in order to devote at least ninety-five percent of my time to this litigation.

Some of my specific duties included: involvement in the establishment of the PSC's claim's office; I maintained constant contact with each of the defendant liaison counsel appointed by the Court; I attended and participated in all but for one of the Court's regularly scheduled status conferences – making presentations to the Court; I attended numerous trailer formaldehyde testing events with experts in New Orleans and the Gulf Coast region; I had direct responsibility and communication with numerous experts hired regarding testing and data presentation; I participated in numerous trial plaintiff home inspections; I was responsible for the writing of numerous motions that were beneficial to the litigation as a whole; I co-chaired the discovery committee established by the PSC with Linda Nelson -- the discovery committee was responsible for the coordination of discovery with more than fifty-six different defendants; I was in almost daily contact with the Court's law clerks assigned to this litigation; Our firm took the lead role regarding the claims against FEMA as a defendant; I spent many hours navigating the tedious matching process; Each day was spent talking to non-PSC member lawyers providing litigation updates and information; I provided members of the press with information regarding the litigation for public dissemination; I was the lead questioner and defended numerous depositions for trial purposes including fact witnesses, experts and individual trial plaintiffs; I served as trial counsel in the Summary Jury Trial involving Keystone/Dutchmen; I participated in each of the numerous manufacturer and contractor mediations/settlement negotiation sessions; I participated in each of the fairness hearings that have been held including drafting and finalizing the motions and supporting documents for each (along with defendants); I have taken a lead role in the drafting and finalization of settling documents with non-class settlors; I serve as one of the primary liaisons with the Court appointed Special Master and Disbursing Agent for the various settlements; I serve as the primary liaison with the retained firm responsible for Medicare/Medicaid resolution and reporting for plaintiffs; I continue to manage the day to day activities that are necessary for the efficient resolution of many aspects of the litigation.

## M. Palmer Lambert

As a law clerk 3/10 – 10/10: I provided research and drafting assistance to Tara Todd and Shari Wright on motions *in limine* related to the McGraw trial.

As an associate10/10 – present: I provided research and drafting assistance to GEM on the appeals of the dismissal of Louisiana, Mississippi, and Alabama FTCA claims to the Fifth Circuit, including all briefing on the petition for interlocutory appeal of the Louisiana FTCA claims. I provided drafting assistance to JIW and GEM on all pleadings related to the non-lit (manufactured housing), contractor, and manufacturer class settlements. I provided research and drafting assistance on numerous MDL-wide pleadings on behalf of all plaintiffs, including opposition pleadings to motions to dismiss various contractor claims, opposition pleadings to the USA's motion to dismiss gross negligence claims, and opposition pleadings to manufacturer motions to dismiss related to prescription defenses. I created, compiled, and maintained spreadsheet databases of all claims (under Pretrial Orders 68, 83, and 88). I provided research and drafting assistance and worked with experts alongside JIW and GEM to ligate the bellwether summary jury trial of Dutchmen. I provided legal research on issues of insurance, such as application of the self-insured retention, known loss doctrine, per occurrence versus per claim retention, and other exclusions. I provided numerous status update e-mails to the PSC and all counsel on settlement issues, bankruptcy issues, and various court orders. I was liaison with Rose Manos on efforts to gain bankruptcy approval of settlements (non-Fleetwood). I created numerous spreadsheets for settlement discussions, including, but not limited to: a breakdown of insurance information for each defendant, census excerpts from the PTO 68 and 88 databases, and a status of settlements spreadsheet.

I participated in all aspects of the mediations related to the pending non-class settlements, as well as the pending contractor and manufacturer class settlements. I provided legal research and drafting assistance on the motions for reimbursement of fees and/or costs related to the non-lit, pending non-class, and pending class settlements.

### Denise Martin

I have been involved in this litigation as the legal assistant/paralegal to Co-Liaison Counsel Gerald Meunier and Justin Woods since December 2007. As mandated by the Court, every document filed in this matter was uploaded to the Court's website for electronic filing. After each filing, this firm received notice electronically that a document had been filed. One of my roles in this litigation was to make sure that every counsel listed of record received all pleadings filed into the record. Upon receipt of notice of filing, I would save the pleadings into my document management system, Worldox, and then by e-mail forward same to all counsel of record. As of this narrative, there have been over 25,900 pleadings filed in this litigation. Very early in this litigation, there would be times when almost 200 pleadings were being filed daily, which required long hours and many late nights to save and circulate these pleadings timely.

All pleadings filed in the MDL by the Committee had to be filed by this office. When cases were set for trial, there would be as many as twenty-five motions to file and in due course that many responses as well. I was responsible for seeing that these were timely filed. Also, upon counsel's request, I was asked to forward pleadings to counsel to use as drafts and forms for future filings, etc.

I had to consistently update "group" e-mails to accommodate all attorneys as well as staff members (both new and some that had departed for other positions). I provided updated information on defendants and their counsel. I sent reminders of when things were due to the Court, and when status conferences were being held with the Court. I also scheduled and took minutes for every Committee conference call occurring over the years. I reminded people of when assessments were due, etc. I have circulated thousands of e-mails since this litigation began in December 2007.

Although I am employed with the Gainsburgh Benjamin law firm, I responded to the entire Committee and provided any information that they requested from me. I spent over 7,700 hours working on this case.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-5"

JUDGE ENGELHARDT
MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*COMMON BENEFIT FEE APPLICATION*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>AFFIDAVIT</u>

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

BEFORE ME, the undersigned Notary Public, personally came and appeared:

### GERALD E. MEUNIER

who, first being sworn, attested under oath that all of the statements and information made and

provided by him in the attached narrative document, are true, correct, and based on first-hand

knowledge.

This done the 26th day of _Oct._ , 2012, New Orleans, Louisiana.

_____
**GERALD E. MEUNIER**

Sworn to and subscribed before me,

this 26th day of October, 2012.

_Helen B. Meaher_
NOTARY PUBLIC
My Commission Expires: with life
Bar Roll No. 33980

Helen Beatrice Meaher
NOTARY PUBLIC
State of Louisiana
LA Bar No. 33980
My commission is issued for life

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: FEMA TRAILER                                    MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                           SECTION "N-5"

                                                       JUDGE ENGELHARDT
                                                       MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*COMMON BENEFIT FEE APPLICATION*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>AFFIDAVIT</u>**

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

    BEFORE ME, the undersigned Notary Public, personally came and appeared:

**JUSTIN I. WOODS**

who, first being sworn, attested under oath that all of the statements and information made and

provided by him in the attached narrative document, are true, correct, and based on first-hand

knowledge.

    This done the 26TH day of OCTOBER, 2012, New Orleans, Louisiana.

                                        _Justin I. Woods_
                                        **JUSTIN I. WOODS**

Sworn to and subscribed before me,

this 26th day of October, 2012.

_Helen B Mecher_
NOTARY PUBLIC
My Commission Expires: with life
Bar Roll No. 33980

                                        Helen Beatrice Meaher
                                        NOTARY PUBLIC
                                        State of Louisiana
                                        LA Bar No. 33980
                                        My commission is issued for life.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER                          MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                 SECTION "N-5"

                                             JUDGE ENGELHARDT
                                             MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*COMMON BENEFIT FEE APPLICATION*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ORLEANS

      BEFORE ME, the undersigned Notary Public, personally came and appeared:

## M. PALMER LAMBERT

who, first being sworn, attested under oath that all of the statements and information made and

provided by him in the attached narrative document, are true, correct, and based on first-hand

knowledge.

      This done the 26 day of October, 2012, New Orleans, Louisiana.

                                         **M. PALMER LAMBERT**

Sworn to and subscribed before me,

this 26th day of October, 2012.

_Helen B. Meaher_
NOTARY PUBLIC
My Commission Expires: with life
Bar Roll No. 33980

Helen Beatrice Meaher
NOTARY PUBLIC
State of Louisiana
LA Bar No. 33980
My commission is issued for life.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 1873

SECTION "N-5"

JUDGE ENGELHARDT
MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*COMMON BENEFIT FEE APPLICATION*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned Notary Public, personally came and appeared:

### DENISE MARTIN

who, first being sworn, attested under oath that all of the statements and information made and

provided by her in the attached narrative document, are true, correct, and based on first-hand

knowledge.

This done the 26 day of October, 2012, New Orleans, Louisiana.

*[signature]*

**DENISE MARTIN**

Sworn to and subscribed before me,

this 26th day of October, 2012.

*[signature]*

NOTARY PUBLIC
My Commission Expires:_____
Bar Roll No. _____

Steven C. Bitner
NOTARY PUBLIC
State of Louisiana
LA Bar No. 10628
My commission is issued for life.

### Summary of Watts Hilliard Contributions to the FEMA Litigation

Watts Hilliard attorneys and staff played a substantial role in bringing about the resolution of this long, protracted and expensive litigation. Led by Mikal Watts and Bob Hilliard along with Chris Pinedo the Watts Hilliard ("WH") team expended a significant amount of time and resources in this litigation and participated in some manner in each bellwether trial.

In the first trial, *Alexander v. Gulfstream,* on a short fuse Mikal Watts took the lead in locating experts and securing their reports. Subsequent to the exchange of the expert reports, WH prepared and presented numerous witnesses for deposition. Bob Hilliard presented Chris Cooper for deposition. Bob Hilliard also prepared for a mock trial and tried the case in front of a jury to get their views on the case. Mikal Watts presented expert witnesses for deposition and deposed some of the Defendants experts. Chris Pinedo met with, prepared for deposition and presented plaintiffs experts Lila Laux, Stephen Smulski, Bill Scott, Ed Shwery, Paul LaGrange, Ervin Ritter, Patricia Williams, James Kornberg, Paul Hewett, Gary Bunzer, Karen Pacheco, Alexis Mallet, David Moore, Gerald McGwin, Janet Barnes, and Marco Kaltofen. Pinedo also deposed defense experts Leonard Quick and Jessica Herzstein, Fluor corporate witnesses Hugo Linares, Richard Sober, Robert Duckworth, Al Whitaker, and David Methot. During the trial, Mikal Watts and Bob Hilliard played a leading role in presenting Plaintiffs' expert witnesses, crossing Defendants' expert witnesses and presenting the case against the contractor. Additional WH attorneys who assisted in the trial were Chris Pinedo, Emily Jeffcott and Rey Pena. WH also assisted extensively in the motion practice and in crafting responses to numerous *Daubert* motions. Mikal Watts also took the lead on the *Batson* issues and filing and arguing the appeal which kept pressure on Gulfstream.

The second bellwether trial was *Dubuclet v. Fleetwood* which was to be held in December of 2009. The case settled before trial, but the designated trial team was Raul Bencomo and Chris Pinedo. Pinedo prepared, produced and presented the following for deposition: Plaintiffs' experts Ervin Ritter, David Moore, Bill Scott, Paul Hewett, Stephen Smulski, and Alexis Mallet. Pinedo also deposed Defense experts, James Wedner, Howard Maibach, Robert James, Phillip Cole, Thomas Fribley, Robert James, and Michael Ginevan. Pinedo also deposed Morgan Building & Spas corporate representative James Schilligo, Fleetwood representatives Steve Smith and Jason Liedeg and witnesses Patricia Farris, Faye Green, and Jessica Guay.

The third bellwether trial was *Lyndon Wright v. Forest River* and was held in March 2010. Pinedo prepared, and presented or took the following depositions: Defense experts Allan Dorris, Corrin Robbins (with Frank D'Amico)., Bruce Kelman, Mark Polk, Donald Snell, John Osteraas, Thomas Fribley, Graham Allan, Phillip Cole, and Robert James. Pinedo prepared and presented for deposition Plaintiff experts Al Mallet, Jr., and Ervin Ritter and presented Bobbie Wright, and Michelle Wright for deposition. This trial team was led by Frank D'Amico. WH team members Mikal Watts, Chris Pinedo and Emily Jeffcott assisted at trial. WH also assisted with pretrial motions, preparing page and line cuts, and exhibits.


EXHIBIT

2 (2)

The fourth bellwether trial was *Castanel v. Recreation by Design* and was held in May 2010. Pinedo prepared, and presented for deposition Plaintiffs' experts Stephen Smulski, Kenneth Laughery, Paul LaGrange, Al Mallet, Jr., David Moore, Paul Hewett, Patricia Williams, and Bill Scott. Pinedo also took the depositions of Recreation by Design corporate representative, Randall Rush, Defense experts, Graham Allen, William Dyson, and Thomas Fribley, and treating doctors Hoang, Bowers, and O'Bryne. Mikal Watts, Chris Pinedo and Emily Jeffcott assisted in the trial. WH also assisted with pretrial motions, preparing page and line cuts, and exhibits.

The fifth bellwether was a summary jury trial, *Robin Lewis v. Gulfstream,* which was held in August 2010. This trial team was led by Tony Buzbee. Mikal Watts and Chris Pinedo assiste d in the trial. Pin edo prepared for and took or presented the following witnesses in deposition: Daniel Porter and Robin Lewis (along with Peter Taffe), Plaintiff's experts Ervin Ritter, Edward Shwery, Patricia Williams, Steven Smulski, Paul Hewett, James Kornberg, and Alexis Mallet, Jr., defense experts James Wedner, Norm Nelson, Robert Maibach, Damian Serauskus, Thomas Fribley and treating doctors, Koppel, Ray, Green, and Du. Although this was a summary jury trial, extensive work was required as three plaintiffs were prepared for trial at once.

The sixth bellwether trial was a "composite plaintiff" against Dutchmen. This summary jury trial was held in March 2011 and the trial team was headed by Gerald Meunier and Justin Woods. Chris Pinedo assisted in the trail. Pinedo took or presented the following witnesses during the discovery phase of this case: Plaintiffs' experts Stephen Smulski, Patricia Williams; Paul Hewett, and Defense experts Lawrence Mayor, and Thomas Fribley. In addition during the run up to the trial, Pinedo took the depositions of Scott Wright and Michael Allred, of the Centers of Disease Control, to counter Joseph Little's harmful testimony.

The seventh bellwether was *Anthony Dixon v. Coachmen*, which was to be held in June 2011. The cases settled days before trial after jury strikes, depositions cuts and exhibits had been exchanged. This trial team was led by Bob Hilliard. Pinedo prepared for and took or presented the following witnesses in deposition: Plaintiff's experts Richard Lubman, Stephen Smulski, Patricia Williams, Plaintiff, Anthony Dixon, Defense experts James Wedner, Thomas Fribley, Robert James and Coachmen employees Gary Duncan, Donald Medd, and treating doctor, Stephanie Surrat. WH attorney Justin Williams also assisted in this case.

The eighth bellwether was a summary jury trial, *Quince Lambert Dolliole v. Jayco*, which was held in January 2012. This trail effort was led by Raul Bencomo and Chris Pinedo. Pinedo prepared for and took or presented the following witnesses in deposition: Plaintiff's expert, Patricia Rosen, Plaintiff Quinice Lambert-Dolliole, witness Youlanda Lambert, Defense expert James Wedner, and Defense witnesses, Joe Miller and Kenneth Thompson.

After the conclusion of the bellwether trails in January 2012, the Court set several

other cases for trial, ten of which were WH cases. Although all these cases were settled, they were worked up to various stages prior to settlement. Over 100 IME's and client interviews were scheduled as these were multiple plaintiff cases. The pressure of these trials against Sunline, Pilgrim, Jayco, Starcraft and Monaco, and WH's willingness to prepare for trial was a significant factor in bringing about a resolution. Those WH trials and cases were as follows:

*Sutton v. Sunline, Jones v. Sunline, Turner v. Sunline,* and *Amos v. Sunline.* Each of these cases required work-up and experts were retained.

*Brumfield v. Pilgrim* which involved 107 Plaintiffs and *Nero v. Pilgrim* which involved 88 plaintiffs. Plaintiffs were contacted and experts were retained.

*Burns v. Jayco* which involved 37 plaintiffs. WH also incurred significant held costs. Pinedo produced Plaintiffs for depositions, met with experts and participated in settlement discussions. The case settled while Pinedo was conducting corporate representative depositions in South Bend, Indiana.

*Morgan v. Starcraft* which involved 13 Plaintiffs. Pinedo produced Plaintiffs for depositions, met with experts and participated in settlement discussions. The case settled while Pinedo was in corporate representative depositions.

*Ralliegh v. Monaco* which involved 12 Plaintiffs and *Jones v. Monaco* which involved 34 Plaintiffs. Pinedo deposed corporate representatives in Oregon and was on his way to New York to depose insurance representatives when the case settled.

In addition to the trials the WH team participated in, Mikal Watts was instrumental in meeting with Defense counsel and reaching agreement on a database that contained all the data in a searchable format to assist in settlement. This database took a substantial amount of work in negotiating and reaching agreement with Defendants on the format and content. The database was used by all parties in crafting a settlement and in ascertaining the total population of vehicles for a given manufacturer. Further, Mikal Watts was instrumental in negotiating extension to the fact sheet deadlines, and a shortened list of key items necessary information so as to forestall the deficiency process. In addition, Mikal Watts, Bob Hilliard and Chris Pinedo attended numerous settlement conferences and mediations to negotiate the cases. Mikal Watts played a key role in reaching agreements and interfacing with Defense counsel at various critical stages of this litigation. Some of the members of the WH team and their respective common benefit hours are as follows: Mikal Watts (2113), Robert Hilliard (704), Chris Pinedo (7377), Adolfo Martinez (197), Belinda Damerow (257), Dee Martinez (409), Emily Jeffcott (1417), Jackie Waters (287), Justin Williams (287), Kevin Grillo (167), Melissa Carlson (184), Roy Pena (459), Other WH members put in additional time. All told, WH members contributed 15,388 common benefit hours. WH also incurred significant held costs during the course of this litigation. The WH was an instrumental factor in bringing these cases to resolution.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUSISANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | § | |
| FORMALDEHYDE | § | |
| PRODUCT LIABILITY LITIGATION | § | MDL NO. 1873 |
| | § | |
| | § | SECTION "N-5" |
| | § | |
| THIS DOCUMENT IS RELATED TO: | § | |
| *COMMON BENEFIT FEE* | § | JUDGE ENGLEHART |
| *APPLICATION* | § | MAG. JUDGE CHASEZ |

**Affidavit**

State of Texas

County of Bexar

BEFORE ME, the undersigned Notary Public, personally came and appeared:

Mikal Watts

who, first being sworn, attested under oath that all of the statements and information made and provided by him in the attached narrative document, are true, correct, and based on first had knowledge.

This done the <u>26th</u> day of October, 2012, <u>San Antonio</u>, Texas.

AFFIANT

Sworn to and subscribed before me,

This 26th day of <u>October</u>, 2012.

NOTARY PUBLIC
My Commission Expires: <u>11/15/12</u>

KIMBERLY EVANS HAYS
Notary Public, State of Texas
My Commission Expires
November 15, 2012

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUSISANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | § | |
| FORMALDEHYDE | § | |
| PRODUCT LIABILITY LITIGATION | § | MDL NO. 1873 |
| | § | |
| | § | SECTION "N-5" |
| | § | |
| THIS DOCUMENT IS RELATED TO: | § | |
| *COMMON BENEFIT FEE* | § | JUDGE ENGLEHART |
| *APPLICATION* | § | MAG. JUDGE CHASEZ |

**Affidavit**

State of Texas

County of Nueces

BEFORE ME, the undersigned Notary Public, personally came and appeared:

Robert C. Hilliard

who, first being sworn, attested under oath that all of the statements and information made and provided by him in the attached narrative document, are true, correct, and based on first had knowledge.

This done the ___29___ day of ___OCTOBER___ , 2012, ___NUECES COUNTY___ , Texas.

_____
AFFIANT

Sworn to and subscribed before me,

this 29 day of ___OCTOBER___ , 2012.

_____
NOTARY PUBLIC
My Commission Expires: ___8/1/15___

Kelly McQuary
NOTARY PUBLIC
STATE OF TEXAS
MY COMM EXP 08-01-2015

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUSISANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | § | |
| FORMALDEHYDE | § | |
| PRODUCT LIABILITY LITIGATION | § | MDL NO. 1873 |
| | § | |
| | § | SECTION "N-5" |
| | § | |
| THIS DOCUMENT IS RELATED TO: | § | |
| *COMMON BENEFIT FEE* | § | JUDGE ENGLEHART |
| *APPLICATION* | § | MAG. JUDGE CHASEZ |

**Affidavit**

State of Texas

County of Nueces

BEFORE ME, the undersigned Notary Public, personally came and appeared:

T. Christopher Pinedo

who, first being sworn, attested under oath that all of the statements and information

made and provided by him in the attached narrative document, are true, correct, and

based on first had knowledge.

This done the _26th_ day of _October_, 2012, _Nueces County_, Texas.

_____
AFFIANT

Sworn to and subscribed before me,

this _26th_ day of _October_, 2012.

_____
NOTARY PUBLIC
My Commission Expires: _10/17/13_

## NARRATIVE DESCRIBING
## BUZBEE LAW FIRM'S COMMON BENEFIT CONTRIBUTION

In the Summer of 2007, The Buzbee Law Firm was contacted by several former clients, Louisiana residents, about news that "FEMA trailers" contained excessive amounts of formaldehyde. As we investigated this issue more, and met with clients, the firm was approached by many other potential clients about retaining the firm to represent them.

After conducting further investigation, the firm filed a multi-plaintiff suit in the Eastern District of Louisiana on August 6, 2007.

Simultaneously, the firm retained several lawyers to Louisiana and Mississippi to meet with clients to further document the claims. Also, the firm retained an industrial hygienist to begin testing the firm's client's travel trailers for formaldehyde levels. Peter Taaffe, a senior lawyer at the firm, spent weeks in Louisiana meeting with clients and assisting with coordination of testing trailers in Louisiana and Mississippi. This included testing services provided by Devany Industrial Consultants and TES of Louisiana.

During this time, Tony Buzbee and Peter Taaffe, met several times with members of the press, leading to several nationally-distributed news articles about the excessive levels of formaldehyde in travel trailers.

In the Fall of 2007, the litigation was consolidated into Multidistrict Litigation before Judge Engelhardt. Tony Buzbee was selected to serve on the Plaintiffs' Steering Committee.

In 2008, as the MDL focus was on class certification, the firm's focused on identifying its clients who would best serve as class representative plaintiffs and then presenting clients for numerous class representative depositions. Tony Buzbee deposed several Gulf Stream Coach corporate representatives in July 2008, relating to the class certification issue. Buzbee handled all Gulf Stream executive depositions in the case.[1] Peter Taaffe also took the deposition of Coachmen corporate representatives in August 2008, relating to the class certification issue.

Peter Taaffe served as an associate member of the discovery committee. Among other things, Peter took the laboring oar on sending third party subpoenas to several industry groups including the Formaldehyde Council, the RVIA, RVDA, IMHA, MHI, IWPA, and on obtaining documents under FOIA requests from Texas governmental agencies. This included dealing extensively with the third parties' outside counsel.

In 2008, the firm also assisted the "Law Committee" in responding to defendants' various 12(b)(6) motions and on other issues.

Our firm also set up and maintained a public information website on the litigation.

---

[1] Although some other attorneys attended the initial depositions, they asked no questions.


EXHIBIT

X (3)

Peter Taaffe attended congressional hearings in July 2008 and Tony Buzbee worked with a Congressional office to prepare favorable questioning at a separate congressional hearing. The firm provided additional information to other congressional offices as well.

During this time, Peter Taaffe and Tony Buzbee also worked with the Expert Committee to help identify and retain experts.

Tony Buzbee headed the PR Committee with Raul Bencomo and developed several news stories relating to the case.

In 2008, the firm also continued to work with its testing experts to test the firm's client's trailers as well as other plaintiff's trailers. Peter Taaffe traveled several times to Hope, Arkansas to test trailers and mobile homes, with testing experts.

After the Court denied our motion for class certification, 2009's focus was on the first bellwether trial, *Alana Alexander v. Gulf Stream, et al.* Tony Buzbee took all of the Gulf Stream employee depositions. The firm hired an investigator, placed ads, identified and obtained statements from several former Gulf Stream employees. The firm worked with the plaintiff and her family, and defense counsel, with respect to testing the trailer, preparing for deposition and IME's. The firm propounded and responded to discovery. The firm continued its work developing experts and reports, presenting experts for deposition and taking expert depositions in the case. The firm coordinated and conducted an initial focus group and then a mock trial related to the first bellwether trial. The firm was extensively involved in pre-trial motion practice and responses, and trial preparation. The firm participated extensively in the trial, handling opening statement, the second closing, directs of the plaintiffs, and crosses of most of the witnesses. The firm participated extensively in post-trial briefing as well.

In 2010, the firm was extensively involved in the second Gulf Stream bellwether "summary jury trial." This time, there were three plaintiffs, a primary and two backups. The firm had the lead on working with each of the plaintiffs, including preliminary investigation, prepping and presenting for deposition, handling trailer and home inspections, working with experts, preparing and presenting experts for deposition, deposing numerous Gulf Stream employees, and identifying, taking statements from and deposing several former Gulf Stream employees. The firm propounded and responded to discovery. The firm was extensively involved in all pretrial matters and participated extensively at the trial.

In 2011, the firm did preliminary work on a Palm Harbor bellwether trial, before the manufactured home settlement was reached. After the manufactured home settlement, the firm set up an informational website on the manufactured home settlement. The firm provided several class representatives to support the manufactured home settlement.

In 2012, the Court set several of the firm's cases for trial. One, a Forest River trial, involved seven plaintiffs. The firm propounded and responded to discovery. The firm prepared and presented the clients for deposition. In a second trial setting, involving Gulf Stream and over 90 plaintiffs, the firm propounded and responded to discovery. In a third, involving Sunline and two plaintiffs, the firm propounded and responded to discovery.

In the Spring of 2012, the PSC reached preliminary settlement agreements with several defendants.   The firm has assisted with providing class representatives to assist with the settlement process.

Along the way, firm attorneys met numerous times in person, by phone, and email with its colleagues on these common benefit efforts.

The firm, along with two others, purchased a building to act as the Claims Center. The building was used by the group for a long period of time, <u>rent free</u>.

The firm was called upon to loan a significant amount of money to the PSC. The money was paid back.

The firm put cases in state court, which was good leverage for the efforts of the case.

Also, the firm fronted extensive expenses on common benefit work, some of which has been credited towards the firm's assessment ledger, but over $66,000 that remain "held."

## Raúl R. Bencomo Common Benefit Contribution Narrative

Undersigned has been one of the most active members of the PSC since his appointment by Judge Engelhardt in December 2007. Mr. Bencomo's participation is as follows:

### Washington, D.C. / Media / Medical Monitoring

The undersigned made three trips to Washington, D.C. during the early stages of the litigation. The first involved meetings with members of the Senate Homeland/Housing Committee in an effort to further the Senate's involvement with the FEMA victims. The second involved attendance at the Science and Technology Committee's Hearing on FEMA Trailers. The third trip involved meeting with Hispanic Congressional Caucus Staff and with Congressman Waxman's Chief Investigator on the House Oversight Committee. During the course of these trips, Mr. Bencomo also met with Senator Landrieu, members of her staff, and others. He also participated in meetings with Ron Faucheux to discuss political solutions to medical monitoring issues.

In early 2008, Mr. Bencomo also participated in a press conference at the FEMA facility on the West Bank, which was carried by a number of media outlets. Additionally, he attended a number of community informational meetings in St. Bernard and Orleans Parish.

In addition to the above, Mr. Bencomo helped edit a number of press releases that were being circulated on our behalf. These press releases were done in conjunction with Tony Buzbee's office, since Mr. Bencomo and he were both heading up the Public Relations Committee. He also participated in meetings and phone conferences with Norma Jane Sabiston and her colleagues on these issues.

### Claims Office

In spite of the fact that the undersigned had limited resources, he stepped up to the plate when a request came from Liaison Counsel for staffing the Claims Office. Ms. Elaine Bates worked on behalf of Bencomo & Associates and logged in a total of one thousand four hundred eighty-two hours (1,482). Likewise, Ms. Elise Borruano also worked at the Claims Office on behalf of Bencomo & Associates and logged in four hundred thirty-nine (439) hours. Both Ms. Bates and Ms. Borruano performed any and all tasks assigned to them by those in charge of the Claims Office. At no time did undersigned claim payments made to either individual as "held costs."

### Assessments

Undersigned paid his assessments, since their inception, **on or before the Committee-imposed deadlines.** As Liaison Counsel is well aware, not everyone did so in a timely manner, which burdened the mother's milk of all significant litigation, the funding of the case as required. Although some may not consider this a significant factor when dealing with the issue of apportioning fees from a limited fund, it is important to recognize the fact that if those who paid by the Committee-imposed timelines had also failed to do so, the consequences would have been disastrous in a case(s) that faced almost insurmountable hurdles during its lifespan.

### Insurance Policies and Reviews Thereof

Early on, the undersigned was assigned the responsibility of reviewing and researching defendants' insurance policies. A comprehensive review of the (approximately 39) policies provided by defendants (primary/excess/umbrella) was performed by undersigned as soon as he was provided the pertinent policies and sent to all members of the PSC. That review specifically identified the various applicable exclusions (i.e., pollution, formaldehyde-specific) and was made available to everyone on the PSC. During several of the early PSC phone conferences, Mr. Bencomo specifically made the members aware of the potential pitfalls (i.e., the high deductibles, formaldehyde exclusions) only to be met with "damn the torpedoes, full speed ahead." Regardless, the research was undertaken early and the results disseminated for all to see. The only other research that was conducted on insurance policies occurred towards the latter part of the litigation and was performed by the offices of Liaison Counsel.

### Depositions

Mr. Bencomo personally monitored and/or participated in approximately forty-six (46) depositions. Of the ones that he took or defended, approximately one dozen or more required out-of-



state travel. The travel included several trips to Riverside, California (**Fleetwood**), South Bend, Indiana (**Recreation by Design** and **Jayco**), Houston (**Recreation by Design**), Austin, Texas (**Recreation by Design**), and Birmingham, Alabama (**Circle B Enterprises**). Locally, Mr. Bencomo participated in depositions throughout the metropolitan area involving witnesses, medical doctors, and other experts retained by various defendants. To list every deposition taken or defended by Mr. Bencomo would not allow him to keep the three-page limit for this narrative. However, he incorporates them herein for purposes of the fee allocation.

## PSC Meetings/Conference Calls

Mr. Bencomo participated in at least ninety-three (93) conference calls and numerous in-person PSC meetings. To the best of his knowledge, his participation in these was in the 98+ percentile.

## Motions/Pleadings

In preparation for the **Dubuclet/Castanel/Dolliole** trials, Mr. Bencomo personally prepared and argued numerous Motions, Memoranda, Oppositions to Motions in Limine, Motions in Limine, Motions to Strike and other pleadings leading up to the conclusion of these matters. To list every motion and pleading submitted to the Court by Mr. Bencomo in this litigation is impossible due to page limitations, but the fact that the effort was significant should be noted.

## Court Appearances

Mr. Bencomo appeared in Court for Court-ordered conferences or other conferences re: specific trials on at least twenty-four (24) occasions.

## Trailer Inspection

In connection with Mr. Bencomo's preparations for the **Fleetwood Trial**, he traveled to Lottie, Louisiana, where he met and consulted with our experts who were conducting the inspection of the **Dubuclet** trailer. No inspections of the Recreation by Design (**Castanel**) nor Jayco (**Dolliole**) trailers took place since they couldn't be located.

## Trials

Undersigned specifically prepared three cases for trial: **Elisha Dubuclet on behalf of Timia Dubuclet v. Fleetwood Enterprises, Earline Castanel v. Recreation by Design, and Quiniece Lambert-Dolliole v. Jayco**. The first case resulted in a recoupment of expenses. However, the case was ready to be tried; all discovery, depositions, etc. had been undertaken by Mr. Bencomo against **Fleetwood** when it became apparent that the case needed to be settled. Regardless, the case was "in the can" and ready to be tried by the undersigned.

The next trial assignment that undersigned took was that of **Earline Castanel v. Recreation by Design**. Mr. Bencomo, as lead trial counsel, took the majority of the depositions and was ready to try the case only to learn, after many hours spent by him in discovery and depositions in and out of state, etc. and virtually on the eve of trial for all practical purposes, that Mikal Watts would try the case. This surprising news came to Mr. Bencomo upon his return from Manresa, when he learned from a voice message that a change in plans had occurred. Regardless, discovery had been completed by Mr. Bencomo and several of the depositions that he took were played to the jury by the Plaintiffs' team in lieu of live testimony.

**Quiniece Lambert-Dolliole v. Jayco** was the last Summary Jury Trial and, for that matter, the last trial to take place in connection with this litigation. After suffering losses in all of the previous trials and summary jury trials, the jury in **Dolliole** returned hung, which is the closest that anyone had ever come to winning one of these cases. In addition, the cross examination of Dr. James Wedner by undersigned totally neutralized his testimony and was structured in such a way that defense counsel wasn't able to ask a single question on re-direct, leaving the jury with Plaintiffs' cross examination of Wedner as the last thing that they heard from this expert. There is no question in the undersigned's mind that the defendants became keenly aware of the damage that had been done to Dr. Wedner and this fact was even conveyed by defense counsel to Mr. Dan Balhoff, which helped with settlement negotiations and ultimately settlement with all outstanding Defendants.

## Settlement/Mediation

The first case to settle was that of Fleetwood, which was undersigned's direct responsibility. Even though Mr. Bencomo had traveled to Riverside, California, on a number of occasions to participate in discovery with that particular Defendant and even though he felt that he could win this trial, it soon became apparent to him that, in the end, we would be facing nothing but a Pyrrhic victory. As you know, Fleetwood was not only bankrupt, but their insurance policy was self-depleting. The better part of valor was to settle the case once this became apparent, thereby allowing us to receive reimbursement for our expenses.

Undersigned was also part of the "Settlement Team" led by Liaison Counsel that negotiated with Manufacturers, Setup Contractors, and Insurers, including Interstate Fire and Casualty Company, Lexington Insurance Company, Westchester Surplus Lines Insurance Company, and Arch Specialty Insurance Company. This area alone could take several paragraphs, but Liaison Counsel is aware of undersigned's involvement in settlement negotiations.

## THE JOHNSON FACTORS
### Risk

Both Leslie Schiff and Professor Dane Ciolino consider this to be one of the most significant, if not the most significant, of the **Johnson factors**. A firm that has unlimited financial resources or several law partners to apportion the risk is not as "at risk" as the individual who bears 100% of the risk ($502,500 in assessments and thousands of hours) and has limited financial resources. These figures do not include the "held costs" incurred by Mr. Bencomo in travel, lodging, document preparation, trial exhibits, etc. It is important to note that not everyone seeking fees incurred "held costs" and their participation may have only been limited to paying assessments and nothing more. It is for these reasons (money and time invested) that the jurisprudence, as well as the experts in the field, recognize the risk undertaken as bearing particular significance when awarding fees amongst counsel.

### Preclusion of Other Employment

Due to the severe timelines imposed by the Court, coupled with the fact that there was but a small core of lawyers actively involved in prosecuting this case from beginning to end, undersigned counsel was precluded from undertaking other significant employment during the course of this litigation. Since counsel is not with a firm whose duties and responsibilities can be shared, he participated in any and all responsibilities assigned to him in this case in spite of the fact that this litigation (FEMA) soon became a "can't win" proposition. When others abandoned ship, he kept the laboring oar assigned to him on course and never wavered from seeing this matter to its ultimate conclusion. Leslie Schiff, an expert in the area of lawyer ethics, including dealing with the issue of attorneys' fees, is on record as believing that the preclusion of other employment is a significant factor when taking into account a lawyer's contribution in class action/mass tort litigation and the awarding of attorneys' fees.[1]

### Other Johnson Factors

Mr. Bencomo's hourly fee in cases such as this is in the $400-$500 per hour range. Undersigned has been practicing law for 37 years, is AV rated, and has been named to Louisiana Super Lawyers with a specialty in class actions/mass torts for a number of years.

### Conclusion

While others had "other fish to fry" or partners to spread the risk and bring in other revenue during the five years it took to bring this case to a conclusion, the undersigned bore the great risk that this litigation posed. As such, he should be remunerated accordingly taking into account his efforts and the **Johnson factors** and other jurisprudence pertaining to the awarding/apportioning of Attorneys' Fees.

---

[1] Undersigned concurs with the current law that some of the Johnson Factors are subsumed within the hourly fee, but this is not the case with the Risk involved or the Preclusion of Other Employment.

Date:        **October 16, 2012**
To:          **PSC - In re: FEMA Trailer Formaldehyde Products Liability Litigation**
From:        **The Lambert Firm, PLC (formerly Lambert & Nelson, PLC)**
Re:          **Common Benefit Contribution Narrative**

Lambert & Nelson, PLC (Hugh P. Lambert and Linda J. Nelson) - with a combined seventy-three years of extensive class action and mass tort experience - dedicated, a senior lawyer, Linda Nelson to this case full-time. Hugh Lambert also dedicated a considerable amount of time to this litigation. Additionally, Lambert & Nelson, PLC dedicated an associate attorney, two contract attorneys and its staff of paralegals, secretaries, and couriers who assisted not just Lambert & Nelson, PLC, but other members of the Plaintiffs' Steering Committee ("PSC") and Trial Teams during all phases of discovery, depositions, class certification and trial preparation.

Linda Nelson was appointed to the PSC and served as Co-Chair of the Discovery Committee, on the Experts Committee and Trial Committee. Hugh Lambert served as Co-Chair of the Expert Committee as well as on the Audit and Finance and Trial Committees. Lambert & Nelson, PLC associate attorney, Alexis Bevis, served on the Law and Discovery Committees and Lambert & Nelson, PLC contract attorney, Jonathan Adams, served on the Law Committee.

Hugh Lambert and Linda Nelson were primarily responsible for working with in excess of seventeen experts in different fields of expertise to prepare the experts for depositions and their reports for the class certification hearing and bellwether trials. Much of the crucial testimony used in preparation for class certification and bellwether trials were elicited during these essential depositions. Both Linda and Hugh worked closely with the PSC experts (including, but not limited to, Marco Kaltofen, Dr. Hewett, Al Mallet, Jr., Charles David Moore, Bill Scott, Dr. Smulski, Dr. McGwin, Dr. Williams, Lee Branscome, Dave Barnes, Ervin Ritter, Gary Bunzer, Mary DeVany, Paul LaGrange and Reagan Johnson) to prepare each of them for their deposition and trial testimonies. We researched and read various scientific journals and textbooks to learn the science related to formaldehyde off-gassing and the engineering related to the construction and jacking-up of Emergency Housing Units/Travel Trailers ("EHUs").

Additionally, Hugh worked with Reagan Johnson to create the EHU animations and with Al Mallet, Jr. and Charles David Moore, PE, PLS to create two demonstrative exhibits of a proper and improperly built wall of an EHU. These exhibits were used in the bellwether trials. These animations and demonstrative exhibits were time consuming, required a great deal of knowledge and were essential exhibits to demonstrate to the jurors how the EHUs were manufactured and how formaldehyde off-gassing occurred.

Linda was an essential member of the Discovery Committee. Our office drafted and sent numerous Requests for Production of Documents, Interrogatories, Third Party Subpoenas and Freedom of Information Act requests during the class certification phase



and noticed depositions for the vast majority of class certification depositions and numerous bellwether trial depositions. We created binders and brought all relevant documents to these depositions and prepared questions for all of these deponents.

Hugh participated in eleven class certification depositions (six fact and five expert), first chairing three, second chairing six and participating in two others. During the Alexander Bellwether Trial Hugh took four expert depositions, first chairing two and second chairing two. During the Dubuclet Bellwether Trial Hugh took three expert depositions, first chairing two and second chairing one.

Linda participated in five class certification depositions (three fact and two expert), second chairing one of these depositions. Linda, our office staff, and contract attorney, Candice Sirmon, prepared the deposition documents for sixty-one of the class certification depositions (including both expert and fact witnesses). During the Alexander Bellwether Trial Linda participated in two expert depositions, second chairing one and our staff prepared documents for eight fact witness depositions. Furthermore, Jonathan Adams, a contract attorney for our firm, attended six class representative depositions, first chairing five of the depositions.

Our firm organized and created the Class Certification binders for Judge Engelhardt, PSC members and defendants' liaison counsel. Our office also drafted the Pre-Trial Order for the Class Certification Hearing, which was four hundred and eleven pages long. Furthermore, our office compiled the extensive witness and exhibit lists that were used for the Class Certification Hearing and bellwether trials that followed.

Our firm worked with experts such as Marco Kaltofen, Mary DeVany and Bill Scott to draft and finalize the testing protocols to measure formaldehyde levels in EHUs and coordinated the PSC's testing of occupied EHUs. Linda and our office also led and coordinated the testing of stored EHUs and the creation and maintenance of the testing database. Linda worked with experts Dr. Hewett, Mary DeVany and Marco Kaltofen to create the statistical model used during the Class Certification Hearing and bellwether trials. During the bellwether trials our office also coordinated the experts' inspections of the plaintiffs' EHUs.

Candice Sirmon worked with Dr. Hewett to ensure that a statistically accurate number of each manufacturers' EHUs were tested prior to the Federal Government's disposal of their EHU inventory. This testing required coordinating the schedules of three groups of the PSC's testers, the Federal Government's staff and defendants' testers at fifty sites across various states. This process also required identifying how many EHUs of each manufacturer to test at each site. Candice also coordinated the matching process for all plaintiffs' counsel and maintained the responses and data. Additionally, Candice coordinated the Individual Assistance ("IA") file requests with FEMA for all plaintiffs' counsel. Our office created a spreadsheet of manufacturers' insurance policies and the applicable exclusions and limits for each policy received from defendants. Candice also

reviewed the Defendant Profile forms and noticed defendants of any deficiencies and maintained these documents.

Our office was the document depository for class certification and bellwether documents. Our office maintained copies of documents electronically and in hard copy as well. Whenever anyone needed documents in this case, we were the "go to" law firm for documents. Additionally, because our office maintained the testing database, we fielded innumerable telephone calls and email requests for individual and manufacturer specific testing results. Candice also assisted numerous plaintiffs' firms with matching vehicle identification numbers and bar codes with manufacturers and contractors, along with assisting with other matching issues.

Our staff organized, bates numbered and produced all expert files and plaintiffs' documents used during class certification and bellwether trials. We reviewed the entire document database of all documents obtained from defendants and third parties and identified "hot" exhibits to use during depositions, the Class Certification Hearing and bellwether trials. Our staff also received, organized and maintained the deposition transcript library. Furthermore, our paralegals and secretary made the travel and hotel arrangements for the majority of the experts in this MDL.

Linda participated in each and every Plaintiffs' Steering Committee telephone conference on Tuesdays at 11:00 a.m. and attended virtually every status conference and every Hearing/Motion before the Court, often assisting the other attorneys arguing before the Court. Our firm also drafted and filed pleadings including Appellant Raymond Bell's appeal of his dismissal with prejudice to the Fifth Circuit Court of Appeals and Plaintiffs' Opposition to Bechtel National Inc.'s Rule 12(b)(6) Motion to Dismiss on grounds of government contractor immunity. The entire staff at Lambert & Nelson, PLC made extensive copies (approximately 149,604 copies), organized documents, typed and filed pleadings and maintained the entire file in an extremely organized manner so that we became the firm relied upon by the Trial Teams for materials necessary for trial preparation.

Throughout this case we gladly volunteered our offices for depositions, PSC meetings, executive committee meetings, trial team meetings, trial preparation and as a place for out-of-town attorneys to work. Our office made thousands of copies and frequently served lunch and refreshments to all participants. Our office equipment including, but not limited to, computers, copiers, facsimile and postage machine were used to support the litigation of this MDL. During the settlement process our firm continued to provide support by creating the testing cost analysis for all EHUs manufactured by Fleetwood and for all manufactured homes. Throughout the class certification and bellwether trials our firm dedicated full-time Linda Nelson, Candice Sirmon, and two paralegals to this MDL litigation.

THE LAW OFFICES OF

Frank J. D'Amico, Jr.
Frank J. D'Amico, Jr.
David J. Mitchell

A Professional Law Corporation



Of Counsel
Michael A. McNulty, Jr.
Darryl J. Carimi
** Licensed in New York

October 17, 2012

Jerry Meunier
Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163

     Re: *In Re: FEMA Trailer Formaldehyde Products Liability Litigation*
       *Case Number: 2:07-md-01873*

Dear Mr. Meunier:

     I am writing this narrative in response to Judge Englehardt's recent approval of the "Common Benefit Cost Reimbursement" and the "Common Benefit Fee." This narrative serves as an official request from my firm to be refunded my contribution to said common benefit reimbursements and fees.

     The Law Offices of Frank J. D'Amico, Jr., APLC has been heavily involved in all phases since the inception of this litigation. Initially, I was appointed as one of the original members of the Plaintiff Steering Committee (PSC). Soon thereafter, I jointly purchased a building to process claims which benefited others associated with the prosecution of claims involved in this matter. Ten (10) staff members were hired by my firm to perform various works on claims, such as intakes, gathering all necessary medical and trailer related documentation, assisting clients in filling out Plaintiff Fact Sheets, and mail-outs to clients. I along with Matt Mooreland, ran the claims office for two years.

     Before and during litigation phases, I was responsible for bringing the majority of experts to the table including Patricia Williams (Toxicology Expert), Stephen Smulski (Wood Expert), and Stephen Mallet and Paul LaGrange (Construction Experts). Further, I deposed most toxicologists and was in charge of prosecuting claims against Forest River. Specifically, I tried *Wright v. Forest River, Inc. et al* (Case No. 9-2977), the only Bellwhether case, which included a Contractor Defendant Shaw Environmental and lasted two (2) weeks. I spent nearly $500,000 on this trial and took six (6) months to prepare while assisting the PSC by conducting seminal depositions of Forest River and Shaw Enterprises and expended roughly $3.2 million in the prosecution of FEMA claims.

     My firm has brought the litigation critical mass. My firm represents either individually or in common with other attorneys, 8,000 clients. I have expended hundreds of hours personally and

**NEW ORLEANS OFFICE**
622 Baronne St.
New Orleans, LA 70113
(504) 525-7272 • Fax (504) 525-9522

**NORTHSHORE OFFICE**
4407 Highway 190 East Service Road, Suite 100
Covington, LA 70433
(985) 893-4443 • Fax (985) 893-3951

Toll Free 866-70-FRANK    www.damicolaw.net

*Proudly serving the interests of injured people across Louisiana since 1986.*



have traveled to Atlanta, South Bend, and Seattle for depositions.

This case has taken up most of my attention for the past five (5) years that I have been involved. I hope this narrative gives you some feel for my involvement in this case and, quite candidly, this case has been a huge drain on my firm. I would certainly have been better served to have invested $100,000 in thirty individual drug and product cases and yielded a much better result. This is a sentiment I am sure that we all feel now.

Finally, to date, my firm is current on all assessments which total $516,938.23 including the $100,000 advanced to my firm for the prosecution of the *Wright v. Forest River* trial, my firm has a considerable amount of hours billed, I have attended every status conference and meetings, and I have been ready and willing to perform every task called upon.

With the kindest regards, I remain

Sincerely yours,

Frank J. D'Amico, Jr.

**NEW ORLEANS OFFICE**
622 Baronne St.
New Orleans, LA 70113
(504) 525-7272 • Fax (504) 525-9522

**NORTHSHORE OFFICE**
4407 Highway 190 East Service Road, Suite 100
Covington, LA 70433
(985) 893-4443 • Fax (985) 893-3951

**Toll Free 866-70-FRANK       www.damicolaw.net**

*Proudly serving the interests of injured people across Louisiana since 1986.*



# Reich & Binstock, LLP

A Limited Liability Partnership Including Professional Corporations

Toll Free:
1-800-622-7271

www.reichandbinstock.com

## Attorneys & Counselors at Law

Dennis C. Reich *+π
Robert J. Binstock *#

4265 San Felipe, Suite #1000
Houston, TX 77027
Phone: 713-622-7271
Fax: 713-623-8724

Shari A. Wright
Charles C. Hunter
Eric O'Steen

* Board Certified Personal Injury Trial Law
  Texas Board of Legal Specialization
+ Admitted State Bar of California
π Admitted State Bar of New York
# Board Certified Civil Trial Advocacy
  National Board of Trial Advocacy

Debra Brewer Hayes
(Of Counsel)

October 17, 2012

**07-MD-1873 FEMA Trailer Formaldehyde Products Liability Litigation**

**Memo: <u>PSC Fee and Cost Reimbursement for Reich & Binstock, LLP</u>**

Reich & Binstock has made a significant contribution to the development and prosecution of the Plaintiffs' claims in In re *FEMA Product Liability Litigation MDL 1873*. As evidenced by the most recent record of Bourgeois Bennett, LLC, Reich & Binstock has spent **$505,261.00** for PSC assessments, **$446,559.92** in reimbursable held costs for a total out of pocket amount of **$951,820.92**. Reich & Binstock, has contributed the following Committee hours:

| | |
|---|---|
| Dennis C. Reich (as PSC member) | 2,603.78 |
| D. Reich subscribing attorney prior to PSC appointment | 330.00 |
| Shari Wright (attorney hours) | 616.00 |
| T. Beard, A. Snoddy, C. Wiese (Paralegal hours) | 1,047.45 |
| T. Hargrove, O. Herrington, A. Cronin, C. Hudson (Claims office personnel): | 7,227.13 |

Dennis Reich played a pivotal role in the development of the medical causation case for the FEMA litigation. He worked extensively with all of the medical, toxicological, and epidemiological experts retained by the PSC. At the class certification hearing, he cross-examined Dr. Wedner, the only expert called by the Defendants. He deposed the principal epidemiological, toxicological, and medical experts retained by the Defendants for the bellwether cases. He also deposed numerous treating physicians and independent medical examiners hired by the defendants.



As trial counsel in the *Wright* case, Mr. Reich was responsible for medical causation, presenting and cross-examining the medical and scientific expert witnesses, and delivering the scientific evidence portion of the final argument. As lead counsel in the *Castanel* case, he presented and/or cross-examined the medical experts.

For the *Alexander* trial, Mr. Reich, together with Jerry Meunier, travelled to Atlanta to depose Christopher De La Rosa, a prominent toxicologist at the CDC. Mr. Reich also accompanied Mr. Meunier to Washington DC to participate in the deposition of the corporate representative for the Formaldehyde Institute. Additionally, Mr. Reich argued the Appeal to the Fifth Circuit of the dismissal of the United States as a defendant in the *Alexander* case.

Mr. Reich served as lead counsel in the *Sun Valley* case. During the litigation, Brent Maggio, defense counsel for *Sun Valley*, never missed a billing opportunity. Ms. Wright and Mr. Reich drafted pleadings, served and responded to discovery requests, and took and defended numerous depositions. Ultimately, the combined efforts of Justin Woods, Jerry Meunier, and Mr. Reich led *Sun Valley* and the other manufacturers insured by the same carriers to settlement.

Shari Wright is a Reich & Binstock employee. Ms. Wright has been practicing law for over 20 years. She contributed at total of 616 hours to the FEMA litigation. She served as an active member of the briefing teams for the *Alexander, Dubuclet, Wright*, and *Castanel* cases, as well as coordinating the *Castanel* briefing. She also wrote the *Castanel* appellate briefs. In the *Sun Valley* case, she participated in every aspect of the litigation, including presenting and deposing fact and expert witnesses.

In addition to the above, Reich & Binstock hired and paid staff for the Claims office. Together they logged thousands of hours of common benefit work. Cynthia Wallace and David McClendon were full-time attorneys who were hired by Reich and Binstock that worked on several of the bellwether cases and also did work in the claims office. Amanda Cronin, Crystal Hudson, Kristen Despommier, Oana C. Herrington, Jennifer Reavis were the Claims office paralegal personnel, including the lawyers totaled **$178,834.83** .

In light of the foregoing, Reich & Binstock requests reimbursement of total out-of-pocket expenses (PSC assessments & held costs) in the amount of **$951,820.92.** In addition, Dennis Reich requests at least 15% of the common benefit fees, **$929,424.00**[1], a n a mount that is significantly less than his lodestar alone[2]. Therefore, Mr. Reich believes that a fair and reasonable fee and cost reimbursement equal **$1,881,244.90.**

REICH & BINSTOCK, LLP

*//s// Dennis C. Reich*

Dennis C. Reich

---

[1] .15 x $6,196,159.92= $929,424.00 (Common Benefit Fees)
[2] 2,603 hours x $550 per hour = $1,431,650.00

**MEMORANDUM**

TO:        **FEMA TRAILER LITIGATION PLAINTIFFS STEERING COMMITTEE**

FROM:     **MATTHEW B. MORELAND**

RE:       **NARRATIVE REGARDING CLAIM FOR COMMON BENEFIT FEES**

      Please allow this brief narrative serve as an explanation of the contribution made to common benefit work by Matthew B. Moreland and Becnel Law Firm, LLC. Our firm was the second firm to file a FEMA Trailer lawsuit and from then forward we continually worked in the common benefit process first moving for the establishment of an MDL and proceed to work as a uniform team with a PSC as an active member of such. After my appointment to the PSC, our firm continued to process clients and bring people into the fold of litigation so that way everyone could participate. We attended all PSC meetings and calls and worked on numerous projects from matching with the government on not only our own clients but assisting other counsel to provide a unified effort on the trailer ID matching project. This group work included a great amount of initial discovery from interrogatories prepared for defense and answered on behalf of the first filed clients.

      I also worked diligently with other members of the PSC to develop the plaintiff fact sheet then had several meet and confers with defense (manufacturers and the government). Upon finalization of this we agree with two other members of the PSC to purchase a building to house the claims office and with the help of Frank D'Amico we hired a staff to work the entire litigations PFS's at the claims office. I worked with Louie (the IT guy) to develop a program and database system that is still used to this day to provide information as to claimants and their PFS info as well as trailer matched info obtained. I set up a phone system, copy and scan system and kept the office stocked with supplies from toilet paper to copy paper. I worked diligently for weeks on the consolidated amended complaints with many other long nights at the claims office finding representative clients for each defendant. I managed the office on a daily basis overseeing the entered results, coordinating with the paralegal in charge of scheduling and staff hours (Courtney Hymel). I met with client to complete PFS's and for months stayed at the office working during the days and late nights keeping the systems up and running and burning disc after disc of information to provide to lead defense counsel. The was done on a rolling process and I did everything from review the files, to burn them to disc to hand deliver them to defense personally to ensure all deadlines were met. I stayed at the office repeatedly sifting through and sorting information and files to obtain potential trial candidates. I interviewed occasionally along with other lawyers the trial candidates to vet any potential issues as well as worked with an investigator to confirm background information for these trial candidates. I personally filed suits



on behalf of and was made counsel for the numerous lawsuits on behalf of the PSC's shared clients-clearly a job of common benefit for all represented.

Our firm also provided several attorneys working at the claims office which were paid exclusively by the Becnel Law Firm. To be clear, these attorneys' hours are all that has been submitted-not a held cost for their pay. In addition to myself, they included the work of Will Percy, Candice Sirmon, Chance White, Retired Judge Ruche Marino, Marisha Fraaza and Dionne Dubarry. All of these persons time has been submitted to Bourgeois Bennett via the Becnel Law Firm along with both my time and that of Daniel E. Becnel, Jr. I believe this claims office work was essential as it provided the foundation for the critical mass finally organized and utilized to obtain a settlement. This claims office work new and existing client intake and fact sheet completion, form 95 completion and submission, client screening for bellwether participation, client interview and background evaluation and medical records request and review. I also personally participated in two mock trials and their preparation in advance of the mock trials and preparations. I often was called upon to provide critical information for hearings and motion practice both on the review side of the motion practice and the numerical breakdown side of the clients.

Aside attending and assisting in depositions of some defense parties and defending several plaintiffs, I served repeatedly in the audit function from reviewing everything from PSC time to Mary Devany's hotel bills. Lastly, I coordinated and filed not only our clients in Mississippi, Alabama and Texas but that of several other PSC and non PSC members who needed these cases filed. This not only benefited others besides myself and PSC and nonPSC members (and of course their clients) it also led to critical mass and allowed defense to get a final survey of how many clients were out there to provide actual filed claims. It is interesting that this was the last straw before a final settlement was actually open for discussion. There is of course much additional time and information which was detailed in the time logs submitted to Bourgeois Bennett and I encourage you to review that in evaluating my extensive contribution on behalf of myself and the Becnel Law Firm, LLC.

For the above reasons we are asking for full payment of all submitted time and expenses for our contribution as well as a fair but equal multiplier to all on the PSC.

### NARRATIVE OF ROBERT M. BECNEL & DIANE K. ZINK
### DESCRIBING COMMON BENEFIT CONTRIBUTIONS
### REGARDING FORMALDEHYDE LITIGATION

I was part of the FEMA Litigation from the very beginning, attending the initial meeting at the home of my brother, Daniel E. Becnel, Jr., in LaPlace. After the formation of the PSC, I was a subscribing member, having always paid my assessments. At the request of the PSC, I traveled to Washington, DC to attend congressional hearings and lobby the Consumer Products Safety Commission on behalf of the plaintiffs.

I am a sole practitioner along with my wife, Diane K. Zink. At the request of Gerald Meunier, we were asked to set up the Plaintiff's Claims Office on Canal Street. Diane K. Zink, as Attorney/Manager of the claims office, worked 219.60 hours at the claims office. Gerald Meunier tasked me with reviewing all of the Plaintiff Fact Sheets, culling these forms for potential Trial Plaintiffs as Class Representatives. I spent 127.30 hours performing this assignment at the claims office.

Additionally, I spent 94.80 hours preparing and defending expert and/or plaintiff depositions. Diane K. Zink spent 19.40 hours defending plaintiff depositions.

All of the claims office work and depositions required both Diane K. Zink and myself to be away from our office which is located in LaPlace. Additionally, all of the above work was performed under the direction of the PSC by work orders signed by Gerald Meunier, Raul Bencomo and Matthew Moreland.

Pursuant to the Court's Order dated June 4, 2009 (Doc. 1679) I was appointed to the PSC.

Additionally, Diane K. Zink, at the request of the PSC, performed a detailed audit of Mary DeVany's billing records and invoices to the PSC.



October 16, 2012
Re: Robert M. Becnel & Diane K. Zink
Narrative

---

I have attended virtually all of the Court Status Conferences, PSC Telephone

Conferences, PSC Meetings, the Fairness Hearings and some of the trials.

I have paid all of the assessments required by me as a Subscribing & PSC Member.

Likewise, I timely submitted all of my time sheets and held expenses as required by the Court.

We all know that due to circumstances beyond our control, we did not receive the results

we had hoped for, however, we achieved the best result we could on behalf of our clients.

I enjoyed working with everyone in this case and place my trust in liason counsel to be

treated fairly.

TOTAL HOURS:       1,099.60 as of 12/31/2011.

HELD COSTS:        $3,912.60

ASSESSMENTS:       $502,500.00

With kind personal regards,

ROBERT M. BECNEL #14072

DIANE K. ZINK #7536

LAW OFFICES OF ROBERT M. BECNEL
425 West Airline Highway
Suite B
LaPlace, LA 70068
T: 985-359-6100
F: 985-651-6104
Email: robbecnel@aol.com

## COMMON BENEFIT FEE SUBMISSION

**TO:**      **PLAINTIFFS' LIAISON COUNSEL, through Denise Martin via regular mail and electronic mail at dmartin@gainsben.com)**

**FROM:**   **SIDNEY D. TORRES, III**

**DATE:**   **October 15, 2012**

**RE:**      **CONTRIBUTIONS AS A SUBSCRIBING MEMBER**

As an early subscribing member to the Plaintiffs' Steering Committee, my firm contributed significantly in three major areas associated with the litigation and ultimate successful class resolution: financial support, class member participation, and legal work. My firm provided critical funding by timely paying all financial assessments as these were made by the PSC from the very beginning of the litigation. Additionally, as a consequence of Hurricane Katrina's destruction of nearly 100 percent of the housing stock in my parish, and the resultant response by FEMA in supplying the subject emergency housing units to St. Bernard Parish residents, my firm was responsible for one of the largest pools of plaintiff class members. Finally, Roberta L. Burns, particularly during the first two years of the litigation, was heavily involved in the drafting of several important pleadings, addressed below, with Gerald Meunier and Justin Woods.

1.      FINANCIAL SUPPORT

I became a Subscribing Member of the PSC from the inception of that Subscriber's tier. I have timely paid all assessments, totaling now $251,250.00.

2.      CLIENT / CLASS MEMBER CONTRIBUTION

Hurricane Katrina visited almost total devastation to the housing stock of St. Bernard Parish. After the hurricane, I was able to reestablish my legal practice in St. Bernard relatively quickly and soon was involved as lead counsel in the mass action relating to the Murphy Oil spill (*Patrick Joseph Turner, et al. v. Murphy Oil USA, Inc.*, USDC-EDLA, No. 05-4206). Having been involved over the years in several mass actions concerning residents of St. Bernard and the surrounding parishes, I have developed a significant client base. Many of these clients retained my firm to prosecute their claims related to formaldehyde exposure from FEMA EHU's.

As of the time the settlement was consummated, my firm represented approximately 3,597 clients with claims in the manufacturers' and contractors' class settlements. Large numbers of claimants is a significant factor driving any mass action forward and certainly plays an important role in determining whether settlement is a more palatable option to the defendant over further litigation.

3.      LEGAL SUPPORT

-1-



Roberta Burns of my office was appointed to the Law Subcommittee at the very beginning of the litigation. Ms. Burns worked actively with Gerald Meunier and Justin Woods in particular during the initial phases of the litigation and was given several important assignments.

Ms. Burns was assigned the primary responsibility of drafting the **ADMINISTRATIVE MASTER COMPLAINT**. This project required extensive research concerning not only the substantive factual allegations regarding the defects in the EHU's and the liability of the Government and private defendants, but also the legal allegations for claims arising under the laws of four states. In addition, substantial research went into uncovering the identities of all EHU manufacturers, as well as their domiciles and service of process information. During the course of this research, Ms. Burns located a significant document which revealed the identities of then unknown manufacturers and distributors of the defective EHU's with information regarding the numbers of units sold to or provided to the Government in response to Katrina. In addition, Ms. Burns' research into the factual background pertaining to the procurement of these EHU's and the emerging discovery, and attempted suppression of evidence of the presence and danger of formaldehyde in the EHU's proved significant in keeping the Government in the case as a defendant, as well as the private defendants.

In addition to the original Master Complaint, Ms. Burns was responsible, under Mr. Meunier's supervision, for the later amendments to it and the related, underlying **STEPHANIE G. PUJOL** complaint.

Ms Burns also drafted, together with Gerald Meunier, the plaintiffs' opposition to the Untied States' **MOTION TO DISMISS PLAINTIFFS' FTCA AND CONTRACT CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION**, as well as the plaintiffs' opposition to the Government's second **MOTION TO DISMISS PLAINTIFFS' REMAINING FTCA CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION**. As the PSC is aware, the Court kept the Government in the case, making a rare determination that plaintiffs had asserted colorable claims against FEMA under the Stafford Act and the FTCA based upon the evidence uncovered by the PSC and Ms. Burns that the Government's response to complaints of formaldehyde exposure actions fell outside of the discretionary function exception.[1]

In addition to the pleadings mentioned above, which comprise her most significant contributions, Ms. Burns was called upon from time to time by members of the PSC, specifically Justin Woods and Gerald Meunier, to assist in the preparation of pleadings, including discovery motions, deposition notices directed to the Government, and oppositions to motions, through the year 2009.

4.   CONCLUSION

The common benefit time accumulated by my office has been submitted and a summary of that time as provided by Bourgeois Bennet reflects that the total common benefit hours for the firm amount to 516.55 hours. The amount of time spent by my office processing our clients' claims, submitting plaintiff fact sheets, filing multiple rounds of severed suits, and defending against numerous motions

---

[1]   Order and Reasons of October 3, 2008 (Rec. Doc. 717).

-2-

to dismiss our clients claims, while technically not "common benefit" time, is estimated to have been a factor of eight ten times the amount of common benefit time. The firm's common benefit held and shared costs, as reflected in the expense summary provided by Bourgeios Bennet, amount to $15,647.26. These expenses, save for $22.00 related to travel (parking associated with meetings and court hearings) are related to Westlaw research devoted to the common benefit legal work performed by Roberta Burns as discussed above. Finally, as set forth in the restatement of FEMA Assessments paid by PSC and Subscribing Members, my firm contributed $251,250.00 in timely paid assessments.

Thank you for your consideration of this application for common benefit fees and costs in connection with this matter. I remain,

Sincerely yours,

Sidney D. Torres, III

-3-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER                    MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION           SECTION "N-5"

                                       JUDGE ENGELHARDT
                                       MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*COMMON BENEFIT FEE APPLICATION*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ORLEANS

　　　　BEFORE ME, the undersigned Notary Public, personally came and appeared:

## SIDNEY D. TORRES, III

who, first being sworn, attested under oath that all of the statements and information made and

provided by **him/her** in the attached narrative document, are true, correct and based on first-hand

knowledge.

　　　　This done the *29* day of ___*October*___ , 2012, New Orleans, Louisiana.

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　AFFIANT

Sworn to and subscribed before me this
*29* day of *October* , 2012.

_____
NOTARY PUBLIC
My Comission Expires: _____
Bar Roll No. _____ **LINDA M. SUKMAN**
　　　　　　NOTARY #58658, St. Bernard Parish
　　　　　　My commission expires at my death.

# HURRICANE LEGAL CENTER, L.L.C.

Attorneys and Counselors at Law
600 Carondelet Street, Suite 602
New Orleans, Louisiana 70130
Office: (504) 525-1944
Facsimile: (504) 525-1279

October 17, 2012

Re:     FEMA Trailer Formaldehyde Products Liability Litigation (USDC, EDLA, MDL 1873)

        Narrative Regarding Claim for Common Benefit Fees

Judge Engelhardt,

On behalf of Hurricane Legal Center ("Hurricane Legal") please consider this narrative as a request for compensation for the efforts made for the "common benefit" of all participants in above referenced matter.

## Financial Support for the Litigation:

As a Subscribing Member, **Hurricane Legal "timely" paid $251,250.00 in aggregate Assessments.** Upon request, each and every Assessment was "timely" paid, thus:

(1) **Providing a necessary tool to advance the matter; and**

(2) **Preventing an unnecessary burden on other member Firms.**

As the Court is likely aware, not all Subscribing Members were as punctual with their Assessment responsibilities. This lack of diligence underscores the importance of our Firm's financial commitment for the common benefit of all plaintiffs.

## Additional Support for the Litigation:

Currently, Hurricane Legal has a roster of over 7,500 clients. Stated another way, of the approximate 70,000 total claimants - **one in every ten claimants is represented by our Firm**.

Note:   All Plaintiff Fact Sheets were entered by people directly employed or contracted by our Firm. Although Hurricane Legal was a Subscribing Member and should have been afforded the opportunity to request assistance by the aggregate membership in entering Fact Sheets, all cost was paid directly by our Firm. In total over 1.6 million dollars was spent in housing both a team of attorneys and the necessary support staff to accurately complete the 17 page Fact Sheets for all 7,500 clients. **No invoice (for reimbursement) has been submitted.**

In addition and as counsel for such a large number of clients, Hurricane Legal was continuously called upon to screen potential bellwether plaintiffs.



**Screening of Bellwether Candidates:**

On every occasion when Hurricane Legal was asked to delve into its database of clients to find individuals who satisfied the evolving criteria set by the Court, our Firm responded by designating three (3) individuals to manually screen and review Fact Sheets.

Every man-hour spent in the Reviewing Bellwether Process was paid directly by Hurricane Legal. In total, several hundred hours were spent reviewing candidates. The average salary for each of the three (3) employees retained for these tasks was $15 per hour. **No invoice (for reimbursement) has been submitted**.

**Follow-up Investigation of Bellwether Candidates:**

Of the approximate six (6) scheduled trials and (2-3) scheduled summary jury trials, Hurricane Legal had multiple clients who progressed to the advanced stages of consideration. As advanced stage candidates, these individuals were put through complete background checks and a comprehensive in-home (or telephone) evaluation was undertaken. Of this pool, several candidates required that their complete medical history be obtained and evaluated.

These expenses (including the hundreds of man hours spent in completing the assignments) were paid directly by Hurricane Legal. **No invoice (for reimbursement) has been submitted**.

**Candidates Selected for Trial.**

To my recollection at least one (1) Hurricane Legal client was the Plaintiff selected to participant in a full Bellwether Trial. Although Counsel for another firm acted as trial counsel, Hurricane Legal nonetheless participated as a liaison - obtaining discovery responses, medical records and etc. **No invoice (for reimbursement) has been submitted**.

**Assistance to Various PSC Firms.**

In an effort to best serve our clients, Hurricane Legal hired an attorney who had previously worked as a contract attorney for the PSC in the Claims Office. Hiring said counsel, it was felt, would best serve Hurricane Legal clients as the former Claims Office attorney had developed working relationships with each of the PSC Firms.

Having worked with the other PSC attorneys on the Gulfstream, Fleetwood, and Forest River trials, this Hurricane Legal's counsel was often called upon to undertake specific tasks for PSC member Firms.

**Note:**   Because many of the other attorneys involved in the Formaldehyde Litigation were based primarily in Texas, Hurricane Legal's attorney often acted as a local foot soldier meeting clients on a variety of issues. Specifically, for example, on multiple occasions Hurricane Legal's attorney would meet with clients of other firms involved in upcoming trials at the Gerald Meunier's (Gainsburgh Benjamin) Office and assist with telephone interviews and depositions. **No invoice (for reimbursement) has been submitted**.

**Assistance to Raul Bencomo and Chris Pinedo – Quiniece Lambert-Dolliole (Jayco Summary Jury Trial.)**

The services of Hurricane Legal's attorney were also utilized to directly assisted Raul Bencomo and Chris Pinedo with the Quiniece Lambert-Dolliole summary jury trial. Although invoices were

submitted for a portion of the time spent in assisting in the trial preparation, countless (uncompensated) hours were spend advancing the litigation for the Common Benefit of all claimants. All man-hours were paid directly to Hurricane Legal's attorney directly by our Firm.  Although some invoices have been submitted in regards to time spent assisting in the Jayco trial, many miscellaneous tasks, phone calls, and email activities remain uncompensated.

**When Individual Firms Were Assigned Trials.**

Toward the latter part of the Formaldehyde Litigation, individual Firms were assigned trials (non-Bellwether Trials) to be (1) Undertaken and (2) Financed by these individual Firms.  Hurricane Legal, as counsel for over 7,500 clients, was assigned three (3) individual trials by the Court.  A total of nine (9) Hurricane Legal clients were included as plaintiffs in the three (3) trials.

For almost two months, Hurricane Legal counsel (and staff members) worked up three different cases with multiple plaintiffs.  As part of this undertaking, extensive background checks and substantive interviews were conducted.

In addition, medical records were requested and reviewed, deposition transcripts analyzed and summarized, and discovery responses prepared.  Moreover, Medical Experts were contacted and the cases were in the process of being developed.  **No invoice (for reimbursement) has been submitted**.

To that end, out of its own pockets Hurricane Legal paid its Attorneys (and staff) for hundreds of man-hours spent in working these cases toward trial.

**Note:**   Although the likelihood of a recovery in damages to off-set the tremendous cost for litigation was almost non-existent, Hurricane Legal had an obligation to its clients and to the other members of the PSC to "hold the line" and move the cases along.

**Conclusion.**

It is Hurricane Legal Center's position that the above stated support (both Financial and through Uncompensated Man-Power) was integral to the overall success of all litigants in the Multi-District Litigation.

As such, Hurricane Legal Center respectfully requests that an appropriate amount of compensation be awarded to accurately reflect the efforts made for the Common Benefit of all plaintiffs.

Hurricane Legal Center

# JIM S. HALL & ASSOCIATES, LLC
## ATTORNEYS & COUNSELORS OF LAW

800 N. Causeway Blvd. Suite 100
Metairie, Louisiana 70001
www.jimshall.com

(504) 832-3000
Fax: (504) 832-1799
(800) 299-5059

October 17, 2012

Ms. Denise Martin
GAINSBURGH, BENJAMIN, DAVID,
 MEUNIER & WARSHAUER, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163

RE:   FEMA Litigation Expenses

Dear Ms. Martin:

The following constitutes our narrative describing our common benefit contribution to the MDL.

As a subscribing member of the PSC, Jim S. Hall & Assocaites, LLC contributed $244,375.00 in assessments.

Additionally, Jim S. Hall & Associates, LLC employed Shirley Arceneaux to work at the FEMA trailer office from June 2008 through April 2010 and paid her a salary of $34,043.45.

Additionally, Jim S. Hall & Associates, LLC worked on approximately 900 committee clients for the common benefit. The common benefit work consisted of interviewing, screening and enrolling new clients, gathering required data and completing Plaintiff Fact Sheets, as well as investigating all aspects of the claim, both liability, damage and medical.

All information was submitted to the committee office and Jim S. Hall & Associates, LLC participated in the drafting and filing of lawsuits on behalf of these 900 committee clients.

Counsel attended all committee meetings of subscribing members of the PSC as well as coordinated other efforts with the PSC.



Page 2
October 17, 2012
RE:   FEMA Litigation Expenses


The 900 committee clients were processed, telephone and written communication as well as client meetings were held, discovery response was provided, as well input on various motions being addressed by the PSC.

Time records and payroll data were kept for employees of Jim S. Hall & Associates, LLC who worked on the committee clients, which documentation has been submitted to Bourgeois & Bennett.

I trust the foregoing is sufficient for your purposes.

With kind regards, I remain

Very truly yours,

JIM S. HALL

JSH/wc

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER                          MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                 SECTION "N-5"

                                             JUDGE ENGELHARDT
                                             MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*COMMON BENEFIT FEE APPLICATION*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ORLEANS

         BEFORE ME, the undersigned Notary Public, personally came and appeared:

         JOSEPH W. RAUSCH, ESQUIRE of JIM S. HALL & ASSOCIATES

who, first being sworn, attested under oath that all of the statements and information made and

provided by **him/her** in the attached narrative document, are true, correct, and based on first-hand

knowledge.

         This done the **26** day of **October**                 , 2012, New Orleans, Louisiana.


                                             _____
                                             AFFIANT, JIM S. HALL & ASSOCIATES
                                             BY: JOSEPH W. RAUSCH, ESQ.

Sworn to and subscribed before me,

this **26** day of **October**        , 2012.          **JIM S. HALL**
                                                       **ATTORNEY & NOTARY**
_____                   **BAR #21644**
NOTARY PUBLIC
My Commission Expires:_____
Bar Roll No._____

# *Y O U N G  &  H U S A I N  P.L.L.C.*

### ATTORNEYS AND COUNSELORS AT LAW

**Nomaan K. Husain**
*Board Certified*
*Personal Injury Trial Law*
*Texas Board of Legal Specialization*
*nhusain@yhlawfirm.com*

2700 Post Oak Boulevard, Suite 1220
Houston, Texas 77056

Phone (713) 621-8900
Facsimile (713) 621-8909
Toll Free (877) 521-8900
www.yhlawfirm.com

October 17, 2012

*Via electronic mail: jwoods@gainsben.com*

Justin Woods
Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC
1100 Poydras Street
New Orleans, LA 70163

*Via electronic mail: dmartin@gainsben.com*

Denise Martin
Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC
1100 Poydras Street
New Orleans, LA 70163

      Re:    Formaldehyde Litigation - Common Benefit and Held Costs

Dear Mr. Woods and Ms. Martin,

      Per our earlier conversation, please be advised that upon the advice and excellent recommendation of PSC our firm hired attorneys Heather Munoz and Melissa DeBarbieris to perform common benefit work from the Baton Rouge field office. Working out of the Baton Rouge field office, Ms. Munoz and Ms. DeBarbieris completed plaintiff fact sheets for all clients and performed all other work required at the field office.

      Additionally, at the request of Frank D'Amico, Ms. DeBarbieris was assigned to work on trial preparation efforts for the Forest River/Lyndon Wright trial. This work was pre-approved as a common benefit, as evidenced by the signed work order dated February 25, 2010.

      Our firm paid the aforementioned attorneys, $36,872.44, which is an expense incurred for the common benefit of all parties. Moreover, Judge Engelhardt's order required that each plaintiff execute the plaintiff fact sheet or else their claim would fail, therefore, but for the diligent and absolutely crucial work of Ms. Munoz and Ms. DeBarbieris, and other team members of the field office, in the execution of the plaintiff fact sheets, some of the plaintiffs' claims would have failed.



October 17, 2012
Formaldehyde Litigation - Common Benefit and Held Costs
Page 2 of 2

     While this work may not be as glamorous as deposing an expert witness or trying one of the Bell Weather cases, the indispensable work completed by Ms. Munoz and Ms. DeBarbieris directly contributed to the common benefit of all clients.

     With kindest regards, I am

                    Very truly yours,

                    NOMAAN HUSAIN

NKH/gm

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER                          MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                 SECTION "N-5"

                                             JUDGE ENGELHARDT
                                             MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO:
*COMMON BENEFIT FEE APPLICATION*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ORLEANS

        BEFORE ME, the undersigned Notary Public, personally came and appeared:

                    NOMAAN K. HUSAIN

who, first being sworn, attested under oath that all of the statements and information made and

provided by **him/her** in the attached narrative document, are true, correct, and based on first-

hand knowledge.

        This done the 26 day of _October_ , 2012, New Orleans, Louisiana.


                                    _____
                                              AFFIANT

Sworn to and subscribed before me,

this 26 day of October , 2012.

_____
NOTARY PUBLIC
My Commission Expires: 2/4/2013
Bar Roll No. _____

GLORIA MIRANDA
Notary Public, State of Texas
My Commission Expires
February 04, 2013

MEMORANDUM

TO:        PSC

FROM:      Paul A. Dominick

DATE:      October 17, 2012

RE:        Nexsen Pruet, LLC Common Benefit Contribution

---

Nexsen Pruet, LLC filed the very first FEMA case, <u>Keith Hilliard vs. Gulf Stream, et.al., Case No. 07-5709</u> and was actively involved throughout the FEMA litigation as a subscribing member. As a result of this initial class action filing, the statute of limitations was tolled for the benefit of all members of the settlement class. The time records submitted by Nexsen Pruet relate only to common benefit tasks assigned by members of the PSC. Those tasks include the following:

1.    <u>Fleetwood Discovery --Fact and Expert Witnesses</u>.

      a.    Took depositions of expert witnesses in Atlanta, GA.

2.    <u>Class Certification Motions</u>.

      -    Assist with class certification research, briefing and arguments related to Property Damages Sub-Class;
      -
      -    Assist with general class certification briefing and presentation.
      -
3.    <u>Lyndon Wright Case</u>

      -    Trial counsel and legal assistant support
      -    Briefing of motions in limine and Daubert motions
      -    Legal research during trial
      -    Present witnesses (witness outlines, witness preparation and conduct direct testimony at trial)
      -    Cross-examine defense experts
      -    Prepare deposition designations

4.    <u>Castenel Case</u>

      -    Take depositions of experts in Raleigh, NC





620 North Carrollton Ave.
New Orleans, LA 70119
Telephone: (504) 483-3224
Facsimile: (504) 483-2259
www.rodneyandetter.com

Trial Practice & Intellectual Property

**FEMA Trailer Formaldehyde Products Liability Litigation**
**Narrative Statement in Support of Rodney & Etter, LLC's**
**Request for Common Benefit Attorney's Fees and**
**Reimbursement of Common Benefit Expenses**

Rodney & Etter, LLC, (hereinafter referred to as "R&E") submits the following narrative statement in support of our request for common benefit attorneys' fees and reimbursement of common benefit expenses, for consideration by the Plaintiffs' Steering Committee ("PSC").

The PSC has stated to the Court that, "The Rodney & Etter law firm initiated the first legal action on behalf of those claiming formaldehyde exposure in FEMA-provided housing units after Hurricanes Katrina and Rita. This is a matter of record and is undisputed." *See* PSC Memorandum, Doc. 22889, filed 9/16/11.

In June, 2006, R&E's attorneys, directed by John K. Etter, began working on the FEMA trailer formaldehyde litigation, when the formaldehyde exposure complaints first surfaced. R&E filed the *Decarlo McGuire v. Gulf Stream Coach* class action lawsuit in Civil District Court for the Parish of Orleans on August 4, 2006, which named travel trailer and mobile home manufacturers, and FEMA trailer installation and maintenance contractors. After that case was removed to federal court, R&E actively litigated the *McGuire* case in federal court until it was consolidated into this MDL in November, 2007.

R&E prepared and filed the *Kimberly Nelson v. Gulf Stream Coach* lawsuit in the Western District of Louisiana, and filed a motion to transfer, which was necessary for multi-district consolidation. R&E filed two of the four cases that were pending when the parties asked the Judicial Panel on Multi-District Litigation to consolidate the FEMA trailer cases.

R&E's efforts resulted in the Court ordering FEMA to appear in this litigation, which was a critical step for plaintiffs to be able to identify and match the mobile home and trailer manufacturers and contractors to individual trailer residents. *See* Order, 11/29/07 (Doc. 26) (permitting amendment to name FEMA and requiring FEMA to "set forth a detailed plan for testing the FEMA trailer units). *See also* Order, 3/5/08 (Doc. 104) (ordering FEMA to identify unit manufacturers, models and VIN's).

R&E conferred and worked with the other plaintiffs' law firms to identify and retain experts and develop the strategy for this litigation. The Gainsburgh, Benjamin, Becnel, Bice Palermo & Veron, and other law firms agreed in June, 2007, to R&E serving on the Plaintiffs' Executive Committee. *See* Motion to Appoint Interim Plaintiff's Committee, filed in *Oldenburg v. United States,* 07-2961 (E.D. La. 7/24/07), Doc. 9. *See also* Report of Plaintiff's Coordinated Meeting, *In re FEMA Trailer Formaldehyde*, MDL 1873 (E.D. La. 11/21/07), Doc. 13.



After consolidation, the Court selected certain counsel to serve on the Plaintiffs' Steering Committee ("PSC"), for which Mr. Etter applied but was not appointed. On March 24, 2008, the Court entered an Order on Plaintiffs' Counsel's Time and Expenses Submissions (Doc. 115), which required PSC authorization for work common benefit work and expenses. R&E only seeks compensation and reimbursement for its efforts and expenses that occurred before the Court's March 24, 2008 Order, which R&E performed and incurred with a reasonable expectation of future compensation.

After the FEMA trailer cases were consolidated and the PSC members were appointed by the Court, Mr. Etter and R&E's associates and paralegals continued to support the plaintiffs' committee efforts, monitored the scientific developments and the litigation, attended status conferences, filed additional cases and submitted claim forms for individual claimants.

On August 31, 2009, R&E transferred thirteen (13) individual lawsuits, including the *McGuire* and *Nelson* cases to Justin Woods of the Gainsburgh, Benjamin law firm, and withdraw from those cases. The Gainsburgh, Benjamin and R&E law firms discussed confecting a referral counsel agreement to memorialize their understanding to share contingency attorneys' fees and expenses for those individual cases, similar to Gainsburgh, Benjamin's agreements with other counsel, but did not execute such an agreement. R&E anticipates signing such a referral agreement with Gainsburgh, Benjamin for those 13 individual cases shortly.

The PSC has already acknowledged that "As to common benefit expenses, all of the expenses enumerated in Exhibit D attached to the R&E motion appear to be expenses incurred for the benefit of **all** plaintiffs [ ] prior to the entry of this Court's time and expenses submission protocol. Therefore, the PSC is prepared to recognize the submission of these expenses." Doc. 22889 (emphasis added). The PSC has also represented to the Court that "the PSC does not oppose the right of the Rodney & Etter firm to submit to the Court for consideration in connection with any later settlements, the firm's claim for common benefit fees and/or the balance of its common benefit expenses." *Id. See also* Consent Order, Doc. 23563, 11/17/11 (reserving the right of Rodney & Etter "to request the payment of a common benefit fee in connection with other settlements which might be entered in this litigation").

R&E's partners devoted 593.65 hours to the FEMA trailer formaldehyde litigation between June 1, 2006 and March 23, 2008, as reported to Bourgeois Bennett. Our associate attorneys provided 720.35 hours of common benefit work. R&E's paralegals spent 394.50 hours on this litigation. At a partner rate of $300 per hour, an associate rate of $200 per hour and a paralegal rate of $75 per hour, R&E would be entitled to $351,752.50. Those rates are consistent with recent Eastern District awards. *See Hornbeck Offshore Services, LLC v. Salazar*, 10-1663 (E.D. La. 6/1/11); 2011 U.S. Dist. Lexis 59846 ($295 - $420 partners and $180 - $195 associates); *In re OCA, Inc. Securities and Derivative Litigation*, 05-2165 (E.D. La. 3/2/09); 2009 U.S. Dist. Lexis 19210 (partners $400 - $450, associates $200 – 250, paralegals $100). R&E also paid $10,563.15 for formaldehyde testing, attendance at the Joint Panel on Multi-District Litigation hearing, attending the Congressional Sub-Committee hearing on the FEMA trailers, filing fees, experts and other expenses in this litigation, between June 1, 2006 and March 23, 2008, of which $1,414.40 will be paid from the manufactured home settlement funds.

2

Federal courts have long held that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Boeing v. Van Gemert*, 444 U.S. 472, 478; 100 S. Ct. 745, 749; 62 L. Ed.2d 676, 681 (1980). Louisiana state courts similarly recognize that an attorney is entitled to compensation "where an attorney alone and at his own expense has successfully maintained an action for the preservation, protection, increase or creation of a fund in which persons other than his own clients may share or   from which they may benefit." *Avants v. Kennedy*, 2002 0830 (La. App. 1 Cir. 12/20/2002); 837 So.2d 647, 656; *Kirkpatrick v. Young*, 456 So.2d 622, 625 (La. 1984). R&E's efforts and expenditures in investigating, preparing, filing and litigating cases were necessary for this consolidated action and benefitted all of the FEMA trailer claimants.

The Court has recognized that the attorneys who file the first lawsuits are entitled to common benefit fees and reimbursement, even if they do not handle a large number of claimants, because a "critical mass" of cases is required for consolidation into a single proceeding and for the litigation to have sufficient momentum to result in substantial settlements. *See Turner v. Murphy Oil USA, Inc.*, 582 F.Supp.2d 797, 809 (E.D. La. 2008).

Law firms that were not part of the plaintiffs' steering committee may and should receive compensation for work and expenditures that created a common benefit. In *In re Vioxx*, 802 F.Supp.2d 740, 786 - 787 (E.D. La. 2011), Judge Fallon awarded common benefit fees to the Bruno & Bruno law firm, even though none of it's attorneys served on the PSC. Several attorneys were awarded common benefit fees in the Murphy Oil class action who were not committee members. *See Turner v. Murphy Oil USA, Inc.*, 582 F.Supp.2d at 822 - 827.

R&E's position in this case is identical to the position of Lance Licciardi in the Murphy Oil litigation. Like Mr. Licciardi, R&E was asked by the PSC to contribute their clients to the critical mass that was required to create this consolidated MDL action, and later transferred its cases to Plaintiffs' Liaison Counsel. *See Turner v. Murphy Oil*, 582 F.Supp.2d at 822. The PSC should follow Judge Fallon's example in that case, and allocate common benefit attorneys' fees and expense reimbursement to R&E.

In conclusion, Rodney & Etter is entitled to common benefit fees, because R&E was one of the first law firms to recognize and investigate the formaldehyde exposure complaints after Hurricane Katrina. R&E hired experts to perform formaldehyde testing, researched, prepared and filed thirteen lawsuits on behalf of people who were exposed to formaldehyde. Two of R&E's cases, *McGuire* and *Nelson* supported the consolidation of these cases into the present MDL litigation. Accordingly, the Rodney & Etter, LLC law firm, requests that the PSC recommend an award to the Rodney & Etter, LLC law firm of reasonable attorneys' fees for work that benefitted all litigants in these consolidated matters and reimbursement for the expenses R&E incurred in the investigation, filing and prosecution of the initial lawsuits that led to the mobile home, travel trailer and contractor settlements.

Respectfully submitted, October 10, 2012

John K. Etter

3

Ronnie G. Penton
Trial Attorney
rgp@rgplaw.com
Licensed in LA, TX

MaryAnna Penton
Trial Attorney
mpenton@rgplaw.com
Licensed in LA, MS

Daniel Snellings
Trial Attorney
dsnellings@rgplaw.com
Licensed in LA, MS, FL



THE PENTON LAW FIRM

Trial Lawyers
Since 1981

REPRESENTING PEOPLE WORLDWIDE SINCE 1981

Date:        October 17, 2012
To:          PSC – In re: FEMA Trailer Formaldehyde Products Liability Litigation
From:        The Penton Law Firm
Re:          Common Benefit Contribution Narrative

I was appointed to the original committee in this case, but was forced to withdraw in the 2nd year of my appointment due to domestic litigation (divorce) in which I was involved.

My role was a major part of the fact and expert investigation and discovery, including numerous depositions in several states along with Hugh Lambert and Tony Buzbee. Additionally, my staff and I were fully engaged in the review, summarization and organization of thousands of documents.

From a trailer identification standpoint, I was involved in the inspection of hundreds of trailers in an effort to identify manufacturers and installers of trailers in each geographic area.

Expert witness research and interview, as well as coordination, setting and preparation/defense of depositions were additional areas in which I provided service to the committee.

The firm contributed the services of its litigation staff including three (3) lawyers, four (4) paralegals, two (2) legal assistants and two (2) legal secretaries to the investigation and discovery effort.

Penton participated regularly in PSC meetings in person, as well as by telephone. Because I was to have a major role on the trial team, I participated in regular meetings in chambers with the Judge and the defense.

If further explanation or clarification is required, a review of our contemporaneously maintained and recorded timesheets will provide plenty of detail.

/s/ Ronnie G. Penton





**BRUNO & BRUNO** LLP
& YOU SINCE 1950 — TRIAL LAWYERS

JOSEPH M. BRUNO*
STEPHEN P. BRUNO
ROBERT J. BRUNO
JOSEPH M. BRUNO, JR.

STEPHANIE MAY BRUNO*
MELISSA A. DEBARBIERIS
CHRISTOPHER M. HATCHER
DANIEL A. MEYER

OF COUNSEL
FRANK S. BRUNO
ROBERT B. REES
RUSSELL STEGEMAN

October 17, 2012

REPLY TO (PLEASE CHECK)
NEW ORLEANS ___
COVINGTON ___

*Also Licensed To Practice In Texas

**VIA ELECTRONIC TRANSMISSION**
Justin I. Woods
Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Email: jwoods@gainsben.com
Email: gmeunier@gainsben.com

        Re:    *In re: FEMA Trailer Formaldehyde Prods. Liability Litigation*
                  MDL No. 07-1873, SECT. N(4) (E.D. La.)

Dear Justin and Jerry:

    We are a firm who was invited to become a subscribing member of the Plaintiffs Steering Committee. We have paid all subscribing member assessments. Although we advised of our interest and availability to work on this litigation, we were given very few assignments. The only assignment we ultimately received was in connection with the preparation of our client, Stephanie Pizani's, case for trial. The case did not go to trial because of the settlements. As such, we do not have as many hours as other firms have in this case. Having said that and as an attorney who has served on numerous committees and has served as liaison counsel, the contribution of money to a case like this one is as important as the contribution of time. We have put our money at risk and as such we believe that not only should we be compensated for the time we put in but also for the contribution of the capital in this case.

    With kindest regards, I remain.

               Very truly yours,

               **BRUNO & BRUNO, L.L.P.**

               Joseph M. Bruno

JMB/sab

EXHIBIT

A (17)

 

855 BARONNE ST., NEW ORLEANS, LA 70113 • TEL 504-525-1335 • FAX 504-581-1493
70325 HIGHWAY 1077, SUITE 101, COVINGTON, LA 70433 • TEL 985-792-7110 • FAX 985-792-7154
TOLL FREE 1-800-966-1335 • WWW.BRUNOBRUNOLAW.COM

To whom it may concern,


Early in 2008 when the claims office on Canal Street first opened Mr. Schmidt spent days there filing claims for common benefit clients. Loretta Orlando and Roberta Williams worked at the claims office for common benefit clients in August. Loretta Orlando and Roberta Williams, along with several more staff members, also worked identifying potential Bellwether clients.


Two of Mr. Schmidt's clients were identified as Bellwether clients, Carrie Smith and Lyndon Wright. Mr. Schmidt obtained medical records for each of them, went through documents, met with them in person on numerous occasions, and had many telephone consultations with each of them. He also spoke with the judge in open court about Mrs. Smith.


Lyndon Wright's case went to trial and Mr. Schmidt helped with trial preparations and submitted questions and advised Mr. D'Amico at trial. Mr. Schmidt attended the trial and had several meetings with Frank D'Amico and other trial lawyers during the week of the trial. Mr. Schmidt attended every day of the trial.


Mr. Schmidt also consulted and met with the plaintiff during the trial.

Cordially,

Douglas Schmidt

# KEITH A. DOLEY
# CATRICE JOHNSON-REID
Attorneys at Law
1554 North Broad Street
New Orleans, Louisiana 70119
Emails: kadoley@aol.com and sulc109@aol.com

Telephone: (504) 943-7071                              Facsimile: (504) 945-4184

October 17, 2012

Denise Martin
**Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC**
Attorneys at Law
1100 Poydras Street – Suite 2800
New Orleans, Louisiana 70163

**Re:    Formaldehyde Litigation – Attorney Fees**

Dear Ms. Martin:

Pursuant to the request for submission of common benefit narratives, below is the narrative for the subscribing members, Keith Doley and Catrice Johnson-Reid.

As subscribing members, Keith Doley and Catrice Johnson-Reid, hired support staff to work to support the efforts of the claims office. Also, subscribing member, Catrice Johnson-Reid, also worked at the claims office to support their efforts. We paid those individuals a total of $3,600.00 for services rendered by the support staff at the claims office.

Since joining as subscribing members, Keith Doley and Catrice Johnson-Reid, have attended all Status Conferences held with the court; been in attendance at all Committee meetings, either in-person or by telephone; reviewed all pleadings filed in this matter; attended all hearings and trials. Our office also assisted and was prepared to assist at any hearing or trial held in this matter.



Denise Martin
Formaldehyde Litigation – Attorney Fees
October 17, 2012
Page Two

Please advise if you need further information or clarification on any of the information provided above. Your assistance and cooperation in this matter has been appreciated. With kindest regards and best wishes, I remain,

Yours very truly,

KEITH DOLEY
CATRICE JOHNSON-REID

**Denise Martin**

| | |
|---|---|
| **From:** | Erika Glenn [eglenn@woodfilllaw.com] |
| **Sent:** | Wednesday, October 17, 2012 5:13 PM |
| **To:** | Denise Martin |
| **Subject:** | FEMA Litigation: Common Benefit Fund |

Dear Denise:

As of today, we have contributed $157,500.00 in Common Benefit Funds, i.e. expenses directed towards the FEMA litigation.  Additionally, the following lawyers from our firm spent time on this matter:

- Karen Hayes Green (875.03 hours)
- Michael Watson (60 hours)

Please let me know if you need any additional information from our law firm.

Thank you.

W O O D F I L L **|** LAW FIRM

Erika Glenn, Esq.

River Oaks Green
3131 Eastside St., Suite 450
Houston, TX 77098
T: (713) 751-3080
F: (713) 751-3058

This e-mail and any attachments are confidential and may be protected by the attorney-client or other privileges. Any review, use, disclosure, or distribution by persons other than the intended recipients is prohibited and may be unlawful. Any distribution or other reproduction of this e-mail without prior approval from the sender is prohibited. Additionally, unless expressly stated in this e-mail, nothing in this message should be construed as a digital or electronic signature. If you believe this message has been sent to you in error, please do not read it; instead, notify the sender via reply e-mail that you received it in error, or call Woodfill Law Firm at 713-751-3080. Thereafter, delete this message and any copies (in whatever form).



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER                                    MDL NO. 1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                           SECTION "N-5"

                                                       JUDGE ENGELHARDT
                                                       MAG. JUDGE CHASEZ

THIS DOCUMENT RELATES TO:
*COMMON BENEFIT FEE APPLICATION*

*****************************************************************************

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ORLEANS

            BEFORE ME, the undersigned Notary Public, personally came and appeared:

                            JARED R. WOODFILL

who, first being sworn, attested under oath that all of the statements and information made and

provided by him in the attached narrative document, are true, correct, and based on first-hand

knowledge.

            This done the 29th day of October, 2012, Houston, Texas.

                                                    _____
                                                    AFFIANT

Sworn to and subscribed before me,

this 29th day of October, 2012.

_____
NOTARY PUBLIC

JUDY D. WRIGHT
Notary Public, State of Texas
My Commission Expires
January 16, 2016

# FEMA - ASSESSMENTS PAID

| NAME OF PSC MEMBER | AMOUNT OF ASSESSMENTS PAID |
|---|---|
| Anthony Buzbee | $ 149,822.68 |
| Bencomo & Associates | $ 502,500.00 |
| Frank Damico, Jr. | $ 416,938.23 |
| GBD | $ 502,500.00 |
| Lambert & Nelson | $ 454,537.00 |
| Matthew Moreland | $ 502,500.00 |
| Mikal C. Watts | $ 351,990.19 |
| Reich & Binstock | $ 505,261.00 |
| Robert Becnel | $ 502,500.00 |
| Robert C. Hilliard | $ 27,500.00 |
| Ronnie Penton | $ 165,000.00 |
| TOTAL: | $ 4,081,049.10 |

| NAME OF SUBSCRIBING MEMBER | AMOUNT OF ASSESSMENT PAID |
|---|---|
| Dennis C. Sweet, III | $ 57,500.00 |
| Douglas M. Schmidt | $ 127,500.00 |
| Hurricane Legal Center | $ 251,250.00 |
| Jim S. Hall & Associates | $ 244,375.00 |
| John Degravelles | $ 251,250.00 |
| Joseph M. Bruno | $ 251,250.00 |
| Keith A. Doley | $ 172,775.00 |
| Michael Hingle & Associates | $ 82,500.00 |
| Murray Law Firm | $ 57,500.00 |
| Nexsen Pruet, LLC | $ 251,250.00 |
| Nomaan Husain | $ 142,500.00 |
| Sidney Torres | $ 251,250.00 |
| Woodfill & Pressler | $ 157,500.00 |
| TOTAL: | $ 2,298,400.00 |

| | |
|---|---|
| $ | 6,379,449.10 |

updated: 11/09/2011



PLAINTIFF'S
EXHIBIT

B

# Formaldehyde Litigation

## Expense Summary Excludes Assessments

For the Period Between: 01/01/2006 and 08/31/2012

| FirmName | Shared Costs | Held Costs | Total Costs |
|---|---|---|---|
| Bencomo & Associates | $28,427.11 | $60,530.02 | $88,957.13 |
| Frank J. D'Amico, Jr. APLC | $294,930.25 | $44,420.91 | $339,351.16 |
| Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC | $44,129.95 | $108,509.42 | $152,639.37 |
| Hilliard Munoz Gonzales LLP | $100,992.98 | $66,806.58 | $167,799.56 |
| Jim S. Hall & Associates | $24,941.44 | $7,258.93 | $32,200.37 |
| Lambert & Nelson, PLC | | $115,847.88 | $115,847.88 |
| Law Office of Sidney D. Torres, III, APLC | $61.20 | $15,586.06 | $15,647.26 |
| Law Offices of Robert M. Becnel | | $3,912.60 | $3,912.60 |
| Law Offices of Ronnie G. Penton | | $31,254.89 | $31,254.89 |
| Nexsen Pruet, LLC | $33,497.32 | $98,983.16 | $132,480.48 |
| PSC Claims Office | $81.75 | $323.06 | $404.81 |
| Reich & Binstock, LLP | $362,370.69 | $140,036.33 | $502,407.02 |
| Rodney & Etter, LLC | | $10,563.15 | $10,563.15 |
| Sweet & Associates | | $13,086.70 | $13,086.70 |
| The Buzbee Law Firm | $226,640.95 | $66,102.03 | $292,742.98 |
| Watts Hilliard LLC | $306,157.72 | $253,935.46 | $560,093.18 |
| **Grand Total - All Firm** | **$1,422,231.36** | **$1,037,157.17** | **$2,459,388.53** |



# Formaldehyde Litigation

### Time Summary

For the Period Between: 01/01/2006 and 10/9/2012

| Firm | Committee Member Hours | Subscribing Attorney Hours | Associate Attorney Hours | Paralegal Hours | Other Hours | Total Hours |
|---|---|---|---|---|---|---|
| Bencomo & Associates | 2,926.32 | | | 3,730.89 | 2,883.00 | 9,540.22 |
| deGravelles, Palmintier, Holthaus & Fr | | 2.75 | 10.04 | 2.56 | 6.00 | 21.35 |
| Doley and Johnson-Reid | | 1,592.03 | 70.00 | | 216.50 | 1,878.53 |
| Douglas M. Schmidt, Attorney at Law | | 135.25 | 74.45 | 118.00 | 317.33 | 645.03 |
| Frank J. D'Amico, Jr. APLC | 3,755.00 | | 4,937.70 | 2,565.15 | 7,807.35 | 19,065.20 |
| Gainsburgh, Benjamin, David, Meunier | 8,274.25 | | | 9,620.95 | 1,145.45 | 19,040.65 |
| Hurricane Legal | | 70.65 | | | | 70.65 |
| Jim S. Hall & Associates | | 29.50 | 23.35 | 318.45 | 11,304.90 | 11,676.20 |
| Lambert & Nelson, PLC | 4,480.20 | 1,721.50 | 2,554.90 | 1,950.30 | 1,513.80 | 12,220.70 |
| Law Office of Daniel E.Becnel, Jr. | 1,675.80 | 174.25 | 6,149.15 | | | 7,999.20 |
| Law Office of Sidney D. Torres, III, AP | | 516.55 | | | | 516.55 |
| Law Offices of Robert M. Becnel | 190.00 | 528.70 | 409.80 | | 2.00 | 1,130.50 |
| Law Offices of Ronnie G. Penton | 1,302.63 | | 441.24 | 463.00 | 477.50 | 2,684.37 |
| Michael Hingle & Associates | | 14.90 | 616.70 | | | 631.60 |
| Murray & Murray | | 190.00 | 74.75 | 2.50 | | 267.25 |
| Nexsen Pruet, LLC | | 1,537.20 | 867.60 | 2,200.35 | 586.10 | 5,191.25 |
| PSC Claims Office | | | 14,694.47 | 6,264.88 | 4,853.13 | 25,812.48 |
| Reich & Binstock, LLP | 2,603.78 | 330.50 | 3,481.59 | 1,047.75 | 7,227.13 | 14,690.75 |
| Rodney & Etter, LLC | | 593.65 | 720.35 | 394.50 | | 1,708.50 |
| Sean Trundy, Esquire | | 204.70 | | | | 204.70 |
| Sweet & Associates | | 194.00 | 195.60 | 25.70 | 56.10 | 471.40 |
| The Buzbee Law Firm | 1,652.65 | | 3,987.25 | 1,277.85 | 3,408.90 | 10,326.65 |
| Watts Hilliard LLC | 2,101.70 | | 10,323.95 | 801.52 | 3,609.31 | 16,836.48 |
| **Grand Total - All Firm** | **28,962.34** | **7,836.13** | **49,632.89** | **30,784.35** | **45,414.50** | **162,630.21** |



| FIRM/ATTORNEY NAME | PERCENTAGE OF COMMON BENEFIT FEE ($6,196,159.95) | FEE AWARD |
|---|---|---|
| Gainsburgh | 35% | $2,168,655.96 |
| Watts/Hilliard (Pinedo)[1] | 25% | $1,549,039.99 |
| Buzbee Law Firm | 10% | $ 619,616.00 |
| Raul Bencomo | 5.25% | $ 325,298.40 |
| Lambert & Nelson | 5.25% | $ 325,298.40 |
| Frank D'Amico[2] | 5.25% | $ 325,298.40 |
| Dennis Reich[3] | 5.25% | $ 325,298.40 |
| Matt Moreland | 2.0% | $ 123,923.20 |
| Robert Becnel/Diane Zink | 2.0% | $ 123,923.20 |
| Sidney Torres/Roberta Burns | 1.25% | $ 77,452.00 |
| Hurricane Legal Center[4] | 1.25% | $ 77,452.00 |
| Jim Hall/Joe Rausch | .7% | $ 43,373.12 |
| Nomi Husain | .5% | $ 30,980.80 |
| Nexsen Pruet | .45% | $ 27,882.72 |
| Rodney & Etter | .35% | $ 21,686.56 |
| Ronnie Penton | .2% | $ 12,392.32 |
| Keith Doley/Catrice Johnson | .1% | $ 6,196.16 |
| Joseph Bruno | .1% | $ 6,196.16 |
| Douglas Schmidt | .1% | $ 6,196.16 |
| **TOTAL** | **100%** | **$6,196,159.95** |

Page 1 of 2



## NOTES

1.  A single narrative describing the common benefit services of "Watts Hilliard attorneys and staff" was submitted, and included reference to the individual (through often coordinated) contributions of PSC member Mikal Watts, PSC member Bob Hilliard, and a number of named staff counsel employed by them, most notably Chris Pinedo. We are entirely comfortable assigning a single percentage allocation to the Watts Hilliard team on this basis, with the understanding that, if it becomes necessary, Mikal Watts and Bob Hilliard can and will propose how this percentage should be divided between them as holding separate positions on the PSC.

2.  A separate common narrative was received from Cynthia Wallace; but her work was done under a contract with, and is included as part of the allocation to, both Dennis Reich and Frank D'Amico.

3.  A separate common narrative was received from David McLendon; but his work was done under a contract with, and is included as part of the allocation to, Dennis Reich.

4.  A separate common narrative was received from Dennis Vega; but his work largely was done under a contract with, and is included as part of the allocation to, Hurricane Legal Center.

| Frim/Attorney Name | Percentage of Common Benefit Fee recommended by Gainsburg ($6,169,159.95) | Fee Award recommended by Gainsburg | Fee Percentage recommended by Moreland ($6,169,159.95) | Fee award recommended by Moreland |
|---|---|---|---|---|
| Gainsburg | 35% | $2,168,655.98 | 20% | $1,233,831.99 |
| Watts/Hilliard (Pinedo) | 25% | $1,549,039.99 | 15% | $925,373.99 |
| Buzbee Law Firm | 10% | $619,616.00 | 10% | $616,916.00 |
| Raul Bencomo | 5.25% | $325,298.40 | 8.33% | $514,096.66 |
| Lambert & Nelson | 5.25% | $325,298.40 | 8.33% | $514,096.66 |
| Frank D'Amico | 5.25% | $325,298.40 | 8.33% | $514,096.66 |
| Dennis Reich | 5.25% | $325,298.40 | 8.33% | $514,096.66 |
| Matt Moreland | 2% | $123,923.20 | 8.33% | $514,096.66 |
| Robert Becnel/Diane Zink | 2% | $123,923.20 | 8.33% | $514,096.66 |
| Sidney Torres/Roberta Burns | 1.25% | $77,452.00 | Undetermined | Undetermined |
| Hurricane Legal Center | 1.25% | $77,452.00 | Undetermined | Undetermined |
| Jim Hall/Joe Rausch | 0.70% | $43,373.12 | Undetermined | Undetermined |
| Nomi Husain | 0.50% | $30,980.80 | Undetermined | Undetermined |
| Nexsen Pruet | 0.45% | $27,882.72 | Undetermined | Undetermined |
| Rodney & etter | 0.35% | $21,686.56 | Undetermined | Undetermined |
| Ronnie penton | 0.20% | $12,392.32 | Undetermined | Undetermined |
| KeithDoley/Catrice | 0.10% | $6,196.16 | Undetermined | Undetermined |
| Joseph Bruno | 0.10% | $6,196.16 | Undetermined | Undetermined |
| Douglas Schmidt | 0.10% | $6,196.16 | Undetermined | Undetermined |
| TOTAL | 100% | $6,196,159.95 | 95% | $5,860,701.95 |



PLAINTIFF'S EXHIBIT
F