| | |
|---|---|
| Date: | October 16, 2012 |
| To: | PSC - In re: FEMA Trailer Formaldehyde Products Liability Litigation |
| From: | The Lambert Firm, PLC (formerly Lambert & Nelson, PLC) |
| Re: | **Common Benefit Contribution Narrative** |

   Lambert & Nelson, PLC (Hugh P. Lambert and Linda J. Nelson) - with a combined seventy-three years of extensive class action and mass tort experience - dedicated, a senior lawyer, Linda Nelson to this case full-time. Hugh Lambert also dedicated a considerable amount of time to this litigation. Additionally, Lambert & Nelson, PLC dedicated an associate attorney, two contract attorneys and its staff of paralegals, secretaries, and couriers who assisted not just Lambert & Nelson, PLC, but other members of the Plaintiffs' Steering Committee ("PSC") and Trial Teams during all phases of discovery, depositions, class certification and trial preparation.

   Linda Nelson was appointed to the PSC and served as Co-Chair of the Discovery Committee, on the Experts Committee and Trial Committee. Hugh Lambert served as Co-Chair of the Expert Committee as well as on the Audit and Finance and Trial Committees. Lambert & Nelson, PLC associate attorney, Alexis Bevis, served on the Law and Discovery Committees and Lambert & Nelson, PLC contract attorney, Jonathan Adams, served on the Law Committee.

   Hugh Lambert and Linda Nelson were primarily responsible for working with in excess of seventeen experts in different fields of expertise to prepare the experts for depositions and their reports for the class certification hearing and bellwether trials. Much of the crucial testimony used in preparation for class certification and bellwether trials were elicited during these essential depositions. Both Linda and Hugh worked closely with the PSC experts (including, but not limited to, Marco Kaltofen, Dr. Hewett, Al Mallet, Jr., Charles David Moore, Bill Scott, Dr. Smulski, Dr. McGwin, Dr. Williams, Lee Branscome, Dave Barnes, Ervin Ritter, Gary Bunzer, Mary DeVany, Paul LaGrange and Reagan Johnson) to prepare each of them for their deposition and trial testimonies. We researched and read various scientific journals and textbooks to learn the science related to formaldehyde off-gassing and the engineering related to the construction and jacking-up of Emergency Housing Units/Travel Trailers ("EHUs").

   Additionally, Hugh worked with Reagan Johnson to create the EHU animations and with Al Mallet, Jr. and Charles David Moore, PE, PLS to create two demonstrative exhibits of a proper and improperly built wall of an EHU. These exhibits were used in the bellwether trials. These animations and demonstrative exhibits were time consuming, required a great deal of knowledge and were essential exhibits to demonstrate to the jurors how the EHUs were manufactured and how formaldehyde off-gassing occurred.

   Linda was an essential member of the Discovery Committee. Our office drafted and sent numerous Requests for Production of Documents, Interrogatories, Third Party Subpoenas and Freedom of Information Act requests during the class certification phase

and noticed depositions for the vast majority of class certification depositions and numerous bellwether trial depositions. We created binders and brought all relevant documents to these depositions and prepared questions for all of these deponents.

Hugh participated in eleven class certification depositions (six fact and five expert), first chairing three, second chairing six and participating in two others. During the Alexander Bellwether Trial Hugh took four expert depositions, first chairing two and second chairing two. During the Dubuclet Bellwether Trial Hugh took three expert depositions, first chairing two and second chairing one.

Linda participated in five class certification depositions (three fact and two expert), second chairing one of these depositions. Linda, our office staff, and contract attorney, Candice Sirmon, prepared the deposition documents for sixty-one of the class certification depositions (including both expert and fact witnesses). During the Alexander Bellwether Trial Linda participated in two expert depositions, second chairing one and our staff prepared documents for eight fact witness depositions. Furthermore, Jonathan Adams, a contract attorney for our firm, attended six class representative depositions, first chairing five of the depositions.

Our firm organized and created the Class Certification binders for Judge Engelhardt, PSC members and defendants' liaison counsel. Our office also drafted the Pre-Trial Order for the Class Certification Hearing, which was four hundred and eleven pages long. Furthermore, our office compiled the extensive witness and exhibit lists that were used for the Class Certification Hearing and bellwether trials that followed.

Our firm worked with experts such as Marco Kaltofen, Mary DeVany and Bill Scott to draft and finalize the testing protocols to measure formaldehyde levels in EHUs and coordinated the PSC's testing of occupied EHUs. Linda and our office also led and coordinated the testing of stored EHUs and the creation and maintenance of the testing database. Linda worked with experts Dr. Hewett, Mary DeVany and Marco Kaltofen to create the statistical model used during the Class Certification Hearing and bellwether trials. During the bellwether trials our office also coordinated the experts' inspections of the plaintiffs' EHUs.

Candice Sirmon worked with Dr. Hewett to ensure that a statistically accurate number of each manufacturers' EHUs were tested prior to the Federal Government's disposal of their EHU inventory. This testing required coordinating the schedules of three groups of the PSC's testers, the Federal Government's staff and defendants' testers at fifty sites across various states. This process also required identifying how many EHUs of each manufacturer to test at each site. Candice also coordinated the matching process for all plaintiffs' counsel and maintained the responses and data. Additionally, Candice coordinated the Individual Assistance ("IA") file requests with FEMA for all plaintiffs' counsel. Our office created a spreadsheet of manufacturers' insurance policies and the applicable exclusions and limits for each policy received from defendants. Candice also

reviewed the Defendant Profile forms and noticed defendants of any deficiencies and maintained these documents.

Our office was the document depository for class certification and bellwether documents. Our office maintained copies of documents electronically and in hard copy as well. Whenever anyone needed documents in this case, we were the "go to" law firm for documents. Additionally, because our office maintained the testing database, we fielded innumerable telephone calls and email requests for individual and manufacturer specific testing results. Candice also assisted numerous plaintiffs' firms with matching vehicle identification numbers and bar codes with manufacturers and contractors, along with assisting with other matching issues.

Our staff organized, bates numbered and produced all expert files and plaintiffs' documents used during class certification and bellwether trials. We reviewed the entire document database of all documents obtained from defendants and third parties and identified "hot" exhibits to use during depositions, the Class Certification Hearing and bellwether trials. Our staff also received, organized and maintained the deposition transcript library. Furthermore, our paralegals and secretary made the travel and hotel arrangements for the majority of the experts in this MDL.

Linda participated in each and every Plaintiffs' Steering Committee telephone conference on Tuesdays at 11:00 a.m. and attended virtually every status conference and every Hearing/Motion before the Court, often assisting the other attorneys arguing before the Court. Our firm also drafted and filed pleadings including Appellant Raymond Bell's appeal of his dismissal with prejudice to the Fifth Circuit Court of Appeals and Plaintiffs' Opposition to Bechtel National Inc.'s Rule 12(b)(6) Motion to Dismiss on grounds of government contractor immunity. The entire staff at Lambert & Nelson, PLC made extensive copies (approximately 149,604 copies), organized documents, typed and filed pleadings and maintained the entire file in an extremely organized manner so that we became the firm relied upon by the Trial Teams for materials necessary for trial preparation.

Throughout this case we gladly volunteered our offices for depositions, PSC meetings, executive committee meetings, trial team meetings, trial preparation and as a place for out-of-town attorneys to work. Our office made thousands of copies and frequently served lunch and refreshments to all participants. Our office equipment including, but not limited to, computers, copiers, facsimile and postage machine were used to support the litigation of this MDL. During the settlement process our firm continued to provide support by creating the testing cost analysis for all EHUs manufactured by Fleetwood and for all manufactured homes. Throughout the class certification and bellwether trials our firm dedicated full-time Linda Nelson, Candice Sirmon, and two paralegals to this MDL litigation.