# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  FEMA TRAILER FORMALDEHYDE PRODUCTS LIABILITY LITIGATION | *  MDL NO. 1873 |
| | * |
| | * |
| | *  SECTION "N-5" |
| | * |
| | * |
| | *  JUDGE ENGELHARDT |
| THIS DOCUMENT IS RELATED TO: | *  MAG. JUDGE CHASEZ |
| | * |
| ALL CASES | * |
| | * |
| | * |

**********************************************

### RODNEY & ETTER'S MEMORANDUM IN OPPOSITION TO MOTION OF CO-LIAISON COUNSEL FOR PLAINTIFFS AND PSC MEMBERS MIKAL WATTS AND ROBERT HILLIARD TO APPROVE PROPOSED COMMON BENEFIT FEE ALLOCATIONS

The Rodney & Etter, LLC law firm ("R&E"), through undersigned counsel, opposes the allocation proposal submitted by Co-Liaison Counsel for the Plaintiffs and Plaintiffs' Steering Committee Members Watts and Hilliard (collectively, the "PSC").  The PSC suggests that the Court allocate only $21,686.56, or 0.35%, of the attorneys' fees fund to R&E.  Yet R&E's efforts in initiating this litigation, conducting the initial investigations, conducting scientific and legal research, and prosecuting the case during the time period before appointment of the PSC were crucial to the ultimate procurement of the settlement fund.  The PSC offers no explanation or analysis to support the low amount of their proposed allocation to R&E.

R&E requests that the Court award it $360,901.25, which is the sum of the fees compiled at a reasonable hourly rate by R&E attorneys and paralegals, plus unpaid expenses.  In a prior pleading, the PSC even admitted that R&E provided valuable service for the common benefit of the class.  "The Rodney & Etter law firm initiated the first legal action on behalf of

those claiming formaldehyde exposure in FEMA-provided housing units after Hurricanes Katrina and Rita. This is a matter of record and is undisputed." PSC Memorandum, Doc. 22889 at p. 1, filed 9/16/11. Yet despite acknowledging R&E's vital contribution, the PSC have proposed that R&E receive an amount is not fair and reasonable. The Moreland/Becnel alternative allocation proposal is also unacceptable because it would provide R&E an undetermined portion of a fraction of the common benefit allocation.

I.    **R&E EXPENDED SIGNIFICANT TIME AND EXPERTISE FOR THE COMMON BENEFIT OF THE PLAINTIFF CLASS.**

A.    **R&E Took the Initial Lead in Prosecuting FEMA Formaldehyde Litigation.**

In June 2006, R&E's attorneys, directed by John K. Etter, began working on the FEMA trailer formaldehyde litigation when the formaldehyde exposure complaints first surfaced. Attorneys with R&E are experienced trial lawyers who have represented both defendants and plaintiffs in state and federal civil rights litigation, toxic tort class actions, administrative and regulatory matters, and intellectual property litigation. Exhibit 1, Etter Affidavit at ¶ 3. R&E has been counsel to local and state governments, corporations, and individuals. *Id.* R&E has litigated civil rights, discrimination and voting rights claims on behalf of the New Orleans community, including litigating on behalf of New Orleans residents displaced by Hurricane Katrina. *Id.* at ¶ 2. Of particular relevance to this litigation, R&E attorneys brought training and experience in scientific and engineering methods and procedures, which were particularly relevant to the chemical exposures and toxicology issues in this litigation. In particular, John Etter graduated from Swarthmore College with a Bachelor of Science degree in engineering in 1979, and worked for computer and medical equipment companies for 15 years, in the areas of manufacturing engineering, quality engineering, reliability, regulatory affairs and product safety, and is a registered professional engineer

- 2 -

(Colorado). Mr. Etter obtained a juris doctor degree from Tulane University Law School in 1997, is admitted in state and federal courts in Louisiana and Texas and is also a patent attorney. *Id.* at ¶ 11. R&E's qualifications and experience were crucial to the initial investigation, strategy and prosecution of this litigation.

After initial complaints surfaced regarding health problems among residents in FEMA trailers, R&E's attorneys and paralegals investigated complaints from FEMA trailer residents, contacted environmental advocacy groups, identified Mary Devany and other experts, searched government records, and identified trailer manufacturers and FEMA contractors. After conducting this initial investigation, on August 4, 2006 R&E filed one of the first FEMA formaldehyde lawsuits, the *Decarlo McGuire v. Gulf Stream Coach* class action lawsuit in the Civil District Court for the Parish of Orleans. A copy of the petition may be in the record at Case No. 06-5659, Rec. Doc. 1-1 at p. 4. The *Decarlo McGuire* petition named several manufacturers and contractors that were not sued in the *Hillard v. USA* petition (No. 06-2575, E.D. La.), and, of important common benefit to the class, the filing of the petition suspended the tolling of the Louisiana prescriptive periods as to those previously unnamed defendants. Eventually, R&E filed thirteen lawsuits on behalf of plaintiffs seeking damages due to formaldehyde in FEMA trailers.

After *McGuire* was removed to federal court, R&E actively litigated the case until it was consolidated into this MDL in November 2007. R&E opposed multiple motions to dismiss under F.R.C.P. Rules 9(b), 10(b), 12(b)(3), 12(b)(6) and 12(e), which led to R&E filing an amended complaint that became the model for the master complaint in this consolidated litigation. *See McGuire v. Gulfstream Coach*, No. 06-5659 (E.D. La. 4/9/07), Doc. 131. *See*

*also McGuire v. Gulfstream Coach*, No. 06-5659 (E.D. La. 11/29/06), Doc. 96; *Id.* (3/21/07), Doc. 127 (appearances by J. Etter at hearings on Motions to Dismiss).

      **B.**    **R&E's Filing of the *Nelson* Suit in the Western District Was a Necessary Prerequisite to Multidistrict Consolidation.**

      After consultation with several of the attorneys that would later become members of the PSC, R&E prepared and filed the *Kimberly Nelson v. Gulf Stream Coach* lawsuit in the Western District of Louisiana (No. 07-921). The *Nelson* amended complaint was the first complaint to seek injunctive relief from FEMA, including identification of FEMA trailer residents and preservation of FEMA's records and database. R&E, then, filed a motion to transfer, which was a necessary prerequisite for multi-district consolidation. R&E had filed two of the four cases that were pending when the parties asked the Judicial Panel on Multi-District Litigation to consolidate the FEMA trailer cases. Mr. Etter prepared for and travelled to New York City for the MDL hearing.

      **C.**    **R&E's Litigation Against FEMA Yielded Crucial Information for the Common Benefit.**

      Moreover, R&E was the only law firm to seek a preliminary injunction against FEMA, seeking formaldehyde testing, notification of trailer residents and preservation of FEMA records and databases. *See* Motion for Preliminary Injunction (filed in the MDL), Doc. 8, filed 11/16/07. In support of that motion, R&E provided this Court with government studies, including the ATSDR Health Consultation on Formaldehyde Sampling of FEMA Temporary - Housing Trailers, which reported on formaldehyde levels and recommended interventions to protect trailer residents. *See* Doc. 8-2, filed 11/16/07. R&E's efforts resulted in the Court ordering FEMA to appear in this litigation, which was a necessary and critical step for plaintiffs to be able to identify and match the mobile home and trailer manufacturers and contractors to individual trailer residents. *See* Order, 11/29/07 (Doc. 26) (permitting amendment to name

- 4 -

FEMA and requiring FEMA to "set forth a detailed plan for testing the FEMA trailer units); Order, Doc. 82, filed 1/17/08 (denying motion to amend complaint in *Nelson* "as to these specific plaintiffs.  However, any claims against FEMA, including valid / properly exhausted F.T.C.A. claims against the government, should be included in the Master Complaint.").  *See also* Order, 12/27/07, Doc. 74 (noting entry of protective order regarding FEMA records and databases); Order, 3/5/08, Doc. 104 (ordering FEMA to identify unit manufacturers, models and VIN's).  But for R&E's efforts to preserve and obtain FEMA's records, matching the tens of thousands of claimants to the trailer manufacturers would have been nearly impossible.

R&E conferred and worked with the other plaintiffs' law firms to identify and retain experts and develop the strategy for this litigation.  The Gainsburgh Benjamin, Becnel, Bice Palermo & Veron, and other law firms agreed in June, 2007, to R&E serving on the Plaintiffs' Executive Committee.  *See* Motion to Appoint Interim Plaintiff's Committee, filed in *Oldenburg v. United States*, 07-2961 (E.D. La. 7/24/07), Doc. 9.  *See also* Report of Plaintiff's Coordinated Meeting, *In re FEMA Trailer Formaldehyde*, MDL 1873 (E.D. La. 11/21/07), Doc. 13 (noting attendance at meeting by Roy J. Rodney, Jr. and John K. Etter).

**D.     R&E Seeks Reimbursement Only for its Work During the Period Before Appointment of Liaison Counsel on March 24, 2008.**

After consolidation, the Court selected certain counsel to serve on the Plaintiffs' Steering Committee ("PSC"), for which Mr. Etter applied but was not appointed.  On March 24, 2008, the Court entered an Order on Plaintiffs' Counsel's Time and Expenses Submissions (Doc. 115), which required PSC authorization for work common benefit work and expenses.

R&E <u>only</u> seeks compensation and reimbursement for its efforts and expenses that occurred before the Court's March 24, 2008 Order.[1]

The PSC has already acknowledged that "As to common benefit expenses, all of the expenses enumerated in Exhibit D attached to the R&E motion appear to be expenses incurred for the benefit of **all** plaintiffs [ ] prior to the entry of this Court's time and expenses submission protocol.  Therefore, the PSC is prepared to recognize the submission of these expenses." Doc. 22889 (emphasis added).  The PSC has also represented to the Court that "the PSC does not oppose the right of the Rodney & Etter firm to submit to the Court for consideration in connection with any later settlements, the firm's claim for common benefit fees and/or the balance of its common benefit expenses."  *Id.  See also* Consent Order, Doc. 23563, 11/17/11 (reserving the right of Rodney & Etter "to request the payment of a common benefit fee in connection with other settlements which might be entered in this litigation").

R&E submitted its detailed time and expense records to Bourgeois Bennett and to the PSC, pursuant to this Court's orders (Copy attached, Exhibit 2).  R&E also submitted a three-page narrative to the PSC, explaining and substantiating R&E's efforts in this litigation.  (Copy attached, Exhibit 3).  R&E also submits the attached Affidavit of Mr. Etter, attesting to the

---

[1]     Even though it seeks no reimbursement for the time period after March 24, 2008, Mr. Etter and R&E's associates and paralegals continued to support the plaintiffs' committee efforts, monitored the scientific developments and the litigation, attended status conferences, filed additional cases and submitted claim forms for individual claimants.

On August 31, 2009, R&E transferred thirteen (13) individual lawsuits, including the McGuire and Nelson cases to Justin Woods of the Gainsburgh, Benjamin law firm, and withdraw from those cases.  The Gainsburgh, Benjamin and R&E law firms discussed confecting a referral counsel agreement to memorialize their understanding to share contingency attorneys' fees and expenses for those individual cases, similar to Gainsburgh, Benjamin's agreements with other counsel, but did not execute such an agreement.  R&E anticipates signing such a referral agreement with Gainsburgh, Benjamin for those 13 individual cases shortly.

- 6 -

accuracy of R&E's time and expense reports and efforts (Exhibit 1).  R&E's partners devoted 593.65 hours to the FEMA trailer formaldehyde litigation between June 1, 2006 and March 23, 2008, as reported to Bourgeois Bennett.  R&E's associate attorneys provided 720.35 hours of common benefit work.  R&E's paralegals spent 394.50 hours on this litigation.  At a partner rate of $300 per hour, an associate rate of $200 per hour and a paralegal rate of $75 per hour, R&E would be entitled to $351,752.50 in attorney fees.  Those rates are consistent with recent Eastern District awards.  *See Hornbeck Offshore Services, LLC v. Salazar*, No. 10-1663, 2001 WL 2214765 (E.D. La. 6/1/11); ($295-420 for partners and $180-195 for associates); *In re OCA, Inc. Secs. & Derivative Litig.*, No. 05-2165, 2009 WL 512081 at *25 (E.D. La. 3/2/09); (partners $400-450, associates $200–250, paralegals $100).  R&E also paid $10,563.15 for formaldehyde testing, attendance at the Joint Panel on Multi-District Litigation hearing, attending the Congressional Sub-Committee hearing on the FEMA trailers, filing fees, experts and other expenses in this litigation, between June 1, 2006 and March 23, 2008, of which $1,414.40 has been paid from the manufactured home settlement funds.

## II.   LAW AND ARGUMENT

### A.   Under Established Fifth Circuit Law, the Court Must Closely Scrutinize the PSC's Proposed Fee Allocation.

Federal courts have long held that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole."  *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980). Louisiana state courts similarly recognize that an attorney is entitled to compensation "where an attorney alone and at his own expense has successfully maintained an action for the preservation, protection, increase or creation of a fund in which persons other than his own clients may share or from which they may benefit."  *Avants v. Kennedy*, 2002-0830 (La. App. 1 Cir. 12/20/2002), 837 So. 2d 647, 656;

*Kirkpatrick v. Young*, 456 So. 2d 622, 625 (La. 1984). R&E's efforts and expenditures in investigating, preparing, filing, and litigating cases were necessary for this consolidated action and benefitted all of the FEMA trailer claimants.

Fifth Circuit jurisprudence mandates that when reviewing proposed allocations from a common benefit fund, district courts "must not cursorily approve the attorneys' fee provision of a class settlement or delegate that duty to the parties. Although exacting judicial review of fee applications may be burdensome, it is necessary to discharge the court's duty to award fees that are reasonable and consistent with governing law." *In re High Sulfur Content Gasoline Products Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008) (omitting internal citations). The Court should "compare the contributions of all of the plaintiffs' attorneys in order to determine if the fee allocation [is] equitable. After all, 'allocation means proportion; how does the share one counsel is taking compare to the shares others are getting?'" *Id.* at 232 (quoting *In re Vitamins Antitrust Litig.,* 398 F. Supp. 2d 209, 234 (D.D.C. 2005)).

Indeed, the Fifth Circuit has expressly held that when the attorneys proposing an allocation of an award are themselves to be awarded a portion of the award, affording deference to the proposed allocation is inappropriate. *In re High Sulfur Content Gasoline Prods. Liab. Litig*, 517 F.3d at 234-35. The appeals court stated:

> It is likely that lead counsel may be in a better position than the court to evaluate the contributions of all counsel seeking recovery of fees. But our precedents do not permit counsel simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because "counsel have inherent conflicts. . . . They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?"

*Id.* at 234-35 (quoting *In re Diet Drugs Products Liab. Litig.,* 401 F.3d 143, 173 (3d Cir. 2005)); *see also Victor v. Argent Class Convertible Arbitrage Fund LP*, 623 F.3d 82, 89 (2d Cir. 2010) ("We recognize that lead counsel has an incentive to undercompensate non-lead counsel, as such

- 8 -

compensation typically decreases lead counsel's own recovery.").

**B.     The PSC Offers No Analysis to Support the Minimal Proposed Allocation to R&E.**

The PSC's supporting memorandum is devoid of any analysis to explain the criteria for the different tiers of counsel or to justify the percentages that were awarded to each proposed tier.  The PSC merely states that its tier proposal is not disputed.  (PSC Mem. at p. 6.) Even with regard to the lowest tier to which R&E was relegated, the PSC offers no explanation for how it decided upon differences in allocation among this cohort.  The PSC states, "where total hours did not render an equivalent value, they were discounted, and where the hours were devoted to assignments having a significant impact on outcome, they were given more weight." Yet the PSC offers no explanation as to what factors they looked to make these determinations or how they determined which contributors had a "significant impact."  The Court should not accept the PSC's invitation to simply rubber stamp its opaque fee allocation proposal, since doing so would likely lead to a reversal in accordance with *High Sulfur*.

**C.     The Court Should Consider R&E's Pre-Consolidation Contributions for the Common Benefit.**

The PSC's allocation ignores R&E's significant pre-consolidation work.  It is well-established that "work completed by non-lead counsel prior to the appointment of lead plaintiff can confer substantial benefits on the class.  For instance, potential lead counsel may conduct significant factual investigations, perform legal research on novel or innovative theories, and make strategic legal decisions affecting the content of complaints and the ultimate course of the litigation.  In such instances, when substantial benefit has been conferred on the class, non-lead counsel are entitled to reasonable compensation."  *Victor v. Argent Class Convertible Arbitrage Fund LP*, 623 F.3d 82, 87 (2d Cir. 2010).  *See also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 194, 197 (3d Cir. 2005); *Gottlieb v. Barry*, 43 F.3d 474, 489 (10th Cir. 1994)

- 9 -

(noting that "it seems implausible that all of sixteen months of work, pursued on multiple fronts by multiple counsel, suddenly becomes worthless upon the selection of a few counsel to serve as class counsel").  Here, R&E's filing of the *McGuire* and *Nelson* complaints, its request for a preliminary injunction against FEMA, and its foundational work all conferred substantial benefits to the class.

This Court has also recognized that the attorneys who file the first lawsuits are entitled to common benefit fees and reimbursement, even if they do not handle a large number of claimants, because a "critical mass" of cases is required for consolidation into a single proceeding and for the litigation to have sufficient momentum to result in substantial settlements. *See Turner v. Murphy Oil USA, Inc.*, 582 F. Supp. 2d 797, 809 (E.D. La. 2008).

While performing the substantial initial work in this litigation before the PSC was appointed, R&E had no guarantee that it would be appointed to the plaintiffs' committee or would be selected as liaison counsel.  "To allow compensation of work done during this period to depend solely on the whim of the [PSC] could well lead to unfair and arbitrary fee decisions."  *In re Cendant Corp. Secs. Litig.*, 404 F.3d 173, 194–95 (3d Cir. 2005).  While the Court may give some deference to reasons for an allocation provided by lead counsel, "[t]he court, not the lead plaintiff, must decide for itself what firms deserve compensation for work done on behalf of the class prior to the appointment of the lead plaintiff."  *Id.* at 195; *see also In re OCA, Inc. Sec. and Derivative Litig.*, No. 05-2165, 2009 WL 512081 at *24 (E.D. La. 3/2/09) (*quoting Cendant*).

Law firms that were not part of the PSC may and should receive compensation for work and expenditures that created a common benefit.  In *In re Vioxx*, 802 F. Supp. 2d 740, 786-87 (E.D. La. 2011), Judge Fallon awarded common benefit fees to the Bruno & Bruno law firm, even though none of its attorneys served on the PSC.  Several attorneys were awarded

- 10 -

common benefit fees in the Murphy Oil class action who were not committee members.  *See Turner v. Murphy Oil USA, Inc.*, 582 F. Supp. 2d at 822-827.

R&E's position in this case is somewhat similar to the position of Lance Licciardi in the Murphy Oil litigation.  In that case, Mr. Liccardi was not assigned to participate in any committees of the Murphy Oil PSC, but he was asked to contribute his clients to the critical mass of plaintiffs, thereby relinquishing his right to collect fees that those clients would have generated.  Mr. Licciardi was awarded $260,000 from the common fund despite the fact that he did little common benefit work.  Like Mr. Licciardi, R&E was asked by the PSC to contribute their clients to the critical mass that was required to create this consolidated MDL action, and later transferred its cases to Plaintiffs' Liaison Counsel.  *See Turner v. Murphy Oil,* 582 F. Supp. 2d at 822.  But unlike Mr. Licciardi, R&E contributed vital pre-consolidation work that facilitated the development of the litigation and ultimately resulted in the fund.  The PSC should follow Judge Fallon's example in that case, and allocate common benefit attorneys' fees and expense reimbursement to R&E.

## III.   CONCLUSION

In conclusion, Rodney & Etter is entitled to common benefit fees because R&E was one of the first law firms to recognize and investigate the formaldehyde exposure complaints after Hurricane Katrina and its efforts conferred substantial benefits to the class.  The proposed fee allocation submitted by the PSC is not reasonable.   R&E hired experts to perform formaldehyde testing, researched, prepared and filed thirteen lawsuits on behalf of people who were exposed to formaldehyde.   Two of R&E's cases, *McGuire* and *Nelson* supported the consolidation of these cases into the present MDL litigation.   Accordingly, R&E requests that that this Court award the Rodney & Etter, LLC law firm reasonable attorneys' fees for its work that benefitted all litigants in these consolidated matters and order that the Rodney & Etter, LLC

1108859v2

law firm be reimbursed for the expenses it incurred in the investigation, filing and prosecution of the initial lawsuits that led to the settlements.

Respectfully submitted,

/s/ J. Dalton Courson
Phillip A. Wittmann, 13625, T.A.
J. Dalton Courson, 28542
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
(504) 581-3200

Attorneys for Rodney & Etter

## CERTIFICATE OF SERVICE

I hereby certify that, on November 6, 2012, a copy of the foregoing Rodney & Etter's Memorandum in Opposition to Motion of Co-Liaison Counsel for Plaintiffs and PSC Members Mikal Watts and Robert Hilliard to Approve Proposed Common Benefit Fee Allocations was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ J. Dalton Courson
J. Dalton Courson

1108859v2