

620 North Carrollton Ave.
New Orleans, LA 70119
Telephone: (504) 483-3224
Facsimile: (504) 483-2259
www.rodneyandetter.com

Trial Practice & Intellectual Property

## FEMA Trailer Formaldehyde Products Liability Litigation
## Narrative Statement in Support of Rodney & Etter, LLC's
## Request for Common Benefit Attorney's Fees and
## Reimbursement of Common Benefit Expenses

Rodney & Etter, LLC, (hereinafter referred to as "R&E") submits the following narrative statement in support of our request for common benefit attorneys' fees and reimbursement of common benefit expenses, for consideration by the Plaintiffs' Steering Committee ("PSC").

The PSC has stated to the Court that, "The Rodney & Etter law firm initiated the first legal action on behalf of those claiming formaldehyde exposure in FEMA-provided housing units after Hurricanes Katrina and Rita. This is a matter of record and is undisputed." *See* PSC Memorandum, Doc. 22889, filed 9/16/11.

In June, 2006, R&E's attorneys, directed by John K. Etter, began working on the FEMA trailer formaldehyde litigation, when the formaldehyde exposure complaints first surfaced. R&E filed the *Decarlo McGuire v. Gulf Stream Coach* class action lawsuit in Civil District Court for the Parish of Orleans on August 4, 2006, which named travel trailer and mobile home manufacturers, and FEMA trailer installation and maintenance contractors. After that case was removed to federal court, R&E actively litigated the *McGuire* case in federal court until it was consolidated into this MDL in November, 2007.

R&E prepared and filed the *Kimberly Nelson v. Gulf Stream Coach* lawsuit in the Western District of Louisiana, and filed a motion to transfer, which was necessary for multi-district consolidation. R&E filed two of the four cases that were pending when the parties asked the Judicial Panel on Multi-District Litigation to consolidate the FEMA trailer cases.

R&E's efforts resulted in the Court ordering FEMA to appear in this litigation, which was a critical step for plaintiffs to be able to identify and match the mobile home and trailer manufacturers and contractors to individual trailer residents. *See* Order, 11/29/07 (Doc. 26) (permitting amendment to name FEMA and requiring FEMA to "set forth a detailed plan for testing the FEMA trailer units). *See also* Order, 3/5/08 (Doc. 104) (ordering FEMA to identify unit manufacturers, models and VIN's).

R&E conferred and worked with the other plaintiffs' law firms to identify and retain experts and develop the strategy for this litigation. The Gainsburgh, Benjamin, Becnel, Bice Palermo & Veron, and other law firms agreed in June, 2007, to R&E serving on the Plaintiffs' Executive Committee. *See* Motion to Appoint Interim Plaintiff's Committee, filed in *Oldenburg v. United States*, 07-2961 (E.D. La. 7/24/07), Doc. 9. *See also* Report of Plaintiff's Coordinated Meeting, *In re FEMA Trailer Formaldehyde*, MDL 1873 (E.D. La. 11/21/07), Doc. 13.



EXHIBIT 3

After consolidation, the Court selected certain counsel to serve on the Plaintiffs' Steering Committee ("PSC"), for which Mr. Etter applied but was not appointed. On March 24, 2008, the Court entered an Order on Plaintiffs' Counsel's Time and Expenses Submissions (Doc. 115), which required PSC authorization for work common benefit work and expenses. R&E only seeks compensation and reimbursement for its efforts and expenses that occurred before the Court's March 24, 2008 Order, which R&E performed and incurred with a reasonable expectation of future compensation.

After the FEMA trailer cases were consolidated and the PSC members were appointed by the Court, Mr. Etter and R&E's associates and paralegals continued to support the plaintiffs' committee efforts, monitored the scientific developments and the litigation, attended status conferences, filed additional cases and submitted claim forms for individual claimants.

On August 31, 2009, R&E transferred thirteen (13) individual lawsuits, including the *McGuire* and *Nelson* cases to Justin Woods of the Gainsburgh, Benjamin law firm, and withdraw from those cases. The Gainsburgh, Benjamin and R&E law firms discussed confecting a referral counsel agreement to memorialize their understanding to share contingency attorneys' fees and expenses for those individual cases, similar to Gainsburgh, Benjamin's agreements with other counsel, but did not execute such an agreement. R&E anticipates signing such a referral agreement with Gainsburgh, Benjamin for those 13 individual cases shortly.

The PSC has already acknowledged that "As to common benefit expenses, all of the expenses enumerated in Exhibit D attached to the R&E motion appear to be expenses incurred for the benefit of **all** plaintiffs [ ] prior to the entry of this Court's time and expenses submission protocol. Therefore, the PSC is prepared to recognize the submission of these expenses." Doc. 22889 (emphasis added). The PSC has also represented to the Court that "the PSC does not oppose the right of the Rodney & Etter firm to submit to the Court for consideration in connection with any later settlements, the firm's claim for common benefit fees and/or the balance of its common benefit expenses." *Id.* *See also* Consent Order, Doc. 23563, 11/17/11 (reserving the right of Rodney & Etter "to request the payment of a common benefit fee in connection with other settlements which might be entered in this litigation").

R&E's partners devoted 593.65 hours to the FEMA trailer formaldehyde litigation between June 1, 2006 and March 23, 2008, as reported to Bourgeois Bennett. Our associate attorneys provided 720.35 hours of common benefit work. R&E's paralegals spent 394.50 hours on this litigation. At a partner rate of $300 per hour, an associate rate of $200 per hour and a paralegal rate of $75 per hour, R&E would be entitled to $351,752.50. Those rates are consistent with recent Eastern District awards. *See Hornbeck Offshore Services, LLC v. Salazar*, 10-1663 (E.D. La. 6/1/11); 2011 U.S. Dist. Lexis 59846 ($295 - $420 partners and $180 - $195 associates); *In re OCA, Inc. Securities and Derivative Litigation*, 05-2165 (E.D. La. 3/2/09); 2009 U.S. Dist. Lexis 19210 (partners $400 - $450, associates $200 – 250, paralegals $100). R&E also paid $10,563.15 for formaldehyde testing, attendance at the Joint Panel on Multi-District Litigation hearing, attending the Congressional Sub-Committee hearing on the FEMA trailers, filing fees, experts and other expenses in this litigation, between June 1, 2006 and March 23, 2008, of which $1,414.40 will be paid from the manufactured home settlement funds.

Federal courts have long held that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Boeing v. Van Gemert*, 444 U.S. 472, 478; 100 S. Ct. 745, 749; 62 L. Ed.2d 676, 681 (1980). Louisiana state courts similarly recognize that an attorney is entitled to compensation "where an attorney alone and at his own expense has successfully maintained an action for the preservation, protection, increase or creation of a fund in which persons other than his own clients may share or from which they may benefit." *Avants v. Kennedy*, 2002 0830 (La. App. 1 Cir. 12/20/2002); 837 So.2d 647, 656; *Kirkpatrick v. Young*, 456 So.2d 622, 625 (La. 1984). R&E's efforts and expenditures in investigating, preparing, filing and litigating cases were necessary for this consolidated action and benefitted all of the FEMA trailer claimants.

The Court has recognized that the attorneys who file the first lawsuits are entitled to common benefit fees and reimbursement, even if they do not handle a large number of claimants, because a "critical mass" of cases is required for consolidation into a single proceeding and for the litigation to have sufficient momentum to result in substantial settlements. *See Turner v. Murphy Oil USA, Inc.*, 582 F.Supp.2d 797, 809 (E.D. La. 2008).

Law firms that were not part of the plaintiffs' steering committee may and should receive compensation for work and expenditures that created a common benefit. In *In re Vioxx*, 802 F.Supp.2d 740, 786 - 787 (E.D. La. 2011), Judge Fallon awarded common benefit fees to the Bruno & Bruno law firm, even though none of it's attorneys served on the PSC. Several attorneys were awarded common benefit fees in the Murphy Oil class action who were not committee members. *See Turner v. Murphy Oil USA, Inc.*, 582 F.Supp.2d at 822 – 827.

R&E's position in this case is identical to the position of Lance Licciardi in the Murphy Oil litigation. Like Mr. Licciardi, R&E was asked by the PSC to contribute their clients to the critical mass that was required to create this consolidated MDL action, and later transferred its cases to Plaintiffs' Liaison Counsel. *See Turner v. Murphy Oil*, 582 F.Supp.2d at 822. The PSC should follow Judge Fallon's example in that case, and allocate common benefit attorneys' fees and expense reimbursement to R&E.

In conclusion, Rodney & Etter is entitled to common benefit fees, because R&E was one of the first law firms to recognize and investigate the formaldehyde exposure complaints after Hurricane Katrina. R&E hired experts to perform formaldehyde testing, researched, prepared and filed thirteen lawsuits on behalf of people who were exposed to formaldehyde. Two of R&E's cases, *McGuire* and *Nelson* supported the consolidation of these cases into the present MDL litigation. Accordingly, the Rodney & Etter, LLC law firm, requests that the PSC recommend an award to the Rodney & Etter, LLC law firm of reasonable attorneys' fees for work that benefitted all litigants in these consolidated matters and reimbursement for the expenses R&E incurred in the investigation, filing and prosecution of the initial lawsuits that led to the mobile home, travel trailer and contractor settlements.

Respectfully submitted, October 10, 2012

John K. Etter

3