UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                MDL NO. 07-1873
       FORMALDEHYDE PRODUCTS
       LIABILITY LITIGATION

SECTION "N" (5)

THIS DOCUMENT RELATES TO
ALL CASES

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>MEMORANDUM IN SUPPORT OF WATTS HILLIARD, L.L.C.'S RESPONSE IN WRITING,
TO SHOW CAUSE ORDER, AS TO WHY THE COURT SHOULD NOT
APPOINT A SPECIAL MASTER TO HEAR EVIDENCE AND ARGUMENT
REGARDING THE ALLOCATION OF COMMON BENEFIT ATTORNEYS' FEES
AND RENDER A REPORT AND RECOMMENDATION THEREON</u>

MAY IT PLEASE THE COURT:

With prior orders[1] the Court has approved and set aside from various settlements a total common benefit fee of $6,196,159.95. This lump sum fee must now be allocated among counsel who claims to have performed services for the plaintiffs' common benefit. After originally setting a hearing to make this determination on November 14, the Court on November 7 then reset it's hearing to December 12, 2012.[2] On the day before its original hearing date, the Court yesterday entered its "Show Cause Order Regarding the Appointment of Special Master," requiring that "any party opposed to this Court appointing a special master to examine and hear the evidence and argument regarding allocation of common benefit attorneys fees and render a report and recommendation thereon must show

---

[1] Docs. 25885, 25886, 25901, 25842, 25842-3.
[2] Doc. #25931.

1

cause in writing **on or before November 28, 2012** why this Court should not make such an appointment."[3]

Watts Hilliard, LLC, opposes the appointment of a special master, and in this Memorandum demonstrates why the Court should not appoint a special master. The Court should not appoint a special master for two (2) reasons:

1. This Court – not a special master - is uniquely situated to determine whether the benefit provided was the result of a large investment of dollars yielding an immense critical mass of cases surviving dismissal and thereby creating settlement value, or solely the result of attorneys and others billing time;

2. Unlike other cases with a successful result, this case cannot financially justify the extra time, cost and expense of a special master;

## I. THIS COURT, NOT A SPECIAL MASTER, IS UNIQUELY SITUATED TO DETERMINE WHETHER THE BENEFIT PROVIDED WAS THE RESULT OF A LARGE INVESTMENT OF DOLLARS YIELDING AN IMMENSE CRITICAL MASS OF CASES SURVIVING DISMISSAL AND THEREBY CREATING SETTLEMENT VALUE, OR SOLELY THE RESULT OF ATTORNEYS AND OTHERS BILLING TIME

Citing the *Johnson* factors[4], each of the Applications for Common Benefit Fees seems to presuppose a right to be compensated proportionately for time expended in this case, regardless of whether success was achieved thereby. However, the United States Court of Appeals for the Fifth Circuit has held on a number of occasions that a common benefit fee need not be determined solely from the hours reported from an attorney.[5] Indeed, common benefit fee awards assume a

---

[3] Doc. #25947.
[4] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).
[5] *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995)(reducing fee award by 10% because no indication on record as to whether plaintiffs' hours were reasonably expended); *Alberto v. Klevenhagen*, 896 F.2d 927 (5th Cir. 1990)(plaintiff attorneys' claimed hours were not "reasonably expended on the

2

"successful litigation," there by raising the question - what created the fund providing a common benefit to all the plaintiffs? This Court, not a special master, is uniquely situated to make that call.[6]

This Court should decide the division of common benefit fees as only this Court can make the determination of what work created the fund now being divided. It was not a special master; rather, this Court:

1. was present during the unsuccessful effort to achieve class certification,

2. ordered plaintiffs to individually complete a detailed Plaintiff Fact Sheet (PFS) to enable the defendants to understand the claims against them,

3. subsequently shepherded over all of the discovery and pretrial efforts of individual bellwether cases,

4. presided over each of the trials,

5. conferred with magistrates conducting the "summary jury trials,"

6. entered the orders concerning enforcement of the Court's PFS orders, matching plaintiffs to defendants, and databasing claimants to that settlement discussions could begin,

7. personally prodded the parties through the settlement process that yielded the settlement fund from which the common benefit fee fund came, and

8. observed first-hand who continued to litigate the case to the end.

No special master could ever approach the Court's embedded knowledge concerning the prosecution of this case, who provided common benefit and who did

---

litigation" because the claimed hours were "questionable" and the court failed to address why the hours were not "unnecessary, duplicative, or excessive")

[6] See In Re High Sulfur Content Gasoline Products Liability Litigation, 517 F.3d 220 (5th Cir. 2008)

3

not, and more importantly, concerning the pivotal issue of who's work provided an actual benefit from which common benefit fees should be derived. Moreover, because the right to common benefit fees arises only upon a successful litigation and only in proportion to the benefit conferred by the work provided, the Court is the only oracle with the knowledge base needed to appropriately divide the common benefit fees set aside in this litigation. Accordingly, this Court – not a special master - should make the decision of how to allocate the common benefit fees.

### A.   THE RIGHT TO COMMON BENEFIT FEES ARISES ONLY UPON A SUCCESSFUL LITIGATION

Under the American Rule, absent a statute or enforceable contract, a prevailing litigant is ordinarily not entitled to collect reasonable attorney fees from the loser.[7] However, federal courts, "in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require."[8]

The common benefit exception originates from the common fund exception to the American Rule.[9] Under the common fund exception, **the successful plaintiff is awarded attorney fees because his suit creates** "a common fund, the economic benefit of which is shared by all members of the class."[10] Fee shifting is justified under the common fund and common benefit exceptions because "[t]o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally

---

[7] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975).
[8] *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973).

[9] *Hall*, 412 U.S. at 5 n. 7, 93 S.Ct. at 1946 n. 7.
[10] *Id.*

4

to the litigation expenses would be to **enrich the others unjustly** at the plaintiff's expense."[11]

The common benefit exception applies only in cases where "the plaintiff's ***successful litigation*** confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'"[12]

In *Mills v. Electric Auto-Lite Co.*, the Supreme Court, in first defining the

---

[11] *Mills*, 396 U.S. at 392, 90 S.Ct. at 625 (emphasis added).

[12] *Hall*, 412 U.S. at 5, 93 S.Ct. at 1946 (emphasis added)(*quoting Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-94, 90 S.Ct. 616, 626, 24 L.Ed.2d 593 (1970)). In *Mills*, the Supreme Court approved the award of attorney fees to successful shareholder plaintiffs in a suit brought to set aside a corporate merger accomplished through the use of a misleading proxy statement. The Court opined that the plaintiffs had "rendered a substantial service to the corporation and its shareholders." *Id.* at 396, 90 S.Ct. at 627. Under these circumstances, assessing fees against the corporation simply shifted the costs of litigation to all of the shareholders of the corporation--i.e., "the class that has benefited from them and that would have had to pay them had it brought the suit." *Id.* at 397, 90 S.Ct. at 628. The Fifth Circuit applied the *Mills* rationale in *Barton v. Drummond Co.*, 636 F.2d 978 (5th Cir. 1981). Likewise, in *Hall*, the Supreme Court awarded attorney fees to the prevailing plaintiff under the common benefit exception. *Hall*, 412 U.S. at 8-9, 93 S.Ct. at 1947-48. In *Hall*, the plaintiff sued his union under § 102 of the Labor-Management Reporting and Disclosure Act ("LMRDA") after having been expelled from his union for violating a union rule by introducing resolutions that criticized various actions of union officials. *Id.* at 2-4, 93 S.Ct. at 1944-45. The Second Circuit eventually upheld the district court's permanent injunction restoring plaintiff's union membership and the court's award of attorney fees. *Id.* The Supreme Court affirmed the award of attorney fees, finding that Congress had not circumscribed fee shifting under the LMRDA, the common benefit exception applied because, "by vindicating his own right of free speech guaranteed by § 101(a)(2) of Title 1 of the LMRDA, [the plaintiff] necessarily rendered a substantial service to his union as an institution and to all of its members." *Id.* at 8, 93 S.Ct. at 1948. The Fifth Circuit applied the *Hall* rationale in *McDonald v. Oliver*, 525 F.3d 1217 (5th Cir.), *cert. denied*, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed. 77 (1976). *See also Markham v. Int'l Assoc. of Bridge, Structural and Ornamental Iron Workers*, 901 F.2d 1022 (11th Cir. 1990).

5

common benefit exception, stated that fee shifting was appropriate, "where a plaintiff has **successfully maintained a suit**, usually on behalf of a class, that benefits a group of others in the same manner as himself."[13] The Court held the common benefit exception was appropriate "where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to **spread the costs proportionately among [those benefiting]**."[14] The Fifth Circuit has interpreted this language to mean that fees must be distributed in proportion to the benefits received.[15]

### B. THE RIGHT TO COMMON BENEFIT FEES ARISES ONLY IN PROPORTION TO THE BENEFITS RECEIVED

In *Alyeska Pipeline v. Wilderness Society*,[16] the Supreme Court held that courts are not free to fashion new equitable exceptions to the general no fees rule. However, the common benefit and common fund exceptions remained.[17] The Court held that the common benefit and common fund exceptions are justified because fees are required to be shifted **"with some exactitude to those benefiting."**[18] **Proportionality between fees and benefits received is required** under the

---

[13] 396 U.S. at 392, 90 S.Ct. at 625 (emphasis added).
[14] 396 U.S. at 393-94, 90 S.Ct. at 626 (emphasis added).
[15] *Guidry v. International Union of Operating Eng'rs, Local 406*, 882 F.2d 929, 944 (5th Cir.1989) (vacating award of attorney fees because award "would not spread the costs of litigation proportionate to the common benefit"), vacated on other grounds, 494 U.S. 1022, 110 S.Ct. 1465, 108 L.Ed.2d 603 (1990). *Accord Erkins v. Bryan*, 785 F.2d 1538, 1548 (11th Cir.) ("fees must spread the cost proportionally among those who benefit"), *cert. denied*, 479 U.S. 960, 107 S.Ct. 455, 93 L.Ed.2d 402 (1986); Jordan v. Heckler, 744 F.2d 1397, 1400 (10th Cir.1984) (*Mills* requires the spreading of costs among class members "in a reasonable and fair manner.").
[16] 421 U.S. 240 (1975).
[17] *Alyeska*, 421 U.S. at 257-59, 95 S.Ct. at 1621-22.
[18] *Id.*, 421 U.S. at 265 n. 39, 95 S.Ct. at 1626 n. 39 (emphasis added)

6

common fund and common benefit exceptions.[19] The Tenth Circuit has held that in order for the common benefit exception to meet *Alyeska*'s requirement of fee shifting with exactitude, **the plaintiff and the benefiting group members must bear fees in proportion to benefits received.**[20] "**The plaintiff's action must confer a substantial benefit on others**; the persons benefited must comprise an ascertainable class; and an award of attorneys' fees must operate to shift the costs of litigation to that group.[21]

### C. ONLY THE COURT CAN ANSWER THE QUESTIONS NECESSARY TO PROPERLY DIVIDE THE COMMON BENEFIT FEES

The decision to be made here is not merely one of who put in the time[22], but whether that time, or some other cause together with it, created the benefit. In deciding how to divide those fees, only the Court can determine whether the settlement fund arose from the expenditure of time versus the expenditure of money. At least six (6) questions arise that can only be answered by the Court:

First, 28,026.62 hours of attorney time were expended prior to the Court's decision to refuse to certify the class, and 62,005.17 attorney hours were expended since October 30, 2008. Do lawyers who abandoned the case in 2008 deserve the

---

[19] *Aguiniga v. United Food and Commercial Workers International Union*, 983 F.2d 1480 (10th Cir. 1993).
[20] *Id.*
[21] *Id.*, citing *Hall v. Cole*, 412 U.S. at 5, 93 S.Ct. 1943; *Mills v. Electric Auto-Lite Co.*, 396 U.S. at 393-94, 90 S.Ct. 616.
[22] This point is made by Watts Hilliard, LLC, who invested more attorney time than any other lawfirm in this litigation.

same compensation for their time as lawyers who worked to rescue it since then?[23] Only the Court possesses the records of which lawyers continued to participate in its hearings, in its bellwether trials, and in its settlement efforts.

Second, an additional 29,984.44 paralegal hours were expended in this case. What is the relative value to be attributed between attorney time and paralegal time?

Third, an additional 44,497.65 in "other" hours were expended, in what appears to be a substantial number of firms contributing personnel to run the PSC's Claims Office. The Claims Office assisted approximately 1,000 plaintiffs in filling out their Plaintiff Fact Sheets. By contrast, Watts Hilliard, LLC alone spent $250 per plaintiff, or a total of approximately $7,473,750 million to cause its 29,895 Plaintiff Fact Sheets to be completed. This process took approximately two hours per plaintiff, or 60,000 hours of time. These 59,790 hours were not included in Watts Hilliard, LLC's submission of common benefit time. With some attorneys claiming common benefit time for providing bodies to assist plaintiffs in filling out 1,000 fact sheets, while others did not claim it for filling out their own plaintiffs' fact sheets, the Court must determine two things: (1) how to give credit to the firms who filled out their own fact sheets; and (2) the relative contribution to the common benefit of everyone filling out facts sheets in order to achieve the settlement that occurred.

---

[23] *See Longden v. Sunderman*, 979 F.2d 1095 (5th Cir. 1992) (reducing fee award by 60% based attorney's mishandling of the litigation prior to the involvement of other counsel)

Fourth, what is the relative contribution to the common benefit of time expended during the trial of bellwether cases versus time spent on other endeavors. Some attorneys expended great time and money trying cases, while others did not. What is the relative contribution to the common benefit between these two groups?

Fifth, after unsuccessful results in five of 6 trials, no significant settlement offer occurred. However, after the matching process, after the compliance with this Court's orders concerning plaintiff fact sheet and after the databasing of the plaintiffs population, a settlement was reached with an amount to be awarded to each plaintiff. What was the relative contribution of those involved in this effort versus those who were not involved?

Sixth, does a firm contributing 29,895 plaintiffs to the class in the case of Watts Hilliard, LLC, or more than 6,000 in the case of The Buzbee Law Firm, or several thousand in the case of the D'Amico law firm, deserve some disproportionate credit for the massive financial outlay it took to bring that number of plaintiffs through the gauntlet of complying with this Court's orders? Here, each Plaintiff attorney had to file his or her own cases (in batches of no more than 300 plaintiffs per case), paying filing fees for the same. More importantly, each Plaintiffs attorney had absorb the substantial cost of causing his or her plaintiffs to complete their Plaintiff Fact Sheet. Otherwise, the Plaintiff's case was dismissed. Should the effort undertaken to preserve plaintiffs' cases from dismissal be given some recognition in that the survival of those plaintiffs' cases is the very reason a common benefit fund exists? The total number of plaintiffs surviving dismissal in this case is 72,774. Watts Hilliard, LLC represents 29,895 or 41.1% of the total. By pure math,

9

Watts Hilliard, LLC clients are receiving that percentage of the total settlement, and are therefore contributing 41.1% of the $6,196,159.95 total common benefit fee. As a matter of mathematics, fees set aside for the common benefit are necessarily coming from the private fees that otherwise would have been paid to lawfirms with the cases. Should lawfirms bringing large number of cases be rewarded vis-a-via lawfirm that brought very few cases, given the economic investment expended in this effort?

The Court set aside a percentage of the recovery to be divided amongst attorneys providing a common benefit.[24] The Court itself is uniquely situation to answer these questions, and to divide up the fees it set aside as common benefit fees?

## II. UNLIKE OTHER CASES WITH A SUCCESSFUL RESULT, THIS CASE CANNOT FINANCIALLY JUSTIFY THE EXTRA TIME, COST AND EXPENSE OF A SPECIAL MASTER

This is a modest recovery, which necessitates economic efficiency in resolving the remaining matters. The funds available in this case do not justify the cost of paying a special master to hear evidence and arguments, make a recommendation to the Court, then do a hearing all over again for the Court to rule.

---

[24] *See Union Asset Mgmt. Holding A.G. v. Dell, Inc. (In Re: Dell, Inc.(,* 669 F.3d 632 (5th Cir. 2012) (upholding use of percentage method in a common fund case).

The recovery in this case is not like that of the BP Oil Spill case, with a settlement of $7.8 billion, yielding $600,000,000 in common benefit fees.[25] The recovery in this case is not like that of the Vioxx case, with a settlement of $4.85 billion, yielding a $315,250,000 common benefit fee.[26] The recovery in this case is not like that of the Fen-Phen case, with a settlement exceeding $3.55 billion, yielding a $153,722,911/25 common benefit fee.[27] Instead, this is a settlement for $42,600,000, yielding a common benefit fund of merely $6,196,159.95.

Simply put, this debate over how to divide common benefit fees is really a debate over who will lose the most versus who will lose the least. The Court should not appoint a special master, thereby increasing the losses to be sustained.

The Court exercised its inherent authority to appoint a committee of plaintiffs' attorneys to recommend an allocation of common benefit fees.[28] This occurred at no cost. A special master will cost money, depleting funds already insufficient to cover the financial investments made in this case. The Court must eventually discharge its "obligation to award fees that are reasonable and consistent with governing law."[29] The Court is under no obligation, however, to expend precious

---

[25] http://www.businessweek.com/ap/2012-11-08/federal-judge-urged-to-approve-bp-settlement.

[26] *Id.*, p. 1.

[27] *See In Re; Diet Drugs (Phentermine/Fenfluramine/Decfenfluramine) Products Liability Litigation*, 401 F.3d 143 (3rd Cir. 2005).

[28] *In Re: Vioxx Products Liability Litigation*, MDL No. 1657, Order & Reasons, Doc. #63195, p. 12, citing *In Re High Sulfur Content Gasoline Products Liability Litigation*, 517 F.3d 220, 227 (5th Cir. 2008) (*"High Sulfur I"*).

[29] *In Re High Sulfur Content Gasoline Products Liability Litigation*, 517 F.3d 220, 228 (5th Cir. 2008).

11

available funds to have a special master make a recommendation to it before it discharges that obligation.

NOW INTO COURT, through undersigned counsel, come PSC Members Mikal Watts and Robert Hilliard, who for the reasons set forth in the memorandum attached hereto, respectfully move the Court to <u>not</u> appoint a special master to hear evidence and argument regarding the allocation of common benefit attorneys' fees and render a report and recommendation thereon.

Respectfully submitted,

WATTS HILLIARD, LLC

By: _____
Mikal C. Watts
Texas State Bar No. 20981820
Southern District of TX
Federal ID No. 12419
Four Dominion Drive,
Bldg. Three, Suite 100
San Antonio, Texas 78257
Phone: (210) 447-0500
Fax: (210) 447-0501
Email: mcwatts@wgclawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading was served on all counsel of record through electronic notification pursuant to the electronic filing in the United States District Court for the Eastern District of Louisiana this 14th day of November, 2012.

_____
**Mikal C. Watts**

12