UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: FEMA TRAILER | * | MDL NO. 1873 |
| FORMALDEHYDE PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION "N" (5) |
| | * | JUDGE ENGELHARDT |
| | * | MAGISTRATE CHASEZ |
| THIS DOCUMENT RELATES TO: | * | |
| *All Cases* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## AFFIDAVIT

STATE OF TEXAS          §
COUNTY OF HARRIS        §

   **BEFORE ME,** the undersigned Notary Public, personally came and appeared:

**ANTHONY G. BUZBEE**

who, first being duly sworn, attested under oath that all of the statements and information made and provided by him in the attached narrative document, are true, correct, and based on first hand knowledge.

   Signed this the 16th day of November, 2012, Houston, Texas.

_____
ANTHONY G. BUZBEE

ELISA VILLARREAL
MY COMMISSION EXPIRES
March 8, 2014

Sworn to and subscribed before me, on this 16th day of November, 2012.

_____
NOTARY PUBLIC

1

## NARRATIVE DESCRIBING
## BUZBEE LAW FIRM'S COMMON BENEFIT CONTRIBUTION

In the Summer of 2007, The Buzbee Law Firm was contacted by several former clients, Louisiana residents, about news that "FEMA trailers" contained excessive amounts of formaldehyde. As we investigated this issue more, and met with clients, the firm was approached by many other potential clients about retaining the firm to represent them.

After conducting further investigation, the firm filed a multi-plaintiff suit in the Eastern District of Louisiana on August 6, 2007.

Simultaneously, the firm retained several lawyers to Louisiana and Mississippi to meet with clients to further document the claims. Also, the firm retained an industrial hygienist to begin testing the firm's client's travel trailers for formaldehyde levels. Peter Taaffe, a senior lawyer at the firm, spent weeks in Louisiana meeting with clients and assisting with coordination of testing trailers in Louisiana and Mississippi. This included testing services provided by Devany Industrial Consultants and TES of Louisiana.

During this time, Tony Buzbee and Peter Taaffe, met several times with members of the press, leading to several nationally-distributed news articles about the excessive levels of formaldehyde in travel trailers.

In the Fall of 2007, the litigation was consolidated into Multidistrict Litigation before Judge Engelhardt. Tony Buzbee was selected to serve on the Plaintiffs' Steering Committee.

In 2008, as the MDL focus was on class certification, the firm's focused on identifying its clients who would best serve as class representative plaintiffs and then presenting clients for numerous class representative depositions. Tony Buzbee deposed several Gulf Stream Coach corporate representatives in July 2008, relating to the class certification issue. Buzbee handled all Gulf Stream executive depositions in the case.[1] Peter Taaffe also took the deposition of Coachmen corporate representatives in August 2008, relating to the class certification issue.

Peter Taaffe served as an associate member of the discovery committee. Among other things, Peter took the laboring oar on sending third party subpoenas to several industry groups including the Formaldehyde Council, the RVIA, RVDA, IMHA, MHI, IWPA, and on obtaining documents under FOIA requests from Texas governmental agencies. This included dealing extensively with the third parties' outside counsel.

In 2008, the firm also assisted the "Law Committee" in responding to defendants' various 12(b)(6) motions and on other issues.

Our firm also set up and maintained a public information website on the litigation.

---

[1] Although some other attorneys attended the initial depositions, they asked no questions.

Peter Taaffe attended congressional hearings in July 2008 and Tony Buzbee worked with a Congressional office to prepare favorable questioning at a separate congressional hearing. The firm provided additional information to other congressional offices as well.

During this time, Peter Taaffe and Tony Buzbee also worked with the Expert Committee to help identify and retain experts.

Tony Buzbee headed the PR Committee with Raul Bencomo and developed several news stories relating to the case.

In 2008, the firm also continued to work with its testing experts to test the firm's client's trailers as well as other plaintiff's trailers. Peter Taaffe traveled several times to Hope, Arkansas to test trailers and mobile homes, with testing experts.

After the Court denied our motion for class certification, 2009's focus was on the first bellwether trial, *Alana Alexander v. Gulf Stream, et al*. Tony Buzbee took all of the Gulf Stream employee depositions. The firm hired an investigator, placed ads, identified and obtained statements from several former Gulf Stream employees. The firm worked with the plaintiff and her family, and defense counsel, with respect to testing the trailer, preparing for deposition and IME's. The firm propounded and responded to discovery. The firm continued its work developing experts and reports, presenting experts for deposition and taking expert depositions in the case. The firm coordinated and conducted an initial focus group and then a mock trial related to the first bellwether trial. The firm was extensively involved in pre-trial motion practice and responses, and trial preparation. The firm participated extensively in the trial, handling opening statement, the second closing, directs of the plaintiffs, and crosses of most of the witnesses. The firm participated extensively in post-trial briefing as well.

In 2010, the firm was extensively involved in the second Gulf Stream bellwether "summary jury trial." This time, there were three plaintiffs, a primary and two backups. The firm had the lead on working with each of the plaintiffs, including preliminary investigation, prepping and presenting for deposition, handling trailer and home inspections, working with experts, preparing and presenting experts for deposition, deposing numerous Gulf Stream employees, and identifying, taking statements from and deposing several former Gulf Stream employees. The firm propounded and responded to discovery. The firm was extensively involved in all pretrial matters and participated extensively at the trial.

In 2011, the firm did preliminary work on a Palm Harbor bellwether trial, before the manufactured home settlement was reached. After the manufactured home settlement, the firm set up an informational website on the manufactured home settlement. The firm provided several class representatives to support the manufactured home settlement.

In 2012, the Court set several of the firm's cases for trial. One, a Forest River trial, involved seven plaintiffs. The firm propounded and responded to discovery. The firm prepared and presented the clients for deposition. In a second trial setting, involving Gulf Stream and over 90 plaintiffs, the firm propounded and responded to discovery. In a third, involving Sunline and two plaintiffs, the firm propounded and responded to discovery.

In the Spring of 2012, the PSC reached preliminary settlement agreements with several defendants. The firm has assisted with providing class representatives to assist with the settlement process.

Along the way, firm attorneys met numerous times in person, by phone, and email with its colleagues on these common benefit efforts.

The firm, along with two others, purchased a building to act as the Claims Center. The building was used by the group for a long period of time, <u>rent free</u>.

The firm was called upon to loan a significant amount of money to the PSC. The money was paid back.

The firm put cases in state court, which was good leverage for the efforts of the case.

Also, the firm fronted extensive expenses on common benefit work, some of which has been credited towards the firm's assessment ledger, but over $66,000 that remain "held."