# HURRICANE LEGAL CENTER, L.L.C.

Attorneys and Counselors at Law
600 Carondelet Street, Suite 602
New Orleans, Louisiana 70130
Office: (504) 525-1944
Facsimile: (504) 525-1279

October 17, 2012

Re:  FEMA Trailer Formaldehyde Products Liability Litigation (USDC, EDLA, MDL 1873)

   Narrative Regarding Claim for Common Benefit Fees

Judge Engelhardt,

On behalf of Hurricane Legal Center ("Hurricane Legal") please consider this narrative as a request for compensation for the efforts made for the "common benefit" of all participants in above referenced matter.

**Financial Support for the Litigation:**

As a Subscribing Member, **Hurricane Legal "timely" paid $251,250.00 in aggregate Assessments.** Upon request, each and every Assessment was "timely" paid, thus:

**(1) Providing a necessary tool to advance the matter; and**

(2) **Preventing an unnecessary burden on other member Firms**.

As the Court is likely aware, not all Subscribing Members were as punctual with their Assessment responsibilities. This lack of diligence underscores the importance of our Firm's financial commitment for the common benefit of all plaintiffs.

**Additional Support for the Litigation:**

Currently, Hurricane Legal has a roster of over 7,500 clients. Stated another way, of the approximate 70,000 total claimants - **one in every ten claimants is represented by our Firm**.

**Note**:  All Plaintiff Fact Sheets were entered by people directly employed or contracted by our Firm. Although Hurricane Legal was a Subscribing Member and should have been afforded the opportunity to request assistance by the aggregate membership in entering Fact Sheets, all cost was paid directly by our Firm. In total over 1.6 million dollars was spent in housing both a team of attorneys and the necessary support staff to accurately complete the 17 page Fact Sheets for all 7,500 clients. **No invoice (for reimbursement) has been submitted.**

In addition and as counsel for such a large number of clients, Hurricane Legal was continuously called upon to screen potential bellwether plaintiffs.

**Screening of Bellwether Candidates:**

On every occasion when Hurricane Legal was asked to delve into its database of clients to find individuals who satisfied the evolving criteria set by the Court, our Firm responded by designating three (3) individuals to manually screen and review Fact Sheets.

Every man-hour spent in the <u>Reviewing Bellwether Process</u> was paid directly by Hurricane Legal. In total, several hundred hours were spent reviewing candidates. The average salary for each of the three (3) employees retained for these tasks was $15 per hour. **No invoice (for reimbursement) has been submitted**.

**Follow-up Investigation of Bellwether Candidates:**

Of the approximate six (6) scheduled trials and (2-3) scheduled summary jury trials, Hurricane Legal had multiple clients who progressed to the advanced stages of consideration. As advanced stage candidates, these individuals were put through complete background checks and a comprehensive in-home (or telephone) evaluation was undertaken. Of this pool, several candidates required that their complete medical history be obtained and evaluated.

These expenses (including the hundreds of man hours spent in completing the assignments) were paid directly by Hurricane Legal. **No invoice (for reimbursement) has been submitted**.

**Candidates Selected for Trial.**

To my recollection at least one (1) Hurricane Legal client was the Plaintiff selected to participant in a full Bellwether Trial. Although Counsel for another firm acted as trial counsel, Hurricane Legal nonetheless participated as a liaison - obtaining discovery responses, medical records and etc. **No invoice (for reimbursement) has been submitted**.

**Assistance to Various PSC Firms.**

In an effort to best serve our clients, Hurricane Legal hired an attorney who had previously worked as a contract attorney for the PSC in the Claims Office. Hiring said counsel, it was felt, would best serve Hurricane Legal clients as the former Claims Office attorney had developed working relationships with each of the PSC Firms.

Having worked with the other PSC attorneys on the Gulfstream, Fleetwood, and Forest River trials, this Hurricane Legal's counsel was often called upon to undertake specific tasks for PSC member Firms.

**Note:** Because many of the other attorneys involved in the Formaldehyde Litigation were based primarily in Texas, Hurricane Legal's attorney often acted as a local foot soldier meeting clients on a variety of issues. Specifically, for example, on multiple occasions Hurricane Legal's attorney would meet with clients of other firms involved in upcoming trials at the Gerald Meunier's (Gainsburgh Benjamin) Office and assist with telephone interviews and depositions. **No invoice (for reimbursement) has been submitted**.

**Assistance to Raul Bencomo and Chris Pinedo – Quiniece Lambert-Dolliole (Jayco Summary Jury Trial.)**

The services of Hurricane Legal's attorney were also utilized to directly assisted Raul Bencomo and Chris Pinedo with the Quiniece Lambert-Dolliole summary jury trial. Although invoices were

submitted for a portion of the time spent in assisting in the trial preparation, countless (uncompensated) hours were spend advancing the litigation for the Common Benefit of all claimants. All man-hours were paid directly to Hurricane Legal's attorney directly by our Firm.  Although some invoices have been submitted in regards to time spent assisting in the Jayco trial, many miscellaneous tasks, phone calls, and email activities remain uncompensated.

**When Individual Firms Were Assigned Trials.**

Toward the latter part of the Formaldehyde Litigation, individual Firms were assigned trials (non-Bellwether Trials) to be (1) Undertaken and (2) Financed by these individual Firms.  Hurricane Legal, as counsel for over 7,500 clients, was assigned three (3) individual trials by the Court.  A total of nine (9) Hurricane Legal clients were included as plaintiffs in the three (3) trials.

For almost two months, Hurricane Legal counsel (and staff members) worked up three different cases with multiple plaintiffs.  As part of this undertaking, extensive background checks and substantive interviews were conducted.

In addition, medical records were requested and reviewed, deposition transcripts analyzed and summarized, and discovery responses prepared.  Moreover, Medical Experts were contacted and the cases were in the process of being developed.  **No invoice (for reimbursement) has been submitted**.

To that end, out of its own pockets Hurricane Legal paid its Attorneys (and staff) for hundreds of man-hours spent in working these cases toward trial.

**Note:**   Although the likelihood of a recovery in damages to off-set the tremendous cost for litigation was almost non-existent, Hurricane Legal had an obligation to its clients and to the other members of the PSC to "hold the line" and move the cases along.

**Conclusion.**

It is Hurricane Legal Center's position that the above stated support (both Financial and through Uncompensated Man-Power) was integral to the overall success of all litigants in the Multi-District Litigation.

As such, Hurricane Legal Center respectfully requests that an appropriate amount of compensation be awarded to accurately reflect the efforts made for the Common Benefit of all plaintiffs.

Hurricane Legal Center