UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER                             MDL NO. 07-1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                    SECTION "N-5"

                                                JUDGE ENGELHARDT
                                                MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

## Special Master's Recommendations
## Concerning Methodology for Disbursing Pending Settlements

On August 29, 2005, Hurricane Katrina made landfall over the coast of southeast Louisiana. The storm devastated several states along the Gulf Coast, driving tens of thousands of residents from their homes. Many were displaced for months and, sometimes, years.

The Federal Emergency Management Agency (FEMA) provided temporary shelter for the displaced residents. It procured manufactured housing units and trailers from dozens of manufacturers, and hired contractors to aid in the project.

As time passed, residents began to complain of problems that they associated with formaldehyde fumes emanating from the manufactured housing units and trailers. Eventually, many of the residents sued FEMA, the manufacturers, and the contractors. The suits were consolidated in the instant Multidistrict Litigation.

Almost all of the claims have now been dismissed or settled. The settlements came in three waves:

*First.* Fleetwood Enterprises, Inc., a manufacturer, declared bankruptcy and its insurers settled with claimants. The Court appointed the undersigned as Special Master to allocate the settlement. The allocations are final and the settlement funds have been disbursed.

*Second.* The manufacturers of the manufactured housing units settled. The Court again appointed the undersigned as Special Master to allocate the settlement (also known as the Non-Lit settlement). The allocations are final and the settlement funds have been disbursed.

*Third.* Most of the remaining manufacturers and contractors settled. The Court approved a class settlement with respect to most of the settling manufacturers and another class settlement with respect to the settling contractors on September 27, 2012. The other settling manufacturers elected to settle with claimants on a mass basis (i.e., with a specified list of known claimants) rather than a class basis. The Court again appointed the undersigned as Special Master to allocate all pending settlements. The below methodology pertains to this third wave of settlements.

More than 20 manufacturers and contractors are participating in the third wave of settlements. In the past few months, the CADA has received more than 100,000 names of potential claimants. The CADA suspects that many of these are duplicates, and estimates that the ultimate pool of claimants will be approximately 75,000 to 90,000 (although this is admittedly speculative). Given that the total settlement (before attorney's fees and costs and administrative fees and costs are deducted) is approximately $42.6 million, the average recovery for each claimant will be well under $1,000 (and probably less than $500 after fees and costs are deducted).

The Special Master recommends that the following methodology be adopted to allocate the settlement funds:

- Prescribed (time-barred) claims will receive nothing.

- The CADA will determine which manufacturer's/manufacturers' unit(s) in which each claimant resided (class and mass claimants, class and mass manufacturers, including Fleetwood and/or manufactured housing units).

- The CADA will calculate a "claimant manufacturer share" for each unit in which each claimant resided. For instance, if the claimant only stayed in a Gulf Stream unit, the claimant will be allotted a Gulf Stream "claimant manufacturer share" of 1. If the claimant stayed in a Gulf Stream unit and a Jayco unit, the claimant will be allotted a Gulf Stream "claimant manufacturer share" of one-half and a Jayco "claimant manufacturer share" of one-half. Duration will not matter; neither will it matter if the claimant stayed in a Gulf Stream unit followed by a Jayco unit followed by another Gulf Stream unit (the claimant will still be allotted a Gulf Stream "claimant manufacturer share" of one-half and a Jayco "claimant manufacturer share" of one-half).

- The CADA will total the "claimant manufacturer shares" for all claimants (class and mass claimants) for each manufacturer. The CADA will then divide the settlement fund contributed by each manufacturer by the number of "claimant manufacturer shares" for that manufacturer. This will yield the "manufacturer allocation per share" for each manufacturer. The "manufacturer allocation per share" for Fleetwood and/or manufactured housing units will be $0 (since claimants have already received allocations for Fleetwood and/or manufactured housing units).

- The CADA will divide the settlement funds contributed by the contractors by the total number of claimants, yielding the "contractor allocation per claimant."

- If a claimant resided in units manufactured by manufacturers A, B, and C, his/her gross allocation = "contractor allocation per claimant" + (("manufacturer allocation per share [for manufacturer A]" + "manufacturer allocation per share [for manufacturer B]" + "manufacturer allocation per share [for manufacturer C]")/3).

- The Special Master will not consider medical damages and physical injury in making recommendations concerning the above-described awards. The Special Master is convinced that all claimants faced equally difficult liability hurdles that resulted in these settlements reflecting perceived costs of defense as opposed to an actual evaluation of the claimants' damages. Furthermore, the expense of paying the Special Master to evaluate tens of thousands of medical claims would greatly diminish the settlement fund, causing the claimants to receive even less than they otherwise would. The Special Master concludes that evaluation and comparison of medical damages claims and physical injury claims would only hurt rather than help the vast majority of claimants.

- Nevertheless, the Special Master concludes that he should have the authority to recommend additional awards for extraordinary claims. Such extraordinary claims would include those made by persons who can prove that they have developed acute myeloid leukemia/acute myelogenous leukemia or nasopharyngeal carcinoma, but only if they manifested those diseases after they first resided in the units at issue.

- To the extent it is appropriate, the Special Master will recommend that any balance be subject to appropriate disposition by the Court, including the potential reimbursement of expenses incurred in administration of the class settlement.

Baton Rouge, Louisiana, this 4th day of March, 2013.

                                              s/Daniel J. Balhoff
                                              Daniel J. Balhoff (#18776)
                                              Randi S. Ellis (#25251)