UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: FEMA TRAILER                                    MDL NO. 07-1873
      FORMALDEHYDE PRODUCTS
      LIABILITY LITIGATION
                                                       SECTION "N"  (5)

THIS DOCUMENT RELATES TO
ALL CASES

## ORDER AND REASONS

      Before the Court is a Motion to Approve Allocation of Common Benefit Fees (**Rec. Doc. 26043**), filed by the Plaintiffs' Steering Committee (PSC) and associated common benefit counsel.   The motion was filed on April 2, 2013 and noticed for hearing on April 17, 2013.  No opposition to the motion was filed.    The Court referred the motion to Special Master F. A. Little, Jr., retired United States District Judge, for a brief report and recommendation.   The Special Master has now rendered his report and recommends that the Court approve the proposed allocation.   Having carefully examined the motion, the supporting documentation, the Special Master's recommendation, and the applicable law, the Court is prepared to rule.

## I.  BACKGROUND:

### A.     Rules and Procedures Established in this MDL to Govern Eligibility, Submission, and Approval for Common Benefit Attorney Fees:

      Early in this litigation, the Court established rules and procedures governing the eligibility and procedures for the submission and approval of time to be compensated with common benefit fees.  *See* Order dated March 24, 2008 (Rec. Doc. 115).   In this Order, the Court specified that common benefit fees would be limited to:  (1) time submitted for work authorized in writing by the PSC; (2) time spent on matters common to all claimants in this

litigation (as opposed to time spent on individual claims); (3) time submitted to the court-appointed accounting firm (Bourgeois Bennett, LLC) by the fifteenth of the month following the month in which the work was performed; and (4) time submitted by firms who were members of the PSC or who had signed subscriber agreements with the PSC, were current with all subscriber assessments, and had been approved as eligible to submit common benefit time.[1]  *Id.* at 1-3.  The Order made clear that only time spent, recorded, approved, and submitted in compliance with these rules would be considered.[2]  *Id.*

**B.**   **The Class Settlements and Creation of the "Omnibus Common Benefit Attorney Fee Fund:**

On September 27, 2012, after fairness hearings, the Court issued a Final Order and Judgment approving the manufacturer class settlement (Rec. Doc. 25887), a Final Order and Judgment approving the contractor class settlement (Rec. Doc. 25888), an Order granting the PSC's Motion to Approve Deduction of Common Benefit Fees and Expenses from Manufacturer Class Settlement Fund (Rec. Doc. 25885), and an Order granting the PSC's Motion to Approve Deduction of Common Benefit Fees and Expenses from Contractor Class Settlement Fund (Rec. Doc. 25886).  Shortly thereafter, on October 3, 2012, with regard to the PSC's individual settlements with manufacturers who did not join in the class settlement, the Court issued an Order granting the PSC's Motion to Approve Deduction of Common Benefit Fees and Expenses from Non-Class Manufacturer Settlement Funds (Rec. Doc. 25900).

---

[1]  The Order also set forth rules for maintaining, recording, and submitting attorney work hours.   Rec. Doc. 115.  It also established reporting requirements for the accounting firm and the PSC.

[2]  The Order was amended twice to establish definitive cut-off dates for submitting dilatory time and expense submissions.  *See* Rec. Docs. 998, 23520.

2

With regard to the Manufacturer Class Settlement, the Court ordered the CADA to deduct 28.5% of the settlement fund, *i.e.*, $10,678,543.64, for the payment of all legal fees, allocating 14.25% of settlement fund, *i.e.*, the total amount of $5,339,271.82, for the payment of common benefit fees, and the same amount of $5,339,271.82 for the payment of individual attorney fees. *See* Rec. Doc. 25885. With regard to the Contractor Class Settlement, the Court ordered the CADA to deduct 28.5% of the settlement fund, *i.e.*, $1,461,836.26, for the payment of all legal fees, allocating 14.25% of settlement fund, *i.e.*, the total amount of $730,918.13, for the payment of common benefit fees, and the same amount of $730,918.13 for the payment of individual attorney fees. *See* Rec. Doc. 25886. With regard to the Non-Class Manufacturer Settlements, the Court ordered the CADA to deduct 28.5% of the settlement fund, *i.e.*, $251,940, for the payment of all legal fees, allocating 14.25% of the settlement fund, *i.e.*, the total amount of $125,970, for the payment of common benefit fees, and the same amount of $125,970 for the payment of individual attorney fees. (Rec. Doc. 25900). In each case, the Court directed the CADA to deposit these funds into an account to be maintained by the CADA pending further orders of this Court, including, as to common benefit fees, further disposition pursuant to a protocol to be approved by the Court for allocation among eligible attorneys and/or firms. *See* Rec. Docs. 25885, 25886 and 25900. Thus, in total, a sum of $6,196,159.95 has been set aside from the settlement funds described above for the payment of common benefit attorney fees (collectively hereinafter, the "Omnibus Common Benefit Attorney Fee Fund").

     **C.**     **The Allocation Dispute and Its Resolution:**

In the Final Orders and Judgments approving the respective class settlements, the Court stated the following regarding the procedure that would be followed for the allocation of

common benefit attorney fees:   "The Court, in its discretion, and following review of the recommendations of the PSC and (as necessary) the Special Master, shall allocate and distribute this award of Attorneys' Fees... among the PSC and any attorney representing any Class Member.  No further Attorneys' Fees... will be paid to any attorney representing any Class Member."   *See* Rec. Docs. 25887 at 14; Rec. Doc. 25888 at 15.

Initially, the PSC was unable to reach a unanimous recommendation regarding the allocation of common benefit attorney fees.  Instead, the court-appointed Co-Liaison Counsel for plaintiffs filed one proposal, which was joined by certain PSC members (*see* Rec. Doc. 25933), while other members of the PSC filed a competing proposal.  *See* Rec. Doc. 24932.  In addition, several others plaintiffs' attorneys filed competing proposals and/or objections to the PSC proposals.  *See* Rec. Docs. 25925, 25928, 25929, 25930, 25936, 25946, 25955, 25961-1.  Supporting affidavits were filed separately into the record in connection with the dispute.  *See* Rec. Docs. 25940, 25942, 25959, 25964, 25966, 25976, 25978, 25980, 25982, 25989, and 25991.

Accordingly, on December 13, 2012, after notice and an order to show cause, the Court appointed F. A. Little, Jr., retired United States District Judge, as Special Master with respect to the allocation of common benefit fees.  *See* Rec. Doc. 25994; *see also* Rec. Doc. 25947, as supplemented in Rec. Doc. 25968 and 25969.   The Court referred the competing proposals and objections to the Special Master for the purpose of gathering evidence, conducting hearings as necessary, and submitting an impartial recommended allocation to the Court.  *See* Rec. Doc. 25994.

On December 21, 2013, the Special Master issued a detailed pretrial order setting deadlines and establishing guidelines to govern the process of presenting evidence.  *See* Rec. Doc. 26000.  Included in this pretrial order was a section providing that mediation of the dispute would be scheduled if the Special Master received a request for mediation from at least 85 percent of the common benefit applicants within thirty days.  *Id.* at 5.  On January 7, 2013, the Special Master issued an order stating that the requisite number of applicants had requested mediation and suspending the filing deadlines to allow for mediation with John W. Perry, Jr., of Baton Rouge.  *See* Rec. Doc. 26001.

Mediation was successful, and the PSC, along with the other common benefit applicants, submitted the Motion to Approve Allocation of Common Benefit Fees, which is now before the Court.  *See* Rec. Doc. 26043.  No memorandum in opposition to the motion was filed, and the Court referred the motion to Special Master F. A. Little, Jr., for a brief report and recommendation.  *See* Rec. Doc. 26044.  The Special Master has issued his report and has recommended that the Court approve the allocations set forth in the unanimous motion.  *See* Rec. Doc. 26046.

## II. <u>APPLICABLE LAW</u>:

The blended analysis used by courts in this district for evaluating common benefit fees has been explained in careful detail by Judge Fallon.  *See In re Vioxx Products Liability Litigation*, 760 F. Supp. 2d 640, 650-661 (E.D. La. 2010) (Fallon, J.); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859-869 (E.D. La. 2007) (Fallon, J.).   The approach entails the use of a percentage, the reasonableness of which is analyzed in light of the *Johnson* factors, as well as comparison with published data regarding such awards, and "cross-checked" against a

rough lodestar analysis.   *See Vioxx*, 760 F. Supp. 2d at 650-661; *Murphy Oil*, 472 F. Supp. 2d at

859-869.   The *Johnson* factors are:  "(1) the time and labor involved; (2) the novelty and

difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the

preclusion of other employment by the attorney due to the acceptance of the case; (5) the

customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the

client or the circumstances; (8) the amount involved and the results obtained; (9) the experience,

reputation, and ability of the attorneys; (10) the political 'undesirability' of the case; (11) the

nature and length of the professional relationship with the client; and (12) awards in similar

cases."   *In re High Sulfur Content Gasoline Products Liability Litigation,* 517 F.3d 220, 226 n.6

(5th Cir. 2008).  This Court has evaluated each of these factors, both in evaluating the

reasonableness of the total amount set aside for attorney fees and in considering the individual

allocation of common benefit fees discussed below.

## III.  ANALYSIS:

  This is not a case where the Court is presented with a difficult task in ascertaining

whether the attorneys have earned the fee requested.   To the contrary, this is a case where —

despite exceptional skill and excellent work on the part of the plaintiffs' attorneys — the

recovery obtained and the percentage set aside for common benefit attorney fees is not sufficient

to make the attorneys whole.   A rough lodestar analysis tells the tale.   Even ignoring paralegal

hours altogether, dividing the approximate proposed allocation by the attorney hours contributed

to the common benefit, reveals that none of the common benefit applicants will be compensated

at rate anywhere near the market rate.  *See Vioxx*, 760 F. Supp. 2d at 659-661 (finding average

billing rate of $443.29 to be reasonable guidepost); *Murphy Oil*, 472 F. Supp. 2d at 868-69

(finding $300 to $400 per hour for members of a Plaintiffs' Steering Committee and $100 to $200 per hour for associates to reasonably reflect the prevailing attorney rates in this jurisdiction).   Indeed, given the amount of the Omnibus Common Benefit Attorney Fee Fund, any fair allocation will leave the applicants compensated at a small fraction of the market rate. Under the proposed allocation, even liaison and other lead counsel will be compensated for attorney hours at rates that have been found reasonable for paralegals. *See In re Guidant Corp. Implantable Defibrillators Prods. Liability,* 2008 WL 682174 *15 (D. Minn. 2008).   When paralegal hours are taken into account, a rough lodestar analysis reveals that all applicants will be compensated for all professional hours (attorney and paralegal) at a small fraction of the market rate for paralegals.   Thus, this is not a case that yields a lodestar multiplier; under any allocation, the multiplier will have a value of less than 1.0.   The fees proposed are "reasonable" in that they are not unreasonably high by any standard.  The real task for the Court in the instant motion is to ensure that the proposed individual allocations are not unreasonable in relation to each other.  Having carefully evaluated the proposal and the supporting documentation, the Court agrees with the Special Master that the proposed allocations are reasonable and should be approved.

## IV. <u>INDIVIDUAL ALLOCATIONS</u>:

### A.   <u>Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC</u> :

The firm of Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC ("Gainsburgh Benjamin") has played the lead role in managing and prosecuting this litigation.   The firm's supporting documentation is at Rec. Doc. 25933.  Gainsburgh Benjamin contributed over 20,746 hours of common benefit time to this MDL through its attorneys and support staff.  Of these

hours, more than 9,400 committee-member hours were contributed.  The firm advanced
$502,500 in PSC assessment payments and $156,968.82 in shared/held costs.  It provided
switchboard services for calls from thousands of plaintiffs, bookkeeping services for the PSC
litigation account maintained by the firm, legal research, and a series of contract attorneys whose
salaries were paid by the firm but not submitted as "held" costs.  The firm assumed the lead role
regarding the claims against FEMA and also assumed the lead role in the Fifth Circuit on all
appeals related to governmental immunity.

It would be difficult to exaggerate the personal importance of Gerald E. Meunier to the
successful resolution of this litigation.   Mr. Meunier did not seek the office of Plaintiffs' Liaison
Counsel, but he accepted the Court's call to duty when appointed to that position.   His steady
hand and unflappable demeanor helped to bring order to an enormously large and complex
litigation.  Any court would be well-served with Gerald Meunier as liaison counsel, special
master, or mediator.  That the plaintiffs were able to secure a resolution that was successful by
any measure is largely a credit to the great professionalism, skill, dedication, diplomacy, and
hard work of Gerald Meunier.   He became the *de facto* Lead Counsel for plaintiffs during all
litigation and settlement activity in the MDL.  He was directly involved in all major areas of
prosecuting and resolving the consolidated claims of plaintiffs.   He served as the lead
spokesperson for the plaintiffs in conferences with the Court, in interactions with opposing
counsel, and with the press.  He submitted most of the key pleadings and argued virtually all
important motions before this Court and in the Fifth Circuit.   He served as trial counsel in the
first bellwether trial (*Alexander v. Gulf Stream*) and as lead trial counsel in a summary jury trial
involving Keystone.  He was the lead negotiator in mediation and settlement discussions with

manufacturers and contractors and served as lead counsel at all three settlement class fairness hearings (manufactured housing, manufacturer, and contractor).   Last, but certainly not least in importance, he has continued to work through the thankless and grinding task of managing and overseeing the daily administrative, procedural, and financial aspects of the MDL, whereas others have been able to move on to other matters.   The value of his services to the common benefit is worthy of the utmost credit.  Had the resolution of the litigation resulted in a settlement fund that was sufficient to both adequately compensate counsel and yield a meaningful recovery to the plaintiffs, Mr. Meunier's work would be compensable at the highest tier of market rates.  As discussed above, the fund was not sufficient to achieve both these ends.  Almost all of the common benefit counsel are receiving less than full compensation under any market rate analysis.  However, it is clear to the Court, in comparing the earlier contested submissions with the current unanimous request, that Mr. Meunier and his firm have made yet another personal sacrifice for the good of the common benefit.

As Co-Liaison Counsel for plaintiffs, Justin Woods was also involved in almost every aspect of the litigation, including establishment of the PSC's claims office, interacting with defense liaison counsel, making presentations to the Court at status conferences, serving as co-chair of the PSC discovery committee, coordinating discovery related to the matching process, communicating with non-PSC plaintiffs' attorneys, serving as trial counsel in a summary jury trial, participating in many settlement negotiations, drafting and finalizing settling documents with non-class settling defendants, participating in each of the fairness hearing and drafting class settlement documents, and serving as liaison with the court-appointed special master, the court appointed disbursing agent, and the firm responsible for Medicare/Medicaid resolution.

Palmer Lambert also provided valuable work toward the common benefit.  In addition to legal research and drafting, he worked in the trenches on the all the settlements, transforming insurance information and other data into usable spreadsheets.  He also has handled the ground work on multiple non-class settlements.  He has worked as a liaison with the Court and with other plaintiffs' counsel in managing the day-to-day logistics in the administrative aspects of the litigation.

Denise Martin, legal assistant to Gerald Meunier and Justin Woods, has worked daily in managing this litigation since its inception.  She has served effectively as a "case administrator," bookkeeper and secretary/paralegal, scheduling and taking minutes at all PSC meetings, attending many of the Court's status conferences, maintaining and making disbursements from the PSC litigation account, and responding to daily requests for information and assistance from plaintiffs' counsel.   In this connection, Ms. Martin has circulated tens of thousands of e-mails and pleadings and has been responsible for the electronic filing of approximately 26,000 pleadings and attachments.

The PSC proposes that Gainsburgh Benjamin be allocated 27.10% of the available common benefit fee funds, or approximately $1,700,000,[3] as Gainsburgh Benjamin's share of the common benefit fee.  The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

---

[3] All of the dollar amounts discussed herein are approximate.  The percentage amounts approved will be applied to the net Omnibus Common Benefit Attorney Fee Fund after payment of the Special Master F. A. Little's fees.

**B.  Watts-Hilliard:**

The Watts Hilliard ("WH") attorneys have played a key role in prosecuting this litigation. The firm's supporting documentation is at Rec. Doc. 25933.   Led by Mikal Watts and Bob Hilliard, along with Chris Pinedo, the WH team expended over 16,800 hours of attorney and staff time, 2,100 committee member hours, and advanced $351,990.19 in assessment payments[4] and $727,892.74 in shared/held costs.

Both Mssrs. Watts and Hilliard were appointed to the PSC.  WH participated in virtually every bellwether trial.   In the first trial, *Alexander v. Gulfstream,* Mr. Watts took a lead role in locating experts and securing their reports.  Subsequent to the exchange of the expert reports, WH prepared and presented numerous witnesses for deposition.   Mr. Hilliard presented Chris Cooper for deposition and also prepared and tried the case in a mock trial.  Watts presented expert witnesses for deposition and deposed certain of the defendants' experts.   Mr. Pinedo met with, prepared for deposition, and presented sixteen plaintiffs' experts, deposed two defense experts, and deposed five defense fact witnesses.  During the trial, Mssrs. Watts and Hilliard played leading roles in presenting plaintiff expert witnesses, cross examining defense expert witnesses, and presenting the case against the contractor defendant.  Additional WH attorneys also assisted in the trial.  WH attorneys were also involved in the motion practice and in crafting responses to numerous *Daubert* motions.   Mr. Watts also took the lead on *Batson* issues that arose at trial and in filing and arguing the appeal of those issues.

---

[4]  The actual total of assessed costs paid by WH is $502,500; the firm received a credit from the PSC in the amount of $150,509.81, based on its payment of certain other costs.

WH attorneys also participated, took, and prepared numerous depositions for and assisted in the following additional trials:  (1) the second bellwether trial (*Dubuclet v. Fleetwood*), which was to be held in December 2009, but settled prior to trial; (2) the third bellwether trial (*Wright v. Forest River*), which was held in March 2010; (3) the fourth bellwether trial (*Castanel v. Recreation by Design*) which was held in May 2010; (4) the fifth bellwether trial (*Lewis v. Gulfstream*), a summary jury trial, which was held in August 2010; (5) the sixth bellwether trial which was a "composite plaintiff" against Dutchmen and was held in March 2011; (6) the seventh bellwether trial (*Dixon v. Coachmen*), with a trial team led by Mr. Hilliard, which was to be held in June 2011, but settled days before trial; and (7) the eighth bellwether trial (*Lambert-Dolliole v. Jayco*), a summary jury trial, which was held in January 2012.

After the conclusion of the bellwether trails in January 2012, the Court set several other cases for trial, ten of which were WH cases.  Although all these cases were settled, they were worked up to various stages prior to settlement.  Over one hundred independent medical examinations and client interviews were scheduled in these were multi-plaintiff cases.  The pretrial litigation of these cases and WH's willingness to prepare for trial was undoubtedly a significant factor in bringing about a resolution.

In addition to the firm's role in trial litigation, Mr. Watts was instrumental in meeting with defense counsel and reaching agreement on a database that contained key fields of the plaintiff fact sheet (PFS) data in a searchable format to assist in settlement.  This database was used by all parties in crafting a settlement and in ascertaining the total population of vehicles for each given manufacturer. Further, Mr. Watts was instrumental in negotiating extensions to PFS deadlines and narrowing the PFS responses to key fields.   Without these efforts, many plaintiffs' claims would likely have been dismissed through the deficiency process.

Finally, Mssrs. Watts, Hilliard, and Pinedo attended numerous mediations to negotiate the settlements.   Mr. Watts played a key role in reaching settlement agreements and interfacing with defense counsel at various critical stages of this litigation.

The PSC proposes that 19.92% of the available common benefit fee funds, or approximately $1,250,000, be awarded Watts-Hilliard's share of the common benefit fee.[5]   The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

### C.  Buzbee Law Firm:

The supporting documentation for The Buzbee Law Firm is found in the record at Rec. Doc. 25964.  The Buzbee Law Firm contributed over 10,300 hours of common benefit time in this MDL through a number of attorneys and staff members.  Of these hours, more than 1,600 committee-member hours were contributed.  The firm advanced $149,822.68 in PSC assessment payments[6] and $326,899.73 in shared/held costs.

The Buzbee Law Firm's contribution to the litigation was early and significant.   Peter Taaffe ("Taaffe"), a senior lawyer at the firm, spent weeks in Louisiana in 2007 coordinating the testing of trailers in Louisiana and Mississippi.   Taaffe later traveled several times to Hope, Arkansas to test trailers and mobile homes with testing experts.

Mr. Buzbee was appointed to serve on the PSC.  In 2008, as the MDL focus was on class certification, the firm presented clients for numerous class representative depositions.  Mr. Buzbee deposed several Gulf Stream Coach corporate representatives relative to the class

---

[5]   In comparing the earlier contested submissions to the present unanimous request, it is evident that this firm, like Gainsburgh Benjamin, made significant sacrifices for the sake of reaching a unanimous agreement.

[6]   Before credits, the actual total of assessed costs paid by The Buzbee Law Firm is $502,500.

certification issue, and Mr. Taaffe took the deposition of Coachmen corporate representatives.

Mr. Taaffe served as an associate member of the discovery committee and sent third-party

subpoenas to several industry groups and sent FOIA requests to Texas governmental agencies.

The firm also assisted the "Law Committee" in responding to various Rule 12(b)(6) motions.

Mssrs. Taaffe and Buzbee also worked with the "Expert Committee" to help identify and retain

experts.  Mr. Buzbee also headed the Public Relations Committee.

After the Court denied plaintiffs' motion for class certification, the Buzbee firm was

involved in all aspects of the first bellwether trial (*Alexander v. Gulf Stream*).  Mr. Buzbee took

all of the Gulf Stream employee depositions.  The firm hired an investigator, placed

advertisements, and obtained statements from several former Gulf Stream employees, as well as

participating in pretrial motion practice and conducting other fact and expert discovery.  The

firm also coordinated and conducted an initial focus group and then a mock trial related to this

first bellwether trial, as well as handling many aspects of the trial itself, including opening

statement, the second closing, direct examinations of plaintiffs, and cross examinations of most

defense witnesses.  The firm participated extensively in post-trial briefing as well.

In 2010, the firm was involved in the Gulf Stream bellwether summary jury trial.  This

time, there were three plaintiffs, a primary and two backups.  The firm took the lead on working

with each of the plaintiffs, including preliminary investigation, prepping and presenting for

deposition, handling trailer and home inspections, working with experts, preparing and

presenting experts for deposition, deposing numerous Gulf Stream employees, and taking

statements from and deposing several former Gulf Stream employees, as well as participating at

the trial.  In 2011, the firm did preliminary work on a Palm Harbor bellwether trial, before the

manufactured housing class settlement was reached.

14

After the conclusion of the bellwether trails in January 2012, the Court set several of the firm's cases for trial, involving approximately 99 clients. Although all these cases were settled, they were worked up to various stages prior to settlement, including discovery, independent medical examinations, and client interviews.  In the spring of 2012, the PSC reached preliminary settlement agreements with several defendants, and the firm again assisted with providing class representatives to assist with the settlement process.

In addition to litigation activities, the firm, along with two others, purchased a building to act as the Claims Office.  The building was used by the group for a long period of time, rent free. The firm was also called upon to loan a significant amount of money to the PSC, which was eventually repaid.

The PSC proposes that 9.88% of the available common benefit fee funds, or approximately $619,616, be awarded as The Buzbee Law Firm's share of the common benefit fee.  The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

**D.   Bencomo & Associates:**

The common benefit services affidavit of Bencomo & Associates is found in the record at Rec. Docs. 25932 and 25959.   Bencomo & Associates contributed over 9,900 hours of common benefit time in this MDL through a number of attorneys and non-attorney staff members.  Of these hours, more than 2,900 committee-member hours were contributed.  The firm advanced $502,500 in PSC assessment payments and $91,545 in shared/held costs.

Raul Bencomo was appointed as a member of the PSC.  Along with Tony Buzbee, he lead the Public Relations team for the PSC and was involved in efforts related to the formaldehyde issue before Congress.   The firm provided staff members to work at the Claims

Office, who logged a combined 1,921 hours and for whom Mr. Bencomo did not claim payment.

Mr. Bencomo was also tasked with review and research regarding defendants' insurance policies.  Mr. Bencomo performed and provided to the PSC a comprehensive review of the approximately thirty-nine policies provided by defendants, identifying the potentially applicable exclusions.   In addition, he personally monitored and/or participated in approximately forty-six depositions of corporate representatives, witnesses, medical doctors, and other defense experts, several of which depositions were held out of town.   Mr. Bencomo also took the lead in preparing the following cases for trial:  (1) *Dubuclet v. Fleetwood;* (2) *Castanel v. Recreation by Design*; and (3) *Lambert-Dolliole v. Jayco.*   Bencomo was originally designated as lead trial counsel in the *Castanel* bellwether trial.  In that role, he took the majority of the depositions and prepared to try the case, although Mikal Watts ultimately took the lead trial counsel role at trial. Bencomo was lead trial counsel on the *Lambert-Dolliole v. Jayco* summary jury trial, and was also part of the PSC's settlement team.

The PSC proposes that 6.69% of the available common benefit fee funds, or approximately $420,000, be awarded Bencomo & Associates' share of the common benefit fee. The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

### E.  The Lambert Firm (Formerly Lambert & Nelson, PLC):

The common benefit services affidavit of Lambert & Nelson, PLC ("L&N") is filed as Doc. 25940.  L&N contributed over 12,200 hours of common benefit time in this MDL through a number of attorneys and non-attorney staff members.  Of these hours, more than 4,400 committee-member hours were contributed, second only to Gainsburgh Benjamin.  The firm advanced $454,537 in PSC assessment payments and $120,034.12 in held costs.

16

Linda J. Nelson was appointed by the Court to serve as a PSC member, and served as Co-Chair of the Discovery Committee, on the Experts Committee, and on the Trial Committee. Nelson dedicated the vast majority of her time to this litigation until leaving the PSC for personal reasons unrelated to the MDL in December 2010.  Hugh P. Lambert also dedicated a considerable amount of time to this litigation, serving on the Expert Committee (Co-Chair), the Audit and Finance Committee, and the Trial Committee.  Additionally, L&N dedicated an associate attorney, two contract attorneys, and non-attorney staff to assist trial teams during discovery, class certification, and trial preparation.   L&N associate attorney Alexis Bevis and contract attorney Jonathan Adams both served on the Law Committee, and Bevis also served on the Discovery Committee.

Ms. Nelson and Mr. Lambert were responsible for working with more than seventeen experts in different fields of expertise to prepare for depositions, class certification, and bellwether trials.  Additionally, Lambert worked with experts to create animated and demonstrative exhibits used in the bellwether trials.  L&N attorneys also worked with experts to draft and finalize the testing protocols to measure formaldehyde levels in EHUs and coordinated the PSC's testing of occupied and stored EHUs.   During the bellwether trials the office also coordinated the experts' inspections of the plaintiffs' EHUs.

L&N propounded written discovery and noticed depositions for the vast majority of class certification depositions and for numerous bellwether trial depositions.   The firms also managed deposition documents.  Mr. Lambert participated in eleven class certification depositions (six fact and five expert) and was first chair on three of them.  For the *Alexander* and *Dubuclet* bellwether trials, L&N took a lead role on expert depositions with Lambert first chairing a

number of them.   L&N also organized and created binders for the class certification hearing, as well as drafting the witness lists, exhibit lists, and proposed pretrial order for that hearing,

L&N also coordinated the matching process and FEMA Individual Assistance file requests for all plaintiffs' counsel and maintained the responses and data.   The firm was the document depository for class certification and bellwether documents, maintaining copies both electronically and in hard copy for use by the trial teams throughout the litigation.   Additionally, because L&N maintained the testing database, they fielded telephone calls and email requests for individual and manufacturer specific testing results.   Firm staff organized, bates numbered, and produced all expert files and plaintiffs documents used during class certification and bellwether trials.   L&N reviewed the entire database of all documents obtained from defendants and third parties and identified important documents for use in depositions, the class certification hearing, and bellwether trials.   L&N staff also received, organized, and maintained the deposition transcript library.

The PSC proposes that 6.69% of the available common benefit fee funds, or approximately $420,000, be awarded as The Lambert Firm's share of the common benefit fee. The Special Master concurs.   The Court finds this to be reasonable and approves this allocation.

### F.  The Law Offices of Frank J. D'Amico, Jr.:

The common benefit services affidavit of The Law Offices of Frank J. D'Amico, Jr. can be found in the record at Rec. Docs. 25932 and 25966.  The Law Offices of Frank J. D'Amico contributed over 20,100 hours of common benefit time in this MDL through a number of attorneys and non-attorney staff members.  Of these hours, more than 4,227 committee-member

hours were contributed.  The firm advanced $416,938.23 in PSC assessment payments and $377,191.01 in shared/held costs.

Frank J. D'Amico, Jr. was appointed as a member of the PSC and has been involved in all phases of this litigation.  The firm jointly purchased a building to serve as the Claims Office and assigned ten staff members to work on claims.   Mr. D'Amico was responsible for selecting a number of experts, and he took numerous depositions, both expert and fact.  Mr. D'Amico was lead counsel on the *Wright v. Forest River* bellwether trial, which was the only bellwether case that was tried with a contractor defendant.  His firm prepared this case for trial over the course of six months, conducting depositions of Forest River and Shaw representatives.  The case lasted two weeks, and Mr. D'Amico advanced nearly $500,000 in trial-related expenses.

The PSC proposes that 6.69% of the available common benefit fee funds, or approximately $420,000, be awarded as a fair and reasonable common benefit fee to The Law Offices of Frank J. D'Amico, Jr.   The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

### G.  Reich & Binstock, LLP :

The common benefit services affidavit of Reich & Binstock, LLP is filed at Rec. Docs. 25932 and 25976.   This firm has contributed more than 14,700 hours of common benefit time in this MDL.  Of these hours, more than 2,600 committee-member hours were contributed. The firm advanced $505,261 in PSC assessment payments and $391,181.36 in shared/held costs.

Dennis Reich was appointed as a member of the PSC and played a pivotal role in the development of the medical causation case for the FEMA litigation.  He worked extensively with the medical, toxicological, and epidemiological experts retained by the PSC.  At the class

19

certification hearing, he cross-examined Dr. Wedner, the only expert called by the Defendants. He also deposed the principal epidemiological, toxicological, and medical experts retained by the defendants for the bellwether cases and deposed numerous treating physicians and independent medical examiners hired by the defendants.

Mr. Reich was also an active participant in the bellwether trials.  As trial counsel in the *Wright v. Forest River* case, Reich was responsible for medical causation, presenting and cross-examining the medical and scientific expert witnesses, and delivering the scientific evidence portion of the final argument.  As lead counsel in the *Castanel v. Recreation By Design* case, he presented and cross-examined the medical experts.  For the *Alexander v. Gulf Stream Coach* trial, Reich traveled with Mr. Meunier to Atlanta to depose a prominent CDC toxicologist and traveled to Washington, DC to participate in the deposition of the Formaldehyde Institute's corporate representative.  Mr. Reich also argued the appeal to the Fifth Circuit of the dismissal of the United States as a defendant in the *Alexander* case.

Associate attorney Shari Wright drafted pleadings, served and responded to discovery requests, and took and defended numerous depositions.  She was an active member of the briefing teams for the *Alexander*, *Dubuclet*, *Wright*, and *Castanel* cases, as well as coordinator and lead drafter for the *Castanel* briefing, both at trial and on appeal.  In the Sun Valley case, she participated in every aspect of the litigation, including presenting and deposing fact and expert witnesses.   The firm also hired and paid staff and attorneys to work in the Claims Office.

The PSC proposes that 6.69% of the available common benefit fee funds, or approximately $420,000, be awarded as Reich & Binstock, LLP's share of the common benefit fee.   The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

**H.   Becnel Law Firm, LLC:**

The common benefit services affidavit of The Becnel Law Firm, LLC is filed at Rec. Doc. 25933.  The firm contributed over 9,100 hours of common benefit time in this MDL.  Of these hours, more than 1,800 committee-member hours were contributed.  The firm advanced $1,005,000 in PSC assessment payments and $3,912.60 in shared/held costs.

The firm was the second firm to file a FEMA Trailer lawsuit and thereafter worked toward the establishment of an MDL.  Attorneys Matthew Moreland and Robert Becnel were appointed to the PSC.   Mr. Moreland was part of the PSC teams that developed the PFS form, drafted the consolidated amended complaints, and managed the trailer matching project.   He also filed suits on behalf of and enrolled as counsel for several of the PSC's shared clients. The firm, along with two other members of the PSC, purchased a building to house the Claims Office.  Along with Mr. D'Amico, Mr. Moreland and Diane Zink managed the Claims Office, including hiring attorneys and staff to work on client intake, PFS completion, and providing PFSs to the defense.  Mr. Moreland also worked with the PSC's IT specialist to develop a program and database system to store plaintiffs' PFS data.   He also worked as an auditor for the PSC, reviewing attorney time and expert bills.

Mr. Becnel attended congressional hearings and lobbied the Consumer Products Safety Commission on behalf of the plaintiffs.

The PSC proposes that 7.89% of the available common benefit fee funds, or approximately $495,000, be awarded as Becnel Law Firm, LLC's share of the common benefit fee.  The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

21

**I.**  **The Penton Law Firm:**

The common benefit services affidavit of The Penton Law Firm is found at Doc. 25929. The Penton Law Firm contributed over 2,700 hours of common benefit time in this MDL.  Of these hours, more than 1,300 committee-member hours were contributed.  The firm advanced $165,000 in PSC and subscribing member assessment payments and $34,161.49 in held costs.

Ronnie G. Penton was appointed to the PSC in this case, but was forced to withdraw in the second year of his appointment due to personal matters unrelated to this MDL.  Mr. Penton played a major role in initial fact and expert investigation and discovery.  Along with Mssrs. Lambert and Buzbee, he participated in numerous depositions in several states.  He researched and interviewed expert witnesses, and his office coordinated, set, prepared, and defended several depositions.  He also assisted with the inspection of hundreds of trailers in an effort to identify manufacturers and installers of trailers in each geographic area.

The firm contributed the services of its litigation staff including three lawyers, four paralegals, two legal assistants and two legal secretaries to the investigation and discovery effort. The firm was also engaged in the review, summarization, and organization of thousands of documents.

The PSC proposes that 1.28% of the available common benefit fee funds, or approximately $80,000, be awarded as the Penton Law Firm's share of the common benefit fee. The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

**J.**  **Hurricane Legal Center, L.L.C.:**

The common benefit services affidavit of Hurricane Legal Center, L.L.C. ("HLC") is filed at Rec. Doc. 25978.  The Center contributed 70 hours of common benefit time and advanced $251,250 in subscribing member assessment payments.

One of HLC's clients was selected as a bellwether plaintiff, and the firm's attorneys participated in the bellwether discovery process.   HLC also hired an attorney who assisted PSC members whose offices are in Texas.   HLC also assisted trial counsel in the *Lambert-Dolliole v. Jayco* summary jury trial.  Late in the MDL, three HLC cases were set for non-bellwether trials.

The PSC proposes that 1.27% of the available common benefit fee funds, or approximately $79,980, be awarded as a fair and reasonable common benefit fee to Hurricane Legal Center, L.L.C.  The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

### K.   The Law Offices of Sidney D. Torres, III, A.P.L.C.:

The common benefit services affidavit of The Law Offices of Sidney D. Torres, III, A.P.L.C. is filed as Doc. 25928.  The firm contributed over 500 hours of common benefit time, advanced $251,250 in subscribing member assessment payments, and incurred $15,647.26 in shared/held costs.

As an early subscribing member to the PSC, the firm provided critical funding by timely paying all financial assessments as these were made by the PSC from the very beginning of the litigation.   During the first two years of the litigation, senior firm attorney Roberta L. Bums was heavily involved in the drafting of several important pleadings with Mssrs. Meunier and Woods. Ms. Burns was appointed to the Law Subcommittee at the very beginning of the litigation and was assigned the primary responsibility of drafting the administrative master complaint, which entailed significant factual and legal research regarding the law of four different states.  Ms. Burns also co-drafted amendments to the master complaint, drafted numerous opposition memoranda on behalf of the PSC, and assisted in discovery.

The PSC proposes that 0.89% of the available common benefit fee funds, or approximately $55,990, be awarded as a fair and reasonable common benefit fee to The Law Offices of Sidney D. Torres, III, A.P.L.C.   The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

### L.   **Nexsen Pruet, LLC:**

The common benefit services affidavit of Nexsen Pruet, LLC ("Nexsen") is filed at Rec. Doc. 25942.  Nexsen contributed more than 5,100 hours of common benefit time, of which 1,537 hours were subscribing attorney hours.  The firm advanced $251,250 in subscribing member assessment payments and $132,480.48 in shared/held costs.

Nexsen filed one of the first cases in this litigation and was actively involved throughout the litigation as a subscribing member of the PSC.   As one of the first class action filings, the statute of limitations was tolled for the benefit of all members of the settlement class.  The firm was tasked with the following:  (1) fact and expert discovery in the *Fleetwood* matter, including depositions of expert witnesses; (2) legal research and briefing on class certification; (3) arguments related to the property damage subclass; (4) acting as trial counsel in the *Wright v. Forest River* case, which included briefing *in limine* and *Daubert* motions, legal research, legal assistant support, direct- and cross-examination of witnesses, and deposition designations; and (5) expert depositions in Raleigh, North Carolina in preparation for the *Castanel v. Recreation By Design* case.

The PSC proposes that 0.81% of the available common benefit fee funds, or approximately $50,900, be awarded as a fair and reasonable common benefit fee to Nexsen Pruet, LLC.   The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

**M.   Jim S. Hall & Associates, LLC:**

The common benefit services affidavit of Jim S. Hall & Associates, LLC ("Hall") is found at Rec. Doc. 25933.  The firm contributed more than 11,600 hours of common benefit time, of which 11,300 hours were non-attorney and non-paralegal hours.  The firm advanced $244,375 in subscribing member assessment payments and $32,861.07 in shared/held costs.  The firm employed Shirley Arceneaux to work at the Claims Office from June 2008 through April 2010 and paid her $34,043.45.

The PSC proposes that 0.93% of the available common benefit fee funds, or approximately $58,170, be awarded as a fair and reasonable common benefit fee to Jim S. Hall & Associates, LLC.   The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

**N.   Rodney & Etter, LLC:**

The affidavit of Rodney & Etter, LLC ("R&E") is filed as Rec. Doc. 25936. R&E contributed 1,700 hours of common benefit time, advanced no subscribing member assessment payments, and advanced $10,563.15 in held costs.

R&E initiated the first class action complaint claiming formaldehyde exposure in FEMA trailers.   Courts have recognized that the attorneys who file the first lawsuits may be entitled to common benefit fees, because a "critical mass" of cases is required for consolidation into a single proceeding and for the litigation to have sufficient momentum.  *See Turner v. Murphy Oil USA. Inc.*, 582 F. Supp. 2d 797, 809 (E.D. La. 2008).

25

The PSC proposes that 0.64% of the available common benefit fee funds, or approximately $40,000, be awarded to Rodney & Etter as a share of the common benefit fee. The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

**O.  Douglas M. Schmidt:**

The affidavit of Douglas M. Schmidt is filed at Rec. Doc. 25933. Schmidt contributed 645 hours of common benefit time, of which 135 hours were subscribing attorney hours.  The firm advanced $127,500 in subscribing member assessment payments.

Mr. Schmidt and his staff worked many days at the PSC's Claims Office filing claims for PSC clients and working to identify potential bellwether plaintiffs.  Two of Schmidt's clients were identified as bellwether plaintiffs, and Schmidt assisted in preparing these cases.  One of these cases went to trial, and Schmidt assisted with trial preparation, submitted questions, and advised Mr. D'Amico at trial.

The PSC proposes that 0.58% of the available common benefit fee funds, or approximately $36,360, be awarded to Douglas M. Schmidt.  The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

**P.  Keith A. Doley and Catrice Johnson-Reid:**

The affidavits of Keith A. Doley and Catrice Johnson-Reid  are filed at Rec. Doc. 25933. They contributed more than 1,800 hours of common benefit time, of which 1,592 hours were subscribing attorney hours.  The firm advanced $172,775 in subscribing member assessment payments.  Doley-Reid hired staff to work the Claims Office and paid this staff $3,600 for these services.  Ms. Johnson-Reid also personally worked at the Claims Office.  The PSC proposes that 0.58% of the available common benefit fee funds, or approximately $36,350, be awarded as

a common benefit fee to Keith A. Doley and Catrice Johnson-Reid.   The Special Master

concurs.  The Court finds this to be reasonable and approves this allocation.

### Q.  Bruno & Bruno, LLP:

The affidavit of Bruno & Bruno, LLP ("B&B") is filed at Rec. Doc. 25991.  B&B

advanced $251,250 in subscribing member assessment payments and contributed 500 hours of

common benefit time.   The firm prepared its client Stephanie Pizani for trial and assisted with

the selection of class representatives.

The PSC proposes that 0.48% of the available common benefit fee funds, or

approximately $30,000, be awarded as a fair and reasonable common benefit fee to Bruno &

Bruno, LLP.   The Special Master concurs.  The Court finds this to be reasonable and approves

this allocation.

### R.  Woodfill Law Firm:

The affidavit of The Woodfill Law Firm ("Woodfill") is filed at Rec. Doc. 25933.

Woodfill contributed more than 900 hours of attorney time and advanced $157,500 in

subscribing member assessment payments.

The PSC proposes that 0.52% of the available common benefit fee funds, or

approximately $32,720, be awarded to the Woodfill Law Firm.  The Special Master concurs.

The Court finds this to be reasonable and approves this allocation.

### S.  Young & Husain PLLC:

The affidavit of Young & Husain, PLLC ("Y&H") is filed at Rec. Doc. 25933.  The firm

advanced $142,500 in subscribing member assessment payments.   At the request of the PSC,

Y&H hired two attorneys to perform common benefit work out of the Baton Rouge field office,

where they completed PFSs for numerous clients.   Y&H attorneys also assisted trial preparation efforts for the *Wright v. Forest River* trial.

The PSC proposes that 0.46% of the available common benefit fee funds, or approximately $29,080, be awarded as a common benefit fee to Young & Husain, PLLC.  The Special Master concurs.  The Court finds this to be reasonable and approves this allocation.

## V.  CONCLUSION:

Accordingly, for the foregoing reasons;

**IT IS ORDERED** that the Motion to Approve Allocation of Common Benefit Fees **(Rec. Doc. 26043)** is hereby **GRANTED**, and the percentage allocations proposed by the PSC in Rec. Doc. 26043 are hereby **APPROVED**.

**IT IS FURTHER ORDERED** that the common benefit motions at **Rec. Docs. 25928, 25929, 25932, and 25933** are hereby **DENIED AS MOOT.**

New Orleans, Louisiana, this 2nd day of May, 2013.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**