UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| IN RE: FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION | MDL NO. 1873 <br><br> SECTION "N-5" <br><br> JUDGE ENGELHARDT <br> MAG. JUDGE CHASEZ |

THIS DOCUMENT IS RELATED TO ALL CASES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PSC MEMORANDUM IN SUPPORT OF MOTION
FOR REIMBURSEMENT OF COMMON BENEFIT
ASSESSMENT CONTRIBUTIONS AND TRANSFER
OF REMAINING SETTLEMENT FUNDS TO CADA**

**MAY IT PLEASE THE COURT:**

Funds in the total amount of $43,481,824.16 have been deposited into the Registry of the Court pursuant to various settlement agreements between and among the parties in this MDL.[1] These Court-approved class, as well as certain non-class, settlements, have concluded all litigation activity and resolved all claims asserted by plaintiffs against defendant manufacturers and contractors.

The Court's Special Master Daniel Balhoff has proposed — and the Court now has approved — a uniform protocol for the allocation and disbursement of these settlement funds to all eligible claimants. Disbursement consistent with this protocol will be the responsibility of Postlethwaite & Netterville as the Court-Appointed Disbursing Agent (CADA). The CADA has

---

[1] An additional $26,000.00 will be deposited by defendants, Agbayani Construction Corporation and SRS, Inc., pursuant to pending non-class settlements with plaintiffs. The PSC will seek an order of this Court to apply to these settlements the same percentage deductions for attorney fees and expenses previously approved by this Court in Record Document 25900.

advised that it expects to issue allocation letters to all claimants on or about June 14, 2013. These letters will advise each claimant of the anticipated amount of his/her settlement recovery, following which there will be a process to hear and resolve claimant objections to the proposed allocation. Pursuant to both the class and non-class settlements, plaintiffs already have submitted to the dismissal with prejudice of their claims against settling defendants. Plaintiffs further have stipulated that all potential objections to allocations will be subject to a final, non-appealable determination by this Court.

The Court has approved percentage-of-fund reserves for the payment of all attorney's fees (common benefit and private/contractual) and the reimbursement of common benefit costs. These orders of approval, entered without objection, now are final with the expiration of appeal deadlines. The ordered set-aside of funds for fees and costs are as follows:

(1)     $6,196,159.94 in total common benefit fees (14.25% of settlement fund);

(2)     $6,196,159.94 in total private/contractual fees (14.25% of settlement fund); and

(3)     $8,478,955.71 in common benefit costs (19.50% of settlement fund).

As to the common benefit fee reserve, the Court has approved an allocation among common benefit counsel, which approval order now is final. *See* Order and Reasons (Doc. 26047).

As to the private fee reserve, the amount of each attorney's or firm's share of this fee will be determined by the ultimate settlement recoveries of clients.

Finally, as to the common benefit cost reserve, these funds are available to reimburse the litigation cost assessments approved by the Court-Appointed PSC over the course of the MDL, and paid both by PSC firms and by other common benefit counsel working with the PSC. The

total of these cost assessment payments is $6,981,824.76.[2] The remainder of funds in the common benefit cost reserve will be utilized to pay for the services of the CADA, the Special Master, Bourgeois Bennett (which early in the litigation was designated as the CPA firm to receive and record common benefit expense and time submissions by plaintiffs' counsel), and, to the extent possible, to reimburse certain common benefit "held" costs incurred by plaintiffs' counsel in addition to assessment payments.

The PSC previously voted to apply to the Court for an order allowing for the reimbursement of common benefit assessments at such time as circumstances made this appropriate, even in the event attorneys fees were not disbursed at the same time. It is respectfully submitted that such circumstances now exist.

All of the settlement agreements at issue impose certain conditions as a predicate to disbursement. As noted, the claims of plaintiffs have been dismissed with prejudice, but nonetheless it is understood that these conditions for disbursement are important to defendants and will be satisfied. The PSC submits that all such conditions have been satisfied at this time, with the exception of a full and final release of all Medicaid and Medicare liens on plaintiff recovery. At the same time, what remains to be done with respect to Medicare and Medicaid does not, under either the letter or spirit of the settlement agreements, make inappropriate the reimbursement of the common benefit assessments sought by this motion.

First, the various settlement agreements required that a Lien Resolution Administrator (LRA) be engaged to secure Medicaid/Medicare liens, and accordingly the PSC retained the

---

[2] An itemized schedule of these payments, by firm, is attached to the proposed Order submitted with this motion.

Garretson firm as LRA. That firm now has worked diligently to resolve all government healthcare liens as required, as will be discussed in more detail below. But at the outset it is important to note the express language of the settlement agreements regarding the question at hand, i.e., when funds might be disbursed in relation to the satisfaction of medical liens:

> <u>When Funds May Be Disbursed</u>. The Special Master shall not disburse any settlement monies <u>to any Claimant</u> until Settlors have obtained from all Governmental Authority Third Party Payer/Providers satisfactory proof of satisfaction and discharge of all statutory Medicare claims asserted as to any Entitled Class Member, any statutory liens asserted by a state Medicaid agency or agencies as to any Entitled Class Member, and any statutory reimbursement or subrogation right asserted by any other Governmental Third Party Payer/Provider. . . .

*See, e.g.*, Stipulation of Settlement (Doc. 25226-1), filed 4/13/12, at pp. 34; Stipulation of Settlement (Doc. 25647-1), filed 5/29/12, at pp. 34-35 [emphasis added]. The instant motion, of course, does <u>not</u> seek a disbursement of settlement funds "to any Claimant....," as referred to in this provision.

In any event, neither is the spirit of the settlement agreements violated by the instant request, given the extent to which the LRA has been able to address and resolve both Medicare and Medicaid liens on recovery. As the Court knows, there are four States involved in this litigation. Three of the four now have provided the LRA with a written, unconditional waiver of any Medicaid liens in connection with the settlements: Louisiana has waived. *See* Waiver Letter from Weldon Hill dated 4/4/13 [Exhibit 1]. Texas has waived. *See* Waiver Letter from Kathleen Anderson dated 3/21/13 [Exhibit 2]. Alabama has waived. *See* Waiver E-mail from Catherine Cox dated 4/16/13 [Exhibit 3]. In the case of Mississippi, a representative has agreed to waive any Medicaid liens while reserving the right to consider those claims falling into the Special

-4-

Master's allocation category of "extraordinary medical" claims.  *See* Waiver E-mail from Fran Ingram dated 2/22/13 [Exhibit 4].

The Special Master since has confirmed, however, that there are only three Mississippi claims which fall into the definition of "extraordinary medical" claims; and, more importantly, he has made it clear that he is <u>not</u> considering medical treatment costs or medical care factors in making enhanced allocations in these cases.  Instead, the Special Master is recognizing that there is an enhanced <u>cost of defense</u> where such medical diagnoses have been made, warranting a greater allocation on this basis only.  *See* Special Master's Supplemental Recommendations Concerning Enhancement Awards (Doc. 26058).

This exclusion of medical damages as a component of the settlement recovery is legally significant, since the U.S. Supreme Court recently has reiterated its interpretation of federal anti-lien law to hold that a state may not seek Medicaid reimbursement from any tort recovery or settlement where the settlement amount in question has not specifically been identified as a recovery of damages for medical care, treatment or expense:  "The federal Medicaid statute's anti-lien provision, 42 U.S.C. § 1396p(a)(1), **pre-empts a State's effort to take any portion of a Medicaid beneficiary's tort judgment or settlement not 'designated as payments for medical care.'"** *Wos v. E.M.A. ex rel. Johnson*, 12-98, 2013 WL 1131709 (U.S. Mar. 20, 2013) (citing *Arkansas Dept. Of Health and Human Servs. v. Ahlborn*, 547 U.S. 268, 284) (emphasis added).

Accordingly, even though Mississippi has made the above reservation, the PSC is confident that Mississippi ultimately will be obliged to waive any Medicaid liens entirely, pursuant to Supreme Court authority and the Special Master's confirmation that none of these enhanced

-5-

medical cases in Mississippi involve a consideration of medical care, treatment, or expense. If Mississippi declines to do so, in fact, the PSC will strongly consider filing an appropriate motion with the Court to resolve this matter.

In any event, the only amounts at issue with respect to Mississippi Medicaid are settlement payments to be allocated to no more than three claimants.

With respect to Medicare, Garretson has secured an agreement that this federal program (a) waives any further reporting requirement under federal law with respect to these settlements, and (b) will only review those cases involving a net settlement recovery of more than $1,000. *See* August 16, 2012 letter from Medicare representative to Garretson and e-mail of June 11, 2013 to Palmer Lambert from Scott Duever [attached *in globo* as Exhibit 5]. These reviewed cases will consist of both the "extraordinary medical cases" and certain "enhanced" allocations. The latter in turn consist of bellwether plaintiffs, trial plaintiffs in severed cases and class representatives, since these individuals either experienced inconveniences in having their claims as trial plaintiffs made the subject of individual discovery in the litigation, or, in the case of class representatives, required that responsibilities be assumed, affidavits be executed, etc. Again, none of these enhanced awards in any way pertain to, or take into account, medical injury, treatment, cost or care.

The PSC is reasonably confident that Medicare will waive any lien once it perceives the administrative responsibilities and costs of reviewing medical records for these "in excess of $1,000" cases, particularly given the lack of any consideration for medical records or treatment in the Special Master's allocation. No allocations to other claimants has been placed at issue by Medicare.

-6-

To the extent settling defendants may be concerned that their exposure to Medicare (or Medicaid) liens may require their access to not only withheld claimant allocations, and not only reserved costs, but also to attorney's fees, it is important to emphasize that the PSC does <u>not</u> seek the disbursement of over $6 million in common benefit fees at this time (even though, under the strict terms of the above quoted settlement agreement, the disbursement of such fees would not constitute monies paid to "claimants"). Instead, the PSC is willing to defer its request for the payment of common benefit fees pending the final resolution of all Medicare and Medicaid liens. Thus, all attorney's fees, like allocations to all claimants and like the balance of what is reserved in the common benefit cost fund over and above the requested reimbursement of the assessment payments, will remain on deposit as protective of the defendants' interests as these settlements are finalized for disbursement.

Neither are the defendants without protection even in the absence of such continuing reserves of funds. Consistent with the language of the settlement agreements regarding the obligation of the LRA, Garretson has entered into an express stipulation as follows:

> GFRG [Garretson] agrees to hold harmless, defend and indemnify the participating claimants, the Law Firm and Indemnitees [settling Defendants] for any and all damages, penalties, claims, liabilities, losses, costs or expenses (collectively "Damages") that Indemnities may incur, including attorneys' fees and costs, in connection with the assertion against Indemnitees of any liens, assignment rights or other claims for the resolution of which GFRG has undertaken responsibility as LRA as set out in the Stipulations of Settlement R. Doc. 25226-1 (p.31-36) and R. Doc. 25647-1 (p.32-36), along with any individual, non-class settlement agreement between any Indemnitee and the PSC.

Indemnification Agreement of September 26, 2012 [Exhibit 6, at p. 1].

Finally, the PSC submits that there is precedent in multi-district litigation for the instant

request. In the Chinese Drywall MDL, the Honorable Eldon Fallon recently entered an order (on a PSC motion) for the reimbursement of 80% of all assessment contributions made by common benefit plaintiffs' counsel in that case. *See* Order for Reimbursement of Assessment Contributions, 5/21/13 in MDL No. 09-2047 (Doc. 16829). He did so even though the settlement program in that MDL which gives rise to the defendants' funding of litigation costs (up to a stated limit), is one that is proceeding through preliminary stages and is far from finalization.

Such an interim reimbursement of costs is nonetheless just and fair. Plaintiff firms in complex litigation by agreement are obliged to await the payment of all fees pending client recovery, even as they and their firms have invested, and placed at risk, substantial amounts of funds to litigate on plaintiffs' behalf. To provide some return on this cost expenditure pending the finalization of a Court-approved settlement, particularly in litigation now approximately six years in duration, represents the equitable exercise of an MDL Judge's authority.

Given the language of the settlement agreements as to when funds may be disbursed, the indemnity agreement made with the LRA, the substantial progress toward a complete and full resolution of all Medicaid and Medicare issues, the fact that only a limited number of claimants' allocations will now be relevant with respect to Medicare and Medicaid in any event, and the continuing deposit and reserve of all claimant allocations, all attorney's fees and the balance of the common benefit cost fund not affected by this reimbursement request, the PSC respectfully requests that it is appropriate for the Court to enter the submitted Order permitting the reimbursement of common benefit assessments at this time. The Order specifies that, on receipt of these funds from the Clerk of Court, the undersigned, as Co-Liaison Counsel for plaintiffs responsible for the PSC litigation account, will allocate to the counsel who paid assessments per

the schedule attached to the Order.  All counsel identified on the schedule are in agreement with the amounts reflected.

The proposed Order also calls for the transfer of the balance of the deposited settlement funds from the registry of the Court to the CADA.  This does not contemplate that these funds then will be disbursed by the CADA, given the further action which must occur in both completely resolving Medicare and Medicaid and in exhausting the allocation objection process.  However, there is no practical reason to keep the settlement funds in the Registry of the Court at this time, requiring the Clerk to attend administratively to these funds.  It now should be the responsibility of the CADA to maintain these funds, and ultimately make disbursements, consistent with the provisions of the settlement agreements and the further orders of this Court.

Respectfully submitted:

**FEMA TRAILER FORMALDEHYDE PRODUCT LIABILITY LITIGATION**

BY: s/Gerald E. Meunier
GERALD E. MEUNIER, #9471
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504/522-2304
Facsimile: 504/528-9973
gmeunier@gainsben.com

s/Justin I. Woods
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Woods, Bowers & Woods, L.L.C.
1610 Oretha Castle Haley Boulevard, Suite B
New Orleans, Louisiana 70113
Telephone: 504/309-4177

        Facsimile:    504/309-4377
        jwoods@wbw-law.com

**COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE**
    ANTHONY BUZBEE, Texas # 24001820
    ROBERT M. BECNEL, #14072
    RAUL BENCOMO, #2932
    FRANK D'AMICO, JR., #17519
    MATT MORELAND, #24567
    DENNIS REICH, Texas #16739600
    MIKAL C. WATTS, Texas #20981820
    ROBERT C. HILLIARD, Texas ##09677700

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

        s/Gerald E. Meunier
        GERALD E. MEUNIER, #9471