UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER      MDL NO. 07-1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION     SECTION "N-5"

    JUDGE ENGELHARDT
    MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

## Special Master's Recommendations
## Concerning Distribution of Settlement Funds

On August 29, 2005, Hurricane Katrina made landfall over the coast of southeast Louisiana. The storm devastated several states along the Gulf Coast, driving tens of thousands of residents from their homes. Many were displaced for months and, sometimes, years.

The Federal Emergency Management Agency (FEMA) provided temporary shelter for the displaced residents. It procured manufactured housing units and trailers from dozens of manufacturers, and hired contractors to aid in the project.

As time passed, residents began to complain of problems that they associated with formaldehyde fumes emanating from the manufactured housing units and trailers. Eventually, many of the residents sued FEMA, the manufacturers, and the contractors. The suits were consolidated in the instant Multidistrict Litigation.

Almost all of the claims have now been dismissed or settled. The settlements came in three waves:

*First.* Fleetwood Enterprises, Inc., a manufacturer, declared bankruptcy and its insurers settled with claimants. The Court appointed the undersigned as Special Master to allocate the settlement. The allocations are final and the settlement funds have been disbursed.

*Second.* The manufacturers of the manufactured housing units settled. The Court again appointed the undersigned as Special Master to allocate the settlement (also known as the Non-Lit settlement). The allocations are final and the settlement funds have been disbursed.

*Third.* Most of the remaining manufacturers and contractors settled. The Court approved a class settlement with respect to most of the settling manufacturers and another class settlement with respect to the settling contractors on September 27, 2012. The other settling manufacturers elected to settle with claimants on a mass basis (i.e., with a specified list of known claimants) rather than a class basis. The Court again appointed the undersigned as Special Master to allocate all pending settlements.

On March 4, 2013, the Special Master proposed a methodology for allocating the third wave of settlement proceeds among the claimants. Rec. Doc. 26032-2. On March 20, the Court adopted the Special Master's methodology. Rec. Doc. 26040. No one has appealed the Court's order.[1] The Special Master subsequently proposed an objection procedure which the Court also adopted. Rec. Docs. 26042-1 and 26045. Again, no one appealed the Court's order.

The Special Master and the CADA have spent the last several months implementing the methodology that the Court adopted. The CADA initially received more than 200,000 potential claims against the settlement funds. On April 30, 2013, after eliminating suspected duplicates, the CADA sent 47 preliminary claimant lists to the attorneys who represented the claimants, giving the attorneys a deadline of May 15, 2013 to object to or modify their respective lists.

On approximately June 14, 2013, the CADA began notifying attorneys and claimants[2] of their

---

[1] Since the Court approved the Special Master's methodology for the third wave, defendants SRS, Inc. and Agbayani Construction Corp. have settled. The Special Master has directed the CADA to employ the same methodology (i.e., as outlined in Rec. Doc. 26032-2) for claims against these two defendants as for those against all other settling defendants. The Special Master recommends that the Court approve this extension of its methodology, as reflected in Items 1 and 8 of the Recommendations below.

[2] When mailing letters to the claimants, the CADA used the addresses that the claimants listed on their claim forms or (if available) any more recent addresses that the claimants or their attorneys

respective preliminary allocations (i.e., the point allocations that the CADA had assigned to the claimants based upon the methodology that had been adopted by the Court, with each point equaling approximately a dollar). The letters that the CADA mailed to the claimants informed them of the objection deadline (July 12) and the procedure for objecting.

The CADA received 3,214 objections. The Special Master, with the help of the CADA, reviewed the objections and determined that there was no need for evidentiary hearings, since the merits of the various objections were apparent on their face. After his review, the Special Master directed the CADA to adjust 2,184 of the point allocations in response to the objections, and to deny the remaining 1,034 objections (leaving them at the original allocation). The objection process is discussed in further detail in Exhibit 1, and the disposition of (i.e., the Special Master's recommendation as to) all 3,214 objections is detailed in Exhibit 2.

Employing the above-described process, the Special Master and the CADA have determined which claimants should share in the settlement fund. The Special Master has directed the CADA to convert the points which had previously been allocated to the claimants into dollars, with the awards reflected in Exhibit 3 (under seal). Of course, the shares are not equal, but instead vary according to the methodology that the Court has adopted. The Special Master has directed the CADA to convert the points which had previously been allocated to the claimants into dollars, with the awards reflected in Exhibit 3 (under seal). Exhibit 3 includes the enhancement awards that this

---

had provided. If the mail was returned as undeliverable, the CADA took reasonable steps (including computer searches, etc.) to determine updated addresses for the claimants. Based on both his own and the CADA's past experience in class/mass litigation, the Special Master is satisfied that the CADA made all reasonable efforts to contact the claimants. The Special Master would further note that, as in all litigation, it is the claimant's ultimate responsibility to inform the Court and its officers of any change of address.

Court has previously approved, as well as extraordinary awards for certain cancer claims (as anticipated in Rec. Doc. 26032-2). Whereas Exhibit 3 lists those claimants who will receive awards, Exhibit 4 (also filed under seal) lists those claimants who have been denied recovery in accordance with the Court's previously adopted methodology.

Finally, the Special Master has directed the CADA to set aside the balance of the settlement fund as an appropriate reserve for future administrative costs and fees as well as potential unforeseen claims. In the event there is a reserve at remaining at the end of the process, the Special Master will make further recommendations, including a possible cy près award.

## Recommendations

The Special Master recommends that the Court enter a Judgment[3] stating that:

1. The Court adopts the Special Master's recommendations concerning the disposition of objections as reflected in Exhibits 1 and 2, together with the allocations reflected in Exhibits 3 and 4.

2. The Court directs the CADA to commence the distribution of the settlement allocation checks within 30 days of the date that this Judgment is signed and filed in the record.

3. The Court directs the CADA to use its discretion to appropriately follow up on settlement allocations that go unclaimed more than 180 days from the date of distribution; the Court further directs the CADA to employ at least one of the following methods of due diligence: (1) request updated contact information from the claimant's representing attorney, or (2) perform additional address research using paid subscription services to locate the claimant.

---

[3] As of the filing of this Report, the Special Master has not yet been able to provide the defendants with the all of the waivers required by the Settlement Agreement. The Special Master suggests (and liaison counsel agree) that the Court should not adopt the Special Master's Report and Recommendations until the Special Master informs the Court that defendants (through Settlement Liaison Counsel Ryan Johnson) agree that they have received all necessary waivers. If the circumstances warrant, the Special Master may recommend an appropriate alternative, but (in that eventuality) the parties have reserved their right to object.

4. The Court grants the Special Master and the CADA the authority to determine the appropriate method for distribution of settlement funds to minor, deceased, or incompetent claimants; and the Court authorizes the Special Master and the CADA to require notarized power of attorney, notarized affidavits of entitlement, court orders, or other court process as well as other appropriate identification as deemed appropriate or necessary. The Court further authorizes the Special Master and the CADA to (a) rely upon attorney-provided representative or successor information when determining the appropriate party to which settlement funds should be distributed and (b) shall use its discretion to decipher information obtained directly from claimant representatives or successors to appropriately deliver settlement funds.

5. After one (1) year from the initial mailing of settlement checks, any amounts that remain unclaimed, returned, or undeposited by Class Members, or which could not for any reason be distributed (along with any remaining amount withheld by the Special Master and CADA for fees and expenses which is no longer needed to pay such fees and expenses) shall constitute the Unclaimed Fund. The CADA shall submit a written report to the District Court, Plaintiffs' Steering Committee, and Defense Liaison Counsel on the status and amount of the Unclaimed Fund.

    The Unclaimed Fund shall be subject to appropriate disposition by the Court, including in part or in whole any of the following disbursement methods:

    a. The Plaintiffs' Steering Committee may seek a court order authorizing payment to the Special Master or the CADA of any additional expenses and fees as required to administer the Settlement Agreement.

    b. The Plaintiffs' Steering Committee may seek a court order authorizing payment to them of additional fees and expenses incurred which were necessary to enforce or effectuate the Settlement Agreement.

    c. The Court may approve a cy près payment.

    d. The balance of the fund shall be delivered, along with a list of putative claimants and the amount due each, to the escheat or unclaimed funds division (or other appropriate state entity) for the state of last known address for the class member. If the CADA has no known address on file, funds shall be delivered to the unclaimed funds division of the Louisiana Secretary of State, or the equivalent governmental agency at the time.

6. The CADA shall have the authority to include release language on the back of the settlement checks and any accompanying enclosures, to the extent approved by the Special Master.

7.  For the limited purpose of concluding the compromise, settlement and release of claims embodied in each settlement check, the Court hereby appoints the CADA as the authorized representative of the persons and/or entities being released. The CADA's signature together with the recipient's endorsement on the back of the check or negotiation of the check without an endorsement will constitute a compromise and transaction for purposes of the controlling law, and also will be considered a "release agreement" as that term is used in the Stipulation of Settlement signed by the parties.

8.  That, in all other respects, the Court adopts the Special Master's Report and Recommendations in full.

Baton Rouge, Louisiana, this 5th day of September, 2013.

                                            s/Daniel J. Balhoff
                                            Daniel J. Balhoff (#18776)
                                            Randi S. Ellis (#25251)