UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: FEMA TRAILER
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

MDL NO. 07-1873

SECTION "N-5"

JUDGE ENGELHARDT
MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

# Special Master's Supplemental Recommendations Concerning Distribution of Settlement Funds

**I.   All liens but one have been satisfied to the defendants' satisfaction; defendants do not object to a partial distribution.**

On September 5, 2013, the Special Master filed his Recommendations Concerning Distribution of Settlement Funds.[1]  At that time, the Special Master had not yet secured all of the lien waivers that the Settlement Agreements required.  The Special Master has now secured unconditional lien waivers from the States of Alabama, Louisiana, Mississippi, and Texas.  The Special Master has also secured lien waivers from the Centers for Medicare & Medicaid Services (CMS) with respect to all claimants except Matilda Gilmore.

The Special Master asked defense liaison counsel (Ryan Johnson, Andrew Weinstock, David Kurtz, and Charles Leche) to circulate a proposal among defendants that the Court could release the settlement funds to all claimants except Ms. Gilmore, keeping an amount in reserve to cover any potential liability arising out of Ms. Gilmore's claim.  Defense liaison counsel then communicated

---

[1] Rec. Doc. 26107.

the proposal to all defense counsel by email, and then reported to the Special Master that none of the defendants objected to the proposal. Likewise, Ms. Gilmore's counsel has also been informed of this proposal, and has not voiced an objection. Therefore, the Special Master recommends that the Court sign an order which allows distribution of the settlement funds to all claimants except Ms. Gilmore.[2]

In a related matter, on June 11, 2013, the Special Master filed a Motion for Court Approval and Adoption of the Special Master's Supplemental Recommendations Concerning Enhancement Awards.[3] Some defendants objected to the distribution of the enhancement awards because the lien issues had not yet been resolved. The Court has yet to rule on the Special Master's June 11 motion. Given the resolution of the lien issues as to all claimants other than Matilda Gilmore (who was not listed as a recipient of an enhancement award in Exhibit 1 to the June 11 motion), and given all defendants' acquiescence in the distribution of settlement funds to all claimants other than Matilda Gilmore (with the caveat that the CADA will maintain an appropriate reserve as described above), the Special Master urges the Court to sign the order accompanying the June 11 motion at this time.

## II.   The Court should give the Special Master discretion to withhold checks in certain limited circumstances.

At least one claimant's counsel has asked to be given the chance to continue to work with the Special Master and the CADA to eliminate duplicate or erroneous payments. To this end, the

---

[2] The Special Master suggests that this revision to the order submitted on September 5, 2013 does not require an additional notice period. The defendants, who are the only parties who are even theoretically adversely affected by the change in the proposed order (due to the fact that they are not yet receiving a lien resolution as to Matilda Gilmore, although – again – they are in reality protected by the maintenance of a reserve) have acquiesced to this proposal.

[3] Rec. Doc. 26058.

Special Master proposes that the Court include the following language in a its order:

> If, at any point before a settlement payment is made, the Special Master or CADA is informed (by any claimant, claimant's attorney, or otherwise) that a claimant has mistakenly been designated to receive a duplicate or erroneous payment, the Special Master, in consultation with the CADA, shall have the final authority to determine whether the payments at issue are in fact duplicative or erroneous. If he determines the payments are duplicate or erroneous payments, the Special Master shall direct the CADA to mail only a single payment to the claimant (eliminating the duplicates) or authorize the CADA to cancel the erroneous payment. The funds which were initially designated for payment will be transferred to the reserve fund.[4]

## III.   The Special Master and the CADA have reviewed the objections.

On approximately June 14, 2013, the CADA began notifying attorneys and claimants[5] of their respective preliminary allocations (i.e., the point allocations that the CADA had assigned to the claimants based upon the methodology that had been adopted by the Court, with each point equaling approximately a dollar). The letters that the CADA mailed to the claimants informed them of the objection deadline (July 12) and the procedure for objecting. On September 5, 2013, the Special

---

[4] The Special Master suggests that this revision to the order submitted on September 5, 2013 does not require an additional notice period. The claimants, who are the only parties who are even theoretically adversely affected by the change in the proposed order (due to the fact that they may receive only one check rather than multiple checks) will only be affected if they or their attorney ask the Special Master or the CADA to eliminate the erroneous awards.

[5] When mailing letters to the claimants, the CADA used the addresses that the claimants listed on their claim forms or (if available) any more recent addresses that the claimants or their attorneys had provided. If the mail was returned as undeliverable, the CADA took reasonable steps (including computer searches, etc.) to determine updated addresses for the claimants. Based on both his own and the CADA's past experience in class/mass litigation, the Special Master is satisfied that the CADA made all reasonable efforts to contact the claimants. The Special Master would further note that, as in all litigation, it is the claimant's ultimate responsibility to inform the Court and its officers of any change of address.

Master filed his recommendations with respect to the objections. The filing was posted on the Court's Case Management/Electronic Case Filing system. On September 6, the recommendations were linked on the Court's website and to the settlement website.[6] Furthermore, the CADA emailed all attorneys notice of the disposition of all of their clients' objections. Finally, on September 12, the CADA mailed all objectors notice of the disposition of their objections.

Each of the above notices informed the claimants and their attorneys that the claimants could ask the Court to review the Special Master's determinations. The claimants were given a deadline of September 26, and they were informed that the Court would consider the matter submitted on the papers as of September 30. The claimants were informed that any objections must be filed in the record.

Eight claimants filed objections in the record (as was required). The Special Master and the CADA received another 59 objections which were not filed. The Special Master and the CADA have reviewed all of the objections (filed and unfiled). The CADA's analysis of the objections (which the Special Master has reviewed) is attached hereto as Exhibit A.

The claimants who filed their objections fall into two categories. Five (Camille Sanchez,[7]

---

[6]On May 31, 2012, the Court approved a claim form which repeatedly directed potential claimants to the official settlement website (www.femaformaldehydesettlement.com) for updates. Rec. Doc. 25658-2.

[7]Rec. Doc. 26116.

Lakeisha Asphall,[8] Lucy Brister o/b/o Michael Brown,[9] Michel Philips,[10] and Wandalyn Julian[11]) did not timely file suit. Therefore, although they may have timely filed claim forms after the September 27, 2012 settlement,[12] their claims had already prescribed (i.e., they were time-barred). The first rule of this Court's methodology was that "[p]rescribed (time-barred) claims will receive nothing."[13] The other three claimants who timely filed objections (Anna Rawls o/b/o Troie O. Rawls,[14] Bobby Magee,[15] and Judy Smith o/b/o Massie Lean Womack[16]). Each of these complained that his or her award was too low. But none of them suggested that the Special Master or the CADA incorrectly applied the methodology that the Court adopted on March 20. The Special Master asked the CADA to recalculate the awards for each of these three, and the CADA has confirmed that they were awarded the correct amounts pursuant to the Court's methodology.[17]

---

[8]Rec. Doc. 26114.

[9]Rec. Doc. 26118.

[10]Rec. Doc. 26117.

[11]Rec. Doc. 26115.

[12]Although timely filing a claim form is *necessary* to recovery in a class action, it is not (by itself) *sufficient* to establish a right to recovery. In this case, a claimant who filed a timely claim form that did not establish a right to recovery pursuant to the Court's established methodology received nothing. Any other result would not only violate the Court's order, but would also dilute the settlement proceeds available to claimants who did satisfy the Court's methodology.

[13]Rec. Doc. 26032-2, p.6; and Rec. Doc. 26040.

[14]Rec. Doc. 26120.

[15]Rec. Doc. 26119.

[16]Rec. Doc. 26113.

[17]The calculations for the three claims (after converting points to dollars) are as follows: Anna Rawls o/b/o Troie Rawls (Pilgrim award: $145.20; contractor award: $33.02; total award:

With respect to the other 59 claimants (those who did not file their objections in the record), there is no reason for the Court to specifically address their complaints since there are no "objections" before the Court.[18] Nevertheless, it must be noted that the Special Master has suggested that the Court establish a reserve to address complaints (even untimely ones) to the extent possible if they are meritorious. To this end, in the event the Court approves the recommendations herein, the Special Master intends to direct the CADA to pay the claims of Kelvin Gibson, Jr. and Margaret Fleming from the reserve, and to perform additional research with respect to the claims fo Aaron Youngblood, Aldavius Walker, Gregory Melson, Sr., Keeley Foley, and Luther Heidelberg.[19]

---

$178.22); Bobby Magee (Gulf Stream award: $248.22; contractor award: $33.02; total award: $281.24); Judy Smith o/b/o Massie Womack (no valid manufacturer proven: $0; contractor award: $33.02).

[18] Three of the claimants – Nicole Hoda Lewis, Wayne Hoda, and Willa Fay Hoda – indicated that they do not wish to receive any funds. The CADA will not distribute funds to these claimants.

[19] In the Special Master's opinion, this analysis of claims should not provoke an additional notice period. The only purpose of this analysis is to aid the Court in its determination of the objections before it, and to inform the Court of the Special Master's intended handling of complaints which have not been filed. The Court has access to the entirety of the filed claims (because they are in the record), and the Court has all of the evidence before it that is necessary to determine whether the claimants have sufficiently shown that the CADA's awards have not complied with the Court's previously adopted methodology.

# Recommendations

The Special Master recommends that the Court enter a Judgment stating that:

1. The Court denies the objections of Camille Sanchez (Rec. Doc. 26116), Lakeisha Asphall (Rec. Doc. 26114), Lucy Brister o/b/o Michael Brown (Rec. Doc. 26118), Michel Philips (Rec. Doc. 26117), Wandalyn Julian (Rec. Doc. 26115), Anna Rawls o/b/o Troie O. Rawls (Rec. Doc. 26120), Bobby Magee (Rec. Doc. 26119), and Judy Smith o/b/o Massie Lean Womack (Rec. Doc. 26113). The Court adopts the allocations reflected in the spreadsheet attached to the Special Master's Recommendations under seal as Exhibit 1 (Rec. Doc. 26111).

2. The Court directs the CADA to commence the distribution of the settlement allocation checks, except for the settlement allocation check(s) for Matilda Gilmore, within 30 days of the date that this Judgment is signed and filed in the record. The Court directs the CADA to maintain a reserve greater than or equal to the amount that the Special Master has allocated to Matilda Gilmore, for the purpose of satisfying any potential lien. In the event the Special Master is able to satisfy the defendants that the lien obligation is satisfied, the Special Master may file a motion with the Court to release the reserved funds.

3. If, at any point before a settlement payment is made, the Special Master or CADA is informed (by any claimant, claimant's attorney, or otherwise) that a claimant has mistakenly been designated to receive a duplicate or erroneous payment, the Special Master, in consultation with the CADA, shall have the final authority to determine whether the payments at issue are in fact duplicative or erroneous. If he determines the payments are duplicate or erroneous payments, the Special Master shall direct the CADA to mail only a single payment to the claimant (eliminating the duplicates) or authorize the CADA to cancel the erroneous payment. The funds which were initially designated for payment will be transferred to the reserve fund.

4. The Court directs the CADA to use its discretion to appropriately follow up on settlement allocations that go unclaimed more than 180 days from the date of distribution; the Court further directs the CADA to employ at least one of the following methods of due diligence: (1) request updated contact information from the claimant's representing attorney, or (2) perform additional address research using paid subscription services to locate the claimant.

5. The Court grants the Special Master and the CADA the authority to determine the appropriate method for distribution of settlement funds to minor, deceased, or incompetent claimants; and the Court authorizes the Special Master and the CADA to require notarized power of attorney, notarized affidavits of entitlement, court orders, or other court process as well as other appropriate identification as deemed appropriate or necessary. The Court further authorizes the Special Master and the CADA to (a) rely upon attorney-provided representative or successor information when determining the appropriate party to which

        settlement funds should be distributed and (b) shall use its discretion to decipher information obtained directly from claimant representatives or successors to appropriately deliver settlement funds.

6. After one (1) year from the initial mailing of settlement checks, any amounts that remain unclaimed, returned, or undeposited by Class Members, or which could not for any reason be distributed (along with any remaining amount withheld by the Special Master and CADA for fees and expenses which is no longer needed to pay such fees and expenses) shall constitute the Unclaimed Fund. The CADA shall submit a written report to the District Court, Plaintiffs' Steering Committee, and Defense Liaison Counsel on the status and amount of the Unclaimed Fund.

    The Unclaimed Fund shall be subject to appropriate disposition by the Court, including in part or in whole any of the following disbursement methods:

    a. The Plaintiffs' Steering Committee may seek a court order authorizing payment to the Special Master or the CADA of any additional expenses and fees as required to administer the Settlement Agreement.

    b. The Plaintiffs' Steering Committee may seek a court order authorizing payment to them of additional fees and expenses incurred which were necessary to enforce or effectuate the Settlement Agreement.

    c. The Court may approve a cy près payment.

    d. The balance of the fund shall be delivered, along with a list of putative claimants and the amount due each, to the escheat or unclaimed funds division (or other appropriate state entity) for the state of last known address for the class member. If the CADA has no known address on file, funds shall be delivered to the unclaimed funds division of the Louisiana Secretary of State, or the equivalent governmental agency at the time.

7. The CADA shall have the authority to include release language on the back of the settlement checks and any accompanying enclosures, to the extent approved by the Special Master.

8. For the limited purpose of concluding the compromise, settlement and release of claims embodied in each settlement check, the Court hereby appoints the CADA as the authorized representative of the persons and/or entities being released. The CADA's signature together with the recipient's endorsement on the back of the check or negotiation of the check without an endorsement will constitute a compromise and transaction for purposes of the controlling law, and also will be considered a "release agreement" as that term is used in the Stipulation of Settlement signed by the parties.

9. In all other respects, the Court adopts the Special Master's Recommendations and Supplemental Recommendations Concerning Distribution of Settlement Funds in full.

Baton Rouge, Louisiana, this 30th day of September, 2013.

s/Daniel J. Balhoff
Daniel J. Balhoff (#18776)
Randi S. Ellis (#25251)