**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: FEMA TRAILER                          MDL NO. 07-1873
FORMALDEHYDE
PRODUCT LIABILITY LITIGATION                 SECTION "N-5"

                                             JUDGE ENGELHARDT
                                             MAG. JUDGE CHASEZ

THIS DOCUMENT IS RELATED TO ALL CASES

# Memorandum in Support of Special Master's Recommendations Regarding Final Distribution of Settlement Fund Balance

On August 29, 2005, Hurricane Katrina made landfall over the coast of southeast Louisiana. The storm devastated several states along the Gulf Coast, driving tens of thousands of residents from their homes. Many were displaced for months and, sometimes, years.

The Federal Emergency Management Agency (FEMA) provided temporary shelter for the displaced residents. It procured manufactured housing units and trailers from dozens of manufacturers, and hired contractors to aid in the project.

As time passed, residents began to complain of problems that they associated with formaldehyde fumes emanating from the manufactured housing units and trailers. Eventually, many of the residents sued FEMA, the manufacturers, and the contractors. The suits were consolidated in the instant Multidistrict Litigation.

As the MDL proceeded, many of the claims settled. The settlements came in three waves:

*First.* Fleetwood Enterprises, Inc., a manufacturer, declared bankruptcy and its insurers settled with claimants. The Court appointed the undersigned as Special Master to allocate the settlement. The allocations are final and the settlement funds have been disbursed.

*Second.* The manufacturers of the manufactured housing units settled. The Court again

appointed the undersigned as Special Master to allocate the settlement (also known as the Non-Lit settlement). The allocations are final and the settlement funds have been disbursed.

*Third.* Most of the remaining manufacturers and contractors settled. The Court approved a class settlement with respect to most of the settling manufacturers and another class settlement with respect to the settling contractors on September 27, 2012.[1] The other settling manufacturers elected to settle with claimants on a mass basis (i.e., with a specified list of known claimants) rather than a class basis. The Court again appointed the undersigned as Special Master to allocate all pending settlements. The below discussion pertains to this third wave of settlements.

More than 20 manufacturers and contractors participated in the third wave of settlements. The CADA received more than 100,000 names of potential claimants. On March 4, 2013, the Special Master filed his recommendations concerning the methodology for disbursing the settlement funds.[2] The Court subsequently approved and adopted the recommendations.[3]

On September 5, 2013, the Special Master filed his recommendations concerning the distribution of the settlement funds.[4] The Special Master supplemented these recommendations on September 30, 2013.[5] These recommendations (as supplemented) applied the March 2013 methodology to each claimant, yielding an individualized determination and award. The recommendations also envisioned that the Court would have the ability to make a *cy près* award if

---

[1]Rec. Doc. 25887 (Final Order and Judgment, Manufacturer Settlement); and Rec. Doc. 25888 (Final Order and Judgment, Contractor Settlement).

[2]Rec. Doc. 26032-2 (Special Master's Recommendations Concerning Methodology for Disbursing Pending Settlements).

[3]Rec. Doc. 26040 (Order).

[4]Rec. Doc. 26107-1 (Special Master's Recommendations Concerning Distribution of Settlement Funds).

[5]Rec. Doc. 26121 (Special Master's Supplemental Recommendations Concerning Distribution of Settlement Funds).

there was a balance left after the settlement funds were distributed.  On October 1, 2013, the Court approved and adopted the recommendations as supplemented.[6]

Despite due diligence, the CADA was unable to locate many of the claimants.  This resulted in a significant residual balance.  On July 8, 2014, the Special Master filed a motion for the Court to approve a supplemental distribution procedure.[7]  The proposed procedure envisioned that the CADA would distribute as much of the residual balance as possible on a *per capita* basis to known claimants, after which the Court would make a *cy près* award.  On July 23, 2014, the Court apporved the procedure.[8]

On January 27, 2015, the Special Master moved for approval of a per capita distribution to the 56,914 claimants who had claimed their initial awards.[9]  On January 29, 2015, the Court approved the motion.[10]

On July 17, 2015, the CADA informed the Special Master that the supplemental distribution was complete.  The CADA estimated that, after all past and future administrative expenses were paid, there would be $439,479.53 left in the settlement fund.  The Special Master forwarded this information to liaison counsel and the Court, and requested suggested for potential *cy près* award recipients. After several weeks of communication and opportunity to be heard, liaison counsel have indicated (whether affirmatively or through silence) that they are aware of no opposition to the

---

[6]Rec. Doc. 26123 (Judgment and Order).

[7]Rec. Doc. 26150 (Motion for Court Approval of Supplemental Distribution Procedure).

[8]Rec. Doc. 26152 (Order).

[9]Rec. Doc. 26156 (Motion for Court Approval of Supplemental Disbursement).

[10]Rec. Doc. 26157 (Order).

following list of recipients:

(1)     Catholic Charities of New Orleans
        1000 Howard Avenue
        Suite 200
        New Orleans, LA 70113

(2)     Bridge House Corporation
        4150 Earhart Boulevard
        New Orleans, LA 70125

(3)     Covenant House New Orleans
        611 North Rampart Street
        New Orleans, LA 70112

(4)     Ozanam Inn
        843 Camp Street
        New Orleans, LA 70130
        Established by the Society of St. Vincent de Paul of New Orleans

(5)     Second Harvest Food Bank
        700 Edward Avenue
        New Orleans, LA 70123

Of course, the Court may only make a *cy près* award only if it is supported both by the law

and the circumstances.  Judge Sarah Vance recently wrote an opinion which thoroughly discussed

the proper application of the *cy près* doctrine:

> In class actions, federal courts apply the equitable doctrine of *cy pres*
> to put undistributed or unclaimed settlement funds to their next best
> compensatory use, "*e.g.*, for the aggregate, indirect, prospective
> benefit of the class." *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468,
> 474 (5th Cir.2011) (quoting *In re Airline Ticket Comm'n Antitrust
> Litig.*, 307 F.3d 679, 682 (8th Cir.2002)); see also *Masters v.
> Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir.2007)
> (internal quotation marks omitted).
>
> The Fifth Circuit requires that two conditions be met before finding
> that a *cy pres* distribution is appropriate.  First, it must be infeasible
> to make further settlement distributions to class members. *Klier*, 658
> F.3d at 475 (citing Am. Law Inst., Principles of the Law of

Aggregation Litigation § 3.07 (2010); William B. Rubenstein, *et al.*, Newberg on Class Actions § 10.17 (4th ed.2002)).  It is infeasible to make further distributions when (1) remaining class members cannot be identified or chose not to participate, (2) the claim amounts are too small to make individual distributions economically viable, and/or (3) the class members' damages claims are fully satisfied by the initial distribution. *Id.*; Am. Law Inst., *supra* § 3.07.

Second, the unclaimed funds must "be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Klier*, 658 F.3d at 474 (quoting *In re Airline Ticket Comm'n*, 307 F.3d at 682); see also *In re Lease Oil Antitrust Litig. (No. II)*, MDL No. 1206, 2007 WL 4377835, at (S.D.Tex. Dec. 12, 2007) ("In applying *cy pres* principles, it is appropriate for a court to consider (1) the objectives of the underlying statute(s), (2) the nature of the underlying suit, (3) the interests of the class members, and (4) the geographic scope of the case." (internal citations omitted)). Stated differently, there must be a nexus between the harm that the plaintiffs suffered and the benefit the *cy pres* distribution is expected to provide.  *See* Rubenstein, *supra* § 12.33.  Only when, after thorough investigation and analysis, the court cannot identify a recipient whose interests reasonably approximate those of the class may a court approve a *cy pres* award to a recipient with more tangential connections. *See id.*; see also *Diamond Chem. Co., Inc. v. Akzo Nobel Chems. B.V.*, Nos. 01–2118(CKK), 02–1018(CKK), 2007 WL 2007447, at *2 (D.D.C. July 10, 2007) ("[T]he doctrine of *cy pres* and the courts' broad equitable powers now permit the use of funds for other public interest purposes by educational, charitable, and other public service organizations." (internal quotation marks omitted)).[11]

The matter before the Court clearly satisfies the requirements for a *cy près* award.

First, "the claim amounts are too small to make individual distributions economically viable." A *per capita* distribution would result in an award of less than $7.75 per claimant, and this is without taking into consideration the additional administrative expenses.  These administrative

---

[11]*In re Pool Prods. Distr. Market Antitrust Litig.*, 2015 WL 4528880, slip op. at 8 (E.D. La. 2015).

expenses would include not only the costs of printing checks, letters, and envelopes (as well as the cost of postage), but also the administrative follow up with claimants who may have moved or may have questions.  The Special Master is convinced that this option is cost-prohibitive.

Second, a distribution to the proposed recipients (Catholic Charities of New Orleans, Bridge House Corporation, Covenant House New Orleans, Ozanam Inn, and Second Harvest Food Bank) would benefit "a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." Hurricane Katrina affected much of the Gulf Coast, not just the New Orleans area.  But the claims at issue in this MDL do not arise directly from the storm's destruction; they arise from the use of temporary housing units in the wake of the storm.  The Special Master has reviewed the lists of all claimants along with associated data, and has also communicated with (by telephone, by letter, by email, and in person) with innumerable claimants.  The typical claimant is relatively poor and still lives in New Orleans.  The best the Court can do to serve "the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated" is to direct a *cy près* award to the poor of New Orleans.  The five organizations listed above all meet this description.

The current balance (before subtracting administrative expenses) in the settlement fund is $738,506.15.  The CADA's unpaid fees and expenses through September 15, 2015 are $257,571.74.  The Special Master's unpaid fees and expenses through September 15, 2015 are $12,100.00.  The CADA estimates that its fees and expenses from September 16, 2015 through the end of the matter will be $28,498.41.[12]  The Special Master estimates that his fees and expenses from September 16,

---

[12]It is possible that the CADA will have to pay some outstanding claims and/or expenses from this amount.  If so, the CADA will accordingly reduce its own charges.

2015 through the end of the matter will be $5,000.00. Thus, after deducting all current and estimated future fees and expenses, there will be a balance of $435,336.00 to distribute as a *cy près* award. The Special Master recommends that the Court divide this amount equally among Catholic Charities of New Orleans, Bridge House Corporation, Covenant House New Orleans, Ozanam Inn, and Second Harvest Food Bank.

For these reasons, the Special Master recommends that the Court enter an order authorizing and directing the CADA to distribute the balance of the settlement fund as follows:

- Catholic Charities of New Orleans          $87,067.20

- Bridge House Corporation          $87,067.20

- Covenant House New Orleans          $87,067.20

- Ozanam Inn          $87,067.20

- Second Harvest Food Bank          $87,067.20

- Postlethwaite & Netterville (the CADA)          $286,070.15

- Perry, Atkinson, Balhoff, Mengis, Burns & Ellis (the Special Master)      $17,100.00


Baton Rouge, Louisiana, this 23rd day of October, 2015.


s/Daniel J. Balhoff
Daniel J. Balhoff (#18776)
Randi S. Ellis (#25251)